**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA**

Pedro VASQUEZ PERDOMO, *et al.*

    Plaintiffs,

    v.

Kristi NOEM, in her official capacity as Secretary, Department of Homeland Security, *et al.*

    Defendants.

Case No.: 2:25-cv-05605-MEMF-SP

**DECLARATION OF
VERONICA BARBA**

Hon. Maame Ewusi-Mensah Frimpong

I, Veronica Barba, declare under penalty of perjury that the following statements are true and correct pursuant to 28 U.S.C. § 1746.

1. I, Veronica Barba, am a California State licensed attorney who has been practicing in the area of immigration law for over 18 years. I am a principal partner at a law office, specializing in removal defense before the immigration courts. A majority of my clients are in ICE custody.

2. On Wednesday, June 4, 2025, I accompanied my client, SK, to his ICE check-in at the Los Angeles Federal Building at 300 N. Los Angeles Street. SK was originally scheduled to appear at his check in on June 18, 2025 but had received a message through his Bi-Link application asking him to check-in "Tuesday or Wednesday."

3. SK and I arrived at the Federal Building around 10am and reported to the basement, Room B-17. Upon entering the room, I noticed that there were far more people reporting than usual. There were many families who brought their young children to the check-in, which is usually not required. Officers were also calling out names very slowly and did not seem to know anything about the cases that they were calling and so would have to return two to three times to talk to a person and there were not many people leaving the room. Usually, officers would know the background of a case once they called someone's name, and the officers would let them know when to return for their next check-in, and then they were free to leave.

4. At around 3pm, an officer called out SK's name and we proceeded to speak to the officer. The officer asked SK for his passport and SK let the officer know that he had still not been able to acquire a passport. SK updated the officer on his attempts to acquire a passport, including his trips to the consulate in Atlanta, Georgia. The officer didn't seem to know anything about SK's case and asked us to sit back down and he would return.

5. We did not speak to this officer again and later noticed that the officer began attending to other people. SK and I had not left the basement room since 10am, other than taking bathroom breaks on that same floor. After we met with this officer and saw that he was not going to come back to talk to us, SK started to get more nervous. By this time, we saw more and more people staying in place and some were taken to smaller rooms and their personal belongings were being gathered.

6. Eventually, everyone remaining in room B17 was taken to a smaller waiting room because the larger room was kept for people that were going to be detained. Once we were moved, many people started to panic. A woman began crying and a father held his daughter and started crying. We noticed that with respect to the families that came in that day, most of the fathers were arrested and the mothers were fit for an ankle bracelet and released with their children. There were also entire families that were arrested.

7. SK and I were some of the last to be called that day, around 6:30pm. A different officer came in and called his name and I was told that he would be taken into custody. I was not told why or where. I was told that they would not know until he was processed where he would be taken. I let the officer know that SK is diabetic and hadn't eaten all day. I also let them know that he didn't have his medication. I was told that he would be given something to eat and that his medication could be dropped off but that he would be processed and taken to a detention center soon. I told SK I would call his family and left. By that time the building was closed.

8. I went outside of the federal building and called SK's daughter at 6:50pm, I let her know where he was and that he had asked that she come to the building to pick up his car. I asked her to please keep in touch and let me know as soon as she heard from him.

9.      The next day, June 5th,  SK's daughter let me know that she had heard from SK and that he needed funds added to his account to make more phone calls. SK's daughter and I both tried to add funds and I checked Talton Communications, the site where we add funds for ICE detention calls, but B-18 was not an option. I emailed a local attorney listserv to ask if anyone had ever added money to accounts for people held at B-18, but no one had.

10.      The afternoon of June 5th, I called any number that I could to get in touch with someone at B-18 to find out if SK was still there. I finally got through to someone at around 2pm and they told me SK was likely not there because no one could be kept there longer than 12 hours. They couldn't find his name in their system so they took my cell phone number and told me that they would call back. They did not call me back.

11.      I kept checking to see if SK was being held at the detention center in Adelanto, CA, as the officer I had gotten in touch with at B-18 told me he was probably not at B-18 since people are not held there for more than 12 hours. The entire time that SK was at B-18 I could not confirm that he was there and I was not able to speak to him.

12.      On Monday, June 9th, I emailed the deportation officer email at Adelanto (#apcero501-999@ice.dhs.gov) and was told that SK was at the detention center in Adelanto. That same day, I emailed the attorney appointment email and made an appointment for a Zoom visit. I was given an appointment that Wednesday, June 11th at 1pm. I was also able to add funds to his account to make calls.

13.      Throughout this time and as of June 26th, SK does not appear on the online ICE detainee locator (https://locator.ice.gov/).

14.      On Tuesday, June 10th, SK was able to call me. He told me that he was transferred to Desert View Saturday morning and that it took them two days to be processed. He said he hadn't received his diabetes medication from the time of his arrest on June 4th until June 10th. I let him know that we would speak more in detail the next day during our Zoom visit.

I declare under penalty of perjury that the foregoing is true and correct.

Pasadena, CA

Dated: June 30, 2025

By: _____

Veronica Barba