# EXHIBIT 7

STACY TOLCHIN (SBN 217431)
*stacy@tolchinimmigration.com*
LAW OFFICES OF STACY TOLCHIN
776 E. Green St., Suite 210
Pasadena, CA 91101
Telephone: (213) 622-7450
Facsimile:  (213) 622-7233

MOHAMMAD TAJSAR (SBN 280152)
*mtajsar@aclusocal.org*
MAYRA JOACHIN (SBN 306065)
*mjoachin@aclusocal.org*
EVA BITRAN (SBN 302081)
*ebitran@aclusocal.org*
DAE KEUN KWON (SBN 313155)
*akwon@aclusocal.org*
OLIVER MA (SBN 354266)
*oma@aclusocal.org*
STEPHANIE PADILLA (SBN 321568)
*spadilla@aclusocal.org*
DIANA SANCHEZ (SBN 338871)
*dianasanchez@aclusocal.org*
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017-4022
Telephone: (213) 977-5232
Facsimile: (213) 201-7878

*Counsel for Stop/Arrest Plaintiffs
(additional counsel information on cont. page)*

MARK ROSENBAUM (SBN 59940)
*mrosenbaum@publiccounsel.org*
REBECCA BROWN (SBN 345805)
*rbrown@publiccounsel.org*
SOPHIA WRENCH (SBN 354416)
*swrench@publiccounsel.org*
RITU MAHAJAN (SBN 252970)
*rmahajan@publiccounsel.org*
GINA AMATO (SBN 215519)
*gamato@publiccounsel.org*
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977

*Counsel for All Plaintiffs*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pedro VASQUEZ PERDOMO; Carlos Alexander OSORTO; and Isaac VILLEGAS MOLINA; Jorge HERNANDEZ VIRAMONTES; Jason Brian GAVIDIA; LOS ANGELES WORKER CENTER NETWORK; UNITED FARM WORKERS; COALITION FOR HUMANE IMMIGRANT RIGHTS; IMMIGRANT DEFENDERS LAW CENTER, <br><br> Plaintiffs, <br><br> v. <br><br> Kristi NOEM, in her official capacity as Secretary, Department of Homeland | Case No.: 2:25-cv-05605-MEMF-SP <br><br> Hon. Maame Ewusi-Mensah Frimpong <br><br> **DECLARATION OF A.L. IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER** |

-1-

Security; Todd M. LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; Rodney S. SCOTT, in his official capacity as Commissioner, U.S. Customs and Border Patrol; Michael W. BANKS, in his official capacity as Chief of U.S. Border Patrol; Kash PATEL, in his official capacity as Director, Federal Bureau of Investigation; Pam BONDI, in her official capacity as U.S. Attorney General; Ernesto SANTACRUZ JR., in his official capacity as Acting Field Office Director for Los Angeles, U.S. Immigration and Customs Enforcement; Eddy WANG, Special Agent in Charge for Los Angeles, Homeland Security Investigations, U.S. Immigration and Customs Enforcement; Gregory K. BOVINO, in his official capacity as Chief Patrol Agent for El Centro Sector of the U.S. Border Patrol; Jeffrey D. STALNAKER, in his official capacity as Acting Chief Patrol Agent, San Diego Sector of the U.S. Border Patrol; Akil DAVIS, in his official capacity as Assistant Director in Charge, Los Angeles Office, Federal Bureau of Investigation; Bilal A. ESSAYLI, in his official capacity as U.S. Attorney for the Central District of California,

Defendants.

