BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

TIBERIUS DAVIS
SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 307-1697
Email: Sean.Skedzielewski@usdoj.gov

Attorneys for Defendants

BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation
Section
ALEXANDER L. FARRELL (SBN 335008)
PAULINE H. ALARCON (SBN 345785)
Assistant United States Attorneys
  Federal Building, Suite 7516
  300 North Los Angeles Street
  Los Angeles, California 90012
  Telephone: (213) 894-2400
  E-mail:  Alexander.Farrell@usdoj.gov

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PEDRO VASQUEZ PERDOMO; *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security; *et al.*,<br><br>Defendants. | No. 2:25-cv-05605-MEMF-SP<br><br>**DEFENDANTS' *EX PARTE* APPLICATION FOR STAY OF ORDER GRANTING TEMPORARY RESTRAINING ORDER (Dkt. 87)**<br><br>[Supporting declarations filed concurrently]<br><br>Hon. Maame Ewusi-Mensah Frimpong<br>United States District Judge |

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

I.      INTRODUCTION ...................................................................................................... 1

II.     BACKGROUND ......................................................................................................... 2

III.    STANDARD OF REVIEW ........................................................................................ 3

IV.     ARGUMENT .............................................................................................................. 4

        A.      Plaintiffs Lack Standing for Prospective Injunction Relief. ......................... 4

        B.      This Court Grossly Misapplied the Fourth Amendment. ............................... 7

        C.      The Injunction Impermissibly Granted District-Wide Relief. .................... 11

        D.      The Balance of Equities and Public Interest Favor a Stay. ......................... 13

V.      CONCLUSION ......................................................................................................... 14

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                   **Page(s)**

*Alderman v. United States*,
   394 U.S. 165 (1969)................................................................................................6

*Barnes v. Felix*,
   145 S. Ct. 1353 (2025)........................................................................................11

*Byrd v. United States*,
   584 U.S. 395 (2018)............................................................................................11

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)......................................................................................1, 4, 5

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)........................................................................................4, 5

*Egbert v. Boule*,
   596 U.S. 482 (2022)............................................................................................14

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982)............................................................................................14

*Hodgers-Durgin v. De La Vina*,
   199 F.3d 1037 (9th Cir. 1999) ......................................................................2, 6, 7

*Hunt v. Wash. St. Apple Adver. Comm'n*,
   432 U.S. 333 (1977)..............................................................................................6

*INS v. Lopez-Mendoza*,
   468 U.S. 1032 (1984)..........................................................................................14

*Int'l Longshoremen's Ass'n v. Phila. Marine Trade Ass'n*,
   389 U.S. 64 (1967)................................................................................................8

*LaDuke v. Nelson*,
   762 F.2d 1318 (9th Cir. 1985) ..............................................................................7

*Lewis v. Casey*,
   518 U.S. 343 (1996)..............................................................................................7

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)..............................................................................................4

*Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*,
   237 F.3d 1101 (9th Cir. 2001) ..............................................................................6

*Maldonado v. Holder*,
   763 F.3d 155 (2d Cir. 2014)................................................................................10

*Microsoft Corp. v. DOJ*,
   233 F. Supp. 3d 887 (W.D. Wash. 2017)..............................................................6

*Nat'l Ctr. for Immigrants Rights, Inc. v. INS*,
   743 F.2d 1365 (9th Cir. 1984) ............................................................................13

*Nken v. Holder*,
   556 U.S. 418 (2009)........................................................................................4, 13

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ...............................................................................7, 9

*Perdomo, et al. v. Noem, et al.*,
--- F.Supp.3d ----, 2025 WL 1915964 (C.D. Cal. Jul. 11, 2025)...................................1

*Rakas v. Illinois*,
439 U.S. 128 (1978)...........................................................................................6

*Schmidt v. Lessard*,
414 U.S. 473 (1974)...........................................................................................8

*Stavrianoudakis v. U.S. Fish & Wildlife Serv.*,
108 F.4th 1128 (9th Cir. 2024) .............................................................................6

*Terry v. Ohio*,
392 U.S. 1 (1968)..............................................................................................8

*Trump v. CASA, Inc.*,
2025 WL 1773631 (U.S. June 27, 2025) ....................................................1, 8, 12, 13

