STACY TOLCHIN (SBN 217431)
*stacy@tolchinimmigration.com*
LAW OFFICES OF STACY TOLCHIN
776 E. Green St., Suite 210
Pasadena, CA 91101
Telephone: (213) 622-7450
Facsimile: (213) 622-7233

MOHAMMAD TAJSAR (SBN 280152)
*mtajsar@aclusocal.org*
MAYRA JOACHIN (SBN 306065)
*mjoachin@aclusocal.org*
EVA BITRAN (SBN 302081)
*ebitran@aclusocal.org*
DAE KEUN KWON (SBN 313155)
*akwon@aclusocal.org*
OLIVER MA (SBN 354266)
*oma@aclusocal.org*
STEPHANIE PADILLA (SBN 321568)
*spadilla@aclusocal.org*
DIANA SANCHEZ (SBN 338871)
*dianasanchez@aclusocal.org*
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017-4022
Telephone: (213) 977-5232
Facsimile: (213) 201-7878

MARK ROSENBAUM (SBN 59940)
*mrosenbaum@publiccounsel.org*
REBECCA BROWN (SBN 345805)
*rbrown@publiccounsel.org*
SOPHIA WRENCH (SBN 354416)
*swrench@publiccounsel.org*
RITU MAHAJAN (SBN 252970)
*rmahajan@publiccounsel.org*
GINA AMATO (SBN 215519)
*gamato@publiccounsel.org*
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977

*Counsel for Stop/Arrest Plaintiffs*

*Counsel for All Plaintiffs*

(*additional counsel information on cont. page*)

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

Pedro VASQUEZ PERDOMO, *et al.*,

    Plaintiffs,

    v.

Kristi NOEM, in her official capacity as Secretary, Department of Homeland Security, *et al.*,

    Defendants.

Case No.: 2:25-cv-05605-MEMF-SP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION FOR STAY OF ORDER GRANTING TEMPORARY RESTRAINING ORDER**

Hon. Maame Ewusi-Mensah Frimpong

ANNE LAI (SBN 295394)
*alai@law.uci.edu*
UC IRVINE SCHOOL OF LAW
IMMIGRANT AND RACIAL
JUSTICE
SOLIDARITY CLINIC
P.O. Box 5479
Irvine, CA 92616-5479
Telephone: (949) 824-9894
Facsimile:  (949) 824-2747

*Counsel for Stop/Arrest Plaintiffs*


LAUREN MICHEL WILFONG*
*lwilfong@ndlon.org*
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

*Counsel for Stop/Arrest Plaintiffs*

BREE BERNWANGER (SBN 331731)
*bbernwanger@aclunc.org*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

*Counsel for Stop/Arrest Plaintiffs*

BRISA VELAZQUEZ OATIS
(SBN 339132)
*bvoatis@aclu-sdic.org*
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL
COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Telephone: (619) 398-4199

*Counsel for Stop/Arrest Plaintiffs*

MATTHEW J. CRAIG (SBN 350030)
*mcraig@heckerfink.com*
MACK E. JENKINS (SBN 242101)
*mjenkins@heckerfink.com*
HELIA BIDAD (SBN 348633)
*hbidad@heckerfink.com*
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Telephone: (212) 763-0883
Facsimile: (212) 564-0883

*Counsel for Access/Conditions Plaintiffs*

EDGAR AGUILASOCHO
(SBN 285567)
*eaguilasocho@farmworkerlaw.com*
MARTINEZ AGUILASOCHO LAW, INC.
900 Truxtun Ave Suite 300
Bakersfield, CA 93301
Telephone: (661) 859-1174

*Counsel for Plaintiff United Farm Workers*

CARL BERGQUIST**
*cbergquist@chirla.org*
COALITION FOR HUMANE
IMMIGRANT RIGHTS
2351 Hempstead Road
Ottawa Hills, OH 43606
Telephone: (310) 279-6025

*Counsel for Plaintiff Coalition for Humane Immigrant Rights*

*Application for pro hac vice forthcoming
** Admitted pro hac vice

Plaintiffs respectfully submit this opposition to Defendants' *ex parte* application for a stay [ECF 94 ("Mot.")] of the Court's order granting a temporary restraining order [ECF 87 ("Order")].

As an initial matter, Defendants did not comply with the Local Rule 7-19.1, which requires notice of an anticipated *ex parte* application. Defendants have also made no attempt to show that their application meets the standard set forth in *Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 492 (1995). It appears that Defendants made this application only because they realized they had not complied with Fed. R. App. P. 8(a)(1) before requesting a stay from the Ninth Circuit Court of Appeals.

