UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEDRO VASQUEZ PERDOMO, et al., <br><br> Petitioners-Plaintiffs, <br><br> v. <br><br> KRISTI NOEM, Secretary, Department of Homeland Security, et al., <br><br> Respondents-Defendants. | Case No. 2:25-cv-05605-MEMF-SP <br><br> **MEMORANDUM OPINION AND ORDER GRANTING PETITIONER OSORTO'S EX PARTE APPLICATION FOR RELEASE FROM IMMIGRATION CUSTODY** |

## I.

## INTRODUCTION

On July 21, 2025, petitioner Carlos Osorto filed an ex parte application for release from immigration custody pending adjudication of his habeas petition. Docket no. 111. The application is supported by the declaration of Stacy Tolchin ("Tolchin Decl.") and exhibits. Respondents filed an opposition ("Opp.") the following day, supported by the declaration of Pauline H. Alarcon ("Alarcon Decl.") and exhibits. Docket no. 113. The court held a telephonic conference regarding the application on July 23, 2025. Docket no. 115. Respondents thereafter filed a supplemental opposition on July 25, 2025 ("Supp. Opp."). Docket no. 125. On July 26, 2025, petitioner filed a reply brief

supported by a supplemental declaration of Tolchin ("Supp. Tolchin Decl.") and exhibits. Docket no. 126.

For the reasons that follow, the court grants the ex parte application for release from custody.

## II.
## BACKGROUND

### A. Relevant Factual Allegations

On June 18, 2025, petitioner Osorto was waiting with others, including co-petitioners Pedro Vasquez Pedermo and Issac Antonio Villegas Molina, at a Pasadena, California bus stop to be picked up for a job. First Amended Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief ("FAP/Compl.") ¶¶ 13, 124; *see id*. ¶¶ 111, 137. When petitioner saw federal agents approach, he tried to run but stopped when an agent pointed a taser at his head and said, "stop or I'll use it." *Id*. ¶ 125. Federal agents then handcuffed petitioner and put him in a vehicle. *Id*. ¶ 126.

The federal agents brought petitioner to a nearby CVS parking lot and then asked him if he had papers. *Id.* ¶ 128. The federal agents arrested petitioner, but failed to show him a warrant. *Id.* ¶¶ 129-30. Nor did the federal agents inform petitioner they were immigration officers authorized to make an arrest or the basis for the arrest. *Id*. ¶ 132.

Petitioner was initially transported to and held at the federal building at 300 North Los Angeles Street in B-18. *Id*. ¶ 133. The facility was full and the people held there were told there was no food, water, or medicine. *Id*. Petitioner was transferred to Adelanto ICE Processing Center ("Adelanto"), where he remains.

### B. Relevant Procedural Background

On June 20, 2025, petitioner Osorto, along with co-petitioners Vasquez Perdomo and Villegas Molina, initiated this action by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, naming as respondents: Kristi Noem, Secretary of Department of Homeland Security ("DHS"); Pam Bondi, Attorney General; Immigration and Customs Enforcement ("ICE"); and Todd M. Lyons, Acting Los Angeles Field

