BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

TIBERIUS DAVIS
SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General

JONATHAN K. ROSS
Senior Litigation Counsel
STEPHANIE L. GROFF
JASON K. ZUBATA
ANIELLO DESIMONE
JACOB A. BASHYROV
Trial Attorneys
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-7662
Email: Jonathan.K.Ross@usdoj.gov

*Counsel for Defendants*

BILAL A. ESSAYLI
Acting United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
ALEXANDER L. FARRELL (SBN 335008)
PAULINE H. ALARCON (SBN 345785)
Assistant United States Attorneys
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Tel: (213) 894-5557 | 3992
    E-mail:    Alexander.Farrell@usdoj.gov
                    Pauline.Alarcon@usdoj.gov

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PEDRO VASQUEZ PERDOMO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*, <br><br> Defendants. | No. 2:25-cv-05605-MEMF-SP <br><br> **DEFENDANTS' OPPOSITION TO INTERVENORS' JOINDER IN MOTIONS FOR PRELIMINARY INJUNCTIONS [ECF 147]** <br><br> Hearing Date:  September 24, 2025 <br> Hearing Time:  9:00 a.m. <br> Location:      First Street Courthouse <br>                     350 West First Street <br>                     Los Angeles, CA 90012 <br>                     Courtroom 8B <br>                     8th Floor <br><br><br> Hon. Maame Ewusi-Mensah Frimpong <br> United States District Judge |

Intervenors' joinder, ECF No. 147, asks the Court to do three things the law forbids: convert a Fourth Amendment dispute into a municipal grievance, enjoin the federal government on behalf of nonparties, and rewrite the reasonable suspicion standard into categorical rules. Each defect is independently dispositive, and in combination they foreclose the joinder.

As a threshold matter, Fourth Amendment rights are personal and may not be asserted vicariously by cities, organizations, or anyone else. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-11 (1983); *Alderman v. United States*, 394 U.S. 165, 174 (1969); *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978). The same rule defeats Intervenors' effort to litigate on behalf of unnamed residents. Nor may Intervenors rely on diffuse, downstream "community impacts" to manufacture a concrete, imminent injury to themselves. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409-16 (2013). The joinder adds no plaintiff with standing to obtain prospective relief and therefore cannot expand this Court's jurisdiction.

Regardless of Intervenors' lack of standing, their joinder fails on the merits. Fourth Amendment jurisprudence remains what it has long been: a totality-of-the-circumstances inquiry that permits brief investigative stops on reasonable suspicion—a "low bar" satisfied by specific, articulable facts and rational inferences. *United States v. Sokolow*, 490 U.S. 1, 7-8 (1989); *United States v. Arvizu*, 534 U.S. 266, 273-75 (2002); *United States v. Brignoni-Ponce*, 422 U.S. 873, 884-86 (1975). The record shows training pegged to that standard: federal law enforcement officers conduct targeted operations grounded in intelligence and lawful consensual encounters—often accompanied by conduct such as unprovoked flight that the Supreme Court recognizes as pertinent. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *Florida v. Bostick*, 501 U.S. 429, 434-35 (1991). Against that record, Intervenors offer no evidence of an officially sanctioned practice of suspicionless stops and no basis to impose the kind of categorical exclusions of relevant factors that *Arvizu* squarely rejects. The law requires a holistic appraisal, not categorical exclusions.

A preliminary injunction is "extraordinary" relief "never awarded as of right." *Winter v. NRDC*, 555 U.S. 7, 20 (2008). The joinder falters on each of the *Winter* factors: there is no likelihood of success under the totality-of-the-circumstances standard, no imminent, non-speculative, irreparable injury to Intervenors themselves, and no public interest in sidelining lawful enforcement based on anecdotes and conjecture. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Because Intervenors lack standing, fail on the

merits, and cannot enlarge the permissible scope of relief, their request for joinder should be denied.

