STACY TOLCHIN (SBN 217431)
*stacy@tolchinimmigration.com*
LAW OFFICES OF STACY TOLCHIN
776 E. Green St., Suite 210
Pasadena, CA 91101
Tel: 213-622-7450; Fax: 213-622-7233

MOHAMMAD TAJSAR (SBN 280152)
*mtajsar@aclusocal.org*
MAYRA JOACHIN (SBN 306065)
*mjoachin@aclusocal.org*
EVA BITRAN (SBN 302081)
*ebitran@aclusocal.org*
DAE KEUN KWON (SBN 313155)
*akwon@aclusocal.org*
STEPHANIE PADILLA (SBN 321568)
*spadilla@aclusocal.org*
DIANA SANCHEZ (SBN 338871)
*dianasanchez@aclusocal.org*
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017-4022
Tel: 213-977-5232; Fax: 213-201-7878

*Counsel for Stop/Arrest Plaintiffs*

(*Additional counsel listed on next page*)

MARK ROSENBAUM (SBN 59940)
*mrosenbaum@publiccounsel.org*
REBECCA BROWN (SBN 345805)
*rbrown@publiccounsel.org*
SOPHIA WRENCH (SBN 354416)
*swrench@publiccounsel.org*
RITU MAHAJAN (SBN 252970)
*rmahajan@publiccounsel.org*
GINA AMATO (SBN 215519)
*gamato@publiccounsel.org*
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Counsel for All Plaintiffs*

ANNE LAI (SBN 295394)
*alai@law.uci.edu*
UC IRVINE SCHOOL OF LAW
IMMIGRANT AND RACIAL JUSTICE
SOLIDARITY CLINIC
P.O. Box 5479
Irvine, CA 92616-5479
Tel: 949-824-9894; Fax: 949-824-2747

*Counsel for Stop/Arrest Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Pedro VASQUEZ PERDOMO; Carlos Alexander OSORTO; and Isaac VILLEGAS MOLINA; Jorge HERNANDEZ VIRAMONTES; Jason Brian GAVIDIA; LOS ANGELES WORKER CENTER NETWORK; UNITED FARM WORKERS; COALITION FOR HUMANE IMMIGRANT RIGHTS; IMMIGRANT DEFENDERS LAW CENTER, <br><br> Plaintiffs, <br><br> v. <br><br> Kristi NOEM, in her official capacity as Secretary, Department of Homeland | Case No.: 2:25-cv-05605-MEMF-SP <br><br> **MOTION FOR LIMITED, EXPEDITED DISCOVERY BASED ON DEFENDANTS' VIOLATIONS OF TEMPORARY RESTRAINING ORDER** <br><br> Date:  November 6, 2025 <br> Time: 10:00 a.m. <br> Place: Courtroom 8B <br><br> Hon. Maame Ewusi-Mensah Frimpong |

NOTICE OF MOTION AND MOTION FOR LIMITED, EXPEDITED DISCOVERY BASED ON DEFENDANTS' VIOLATIONS OF TRO, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*[Filed concurrently with: Proposed Order; Declaration of Sara Worth]*

Security; Todd M. LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; Rodney S. SCOTT, in his official capacity as Commissioner, U.S. Customs and Border Patrol; Michael W. BANKS, in his official capacity as Chief of U.S. Border Patrol; Kash PATEL, in his official capacity as Director, Federal Bureau of Investigation; Pam BONDI, in her official capacity as U.S. Attorney General; Ernesto SANTACRUZ JR., in his official capacity as Acting Field Office Director for Los Angeles, U.S. Immigration and Customs Enforcement; Eddy WANG, Special Agent in Charge for Los Angeles, Homeland Security Investigations, U.S. Immigration and Customs Enforcement; Gregory K. BOVINO, in his official capacity as Chief Patrol Agent for El Centro Sector of the U.S. Border Patrol; Jeffrey D. STALNAKER, in his official capacity as Acting Chief Patrol Agent, San Diego Sector of the U.S. Border Patrol; Akil DAVIS, in his official capacity as Assistant Director in Charge, Los Angeles Office, Federal Bureau of Investigation; Bilal A. ESSAYLI, in his official capacity as U.S. Attorney for the Central District of California,

Defendants.

JACOB S. KREILKAMP (SBN 248210)
*jacob.kreilkamp@mto.com*
JAMIE LUMA (SBN 331610)
*jamie.luma@mto.com*
SARA H. WORTH (SBN 341088)
*sara.worth@mto.com*
HENRY D. SHREFFLER (SBN 343388)
*henry.shreffler@mto.com*
MAGGIE BUSHELL (SBN 354048)
*maggie.bushell@mto.com*
KYLE A. GROVES (SBN 358085)
*kyle.groves@mto.com*
MUNGER, TOLLES & OLSON LLP
350 S. Grand Ave., 50th Floor
Los Angeles, CA 90071
Tel: 213-683-9100; Fax: 213-683-9100

*Counsel for Stop/Arrest Plaintiffs*

LAUREN MICHEL WILFONG*
*lwilfong@ndlon.org*
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Tel: 626-214-5689

*Counsel for Stop/Arrest Plaintiffs*

BREE BERNWANGER (SBN 331731)
*bbernwanger@aclunc.org*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel: 415-621-2493

*Counsel for Stop/Arrest Plaintiffs*

BRISA VELAZQUEZ OATIS
(SBN 339132)
*bvoatis@aclu-sdic.org*
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL
COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Tel: 619-398-4199

*Counsel for Stop/Arrest Plaintiffs*

MATTHEW J. CRAIG (SBN 350030)
*mcraig@heckerfink.com*
MACK E. JENKINS (SBN 242101)
*mjenkins@heckerfink.com*
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Tel: 212-763-0883; Fax: 212-564-0883

*Counsel for Access/Conditions Plaintiffs*

EDGAR AGUILASOCHO
(SBN 285567)
*eaguilasocho@farmworkerlaw.com*
MARTINEZ AGUILASOCHO LAW, INC.
900 Truxtun Ave, Suite 300
Bakersfield, CA 93301
Tel: 661-859-1174

*Counsel for Plaintiff United Farm Workers*

CARL BERGQUIST*
*cbergquist@chirla.org*
COALITION FOR HUMANE
IMMIGRANT RIGHTS
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

*Counsel for Plaintiff Coalition for Humane Immigrant Rights*

ALVARO M. HUERTA (SBN 274787)
*ahuerta@immdef.org*
BRYNNA BOLT (SBN 339378)
*bbolt@immdef.org*
ALISON STEFFEL (SBN 346370)
*asteffel@immdef.org*
IMMIGRANT DEFENDERS LAW
CENTER
634 S. Spring St., 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

*Counsel for Plaintiff Immigrant Defenders Law Center*

* Admitted pro hac vice

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on November 6, 2025 at 10:00a.m., before the Honorable Maame Ewusi-Mensah Frimpong, in Courtroom 8B, Eighth Floor, 350 West First Street, Los Angeles, CA, 90012, Plaintiffs Pedro Vasquez Perdomo, Carlos Alexander Osorto, Isaac Villegas Molina, Jorge Hernandez Viramontes, Jason Brian Gavidia, the Los Angeles Worker Center Network, United Farm Workers, and Coalition for Humane Immigrant Rights (collectively "Stop/Arrest Plaintiffs" or "Plaintiffs") will, and hereby do, respectfully move the court for an order granting limited, expedited discovery in light of Defendants' apparent violations of portions the Court's temporary restraining order relating to detentive stops (TRO). ECF 87.

