MARK ROSENBAUM (SBN 59940)
*mrosenbaum@publiccounsel.org*
REBECCA BROWN (SBN 345805)
*rbrown@publiccounsel.org*
SOPHIA WRENCH (SBN 354416)
*swrench@publiccounsel.org*
RITU MAHAJAN (SBN 252970)
*rmahajan@publiccounsel.org*
GINA AMATO (SBN 215519)
*gamato@publiccounsel.org*
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977

*Counsel for All Plaintiffs*

MATTHEW J. CRAIG (SBN 350030)
*mcraig@heckerfink.com*
MACK E. JENKINS (SBN 242101)
*mjenkins@heckerfink.com*
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Telephone: (212) 763-0883

*Counsel for Access/Detention Plaintiffs*

(*additional counsel information on cont. page*)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Pedro VASQUEZ PERDOMO, *et al.*,

Plaintiffs,

v.

Kristi NOEM, in her official capacity as Secretary, Department of Homeland Security, *et al.*,

Defendants.

Case No.: 2:25-cv-05605-MEMF-SP

**PLAINTIFFS COALITION FOR HUMANE IMMIGRANT RIGHTS AND IMMIGRANT DEFENDERS LAW CENTER'S REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Hon. Maame Ewusi-Mensah Frimpong

HELIA BIDAD (SBN 348633)
*hbidad@heckerfink.com*
HECKER FINK LLP
1050 K Street, NW
Washington, DC 20001
Telephone: (212) 763-0883

*Counsel for Access/Detention Plaintiffs*

CARL BERGQUIST*
*cbergquist@chirla.org*
COALITION FOR HUMANE IMMIGRANT RIGHTS
2351 Hempstead Road
Ottawa Hills, OH 43606
Telephone: (310) 279-6025

*Counsel for Plaintiff Coalition for Humane Immigrant Rights*

ALVARO M. HUERTA (SBN 274787)
*ahuerta@immdef.org*
BRYNNA BOLT (SBN 339378)
*bbolt@immdef.org*
ALISON STEFFEL (SBN 346370)
*asteffel@immdef.org*
IMMIGRANT DEFENDERS LAW CENTER
634 S. Spring St., 10th Floor
Los Angeles, CA 90014
Telephone: (213) 634-0999

*Counsel for Plaintiff Immigrant Defenders Law Center*

* Admitted pro hac vice

# TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ..... 1
ARGUMENT ..... 1
I. Defendants' Jurisdictional Challenges Are Meritless ..... 1
A. Plaintiffs' Fifth Amendment Claim Is Not Moot ..... 2
B. Plaintiffs Have Standing ..... 8
C. The INA Is No Bar to the Court's Jurisdiction ..... 9
II. Plaintiffs Satisfy the Standard for a Preliminary Injunction ..... 11
A. Plaintiffs Are Likely to Succeed on the Merits ..... 11
B. Plaintiffs Have Established Irreparable Harm ..... 12
C. The Balance of the Equities and Public Interest Favor Plaintiffs ..... 14
III. Defendants' Remaining Arguments Have Already Been Rejected and Are Meritless in Any Event ..... 15
CONCLUSION ..... 16

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*All. for Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) .......... 13

*American Diabetes Association v. United States Department of the Army*,
938 F.3d *1147* (9th Cir. 2019) .......... 6

*Barnes v. Healy*,
980 F.2d 572 (9th Cir. 1992) .......... 5, 6, 13

*Bull v. City & Cnty. of San Francisco*,
595 F.3d 964 (9th Cir. 2010) .......... 4

*In re Burrell*,
415 F.3d 994 (9th Cir. 2005) .......... 8

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) .......... 6

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .......... 8

*City of Mesquite v. Aladdin's Castle, Inc.*,
455 U.S. 283 (1982) .......... 5

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 8

*Costa v. Bazron*,
464 F. Supp. 3d 132 (D.D.C. 2020) .......... 13

*Ctr. for Biological Diversity v. Exp.-Import Bank of the U.S.*,
894 F.3d 1005 (9th Cir. 2018) .......... 8

*Ctr. for Biological Diversity v. Lohn*,
511 F.3d 960 (9th Cir. 2007) .......... 8

*Dep't of Homeland Sec. v. Regents of Univ. of Cal.*,
591 U.S. 1 (2020) .................... 10

*Doe #1 v. Trump*,
957 F.3d 1050 (9th Cir. 2020).................... 16

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) .................... 8

*Fed. Defs of N.Y., Inc. v. Fed. Bureau of Prisons*,
954 F.3d 118 (2d Cir. 2020).................... 11

*Florence v. Bd.* of *Chosen Freeholders of Cnty. of Burlington*,
566 U.S. 318 (2012) .................... 4

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) .................... 5, 6

*Gibbs v. Sanchez*,
No. 16 Civ. 9013, 2018 WL 5903893 (C.D. Cal. Feb. 2, 2018).................... 12

*Gonzalez v. U.S. Immigr. & Customs Enf't*,
975 F.3d 788 (9th Cir. 2020).................... 10, 11

