BRETT A. SHUMATE
Assistant Attorney General
Civil Division
DREW C. ENSIGN
Deputy Assistant Attorney General
TIBERIUS DAVIS
SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
JONATHAN K. ROSS
Senior Litigation Counsel
JASON K. ZUBATA
ANIELLO DESIMONE
JACOB A. BASHYROV
STEPHANIE L. GROFF
Trial Attorneys
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-5438
Email: Stephanie.L.Groff@usdoj.gov

BILAL A. ESSAYLI
First Assistant United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
ALEXANDER L. FARRELL (SBN 335008)
PAULINE H. ALARCON (SBN 345785)
Assistant United States Attorneys
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012
Tel: (213) 894-5557 | 3992
E-mail: Alexander.Farrell@usdoj.gov
Pauline.Alarcon@usdoj.gov

*Counsel for Defendants*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PEDRO VASQUEZ PERDOMO; *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security; *et al.*,<br><br>Defendants. | No. 2:25-cv-05605-MEMF-SP<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT [ECF 235]**<br><br>Hearing Date: January 15, 2026<br>Hearing Time: 10:00 a.m.<br>Location: First Street Courthouse<br>350 West First Street<br>Los Angeles, CA 90012<br>Courtroom 8B<br>8th Floor<br><br>Hon. Maame Ewusi-Mensah Frimpong<br>United States District Judge |

This case cannot proceed because Plaintiffs fail to identify any real or imminent injury sufficient for Article III jurisdiction. Their case rests on isolated, months-old encounters and points to no ongoing policy or practice—a gap the Supreme Court recognized in staying injunctive relief. Without a concrete, forward-looking injury tied to existing conduct, prospective relief must be dismissed.

## ARGUMENT

### I. Plaintiffs Lack Standing to Seek Prospective Relief for their Fourth Amendment Claims.

As detailed in Defendants' principal Motion, this Court should dismiss Plaintiffs' First Amended Complaint (ECF 16) ("FAC") under Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of subject matter jurisdiction, because Plaintiffs lack standing to pursue prospective equitable relief for both their Fourth and Fifth Amendment claims. ECF 235 ("Mot.") 6-10. Plaintiffs' FAC and their Opposition to Defendants' Motion (ECF 255) ("Opp'n") failed to demonstrate that past isolated encounters with federal agents are likely to recur, that they will be subjected to any unlawful conduct, or that organizational Plaintiffs' access to aliens detained at B-18 will be limited in the future. Mot. 6 (citing *Noem v. Perdomo*, 606 U.S. ___, 2025 WL 2585637, at *2 (Sept. 8, 2025) (Kavanaugh, J., concurring)). Defendants' Rule 12(b)(1) argument in support of dismissing Plaintiffs' FAC is a facial and factual attack, as Plaintiffs have not pled sufficient facts to satisfy *Lyons* and even so Defendants "dispute[] the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

First, Plaintiffs mischaracterize Defendants' lack-of-standing argument. Opp'n 13. That is incorrect. Defendants maintain Plaintiffs "must demonstrate standing separately for each form of relief sought." Mot. 6 (quotation omitted). Defendants' standing argument applies with equal force to all of Plaintiffs' claims. Plaintiffs cannot satisfy the basic requirements for standing, and—as the Supreme Court made clear in *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-11 (1983)—they have not shown that they are entitled to seek the relief they demand.

Next, that this Court and the Ninth Circuit previously found Plaintiffs have standing, *see, e.g.*, Opp'n 19, does not make its jurisdictional determination binding law of the case because this Court must ensure it "possess jurisdiction at every stage of the litigation." *See Ctr. for Biological Diversity v. Exp.-Import Bank*, 894 F.3d 1005, 1011 (9th Cir. 2018). Plaintiffs do not meet the requirements for standing.

Relatedly, Plaintiffs' reliance on the Ninth Circuit's decision upholding this Court's initial temporary restraining order ("TRO") is misguided, as Supreme Court subsequently stayed this Court's TRO. *Perdomo*, 2025 WL 2585637. By granting the stay, the Supreme Court *necessarily* held Defendants were likely to succeed on the merits. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). And because Defendants' appeal only raised purely legal issues, including as to standing, along with merits arguments as to Plaintiffs' Fourth Amendment claim, the Supreme Court necessarily agreed that Defendants are likely to succeed on one or both legal theories. Justice Kavanaugh's concurrence explains why Plaintiffs lack standing for a prospective injunction under *Lyons*, 461 U.S. at 111; substance Plaintiffs do not meaningfully address. *Perdomo*, 2025 WL 2585637, at *3-7 (Kavanaugh, J., concurring).

