STACY TOLCHIN (SBN 217431)
*stacy@tolchinimmigration.com*
LAW OFFICES OF STACY TOLCHIN
776 E. Green St., Suite 210
Pasadena, CA 91101
Tel: 213-622-7450; Fax: 213-622-7233

MOHAMMAD TAJSAR (SBN 280152)
*mtajsar@aclusocal.org*
MAYRA JOACHIN (SBN 306065)
*mjoachin@aclusocal.org*
EVA BITRÁN (SBN 302081)
*ebitran@aclusocal.org*
DAE KEUN KWON (SBN 313155)
*akwon@aclusocal.org*
STEPHANIE PADILLA (SBN 321568)
*spadilla@aclusocal.org*
DIANA SÁNCHEZ (SBN 338871)
*dianasanchez@aclusocal.org*
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017-4022
Tel: 213-977-5232; Fax: 213-201-7878

*Counsel for Stop/Arrest Plaintiffs*

(*Additional counsel listed on next page*)

MARK ROSENBAUM (SBN 59940)
*mrosenbaum@publiccounsel.org*
REBECCA BROWN (SBN 345805)
*rbrown@publiccounsel.org*
SOPHIA WRENCH (SBN 354416)
*swrench@publiccounsel.org*
RITU MAHAJAN (SBN 252970)
*rmahajan@publiccounsel.org*
GINA AMATO (SBN 215519)
*gamato@publiccounsel.org*
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Counsel for All Plaintiffs*

ANNE LAI (SBN 295394)
*alai@law.uci.edu*
UC IRVINE SCHOOL OF LAW
IMMIGRANT AND RACIAL JUSTICE
SOLIDARITY CLINIC
P.O. Box 5479
Irvine, CA 92616-5479
Tel: 949-824-9894; Fax: 949-824-2747

*Counsel for Stop/Arrest Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

Pedro VASQUEZ PERDOMO; Carlos Alexander OSORTO; and Isaac VILLEGAS MOLINA; Jorge HERNANDEZ VIRAMONTES; Jason Brian GAVIDIA; LOS ANGELES WORKER CENTER NETWORK; UNITED FARM WORKERS; COALITION FOR HUMANE IMMIGRANT RIGHTS; IMMIGRANT DEFENDERS LAW CENTER,

Plaintiffs,

v.

Kristi NOEM, in her official capacity as Secretary, Department of Homeland Security; Todd M. LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement;

Case No.: 2:25-cv-05605-MEMF-SP

***DISCOVERY MATTER***

**JOINT STIPULATION RE: PLAINTIFFS' AND INTERVENORS' MOTION TO COMPEL DISCOVERY**

Hon. Maame Ewusi-Mensah Frimpong

Referred to Hon. Sheri Pym
United States Magistrate Judge

Next Status Conference
Date: November 25, 2025
Time: 10:00 a.m.
Expedited Discovery
Production Cutoff: November 21, 2025

Rodney S. SCOTT, in his official capacity as Commissioner, U.S. Customs and Border Patrol; Michael W. BANKS, in his official capacity as Chief of U.S. Border Patrol; Kash PATEL, in his official capacity as Director, Federal Bureau of Investigation; Pam BONDI, in her official capacity as U.S. Attorney General; Ernesto SANTACRUZ JR., in his official capacity as Acting Field Office Director for Los Angeles, U.S. Immigration and Customs Enforcement; Eddy WANG, Special Agent in Charge for Los Angeles, Homeland Security Investigations, U.S. Immigration and Customs Enforcement; Gregory K. BOVINO, in his official capacity as Chief Patrol Agent for El Centro Sector of the U.S. Border Patrol; Jeffrey D. STALNAKER, in his official capacity as Acting Chief Patrol Agent, San Diego Sector of the U.S. Border Patrol; Akil DAVIS, in his official capacity as Assistant Director in Charge, Los Angeles Office, Federal Bureau of Investigation; Bilal A. ESSAYLI, in his official capacity as U.S. Attorney for the Central District of California,

Defendants.

JACOB S. KREILKAMP (SBN 248210)
*jacob.kreilkamp@mto.com*
JAMIE LUMA (SBN 331610)
*jamie.luma@mto.com*
SARA H. WORTH (SBN 341088)
*sara.worth@mto.com*
HENRY D. SHREFFLER (SBN 343388)
*henry.shreffler@mto.com*
MAGGIE BUSHELL (SBN 354048)
*maggie.bushell@mto.com*
KYLE A. GROVES (SBN 358085)
*kyle.groves@mto.com*
MUNGER, TOLLES & OLSON LLP
350 S. Grand Ave., 50th Floor
Los Angeles, CA 90071
Tel: 213-683-9100; Fax: 213-683-9100

*Counsel for Stop/Arrest Plaintiffs*

LAUREN MICHEL WILFONG*
*lwilfong@ndlon.org*
NATIONAL DAY LABORER ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Tel: 626-214-5689

*Counsel for Stop/Arrest Plaintiffs*

BREE BERNWANGER (SBN 331731)
*bbernwanger@aclunc.org*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel: 415-621-2493

*Counsel for Stop/Arrest Plaintiffs*

BRISA VELAZQUEZ OATIS (SBN 339132)
*bvoatis@aclu-sdic.org*
ACLU FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Tel: 619-398-4199

*Counsel for Stop/Arrest Plaintiffs*

MATTHEW J. CRAIG (SBN 350030)
*mcraig@heckerfink.com*
MACK E. JENKINS (SBN 242101)
*mjenkins@heckerfink.com*
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Tel: 212-763-0883; Fax: 212-564-0883

*Counsel for Access/Conditions Plaintiffs*

EDGAR AGUILASOCHO (SBN 285567)
*eaguilasocho@farmworkerlaw.com*
MARTÍNEZ AGUILASOCHO LAW, INC.
900 Truxtun Ave, Suite 300
Bakersfield, CA 93301
Tel: 661-859-1174

*Counsel for Plaintiff United Farm Workers*

CARL BERGQUIST*
*cbergquist@chirla.org*
COALITION FOR HUMANE IMMIGRANT RIGHTS
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

*Counsel for Plaintiff Coalition for Humane Immigrant Rights*

ALVARO M. HUERTA (SBN 274787)
*ahuerta@immdef.org*
BRYNNA BOLT (SBN 339378)
*bbolt@immdef.org*
ALISON STEFFEL (SBN 346370)
*asteffel@immdef.org*
IMMIGRANT DEFENDERS LAW CENTER
634 S. Spring St., 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

*Counsel for Plaintiff Immigrant Defenders Law Center*

* Admitted pro hac vice

HYDEE FELDSTEIN SOTO
(SBN 106866)
City Attorney
hydee.feldsteinsoto@lacity.org
VALERIE L. FLORES (SBN 138572)
valerie.flores@lacity.org
MICHAEL J. DUNDAS (SBN 226930)
mike.dundas@lacity.org
MARIA LOUISE COUSINEAU
(SBN 122280)
maria.cousineau@lacity.org
RANDALL G. SOMMER
(SBN 214099)
randall.sommer@lacity.org
SHUBHRA SHIVPURI (SBN 295534)
shubhra.shivpuri@lacity.org
OFFICE OF THE LOS ANGELES
CITY ATTORNEY
City Hall 200 North Spring Street
21st Floor
Los Angeles, CA 90012-4130
Tel.: 213-922-8382; Fax: 213-978-7957

*Attorneys for Intervenor City of Los Angeles*

E. MARTIN ESTRADA
(SBN 223802)
martin.estrada@mto.com
DANIEL B. LEVIN (SBN 226044)
daniel.levin@mto.com
JOHN L. SCHWAB (SBN 301386)
john.schwab@mto.com
V. GRACE DAVIS (SBN 336732)
grace.davisfisher@mto.com
V. ROMAN LEAL (SBN 348892)
roman.leal@mto.com
WENDY QIUYU XIAO (SBN 342702)
wendy.xiao@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
50th Floor
Los Angeles, California 90071
Tel.: 213-683-9100; Fax: 213-687-3702

*Attorneys for Intervenors Cities of Los Angeles, Anaheim, Bell Gardens, Beverly Hills, Carpinteria, Culver City, Huntington Park, Long Beach, Lynwood, Montebello, Monterey Park, Oxnard, Paramount, Pico Rivera, Pomona, Santa Ana, Santa Barbara, Santa Monica, South Gate, and West Hollywood*

NICOLE DAVIS TINKHAM (SBN 229592)
ntinkham@counsel.lacounty.gov
LILIANA CAMPOS (SBN 255753)
lcampos@counsel.lacounty.gov
BRIGIT GREESON ALVAREZ (SBN 237301)
bgreesonalvarez@counsel.lacounty.gov
OFFICE OF THE COUNTY COUNSEL
648 Kenneth Hahn Hall of Admin.,
500 West Temple Street
Los Angeles, California 90012-2713
Tel.: 213-808-8736; Fax: 213-633-1915

*Attorneys for Intervenor County of Los Angeles*

MICHELE BEAL BAGNERIS (SBN 115423)
City Attorney
mbagneris@cityofpasadena.net
ARNOLD F. LEE (SBN 278610)
aflee@cityofpasadena.net
ANDREW AARONIAN (SBN 318245)
aaaronian@cityofpasadena.net
OFFICE OF THE CITY ATTORNEY
OF PASADENA
100 N Garfield Ave, Rm N-210
Pasadena, CA 91101
Tel.: 626-744-4141; Fax: 626-744-4190

*Attorneys for Intervenor City of Pasadena*

NORMAN L. EISEN*
Norman@democracydefenders.org
STEPHEN A. JONAS (SBN 542005)
Steve@democracydefenders.org
JOSHUA G. KOLB*
Joshua@democracydefenders.org
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave. SE, Suite 15180
Washington, DC 20003
Tel: (202) 594-9958

*Admitted *Pro Hac Vice*

*Attorneys for Intervenor City of Los Angeles*

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 25, 2025, at 11:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 4, 3rd Floor, of the above-captioned Court, located at 3470 Twelfth Street, Riverside, California 92501, Plaintiffs and Intervenors will and hereby do move for an order compelling Defendants to provide the following fact discovery:

Plaintiffs and Intervenors seek an order compelling Defendants (1) to comply with this Court's earlier order to produce all documents on which they relied in opposing Plaintiffs' motions for a Temporary Restraining Order ("TRO") and Preliminary Injunction ("PI) or to certify that they have done so, and (2) to produce documents that Defendants improperly withheld for privilege in their first production.

