# Exhibit 7

**U.S. Department of Justice**

Civil Division

Office of Immigration Litigation

TD:JKR:jkz
39-12C-63488

*Washington, D.C. 20530*

November 7, 2025

**Via email to sara.worth@mto.com**
Sara Worth, Esq.
Munger, Tolles & Olson LLP
350 South Grand Avenue
Los Angeles, CA 90071

Re: Your November 5, 2025 deficiency letter concerning *Perdomo v. Noem*, No. 25-cv-5605 (C.D. Cal.)

Dear Ms. Worth:

We reviewed the points raised in your November 5 letter. Subject to and without waiving any objections or privileges, Defendants respond as follows:

*Scope of production.* In their draft document requests submitted with their motion for limited expedited discovery, ECF No. 211, Plaintiffs specifically demanded production of "All TRAINING OR GUIDANCE provided to AGENCY PERSONNEL referenced in ECF 71, ECF 71-1, ECF 71-2, ECF 170, ECF 170-1, ECF 170-2, ECF 170-3, and ECF 178, including TRAINING AND GUIDANCE concerning the TRO, on topics including but not limited to: the difference between a consensual encounter and a seizure; the factors that may be considered in deciding whether to initiate a DETENTIVE STOP including vehicle stop; appropriate use of force, use of face coverings, and agent or officer identification as they relate to DETENTIVE STOPS; and documentation requirements for DETENTIVE STOPS." ECF No. 211-1 at ECF p. 28; *accord* RFP #1 (served Oct. 21, 2025).

In reliance on that request, the Court ordered: "Defendants [to] produce documents and other materials responsive to the RFPs on a rolling basis, with production of documents they relied on in opposing the motions for a temporary restraining order and preliminary injunction to be made no later than November 4, 2025." ECF No. 227 at 4.

The Court's October 17 and October 23 orders form a single directive. In granting limited, expedited discovery, the Court authorized production focused on the "training" and related "documentation" that Defendants relied upon to show that their officers were properly trained and that the challenged stops were lawful. ECF No. 223 at 5 (describing the "narrowly tailored" purpose of Plaintiffs' discovery requests). The subsequent scheduling order, ECF No. 227, implemented that instruction by setting a timeline for production of "documents and other materials responsive to the RFPs," which—by context and by the Court's earlier framing—refers

to the same training and guidance materials Plaintiffs identified by citation to ECF 71, 71-1, 71-2, 170, 170-1, 170-2, 170-3, and 178. Consistent with that directive, Defendants produced those very materials on November 4.

Notably, the Court's Order explicitly required production of "documents and other materials responsive to the RFPs," ECF No. 227 at 4, not *all* materials in the government's possession or *all* materials ever relied on by the agencies. The Court used generic, non-specific phrasing because it had already defined the purpose of expedited discovery—to obtain the training and related documentation underlying Defendants' representations about officer conduct and constitutional compliance. Defendants accordingly produced those training and guidance materials, which were relied upon in opposing Plaintiffs' TRO and preliminary-injunction motions, satisfying the directive in both orders and as explicitly defined in Plaintiffs' RFP.

Defendants continue to collect, review, and prepare for production as to the broader categories of materials encompassed by Plaintiffs' RFPs 2-4. Those efforts are proceeding on a rolling basis consistent with the Court's order, ECF No. 227 at 4, and Defendants remain committed to completing their production by the November 21 deadline. But as to the training and guidance materials that were the specific focus of Plaintiffs' request and the Court's orders, Defendants have already complied in full.

*Content of production*. As a predicate matter, Plaintiffs' demand for an explanation of privilege and other redactions is premature, as Plaintiffs have not received Defendants' forthcoming privilege log. ECF No. 227 at 4 (allowing post-production privilege logs). As such, Plaintiffs' decision to serve their November 5 deficiency letter before reviewing Defendants' privilege assertions renders their redaction challenges unnecessarily contentious.

