# Exhibit 13

STACY TOLCHIN (SBN 217431)
*stacy@tolchinimmigration.com*
LAW OFFICES OF STACY TOLCHIN
776 E. Green St., Suite 210
Pasadena, CA 91101
Telephone: (213) 622-7450
Facsimile: (213) 622-7233

MOHAMMAD TAJSAR (SBN 280152)
*mtajsar@aclusocal.org*
MAYRA JOACHIN (SBN 306065)
*mjoachin@aclusocal.org*
EVA BITRAN (SBN 302081)
*ebitran@aclusocal.org*
DAE KEUN KWON (SBN 313155)
*akwon@aclusocal.org*
OLIVER MA (SBN 354266)
*oma@aclusocal.org*
STEPHANIE PADILLA (SBN 321568)
*spadilla@aclusocal.org*
DIANA SÁNCHEZ (SBN 338871)
*dianasanchez@aclusocal.org*
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017-4022
Telephone: (213) 977-5232
Facsimile: (213) 201-7878

*Counsel for Stop/Arrest Plaintiffs*
(*additional counsel information on cont. page*)

MARK ROSENBAUM (SBN 59940)
*mrosenbaum@publiccounsel.org*
REBECCA BROWN (SBN 345805)
*rbrown@publiccounsel.org*
SOPHIA WRENCH (SBN 354416)
*swrench@publiccounsel.org*
RITU MAHAJAN (SBN 252970)
*rmahajan@publiccounsel.org*
GINA AMATO (SBN 215519)
*gamato@publiccounsel.org*
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977

*Counsel for All Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

Pedro VASQUEZ PERDOMO; Carlos Alexander OSORTO; and Isaac VILLEGAS MOLINA; Jorge HERNANDEZ VIRAMONTES; Jason Brian GAVIDIA; LOS ANGELES WORKER CENTER NETWORK; UNITED FARM WORKERS; COALITION FOR HUMANE IMMIGRANT RIGHTS; IMMIGRANT DEFENDERS LAW CENTER,

Plaintiffs,

v.

Kristi NOEM, in her official capacity as

Case No.: 2:25-cv-05605-MEMF-SP

***EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

Hon. Maame Ewusi-Mensah Frimpong

Secretary, Department of Homeland Security; Todd M. LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; Rodney S. SCOTT, in his official capacity as Commissioner, U.S. Customs and Border Patrol; Michael W. BANKS, in his official capacity as Chief of U.S. Border Patrol; Kash PATEL, in his official capacity as Director, Federal Bureau of Investigation; Pam BONDI, in her official capacity as U.S. Attorney General; Ernesto SANTACRUZ JR., in his official capacity as Acting Field Office Director for Los Angeles, U.S. Immigration and Customs Enforcement; Eddy WANG, Special Agent in Charge for Los Angeles, Homeland Security Investigations, U.S. Immigration and Customs Enforcement; Gregory K. BOVINO, in his official capacity as Chief Patrol Agent for El Centro Sector of the U.S. Border Patrol; Jeffrey D. STALNAKER, in his official capacity as Acting Chief Patrol Agent, San Diego Sector of the U.S. Border Patrol; Akil DAVIS, in his official capacity as Assistant Director in Charge, Los Angeles Office, Federal Bureau of Investigation; Bilal A. ESSAYLI, in his official capacity as U.S. Attorney for the Central District of California,

Defendants.

ANNE LAI (SBN 295394)
*alai@law.uci.edu*
UC IRVINE SCHOOL OF LAW
IMMIGRANT AND RACIAL JUSTICE
SOLIDARITY CLINIC
P.O. Box 5479
Irvine, CA 92616-5479
Telephone: (949) 824-9894
Facsimile: (949) 824-2747

*Counsel for Stop/Arrest Plaintiffs*

LAUREN MICHEL WILFONG*
*lwilfong@ndlon.org*
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

*Counsel for Stop/Arrest Plaintiffs*

BREE BERNWANGER (SBN 331731)
*bbernwanger@aclunc.org*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

*Counsel for Stop/Arrest Plaintiffs*

BRISA VELAZQUEZ OATIS
(SBN 339132)
*bvoatis@aclu-sdic.org*
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL
COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Telephone: (619) 398-4199

*Counsel for Stop/Arrest Plaintiffs*

EDGAR AGUILASOCHO
(SBN 285567)
*eaguilasocho@farmworkerlaw.com*
MARTINEZ AGUILASOCHO LAW, INC.
900 Truxtun Ave Suite 300
Bakersfield, CA 93301
Telephone: (661) 859-1174

*Counsel for Plaintiff United Farm Workers*

CARL BERGQUIST*
*cbergquist@chirla.org*
COALITION FOR HUMANE
IMMIGRANT RIGHTS
2351 Hempstead Road
Ottawa Hills, OH 43606
Telephone: (310) 279-6025

*Counsel for Plaintiff Coalition for Humane Immigrant Rights*

* Pro hac vice application forthcoming

Plaintiffs Pedro Vasquez Perdomo, Carlos Alexander Osorto, Isaac Villegas Molina, Jorge Hernandez Viramontes, Jason Brian Gavidia, the Los Angeles Worker Center Network, United Farm Workers, and Coalition for Humane Immigrant Rights (collectively "Stop/Arrest Plaintiffs") hereby apply for a temporary restraining order ("TRO") and an order to show cause why a preliminary injunction should not issue pending the final disposition of this action.

As set forth in the accompanying memorandum of points and authorities and the attached declarations, Stop/Arrest Plaintiffs are likely to succeed on the merits of their claim that Defendants have an ongoing policy, pattern, and/or practice of conducting detentive stops in this District without reasonable suspicion that the person to be stopped is within the United States in violation of U.S. immigration law, in contravention of the Fourth Amendment to the United States Constitution. See First Amended Petition and Complaint, Dkt. 16, ¶¶ 215–20 (Count One). Emergency relief is necessary and appropriate because Defendants' actions are causing grave and ongoing constitutional injury to Plaintiffs and delay will result in further immediate, irreparable harm.

Pursuant to Federal Rule of Civil Procedure 65(b)(1) and Local Rules 7-19 and 65-1, Defendants were advised on July 2, 2025, that Stop/Arrest Plaintiffs planned to file this ex parte application and of the contents of this application by call with Assistant United States Attorneys ("AUSAs") Pauline Helen Alarcon and Daniel Beck of the United States Attorney's Office for the Central District of California. Tolchin Decl. ¶ 5. AUSAs Alarcon and Beck stated that this application is opposed.

On July 3, 2025, Stop/Arrest Plaintiffs' counsel Mohammad Tajsar spoke with AUSA Daniel Beck to confirm the filing of this application, and to notify Mr. Beck of Stop/Arrest Plaintiffs' request for the same briefing and hearing schedule as the Court issued for the application filed by the Access/Detention Plaintiffs. Dkt. 42; see Dkt. 41 (Defendants' ex parte request to extend deadline to file oppositions to both applications to no earlier than July 8). Mr. Beck indicated that Defendants request one additional day for each deadline set by the Court's July 3 Order. Given the severity of Defendants' continuing constitutional violations and the ongoing, irreparable harm, Stop/Arrest Plaintiffs request the Court set the same briefing schedule as it set on the Access/Detention TRO application.

Counsel for Defendants AUSA Alarcon and Beck have already appeared as counsel in this action for Defendants. See Dkt. 8, 39. AUSA Beck's address is United States Attorney's Office for the Central

District of California, 300 North Los Angeles Street, Suit 7516, Los Angeles, CA 90012. AUSA Beck's phone number is (213) 894-2574, and his email address is daniel.beck@usdoj.gov.

Dated: July 3, 2025 By: *Mohammad Tajsar*

*Attorney for Stop/Arrest Plaintiffs*

## TABLE OF CONTENTS

Page


INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 2

I. Defendants are conducting sweeping immigration raids throughout this District. ..... 2

II. Defendants have a policy and practice of making suspicionless stops based on racial profiling. ..... 6

A. Defendants' stops are based not on individualized suspicion, but racial profiling. ..... 6

B. Defendants are conducting stops, not voluntary questioning. ..... 9

C. Defendants' policy and practice of unlawful stops is officially sanctioned. ..... 13

III. Defendants' policy and practice is causing ongoing, irreparable harm. ..... 16

LEGAL STANDARD ..... 18

ARGUMENT ..... 18

I. Stop/Arrest Plaintiffs Are Likely to Succeed on the Merits of their Fourth Amendment Claim. ..... 18

A. Defendants are conducting seizures that require at least reasonable suspicion. ..... 18

B. Defendants' seizures are not supported by reasonable suspicion. ..... 20

II. Plaintiffs Will Suffer Irreparable Harm from Defendants' Unlawful Policies and Practices in the Absence of a TRO. ..... 22

III. The Balance of Hardships Weighs Heavily in Plaintiffs' Favor, and a District-Wide Injunction is Both Permissible and in the Public Interest. ..... 23

CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*All for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) .......... 18

*Benitez-Mendez v. I.N.S.*,
760 F.2d 907 (9th Cir. 1983) .......... 22

*Chalk v. U.S. Dist. Court*,
840 F.2d 701 (9th Cir. 1988) .......... 23

*Easyriders Freedom F.I.G.H.T. v. Hannigan*,
92 F.3d 1486 (9th Cir. 1996) .......... 24

*Illinois v. Wardlow*,
528 U.S. 119 (2000) .......... 21

*Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*,
799 F.2d 547 (9th Cir. 1986) .......... 22, 24

*Kidd v. Mayorkas*,
734 F. Supp. 3d 967 (C.D. Cal. 2024) .......... 24

*LaDuke v. Nelson*,
762 F.2d 1318 (9th Cir. 1985) .......... 23, 24

*Laws. for Fair Reciprocal Admission v. United States*,
No. 24-2213, 2025 WL 1717992 (9th Cir. June 20, 2025) .......... 23

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011) .......... 23

*Martinez v. Nygaard*,
831 F.2d 822 (9th Cir. 1987) .......... 22

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) .......... 22, 23, 24, 25

*Norsworthy v. Beard*,
87 F. Supp. 3d 1164 (N.D. Cal. 2015) .......... 23

*Orhorhaghe v. I.N.S*,
38 F.3d 488 (9th Cir. 1994) .......... 18

*Perez Cruz v. Barr*,
926 F.3d 1128 (9th Cir. 2019) .......... 22

*Pimentel v. Drefus*,
670 F.3d 1096 (9th Cir. 2012) ........ 18

*Preminger v. Principi*,
422 F.3d 815 (9th Cir. 2005) ........ 25

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
240 F.3d 832 (9th Cir. 2001) ........ 18

*Trump v. CASA, Inc.*,
---S.Ct.---, 2025 WL 1773631 (June 27, 2025) ........ 25

*United Farm Workers v. Noem*,
No. 1:25-cv-00246 JLT CDB (E.D. Cal. April 29, 2025) ........ 1, 15, 23, 24

*United States v. Belin*,
868 F.3d 43 (1st Cir. 2017) ........ 19

*United States v. Black*,
707 F.3d 531 (4th Cir. 2013) ........ 19

*United States v. Brignoni-Ponce*,
422 U.S. 873 (1975) ........ 20

*United States v. Brown*,
925 F.3d 1150 (9th Cir. 2019) ........ 21, 22

*United States v. Brown*,
996 F.3d 998 (9th Cir. 2021) ........ 19

*United States v. Gallinger*,
227 F. Supp. 3d 1163 (D. Idaho 2017) ........ 19

*United States v. Manzo-Jurado*,
457 F.3d 928 (9th Cir. 2006) ........ 20, 21, 22

