# Exhibit 16

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Pedro VASQUEZ PERDOMO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, IN HER OFFICIAL CAPACITY AS SECRETARY OF HOMELAND SECURITY, et al.,<br><br>Defendants. | Case No. 2:25-cv-05605<br><br>**DECLARATION OF ANDRE QUINONES** |

## DECLARATION OF ANDRE QUINONES

I, Andre Quinones, hereby declare:

1. I am employed by the Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO) and serve as a Deputy Field Office Director (FOD) of the Los Angeles Field Office (ERO Los Angeles).

2. I have been employed by ICE, or its predecessor legacy Immigration and Naturalization Service (INS), since June 2000. In April 2011, I was promoted to Supervisory Detention and Deportation Officer and in October 2016, I was promoted to Assistant Field Office Director. In June 2020, I was promoted to Deputy Field

Office Director (DFOD).

3. As DFOD for ERO Los Angeles, I assist the Field Office Director in directing and overseeing ICE's enforcement of federal immigration laws within the Central District of California, which has the same geographic boundaries as the ERO Los Angeles Field Office. The ERO Los Angeles Field Office currently consists of over 290 law enforcement officers in six offices who are responsible for enforcing federal immigration laws in seven California counties with a combined population of over 20 million people. ICE is the largest investigative branch of DHS and is charged with the enforcement of more than 400 federal statutes. The agency was created after the September 11, 2001 terrorist attacks, by combining components of the former INS and the former U.S. Customs Service, to more effectively enforce federal immigration and customs laws and to protect the United States against terrorist attacks. The mission of ICE is to protect the United States from the cross-border crime and illegal immigration that threaten national security and public safety. To carry out that mission, ICE focuses on enforcing immigration laws, preventing terrorism, and combating transnational criminal threats. ICE consists of three core operational directorates: (1) ERO, which includes 25 field offices led by FODs; (2) Homeland Security Investigations (HSI), which includes 30 field offices led by Special Agents-in-Charge; and (3) the Office of the Principal Legal Advisor, which includes 25 field locations led by Chief Counsel.

4. ERO Los Angeles officers receive Ninth Circuit-specific immigration enforcement training on the requirements of the Fourth Amendment of the U.S. Constitution and the statutory and regulation provisions of the Immigration and Nationality Act (INA) twice per year. This training covers warrantless arrests, the requirements of having and documenting reasonable suspicion and/or probable cause, and consensual encounters.

5. ERO Los Angeles officers are trained that, under the Fourth Amendment, case law, and relevant regulations, brief detention for questioning requires an immigration officer to have reasonable suspicion, based on specific, articulable facts, that the person being questioned is an alien illegally in the United States. ERO Los Angeles officers are trained that an arrest requires probable cause that the person being arrested is an alien illegally in the United States.

6. ERO Los Angeles officers are trained to follow ICE procedures for apprehensions of illegal aliens in the United States by using targeted investigations, conducting operations, and making arrests. Individual targeting packages, consisting of the targeted alien's immigration history and/or status, criminal history, last known residence and employment information are prepared during the targeted investigation, prior to contact with the targeted alien. Targeted investigations focus on aliens with final removal orders and/or serious criminal history. When non-targeted individuals are encountered during the targeted

operations, ERO Los Angeles officers are trained to develop reasonable suspicion through consensual encounters. ERO Los Angeles officers identify themselves to the arrestee at the time of arrest/encounter or as soon as practicable when safe to do so.

7. On January 22, 2025, Acting DHS Secretary Benjamine C. Huffman issued a memorandum authorizing any law enforcement officials within the U.S. Department of Justice including the Federal Bureau of Investigations, U.S. Marshals Service, Drug Enforcement Administration, Bureau of Alcohol, Tobacco, Firearms and Explosives, and Federal Bureau of Prisons to exercise immigration enforcement authorities under Title 8 of the United States Code.

8. I am aware that on or about February 6, 2025 and on June 5, 2025, the ICE Office of the Principal Legal Advisor offered local law enforcement partners from these agencies Ninth Circuit-specific immigration enforcement training, covering immigration arrests, the requirements of reasonable suspicion and probable cause, brief stops for questioning, and consensual encounters under the Fourth Amendment and the INA statute and regulations.

