# Exhibit 23

STACY TOLCHIN (SBN 217431)
*stacy@tolchinimmigration.com*
LAW OFFICES OF STACY TOLCHIN
776 E. Green St., Suite 210
Pasadena, CA 91101
Tel: 213-622-7450; Fax: 213-622-7233

MOHAMMAD TAJSAR (SBN 280152)
*mtajsar@aclusocal.org*
MAYRA JOACHIN (SBN 306065)
*mjoachin@aclusocal.org*
EVA BITRÁN (SBN 302081)
*ebitran@aclusocal.org*
DAE KEUN KWON (SBN 313155)
*akwon@aclusocal.org*
STEPHANIE PADILLA (SBN 321568)
*spadilla@aclusocal.org*
DIANA SÁNCHEZ (SBN 338871)
*dianasanchez@aclusocal.org*
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017-4022
Tel: 213-977-5232; Fax: 213-201-7878

*Counsel for Stop/Arrest Plaintiffs*

(*Additional counsel listed on next page*)

MARK ROSENBAUM (SBN 59940)
*mrosenbaum@publiccounsel.org*
REBECCA BROWN (SBN 345805)
*rbrown@publiccounsel.org*
SOPHIA WRENCH (SBN 354416)
*swrench@publiccounsel.org*
RITU MAHAJAN (SBN 252970)
*rmahajan@publiccounsel.org*
GINA AMATO (SBN 215519)
*gamato@publiccounsel.org*
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Counsel for All Plaintiffs*

ANNE LAI (SBN 295394)
*alai@law.uci.edu*
UC IRVINE SCHOOL OF LAW
IMMIGRANT AND RACIAL JUSTICE SOLIDARITY CLINIC
P.O. Box 5479
Irvine, CA 92616-5479
Tel: 949-824-9894; Fax: 949-824-2747

*Counsel for Stop/Arrest Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

Pedro VASQUEZ PERDOMO; Carlos Alexander OSORTO; and Isaac VILLEGAS MOLINA; Jorge HERNANDEZ VIRAMONTES; Jason Brian GAVIDIA; LOS ANGELES WORKER CENTER NETWORK; UNITED FARM WORKERS; COALITION FOR HUMANE IMMIGRANT RIGHTS; IMMIGRANT DEFENDERS LAW CENTER,

Plaintiffs,

v.

Kristi NOEM, in her official capacity as Secretary, Department of Homeland Security; Todd M. LYONS, in his official capacity as Acting Director, U.S. Immigration

Case No.: 2:25-cv-05605-MEMF-SP

**PLAINTIFFS' REPLY TO PI SUPPLEMENT**

Date: September 24, 2025
Time: 9:00 a.m.
Place: Courtroom 8B

Hon. Maame Ewusi-Mensah Frimpong

and Customs Enforcement; Rodney S. SCOTT, in his official capacity as Commissioner, U.S. Customs and Border Patrol; Michael W. BANKS, in his official capacity as Chief of U.S. Border Patrol; Kash PATEL, in his official capacity as Director, Federal Bureau of Investigation; Pam BONDI, in her official capacity as U.S. Attorney General; Ernesto SANTACRUZ JR., in his official capacity as Acting Field Office Director for Los Angeles, U.S. Immigration and Customs Enforcement; Eddy WANG, Special Agent in Charge for Los Angeles, Homeland Security Investigations, U.S. Immigration and Customs Enforcement; Gregory K. BOVINO, in his official capacity as Chief Patrol Agent for El Centro Sector of the U.S. Border Patrol; Jeffrey D. STALNAKER, in his official capacity as Acting Chief Patrol Agent, San Diego Sector of the U.S. Border Patrol; Akil DAVIS, in his official capacity as Assistant Director in Charge, Los Angeles Office, Federal Bureau of Investigation; Bilal A. ESSAYLI, in his official capacity as U.S. Attorney for the Central District of California,

Defendants.

