# Exhibit 25

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pedro VASQUEZ PERDOMO, et al.,<br>Plaintiffs,<br>v.<br>KRISTI NOEM, IN HER OFFICIAL CAPACITY AS SECRETARY OF HOMELAND SECURITY, et al.,<br>Defendants. | Case No. 2:25-cv-05605-MEMF-SP<br><br>**DECLARATION OF MANUEL MOLINA JR.** |

**<u>DECLARATION OF MANUEL MOLINA JR.</u>**

I, Manuel Molina Jr., declare and affirm that the following is true to the best of my knowledge, information, and belief:

1. I am employed by U.S. Border Patrol, an operational component of U.S. Customs and Border Protection (CBP) within the Department of Homeland Security (DHS). CBP is charged with enforcing the Nation's immigration laws to protect national security and uphold the integrity of the immigration system. As part of this mission, CBP Border Patrol Agents are responsible for preventing the unlawful entry of unauthorized individuals into the United States, apprehending, in accordance with the Constitution, those who attempt to enter illegally or who have violated the immigration laws, including the Immigration and Nationality Act ("INA"), and other applicable laws. Through these activities, CBP seeks to secure the border, disrupt human smuggling and trafficking networks, and ensure enforcement of the immigration laws of the United States.

2. My current role at my permanent duty location at the Indio Station/El Centro Sector is the Patrol Agent in Charge. I have been in this role since March 13, 2022.

Between May 11, 2021, and March 13, 2022, I also served as the Acting Patrol Agent in Charge at the Indio Station/El Centro Sector. In this role I have operational oversight and am responsible for Border Patrol personnel working in the Indio Station Area of Operations. I ensure the daily operations of the station are aligned with the goals and expectations of the Sector Chief Patrol Agent and consistent with the U.S. Border Patrol national strategy. I also have oversight of the administrative functions of the organization pertaining to the workforce and the facilities in Indio, to include personnel training, budgeting, logistical and resource requirements.

3. I entered on duty on February 1, 1998, at the Blythe Station/Yuma Sector as a Border Patrol Agent. I was promoted into the supervisory ranks in July 2006. I have served as a Supervisory Border Patrol Agent in Blythe Station/Yuma Sector, Calexico Station/El Centro Sector, and El Centro Sector Headquarters (ELC) in Imperial, CA. I served as the Special Operations Supervisor at El Centro Sector Headquarters before transferring to the Blythe Station/Yuma Sector as a Watch Commander. I returned to Calexico Station/El Centro Sector as the Deputy Patrol Agent in Charge before I took on my current role as the Patrol Agent in Charge at the Indio Station/El Centro Sector.

4. I am currently the Incident Commander of the U.S. Border Patrol (USBP) assets supporting Operation At Large in Los Angeles, California. In this role, I have oversight of all operations and administrative functions for all USBP personnel supporting Operation At Large. This includes management of all enforcement teams and support branches including intelligence, logistics, and personnel. Furthermore, I ensure that all personnel under my command have the proper resources, not only in terms of materiel, but the requisite training needed to operate in such a complex and fluid environment, including instruction in constitutional law. As the Incident Commander, I report directly to the National Incident Command Center. I assumed this assignment on September 2, 2025. Prior to this assignment, I was the Operations Section Chief in support of Operation At Large, Los Angeles, from June 7, 2025, to September 1, 2025.

In that role, I had oversight and visibility on daily operations of all USBP enforcement teams that deploy to the Los Angeles area and was responsible for reporting daily activities to the Lead Field Coordinator.

5. On June 6, 2025, to support U.S. Immigration and Customs Enforcement (ICE-ERO), CBP agents and officers were deployed to Los Angeles, California, as part of a national, multi-agency operation. The operation focuses on enhancing public safety and enforcing immigration law through law enforcement efforts.

6. As part of this operation, CBP officers and agents, in coordination with other federal agencies, along with their federal partners, are involved in a variety of different law enforcement encounters and enforcement actions. Officers and agents regularly engage in consensual encounters, investigative detentions, lawful warrantless arrests, and arrests pursuant to both immigration and criminal judicial warrants.

