# EXHIBIT 2

BRETT A. SHUMATE
Assistant Attorney General
Civil Division
DREW C. ENSIGN
Deputy Assistant Attorney General
TIBERIUS DAVIS
SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
JONATHAN K. ROSS
Senior Litigation Counsel
STEPHANIE L. GROFF
JASON K. ZUBATA
ANIELLO DESIMONE
JACOB A. BASHYROV
Trial Attorneys
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-0919
Email: Jacob.Bashyrov@usdoj.gov

BILAL A. ESSAYLI
Acting United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
ALEXANDER L. FARRELL (SBN 335008)
PAULINE H. ALARCON (SBN 345785)
Assistant United States Attorneys
  Federal Building, Suite 7516
  300 North Los Angeles Street
  Los Angeles, California 90012
  Tel: (213) 894-5557 | 3992
  E-mail:    Alexander.Farrell@usdoj.gov
             Pauline.Alarcon@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| PEDRO VASQUEZ PERDOMO; *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security; *et al.*,<br><br>Defendants. | No. 2:25-cv-05605-MEMF-SP<br><br>**DEFENDANTS' OPPOSITION TO JOINT MOTION FOR EXPEDITED DISCOVERY [ECF 211]**<br><br>[Hearing TBD]<br><br>Hon. Maame Ewusi-Mensah Frimpong<br>United States District Judge |

## TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................... 1

II. BACKGROUND ...................................................................................................... 2

III. LEGAL STANDARD ............................................................................................... 3

IV. ARGUMENT ............................................................................................................ 4

    A. The Supreme Court's Stay Forecloses Renewed PI and Related Discovery ................... 4

    B. The Court Should Not Reward Plaintiffs' Delay and Gamesmanship ............................. 7

    C. Discovery is Unwarranted and Unduly Burdensome .......................................................... 8

    D. No Good Cause Exists ........................................................................................................ 14

    E. If Discovery Proceeds, It Must Be Symmetrical and on a Practical Timeline ............... 16

V. CONCLUSION ......................................................................................................... 18

L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

**TABLE OF AUTHORITIES**

**CASES**

**Page(s)**

*Alliance for Retired Americans v. Bessent*,
  2025 WL 1114350 (D.D.C. Mar. 20, 2025) ................................................................. 17

*Am. LegalNet, Inc. v. Davis*,
  673 F.Supp. 2d 1063 (C.D. Cal. 2009) ........................................................... 4, 8, 9, 12

*AFL-CIO v. DOL*,
  349 F.R.D. 243 (D.D.C. 2025) ......................................................................... 8, 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................. 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................. 13

*Cal. Dep't of Soc. Servs. v. Leavitt*,
  523 F.3d 1025 (9th Cir. 2008) ..................................................................... 14

*Campos v. City of Fullerton*,
  2025 U.S. Dist. LEXIS 170821 (C.D. Cal. July 17, 2025) ......................................... 9

*Centeno v. City of Fresno*,
  2016 WL 7491634 (E.D. Cal. Dec. 29, 2016) ..................................................... 8

*Citizens for Responsibility & Ethics in Washington v. DOGE*,
  349 F.R.D. 1 (D.D.C. 2025) ....................................................................... 13

*City of Martinsville, Virginia v. Express Scripts, Inc.*,
  128 F.4th 265 (4th Cir. 2025) ..................................................................... 6

*Coalition on Homelessness v. City & Cnty. of San Francisco*,
  2024 WL 815552 (N.D. Cal. Feb. 23, 2024) .................................................. 5, 14

*Coinbase, Inc. v. Bielski*,
  599 U.S. 736 (2023) ............................................................................... 5, 6

*Disability Rights Council of Greater Wash. v. WMATA*,
  234 F.R.D. 4 (D.D.C. 2006) ....................................................................... 3, 6

*Engelbrecht v. Experian*,
  2012 WL 13202665 (C.D. Cal. Nov. 16, 2012) ..................................................... 4

DEFENDANTS' OPPOSITION TO EXPEDITED DISCOVERY
ii

*Griggs v. Provident Consumer Discount Co.*,
   459 U.S. 56 (1982) ......................................................................................... 1, 5, 6

*Haddock v. Countrywide Bank, N.A.*,
   2014 WL 12617276 (C.D. Cal. Dec. 19, 2014) ................................................ 3

*Hum. Rts. Watch v. DEA*,
   2015 WL 13648069 (C.D. Cal. July 10, 2015) ....................................... 4, 9, 10

*In re Countrywide Fin. Corp. Derivative Litig.*,
   542 F.Supp. 2d 1160 (C.D. Cal. 2008) ............................................................ 3

*INS v. Phinpathya*,
   464 U.S. 183 (1984) ....................................................................................... 15

*Jones v. Riot Hosp. Group LLC*,
   95 F.4th 730 (9th Cir. 2024) ........................................................................... 8

*Little v. City of Seattle*,
   863 F.2d 681 (9th Cir. 1988) ........................................................................... 8

*Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ........................................................................................... 4

*Mechanix Wear LLC v. Branson*,
   2024 WL 2846068 (C.D. Cal. Apr. 23, 2024) ............................................... 14

*MicroTechnologies, LLC v. Autonomy, Inc.*,
   2016 WL 1273266 (N.D. Cal. Mar. 14, 2016) ............................................... 13

*Milbeck v. TrueCar, Inc.*,
   2019 WL 4570017 (C.D. Cal. May 2, 2019) .................................................. 10

*Missouri v. Biden*,
   2022 WL 4086539 (W.D. La. Sept. 6, 2022) ................................................... 9

*NIH v. Am. Pub. Health Ass'n*,
   145 S. Ct. 2658 (2025) ..................................................................................... 5

*Nguyen v. Boeing Co.*,
   2016 WL 2855357 (W.D. Wash. May 16, 2016) .............................................. 8

*Nken v. Holder*,
   556 U.S. 418 (2009) ...................................................................................... 4, 6

*Noem v. Perdomo*,
   606 U.S.___, 2025 WL 2585637 (U.S. Sept. 8, 2025)............................... 1, *passim*

DEFENDANTS' OPPOSITION TO EXPEDITED DISCOVERY

*Pac. Coast Fed'n v. Glaser,*
  2020 WL 1685832 (E.D. Cal. Apr. 7, 2020) ................................................................ 16

*Perdomo v. Noem,*
  148 F.4th 656 (9th Cir. 2025) .......................................................................... 2, 6

