# EXHIBIT 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(WESTERN DIVISION - LOS ANGELES)

PEDRO VASQUEZ PERDOMO, ET AL, ) CASE NO: 2:25-cv-05605-MEMF-SPx
                                     )
               Plaintiffs,     )             CIVIL
                                       )
    vs.                        )     Riverside, California
                                       )
KRISTI NOEM, ET AL,         )    Tuesday, December 2, 2025
                                       )
              Defendants.    )    (10:38 a.m. to 11:28 a.m.)

TELEPHONIC STATUS CONFERENCE VIA ZOOM

BEFORE THE HONORABLE SHERI PYM,
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:                See page 2

Court Reporter:            Recorded; CourtSmart

Courtroom Deputy:        Kimberly I. Carter

Transcribed by:           Exceptional Reporting Services, Inc.
                               P.O. Box 8365
                               Corpus Christi, TX 78468
                               361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

EXCEPTIONAL REPORTING SERVICES, INC

2

**APPEARANCES:**

For Plaintiffs:              SARA H. WORTH, ESQ.
                             JACOB S. KREILKAMP, ESQ.
                             Munger Tolles & Olson
                             350 S. Grand Ave.
                             50th Floor
                             Los Angeles, CA 90071
                             213-683-9129

For Defendants:              JONATHAN K. ROSS, ESQ.
                             U.S. Department of Justice, Civ. Div.
                             Office of Immigration Litigation
                             P.O. Box 878
                             Ben Franklin Station
                             Washington, DC 20044
                             202-305-7662

For Intervenors:             VIRGINIA G. DAVIS FISHER, ESQ.
                             Munger Tolles & Olson
                             560 Mission Street
                             27th Floor
                             San Francisco, CA 94105
                             415-512-4083

                             WENDY Q. XIAO, ESQ..
                             Munger Tolles & Olson
                             350 S. Grand Ave.
                             50th Floor
                             Los Angeles, CA 90071
                             213-687-3702

3

**Riverside, California; Tuesday, December 2, 2025; 10:38 a.m.**

**(Call to order)**

THE COURT:  Good morning to everyone.  This is Magistrate Judge Sheri Pym on the line now.

And I think you heard from Ms. Carter that she's having some technical issue, that I don't think anybody can hear her.

So I would ask if counsel could please introduce themselves for the record.  And we can start with Plaintiffs.

MS. WORTH:  Good morning, Your Honor.  This is Sara Worth from Munger, Tolles, and Olson appearing for the Plaintiffs.

MR. KREILKAMP:  And this is Jacob Kreilkamp from Munger, Tolles, and Olson for the Plaintiffs.  Good morning.

THE COURT:  Good morning.  And then from -- let's see, from Intervenors.

MX. XIAO:  Good morning, Your Honor.  This is Wendy Xiao on behalf of Intervenors.

MS. FISHER:  Morning, Your Honor.  Grace Davis Fisher at Munger, Tolles, also on behalf of Intervenors.

THE COURT:  Good morning.  And then from Defendants.

MR. ROSS:  Good morning, Judge Pym.  Jonathan Ross for the United States.

THE COURT:  Good morning.  All right.  So we have another status call here.  And the -- you know, I don't know

4

what all you want to talk about, but I think a couple of issues that I just wanted to talk about were whether Defendants were able to complete the production of the body camera footage on Friday, and then where things stand with the drone video footage.

So let me ask, Mr. Ross, if you could address that first.

**MR. ROSS:**  Yes, Your Honor.  Thank you.

Defendants produced the body cam footage on time to Plaintiffs and Intervenors.  We were able to make that production on November 26th.

And we also served the privilege log associated with that production yesterday, on December 1st.

With regard to what we've previously been referring to as the drone footage, which it's recently become impressed upon me that it's more accurately described as a SUAS, a small, unmanned aerial device, that is relevant to the operations that are subject of this litigation, the -- that information -- those videos were delivered to DOJ just a short while ago, earlier today.

And so we're going to begin our review of that footage as quickly as we can.

**THE COURT:**  Okay.  Do you have an estimate yet for when you'll be able to produce that?

**MR. ROSS:**  Unfortunately, Your Honor, I do not simply

5

because the -- I don't know how many videos were produced and how long they are.

