STACY TOLCHIN (SBN 217431)
*stacy@tolchinimmigration.com*
LAW OFFICES OF STACY TOLCHIN
776 E. Green St., Suite 210
Pasadena, CA 91101
Tel: 213-622-7450; Fax: 213-622-7233

MOHAMMAD TAJSAR (SBN 280152)
*mtajsar@aclusocal.org*
MAYRA JOACHIN (SBN 306065)
*mjoachin@aclusocal.org*
EVA BITRÁN (SBN 302081)
*ebitran@aclusocal.org*
DAE KEUN KWON (SBN 313155)
*akwon@aclusocal.org*
STEPHANIE PADILLA (SBN 321568)
*spadilla@aclusocal.org*
DIANA SÁNCHEZ (SBN 338871)
*dianasanchez@aclusocal.org*
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017-4022
Tel: 213-977-5232; Fax: 213-201-7878

*Counsel for Stop/Arrest Plaintiffs*

(*Additional counsel listed on next page*)

MARK ROSENBAUM (SBN 59940)
*mrosenbaum@publiccounsel.org*
REBECCA BROWN (SBN 345805)
*rbrown@publiccounsel.org*
SOPHIA WRENCH (SBN 354416)
*swrench@publiccounsel.org*
RITU MAHAJAN (SBN 252970)
*rmahajan@publiccounsel.org*
GINA AMATO (SBN 215519)
*gamato@publiccounsel.org*
AMANDA MANGASER SAVAGE
(SBN 325996)
*asavage@publiccounsel.org*
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Counsel for All Plaintiffs*

ANNE LAI (SBN 295394)
*alai@law.uci.edu*
UC IRVINE SCHOOL OF LAW
IMMIGRANT AND RACIAL JUSTICE
SOLIDARITY CLINIC
P.O. Box 5479
Irvine, CA 92616-5479
Tel: 949-824-9894; Fax: 949-824-2747

*Counsel for Stop/Arrest Plaintiffs*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pedro VASQUEZ PERDOMO; Carlos Alexander OSORTO; and Isaac VILLEGAS MOLINA; Jorge HERNANDEZ VIRAMONTES; Jason Brian GAVIDIA; LOS ANGELES WORKER CENTER NETWORK; UNITED FARM WORKERS; COALITION FOR HUMANE IMMIGRANT RIGHTS; IMMIGRANT DEFENDERS LAW CENTER, <br><br> Plaintiffs, <br><br> v. <br><br> Kristi NOEM, in her official capacity as Secretary, Department of Homeland Security; | Case No.: 2:25-cv-05605-MEMF-SPx <br><br> ***DISCOVERY MATTER*** <br><br> **PLAINTIFFS' EX PARTE APPLICATION FOR PROTECTIVE ORDER** <br><br> Hon. Maame Ewusi-Mensah Frimpong <br><br> Referred to Hon. Sheri Pym <br><br> ***REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL*** |

---

PLAINTIFFS' EX PARTE APPLICATION FOR PROTECTIVE ORDER

Todd M. LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; Rodney S. SCOTT, in his official capacity as Commissioner, U.S. Customs and Border Patrol; Michael W. BANKS, in his official capacity as Chief of U.S. Border Patrol; Kash PATEL, in his official capacity as Director, Federal Bureau of Investigation; Pam BONDI, in her official capacity as U.S. Attorney General; Ernesto SANTACRUZ JR., in his official capacity as Acting Field Office Director for Los Angeles, U.S. Immigration and Customs Enforcement; Eddy WANG, Special Agent in Charge for Los Angeles, Homeland Security Investigations, U.S. Immigration and Customs Enforcement; Gregory K. BOVINO, in his official capacity as Chief Patrol Agent for El Centro Sector of the U.S. Border Patrol; Jeffrey D. STALNAKER, in his official capacity as Acting Chief Patrol Agent, San Diego Sector of the U.S. Border Patrol; Akil DAVIS, in his official capacity as Assistant Director in Charge, Los Angeles Office, Federal Bureau of Investigation; Bilal A. ESSAYLI, in his official capacity as U.S. Attorney for the Central District of California,

     Defendants.

