
BRETT A. SHUMATE
Assistant Attorney General
Civil Division
DREW C. ENSIGN
Deputy Assistant Attorney General
TIBERIUS DAVIS
SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
JONATHAN K. ROSS
Senior Litigation Counsel
NANCY N. SAFAVI
TOLA MYCZKOWSKA
JASON K. ZUBATA
ANIELLO DESIMONE
JACOB A. BASHYROV
Trial Attorneys
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-7662
Email: Jonathan.K.Ross@usdoj.gov

BILAL A. ESSAYLI
First Assistant United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
ALEXANDER L. FARRELL (SBN 335008)
PAULINE H. ALARCON (SBN 345785)
Assistant United States Attorneys
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Tel: (213) 894-5557 | 3992
    E-mail:   Alexander.Farrell@usdoj.gov
              Pauline.Alarcon@usdoj.gov

*Counsel for Defendants*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PEDRO VASQUEZ PERDOMO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>Defendants. | No. 2:25-cv-05605-MEMF-SP<br><br>**DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S ORDER [ ECF NO. 338]**<br><br>Hon. Maame Ewusi-Mensah Frimpong<br>United States District Judge<br><br>Referred to Hon. Sherri Pym<br>United States Magistrate Judge |

Pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 72-2.1, Defendants respectfully object to the specific portions of the Magistrate Judge's January 5, 2026 Order, ECF No. 338 ("January 5 Order") identified below.

## I.    INTRODUCTION

The question before the District Court is narrow but consequential: whether a party may be compelled to disclose attorney-client privileged communications and attorney work product on the theory of implied waiver when it has done no more than acknowledge the existence of legal training, has not relied on the substance of privileged advice, and where a court ordered blanket disclosure without in camera review or another tailored remedy. The District Court should sustain Defendants' objections, set aside the January 5 Order that compelled production of materials withheld on attorney-client privilege or work product grounds, and deny Plaintiffs' and Intervenors' motion to compel (ECF No. 266).

## II.    FACTS

On October 23, 2025, the District Court authorized limited, expedited discovery focused on materials Defendants relied upon in opposing Plaintiffs' motion for a temporary restraining order ("TRO") and preliminary injunction ("PI") concerning Plaintiffs' Fourth Amendment claims. *See* ECF No. 223. As relevant here, the Magistrate Judge ordered Defendants to produce documents and other materials responsive to the Requests for Production ("RFPs") on a rolling basis, with the first production due by November 4, 2025. ECF No. 227 at 4. The District Judge and Magistrate Judge's Orders did not require Defendants to produce all discovery materials at once, nor did it require Defendants to forgo privilege assertions over attorney-client communications or attorney work product. *See* ECF Nos. 223, 227.

On November 4, Defendants timely produced relevant training and guidance materials. *See* Jan. 5 Order at 2. Those materials consisted of privilege-redacted training presentations, instructional manuals, and guidance documents used within U.S. Customs and Border Protection ("CBP") and U.S. Immigration and Customs Enforcement ("ICE") to educate officers and agents on constitutional standards, enforcement protocols, and

1  documentation requirements. *See id*. While some of these materials were used in basic
2  training academies, other materials were specifically prepared in response to or in
3  anticipation of litigation, and some of the materials included attorney instructor notes that
4  were not disclosed to non-attorney agency employees. Defendants timely served CBP and
5  ICE privilege logs addressing this November 4 production, asserting attorney-client
6  privilege and work product protection over portions of those materials that were authored
7  or substantively shaped by agency attorneys. Non-privileged portions of the materials
8  were produced. Jan. 5 Order at 2.

9  On November 5, 2025, Plaintiffs and Intervenors raised concerns regarding
10 Defendants' privilege assertions over the November 4 production, and the parties
11 thereafter engaged in the Local Rule discovery dispute resolution process. Jan. 5 Order at
12 1-2. Defendants subsequently served revised privilege logs on November 13 and
13 November 25 to harmonize Bates numbering and clarify entries. *See id*. Defendants'
14 privilege redactions were not categorical; they were applied to portions of documents that
15 reflected attorney legal analysis, interpretive guidance, mental impressions, and
16 assessments regarding how constitutional standards would be applied, evaluated, and
17 litigated. On November 21, 2025, Plaintiffs and Intervenors moved to compel the
18 unredacted materials. *See* ECF Nos. 266, 285, 286.

