BRETT A. SHUMATE
Assistant Attorney General
Civil Division
DREW C. ENSIGN
Deputy Assistant Attorney General
TIBERIUS DAVIS
SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
JONATHAN K. ROSS
Senior Litigation Counsel
NANCY N. SAFAVI
TOLA MYCZKOWSKA
JASON K. ZUBATA
ANIELLO DESIMONE
JACOB A. BASHYROV
Trial Attorneys
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-7662
Email: Jonathan.K.Ross@usdoj.gov

BILAL A. ESSAYLI
First Assistant United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
ALEXANDER L. FARRELL (SBN 335008)
PAULINE H. ALARCON (SBN 345785)
Assistant United States Attorneys
   Federal Building, Suite 7516
   300 North Los Angeles Street
   Los Angeles, California 90012
   Tel: (213) 894-5557 | 3992
   E-mail:   Alexander.Farrell@usdoj.gov
             Pauline.Alarcon@usdoj.gov

*Counsel for Defendants*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| Pedro Vasquez Perdomo, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Kristi Noem, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>Defendants. | No. 2:25-cv-05605-MEMF-SP<br><br>**Defendants' Objections to Magistrate Judge's Order [ECF No. 365]**<br><br>Hon. Maame Ewusi-Mensah Frimpong<br>United States District Judge<br><br>Referred to Hon. Sheri Pym<br>United States Magistrate Judge |

Pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 72-2.1, Defendants respectfully object to the specific portions of the Magistrate Judge's January 14, 2026 Order, ECF No. 365 ("Order"), identified below.

## I.     INTRODUCTION

Defendants object to the Magistrate Judge's Order (sections III.B.1-2, III.C, and III.D.2), because it compels disclosure far beyond the scope of the District Court's limited discovery authorization and overrides properly asserted Law Enforcement Privilege ("LEP") without the required substantive analysis. Here, the District Court authorized limited expedited discovery for a narrow purpose: to test specific factual assertions Defendants made in opposing Plaintiffs' preliminary injunction motions. ECF No. 223 at 5. That authorization did not permit discovery of all operational intelligence, targeting rationale, or law enforcement methodologies associated with the identified operations, nor did it authorize compelled disclosure of materials protected by LEP absent a proper showing that Plaintiffs' need outweighs the substantial governmental interests at stake. The Order nonetheless compels precisely that result, not because Plaintiffs made the required showing, but because the Magistrate Judge concluded that Defendants' privilege assertions were procedurally imperfect and that Defendants' opposition briefing "put the information at issue." Courts must conduct a careful, document-specific analysis, including in camera review where necessary, before compelling disclosure. The Order expressly declines to do so, yet nevertheless mandates wholesale production by a date certain. That approach is contrary to law and warrants review.

## II.     FACTS

On October 17, 2025, the Court authorized limited expedited discovery in connection with Plaintiffs' motion for a temporary restraining order and preliminary injunction. *See* ECF No. 223. Plaintiffs thereafter served discovery requests, including Requests for Production ("RFP"). Relevant here, Plaintiffs sought in RFP No. 2 operational documents relating to identified immigration enforcement operations conducted by Immigration and Customs Enforcement ("ICE") and U.S. Customs and Border Protection ("CBP").

On November 13, 2025, Defendants produced documents responsive to RFP No. 2. Order at 2. That production consisted of 67 documents, including operational materials generated by ICE and CBP,

1  some of which were redacted or withheld pursuant to LEP. *Id.* Defendants timely served corresponding
2  ICE and CBP privilege logs reflecting that the withheld or redacted information concerned sensitive law
3  enforcement privileged material, including internal database functionality, operational planning and
4  targeting information, law enforcement techniques and methodologies, and other information that, if
5  disclosed, could compromise ongoing or future enforcement efforts. *See id.* Plaintiffs subsequently
6  moved to compel production of the LEP information, arguing that LEP is not recognized in the Ninth
7  Circuit, that Defendants failed to properly invoke the privilege, and that any privilege was overcome by
8  Plaintiffs' need for the information in connection with their preliminary injunction motion. *Id.* (citing
9  ECF No. 306).