ANNE LAI (SBN 295394)
alai@law.uci.edu
UC IRVINE SCHOOL OF LAW
IMMIGRANT AND RACIAL
JUSTICE
SOLIDARITY CLINIC
P.O. Box 5479
Irvine, CA 92616-5479
Telephone: (949) 824-9894
Facsimile:  (949) 824-2747

*Counsel for Stop/Arrest Plaintiffs*

LAUREN MICHEL WILFONG*
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

*Counsel for Stop/Arrest Plaintiffs*

BREE BERNWANGER (SBN 331731)
bbernwanger@aclunc.org
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

*Counsel for Stop/Arrest Plaintiffs*

BRISA VELAZQUEZ OATIS
(SBN 339132)
bvoatis@aclu-sdic.org
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL
COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Telephone: (619) 398-4199

*Counsel for Stop/Arrest Plaintiffs*

MATTHEW J. CRAIG (SBN 350030)
mcraig@heckerfink.com
MACK E. JENKINS (SBN 242101)
mjenkins@heckerfink.com
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Telephone: (212) 763-0883
Facsimile: (212) 564-0883

*Counsel for Access/Conditions Plaintiffs*

EDGAR AGUILASOCHO
(SBN 285567)
eaguilasocho@farmworkerlaw.com
MARTINEZ AGUILASOCHO LAW, INC.
900 Truxtun Ave Suite 300
Bakersfield, CA 93301
Telephone: (661) 859-1174

*Counsel for Plaintiff United Farm Workers*

CARL BERGQUIST*
cbergquist@chirla.org
COALITION FOR HUMANE
IMMIGRANT RIGHTS
2351 Hempstead Road
Ottawa Hills, OH 43606
Telephone: (310) 279-6025

*Counsel for Plaintiff Coalition for Humane
Immigrant Rights*

ALVARO M. HUERTA (SBN 274787)
ahuerta@immdef.org
BRYNNA BOLT (SBN 339378)
bbolt@immdef.org
ALISON STEFFEL (SBN 346370)
asteffel@immdef.org
IMMIGRANT DEFENDERS LAW
CENTER
634 S. Spring St., 10th Floor
Los Angeles, CA 90014
Telephone: (213) 634-0999

*Counsel for Plaintiff Immigrant
Defenders Law Center*

* Pro hac vice application forthcoming

-3-

## **DECLARATION OF A.L.**

I, A.L., declare the following:

1.      I make this declaration from my personal knowledge and if called to testify to these facts I could and would do so competently.

2.      My name is A.L. I live in Los Angeles County. I am a U.S. Citizen.

3.      As an Angeleno, I have been horrified by the Department of Homeland Security's assault on my neighbors and community members, which has escalated significantly in recent weeks. In mid-June, I attended a know-your-rights training with a community organization to better understand how I can support day laborers when ICE comes to my community.

4.      On June 23, 2025, I learned about an ICE raid that had just taken place at a nearby Home Depot in Marina del Rey, on Jefferson Blvd. When I left my house, at approximately 10:30 a.m. that morning to run routine errands, I stopped at my local Home Depot, at the corner of Slauson Ave and S. Fairfax Ave, to check in with the community and provide know your rights information.

5.      When I arrived, the area where day-laborers typically congregate was almost empty. There were about five people total in the area, including an older man who appeared to be Latino, three Black men who were seeking work, and a young street vendor selling food, whose name I later learned is C. She was very petite and wearing a red apron. She appeared to be Latina, with brown skin and long dark hair.

6.      I was standing about 10 feet away from C. It was very quiet and calm with very little traffic. I had been there for approximately five minutes, when suddenly a commotion began and I was jostled as an older man came out of nowhere, running full speed past me. I realized he was chasing C.

7.      The man was at least 6 feet tall and 250 pounds. He was dressed entirely in street clothes, wearing jeans, a T-shirt, and a baseball cap. He had on sunglasses and as he was running, I saw him pull up a neck gator to cover his face. He also had a utility belt around his waist and what looked like a gun in a holster on his right side. He had no uniform, no police vest, no badge—nothing that would indicate that he was anything other than a private citizen. My instinct was that he was an angry man trying to catch a young woman, potentially an angry ex-boyfriend. I was standing close by and within earshot when the commotion began. I did not hear him say anything before or while he was running. I did not see him approach her, he seemed to come out of nowhere.

8.      Concerned for her safety, I ran after them. C had reached a tree across the street and was clinging to it. She was still wearing her work apron. When I arrived, there was a second man. He was also in plain street clothes, with a neck gator covering his face and a baseball cap. He had a vest on with

2

a Border Patrol patch. He had a radio and a gun strapped to his jeans. He kept his hand on his gun. The man who had chased her started to grab C but then stopped. He kept asking the second man what he should do next. It did not seem like he had training. It added to my suspicion that this was not a legitimate operation.