*United States v. Arvizu*,
534 U.S. 266 (2002)........................................................................................8, 10

*United States v. Brignoni-Ponce*,
422 U.S. 873 (1975)........................................................................................8, 10

*United States v. Manzo-Jurado*,
457 F.3d 928 (9th Cir. 2006) ...............................................................................10

*United States v. Montrero-Camargo*,
208 F.3d 1122 (9th Cir. 2000) .............................................................................10

*United States v. Sokolow*,
490 U.S. 1 (1989)............................................................................................11

*United States v. Valdes-Vega*,
738 F.3d 1074 (9th Cir. 2013) .............................................................................11

*Waite v. Macy*,
246 U.S. 606 (1918)...........................................................................................8

**Federal Regulations**

8 C.F.R. § 287.8(b)(2)..........................................................................................8

**Federal Rules**

Fed. R. Civ. P. 23 ...............................................................................................7
Fed. R. Civ. P. 62 ...............................................................................................7
Fed. R. Civ. P. 65 ...............................................................................................7

ii

## I.    INTRODUCTION

On July 14, 2025, this Court issued a memorandum opinion and order in this case. *See Perdomo, et al. v. Noem, et al.*, --- F.Supp.3d ----, 2025 WL 1915964 (C.D. Cal. Jul. 11, 2025). Pursuant to Federal Rule of Civil Procedure 62, Defendants submit this *ex parte* application to stay pending appeal of the Court's July 14, 2025 Order granting Plaintiffs' *ex parte* applications for a Temporary Restraining Order ("TRO") (Dkt. 4, 38, 45). Defendants are concurrently seeking a stay from the Ninth Circuit at the same time as this renewed motion for a stay.

As grounds for relief, Defendants submit that the Court's district-wide order was erroneously entered for a number of reasons. First, Plaintiffs lack standing. Alleging past, isolated stops does not justify prospective injunctive relief under well-settled law. *See City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). The Court sidesteps *Lyons* by speculating about future violations, but that reasoning fails because *Lyons* itself foreclosed it. It is *Plaintiffs* who bear the burden of showing an imminent threat of injury, which they cannot.

Second, on the merits, the injunction misconstrues the Fourth Amendment. While reasonable suspicion is indeed required, courts may not issue vague "follow-the-law" injunctions. Worse still, by excluding entire categories of factors from the suspicion analysis, the Court contradicts the Fourth Amendment's totality-of-the-circumstances standard. Context matters because such factors as language, location, or occupation might be relevant in particular cases. Courts cannot impose such rigid rules where the Constitution demands flexibility.

Third, the injunction ignores the Supreme Court's recent ruling in *Trump v. CASA, Inc.*, 2025 WL 1773631 (U.S. June 27, 2025), which reaffirmed that universal injunctions violate basic equitable principles. Yet here, the Court barred the government from conducting *any* detentive stops in the Central District, regardless of whether the stops involve any of the Plaintiffs. While the Court rejected a narrower remedy as "unworkable," *CASA* makes clear that unworkability is not a ground to disregard constitutional limits on judicial power.

An immediate stay of the Court's injunction is warranted, not only because it is legally indefensible, but because it threatens the separation of powers and the government's sovereign prerogatives. It is untenable for a single district judge "to restructure the operations" of federal immigration enforcement and usurp "ongoing judicial supervision of an agency normally, and properly, overseen by the executive branch." *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999) (en banc).

## II.    BACKGROUND

On June 20, 2025, three individual aliens filed a habeas petition in the district court seeking release from immigration detention. Dkt. 1. Two weeks later, on July 2, they filed an amended complaint adding two other named individual plaintiffs plus four legal services organizations. Dkt. 16. And the next day, before the July 4 holiday, they filed an emergency *ex parte* TRO application. Dkt. 45. These filings, accompanied by more than three hundred pages of exhibits, vastly expanded the scope of the suit to encompass all immigration enforcement throughout the entire district. Dkt. 38, 45.