Plaintiffs urge the Court nevertheless to consider but deny Defendants' request for a stay. Defendants cannot demonstrate a likelihood of success or any harm to themselves. Should the Court be persuaded, however, that Defendants have identified any defect in the Order, the Court should not stay the order but instead enter further findings to aid in appellate review.[1]

## ARGUMENT

A stay pending appeal is an "extraordinary remedy." *United States v. Mitchell*, 971 F.3d 993, 999 (9th Cir. 2020). Such a "stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). In determining whether to grant a stay, a court must consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434. "The first two factors are the most critical." *Carey v. J.A.K.'s*

---

[1] *See* Fed. R. Civ. P. 62(d) ("while an appeal is pending," district court "may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights"); *Fed. Trade Comm'n v. Enforma Nat. Prods., Inc.*, 362 F.3d 1204, 1215 n.11 (9th Cir. 2004); *Mayweathers v. Newland*, 258 F.3d 930, 935 (9th Cir. 2001).

*Puppies, Inc.*, 2024 WL 5374932, at *2 (C.D. Cal. June 6, 2024) (citing *Nken*, 556 U.S. at 434). All factors weigh against a stay here.

*First*, Defendants have not shown a "strong" likelihood of success. *Washington v. Trump*, 847 F.3d 1151, 1165 (9th Cir. 2017).  Defendants make three arguments: (1) Plaintiffs, including the organizational plaintiffs, lack standing to obtain prospective injunctive relief; (2) the injunction "is contrary to bedrock Fourth Amendment law"; and (3) the Court exceeded its authority to tailor relief under *Trump v. CASA, Inc.*, 2025 WL 1773631 (U.S. June 27, 2025).  Each argument is likely to fail.

***Standing***. Plaintiffs have standing to seek prospective injunctive relief.  The Court so held expressly with respect to plaintiff Brian Gavidia, and the record amply demonstrates that the other plaintiffs likewise have standing to obtain an injunction because they or their members are likely to be subject to Defendants' unlawful practice in the future.

A plaintiff may demonstrate standing to obtain injunctive relief by showing "that the harm is part of a 'pattern of officially sanctioned ... behavior, violative of the plaintiffs' [federal] rights.'"  *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001) (quoting *LaDuke v. Nelson*, 762 F.2d 1318, 1323 (9th Cir. 1985)) (alterations in original); *Melendres v. Arpaio*, 695 F.3d 990, 997-98 (9th Cir. 2012) (clarifying that a written policy is not required); *see Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010) (same).[2]

The Court correctly found, based on public statements, that Defendants' unlawful practice is officially sanctioned.  Order at 45 n.33.  Further, the officially sanctioned pattern and practice here is independently demonstrated by the sheer number of instances of patently unconstitutional conduct, as a "pattern of officially sanctioned ... behavior" can be shown "where the defendants have repeatedly engaged in the injurious acts in the past."

---

[2] *Hodgers-Durgin* did not "narrow[]" *La Duke*. Applying *LaDuke*, that court declined to disturb the district court's factual determination at summary judgment that the plaintiffs failed to establish a likelihood of recurring injury. *See Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999). Here, the evidence demonstrates that Plaintiffs face a strong likelihood of recurring injury.

*Armstrong*, 275 F.3d at 861; *see B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 974 (9th Cir. 2019) (holding that actions that have "continued over time and may occur again" were sufficient to provide standing based on a policy of officially sanctioned behavior).

Although this Court did not expressly reach the question of the organizational Plaintiffs' standing in its discussion about jurisdiction in the Fourth Amendment section of its Order, the record demonstrates that the organizational Plaintiffs have standing to obtain an injunction for similar reasons as Plaintiff Gavidia, *i.e.*, because their members, who are spread throughout the District, are likely to suffer unlawful seizures as a result of Defendants' practice. This also bolsters the case for a District-wide injunction. *See infra* at 6-7.

UFW has standing. One UFW member, "Angel," a U.S. citizen, was seized for no apparent reason other than his Latino appearance and status as a day laborer. Officers pulled up in a show of force and commanded him not to leave until he provided identification. ECF 45-8 ¶¶ 27–28. Officers also "grabbed" Angel's coworker and "loaded him" into a truck simply because he spoke Spanish. *Id*. ¶ 28. Angel reasonably fears that Defendants' unlawful conduct will recur. *Id*. ¶ 29. He is not alone. Other UFW members, including citizens and lawful permanent residents, reasonably fear being subjected to Defendants' unlawful seizures and are staying home, missing work and losing wages. *Id.* ¶¶ 19, 32. That fear is objectively reasonable in light of Defendants' practice.