1  Office Director of ICE.  Docket no. 1.  Petitioners concurrently filed an ex parte
2  application for a temporary restraining order ("TRO") asking the court to enjoin DHS
3  from transferring them outside of the Central District of California.  Docket no. 4.  Later
4  the same day, the parties filed a joint stipulation for withdrawal of the ex parte
5  application for TRO after respondents agreed that petitioners would be housed at
6  Adelanto and would not be transferred to another judicial district for at least 14 days.
7  Docket no. 9.  The court granted the joint stipulation for withdrawal on June 23, 2025.
8  Docket no. 11.
9       The next day, June 24, 2025, the court held a telephonic conference, during which
10 the parties asked the court to refrain from issuing a briefing schedule on the habeas
11 petition while petitioners attempted to schedule immigration bond hearings.  Docket no.
12 13.  The parties were in agreement that petitioners were entitled to bond hearings and
13 expected to schedule them shortly.  In a stipulation filed on June 27, 2025, respondents
14 agreed that petitioners would be housed at Adelanto and not transferred to another district
15 outside of the Central District for at least until the date they received bond hearings.
16 Docket no. 14.
17       On July 2, 2025, petitioners Osorto, Vasquez Perdomo, and Villegas Molina, along
18 with two other individuals and four organizational plaintiffs, filed the FAP/Compl.
19 Docket no. 16.  The FAP/Compl. maintains the claims in the initial habeas petition and
20 adds class action claims concerning detention conditions and the denial of counsel.  *See*
21 *id*.
22       Co-petitioners Vasquez Perdomo and Villegas Molina were released from custody
23 on July 8, 2025, after being granted bond.  Docket no. 62; Tolchin Decl., Ex. A.
24       Petitioner Osorto appeared at a bond hearing before an immigration judge on July
25 16, 2025.  Tolchin Decl. ¶ 9.  Petitioner and DHS both submitted evidence in support of
26 their positions.  *Id*. ¶¶ 7-8, Exs. C-D.  At the hearing, DHS argued the immigration court
27 lacked jurisdiction over the bond determination because petitioner Osorto entered the
28 United States without admission or parole, and therefore was ineligible for a bond

3

1 hearing pursuant to 8 U.S.C. § 1225(b). *Id.* ¶ 9. The immigration court agreed it did not
2 have jurisdiction over a custody redetermination hearing because petitioner was subject
3 to detention pursuant to Immigration and Nationality Act ("INA") § 235(b)(2)(A),[1] and
4 denied the request. *Id.* ¶ 10, Ex. E.

     On July 17, 2025, after a conference, respondents indicated they would "promptly request" that petitioner Osorto receive an expedited bond hearing and would agree that there was jurisdiction for a bond hearing for him. *See* docket no. 106. That same day, DHS filed a motion to schedule a bond hearing for petitioner, which was rejected as "incorrectly filed." Alarcon Decl. ¶ 3, Exs. A-B.

     On July 18, 2025, petitioner filed a renewed motion for bond redetermination hearing, and respondent filed a motion to schedule bond hearing in which it expressly agreed there was jurisdiction to hold a bond hearing in this matter.[2] *Id.* ¶¶ 4-5, Ex. C-D; *see* Supp. Tolchin Decl., Ex. F.

     On July 21, 2025, petitioner Osorto filed the instant ex parte application for relief from immigration custody. Docket no. 111. Respondents opposed the application on the grounds that it undercut the immigration court's authority to hold a bond hearing, both petitioner's renewed motion for a bond hearing and respondents' motion to schedule a bond hearing were pending in the immigration court, and petitioner's stated health concerns were conflicting and limited. Docket no. 113.

     On July 23, 2025, the immigration court denied the parties' renewed motions for a bond hearing on the grounds that DHS failed to allege any new facts or explain how the immigration court would have jurisdiction. Supp. Tolchin Decl., Ex. F. That same day, the parties participated in a telephone conference with the court. The court ordered the

---

[1]     INA § 235 is codified at 8 U.S.C. § 1225.

[2]     Although counsel for respondents was informed DHS did not file the renewed motion to schedule a bond hearing on July 18, 2025 due to a clerical processing issue (Alarcon Decl. ¶ 4), the immigration court deemed it filed on that day. *See* Supp. Tolchin Decl., Ex. F.

parties to provide further briefing in light of the immigration court's July 23, 2025 denial of the renewed motion for a bond hearing, which they did. Docket nos. 125, 126.

## III.
## DISCUSSION

Petitioner Osorto contends DHS is arbitrarily detaining him. Petitioner argues that he withdrew his application for a TRO, and also agreed to hold briefing in abeyance, because of respondents' representations they would not transfer him and he is entitled to a bond hearing before the immigration court. But DHS subsequently argued to the immigration court it lacked jurisdiction to conduct such a bond hearing, and then changed its position again. Petitioner argues respondents continue to set forth these inconsistent opinions, thereby causing petitioner to remain in detention where his health has been suffering.