## BACKGROUND AND PROCEDURAL POSTURE

Intervenors seek to join Plaintiffs' effort to convert the Court's July 11 Order, ECF No. 87, into a preliminary injunction that would regulate on-the-ground immigration stops across the Central District. *See* ECF Nos. 127 & 128. Defendants oppose that request on standing, merits, scope, and public-interest grounds. *See* ECF Nos. 168, 170. In their joinder, Intervenors seek no distinct remedy and assert no new claim. *See generally* Mot. Instead, they contend that the presence of municipal parties supposedly justifies universal relief because cities allegedly experience district-wide effects. That repackaging does not change who has Article III standing to seek an injunction, does not expand the Court's equitable authority, and does not alter the Fourth Amendment merits that govern likelihood of success. As a result, the joinder rises and falls with Plaintiffs' motion.

Intervenors group their alleged municipal harms into three categories: reallocations of public-safety resources, economic effects, and reduced utilization of healthcare or benefits. They assert that federal operations are "not limited to people who appear Latino," Mot. at 12, and decry "warrantless raids" conducted "without any notice to local law enforcement," *id*. at 17—even though multiple city officials acknowledge that the California Values Act (SB 54), codified at Cal. Gov't Code § 17.25, prohibits them from sharing information with or coordinating alongside federal immigration enforcement. *See, e.g*., ECF Nos. 147-13 ¶ 4; 147-14 ¶ 5; 147-15 ¶¶ 5-6; 147-20 ¶ 3; 147-23 ¶¶ 5, 7. The declarations themselves largely describe discretionary reallocations (e.g., Los Angeles Police Department and Los Angeles Sheriff's Department expenditures and personnel deployments), third-party reactions (such as protests, impersonators, and resident perceptions), and preliminary or seasonal revenue variances. *See* ECF Nos. 147-4 ¶ 5; 147-11 ¶¶ 7-8; 147-5 ¶ 5; 147-6 ¶ 5; 147-25 ¶¶ 4-5; 147-26 ¶¶ 6-7; 147-3 ¶¶ 4-6.

As for the government, the record confirms that federal officers in this District are trained on, and apply, the totality-of-the-circumstances framework for investigative stops; that consensual encounters remain a lawful and essential tool in targeted operations; and that person-specific conduct, operation-specific intelligence, and time-and-place factors may properly inform reasonable-suspicion assessments. *E.g*., Parra Decl. ¶¶ 8-9, 17 (ECF No. 170-2); Quinones Decl. ¶¶ 5-7 (ECF No. 170-3).

**ARGUMENT**

The Court should deny the motion. Plaintiffs' anecdotes do not establish any policy or ratified practice of suspicionless stops, and Intervenors' joinder adds nothing to that evidentiary picture. The bid for district-wide restraints therefore remains untethered to a concrete showing of standing or a likelihood of success on the merits, and it fails for the same reasons set out in Defendants' opposition, ECF No. 170. Accordingly, the Court should evaluate the joinder on the same record and under the same standards that govern Plaintiffs' original motion.[1]

**I.    Standard of Review**

Injunctive relief "is an extraordinary and drastic remedy," *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (internal quotation marks and citation omitted), that is "never awarded as of right," *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (internal quotation marks and citation omitted). Thus, this relief "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Lopez*, 680 F.3d at 1072 (internal quotation marks and citation omitted; emphasis in original). To prove their entitlement to such relief, Plaintiffs (and those who join them) must establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. Critically, these are independent requirements; failure on any one is fatal to preliminary relief. Under the Ninth Circuit's sliding scale test for preliminary injunctive relief, "serious questions going to the merits" and "a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

Joinder does not relax Article III. Every party seeking forward-looking equitable relief must show a concrete, imminent threat of injury to itself, fairly traceable to Defendants, and likely redressable. *See Lyons*, 461 U.S. at 101-11; *Clapper*, 568 U.S. at 409-16. And a federal court's equitable power extends only to complete relief for the parties before it, not the world at large. *CASA*, 145 S.Ct. at 2557-61;

---

[1] Defendants incorporate by reference their Fourth Amendment preliminary injunction opposition, ECF No. 170 and, as pertinent to scope, their opposition to class certification, ECF No. 159.

*Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).