Plaintiffs respectfully ask the Court to approve written discovery about training and guidance related to implementation of the TRO; factors supporting reasonable suspicion for detentive stops conducted by Defendants during certain post-TRO Home Depot and car wash operations; mechanisms for supervisory review and other actions Defendants have taken to implement, assess, and ensure compliance with the TRO; and a search of El Centro Border Patrol Sector Chief Gregory Bovino's electronic records concerning implementation of the TRO. Plaintiffs also seek to take four depositions, including the deposition of Chief Bovino. This limited discovery is needed to determine whether further action may be necessary to enforce the Court's TRO and to inform what additional measures, if any, may be needed to ensure compliance with any preliminary injunction the Court may issue.

Plaintiffs' motion is based on this Notice of Motion and Motion for Limited, Expedited Discovery Based on Defendants' Violations of the TRO, the accompanying Memorandum of Points and Authorities, the declarations and all exhibits in support of the same, including attachments, all pleadings and other

-1-

NOTICE OF MOTION AND MOTION FOR LIMITED, EXPEDITED DISCOVERY BASED ON DEFENDANTS' VIOLATIONS OF TRO, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

papers on file in this action, and all oral and documentary evidence that may be presented at the time of the hearing on this motion.

Pursuant to L.R. 7-3, the motion is made following conferences of counsel which took place with Defendants and Intervenors on August 15, August 21, and September 2, as well as additional e-mail correspondence between the parties. Plaintiffs have noticed this motion for November 6 as that was the earliest available motion hearing date on the Court's calendar; however, given the urgency of the matters discussed herein, Plaintiffs are concurrently filing an ex parte application shortening the briefing and hearing schedule that would allow the matter to be heard on September 24, together with Plaintiffs' motion for preliminary injunction, should the Court require oral argument. Plaintiffs have notified Defendants of their intent to file this motion and the motion to shorten time. Defendants oppose the motion. Intervenors do not oppose.

DATED:  September 2, 2025

UC IRVINE IMMIGRANT AND RACIAL JUSTICE SOLIDARITY CLINIC

By:  _____ */s/ Anne Lai* _____
Anne Lai
*Counsel for Stop/Arrest Plaintiffs*

-2-

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ....................................... 2

    A.    The Court's TRO and Defendants' subsequent appeal .......................... 2

    B.    Defendants' resumption of roving, unconstitutional patrols throughout this District ................................................................................. 4

        1.    August 3, 2025 – Paramount Home Depot ................................. 5

        2.    August 4, 2025 - Magnolia Car Wash ......................................... 5

        3.    August 6, 2025 - Westlake Home Depot ..................................... 6

        4.    August 7, 2025 - San Bernardino Home Depot .......................... 7

        5.    August 12, 2025 - Handy J Car Wash ......................................... 8

        6.    August 22, 2025 - Pasadena Car Wash ........................................ 9

    C.    Plaintiffs' efforts to meet and confer ..................................................... 11

III.    LEGAL STANDARD ........................................................................................ 13

IV.    ARGUMENT ...................................................................................................... 14

    A.    The record shows, at a minimum, significant questions going to noncompliance. ............................................................................................. 14

    B.    Plaintiffs' requested discovery is reasonable and appropriate. ............. 16

    C.    The Court should grant expedited discovery to aid in enforcement of its orders. ................................................................................................. 19

V.    CONCLUSION .................................................................................................... 20

-i-

NOTICE OF MOTION AND MOTION FOR LIMITED, EXPEDITED DISCOVERY BASED ON DEFENDANTS' VIOLATIONS OF TRO, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*10 PM Curfew v. Patil*,
   23-cv-02805-MEMF-MBK, Dkt. No. 41 ............................................................. 14

*A&M Records, Inc. v. Napster, Inc.*,
   284 F.3d 1091 (9th Cir. 2002) .......................................................................... 19

*Am. LegalNet, Inc. v. Davis*,
   673 F. Supp. 2d 1063 (C.D. Cal. 2009) ....................................................... 14, 16

*Apple Inc. v. Samsung Elecs. Co.*,
   No. 11-cv-01846-LHK, 2011 WL 1938154 (N.D. Cal. May 18,
   2011) ................................................................................................................ 19

*Armstrong v. Brown*,
   857 F. Supp. 2d 919 (N.D. Cal. 2012) .............................................................. 19

*Armstrong v. Brown*,
   939 F. Supp. 2d 1012 (N.D. Cal. 2013) ............................................................ 13

*California Dep't of Soc. Servs. v. Leavitt*,
   523 F.3d 1025 (9th Cir. 2008) .......................................................................... 13

*Fraihat v. U.S. Immigr. & Customs Enf't*,
   No. 19-cv-01546-JGB, 2020 WL 2758553 (C.D. Cal. May 15,
   2020) ...................................................................................................... 13, 16, 19

*JW Gaming Dev., LLC v. James*,
   544 F. Supp. 3d 903 (N.D. Cal. 2021) .............................................................. 19

*In re Lafayette Radio Elec. Corp.*,
   761 F.2d 84 (2d Cir. 1985) ............................................................................... 20

*Light Salt Invs., LP v. Fisher*,
   2013 WL 3205918 (S.D. Cal. June 24, 2013) ................................................... 18

*Meinhold v. U.S. Dep't of Def.*,
   34 F.3d 1469 (9th Cir. 1994) ............................................................................ 19

*Nat'l Res. Def. Council, Inc. v. Sw. Marine Inc.*,
  242 F.3d 1163 (9th Cir. 2001) ................................................................................20

*NobelBiz, Inc. v. Wesson*,
  No. 14CV0832 W(JLB), 2014 WL 1588715 (S.D. Cal. Apr. 18,
  2014) ........................................................................................................................16

*Praecipio Consulting, LLC v. Howser*,
  2025 WL 1084766 (N.D. Cal. Apr. 10, 2025) .................................................18, 20

*Shillitani v. United States*,
  384 U.S. 364 (1966) .................................................................................................13

*Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*,
  364 U.S. 642 (1961) .................................................................................................13

*Thomas v. Cnty. of Los Angeles*,
  978 F.2d 504 (9th Cir. 1992) ...................................................................................20

*Vasquez Perdomo v. Noem*,
  No. 25-4312, 2025 WL 2181709 (9th Cir. Aug. 1, 2025) ..........................................3

**RULES**

Fed. R. Civ. P. 26(d) ......................................................................................................19

Fed. R. Civ. P. 26(f) ...............................................................................................13, 14

Fed. R. Civ. P. 62(c)(1) .................................................................................................19

**CONSTITUTIONAL PROVISIONS**

Fourth Amendment ...............................................................................................2, 3, 16

NOTICE OF MOTION AND MOTION FOR LIMITED, EXPEDITED DISCOVERY BASED ON DEFENDANTS'
VIOLATIONS OF TRO, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This motion seeks limited, expedited discovery regarding recent enforcement actions that appear to violate the Court's July 11 temporary restraining order relating to detentive stops (TRO). ECF 87. The TRO plainly bars Defendants from making such stops based solely on four broad factors. *Id.* at 50-51. The order is clear, and it was endorsed by the Court of Appeals when Defendants sought an emergency stay on appeal. Data suggests that in the immediate aftermath of the TRO, there was a sharp decline in unlawful stops and arrests based on impermissible profiling. Defendants' own actions thus demonstrate that they were able to generally comply with the TRO and still proceed with lawful immigration enforcement in this District. However, beginning August 2, Defendants abruptly changed course and returned to carrying out raids, particularly at Home Depots and car washes, that bear all of the hallmarks of their unlawful operations earlier this summer. This conduct is intensifying and appears to be occurring on a regular basis.