*Hamdi v. Rumsfeld*,
542 U.S. 507 (2004) .................... 7

*Hernandez v. Sessions*,
872 F.3d 976 (9th Cir. 2017).................... 14

*J.E.F.M. v. Lynch, the Ninth Circuit*,
837 F.3d 1026 (9th Cir. 2016).................... 10

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) .................... 10

*Johnson v. Couturier*,
572 F.3d 1067 (9th Cir. 2009).................... 15

*L. Ctr. v. Noem*,
781 F. Supp. 3d 1011 (C.D. Cal. 2025) .................... 13

*Martinez v. Napolitano*,
704 F.3d 620 (9th Cir. 2012)......9

*Munns v. Kerry*,
782 F.3d 402 (9th Cir. 2015)......8

*Nat'l TPS All. v. Noem*,
2120, No. 25-, 2025 WL 2487771 (9th Cir. Aug. 29, 2025)......15

*Nken v. Holder*,
556 U.S. 418 (2009)......16

*O'Shea v. Littleton*,
414 U.S. 488 (1974)......13

*Orantes-Hernandez v. Thornburgh*,
919 F.2d 549 (9th Cir. 1990)......11

*Protectmarriage.com-Yes on 8 v. Bowen*,
752 F.3d 827 (9th Cir. 2014)......8

*Richter v. KRG Trading, Inc.*,
No. 24 Civ. 03622, 2024 WL 3050812 (C.D. Cal. May 28, 2024)......12

*Rosebrock v. Mathis*,
745 F.3d 963 (9th Cir. 2014)......6

*Save Our Sonoran, Inc. v. Flowers*,
408 F.3d 1113 (9th Cir. 2005)......15

*Sierra Club v. Trump*,
929 F.3d 670 (9th Cir. 2019)......11

*Singh v. Gonzalez*,
499 F.3d 969 (9th Cir. 2007)......9

*Smith v. Helzer*,
95 F.4th 1207 (9th Cir. 2024)......6

*Stacy v. Colvin*,
825 F.3d 563 (9th Cir. 2016) .......... 15

*Torres v. Dep't of Homeland Sec.*,
No. 18 Civ. 2604, 2020 WL 3124305 (C.D. Cal. Apr. 24, 2020) .......... 5

*Torres v. U.S. Dep't of Homeland Sec.*,
411 F. Supp. 3d 1036 (C.D. Cal. 2019) .......... 12

*Trump v. CASA, Inc.*,
145 S. Ct. 2540 (2025) .......... 15

*U.S. Parole Comm'n v. Geraghty*,
445 U.S. 388 (1980) .......... 8

*United States v. Concentrated Phosphate Export Ass'n*,
393 U.S. 199 (1968) .......... 5

**FEDERAL STATUTES**

Title 8 U.S.C. § 1252 .......... 9

**OTHER AUTHORITIES**

*Anti-Trump Protestors March in DTLA as Part of Nationwide 'Rage Against the Regime' Rallies*, ABC7 (Aug. 3, 2025), https://abc7.com/post/anti-trump-protesters-march-la-part-rage-regime-rallies/17411282 .......... 7

*Protestors Descend Upon MacArthur Park in Opposition of Immigration Raids*, NBC4 (Aug. 9, 2025), https://www.nbclosangeles.com/news/local/macarthur-park-protest-immigration-raids/3762065 .......... 7

*Walking Map from 300 N. Los Angeles St, Los Angeles, CA 90012 to MacArthur Park, 2230 W. 6th St. Los Angeles, CA 90057*, Google Maps, https://maps.app.goo.gl/5mKJZeq6Kpc28Nz9A (last visited Sep. 9, 2025) .......... 7

## PRELIMINARY STATEMENT

For the most part, Defendants' opposition to CHIRLA and ImmDef's motion for a preliminary injunction seeks to rehash arguments that this Court has already rejected. Defendants continue to insist that the situation at B-18 "normalized" well before the Court entered a TRO—but offer no evidence undermining the Court's prior determination to the contrary. And Defendants again try to justify curtailing access to counsel based on vague references to security concerns—but "riots" that were actually peaceful marches or a protest unfolding an hour's walk from B-18 are no more compelling than the excuses Defendants offered two months ago.

The only thing truly new is Defendants' insistence that because there have been some improvements in access since the TRO was entered, CHIRLA and ImmDef no longer have a live claim for injunctive relief. But compliance with a TRO is not the sort of voluntary cessation that moots a claim, all the more so where, as here, compliance has been only partial, and the very sorts of problems that prompted this lawsuit—in terms of both legal access at B-18 and the mass arrests that packed the facility with individuals with pressing legal needs—continue to occur.

For all the reasons below, in CHIRLA and ImmDef's opening brief, and in the Court's TRO decision addressing largely identical issues, the Court should enter the requested preliminary injunction.

## ARGUMENT

### I. Defendants' Jurisdictional Challenges Are Meritless

Eager to avoid the merits, Defendants spill considerable ink on three jurisdictional challenges to CHIRLA and ImmDef's request for injunctive relief: that (1) Plaintiffs' Fifth Amendment claim is moot, (2) Plaintiffs lack standing, and (3) the Immigration and Nationality Act ("INA") precludes judicial review. Each of these jurisdictional arguments collapses under scrutiny.