Additionally, Plaintiffs' claim that this Court should sidestep the Supreme Court's stay order as it was premised on the limited TRO record is irreconcilable with their claim that this Court should find they have jurisdiction because of the Ninth Circuit's decision upholding the Court's TRO. Opp'n 13-14. As Defendants maintained throughout this litigation, Plaintiffs' self-serving evidence that individuals were stopped, on what they subjectively believe to be unlawful reasons, is legally insufficient to demonstrate standing. *Lyons*, 461 U.S. at 110-11; *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013) (noting injuries cannot be speculative). Nor does Plaintiffs' reliance on *Nat'l TPS Alliance v. Noem*, 2025 WL 2661556 (9th Cir. Sept. 17, 2025) change the analysis. Opp'n 14. The Supreme Court stayed this Court's injunction based on legal reasoning, and that same reasoning applies here and forecloses Plaintiffs' claims.

Plaintiffs then misplace the burden of proof by claiming that Defendants have not provided evidence that named Plaintiffs will not be stopped again. Opp'n 15-16. Defendants do not have to produce evidence that Plaintiffs will not be stopped, nor do Plaintiffs cite authority to this effecr. Rather, Plaintiffs themselves must establish they would actually or imminently be stopped without "reasonable suspicion," which they have failed to demonstrate thus far. *See* Mot. 7-8.

Plaintiffs also claim that Defendants have an illegal policy within the District, where their officers stop individuals without an individual assessment of reasonable suspicion in violation of the Fourth Amendment. Opp'n 13. Yet, neither their FAC nor Opposition identify any unlawful policy, and instead rely on a few alleged illegal stops and isolated statements arising from discrete enforcement operations

during June 2025. *See generally* FAC; Opp'n. Defendants maintain that their policy and practice is to follow the statute, regulations, and case law relating to questioning and detaining individuals for immigration-related administrative violations, and for assessing reasonable suspicion taking into account the totality of circumstances. *See* 8 U.S.C. § 1357(a)(1)-(2); 8 C.F.R. §§ 287.5, 287.8; *United States v. Brignoni-Ponce*, 422 U.S. 873, 881-84 (1975). Plaintiffs cannot overcome this assertion, and Plaintiffs' failure to point to a formal policy or practice only confirms Plaintiffs cannot show—based on past conduct alone—the "real and immediate" threat of future injury required by *Lyons*. Despite Plaintiffs' claim to the contrary, Opp'n 16-18, their standing argument is precisely the kind of "past-is-prologue" theory rejected in *Lyons*, as Plaintiffs posit a speculative claim of future harm, and cannot show any realistic, immediate threat that they will likely be stopped and detained by agents who failed to demonstrate "reasonable suspicion" in rendering the stop. Mot. 7-8.

Moreover, Plaintiffs' FAC is speculative as to whether individual or organizational Plaintiffs' members were stopped by federal agents without reasonable suspicion in the first place, or that they will be subject to future stops without reasonable suspicion.[1] Plaintiffs' speculative claims as to the officers' intentions cannot serve as proof of illegal considerations or conduct. As noted in Defendants' motion, federal agents conduct stops by evaluating the totality of the circumstances—looking to objective factors such as location, conduct, and prior intelligence—and no Plaintiff (in their declaration or in the FAC) can or has plausibly alleged an officer initiated a stop based solely on a factor that alone would not demonstrate reasonable suspicion, such as ethnicity or language. *See Brignoni-Ponce*, 422 U.S. at 884; 8 U.S.C. § 1357(a)(1), (2); 8 C.F.R. § 287.5(a), (c). Plaintiffs' FAC also fails to show why individual Plaintiffs or unnamed members of organizational Plaintiffs would likely be stopped again, out of (what they themselves describe as) "thousands of members" who purportedly share similar characteristics and live within the District. Opp'n 16-18. Once again, Plaintiffs' claim is irredeemably speculative, and any vague, self-serving "evidence" they cite—to suggest that agents acted unlawfully and failed to establish reasonable suspicion prior to initiating a stop—is purely speculative and based solely on their own biased information and belief. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (holding speculative assertions

[1] Defendants acknowledge an incorrect citation in their motion regarding ICE Directive 11032.2. *See* Mot. at 7 n.1. Immigration officers conduct investigative stops, arrests, and site inspections consistent with 8 C.F.R. § 287.8.

that injury may occur sometime in the future is insufficient). In fact, Plaintiffs only point to (1) an unnamed organizational member detained on two separate occasions during raids at his employment, and (2) Plaintiff Viramontes's place of work was visited multiple times by agents, although he was only detained once, undercutting his claim of possibly being unlawfully detained or arrested in the future. Opp'n 15 (citing ECF 45-4, 163-6). Absent proof of an unlawful policy, or other evidence that such unlawful conduct is likely (as opposed to possible) to occur, these alleged encounters do not show Plaintiffs would be stopped again or that any agent previously or would now violate the Fourth Amendment by not properly forming reasonable suspicion for a detentive stop.