Pursuant to Federal Rule of Civil Procedure 37(a) and Local Rule 37-1, counsel for Plaintiffs and Defendant's counsel have met and conferred via teleconference and written correspondence. The parties held a telephonic conference on November 10 after exchanging written correspondence. The parties have been unable to reach agreement regarding the subject matter of this Motion. This Motion is based upon this Notice of Motion, the Joint Stipulation, the Declaration of Henry D. Shreffler and exhibits thereto, and any other papers or argument of counsel that may be filed or submitted in connection with this Motion.

DATED: November 21, 2025 MUNGER, TOLLES & OLSON LLP

By: */s/ Jacob S. Kreilkamp*
JACOB S. KREILKAMP
*Counsel for Stop/Arrest Plaintiffs*

DATED: November 21, 2025 UC IRVINE IMMIGRANT AND RACIAL JUSTICE SOLIDARITY CLINIC

By: */s/ Anne Lai*
ANNE LAI
*Counsel for Stop/Arrest Plaintiffs*

DATED: November 21, 2025

MUNGER, TOLLES & OLSON LLP

By: */s/ E. Martin Estrada*

E. MARTIN ESTRADA

*Counsel for Intervenors Cities of Los Angeles, Anaheim, Bell Gardens, Beverly Hills, Carpinteria, Culver City, Huntington Park, Long Beach, Lynwood, Montebello, Monterey Park, Oxnard, Paramount, Pico Rivera, Pomona, Santa Ana, Santa Barbara, Santa Monica, South Gate, and West Hollywood*

# TABLE OF CONTENTS

Page

I. PLAINTIFFS' AND INTERVENORS' INTRODUCTORY STATEMENT ....................... 1

II. DEFENDANT'S INTRODUCTORY STATEMENT ....................... 3

III. PLAINTIFFS' AND INTERVENORS' CONTENTIONS AND POINTS AND AUTHORITIES ....................... 6

- A. Factual Background ....................... 6
  - 1. The Basis for Expedited Discovery ....................... 6
  - 2. The District Court Permits Expedited Discovery to Test Defendants' Assertions ....................... 8
- B. The Scope of Production Dispute ....................... 9
  - 1. Defendants' Initial Production ....................... 9
  - 2. Meet and Confer Efforts ....................... 10
  - 3. Legal Contentions ....................... 10
- C. The Privilege Dispute ....................... 12
  - 1. Defendants' Initial Production and Privilege Logs ....................... 12
  - 2. Meet and Confer Efforts ....................... 13
  - 3. Legal Contentions ....................... 15
    - (a) Defendants Have Not Met Their Burden to Show the Withheld Documents are Attorney-Client Privileged ....................... 15
    - (b) Defendants Have Not Met Their Burden to Show the Withheld Documents are Attorney Work Product ....................... 17
    - (c) Any Protections Have Been Impliedly Waived ....................... 18

IV. DEFENDANTS' CONTENTIONS AND POINTS AND AUTHORITIES ....................... 20

- A. Factual and Procedural Background ....................... 20
  - 1. The Court's October 17 Order Granting Limited Discovery ....................... 20
  - 2. The Court's October 23 Discovery Schedule ....................... 21
  - 3. Plaintiffs' Request for Production ....................... 21
- B. The Scope of Production Dispute ....................... 22
  - 1. Defendants' Initial Production. ....................... 22

2. Defendants Faithfully Participated in Meet and Confer Efforts ..................22

3. Defendants' Response to Legal Contentions ..............................................23

C. The Privilege Dispute ......................................................................................24

1. Defendants' Initial Production and Privilege Logs .....................................24

2. Defendants Have and Continue to Cooperate with Plaintiffs in Resolving Privileges Disputes in a Timely Manner during the midst of ongoing Expedited Reciprocal Discovery. .............................................29

3. Legal Contentions .........................................................................................30

## I. PLAINTIFFS' AND INTERVENORS' INTRODUCTORY STATEMENT

Plaintiffs and Intervenors request that the Court **(1)** order Defendants to comply with this Court's October 23 order by immediately producing all responsive documents on which they relied in opposing Plaintiffs' motions for temporary restraining order and preliminary injunction, or alternatively, certify that they have done so, and **(2)** overrule Defendants' meritless privilege assertions.

**1.** Judge Frimpong granted Plaintiffs and Intervenors expedited discovery in order to test Defendants' factual assertions related to the pending motion for a preliminary injunction. Judge Frimpong noted that Defendants should be able to promptly produce the documents they reviewed "before submitting sworn declarations about the stops and filing signed briefs explaining that all of the stops were legal."[1] Accordingly, this Court ordered Defendants to produce "documents they relied on in opposing the motions for a temporary restraining order and preliminary injunction" (hereafter "Reliance Materials") by November 4.[2] Defendants produced essentially nothing on November 4: they produced 35 heavily redacted documents, all of which appear to be general Fourth Amendment training materials responsive only to RFP No. 1. Defendants produced *zero* documents relating to the specific stops at issue in the TRO and PI briefing.

Defendants have since taken conflicting positions with respect to their compliance with the Court's order. In a November 7 letter to Plaintiffs regarding the scope of their November 4 production, Defendants contended that this Court ordered them to produce by that date *only* documents that are responsive to RFP No. 1. But during the November 14 telephonic status conference with the Court, Defendants represented to the Court that they produced responsive Reliance Materials that were *readily available* to counsel, and that other responsive Reliance Materials were in the hands of agency personnel and could not be produced by that date. Defendants' claimed lack of access to Reliance Materials does not make sense. Counsel had to have collected and reviewed the missing documents in order to file their briefs and declarations in

---

[1] Declaration of Henry D. Shreffler ("Shreffler Decl."), Ex. 12 [ECF 223] at 9.

[2] *Id.*, Ex 26 [ECF 227] at 4.

opposition to the TRO and PI if in fact they relied on them; it is unclear how or why they would have lost access to the relevant universe of documents between the date of filing those oppositions and November 4.

It appears that Defendants withheld responsive documents from Plaintiffs on November 4, provided Plaintiffs with an unreasoned and unreasonable explanation for their lack of compliance that redrew the Court's order in the way they saw fit, and then retreated from their position only after Plaintiffs brought the dispute to the attention of the Court. The Court should find that Defendants did not comply with its order and order them to immediately comply.

**2.** In addition to withholding broad categories of documents they were required to produce, Defendants have made wholesale unwarranted assertions of privilege and attorney work product. They claim that essentially all of the materials used to train officers are privileged, even though they have produced the same exact types of materials in other cases and courts have repeatedly held that general training materials are not privileged or work product. *See ACLU of S.D. & Imperial Counties v. U.S. Dep't of Homeland Sec.*, 2017 WL 9500949, at *10-11 (C.D. Cal. Nov. 6, 2017). Defendants also have waived any privilege or work product designation that might have applied to the training documents by putting the sufficiency of that training directly at issue.

Defendants' privilege logs are inscrutable and almost devoid of information. For the November 4 production, Defendants confusingly produced not one, but three, privilege logs—none of which included the kind of information necessary to substantiate a privilege claim. At least two (and maybe all three) of the logs had entries covering the exact same documents, making it unclear what the government's privilege position is with respect to those documents. Defendants have since produced two revised privilege logs, but even these revised logs lack the requisite detail.

Defendants should be ordered to immediately produce the documents they were ordered to produce by November 4—including documents responsive to any of Plaintiffs' RFPs—and their sweeping privilege claims over training materials should be overruled. Plaintiffs will file a supplemental brief addressing Defendants' new arguments on Monday, November 24, 2025.

## II. DEFENDANT'S INTRODUCTORY STATEMENT

Defendants have acted consistently with the Court's directives. In light of the Court's order allowing expedited discovery, Defendants moved quickly to set up the cross-agency coordination required to meet the accelerated schedule contemplated by the Court and to prepare the substantial volume of materials designated for rolling production. Those considerable efforts allowed Defendants to begin producing responsive materials consistent with the Court's November 4 deadline, and productions continue on a rolling basis as Defendants work to complete the remaining categories of materials. When Plaintiffs raised questions about the scope and presentation of that initial production, Defendants took those concerns seriously, engaged meaningfully with Plaintiffs, consulted the relevant agencies and components to evaluate the issues, and worked to explain the basis for the production and to expeditiously resolve or narrow the disputed points where possible.

"Plaintiffs seek an order that expands the expedited-discovery directives beyond the Court's intended scope and challenges issues still being addressed through the rolling process the Court contemplated. At the same time, Plaintiffs overstate alleged deficiencies and give limited acknowledgment to the accommodations and efforts Defendants made to engage with them constructively. Throughout this process, Defendants responded promptly, came prepared to address the issues Plaintiffs raised, and worked in good faith to narrow points of disagreement. Plaintiffs elected to bring this dispute to the Court even though the meet-and-confer process still offered a realistic path to further narrowing, making intervention at this stage unnecessary.

As discussed during the November 14 hearing, Defendants began implementing the Court's order immediately upon its issuance and made a timely November 4 production of materials responsive to Plaintiffs' first request for production. ECF 258, Nov. 14, 2025 Hearing Tr. ("Tr.") 7:14-23. That production included training and legal guidance documents that Defendants understood—consistent with both Plaintiffs' RFPs, and the Court's October 17 and 23 orders—to constitute the "documents relied upon" referenced in Defendants' opposition to Plaintiffs' TRO and preliminary injunction motions. Tr. 8:7-19. Defendants prioritized the most accessible materials for the initial deadline and continued collecting operational and video records for rolling production set to conclude on November 21. Tr. 8:15-16.