Regardless, as to trainings and related materials, the Court readily recognized that such documents could be privileged and confidential. ECF No. 223 at 6. Indeed, legal training materials are covered under attorney-client and work product privileges.[1] While Plaintiffs accurately note that earlier versions of U.S. Immigration and Customs Enforcement's legal training materials were provided in other litigation, there, it was provided in the context of the settlement agreement in that case. There is no such settlement agreement in this case where the type of disclosure referenced was discussed or negotiated. Defendants thus continue to abide by the parameters set out in the Protective Order.

As to redaction of attorney and other custodian names, Defendants acknowledge that those names should have been redacted as personally identifiable information, not under law enforcement privilege. Additionally, attorney and other custodian names constitute "Confidential Information" (as well as personally identifiable information) under the operative Protective Order, *see* ECF No. 247 at § A.2.b.vi, and may be marked as "Confidential" or "Confidential – Attorneys' Eyes Only" depending on the information provided. In the interest of resolving this dispute,

[1] For example, Plaintiffs inquired why GOV-00000173 was redacted in its entirety. As explained in Defendants' forthcoming privilege log, this document contains notes created by an agency attorney for training. The document itself is attorney work product as it was written by the presenter (an attorney) to guide agency officials through the training presentation. The document also contains information and legal advice presented during the training presentation and would thus be, at minimum, privileged as work product.

Defendants are amenable to providing the names of those attorneys and will reproduce portions of Defendants' November 4 Production without redacting the names of attorneys and other custodians subject to it being marked "Confidential" or "Confidential – Attorneys' Eyes Only." Subject to the parameters set forth in the Protective Order, and subject to and without waiving any objections or privileges, Defendants will likewise refrain from redacting attorney and custodian names in subsequent productions.

Finally, Defendants respectfully disagree with Plaintiffs' suggestion that the privilege over training materials has been waived. The Ninth Circuit has held that attorney-client privilege may be implicitly waived "if a party raises a claim which in fairness requires disclosure of the protected communication," *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992). "In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the other party cannot adequately dispute unless it has access to the privileged materials." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003). That is far from the case here: Defendants' briefing noted that officers regularly and periodically receive Fourth Amendment-specific immigration enforcement training, including not to stop individuals based solely on an enumerated factor, as do officers across the country. *See, e.g.*, ECF Nos. 71 at 2-3; 170 at 2. This litigation is concerned with whether officers have sufficient basis to engage in individual detentive stops and arrests—as opposed to being concerned with the contents of the training being provided. What training they receive prior to engaging in immigration enforcement operations is not at issue or otherwise challenged in Plaintiffs' operative complaint, ECF No. 16, or its prior preliminary injunction briefing; the individual stops are at issue.

Because the substance of the training materials is not at issue in this litigation, Defendants have not waived attorney-client privilege as to Fourth Amendment agency training materials. *See Garza v. Cnty. of San Bernardino*, 2025 WL 1126513, at *6 (C.D. Cal. 2025). Defendants produced training materials, not because they were core documents relied upon to assert a claim but rather because they were responsive to Plaintiffs' RFP 1. In *Garza*, the court did not find privilege to have been implicitly waived under a "sword-and-shield" theory of waiver. *Id.* To the contrary, the court had found that "the record before the court does not demonstrate defendant has in fact attempted to use the privilege as both a sword and shield." *Id*. Here, the record similarly does not indicate any attempt to use privilege as a sword and shield. Defendants maintain that Plaintiffs' legal challenges of individual stops and arrests are unsupported by the evidence in the record, including allegations of an agency policy of relying on four enumerated factors, and this litigation remains concerned with the individual stops themselves.

Sincerely,

*/s/ Jason K. Zubata*

JASON K. ZUBATA
Trial Attorney
Office of Immigration Litigation
United States Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4143
jason.k.zubata@usdoj.gov

*Counsel for Defendants*

cc: All counsel of record