*United States v. Montero-Camargo*,
208 F.3d 1122 (9th Cir. 2000) ........ 20, 21

*United States v. Rodriguez*,
976 F.2d 592 (9th Cir. 1992) ........ 1

*United States v. Washington*,
387 F.3d 1060 (9th Cir. 2004) ........ 18, 19

*United States v. Washington*,
490 F.3d 765 (9th Cir. 2007) ........ 18, 19, 20

*Warsoldier v. Woodford*,
418 F.3d 989 (9th Cir. 2005) ........ 22

*Washington v. Trump*,
847 F.3d 1151 (9th Cir. 2017) .......... 23

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .......... 18

*Ybarra v. Illinois*,
444 U.S. 85 (1979) .......... 22

*Zepeda v. I.N.S.*,
753 F.2d 719 (9th Cir. 1983) .......... 25

**CONSTITUTIONAL PROVISIONS**

Fourth Amendment .......... passim

## INTRODUCTION

"[N]umbers, pure numbers. Quantity over quality," has been the sum and motto of Defendants' approach to immigration operations in the field in Southern California over the past several weeks.[1] Starting on or around June 6, 2025, Defendants have deployed marauding, masked, and armed agents to conduct suspicionless stops of thousands of Latine people in this District, in order to meet an arbitrary quota for 3,000 daily arrests imposed by the White House. But while Defendants may believe that immigration enforcement can be a numbers game, the Fourth Amendment requires that seizures be reasonable. This means that before requiring an individual to submit to questioning, federal officials must have an objective, particularized basis to believe that a person is present in violation of immigration law. They cannot "draw into the law enforcement net a generality of persons unmarked by any really articulable basis for reasonable suspicion." *United States v. Rodriguez*, 976 F.2d 592, 596 (9th Cir. 1992), *opinion amended on denial of reh'g*, 997 F.2d 1306 (9th Cir. 1993).

Defendants are engaged in an extraordinary campaign of targeting people based on nothing more than the color of their skin, and in some cases, where they live or work. These practices began in a neighboring District earlier this year. A federal judge granted a preliminary injunction against one of the Defendants after finding Border Patrol agents engaged in a policy and practice of conducting detentive stops without individualized reasonable suspicion in likely violation of the Fourth Amendment. *United Farm Workers v. Noem*, No. 1:25-cv-00246 JLT CDB (E.D. Cal. April 29, 2025). Rather than ending this patently illegal practice, Defendants have doubled down, replicating the same lawlessness in immigration operations in Southern California today.

Plaintiffs are five Latino individuals, including U.S. citizens, who have been caught in Defendants' federal immigration dragnet, and three organizations—the Los Angeles Worker Center Network (LACWN), United Farm Workers (UFW), and the Coalition for Humane Immigrant Rights (CHIRLA)—whose members have been and reasonably fear being subjected in the future to

[1] Jennie Taer, *Trump admin's 3,000 ICE arrests per day quota is taking focus off criminals and 'killing morale': insiders*, New York Post (June 17, 2025), https://nypost.com/2025/06/17/us-news/trump-admins-3000-ice-arrests-per-day-quota-is-taking-focus-off-criminals-and-killing-morale-insiders/.

Defendants' unlawful policy and practice.[2] Given the ongoing nature of these unconstitutional raids, they face immediate irreparable harm absent intervention by the Court.

Accordingly, to prevent the further deprivation of rights, Plaintiffs seek a temporary restraining order (TRO) prohibiting Defendants from conducting detentive stops for the purposes of immigration enforcement without first establishing individualized, reasonable suspicion that the person to be stopped is unlawfully in the United States. Doing so is within the Court's remedial power, needed to provide Plaintiffs with complete relief, and is no broader than needed to bring Defendants' practices into compliance with the Constitution until further proceedings can be held.

## FACTUAL BACKGROUND

### I. Defendants are conducting sweeping immigration raids throughout this District.

In early June, Defendants unleashed agents into the streets, worksites, and neighborhoods of Los Angeles and surrounding counties, creating an unlawful detention and deportation dragnet that shows no signs of ceasing. The agencies involved include the Department of Homeland Security (DHS) and its components, Immigration and Customs Enforcement (ICE), including Enforcement and Removal Operations (ERO) and Homeland Security Investigations (HSI); the U.S. Border Patrol; as well as the Department of Justice (DOJ) law enforcement agencies, such as the Federal Bureau of Investigation (FBI) and others.[3]

Defendants have conducted, and continue to conduct, raids across the District. Operations have been reported across Los Angeles and Orange Counties, the Inland Empire, and the Central Valley, in

[2] Consistent with the First Amended Petition and Complaint (Dkt. 16), Moving Plaintiffs applying for this temporary restraining order are referred to as the "Stop/Arrest Plaintiffs," distinguishing them from the "Access/Detention Plaintiffs" concurrently seeking a restraining order on a different set of claims, (Dkt. 38).

[3] *See* Ex. 16, Declaration of R.H.D. ("R.H.D. Decl."), ¶ 4 (describing encounter with ICE and FBI agents); Cameron Kiszla, *Immigration agents raid several L.A. businesses, encounter protestors*, KTLA (June 6, 2025), https://ktla.com/news/local-news/federal-agents-raid-home-depot-in-westlake-district/ ("The FBI confirmed to KTLA that it is participating in the HSI raids, not just in Los Angeles but nationwide, 'as directed by the Attorney General. As we have been asked to do, we are sending Agents to participate in these immigration enforcement efforts,' the statement said.").

neighborhoods and cities as diverse as Baldwin Park,[4] Cathedral City,[5] Costa Mesa,[6] Downey,[7] Glendale,[8] Hawthorne,[9] Hollywood,[10] Huntington Park,[11] Ladera Heights,[12] Marina Del Rey,[13]

[4] *Baldwin Park Among Cities Targeted in Immigration Raids Wednesday Morning*, Baldwin Park News (June 29, 2025), https://baldwinparknewsonline.com/baldwin-park-among-cities-targeted-in-immigration-raids-wednesday-morning/.

[5] Jesus Reyes, *Officials Encourage Residents to 'Know Their Rights' After Border Patrol, ICE Conduct Operation in Cathedral City*, News Channel 3 (June 6, 2025), https://kesq.com/news/2025/06/06/officials-encourage-residents-to-know-their-rights-after-border-patrol-ice-conduct-operation-in-cathedral-city/.

[6] Pat Maio, *Home Depot's day laborer haven turns into immigration target across Southern California*, L.A. Daily News (June 13, 2025), https://www.dailynews.com/2025/06/13/home-depot-a-longtime-destination-for-day-laborers-part-of-symbolic-southern-california-raids/.

[7] Karla Rendon, *Immigration raids reported near Downey churches*, NBC 4 (June 11, 2025), https://www.nbclosangeles.com/news/local/downey-churches-home-depot-immigration-raids/3721686/.

[8] Ex. 19-A, Declaration of Todd W. Price ("Todd W. Price Decl.").

[9] Price Decl., Ex. 19-B.

[10] Brittny Mejia & Rachel Uranga, *Raid at a Home Depot in Hollywood shatters an immigrant refuge*, L.A. Times (June 20, 2025), https://www.latimes.com/california/story/2025-06-20/border-patrol-agents-arrest-street-vendors-outside-hollywood-home-depot.

[11] Pat Maio, *supra* n. 6; Nathan Solis et al., *What businesses are the feds targeting during L.A. immigration sweeps? Here's what we know*, L.A. Times (June 10, 2025), https://www.latimes.com/california/story/2025-06-10/ice-sweep-targets-what-we-know.

[12] Ex. 7, Declaration of A.L. ("A.L. Decl."), ¶ 4.

[13] Price Decl., Ex. 19-C.

Moorpark,[14] Oxnard,[15] Paramount,[16] Pico Rivera,[17] Richgrove,[18] Rosemead,[19] Santa Ana,[20] South Los Angeles,[21] Sylmar,[22] Upland,[23] Westlake,[24] and Whittier.[25]

---

[14] Strater Decl. ¶¶ 17–18 (describing enforcement in Moorpark).

[15] Jessica Garrison et al., *ICE expands immigration raids into California's agricultural heartland*, Los Angeles Times, June 10, 2025, https://www.latimes.com/california/story/2025-06-10/ice-expands-immigration-raids-into-californias-agricultural-heartland

[16] Pat Maio, *supra* n. 6.

[17] Price Decl., Ex. 19-D.

[18] Jessica Garrison et al., *ICE expands immigration raids into California's agricultural heartland*, Los Angeles Times, June 10, 2025, https://www.latimes.com/california/story/2025-06-10/ice-expands-immigration-raids-into-californias-agricultural-heartland.

[19] Price Decl., Ex. 19-F, G.

[20] Pat Maio, *supra* n. 6.

[21] Price Decl., Ex. 19-H.

[22] Semantha Raquel Norris, *Federal Immigration Agents Terrorize the Northeast Valley*, San Fernando Valley Sun (June 19, 2025), https://sanfernandosun.com/2025/06/19/federal-immigration-agents-terrorize-the-northeast-valley/.

[23] Helen Jeong, *ICE agents fail to detain day laborers at Upland Home Depot after bystanders intervene*, NBC 4 (Jun. 16, 2025), https://www.nbclosangeles.com/news/local/ice-agents-fail-to-detain-day-laborers-at-upland-home-depot-after-bystanders-intervene/3725645/.

[24] Cameron Kiszla, *Immigration agents raid several L.A. businesses, encounter protesters*, KTLA 5 (June 6, 2025), https://www.latimes.com/business/story/2025-06-09/home-depot-in-the-crosshairs-of-immigrations-raids (reporting that masked officers wearing vests emblazoned with "HSI" took individuals into custody at a Home Depot in Westlake); Helen Jeong, *45 people arrested during ICE raids at 3 downtown LA locations*, NBC 4 (June 6, 2025), https://www.nbclosangeles.com/news/local/45-people-arrested-during-ice-raids-at-3-downtown-la-locations/3717742/ (noting that nearly two dozen individuals were detained in the Home Depot parking lot in Westlake); Price Decl., Ex. 19-I.

[25] Kaitlyn Huamani, *Home Depot caught in the crosshairs of L.A. immigration raids*, LTimes (June 9, 2025), https://www.latimes.com/business/story/2025-06-09/home-depot-in-the-crosshairs-of-immigrations-raids (noting an immigration raid conducted by federal agents at a Home Depot in Whittier); Maanvi Singh, *At Home Depot, Ice raids terrorize the workers who helped build LA: "They just come and grab you"*, The Guardian (June 16, 2025), https://www.theguardian.com/us-news/2025/jun/16/home-depot-ice-raids-los-angeles (same); Tracey Leong & Karla Rendon, *'Hope he comes back.' Long Beach family says father detained outside Whittier Home Depot*, NBC 4, (June 14, 2025), https://www.nbclosangeles.com/news/local/long-beach-grandfather-detained-immigration/3724461/ (highlighting the emotional impact of immigration raids on a Long Beach family after a loved one was detained outside the Whittier Home Depot).