9. ICE law enforcement officers are participating in multi-agency teams conducting immigration enforcement in the Los Angeles area. In these operations, ERO and HSI serve as team leads of multi-agency teams on regular, targeted fugitive enforcement operations focusing on individuals with final orders of

removal or cases with significant criminal history. As ERO Los Angeles has been doing for many years, ERO creates individual targeting packets for the individual to be arrested. Should other individuals be encountered during the targeted arrest of the fugitive or criminal alien targeted, ICE will conduct consensual interviews to identify whether there is reasonable suspicion that the individuals are illegally in the United States and determine if these individuals are subject to immigration enforcement and arrest.

Pursuant to the provisions of 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on this 8th day of July 2025.

ANDRE G QUINONES
Digitally signed by ANDRE G QUINONES
Date: 2025.07.08 15:15:06 -07'00'

Andre Quinones
Deputy Field Office Director
DHS ICE ERO Los Angeles

**DECLARATION OF KYLE C. HARVICK**

I, Kyle C. Harvick, declare and affirm as follows:

1. I am employed by U.S. Customs and Border Protection (CBP). CBP is charged with enforcing the Nation's immigration laws in order to protect national security and uphold the integrity of the immigration system. As part of this mission, CBP Border Patrol Agents and officers are responsible for preventing the unlawful entry of individuals into the United States, apprehending those who attempt to enter illegally or who have violated the immigration laws in accordance with applicable laws. Through these activities, CBP seeks to secure the border, disrupt human smuggling and trafficking networks, and ensure consistent enforcement of the immigration laws of the United States.

2. I am the Patrol Agent in Charge, El Centro Station. In this role, I drive Border Patrol Operations for the El Centro Station, comprised of 35 miles of land border, a permanent traffic checkpoint, overseeing 320 employees, a 160-vehicle fleet, and a budget of $800,000. I have been in this position since 2023.

3. I entered on duty with the U.S. Border Patrol on September 10, 2000, with my first duty assignment in the El Paso Sector. In 2015-2016, I served as Acting Assistant Chief within the Strategic Planning and Analysis Directorate, Operational Requirements Management Division in Washington, D.C. I have also served as the Deputy Patrol Agent in Charge of the Yuma Sector Border Patrol Station and the first Customs and Border Protection Advisor to Israel, where I was responsible for facilitating in country liaison with various Israeli Law Enforcement entities and Ministry of Defense agencies. I have served in the El Centro Sector since 2021, including service as the Professional Standards Assistant Chief Patrol Agent.

4. Currently for the Los Angeles operation, I am Deputy Incident Commander and I operate out of the Border Patrol Incident Command Post (BP ICP). In this position, I oversee all U.S. Border Patrol operations around the Los Angeles area. I ensure the Border Patrol Agents have all the proper equipment and supplies to do their job. I

oversee logistics, prosecutions, use of force events, personnel, and intelligence. I report to the Incident Commander or act as the Incident Commander in his absence. The BP ICP is the operational component of Operation At Large Los Angeles, CA. The BP ICP reports up to the Lead Field Coordinator and National Incident Command Center.

5. On June 6, 2025, in support of U.S. Immigration and Customs Enforcement, CBP agents and officers were sent to Los Angeles, California in support of Immigration and Customs Enforcement-Enforcement and Removal Operations (ICE-ERO). As part of this operation, CBP agents and officers, along with their federal partners, participate in a variety of different law enforcement encounters and enforcement actions as part of the operation in Los Angeles. These activities have included consensual encounters, investigative detentions, warrantless arrests made where probable cause is developed in the field, arrests carried out pursuant to federal immigration warrants, and criminal arrests under judicial warrants.

6. CBP personnel participated in consensual encounters during the operations in Los Angeles. During those consensual encounters, the individuals were free to walk away and terminate the encounter, decline to answer questions, and refuse to provide requested identification documents. While some of the individuals encountered freely answered questions about their names and place of birth and provided identification documents, others refused to answer questions and/or walked away from the encounters without any further interaction.