JACOB S. KREILKAMP (SBN 248210)
*jacob.kreilkamp@mto.com*
JAMIE LUMA (SBN 331610)
*jamie.luma@mto.com*
SARA H. WORTH (SBN 341088)
*sara.worth@mto.com*
HENRY D. SHREFFLER (SBN 343388)
*henry.shreffler@mto.com*
MAGGIE BUSHELL (SBN 354048)
*maggie.bushell@mto.com*
KYLE A. GROVES (SBN 358085)
*kyle.groves@mto.com*
MUNGER, TOLLES & OLSON LLP
350 S. Grand Ave., 50th Floor
Los Angeles, CA 90071
Tel: 213-683-9100; Fax: 213-683-9100

*Counsel for Stop/Arrest Plaintiffs*

LAUREN MICHEL WILFONG*
*lwilfong@ndlon.org*
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Tel: 626-214-5689

*Counsel for Stop/Arrest Plaintiffs*

BREE BERNWANGER (SBN 331731)
*bbernwanger@aclunc.org*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel: 415-621-2493

*Counsel for Stop/Arrest Plaintiffs*

BRISA VELAZQUEZ OATIS
(SBN 339132)
*bvoatis@aclu-sdic.org*
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Tel: 619-398-4199

*Counsel for Stop/Arrest Plaintiffs*

MATTHEW J. CRAIG (SBN 350030)
*mcraig@heckerfink.com*
MACK E. JENKINS (SBN 242101)
*mjenkins@heckerfink.com*
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Tel: 212-763-0883; Fax: 212-564-0883

*Counsel for Access/Conditions Plaintiffs*

EDGAR AGUILASOCHO
(SBN 285567)
*eaguilasocho@farmworkerlaw.com*
MARTÍNEZ AGUILASOCHO LAW, INC.
900 Truxtun Ave, Suite 300
Bakersfield, CA 93301
Tel: 661-859-1174

*Counsel for Plaintiff United Farm Workers*

CARL BERGQUIST*
*cbergquist@chirla.org*
COALITION FOR HUMANE IMMIGRANT
RIGHTS
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

*Counsel for Plaintiff Coalition for Humane Immigrant Rights*

ALVARO M. HUERTA (SBN 274787)
*ahuerta@immdef.org*
BRYNNA BOLT (SBN 339378)
*bbolt@immdef.org*
ALISON STEFFEL (SBN 346370)
*asteffel@immdef.org*
IMMIGRANT DEFENDERS LAW CENTER
634 S. Spring St., 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

*Counsel for Plaintiff Immigrant Defenders Law Center*

* Admitted pro hac vice

Defendants' response to Plaintiffs' PI Supplement, ECF 178, is an insufficient effort to justify what appear to be brazen violations of this Court's temporary restraining order (TRO) while it was in effect. Rather than provide a rebuttal to Plaintiffs' evidence substantiating their claim that they had "additional" information beyond their 4-factor profile that distinguished their recent operations from pre-TRO stops, Defendants make only vague references to "intelligence" without offering any records or direct accounts of what occurred. The record overwhelmingly shows that once at a location, Defendants have continued to rely on broad demographic profiles to decide whom to stop, frequently seizing individuals before they know anything about them.

Defendants provide, at best, generalized claims about their training, which evoke more questions than answers. Their "intelligence" appears to be a pretext for mass detentions. And Defendants' attempts to minimize and justify seizures is contradicted by Plaintiffs' ample evidence of widespread injury, including to legal residents and others with status. Defendants criticize Plaintiffs for relying on "anecdotes," ECF 178 at 1, but they ignore that multiple accounts of the same conduct across different operations is how one establishes a pattern. Indeed, it is Defendants' responses to Plaintiffs' declarations that are cherry-picked. To ensure Plaintiffs have a fair opportunity to develop the record and test the bases for the government's assertions, the Court should grant Plaintiffs' anticipated request for expedited discovery.