7. I make this declaration based upon my personal knowledge, consultation with colleagues, and/or my review of certain CBP records. A fulsome record is still being compiled, and this statement is based on what I have been able to review to date. If called to testify, I am willing and fully able to do so competently and truthfully

8. I understand that Plaintiffs allege that CBP, specifically U.S. Border Patrol (USBP) personnel, were present at various locations within the Los Angeles area where enforcement operations took place. From the locations listed in the Plaintiffs' supplemental motion for preliminary injunction and the attached declarations, USBP personnel were present at the following: (1) Paramount Home Depot (6400 Alondra Blvd) on August 3, 2025; (2) Magnolia Car Wash (18020 Magnolia Street) on August 5, 2025; (3) Westlake Home Depot (1675 Wilshire Blvd) (Operation Trojan Horse) on August 6, 2025; (4) San Bernardino Home Depot (1055 W. 21st Street) on August 7, 2025; (5) Handy J Car Wash (12681 Washington Blvd) on August 12, 2025; (6) Pasadena Car Wash (164 W Del Mar Blvd) on August 22, 2025.

9. On August 3, 2025, Border Patrol Agents conducted immigration enforcement operations at the Paramount Home Depot located at 6400 Alondra Blvd. I am aware that someone with the initials "S.C.C.H." filed a declaration in this case regarding their arrest on August 3. There is only one individual I am aware of with these initials who was arrested that day by Border Patrol Agents in that location. A Border Patrol Agent observed S.C.C.H. in the parking lot of the Home Depot. S.C.C.H. was sitting in the driver's seat of a vehicle in the general open parking lot with the door open, on his cellular phone. He was near a yellow Penske moving truck and appeared to be waiting to be approached with a day labor opportunity. This type of loitering behavior was distinct from someone who was at the Home Depot to purchase goods or supplies. The Border Patrol Agent, along with a second Border Patrol Agent, approached S.C.C.H. on foot and asked what country he was a citizen of. The Border Patrol Agents did not impede S.C.C.H.'s means of exit. He was free to leave and he was free to not answer the question posed. S.C.C.H. stated that he was a citizen of Mexico. Then, one of the Border Patrol Agents asked S.C.C.H. to exit the vehicle. The Agent asked whether S.C.C.H. was in the country legally, and S.C.C.H. stated he had a Visitor's Visa. The second Border Patrol Agent asked how long he had been in the United States, and S.C.C.H. replied that he had been in the country for two years. Visitor's Visa are not issued to be valid for two years. Based on this information, the first Border Patrol Agent placed S.C.C.H. under arrest for overstaying his Visitor's Visa.

10. I am also aware that another declaration on that same day, August 3rd, at that same location, the Paramount Home Depot, asserts that a legal resident was briefly detained and later released by Border Patrol Agents. The Border Patrol has no record of any encounter with any individual other than S.C.C.H. on that day at that location. This would be consistent with the Border Patrol's usual practice of preparing written documentation only when an individual is arrested, not when there is a consensual encounter that does not result in an arrest or an investigative stop that does not result in

arrest.

11. On August 5,[1] 2025, Border Patrol Agents were present at the Magnolia Car Wash located at 18020 Magnolia Street to conduct their immigration enforcement mission. I am aware that someone with the initials "E.K.Z.L." filed a declaration in this case regarding their arrest on August 5. There is only one individual I am aware of with these initials who was arrested that day by Border Patrol Agents in that location. On August 4th and/or the 5th, 2025, Border Patrol Agents were provided with an intelligence briefing based on information gathered prior to the operation that multiple individuals present at this location were known to be unlawfully present. One of these individuals had the initials "E.K.Z.L." E.K.Z.L. was an illegal alien from Mexico who was known to be at the Magnolia Car Wash located at 18020 Magnolia Street. At approximately 10:00 a.m. that day, Border Patrol Agents arrived at the car wash. Agents encountered E.K.Z.L. and questioned him about his citizenship. He admitted he was from Mexico and unlawfully present in the United States.