*Prudential Real Est. Affiliates, Inc. v. PPR Realty, Inc.,*
  204 F.3d 867 (9th Cir. 2000) .............................................................................. 5

*Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.,*
  213 F.R.D. 418 (D. Colo. 2003) ........................................................................ 12

*Rovio Ent. Ltd. v. Royal Plush Toys, Inc.,*
  907 F. Supp. 2d 1086 (N.D. Cal. 2012) ............................................................ 16

*Rutman Wine Co. v. E.&J. Gallo Winery,*
  829 F.2d 729 (9th Cir. 1987) ................................................................... 3, 13, 14

*Stewart Title v. Credit Suisse,*
  2015 WL 1481341 (D. Idaho Mar. 31, 2015) ................................................... 16

*Trump v. Boyle,*
  145 S. Ct. 2653 (2025) ..................................................................................... 1, 5

*U.S. Bank Nat'l Ass'n v. Parker,*
  2010 WL 559135 (E.D. Mo. Feb. 10, 2010) ..................................................... 14

*United States v. Texas,*
  599 U.S. 670 (2023) ......................................................................................... 15

*Washington v. DOGE,*
  349 F.R.D. 1 (D.D.C. 2025) ...................................................................... 13, 15

*Winter v. NRDC,*
  555 U.S. 7 (2008) ............................................................................................. 12

## **STATUTES**

5 U.S.C. § 552a(b) ................................................................................................... 11

## **FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 26(b)(1)............................................................................... 9, 10, 13

Fed. R. Civ. P. 26(b)(2)(C) .............................................................................................. 9

Fed. R. Civ. P. 26(f)................................................................................... 2, passim

Fed. R. Civ. P. 26(d) ...................................................................................................................... 3

Fed. R. Civ. P. 30 ........................................................................................................................ 13

## I.    INTRODUCTION

With a Supreme Court stay in place and an ongoing appeal, Plaintiffs and Intervenors (collectively "Plaintiffs") simply assert urgency to justify intrusive expedited discovery on an unrealistic timeline without the requisite good cause to support such an accelerated and burdensome request. The Court should deny the motion for expedited discovery. ECF 211 ("Mot."). This Court already denied Plaintiffs' materially identical request given the "current procedural posture" of this case, ECF 181 at 1-2, and with no change in circumstances, Plaintiffs offer no reason for reconsideration.

The Supreme Court stayed this Court's July 11 injunction, ECF 87 ("TRO"), concluding Defendants are likely to succeed on the merits and the equities and irreparable-harm factors favor a stay. *Noem v. Perdomo*, 606 U.S.___, 2025 WL 2585637 (U.S. Sept. 8, 2025). That stay forecloses a renewed PI on the same theory requesting the same injunctive relief, and, with it, any discovery aimed at supporting such relief. The Ninth Circuit's brief abeyance (for an indicative-ruling) does not diminish the Supreme Court's controlling stay or expand this Court's jurisdiction. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58-59 (1982) (holding lower courts lose control over "aspects of the case involved in the appeal"). Rather than confront the Supreme Court's guidance—which governs "in like cases," *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025)—Plaintiffs seek to relitigate the Supreme Court's stay through belated discovery aimed at uncovering any evidence to overcome the Supreme Court's instructive finding. Simply put, Plaintiffs had months and multiple rounds of briefing to request discovery, yet waited until *after* the Supreme Court stayed the injunction to claim discovery is indispensable. That timing illustrates Plaintiffs' attempt to circumvent the stay by auditing TRO compliance. But the Supreme Court's stay rests on legal issues discovery cannot cure.

Even if discovery could be granted, Plaintiffs' justifications for why discovery is necessary are unavailing and based wholly on speculation, thus the strict good-cause standard cannot be met. By contrast, expedited discovery would impose undue burdens on Defendants, requiring costly and disruptive production while appellate proceedings are underway. There is no prejudice to Plaintiffs in adhering to the normal discovery schedule, particularly given the Supreme Court's stay. Plaintiffs can still seek discovery on the merits in due course, after the appeal and motion to dismiss stage.

Nevertheless, if this Court entertains discovery, Defendants would also be entitled to discovery to test Plaintiffs' claims. Given the weight Plaintiffs place on their declarants to support their request for injunctive relief—a number of which discuss conversations with unidentified aliens—Defendants are entitled to discovery to investigate Plaintiffs' account and determine the basis for the identified stops.

## II.    BACKGROUND

Relying only on declarations (some pseudonymous) and media clips, Plaintiffs obtained a TRO. ECF 38, 45, 87. Under that accelerated schedule, the Ninth Circuit faulted Defendants for submitting limited evidence. *Perdomo v. Noem*, 148 F.4th 656, 666, 673 (9th Cir. 2025). Plaintiffs then sought an identical PI supported by more of the same declarations, and later filed a supplemental PI brief with additional, similar statements. ECF 128, 163. Defendants responded with declarations and materials explaining that agents are not conducting investigative stops based on the four enumerated factors. ECF 178. At no point in those months did Plaintiffs seek PI-specific merits discovery; they argued instead that the existing paper record sufficed (ECF 128, 163) and, at most, asked for compliance-monitoring discovery on the TRO, ECF 175—requests this Court correctly found to be premature in light of the Supreme Court stay, ECF 181.

On September 8, the Supreme Court stayed the TRO. *Perdomo*, 2025 WL 2585637, at *1. The Supreme Court clarified the status quo while this case is adjudicated, finding that Defendants are likely to succeed on the merits of their legal arguments, would suffer irreparable harm absent a stay, and that the equities favor them. *Id*. at 5-7 (Kavanaugh, J., concurring). The Ninth Circuit subsequently held the appeal in abeyance only for the limited purpose of allowing this Court to consider any request to dissolve the TRO. *Perdomo v. Noem*, No. 25-4312, Dkt. 74 (9th Cir. Sept. 19, 2025). Consistent with these rulings, this Court vacated its September 24 hearings on Plaintiffs' Fourth Amendment preliminary injunction motion, recognizing that further proceedings would be inefficient pending resolution of the appeal. ECF 205.

Plaintiffs then pivoted, saying they "need" discovery, while simultaneously asserting their new declarations already suffice. ECF 194, 195. Only now—after a third round of briefing and the stay—do Plaintiffs ask for sweeping, accelerated discovery into training, policies, operations, and multiple new incidents. ECF 211.