But we would just ask for a reasonable time to be able to review those videos -- I understand there are multiple videos -- and to produce from Plaintiff. We of course --

THE COURT: (Indiscernible)

MR. ROSS: -- would understand that there is -- I'm sorry, Your Honor.

THE COURT: No, no, go ahead, please.

MR. ROSS: We understand that time is of the essence. And we can commit to doing that review as expeditiously as possible. It's just difficult to commit to a time without knowing the scope or volume of what it is we'll be reviewing.

THE COURT: Okay. All right. And is there anything else, Mr. Ross, while you're speaking that you wanted to raise at this time?

MR. ROSS: No, Your Honor, but thank you.

THE COURT: All right. Thank you.

Ms. Worth, did you wish to be heard?

MS. WORTH: Yes, Your Honor.

On the footage issue, three things, Your Honor. Number one, we got some body camera footage last week but we did not get all of the body camera footage last week.

The -- we received some footage for some of the officers who were present at some of the raids that were

EXCEPTIONAL REPORTING SERVICES, INC

6

included in our RFP two.  But we know that we did not receive all of it.  And we know that for two reasons.

First, the documents say so.  So for the raid on Yank Towing (phonetic) on June 12th, the documents say that a Border Patrol agent named -- well, I won't say the name, a certain Border Patrol agent has body-worn camera footage.  And we don't have any body-worn camera footage from that person.

An ESTAR incident report actually lists three serial numbers for body cameras for that incident, and we only have one body camera footage in the production.

In addition to that, there are three raids in RFP two where the Government did not produce any footage at  all.  And, in fact, they haven't produced any responsive documents or other materials in discovery because their position is that they don't need to.

And by way of background, in our expedited discovery motion, we had told Judge Frimpong that we wanted to identify three raids that were more recent because the raids are ongoing.

So the raids were not identified by name or date in the RFPs that we submitted to the Court.  But we did have placeholders for those raids in the RFPs that we submitted to the Court for her consideration.  And we told the judge in the motion that we wanted to identify them at a later date.

And of course Judge Frimpong granted the expedited

discovery motion and granted -- you know, ordered that Defendants respond to those RFPs as written. And we served the RFPs and we identified those three raids when we served the RFPs.

And Defendants have taken the position that those three raids are outside of the scope of expedited discovery and that they don't need to produce any responsive documents. And that includes the body-worn camera footage.

In addition to those scope issues that I've identified about the footage that we received last week, the footage that we did receive was edited. It was altered before it was produced.

And this came up during the last status conference. And in fact when we received the footage, we could see that it had been edited. Some audio is missing.

And, additionally, the visual footage has been cut so that the videos generally speaking begin when an officer is getting out of their vehicle and approaching a subject to detain them.

And so what's missing is everything that happened before the moment of the encounter. So what's missing is the -- any discussion that took place for why the officers were going to approach that person, which is of course, you know, the reason for the detentions, that's the central issue in the preliminary injunction proceeding is whether the stops were

justified by adequate reasoning.

So we believe that those redactions for those alterations of the footage are improper.

So in summary, Your Honor, we received some edited body-worn camera footage last week for some of the raids in RFP two.  We did not receive all of it.

And of course Your Honor has just heard that we did not receive any drone footage.  And counsel has unfortunately not begun even reviewing that drone footage now more than a week after the production deadline.  So that's where we are.

**THE COURT:**  All right.  Thank you.

Mr. Ross, did you wish to respond?

**MR. ROSS:**  Yes, please, Your Honor, briefly, because I think there's a lot to unpack there.  And I would like the opportunity to address those topics.

But I think first it's important to -- that Defendant share this is the first that we are hearing these concerns from Plaintiff.

They -- we had a meet-and-confer as recently as yesterday and they did not bring these concerns to our attention.  And had they, of course we would have looked into it, as has been our position throughout discovery.

What the Government produces is what the Government said it was going to produce.  We collected during the -- during discovery we collected nine body camera files, nine

9

files of bodycam footage.  And we produced those nine files.

And we were transparent from the beginning with this Court and with Plaintiffs even before we started engaging in discovery conferences that there was privileged material in these files and that we planned on producing those files consistent with redactions and privileges.

And as I said earlier, we served a privilege log just last night.  And so to the extent that Plaintiffs' had an opportunity to review that, I -- the Government would contend that raising it here and now for the first time is slightly premature.