JACOB S. KREILKAMP (SBN 248210)
*jacob.kreilkamp@mto.com*
DAVID FRY (SBN 189276)
*david.fry@mto.com*
SARA H. WORTH (SBN 341088)
*sara.worth@mto.com*
HENRY D. SHREFFLER (SBN 343388)
*henry.shreffler@mto.com*
LAURA R. PERRY (SBN 342504)
*laura.perrystone@mto.com*
LAUREN E. KUHN (SBN 343855)
*lauren.kuhn@mto.com*
MAGGIE BUSHELL (SBN 354048)
*maggie.bushell@mto.com*
MUNGER, TOLLES & OLSON LLP
350 S. Grand Ave., 50th Floor
Los Angeles, CA 90071
Tel: 213-683-9100; Fax: 213-683-9100

*Counsel for Stop/Arrest Plaintiffs*

LAUREN MICHEL WILFONG*
*lwilfong@ndlon.org*
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Tel: 626-214-5689

*Counsel for Stop/Arrest Plaintiffs*

BREE BERNWANGER (SBN 331731)
*bbernwanger@aclunc.org*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel: 415-621-2493

*Counsel for Stop/Arrest Plaintiffs*

BRISA VELAZQUEZ OATIS
(SBN 339132)
*bvoatis@aclu-sdic.org*
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Tel: 619-398-4199

*Counsel for Stop/Arrest Plaintiffs*

MATTHEW J. CRAIG (SBN 350030)
*mcraig@heckerfink.com*
MACK E. JENKINS (SBN 242101)
*mjenkins@heckerfink.com*
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Tel: 212-763-0883; Fax: 212-564-0883

*Counsel for Access/Conditions Plaintiffs*

EDGAR AGUILASOCHO (SBN 285567)
*eaguilasocho@farmworkerlaw.com*
MARTÍNEZ AGUILASOCHO LAW, INC.
900 Truxtun Ave, Suite 300
Bakersfield, CA 93301
Tel: 661-859-1174

*Counsel for Plaintiff United Farm Workers*

CARL BERGQUIST*
*cbergquist@chirla.org*
COALITION FOR HUMANE IMMIGRANT
RIGHTS
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

*Counsel for Plaintiff Coalition for Humane
Immigrant Rights*

ALVARO M. HUERTA (SBN 274787)
*ahuerta@immdef.org*
BRYNNA BOLT (SBN 339378)
*bbolt@immdef.org*
ALISON STEFFEL (SBN 346370)
*asteffel@immdef.org*
IMMIGRANT DEFENDERS LAW CENTER
634 S. Spring St., 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

*Counsel for Plaintiff Immigrant
Defenders Law Center*

* Admitted pro hac vice

## NOTICE OF MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, in accordance with Civil Local Rules 6-1 and 7-19, Plaintiffs Pedro Vasquez Perdomo, Carlos Alexander Osorto, Isaac Villegas Molina, Jorge Hernandez Viramontes, Jason Brian Gavidia, the Los Angeles Worker Center Network, United Farm Workers, and Coalition for Humane Immigrant Rights (collectively "Stop/Arrest Plaintiffs" or "Plaintiffs"), by and through their counsel of record, respectfully apply to the Court on an ex parte basis for a protective order precluding Defendants from seeking discovery into the immigration status or immigration history of Plaintiffs and their witnesses.

Plaintiffs' ex parte application is based on this Notice, the Proposed Order, the Declaration of Mayra Joachin filed in support of this Motion, the Declaration of Sara H. Worth filed in support of this motion, all records and papers filed in this action, any oral argument, and any other evidence that the Court may consider in ruling on Plaintiffs' requested relief.

Plaintiffs provided oral and written notice to Defendants and Intervenors of this ex parte application.  Worth Decl. ¶ 3.  As of the time of filing, Defendants have not provided their position on Plaintiffs' ex parte application.