19 On December 9, 2025, the Magistrate Judge held a hearing on Plaintiffs' and
20 Intervenors' motion to compel. The Magistrate Judge ordered Defendants to submit
21 declarations in support of their privilege assertions. Defendants complied on December
22 16, 2025, submitting declarations from senior legal officials within CBP and ICE. Jan. 5
23 Order at 2 (citing ECF Nos. 311-1 ("S.A. Decl."), 311-3 ("M.B.C. Decl.")).

24 The CBP declaration, submitted by Associate Chief Counsel for Enforcement and
25 Operations M.B.C., explained the role of CBP attorneys in developing training and
26 guidance materials. ECF No. 311-3. The declaration described how CBP attorneys provide
27 confidential legal advice to operational components regarding constitutional compliance,
28 litigation risk, and evidentiary considerations, and how that advice is incorporated into

training materials used to instruct officers. *Id.* The declaration further explained that the training materials included on the privilege logs reflected attorney legal analysis, attorney judgments regarding how conduct would be evaluated in enforcement proceedings and litigation, and guidance informed by litigation experience. *Id.* The declaration corresponded to the CBP documents identified in the November 7, November 13, and November 21 privilege logs. *Id.* On November 25, Defendants served a revised CBP privilege log harmonizing those Bates ranges and clarifying entries. Id.  Thus, when the declaration was submitted to the court on December 16, 2025, the Bates numbers used were the same as ones produced to Plaintiffs on November 21 and referenced in the November 25 privilege log.

The ICE declaration, submitted by Chief Counsel of the Office of the Principal Legal Advisor Los Angeles S.A., similarly explained how ICE attorneys develop and provide legal guidance to operational personnel. ECF No. 311-1. The declaration described categories of training materials that incorporated attorney-authored legal analysis, including guidance addressing how officers' conduct and documentation would be evaluated in future proceedings, how constitutional standards apply to recurring fact patterns, and how enforcement actions intersect with litigation considerations. *Id.* The declaration explained that these materials were prepared by attorneys acting in their legal advisory capacity and disseminated within the agency with the expectation of confidentiality. *Id.*

On January 5, 2026, the Magistrate Judge overruled Defendants' attorney-client privilege and work product assertions as to *nearly* all CBP and ICE training materials. Jan. 5 Order at 1, 11-12. The Order allowed Defendants to continue withholding a narrow subset of documents relating directly to this litigation (GOV-00000171-172) and one ICE document requiring log correction, but otherwise compelled production of all attorney-authored training and guidance materials by January 9, 2026. Jan. 5 Order at 12. Further, the Magistrate Judge discounted the CBP declaration based on an understanding that it addressed documents from another matter and did not correspond to the Bates-numbered

1    materials at issue here. *See* Jan. 5 Order at 5-6 & n.3. The Magistrate Judge also concluded
2    that Defendants impliedly waived privilege by referencing officer training in their TRO
3    and PI briefing and on this basis declined to conduct in camera review despite
4    acknowledging that portions of the materials might be privileged. *Id.* at 10-11.

5        On January 8, 2026, Defendants filed an ex parte application seeking a temporary
6    stay of the Jan. 5 Order or, in the alternative, a short extension of the production deadline
7    to permit Defendants to consider district court review before producing materials they
8    contend are privileged. ECF No. 348.

9        On January 9, 2026, the Magistrate Judge issued an order denying in part
10   Defendants' ex parte application to stay or extend the production deadline, while granting
11   a brief extension to January 13, 2026. *See* ECF No. 351. In that order, the Court
12   acknowledged that its January 5 ruling rested in part on a misunderstanding of the record
13   regarding the M.B.C. declaration and clarified that the declaration did, in fact, correspond
14   to the CBP training materials at issue, albeit under later-assigned Bates numbers not
15   included in the privilege logs submitted with the motion. *Id.* at 2. The Court nevertheless
16   concluded that this factual error was not outcome-determinative because it viewed the
17   implied-waiver ruling and its legal conclusions regarding attorney-client privilege and
18   work product protection as independently sufficient to compel production. *Id*. at 2-3.

19       Defendants complied with the January 5 Order and produced the materials on
20   January 13, 2026, subject to the clawback and non-waiver provisions of the Protective
21   Order (ECF No. 247), while preserving their objections and right to seek review. These
22   objections timely ensured.