10  In support of their LEP assertions, the Court permitted Defendants to submit declarations from
11  senior agency officials with responsibility over the relevant enforcement operations. *See* ECF No. 310.
12  Defendants submitted the declaration of Deputy Executive Associate Director T.B., a senior ICE official
13  with responsibility over enforcement operations. ECF No. 310-3. T.B. attested to reviewing the relevant
14  materials and determined that the withheld information fell within recognized categories protected by
15  LEP. *Id*. ¶¶ 8, 12. Specifically, T.B. explained that the ICE materials withheld under LEP included
16  database records and operational information associated with specific enforcement actions. *Id.* ¶¶ 9-10,
17  12-13. T.B. further explained that disclosure of such information could reveal the structure and
18  functioning of ICE law enforcement databases, expose sensitive operational planning details, and risk
19  compromising future enforcement actions. *Id*. ¶¶ 9, 11, 13(a)-(b).

20  Additionally, CBP submitted the declaration of Operations Commander M.V., a senior CBP
21  official responsible for enforcement operations. ECF No. 310-5. M.V. reviewed the documents associated
22  with multiple enforcement operations responsive to RFP No. 2 and identified categories of information
23  warranting protection under LEP, including operational methodologies, internal communications
24  channels, targeting rationales, and other sensitive enforcement information. *Id*. ¶ 8(a)-(g). The declaration
25  described the risks that disclosure would pose to law enforcement operations. *Id*. ¶¶ 6-7, 8(a)-(g).

26  On January 14, 2026, the Magistrate Judge issued the Order granting the motion to compel. The
27  Order expressly recognized that LEP is a valid, qualified privilege, that it is likely to be recognized by
28  the Ninth Circuit, and that at least some of the withheld information is properly subject to LEP. Order at

4. Nevertheless, the Magistrate Judge concluded that Defendants failed to meet their burden and that, in any event, the balancing of interests and an implied waiver theory justified compelled disclosure of all materials at issue, subject to the Protective Order, ECF No. 247. Order at 5-11.

### III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 72(a) and Local Rule 72-2.1, a party appearing in front of a magistrate judge may file objections to an order on nondispositive matters for the district court's review. *See ISpot.TV, Inc. v. Teyfukova*, No. 2:21-cv-06815-MEMF-MAR, 2025 WL 2994727, at *3 (C.D. Cal. Jan. 9, 2025) (citing *CPC Patent Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 804 (9th Cir. 2022); 28 U.S.C. § 636(b)(1)(A)). The district court will only set aside the magistrate judge's disposition if it is "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a). Local Rule 72-2.1 additionally provides that any party objecting must designate the specific portions of the ruling objected to and state the grounds for the objection.

"The 'clearly erroneous' standard applies to the magistrate judge's factual determinations and discretionary decisions[.]" *Computer Economics, Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980, 983 (S.D. Cal. 1999). The "contrary to law" standard applies to the magistrate judge's legal conclusions or determinations. *Id.* The district court reviews the magistrate judge's legal conclusions de novo to determine whether they are contrary to law. *See Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. 2010); *Wolpin v. Philip Morris Inc.*, 189 F.R.D. 418, 422 (C.D. Cal. 1999). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Travelers Indemnity Co. of Connecticut v. Walking U Ranch, LLC*, Case No. 2:18-cv-02482-CAS—GJSx, 2021 WL 969210, at *2 (C.D. Cal. Jan. 22, 2021) (quotation omitted); *see also Fisher & Payk El Healthcare Ltd. v. Flexicare Inc.*, No. SACV 19-835 JVS (DFMx), 2020 WL 7094077, at *1 (C.D. Cal. Oct. 29, 2020) ("A decision is contrary to law if it applies an incorrect legal standard or fails to consider an element of the applicable standard.") (quotation omitted).