9. A minute or two later, two large unmarked Sports Utility Vehicles pulled up to the curb and parked in the red zone. They had out-of-state plates, and tinted windows. Six more men in regular street clothes—jeans, sneakers, baseball caps, sunglasses—exited the vehicles carrying large guns, wearing camouflage vests, and with neck gators covering their faces. They immediately surrounded the tree C was clinging to. At least two of them had the biggest guns I had ever seen, maybe four feet long, and they held them in front of their bodies. A driver remained in each vehicle, keeping the motors running.

10. I repeatedly asked the men to identify themselves and to show a warrant with a judge's signature. They never acknowledged my questions and no one would answer me. Never did I hear any of them at any point identify their agency affiliations, say they were ICE, or that they were law enforcement at all.

11. One of the men asked C a question in Spanish: what city she was from. She did not answer the question. After that I didn't hear them say anything to her, except for "let's go," in English. It wasn't clear if they were speaking to her or to me. She did not answer the question. After that I didn't hear them say anything to her, except for "let's go," in English. It wasn't clear if they were speaking to her or to me.

12. The first man –the older plain-clothed man who had chased her - began to pull at C's body, using his physical strength to pry her from the tree. C is very petite, maybe 5 feet tall and about 100 pounds. The man pulling at her was at least 6 feet tall and 250 pounds. He did not identify himself. He still was not wearing anything that indicated he was law enforcement. He pulled her off the tree and put her hands behind her back, handcuffing her. She did not resist, squirm, or cry. She was very calm. Several of the men walked her to one of the cars, shoved her inside the back seat, and one of the men climbed in next to her.

13. Three of us stood close. Five to seven other people had emerged from the strip mall and nearby apartments, all standing at a distance, just watching. Once they put her in the car and closed the doors, I presumed the encounter was over, and everyone began to disburse.

14. It did not feel like an official law enforcement activity. I was not sure if what I had seen was a crime. I was extremely distressed. I saw a fire station across the street with several firefighters on

the sidewalk. I crossed the street to speak with them. Then I heard what sounded like two explosions back-to-back and the sound of screeching tires. I turned around and saw smoke billowing from the street. The men had thrown tear gas canisters into the street as they left. The tear gas got into my eyes and throat, which made me cough for several minutes, so that I couldn't speak, and made my eyes itch and burn. I closed my eyes and ran inside the fire station to escape the smoke. The firefighters also had to lower their garage doors to keep the tear gas from entering.

15.    The firefighters took me into the fire station and gave me water to rinse out my eyes. I was very upset by what I had just witnessed, which appeared to be a kidnapping. After explaining this to the firefighters, they phoned the Sheriff's Department so I could file a report about the kidnapping. The Sheriff's Department sent an officer to take my report. He took photographs of the scene, interviewed a neighbor who witnessed the event, and ultimately collected the tear gas canisters that were left in the road. The officer found three.

16.    It was very distressing to witness what looked like a violent kidnapping. As a woman, this is my nightmare, and why I enrolled my 15-year-old daughter in a self-defense class just this month. Women are constantly aware of the potential for violence against them during their everyday activities, whether in parking garages, opening their front door for a package, or even while exercising. In this instance, it was on a Monday morning that an entrepreneurial woman was working to support her family. They didn't appear even to know her name, but instead by happenstance, they drove by and saw a petite woman with brown skin who would be easy to overtake.

17.    The use of force was also grotesquely disproportionate and completely unnecessary at every stage of the encounter. To have eight masked men with big guns surrounding one small woman. And then, after they had detained her and were preparing to drive away, to use tear gas on a handful of civilians on a public street, who were doing nothing but bearing witness, and had already disbursed, was shocking and terrifying, and further confirmed my suspicions that what I had witnessed was extrajudicial.

I declare under penalty of perjury of the laws of the State of California and the United States that the foregoing is true and correct. Executed at Los Angeles County, California on June 29, 2025.



_____

A.L.

4