As relevant here, Plaintiffs alleged that federal agents are engaged in a pattern or practice of unlawful immigration detentions in violation of the Fourth Amendment. Dkt. 45 at 6-13. The three original petitioners are unlawful aliens who were arrested outside a donut shop known to ICE as a location where an illegal immigrant picked up other illegal immigrants for labor. Exhibit A (Second Quinones Decl.). One remains detained; the other two were released on bond pending removal. *Id*. One of the two new Plaintiffs (Hernandez Viramontes) alleges that agents came to the car wash where he works on four occasions in June, and on one of those occasions briefly detained him before verifying his citizenship. Dkt. 45-4. The second new plaintiff (Gavidia) says agents once seized him at a tow yard and asked about his citizenship status. Dkt. 45-9.

The three organizational Plaintiffs relevant to this claim are L.A. Worker Center Network, United Farm Workers, and Coalition for Humane Immigrant Rights. Each provides services to immigrants and is concerned with immigrant rights. They generally allege that their members have been detained and fear that immigration agents will detain

them again. Dkt. 16, ¶¶ 173, 179, 189.

For relief, Plaintiffs sought a sweeping injunction barring federal agents from conducting any detentive stops without reasonable suspicion, defined to exclude any reliance on race or ethnicity, language, location, or type of work. Dkt. 45-22, at 4-6.2.

The Court gave the government just two business days to respond to the voluminous applications, then held a hearing two days after that. The Court issued an order granting the two applications the following day. Dkt. 87 (Op.).

As to standing, the Court observed that only one named plaintiff needed to satisfy Article III, and found that Gavidia did so because he had "suffered an invasion of a legally protected interest" and that the conduct complained of would recur. Op.35. As to the merits, the Court concluded that Plaintiffs were likely to succeed in showing the government was "conducting seizures that require at least reasonable suspicion," and that "the seizures were not supported by reasonable suspicion." Op.36. The court agreed with Plaintiffs that reliance on race or ethnicity, spoken language, location, and type of work cannot ever satisfy reasonable suspicion, alone or in combination; it further found that, for the relevant stops, immigration officials relied solely upon those enumerated factors. Op.39-45.

The Court thought Plaintiffs had established irreparable harm based on the risk of future detentive stops. Op.47-48. Accordingly, the Court enjoined the government from (i) "conducting detentive stops in this District" absent "reasonable suspicion that the person … is in violation of U.S. immigration law"; and (ii) relying solely on the enumerated factors for reasonable suspicion. The Court also ordered the parties to show cause at some later date and time why a broader preliminary injunction should not issue, requiring the government to establish guidance, undergo training, and maintain and regularly share with Plaintiffs' counsel documentation showing reasonable suspicion for all detentive stops going forward. Op.50-51.

## III.    STANDARD OF REVIEW

A stay pending appeal is warranted because the government can show a strong

likelihood of success on the merits, and because the balance of harms and public interest favor a stay. *Nken v. Holder*, 556 U.S. 418, 426 (2009). The Court's injunction plainly fails on standing grounds, merits grounds, and remedial grounds—it is wrong at least thrice over. And it threatens untenable consequences for immigration enforcement on the ground.

## IV.    ARGUMENT

In considering a stay of the injunction, the first and most important factor is the movant's likely success on the merits. Here, the government will very likely prevail on appeal, because the Court issued an injunction that (i) Plaintiffs lacked standing to seek; (ii) is contrary to bedrock Fourth Amendment law; and (iii) violates the equitable principles that the Supreme Court articulated just weeks ago.

### A.    Plaintiffs Lack Standing for Prospective Injunction Relief.

Plaintiffs must establish Article III standing to seek prospective injunctive relief. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412 (2013). That means they must show a future injury that is "imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). They cannot make that showing, and this Court badly erred in concluding otherwise.

**1.** This case is squarely controlled by *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). Lyons was stopped by police officers for a traffic violation and, despite offering no resistance, was seized and placed in a chokehold. *Id.* at 97. The Supreme Court held that, while Lyons could pursue a damages claim for that past injury, he lacked standing for prospective relief because he had not shown that "he was likely to suffer future injury from the use of the chokeholds by police officers." *Id.* at 105. There was no "immediate threat" that he would *again* be "choke[d] … without any provocation or resistance on his part." *Id.* That was so even though the Court accepted as true that the police department had a policy of "routinely apply[ing] chokeholds in situations where they are not threatened by the use of deadly force." *Id.* That still did not mean that *Lyons himself* faced a likely threat of future injury.