LAWCN has standing. One Latino member of CLEAN was working at a car wash when six vehicles pulled up to the entrance in a "fast and intimidating" fashion. ECF 45-10 ¶ 4. An armed agent "approached [him angrily] and grabbed [his] arms," and asked for his "papers." *Id.* ¶¶ 6–7. Agents did not detain two light-skinned car wash workers at the same work site. *Id.* ¶¶ 11–12. "Many more members" of CLEAN now "fear going to work, or even going in public, because they are afraid that the language they speak or where they work will subject them to unlawful stops by immigration agents due to racial profiling." ECF 45-13 ¶ 13. That fear is objectively reasonable in light of Defendants' practice.

CHIRLA has standing.  CHIRLA's membership consists of predominantly Latine people, including day laborers, carwash workers, street vendors, and others. ECF 38-9 ¶¶ 24–25.  CHIRLA's members reasonably fear being detained because of the way they look and where they work.  *Id.* ¶ 25. One U.S. citizen CHIRLA member whose brother was detained is now "on constant alert" when he goes out in public.  *Id.* ¶ 26.  Other members have changed their routines out of fear of being stopped or assaulted, *id.* ¶ 27, stopped taking the bus to work after encountering immigration agents at a bus stop, *id.* ¶ 28, reduced their work, or withdrawn their children from school. *Id.* ¶¶ 29–30.  Their fear is objectively reasonable in light of Defendants' practice.

Because Plaintiffs have established "a 'credible threat' of recurrent injury," they have standing to seek injunctive relief.  *LaDuke*, 762 F.2d at 1323.

***Fourth Amendment***. On the merits, the only parts of Defendants' stay application that do not rehash arguments this Court already rejected—on a robust factual record—reflect misdescriptions of the Court's order. For example, Defendants insist they should be permitted to consider language and location, and argue that those factors are not "categorically off-limits." Mot. at 10. But the TRO does not place those factors categorically off-limits. It simply prohibits Defendants from relying "solely" on four factors in place of reasonable suspicion. Order at 50; *see also id.* at 42 (considering whether "sole reliance … could give rise to reasonable suspicion"). When Defendants finally acknowledge the Order's actual language, they fail to cite any on-point caselaw that might cast doubt on the Court's decision, let alone identify binding authority that would demonstrate a strong likelihood of success on appeal.  *See* Mot. at 10–11.

Defendants have now, for the first time, filed a declaration that purports to justify the seizures of Plaintiffs Vasquez Perdomo, Osorto, and Molina. Though indefensibly belated, the declaration in fact *confirms* Defendants' unlawful practice. It states that the detentions of these Plaintiffs "arose or were the result of a targeted enforcement action at a particular location where past surveillance and intelligence had confirmed that the target or individuals associated with him were observed to have recruited illegal aliens to work

on landscaping jobs." ECF 94-1 ¶ 6.  That statement, though not a model of clarity, appears to acknowledge that Plaintiffs were simply present at a "location" where *some* law enforcement "target" had *sometime* in the "past" picked up some *other* people who were undocumented.  The declaration says nothing about the Plaintiffs, and it omits that the "particular location" in question was a public bus stop. It cannot be that mere presence at a public bus stop—where at some other time, someone else, associated with different people who lacked legal status, was present—can justify a deprivation of liberty by the federal government.  And indeed, that is not the law.  *See Perez Cruz v. Barr*, 926 F.3d 1128, 1138 (9th Cir. 2019); *United States v. Manzo-Jurado*, 457 F.3d 928, 936 (9th Cir. 2006). This new declaration does not alter the Court's conclusion that Defendants are engaged in an unlawful practice and in fact supports it.

Nothing in the Order prohibits Defendants from pursuing targeted arrests, executing arrest warrants, appearing at a location of interest (*e.g.*, a bus stop of interest) to engage in voluntary questioning, or detaining a person based on the four enumerated characteristics *in combination with* other individualized facts.  The Order reaches only Defendants' illegal policy and practice of substituting broad profiling for reasonable suspicion.  Order at 39–46.

Defendants also complain that the Order enjoins Defendants' policy of flouting the reasonable suspicion requirement "except as permitted by law," Mot. at 9, but this caveat makes clear that the Order does not purport to reach enforcement at the border or at checkpoints, or in connection with a specific suspect description, where the law's requirements differ.  *See, e.g.*, *United States v. Montero-Camargo*, 208 F.3d 1122, 1134 n. 21 (9th Cir. 2000).  This language does not undermine the clarity of the Court's TRO, which is directed at the problematic conduct detailed in Plaintiffs' TRO Application. However, if this is truly of concern, the Court may provide further detail.