### A.   The Magistrate Judge May Decide This Matter

Before addressing the merits of the application, the court must determine whether this application concerns a dispositive matter that must be decided by a district judge rather than a magistrate judge.

"'The power of federal magistrate judges is limited by 28 U.S.C. § 636.'" *Mitchell v. Valenzuela*, 791 F.3d 1166, 1168 (9th Cir. 2015) (quoting *Estate of Conners by Meredith v. O'Connor*, 6 F.3d 656, 658 (9th Cir. 1993). Magistrate judges may hear and determine non-dispositive matters, but, absent consent, may only issue a recommended disposition for dispositive matters. Fed. R. Civ. P. 72 (implementing 28 U.S.C. § 636); *CPC Pat. Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 807 (9th Cir. 2022) ("[A] magistrate judge may not issue binding rulings on case-dispositive matters without the parties' consent.").

Section 636(b)(1)(A) lists matters that are dispositive and may not be decided by a magistrate judge without the parties' consent (28 U.S.C. § 636(b)(1)(A)); however, the list is not exhaustive. *See Flam v. Flam*, 788 F.3d 1043, 1046 (9th Cir. 2015). To determine whether a motion is dispositive, the court must take a "functional approach that

1  looks to the effect of the motion, in order to determine whether it is properly
2  characterized as dispositive or non-dispositive of a claim or defense of a party." *Id*.
3  (citation modified).  "A decision that effectively denies 'the ultimate relief sought' by a
4  party or disposes of 'any claims or defenses' is dispositive." *CPC Pat. Techs. Pty Ltd.*,
5  34 F.4th at 807 (quoting *SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1260 (9th Cir.
6  2013)).

7  Here, an order of release would not be dispositive because it neither grants the
8  "ultimate relief" sought in the case nor disposes of claims.  Petitioner's Fourth
9  Amendment and due process claims remain since petitioner may continue to be subject to
10 stops and detention.  Further, petitioner remains vulnerable to being removed from the
11 United States without the procedures identified in the INA.

12 **B.    This Court Has Jurisdiction**

13 Respondents' arguments against the ex parte application are unclear.  Respondents
14 note the immigration court, in its July 23, 2025 order, determined it has no jurisdiction to
15 hold a bond hearing in this matter.  Supp. Opp. at 1.  Nevertheless, respondents assert, in
16 wholly conclusory fashion, that the ex parte application should be denied because the
17 immigration courts, not district courts, are the appropriate forum for bond determinations.
18 *Id.*  Respondents make no other arguments and cite no legal authority.  Instead,
19 respondents direct the court to the government's brief in opposition to an application for a
20 TRO filed in *Bautista v. Santacruz, Jr.*, case no. 5:25-cv-01873-SSS-BFM, and suggest
21 this court should wait for the resolution of the application for a TRO in *Bautista* before
22 issuing an order here because that case raises parallel legal issues.  *See id.*  As to the latter
23 argument, after respondents filed their supplemental opposition, the court granted the
24 TRO application in *Bautista*.

25 Because respondents' supplemental opposition brief consists solely of the
26 conclusory argument that the immigration court is the proper forum for bond hearings
27 and refers the court to the government's opposition brief in *Bautista*, the court assumes
28 respondents are: (1) arguing the district court lacks the inherent authority to grant bond;

6

and (2) raising the same jurisdiction arguments here as raised in *Bautista*. In *Bautista*, the petitioners sought, and were granted, a TRO requiring the government to release them from custody or to provide them with an individualized bond hearing before an immigration judge within seven days of the issuance of a TRO. *See* case no. 5:25-cv-01873-SSS-BFM, docket nos. 5, 14. In its opposition, the government argued district courts lack jurisdiction to review petitioner's claims under 8 U.S.C. § 1252 and any such claims must be raised before a court of appeals, not a district court. *See* Supp. Tolchin Decl., Ex. G ("*Bautista* Opp.") at 6-10. The court in *Bautista* rejected this jurisdictional argument. *See Baustista*, case no. 5:25-cv-01873, docket no. 14 at 4-6. The District Judge in this case too has already rejected the essentially same jurisdictional arguments by respondents in its Order Granting TRO. *See* docket no. 87 at 31-33. Nevertheless, given the different contexts, the court addresses the arguments as follows.