Although Intervenors purport to "join Plaintiffs' motion in full," Mot. at 11, 31, their joinder only briefs Fourth Amendment theories and advances no independent Fifth Amendment argument. Issues not "specifically and distinctly" argued are waived; passing allusions do not preserve them. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994). To the extent Plaintiffs elsewhere press detainee-processing or attorney-access contentions under the Fifth Amendment, Intervenors have forfeited those grounds for purposes of their joinder.

**II.     Intervenors Cannot Assert Others' Fourth Amendment Rights**

Intervenors do not contend that they personally face an imminent seizure in violation of the Fourth Amendment. Instead, they assert that their municipal interests will be affected by federal operations conducted in the district. That is insufficient to obtain a forward-looking injunction. The Supreme Court has emphasized that the plaintiff seeking a prospective order must demonstrate a real and immediate threat that it will again be wronged in a similar way. *Lyons*, 461 U.S. at 105-06, 111. The suggestion that municipal interests may be implicated by enforcement operations directed at third parties does not satisfy that standard.

More fundamentally, Fourth Amendment rights are personal. They are not subject to vicarious assertion by organizations, municipalities, or other third parties. *Alderman*, 394 U.S. at 174; *Rakas*, 439 U.S. at 133-34. The law does not permit cities to obtain forward-looking Fourth Amendment injunctions to protect unnamed persons from hypothetical future stops. The Court should reject any attempt to repackage generalized community concerns as Article III injury or to invoke *parens patriae* theories against the federal government. *Massachusetts v. Mellon*, 262 U.S. 447, 485-86 (1923).

To the extent Intervenors hint at associational theories, those too fail because they have not identified a member with a concrete and imminent threat of being subjected to a stop without reasonable suspicion. *Summers v. Earth Island Institute*, 555 U.S. 488, 497-99 (2009). The declarations submitted by Plaintiffs describe past, fact-specific encounters and do not show a real and immediate threat of repetition to any identified person. Intervenors' evidence adds nothing to change that analysis. For the same reasons discussed in Defendants' principal opposition, ECF No. 170, the Court should deny prospective relief for lack of jurisdiction. The joinder does not change that result.

**III.    Intervenors' Joinder Fails *Winter* on Every Element**

     **A.     No Policy of Suspicionless Stops; Totality of the Circumstances Controls**

The Fourth Amendment permits brief investigative stops when an officer has reasonable suspicion supported by "specific and articulable facts" and the rational inferences drawn from them. *Brignoni-Ponce*, 422 U.S. 873, 884-86 (1975). That standard is "considerably less than proof of wrongdoing by a preponderance of the evidence," *Sokolow*, 490 U.S. at 7-8, and it is evaluated under the totality of the circumstances rather than through rigid checklists or exclusions. *Arvizu*, 534 U.S. at 273-75.

On this record, Plaintiffs have not established—and Intervenors do not even attempt to establish—that Defendants have a policy or ratified practice of conducting suspicionless stops. To the contrary, the Court's July 11 Order expressly noted it could not identify any official policy authorizing reliance solely on the challenged factors. *See* ECF No. 87 at 45 n.33. The evidence shows the opposite: officers receive training on the governing constitutional standards and on applicable statutory and regulatory authorities; they carry out targeted operations informed by intelligence, surveillance, and interagency coordination; and they assess a range of permissible considerations, including person-specific conduct, operation-specific intelligence, and relevant time-and-place factors. *E.g.*, Parra Decl. ¶¶ 8-9, 17 (ECF No. 170-2); Quinones Decl. ¶¶ 5-7 (ECF No. 170-3). The law likewise distinguishes consensual encounters from seizures that require reasonable suspicion. *See Bostick*, 501 U.S. at 434-35. Plaintiffs' own submissions describe such consensual interactions as well as unprovoked flight or other evasive behavior—facts that, far from proving a policy of suspicionless stops, support reasonable suspicion under settled precedent. *See Wardlow*, 528 U.S. at 124. Plaintiffs' anecdotes, at most, describe fact-bound encounters that cannot justify rewriting a totality standard into per se rules.