A hearing on Plaintiffs' motion for preliminary injunction is scheduled for September 24, and the Court need not authorize Plaintiffs' requested discovery in order to rule on that motion. However, limited discovery is nevertheless warranted now to determine whether further action is necessary to enforce the TRO while it remains in place, and to determine whether any additional measures may be needed in the near term to ensure compliance with any preliminary injunction the Court may issue. The discovery Plaintiffs seek will shed light on the extent to which, and why, the challenged practices have resumed, who is responsible, and how compliance can be assured. The Court has the authority to grant such discovery pursuant to its inherent enforcement powers or, separately and alternatively, under the good cause standard for pre-Rule 26(f) conference discovery.

Plaintiffs first raised concerns with Defendants about their recent operations and compliance with the Court's TRO weeks ago. S*ee infra* Part I-C. Since then,

Defendants have had ample opportunity to provide Plaintiffs with any information they wanted Plaintiffs to consider, but no such information has been forthcoming. Plaintiffs cannot wait any longer. While the evidence may well already support a finding that Defendants are in violation of the TRO, Plaintiffs now ask for something more modest: an opportunity to swiftly investigate Defendants' compliance through the formal procedures provided by the Federal Rules. Given the record and ongoing injury to Plaintiffs and the putative class, granting Plaintiffs' request for discovery is an eminently reasonable next step.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Court's TRO and Defendants' subsequent appeal

On July 11, the Court issued a 52-page order concluding, inter alia, that Plaintiffs were likely to prevail on the merits of their Fourth Amendment claim regarding detentive stops and would face irreparable harm absent interim relief. *See* TRO at 36-47. The Court based this determination on extensive evidence showing that Defendants had adopted an officially sanctioned policy and practice of making such stops without an individualized assessment of reasonable suspicion. The Court temporarily enjoined Defendants from continuing its unconstitutional practices in the District, where Plaintiffs live and work. Specifically, the Court enjoined Defendants from relying "solely . . . alone or in combination," on apparent race or ethnicity, speaking Spanish or speaking English with an accent, location, and/or occupation to form reasonable suspicion for detentive stops. *Id.* at 50.

The Court's TRO was unequivocal that simply being present at a location, including a location where undocumented individuals had been encountered in the past, did not justify wholesale stops of individuals. Defendants had argued that "[c]ertain types of businesses, including car washes, ha[d] been selected for encounters because of past experiences" demonstrating that undocumented individuals "utilize and seek work at these locations." ECF 71-2 ¶ 7 ("Harvick Decl."); *see also* TRO Tr. 57:15-58:25, July 11, 2025 (counsel for Defendants

-2-

discussing car wash that was raided multiple times). The Court explained that this was insufficient for reasonable suspicion. *See* TRO Tr. 62:4-25 (observing that locations such as a "bus stop, car wash, tow yard" were places "where numerous people could be present" and not "necessarily associated with not having status"); TRO at 43 ("[K]nowledge that undocumented individuals use and seek work at car washes falls woefully short of the reasonable suspicion needed to target any particular individual at any particular car wash. The same is true of the other locations and other occupations at issue."). The Ninth Circuit similarly rejected Defendants' argument that presence in a location of the type at issue in this case can itself suffice for reasonable suspicion. *See Vasquez Perdomo v. Noem*, No. 25-4312, 2025 WL 2181709 (9th Cir. Aug. 1, 2025), at *18.

This Court moreover made clear that the encounters documented by Plaintiffs were seizures, not consensual encounters. TRO at 37-38. For example, the Court discussed the stop of Plaintiffs Vasquez Perdomo, Villegas Molina, and Osorto and explained that the sudden approach of unmarked vehicles, with men in masks with guns jumping out in what "felt like a kidnapping," was objectively coercive. *Id.* (internal citations omitted); *see also id.* (referencing evidence of numerous other incidents); *Vasquez Perdomo v. Noem*, No. 25-4312, 2025 WL 2181709, at *3 n. 4 (noting Defendants did not dispute this in their application for stay).

Defendants appealed this Court's TRO. ECF 89. Defendants also sought a stay of the Fourth Amendment TRO before this Court and in the Ninth Circuit. This Court denied a stay on July 17. ECF 108. With the exception of one clause, the Ninth Circuit denied a stay on August 1. *Vasquez Perdomo*, No. 25-4312, 2025 WL 2181709, at *24. Defendants have sought a stay before the Supreme Court, *see Noem v. Vasquez Perdomo*, No. 25A169 (Aug. 7. 2025), but no decision has issued. The TRO therefore remains in effect. Defendants' appeal before the Ninth Circuit remains pending.

**B.     Defendants' resumption of roving, unconstitutional patrols throughout this District**

After the issuance of the Court's TRO, arrests of "immigrants from Latin countries without deportation orders, criminal charges, or convictions who were arrested on the street" in the District—what a Cato Institute scholar describes as the "likely victims of profiling"—declined by 83 percent.[1] However, following a few weeks of relative quiet at Southern California locations such as Home Depots and car washes, Defendants changed course and, in early August, resumed their practice of conducting seizures en masse during non-targeted raids. *See* ECF 163-1 (Second Ortiz Decl.), ¶¶ 4-6 (discussing resumption of Home Depot raids); *compare* ECF 128 at 20; ECF 128-10 (Second Melendrez Decl.), ¶ 4 *with* ECF 163-2 (Third Melendrez Decl.), ¶¶ 4-6 (discussing resumption of car wash raids). In the month since August 2, Plaintiffs have documented dozens of operations, with raids occurring at Home Depot parking lots and/or car washes almost daily.

Despite the large number of witnesses taken to B-18 (where access to counsel continues to be limited, *see* ECF 127), and the fact that many fear retaliation if they provide testimony,[2] Plaintiffs have obtained sworn, eyewitness accounts from six such operations. This evidence was set forth in Plaintiffs' Supplement to their Motion for Preliminary Injunction filed on August 25. ECF 163. Plaintiffs include information about these raids again here for the Court's convenience.

---

[1] David J. Bier, *Anti-Profiling Court Order Cuts LA ICE Arrests by 66 Percent*, Cato At Liberty (Aug. 14, 2025) https://www.cato.org/blog/anti-profiling-court-order-cuts-la-ice-arrests-66-0; *see also* David J. Bier, *One in Five ICE Arrests Are Latinos on the Streets with No Criminal Past or Removal Order*, Cato at Liberty (Aug. 5, 2025), https://www.cato.org/blog/1/5-ice-arrests-are-latinos-streets-no-criminal-past-or-removal-order (concluding that "[i]llegal profiling accounts for a substantial portion of Immigration and Customs Enforcement (ICE) arrests in 2025").

[2] *See* ECF 163-12 (Fourth Salas Decl.), ¶ 4; ECF 163-2 (Third Melendrez Decl.), ¶ 11.