**A. Plaintiffs' Fifth Amendment Claim Is Not Moot**

At the outset, Defendants argue that the Fifth Amendment claim is moot because Plaintiffs Perdomo, Osorto, and Molina, day laborers who were indiscriminately stopped and arrested, are no longer detained at B-18. ECF 168 ("PI Opp.") at 5–6. But those individual Plaintiffs have not moved for a preliminary injunction relating to access to counsel at B-18, and their custody status has no bearing on whether the claim by CHIRLA and ImmDef—the actual movants—remains justiciable. *See* ECF 127 ("PI Mot.").

Defendants also argue that CHIRLA and ImmDef's Fifth Amendment claim is moot because, according to Defendants, legal access at B-18 returned to normal after protests in the Los Angeles area ceased in late June, there is no evidence of ongoing access restrictions, and any future access restrictions will not occur absent protest activity that poses a threat to the facility's security. PI Opp. 6–7. Defendants come up short for multiple reasons.

*First*, the Court has already rejected the claim that attorney access returned to normal by the end of June. During the TRO proceedings, Defendants argued that B-18 operations normalized once protests in the Los Angeles area subsided on June 23. ECF 70 ("TRO Opp.") at 9 (arguing that "operations at B-18 normalized on June 24"); ECF 90 at 23:6–8 ("B-18 is no longer under any restrictions, and has been operating on its normal schedule since June 24th."). But CHIRLA and ImmDef presented a voluminous evidentiary record that attorney access had been consistently and systematically restricted, including right up until the TRO hearing,[1] and the Court found that Defendants did "not present evidence controverting [Plaintiffs' evidence] in any meaningful way," ECF 87 ("TRO Order") at 20. The Court determined that attorneys had been denied access "as recently as July 8" and, in

[1] *See* ECF 38-3 ("Barba Decl."); ECF 38-4 ("C.B. Decl."); ECF 38-5 ("Duran Decl."); ECF 38-6 ("S.K. Decl."); ECF 38-7 ("S.A.R. Decl."); ECF 38-8 ("R.P.R. Decl."); ECF 38-9 ("Salas Decl."); ECF 38-10 ("Thompson-Lleras Decl."); ECF 38-11 ("Toczylowski Decl."); ECF 38-12 ("Vasquez Decl."); ECF 82-1 ("Barba Supp. Decl."); ECF 82-2 ("Duran Supp. Decl."); ECF 82-3 ("Salas Supp. Decl."); ECF 82-4 ("Steele Decl."); ECF 82-5 ("Thompson-Lleras Supp. Decl."); ECF 82-6 ("Toczylowski Supp. Decl.").

response to the claim that denial of access will not "reoccur," specifically found that "the harm persists." *Id.* at 24–25 & n.16. Defendants offer no new evidence that would justify any different conclusion today.

*Second*, as for the period after the TRO was entered, CHIRLA and ImmDef have amassed evidence that restrictions on access to counsel continue.[2] Declarations filed in support of this motion illustrate the various ways in which Defendants have interfered with detainees' ability to retain and communicate with counsel, from barring attorneys from entering the facility during normal visiting hours, *see, e.g.*, Wrench Supp. Decl. ¶ 5; Toczylowski Third Decl. ¶¶ 3–5; Duran Third Decl. ¶ 3; to shuttling detainees back and forth between Los Angeles and an entirely different facility in Santa Ana, *see, e.g.*, Toczylowski Third Decl. ¶¶ 5–9; Duran Third Decl. ¶¶ 3–4;[3] to failing to guarantee access to free, confidential telephone calls with counsel, *see, e.g.*, Toczylowski Third Decl. ¶ 11; Wrench Supp. Decl. ¶¶ 5–6, 26; Duran Third Decl. ¶ 13. Defendants do not seriously dispute this factual record, much less attempt to meet Plaintiffs' proof with competent evidence of their own. In fact, the only new declaration that Defendants have filed relating to B-18 acknowledges facility closures in July and August. ECF 168-2 ("Gudino Decl.") ¶¶ 18, 21.[4]

While declarant Gudino gestures at security concerns in an effort to explain away certain closures, *id.* ¶¶ 7, 9, 18, 21–22, he makes the exact type of vague statements that

---

[2] ECF 127-1 ("Freire Decl."); ECF 127-2 ("Hunsberger Decl."); ECF 127-3 ("Thompson-Lleras Second Supp. Decl."); ECF 127-4 ("Tanigawa-Lau Decl."); ECF 127-5 ("Wrench Decl."); Toczylowski Third Decl.; Wrench Supp. Decl.; Duran Third Decl.; Panicker Decl.; Craig Decl.

[3] Attorneys who have attempted to meet with detainees taken to the facility in Santa Ana have also faced restrictions on access there. *See, e.g.*, Panicker Decl. ¶¶ 9–14; Toczylowski Third Decl. ¶¶ 7–8. And detainees who have been held at the facility in Santa Ana have reported deplorable conditions similar to those experienced by detainees held at B-18. *See, e.g.*, Toczylowski Third Decl. ¶¶ 12–17 .