Organizational Plaintiffs fare no better. They rely on selective excerpts from the Ninth Circuit's order and on the size of their membership. Opp'n 16. But that prior ruling has no law-of-the-case effect, and regardless, the risk of future harm to their members remains entirely speculative. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 391 (2024). Finally, to the extent Plaintiffs seek to establish irreparable injury by their claimed "illegal [agency] policy," *see* Opp'n 18, which Defendants maintain does not exist as part of their factual attack of Plaintiffs' FAC, Plaintiffs have not demonstrated any real or immediate threat of being harmed to support a finding of standing. *See Safe Air for Everyone*, 373 F.3d at 1039.

## II. Plaintiffs Lack Standing for their Fifth Amendment Claims.

Plaintiffs also lack standing for their Fifth Amendment claims. In any event, those claims are now moot. To start, the right to counsel is an individual right. Yet, individual Plaintiffs admit that their claims are moot, so Plaintiffs only rely on organizational standing. Organizations cannot vicariously assert the rights of potential clients to access counsel, however, as their rights are not the ones being injured. Plaintiffs contend this Court's determination that organizational Plaintiffs have standing for the access-to-counsel claims is law of the case. Opp'n 19. Again, that does not control and this Court must ensure that it "possess[es] jurisdiction at every stage of the litigation," including when questions of mootness and standing arise. *See Ctr. for Biological Diversity*, 894 F.3d at 1011.

Plaintiffs have also not shown any "real and immediate" threat of future injury required by *Lyons*, because their evidence consists of isolated anecdotes that do not speak to the likelihood of prospective harm. *See* FAC ¶¶ 72-98. Plaintiffs also assert that Defendants did not address organizational Plaintiffs' standing based on their conditions-of-confinement claim. *See* Opp'n 19-20. However, Plaintiffs'

conditions-of-confinement claim and Counts VII and VIII are effectively an extension of their access to counsel claim. Thus, Defendants' standing arguments apply with equal force as organizational Plaintiffs cannot show any of their individual members would independently have standing to bring a non-speculative conditions-of-confinement claim themselves based on an actual or imminent prospective injury. *See* FAC ¶¶ 242-47; *see also Clapper*, 568 U.S. at 409. Ultimately, Plaintiffs have not shown a qualifying threat of future harm necessary to establish standing to raise their constitutional claims.

Even if Plaintiffs had standing at some point, standing is now moot because the challenged conditions were temporary, have ceased, and cannot reasonably be expected to recur. Mot. 10-12. First, the individual Plaintiffs have all been released from DHS custody, ECF 143, a fact that Plaintiffs do not engage with when addressing Defendants' mootness challenge. Opp'n 20-21; *see* ECF 143 at 4. Yet, Plaintiffs' Opposition later acknowledges in a footnote that individual Plaintiffs can be dismissed as to the Fifth Amendment claims having now been released on bond. Opp'n 24 n.9. By Plaintiffs' own assertion, individual Plaintiffs (the only ones who were or could be detained at B-18) no longer present a live controversy as to their Fifth Amendment claims, and this Court must dismiss them as to those claims. Mot. 11. Relatedly, the Government has and continues to provide B-18 detainees with access to counsel—subject to modifications based on "exigent circumstances requir[ing access] closure for the safety of human life or the protection of property," ECF 87 at 49. Indeed, Plaintiffs even acknowledge "improvements" made by Defendants to ensure access to counsel, irrespective of facility closure. Opp'n 20.