The Court confirmed that rolling schedule and expressly declined to find any violation of its prior orders. Tr. 22:19-23:9. The Court explicitly acknowledged that it had deliberately structured the first deadline—the November 4 requirement to capture the bulk of materials Defendants could reasonably produce on that timeline—recognizing that some records might not be immediately producible. Tr. 22:19-24. While acknowledging the short timeline and limitations to Defendants, the Court noted it had expected more records to be produced by the deadline but made clear that the timing did not constitute a violation and that the ongoing rolling process remained appropriate given the practical constraints. Tr. 22:25-23:9. After the hearing, Defendants asked Plaintiffs whether they would withdraw this portion of the dispute in light of the Court's clarification; Plaintiffs declined.

Plaintiffs' November 5 deficiency letter—which was served before Defendants had a chance to even provide its privilege log[3]—and their position above seeks to expand the Court's targeted, narrow discovery authorization, seeking all operational, evidentiary, and privileged materials underlying each identified enforcement stop—far beyond the training and guidance materials contemplated in the RFPs and the Court's orders. *See* Pls.' Ex. 5 at 1; ECF No. 223 ("Oct. 17 Exp. Disc. Or.") at 4-6. Plaintiffs' attempt to broaden that scope now is inconsistent with those rulings.

Throughout its productions, with the final privilege log to be produced by November 25, Defendants have and continue to assert relevant and necessary privileges over portions of the materials at issue, including the attorney-client privilege, attorney work-product doctrine, and confidentiality protections afforded to sensitive law-enforcement information. *See* Pls.' Ex. 7 at 2. These materials include legal analysis prepared by agency counsel, discussions of how legal standards apply in operational contexts, and internal guidance that implicates the kinds of protections the Court has previously recognized may apply in this case. *See* ECF No. 223 at 6. Plaintiffs' challenges to those designations—raised even before reviewing the full privilege logs—do not account for the process the Court established for handling such issues on a rolling basis. *See* Pls.' Ex. 7. Consistent with that process, Defendants addressed issues as they arose. In some

[3] The Court required Defendants to produce privilege logs within three days of each production. ECF No. 227 at 4.

instances, inadvertent errors occurred, and Defendants corrected them once identified. In others, the parties simply held differing views about the proper scope of production under the Court's expedited-discovery directives or the reach of well-established privilege doctrines. Defendants made targeted adjustments where doing so would advance the exchange of information without compromising protected material. Plaintiffs' objections overlook these efforts and instead treat ordinary points of process and legal interpretation as if they were noncompliance.

In short, Plaintiffs' motion rests on an expansive and unsupported reading of the Court's orders, largely overlooks Defendants' compliance and the ongoing rolling schedule, and equates procedural disagreements with noncompliance. Defendants produced the materials required by the Court's initial deadline, are producing additional documents on a rolling basis, and continue working with Plaintiffs to resolve issues without Court intervention. Tr. 7:9-10, 12-13. The Court should deny Plaintiffs' Motion to Compel, allow for discovery to continue in the normal course, and reaffirm that Defendants remain in compliance with the governing discovery schedule and directives.

Finally, the Court emphasized during the November 14 hearing the importance of resolving discovery issues collaboratively and efficiently. Defendants remain committed to continuing that approach, working with Plaintiffs to narrow outstanding disputes and complete the production schedule the Court established, thereby avoiding unnecessary motion practice and promoting judicial economy.

Defendants also renew their request to file a supplemental memorandum under Local Rule 37-2.3 in response to Plaintiffs' motion to compel. Tr. 26:9-12. Plaintiffs state that they intend to file a supplemental memorandum on November 24. Defendants request that the Court allow all parties to file their supplemental memoranda by November 25. *See* L.R. 37-2.3 (which typically provides fourteen days for supplemental memoranda).

## III. PLAINTIFFS' AND INTERVENORS' CONTENTIONS AND POINTS AND AUTHORITIES

### A. Factual Background

#### 1. The Basis for Expedited Discovery

In early June, Defendants unleashed armed, masked agents to conduct raids across Southern California. Shreffler Decl., Ex. 13 [ECF 45] at 2–6, 15; *id.*, Ex. 14 [ECF 128] at 2. The operations were driven by immense pressure to meet arrest quotas, resulting in an officially sanctioned pattern and practice of detentive stops without reasonable suspicion, and deviating from Defendants' longstanding immigration enforcement practices. *Id.*, Ex. 14 [ECF 128] at 2–4, 10–12.

Plaintiffs moved for, and successfully obtained, a TRO from the District Court enjoining Defendants from making detentive stops based solely on four factors—apparent race and ethnicity, speaking Spanish or accented English, location, and occupation—alone or in combination. Shreffler Decl., Ex. 15 [ECF 87]. In their opposition to the TRO, Defendants offered no evidence bearing on whether any specific raids were lawful, but submitted declarations attesting that agents were trained on the Fourth Amendment and other applicable authorities. *See id.*, Ex. 16 [ECF 71-1 and 71-2] at 3-6, 8-10.

While Defendants appealed the TRO, Plaintiffs filed a Motion for Preliminary Injunction before the District Court asking for modified injunctive relief. Shreffler Decl., Ex. 14 [ECF 128]. Plaintiffs incorporated by reference the evidence submitted with their TRO application, and also offered additional evidence in support of standing and the merits of their Fourth Amendment claims, including evidence of Defendants' operations that took place while the TRO was in effect. *Id.*; *id.*, Ex. 17 [ECF 163]. Intervenors joined Plaintiffs' motion and submitted additional evidence documenting the impact of Defendants' raids on both local governments in and residents of the Central District.

Defendants opposed the motion. Shreffler Decl., Ex. 18 [ECF 170]; *id.*, Ex. 22 [ECF 178]. In their opposition, Defendants claimed that the challenged stops were lawful, in part because their officers and agents "are repeatedly trained on" and follow "Fourth Amendment case law" and

"Ninth Circuit precedent." *Id.*, Ex. 18 [ECF 170] at 17; *id.* at 21 (similar); *see id.*, Ex. 19 [ECF 170-2] at 3; *id.*, Ex. 20 [ECF 170-3] at 3-4. Defendants also claimed that their agents and officers were trained on "compliance" with the District Court's TRO. *Id.*, Ex. 22 [ECF 178] at 2–3. Defendants submitted no actual training materials to support those assertions.

Defendants also attempted to defend the constitutionality of specific stops at issue in the motion with declarations claiming that the stops were based on "intelligence," "actionable intelligence," and "operation-specific intelligence."[4] Shreffler Decl., Ex. 22 [ECF 178] at 5; *see also, e.g., id*. ("All of Plaintiffs' evidence reflects encounters that fall into these constitutional buckets. To start, on August 6, 2025, the Border Patrol ran a targeted operation at the Westlake Home Depot based on intelligence, resulting in several encounters….On August 7, 2025, CBP conducted a targeted operation at the San Bernardino Home Depot based on actionable intelligence about specific individuals and their immigration status associated with that location."). Again, Defendants provided no documentation of this intelligence.

Finally, Defendants attempted to justify countless individual stops referenced in Plaintiffs' preliminary injunction papers with declarations from officers who either were not present at the stop itself, or who were present but did not witness the initial seizure in question. Shreffler Decl., Ex. 24 [ECF 170-1] (Agent C217 Decl.); *Id.*, Ex. 19 [ECF 170-2] (Parra Decl.); *Id.*, Ex. 20 [ECF 170-3] (Quinones Decl.); *Id.*, Ex. 25 [ECF 178-1] (Molina Decl.). Defendants submitted no contemporaneous records of any of the stops, but represented that they "would have" consulted "operational files" in order to draft the declarations justifying the stops at issue. *Id.*, Ex. 29 [ECF 214-1] at 8.

In summary, Defendants pointed to the sufficiency of their training; certain pre-stop intelligence reports and targeting packets; and operational files to justify the legality of their stops.

---

[4] Defendants also represented in briefing to the Supreme Court that seizures at a Home Depot in Westlake were supported by "additional information gathered through an intelligence operation," *see* Shreffler Decl., Ex. 21 at 19 [Reply Brief for Defendants *Noem v. Vasquez Perdomo*, No. 25A169 (U.S. Aug. 13, 2025)], but did not substantiate this assertion in their preliminary injunction papers. *See* Shreffler Decl., Ex. 25 [ECF 178-1] (Molina Decl.).

Judge Frimpong granted Plaintiffs and Intervenors expedited discovery to allow Plaintiffs and Intervenors to test the sufficiency of these claimed justifications for the stops.

**2. The District Court Permits Expedited Discovery to Test Defendants' Assertions**

The District Court granted Plaintiffs' and Intervenors' request for expedited discovery. Specifically, as relevant here, the District Court permitted Plaintiffs and Intervenors to serve the following Requests for Production:

> Request for Production 1: All TRAINING OR GUIDANCE provided to AGENCY PERSONNEL referenced in ECF 71, ECF 71-1, ECF 71-2, ECF 170, ECF 170-1, ECF 170-2, ECF 170-3, and ECF 178, including TRAINING AND GUIDANCE concerning the TRO, on topics including but not limited to: the difference between a consensual encounter and a seizure; the factors that may be considered in deciding whether to initiate a DETENTIVE STOP including vehicle stop; appropriate use of force, use of face coverings, and agent or officer identification as they relate to DETENTIVE STOPS; and documentation requirements for DETENTIVE STOPS.
>
> Request for Production 2: All DOCUMENTS RELATING TO the operations below, including Field Operations Worksheets (FOWs), targeting sheets, operations plans, pre-operations briefings and/or intelligence reports, targeting packages, notes, videos (including body camera footage), Forms I-213s, database entries, post-operation briefings, after-action reports, other COMMUNICATIONS describing or characterizing the operation, DOCUMENTS reflecting review of the operation, and DOCUMENTS reflecting any arrest quotas or goals.
>
> [*List of specific operations and seizures omitted*]
>
> Request for Production 3: COMMUNICATIONS through messaging of any kind (including text messaging, chats, or messaging through a mobile application) from or to PERSONS identified in YOUR response to Plaintiff CHIRLA's Expedited Interrogatories No. 1 concerning the operations referenced in Plaintiff CHIRLA's Expedited Interrogatories No. 1.
>
> Request for Production 4: All DOCUMENTS that YOU referenced, reviewed, or relied upon in responding to Plaintiff CHIRLA's Expedited Interrogatories to YOU.