Defendants' immigration operations have been driven by an arbitrary arrest quota that has been imposed to try to deliver, in the words of the President, the "largest Mass Deportation Operation" in history.[26] They are a shift from past practice, at least for ICE, in that they are not based on any prior investigation about a person or list of persons. In late May, the White House Deputy Chief of Staff Stephen Miller expressly directed high-level officials in the agency to instead "just go out there and arrest [unauthorized noncitizens]" by rounding up people in public spaces like "Home Depot" and "7-Eleven" stores.[27]

Predictably, Defendants' "roving patrols"[28] have had a devastating impact on day laborers, carwash workers, farm workers, street vendors, and others whose work makes them a visible target for racial profiling. Day laborer pickup locations such as Home Depot parking lots have become central sites of immigration enforcement.[29] In addition, numerous carwashes have been hit.[30] And Defendants have detained and arrested multiple dozens of people at agricultural sites in Ventura and Santa Barbara

---

[26] Ex. 18, Declaration of Diana Sánchez ("Sánchez Decl."), Attach. C.

[27] Elizabeth Findell, et al., *The White House Marching Orders That Sparked the L.A. Migrant Crackdown*, The Wall Street Journal (June 9, 2025), https://www.wsj.com/us-news/protests-los-angeles-immigrants-trump-f5089877.

[28] Brittany Mejia & Rachel Uranga, *Fears of racial profiling rise as Border Patrol conducts 'roving patrols,' detains U.S. Citizens*, L.A. Times (June 15, 2025), https://www.latimes.com/california/story/2025-06-15/latinos-targeted-in-raids-u-s-citizens-detained-indiscriminate-sweeps-home-depot-lots-targeted

[29] Kaitlyn Huamani, *Home Depot caught in the crosshairs of L.A. immigration raids*, L.A. Times (June 9, 2025), https://www.latimes.com/business/story/2025-06-09/home-depot-in-the-crosshairs-of-immigrations-raids (discussing how Home Depots across Southern California have been impacted by the immigration raids); Maanvi Singh, *At Home Depot, Ice raids terrorize the workers who helped build LA: "They just come and grab you"*, The Guardian (June 16, 2025), https://www.theguardian.com/us-news/2025/jun/16/home-depot-ice-raids-los-angeles; Pat Maio, *supra* n. 6.

[30] Emily Baumgaertner Nunn & Anushka Patil, *Carwashes become easy targets in California's ICE raids*, N.Y. Times (June 11, 2025), https://www.nytimes.com/live/2025/06/11/us/los-angeles-protests-trump-ice?smid=url-share#carwashes-become-easy-targets-in-californias-ice-raids; ; Kaitlyn Huamani & Suhauna Hussain, *More L.A. car washes targeted in immigration raids, some closed amid fears of further sweeps*, *L.A. Times* (June 20, 2025), https://www.latimes.com/business/story/2025-06-20/la-car-washes-targeted-immigration-raids-business-closures; Karla Rendon, *Armed, masked federal agents detain 2 car wash employees in Torrance* (June 23, 2025), https://www.nbclosangeles.com/news/local/armed-masked-federal-agents-detain-2-car-wash-employees-in-torrance/3730810/.

Counties.[31] But raids have not been limited to those locations. Agents and officers have also taken over street corners,[32] bus stops,[33] parks,[34] recycling centers,[35] tow yards,[36] a swap meet,[37] a gym,[38] churches,[39] and packing houses.[40] Armed to the hilt, masked, and driving unmarked cars, they have adopted a central strategy of grabbing people first and asking questions later.

## II. Defendants have a policy and practice of making suspicionless stops based on racial profiling.

### *A. Defendants' stops are based not on individualized suspicion, but racial profiling.*

---

[31] Amy Taxin & Dorany Pineda, *Immigration Raids are threatening businesses that supply America's food, farm bureaus say*, Associated Press (June 13, 2025), https://www.kvpr.org/local-news/2025-06-13/immigration-raids-are-threatening-businesses-that-supply-americas-food-farm-bureaus-sayl.

[32] Leanne Suter, *Community members try to help street vendor taken by federal agents in Ladera Heights, video shows,* ABC7 News (June 27, 2025), https://abc7.com/post/community-members-try-help-street-vendor-taken-ice-ladera-heights/16863236/.

[33] Sophie Flay, *ICE agents detain several people at Pasadena bus stop, conducts raids across the city*, ABC 7 (June 19, 2025), https://abc7.com/post/ice-agents-detain-2-men-pasadena-bus-stop-conduct-raids-city/16785979/.

[34] Douglas Sanders Sr., *OC attorney says she was detained in ICE raid at Santa Ana Park*, Daily Journal (June 19, 2025), https://www.dailyjournal.com/articles/386228-oc-attorney-says-she-was-detained-in-ice-raid-at-santa-ana-park (Latina U.S. citizen attorney detained by ICE in park raid); Gabriel San Román, *ICE didn't raid Disneyland but federal agents arrested a man at a nearby park*, L.A. Times (June 12, 2025), https://www.latimes.com/socal/daily-pilot/entertainment/story/2025-06-12/ice-disney-anaheim.

[35] Ryan P. Cruz, *Immigration Enforcement Shakes Up Communities of Santa Barbara County*, Santa Barbara Independent (June 20, 2025), https://www.independent.com/2025/06/20/immigration-enforcement-shakes-up-communities-of-santa-barbara-county/.

[36] Leo Stallworth, *Man arrested by ICE agents at Montebello tow yard is US citizen, family says*, ABC 7, June 13, 2025, https://abc7.com/post/man-arrested-ice-agents-montebello-towing-yard-is-us-citizen-family-says/16743898/.

[37] Josh Dubose, *Dozens of heavily armed ICE agents swarm popular L.A. County swap meet*, KTLA 5 (June 15, 2025), https://ktla.com/news/local-news/dozens-of-heavily-armed-ice-agents-swarm-popular-l-a-county-swap-meet/.

[38] Ricardo Tovar, *LA County officials say ICE agents targeted individuals at churches*, KSBW 8 (June 12, 2025) https://www.ksbw.com/article/la-county-ice-agents-targeted-individuals-church/65039805.

[39] Vicent Medina, *Tensions high as immigration sweeps reach Downey churches*, The Downey Patriot (June 16, 2025), https://www.thedowneypatriot.com/articles/tensions-high-as-immigration-sweeps-reach-downey-churches; Ricardo Tovar, *LA County officials say ICE agents targeted individuals at churches*, KSBW 8 (June 12, 2025), https://www.ksbw.com/article/la-county-ice-agents-targeted-individuals-church/65039805.

[40] Price Decl., Ex. 19-J.

By definition, agents and officers conducting patrols do not have any prior particularized information about any of the individuals they stop and question. Rather, they are resorting to broad stereotypes based on race or ethnicity, accent, a person's presence at a particular location, and/or the type of work one does to determine who they will target.

For instance, when officers descended on the bus stop in Pasadena in the early morning of June 18, where Petitioners-Plaintiffs and day laborers Pedro Vasquez Perdomo, Carlos Alexander Osorto, and Isaac Villegas Molina were waiting to be picked up for a job, all they knew about the three men was that they appeared to be Latino and were dressed in construction work clothes. Ex. 1, Declaration of Pedro Vasquez Perdomo ("Vasquez Perdomo Decl."), ¶¶ 4–8, 11; Ex. 2, Declaration of Carlos Alexander Osorto ("Osorto Decl."), ¶¶ 4-8, 13; Ex. 3, Declaration of Isaac Villegas Molina ("Villegas Molina Decl."), ¶¶ 4–6, 10.

When agents raided a carwash in Whittier on June 18 (for the third time since June 9) that Plaintiff Jorge Hernandez Viramontes has worked at for approximately 10 years, they likewise knew little about him before they began interrogating him. Ex. 4, Declaration of Jorge Hernandez Viramontes ("Hernandez Viramontes Decl."), ¶¶ 2–14. He explained he is a U.S. citizen, but they nevertheless detained him to "verify" his citizenship at an offsite location before bringing him back to the car wash. *Id.* ¶ 10. Mr. Hernandez Viramontes's co-worker Omar Gamez, who also presents as Latino, reports that during the same June 18 raid, three different agents approached Gamez on separate occasions within a short span of time to demand that he tell them if he was a U.S. citizen. Ex. 5, Declaration of Omar Andres Gamez ("Gamez Decl."), ¶ 7. During that same raid, agents "questioned all the workers in one area of the carwash." *Id.*

Plaintiff Jason Brian Gavidia's experience likewise presents a striking example of racial profiling. While doing maintenance on his own car at a tow yard and storage lot in the predominantly Latine Montebello, he was stopped by federal agents who simply saw him there in soiled clothing. Ex. 9, Declaration of Jason Brian Gavidia ("Gavidia Decl."), ¶¶ 6–12 (stating "federal agents stopped me literally based on my skin color, just because of the way I look—because I am brown, Latino"). He told them he was American, but they violently persisted in their questioning, demanding that he tell him what

hospital he was born in, and only let him go after he showed them his Real ID, for which they had not even asked. *Id.* at ¶¶ 9–11.[41]

Members of the organizational Plaintiffs, LAWCN, UFW, and CHIRLA, have also experienced or witnessed this ongoing policy and practice of racial profiling. Ex. 12, Declaration of Armando Gudino ("Gudino Decl."), ¶¶ 25, 27; Ex. 13, Declaration of Flor Melendrez ("Melendrez Decl."), ¶ 14–15, 17–18; Exhibit 8, Declaration of Elizabeth Strater ("Strater Decl."), ¶¶ 29, 32, 35; Ex. 18, Declaration of Angelica Salas ("Salas Decl."), Dkt. 38-9, ¶¶ 24–31. For example, one of LAWCN's worker centers, CLEAN Carwash Worker Center, has a member named Jesus Aristeo Cruz Uitz whom agents grabbed at the Westchester Car Wash on June 8 and began interrogating, knowing nothing more at the time than that he had brown skin and was present at the car wash. Ex. 10, Declaration of Jesus Aristeo Cruz Uitz ("Cruz Uitz Decl."), ¶ 6.[42]

Numerous other community members have described similar incidents. *See, e.g.*, R.H.D. Decl. ¶¶ 4–9 (describing experience with agents who approached and questioned him and his brother-in-law when they were helping to paint a relative's home, while nearby Caucasian people doing yard work were not approached); Ex. 11, Declaration of Jose Antonio Valdez Rios ("Valdez Rios Decl."), ¶¶ 3–5 (describing experience of being detained at a Home Depot while he was looking for work along with other day laborers when agents did not know his identity or anything else about him); *see also* Declaration of Lindsay Toczylowski ("Toczylowski Decl."), Dkt. 38-11, ¶¶ 32–38 (describing Immigrant Defenders Law Center client with asylee status who has been stopped by immigration agents twice already and who was detained most recently on June 19 while standing at a Home Depot with other men looking for work); Ex. 15, Declaration of M.N. ("M.N. Decl.") ¶¶ 5–6 (describing experience with agent who approached him at a car wash raid and detained him before he had answered any

---

[41] *See also* Brittny Mejia, *Video shows immigration agents interrogating a Latino U.S. citizen: 'I'm American, bro!'*, Los Angeles Times (June 13, 2025), https://www.latimes.com/politics/story/2025-06-13/video-shows-immigration-agents-interrogating-a-latino-u-s-citizen-im-american-bro; Jennifer Medina, 'I'm an American, Bro!': *Latinos Report Raids in Which U.S. Citizenship Is Questioned*, New York Times (June 15, 2025), https://www.nytimes.com/2025/06/15/us/hispanic-americans-raids-citizenship.html.