7. CBP agents and officers are typically divided into teams, composed of three to five agents, who contact individuals in public places such as streets and sidewalks, parking lots, or the publicly-accessible portions of businesses. Certain types of businesses, including car washes, have been selected for encounters because past experiences have demonstrated that illegal aliens utilize and seek work at these locations.

8. CBP agents and officers also engaged in lawful investigative detention encounters during the operation in Los Angeles. Prior to engaging in investigative detentions,

officers and agents had reasonable suspicion that the individual had committed or was committing a federal crime or federal immigration violation. This reasonable suspicion was based on various factors including intelligence sources, information from law enforcement and open-source databases, analysis of trends, facts developed in the field by agents, rational inferences that led an agent or officer to suspect criminal or immigration violations, and the officers or agents' observations, training, and experience. Officers and agents are trained to consider the totality of the circumstances when determining whether reasonable suspicion exists. Requiring law enforcement to ignore certain facts in this analysis would be unworkable on a practical level in the operational environment. For example, the particular location where the stop occurs is relevant to the officer's overall analysis. As an additional example, an individual's vocation may be relevant to the officer's overall consideration of the totality of the circumstances. Additionally, 8 C.F.R.§ 287.8(b)(2), specifically authorizes CBP officers and agents conducting a temporary, investigative detention based on reasonable suspicion to interrogate any alien or person believed to be an alien concerning his or her right to be, or to remain, in the United States.

9. During the operation in Los Angeles, CBP officers and agents have also conducted warrantless arrests for immigration violations pursuant to applicable legal authorities, including 8 U.S.C. § 1357 and 19 U.S.C. § 1589a. Also, during the operation in Los Angeles, CBP officers and agents have made warrantless arrests for immigration violations, as well for as violations of federal criminal statutes, such as 18 U.S.C. § 111, 21 U.S.C. § 841 and 18 U.S.C. § 1361.

10. During the operation in Los Angeles, CBP agents and officers have effectuated arrests pursuant to federal administrative warrants, specifically, Warrants for Arrest of Alien, referred to as I-200s. Prior to conducting targeted immigration arrests pursuant to an I-200, authorized DHS personnel identify subjects for whom they have developed probable cause to believe are removable from the United States. This conclusion is based upon specific evidence. Typically, officers and agents are given information on

the subject of the I-200, which may include immigration and criminal history, biological information, photos (if available), and other relevant information, such as the last known home address or possible workplace of the subject. This information is gathered from a variety of sources including, but not limited to, systems of record checks, information contained in an individual's immigration file (A-file), information developed from past investigations, open-source information, surveillance operations, and information provided by other federal agencies, particularly the local and regional offices. Officers and agents then typically conduct surveillance in order to identify the location of the subject in order to effectuate the arrest. CBP officers and agents effectuate administrative immigration warrants in public locations.

11. During the operation in Los Angeles, CBP agents and officers have also effectuated criminal judicial arrest and search warrants.

12. The actions undertaken by CBP law enforcement officers are informed by their experience and the comprehensive training they receive at various stages of their careers. During the CBP Officer Basic Training program at FLETC, in Glynco, Georgia, and the U.S. Border Patrol Agent Basic Training program in Artesia, New Mexico, trainees receive comprehensive tactical, operational, and legal training over the course of the months-long training program. During this time, they receive approximately 100 hours of legal instruction that is prepared and presented by attorneys within the CBP Office of Chief Counsel (OCC). This legal training provides officers and agents with the framework necessary to recognize violations of the laws they enforce and to take appropriate law enforcement actions. Legal topics covered include criminal law, criminal procedure, courtroom testimony, customs law, forfeiture, immigration law, use of force, nationality law, and report writing. Following their time at the Basic Academies, CBP law enforcement officers receive additional on-the-job training and periodic refreshers on a full range of topics.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed this 8th day of July, 2025, at Long Beach, California.

KYLE C. HARVICK