**A. This Court May Consider Plaintiffs' Evidence at the Preliminary Injunction Stage.**

It is well-established that a district court has considerable discretion to consider inadmissible evidence at the preliminary injunction stage "when . . . do[ing] so serves the purpose of preventing irreparable harm before trial." *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009)); *see also Disney Enters., Inc. v. VidAngel, Inc.,* 224 F. Supp. 3d 957, 966 (C.D. Cal. 2016), *aff'd*, 869 F.3d 848 (9th Cir. 2017) (recognizing that preliminary injunction procedures are less formal than at trial**)**. While most of Plaintiffs' evidence contains direct eyewitness accounts, hearsay may also be considered. *See Disney Enters., Inc.,* 224 F. Supp. 3d at 966; Wright & Miller, 11A Fed. Prac. & Proc. § 2949 (3d ed.**)**.[1]

[1] Defendants object to Plaintiffs submitting declarations under pseudonym. *See, e.g.*, Opp. at 6 n.2 & 7 n.3. But these are not inadmissible and may be considered. Plaintiffs filed the declarations using initials, in one case for a minor, due to concerns about harassment and retaliation. *Cf. Wash. State Ass'n. of Head* (continued…)

This Court may further consider videos, news reports, and social media reports if they appear reliable. The Court may consider videos taken by eyewitnesses, *e.g.* ECF 164, Exs. A, C–G, H–K; by embedded news teams covering the raids, *e.g.* ECF 163 at 7–8; and surveillance footage, *e.g.* ECF 164, Exs. B, G. All are probative of Defendants' actions and serve "the purpose of preventing irreparable harm before trial." *Johnson*, 572 F.3d at 1083.[2] And courts do permit citation to news articles in connection with a preliminary injunction. *See, e.g.*, *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1189-90 (9th Cir. 2024). Finally, at the preliminary stage, courts do not adhere to strict admissibility rules surrounding authentication and chain of custody. *See, e.g.*, *Disney Enters., Inc. 7*, 224 F. Supp. 3d at 966 (recognizing less formal preliminary injunction procedures compared to trial); *Rubin ex rel. N.L.R.B. v. Vista Del Sol Health Servs., Inc.*, 80 F. Supp. 3d 1058 (C.D. Cal. 2015) (clarifying that burden for authentication is a slight one, merely enough to infer that the evidence is what it is claimed to be).

**B. Defendants' Claims About Training and "Intelligence" Are Unspecific.**

Defendants point to training in their preliminary injunction opposition, ECF 170 at 2 (discussing "Ninth Circuit-specific" training), and their response to the PI supplement, ECF 178 at 2–3 (discussing post-TRO training), but Defendants have declined to provide any training materials to the Court, and it is apparent that any training has been insufficient to address the problematic conduct at issue here. Defendants have also failed to provide information about which agents and officers received the training and when. Such information, like the content of any training, would help the Court determine whether additional instruction on specific topics, such as detentive stops versus voluntary encounters, or what is required for reasonable suspicion, may be warranted. Defendants further do not provide any information about what documentation and other internal mechanisms they have put in place, if any, to ensure that

---

*Start & Early Childhood Assistance & Educ. Program v. Kennedy*, No. 25 Civ. 781, 2025 WL 1685420 (W.D. Wash. June 16, 2025) (granting *parties'* request to proceed anonymously and citing *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000)). Plaintiffs offered to provide Defendants the full names of all witnesses as long as Defendants agreed to basic confidentiality terms; Defendants declined. *See* Ex. 1, Declaration of Mayra Joachin, ¶¶ 3–9, 11–12, 15. Defendants were not harmed by Plaintiffs' use of initials, as they were able to identify the individuals by consulting their records. *See, e.g.*, ECF 170-2 (Parra), ¶ 15; ECF 170-3 (Quinones), ¶ 11; ECF 178-1 (Molina), ¶¶ 9, 11, 14.

[2] That Defendants have video evidence relevant to the raids but refrained from introducing it is telling. Ex. 2, Third Decl. of Stacy Tolchin, ¶ 3 (noting video footage captured by agent body camera).

agents' and officers' conduct conforms to the Fourth Amendment and this Court's orders. Rather than take allegations of violations seriously, Defendants appear to have allowed the conduct to continue.

Additionally, Defendants' briefing is replete with vague and unsupported references to "surveillance," "actionable information," "intelligence," "intelligence reports" or "briefing[s]" and "targeting packages." Without additional information, Plaintiffs and the Court are unable to identify what role, if any, such "intelligence" played in the justification of any given stop. Given how operations are conducted, it is unlikely "intelligence" is playing much of a role once Defendants are at a location.