12. On August 6, 2025, the Border Patrol ran a targeted operation at the Westlake Home Depot located at 1675 Wilshire Blvd at around 6:30 AM. The location of the operation was chosen based on intelligence gathered prior to the operation, which indicated there were individuals known to be present at this location who were in the U.S. illegally. In addition, that day Border Patrol Agents observed actions by individuals in that parking lot that were inconsistent with activities expected by patrons of Home Depot, specifically they lingered in a stationary area and did not move towards the store to shop. Based on intelligence and observation of the location, an operation was conducted. Border Patrol Agents arrived in the back of two Penske rental trucks and exited the trucks. The Border Patrol Agents were clearly recognizable as Border Patrol due to their distinct green and/or "multicam" uniforms. They also wore body armor that

---

[1] The date of this event is listed as both August 4th or August 5th. The Border Patrol was not present at this location on August 4th.

made clear they were federal law enforcement agents and Border Patrol. Several individuals took flight upon sighting the Border Patrol Agents. Attempting to evade Border Patrol presence is inconsistent with being lawfully present in the United States. These individuals were pursued for the purpose of further investigation regarding their immigration status. I am aware that an individual named Miguel Angel Tijerino Garmendia was arrested that day. Mr. Tijerino Garmendia was one of the individuals who fled from the Border Patrol presence. During a brief investigative detention, he freely admitted that he was a citizen of Nicaragua, illegally present in the United States.

13. On August 7, 2025, the Border Patrol was at the San Bernardino Home Depot located at 1055 W. 21st St. This location was selected based on intelligence that provided actionable information regarding the location and subjects previously associated to it, including immigration status. Many of the individuals present, although not all, ran from clearly identifiable Border Patrol Agents, ignored commands not to run, and freely admitted to being illegally present in the United States. I am aware that an individual named Juan Aparicio Saldana was arrested that day by Border Patrol. Upon seeing Border Patrol Agents in the area, Mr. Saldana attempted to flee and ignored commands to stop. When Agents were able to approach Mr. Saldana following a short foot pursuit, he freely admitted he was a citizen of Mexico and did not possess any legal documents to remain in the United States. He also had no identification and refused to provide a residential or work address.

14. On August 12, 2025, the Border Patrol was at the Handy J Car Wash at 12681 Washington Blvd. This location was selected based on intelligence that provided actionable information regarding the location and subjects previously associated to it, including immigration status. Nine individuals were arrested, and I am aware there was one investigative stop which ultimately did not result in an arrest as the individual had documentation establishing they were a legal permanent resident. This location was selected as a target because particular individuals had been located at this car wash who

were identified as being in the country illegally. Surveillance was conducted and the particular subjects were observed engaging in behavior consistent with the information provided during the briefing. Following confirmation of the suspected activities, Border Patrol Agents began the operation and noted the response of individuals while executing the operation, including many who fled. There were also individuals who did not flee with whom the Border Patrol Agents had consensual encounters. I am aware that someone with the initials "J.R.R." filed a declaration in this case regarding their arrest on August 12. There is only one individual I am aware of with these initials that was arrested that day by Border Patrol Agents in that location. This individual immediately attempted to flee upon seeing Border Patrol Agents. One Border Patrol Agent pursued J.R.R., who was ignoring the Agent's commands to stop, and continued to run southeast away from the car wash towards a sidewalk. After a short foot pursuit, the Agent eventually caught up with J.R.R., who upon questioning admitted he was a citizen of Mexico and did not have any legal status or documents allowing him to remain lawfully in the United States.

15. On August 22, 2025, the Border Patrol was at the Pasadena Car Wash located at 164 W. Del Mar Blvd., where six individuals were arrested. Prior to August 22, 2025, the Border Patrol gathered intelligence regarding specific individuals who worked at this car wash who did not have lawful status. Based on the information gathered, the car wash was targeted because individuals identified as being here illegally worked there. All six of the individuals who were arrested immediately fled or hid from Border Patrol Agents as soon as they arrived at the car wash. One of those individuals encountered had an outstanding final order of removal. Another one of the individuals identified from the intelligence gathering prior to deploying to the location was arrested on site.

16. I am also aware that a declaration by an individual named Inoel Zapata Santiago, a permanent legal resident, states on that same day, August 22nd, he was briefly detained and later released by Border Patrol Agents at that location. The Border Patrol has been

unable to locate any record of an encounter with that individual on that day at that location. This would be consistent with the Border Patrol's usual practice of preparing written documentation only when an individual is arrested, not when there is an investigative stop that does not result in arrest.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed this 4th day of September, 2025, at Long Beach, California.

MANUEL MOLINA JR.