DEFENDANTS' OPPOSITION TO EXPEDITED DISCOVERY

2

Plaintiffs' motion seeks expedited discovery across multiple categories. They propose interrogatories directed at identifying personnel involved in certain enforcement encounters, the sources of prior declarations, and the recipients of training or guidance, as well as mechanisms for reviewing compliance. ECF 211-1 at 6-7. They also propose requests for production seeking operational plans, training materials, communications (including text messages and mobile application messages), and other documents relating to specified encounters. *Id.* at 19-28. In addition, Plaintiffs seek seven depositions, including a Rule 30(b)(6) deposition. *Id.* at 14-18. Plaintiffs ask that all of these discovery responses and depositions be completed on an expedited basis—interrogatory responses within 10 days of service, document productions within 10 days, and depositions within 14 days of notice. ECF 211-1 at 9-10.[1]

### III.    LEGAL STANDARD

Expedited discovery is the exception—particularly where threshold legal issues and an appellate stay are in play. Federal Rule of Civil Procedure 26(d) generally prohibits a party from seeking discovery before the parties conduct a Rule 26(f) conference. *See In re Countrywide Fin. Corp. Derivative Litig.*, 542 F.Supp. 2d 1160, 1179 (C.D. Cal. 2008). Where dismissal is anticipated, prudence dictates waiting before discovery. *Rutman Wine Co. v. E.&J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (Rule 12 is meant "to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery.").

The party seeking early expedited discovery has the burden of showing good cause for the requested departure from usual procedures. *Id.*; *Haddock v. Countrywide Bank, N.A.*, 2014 WL 12617276, at *2 (C.D. Cal. Dec. 19, 2014) (internal quotation and citation omitted). "Good cause exists where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *In re Countrywide*, 542 F.Supp. 2d at 1179 (cleaned up). While a PI request can satisfy the good cause requirement, "expedited discovery is not automatically granted merely because a party seeks a preliminary injunction." *Disability Rights Council of Greater Wash. v. WMATA*, 234 F.R.D. 4, 7 (D.D.C. 2006) ("[P]laintiffs are not seeking expedited discovery to gain evidence to get

---

[1] Relatedly, although the parties have acted diligently in exchanging drafts, no protective order is yet in place—one of several important guardrails, such as an ESI protocol, that typically take weeks to negotiate and should be finalized before custodial collection and review begin. Moss Decl. ¶7.

DEFENDANTS' OPPOSITION TO EXPEDITED DISCOVERY
3

the court to preserve the status quo" but rather want to "radically transform the status quo" by seeking any and all evidence, "on an expedited basis. But, that is not the purpose of a preliminary injunction, nor of the limited discovery that the courts traditionally permit").

Under the good cause analysis, courts may consider: (1) whether a PI is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made. *See Am. LegalNet, Inc. v. Davis*, 673 F.Supp. 2d 1063, 1067 (C.D. Cal. 2009). And "where a plaintiff seeks expedited discovery to prepare for a preliminary injunction hearing, it makes sense to examine the discovery request . . . on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances[.]" *Engelbrecht v. Experian*, 2012 WL 13202665, at *2 (C.D. Cal. Nov. 16, 2012) (citation omitted). Even when a court grants expedited discovery prior to the Rule 26(f) conference, the movant's request should be narrowly tailored to the minimum amount of information needed to achieve its stated purpose. *See Hum. Rts. Watch v. DEA*, 2015 WL 13648069, at *3 (C.D. Cal. July 10, 2015). Against this backdrop, Plaintiffs must show their request is narrowly tailored, truly necessary, and outweighs the burdens of expedition.

## IV. ARGUMENT

### A. The Supreme Court's Stay Forecloses Renewed PI and Related Discovery

Plaintiffs' request for expedited discovery falls flat considering the ongoing Ninth Circuit appeal and the Supreme Court's stay of this Court's TRO. *See Perdomo*, 2025 WL 2585637, at *1. To stay the TRO, the Supreme Court necessarily held that Defendants are likely to succeed on the merits of its appeal, would suffer irreparable harm absent a stay, and have equities weighing in favor of the stay. *See Perdomo*, 2025 WL 2585637, at *2-5 (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Furthermore, Justice Kavanaugh found that Defendants demonstrated a strong prospect of success on two alternative grounds: (1) Plaintiffs likely lack Article III standing under *Los Angeles v. Lyons*, 461 U.S. 95 (1983) for an injunction restricting immigration officers from making investigative stops; and (2) the Fourth Amendment does not permit categorical bars on what factors can constitute "reasonable suspicion." *Id.* at *2-3 (Kavanaugh, J., concurring). Plaintiffs cannot obtain a PI because, as the Supreme Court concluded, they lack a likelihood of success and the equities do not favor them. That decision controls in

"like cases." *Boyle*, 145 S. Ct. at 2654; *see also NIH v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2664 (2025) (Gorsuch, J., concurring in part and dissenting in part) (explaining that even "probabilistic" holdings—such as concluding the government is likely to prevail on jurisdiction—"must inform how a lower court proceeds in like cases" (cleaned up)). As Defendants have made clear, this is the same case, raising the same issues, seeking an injunction on the same scope. ECF 196 at 1.

Because Plaintiffs cannot obtain another injunction while the appeal implicating jurisdictional questions remains pending, any request for supporting discovery is baseless. This Court acknowledged as much in denying Plaintiffs' last discovery request, ECF 181, which sought similar evidence to their instant expedited discovery request, ECF 175. This Court determined that discovery was inappropriate and "premature" given the Supreme Court stay and ongoing Ninth Circuit appeal. ECF 181 at 1-2. This Court further reasoned that allowing discovery at this juncture "would run counter to this Court's interest in preserving judicial economy." *Id.* at 2; *see also Coalition on Homelessness v. City & Cnty. of San Francisco*, 2024 WL 815552, at *5-9 (N.D. Cal. Feb. 23, 2024) (granting a stay pending Supreme Court review because proceeding would complicate issues and risk needless expenditure of public resources). Plaintiffs do not present any change in circumstances or a legal or prudential basis to depart from this Court's reasoned decision to forego discovery pending disposition of the appeal—indeed they cannot on the heels of the Supreme Court's decisive stay.