But, nonetheless, we will certainly go back to the client agencies and inquire as to if there's any other materials that could be available, separate from the unmanned aerial device footage.

But my colleague also raised three other issues which we can take up now if the Court would indulge Defendants.  We just await your direction.

**THE COURT:**  That's fine.  Let me give you a chance to address that.

But I will just say, I mean, at the call last week, it was understood that what was going to be produced by Friday was essentially I think we were kind of calling it the middle portion or whatever of the body-worn camera footage, the stuff that, you know, was clearly not privileged.

But it seems that now from what I'm hearing that you've made sort of a privilege call.  And that's I guess what I'm having a little hard time understanding is I understand that there has been some concern about, you know, operational plans being shared and that sort of thing, which I at least sort of understand the claim there.

But it's -- it seems that sort of the discussions that would be leading up to this would be -- I mean, you'd be sort of past the operational plan stage and there'd be relevant discussions by officers about what they're seeing and so forth.

So I'm a little confused about how I guess aggressively the video seems to have been edited from what I'm hearing.

**MR. ROSS:**  Understood, Your Honor.  And Defendants would like the opportunity to meet and confer with Plaintiffs to further understand their precise concerns.

And we can address them individually, particularly if they could point Defendants to which videos they believe were affected because that's -- it's (inaudible) consistent with our understanding.  And we're happy to take this back and investigate further.

**THE COURT:**  Okay.  All right.  Well, yeah, I certainly do think the parties need to meet and confer about that.  So -- but if you wanted to -- I sort of cut you off, Mr. Ross, so if you want to continue just addressing the other

points.

MR. ROSS:  Thank you, Your Honor.  And we appreciate that.  We're happy to engage with the Couret if that's a concern.

But, again, because the parties haven't met and conferred about it, we would propose tabling the other items for now.

MS. WORTH:  Your --

THE COURT:  Okay.  Well, --

MR. ROSS:  (Inaudible) opportunity for us to --

MS. WORTH:  Your Honor, if I may, --

THE COURT:  Well, actually just for a moment, let me just ask one thing.

Mr. Ross, I understand that there are things that you need to meet and confer about, and it's tough to go through all the specifics here.

But I do have a question about this issue just with respect to this issue of not producing anything about one of the raids identified in the request because those had been -- that had been sort of a blank placeholder at the time that Judge Frimpong ordered the expedited discovery.

Are you able to address that point now, Mr. Ross?

MR. ROSS:  I am, Your Honor.

And I think that my friend on the other side has not fully -- has not fully described the Government's position on

12

this.  It's not that we are declining to engage in discovery or that we've put up any barriers or tried to restrict this.

I think that our position on why we weren't producing materials relevant to stops on September 22nd, 23rd, and 25th, we've been transparent with Plaintiffs why we believe that that's excluded.

And again it's not an issue that the parties have not completed developed through the meet-and-confer process.

But it's not that the -- that we oppose -- that Defendants oppose the placeholders themselves just by virtue of being placeholders.  It's the timing of those raids.

And it's specifically that preliminary injunction briefing closed on September 10th.  And the additional operations of the 15 they identified, the three that fall past that period of the preliminary briefing schedule are these three identified in RFP two, items "M" through "O."

It's Defendants' reading of Judge Frimpong's order that the Court granted discovery to probe the basis for the stops that the Government relied on in defending against the TRO and PI (phonetic).

So to the extent that Plaintiffs ask for and received the opportunity to request information on additional raids or additional operations, again, that's not in contention.

What's in contention is that the three additional operations that Plaintiffs identified fall outside of the

preliminary briefing window such that the Government could not have relied on them for opposing the TRO and the PI because those were not the basis of the TRO -- of our oppositions to the TRO and the PI.

Defendants believe that they were not what the Court instructed discovery to -- for the stated purpose of discovery, that they are -- they fall outside of that granting of that discovery grant.

**THE COURT:** All right. So, Ms. Worth, let me give you an opportunity to be heard now.

**MS. WORTH:** Thank you very much, Your Honor.

A few points in response to what's been said so far.

I do just want to be very clear that we have met and conferred and we have raised our concern about the scope of the Government's productions.

Those three raids that we identified that Mr. Ross is saying fall outside the scope of the preliminary injunction, we told Judge Frimpong we were going to include them. We moved on that ground.