The names, addresses, telephone numbers, and e-mail addresses of Defendants' and Intervenors' counsel to whom Plaintiffs provided oral notice are as follows:

**Jonathan Kevin Ross**
US Department of Justice
Civil Division - Office of Immigration Litigation
PO Box 878 Ben Franklin Station
Washington, DC 20044
202-305-7662
Email: Jonathan.K.Ross@usdoj.gov

**Jin Niu**
Munger, Tolles & Olson LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071
213-683-9100
Email: Jin.Niu@mto.com

-i-
PLAINTIFFS' EX PARTE APPLICATION FOR PROTECTIVE ORDER

DATED:  January 12, 2026          MUNGER, TOLLES & OLSON LLP


By:     _/s/ Jacob S. Kreilkamp_
        JACOB S. KREILKAMP
        _Counsel for Stop/Arrest Plaintiffs_


DATED:  January 12, 2026          ACLU FOUNDATION OF SOUTHERN
                                  CALIFORNIA


By:     _/s/ Mohammad Tajsar_
        MOHAMMAD TAJSAR
        _Counsel for Stop/Arrest Plaintiffs_

-ii-

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    <u>INTRODUCTION</u>**

Plaintiffs seek a protective order on an *ex parte* basis precluding Defendants from seeking any discovery into the citizenship or immigration status, or immigration history, of any Plaintiff or witness (unless the Plaintiff or witness affirmatively put status at issue by claiming they had legal status) as part of expedited discovery.  The merits of Plaintiffs' Fourth Amendment claim do not turn on independent information about an individual's lack of status or immigration history, only information an officer **had at the moment of the encounter**.  The Ninth Circuit has recognized that when immigration status is not legally relevant, discovery into an individual's status may be barred or limited because "[t]he chilling effect such discovery could have on the bringing of civil rights actions unacceptably burdens the public interest."  *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1065 (9th Cir. 2004).

*Ex parte* relief is necessary to protect against future irrelevant discovery, harassment of Plaintiffs and witnesses, and resulting in terrorem effect.  Despite not stating that they intended to seek the immigration status of any Plaintiff or witness when seeking reciprocal discovery, ECF 243, and stipulating that they would not ask about the immigration status of any CHIRLA member, ECF 343, Defendants sought to question Plaintiff Vasquez Perdomo extensively about his immigration status and history during his deposition on January 8, even probing his compliance with laws and regulations applicable to noncitizens and his eligibility for immigration relief.  Defendants pursued these lines of questioning despite an express Court order limiting the scope of Plaintiffs' depositions to topics in their declarations, ECF 243, and the fact that Mr. Vasquez Perdomo is currently in removal proceedings.  There is every reason to believe that Defendants will continue to inquire into these topics in upcoming depositions, including the deposition of Plaintiff Osorto this Friday, January 16, 2026.  Plaintiffs offer this motion to expand upon the parties' telephonic conference with the Court during Mr. Vasquez Perdomo's deposition, which was conducted off the record and without the benefit of written briefing.

Plaintiffs respectfully submit that binding authority supports their position, and in light of the significant public policy implications of *Rivera* and its progeny, request that the Court revisit

-1-

its earlier oral ruling.  Plaintiffs and witnesses have come forward to share their experiences as part of this lawsuit amid ongoing raids and widely reported reprisals against those who challenge or oppose Defendants' actions.  To allow Defendants to improperly use expedited discovery to inquire about immigration status would permit the exact sort of "chilling effect" inimical to "the public interest" that *Rivera* prohibits.  In addition to being inimical to the public interest, discovery into immigration status and history unduly invades Plaintiffs' privacy and is prejudicial to their interests.  *See* Fed. R. Civ. P. 26(c).  Whatever marginal relevance Defendants may try to articulate as the basis for their questioning about immigration status is outweighed by the countervailing considerations here.  A protective order is warranted.