### III.    STANDARD OF REVIEW

24       Under Federal Rule of Civil Procedure 72(a) and Local Rule 72-2.1, a party
25   appearing in front of a magistrate judge may file objections to an order on nondispositive
26   matters for the district court's review. *See ISpot.TV, Inc. v. Teyfukova*, No. 2:21-cv-06815-
27   MEMF-MAR, 2025 WL 2994727, at *3 (C.D. Cal. Jan. 9, 2025) (citing *CPC Patent Techs.
28   Pty Ltd. v. Apple, Inc*., 34 F.4th 801, 804 (9th Cir. 2022); 28 U.S.C. § 636(b)(1)(A)). The

district court will only set aside the magistrate judge's disposition if it is "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a). Local Rule 72-2.1 additionally provides that any party objecting must designate the specific portions of the ruling objected to and state the grounds for the objection.

## IV.   OBJECTIONS

### A.   The Court's Implied-Waiver Ruling is Contrary to Ninth Circuit Law

The Magistrate Judge's implied-waiver ruling (Jan. 5 Order at 10-11) rests on a legal conclusion that departs from controlling Ninth Circuit precedent and, in doing so, applies an unduly restrictive conception of attorney-client privilege and the work product doctrine as applied to attorney-authored training and guidance materials.

Implied waiver is a narrow doctrine. *See Bittaker v. Woodford*, 331 F.3d 715, 720-21 (9th Cir. 2003). "[T]he doctrine of implied waiver allocates control of the privilege between the judicial system and the party holding the privilege." *Id.* (citing *Developments in the Law—Privileged Communications*, 98 Harv. L. Rev. 1450, 1630 (1985)). The court imposing the waiver does not order disclosure of the materials categorically; rather, the court directs the party holding the privilege to produce the privileged materials if it wishes to go forward with its claims implicating them. *See, e.g.*, *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir.1999) (holding that courts must evaluate "whether allowing the privilege would deny the opposing party access to information vital to its defense" (internal quotation marks omitted)); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir.1992).

Here, Defendants did not assert an advice-of-counsel defense. They did not offer training materials as evidence. They did not quote, summarize, or rely on the substance of attorney-authored legal analysis to justify the constitutionality of the challenged stops or arrests. Defendants advanced a conventional Fourth Amendment defense grounded in objective facts: what officers observed, what information they possessed, and whether those facts satisfied constitutional standards. References to training appeared only as background context explaining that officers receive instruction on constitutional

1  requirements. Those references did not place the legal advice embedded in attorney-
2  authored trainings at issue.

3      Even if Defendants' references to training were deemed sufficient to place some
4  aspect of training at issue, that would not justify wholesale disclosure of entire training
5  materials, much less attorney-client privileged portions embedded within them. Ninth
6  Circuit law is clear that implied waiver, where it exists, must be narrowly tailored to the
7  specific subject matter actually placed at issue and does not extend to privileged legal
8  advice unless that advice itself is affirmatively relied upon. *See Bittaker*, 331 F.3d at 720-
9  21. At most, Plaintiffs' shield-and-sword theory would implicate non-privileged factual
10 content concerning the existence or general contours of officer training. It would not reach
11 attorney mental impressions, legal analysis, or confidential legal guidance contained
12 within attorney-authored portions of those materials, which were never invoked, relied
13 upon, or placed in controversy by Defendants.

14     The January 5 Order nevertheless treats these generalized references as effecting a
15 broad implied waiver. That approach collapses the distinction between acknowledging the
16 existence of legal training and affirmatively relying on privileged legal advice. Under the
17 Order's reasoning, any government agency that states its personnel receive training on
18 constitutional law would forfeit attorney-client privilege and work product protection over
19 internal legal guidance. The Ninth Circuit has not adopted such an approach. To the
20 contrary, courts repeatedly reject implied waiver where a party does not rely on the
21 substance of privileged communications themselves. *See, e.g.*, *Walker v. AIU Ins. Co.*, No.
22 CV-23-01641-PHX-JAT, 2024 WL 4364149, at *9 (D. Ariz. Oct. 1, 2024); *KCC Class
23 Action Servs., LLC v. Aetna, Inc.*, No. 18-cv-01018-JFW-JEMx, 2019 WL 8060670, at *3
24 (C.D. Cal. Oct. 15, 2019); *Safety Dynamics, Inc. v. Gen. Star Indem. Co.*, No. 09-cv-695-
25 TUC-CKJ-DTF, 2013 WL 11299209, at *3 (D. Ariz. Aug. 8, 2013); *cf. Chevron Corp.*,
26 974 F.2d at 1162 (holding that implied waiver applies only where a party affirmatively
27 uses privileged communications as both a sword and a shield).