District courts in this Circuit apply a qualified law enforcement or investigative privilege in civil litigation. Although the Ninth Circuit has noted that it has "yet to recognize or reject" such a privilege, *Shah v. Dep't of Justice*, 714 F. App'x 657, 658 n.1 (9th Cir. 2017), district courts including ones within this District have repeatedly applied it. *See, e.g.*, *NLRB v. Silver Spur Casino*, 623 F.2d 571, 580 (9th Cir.

1980); *Est. of Solis v. Cnty. of Riverside*, 2024 WL 4783819, at *8-9 (C.D. Cal. Sept. 19, 2024); *Hereford v. City of Hemet*, 2023 WL 6813740, at *10-11 (C.D. Cal. Sept. 14, 2023).

## IV.  OBJECTIONS

### A.  The Order Recognizes LEP but Fails to Apply it Consistently with Governing Law.

The Magistrate Judge recognized that LEP is a qualified privilege that has been acknowledged and applied by several courts within this Circuit. Order at 5. The error lies not in that threshold recognition, but in the manner in which the Order applies the doctrine.

Once a party asserts law enforcement privilege, courts follow a two-step inquiry. First, the government must make a threshold showing that the privilege applies to the information withheld, typically through a declaration by an appropriate official who has personally reviewed the materials and explains, with sufficient specificity, why disclosure would harm law enforcement interests. *See In re The City of New York*, 607 F.3d 923, 944 (2d Cir. 2010); *Landry v. FDIC*, 204 F.3d 1125, 1135 (D.C. Cir. 2000); *Roman v. Wolf*, No. CV 20-00768-TJH (AFMx), 2020 WL 6588399, at *2 (C.D. Cal. July 16, 2020). Second, if that showing is made, the court must balance the requesting party's need for the information against the government's interest in confidentiality, considering the factors articulated in *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973), and its progeny. *See In re The City of New York*, 607 F.3d at 945; *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997); *City of Los Angeles v. United States*, No. 2:23-cv-01318-CAS (JEMx), 2023 WL 6370887, at *9 (C.D. Cal. Aug. 28, 2023).

The Order collapses these steps and effectively treats any perceived deficiency in Defendants' declarations as dispositive of the entire privilege claim, without regard to whether at least some of the withheld information plainly falls within the core of the privilege. The Magistrate Judge expressly acknowledged that information concerning operational methodologies, targeting criteria, internal systems, and future law enforcement techniques may be properly protected by LEP. Order at 5. Yet the Order compels disclosure of all withheld material without distinguishing between categories of information, without requiring supplementation of declarations, and without conducting in camera review. *Id.* at 6-8, 11. Courts routinely require clarification or supplementation of privilege declarations rather than ordering immediate disclosure. *E.g.*, *In re The City of New York*, 607 F.3d at 945. Even where

a declaration lacks ideal specificity, the remedy is not wholesale compelled production, but a measured process that allows the court to determine, document by document, whether the privilege applies and whether it is overcome. *See Landry*, 204 F.3d at 1135. By declining to conduct in camera review and nonetheless ordering disclosure, the Magistrate Judge bypassed the required analytical steps.

Here, Defendants satisfied their threshold burden with respect to the ICE documents withheld under LEP. The declaration of T.B., a senior ICE official with responsibility over the relevant enforcement operations, explains in detail that the redacted and withheld ICE materials include screenshots, summaries, and printouts from internal law enforcement databases, as well as operational planning information tied to both completed and prospective enforcement actions. ECF No. 310-3 ¶¶ 9-13. As T.B. explains, disclosure of such materials would reveal the structure, functionality, and access controls of ICE law enforcement databases, including unique officer login identifiers associated with individual agents. *Id*. ¶ 13(b). These risks fall squarely within the core protections of law enforcement privilege, which exists "to preserve the effectiveness of investigative methods that could be compromised if publicly disclosed" and to prevent disclosure that would enable offenders to "evade lawful investigations and, where appropriate, detention." *Id*. ¶ 9; *see In re The City of New York*, 607 F.3d at 944.