4

That dooms Plaintiffs' standing here. This Court relied solely on Plaintiff Gavidia for standing. He alleges that he suffered a similar Fourth Amendment injury. Instead of a chokehold, agents allegedly stopped him based on his "skin color." Dkt. 45-9, ¶¶ 9, 12. Even assuming those allegations were true (they are not), they do not "establish a real and immediate threat that he would again be [stopped because of his race]." *Lyons*, 461 U.S. at 105.

**2.** The Court misapplied *Lyons* by holding that "there is a real and immediate threat that the conduct complained of will continue." Op.35. Notably, the Court did *not* say that there is a real and immediate threat *to Plaintiffs*. Just as Lyons was not likely to be subject to a chokehold again, the Court never found that Gavidia is likely to be subject to the same violations in the future. Again, the Court merely found a likelihood of "recurrent injury." *Id.* But injury *to whom*? The Article III test is whether the *plaintiff* is likely to suffer future injury. But Plaintiffs presented no evidence that Gavidia would be stopped again.

**3.** Nor can the other Plaintiffs fill the gap. They are all in the same boat (or worse). Plaintiff Viramontes alleged that agents visited the carwash where he works twice without stopping him and detained him for about 20 minutes on their third visit until they could verify his citizenship status. Dkt. 45-4, ¶¶ 6-11. That single interaction provides no basis to believe there will be any future stops, let alone wrongful ones. On the contrary, Viramontes's own declaration makes clear that in a fourth encounter with a different group of agents later that same day, no arrests were made. *Id.* ¶ 14.

Two other plaintiffs, Perdomo and Molina, were detained and later released on bond pending removal proceedings. Dkt. 81-1, ¶¶ 4-5. But other than alleging that the government continues to enforce federal immigration law in the district, the only "evidence" of their standing is Perdomo's "belie[f]" that he will be stopped again (Dkt. 45-1, ¶ 11) and Molina's "worr[y]" that he will be arrested again for "look[ing] like an immigrant." (Dkt. 45-1, 45-3). But subjective fear of a future illegal stop "is not certainly impending" and "cannot manufacture standing." *Clapper*, 568 U.S. at 416.

5

Finally, Plaintiff Osorto is still detained. Dkt. 81-1, ¶ 6. He cannot possibly be in "immediate threat" of an unlawful stop by immigration officials since those officials obviously do not attempt to arrest someone already in detention.

The organizational Plaintiffs cannot demonstrate standing for the injunction either. Associational standing requires the organization to prove, among other things, that "its members would otherwise have standing to sue in their own right" and "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). Neither is true here. As to the first, the organizations' members lack standing for the same reasons as the individual Plaintiffs—any risk of future harm is speculative. *See Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128, 1143-44 (9th Cir. 2024) (no associational standing for warrantless searches because it was speculative that any members would be harmed in the future). And, as to the second, a Fourth Amendment claim is the paradigmatic example of one that requires the participation of individual members. "Fourth Amendment rights are personal rights which … may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165 (1969); *see also Rakas v. Illinois*, 439 U.S. 128 (1978); *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1111 (9th Cir. 2001); *Microsoft Corp. v. DOJ*, 233 F. Supp. 3d 887, 913–14 (W.D. Wash. 2017) (collecting cases).

**4.**     Even if Plaintiffs could somehow show the bare minimum for Article III, they cannot come close to showing the "threat of immediate and irreparable harm" that is necessary for an injunction. *Hodgers-Durgin*, 199 F.3d at 1042. *Hodgers-Durgin* was a challenge to CBP practices allegedly in violation of the Fourth Amendment. The en banc court held that, even assuming the plaintiffs there had standing, they still "have not demonstrated a sufficient likelihood of injury to warrant equitable relief" because they were "stopped only once." *Id.* at 1044. So too here. Indeed, Plaintiffs presented evidence of only one *anonymous non-party* who was supposedly stopped by immigration officials twice. Dkt. 38-11, ¶¶ 32-38. But "[i]n the absence of a likelihood of injury to the named

plaintiffs, there is no basis for granting injunctive relief that would restructure the operations of the Border Patrol and that would require ongoing judicial supervision of an agency normally, and properly, overseen by the executive branch." *Id.* at 1044 (emphasis added); *see also Lewis v. Casey*, 518 U.S. 343, 359 (1996) ("These two [injuries] were a patently inadequate basis for a conclusion of systemwide violation and imposition of systemwide relief."). So too here.