***Scope of relief.***  The Court correctly concluded that providing complete interim relief to the named Plaintiffs required pausing Defendants' indiscriminate and unconstitutional seizures District-wide.  As the court explained, "it would be a fantasy to

6

expect that law enforcement could and would inquire whether a given individual was among the named Stop/Arrest Plaintiffs . . . before proceeding with a seizure." Order at 36. The Court was correct. Agents and officers stopping individuals based *solely* upon their ethnicity or accent are unlikely to inquire whether a potential detainee is one of the named individual Plaintiffs in this case, or a member of an organizational Plaintiff. And that "fantasy" of individualized compliance, Order at 36, has already collided with reality: Plaintiff Brian Gavidia, UFW member Angel, and LAWCN member Uitz, were illegally seized *before* officers asked for identification. ECF 45-9 ¶ 11 (Gavidia); ECF 45-8 ¶¶ 27–28 (Angel); ECF 45-10 ¶ 6 (Uitz). Defendants make no effort to explain how the Court could have drawn its order more narrowly, and do not even mention *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486 (9th Cir. 1996), which was the basis for this Court's reasoning about the scope necessary to provide "complete relief" to Plaintiffs. Order at 35–36. The Supreme Court's recent decision in *Trump v. CASA, Inc.* affirmed, rather than abrogated, that principle. 2025 WL 1773631 at *15 (limiting several "nationwide," or "universal," injunctions, but "only to the extent that the injunctions are broader than necessary to provide complete relief" to the parties).

*Second*, Defendants have failed to demonstrate that they would be irreparably harmed absent a stay, or indeed harmed at all. If Defendants *do not have* a practice of conducting unlawful detentive stops predicated solely on the four factors identified in the TRO—as they sometimes claim, Order at 40—then then their conduct will remain unaffected by the Court's order, and they will not suffer any harm. If they *do* have such an unlawful practice—as the Court found, *e.g.*, Order at 47—they still will not suffer irreparable harm, because the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983); *cf. Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1305 (1991) (Scalia, J., in chambers) ("The likelihood that denying the stay will permit irreparable harm to the applicant may not clearly exceed the likelihood that granting it will cause irreparable harm to others.").

Defendants assert that the TRO "will have a chilling effect on [immigration] enforcement, because it threatens officers with contempt sanctions if the Court retrospectively disagrees with their view of whether reasonable suspicion was satisfied on particular facts." Mot. at 13–14. But the Court already considered, and rejected, this argument too. As the Court held, "requiring law enforcement to comply with the Constitution does not prevent law enforcement from enforcing the law." Order at 48. And if it is Defendants' view that bedrock Fourth Amendment principles stand in the way of their immigration enforcement plans, that makes the TRO all the more important for Plaintiffs and the public, and certainly is not a reason to set the TRO aside.

Defendants have now put in two declarations stating that, *inter alia*, the "impractical" TRO "will likely cause hesitation and delay in the field, which in turn increases the risk of assault on officers, escalations during volatile encounters, and injuries to both officers and the public." *See* ECF No. 94-2 at ¶ 8; *see also* ECF No. 94-1 at ¶¶ 8–10. But those declarations are conclusory, and Defendants offered no evidence to suggest that a TRO that merely applies existing law will cause these harms. Moreover, these declarations are predicated on distorting the Order, which does not disturb Defendants' "reliance on [four] factors *along with other factors*" or "require that Defendants ignore these factors or 'put blinders on' when they run across these factors." *Id.*

*Finally*, because Defendants have "not 'satisfie[d] the first two factors,' [the Court] need not dwell on the final two factors—'harm to the opposing party' and 'the public interest.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 778 (9th Cir. 2018). Nonetheless, the last two factors, which merge when the government is a party, also weigh against a stay. *Nken*, 556 U.S. at 435. As the Court recognized, it is Plaintiffs and their members who have already been irreparably harmed by Defendants' conduct and who face a risk of irreparable harm in the future. Order at 46. And "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 836–37 (9th Cir. 2020).

8

## CONCLUSION

For the foregoing reasons, Defendants' *ex parte* application for a stay should be denied.

DATED: July 15, 2025                    ACLU OF SOUTHERN CALIFORNIA


By: */s/ Mohammad Tajsar*
Mohammad Tajsar
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2025, I electronically filed the foregoing with the Clerk of the U.S. District Court for the Central District of California using the CM/ECF system, which sent notification of such filing to all registered CM/ECF users.


DATED:  July 15, 2025                    ACLU OF SOUTHERN CALIFORNIA



                         By: ___*/s/ Mohammad Tajsar*_____
                              Mohammad Tajsar
                              *Counsel for Plaintiffs*

10

## <u>L.R. 11-6.2 CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel of record certifies that this filing is 2,606 words and fewer than eight pages, and complies with L.R. 11-6.1 and this Court's standing order.


DATED:  July 15, 2025                          ACLU OF SOUTHERN CALIFORNIA




By:        */s/ Mohammad Tajsar*
                 Mohammad Tajsar
                 *Counsel for Plaintiffs*