      1.    **<u>District Courts Have the Inherent Authority to Grant Bail in Habeas Proceedings</u>**

Petitioner Osorto argues the court has the inherent authority to set bail pending the adjudication of a habeas petition in the immigration context. Ex Parte App. at 5. Respondents argue bond hearings are properly held before the immigration court, but do not expressly disagree with petitioner's contention that district courts have the inherent authority to set bail. Opp. at 2-3; Supp. Opp. at 1.

Although the Ninth Circuit has "not yet decided whether district courts have the authority to grant bail pending resolution of a habeas petition," other Circuit Courts of Appeals have recognized such inherent authority exists. *U.S. v. McCandless*, 841 F.3d 819 (9th Cir. 2016); *see Hall v. San Francisco Super. Ct.*, 2010 WL 890044, at *2 (N.D. Cal. Mar. 8, 2010) (listing circuit courts that have concluded district courts possess the authority to release a prisoner on bail pending resolution of the habeas petition); *see, e.g., Mapp v. Reno*, 241 F.3d 221, 223 (2d Cir. 2001) ("[T]he federal courts have the same inherent authority to admit habeas petitioner to bail in the immigration context as they do in criminal habeas cases."); *U.S. v. Kelly*, 790 F.2d 130, 139 (D.C. Cir. 1986) (court has

the inherent power to grant bail or release); *Cherek v. U.S.*, 767 F.2d 335, 337 (7th Cir. 1985) (noting there is abundant authority that district courts have inherent power to grant bail in habeas proceedings); *Woodcock v. Donnelly*, 470 F.2d 93, 94 (1st Cir. 1972) (district courts have the power to admit to bail pending determinations of habeas petitions). And both the Ninth Circuit and district courts within the circuit have exercised such authority and laid out a standard for such authority, noting that any authority to grant bail pending resolution of a habeas petition is extremely limited and "reserved for extraordinary cases involving special circumstances or a high probability of success." *McCandless*, 841 F.3d at 822 (citation modified); *see, e.g., Nadarajah v. Gonzales,* 443 F.3d 1069 (9th Cir. 2006) (granting immediate release of immigration detainee subject to certain conditions); *Zepeda Rivas v. Jennings*, 465 F. Supp. 3d 1028, 1036 (N.D. Cal. 2020) (noting inherent power of federal courts to release habeas petitioners on bail in extraordinary cases); *U.S. v. McShane*, 2016 WL 3566193, at *3 (D. Haw. Jun. 27, 2016) (noting other Circuit Courts of Appeals and the majority of the district courts in the Ninth Circuit have found district courts have the authority to grant bail pending a determination of a 28 U.S.C. § 2255 motion).

Therefore, the court finds it has the inherent authority to grant bail pending resolution of a habeas petition in the immigration context.

### 2. Section 1252 Does Not Deprive the Court of Jurisdiction Here

#### a. Section 1252(g)

The question then is whether Congress has stripped the district courts of jurisdiction here. Respondents appear to argue § 1252(g) deprives the court of jurisdiction over this matter. *See Bautista* Opp. at 6-7. Section 1252(g) takes away the court's jurisdiction to hear any claim "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under chapter 12 of the INA. 8 U.S.C. § 1252(g). Respondents contend detention during removal proceedings arises from the decision to commence such proceedings and cite some district courts reaching that same conclusion. *See Bautista*

Opp. at 6-7. But since those cases, the Supreme Court has clarified that the language of § 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions, but instead refers "to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 138 S. Ct. 830, 200 L. Ed. 2d 122 (2018) (citing *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482-83, 119 S. Ct. 936, 142 L. Ed. 2d 940 (1999)). Whether petitioner should be granted bond is not one of the three actions specified by § 1252(g). Section 1252(g) therefore does not deprive the court of jurisdiction to decide a bond application.