Nor may the injunction Plaintiffs seek impose per se limits on what officers can consider. The Fourth Amendment does not carve out categorical exclusions that bar reliance on otherwise relevant contextual facts. *Arvizu* expressly rejected frameworks that discount individual factors in isolation and reiterated that even facts that might carry little weight alone may collectively establish reasonable suspicion. 534 U.S. at 272-75. Plaintiffs have not shown that any challenged encounter rested solely on a handful of disfavored considerations, and the evidentiary record—unchanged by the joinder—does not support the conclusion that Defendants ignore the totality-of-the-circumstances standard. Intervenors'

own filing concedes that federal operations were "not limited to people who appear Latino," Mot. at 12, undermining any suggestion of a categorical, appearance-based practice and further confirming the case-by-case, totality-driven nature of the encounters they describe. The Constitution requires reasoned synthesis, not categorical subtraction.

### B. Intervenors' Irreparable-Harm Showing Fails Under *Winter*

Intervenors likewise fail to demonstrate irreparable harm. *Winter* requires a likelihood—not a possibility—of imminent, non-speculative injury that cannot be remedied by money damages. 555 U.S. at 22-24. The declarations largely document voluntary reallocations and third-party reactions: LAPD and LASD cite post-operation "fallout" costs and personnel deployments, and agencies recount calls about masked individuals, protests, and impersonators. *See* ECF Nos. 147-4 ¶ 5 (LAPD "10,000 personnel hours" and $2.7 million since June 6, 2025); 147-11 ¶¶ 7-8 (LASD protocol changes and added costs). Those self-directed choices and intervening actions break causation and undercut redressability. *See Clapper*, 568 U.S. at 409-16. The joinder supplies no controlled, admissible analysis tying any particular municipal metric to a demonstrated pattern of unconstitutional seizures, as opposed to seasonality, broader economic trends, labor-market shifts, or contemporaneous local policy choices. *See Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009).

Intervenors' fiscal claims are likewise monetary or preliminary: a 1.88% transient-occupancy-tax dip, tentative projections that business-tax effects "cannot be determined at this time" pending filings, seasonal transit declines, parks participation variances, and event cancellations. *See* ECF Nos. 147-3 ¶¶ 4-6; 147-26 ¶¶ 6-7; 147-6 ¶ 5; 147-25 ¶¶ 4-5. Purely economic injuries are not irreparable, and these submissions offer no controlled, admissible analysis isolating alleged unconstitutional seizures from seasonality, macroeconomic conditions, labor-market shifts, or local policy choices. *See Los Angeles Mem'l Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1202 (9th Cir. 1980); *Johnson*, 572 F.3d at 1083.

The healthcare assertions are similarly conclusory: LA County DPH attributes a 25% drop in patients during part of June 2025 to "fear and anxiety," but correlation is not causation, and no declaration ties missed appointments to unconstitutional seizures rather than generalized concerns. *See* ECF Nos. 147-9 ¶¶ 6, 8, 15; 147-10 ¶ 5. And in any event, Intervenors' preferred district-wide decree would not redress these derivative municipal effects; *CASA* makes clear equitable relief must be confined to the

parties and tailored to their own injuries. 145 S.Ct. at 2557-61.

**C.   Equities and Public Interest Weigh Decisively Against an Injunction**

The balance of equities and the public interest, which merge when the government is a party, do not favor an injunction. *Nken*, 556 U.S. at 435. Intervenors' refrain that "it is always in the public interest to prevent constitutional violations" presupposes a merits showing they have not made. Mot. at 28 (quotation omitted). On the other side of the scale lie concrete, immediate harms: a sweeping, district-wide decree would chill routine, lawful field operations by injecting uncertainty into whether officers may consider location, time-and-place intelligence, or unprovoked flight under the totality-of-the-circumstances test. *E.g.*, Parra Decl. ¶¶ 8-9, 17; Quinones Decl. ¶¶ 5-7. It would compromise officer and public safety by discouraging brief investigative detentions in fluid situations. *E.g.*, Parra Decl. ¶¶ 5, 16-21; Quinones Decl. ¶¶ 3, 7. It would also displace judgments Congress committed to the Executive, risking fragmentation of national immigration enforcement and conflicting obligations across jurisdictions. *See Winter*, 555 U.S. at 24. The public interest favors correct application of the Fourth Amendment's totality standard, preservation of lawful federal discretion, and avoidance of vague "obey-the-law" decrees that invite contempt disputes without clarifying permissible conduct.