-4-

### 1.    August 3, 2025 – Paramount Home Depot

On August 3, 2025, Defendants raided the Paramount Home Depot parking lot, taking at least two men—including one with legal status. Eyewitnesses report that armed, masked agents wearing military-style clothing in about eight unmarked vehicles entered the parking lot "in formation," and, upon exiting their vehicles, immediately proceeded to seize people. ECF 163-3 (K. Ortiz Decl.), ¶¶ 2-5; ECF 163-4 (S.C.H. Decl.), ¶¶ 6-8. Agents detained an older, Latino man who was in the bed of a pickup truck with toolboxes, as well as a Latino Home Depot customer, placing both individuals into the agents' vehicles. *See* ECF 163-3 (K. Ortiz Decl.), ¶ 5 & ECF 163-14 (Bushell Decl.), ¶ 9 & ECF 164 (Notice of Lodging), Ex. H (video); ECF 163-4 (S.C.H. Decl.), ¶¶ 8-9. Defendants did not appear to know the identity of either individual before detaining them. The older man turned out to be a legal resident and was later released. ECF 163-3 (K. Ortiz Decl.), ¶¶ 5-6, 8. The customer, who was grabbed and forcefully removed from his car prior to an agent searching his wallet for ID, likewise appears to have been targeted based on his appearance, his presence at the Home Depot parking lot, and his presumed occupation based on the work materials in his car. ECF 163-4 (S.C.H. Decl.), ¶¶ 5-8.

### 2.    August 4, 2025 - Magnolia Car Wash

On August 4, 2025, federal agents conducted an operation at Magnolia Car Wash, arresting at least four individuals, including at least one person with lawful status. Approximately eight to ten unmarked vehicles abruptly appeared at the car wash, "blocking the entrances and exits" while another truck drove "around the property to prevent people from leaving." ECF 163-5 (E.K.Z.L. Decl.), ¶ 3. The officers who exited the vehicles wore military clothing and carried "large rifles." *Id.* Workers were seized without warning. E.K.Z.L., who was surrounded by masked, armed officers while washing a car, "did not feel free to leave" and answered the officers' questions. *Id.*, ¶¶ 4-6.

NOTICE OF MOTION AND MOTION FOR LIMITED, EXPEDITED DISCOVERY BASED ON DEFENDANTS' VIOLATIONS OF TRO, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

A CLEAN member who had been detained at this car wash previously in June and was stopped *again* during the August 4 raid also did not feel free to leave. ECF 163-2 (Third Melendrez Decl.), ¶ 7. Although the CLEAN member was not ultimately arrested, another worker next to him was—despite having a work permit. *Id.*

Workers who were stopped appear to have been "discriminated against for being Latino and working at a car wash," as the agents ignored white-appearing clients at the site, including white-appearing clients "who ran away" or otherwise tried to leave. ECF 163-5 (E.K.Z.L. Decl.), ¶¶ 8, 12.

### 3.    August 6, 2025 - Westlake Home Depot

On August 6, 2025, federal agents raided the Westlake Home Depot and the surrounding area, arresting sixteen individuals as part of a televised action dubbed "Operation Trojan Horse."[3] According to eyewitnesses, the operation involved a Penske truck and a driver who used a ruse to bait day laborers into remaining close by. One day laborer reports that he was having his morning coffee when the Penske driver offered to hire him and several other workers. ECF 163-6 (Tijerino Garmendia Decl.), ¶¶ 4-5. The driver addressed workers "only in Spanish" and did not ask the workers any questions about themselves. Id., ¶ 5. After workers accepted the job for $100, masked agents carrying "military-style rifles" and wearing U.S.

---

[3] Jonathan Lloyd, *Federal agents in Penske rental truck descend on LA Home Depot in 'Trojan Horse' raid*, NBC4 Los Angeles (Aug. 6, 2025), https://www.nbclosangeles.com/news/local/immigration-enforcement-los-angeles/3760298/; Christopher Weber and Jaimie Ding, *Federal agents hid in back of rental truck at start of raid outside LA Home Depot*, AP News (Aug. 6, 2025), https://apnews.com/article/immigration-raids-los-angeles-trojan-horse-penske-1b86bc5f2ff716b89f4aba3320a96979 ("They opened the back, they hopped out and they started indiscriminately just grabbing people," Cardona said); *16 arrested in immigration raid outisde Home Depot in L.A.'s Westlake area*, KTLA 55, https://www.youtube.com/watch?v=Xr_NYC4tvYg (reporting countries from which those arrested were from, all Latin American).

-6-

Border Patrol vests suddenly jumped out of the truck and began charging at people. Id., ¶¶ 5-7. Agents immediately began seizing workers without inquiring about their identities or their immigration status. Id., ¶¶ 7-8. A bystander reports that "at least 20" masked, armed agents were present and that they had no "rhyme or reason or really any process of identifying people" and just grabbed any Latino person they could. ECF 163-7 (C.C. Decl.), ¶ 5; see also ECF 163-6 (Tijerino Garmendia Decl.), ¶ 7. Agents did not interact with people "other than to grab and detain them." ECF 163-7 (C.C. Decl.), ¶¶ 10-11 (explaining that "[i]t was horrifying to see people be taken away like that, with such force and so quickly"). Others in the area who were not Latino day laborers or street vendors were not stopped. Id., ¶ 5.

Acting U.S. Attorney Bill Essayli tweeted footage of the raid and wrote: "For those who thought immigration enforcement had stopped in Southern California, think again."[4]

### 4.   August 7, 2025 - San Bernardino Home Depot

On August 7, 2025, federal agents raided the San Bernardino Home Depot and the immediate vicinity.[5] Eyewitnesses report agents pulling into the Home Depot lot from different directions, blocking people in. See ECF 163-8 (Donovan-Kaloust Decl.), ¶ 8 (describing H.R.'s report of what appeared to be "dozens" of agents jumping out of unmarked vehicles); ECF 163-9 (Aparicio Saldana Decl.), ¶¶ 6-7 (describing being blocked in while in his truck waiting for a paint job). They then started grabbing people, regardless of whether they took flight in fear for their safety, not only at Home Depot but across the street. ECF 163-9, (Aparicio Saldana

---

[4] Acting U.S. Attorney Bill Essayli (Aug. 6, 2025), https://x.com/USAttyEssayli/status/1953117322333348006.

[5] *See Immigration agents arrest day laborers outside San Bernardino Home Depot*, CBS News (Aug. 7, 2025), https://www.cbsnews.com/losangeles/video/immigration-agents-arrest-day-laborers-outside-san-bernardino-home-depot/ (witness reported that "it all happened so fast" and "they were just grabbing people and just taking them").

NOTICE OF MOTION AND MOTION FOR LIMITED, EXPEDITED DISCOVERY BASED ON DEFENDANTS' VIOLATIONS OF TRO, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Decl.), ¶¶ 8-9 (describing running because he had seen how agents had treated people in prior raids and was afraid for his safety); ECF 163-13 (J.A. Decl.), ¶¶ 2-5 (legal resident and day laborer whom agents detained with weapons drawn while he stood outside the Dollar Tree across the street waiting for a job, even though he had not run); ECF 163-8 (Donovan-Kaloust Decl.), ¶¶ 9-10 (describing experience of client E.C.R. with Special Immigrant Juvenile status and deferred action who was abruptly tackled with his face slammed to the ground while getting gas across the street, even though he did not run).