[4] The Gudino declaration refers to certain exhibits, but none was filed in connection with Defendants' opposition.

declarant Uyeda made during the TRO proceedings, ECF 70-1 ¶¶ 10–11. Such statements were insufficient then, TRO Order 26, and they still do not correspond to the sorts of institutional security concerns that might bear on detention facility policy, *see, e.g.*, *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 328 (2012) (considering security justification in keeping contraband out of facilities in permitting strip searches upon entry); *Bull v. City & Cnty. of San Francisco*, 595 F.3d 964, 975 (9th Cir. 2010) (en banc) (finding no Fourth Amendment violation in connection with strip search policy where "record reveals a pervasive and serious problem with contraband inside San Francisco's jails, as well as numerous instances in which contraband was found during a search, indicating that arrestees' use of body cavities as a method of smuggling drugs, weapons, and items used to escape custody is an immediate and troubling problem for San Francisco jail administrators"). Moreover, in the event that "exigent circumstances require closure for the safety of human life or the protection of property," the TRO requires Defendants to "notify Access/Detention Plaintiffs as soon as practicable and certainly within four (4) hours" and to "make alternative arrangements for legal visitation." TRO Order 49. At no point in the two months since the TRO has been in effect have Defendants provided the requisite notice or made alternative legal visiting arrangements. Craig Decl. ¶¶ 3–4, 8; *e.g.*, Toczylowski Third Decl. ¶ 3. Their own conduct, therefore, confirms that such exigent circumstances have not arisen (or, alternatively, reveals another way in which Defendants have violated the Court's order).

The Gudino declaration also fails to show Defendants' compliance with the TRO provision requiring free, confidential, unmonitored phone calls. TRO Order 49. Although Gudino points to two phones that have been installed in private rooms, Gudino Decl. ¶ 7, he does not identify the date on which those phones were installed (and certainly does not suggest that they were installed immediately after the TRO took effect), and he offers no response to Plaintiffs' declarations detailing the ways in which detainees continue to be denied the ability to make free telephone calls with counsel, *see, e.g.*, Toczylowski Third Decl. ¶ 11; Duran Third Decl. ¶¶ 12–13, or the ways in which counsel have been denied

information or given conflicting information about how such phones may be used, *see, e.g.*, Wrench Supp. Decl. ¶¶ 5–6, 26.

Because Defendants have not even been able to comply with the existing TRO, a preliminary injunction is necessary to uphold the Fifth Amendment at B-18. *See Torres v. Dep't of Homeland Sec.*, No. 18 Civ. 2604, 2020 WL 3124305, at *1 (C.D. Cal. Apr. 24, 2020) (converting TRO addressing attorney access at detention facility to preliminary injunction where "Defendants ha[d] not fully complied" or "delayed complying" with "the [c]ourt's orders," and "the need for preliminary relief remain[ed]").

*Third*, to the extent that the TRO has generated some improvements in access to counsel at B-18—which CHIRLA and ImmDef themselves have acknowledged, PI Mot. 9—those improvements do not moot Plaintiffs' claim. It is axiomatic that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). The standard for determining whether a case has been mooted by a defendant's voluntary cessation of challenged conduct is "stringent." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). Under that standard, "'[a] case might become moot if subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)); *see Barnes v. Healy*, 980 F.2d 572, 580 (9th Cir. 1992) ("Voluntary cessation of an illegal course of conduct does not render moot a challenge to that course of conduct unless (1) there is no reasonable expectation that the wrong will be repeated, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.").

Defendants suggest that Plaintiffs bear "a heav[y] burden" to demonstrate that access restrictions at B-18 will recur. PI Opp. 7. But that is exactly backwards: as the Supreme Court has made clear, "[t]he heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party

asserting mootness." *Friends of the Earth*, 528 U.S. at 170 (emphasis added); *see Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1120 (9th Cir. 2020) (describing defendant's burden of showing mootness by voluntary cessation as "formidable" (quoting *Friends of the Earth*, 528 U.S. at 190)).[5]

Defendants do not come close to carrying that heavy burden here. For one, partially complying with a TRO—while challenging that TRO on appeal, resisting a preliminary injunction seeking similar relief, and calling the issuing judge an "idiot" who would cause "none of [the government's] operations … to change," PI Mot. 21—is hardly the sort of voluntary conduct that might make "absolutely clear [that] the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 190; *see also Barnes*, 980 F.2d at 580 ("commend[ing defendant] for his willingness to comply voluntarily with the preliminary injunction," but refusing to find issue relating to injunction moot).