Further, there is no evidence in the record to suggest future modifications to the operating schedule at B-18 will occur absent similar riots justifying restrictions, or minor delays that do not entirely limit detainees' access to counsel. *See* ECF 87 at 49 (recognizing exigent circumstances may justify closure); *e.g.*, ECF 127-3 ¶ 3 (alleging a 20-minute wait in seeing a prospective client). Plaintiffs fail to demonstrate that their claims are not moot and that there is ongoing harm; rather, Plaintiffs argue because this Court previously granted a TRO relating to conditions at B-18, Defendants cannot meet their burden to demonstrate mootness related to their Fifth Amendment claims. *Id.* 20. Regardless, a Court must ensure that it has jurisdiction at every stage of litigation. *See Ctr. for Biological* Diversity, 894 F.3d at 101. Defendants seek dismissal under Rule 12(b)(1), which is separate and distinct from Plaintiffs' TRO and

Preliminary Injunction requests, and which abide by a different evidentiary standard and burden of proof. Additionally, while Plaintiffs allege Defendants do not address their conditions-of-confinement claims, Opp'n 21 n.5, that claim is merely an extension of their access-to-counsel claims untethered to any Fifth Amendment due process right of organizational Plaintiffs that is left unsatisfied or infringed upon, *infra* § IV; *see* FAC ¶¶ 242-244 (discussing conditions as hindering detainees' "opportunity to consult [with] counsel."). Both are rendered moot by improvements Plaintiffs acknowledge and counsels' ability to access detainees at B-18.

Finally, Plaintiffs' "wrongs capable of repetition yet evading review" claim is nonsensical as Plaintiffs have secured review before this Court. Even if the Court were to dismiss Plaintiffs' claims, it would be without prejudice, in which case Plaintiffs could bring suit if Defendants do not abide by the contours of due process under the Fifth Amendment. Accordingly, the Court should find that Plaintiffs cannot retain the live controversy alleged because the previously challenged modifications are no longer in force at B-18.

**III. Section 1252 Bars this Court's Jurisdiction over Fifth Amendment Claims**

Defendants maintain that this Court lacks jurisdiction to grant Plaintiffs' request for Fifth Amendment relief. *See* 8 U.S.C. § 1252(a)(5), (b)(9). Importantly, Plaintiffs concede that individual Plaintiffs' claims are now moot Fifth Amendment challenges and that they "are in active immigration proceedings where they can raise the claim." Opp'n 24 n.9. This certainly implicates 8 U.S.C. § 1252(a)(5)'s bar because (1) the challenged conditions arise from actions taken "to remove an alien"; and (2) now being in removal proceedings, that would be the proper forum for raising any constitutional challenges related to access to counsel after they were arrested to begin the process of removing them. Plaintiffs, however, argue that because both CHIRLA and ImmDef cannot be subjected to removal proceedings, the Court retains jurisdiction over their Fifth Amendment claims. Opp'n 21-22. Plaintiffs cannot have it both ways. If anything, their argument that Organizational Plaintiffs cannot face removal proceedings lends support to Defendants' argument that they lack standing and failed to provide any evidence of concrete harm to themselves, let alone to individual organizational members. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 440 (2021). Plaintiffs' access-to-counsel claims inherently relate to either past, current, or prospective clients CHIRLA and ImmDef represent, all of whom will likely be able to

raise access-to-counsel, and by extension conditions-of-confinement claims, in their individual removal proceedings, as the Ninth Circuit envisioned in its review of the jurisdictional bar, *see* Mot. 12 (discussing the considerations and rationale for the court's ruling in *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031-36 (9th Cir. 2016)). Further, given individual Plaintiffs admit their Fifth Amendment claims are moot, organizational Plaintiffs cannot demonstrate *they* have rights left unfulfilled or otherwise violated. The Fifth Amendment's Due Process Clause requires the Government to provide adequate procedures before it can deprive a person of certain liberty or property interests. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Organizational Plaintiffs identify no cognizable liberty interest that has been infringed upon or otherwise left unsatisfied, or any prejudice from any temporary restrictions at B-18. Accordingly, this Court should dismiss Plaintiffs' Fifth Amendment claims as foreclosed under § 1252.

**IV. Plaintiffs Fail to State a Fourth Amendment Claim.**

Even assuming jurisdiction, which is defective for reasons provided above, the FAC fails to state constitutional violations under the Fourth Amendment, as officers permissibly rely on totality of circumstances, which cannot be limited by any court's mandate, before engaging in a detentive stop. At the outset, Plaintiffs claim Defendants' underlying motion does not challenge the sufficiency of the FAC's counts. *See* Opp'n 22 n.7. This is incorrect. Defendants made clear that officers must consider the totality of the circumstances, which cannot be unreasonably restricted by limiting the factors to be considered in totality. Plaintiffs have not demonstrated unlawful stops or arrests, beyond citing biased, one-sided accounts of arrests that do not speak to the officers' rationale in engaging in a stop or arrest, including whether the aliens themselves initiate contact with the officer.