In its order granting Plaintiffs and Intervenors expedited discovery, the District Court noted that it was appropriate because "Defendants have made numerous assertions in declarations about the nature of the training officers receive (explaining how to comply with the Constitution and governing law) and that all of the stops were legal (because they were consensual or supported by individualized reasonable suspicion)." Shreffler Decl., Ex. 12 [ECF 223] at 4. Moreover, Defendants had previously opposed Plaintiffs' motion for a preliminary injunction "in part on the

ground that the motion is unsupported by evidence." *Id.* The District Court noted that the requests were unlikely to pose significant burden because "the information being sought," namely information about training and the basis for specific stops and arrests, "would appear" to be information "that the Defendants have already collected" and reviewed before making representations to the Court. *Id.* at 6. And the District Court rejected Defendants' concerns about Plaintiffs' and Intervenors' proposed schedule because "Defendants must have already" collected and reviewed documents "before submitting sworn declarations about the stops and filing signed briefs explaining that all of the stops were legal." *Id.* at 9. The District Court stated that "Defendants can start by producing that collected material." *Id.*

This Court, in setting out the schedule for expedited discovery, echoed the District Court and ordered Defendants to make their first production of "documents they relied on in opposing the motions for a temporary restraining order and preliminary injunction" by November 4. ECF 227 at 4. The Court did not cabin this initial production to any specific RFPs.

**B. <u>The Scope of Production Dispute</u>**

**1. Defendants' Initial Production**

On November 4, 2025, Defendants made their initial production. Counsel for Defendants transmitted that production with an email stating: "Pursuant to the Court's order (ECF No. 227), requiring Defendants to produce documents responsive to Plaintiffs' RFPs on a rolling basis and to include by November 4, 2025, those materials relied upon in opposing the TRO and preliminary injunction motions…. Defendants hereby serve their first production." *See* Shreffler Decl., Ex. 1.

Notwithstanding the Court's order and Defendants' representation that the November 4 production contained "those materials relied upon in opposing the TRO and preliminary injunction motions," Defendants produced just 35 documents. Not one of those documents was an intelligence report, target packet, operational file, or any other record concerning any specific stop or any individual person. Instead, as Defendants' corresponding privilege logs confirmed, all 35 documents in Defendants' November 4 production were general training and guidance documents about the Fourth Amendment, the INA, and the District Court's TRO. And all but two of the 35

documents were either withheld or so extensively redacted that no substantive content was produced anyway. *See, e.g.*, Shreffler Decl., Exs. 2, 4.

**2. Meet and Confer Efforts**

The day after Defendants served their initial production, Plaintiffs transmitted a letter expressing their concern that Defendants had not produced any operational files, such as Form I-213s, intelligence reports, after-action reports, contemporaneous communications, notes, video footage, or other documents, bearing on the detention and questioning of any individual. *See* Shreffler Decl., Ex. 5. Because the Court ordered Defendants to produce documents on which Defendants relied in opposing the TRO and PI, and Defendants produced only redacted general training materials, Plaintiffs asked Defendants to confirm that Defendants (and their declarants) "did not rely on any documents related to any of the actual stops at issue when responding to Plaintiffs" motions. *Id.*

In their response letter dated November 7, 2025, Defendants asserted that the Court's order setting out the scope of their initial production required production of *only* documents responsive to Plaintiffs' and Intervenors' *RFP No. 1*, related to training or guidance documents. *See* Shreffler Decl., Ex. 7. To support that contention, Defendants cited the Court's order, *see* Shreffler Decl., Ex. 26 [ECF 227] at 4, and maintained that it, read alongside the District Court's order, somehow implicitly limited Defendants' initial production to only documents responsive to RFP 1.

The parties met and conferred on November 10, 2025. *See* Shreffler Decl., ¶ 11. At that conference, Plaintiffs reiterated their position that the Court's order required production by November 4 of documents responsive to all the RFPs on which Defendants had relied in opposing the TRO and preliminary injunction. *Id.* ¶ 12. Defendants, for their part, maintained that the Court had required them to produce only documents responsive to RFP 1 by November 4. *Id.* Defendants declined to explain their position beyond referring Plaintiffs back to Defendants' written correspondence. *Id.*

**3. Legal Contentions**

Defendants' argument is baseless. The Court should order Defendants to immediately produce *all* responsive documents on which they relied in opposing the TRO and PI motions.

Although Defendants have produced additional documents since November 4, they acknowledged during the status conference with the Court on November 14 that they *still* have not produced all Reliance Materials.

The District Court could not have been clearer. It repeatedly expressed its view that, in order for Defendants to submit sworn declarations and for their attorneys to sign briefs arguing that *specific stops were lawful*, Defendants presumably collected and reviewed documents bearing not only on training, but also operational documents memorializing *specific stops of specific individuals*. *See* Shreffler Decl., Ex. 12 [ECF 223] at 9 ("Defendants can start by producing" material they searched for and collected before "filing signed briefs explaining that all of the stops were legal"); *id.* at 6 (noting that Defendants must "have already collected" information establishing "preexisting reasonable suspicion or other justification in advance of representing to this Court that the stops were legal"). Defendants offer no citation (because there is none) where the District Court in any way purported to limit Defendants' initial production in any way.

The same is true with this Court's order. Shreffler Decl., Ex. 26 [ECF 227]. Defendants offer no citation to this Court's order setting out the timeline for expedited discovery that purports to limit Defendants' initial production to training documents only. In their November 7 letter, Defendants offered no textual basis to conclude that either the District Court or this Court contemplated that the November 4 production be limited in the manner they now propose. Their appeal to "context" and the District Court's "earlier framing," Shreffler Decl., Ex. 7, does not help them, because "context" and the District Court's "earlier framing" establish that they needed to produce all documents they relied on to justify the specific stops at issue.

Nor does the interpretation of the Court's order that Defendants offered during the November 14 conference with the Court help them. In that conference, as referenced above, Defendants represented the Court that they produced all responsive Reliance Materials that were *readily available* to counsel, and that other responsive Reliance Materials that should have been produced were in the hands of agency personnel and could not be produced by that date. That makes no sense. Counsel had to have collected and reviewed the missing documents in order to file their declarations and briefs in opposition to the TRO and PI; it is not credible that they could

have somehow lost access to the relevant universe of documents between the date of filing those oppositions and November 4.

It appears that Defendants may have withheld responsive documents from Plaintiffs on November 4, provided Plaintiffs with an unreasoned and unreasonable explanation for their lack of compliance, and then retracted their position only after Plaintiffs brought the dispute to the attention of the Court. The Court should order Defendants to immediately comply with its order, or certify that they have done so.

### C. The Privilege Dispute

#### 1. Defendants' Initial Production and Privilege Logs

As discussed above, Defendants' initial production pursuant to the Court's October 23 order, *see* Shreffler Decl., Ex. 26 [ECF 227], contained 35 documents, all of which Defendants maintain are responsive to RFP 1. Defendants asserted the attorney-client privilege and work product doctrine over all but two documents in the set.[5] Defendants' privilege assertions rendered the production volume practically devoid of substance.

Some documents and emails were redacted in their entirety for "ACP / WP." *See, e.g.*, Shreffler Decl., Ex. 2. For other documents, Defendants opted to produce only the first page of a longer document. *See, e.g.*, Shreffler Decl., Ex. 4. As a result, even though Defendants claim to have complied with the Court's order to produce documents on which they relied in opposing Plaintiff's motions, their production affords Plaintiffs and Intervenors no opportunity to test Defendants' assertions about their agents' and officers' training.

Three days after making their production, on November 7, Defendants served three separate privilege logs. Two of these logs, labeled "ICE" and "CBP1," were formatted the same way and each covered the same universe of 18 documents produced in the litigation. *See* Shreffler Decl., Ex. 8 (ICE log); *id.*, Ex. 9 (CBP1 log). Neither log listed by name the author of any non-email document. For emails, the logs sometimes provided a full list of sender, those copied, and

[5] Those two documents were previously publicly filed in the Eastern District of California in litigation challenging similar CBP practices as are at issue in this case. *See UFW v. Noem*, No. 25-cv-00246-JLT-CDB (July 14, 2025), ECF Nos. 64-1, 64-2.

all recipients, but not for all produced emails. Neither log contained a column for email subject lines.

As best as Plaintiffs and Intervenors could tell, the ICE log purported to contain ICE's privilege assertions over documents it produced in this litigation, whereas the CBP1 log purported to contain CBP's privilege assertions over its documents. However, the CBP1 log also contained privilege assertions over documents with a "DOCID" bearing an ICE prefix, and the ICE log contained privilege assertions over documents with a "CBP"-prefix "DOCID." As a result, documents logged on both logs carried two different privilege assertions and descriptions.

The third log, labeled CBP2, logged 31 documents. Shreffler Decl., Ex. 10 (CBP2 log). This log did not include any bates numbers to map any particular entry onto any produced document. As with the other logs, CBP2 did not name any specific author for any document, nor did it provide the names and email addresses of senders and recipients, or subject lines, for any email communications. Put simply, the CBP2 log lacks the essential information necessary to support or evaluate privilege assertions.