[42] Emily Baumgaertner Nunn & Anushka Patil, *supra* n. 30 (discussing customers at a car wash are being interrogated and arrested).

Case 2:25-cv-05605-MEMF-SP Document 266-14 Filed 11/21/25 Page 19 of 41 Page ID #:5113

questions); Ex. 6, Declaration of Elvira Padilla ("Padilla Decl."), ¶¶ 4–12 (describing the June 26 detention of four day laborers by armed immigration agents without any apparent suspicion, in an action she described as "like a disappearance"); Ex. 7, Declaration of A.L. ("A.L. Decl."), ¶¶ 2–16 (describing a "violent kidnapping" of a woman during a June 23 Home Depot raid by armed agents without any apparent suspicion).

And news reports and videos further confirm this has been a widespread practice. At a June 8 raid at a Los Angeles Home Depot, agents began handcuffing anyone they could grab, and witnesses said they could not recall another enforcement action in which people had been detained so arbitrarily. [43] And when sixty heavily armed agents raided a swap meet on June 14 in Santa Fe Springs, an onlooker reported that "if you looked Hispanic in any way, they just took you."[44]

***B. Defendants are conducting stops, not voluntary questioning.***

When agents and officers contact community members during the ongoing immigration operations, they do so with a show of force and authority sufficient to lead any reasonable person to believe they are being detained.

**First**, agents and officers typically approach swiftly—by vehicle or foot—in an aggressive and intimidating manner. Petitioner-Plaintiffs Vasquez Perdomo, Osorto, and Villegas Molina describe four to five agents "c[oming] up quickly" on them Osorto Decl. ¶ 5, such that they were "[s]uddenly" surrounded by unmarked cars," with masked men "running towards" them. Vasquez Perdomo Decl. ¶¶ 5–6; *see also* Osorto Decl. ¶ 5; Villegas Molina Decl. ¶ 5 (masked men with guns came out "very aggressively"). Their description echoes the accounts of others who experienced or witnessed detentions. *See* Cruz Uitz Decl. ¶ 4 (agents pulled up to car wash in a "very fast an intimidating manner"); Padilla Decl. ¶¶ 6, 10, 12 (describing raid on Latino day laborers as "extremely disorienting" with 8-12 "[m]en in camouflage and balaclavas jump[ing] out of the[ir] cars," at least one with a "huge assault rifle," "were everywhere and moving so fast," and then "sped away . . . in all directions,

[43] Arelis R. Hernandez, *'La migra!': Day laborers recount ICE raid outside Los Angeles Home Depot,* The Washington Post (June 8, 2025), https://www.washingtonpost.com/immigration/2025/06/08/ice-los-angeles-home-depot-raid-trump/.

[44] *Id.*

including against traffic”). These actions have led many to liken the detentions to kidnapping or disappearances. Osorto Decl. ¶ 6 (agents felt like “mercenaries, like a kidnapping”); Villegas Molina Decl. ¶ 8 (encounter “felt like a kidnapping); Padilla Decl. ¶ 12 (raid was “like a disappearance”); A.L. Decl. ¶ 16 (raid was like “a violent kidnapping”).

**Second**, agents often physically grab, surround, or block people, sometimes holding them at gunpoint. Petitioner-Plaintiffs Vasquez Perdomo and Osorto were both grabbed by agents and handcuffed before they were asked any questions. Vasquez Perdomo Decl. ¶¶ 5–6; Osorto Decl. ¶¶ 6–8 (agent pointed a taser over his heart and said “stop or I’ll use it!”). Others also described people being grabbed, tackled, or dragged prior to any questioning. Strater Decl. ¶ 35 (recounting experience of UFW member who is married to a senior citizen who was walking to work and “grabbed . . . forcefully”); Cruz Uitz Decl.. ¶ 6 (member of CLEAN who describes an agent approaching him “angrily and grabbed [his] arms”); M.N. Decl. ¶¶ 5–6 (describing a “man in military clothing with a bulletproof vest[]” who “put his hand on his shoulder”); Ex. 14, Declaration of B.V. (“B.V. Decl.”), ¶ 10 (noting “one of the masked individuals was holding [his] little brother by the shoulder”); Padilla Decl. ¶ 7 (observing masked agents chasing a day laborer and tackling him to the ground and handcuffing him, without asking questions); A.L. Decl. ¶¶ 5–9 (describing a man chasing a young Latina street vendor and six more men with “large guns” surrounding her). At the Santa Fe Springs swap meet on June 14, a vendor recounted that agents “were dragging people out of the bathrooms,” then questioning them.[45]

When individuals declined to answer questions or tried to terminate encounters, agents did not hesitate to escalate matters. M.N. Decl. ¶¶ 5–6 (when M.N. responded that agent could speak with his boss instead, “two other men put their hands on [him] and put [him] under arrest”); B.V. Decl. ¶ 9 (recounting an agent “on top of a worker” at a car wash “with a knee on his neck”); *see also* Hernandez Viramontes Decl. ¶ 10 (went with agents at car wash to investigate whether he was in fact U.S. citizen because he “didn’t want them to handcuff me or worse”).

Even when agents did not physically grab people, they would surround and block them, making it difficult for them to leave. *See* Salas Decl. ¶ 27 (recounting experience of CHIRLA member who

[45] Josh DuBose, *supra* n. 37.

witnessed "agents jump[] out of a van, rush[] up to [a vendor], surround[] him, and handle[] him violently, though he made no effort to resist or run"); R.H.D. Decl. ¶¶ 7–8 (describing experience of being "surrounded by agents who had their arms out preventing me from walking away," making him "very afraid" and feel that he was not free to leave); Cruz Uitz Decl. ¶ 4 ("six vehicles pull up to the car wash and parked at the entrance"); Price Decl., Ex. 19-K (describing Home Depot raid where agents blocked all entrances and arrested people as they tried to leave).

And if that wasn't enough, agents have shown a willingness to routinely hold people at gunpoint despite no indication that individuals posed a threat. *See, e.g.*, Ex. 17, Declaration of Reverand Tanya Lopez ("Lopez Decl."), ¶¶ 6, 12 (pastor who describes having a gun pointed at her in church parking lot). At a Santa Ana Home Depot, a U.S. asylum seeker recalls that agents "arrived in an aggressive manner," pointing guns, as if "to rob them,"[46] and another permanent resident recounted that an agent detained individuals at gunpoint.[47]

**Third**, agents often *tell* people they are not free to leave or yell commands at them. Numerous individuals were expressly told to stop, including Petitioner-Plaintiff Villegas Molina who stood still as agents approached. Villegas Molina Decl. ¶¶ 5–6 (despite doing his best to stay calm, "masked, aggressive, and armed" agent approached him, yelling at him, "don't run!"); *see also* Gavidia Decl. ¶¶ 8–9 (attempted to head back inside the premises when agent ordered him to "[s]top right there" and "forcefully push[ed] him" up against a metal gated fence while interrogating him about his citizenship); Cruz Uitz Decl. ¶ 5 (agents "chased [workers] and yelled for them to stop" immediately upon arriving at car wash); Valdez Rios Decl. ¶ 4 (masked, armed agents with "rifles in their hands" and "military helmets" were "yelling at [Mr. Valdez Rios] to stop"); Gamez Decl. ¶ 7 (stating that when a coworker asked agents for a warrant at the car wash, the agent told coworker to "shut the fuck up").

---

[46] Hetty Change & Jonathon Lloyd, *Day laborers targeted in raid at Santa Ana Home Depot, OC officials say*, NBC 4 (June 10, 2025), https://www.nbclosangeles.com/news/local/day-laborers-santa-ana-home-depot-immigration-raid/3720487.

[47] *Raids in Southern California rattle immigrant communities – including those in the US legally*, The Tribune (June 11, 2025), https://tribtown.com/2025/06/11/raids-in-southern-california-rattle-immigrant-communities-including-those-in-the-us-legally/.

**Fourth**, the climate of fear and intimidation has been exacerbated by agents' and officers' appearance during the encounters. Agents are masked, armed, wearing either plainclothes with bulletproof vests or dressed in military clothing, and typically moving about in large numbers; community members who encounter agents have expressed being fearful for their safety, and even their lives. *See* Vasquez Perdomo Decl. ¶¶ 5–6; Villegas Molinas Decl. ¶ 5; Hernandez Viramontes Decl. ¶ 6 (describing agents wearing "military style clothing" with "faces covered"); Cruz Uitz Decl. ¶¶ 4, 6 (describing a dozen masked agents in unmarked vehicles and armed); M.N. Decl. ¶ 5 (noting agent wore "military clothing with a bulletproof vest[]"); Valdez Rios Decl. ¶ 4 (describing masked and armed agents with "rifles in their hands" as "very angry and intimidating"); B.V. Decl. ¶¶ 8–9 (U.S. citizen who recounts that "masked individuals came out in military attire, gear, and guns," and began "charging at people" at car wash, which "created a commotion and an environment of fear" and he "did not feel safe"); Gavidia Decl. ¶ 12 (stating that his encounter with agents was one of the worst experiences he has ever had and that he felt was like he "was going to die," particularly when "one agent literally racked a chamber in his rifle").

**Finally**, agents' and officers' unwillingness to identify themselves has kept community members in the dark about who or even what type of law enforcement agency they are dealing with, extinguishing any remaining possibility that community members could view the contact as voluntary. Osorto Decl. ¶¶ 5–6 ("They did not identify themselves . . . None of them had visible badges, just a vest."); Villegas Molina Decl. ¶ 6 ("He never told me he was an immigration official."); Hernandez Viramontes Decl. ¶ 12 ("The agents didn't identify themselves to me nor did they have any badges visible."); Gamez Decl. ¶ 5 (describing car wash raid as "disorienting because the agents did not talk to anyone in charge or identify themselves or what agency they were with," and ignored his questions); Valdez Rios Decl. ¶ 4 (describing how "[t]hree men stepped out" with "rifles in their hands," masks covering their faces, "military helmets and bullet proof vests," but "they didn't wear any symbols or badges that identified who they were"); B.V. Decl. ¶ 9 (noting agents were masked and some did not have badges or other identification); Padilla Decl. ¶ 7 (similar); A.L. Decl. ¶¶ 8–10 (describing men with "large guns, wearing camouflage vests, and with neck gators covering their faces" who refused to identify themselves or their agency affiliation). When Pastor Lopez tried to explain to the unidentified agents who were on church

property that they didn't have permission to be there, one agent "replied that the whole country was their property." Lopez Decl. ¶ 9.

***C. Defendants' policy and practice of unlawful stops is officially sanctioned.***

Defendants' unlawful stops are the intended and predictable result of directives from top officials to not only dramatically increase immigration enforcement, but to do so at any cost, and without regard for their legal obligations.