**C. Defendants' Renewed Raids Violate the Fourth Amendment.**

Defendants claim they did not violate the TRO. Yet their responses to Plaintiffs' evidence only underscore that they are effecting aggressive seizures, not "peaceful," "courteous" voluntary encounters, ECF 178 at 7, and that Defendants are not conducting targeted operations, but grabbing whomever they can, including numerous people who are lawfully present and even shoppers and bystanders. Defendants are doing so based on broad profiles, with similarly situated white counterparts not stopped. The evidence of Defendants' violations is not limited to the six operations but part of a larger pattern that threatens not only Plaintiffs, but also members of the putative class, with further injury.

*August 4 Paramount Home Depot raid:* Defendants do not dispute that when agents arrived, they immediately seizing people, including a legal resident whom agents transported away from the premises.[3] With respect to the stop of S.C.C.H., Defendants offer only the declaration of an official who was not present and who does not identify what documents or sources he consulted in reviewing the incident. ECF 178-1 (Molina), ¶ 9. The declaration acknowledges S.C.C.H.—a Home Depot customer—was simply sitting in the driver's seat of his vehicle when he was approached by agents. *Id.* But in asserting that the encounter was voluntary, Defendants fail to mention that S.C.C.H. was boxed in, surrounded, grabbed and "forcefully pulled . . . [from] his car" prior to any questioning. ECF 163-4 (S.C.C.H. Decl.), ¶¶ 6–8.

*August 5 Magnolia Car Wash raid:* Defendants seem to believe that because they apparently had information about specific individuals at this car wash, that is the end of the matter. ECF 178-1 (Molina),

---

[3] Defendants' admission that they have no record of the stop of the resident and that their "usual practice" is to document only stops that result in arrests, ECF 178-1 (Molina), ¶ 10, is noteworthy, and calls into question whether Defendants are even able to adequately monitor agents' compliance with the Fourth Amendment for a significant number of their stops.

¶ 11. They focus on the fact that E.K.Z.L. was one of the individuals they claim they were looking for. *Id.* But Defendants say nothing about the fact that agents surrounded the entire car wash with their vehicles, ensuring that no one could leave, while ignoring white-appearing individuals, including those who ran. ECF 163-5 (E.K.Z.L. Decl.), ¶¶ 3–6, 8–12. The CLEAN member who was stopped for the second time during this raid, who was surrounded while asked for documents, likewise describes a seizure, not voluntary questioning. Ex. 3, Fourth Declaration of Flor Melendrez ("Fourth Melendrez Decl."), ¶¶ 8–11.

*August 6 Westlake Home Depot raid:* Defendants' description of this raid as a "targeted operation," ECF 178 at 5, defies reality. Ample evidence demonstrates that Defendants constructed the operation to sweep in as many people as possible, even using a ruse to ambush day laborers under the false pretense of a job offer. ECF 163 at 3–4 & n. 4. Defendants would not have carried out the operation this way if they were there to arrest specific individuals. Tijerino Garmendia was one of the day laborers who instinctually tried to get out of the way of armed, masked agents who jumped out of a Penske truck for his own safety. ECF 163-6 (Tijerino Garmendia Decl.), ¶ 7. Defendants do not contest that agents then fanned out across the area, grabbing additional Latine individuals with no apparent rhyme or reason. ECF 163 at 4.

*August 7 San Bernardino Home Depot raid:* None of the encounters detailed in Plaintiffs' evidence for this raid describe individuals "freely admitt[ing]" to being illegally present. ECF 178-1 (Molina), ¶ 13. They were not consensual encounters. Defendants say they had "actionable information about specific individuals" at that location, and predictably focus on Aparicio Saldana who was ultimately arrested, *id.*, but Defendants fail to mention that Aparicio Saldana was not standing looking for work but sitting in his car, which was blocked in, before he ever took flight and certainly before he was asked any questions. ECF 163-9 (Aparicio Saldana Decl.), ¶¶ 6–7. He took flight out of fear of being physically hurt, but others, including a legal resident across the street and another bystander getting gas who likewise has status, did not run and were also stopped. ECF 163 at 4–5. The legal resident was detained at gunpoint while the bystander was tackled with his face slammed to the ground. *Id.* Defendants do not dispute this.