Similarly, this Court also lacks jurisdiction to enter or modify a PI regarding the Fourth Amendment issues because the existing injunction is on appeal. Filing a notice of appeal "divests the district court of its control over those aspects of the case involved in the appeal." *Griggs*, 459 U.S. at 58. As a result, because Plaintiffs seek renewed (and identical) injunctive relief, any such PI would effectively amount to modification of the order on appeal. *See Prudential Real Est. Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000) ("A district court lacks jurisdiction to modify an injunction once it has been appealed except to maintain the status quo among the parties."). The Court may not proceed with Plaintiffs' discovery request as tied to their request for PI relief because the appeal raises threshold issues regarding this Court's subject matter jurisdiction to consider their claims in the first place. *See Coinbase, Inc. v. Bielski*, 599 U.S. 736, 741 (2023); ECF 71 at 11-14 (arguing organizational and named Plaintiffs lack standing). Where the issue on appeal is whether the case belongs in district court at all,

"the entire case is essentially 'involved in the appeal.'" *Coinbase*, 599 U.S. at 741 (citing *Griggs*, 459 U.S. at 58). "[I]it makes no sense for [a case] to go forward while the court of appeals cogitates on whether there should be one." *Id.*; *see also City of Martinsville, Virginia v. Express Scripts, Inc.*, 128 F.4th 265, 270-71 (4th Cir. 2025) (extending *Coinbase* to non-arbitration settings); ECF 196 at 5-7 (explaining why Plaintiffs' renewed PI motion raises identical jurisdictional issues as those on appeal, thus implicating *Coinbase*).

Plaintiffs attempt to overcome the necessary conclusion—given the Ninth Circuit appeal, "jurisdictional issues on appeal could substantially narrow the scope of discovery[,]" ECF 201-1 at 3— by citing to the Ninth Circuit's initial stay decision in which the court determined Plaintiffs likely had standing, *Perdomo*, 148 F.4th at 673-77. Mot. 15, n.10. However, Plaintiffs ignore that the Supreme Court granted Defendants' stay request based on pure issues of law and found Defendants were likely to succeed on the merits, which supersedes the Ninth Circuit's determination. *Perdomo*, 2025 WL 2585637, at *2-5 (citing *Nken*, 556 U.S. at 434). If Plaintiffs are correct, then the Supreme Court necessarily granted the stay based on the reasonable suspicion standard, which additional discovery could not alter. Relatedly, Plaintiffs mischaracterize the Ninth Circuit's September 19 Order holding the appeal in abeyance as if it were a substantive victory. *Perdomo*, No. 25-4312, Dkt. 74. But that Order does not endorse their position, let alone authorize a new PI or discovery. It says nothing on how the district court should proceed. The abeyance is temporary, preserving appellate jurisdiction only to allow this Court to provide an indicative ruling as to whether it would dissolve the TRO on remand.

Even if this Court overlooked this case's procedural posture to allow discovery, it cannot supply what the Supreme Court said is missing: a likelihood of success on the legal issues. Expanding the record does not change the legal basis for the Supreme Court's stay of identical injunctive relief in this same case. This Court granted the TRO based on Plaintiffs' declarations saying individuals felt they were stopped based on the four factors. ECF 87 at 34, 38-41. Defendants had limited evidence given the schedule. *Id.* at 12-14 (requiring the parties to fully brief Plaintiffs' TRO application within seven days of filing the operative complaint). Defendants did not seek a stay based on the record but on pure legal issues: whether Plaintiffs had standing for a prospective injunction under *Lyons* and whether reasonable suspicion permitted categorical restrictions on the use of the four factors. Stay Appl., *Noem v. Perdomo*,

No. 25A169 (U.S. Aug. 7, 2025). The Supreme Court agreed that Defendants are likely to succeed on the merits, and facts in the record, or which Plaintiffs seek a fishing expedition to obtain, have not and cannot change that conclusion. Perdomo, 2025 WL 2585637, at *1. Even if the requested discovery shows that the stops relied solely on the four factors at issue, that would not allow for an injunction under *Lyons* or change the fact that reasonable suspicion can rest on those factors as recognized by the Supreme Court. *Id.* Here, the Supreme Court's stay and pending appeal foreclose a renewed PI and any related discovery.

### B.    The Court Should Not Reward Plaintiffs' Delay and Gamesmanship

Plaintiffs' own litigation choices foreclose their claim of urgency. Plaintiffs had an opportunity to prove their case but have not, as they implicitly admit having the burden of proof but only now concede that they need more evidence to support their PI request. Mot. 2. Plaintiffs obtained a TRO based on declarations and media accounts. *E.g.*, TRO at 37, 47. Defendants, constrained by timing, opposed on the law. ECF 71. Plaintiffs then pursued a PI on more of the same evidence. ECF 127, 128. This included a supplemental PI with more of the same type of evidence. ECF 163, 164. And they maintained they had sufficient evidence to justify another PI based on that evidence. ECF 163 at 2 (claiming "[t]his evidence shows that Defendants' recent operations follow the same unlawful pattern" previously challenged in their first TRO application). At most, Plaintiffs sought (but were rightfully denied) discovery on compliance, never on the merits. ECF 175. Yet only after the Supreme Court stayed the TRO and after Defendants provided record evidence—two months after the TRO—did Plaintiffs pivot to demand expedited discovery on the merits.

If Plaintiffs believed the evidence they now seek was so important, they would have pursued discovery sooner. Instead, through their last discovery request, which this Court promptly rejected in light of the Supreme Court's stay, Plaintiffs only sought evidence as to ongoing compliance with the TRO, not on the propriety of the stops or training as they now seek to obtain via discovery. This Court has no reason to change its prior ruling. Doing so would invite a fourth round of briefing on the same issues and incentivize further gamesmanship from Plaintiffs. That is inefficient and highly prejudicial to Defendants.

Given Plaintiffs' repeated attempts at a "do-over" of the now-stayed Fourth Amendment TRO, Plaintiffs' renewed push for discovery is built on the same shaky foundation as their previously-rejected request. The Supreme Court's stay remains firmly in place and Defendants' appeal is still pending before

the Ninth Circuit; thus, this Court's concerns about judicial economy are still a reality. Courts consistently—and sensibly—deny expedited requests when the movant cannot bother to show anything materially different from what was considered before. *See, e.g., Nguyen v. Boeing Co.*, 2016 WL 2855357, at *7-8 (W.D. Wash. May 16, 2016) (denying expedited requests where the movant largely repeats previously presented factual allegations without showing good cause or any materially different circumstances). Federal courts have broad discretion in managing discovery, but that discretion must be exercised consistently with principles of judicial economy and fairness to all parties. *See Am. LegalNet, Inc.*, 673 F.Supp.2d at 1066; *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). Hence, Plaintiffs' attempt to circumvent this Court's prior ruling should be rejected. Having chosen to proceed on declarations alone and to forego merits discovery earlier, Plaintiffs cannot demand a one-sided do-over now. And tellingly, Plaintiffs do not seek expedited discovery on their Fifth Amendment claims, where an injunction remains in effect.