We moved for discovery, and that included discovery about three additional raids from that time period. And Judge Frimpong granted the motion and the RFPs as written.

And I think what we're seeing is there's a pattern where the Government is sort of identifying an ambiguity in the order where none exists, and we're learning about it after the

discovery period has already closed.

So if they, you know, felt that the RFPs that were served were somehow wrong, I think they could have sought a protective order.  But they didn't.

And we -- so we have raised this issue.  And we don't think that it's appropriate for the Government to decide that raids that are included in the RFPs are outside of the scope of Judge Frimpong's order.

Second, we received the privilege log for the body camera footage last night, so after the last meet-and-confer.

And finally, you know, Your Honor ordered the Defendants to produce the body camera footage at our last status conference.

And so I don't think that it's sort of incumbent on Plaintiffs to always sort of point out when there's been a failure to abide the Court's order.

And of course we will continue to meet and confer with the Defendants.  But some of these issues are just -- they're not really ambiguous.

And the other --

**THE COURT:**  Well (inaudible) --

**MS. WORTH:**  -- point, Your Honor, I said in our -- oh, I'm sorry, Your Honor.

**THE COURT:**  (Inaudible) let me just ask you so I'm -- we're all on the same page here.  I mean, the -- what was

ordered was that the body camera footage that was going to be produced is the sort of clearly nonprivileged body camera footage had to be produced by Friday because Defendants were talking about the process they were going through to determine privileges, and they indicated they were going to be, you know, withholding certain things on the grounds of privilege.

So -- but are you saying now that there are -- is clearly nonprivileged video that hasn't been produced?

**MS. WORTH:**  I see, Your Honor.

Yes, there are sort of entire body camera files that we understand have not been produced.  And they're not on the privilege log that we received last night.

So our understanding is that they have been withheld. And that is what we observed last night when we received the privilege log and saw that the footage was not listed there.

So in addition to the fact that the Government has redacted everything leading up to the moment of the encounter, so including things far beyond operational planning or these things where Your Honor has acknowledged maybe there's an argument about privilege, but really those discussions when the raid is already happening, so they've redacted that material, which we would say is not privileged.

But there are also whole files of body camera footage that has not been produced.  Some of that footage is footage about these three raids that the parties have a dispute about.

And some of that footage is about raids that are -- that the Government doesn't even dispute are part of expedited discovery, like the Yank Towing raid.

So it's both, Your Honor, that it's over-redaction and the wholesale withholding of video apparently not even for privilege.

**THE COURT:** All right. Thank you.

So, Mr. Ross, let me ask you. I understand it sounds like the parties need to meet and confer further about these privilege issues now that the log's been produced. And that is something that may well have to be the subject of motion practice.

But I -- this issue -- you said that there were -- you had nine files and you produced those. But it sounds like there's clearly some, you know, whole instances of, you know, officers whose body camera footage hasn't been produced. So if you can respond as to that.

**MR. ROSS:** Yes, Your Honor. Thank you.

And I can share that there's been -- the Government hasn't withheld any of the videos for privilege.

Defendants understood that there were nine files of body camera that were collected. And, again, we shared that with Plaintiffs and the Court at the last status conference. And we indeed produced those nine files.

We're not aware -- you know, I'm immediately not

17

aware of any other files that Plaintiffs contend are missing or that appear to be withheld.  However, we understand their concerns and will certainly go back.

But I do know that the Government did a full search of its -- a full search in collecting the videos.  We identified nine videos and we produced all nine of them to Plaintiffs ahead, notably ahead of the deadline that was set by the Court.

And admittedly after the discovery cutoff in this case, but nonetheless before the timeframe that the Court set after that cutoff.

And so we had every intention and belief that we did produce everything that was relevant to Plaintiffs' concerns.

But we will certainly follow-up and see if anything could have been omitted.  But it's my understanding that it's not been, that everything that was produced is what we have.

**THE COURT:**  All right. Well, let me say this.  I mean, it sounds like the parties need to discuss the -- this issue of missing files from Plaintiffs' perspective.  And it sounds like there's really two issues.

One, there are just officers who from our (inaudible) agreed-upon raids that Plaintiffs believe that there are -- they should -- there should be body-worn camera footage for them, and there's not.  So that clearly needs to get sorted out.