## II.    FACTUAL BACKGROUND

After Judge Frimpong granted Plaintiffs' motion for expedited discovery, Defendants sought reciprocal discovery from Plaintiffs.  ECF 253.  Defendants did not indicate that they were interested in discovery about Plaintiffs' immigration status as part of their request.  *Id.*  In its order authorizing *limited* expedited discovery, the Court allowed Defendants to take three depositions of individual Plaintiffs, but sharply limited Defendants' depositions of Plaintiffs "to be confined to the topics of the … individual's declaration(s)" at this phase, as the declarations were relevant to the question of "what occurred in the encounters with the officers." *Id.* at 4, 6.

Plaintiffs Pedro Vasquez Perdomo and Carlos Osorto both submitted declarations as part of the TRO and preliminary injunction proceedings before Judge Frimpong.  *See* ECF 45-1 (Vasquez Perdomo); ECF 45-2 (Osorto); ECF 128-7 (Vasquez Perdomo).  In their declarations, Messrs. Vasquez Perdomo and Osorto recounted their detention by ICE officers on June 18, 2025.  Neither Plaintiff, however, recounted their immigration status or history. They only recounted statements they made on the day of their arrest, and noted that they were detained and, in Mr. Vasquez Perdomo's case, placed in immigration proceedings.

Defendants have never contended that officers had information about Plaintiffs Vasquez Perdomo's or Osorto's immigration status prior to initiating contact with them on June 18. Rather, Defendants contend that officers had reasonable suspicion to stop Plaintiffs based on what they

PLAINTIFFS' EX PARTE APPLICATION FOR PROTECTIVE ORDER

observed that day, and that they adduced sufficient facts to justify an arrest on suspicion of an immigration-related offense.

Defendants took the deposition of Plaintiff Pedro Vasquez Perdomo on Thursday, January 8, 2026.  Declaration of Mayra Joachin ("Joachin Decl."), ¶ 3.  During that deposition, Defendants sought to extensively question Mr. Vasquez Perdomo regarding his citizenship and immigration status, and immigration history, in ways unmoored from the issues in this case.  *See, e.g.*, Joachin Decl., Ex. A at 56:3 (" ██████████████████████████████████ "); 56:24-25 (" ████████ ██████████████████████████████████ "); 57:21-22 (" ████████████████████ ██████████████████████ )[1]; 82:8-10 (" ████████████████████████ ██████████████████████ "); 195:18-19 (" ████████████████████ ████ "); 189:1-192:5, 194:23-196:19 ( ████████████████████ ████████████████████████████████████████████████ ████████████ ).  Defendants asked relatively few questions about what happened during Mr. Vasquez Perdomo's stop and arrest.  Joachin Decl., ¶ 4.  Indeed, Defendants only briefly asked about Mr. Vasquez Perdomo's declarations submitted in this case and statements and documents Mr. Vasquez Perdomo provided to officers on June 18.  *Id.*

## III.    LEGAL STANDARD

To obtain *ex parte* relief, the moving party must show that (i) its "cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (ii) "that the moving party is without fault in creating the crisis that requires ex parte relief." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

On the merits, the Court may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense."  Fed. R. Civ. P. 26(c); *see also Degen v. United States,* 517 U.S. 820, 826 (1996) (court has authority "to manage discovery in a civil suit, including the power to enter protective orders limiting discovery as the interests of justice require").  Although Rule 26(c) "contains no specific reference to privacy or to

---

[1] *See* 8 U.S.C. §§ 1301-06 (requiring certain noncitizens to register in the United States and enumerating the federal crimes and other penalties that stem from noncompliance).

other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 n.21 (1984); *see also* Rule 26(b)(1) (discussing requirement of proportionality in discovery).

The Rule 26(c) standard is one of good cause.  Courts often look to a number of factors in evaluating whether good cause exists to enter an order under Rule 26(c), including the injury that will result from the discovery sought, whether the information is relevant and necessary to the underlying action, and whether the prejudicial effect outweighs its purpose.  *Universal Delaware, Inc. v. Comidata Network, Inc.*, 2011 WL 1085180, at *2 (M.D. Tenn. Mar. 21, 2011); *see also Spartanburg Reg'l Healthcare, Sys. v. Hillenbrand Indus., Inc.*, 2005 WL 2045818 at 2-3 (W.D. Mich. Aug. 24, 2005) (court must balance relevance, need, confidentiality, and harm).