28     The conclusion is further informed by the premise that attorney-authored training

and guidance materials are presumptively unprotected because they serve an "educational" function. That framing is legally incorrect. Courts have repeatedly recognized that attorney-authored or attorney-led training materials may remain protected where they convey legal advice, litigation guidance, or attorney mental impressions, even when delivered in an instructional format. *See Hipschman v. County of San Diego*, 742 F. Supp. 3d 1123, 1131-33 (S.D. Cal. 2024); *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 758-60 (D.C. Cir. 2014); *see also Upjohn Co. v. United States*, 449 U.S. 383, 394-95 (1981).

Ninth Circuit precedent draws a nuanced distinction between neutral summaries of legal holdings and attorney-authored materials that reflect legal analysis, emphasis, framing, and guidance regarding how constitutional standards apply in practice. The declarations submitted by Defendants describe precisely that type of protected content: attorney-authored analysis addressing how conduct will be evaluated, how evidence should be documented, and how constitutional requirements apply in recurring enforcement scenarios. The Order's categorical treatment of such materials as "general training" does not maintain the distinction recognized in Ninth Circuit precedent and excludes from protection a broad swath of legal advice that the privilege exists to safeguard.

The Order also places undue weight on the existence of prior or subsequent versions of certain training materials, suggesting that because one version was produced, others must likewise be unprotected. That reasoning is flawed. Training materials evolve. Later versions may incorporate attorney impressions, litigation lessons, and refined legal guidance not present in earlier iterations. Privilege determinations must be document-specific and content-specific, not version-agnostic.

Finally, the fairness rationale underlying implied waiver does not support the Order. Plaintiffs can fully litigate their claims without access to privileged training materials. They may depose officers, examine stop reports, review body-worn camera footage, and challenge the factual basis for each encounter. They may argue that the challenged conduct violated the Fourth Amendment regardless of what training officers received. What

Plaintiffs seek instead is access to attorney mental impressions and legal framing embedded in internal guidance. That information is not "vital" to their claims within the meaning of Ninth Circuit law.

By expanding implied waiver beyond its doctrinal limits and pairing that expansion with an unduly restrictive understanding of privilege, the Order adopts a rule that is contrary to law. Review and correction under Rule 72(a) are therefore warranted.

**B.    The Court's Order Rests on a Factual Misunderstanding of the Record**

A central pillar of the Order's reasoning is the conclusion that the M.B.C. declaration was "plainly inadequate" because it allegedly discussed documents from another case and failed to reference the Bates-numbered materials at issue here. Jan. 5 Order at 5. That finding is incorrect and reflects a misapprehension of the record.

The M.B.C. declaration corresponded directly to the CBP documents identified in the November 7, November 13, and November 21 privilege logs served in this case. Those logs referenced the same training materials discussed in the declaration. On November 21, Defendants produced the redacted CBP training materials using the Bates numbers identical to the ones used in the declaration. On November 25, Defendants served a revised CBP privilege log harmonizing those Bates ranges and clarifying entries. Plaintiffs possess those productions and logs and have never disputed the correspondence.

The apparent confusion arose because, in the interest of transparency and to quickly comply with the court's November 4 production requirement, CBP produced redacted versions of the first page of most training materials rather than redacted copies of every page of the training materials in the initial document production, a practice that did not alter the identity or scope of the documents. The declaration's references to document length, subject matter, and pagination align with the materials produced in this case and listed on the November 7 and subsequent privilege logs. There is no separate universe of documents and no mismatch between the declaration and the privilege logs.

Because the Order discounts CBP's privilege assertions based on the misunderstanding that the supporting declaration addressed unrelated documents, the

ruling rests on a clearly erroneous factual premise. That error materially affected the outcome, as it led the Court to conclude that Defendants had failed to meet their burden when, in fact, the declaration and logs addressed the correct materials. Under Rule 72(a), such a misapprehension of the evidentiary record independently warrants modification or reversal.