In addition, the T.B. declaration explains that certain withheld ICE documents contain planning details for future enforcement operations, including specific communication methods used by officers in the field and coordination protocols employed during operations. ECF No. 310-3 ¶ 13(b). Disclosure of such information would provide a roadmap for how ICE officers communicate during operations, enabling targets or third parties to interfere with or obstruct those communications, intercept operational channels, or take steps to evade enforcement altogether. *Id*. The declaration further explains that revealing these details would endanger officer safety and increase public safety risks by allowing individuals to anticipate enforcement actions and congregate, flee, or resist accordingly. *Id*. Contrary to the Order's suggestion that Defendants "did not specifically describe the information for which the privilege is claimed," the T.B. declaration identifies nine specific ICE documents by Bates number that were reviewed and determined to contain privileged information, ECF No. 310-3 ¶ 12, and explains the precise categories of sensitive content contained within those documents. To the extent the Court believed

1  additional granularity was required, governing law required supplementation or in camera review, not
2  compelled disclosure of all materials notwithstanding acknowledged law enforcement harms.

3        Defendants likewise met their threshold burden with respect to the CBP materials withheld under
4  Law Enforcement Privilege. The declaration of M.V., a senior CBP official with responsibility for
5  enforcement operations, explains that CBP reviewed documents associated with multiple operations
6  responsive to RFP No. 2 and identified categories of information that warrant protection because
7  disclosure would compromise ongoing and future enforcement efforts. ECF No. 310-5 ¶ 8. Among other
8  things, M.V. explains that the withheld CBP materials include intelligence regarding the methodology
9  used to select target locations for enforcement operations, including analytical criteria used to determine
10 whether particular locations are frequented by individuals unlawfully present in the United States.
11 *Id*. ¶ 8(a). This methodology is incorporated into reports of investigation, arrest narratives, and
12 operational plans, and disclosure would allow potential targets to reverse engineer enforcement patterns
13 and alter their behavior to evade apprehension. *Id*.

14       The M.V. declaration further explains that several CBP documents reference potential future
15 operations that have not yet occurred, including preliminary planning discussions and operational
16 contingencies. ECF No. 310-5 ¶ 8(b). Disclosure of this information would alert individuals to anticipated
17 enforcement actions and enable them to avoid becoming subjects of those operations, frustrating lawful
18 enforcement and endangering officers. *Id*. Additional categories of withheld information include
19 diagrams and schematics of enforcement locations, operational timing details, objective rally point
20 locations not known to the public, identities of enforcement targets, and internal operational planning
21 details such as staffing levels and staging timelines. *Id*. ¶ 8(c)-(g). Each of these categories reflects
22 sensitive operational intelligence that, if disclosed, would allow individuals to anticipate enforcement
23 actions by identifying predictable indicators that an operation is imminent. *Id*. Although the Order
24 criticizes the M.V. declaration for not mapping each category to a specific Bates number, the declaration
25 plainly identifies recognized categories of law enforcement privileged information at issue in Defendants'
26 document production and explains why disclosure would cause concrete harm.

27
28

At minimum, this showing satisfied Defendants' initial burden and required the Court to proceed to a document-specific review, not to compel wholesale disclosure notwithstanding acknowledged privilege concerns.

**B.     The Order is Contrary to Law Because it Disregards the Limited Purpose of Expedited Discovery.**

The balancing analysis in the Order is untethered from the scope and purpose of the discovery authorized by the District Court. The Magistrate Judge repeatedly emphasizes that the information sought is "central" to Plaintiffs' preliminary injunction motion. *E.g.*, Order at 8. But that framing assumes the very point in dispute: whether Plaintiffs are entitled, at the injunction stage, to discovery of operational intelligence and law enforcement methodologies beyond the specific encounters and assertions addressed in Defendants' opposition. The District Court made clear that expedited discovery was not intended to be a large-scale audit of immigration enforcement operations, but rather a narrowly tailored mechanism to test the factual bases of Defendants' assertions in opposing injunctive relief. *See* ECF No. 223 at 5-6. The balancing analysis required by LEP must be conducted within that framework. Information that might be relevant in full merits discovery does not automatically become essential or proportional in expedited discovery.