Notably, Plaintiffs and this Court both cited *LaDuke v. Nelson*, 762 F.2d 1318, 1324-26 (9th Cir. 1985), *amended*, 796 F.2d 309 (9th Cir. 1986), for standing. But the en banc court in *Hodgers-Durgin* narrowed *LaDuke* in light of intervening Supreme Court precedent. *See Hodgers-Durgin*, 199 F.3d at 1044-45. And even the Court admitted that *LaDuke* is distinguishable on its face, because it involved direct evidence of an unlawful policy, whereas here no such evidence was presented. Op.45 n.33.

In short, whether viewed through the prism of Article III or the equitable factors for injunctive relief, the Court badly erred by turning alleged one-off past interactions into a basis for a sweeping forward-looking remedy.

**B.    This Court Grossly Misapplied the Fourth Amendment.**

Even supposing the Court had jurisdiction, the government would be likely to succeed on the merits. The Court's order enjoining the government's detentive-stop practices rests on a serious misunderstanding of both the Court's equitable powers and the governing Fourth Amendment principles.

**1.**    To start, the injunction improperly orders the government to follow the law, without adequately defining the prohibited actions. Federal Rule of Civil Procedure 65 provides that "[e]very order granting an injunction and every restraining order must," among other things, "state its terms specifically" and "describe in reasonable detail … the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(B)-(C). Courts thus may not enter injunctions that do no more than broadly direct defendants to comply with the law; "a bare injunction to follow the law" is impermissible. *E.g., Parsons v. Ryan*, 754 F.3d 657, 689 n.35 (9th Cir. 2014); *see also Int'l Longshoremen's Ass'n v. Phila. Marine Trade*

*Ass'n*, 389 U.S. 64, 74-76 (1967) (rejecting decree to enforce "an abstract conclusion of law"); *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).

That limitation on federal courts' equitable powers serves critically important interests, especially with respect to injunctive relief against executive-branch officials. It prevents courts from arrogating to themselves the power to generally superintend the Executive Branch's execution of the laws. *See CASA*, 2025 WL 1773631, at *14 ("the Judiciary does not have unbridled authority to enforce" the Executive's "duty to follow the law"); *Waite v. Macy*, 246 U.S. 606, 609 (1918) ("Courts will not issue injunctions against administrative officers on the mere apprehension that they will not do their duty or will not follow the law."). And it protects defendants from the risk of being held in contempt for violating a court order with ill-defined contours. As the Supreme Court explained in *Longshoremen*: "The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one." 389 U.S. at 76. "Congress responded to that danger by requiring that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid." *Id.*

This Court's detentive-stops injunction blatantly violates the prohibition of "follow the law" injunctions. The Fourth Amendment guarantee against unreasonable searches and seizures "extend[s] to brief investigatory stops of persons or vehicles that fall short of traditional arrest," including stops of individuals suspected of being in the United States illegally. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). By virtue of "the limited nature of the intrusion," however, "stops of this sort may be justified on facts that do not amount to the probable cause required for an arrest." *United States v. Brignoni-Ponce*, 422 U.S. 873, 880 (1975). Instead, an officer may conduct such a stop based on reasonable suspicion—supported by "specific articulable facts, together with rational inferences from those facts"—that a person is an illegal alien. *Id.* at 884; *see also Terry v. Ohio*, 392 U.S. 1 (1968); 8 C.F.R. § 287.8(b)(2) ("If the immigration officer has a reasonable suspicion, based on specific articulable facts, that the person being questioned is, or is attempting to

8

be, engaged in an offense against the United States or is an alien illegally in the United States, the immigration officer may briefly detain the person for questioning.").