        **b.**     <u>**Sections 1252(a)(5) and 1252(b)(9)**</u>

Respondents contend the channeling provisions of § 1252(b)(9), particularly when read in conjunction with § 1252(a)(5), deprive the court of jurisdiction. *Bautista* Opp. at 8-10. Relying on *J.E.F.M. v. Lynch*, 837 F.3d 1026 (9th Cir. 2016), respondents argue these sections indicate that any issue arising from any removal-related activity, including detention, can be reviewed only through the petition for review process in a circuit court. *See id.*

The INA sets forth jurisdictional limitations in § 1252, which concerns the judicial review of final orders of removal. *See* 8 U.S.C. § 1252. Section 1252(b)(9) states

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9). Section 1252(a)(5) states in relevant part:

9

> [A] petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter.

8 U.S.C. § 1252(a)(5).

As the District Judge already determined in this case (*see* docket no. 87 at 31-32), the binding authority holds that § 1252(b)(9) is a "targeted" and "narrow" provision. *Gonzalez v. U.S. Immigr. and Customs Enf't*, 975 F.3d 788, 810 (9th Cir. 2020); *see also J.E.F.M.*, 837 F.3d at 1032 ("claims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9)"). The question "is not whether *detention* is an action taken to remove an alien but whether *the legal questions* in this case arise from such an action." *Jennings*, 583 U.S. at 294, n.3. Although "[it] may be argued" that detention arises from the commencement of removal proceedings, "this expansive interpretation of § 1252(b)(9) would lead to staggering results." *Id.* at 293. Thus, the statute "does not present a jurisdictional bar" when those seeking redress "are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined." *Id.* at 294 (Alito, J. plurality); *see also id.* at 355 (Breyer, J., dissenting) (challenge to detention without bail is unaffected by § 1252(b)(9)); *see Gebreweldi v. Barr*, 2020 WL 13017241, at *1 (9th Cir. May 1, 2020) ("district courts retain jurisdiction [] to consider habeas challenges to immigration detention if they are sufficiently independent of the merits of the removal order").

Here, petitioner Osorto's challenge to his detention is separate from any removal proceedings. Indeed, the immigration regulations recognize that a bond determination is "separate and apart from" deportation or removal proceedings. 8 C.F.R. § 1003.19(d). The court therefore has the jurisdiction to hear the claim because it is collateral to the removal process. *See, e.g., Castaneda v. Garland*, 562 F. Supp. 3d 545, 558-59 (C.D.

Cal. 2021) (§ 1252(b)(9) does not bar court from reviewing petitioner's claim that defendants violated the law by rejected her motion for a bond hearing at the Los Angeles immigration court); *Torosyan v. Nielsen*, 2018 WL 5784708, at *3-*5 (C.D. Cal. Sept. 27, 2018) (Section 1252(b)(9) did not strip court of jurisdiction to hear challenge to decision denying him bail).

C.      **Release on Bond Is Warranted**

As discussed above, the power to grant bond in a habeas case is extremely limited and reserved for extraordinary cases involving special circumstances or a high probability of success. *McCandless*, 841 F.3d at 822; *see Mapp*, 241 F.3d at 226 (bail should only be granted when "extraordinary [] circumstances exist which make the grant of bail necessary to make the habeas relief effective."). Examples of "special circumstances" include "raising of substantial claims upon which the [petitioner] has a high probability of success, a serious deterioration of health while incarcerated, and unusual delay in the appeal process." *Salerno v. U.S*, 878 F.2d 317 (9th Cir. 1989).