Intervenors' own declarations underscore why the equities and public interest do not favor a broad decree. California's SB-54 limits municipal coordination with federal immigration enforcement, and several cities confirm they neither share information nor assist operations. *See* ECF Nos. 147-13 ¶ 4; 147-14 ¶ 5; 147-15 ¶¶ 5-6; 147-20 ¶ 3; 147-23 ¶¶ 5, 7. The remaining harms are driven by third-party reactions—protests, impersonators, and residents' perceptions—not by any demonstrated pattern of unconstitutional seizures, and thus cannot tilt the equities toward sweeping relief. *See* Mot. at 18-20; ECF Nos. 147-11 ¶¶ 7-8; 147-12 ¶¶ 11, 14–15.

**IV.   Relief Must Be Party-Bound and Specific under *CASA* and Rule 65(d)**

Even if the Court were to disagree on standing or the merits, the requested scope still fails. The Supreme Court has made clear that equitable relief must afford complete relief to the parties before the Court, not to "everyone" potentially affected by challenged conduct. *CASA*, 145 S.Ct. at 2557-61. For the reasons explained above, Intervenors add no party with Article III standing to seek forward-looking Fourth Amendment relief, and their joinder cannot be leveraged to impose district-wide restraints on

nonparties. Remedies must redress the plaintiffs' own injuries, not restructure policy for nonparties. *See Gill v. Whitford*, 138 S.Ct. 1916, 1930 (2018).

Rule 65(d) independently requires that any injunction "state its terms specifically" and "describe in reasonable detail" the acts restrained or required. *See Schmidt*, 414 U.S. at 476. Decrees that merely paraphrase constitutional standards or command defendants to "obey the law" are impermissibly vague and unenforceable. *See Elend v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006); *EEOC v. AutoZone, Inc.*, 707 F.3d 824, 841 (7th Cir. 2013). As addressed above, the Fourth Amendment's reasonable-suspicion test is a totality-of-the-circumstances inquiry; it does not authorize categorical exclusions or per se rules excising otherwise relevant factors. *See Arvizu*, 534 U.S. 272-75. Any injunction that recites the Fourth Amendment in the abstract or bars officers from considering contextually relevant factors would violate both *CASA*'s limits on universality and Rule 65(d)'s specificity requirement.

If the Court nevertheless contemplates equitable relief, it should be confined to parties with standing and drafted with precision. Any order should make plain that lawful consensual encounters remain permissible; that officers may consider person-specific conduct, operation-specific intelligence, and time-and-place factors—including unprovoked flight—within the totality framework; and that the Court is not imposing categorical exclusions of otherwise relevant facts. Broader relief would contravene *CASA* and Rule 65(d) and risk ongoing judicial supervision of day-to-day field operations. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51, 360 (2011) (setting rigorous limits on classwide injunctive relief).

## CONCLUSION

For all these independent reasons—jurisdictional, merits, and scope—the Court should deny Intervenors' joinder.

Dated: August 29, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

TIBERIUS DAVIS
SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General

STEPHANIE L. GROFF
JASON K. ZUBATA
ANIELLO DESIMONE
JACOB A. BASHYROV
Trial Attorneys

*/s/ Jonathan K. Ross*
JONATHAN K. ROSS
Senior Litigation Counsel
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-7662
Email: Jonathan.K.Ross@usdoj.gov

*Counsel for Defendants*

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies that this filing is less than twenty-five (25) pages, which complies with L.R. 11-6.1 and this Court's Standing Order, Part VIII.C.


Dated: August 29, 2025                    Respectfully submitted,


                                          /s/ Jonathan K. Ross
                                          JONATHAN K. ROSS
                                          Senior Litigation Counsel
                                          Office of Immigration Litigation
                                          U.S. Department of Justice

                                          *Counsel for Defendants*