The common denominator among those who were detained was that they appeared Latino and were dressed in work clothes typical of day laborers. See ECF 163-9 (Aparicio Saldana Decl.), ¶¶ 3, 10; ECF 163-13 (J.A. Decl.), ¶¶ 3, 6; ECF 163-8 (Donovan-Kaloust Decl.), ¶¶ 3, 9. Agents appeared more interested in effectuating arrests than determining individuals' actual legal status. ECF 163-9 (Aparicio Saldana Decl.), ¶¶ 9, 11 (describing how agents spoke to him in Spanish but did not ask for documents and did not ask for his name or other information until after arrest); ECF 163-13 (J.A. Decl.), ¶¶ 6-7 (describing how he was arrested despite being a legal resident and held until that night); ECF 163-8 (Donovan-Kaloust Decl.), ¶¶ 3-4, 6-7, 9-10, 13 (describing how her client was detained despite offering to show agents his documents—which they declined to review, instead telling him in Spanish to "shut up"—and not released until a week later).

### 5. August 12, 2025 - Handy J Car Wash

On August 12, 2025, federal agents raided a car wash in Culver City where at least eight individuals were detained and taken into custody.[6] At least two detained

---

[6] Jonathan Lloyd, *Video shows immigration enforcement operation at Culver City car wash*, NBC4 Los Angeles (Aug. 13, 2025), https://www.nbclosangeles.com/news/local/video-culver-city-car-wash-immigration-raid/3763694/; *Border Patrol raids Handy J Car Wash in Culver City*, Fox 11 Los Angeles, https://www.youtube.com/watch?v=0MVVZsJ_aQM (including eyewitness testimony from a customer describing raid as an "ambush").

NOTICE OF MOTION AND MOTION FOR LIMITED, EXPEDITED DISCOVERY BASED ON DEFENDANTS' VIOLATIONS OF TRO, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

individuals had legal status and/or work authorization. ECF 163-2 (Third Melendrez Decl.), ¶ 8 (describing one legal resident who was detained and later released from B-18 as well as someone with work authorization).

According to a customer who was detained, J.R.R., officers arrived onsite and "immediately" "dropp[ed] about 4 or 5 workers at the car wash to the ground" to arrest them. ECF 163-10 (J.R.R. Decl.), ¶ 4. The masked, armed agents used aggressive force, including on a "man who appeared to be in his seventies." *Id.*, ¶ 4. J.R.R. was standing on the sidewalk waiting for his work vehicle to be washed when agents arrived. *Id.*, ¶ 3. Afraid of getting hurt, he started to move away, but was himself told to stop, "grabbed," cuffed, and placed inside a Border Patrol vehicle. *Id.*, ¶¶ 5-7. He was questioned only after he was detained inside the vehicle. *Id.*, ¶ 7. J.R.R. believes he was targeted because of his skin color and appearance; other clients at the car wash who were white were not stopped or questioned by the officers. *Id.*, ¶ 12. Indeed, the officers did not seem to have any prior information about J.R.R., as they "asked each other 'who is this guy' and 'why do we have this guy.'" *Id.*, ¶ 8.

Security footage from the same raid shows an agent approach a worker in another part of the car wash cleaning a car; the agent puts his hand on the worker's shoulder and keeps it there throughout the interaction, eventually handcuffing the individual and leading him away.[7]

### 6.    August 22, 2025 - Pasadena Car Wash

On August 22, 2025, federal agents raided a car wash in Pasadena, detaining seven people, one of whom was a legal resident.[8] ECF 163-2 (Third Melendrez

---

[7] *See* ECF 163-14 (Bushell Decl.), ¶ 8 & ECF 164 (Notice of Lodging), Ex. G (video).

[8] *See Seven Agents Detained by ICE Agents at Pasadena Car Wash; One Released*, Pasadena Now (Aug. 22, 2025), https://pasadenanow.com/main/seven-workers-detained-by-suspected-ice-agents-at-pasadena-car-wash-one-released.

NOTICE OF MOTION AND MOTION FOR LIMITED, EXPEDITED DISCOVERY BASED ON DEFENDANTS' VIOLATIONS OF TRO, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Decl.), ¶ 8. The legal resident, Inoel Zapata Santiago, describes being at the car wash when immigration agents arrived without warning and blocked the entrance with their cars so no one could leave. ECF 163- 11 (Zapata Santiago Decl.), ¶¶ 3, 5. As he was cleaning a car, he "felt a hand on [his] shoulder," turned around, and saw a masked, armed agent in a green uniform. *Id.* ¶ 3. The agent questioned him in Spanish, and Zapata Santiago answered the agent's questions because he did not feel "free to leave." *Id.* Even though Zapata Santiago told the agent that he was a resident and that he had documents showing his status in his car "just a few meters away," *id.*, ¶¶ 3-4, 6, he was still handcuffed and taken in a vehicle from his workplace, *id.* ¶ 7. He was later released, but describes the experience as "devastating and humiliating." *Id.*, ¶¶ 10-11. While being driven around, Zapata Santiago learned that agents "hadn't even planned to go to the car wash at all, that they had just happened to be driving by and noticed there were a bunch of car washers out at the car wash and so they decided to stop there." *Id.*, ¶ 11. Zapata Santiago is still very shaken, and fears being stopped again based on appearing Latino, speaking Spanish, and working at a car wash. *Id.*, ¶ 12.

***

The preceding accounts offer compelling evidence that Defendants have resumed conducting detentive stops without individualized suspicion of an immigration violation. Moreover, these operations are part of a broader pattern of ongoing raids that have taken place across the District, including at Home Depots and car washes and their immediate vicinity, since August 2. *See* ECF 163 at 7-9 (documenting 21 additional raids from August 1 through August 24). The raids have not abated. For example, last Friday, on August 29, Defendants raided a car wash in Studio City, reportedly jumping out of their unmarked vehicles and detaining people

-10-

on the premises without questioning.[9] The manager told KTLA 5 that he witnessed one of his workers being pinned to the ground while protesting, "I have my ID in my locker."[10] This pattern of raids is well known to Defendants and officially sanctioned by Defendants, who have promised "this is just the beginning."[11]

### C.    **Plaintiffs' efforts to meet and confer**

Plaintiffs first sought to meet and confer with Defendants regarding Defendants' recent enforcement actions on August 13. *See* Ex. 1, Declaration of Sara Worth ("Worth Decl."), ¶ 5. The parties held a teleconference on August 15. *Id.*, ¶ 7. During that call, Plaintiffs informed counsel for Defendants that they believed Defendants were violating the TRO during raids at Home Depots and car washes. *Id.* Plaintiffs also specifically identified the August 6 Westlake Home Depot raid and pointed out that Defendants had stated, without explanation, in briefing to the Supreme Court that the raid was supported by information beyond the four enumerated factors in the TRO. *Id.*; *see also* Reply Br. at 19, *Noem* v. *Perdomo,*

---

[9] Macy Jenkins & Missael Soto, *Federal agents detain employees at popular Studio City car wash*, NBC 4 (Aug. 30, 2025), https://www.nbclosangeles.com/news/local/federal-agents-studio-city-car-wash-immigration/3771906/ (reporting raid on car wash on August 29 where federal agents allegedly hopped out of "several Jeep vehicles and beg[an] detaining people"); *see also* Luzdelia Caballero, *Immigration agents detain workers at Studio City Hand Car Wash*, CBS News (Aug. 29, 2025), https://www.cbsnews.com/losangeles/news/immigration-agents-detain-studio-city-hand-car-wash-workers/ (reporting that agents "arrived in unmarked vehicles and began chasing after anyone at the business").