Moreover, Defendants' appeal to security justifications that this Court squarely rejected only deepens concerns about Defendants' conduct moving forward—and certainly does not evidence the absolute clarity regarding non-recurrence that voluntary cessation requires. *Friends of the Earth*, 528 U.S. at 190. Defendants argue that modifications to visitation at B-18 since the Court entered the TRO have been "time limited responses to dangerous riots and building closure as required for the safety of detainees," and that future

[5] *Smith v. Helzer*, 95 F.4th 1207, 1226 (9th Cir. 2024) (Forrest, J., concurring), and *American Diabetes Association v. United States Department of the Army*, 938 F.3d 1147, 1152 (9th Cir. 2019), both cited by Defendants for the faulty proposition that the burden lies with Plaintiffs, Opp. 6–7, are not to the contrary. Judge Forrest's concurring opinion in *Smith* does not even address a defendant's voluntary cessation of the challenged conduct and is limited to a discussion of the mootness exception for "wrongs capable of repetition yet evading review." 95 F.4th at 1226. And *American Diabetes Association* confirms that where, as here, "'the Government asserts mootness based on [voluntary cessation,] it still must bear the heavy burden of showing that the challenged conduct cannot reasonably be expected to start up again.'" 938 F.3d at 1153 (quoting *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014)).

access restrictions cannot reasonably be expected to recur unless there are "similar riots." PI Opp. 7. The Court already rejected the notion that alleged "riots" in downtown Los Angeles excused the access restrictions that were previously imposed at B-18. TRO Order 26 n.18. And Defendants' repeated reference to "dangerous riots" finds next to no support in the factual record. Gudino refers to "scheduled anti-ICE protests" that were planned for July 25, Gudino Decl. ¶ 18, but does not identify any "dangerous riots" or explain why "protests"—a core First Amendment activity—require curtailing Fifth Amendment rights within B-18. *See also Hamdi v. Rumsfeld*, 542 U.S. 507, 539 (2004) ("[T]he constitutional limitations safeguarding essential liberties … remain vibrant even in times of security concerns."). Defendants' brief, for its part, cites two news sources for the proposition that access restrictions at B-18 have been precipitated by "riots." PI Opp. 5 n.5. But the ABC7 article refers to "[d]emonstrators march[ing] in downtown Los Angeles," and "[p]rotesters h[olding] up signs and flags as a 20-foot-ballon depicting Trump in a diaper accompanied the crowd."[6] There was no mention of "riots," and a video accompanying the article depicts entirely peaceful behavior.[7] And while the NBC4 article refers to "a rally and march at MacArthur Park," MacArthur Park is approximately an hour from B-18 on foot,[8] and there is no evidence that those far-away protesters posed any security threat relating to B-18.[9]

---

[6] *Anti-Trump Protestors March in DTLA as Part of Nationwide 'Rage Against the Regime' Rallies*, ABC7 (Aug. 3, 2025), https://abc7.com/post/anti-trump-protesters-march-la-part-rage-regime-rallies/17411282.

[7] *Id.*

[8] *Walking Map from 300 N. Los Angeles St, Los Angeles, CA 90012 to MacArthur Park, 2230 W. 6th St. Los Angeles, CA 90057*, Google Maps, https://maps.app.goo.gl/5mKJZeq6Kpc28Nz9A (last visited Sep. 9, 2025).

[9] *Protestors Descend Upon MacArthur Park in Opposition of Immigration Raids*, NBC4 (Aug. 9, 2025), https://www.nbclosangeles.com/news/local/macarthur-park-protest-immigration-raids/3762065.

*Finally*, even if CHIRLA and ImmDef's Fifth Amendment claim were moot, it would easily satisfy the exception for "wrongs capable of repetition yet evading review." *Ctr. for Biological Diversity v. Lohn*, 511 F.3d 960, 964 (9th Cir. 2007) (quoting *In re Burrell*, 415 F.3d 994, 998 (9th Cir. 2005)). Defendants argue that the exception does not apply because CHIRLA and ImmDef cannot demonstrate a reasonable expectation that they would be subject to the same access restrictions in the future. PI Opp. 6 (citing *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 836 (9th Cir. 2014)). But, as explained above, Defendants' access restrictions are plainly capable of repetition, as Defendants have repeatedly shut down access to the facility and imposed other obstacles to attorney access since this litigation was commenced, including after the Court's TRO. *Supra* at 2–5; Panicker Decl. ¶¶ 9–14. And CHIRLA and ImmDef, as nonprofit organizations whose core missions involve providing legal advice to noncitizens in the Los Angeles area, will certainly be harmed by future restrictions as they have in the past. *E.g.*, Salas Decl. ¶¶ 2–3; Toczylowski Decl. ¶¶ 2–4.

No matter how Defendants slice the facts, this case continues to present a live controversy, and the Court has jurisdiction to grant Plaintiffs preliminary injunctive relief.

**B. Plaintiffs Have Standing**

Defendants' next jurisdictional challenge begins by repackaging their mootness arguments. PI Opp. 8–10. While it is true that the Court must "possess jurisdiction at every stage of the litigation," PI Opp. 9 (quoting *Ctr. for Biological Diversity v. Exp.-Import Bank of the U.S.*, 894 F.3d 1005, 1011 (9th Cir. 2018)), standing concerns the "requisite personal interest that must exist at the commencement of the litigation" while mootness concerns the interest that "must continue through its existence," *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (citation omitted). This Court has already found that CHIRLA and ImmDef have standing, rejecting the same arguments premised on the same authorities that Defendants cite here, TRO Order 18–23; TRO Opp. 9–10 (invoking *FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024), *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), *Munns v. Kerry*, 782 F.3d

402 (9th Cir. 2015)); PI Opp. 8–10 (same), and nothing in Defendants' opposition satisfies an exception to the law-of-the-case doctrine, PI Mot. 11–12. In any event, Defendants' mootness-infused standing arguments fail for all the reasons set forth above. *Supra* at 1–8.