Plaintiffs' Opposition asks this Court to interfere with the Executive Branch's ability to conduct lawful immigration enforcement by restricting basic Fourth Amendment principles and common-sense considerations as part of the totality-of-the-circumstances analysis. Mot. 12-13; Opp'n 22-23. Defendants acknowledge that certain considerations taken in isolation will not alone support reasonable suspicion for an investigative stop, for instance an individual speaking Spanish; however, immigration agents conduct investigative stops based on the totality of the circumstances, *see Brignoni-Ponce*, 422 U.S. at 885 n.10, and that inquiry is not susceptible to a Court's categorical rules restricting immigration agents from determining reasonable suspicion across large swaths of a population. As stressed in Defendants'

principal motion, law enforcement may consider multiple contextual factors in forming reasonable suspicion regarding immigration status, and the Supreme Court has rejected rigid rules that exclude certain factors from consideration or treat them as carrying no weight. *See United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000); *United States* v. *Arvizu*, 534 U.S. 266, 273-74 (2002). Reasonable suspicion is a low bar—lower than probable cause—and the high prevalence of illegal aliens *should* enable agents to stop a relatively broad range of individuals: "[A] large segment" of the relevant population is engaged in violating the law, and an even larger portion may validly trigger reasonable suspicion, which is a standard that requires far less than 50-percent certainty. *See United States v. Sokolow*, 490 U.S. 1, 7 (1989) ("The concept of reasonable suspicion, like probable cause, is not readily, or even usefully, reduced to a neat set of legal rules.") (internal quotations omitted). Plaintiffs claim that officers are impermissibly detaining individuals without proper evaluation of reasonable suspicion and instead relying on factors they claim as unlawful, such their apparent ethnicity, does not account for the fact that officers must evaluate a variety of factors under the totality of the circumstances. In some contexts, certain factors alone may not suffice. But that just proves that reasonable suspicion claims are inherently individualized and cannot be brought as sweeping programmatic suits seeking broad injunctive relief. *See Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (en banc) (noting in Fourth Amendment cases, the "standard—reasonableness—is always a very fact-specific inquiry.").

**V. Plaintiffs Fail to State a Fifth Amendment Claim.**

Plaintiffs also fail to establish Fifth Amendment claims, they acknowledge that individual Plaintiffs have all been released on bond and thus ask the Court to dismiss their claims as moot. Opp'n 24 n.9. Leaving only organizational Plaintiffs CHIRLA and ImmDef, they contend that that Defendants' arguments have been rejected by this Court in the TRO proceedings. *Id.* at 24-26.[2] Plaintiffs, however, are not entitled to the same due process protections as individual aliens in removal proceedings. Mot. 14-17. Defendants asserted legitimate governmental interests that justify the minimal and temporary modifications of access to organizational Plaintiffs' current and prospective clients during the brief

[2] Plaintiffs cannot rely on the purported "law of the case" here because Defendants' Motion must be decided under the Rule 12(b)(6) standard, which is concerned with testing sufficiency of the pleadings' allegations (i.e., what is alleged in the FAC). *Diaz v. Century Pac. Inv. Corp.*, CV 91-1329-WMB, 1991 U.S. Dist. LEXIS 21746, at *17 (C.D. Cal. Dec. 16, 1991). The Court is limited to evidence presented in the FAC and "conclusory allegations of law and unwarranted inferences will not defeat [the motion to dismiss.]" Mot. 6 (quoting *Miranda v. Clark County, Nev.*, 279 F.3d 1102, 1106 (9th Cir. 2002)).

periods in which B-18 access was modified for security reasons during June. Mot. 15-16. None of those modifications were aimed at preventing detainees from contacting counsel and receiving legal advice; instead, they were responsive to the volatile situation at hand. *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 565 (9th Cir. 1990). Defendants maintain they have a reasonable interest in securing detention facilities. *See Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 328 (2012) ("[W]hether a policy is reasonably related to legitimate security interests is peculiarly within the province and professional expertise of corrections officials.").

Relatedly, Defendants maintain that Plaintiffs' due process claim fails because they have not identified a liberty interest, nor do they establish error or prejudice. Mot. 16-17. Rather than engage with our caselaw, Plaintiffs cite out-of-circuit authority as well as a case that has no bearing on this litigation. Specifically, Plaintiffs cite *Torres v. DHS*, 411 F. Supp. 3d 1036, 1062 (C.D. Cal. 2019) to claim that prejudice is not a requirement, but that case considered prejudice in the context of reversing administrative proceedings, which is not at issue here. Plaintiffs cannot simply disavow their burden for asserting rights on behalf of unnamed aliens.