**2. Meet and Confer Efforts**

In their November 5 letter concerning Defendants' initial production, Plaintiffs expressed concern at the extent of redactions and apparent privilege assertions in the production. Shreffler Decl., Ex. 5 [11/5 Letter]. Plaintiffs expressed doubt that any of the produced documents, which appeared to consist of generalized training materials, were ever privileged or protected by the work product doctrine. *Id.* By way of example, Plaintiffs noted that several documents in the production appeared to be 2024 and 2025 editions of an annual "Fourth Amendment Refresher Training," and that ICE had produced the 2021 version of the same course in discovery in another case and filed it on the public docket. *See id.* (citing *Kidd v. Noem*, 20-cv-03512-ODW-JPR, ECF 447-5); *see also* Shreffler Decl., Ex. 6 (2021 training produced and filed in *Kidd* litigation). Plaintiffs also noted that Defendants put the sufficiency of these trainings directly at issue in this case and had thereby waived the attorney client privilege and work product doctrine over them.

Defendants, in response, contended that the trainings were privileged and protected by the work product doctrine. Shreffler Decl., Ex. 7 [11/7 Letter] Defendants also disagreed that the

attorney-client privilege and work product doctrine had been waived, arguing that Plaintiffs' claims did not put Defendants' trainings at issue. *Id.*

The parties met and conferred on Monday, November 10, 2025. Shreffler Decl., ¶ 11. On this call, the parties discussed Defendants' privilege logs. *Id.* ¶ 13. Plaintiffs asked Defendants why multiple privilege logs were served and why they assert different privilege assertions over the same universe of documents. *Id*. Defendants offered no answer, and offered to refer the question to the agencies who had prepared the logs. *Id*. Likewise, Defendants did not know why the "CBP2" log did not refer to documents by their Bates stamp. *Id*. When asked which log stated the government's definitive position as to the privileged nature of a document, Defendants took the position that the three logs, collectively, represented the government's position. *Id.*

Turning to the substance of Defendants' privilege assertions, Plaintiffs reiterated their view that the documents at issue were neither attorney-client privileged nor protected by the work product doctrine. *Id.* ¶ 14. On the applicability of the attorney-client privilege, Plaintiffs reiterated that Defendants had previously produced similar trainings in discovery, including in *Kidd*. *Id*. Defendants did not alter their position. *Id.* As for the applicability of the work product doctrine, Plaintiffs asked Defendants to explain whether and how the general training documents in their production were prepared in anticipation of litigation. *Id.* ¶ 15. Defendants' counsel responded that he needed to ask their client agencies for the most accurate information concerning the justification for the work product designation. *Id.* ¶ 15.

Finally, the parties discussed whether the attorney-client privilege and work product doctrine had been waived by Defendants' invocation of their agents' and officers' training to defend against Plaintiffs' Fourth Amendment claim. *Id.* ¶ 16. Defendants referred Plaintiffs to their correspondence for their position. *Id*.

Defendants served two revised privilege logs on November 13, 2025, corresponding to the documents in Defendants' initial production produced by ICE and CBP respectively. *Id.*, ¶ 33, Ex. 27 (revised ICE log); Ex. 28 (revised CBP log). While the corrected log for documents produced by ICE does largely list specific authors for each document, the CBP log does not. *See*

*id.,* Exs. 27 and 28. Defendants also revised their privilege descriptions, but those descriptions remain vague and boilerplate. *See id.*

**3. Legal Contentions**

*(a) Defendants Have Not Met Their Burden to Show the Withheld Documents are Attorney-Client Privileged*

"The attorney-client privilege exists where: (1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citation modified). The "'fact that a person is a lawyer does not make all communications with that person privileged.'" *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (quoting *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002)). Instead, the party asserting the privilege has the burden of "establishing the relationship *and* privileged nature of the communication." *Richey*, 632 F.3d at 566 (emphasis added)). Because privilege "'impedes full and free discovery of the truth,'" it is '"strictly construed.'" *Ruehle*, 583 F.3d at 607 (quoting *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002)); *see also ACLU of N. Cal v. FBI*, 146 F. Supp. 3d 1161, 1167 (N.D. Cal. 2015), *rev'd on other grounds by* 881 F.3d 776 (9th Cir. 2018) (communication from attorney to client privileged only "to the extent that 'the communications rest on *confidential information obtained from the client*'" (emphasis added)).

Defendants have not met their burden to show that any of the withheld training documents are attorney-client privileged. As an initial matter, Defendants' privilege logs fail to support their assertions of privilege, and indeed are wholly devoid of any information that could substantiate a claim of privilege. For the training manuals which Defendants withheld, CBP's revised log does not provide the specific author of any document, instead referring to the office that may have delivered the training. *See* Shreffler Decl., Ex. 28 (revised CBP Log) (not listing any author and referring only to "Office of Chief Counsel, CBP"). As such, Plaintiffs cannot evaluate who drafted any particular document, or whether that author is an attorney. Finally, Defendants'

assertions of privilege are hopelessly vague and fail to clarify that they actually provided legal advice, or to whom any legal advice was provided. *See* Shreffler Decl., Ex. 28 (in CBP log, boilerplate description used with minor variation for each CBP-produced document); Ex. 27 (similar, in revised ICE log). Defendants have failed to substantiate their assertions of privilege.

In any event, even if Defendants had produced compliant privilege logs, the training documents they have withheld are likely not privileged. Courts regularly hold the attorney-client privilege does not apply to agency training materials that "function[] as a general-purpose legal manual, teaching CBP officials about the laws they enforce and the constitutional and statutory constraints they must follow." *ACLU of S.D. & Imperial Counties v. U.S. Dep't of Homeland Sec.*, 2017 WL 9500949, at *11 (C.D. Cal. Nov. 6, 2017) (collecting cases); *see also Hipschman v. Cnty. of San Diego*, 742 F. Supp. 3d 1123 (S.D. Cal. 2024) (same). "Such generally applicable legal advice will rest on none of the factual particularities conveyed in a typical confidential communication by a client." *ACLU of S.D.*, 2017 WL 9500949, at *11 (cleaned up). In *ACLU of Northern California v. FBI*, for example, the Court held that the attorney-client privilege did not apply to a document that contained short descriptions of situations "agents may encounter in the field," where the "descriptions [were] general and lack any specific information." 146 F. Supp. 3d at 1168. It did not matter that the documents also contained a brief analysis of FBI policy which the agency claimed stemmed "'from questions raised to FBI Counsel'" because the document was "'more akin to a "resource" opinion about the applicability of existing policy to a certain state of facts, like examples in a manual, to be contrasted to a factual or strategic advice giving opinion.'" *Id.* (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980)).

Here, the withheld trainings appear to be broadly distributed trainings on generally applicable legal issues akin to the documents that the *ACLU of Northern Californa*, *ACLU of San Diego and Imperial Counties*, and *Hipschman* courts determined were not privileged. *See, e.g.*, Shreffler Decl., Ex. 4. Their titles reflect broad topics including "Law Enforcement Authority," "Mobile Field Force," "The Fourth Amendment," and "INA/Title 8 and Title 19." *Id.* They also appear to be regularly given courses; some are referred to as "refreshers," implying they are given regularly, and others bear the markings of a course given at a training academy. Defendants have

offered no information to the contrary, and accordingly have failed to meet their burden to show that the attorney-client privilege applies to any of the training documents they have withheld for privilege.

*(b) Defendants Have Not Met Their Burden to Show the Withheld Documents are Attorney Work Product*

The work-product doctrine is not a privilege but a qualified immunity that "'protects from discovery in litigation 'mental impressions, conclusions, opinions, or legal theories of a party's attorney' that were 'prepared in anticipation of litigation or for trial.'" *Hipschman*, 742 F. Supp. 3d at 1132 (quoting *ACLU of N. Cal. v. DOJ*, 880 F.3d 473, 483 (9th Cir. 2018)); *see also* Fed. R. Civ. P. 26(b)(3). The "mere possibility of litigation is not enough" for the work product doctrine to apply to government records. *ACLU of S.D. and Imperial Counties*, 2017 WL 9500949, at *9. Instead, courts must evaluate the purpose of the government record. *See id.* Courts have held that a Department of Justice publication "aimed directly for use in litigating cases" was protected work product, *see id.* (quoting *NACDL v. Dep't of Justice Exec. Off. for U.S. Att'ys*, 844 F.3d 246, 249 (D.C. Cir. 2016)), whereas a "general[] training by USCIS lawyers" for USCIS employees to "convey routine agency policies" and which contained "generally applicable legal advice," was not, *see id.* At *10 (quoting *American Immigration Council v. U.S. Dep't of Homeland Sec.*, 905 F. Supp. 2d 206, 222 (D.C. Cir. 2012)).

In *ACLU of San Diego and Imperial Counties*, the court applied these principles to conclude that portions of a CBP training advising agents on "how to act as a witness affiliated with the government" were prepared in anticipation of litigation because they "convey litigation strategy." *Id.* at *10. By contrast, the court declined to apply the work product doctrine to portions of the same training that "contain[ed] a synthesis of the case law and other legal authorities on various topics that CBP officers may encounter while carrying out their mission, such as 'Search and Seizure,' 'Border Authority,' 'Rights of the Suspect and Accused,' 'Border Patrol Enforcement Operations,' 'Conspiracy,' and 'Immigration Crimes.'" *Id.* The court reasoned that these chapters "cannot be fairly said to impart strategy about 'one side of an adversarial dispute,' because they focus on explaining laws that CBP has the authority to enforce

and case law on the officers' constitutional and statutory constraints, aimed at educating officers on their proper behavior, rather than any strategic, adversarial use in litigation." *Id.* (citation omitted).

Nothing in the government's privilege log, or the cover sheets of the documents it has produced, offers any indication that the withheld training documents convey litigation strategy and were prepared in anticipation of any specific litigation. Instead, the subjects of the documents produced hew closely, if not identically, to those portions of the CBP training that the *ACLU of San Diego and Imperial Counties* court found were not prepared in anticipation of litigation. Nor were Defendants able to point to any particular litigation context during the parties' conference. It is not sufficient for Defendants' logs to invoke the magic words that a document was prepared in anticipation of litigation; Defendants must provide more detail. *See AAB Joint Venture v. United States*, 75 Fed. Cl. 432, 445 (Ct. Fed. Cl. 2007) ("a mere conclusory statement that the work product documents were created in anticipation of litigation is not enough"). As such, the government's assertions of the work product doctrine over the documents in its first production should be rejected.