In January, the government imposed a quota on ICE Field Offices of 75 arrests per day.[48] DHS also dismantled long-standing internal oversight mechanisms and restraints on agents' and officers' conduct.[49] These directives led to increased enforcement at workplaces, ICE check-ins, and courthouses.[50] But that was not enough. Facing pressure to deliver on the promise of "mass deportation," the administration imposed a quota of 3,000 immigration arrests per day and threatened

---

[48] Nick Miroff & Maria Sacchetti, *Trump Officials Issue Quotas to ICE Officers to Ramp Up Arrests*, The Washington Post (last updated Jan. 26, 2025), https://www.washingtonpost.com/immigration/2025/01/26/ice-arrests-raids-trump-quota/.

[49] Nicolae Viorel Butler, *Court Forces DHS to Preserve Immigrant Rights Offices,* Migrant Insider (May 27, 2025), https://migrantinsider.com/p/court-forces-dhs-to-preserve-immigrant; Press Release, Government Accountability Project, *DHS Halted 500+ Civil Rights Investigations When It Shut Down Oversight Office, Whistleblowers Say* (May 15, 2025), https://whistleblower.org/press-release/dhs-halted-500-civil-rights-investigations-when-it-shut-down-oversight-office-whistleblowers-say/; Executive Order 14159 (Jan. 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/protecting-the-american-people-against-invasion/; Press Release, DHS, *Statement from a DHS Spokesperson on Directives Expanding Law Enforcement and Ending the Abuse of Humanitarian Parole* (Jan. 21, 2025), https://www.dhs.gov/news/2025/01/21/statement-dhs-spokesperson-directives-expanding-law-enforcement-and-ending-abuse (noting a directive "rescind[ing] the Biden Administration's guidelines for . . . enforcement actions that thwart law enforcement in or near so-called "sensitive" areas).

[50] Marianne LeVine, et al., *ICE is Arresting Migrants in Worksite Raids. Employers are Largely Escaping Charges*, The Washington Post (June 30, 2025), https://www.washingtonpost.com/immigration/2025/06/30/ice-raids-arrests-workers-companies/ (noting ICE arrested more than 1,000 workers during Trump's first 100 days and collecting stories of workplace raids); Maanvi Singh & Will Craft, *As deportations ramp up, immigrants increasingly fear Ice check-ins: 'All bets are off'*, The Guardian (Apr. 6, 2025), https://www.theguardian.com/us-news/2025/apr/06/deportations-immigrants-ice-trump; Ximena Bustillo, *ICE's novel strategy allows for more arrests from inside immigration courts*, NPR (June 12, 2025), https://www.npr.org/2025/06/12/nx-s1-5409403/trump-immigration-courts-arrests; *see also* Compl. ¶ 97.

Case 2:25-cv-05605-MEMF-SP Document 45 Filed 07/03/25 Page 23 of 35 Page ID #:390

agents and officers with "consequences for not hitting arrest targets."[51] After White House Deputy Miller's directive to begin rounding up people in public places, officers were told to "turn the creativity knob up to 11" and "push the envelope," including by pursuing "[a]ll collaterals."[52] Essentially, "[i]f it involves handcuffs on wrists, it's probably worth pursuing."[53]

Officials knew full well that their directives would lead immigration agents and officers to target individuals based on their race, location, and occupation. As a former ICE official explains, "only raids on 'construction, dairy [and] meat processing facilities, carpet mills' can achieve the high numbers being demanded."[54] "It's these low-wage jobs, that's where you get the numbers."[55] Indeed, they have fostered a culture of impunity by granting agents and officers maximum discretion on how to achieve the quotas imposed upon them. By allowing agents and officers to go into the field masked as a matter of course, and refusing to identify themselves, *see supra* at 11–12, they have further frustrated efforts at accountability, and normalized lawless, even violent, conduct behind the shield of anonymity. Defendants are aware of the numerous reports being made about how their agents and officers are behaving, yet have made no indication they are taking actions to address them. To Plaintiffs' knowledge, not a single agent or officer has been held to account for their actions. To the contrary, Defendants have ratified such conduct, re-iterating, as DHS Secretary Kristi Noem recently did, that agents' and officers' performance will be "judged every day" not by the degree to which comply with the law but "by how many arrests [they], [their] teammates and [their] office are able to effectuate."[56]

---

[51] Elizabeth Findell, et al., *The White House Marching Orders That Sparked the L.A. Migrant Crackdown*, The Wall Street Journal (June 9, 2025), https://www.wsj.com/us-news/protests-los-angeles-immigrants-trump-f5089877.

[52] José Olivares, *US immigration officers ordered to arrest more people even without warrants*, The Guardian (June 4, 2025), https://www.theguardian.com/us-news/2025/jun/04/immigration-officials-increased-detentions-collateral-arrests.

[53] *Id.*

[54] Laura Strickler, Rob Wile, and Didi Martinez, *Trump, in reversal, may exempt farms and hotels from immigration raids*, NBC News (June 15, 2025), https://www.nbcnews.com/politics/immigration/trump-reversal-may-exempt-farms-hotels-immigration-raids-rcna212958.

[55] *Id.*

[56] Tyler Pager, et al., *Trump's Conflicting Messages on Workplace Raids Leave Businesses Reeling*, N.Y. Times (June 17, 2025), https://www.nytimes.com/2025/06/17/us/politics/trump-conflicting-

(continued…)

Case 2:25-cv-05605-MEMF-SP Document 266-1 Filed 11/21/25 Page 25 of 41 Page ID #:15119

The operations in Southern California are not slowing down; in fact, driven by the arrest quota, they are escalating by the day. During a June 12 press conference, El Centro Sector Border Patrol Chief Gregory Bovino—whose Sector was the subject of the preliminary injunction in *United Farm Workers v. Noem*—appeared next to Secretary Noem and declared "you'll continue to see us in LA. We're not going anywhere soon."[57] Most recently, on June 30, Department of Justice Chief of Staff Chad Mizelle stated that the government "will keep enforcing federal immigration in Los Angeles, whether or not the city's government or residents agree with it."[58] In just the past 10 days, Defendants have raided a car wash in Torrance on June 22,[59] a Home Depot in Marina Del Rey on June 23,[60] another Home Depot in Huntington Park on June 25,[61] a Filipino neighborhood in Silver Lake on June 26,[62] a Home Depot in Los Angeles on June 26,[63] a Home Depot in Burbank on June 26,[64] a Home Depot in Lake Forest on June 27,[65] a car wash in Downey on June 27,[66] a car wash in Newport Beach on June 29,[67] a Home Depot in Cyprus Park on June 30,[68] and a group of street vendors in Koreatown on July 1.[69]

---

messages-workplace-raids.html.

[57] Andrew Donohue, et al., *He misled the public about his last big immigration sweep. Now he's leading the Border Patrol in LA,* Cal Matters (June 13, 2025), https://calmatters.org/investigation/2025/06/los-angeles-border-patrol-chief/.

[58] Chad Mizelle (@ChadMizelle47), X (June 30, 2025), https://x.com/ChadMizelle47/status/1939735362248610129.

[59] Price Decl., Ex. 19-L.

[60] Price Decl., Ex. 19-C.

[61] Price Decl., Ex. 19-M.

[62] Price Decl., Ex. 19-N.

[63] Price Decl., Ex. 19-H.

[64] Price Decl., Ex. 19-O.

[65] Price Decl., Ex. 19-P.

[66] Price Decl., Ex. 19-Q.

[67] Price Decl., Ex. 19-R.

[68] Jessica Perez et al., *Masked agents seen detaining people outside Cypress Park Home Depot*, BoyleHeightsBeat.com (Jun. 30, 2025), https://boyleheightsbeat.com/home-depot-raid-cypress-park/.

[69] Sánchez Decl., Ex. 18-D.

**III. Defendants' policy and practice is causing ongoing, irreparable harm.**

As Defendants' raids, and the unlawful policy and practice of suspicionless detentive stops, continue, community members are experiencing profound and irreparable harm. Even U.S. citizens are living in fear that they will be stopped and have begun carrying their U.S. passports on their person for "protection." Ex. 21, Declaration of German Molina Decl. ¶ 7 (describing his fear after recently encountering and being questioned by immigration agents while leaving work); *see* B.V. Decl. ¶¶ 16–18 (describing how he, as a customer at a car wash, had his father and nearly had his younger brother, an 11-year-old U.S. citizen, taken away, and how he now feels "unsafe leaving home" and "not welcome" anymore even though he is a U.S. citizen); *see also* Gamez Decl. ¶ 12 ("I fear for my coworkers and I fear for myself being racial profiled as a U.S. citizen.").[70]

Plaintiffs likewise face a very real risk of being stopped again on the basis of their Latino ethnicity. Plaintiffs Hernandez Viramontes and Gavidia, both U.S. citizens, reasonably fear that they will be profiled again at the car wash and tow yard, respectively, where they were detained previously. Hernandez Viramontes Decl. ¶ 15; Gavidia Decl. ¶¶ 12–13. Indeed, agents have already raided the Whittier car wash where Hernandez Viramontes works three times. Hernandez Viramontes Decl. ¶¶ 5–14; Gamez Decl. ¶¶ 4–7, 11. And Petitioners-Plaintiffs Vasquez Perdomo, Osorto, and Villegas Molina likewise fear being targeted based on their appearance again. Vasquez Perdomo Decl. ¶ 11; Osorto Decl. ¶ 13; Villegas Molina Decl. ¶¶ 10–11. Hours after they were arrested, the Pasadena City Mayor described a "huge drop in attendance at local community programs," once "vibrant neighborhoods" now "eerily quiet," and business owners "concerned that their workers and customers alike are too afraid to show up."[71]

Members of organizational Plaintiffs also face a real threat of suspicionless detentive stops. LAWCN, UFW, and CHIRLA all have members in low-wage industries that have been profoundly affected by raids. For example, members of LAWCN's worker centers—U.S. citizens and otherwise—

---

[70] *See also* Brittny Mejia, *'Scared to be brown': California residents fearful amid immigration raids*, L.A Times (June 25, 2025), https://www.latimes.com/california/story/2025-06-25/california-residents-fearful-amid-immigration-raids-youre-scared-to-be-brown.

[71] Victor M. Gordo, *Pasadena Mayor: Trump's Immigration Raids Hurt Communities Like Mine,* Time (June 18, 2025), https://time.com/7295305/pasadena-trump-immigration-raids/.

have been afraid to go to work or be in public. Gudino Decl. ¶¶ 13, 25, 27–28. Its worker center member CLEAN, which organizes workers in the carwash industry, has had numerous members stopped and arrested. Melendrez Decl. ¶¶ 15, 17. Its members fear being racially profiled, and even members with legal status are foregoing wages by missing work to shelter at home because of the ongoing raids. *Id.*

Plaintiff UFW has multiple members, U.S. citizens and otherwise, who are living in ongoing fear that they will be racially profiled by agents who patrol the areas where they live, work, and commute. Strater Decl. ¶¶ 16, 19; *id.* ¶¶ 17, 25 (describing "widespread panic" among UFW members). Some have already been stopped. *Id.* ¶¶ 27–29. Further, after hearing about enforcement operations in Ventura County at locations where UFW members work and frequent, many members went home, avoiding roads for fear of being indiscriminately stopped by masked agents. *Id.* ¶¶ 17–18. Members are no longer running errands or making trips to places such as laundromats, and are even keeping their children home from school and avoiding going to the doctor, church, or the store. *Id.* ¶¶ 22-23, 32, 36.