*August 12 Handy J Car Wash Raid:* Defendants likewise claim that they had "actionable information" about this car wash, but don't say what the information was. ECF 178-1 (Molina), ¶ 14. Even if they did have information about certain individuals, Defendants clearly did not confine their stops to

such individuals. They do not contest that, upon arrival, they immediately "dropp[ed] about 4 or 5 workers" to the ground. ECF 163-10 (J.R.R. Decl.), ¶ 4. They also acknowledge that they detained a legal resident in the chaos, ECF 178-1 (Molina), ¶ 16, and of course, J.R.R., who was detained, was a customer. ECF 163 at 5–6. They justify J.R.R.'s stop on the basis of his attempt to avoid getting caught up in the fray, but that conduct is certainly understandable given the violence J.R.R. witnessed. ECF 163-10 (J.R.R. Decl.), ¶¶ 4–5. As the record also shows, Defendants stopped individuals whether they ran or not. White customers who were present, however, were not stopped. ECF 163 at 6.

*August 22 Pasadena Car Wash raid:* This was another raid where Defendants blocked entry and exit and did not allow anyone to leave. *Id.* Defendants contend that the car wash was targeted based on "intelligence" about specific individuals. ECF 178-1 (Molina), ¶ 15. But that assertion is undermined by Zapata Santiago's testimony that agents admitted to being there because "they had just happened to be driving by and noticed there were a bunch of car washers out at the car wash[.]" ECF 163-11 (Zapata Santiago Decl.), ¶ 11. Defendants' account is also undermined by the stop of Zapata Santiago himself. A legal resident who did not run, Zapata Santiago was detained as he was washing a car, transported away from the car wash (despite having his documents close by and offering to show them to agents), and only returned to the car wash, shaken, something like 30 minutes later. *Id.*, ¶¶ 2–10. Defendants do not dispute any of this.

**D. Plaintiffs' Additional Evidence of Standing Is Compelling.**

Plaintiffs address many of Defendants' standing arguments in their preliminary injunction reply. *See* ECF 194 at 2–3. With regard to Plaintiffs' new evidence of standing, Defendants claim that the evidence does not show injury. ECF 178 at 9. But Defendants only reach this conclusion by mischaracterizing the incidents as not serious because they were "brief" or did not lead to arrest. *Id.* Plaintiffs' declarations clearly do describe constitutional injury. *See* ECF 163 at 10; Fourth Melendrez Decl., ¶¶ 8–11 (providing additional detail about CLEAN member stopped twice at Magnolia Car Wash). That some of organizational Plaintiffs' members were stopped only to be released, in one case more than once, only reinforces the unlawfulness of Defendants' dragnet.

Dated: September 15, 2025

Respectfully submitted,

ACLU FOUNDATION OF
SOUTHERN CALIFORNIA

By: *Mayra Joachin*
*Counsel for Stop/Arrest Plaintiffs*

UC IRVINE SCHOOL OF LAW
IMMIGRANT AND RACIAL JUSTICE
SOLIDARITY CLINIC

By: *Anne Lai*
*Counsel for Stop/Arrest Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2025, I electronically filed the foregoing with the Clerk of the U.S. District Court for the Central District of California using the CM/ECF system, which provided notification of such filing to all registered CM/ECF users, including all adverse parties. L.R. 65-1.

Dated: September 15, 2025

ACLU OF SOUTHERN CALIFORNIA

By: */s/ Mayra Joachin*
Mayra Joachin
*Counsel for Stop/Arrest Plaintiffs*

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies that this filing is 12 point font and five pages, which complies with this Court's standing order.

DATED: September 15, 2025

ACLU OF SOUTHERN CALIFORNIA

By: */s/ Mayra Joachin*
Mayra Joachin
*Counsel for Stop/Arrest Plaintiffs*