### C. Discovery is Unwarranted and Unduly Burdensome

Plaintiffs' proposals bear no resemblance to the narrow-expedited discovery courts sometimes allow at the PI stage. *See, e.g., AFL-CIO v. DOL*, 349 F.R.D. 243, 250-52 (D.D.C. 2025) (permitting two interrogatories with limited subparts, seven document requests tied to materials cited in agency declarations, and four time-limited depositions, while striking other requests as overbroad). Even regular discovery must be limited to nonprivileged matters that are relevant and proportional to the needs of the case, taking into account factors such as importance of the proposed discovery to resolving disputed issues and whether the burden or expense of production outweighs its likely benefits. *Jones v. Riot Hosp. Group LLC*, 95 F.4th 730, 738-39 (9th Cir. 2024). Courts also must limit discovery that is unreasonably cumulative, duplicative, or obtainable from a more convenient, less burdensome source. Fed. R. Civ. P. 26(b)(2)(C). These requirements collectively emphasize that discovery must be narrowly tailored and practical, not sweeping or premature.

Here, the sweeping nature of the proposed expedited discovery requests would impose a significant burden on Defendants that would be wholly disproportionate to the specific relief that Plaintiffs seek. *See* Fed. R. Civ. P. 26(b)(1). Plaintiffs' request is "limited" in name only. Indeed, the breadth and scope of Plaintiffs' discovery request, consisting of written discovery, document productions,

DEFENDANTS' OPPOSITION TO EXPEDITED DISCOVERY

and depositions, asks for much more information than needed to address their stated basis for discovery. Mot. 7-10. Courts deny or sharply prune expedited discovery that functions as a merits-level audit rather than incident- or declaration-specific issues tied to preliminary relief. *See Hum. Rts. Watch*, 2015 WL 13648069, at *2-3 (denying expedition given breadth, purpose, and burden); *Missouri v. Biden*, 2022 WL 40686539, at *6-8 (W.D. La. Sept. 6, 2022) (limiting discovery to identified officials and topics; denying agency-wide and "all personnel" demands).

This discovery request is overbroad and burdensome for Defendants to produce under such a compressed timeline for a myriad of reasons. First, written and document discovery requested on topics such as training, factors beyond the four enumerated factors, and "mechanisms for monitoring agents' and officers' conduct in relation to their training" is not tethered to the prior TRO or renewed PI motion and risks sprawling agency-wide inquiries. Mot. 12-13; *see Am. LegalNet*, 673 F.Supp. 2d at 1066. ("expedited discovery is not automatically granted merely because a party seeks a preliminary injunction."). Additionally, Plaintiffs' request (Mot. 13) for "documents from operations to better understand the role of 'intelligence' in those operations" is wholly inappropriate, as revealing "the confidentiality of sources" would implicate law enforcement privilege. *Campos v. City of Fullerton*, 2025 U.S. Dist. LEXIS 170821, at *16-17 (C.D. Cal. July 17, 2025) (recognizing this privilege aims "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation[.]").

Plaintiffs contend that they seek the materials Defendants themselves invoked: trainings, intelligence, and other operational materials without substantiation. Mot. 4-6. That misstates the record and overlooks why those categories cannot be produced on a two-week clock. Defendants identified trainings and resources to demonstrate that agents are instructed on the governing legal standards, including the Ninth Circuit's own articulation of reasonable suspicion and this Court's TRO. *E.g.*, ECF 170 at 2; ECF 178 at 2-3. But producing the underlying materials is not as simple as pressing "send." Training and intelligence materials interweave tactics, sources, and privileges; separating them requires weeks of review. Moss Decl. ¶¶11-12. That is precisely why the Rules contemplate addressing such materials in the ordinary course of discovery, not on an artificially compressed timeline. *See Hum. Rts.*

DEFENDANTS' OPPOSITION TO EXPEDITED DISCOVERY
9

*Watch*, 2015 WL 13648069, at \*3. Plaintiffs' suggestion that the Court should compel wholesale production on their schedule ignores both the sensitivity and the volume of these materials.

Plaintiffs dismiss the declarations Defendants submitted as "secondhand accounts" unsupported by records. Mot. 5-6. In fact, the declarants summarized information compiled from line personnel and operational files in the manner agencies routinely provide at the preliminary-injunction stage. Plaintiffs' insistence on contemporaneous stop-level records—notes, videos, or body-worn camera footage—as well as other expansive requests, including for example, "any kind" of text messages from or to identified persons in response to Plaintiffs' interrogatories, ECF 211-1 at 7, only underscores the volume and sensitivity of what they seek. *See* Fed. R. Civ. P. 26(b)(1); *Milbeck v. TrueCar, Inc.*, 2019 WL 4570017, at \*3 (C.D. Cal. May 2, 2019) (rejecting request for all text messages as disproportionate to needs of case given burden, limited discovery window, and lack of showing of importance). Gathering such materials requires coordination across field offices, retrieval from evidence systems, and privilege and Privacy Act review. Moss Decl. ¶13. Plaintiffs' motion treats these steps as costless; they are not. These categories, by their nature, require the structured process of ordinary discovery with appropriate protections, not hurried production under an artificial deadline unsupported by the current procedural posture of the case or other good cause. Moss Decl. ¶6-12. That is why, when courts have allowed any agency discovery at this stage, they confine it to narrowly enumerated, time-boxed topics. *AFL-CIO*, 349 F.R.D. at 251-52.

Second, Plaintiffs seek the Court to marshal Defendants' limited resources and make them produce written discovery within 10 days of service and production of "responsive, non-privileged documents to be made within 14 days of service of a request for production." Mot. 9. This expedited timeframe is not only burdensome, but also unrealistic. Discovery requires agency review of materials to determine the extent of redactions required and whether privilege applies to the requested information. Moss Decl. ¶¶6-12. Mandating responses to 10 days for written discovery or 14 days for production from date of service is woefully insufficient. Moss Decl. ¶¶5-6. For example, ESI searches by agencies can take weeks to perform, especially if the agency must collect text messages from multiple agents. Moss Decl. ¶¶6, 15. Agencies must image devices and pull data from secure systems, implement retention measures, and train document reviewers. Moss Decl. ¶¶6, 13-15. The resulting data must be deduplicated, batched, and reviewed line by line for relevance, privilege, Privacy Act restrictions, and law-enforcement

DEFENDANTS' OPPOSITION TO EXPEDITED DISCOVERY

sensitivity. Moss Decl. ¶¶6-7; *see* 5 U.S.C. § 552a(b). Every step takes time, and for good reason: rushing risks disclosure of protected information and invites unnecessary disputes. Moss Decl. ¶¶6-9. Search results then undergo agency review for required redactions to protect personally identifiable information and privileged or sensitive materials. *Id*. The expectation that such large-scale ESI searches can be conducted, reviewed, and produced within Plaintiffs' proposed timeframe strains credulity, especially where their requests necessarily implicate operational, intelligence, and training materials subject to law-enforcement and attorney-client/work-product protections. Moss Decl. ¶¶6-12.