18

This issue about the additional raids that Defendants believe are outside the discovery period, I would have to go back and, you know, look at the motion papers to see this issue.

But I'm -- I understand that -- my concern is this. When I'm hearing what Defendants are saying is that, well, the rationale behind the preliminary injunction discovery was looking at the -- essentially that what the -- what Defendants cited to as their reasons for opposing the motion, that that's what they should be doing discovery into.

But Plaintiffs are saying, well, no, in fact that what was requested was a little bit broader than that, and that the order allowed that.

You know, again, I would have to go look at the wording of the order.

But I would encourage both sides to go back, look at the papers, look at the order because it sounds to me -- again, this is -- if what Plaintiffs are saying is correct, then it sounds like Judge Frimpong did allow that discovery and that discovery should be produced.

But, again, I can't say that for certain without going back and looking at the order.

So I think both sides should take a look at both what was requested and what was actually ordered and meet and confer about that.  But otherwise that's something that, you know,

19

I -- is a matter that I could decide on a pretty expedited basis because it seems fairly simple.

And I guess I'm left with this question here now of where things stand on the motion that's already been filed. There is a motion to compel that was already filed by Plaintiffs.

Supplemental briefing was due today that was supposed to sort of reflect these further meet-and-confer discussions. And it sounds like some of that will have occurred.

But there's this sort of broader privilege issue. And so I guess what I'd like to hear from both sides is whether you need an extension of a day or something before filing the supplemental briefing, or if you think you're prepared at least as to the issues that were raised in the already filed motion to compel to go ahead and file your supplemental briefing on that today.

**MS. WORTH:**  Thank you, Your Honor.  This is Sara Worth for Plaintiffs.  Just two points, Your Honor.

And before I address your question about that dispute, Your Honor, with your indulgence, just on the point about further meeting and conferring about the -- both the scope issue and the redaction or withholding of body-worn camera footage, Your Honor, I do think -- I'm wondering if it would be helpful if agency counsel were present for the next meet-and-confer.

Sometimes we're seeing delays where we have questions that require the agencies to weigh in.  And we might be able to short-circuit some of that by meeting and conferring with the agency directly.

So I would just put that out there first as a suggestion for how we could move those disputes forward more efficiently.

As to the dispute over production one that's to be fully briefed by today, the parties did complete their meet-and-confer efforts yesterday and determined that they were indeed at an impasse, particularly with respect to the privilege.

I know Your Honor had asked the parties to take a hard look -- or told the Defendant to take a hard look at the privilege assertions over the trainings and guidance documents responsive to RFP one.

We understand that the Defendants have not changed their position on whether those documents are privileged or whether there's been a waiver of privilege.

The -- we did receive one training document that had already been -- an earlier version of it had already been produced publicly on the docket in another case.

The Government's position is that it is privileged but that they would moot that particular dispute for efficiency sake.

21

So the actual position substantively on the privilege has not changed.  And Plaintiffs are prepared to submit their supplemental brief on that issue today.

We did discuss yesterday however, Your Honor, that the dispute about the meta data that was provided on the privilege log, that has been mooted by the service of corrected logs.  So that is no longer a live dispute.  The parties agree on that.

We still of course contend that the substantive indication of privilege on the privilege logs is insufficient, and we will brief that.

But the log as a document, there's no longer a dispute about whether the log itself is in an accessible format as far as Plaintiffs are concerned.

The other remaining aspect of that dispute, Your Honor, was about the scope of production.  And so we are prepared to file our brief today.  And I don't think that more time will be of any assistance.

THE COURT:  All right.  Thank you.

Mr. Ross.

MR. ROSS:  Thank you, Your Honor.

The parties did meet and confer yesterday, and it's our understanding that many of these issues have mooted out perhaps more so than Plaintiffs (inaudible) however we do think that there would be a benefit for allowing even extension of 24

hours to file the supplemental memoranda just so that the parties can truly understand what is still in dispute.

From my understanding -- and I'll certainly coordinate with my colleagues, but I just want to ensure that what Plaintiffs have acknowledged is mooted lines up with what our understanding was when we ended the call yesterday, which I think there may be a slight nuance there that we would like to explore further.

But in terms of -- so I think the Court would actually benefit from having a more targeted response to -- in the form of supplemental memoranda.