## IV.   ARGUMENT

### A.   *Ex parte* relief is warranted.

Plaintiffs meet the standard for *ex parte* relief because both *Mission Power* elements are satisfied here.  First, Mr. Osorto's deposition is Friday, January 16.  Permitting Defendants to ask him—and others—about his immigration status and history carries a strong risk of a significant chilling effect on individuals' willingness to testify about the civil rights violations they experienced.  *See Rivera*, 364 F.3d at 1065.  Should Plaintiffs' motion be heard according to regular noticed motion procedures, Mr. Osorto's deposition will have come and gone, and Defendants will have asked the exact questions they should be barred in the first place from asking.  Moreover, parallel to this case, Mr. Osorto is currently in removal proceedings.  Mr. Osorto should not be forced to provide information that the arresting officer did not know about him at the time of arrest and worry about whether it could be used against him in his parallel proceedings.  Second, Plaintiffs are without fault in creating the crisis.  Before Mr. Vasquez Perdomo's deposition on January 8, Plaintiffs had no indication that Defendants planned to use a limited deposition to seek intimidating discovery into Plaintiffs' immigration status.  In light of Defendants' conduct during Mr. Vasquez Perdomo's deposition, Plaintiffs must seek *ex parte* relief to obtain necessary protections before any other depositions may proceed.

**B.** **Plaintiffs' immigration status and history are irrelevant to the claims at issue in the preliminary injunction proceedings.**

Fed. R. Civ. P. 26(b)(1) limits discovery to any nonprivileged matter that is "relevant." The lone claim at issue in the pending preliminary injunction proceedings about which expedited discovery has been authorized is Plaintiffs' Fourth Amendment detentive stop claim. Plaintiffs allege that Defendants' agents and officers have a pattern and practice of conducting detentive immigration stops without reasonable suspicion that the individual stopped is inside the United States without lawful immigration status. Whether agents had a lawful basis (i.e., reasonable suspicion) for the challenged detentive stops depends on **what the agents knew** at the time of that stop. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *Terry v. Ohio,* 392 U.S. 1, 21-22 (1968) (only "the facts available to the officer at the moment of the seizure" may be evaluated in determining whether reasonable suspicion warranted the detention). Put more precisely, "[a]n officer may make an investigatory stop *if he is aware of* specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that the particular person detained is engaged in criminal activity." *United States v. Hernandez-Alvarado*, 891 F.2d 1414, 1416 (9th Cir. 1989) (emphasis added). Discovery into facets of an individual's actual status and their immigration history that an arresting officer was unaware of at the moment of arrest is irrelevant to what Defendants' *agents* knew at the time they effectuated the challenged stop. *United States v. Montoya de Hernandez*, 473 U.S. 531, 559 (1985) (Brennan, J. dissenting) ("*post-hoc*" rationalizations disallowed).

For this reason, courts in Fourth Amendment cases routinely protect from disclosure this type of after-acquired evidence of immigration status. For instance, the court in *Macareno v. Thomas* rejected a similar attempt by defendants to secure information about immigration status, rejecting their argument that the "discovery they now seek may confirm that the information they received about Plaintiff on the night of the encounter was accurate." *Macareno v. Thomas*, 2019 WL 355244, at *3 (W.D. Wash. Jan. 29, 2019). But just as here, the "issue is whether the information Defendants had at the time . . . provided reasonable suspicion for a stop and probable cause for a detainment," and the discovery into actual immigration status was irrelevant to that

-5-
PLAINTIFFS' EX PARTE APPLICATION FOR PROTECTIVE ORDER

question. *Id.* Allowing Defendants to continue questioning Plaintiffs and witnesses on immigration information not available to the immigration officer at the moment of the stop and arrest is precisely the kind of after-acquired evidence that is protected from disclosure.