### C.  Regardless, the Court Erred by Foregoing In-Camera Review

Even assuming arguendo that Defendants' privilege showings were imperfect, the Magistrate Judge's remedy exceeds the bounds of permissible discretion. For example, the Order expressly acknowledges that "portions of the withheld ICE documents may be protected by either the attorney-client privilege or work product doctrine," yet declined to conduct in camera review and instead orderd near-total disclosure based on implied waiver. Jan. 5 Order at 10.

Where a court determines that some portions of documents may be privileged but cannot ascertain which portions are protected, in camera review is the accepted and preferred mechanism for resolving the dispute. *E.g.*, *Genentech, Inc. v. Insmed Inc.*, 234 F.R.D. 667, 670 (N.D. Cal. 2006) (listing cases). In camera review allows the court to test privilege assertions, separate protected legal analysis from non-privileged content, and tailor relief to avoid unnecessary disclosure. Under *United States v. Zolin*, 491 U.S. 554, 572 (1989), in camera review is the established mechanism for resolving disputes where a court cannot determine the applicability or scope of privilege from the record alone. Where, as here, the court recognizes that portions of the materials "may be protected" but remains uncertain as to which portions are privileged, in camera review provides a means to resolve that uncertainty without compelling unnecessary disclosure. Jan. 5 Order at 5, 10. Here, Defendants expressly indicated that in camera review would be appropriate and would assist the Court in evaluating the privilege assertions. *See, e.g.*, ECF No. 266 at 23 (Defendants' portion). The court thus proceeded directly to compelled production without first resolving the scope of privilege through in camera review.

Further, the absence of in camera review amplified the prejudice described above

by requiring disclosure of attorney-client and work product material that had not been placed at issue and that Plaintiffs do not need to litigate their Fourth Amendment claims. The Order's lack of tailoring compounds the error. Even where waiver is found, Ninth Circuit law requires that waiver be narrowly construed and limited to the subject matter actually placed at issue. *See Bittaker*, 331 F.3d at 720 (holding that "under the fairness principle," the scope of such waivers are "closely tailored . . . to the needs of the opposing party in litigating the claim in question"). The Order instead mandates production of entire documents, including multiple versions of training materials and attorney-authored guidance that were never referenced in briefing and never relied upon by Defendants in any substantive way. The Court did not attempt to identify discrete sections allegedly implicated by Defendants' arguments, nor did it limit disclosure to materials necessary to address any purported unfairness.

This all-or-nothing approach is especially problematic in the context of attorney-client privilege and work product protection, where disclosure cannot be undone. Once privileged materials are produced, the bell cannot be unrung. The decision to forego in camera review and the decision to compel wholesale disclosure despite acknowledged privilege concerns constitute an abuse of discretion and independently require reversal.

Finally, Defendants' compliance with the January 5 Order does not constitute a waiver of privilege or moot their objections. Under Local Rule 72-2.2, a magistrate judge's ruling "remains in effect unless the ruling is stayed or modified by the Magistrate Judge or the District Judge," regardless of whether a motion for review has been filed. Defendants' production on January 13 therefore reflected mandatory compliance with a binding court order, not a voluntary disclosure of privileged materials. Because Defendants' production was compelled by operation of Local Rule 72-2.2 and accompanied by express preservation of privilege, no waiver occurred.

## V.    CONCLUSION

For these reasons, the District Court should sustain Defendants' objections and deny Plaintiffs' and Intervenors' motion to compel (ECF No. 266).

Dated: January 13, 2026 Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

TIBERIUS DAVIS
SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General

NANCY SAFAVI
TOLA MYCZKOWSKA
JASON K. ZUBATA
ANIELLO DESIMONE
JACOB A. BASHYROV
Trial Attorneys

*/s/ Jonathan K. Ross*
JONATHAN K. ROSS
Senior Litigation Counsel
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-7662
Email: Jonathan.K.Ross@usdoj.gov

*Counsel for Defendants*

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies that this filing is 3,308 words, which complies with L.R. 11-6.1.

Dated: January 13, 2026

Respectfully submitted,

*/s/ Jonathan K. Ross*
JONATHAN K. ROSS
Senior Litigation Counsel
Office of Immigration Litigation
U.S. Department of Justice

*Counsel for Defendants*