However, the Order fails to account for this distinction. It treats Plaintiffs' asserted need for broad operational materials as self-evident, without explaining why disclosure of privileged information is necessary to evaluate the specific factual disputes before the Court at this stage. Order at 8-9. At the same time, it discounts Defendants' showing of harm by reasoning that disclosure under a Protective Order eliminates material risk. Order at 9. Protective orders do not eliminate the institutional harms associated with compelled disclosure of sensitive law enforcement information, including chilling future operations, exposing methodologies, and undermining interagency coordination. *See Novoa v. Geo Grp., Inc.*, No. 517-cv-02514-JGB, 2020 WL 6694317, at *7-8 (C.D. Cal. Oct. 8, 2020); *Conan v. City of Fontana*, 2017 WL 2874623, at *4 (C.D. Cal. July 5, 2017). Balancing requires more than a generalized statement that Plaintiffs' case is non-frivolous and that the information is relevant. It requires careful assessment of whether Plaintiffs' need, at this procedural posture, outweighs the concrete and systemic harms identified by Defendants. The Order does not perform that analysis.

**C.    The Order is Contrary to Law Because it Finds Implied Waiver Based on Defendants' Opposition Briefing.**

As a predicate matter, the Magistrate Judge relied on persuasive authority to conclude that Defendants implicitly waived law enforcement privilege by defending the lawfulness of their actions. Order at 10 (citing *City of Los Angeles*, 2023 WL 6370887, at **10-12; *Clark v. Powe*, 2008 WL 4686151, at *4 (N.D. Ill. May 30, 2008); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992)). Defendants do not dispute that courts may look to persuasive authority where Ninth Circuit precedent is undeveloped. But the authorities cited do not support the broad waiver rule applied here, nor do they resolve whether waiver principles developed in the attorney-client privilege context should be extended wholesale to LEP. That silence matters because LEP serves a fundamentally different purpose than attorney-client privilege. Attorney-client privilege protects the confidentiality of legal advice in order to promote candid communication between lawyer and client, and waiver doctrine in that context turns on fairness concerns tied to selective disclosure. *See Upjohn v. United States*, 449 U.S. 383, 390-91 (1981). Law enforcement privilege, by contrast, exists to protect officer safety, investigative techniques, operational plans, confidential sources, and the integrity of ongoing and future enforcement efforts. *See United States v. Rigmaiden*, 844 F. Supp. 2d 982, 997 (D. Ariz. 2012). Accordingly, the Order erred by treating waiver principles developed in the attorney-client privilege context as dispositive of law enforcement privilege, without accounting for the distinct interests LEP is designed to protect or the narrower approach reflected in the case law.

Regardless, even under a waiver framework, the Magistrate Judge erred in concluding that Defendants placed privileged information at issue merely by asserting that enforcement operations were supported by intelligence and surveillance. Order at 11. That reasoning conflates acknowledgment of the existence of law enforcement processes with reliance on privileged details of those processes. If accepted, it would mean that any time the government defends an enforcement action as lawful, it waives LEP as to the underlying intelligence. That is not the law.

Plaintiffs' waiver theory, which the Order adopts, rests on the flawed premise that Defendants' references to "intelligence" or "surveillance" in their opposition filings placed all underlying operational materials at issue. Courts have repeatedly rejected this expansive view of waiver. High-level descriptions

of law enforcement activity do not effect a waiver of LEP or compel disclosure of privileged operational documents. *See, e.g.*, *MacNamara v. City of New York*, 249 F.R.D. 70, 78-80 (S.D.N.Y. 2008) (rejecting waiver where defendants referenced investigative conclusions without disclosing privileged materials); *Dellwood Farms*, 128 F.3d at 1126. Defendants' briefing did not selectively disclose privileged information or rely on the contents of the withheld documents to establish the lawfulness of their actions. Rather, Defendants responded to Plaintiffs' allegations through sworn declarations and non-privileged materials addressing specific encounters. Treating such routine defensive litigation conduct as an implied waiver would dramatically expand waiver doctrine and effectively eliminate LEP whenever the government defends the legality of its enforcement actions. The Order's implied waiver holding is therefore contrary to law.