The injunction here simply recapitulates those basic Fourth Amendment principles. It first provides: "Defendants shall be enjoined from conducting detentive stops in this District unless the agent or officer has reasonable suspicion that the person to be stopped is within the United States in violation of U.S. immigration law." Op.50. That just restates the constitutional requirement of reasonable suspicion. It is thus a forbidden "bare injunction to follow the law." *Parsons*, 754 F.3d at 689 n.35.

The second substantive provision of the injunction suffers from much the same defect. Although it enumerates four factors that defendants may not rely on, "alone or in combination, to form reasonable suspicion for a detentive stop," it simultaneously provides that defendants may do so "as permitted by law." Op.50. That is circular and fails to provide the requisite notice. And even if the "except as permitted by law" clause were set aside, the Court's opinion leaves significant confusion about which practices the Court did and did not intend to enjoin, as discussed further below. The Order thus exposes defendants to the threat of judicial contempt based on nothing more than the prospect that the Court may ultimately disagree with an agent's application of the Fourth Amendment. The injunction is fatally flawed on this basis alone.

**2.** Even the injunction's more precise provisions rest on a serious misunderstanding of the Fourth Amendment. Under the injunction, "Defendants may not rely solely on" four factors, "alone or in combination, to form reasonable suspicion for a detentive stop." Op.50. Those factors are: "[a]pparent race or ethnicity"; "[s]peaking Spanish or speaking English with an accent"; "[p]resence at a particular location (e.g. bus stop, car wash, tow yard, day laborer pick up site, agricultural site, etc.)"; or "[t]he type of work one does." *Id.* That directive is flatly inconsistent with black-letter Fourth Amendment doctrine.

Insofar as the injunction means to prohibit the government from relying on the four listed factors *at all*, as parts of the Court's opinion appear to suggest (Op.42-43, Op.41

9

n.30), that runs afoul of the basic Fourth Amendment principle that the reasonable-suspicion inquiry entails consideration of the totality of the circumstances, *Arvizu*, 534 U.S. at 273, meaning that no circumstances are categorically off-limits. And that of course goes for the four factors that the Court enumerated here. Thus, ethnicity can be a factor supporting reasonable suspicion in appropriate circumstances—for instance, if agents are acting on a tip that identifies that ethnicity—even if it would not be relevant in other circumstances. *See Brignoni-Ponce*, 422 U.S. at 885-86 ("apparent Mexican ancestry" did not "alone" supply reasonable suspicion). It is likewise settled that a person's use of Spanish, "[p]resence at a particular location," or job (Op.50) can contribute to reasonable suspicion in at least some circumstances. *See, e.g., United States v. Manzo-Jurado*, 457 F.3d 928, 937 (9th Cir. 2006) (fact that group was "speaking to each other only in Spanish" was "relevant to the reasonable suspicion inquiry"); *United States v. Montrero-Camargo*, 208 F.3d 1122, 1138 (9th Cir. 2000) (en banc) (location can be relevant); *Maldonado v. Holder*, 763 F.3d 155, 161 (2d Cir. 2014) (noting that day labor is "an occupation that is one of the limited options for workers without documents"). The Court practically acknowledged as much by identifying specific locations that are often associated with illegal aliens, thereby refuting its own logic. Op.50 (referring to a "day laborer pick up site[s]"). So, to the extent that the injunction bars the government from considering the listed factors, it is egregiously wrong.

The injunction is flawed even if it prohibits the government only from relying on the enumerated factors *alone* (singly or in combination) to form reasonable suspicion for a stop. Reflecting the Fourth Amendment's core textual criterion of reasonableness, the Supreme Court has "deliberately avoided reducing" the reasonable-suspicion inquiry to "a neat set of legal rules." *Arvizu*, 534 U.S. at 274; *see also Brignoni-Ponce*, 422 U.S. at 885 n.10. For example, a rule allowing officers to rely on certain evidence of "ongoing criminal behavior" but not "probabilistic" evidence is inconsistent with the flexible nature of the reasonable-suspicion inquiry. *United States v. Sokolow*, 490 U.S. 1, 8 (1989). Categorical rules are foreign to the Fourth Amendment's totality-of-the-circumstances tests, whether

10

they help or hurt the government. *See, e.g., Byrd v. United States*, 584 U.S. 395, 405 (2018) (rejecting *per se* rule that "drivers who are not listed on rental agreements always lack an expectation of privacy in the automobile based on the rental company's lack of authorization alone"); *Barnes v. Felix*, 145 S. Ct. 1353, 1358 (2025) (rejecting "moment of the threat" doctrine in excessive-force context).