Petitioner Osorto contends this case constitutes an exceptional case because of his reliance on respondents' initial representations and their subsequent inconsistent positions. Petitioner withdrew his application for a TRO based on respondents' representations. But despite respondents' agreement that petitioner is entitled to a bond hearing and that the immigration court has jurisdiction to preside over such a hearing, DHS reversed course and argued to the immigration court that it lacked jurisdiction to grant bond. Tolchin Decl. ¶ 9; *see* Opp. at 1 and docket no. 14. And while respondents agreed to request a new bond hearing and again conceded jurisdiction, the immigration court again denied the request because respondents did not allege new facts and failed to explain how the immigration court has jurisdiction. Supp. Tolchin Decl., Ex. F. Petitioner further argues he is experiencing health issues that persist despite some medical treatment. Ex Parte App. at 9; *see* Tolchin Decl., Ex. F (Declaration of Michael Caleb Soto) ¶¶ 3, 5. Petitioner had a blood pressure reading of 190 and is experiencing dizziness, headaches, confusion, and burned, peeling skin. *Id.*

Here, the court agrees these facts reflect special and unusual circumstances. First, respondents' inconsistent arguments caused petitioner to alter his legal strategy and may have prevented petitioner from being released on bond by the immigration court, even though respondents concede petitioner should receive a bond hearing and the immigration court has jurisdiction to make such a determination.[3] Petitioner first withdrew his TRO application concerning transfer outside this district, and then – more significantly – agreed to hold off briefing the case based on respondents' representation to him and the court that he would receive a bond hearing. But DHS's reversal at the first immigration court hearing resulted in the immigration court declining to reach the merits of a bond redetermination, even upon reconsideration. Moreover, although it is a close call whether petitioner Osorto's medical needs cross the threshold to extraordinary, his reported symptoms – including dizziness, headaches, confusion, and a blood pressure reading of 190 – are undoubtedly serious and at present do not appear to be controlled with medication.[4] Thus, on balance, considering respondents' actions denying him a bond hearing to which they have at times acknowledged he is entitled and petitioner's serious health needs, this is an extraordinary case involving special circumstances warranting bond. Further, since the immigration court has twice concluded it lacks jurisdiction to hold a bond hearing for petitioner Osorto, this is not a matter than may be referred to the immigration court to decide.

---

[3] The court notes here that although at the first immigration court hearing respondent DHS argued the immigration court lacked jurisdiction over a bond redetermination hearing pursuant to § 1225(b)(2), respondents have not made the same argument here so the statutory basis for petitioner's detention is unclear to the court.

[4] Indeed, according to the American Heart Association, NIH, and Cleveland Clinic, a systolic blood pressure of 180 or higher requires immediate medical care. *See* https://www.heart.org/en/health-topics/high-blood-pressure/understanding-blood-pressure-readings; https://www.nhlbi.nih.gov/health/high-blood-pressure; and https://my.clevelandclinic.org/health/diseases/4314-hypertension-high-blood-pressure.

Before ordering release, however, the court must additionally consider whether petitioner Osorto is a danger to the community or a flight risk. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1068 (9th Cir. 2008). Here, petitioner has provided evidence that he is neither. *See* Tolchin Decl, Ex. C. Petitioner has strong ties to the community and is a plaintiff in the underlying action. *See id.* And while petitioner has a criminal history, his two convictions are for only one infraction in 2018 and one misdemeanor in 2017. *See id.*, Ex. D. Respondents do not dispute the record and appear to concede petitioner is neither a danger to the community nor a flight risk.

Accordingly, the court orders that petitioner be released from custody upon the posting of a $5,000 bond, and with the condition that he be placed on location monitoring with an ankle monitor.

**D.     This Order Will Not Be Stayed**

The court has considered sua sponte whether it should stay this order for a short time pending any request for the District Judge to review it. Given petitioner's serious health issues, the court will not stay the order.

## IV.
## CONCLUSION

IT IS THEREFORE ORDERED that petitioner Osorto's ex parte application for release (docket no. 111) is GRANTED. Petitioner Carlos Osorto shall be immediately released from immigration custody subject to the posting of a $5,000 bond, and subject to the condition that he be placed on location monitoring with an ankle monitor.

Dated: July 30, 2025

SHERI PYM
United States Magistrate Judge

13