[10] KTLA 5, *Workers detained during car wash raid* (Aug. 29, 2025) (Video), https://www.youtube.com/watch?v=zvZR8AQKpA0.

[11] *See* Essayli, *supra* n.4; https://www.dhs.gov/news/2025/08/26/secretary-noem-announces-dhs-arrest-5000th-illegal-alien-los-angeles-operations (Secretary Noem celebrates 5,000 immigration arrests in Los Angeles since June, promising "this is just the beginning"); https://www.latimes.com/california/story/2025-08-28/la-me-border-czar-ice (Tom Homan promising "a ramp up of operations [will] continue in LA").

-11-

NOTICE OF MOTION AND MOTION FOR LIMITED, EXPEDITED DISCOVERY BASED ON DEFENDANTS' VIOLATIONS OF TRO, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

25A169 (Aug. 13, 2025). Plaintiffs thus asked Defendants to share what other information they had relied upon, information which Defendants presumably would have had readily available given the representation made in their briefing. Worth Decl., ¶ 7. Defendants' counsel indicated he would look into it. *Id*.

On August 20, Defendants sent Plaintiffs' counsel a letter acknowledging Plaintiffs' concerns and indicating that Defendants were still "assessing" them. *Id*., ¶ 14. However, the letter incorrectly suggested that Plaintiffs' concerns were limited to the Westlake Home Depot raid and "certain car washes." *Id*. The next day, the parties conferred by teleconference again. *Id.,* ¶ 15. During the August 21 call, Plaintiffs clarified that they were concerned about dozens of raids that had occurred since August 2 and identified several specific additional raids (including five of the six detailed above, *supra* Part I-B) by date and address. *Id.,* ¶ 16. Plaintiffs indicated that the raids had not ceased since Plaintiffs raised their concerns with Defendants; if anything, they seemed to be intensifying. *Id*. Plaintiffs also identified the characteristics of the raids that led Plaintiffs to believe that Defendants were violating the TRO and stressed the urgency of obtaining additional information from Defendants by the following week. *Id*.

Also during the August 21 call, Defendants claimed that personnel had been given training on the TRO. *Id*. Plaintiffs requested more information about such training, including its contents, and Defendants' counsel stated that he did not have any such information to share, but that he would follow up. *Id*. Plaintiffs also indicated that they intended to pursue enforcement of the TRO and seek limited discovery from the Court if no further information from Defendants was forthcoming. *Id.,* ¶ 17. Defendants' counsel confirmed he understood. *Id*.

On August 25, Plaintiffs emailed Defendants to share that additional raids had occurred over the weekend and provided specific information including address for the August 22 Pasadena car wash raid. *Id*., ¶ 18. Defendants acknowledged receipt. *Id*. On the same day, Plaintiffs also filed a supplement to their preliminary

-12-

injunction motion with leave of the Court and Defendants' consent laying out the evidence set forth above regarding six specific raids. *See* ECF 163.

Additionally, since August 6, Plaintiffs (and Intervenors) have repeatedly requested in writing and by telephone that the parties schedule and hold their Rule 26(f) conference. *See* Worth Decl., ¶¶ 4, 6, 8, 10, 12, 20. Plaintiffs have requested Defendants' availability for such a conference four times in writing, most recently on August 27. *Id.*, ¶ 20. Defendants have so far declined to schedule the conference. *Id.*

Earlier today, September 2, having not heard from Defendants or received any further information from Defendants, Plaintiffs wrote to Defendants to notify them of Plaintiffs' intent to file the present motion today. *Id.*, ¶ 20. Plaintiffs explained that the motion at this time would be limited to a request for expedited discovery. *Id.* Defendants responded that they did not believe Plaintiffs had complied with their obligations under Rule 7-3 with regard to a "standalone expedited-discovery motion." *Id.*, ¶ 21. The parties thereafter conferred by teleconference once more. *Id.*, ¶¶ 22-24. During the call, Plaintiffs clarified that the relief they were seeking— discovery only—was more modest than a motion to enforce seeking both discovery and other remedies. *Id.*, ¶ 23. Defendants acknowledged that, during the prior teleconferences, Plaintiffs had informed Defendants that they intended to seek discovery from the Court. *Id.* Plaintiffs asked whether there was any possibility that, through further discussions, Defendants would agree to discovery. *Id.*, ¶ 23. Defendants stated there was not. *Id.*

## III.    LEGAL STANDARD

A district court has inherent authority to issue orders to "secure compliance with its earlier orders and governing law." *Armstrong v. Brown*, 939 F. Supp. 2d 1012, 1018 (N.D. Cal. 2013);  *Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("[C]ourts have inherent power to enforce compliance with their lawful orders."). In response to a claim of noncompliance, a district court has discretion to take a wide

-13-

range of actions. *Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 647 (1961) (discussing courts' authority to modify and enforce injunctions). One such action is authorizing discovery. *California Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008).

In the Ninth Circuit, pre-enforcement discovery is appropriate where there are "significant questions" going to noncompliance. *Id.* at 1034. "[T]he kind and amount of evidence of noncompliance required to justify discovery is, necessarily, considerably less than that needed to show actual noncompliance." *Id.*; *see also Fraihat v. U.S. Immigr. & Customs Enf't*, No. 19-cv-01546-JGB, 2020 WL 2758553, at *5 (C.D. Cal. May 15, 2020) (describing standard as "permissive").

Alternatively, even without a prior order to enforce, a district court may authorize discovery prior to a Rule 26(f) conference upon a showing of good cause. *Am. LegalNet, Inc. v. Davis,* 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009) (discussing relevant factors); *see also 10 PM Curfew v. Patil*, 23-cv-02805-MEMF-MBK, Dkt. No. 41 (granting motion to serve early subpoena for good cause).

## IV.    ARGUMENT

### A.    The record shows, at a minimum, significant questions going to noncompliance.

The record shows that Defendants have resumed their policy and practice of conducting detentive stops without reasonable suspicion and based solely on broad demographic profiles.

*First*, Defendants are, once again, conducting stops based on broad profiles that are "no more indicative of illegal presence in the country than legal presence." TRO at 44 (referring to factors "such as working at low wage occupations such as car wash attendants and day laborers"). Defendants appear to be selecting whom to stop based on nothing more than the four enumerated factors. Several witnesses who were stopped, all Latino, describe seeing similarly situated white counterparts not stopped. ECF 163-5 (E.K.Z.L. Decl.), ¶¶ 8, 12 (discussing white appearing clients

-14-

including those who fled who were left alone); ECF 163-10 (J.R.R. Decl.), ¶ 12 (other clients who were "mostly white" not stopped). Others describe being spoken to (and responding) in Spanish. ECF 163-6 (Tijerino Garmendia Decl.), ¶ 5; ECF 163-11 (Zapata Santiago Decl.), ¶ 3; ECF 163 at 9 n. 28 (describing car wash worker who was held after he spoke Spanish and asked if he was "born here"). All witnesses who were stopped were stopped by virtue of their being present at a car wash or Home Depot parking lot or vicinity, including Latinos who were shoppers, clients, or in one case, a gas station customer across from Home Depot. *See* ECF 163-4 (S.C.H. Decl.), ¶ 5 (shopper); ECF 163-10 (J.R.R. Decl.), ¶ 3 (car wash client); ECF 163-8 (Donovan-Kaloust Decl.), ¶ 9 (customer getting gas). And many were stopped while working or wearing attire that marked them as a worker or laborer. ECF 163-4 (S.C.H. Decl.), ¶ 5; ECF 163-5 (E.K.Z.L.), ¶¶ 4-5; ECF 163-2 (Third Melendrez Decl.), ¶ 7; ECF 163-6 (Tijerino Garmendia Decl.), ¶ 4; ECF 163-7 (C.C. Decl.), ¶ 5; ECF 163-8 (Donovan-Kaloust Decl.), ¶ 9; ECF 163-9 (Aparicio Saldana Decl.), ¶ 6; ECF 163-13 (J.A. Decl.), ¶ 3; ECF 163-11 (Zapata Santiago Decl.), ¶ 3.