Defendants dedicate the remainder of their standing arguments to a discussion of third-party, next-friend, and associational standing that they lift from their TRO opposition. *Compare* PI Opp. 10–14, *with* TRO Opp. 10–15. But just as Plaintiffs made clear in the proceedings on the TRO, ECF 82 at 3, these are standing theories on which Plaintiffs do not and need not rely, PI Mot. 11–13 (arguing organizational standing); TRO Order 19–20 (finding organizational standing).

**C. The INA Is No Bar to the Court's Jurisdiction**

Finally, Defendants attempt to manufacture a categorical bar to judicial review of CHIRLA and ImmDef's Fifth Amendment claim. In two sparse paragraphs, they argue that 8 U.S.C. §§ 1252(a)(5) and (b)(9) channel that claim to the petition for review process, barring this Court from ever considering it. PI Opp. 8.

Section 1252(a)(5) provides that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter." Consistent with the statute's plain text, the Ninth Circuit has recognized that this provision "does not eliminate the ability of a court to review claims that are 'independent of challenges to removal orders.'" *Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012) (quoting *Singh v. Gonzalez*, 499 F.3d 969, 978 (9th Cir. 2007)).

Section 1252(b)(9), for its part, provides that judicial review pertaining to "questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." The Supreme Court has twice made clear that § 1252(b)(9) is a narrow and targeted provision that "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal,

or the process by which removal will be determined." *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 19 (2020) (cleaned up); *see Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018) (plurality opinion) (same). In other words, where plaintiffs "are not challenging any removal proceedings," § 1252(b)(9) "is certainly not a bar." *Regents*, 591 U.S. at 19; *accord Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810 (9th Cir. 2020) (same).

Here, CHIRLA and ImmDef are plainly not challenging any removal proceedings. Instead, they challenge government actions that have systematically interfered with their ability to provide legal services to prospective and existing clients detained at B-18. Those harms accrue independently of, and long before, an order of removal that might be entered in any individual detainee's removal proceeding, and any preliminary injunction entered by the Court in this case would be untethered from the removal process itself. For all these reasons, the INA does not strip the Court of jurisdiction over CHIRLA and ImmDef's claim.

The single case that Defendants cite in their brief does not support a different conclusion. *See* PI Opp. 8. In *J.E.F.M. v. Lynch*, the Ninth Circuit considered a claim by indigent minors in ongoing removal proceedings that they and others similarly situated had a right to government-appointed counsel for purposes of those proceedings. 837 F.3d 1026, 1029 (9th Cir. 2016). The court held that the plaintiffs' claim was jurisdictionally barred because it was "part and parcel of the removal proceeding itself." *Id.* at 1031; *see also id.* at 1033 (characterizing the plaintiffs' claim as "an inextricable part of the administrative [removal] process"). On its own terms, *J.E.F.M.* does not apply to the circumstances here: CHIRLA and ImmDef are not facing (and could not face) removal proceedings, and "the statute excludes from the [petition for review] process any claim that does not arise from removal proceedings." *Id.* at 1032. Moreover, *J.E.F.M.* was premised on an outdated view that § 1252(b)(9) is "vise-like in grip." *Id.* at 1031 (cleaned up). Since that decision, the Supreme Court has clarified that § 1252(b)(9) is "targeted" and inapplicable where plaintiffs "are not challenging any removal proceedings." *Regents*, 591 U.S. at 19; *see*

*Gonzalez*, 975 F.3d at 810 (recognizing Supreme Court's intervening precedent). Defendants do not acknowledge any of the more recent decisions by the Supreme Court or the Ninth Circuit, all of which foreclose the position that Defendants advance here.

## II. Plaintiffs Satisfy the Standard for a Preliminary Injunction

### A. Plaintiffs Are Likely to Succeed on the Merits

Defendants begin their discussion of the merits with the exact same confused account of the Fifth Amendment that they made previously. *Compare* PI Opp. 16–17, *with* TRO Opp. 15–16. But as this Court recognized, the legal principles underlying CHIRLA and ImmDef's claim are "fairly simple and non-controversial." TRO Order 2. The law assesses the "cumulative effect" of restrictions on access to counsel and prohibits the restrictions that undermine an immigrant's opportunity to retain and consult an attorney. *Id.* at 23–24 (discussing body of relevant caselaw). Those are the exact circumstances here. *Id.* at 24–27; PI Mot. 14–18.