To the extent Plaintiffs claim Defendants did not engage with their conditions-of-confinement claim, Opp'n 25 n.10, Defendants maintain that this claim is an extension of their access-to-counsel claim, and Plaintiffs have not properly raised a Fifth Amendment violation related to conditions or access to counsel. Opp'n 25 n.10. Nevertheless, this Court must decide only "whether particular restrictions and conditions accompanying . . . detention amount to punishment." *Bell v. Wolfish*, 441 U.S. 520, 538 (1979) (nothing party must establish a connection between the "particular restrictions [or] conditions" at the facility and the alleged deterrence). Plaintiffs may only challenge the conditions that *they* personally faced or will imminently face. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992) (holding an injury cannot be "particularized" unless it "affect[s] the plaintiff in a personal and individual way"). Given individual Plaintiffs admit their claims should be dismissed, Opp'n 24 n.9, organizational Plaintiffs cannot demonstrate *they* have rights left unfulfilled or otherwise violated, and this Court should reject organizational Plaintiffs attempt to blur the line between their alleged injury and that of detainees. *See* Mot. 17.

**VI. Plaintiffs Fail to State Any APA Violation.**

Plaintiffs' post-hoc Administrative Procedure Act ("APA") analysis in their Opposition cannot supplement the arguments raised in their FAC. *See Bassam v. Bank of Am.*, No. CV 15-00587-MMM, 2015 U.S. Dist. LEXIS 193513, at *28 n.54 (C.D. Cal. Nov. 3, 2015) (collecting cases). Nevertheless, none of the counts in Plaintiffs' complaint tether themselves to the APA, *see generally* FAC, Counts I through VIII, beyond claiming a final agency action exists.

Even assuming Plaintiffs' cursory legal statements were sufficient to raise an APA claim, Plaintiffs' vague APA argument does not actually identify a final agency action, Opp'n 26, and instead alleges a policy of violating various statutory provisions without tethering it to concrete examples of violating those statutes, FAC ¶¶ 223, 228, 232, 240. Plaintiffs reply on Defendants' "policies and practices," Opp'n 26, without identifying a formal policy or practice in support. *See Miranda*, 279 F.3d at 1106. Plaintiffs mount a programmatic challenge to how immigration enforcement operations have been carried out in the District. FAC ¶ 1 (seeking to enjoin "Defendants' ongoing pattern of practice . . . in connection with ongoing immigration raids in the Los Angeles area."). They effectively seek "wholesale improvement of [a] program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made." *Lujan*, 497 U.S. at 891. But the APA does not permit such challenges,. *Norton v. SUWA*, 542 U.S. 55, 66-67 (2004). But even if the Court construed Plaintiffs' claims as a challenge to officers' arrests of individual Plaintiffs (and similarly situated persons not party to this litigation), such stops and arrests are committed to agency discretionary authority under 8 U.S.C. § 1357, and are thus unreviewable under the APA, 5 U.S.C. § 701(a)(2). Individual arrests, absent a clear policy, are not final agency actions that can be challenged under the APA. *See Bogomazov v. DHS*, 2022 WL 769801, at *17 (S.D. Fla. Feb. 27, 2022).

**CONCLUSION**

For the reasons in Defendants' principal motion and reinforced here, the Court should dismiss Plaintiffs' FAC. Plaintiffs fail to address Defendants' futility argument, Mot. 18, waiving the same. *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990). Accordingly, the Court should grant Defendants' motion.

Dated: November 19, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

TIBERIUS DAVIS
SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General

JONATHAN K. ROSS
Senior Litigation Counsel

JASON K. ZUBATA
ANIELLO DESIMONE
JACOB A. BASHYROV
Trial Attorneys

*/s/ Stephanie L. Groff*
STEPHANIE L. GROFF
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-5438
Email: Stephanie.L.Groff@usdoj.gov

*Counsel for Defendants*

**L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record certifies that this filing is 4,112 words, which complies with L.R. 11-6.1 and this Court's Standing Order, Part VIII.C.

Dated: November 19, 2025

Respectfully submitted,

*/s/ Stephanie L. Groff*
STEPHANIE L. GROFF
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice

*Counsel for Defendants*