*(c) Any Protections Have Been Impliedly Waived*

Even assuming that any of the documents in Defendants' initial production were privileged at some point, Defendants have waived the attorney-client privilege and work product protection over the trainings on which they relied to oppose Plaintiffs' TRO and preliminary injunction motions. The attorney-client privilege and work product doctrine "may not be used both as a sword and a shield." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992); *United States v. Nobles*, 422 U.S. 225, 240 (1975) (recognizing sword-and-shield principle applies to work product doctrine). Where a party relies on an assertion or claim "which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *Chevron*, 974 F.2d at 1162. "[P]arties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003).

Courts in the Ninth Circuit apply a three-part test drawn from *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975), to determine whether an implied waiver has occurred. *See United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999). "First, the court considers whether the party is asserting the 'privilege as the result of some affirmative act.'" *Id.* (quoting *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995)). "Second, the court examines whether 'through this affirmative act, the asserting party puts the privileged information at issue.'" *Id.* "Finally, the court evaluates whether 'allowing the privilege would deny the opposing party access to information vital to its defense.'" *Id.*

Defendants' invocation of their agents' and officers' training as a basis to oppose Plaintiffs' TRO and preliminary injunction satisfies all three parts of the *Hearn* test and has resulted in an implied waiver. The first and second elements are satisfied because Defendants, in their prior briefing, have "'assert[ed] a factual claim'" about the sufficiency of agents' and officers' training, "'the truth of which can only be assessed by examination of a privileged communication.'" *See In re Xyrem (Sodium Oxybate) Antitrust Litig.*, No. 20-MD-02966-RS, 2025 WL 860505, at *3 (N.D. Cal. Mar. 19, 2025) (quoting *Bowne, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 488 (S.D.N.Y. 1993)); *see also Chevron*, 974 F.2d at 1162-63 ("[T]o the extent that Pennzoil claims that its tax position is reasonable because it was based on advice of counsel, Pennzoil puts at issue the tax advice it received."). In their preliminary injunction briefing, Defendants repeatedly argued that their agents' and officers' actions were consistent with the Fourth Amendment *because* of the training those officers received. *See* Shreffler Decl., Ex. 19 [ECF 170] at 2, 5, 21; *Id.*, Ex. 23 [ECF 178] at 4 ("DHS ensured agents in the Los Angeles operation received proper training and resources to interpret and apply the TRO"); *id.* ("The guidance pursuant to the TRO is in addition to rigorous, Ninth Circuit-specific training ICE's Los Angeles Enforcement and Removal Operations ("ERO") receives that includes comprehensive instruction on reasonable suspicion and probable cause.")

By including these trainings in their November 4 production set, Defendants have conceded that they were referring to these specific training documents in making those representations. Shreffler Decl., Ex. 1. Allowing Defendants to assert the privilege over their

trainings while concurrently using those same trainings to defend against Plaintiffs' claims is the paradigmatic example of using the privilege as both a sword and a shield.

The third element of the *Hearn* test is likewise satisfied here because Plaintiffs must have access to these trainings in order to test and rebut Defendants' claims. Having put the adequacy of their agents' and officers' trainings at issue, Defendants "cannot invoke the attorney-client privilege to deny" Plaintiffs and Intervenors access to this information. *See Chevron*, 974 F.2d at 1163. Nor are alternative forms of evidence available, as the trainings at issue are internal government documents. *See Amlani*, 169 F.3d at 1195.

At bottom, the issue is simple: The government "cannot assert" that agents' and officers' trainings are evidence that specific stops at issue in this litigation were lawful "and then invoke the attorney-client privilege to prevent" Plaintiffs and Intervenors "from examining the situation further." *Amlani*, 169 F.3d at 1195. The government's conduct has impliedly waived the attorney client privilege and work product doctrine (if they ever applied) as to the training documents it has withheld.

If Defendants wish to continue relying on the adequacy of their training materials as a defense against Plaintiffs' claims, Defendants should be required to produce the withheld training documents in full. If, however, Defendants wish to continue asserting the privilege or work product, the Court should preclude Defendants from relying on the adequacy of their trainings to rebut Plaintiffs' Fourth Amendment claims for the remainder of this litigation. *See Bittaker*, 331 F.3d at 721 (noting that "the holder of the privilege may preserve the confidentiality of the privileged communications by choosing to abandon the claim" or argument "that gives rise to the waiver condition").

## IV. DEFENDANTS' CONTENTIONS AND POINTS AND AUTHORITIES

### A. Factual and Procedural Background

#### 1. The Court's October 17 Order Granting Limited Discovery

The District Court granted only limited, expedited discovery tied specifically to the issues raised in the pending preliminary-injunction motion. ECF No. 223. The Court permitted Plaintiffs to seek a narrow set of materials directed at the discrete categories Defendants referenced in

opposing injunctive relief. The Court did not open the door to broad, merits-based, or agency-wide discovery; instead, it authorized discrete interrogatories, a small set of RFPs, and limited depositions focused on the materials cited in Defendants' declarations and the justification for the specific stops at issue. At the same time, the Court recognized that privilege, confidentiality, and timing disputes would need to be managed carefully and directed the parties to raise those issues with the assigned Magistrate Judge.

**2. The Court's October 23 Discovery Schedule**

Following the District Court's limited authorization, the Magistrate Judge issued a separate order on October 23 setting the mechanics for carrying out that expedited discovery. ECF No. 227. That order did not broaden the scope of what the District Court had allowed. Instead, it established a structured process for managing privilege, confidentiality, rolling productions, and deposition logistics under compressed timeframes. The Magistrate Judge emphasized cooperative resolution wherever possible, set interim deadlines tailored to the categories of materials the District Court had already identified, and made clear that disputes over timing, privilege, and confidentiality would be addressed through the Local Rule 37 framework. In short, the October 23 order provided the procedural schedule for implementing the District Court's narrow grant of expedited discovery—not an expansion of the substantive scope.

**3. Plaintiffs' Request for Production**

Against that backdrop, Plaintiffs served their expedited Requests for Production. The requests cover four categories: training materials referenced in Defendants' declarations, operational records for each of the encounters identified in the complaint, related messaging communications, and documents relied on in responding to interrogatories. Several of these requests align with what the Court contemplated for this phase, while others sweep more broadly than the targeted discovery the Court described. Defendants approached the requests by producing responsive materials within the Court-authorized scope, asserting privilege where required, and objecting only where a request extended beyond the limits the Court set.

**B. The Scope of Production Dispute**

**1. Defendants' Initial Production.**

Defendants complied with the Court's directive governing the initial production under the expedited discovery schedule. The Court's own statements during the November 14 conference already address the concerns Plaintiffs raise. Tr. 22-23.

Indeed, the language of the October 23 order confirms that the Court did not require production of all materials in the government's possession before the conclusion of the expedited discovery deadline of November 21. Defendants met this requirement by producing the training and guidance materials referenced upon in opposing Plaintiffs' TRO and preliminary injunction motions. Defendants continue to collect, review, and produce additional categories of responsive documents under Plaintiffs' Requests for Production on a rolling basis, consistent with the Court's direction in ECF No. 227.

Plaintiffs' suggestion that Defendants "withheld" documents or offered an unreasoned explanation for the November 4 production is incorrect. Defendants produced the materials that fell within the category the Court indicated could reasonably be produced by November 4. Tr. 22:22-24. Consistent with the rolling schedule ordered by the Court, additional documents—particularly operational files requiring component-level collection—followed. At no point did Defendants "retreat" from any position; they explained the basis for their interpretation in correspondence and during the November 14 conference, and the Court confirmed that interpretation aligned with its expectations.

**2. Defendants Faithfully Participated in Meet and Confer Efforts**

Defendants faithfully participated in the meet-and-confer process concerning the scope and timing of expedited discovery, which Plaintiffs do not dispute. *See* Section III.A.2. While Defendants believe that additional discussions could have further narrowed the issues without Court involvement had Plaintiffs continued the meet and confer process, Defendants remain committed to working with Plaintiffs to resolve remaining questions consistent with the Court's guidance.

**3. Defendants' Response to Legal Contentions**

Plaintiffs' motion for relief should be denied. Defendants complied with the Court's expedited discovery order, ECF No. 227, produced responsive materials consistent with the Court's directives, and continue to meet their obligations on the schedule established by the Court despite compressed deadlines and operational constraints. The information withheld from that initial production was withheld only on the basis of well-established privileges, including the attorney-client privilege, the work product doctrine, and law enforcement privilege ("LEP").

Defendants' production occurred under ambitious deadlines and during a period affected by a government shutdown, which placed significant logistical and operational constraints on review and processing. Despite these conditions, and ongoing briefing that may well narrow the issues Plaintiffs and Intervenors may raise in subsequent preliminary injunction briefing, Defendants dedicated substantial resources to timely reviewing, redacting, and producing responsive materials while preparing detailed privilege logs in accordance with procedural requirements.

Defendants intend to fully comply with Plaintiffs' discovery requests, subject to appropriate objections and privileges. The Court should decline Plaintiffs' request for compelled compliance at this stage as it is not necessary or justified. Rather than adjudicating piecemeal disputes concerning documents still under active review, the more appropriate and efficient course is to allow Defendants to complete production by the November 21 deadline and produce the final privilege log by or on November 25. Thereafter, the parties can meet and confer to identify any specific documents remaining in dispute, at which point the Court may consider targeted relief, including an in-camera review or declarations supporting the privilege assertions if necessary. Premature intervention only diverts limited resources from completing production in accordance with the Court's schedule. *See Herbert v. Lando*, 441 U.S. 153, 177 (1979) (discovery rules are to be broadly and liberally construed but must be balanced against Fed. R. Civ. P. 1 mandate to secure just, speedy, and inexpensive litigation; district courts have authority and should exercise appropriate control to restrict discovery to prevent undue burden or expense).