Finally, Plaintiff CHIRLA's members are similarly experiencing significant levels of fear due to the way the raids are being conducted in Southern California. Salas Decl. ¶ 25. CHIRLA's membership consists of predominantly Latine people, including day laborers, carwash workers, street vendors, and others. *Id.* ¶¶ 24–25. One U.S. citizen CHIRLA member, for example, worries that he could be detained by immigration agents because he is Latino—particularly after his brother was detained—and is "on constant alert" when he goes out in public. *Id.* ¶ 26. Another member has changed his routine out of fear that he will be stopped or assaulted. *Id.* ¶ 27. And yet another member has stopped taking the bus to work after seeing immigration agents at a bus stop, instead using Uber, a significant expense for her as a single mother. *Id.* ¶ 28.[72] CHIRLA members have also reduced their work or withdrawn their children from school. *Id.* ¶¶ 29–30. Their experiences underscore the devastating social and economic impact of

[72] The Los Angeles County Public Transit system has seen a 10 to 15 percent decline in ridership since the raids began. *See* Jesus Jimenez, *'Completely Disrupted': Fear Upends Life for Latinos in L.A.*, N.Y. Times (Jun. 30, 2025), https://www.nytimes.com/2025/06/30/us/latinos-los-angeles-immigration.html?smid=nytcore-ios-share&referringSource=articleShare.

Defendants' actions and explain the recent cancellation of community events and Fourth of July celebrations due to the. . . participants, spectators, and volunteers."[73]

## LEGAL STANDARD

Plaintiffs are entitled to a temporary restraining order if they show that (1) they are likely to succeed on the merits of their claims; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A stronger showing on one element may offset a weaker showing on another. *See Pimentel v. Drefus*, 670 F.3d 1096, 1105 (9th Cir. 2012). Under this sliding-scale approach, where a moving party would suffer irreparable harm in the absence of relief and demonstrates that an injunction would be in the public interest, "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

## ARGUMENT

### I. Stop/Arrest Plaintiffs Are Likely to Succeed on the Merits of their Fourth Amendment Claim.

#### *A. Defendants are conducting seizures that require at least reasonable suspicion.*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons … against unreasonable searches and seizures." U.S. Const. amend. IV. "A seizure occurs when a law enforcement officer, through coercion, physical force, or a show of authority, in some way restricts the liberty of a person." *United States v. Washington*, 387 F.3d 1060, 1068 (9th Cir. 2004) (cleaned up).

Generally, an officer's actions rise to the level of a seizure if any *one* of the following occurs: "if there is a threatening presence of several officers, a display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Washington*, 490 F.3d 765, 771 (9th Cir. 2007) (internal quotation and citation omitted); *see also Orhorhaghe v. I.N.S*, 38 F.3d 488, 494–96 (9th

---

[73] Irene Cruz, *4th of July celebrations canceled, postponed across LA area over immigration raids*, ABC7 (June 30, 2025), https://abc7.com/post/los-angeles-4th-july-celebrations-canceled-postponed-immigration-raids/16890497/.

Cir. 1994) (similar). As explained in the Factual Background discussion above, Defendants' conduct during the ongoing immigration raids is typically marked by *multiple* of these factors.

Agents and officers typically descend upon a location suddenly, armed (sometimes with military-grade assault rifles), and in numbers, with an overwhelming display of authority. *Supra* at 9 (describing swift approach by groups of masked men and assault rifles); *supra* at 10–11 (describing agents' and officers' practice of surrounding people and/or blocking entry and egress of locations); *supra* at 11–12 (describing agents' and officers' militarized appearance). *See Washington*, 490 F.3d at 773 (authoritative manner of conducting an investigatory stop was "most important" consideration in concluding that a seizure occurred); *United States v. Black*, 707 F.3d 531, 538 (4th Cir. 2013) (stop by seven officers, including two who performed perimeter duty, evinced a "collective show of authority" that constituted a seizure).

Additionally, agents and officers often begin yelling and issuing verbal commands, including commands not to move, almost immediately upon arrival. *Supra* at 11 (describing incidents in which Defendants told people to "stop" and issued other commands). *See United States v. Brown*, 996 F.3d 998, 1006 (9th Cir. 2021) (a consensual "casual and nonthreatening" approach marked by "generic" and "open-ended" questioning transformed into *Terry* stop at the point officer instructed individual to "stand up and turn around"); *United States v. Gallinger*, 227 F. Supp. 3d 1163, 1168 (D. Idaho 2017) (seizure occurred because a command to "stop walking and sit on the curb was a clear expression of authority").

Moreover, Defendants have relied on physical force when making stops. *Supra* at 10 (describing incidents where agents and officers grabbed people violently, surrounded, or blocked them, or even held them at gunpoint); *supra* at 10 (explaining that when individuals declined to answer questions or tried to terminate encounters, Defendants would escalate their use of force); *see also supra* at 7, 11 (describing experiences of Plaintiff Hernandez Viramontes, who was taken blocks from his workplace to "verify" his citizenship, and Plaintiff Gavidia, who was slammed against a metal gate while being interrogated about the hospital where he was born). *See Washington*, 387 F.3d at 1068–69 (finding a seizure where officers moved the suspect "twenty to thirty feet away from his [apartment] door); *United States v. Belin*, 868 F.3d 43 (1st Cir. 2017) (seizure where officer "grabbed one of Belin's arms").

By the time agents and officers question people, the encounters have long become involuntary. *Cf. Washington*, 490 F.3d at 770 (no seizure occurred during "cordial and courteous" consensual questioning by a police officer who parked behind an individual, did not block the individual's car, and did not activate siren or lights). Any one of the above categories of conduct would render Defendants' raids Fourth Amendment violations. Together, Defendants' pattern and practice is plainly effecting seizures that must be justified by at least reasonable suspicion.

***B. Defendants' seizures are not supported by reasonable suspicion.***

"Except at the border and its functional equivalents," immigration agents may stop individuals in public only after identifying "specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that [the persons stopped are noncitizens] who may be illegally in the country." *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975) (vehicle stops). Reasonable suspicion comprises two elements: the assessment must be based upon the totality of the circumstances, and it "must arouse a reasonable suspicion that *the particular person being stopped* has committed or is about to commit a crime." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (emphasis in original). Defendants' pattern and practice ignores this requirement of *particularized* suspicion prior to initiating an investigatory stop.

The throughline of Defendants' pattern and practice is their deliberate targeting of locations where Latine people live, are visibly present, or are working or looking for work. But perceived race cannot provide the suspicion necessary to justify a seizure. "[T]o establish reasonable suspicion, an officer cannot rely solely on generalizations that, if accepted, would cast suspicion on large segments of the law-abiding population." *United States v. Manzo-Jurado*, 457 F.3d 928, 935 (9th Cir. 2006). "Where, as here, the majority (or any substantial number) of people share a specific characteristic, that characteristic is of little or no probative value in such a particularized and context-specific analysis." *Montero-Camargo*, 208 F.3d at 1131. The seven counties that make up this District are nearly half Latine, making it impossible—and illegal—to rely on race as a proxy for immigration status.[74] *See id.* at

[74] According to 2024 estimates by the U.S. Census Bureau, people who identify as "Hispanic or Latino" across the seven counties that span this District make up approximately 47% of the combined estimated population of this District. *See* Declaration of Diana Sánchez, ¶ 6.

1135 ("Hispanic appearance is … of such little probative value that it may not be considered as a relevant factor where particularized or individualized suspicion is required."). But Defendants are doing so anyway. *See supra* at 6–9.

For similar reasons, speaking Spanish or other proxies for race or ethnicity cannot form the basis of a stop—especially in a District with such a high proportion of Spanish speakers. *Manzo-Jurado*, 457 F.3d at 937 ("By itself, however, an individual's inability to understand English will not justify an investigatory stop because the same characteristic applies to a sizable portion of individuals lawfully present in this country.").

Nor can the Stop/Arrest Plaintiffs' presence in any specific location, without more particularized indicia of suspicion, justify Defendants' stops. Even in a border town, "a location or route frequented by illegal immigrants, but also by many legal residents, is not significantly probative to an assessment of reasonable suspicion." *Manzo-Jurado*, 457 F.3d at 936. When Defendants' agents and officers base their raids on areas where Latine people live, work, and frequent far from any border—like bus stops, car washes, farm roads, tow yards, swap meets, or any of the other locations described in the record—they make impermissible assumptions about individuals that apply "to entire neighborhoods or communities in which members of minority groups regularly go about their daily business." *Montero-Camargo*, 208 F.3d at 1138; *see Illinois v. Wardlow*, 528 U.S. 119, 123–24 (2000) ("presence in an area of expected criminal activity" insufficient for reasonable suspicion); *United States v. Brown*, 925 F.3d 1150, 1157 (9th Cir. 2019) (similar, given resulting disproportionate burden it would impose on minority populations).

Further, targeting a person because they appear to be a laborer, or because they are in proximity to another worker believed to be undocumented, or even at a jobsite where a particular employer may be employing undocumented individuals, does not provide the *particularized* suspicion necessary to stop someone at that location. A group's "appearance as a work crew" is only "marginally relevant to establishing reasonable suspicion," especially where work crews and laborers of all immigration statuses abound in this District. *Manzo-Jurado*, 457 F.3d at 937. Even if agents find an individual near others known to be without legal status, "a person's mere propinquity to others independently suspected of [unlawful] activity does not, without more, give rise to probable cause to search [or seize] that person."

*See Ybarra v. Illinois*, 444 U.S. 85, 91 (1979); *see also Perez Cruz v. Barr*, 926 F.3d 1128, 1138 (9th Cir. 2019) (applying principle in context of a worksite immigration raid). In fact, the Ninth Circuit has consistently invalidated the suspicionless detention of workers where agents had no particularized basis for believing the individual was undocumented. *See Martinez v. Nygaard*, 831 F.2d 822, 827 (9th Cir. 1987); *Benitez-Mendez v. I.N.S.*, 760 F.2d 907, 909 (9th Cir. 1983) ("[Officers] may not detain workers for citizenship status questioning unless the investigators are able to articulate objective facts providing them with a reasonable suspicion that *each questioned person*, so detained, is an [individual] illegally in this country.") (emphasis added)).

The record shows that Defendants have little more than the broad profiles above to go on when they are conducting stops. While they may be willing to take their chances on such profiles, the Constitution is not. The costs are simply too high. *Cf. Manzo-Jurado*, 457 F.3d at 940 (disapproving of enforcement activity based on "a broad profile that would cover many lawful, newly-arrived immigrants" and citizens).[75]

**II. Plaintiffs Will Suffer Irreparable Harm from Defendants' Unlawful Policies and Practices in the Absence of a TRO.**

Defendants' illegal policies and practices are causing and will continue to cause irreparable harm to the individual and organizational Stop/Arrest Plaintiffs and their membership. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (cleaned up). Suspicionless stop policies and practices that violate the Fourth Amendment constitute a constitutional violation warranting injunctive (including preliminary injunctive) relief. *See Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*, 799

[75] While Defendants may try to point to the fact that community members have, sometimes, attempted to flee, the record shows that agents and officers have a policy and practice of seizing people whether or not they flee. *Compare* Osorto Decl. ¶ 6 *with* Villegas Molina Decl. ¶¶ 5-6. Moreover, the Ninth Circuit has made clear that flight alone cannot form the basis for reasonable suspicion, particularly here, where flight is not unprovoked. *Brown*, 925 F.3d at 1157 (recognizing that "racial dynamics in our society—along with a simple desire not to interact with police—offer an 'innocent' explanation of flight"); *United States v. Rodella*, 804 F.3d 1317, 1326 (10th Cir. 2015) (officer provoked flight when approaching an individual aggressively in an unmarked car, not in uniform, and refused to identify himself).