Even more limited discovery would be unrealistic on such a fast timeline. First, the parties must complete negotiations of and agree to a protective order—standard safeguards that are not optional and that routinely take weeks to complete even where the parties are aligned.[2] Moss Decl. ¶7. Despite the diligence of the parties to agree upon the terms of a protective order, that process remains ongoing. *Id*. The parties must also negotiate an ESI protocol to govern the scope, format, and metadata of production, followed by agreement on search terms, custodians, and date ranges. *Id*. Notably, while Defendants rejected Plaintiffs' premature attempts to convene a Rule 26(f) conference for full discovery given that Defendants have not responded to the operative complaints, at minimum, Plaintiffs should complete negotiation of a protective order which will provide parameters for these foundational issues with respect to their expedited discovery request. Moss Decl. ¶7; *see* ECF 179 at 4. Yet each of these negotiations requires extensive back-and-forth and careful calibration. Moss Decl. ¶7. Courts expect them to be deliberate precisely because they set the parameters for the entire discovery process and prevent later disputes. Plaintiffs' demand that they be collapsed into a matter of days is wholly at odds with Rule 26's sequencing and this Court's interest in orderly case management.

Plaintiffs' requests are also neither limited nor tailored to any preliminary issue and are therefore overbroad and disproportionate. In assessing good cause, courts consider scope and proportionality, and any expedited discovery "should be narrowly tailored to obtain information relevant to a preliminary

---

[2] In analogous expedited-discovery proceedings, the court in *Newsom v. Trump*, No. 25-CV-04870 (N.D. Cal.), extended the close of expedited discovery, *see* ECF 105, and—on that accelerated track—entered a protective order shortly thereafter, *see* ECF 114. That sequencing allowed the parties to exchange sensitive materials under appropriate safeguards within the expedited schedule, underscoring the practical necessity of resolving protective-order mechanics when setting (and, if needed, adjusting) compressed discovery deadlines. At a minimum, the Court should follow the same timeline here.

DEFENDANTS' OPPOSITION TO EXPEDITED DISCOVERY

11

injunction determination." *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc*., 213 F.R.D. 418, 420 (D. Colo. 2003); *see Am. LegalNet*, 673 F.Supp. 2d at 1069. As discussed above, Plaintiffs' discovery wish-list includes requests for production, interrogatories, and seven depositions. Mot. at 7-10. There is nothing limited about these requests, whereby Plaintiffs' counsel essentially attempts to undertake a large-scale audit of Defendants' immigration enforcement operations in the Central District of California. *See Am. LegalNet*, 673 F.Supp. 2d at 1067. In fact, Plaintiffs' requested "audit" demands production from before, during, and after the TRO was issued, which would expand—not cabin—the record while appellate jurisdiction over the challenged injunctive relief remains in place. *See generally* ECF 211-1. This type of search is akin to a dragnet that will encroach upon law enforcement sensitive/privileged discussions outside of the scope of the TRO and not subject to disclosure. And Plaintiffs' attempt to compel incident-by-incident "reasonable suspicion" proof on an accelerated schedule would also invert the burden at the PI stage; it is Plaintiffs who must make a "clear showing" of likely success; expedited discovery cannot be used to force Defendants to prove reasonable suspicion stop-by-stop now. *See Winter v. NRDC*, 555 U.S. 7, 20 (2008).

Plaintiffs demand that seven depositions, including one Rule 30(b)(6) deposition, be noticed and completed within a rigid 14-day timeframe is also unduly burdensome and disproportionate.[3] Mot. at 9. This is not narrow or limited, as it is only three depositions less than the default for normal discovery. And preparing witnesses, particularly a Rule 30(b)(6) witness, necessitates comprehensive preparation involving review of extensive documents and internal coordination, requiring significantly more time than the tight 14-day window permits. Moss Decl. ¶17. Preparing six more witnesses on that schedule diverts personnel from regular duties and impedes effective preparation. Moss Decl. ¶17. Courts routinely hold that deposition scheduling and discovery generally must be conducted in a manner consistent with the proportionality factors, including the burden on parties and witnesses, the importance of discovery, and the resources available, ensuring discovery is not oppressive or disruptive. *See* Fed. R. Civ. P. 26(b)(1) advisory committee notes; Fed. R. Civ. P. 30; *MicroTechnologies, LLC v. Autonomy, Inc.*, 2016

---

[3] Plaintiffs' "seven" depositions are illusory and only further prove the expansive scope of their discovery request: their ask to depose the six initiating agents/officers and those who informed Defendants' declarations (Mot. 9) spans at least twelve cited stops—i.e., at least twelve fact-witness depositions for those stops, plus any declarant-informants—ballooning well beyond seven and past Rule 30's default limits.

DEFENDANTS' OPPOSITION TO EXPEDITED DISCOVERY

12

WL 1273266 (N.D. Cal. Mar. 14, 2016) (courts weigh proportionality factors individually). Even where early depositions are permitted, courts keep them few and focused, sequencing them after documents and excluding tangential subjects. *See Citizens for Responsibility & Ethics in Washington v. DOGE*, 349 F.R.D. 1, 8 (D.D.C. 2025) (allowing 30(b)(6) and one employee deposition; denying third witness and record-keeping topics; sequencing depositions post-production).

Plaintiffs also seek to depose six other "agent/officer" depositions. Mot. 2. However, depositions of operational personnel before the Rule 26(f) conference are disruptive, burdensome, and inappropriate. Plaintiffs seek to compel expedited discovery in the hopes of obtaining evidence that corroborates their allegations for identical injunctive relief. Plaintiffs' purported evidence, consisting of inadmissible, self-serving videos and anecdotes, should not serve to justify depositions on an expedited basis. Accordingly, the Court should deny Plaintiffs' request for depositions, as depositions of field personnel before a Rule 26(f) conference are especially disruptive in an active enforcement context and unjustified on this record.