I also wanted to briefly respond to my colleague's note about agency counsel. And I think that the Court is probably in the best position to evaluate that concern.

But to the extent that the Court will indulge Defendants just briefly, agency counsel are not attorneys of record in this case. And they are an extension of our client agency.

So while we understand Plaintiffs' desire to engage with a -- the largest possible group of attorney representatives for the Government, the Department of Justice is the litigating entity here.

And when we do have questions that we need to go back to Plaintiffs, we've been very expeditious in providing them with responses and coming to our conferences with -- prepared

to discuss issues substantively, particularly when they've laid out the issues in advance.

So I can name several examples off the top of my head. But, again, I think the core issue here is that Plaintiffs and Defendants are engaging in good faith and are being -- Defendants are being responsive to Plaintiffs' concerns.

**THE COURT:** Well, you know, Mr. Ross, as to that latter point, I mean, here's my concern is that it's certainly correct that, you know, you're counsel of record, the agency counsel isn't. And so I understand your point from that perspective.

At the same time, having been in, you know, in the past as an AUSA sort of in the position you are in now where you're trying to, you know, provide discovery in a case -- and, again, it's slightly different than what you're dealing with.

But when you're dealing with agency counsel, agency counsels, their interests are sometimes not entirely allied with those of the attorneys who are trying to satisfy the Court's demands.

And I can see in the meet-and-confer context, especially in this case, where it might be helpful to have agency counsel present.

Maybe not to speak but just to be there so that you can -- you or whoever's engaging in the meet-and-confer can be

there to ask questions because, you know, what I've been hearing somewhat today is that, you know, Defendants are saying, well, look, we've produced all the files we had, these are the only ones we know about.

And Plaintiffs are saying, well, there has to be this other stuff there. You know, I think some of the disconnect there may be that you are somewhat limited because you only have what you're getting from the agencies.

And so, you know, even if it's a matter of agency counsel just bring present, being connected by telephone, maybe these are all being done by telephone, but so that they're, you know, immediately ready to participate and to answer questions, I can see how that would be a real benefit.

And, again, I appreciate that maybe they should be the ones directly engaged in the meet-and-confer. But to have them there seems like that that could actually help the process.

MS. WORTH: Your Honor, --

MR. ROSS: Understood --

MS. WORTH: -- that's exactly right.

Oh, go ahead, Mr. Ross.

MR. ROSS: Your Honor, may Defendants be heard?

THE COURT: Yes.

MR. ROSS: We understand the Court's perspective.

And all that we would ask is that the Court allow us

25

to take the Court's reasoning and Plaintiffs' suggestion as a consideration to help facilitate things, move forward, which again we very much actively are interested in doing, and be treated as a request rather than an order from the Court.

THE COURT:  Well, here's what I'm going to do, is I'm just going to order that you reach out and tell agency counsel that they should have somebody present and available either, you know, present and available live during meet-and-confer discussions that need to be available to answer questions.

And how logistically that's worked out, you know, I will certainly leave that up to you.

But the agency counsel need to make themselves available and, you know, so that they are available to participate live in some fashion, whether that be indirectly by, you know, actual counsel of record being able to reach out to them or actually, you know, sort of live, present.  That's up to you.

But they need to make themselves available to be ready to answer questions that occur during the process of the meet-and-confer.

MS. WORTH:  Thank you, Your Honor.

MR. ROSS:  Yes, Your Honor.

THE COURT:  And then as to this issue about -- it doesn't sound to me in terms of the briefing that there's a whole lot left that needs to be clarified.

It may be that, you know, there needs to be just one more phone call to make sure everybody's on the same page about what's still an issue.

What I'm going to do is I'm just going to extend the time for supplemental briefing to be filed on the existing motion to compel to tomorrow at noon Pacific.

So it's not quite another 24 hours, but hopefully that will give, especially with time differences, the time you need to iron out any uncertainty today. And then you can get that briefing filed by noon tomorrow.

**MS. WORTH:** Understood, Your Honor.

**MR. ROSS:** Thank you, Your Honor.

**THE COURT:** All right. Is there anything else we need to take up here today?

**MS. WORTH:** Yes, Your Honor. Plaintiffs have some business.

Your Honor, the deposition period starts tomorrow. And I have a couple of comments and requests about those upcoming depositions.