Similarly, *Barrera v. Boughton* involved allegations that police officers and ICE agents improperly targeted plaintiffs and that officers arrested them without probable cause. *Barrera v. Boughton*, 2010 WL 1240904, at \*3-4 (D. Conn. Mar. 19, 2010). The court precluded discovery of plaintiffs' immigration status and related information, holding that such information "is not probative of the facts the defendants knew at the time of detention or arrest and therefore, contrary to the defendants' argument, is not relevant to whether the defendants had reasonable suspicion or probable cause." *Id.* at \*4.

The plaintiffs in *De La O v. Arnold-Williams* alleged that the police had detained and arrested them without reasonable suspicion or probable cause. 2006 WL 6494873 (E.D. Wash. Oct. 20, 2006). The defendants sought discovery of plaintiffs' immigration statuses and related information, arguing that it was relevant to justifying the police investigation of the plaintiffs. *Id.* at \*2. The court entered a protective order as to plaintiffs' immigration status, tax returns and social security numbers, noting that the defendants "will need to show that a legitimate police concern existed at the time of the investigation not by evidence obtained through later discovery." *Id.* at \*2. These cases all make clear that immigration status information, as a matter of law, is not relevant to Plaintiffs' Fourth Amendment claim.

C. **The Court's order authorizing limited expedited discovery does not include disclosure of individual plaintiffs' immigration status.**

Nothing in either the District Court or Magistrate Judge's decisions authorize discovery into a Plaintiff's or witness's citizenship or immigration status or history. As the Court has indicated, the purpose of Plaintiffs' expedited discovery "is to uncover the material upon which the Defendants relied in asserting that their officers are properly trained and that all of the stops were legal." ECF 223 at 5. Defendants' reciprocal expedited discovery is in turn limited to "test[ing] the accuracy of the declarations [Plaintiffs] submitted" in support of their preliminary

-6-

PLAINTIFFS' EX PARTE APPLICATION FOR PROTECTIVE ORDER

injunction papers.  ECF 253 at 4.  Their depositions of individual plaintiffs are "to be confined to the topics of the entity or individual's declaration(s)."  *Id.* at 6.

The declarations introduced by individual plaintiffs Pedro Vasquez Perdomo and Carlos Osorto do not mention or put at issue their actual immigration status.  *See* ECF 45-2, 128-7, 128-8.  Accordingly, discovery into their immigration status is unauthorized and exceeds the scope of Judge Pym's reciprocal expedited discovery order.

### D.      Disclosure of immigration status would be unduly prejudicial.

Allowing investigation into Plaintiffs' immigration status would create an impermissible in terrorem effect on Plaintiffs' and third-parties' willingness to participate in discovery in a case like this.  Because "[i]mmigration status discovery in cases where plaintiffs are possibly undocumented is a very sensitive area of inquiry," *E.E.O.C. v. First Wireless Grp., Inc.,* 2007 WL 586720, at *3 (E.D.N.Y. Feb. 20, 2007), courts must take great care not to unduly invite disclosure of such information without a demonstrated need.  *Sandoval v. Rizzuti Farms*, 2009 WL 959478, at *2 (E.D. Wash. Apr. 7, 2009) ("The harm in disclosing Plaintiffs' immigration status is significant and real.  If disclosed ... [undocumented plaintiffs] would fear criminal prosecution and deportation [and] would be reluctant to exercise their rights under existing state and federal laws.").

As a result, the Ninth Circuit has held that district courts may legitimately limit discovery into immigration status in civil rights actions as a matter of law.  In *Rivera v. NIBCO*, a workplace discrimination case involving allegations of national-origin discrimination, the Ninth Circuit upheld a protective order which barred "all discovery" into immigration status.  364 F.3d at 1062.  The *Rivera* court reasoned that permitting this discovery placed "any plaintiffs found to be undocumented" at risk of "criminal prosecution and deportation," even where the private defendant "promised not to disclose the plaintiffs' immigration status to any outside party."  *Id.* at 1064.  Even with such safeguards, which mirror the protective order in this case, the court reasoned that *any* discovery into immigration status allowed defendants to "raise implicitly the threat of deportation and criminal prosecution" and would result in "countless acts of illegal and reprehensible conduct" going "unreported."  *Id.* at 1065.  The Court also concluded that even