**D.    Regardless, the Court Erred by Foregoing In Camera Review.**

Even assuming that Defendants' privilege submissions were imperfect, the remedy the Court selected exceeded the bounds of permissible discretion. *See* Order at 6-8, 11. The Order repeatedly acknowledged that at least some of the withheld material falls within the core concerns underlying the law enforcement privilege, including operational methodologies, intelligence sources, and vulnerabilities in enforcement systems. Order at 8. At the same time, the Court concluded that it could not determine from the record which specific portions of the documents were properly subject to the privilege. *Id*.

Faced with that uncertainty, the Court declined to conduct in camera review and instead ordered near total disclosure of the documents at issue. That choice reflects a misapplication of the governing framework for evaluating qualified law enforcement privilege claims. Courts addressing LEP, including those cited by the Order, consistently treat in camera review as the appropriate mechanism when privilege disputes cannot be resolved on declarations and logs alone. Order at 5 (citing *In re City of New York*, 607 F.3d at 948; *In re DHS*, 459 F.3d at 570). The Order acknowledged this general practice, but expressly declined to follow it. Order at 5. Instead, the Court treated the asserted deficiencies in Defendants' declarations as a reason to compel wholesale disclosure. That approach effectively resolved uncertainty about the scope of the privilege against the privilege holder, rather than using in camera review to clarify which portions of the documents were protected in the first instance.

That was an abuse of discretion. A court's inability to determine from the record which portions of documents are privileged does not justify compelling production of the entire documents. Rather, it counsels in favor of in camera review so the court can make an informed and tailored ruling. By bypassing that step, the Court collapsed the threshold privilege inquiry and the subsequent balancing analysis into a single outcome driven by evidentiary ambiguity.

The breadth of the relief ordered underscores the error. As relevant here, the Order compels production of entire documents withheld under LEP without identifying any particular portions that were cited, relied upon, or otherwise necessary to resolve the issues before the Court. *See* Order at 6-11. Even where waiver is found, courts in this Circuit recognize that waiver must be narrowly construed and limited to the specific subject matter actually placed at issue. *See Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003) (in the context of attorney-client privilege). The Order did not attempt to identify discrete portions of documents allegedly implicated by Defendants' arguments, nor did it limit disclosure to materials necessary to address any identified unfairness. Nor does the Court's balancing analysis cure the defect. The balancing inquiry presupposes a prior determination of what information is privileged. Without in camera review, the Court could not meaningfully distinguish between privileged operational intelligence and non-privileged factual material, yet it ordered disclosure of both. Particularly in the context of expedited, preliminary injunction stage discovery, that approach exceeds the discretion afforded to courts adjudicating qualified privilege disputes.

Finally, the failure to conduct in camera review is especially consequential in the LEP context, where disclosure cannot be undone. Once sensitive operational materials are produced, the harm is irreparable. The Court's own recognition that some of the information at issue is properly subject to LEP makes the decision to forgo in camera review all the more problematic. Taken together, the decision to bypass in camera review and compel wholesale disclosure despite acknowledged privilege concerns constitutes an abuse of discretion and independently warrants reversal.

## V.   CONCLUSION

For these reasons, the District Court should sustain Defendants' objections and deny Plaintiffs' motion to compel (ECF No. 306).

Dated: January 28, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

TIBERIUS DAVIS
SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General

NANCY N. SAFAVI
TOLA MYCZKOWSKA
JASON K. ZUBATA
ANIELLO DESIMONE
JACOB A. BASHYROV
Trial Attorneys

*/s/ Jonathan K. Ross*
JONATHAN K. ROSS
Senior Litigation Counsel
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-7662
Email: Jonathan.K.Ross@usdoj.gov

*Counsel for Defendants*

**L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record certifies that this filing is 3,758 words, which complies with L.R. 11-6.1.

Dated: January 28, 2026                              Respectfully submitted,

*/s/ Jonathan K. Ross*
JONATHAN K. ROSS
Senior Litigation Counsel
Office of Immigration Litigation
U.S. Department of Justice

*Counsel for Defendants*