This Court's injunction contravenes that principle. As the Ninth Circuit has held, "[t]he nature of the totality-of-the-circumstances analysis … precludes us from holding that certain factors are presumptively given no weight without considering those factors in the full context of each particular case"; "prior decisions holding that certain factors are per se not probative or are per se minimally probative do not … comply with Supreme Court precedent." *United States v. Valdes-Vega*, 738 F.3d 1074, 1079 (9th Cir. 2013) (en banc). Yet the injunction here imposes a categorical rule that the four listed factors cannot support reasonable suspicion for an investigatory stop. *See* Op.50. And it does so even though some combination of the enumerated factors will at least sometimes support reasonable suspicion for a stop. That cannot be correct.

### C.     The Injunction Impermissibly Granted District-Wide Relief.

If nothing else, the Court's grant of district-wide relief must be stayed because it flagrantly violates the Supreme Court's recent holding in *CASA*, forbidding the use of universal (*i.e.*, non-party-specific) injunctions. This Court did not enjoin the government from detaining *Plaintiffs* without reasonable suspicion; it enjoined the government from stopping or detaining *anyone in the district* without reasonable suspicion. That cannot be squared with *CASA*—and the Court barely tried. Indeed, the Court failed even to cite the Supreme Court's ruling, let alone engage with its holding.

In *CASA*, the Supreme Court addressed "universal injunctions," or injunctions that bar the defendant from enforcing "a law or policy against *anyone*," in contrast to injunctions limited to the plaintiff. 2025 WL 1773631, at *4. The Court found that the statutory grant of jurisdiction over suits "in equity" "encompasses only those sorts of equitable remedies traditionally accorded by courts of equity at our country's inception."

*Id*. at \*5-\*6. And "[n]either a universal injunction nor any analogous form of relief was available … at the time of the founding." *Id*. at \*6. Rather, "suits in equity were brought by and against individual parties." *Id*. "Because the universal injunction lacks a historical pedigree, it falls outside the bounds of a federal court's equitable authority under the Judiciary Act." *Id*. at \*8. At most, a court granting equitable relief "may administer complete relief *between the parties*." *Id*. at \*11. "Under this principle, the question is not whether an injunction offers complete relief to everyone potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief *to the plaintiffs before the court*." *Id*. And even then, "[c]omplete relief is not a guarantee—it is the maximum a court can provide." *Id*. at \*12.

This Court nonetheless determined that it "must enjoin the conduct of all law enforcement engaged in immigration enforcement throughout the District." Op.36 Without citing or discussing *CASA*, the Court summarily dismissed the government's concerns about universal injunctions as "unavailing" because "the requested injunction is only District-wide and not nationwide." Op.30 n.21. That completely misses the point. Whether nationwide or only district-wide, the injunction goes beyond providing complete relief to *Plaintiffs*.

The Court also thought a narrower injunction would not work, because it would be impractical to expect agents to inquire into whether someone is a plaintiff before conducting a stop or detention. Op.36. But *CASA* cannot be so easily brushed aside. The Court warned that "[c]omplete relief" is not "synonymous with universal relief," but is instead "a narrower concept: The equitable tradition has long embraced the rule that courts generally 'may administer complete relief *between the parties*.'" *CASA*, 2025 WL 1773631, at \*11. Thus, although "the complete-relief principle has deep roots in equity," it does not "justif[y] award of relief to nonparties." *Id*. at \*10. To be sure, there are cases where "afford[ing] the plaintiff complete relief[] [leaves] the court [with] only one feasible option," which has "the practical effect of benefiting nonparties"—but any such "benefit to nonparties . . . [is] merely incidental." *Id*. at \*11. Here, though, the benefit to nonparties

is anything but incidental: The Court expressly ruled that it would "enjoin the conduct of all law enforcement engaged in immigration enforcement throughout the District." Op.36. *CASA* does not allow that.[1]

If anything, the Court's concerns about a party-specific injunction merely underscore that broad, structural injunctions are rarely appropriate in the Fourth Amendment context. *See* Orin S. Kerr, *The Limits of Fourth Amendment Injunctions*, 7 J. on Telecommc'ns & High Tech. L. 127, 129 (2009) ("Fourth Amendment doctrine is tremendously fact-specific: every fact pattern is different, and even the exceptions to the exceptions have their own exceptions. Courts are poorly suited to design broad injunctive relief in this setting."). They are certainly not a reason to ignore the Supreme Court's warnings about the limits of federal courts' equitable powers.