*Second*, the record indicates Defendants are not conducting stops to execute an arrest for a person or persons they are targeting. Upon arriving at a location, Defendants are stopping whomever they can grab, and asking questions later. *See, e.g.*, ECF 163-6 (Tijerino Garmendia Decl.), ¶ 7; ECF 163-7 (C.C. Decl.), ¶ 5; ECF 163-2 (Third Melendrez Decl.), ¶ 7 (detention of CLEAN member whom Defendants had already stopped previously); ECF 163-13 (J.A. Decl.), ¶ 5; *see also* ECF 163-11 (Zapata Santiago Decl.), ¶ 11 (discussing how agents admitted they hadn't planned to go to car wash at all but "decided to stop" because agents happened to be driving by). Further reinforcing this is the fact that *numerous* witnesses were stopped despite being lawfully present. ECF 163-1 (Second Ortiz Decl.), ¶ 8; ECF 163-2 (Third Melendrez Decl.), ¶ 8; ECF 163-3 (K Ortiz Decl.), ¶

-15-

NOTICE OF MOTION AND MOTION FOR LIMITED, EXPEDITED DISCOVERY BASED ON DEFENDANTS' VIOLATIONS OF TRO, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

8; ECF 163-8 (Donovan-Kaloust Decl.), ¶¶ 9-10; ECF 163-13 (J.A. Decl.), ¶ 6; ECF 163-11 (Zapata Santiago Decl.), ¶¶ 3-4; ECF 163 at 8 n. 16; ECF 163 at 9 n. 28.

*Third*, just as before, Defendants are effecting seizures, not voluntary questioning. Defendants are arriving at locations with a show of force, blocking exits, often placing "hands on" or surrounding individuals and not giving them a chance to walk away. ECF 163-1 (Second Ortiz Decl.), ¶ 6; ECF 163-2 (Third Melendrez Decl.), ¶ 6; ECF 163-3 (K Ortiz Decl.), ¶¶ 5-6; ECF 163-5 (E.K.Z.L.), ¶¶ 4-6; ECF 163-6 (Tijerino Garmendia Decl.), ¶ 7; ECF 163-7 (C.C. Decl.), ¶¶ 4-5; ECF 163-8 (Donovan-Kaloust Decl.), ¶¶ 8-9; ECF 163-9 (Aparicio Saldana Decl.), ¶¶ 7-8; ECF 163-13 (J.A. Decl.), ¶¶ 4-5; ECF 163-10 (J.R.R. Decl.), ¶¶ 4-5; ECF 163-11 (Zapata Santiago Decl.), ¶¶ 3-5; ECF 163-14 (Bushell Decl.), ¶ 8 & 164 (Notice of Lodging), Exh. G (video).

And *fourth*, Defendants are detaining individuals regardless of whether they take flight. As the Court has already explained, under the particular circumstances of this case, where masked men with guns are jumping out of unmarked vehicles, flight is hardly probative and cannot constitute the "something more" that would bring a stop into compliance with the Fourth Amendment. TRO at 41 n. 30. But here, most witnesses went nowhere. The two who ran or moved away did so out of fear for their safety and were stopped in raids where others who did not run were grabbed without discernment. *See supra* at 7-8.

**B.    Plaintiffs' requested discovery is reasonable and appropriate.**

Defendants' systematic failure to conform their conduct to the Court's TRO suggests that personnel were instructed to resume non-targeted raids notwithstanding the TRO starting on or around August 2 and/or that Defendants have not developed the proper mechanisms to implement and ensure compliance with the TRO. Plaintiffs therefore seek permission to serve a limited set of written discovery requests and take four depositions as set forth below.

-16-

Plaintiffs' contemplated discovery is reasonable in breadth and scope, especially given the scale of Defendants' operations, and is "narrowly tailored" to obtain information related to Defendants' compliance (or noncompliance) with the TRO. *Am. LegalNet, Inc.,* 673 F. Supp. 2d at 1067; *NobelBiz, Inc. v. Wesson*, No. 14CV0832 W(JLB), 2014 WL 1588715, at *2 (S.D. Cal. Apr. 18, 2014); *Fraihat*, 2020 WL 2758553, at *5 (granting request for eight categories of information and miscellaneous records).

Specifically, Plaintiffs seek to serve written discovery (requests for production and/or interrogatories) on the following topics:

- Information about and content of any training or guidance provided to agency personnel to implement the TRO, including when and to whom such training or guidance was provided;[12]

- Information about what factors, beyond the four enumerated factors, Defendants purport to have relied upon to make detentive stops in the six operations detailed *supra* and five additional post-TRO Home Depot and car wash operations;[13]

- Information about detentive stops (including factors supporting reasonable suspicion), including but not limited to Forms I-213s and videos, conducted during the six operations detailed *supra* and five additional post-TRO Home Depot and car wash operations;[14]

---

[12] As noted *supra*, Defendants have represented that they provided training on the TRO after July 11 and Plaintiffs have already requested information about it. Producing such training and guidance should not be burdensome.

[13] As noted *supra*, Defendants have stated to the Supreme Court that their August 6 Westlake Home Depot raid relied on other information beyond the four enumerated factors. If that is truly the case, this should not be burdensome to compile. Plaintiffs have also already requested this information.

[14] This and the next three categories of information below should presumably be compiled in the normal course of operations and should not be difficult to gather and produce.

-17-

NOTICE OF MOTION AND MOTION FOR LIMITED, EXPEDITED DISCOVERY BASED ON DEFENDANTS' VIOLATIONS OF TRO, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

- Operations plans, and pre- and post-operation briefing notes, for the six operations detailed *supra* and five additional post-TRO Home Depot and car wash operations;

- Information about any mechanisms for supervisory review of agents'/officers' detentive stops and/or corrective action in case of violations of the TRO (including whether any investigations have been initiated or any corrective action taken since August 2);

- Information about any other actions Defendants have taken to implement, assess, or ensure compliance with the TRO; and

- A search of the electronic documents and communications of El Centro Border Patrol Sector Chief Gregory K. Bovino—the "tactical commander in charge" of immigration operations in the Los Angeles area[15]—about implementation of the TRO.