Defendants also try to revive their argument that CHIRLA and ImmDef's claim fails because the organizations "do not identify a liberty interest" and cannot show "error or prejudice" arising from Defendants' unconstitutional conduct. PI Opp. 20–21; *see* TRO Opp. 18–19 (making identical claim). But that is a red herring. B-18 detainees, as Defendants acknowledge, "have the right to retain counsel." PI Opp. 21; *see also, e.g.*, *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 565–66 (9th Cir. 1990). And CHIRLA and ImmDef—organizations harmed by and with standing to challenge Defendants' unconstitutional conduct—need not identify an independent liberty interest to establish that Defendants have violated the Fifth Amendment rights of detainees. *E.g.*, *Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 126–27 (2d Cir. 2020) (public defender service had standing to challenge interference with clients' right to counsel); *see also Sierra Club v. Trump*, 929 F.3d 670, 700 (9th Cir. 2019) ("We are doubtful that a zone of interests test applies to Plaintiffs' equitable cause of action."). Nor do CHIRLA and ImmDef need to establish prejudice, a showing required in some circuits, if at all, when seeking to overturn an immigration judge's removal decision—not when seeking to enjoin ongoing

unconstitutional conduct. *See Torres v. U.S. Dep't of Homeland Sec.*, 411 F. Supp. 3d 1036, 1062 (C.D. Cal. 2019) (rejecting argument that plaintiffs had to allege prejudice where challenging restrictions to legal access).

Finally, on the facts, Defendants argue that "prior access issues, specifically during the month of June, were limited in duration and tethered to operational security and safety concerns," while "temporary facility closures in response to dangerous riots during the month of July are no more persuasive." PI Opp. 19. Yet Defendants already lost in their efforts to "minimize the impact of the[] facts [relating to access restrictions in June] or characterize them as limited to a short period of time justified by nearby civil unrest," TRO Order 20, and Defendants—despite having almost two months to do so—have provided no additional evidence that would support a different conclusion today. *See* Gudino Decl. ¶¶ 17–21 (discussing access restrictions in July and August).

And that should be the end of the analysis. Defendants' discussion of access to counsel in July, after the Court entered a TRO that compelled Defendants to change their conduct, at most bears on mootness, not on the strength of CHIRLA and ImmDef's Fifth Amendment claim as alleged in the complaint. *See, e.g.*, *Gibbs v. Sanchez*, No. 16 Civ. 9013, 2018 WL 5903893, at *2 (C.D. Cal. Feb. 2, 2018) (likelihood of success pertains to "merits of the claims in the Complaint"). In any event, for all the reasons discussed above, Defendants' efforts to paint a rosy picture of TRO compliance and ease of access at B-18 is refuted by the record, *supra* at 2–5, and does nothing to detract from the likelihood that CHIRLA and ImmDef succeed on their claim.

### B. Plaintiffs Have Established Irreparable Harm

Defendants first argue that "this Court should not rely on outdated and conclusory affidavits to justify granting such an extraordinary remedy but rather should consider current conditions at B-18 as recounted by DHS officials that actually manage B-18 on a daily basis." PI Opp. 22. But the facts supporting a motion for a preliminary injunction can include those existing both before and after the granting of a TRO. *See Richter v. KRG Trading, Inc.*, No. 24 Civ. 03622, 2024 WL 3050812, at *2 (C.D. Cal. May 28, 2024) ("The

Court determines that the reasons initially justifying the issuance of a TRO are sufficient to justify the issuance [of] a preliminary injunction."); *see also O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) ("[P]ast wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury."). Here, perhaps the best evidence of what Defendants might do "in the absence of [an] injunction," *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011), is to look at what happened in the absence of an injunction—that is, before the TRO was in place. The Court found that that record overwhelmingly favored CHIRLA and ImmDef, *see* TRO Order 27–28, so it is no wonder Defendants want to distance themselves from it. Yet "[i]f compliance with the terms of a TRO were sufficient to defeat entry of a preliminary injunction, few—if any—cases would make it past the TRO stage." *Costa v. Bazron*, 464 F. Supp. 3d 132, 142 (D.D.C. 2020); *cf. Barnes*, 980 F.2d at 580 (recognizing that "[t]he court's power to grant injunctive relief survives discontinuance of the illegal conduct"). If it were otherwise, a defendant could simply push out the date for a preliminary injunction hearing—like Defendants did here, ECF 104 at 1—and claim interim compliance with the TRO to overcome the preliminary injunction motion.

Of course, the record demonstrating the risk of irreparable harm to CHIRLA and ImmDef is not limited to the extensive declarations submitted in connection with their TRO application. As discussed above, Plaintiffs' declarations show that there are continued issues relating to legal access at B-18 *despite* the TRO; Defendants' arguments seeking to justify their conduct conflict with the Court's prior legal analysis; and Defendants have made public statements denigrating this Court's TRO decision. *Supra* at 6; *see also Immigrant Defs. L. Ctr. v. Noem*, 781 F. Supp. 3d 1011, 1052 (C.D. Cal. 2025) (finding likelihood of irreparable harm based in part on defendants' "own statements").

Defendants' quibbling with the facts essentially rehashes the mootness argument discussed above. Defendants invoke the need to "maintain[] operational security for detainees, employees, and the public." PI Opp. 23. But, again, the evidence that Defendants have submitted does not reveal any "riots" or other security concerns inside B-18 that

would allow Defendants to disregard the Fifth Amendment and circumvent the TRO. *Supra* at 6–7. And Defendants' own course of conduct—in which they not once provided the requisite notice that "exigent circumstances require closure for the safety of human life or the protection of property," TRO Order 49—undermines the claim that such circumstances existed, *see* Craig Decl. ¶¶ 3–4, 8.