Defendants acted diligently and in good faith throughout this process. They have complied with all Court directives, engaged in cooperative meet-and-confer discussions, and continued rolling

productions despite significant operational challenges. Notwithstanding Plaintiffs' mischaracterization of Defendants' actions, the record contains no evidence of willful noncompliance or delay. The appropriate course is to permit Defendants to finalize their production by the Court's established deadline and allow any remaining disputes to be addressed through the orderly procedures already in place.

**C. <u>The Privilege Dispute</u>**

**1. Defendants' Initial Production and Privilege Logs**

*For reference, Defendants direct the Court's attention to Exhibits 30 and 31, containing the as-served corrected privilege logs.*

For Production 1, Defendants asserted, were appropriate, protections including attorney-client communications, attorney work product, and information that is LEP. From the outset of discovery discussions, Defendants advised Plaintiffs and the Court that certain categories of documents sought in connection with Plaintiffs' Fourth Amendment claim—particularly legal training, internal guidance, and operational materials—were likely to contain privileged legal analysis or information protected under one or more privileges, which this Court expressly acknowledged in its orders. Defendants have not attempted to gain any tactical advantage through those protections; to the contrary, consistent with the Protective Order, they have made accommodations where feasible, refined redactions, and reproduced materials to facilitate review. At the same time, Defendants must safeguard privileged legal deliberations and protect sensitive operational information, including identifying information about federal personnel (which is also covered by the protective order, ECF No. 247), which has been the subject of well-documented doxxing, including online targeting and physical violence, during this litigation. These considerations inform the privilege assertions challenged by Plaintiffs.

As a predicate matter, Plaintiffs raised their privilege concerns on November 5, less than 24 hours after receiving Defendants' November 4 production and before receiving Defendants' privilege log two days later (as contemplated by the Court's order). Given that timing, Plaintiffs' challenges to Defendants' privilege assertions were premature when raised.

Despite Defendants' ongoing attempts to resolve disputes faithfully, which has already narrowed the scope of Plaintiffs' concerns, Plaintiffs continue to contend that Defendants' initial production—largely redacted or withheld on privilege grounds—renders the production itself practically devoid of substance. Section III.C.1. But this is not grounds to challenge privilege designations and cannot overcome the fact that legal training materials prepared by agency counsel agency employees are subject to attorney-client and work product protections. Such privileges properly shield sensitive legal advice communicated to agency officials through trainings . Defendants produced all training materials responsive to RFP 1 as ordered and have not withheld non-privileged documents  but instead protected attorney mental impressions and legal strategy consistent with longstanding jurisprudence.

At the threshold, Plaintiffs' claim that they cannot discern from the privilege logs whether the trainings were prepared by attorneys is baseless. The privilege logs plainly state that attorneys created the trainings. And plaintiffs cite no authority requiring that specific attorneys be identified to maintain the privilege.

In addition, Defendants maintain that their privilege assertions over the OPLA training materials included in Production 1 were appropriate, and those materials were originally withheld on that basis. The fact that certain older iterations of discrete trainings were ordered produced in unrelated litigation does not waive privilege here or convert all subsequent versions into non-privileged material; privilege must be assessed document-by-document and may attach differently depending on content, authorship, and dissemination. Nonetheless, to streamline the issues before the Court and reduce motion practice, Defendants agreed to produce the updated version of a training previously released pursuant to court order in the *Kidd* litigation (GOV-00000031-62). Defendants made this limited accommodation to facilitate progress in expedited discovery, and it should not be construed as a blanket waiver of privilege. By contrast, other training materials that have not been ordered produced in prior litigation and that fall within the scope of applicable privileges remain properly withheld.

Next, Plaintiffs complain of redactions including entire document redactions and production of only first pages. These measures correspond to protecting privileged legal advice from agency

counsel to agency employees and work product contained within the materials. The instances in which only a cover or first page was produced correspond to documents "where the document consisted entirely of privileged training materials prepared by agency attorney. Producing the cover sheet with a log entry provided sufficient information to Plaintiffs while protecting material the Rules recognize as privileged and a privilege log has been or will be provided explaining the basis for privilege claims. Moreover, following the parties' November 10 meet and confer, Defendants have agreed to adjust certain redactions of attorney and custodian names, recognizing that such information is protected as Confidential Information under the Protective Order rather than needing to redact such information as privileged materials. Relatedly, Plaintiffs raised a concern involving certain training-material cover pages. In response, Defendants informed Plaintiffs that Defendants will reproduce three pages from Production 1 that were affected by a technical formatting issue. During CBP's conversion process, an automated metadata header populated incorrectly, causing these pages (GOV-00000009, GOV-00000011, and GOV-00000013) to appear as instructor-level materials. Plaintiffs already have these pages; the corrected versions will simply reflect the proper header text and Bates labeling. Defendants will include the corrected pages in an upcoming production with new Bates numbers, and they will be redacted only as necessary to reflect applicable privilege determinations.

Further, Plaintiffs argue that the three privilege logs related to the Initial Production, Exs. 27 (ICE Production Privilege Log), 28 (CBP Production Privilege Log), and 29 (CBP Production Privilege Log Corrected), lack sufficient detail and are inconsistent in labeling regarding author names, email subject lines, and document identification. First, as no single attorney creates legal materials for the agencies, an author need not be listed. Second, Defendants recognize that certain formatting differences reflect the manner in which the components generated their logs, but the logs collectively supply the information Rule 26(b)(5) requires in line with the Court's order. The Rule requires that the logs contain enough information to enable the opposing party and the Court to assess the validity of each privilege claim. *See Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992) (asserting parties "must sufficiently identify the documents so as to afford the requesting party an opportunity to challenge the assertion of privilege"). The logs identify the nature of each withheld

document, the applicable privilege (attorney-client or work product), and contain metadata such as document type, dates, and involved parties as available. While Plaintiffs raise concerns about the absence of certain details like author names or email subject lines in some entries, *see* Section III.C.1., courts recognize that such information may sometimes be limited due to document formatting or systemic constraints and do not automatically render a log deficient. *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1147-48 (9th Cir. 2005) (noting Rule 26(b)(5) does not prescribe a fixed level of detail for privilege logs in every case; courts must balance the need for sufficient information to evaluate privilege claims against the burden of disclosure; sufficient information is that which enables assessment of the claim without revealing privileged material) (citing Rule 26(b)(5) advisory committee's note (1993 Amendments)). This is expedited discovery, and Defendants are working to provide privilege assertions as fully and efficiently as possible. When Plaintiffs raised concerns about the initial logs, Defendants promptly issued corrected versions and will provide further clarifications where needed as review continues. Regardless, the corrected logs resolve those clerical inconsistencies. Plaintiffs' request for additional metadata is premature, and the parties should continue to meet and confer before seeking Court involvement.

The overarching goal of a privilege log is to provide a meaningful description that "enable[s] other parties to assess the claim" of privilege without disclosing the privileged content itself, which Defendants' logs achieve. Fed. R. Civ. P. 26(b)(5)(ii). Categorical or metadata-based logs are increasingly accepted where voluminous documents are involved, and traditional document-by-document detailed logs would be unduly burdensome and inefficient. *In re Rivastigmine Pat. Litig.*, 237 F.R.D. 69, 87 (S.D.N.Y. 2006) ("A categorical log may be used where '(a) a document-by-document listing would be unduly burdensome and (b) the additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the privilege claim is well-grounded.'"). Additionally, Defendants have and are committed to continuing to timely meet and confer with Plaintiffs to address any log deficiencies and provide supplemental information as appropriate, consistent with Court guidance encouraging cooperation to resolve discovery disputes without unnecessary motion practice. Defendants' logs satisfy the

standards that courts commonly require—particularly those accompanied by good faith meet-and-confer efforts. *See In re Loc. TV Advert. Antitrust Litig.*, 2025 WL 681193, at *37 (N.D. Ill. Feb. 21, 2025) (recognizing Rule 26(b)(5) requires parties claiming privilege to provide sufficient information to allow evaluation of the claim and to engage in a meaningful meet-and-confer process).

Plaintiffs also suggest that Defendants have somehow placed privileged training materials "at issue" and thereby waived protection, but that characterization is not accurate. The Ninth Circuit has held that attorney-client privilege may be implicitly waived "if a party raises a claim which in fairness requires disclosure of the protected communication," *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992). "In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the other party cannot adequately dispute unless it has access to the privileged materials." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003). That is far from the case here: Defendants' briefing noted that officers regularly and periodically receive Fourth Amendment-specific immigration enforcement training, including not stopping individuals based solely on an enumerated factor, as do officers across the country in anticipation of possible litigation related to their enforcement operations. *See, e.g.*, ECF Nos. 71 at 2-3; 170 at 2. Defendants' references to the fact officers receive training were descriptive of standard practice especially in anticipation of possible litigation, not an invocation of the privileged content of those trainings. Such generalized references alone do not place privileged communications at issue. The training materials are peripheral and responsive, not core to Defendants' defense. This litigation is concerned with whether officers have *sufficient basis to engage in individual detentive stops and arrests*—as opposed to being concerned with the *contents of the training being provided*. What training they receive prior to engaging in immigration enforcement operations is not at issue or otherwise challenged in Plaintiffs' operative complaint, ECF No. 16, or its prior preliminary injunction briefing; the individual stops are at issue.