F.2d 547, 553 (9th Cir. 1986); *Melendres*, 695 F.3d at 1002 (irreparable harm exists where plaintiffs face "a real possibility" that they will "again be stopped or detained and subjected to unlawful detention").

Indeed, as a result of Defendants' suspicionless stops, Plaintiffs and their members have experienced significant harm, including the type of emotional harm that courts regularly hold constitutes irreparable injury. *Supra* at 15–17. *See Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017) (identifying "separated families" as irreparable harm); *Leiva-Perez v. Holder*, 640 F.3d 962, 969–70 (9th Cir. 2011); *Chalk v. U.S. Dist. Court*, 840 F.2d 701, 709–10 (9th Cir. 1988); *Norsworthy v. Beard*, 87 F. Supp. 3d 1164, 1192 (N.D. Cal. 2015). Moreover, because of the deplorable conditions at B-18 and the denial of access to counsel there, individuals detained in the ongoing operations are at risk of being removed before being able to report what has happened to them or seek redress for the violations of their rights. *See* Dkt. 38 (Access/Detention Plaintiffs' TRO); Dkt. 38-4, Toczylowski Decl. ¶ 54 (discussing recent example of man arrested at a car wash raid on June 19 held at B-18 without attorney access for 12 days). This makes a TRO even more urgent.

These immigration raids are happening daily, affecting countless individuals and families. Due to Defendants' policy and practice, Plaintiffs face an imminent risk of future injury and harm justifying this Court's intervention. *See United Farm Workers*, 2025 WL 1235525, at *51 (defendants' statements indicating desire to continue challenged stops shows likelihood of imminent, irreparable harm).[76]

**III. The Balance of Hardships Weighs Heavily in Plaintiffs' Favor, and a District-Wide Injunction is Both Permissible and in the Public Interest.**

Temporarily enjoining Defendants' unconstitutional stops in this District is consistent with established precedent, within this Court's equitable powers, imposes no perceptible hardship on Defendants, and is in the public interest.

[76] For similar reasons, it is clear that the Plaintiffs have standing. *See LaDuke v. Nelson*, 762 F.2d 1318, 1324-26 (9th Cir. 1985), *amended,* 796 F.2d 309 (9th Cir. 1986) (finding that a "standard pattern" of illicit behavior by federal agents was sufficient to confer standing for future injunctive relief); *see also Laws. for Fair Reciprocal Admission v. United States*, No. 24-2213, 2025 WL 1717992, at *3 (9th Cir. June 20, 2025) (discussing requirements for associational standing).

*First*, Plaintiff's requested TRO is modest and treads no new ground. Plaintiffs simply ask the Court to order Defendants to adhere to the Fourth Amendment and refrain from making detentive stops in the absence of individualized reasonable suspicion. Courts have granted such injunctions before. In *International Molders' and Allied Workers' Local Union No. 164 v. Nelson*, for example, the Ninth Circuit upheld a preliminary injunction against Border Patrol for detaining and arresting people in workplace enforcement actions without suspicion or cause. 799 F.2d at 551. *See also LaDuke*, 762 F.2d at 1333 (upholding permanent injunction against warrantless searches of workplace housing); *cf. Melendres*, 695 F.3d at 1000 (upholding injunction against state officer practice of detaining people for civil immigration offenses); *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501 (9th Cir. 1996) (collecting cases awarding injunctions against Fourth Amendment violations). More recently, in *United Farm Workers*, a case arising from stop-and-arrest violations by Border Patrol agents similar to the violations at issue here, the court issued a district-wide injunction requiring Border Patrol agents to comply with federal law when stopping and arresting individuals. 2025 WL 1235525, at *46.

Entering a District-wide TRO is squarely within the Court's equitable power. Defendants' policy and practice of illegality is widespread: as the record confirms, no matter where Plaintiffs are in the District, what time of day, or what type of location, they are susceptible to such policy and practice. Defendant ICE ERO's Los Angeles Field Office, a key player here, has an Area of Responsibility (AOR) that spans all seven counties in the District, with uniform policies and training set at the District level. Accordingly, relief should be District-wide. *See Kidd v. Mayorkas*, 734 F. Supp. 3d 967, 988 (C.D. Cal. 2024) (granting summary judgment in favor of plaintiffs and vacating LA ERO field-office-wide unconstitutional policy).

Moreover, because Plaintiffs include organizations with extensive membership, spread out across the District, a District-wide TRO is necessary to afford them complete relief. *See, e.g.*, *Easyriders*, 92 F.3d at 1502 (explaining that a statewide injunction was necessary and proper where suit was brought by individual plaintiffs and a member organization). Just as in *Easyriders*, it would be impossible for agents and officers to know in advance who is a LAWCN, UFW, or CHIRLA member when making a detentive stop. Thus, it is proper to require Defendants to comply with the Fourth Amendment for all the stops they conduct. *See id.* "[W]hile the court's injunction might have the practical effect of benefiting

nonparties, that benefit is merely incidental." *Trump v. CASA, Inc.*, ---S.Ct.---, 2025 WL 1773631, at *11 (June 27, 2025) (cleaned up).

*Second*, Defendants will suffer no material harm from Plaintiffs' proposed TRO, let alone any threat of permanent harm. Defendants can hardly complain about being ordered to follow the law. A restraining order pending further proceedings will not prevent federal immigration authorities from conducting immigration-related detentions and arrests, so long as they are complying with the law. *Cf. Zepeda v. I.N.S.*, 753 F.2d 719, 727 1146 (9th Cir. 1983) (an agency "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations"). While Defendants may claim they are already following the law[77], clearly they are not. The Court should not leave it up to Defendants to decide whether or not they will comply with the law.

*Finally*, the balance of equities tips sharply in favor of preliminary relief because "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002; *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). This is particularly true here, where Defendants' grave violations of the Fourth Amendment have wreaked such devastating havoc across the entire District. *See supra* at 16–17 (describing impacts in City of Pasadena, and across the region for the upcoming July 4 holiday).

## CONCLUSION

For the foregoing reasons, the Court should grant Stop/Arrest Plaintiffs' application and set this matter for an evidentiary hearing on Plaintiff's request for a preliminary injunction.

/

/

/

/

[77] Wendy Fry & Sergio Olmos, *'Brazen, midday kidnappings:' LA immigration sweeps violate Constitution, lawsuit says*, CalMatters (July 2, 2025), https://calmatters.org/justice/2025/07/la-immigration-raids-lawsuit/ (quoting DHS spokesperson who described the allegations in the First Amended Petition and Complaint as "FALSE").

Dated: July 3, 2025

Respectfully submitted,

ACLU FOUNDATION OF
SOUTHERN CALIFORNIA

By: *Mohammad Tajsar*

*Attorney for Stop/Arrest Plaintiffs*

UC IRVINE SCHOOL OF LAW
IMMIGRANT AND RACIAL JUSTICE
SOLIDARITY CLINIC

By: *Anne Lai*

*Attorney for Stop/Arrest Plaintiffs*

MIME-Version:1.0
From:cacd_ecfmail@cacd.uscourts.gov
To:ecfnef@cacd.uscourts.gov
Message-Id:<40458059@cacd.uscourts.gov>
Subject:Activity in Case 2:25-cv-05605-MEMF-SP Pedro Vasquez Perdomo et al v. Kristi Noem et al Motion for Temporary Restraining Order
Content-Type: text/html

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
*****NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

## Notice of Electronic Filing

The following transaction was entered by Tajsar, Mohammad on 7/3/2025 at 9:49 PM PDT and filed on 7/3/2025

| | |
|---|---|
| **Case Name:** | Pedro Vasquez Perdomo et al v. Kristi Noem et al |
| **Case Number:** | 2:25-cv-05605-MEMF-SP |
| **Filer:** | Osorto Carlos<br>Coalition for Humane Immigrant Rights<br>Jason Brian Gavidia<br>Los Angeles Worker Center Network<br>United Farm Workers<br>Pedro Vasquez Perdomo<br>Isaac Villegas Molina<br>Jorge Hernandez Viramontes |
| **Document Number:** | 45 |

**Docket Text:**
**EX PARTE APPLICATION for Temporary Restraining Order *and Order to Show Cause* filed by Plaintiffs Osorto Carlos, Coalition for Humane Immigrant Rights, Jason Brian Gavidia, Los Angeles Worker Center Network, United Farm Workers, Pedro Vasquez Perdomo, Isaac Villegas Molina, Jorge Hernandez Viramontes. (Attachments: # (1) Exhibit 1 - Pedro Vasquez Perdomo Decl., # (2) Exhibit 2 - Carlos Osorto Decl., # (3) Exhibit 3 - Isaac Villegas Molina Decl., # (4) Exhibit 4 - Jorge Luis Hernandez Viramontes Decl., # (5) Exhibit 5 - Omar Andres Gamez Decl., # (6) Exhibit 6 - Elvira Padilla Decl., # (7) Exhibit 7 - A.L. Decl., # (8) Exhibit 8 - Elizabeth Strater Decl., # (9) Exhibit 9 - Jason Brian Gavidia Decl., # (10) Exhibit 10 - Jesus Aristeo Cruz Uitz Decl., # (11) Exhibit 11 - Jose Antonio Valdez Rios Decl., # (12) Exhibit 12 - Armando Gudino Decl., # (13) Exhibit 13 - Flor Melendrez Decl., # (14) Exhibit 14 - B.V. Decl., # (15) Exhibit 15 - M.N. Decl., # (16) Exhibit 16 - R.H.D. Decl., # (17) Exhibit 17 - Rev. Tanya Lopez Decl., # (18) Exhibit 18 - Todd W. Price Decl., # (19) Exhibit 19 - Diana Sanchez Decl,, # (20) Exhibit 20 - Stacy Tolchin Decl., # (21) Exhibit 21 - German Molina Decl., # (22) Proposed Order) (Tajsar, Mohammad)**

**2:25-cv-05605-MEMF-SP Notice has been electronically mailed to:**

Alison Brooke Steffel asteffel@immdef.org, kgutierrez@immdef.org, msanchez@immdef.org

Alvaro M Huerta ahuerta@immdef.org, kgutierrez@immdef.org, msanchez@immdef.org

Anne Lai alai@law.uci.edu

Assistant 2241-194 US Attorney LA-CV USACAC.Habeas@usdoj.gov, CaseView.ECF@usdoj.gov, USACAC.Civil@usdoj.gov

Brynna Rhiannon Bolt bbolt@immdef.org, kgutierrez@immdef.org, msanchez@immdef.org

Dae Keun Kwon akwon@aclusocal.org

Daniel A Beck daniel.beck@usdoj.gov, CaseView.ECF@usdoj.gov, oscar.ortiz@usdoj.gov, USACAC.Civil@usdoj.gov