Plaintiffs make these requests for discovery far in advance of when they would otherwise be entitled to discovery under the Rules. Defendants have not yet responded to the Complaint, nor has the Court ordered a scheduling conference. As Defendants will imminently file motions to dismiss, Plaintiffs are not entitled to discovery until the Court has determined that they have stated a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *Rutman Wine Co.*, 829 F.2d at 738. Therefore, Plaintiffs have not demonstrated good cause, and an exception should not be made for this Motion.

Taken together, the breadth, temporal sweep, deposition load, and dual-track inefficiency confirm that Plaintiffs' request is neither narrowly tailored nor proportional to any preliminary issue. Accordingly, given this appellate posture, expedited discovery would impose substantial, unjustified burdens and such requests should be denied.

### D.    No Good Cause Exists

Plaintiffs cannot carry their good-cause burden—especially with a stayed injunction and threshold issues on appeal. *See Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008). Nor do Plaintiffs identify any concrete spoliation risk. Courts decline intrusive or accelerated discovery absent a specific showing of likely evidence loss. *See U.S. Bank Nat'l Ass'n v. Parker*, 2010 WL 559135, at *2

(E.D. Mo. Feb. 10, 2010) (denying expedited forensic inspection where no spoliation showing). Defendants' litigation holds eliminate any such concern here. *See* Moss Decl. ¶19.

Where potential prejudice can be mitigated short of full discovery, courts withhold expedited or broad discovery and rely on targeted measures. Such calibrated measures—rather than compressed custodial ESI—are the proper course here. The Rule 26(f) planning process and Rule 37(e) supply adequate safeguards against prejudice from any loss of information. Plaintiffs' premise—that only immediate, burdensome discovery will protect evidence—would convert "expedition" into the default in every preliminary-injunction case, which is not the law. *See Mechanix Wear LLC v. Branson*, 2024 WL 2846068, at *6 (C.D. Cal. Apr. 23, 2024) (expedited discovery requests must be narrowly tailored and supported by a clear showing of urgency; an overly broad scope coupled with tight deadlines imposes undue burden and justifies denial). And while Plaintiffs imply Defendants stonewalled proceedings by resisting a Rule 26(f) conference (Mot. 15), the record shows the opposite. Plaintiffs rushed to request expedited discovery—despite even this Court's determination that it would be "premature" given this case's "current procedural posture," ECF 181 at 2—before completing negotiation of the protective order which encompasses foundational topics that must be settled before any discovery may proceed. Nor is discovery appropriate absent a resolved Rule 12 motion. *Rutman Wine Co.*, 829 F.2d at 738. Their refusal to engage with prerequisites underscores the absence of good cause: they seek to collapse months of process into days and shift the burden of proof to Defendants and the burden of disputes to the Court.

Plaintiffs also suggest that because Defendants do not create certain records for non-investigative encounters, the Court should order broad discovery now. That flips the burden: speculation that more documents exist cannot establish good cause. Even if this Court could entertain this expedited request, which it may not, Plaintiffs have not raised any issues regarding noncompliance, nor could they. *See* ECF 175. Plaintiffs make baseless claims that "Defendants have resumed their policy and practice of conducting investigative stops without reasonable suspicion and based solely on broad demographic profiles." *Id*. at 14. However, their supporting declarations and news articles are a far cry from demonstrating noncompliance with the now stayed TRO. *See*, *e.g., id*. at 4-11, 14-16. Plaintiffs' counsels' self-serving, unsupported assertions are not entitled to evidentiary weight and should be rejected. *See INS v. Phinpathya*, 464 U.S. 183, 188 n.6 (1984). And even so, the Supreme Court made clear that Defendants

DEFENDANTS' OPPOSITION TO EXPEDITED DISCOVERY

14

are allowed to continue operations pending appeal. *See Perdomo*, 2025 WL 2585637, at *1. Compliance with a stayed injunction—especially where jurisdictional defects likely prevent judicial review in the first place—is not a basis for expedited discovery to seek a new injunction.

Using discovery as part of a renewed PI motion—essentially resulting in supervision of identical, stayed relief—would invert separation-of-powers principles the Supreme Court emphasized in its stay order. Plaintiffs' request for expedited discovery is, at its core, a veiled challenge to the Executive Branch's authority to set enforcement priorities, particularly in immigration matters. Their arguments are designed to improperly recruit judicial intervention to constrain the government's ability to carry out enforcement actions that the Supreme Court said is permitted. *Perdomo*, 2025 WL 2585637, at *4 (Kavanaugh, J. concurring). Plaintiffs' approach to employ expedited discovery seeks to transform a routine exercise into a matter for judicial oversight over immigration enforcement in the Central District of California. However, the Supreme Court in *United States v. Texas*, 599 U.S. 670 (2023), reaffirmed that the Executive Branch possesses broad discretion in determining how to prioritize enforcement efforts. The Court emphasized that judicial intervention is limited because the Executive must balance resource constraints with public safety concerns. *Id*. at 680. Indeed, the Supreme Court stated that courts are hard pressed to order the Executive to take more enforcement action (and by the same token, less immigration action), underscoring the constitutional separation of powers and the Executive's primacy in enforcement decisions. *Id*. at 680-81, 686. Hence, this Court should resist Plaintiffs' invitation to delve into the Executive Branch's enforcement priorities through discovery, as doing so would intrude upon core Executive functions and disrupt the balanced discretion recognized by the Supreme Court.

There is simply no cause for Plaintiffs to proceed with expedited discovery on a now unenforceable TRO, let alone in support of an identical, renewed PI motion. *See, e.g.*, *Rovio Ent. Ltd. v. Royal Plush Toys, Inc.*, 907 F.Supp. 2d 1086, 1099-100 (N.D. Cal. 2012). Because Plaintiffs identify neither a lawful purpose for expedition nor narrowly tailored, minimally sufficient requests, the good-cause showing cannot be met.