So we've noticed depositions for Friday, Monday, and next Wednesday. And the remainder of our notices are due to go out tomorrow.

Plaintiffs would respectfully request that the Court be available telephonically should issues arise during the depositions. We anticipate a couple of categories of issues

may arise during the deposition.

One is the law enforcement privilege.  As Your Honor knows, we've seen heavy redactions of documents on the basis of the law enforcement privilege.  Documents and videos I should say.  And Plaintiffs are concerned that Defendants may be instructed not to answer questions that really go to the heart of this case and to the preliminary injunction.

The second category of issues is that we anticipate that Defendants may refuse to answer questions because they determined that they are not relevant or somehow outside the scope of discovery.  This came up earlier on the call.  We were talking about those three raids, Your Honor, and Defendants kind of construing that the district judge's reasoning for why expedited discovery is appropriate and then tailoring the order accordingly.  We're concerned that these issues are going to come up during the depositions as soon as this Friday.  And so we would request the ability to speak telephonically with the Court in the hopes of resolving those issues in real time.

I can stop there, Your Honor.  I have one more matter about depositions but maybe it would be helpful to take this up first.

**THE COURT:**  I can just tell you I -- in general, I will be in on those days.  You can -- you know I will have things going on at times but certainly if -- you know, I would encourage the parties to try to resolve these matters

28

themselves during the depositions but if you think it would be helpful you can reach out to Ms. Carter, try to contact her and see if I'm available and if I am I will join in to address those issues at the deposition.

MS. WORTH:  Thank you, Your Honor.

Additionally, actually two more things on depositions, Your Honor.  I said one but it's two.

Your Honor mentioned earlier that we could probably resolve this question about the scope of the RFPs pretty quickly because it's just a matter of what the papers say, what Judge Frimpong ordered.  I wanted to just reup that issue and see if Your Honor has thoughts on what would be helpful in terms of briefing that and whether we might be able to resolve that in advance of at least some of these depositions taking place in case that affects the scope issue.

THE COURT:  Mr. Ross, do you wish to be heard on that issue?

MR. ROSS:  Yes, Your Honor.  And certainly Defendants have no concern about the Court making itself available should issues arise.  That's a process that's afforded to any deposition is the ability for counsel to contact chambers if something can't be resolved.

And in terms of any specific concerns, you know, again, these concerns have not been brought to Defendants before but to the extent that there's a suggestion that we're -

- that some stonewalling will occur is not consistent with my understanding of how communications have been facilitated between Plaintiff and Defendants and Intervenors in this litigation.

I would just want to add as well that any type of objection that is raised, typically the deponent would still be answering that question.  So, again, not truly be able to understand the specific concerns.  This is speculation as to what could occur.  Certainly the government doesn't oppose the Court making itself available and we thank the Court for its indulgence.

THE COURT:  Okay.  And in terms of this issue of resolving this issue about the scope of the discovery provided by Judge Frimpong's order this week, do you have any suggestions in that regard?  Mr. Ross?

MR. ROSS:  Your Honor, I think that your scheduling order lays out the dispute resolution that's appropriate.  And understanding Plaintiffs' concern about how it may impact the deposition but I don't think Defendants share the same concern for the reasons that I laid out just now.  But Defendants would propose that the Court set a dispute resolution mechanism should conferencing not be fruitful and we would defer to that decision that the Court already made.

THE COURT:  Here's what I'm going to suggest.

I think the parties do need to go back and look at

30

what the order says, talk about that this week.  If you're not able to resolve your dispute on that, I mean I guess there's two parts to this.  One, if it's not actually -- if witnesses aren't going to be instructed not to answer at the deposition on that basis then that's less of an issue.  If that may be an issue then I would certainly invite the parties to submit very short briefs.  I mean certainly five pages or less, ones on this issue, by this Thursday, December 4th, so I can have a chance to look at that in advance of the deposition on Friday.

MS. WORTH:  Thank you, Your Honor.  That makes sense to Plaintiffs.  And of course it's great to hear that witnesses are not going to be instructed not to answer questions on the basis of relevance or scope and that'll be very helpful moving forward.

Of course privilege discussions may arise and we may need to call the Court but hopefully that can be avoided.  And as to this particular question about the three raids and whether they're within bounds or outside the scope of expedited discovery, we will -- we understand the Court to be ordering simultaneous briefs due this Thursday.  So we will submit and we'll meet and confer in advance of that.