-7-

"documented workers may be chilled by the type of discovery at issue" because "[d]ocumented workers may fear that their immigration status would be changed, or that their status would reveal the immigration problems of their family or friends," and "new legal residents or citizens may feel intimidated by the prospect of having their immigration history examined in a public proceeding." *Id.*

Courts across the country have followed *Rivera*, recognizing the serious prejudicial impact that discovery into immigration status has on an individual, and for that reason have not allowed it without a significant showing of need. *See, e.g.*, *Francis v. Apex USA, Inc.*, 2020 WL 548565, at *3-4 (W.D. Okla. Feb. 4, 2020) (barring discovery into work history of guestworker plaintiffs where such history could be used to "harass or discriminate against" them); *U.S. Equal Employment Opportunity Commission v. SOL Mexican Grill LLC*, 2019 WL 2896933, at *2-6 (D.D.C. June 11, 2019) (granting protective order barring inquiry into immigration and work history because potential chilling effect outweighed any potential relevance); *Silva v. Campbell*, 378 F. Supp. 3d 928, 930-31 (E.D. Wash. 2018) (same); *Pineda v. Berry*, 2018 WL 1794371, at *6 (S.D. Ohio Apr. 16, 2018) ("The Court concludes that Plaintiff is entitled to a protective order from any discovery that might reveal his (or the eyewitness's) immigration status, with the *in terrorem* effect of possible job loss, criminal prosecution, and deportation serving as the necessary 'good cause.'").

*Rivera* is on all fours and bars discovery into Plaintiffs'—and witnesses'—immigration status. Plaintiffs challenge the conduct of Defendants' *immigration enforcement operations* in Southern California. Some witnesses to Defendants' conduct in Southern California have lawful status, but others may not. Permitting Defendants to seek discovery into any deponent's immigration status will inevitably chill Plaintiffs and their witnesses from bringing forward meritorious testimony regarding Defendants' wrongdoing and will lead to "countless acts of illegal and reprehensible conduct" going unreported in this case and others. And, as discussed above, the information is not relevant. On the other side of the coin, Defendants face no prejudice from a protective order. Defendants would not be prohibited from asking deponents what statements they or others may have made to agents or officers at the time of their stop or arrest or

what documentation they showed.  That Defendants may wish to use the discovery process in this case to force Plaintiffs and declarants into making independent statements about their status should not overcome the significant chilling effects associated with doing so.

To be sure, Defendants may ask reasonable questions related to Plaintiffs' declarations. But discovery into the citizenship and immigration status and history of Plaintiffs and their witnesses is neither necessary nor relevant to the determination of Plaintiffs' Fourth Amendment claims and instead will chill meritorious testimony by Plaintiffs and putative class members who are not U.S. citizens.  The public interest—and binding precedent—strongly supports entry of a protective order.

## V.    CONCLUSION

The Court should enter an order precluding inquiry into a Plaintiff's or witness's actual citizenship or immigration status, or immigration history, including but not limited to place of birth, time/place/manner of entry into the United States, compliance with immigration requirements, and documentation they possess (unless the Plaintiff or witness affirmatively claimed they had legal status) during expedited discovery.

DATED:  January 12, 2026                    MUNGER, TOLLES & OLSON LLP


By:    _____*/s/ Jacob S. Kreilkamp*_____
JACOB S. KREILKAMP
*Counsel for Stop/Arrest Plaintiffs*


DATED:  January 12, 2026                    ACLU FOUNDATION OF SOUTHERN CALIFORNIA


By:    _____*/s/ Mohammad Tajsar*_____
MOHAMMAD TAJSAR
*Counsel for Stop/Arrest Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Stop/Arrest Plaintiffs, certifies that this brief contains 3,135 words, which complies with the word limit of L.R. 11.6-1.

DATED: January 12, 2026

By:    _/s/ Jacob S. Kreilkamp_
JACOB S. KREILKAMP
_Counsel for Stop/Arrest Plaintiffs_

-10-

PLAINTIFFS' EX PARTE APPLICATION FOR PROTECTIVE ORDER