This sweeping district-wide injunction, under which a single district judge purports to dictate a categorical formula for this sort of individualized inquiry and thereby assume plenary oversight of immigration enforcement in Los Angeles, is contrary to both the Fourth Amendment and basic principles of equity. A stay is required.

### D.    The Balance of Equities and Public Interest Favor a Stay.

The balance of harms, equities, and public interest overwhelmingly favor a stay pending appeal. *See Nken*, 556 U.S. at 435. The government will suffer irreparable harm if the Court's injunction remains in effect. Under federal law, the government only conducts warrantless arrest where officers have reasonable suspicion, based on specific articulable facts. Dkt. 71 (Havrick Decl.), ¶¶ 8-10; Dkt. 71 (Quinones Decl.) ¶¶ 4-5, 8-9. But the Court's broad, structural injunction will have a chilling effect on that enforcement, because it threatens officers with contempt sanctions if the Court retrospectively disagrees

---

[1] Although Plaintiffs styled their amended complaint as a putative class action, they did not seek certification and the Court expressly did not rely on the class allegations to support the injunction. *See* Op.36 (approving district-wide injunction "without considering the unnamed class members and the propriety of certifying a class"). Accordingly, any injunction had to be limited to the Plaintiffs. *See Nat'l Ctr. for Immigrants Rights, Inc. v. INS*, 743 F.2d 1365, 1371 (9th Cir. 1984) ("in the absence of class certification, [a] preliminary injunction may properly cover only the named plaintiffs"). Of course, had the Court tried to certify a class, that would have led to other fatal problems under Rule 23.

with their view of whether reasonable suspicion was satisfied on particular facts. *Cf. Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982); *see also* Exhibit A ¶¶ 8-10 (describing how the TRO will hamper law enforcement efforts and increase risks to agents); Exhibit B ¶¶ 14-20 (same). And that risk is potent, given that the Court reached its judgment about the past arrests of three named Plaintiffs here, without giving the government a meaningful opportunity to marshal the facts and prove that reasonable suspicion *did* exist. Now that it's had more time, the government has provided specific evidence that those arrests resulted from "a targeted enforcement action at a particular location where past surveillance and intelligence had confirmed that the target or individuals associated with him were observed to have recruited illegal aliens to work on landscaping jobs." *Compare* Ex. A (Second Quinones Decl.) ¶ 6 *with* Dkt. 71 (Quinones Decl.).

On the other side of the scale, the Fourth Amendment already applies by its own terms to all law enforcement actions and already provides remedies for violations. *See Egbert v. Boule*, 596 U.S. 482, 484 (2022) (addressing alternative remedies in context of excessive force complaint); *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1045 (1984). Those existing remedies suffice to protect Plaintiffs' interests and the public interest.

## V.    CONCLUSION

For these reasons, the Court should stay its Order granting the TRO application.

Dated: July 14, 2025                    Respectfully submitted,

*/s/Sean Skedzielewski*
SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
United States Department of Justice
Civil Division
950 Pennsylvania Ave NW, Ofc. 3631
Washington, DC 20530
Telephone: (202) 307-1697
Email: Sean.Skedzielewski@usdoj.gov

Attorney for Defendants

## L.R. 11-6.2 Certificate of Compliance

The undersigned counsel of record certifies that this filing is fourteen (14) pages which, complies with L.R. 11-6.1 and this Court's standing order.

Dated: July 14, 2025

/s/Sean Skedzielewski
SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
United States Department of Justice
Civil Division
950 Pennsylvania Ave NW, Ofc. 3631
Washington, DC 20530
Telephone: (202) 307-1697
Email: Sean.Skedzielewski@usdoj.gov