Plaintiffs request that the Court set a 10-day response time for written discovery responses as of the date of service of the requests.[16]

Plaintiffs also seek to take the following depositions on an expedited timeline to be determined by the Court:[17]

- A deposition of Chief Bovino;

---

[15] *See* Hamed Aleaziz & Jesus Jiménez, *The Border Patrol Chief Leading the California Immigration Crackdown*, N.Y. Times (Aug. 29, 2025), https://www.nytimes.com/2025/08/29/us/gregory-bovino-immigration-california.html.

[16] If a protective order is needed, Plaintiffs request that the Court set a date certain by which the parties will file a proposed protective order with the Court. *See Fraihat*, 2020 WL 2758553, at *7.

[17] Courts have granted expedited discovery in the form of depositions upon a showing of good cause. *See, e.g., Praecipio Consulting, LLC v. Howser*, 2025 WL 1084766, at *3 (N.D. Cal. Apr. 10, 2025); *Light Salt Invs., LP v. Fisher*, 2013 WL 3205918, at *2 (S.D. Cal. June 24, 2013).

-18-

NOTICE OF MOTION AND MOTION FOR LIMITED, EXPEDITED DISCOVERY BASED ON DEFENDANTS' VIOLATIONS OF TRO, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

- A 30(b)(6) deposition covering topics related to training/guidance about, implementation of, and assessment of agents'/officers' compliance with the TRO; and

- Two depositions of supervisory agents/officers, one from ICE and one from CBP, with on the ground information about recent post-TRO Home Depot and car wash operations.

Plaintiffs request that they be allowed to identify the two supervisory agents/officers to be deposed based on rank, position, or other reasonable description given Defendants' refusal to identify themselves in the field.

**C.      The Court should grant expedited discovery to aid in enforcement of its orders.**

The Court should grant expedited discovery pursuant to its inherent authority to enforce the TRO. *Armstrong v. Brown*, 857 F. Supp. 2d 919, 949, 951 (N.D. Cal. 2012), *aff'd*, 732 F.3d 955 (9th Cir. 2013) (enforcing prior order and finding that "a district court has continuing jurisdiction in support of its judgment, and 'until the judgment has been properly stayed or superseded, the district court may enforce it . . . .' " (citations omitted)); *see Fraihat*, 2020 WL 2758553, at *3, *5.[18]

Alternatively, there is "good cause" for the Court to grant limited early discovery under Rule 26(d) because it is narrow and sought for the proper purpose of preserving the status quo. *See Apple Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846-LHK, 2011 WL 1938154, at *2 (N.D. Cal. May 18, 2011); *Praecipio Consulting*, 2025 WL 1084766, at *2.

---

[18] The fact that the TRO is pending on appeal does not alter the analysis. The Court "retains jurisdiction to enforce . . . its injunctions during the pendency of an interlocutory appeal." *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1099 (9th Cir. 2002); *Meinhold v. U.S. Dep't of Def.*, 34 F.3d 1469, 1480 n.14 (9th Cir. 1994) (clarifying and supervising compliance with injunction while appeal pending was proper); *JW Gaming Dev., LLC v. James*, 544 F. Supp. 3d 903, 919 (N.D. Cal. 2021) ("enforcement of judgment proceeds even after appeal has been taken"); Fed. R. Civ. P. 62(c)(1).

-19-

NOTICE OF MOTION AND MOTION FOR LIMITED, EXPEDITED DISCOVERY BASED ON DEFENDANTS' VIOLATIONS OF TRO, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

The discovery sought in this motion will be relevant even if it is not obtained until after the preliminary injunction hearing on September 24. First, in the event the TRO extends for any number of days beyond September 24, there may be a need for the Court to take further action to enforce the TRO. Second, if the TRO is supplanted by a preliminary injunction on or shortly after September 24, the same discovery would aid the Court in the enforcement of the preliminary injunction.

Even if Defendants take an immediate appeal and/or seek a stay of any preliminary injunction, discovery will be helpful. In that case, the Court nevertheless will retain jurisdiction to enter additional findings of act and conclusions of law related to the preliminary injunction, *see Thomas v. Cnty. of Los Angeles*, 978 F.2d 504, 507 (9th Cir. 1992), and to make "modifications" to help enforce[] the injunction" and "effectuate[] the underlying purposes of the original requirements." *Nat'l Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166-67 (9th Cir. 2001); *see id.* (court "retains jurisdiction during the pendency of an appeal to act to preserve the status quo"). Such modifications may include further clarification of the terms of the preliminary injunction or additional measures to aid in implementation of the preliminary injunction.

In sum, expedited discovery will help shed light on why the raids are occurring, and why suspicionless stops are continuing, notwithstanding the Court's clear order, and help prevent the Court's directives "from being ignored or avoided with impunity." *In re Lafayette Radio Elec. Corp.*, 761 F.2d 84, 93 (2d Cir. 1985). Such discovery is warranted, urgently needed, and authorized.

## V.   CONCLUSION

Defendants have maintained that they are not in violation of the TRO. If that is the case, they should welcome the opportunity to provide information to Plaintiffs and the Court. For the foregoing reasons, the Stop/Arrest Plaintiffs request the Court grant Plaintiffs' motion.

-20-

NOTICE OF MOTION AND MOTION FOR LIMITED, EXPEDITED DISCOVERY BASED ON DEFENDANTS' VIOLATIONS OF TRO, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

DATED: September 2, 2025    UC IRVINE IMMIGRANT AND RACIAL JUSTICE SOLIDARITY CLINIC


By: _____ */s/ Anne Lai* _____
Anne Lai
*Counsel for Stop/Arrest Plaintiffs*


ACLU OF SOUTHERN CALIFORNIA


By: _____ */s/ Mayra Joachin* _____
Mayra Joachin
*Counsel for Stop/Arrest Plaintiffs*


NATIONAL DAY LABORER ORGANIZING NETWORK


By: _____ */s/ Lauren Michel Wilfong* _____
Lauren Michel Wilfong
*Counsel for Stop/Arrest Plaintiffs*


MUNGER, TOLLES & OLSON LLP


By: _____ */s/ Jacob S. Kreilkamp* _____
Jacob S. Kreilkamp
*Counsel for Stop/Arrest Plaintiffs*

-21-

NOTICE OF MOTION AND MOTION FOR LIMITED, EXPEDITED DISCOVERY BASED ON DEFENDANTS' VIOLATIONS OF TRO, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2025, I electronically filed the foregoing with the Clerk of the U.S. District Court for the Central District of California using the CM/ECF system, which provided notification of such filing to all registered CM/ECF users, including all adverse parties. L.R. 65-1.

DATED:  September 2, 2025          UC IRVINE IMMIGRANT AND RACIAL
                                   JUSTICE SOLIDARITY CLINIC


                                   By:    _/s/ Anne Lai_____
                                          Anne Lai
                                          *Counsel for Stop/Arrest Plaintiffs*

NOTICE OF MOTION AND MOTION FOR LIMITED, EXPEDITED DISCOVERY BASED ON DEFENDANTS' VIOLATIONS OF TRO, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record certifies that this filing is 6,444 words, 20 pages, is set in 14-point font, and therefore complies with L.R. 11-6.1 and this Court's Standing Order.

DATED:  September 2, 2025          UC IRVINE IMMIGRANT AND RACIAL
                                   JUSTICE SOLIDARITY CLINIC


                                   By:    _/s/ Anne Lai_____
                                              Anne Lai
                                          _Counsel for Stop/Arrest Plaintiffs_

-23-