At bottom, Defendants' actions in restricting access to counsel at B-18 from early June to present is more than sufficient to show a likelihood of future irreparable harm.

**C. The Balance of the Equities and Public Interest Favor Plaintiffs**

On the remaining *Winter* factors—the balance of the equities and the public interest—Defendants argue that "[t]he government has a legitimate and significant interest in ensuring that immigration laws are enforced, and any limitation would severely infringe on the President's Article II authority." PI Opp. 24. But as the Court previously recognized, allowing individuals detained at B-18 to retain and consult with counsel does not prevent Defendants from enforcing immigration laws, and any theoretical burden on the President's immigration agenda "would be far outweighed by the harm to constitutional rights in the absence of an injunction." Order TRO 28; *see Hernandez v. Sessions*, 872 F.3d 976, 995–96 (9th Cir. 2017). Indeed, Defendants do not—and cannot—counter the law and record here that underscore the vital need to ensure unfettered access to counsel. The flow of information between attorneys and detained clients not only protects clients' rights at a pivotal time, but also is critical to addressing the inhumane conditions that individuals face at B-18, to understanding the full scope of Fourth Amendment and other legal violations preceding detention, and to providing individuals and families comfort in a time of great stress and upheaval. Defendants' cavalier and often antagonistic disregard for these interests remains unabated, and but for the Court's TRO would have prevailed entirely.

Defendants also argue that the requested injunction would somehow interfere with Defendants' ability to "tak[e] prompt, responsive action to preserve the safety of detainees." PI Opp. 24. But the requested preliminary injunction, like the TRO, would allow Defendants to modify operations at B-18 "for the safety of human life or the

protection of property," ECF 127-6 at 2; *see* TRO Order 49. Defendants ignore that provision in their opposition and certainly do not identify any way in which it is insufficient.

**III. Defendants' Remaining Arguments Have Already Been Rejected and Are Meritless in Any Event**

Defendants end their opposition with three underdeveloped arguments that this Court has already rejected.

Defendants first contend that this Court "should require security." PI Opp. 25. But Defendants do not grapple with this Court's wide discretion to waive the security requirement under Rule 65(c), *e.g.*, *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009), and this Court should do so here for the same reasons it did in connection with the TRO, *see* TRO Order 30; PI Mot. 24; *see also Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005) ("The district court has discretion to dispense with the security requirement, or to request mere nominal security, where requiring security would effectively deny access to judicial review." (citation omitted)).

Defendants next point to the Supreme Court's decision to *Trump v. CASA, Inc.*, 145 S. Ct. 2540 (2025), to argue that "[a]ny injunction must also be limited to named Plaintiffs." PI Opp. 25. The Court already considered this argument in determining the scope of the TRO, TRO Order 27, 30 n.21, which is identical to the preliminary injunction requested here, ECF 127-6, and the two sentences in Defendants' preliminary injunction opposition do not implicate an exception to the law-of-the-case doctrine, *see Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). Regardless, *CASA* made clear that an injunction is not invalid if it incidentally "advantage[s] nonparties." 145 S. Ct. at 2257 (citation and alteration omitted); *see also Nat'l TPS All. v. Noem*, No. 25-2120, 2025 WL 2487771, at *19 (9th Cir. Aug. 29, 2025) ("There is no rule, however, that nonparties must remain unaffected by the court's order."). It is unsurprising that opening B-18's doors so that CHIRLA and ImmDef attorneys may visit, or having phones available so that detainees may take steps to retain or consult them, will have such an incidental effect on nonparties. Defendants do

not even attempt to identify a narrower order that the Court might craft that would afford CHIRLA and ImmDef complete relief.

Finally, Defendants insist that they "have, at a minimum, satisfied the requirements for a stay of any injunction pending appeal." PI Opp. 25. But Defendants' position is nonsensical. As Defendants concede, there is "substantial overlap" between the stay factors and the preliminary injunction factors. *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). If CHIRLA and ImmDef show that they are likely to succeed on the merits such that they are entitled to a preliminary injunction, Defendants cannot simultaneously show that they are entitled to a stay based on the likelihood that they will overturn that injunction on appeal. *Nken*, 556 U.S. at 428–29. Moreover, Defendants cannot "meet [their] burden of showing irreparable harm." *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020); *see* PI Mot. 22–23. Indeed, "simply showing some possibility of irreparable injury is insufficient," *Doe #1*, 957 F.3d at 1058–59 (citation and quotation omitted), and Defendants have not even tried to do that.

**CONCLUSION**

The Court should grant the requested preliminary injunction.

Dated: September 10, 2025

Respectfully submitted,

MATTHEW J. CRAIG

**LOCAL RULE 11-6.2 CERTIFICATION**

The undersigned counsel of record for Plaintiffs Coalition for Humane Immigrant Rights and Immigrant Defenders Law Center certifies that this brief, in relevant part, contains fewer than 7,000 words, which complies with the requirements in Local Rule 11-6 and the Court's operative Civil Standing Order.

Dated: September 10, 2025

Respectfully submitted,

MATTHEW J. CRAIG