Nor have Defendants waived attorney-client privilege over the Fourth Amendment training materials as the substance of these trainings is not at issue in this litigation. *See Garza v. Cnty. of San Bernardino*, 2025 WL 1126513, at *6 (C.D. Cal. 2025). The materials were produced solely as

responsive to Plaintiffs' RFP 1, not as core documents relied upon to assert a claim. In *Garza*, the court found no implicit waiver under the sword-and-shield doctrine, concluding that the defendant did not use the privilege both offensively and defensively, nor did Plaintiffs sufficiently demonstrate that was the case based on the record. *See also United States v. Sanmina Corp. & Subsidiaries*, 968 F.3d 1107, 1120 (9th Cir. 2020) (discussing how to waive privileges). Similarly, here, the record shows no attempt by Defendants to use privilege as a sword and shield. Plaintiffs' challenges, including their two preliminary injunction motions and First Amended Complaint, focus their challenge and allegations on individual stops and arrests, which are unsupported by the record, including the alleged agency policy relying on enumerated factors, leaving the individual stops as the proper litigation focus.

Here, Defendants acted transparently and in good faith in complying with the Court's orders, making appropriate privilege assertions consistent with governing law, and producing responsive non-privileged documents. Plaintiffs' privilege challenges fail to account for the protections afforded legal advice and work product, the Court's prior rulings, and the ongoing production process. Defendants remain committed to meeting the Court's production deadlines and engaging cooperatively with Plaintiffs to resolve privilege and discovery disputes consistent with the Court's November 14, 2025, guidance.

**2. Defendants Have and Continue to Cooperate with Plaintiffs in Resolving Privileges Disputes in a Timely Manner during the midst of ongoing Expedited Reciprocal Discovery.**

Defendants cooperated in good faith with Plaintiffs to resolve privilege disputes arising from the initial production. Following Plaintiffs' November 5 letter expressing concerns about extensive redactions and assertions of attorney-client privilege and work product protection—particularly regarding recent Fourth Amendment Refresher Training materials—before Defendants even had a chance to produce their respective privilege log, Defendants promptly responded on November 7 defending their privilege designations and disputing Plaintiffs' waiver claim. After Defendants served their privilege log, the parties held a meet-and-confer on November 10 to discuss asserted privileges and related issues. Defendants inadvertently produced an incomplete draft and promptly served revised privilege logs on November 13. Defendants remain committed to working

collaboratively and in good faith to address all privilege-related concerns, consistent with their discovery obligations and the guidance provided by the Court.

**3. Legal Contentions**

The Court should reject Plaintiffs demand to produce training materials because courts have repeatedly recognized that training materials, such as the ones contested here, containing confidential legal advice or guidance related to agency operations that are prepared by agency attorneys may be protected by the attorney-client privilege and, when prepared in anticipation of litigation, the work product doctrine. *See In National Security Counselors v. Central Intelligence Agency*, 206 F. Supp. 3d 241, 273-75 (D.D.C. 2016); *see also Upjohn Co. v. United States*, 449 U.S. 383, 389-90 (1981) (holding that attorney-client privilege protects confidential communications made for the purpose of obtaining legal advice from a professional legal adviser).

Further, here, Plaintiffs fail to distinguish between *generic* policy manuals and *attorney-prepared* legal training materials, where the latter warrant protection when not broadly disseminated and when maintained confidentially. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980); *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 757 (D.C. Cir. 2014) (noting advice from an attorney about how to comply with legal duties is exactly the sort of communication "for the purpose of obtaining or providing legal advice" protected by the attorney-client privilege).

*First*, Defendants properly applied the attorney-client privilege because the training materials at issue are not generic instructional manuals; they are legal advice developed by agency counsel to advise law-enforcement clients on how constitutional standards apply in practice. For example, the CBP privilege-log entries for GOV00000006 and GOV00000008-15 make this clear, noting that OCC attorneys "created, drafted, prepared, and delivered" these trainings as legal advice and that the content reflects counsel's assessment of legal risk. Plaintiffs argue that the absence of a named individual author somehow prevents them from evaluating whether the materials were attorney-generated. But CBP's descriptions expressly state that agency attorneys prepared and delivered the trainings. That is sufficient under Rule 26(b)(5), particularly given the way CBP develops legal instruction: teams of agency attorneys collaborate on drafting and updating modules

as caselaw evolves, litigation risks shift, and operational needs change. In that setting, a single "author" line is neither expected nor required.

Similarly, ICE's entries reflect the same structure. The Fourth Amendment refresher at GOV-00000031, for example, describes OPLA attorneys advising HSI officers on constitutional standards governing enforcement encounters and documenting those encounters in a manner that creates a defensible record. Plaintiffs treat these materials as if they were neutral policy guides, yet the logs show they are attorney communications conveying legal interpretation and risk assessments tailored to enforcement functions. That is classic attorney–client communication, and Plaintiffs have offered no evidence to challenge the substance of those privilege assertions. Accordingly, their demand for wholesale disclosure of these materials is improper.

Training materials that contain confidential legal analysis drafted by agency counsel fall squarely within these protections. Many of the documents Plaintiffs seek include attorney guidance on the application of constitutional standards, the use of statutory authorities, and the legal considerations that inform enforcement operations. These materials are intentionally safeguarded from broad dissemination because disclosure risks revealing legal strategy and legal advice on law-enforcement practices. Courts have long recognized that materials of this nature are properly withheld to preserve the confidentiality of legal advice and to avoid compromising sensitive agency functions. The fact that they take the form of "training" does not strip them of privilege when the content reflects attorney analysis directed to agency personnel.

Plaintiffs' arguments also do not account for the distinction between longstanding training manuals created before June 2025 and those generated or updated after the Court issued the TRO. Pre-existing manuals that contain confidential legal advice and have been maintained as nonpublic attorney-prepared materials continue to warrant protection. By contrast, to the extent more recent materials simply reflect operational updates issued in response to the Court's TRO, Defendants have reviewed those documents to ensure that only those portions containing privileged attorney analysis are withheld. This distinction matters: the privilege protects internal attorney guidance, not routine operational adjustments, and Defendants have withheld only those materials that fall within the established boundaries of attorney-client or work-product protection.

*Second*, Defendants properly applied the work-product doctrine, which independently protects many of the same materials because they contain attorney mental impressions and litigation-oriented guidance. For example, CBP's "Fourth Amendment Refresher Training" at GOV00000017 includes attorney editing comments and reflects OCC's legal assessment of how officers should document stops to withstand litigation challenge. ICE's training modules, including the "4th Amendment Enforcement Refresher" at GOV-00000070, go further by outlining litigation strategies, identifying legal vulnerabilities, and instructing officers on how to articulate the elements of reasonable suspicion, probable cause, and consent in removal proceedings. Plaintiffs disregard these characteristics and instead treat the documents as if they merely restated governing law. The record shows the opposite: these materials were prepared with a clear eye toward defending future enforcement actions, which is core attorney work product. Plaintiffs' motion offers no basis to pierce that protection.

Several documents are also protected by the law-enforcement privilege because their disclosure would reveal operational practices, coordination structures, and tactical considerations that are not publicly disseminated. CBP's Mobile Field Force training materials at GOV00000018-19 include sensitive discussions of how teams respond during enforcement operations—information that, if disclosed, could compromise officer safety and undermine ongoing field practices. ICE's training-distribution records at GOV-00000274-275 similarly reveal inter-agency coordination details, operational partners, and internal distribution lists that are not part of public-facing policy. Plaintiffs' motion collapses these nuanced operational materials into a generic category of "training," overlooking the concrete law-enforcement sensitivities reflected in the logs. The privilege exists to prevent precisely this kind of disclosure, and the Court should reject Plaintiffs' request to compel such materials.

Finally, Defendants also renew their request, noted during the November 14 conference, to file a supplemental memorandum under Local Rule 37-2.3 in response to Plaintiffs' motion to compel. Plaintiffs state that they intend to file a supplemental memorandum on November 24. Defendants request that the Court allow all parties to file their supplemental memoranda by

November 25. *See* L.R. 37-2.3 (which typically provides fourteen days for supplemental memoranda).

Defendants remain committed to completing their remaining production obligations and to continuing to work cooperatively with Plaintiffs to streamline issues consistent with the Court's guidance.

DATED: November 21, 2025

MUNGER, TOLLES & OLSON LLP

By: */s/ Jacob S. Kreilkamp*

JACOB S. KREILKAMP
*Counsel for Stop/Arrest Plaintiffs*

DATED: November 21, 2025

UC IRVINE IMMIGRANT AND RACIAL JUSTICE SOLIDARITY CLINIC

By: */s/ Anne Lai*

ANNE LAI
*Counsel for Stop/Arrest Plaintiffs*

DATED: November 21, 2025

MUNGER, TOLLES & OLSON LLP

By: */s/ E. Martin Estrada*

E. MARTIN ESTRADA
*Counsel for Intervenors Cities of Los Angeles, Anaheim, Bell Gardens, Beverly Hills, Carpinteria, Culver City, Huntington Park, Long Beach, Lynwood, Montebello, Monterey Park, Oxnard, Paramount, Pico Rivera, Pomona, Santa Ana, Santa Barbara, Santa Monica, South Gate, and West Hollywood*

DATED: November 21, 2025

OFFICE OF THE CITY ATTORNEY

By: */s/ Hydee Feldstein Soto*

HYDEE FELDSTEIN SOTO
*Counsel for Intervenor City of Los Angeles*

DATED: November 21, 2025

OFFICE OF THE COUNTY COUNSEL

By: */s/ Brigit Greeson Alvarez*
BRIGIT GREESON ALVAREZ
Deputy County Counsel
*Counsel for Intervenor County of Los Angeles*

DATED: November 21, 2025

OFFICE OF THE CITY ATTORNEY OF PASADENA

By: */s/ Michele Beal Bagneris*
MICHELE BEAL BAGNERIS
City Attorney
*Counsel for Intervenor City of Pasadena*

DATED: November 21, 2025

By: */s/ Jonathan K. Ross*
JONATHAN K. ROSS
United States Department of Justice
Civil Division
Office of Immigration Litigation
*Counsel for Defendants*

**ATTESTATION OF FILER**

I attest that the other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Dated: November 21, 2025

*/s/ Jacob S. Kreilkamp*
JACOB S. KREILKAMP