Diana Sanchez dianasanchez@aclusocal.org, irdocket@aclusocal.org

Eva Lucia Bitran ebitran@aclusocal.org, IRdocket@aclusocal.org

Mack Eric Jenkins mjenkins@heckerfink.com, caseview.ECF@usdoj.gov, usacac.criminal@usdoj.gov

Mark D Rosenbaum mrosenbaum@publiccounsel.org, rgarcia@publiccounsel.org

Matthew J. Craig mcraig@heckerfink.com, docketing@heckerfink.com, hbidad@heckerfink.com, irobertson@heckerfink.com

Mayra Beatriz Joachin mjoachin@aclusocal.org, cminneci@aclusocal.org

Mohammad K. Tajsar mtajsar@aclusocal.org, mgarcia@aclusocal.org

OIL-DCS Trial Attorney oil-dcs.cacd@usdoj.gov, caseview.ecf@usdoj.gov, USACAC.Habeas@usdoj.gov

Oliver Ma oma@aclusocal.org

Pauline Helen Alarcon Pauline.Alarcon@usdoj.gov, CaseView.ECF@usdoj.gov, julie.morales@usdoj.gov, USACAC.Civil@usdoj.gov

Rebecca Sarah Brown rbrown@publiccounsel.org

Ritu Mahajan rmahajan@publiccounsel.org

Ryan Casey Chapman Ryan.Chapman@usdoj.gov, Carol.Ybarra@usdoj.gov, caseview.ecf@usdoj.gov, usacac.civil@usdoj.gov

Sean Skedzielewski Sean.Skedzielewski@usdoj.gov

Stacy Eva Tolchin Stacy@tolchinimmigration.com, yadira@tolchinimmigration.com

Stephanie Padilla spadilla@aclusocal.org, mgarcia@aclusocal.org

**2:25-cv-05605-MEMF-SP Notice has been delivered by First Class U. S. Mail or by other means BY THE FILER to :**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\fakepath\2025.07.03 Ex Parte Application for TRO.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/3/2025] [FileNumber=40458057-0] [241a4d31b82920c2e0bd3076a782db03abd3182cf8190f3d9f986c03d4da19d49021 c7f2fdef47e6777cd387b69da9ec725810fc0bd88d713ddd8f57725b8c5e]]
**Document description:**Exhibit 1 - Pedro Vasquez Perdomo Decl.
**Original filename:**C:\fakepath\Ex. 01 Pedro Vasquez Perdomo.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/3/2025] [FileNumber=40458057-1] [1fb663a11b6feb8e592d6931f22640e7f2c4359f04b5faf1c2879d85b31e70a82e64 05f17731c6f3dcabaf56f887bd3a92e52ffb4e4f419c3e1a236eb307d556]]
**Document description:**Exhibit 2 - Carlos Osorto Decl.
**Original filename:**C:\fakepath\Ex. 02 Carlos Osorto.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/3/2025] [FileNumber=40458057-2] [11f6e8c221f85892a36cc6bb0befb8ea1bf03c199c817066e160b86cde2eca306a6b 2afdb433b60141408793fb1e0c48bf470a3df13726c54f4774aede30708e]]
**Document description:**Exhibit 3 - Isaac Villegas Molina Decl.
**Original filename:**C:\fakepath\Ex. 03 Isaac Villegas Molina.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/3/2025] [FileNumber=40458057-3] [b9e3db543a2025253a5e1a0a7ceebecd9927585afd0c7a9a0aa6e8d950a731f39a24 c4f15645295756e8a52c4ab80a7376ab87ba43be46d8bd864a8c3d711c5b]]
**Document description:**Exhibit 4 - Jorge Luis Hernandez Viramontes Decl.
**Original filename:**C:\fakepath\Ex. 04 Jorge Luis Hernandez Viramontes.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/3/2025] [FileNumber=40458057-4] [aab1530e1d73da5f937ea749159400dbd095e9fd58b2c38e96ed952f8802b287e8b2 ec3a395df6aa284c55f4da7594c2ac470896d6bbd2492e57e2a385346e65]]
**Document description:**Exhibit 5 - Omar Andres Gamez Decl.
**Original filename:**C:\fakepath\Ex. 05 Omar Andres Gamez.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/3/2025] [FileNumber=40458057-5] [9d74722b132b5917169cdaedc936f9742a6c7a7ff9f1e24b5d95be3ffe31a61ca69a 4b79743536aeddb95c557c82028a193abfd076c86ce95fd99c267943b001]]
**Document description:**Exhibit 6 - Elvira Padilla Decl.
**Original filename:**C:\fakepath\Ex. 06 Elvira Padilla.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/3/2025] [FileNumber=40458057-6] [09a11e09ba3e8c3ced999495ed5ffb837754a26736f2c75e58529bf40ad88beee262 c8afdff28ac07bfb6dce8491cf34dfea113dfb0511dffe18aa4e87e0739d]]
**Document description:**Exhibit 7 - A.L. Decl.
**Original filename:**C:\fakepath\Ex. 07 AL Decl.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/3/2025] [FileNumber=40458057-7] [482a3b02133455b6e400c8acdeaa252e6b6981adc0029bf4a0d3badcb4e445393cf1 85cff7eb7f0fa759a0af4e0199a92494ba55021bc01159a9dfe68764b021]]
**Document description:**Exhibit 8 - Elizabeth Strater Decl.
**Original filename:**C:\fakepath\Ex. 08 Elizabeth Strater.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/3/2025] [FileNumber=40458057-8]

[92365c013c7eaf4021eb8ff34d317a263150003443220b03ad7d7bc8f8f7286ca88c 528d8ed35dc97338faf56cf8fe04e5721d89cd766f296bf24f578c242170]]
**Document description:**Exhibit 9 - Jason Brian Gavidia Decl.
**Original filename:**C:\fakepath\Ex. 09 Brian Gavidia.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/3/2025] [FileNumber=40458057-9] [99d321d318a6a8aba55d37e6be781c5841e64a0a036c075d8ec0f28f50dce48ba812 b2f43b9e7cbfe4004b254e6ecb9878267061667d5db120f10f8a3f77e976]]
**Document description:**Exhibit 10 - Jesus Aristeo Cruz Uitz Decl.
**Original filename:**C:\fakepath\Ex. 10 Jesus Aristeo Cruz Uitz.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/3/2025] [FileNumber=40458057-10 ] [bf70be8ade38cee441f8c3a57d12393720171887bda481cb54413897d809ec6719c c7cd554d9eedcd45458caa3654437bd53e762312de17f3f1a24f858313704]]
**Document description:**Exhibit 11 - Jose Antonio Valdez Rios Decl.
**Original filename:**C:\fakepath\Ex. 11 Jose Antonio Valdez Rios.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/3/2025] [FileNumber=40458057-11 ] [01c7b8d6adafd3c9e510dbd6c2d01c7e41751cb4fd784b6f3cdc1cd4961608cc5c9 bfc0102084794561da9fecec7de4baeb272ee60aa09135ea0a2f4ab2d3722]]
**Document description:**Exhibit 12 - Armando Gudino Decl.
**Original filename:**C:\fakepath\Ex. 12 Armando Gudino.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/3/2025] [FileNumber=40458057-12 ] [15aaa11eca8e277c15e65f54cca4585a358d1dba5a346b0da939c5e8d487d6743f2 6bfae6547e0e156eebdbc79bca8afec57f4d0c8a697247170765204ae5e46]]
**Document description:**Exhibit 13 - Flor Melendrez Decl.
**Original filename:**C:\fakepath\Ex. 13 Flor Melendrez.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/3/2025] [FileNumber=40458057-13 ] [5ebeebb0ff7024839ee1161d382d6e254438f386dd314134af52940d69888ca6336 670508545226251 08f1ee2e12fa53850acdfc8f7408288e630486caf36182]]
**Document description:**Exhibit 14 - B.V. Decl.
**Original filename:**C:\fakepath\Ex. 14 BV Decl.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/3/2025] [FileNumber=40458057-14 ] [86135469f58f558a9375977e48cd31d2f556a8883017788f63f3da829e847bff352 e05fcdb754156a01cec4519b25e015da426122482a929f4046195f70a71bc]]
**Document description:**Exhibit 15 - M.N. Decl.
**Original filename:**C:\fakepath\Ex. 15 MN Decl.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/3/2025] [FileNumber=40458057-15 ] [9b41d0a9982dea0a8176e6bfb3183a1bffa87b2bdefda2c01059351a09b19d4c2bc 987127bd9eb42e818a77099b7b319c579a7c115407f54fc6e887b19f46ea2]]
**Document description:**Exhibit 16 - R.H.D. Decl.
**Original filename:**C:\fakepath\Ex. 16 RHD Decl.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/3/2025] [FileNumber=40458057-16 ] [97cbdc2c64f701e3242102e7bde5d1cd3d08f19519ca43f20e83dcde2781fd0b7b5 6b37c491cf15e9ab32fc651a2ea4922123d63478264825eff6879bff8a5d9]]
**Document description:**Exhibit 17 - Rev. Tanya Lopez Decl.
**Original filename:**C:\fakepath\Ex. 17 Rev Lopez.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/3/2025] [FileNumber=40458057-17

] [444062c377b11ba6f39abb646905045ae28c130e19eaa3d56350e895bff0de52f55
df35426e9ff84e21a02a177178cd8ad63f60c9814def26ecf7f01d9ce30c9]]
**Document description:**Exhibit 18 - Todd W. Price Decl.
**Original filename:**C:\fakepath\Ex. 18 Price Decl.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/3/2025] [FileNumber=40458057-18
] [4765739dda4657168d419cc0cd2a85bbdeafb790bdf4367df95b6554299dec519d4
edc372b2f0e699f567bf2c523e425ba16b763e291ecf81fe1efa7c54f2447]]
**Document description:**Exhibit 19 - Diana Sanchez Decl,
**Original filename:**C:\fakepath\Ex. 19 Sanchez Decl.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/3/2025] [FileNumber=40458057-19
] [3b47998098ed8fb92519cb658911d20c0c78f791ea9ce2c11403bb8676127504909
4d3ed0134372568d283d24de7b4aa95f95a9603b2e52a1f4ea48774419ef4]]
**Document description:**Exhibit 20 - Stacy Tolchin Decl.
**Original filename:**C:\fakepath\Ex. 20 Tolchin Decl.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/3/2025] [FileNumber=40458057-20
] [11c95904f55d6afccbde5e3f28168ac2fcfcd6fe5c5198db64d2b18f5fafc1a8556
a435a10d71f5b1367e9e6abeef4a20d3599b2ba353bbb326f2e5358db3f1e]]
**Document description:**Exhibit 21 - German Molina Decl.
**Original filename:**C:\fakepath\Ex. 21 German Molina Decl.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/3/2025] [FileNumber=40458057-21
] [a409a8751c5bae82f2a6e5c4810c1dbd5902cd9c0aeb6d24a7a799b527b3a0de565
6808af1349fa7e5862b6da3fe8dce81665c52b841ba717b8a4fad605bce42]]
**Document description:**Proposed Order
**Original filename:**C:\fakepath\Proposed Order Granting TRO.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/3/2025] [FileNumber=40458057-22
] [282fa772a102396535eb4e9d780d72ace479438ccb1e9edacda81c4b0b30b7944af
89d7ee5951c0bf7d59643cfdb8c75e3c7b1aa75d306d8a8039767c0f52aa5]]