### E. If Discovery Proceeds, It Must Be Symmetrical and on a Practical Timeline

If the Court authorizes any discovery despite the stay, it must be reciprocal, focused, and feasible. Discovery must be reciprocal; Plaintiffs cannot demand a one-sided do-over. *E.g.*, *Pac. Coast Fed'n v.*

DEFENDANTS' OPPOSITION TO EXPEDITED DISCOVERY

15

*Glaser*, 2020 WL 1685832, at *2 (E.D. Cal. Apr. 7, 2020); *Stewart Title v. Credit Suisse*, 2015 WL 1481341, at *2 (D. Idaho Mar. 31, 2015). Plaintiffs feign ignorance on how reciprocal discovery could be relevant or beneficial and argue Defendants must show good cause. Mot. 18-19. Yet, Plaintiffs have the burden of demonstrating the need for injunctive relief. And Plaintiffs relied on declarants—including named Plaintiffs and organizational members—to satisfy their burden for standing and merits for an injunction against allegedly investigative stops. *See* ECF 80 at 2-3; 128 at 16-17. These declarations were the basis of this Court's TRO (37-41), Plaintiffs' request for injunctive relief (ECF 128-1 through 12), and their reply in support of injunctive relief rebutting Defendants' evidence (ECF 163). And Plaintiffs claim the factual disputes between their declarants and Defendants' justify discovery. Mot. 1-2. If this Court deems discovery necessary despite the jurisdictional issues on appeal, Defendants must have the opportunity to test the credibility and stories presented by Plaintiffs' key sources of evidence. Defendants would be entitled to narrowly tailored depositions of those declarants addressing what actually occurred, the basis for their perceptions, and whether any encounters were consensual or supported by additional factors. As such, the Court should also order that, as part of discovery into those encounters, Plaintiffs must unconditionally provide the full names and identifying information of the individuals on whom they intend to rely. Limited document requests may accompany those depositions solely to test the specific incidents relied upon. Plaintiffs also invoke organizational standing based on alleged harms to membership. ECF 128-13 at 5. Therefore, limited discovery should be permitted as to membership criteria, claimed impairments, and the causal link to the challenged conduct.

Any discovery should also proceed on a realistic timetable so both sides can identify custodians, search terms, and privilege issues without compromising privacy or privilege sensitivities. As such, in addition to awaiting entry of a protective order, the Court should allow the parties to meet and confer to negotiate a reasonable, workable discovery schedule to be submitted to the Court for approval.

Alternatively, the Court should set a reasonable timeline as outlined below. Plaintiffs ask the Court to compel "immediate" discovery on an extremely compressed clock—written responses in 10 days, document production in 14 days, and all depositions noticed and completed within 14 days. Mot. at 14, 17-18. That schedule is infeasible for federal agencies that must collect, review, and produce materials across multiple components and systems while protecting law-enforcement sensitivities and

DEFENDANTS' OPPOSITION TO EXPEDITED DISCOVERY

16

privileges. Courts that have allowed any expedition against federal agencies adopt measured schedules that minimize burden and sequence discovery. *See Alliance for Retired Americans v. Bessent*, 2025 WL 1114350, at *6-7 (D.D.C. Mar. 20, 2025) (granting narrow expedited discovery limited to written responses from a discrete document set and emphasizing minimal burden); *CREW v. DOGE*, No. 1:25-cv-00511-CRC (D.D.C. Apr. 15, 2025) (documents first, then only two depositions; rejecting tangential topics). If any discovery proceeds, it should be reciprocal and practical and triggered only upon (a) entry of a protective order and (b) adoption of an ESI protocol. Defendants propose:

(i)    30 days for written responses and objections running from entry of a protective order and an ESI protocol;

(ii)    rolling document production beginning at day 30 with substantial completion by day 60, followed by a privilege log 14 days later;

(iii)    depositions—including any Rule 30(b)(6)—only after substantial completion of production, to be taken within 60-90 days, with at least 14 business days' notice per witness and priority to Plaintiffs' declarants;

(iv)    any interrogatories and depositions authorized—including any Rule 30(b)(6) deposition—shall be counted against Plaintiffs' presumptive case-wide limits under Rules 33(a)(1) (25 interrogatories per party) and 30(a)(2)(A)(i) (10 depositions per side);

(v)    a prompt meet and confer within 10 days of the Court's order to identify custodians, search terms, and reasonable deposition caps and sequencing

This timeline is necessary because agency ESI collection requires tech support to image devices and pull data from secure systems; search-term calibration and deduplication; and line-by-line review for personally identifiable information, Privacy Act material, and law-enforcement sensitive content, as well as attorney-client, work-product, deliberative-process, and law-enforcement privileges. It also allows time to coordinate Touhy compliance and witness availability for agents and supervisors with operational duties, to translate non-English materials where needed, and to ensure appropriate redactions and privilege logs. Plaintiffs' proposed timeline (10 days for written responses, 14 for production, 14 for depositions) would short-circuit these mandatory steps, risk disclosure of protected information, and

DEFENDANTS' OPPOSITION TO EXPEDITED DISCOVERY

divert personnel from ongoing enforcement operations; Defendants' schedule preserves parity and feasibility without compromising legitimate agency and public-safety interests.

Only after this reasonable approach should anything more even be entertained in accordance with L.R. 37. No custodial ESI or depositions should proceed on an expedited clock; any further discovery should follow normal Rule 26 sequencing after the appeal.

## V.    CONCLUSION

The Court should deny the motion.

Dated: September 29, 2025                    Respectfully submitted,


                                             BRETT A. SHUMATE
                                             Assistant Attorney General
                                             Civil Division

                                             DREW C. ENSIGN
                                             Deputy Assistant Attorney General

                                             TIBERIUS DAVIS
                                             SEAN SKEDZIELEWSKI
                                             Counsel to the Assistant Attorney General

                                             JONATHAN K. ROSS
                                             Senior Litigation Counsel

                                             STEPHANIE L. GROFF
                                             JASON K. ZUBATA
                                             ANIELLO DESIMONE
                                             Trial Attorneys

                                             */s/ Jacob A. Bashyrov*
                                             JACOB A. BASHYROV
                                             Trial Attorney
                                             Office of Immigration Litigation
                                             U.S. Department of Justice
                                             P.O. Box 878, Ben Franklin Station
                                             Washington, D.C. 20044
                                             Tel: (202) 598-0919
                                             Email: Jacob.Bashyrov@usdoj.gov

                                             *Counsel for Defendants*

DEFENDANTS' OPPOSITION TO EXPEDITED DISCOVERY

18

# L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies that this filing is 6,981 words, which complies with L.R. 11-6.1 and this Court's Standing Order, Part VIII.C.

Dated: September 29, 2025                    Respectfully submitted,

                                             */s/ Jacob A. Bashyrov*
                                             JACOB A. BASHYROV
                                             Trial Attorney
                                             Office of Immigration Litigation
                                             U.S. Department of Justice

                                             *Counsel for Defendants*