THE COURT:  All right.

MR. ROSS:  Your Honor, may the government be heard briefly?

THE COURT:  Yes.

31

**MR. ROSS:** Just to clarify in light of what my colleague just noted.

The government was taking the position, again, based on the speculation of what could happen. That was the position that we were laying out. I think it's premature at this point to say that we're not going to -- that we would waive our ability to instruct a witness not to answer a question where it is -- there's a good-faith support in the law to give that instruction. So, again, realizing that we're dealing with a -- something of great speculation that's not necessarily set to occur. I do just want to make abundantly clear that the government is not waiving our ability to lodge those objections when appropriate. So we welcome the opportunity to brief this issue as the Court instructed.

**THE COURT:** All right. Well I think especially in light of that I think then it does make sense and so I'll look for that briefing on December 4th and be prepared if the issue comes up then on Friday.

**MR. ROSS:** Thank you, Your Honor.

**MS. WORTH:** Understood, Your Honor. We do -- Plaintiffs have one more matter with respect to depositions.

Plaintiffs would like to request and we did inform the government of this during yesterday's conference. Plaintiffs would like to request a brief extension of time to complete their 30(b)(6) deposition until January 16th. We

would like to do that in order to give the parties and the Court time to adjudicate the numerous privilege disputes that have been bubbling up.  Having complete operational files is especially critical for the 30(b)(6), particularly in light of how we briefed that to the district court and sort of the scope of issues that we told the district court we'd be examining the witness on.  And so we would request just a brief extension of time to complete that one, although we can serve -- we can serve a notice by the notice deadline but we would just like more time to complete it so that we can hopefully get some of those privilege disputes narrowed and resolved.

**THE COURT:**  Is there any opposition to that by Defendants?

**MR. ROSS:**  No, Your Honor, no opposition.  And in fact we would -- Plaintiffs did raise this during the meet and confer and we're not opposed to the 30(b)(6).

We also would -- while the Court is considering this question, it may make sense to extend other depositions for Plaintiffs as well, just because of the timeline moving moved up for the notices that we're still receiving notices and will till tomorrow.  We're making every endeavor we can to -- we're endeavoring to ensure our deponents availability but we already know one conflict this Friday that Plaintiffs noticed a deposition that the deponent will not be available and we're trying to make alternative arrangements for the week that

follows but it may make sense to just move the deposition cutoff period in general just to allow greater flexibility when we're trying to schedule all of these depositions right at the end of the year.

MS. WORTH: And Your Honor, Plaintiff would strongly oppose that effort. If there are particular conflicts, like the one on Friday, we stand ready to hear from Defendants about alternative dates within the deposition window. Of course this was a schedule that Defendants had requested and that the Court granted for the completion of depositions even though it does fall around the holidays and we acknowledge that. We will work around any reasonable conflicts and try to be as cooperative as possible with scheduling but Plaintiffs would oppose any effort to delay our ability to examine the percipient witnesses.

THE COURT: Okay. Well at this point I will just order that the time for Plaintiffs to complete that 30(b)(6) deposition is extended to January 16th. And then the parties just need to continue to meet and confer about scheduling issues on the other deponents.

MS. WORTH: Thank you, Your Honor.

THE COURT: All right. I need to run to another meeting. Is there anything else we need to take up here today?

MR. ROSS: Nothing from Defendants, Your Honor.

THE COURT: All right. Well we have -- I think we're set for a hearing on the motion to compel next week at 11:00

34

o'clock so we can take up any -- that can be sort of a motion to compel hearing and further status conference then.

All right.  So if there's nothing else then I'll let you-all go now.  I sorry and I apologize this keeps happening but just from Intervenors, I just want to make sure there's nothing you needed to raise at this time.

MS. XIAO:  Thank you for your consideration, Your Honor.  Nothing from Intervenors.

THE COURT:  Okay.  All right.  Then thank you-all.

MS. WORTH:  Thank you very much, Your Honor.

MS. XIAO:  Thank you, Your Honor.

MR. ROSS:  Thank you, Your Honor.

(Proceeding adjourned at 11:28 a.m.)

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

December 3, 2025

Signed                                            Dated

*TONI HUDSON, TRANSCRIBER*