STACY TOLCHIN (SBN 217431)
*stacy@tolchinimmigration.com*
LAW OFFICES OF STACY TOLCHIN
776 E. Green St., Suite 210
Pasadena, CA 91101
Tel: 213-622-7450; Fax: 213-622-7233

MOHAMMAD TAJSAR (SBN 280152)
*mtajsar@aclusocal.org*
MAYRA JOACHIN (SBN 306065)
*mjoachin@aclusocal.org*
EVA BITRÁN (SBN 302081)
*ebitran@aclusocal.org*
DAE KEUN KWON (SBN 313155)
*akwon@aclusocal.org*
STEPHANIE PADILLA (SBN 321568)
*spadilla@aclusocal.org*
DIANA SANCHEZ (SBN 338871)
*dianasanchez@aclusocal.org*
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
P.O. Box 811370
Los Angeles, CA 90081
Tel: 213-977-9500; Fax: 213-915-0219

*Counsel for Stop/Arrest Plaintiffs*

(*Additional counsel listed on next page*)

MARK ROSENBAUM (SBN 59940)
*mrosenbaum@publiccounsel.org*
REBECCA BROWN (SBN 345805)
*rbrown@publiccounsel.org*
SOPHIA WRENCH (SBN 354416)
*swrench@publiccounsel.org*
RITU MAHAJAN (SBN 252970)
*rmahajan@publiccounsel.org*
GINA AMATO (SBN 215519)
*gamato@publiccounsel.org*
AMANDA MANGASER SAVAGE
(SBN 325996)
*asavage@publiccounsel.org*
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Counsel for All Plaintiffs*

ANNE LAI (SBN 295394)
*alai@law.uci.edu*
UC IRVINE SCHOOL OF LAW
IMMIGRANT AND RACIAL JUSTICE
SOLIDARITY CLINIC
P.O. Box 5479
Irvine, CA 92616-5479
Tel: 949-824-9894; Fax: 949-824-2747

*Counsel for Stop/Arrest Plaintiffs*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pedro VASQUEZ PERDOMO; Carlos Alexander OSORTO; and Isaac VILLEGAS MOLINA; Jorge HERNANDEZ VIRAMONTES; Jason Brian GAVIDIA; LOS ANGELES WORKER CENTER NETWORK; UNITED FARM WORKERS; COALITION FOR HUMANE IMMIGRANT RIGHTS; IMMIGRANT DEFENDERS LAW CENTER, <br><br> Plaintiffs, <br><br> v. <br><br> Kristi NOEM, in her official capacity as Secretary, Department of Homeland Security; | Case No.: 2:25-cv-05605-MEMF-SPx <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S JANUARY 16, 2026 AND JANUARY 22, 2026 ORDERS (ECF NOS. 370 & 387)** <br><br> Hon. Maame Ewusi-Mensah Frimpong <br><br> Referred to Hon. Sheri Pym <br> United States Magistrate Judge |

Todd M. LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; Rodney S. SCOTT, in his official capacity as Commissioner, U.S. Customs and Border Patrol; Michael W. BANKS, in his official capacity as Chief of U.S. Border Patrol; Kash PATEL, in his official capacity as Director, Federal Bureau of Investigation; Pam BONDI, in her official capacity as U.S. Attorney General; Ernesto SANTACRUZ JR., in his official capacity as Acting Field Office Director for Los Angeles, U.S. Immigration and Customs Enforcement; Eddy WANG, Special Agent in Charge for Los Angeles, Homeland Security Investigations, U.S. Immigration and Customs Enforcement; Gregory K. BOVINO, in his official capacity as Chief Patrol Agent for El Centro Sector of the U.S. Border Patrol; Jeffrey D. STALNAKER, in his official capacity as Acting Chief Patrol Agent, San Diego Sector of the U.S. Border Patrol; Akil DAVIS, in his official capacity as Assistant Director in Charge, Los Angeles Office, Federal Bureau of Investigation; Bilal A. ESSAYLI, in his official capacity as U.S. Attorney for the Central District of California,

     Defendants.

1  JACOB S. KREILKAMP (SBN 248210)
   *jacob.kreilkamp@mto.com*
2  DAVID FRY (SBN 189276)
   *david.fry@mto.com*
3  SARA H. WORTH (SBN 341088)
   *sara.worth@mto.com*
4  HENRY D. SHREFFLER (SBN 343388)
   *henry.shreffler@mto.com*
5  LAURA R. PERRY (SBN 342504)
   *laura.perrystone@mto.com*
6  LAUREN E. KUHN (SBN 343855)
   *lauren.kuhn@mto.com*
7  MAGGIE BUSHELL (SBN 354048)
   *maggie.bushell@mto.com*
8  MUNGER, TOLLES & OLSON LLP
   350 S. Grand Ave., 50th Floor
9  Los Angeles, CA 90071
   Tel: 213-683-9100; Fax: 213-683-9100
10
   *Counsel for Stop/Arrest Plaintiffs*
11
12 LAUREN MICHEL WILFONG*
   *lwilfong@ndlon.org*
13 NATIONAL DAY LABORER
   ORGANIZING NETWORK
14 1030 S. Arroyo Parkway, Suite 106
   Pasadena, CA 91105
15 Tel: 626-214-5689

16 *Counsel for Stop/Arrest Plaintiffs*

17 BREE BERNWANGER (SBN 331731)
   *bbernwanger@aclunc.org*
18 AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION OF NORTHERN
   CALIFORNIA
19 39 Drumm Street
   San Francisco, CA 94111
20 Tel: 415-621-2493

21 *Counsel for Stop/Arrest Plaintiffs*

22 BRISA VELAZQUEZ OATIS
   (SBN 339132)
23 *bvoatis@aclu-sdic.org*
   ACLU FOUNDATION OF
24 SAN DIEGO & IMPERIAL COUNTIES
   P.O. Box 87131
25 San Diego, CA 92138-7131
   Tel: 619-398-4199
26
   *Counsel for Stop/Arrest Plaintiffs*
27

28

MATTHEW J. CRAIG (SBN 350030)
*mcraig@heckerfink.com*
MACK E. JENKINS (SBN 242101)
*mjenkins@heckerfink.com*
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Tel: 212-763-0883; Fax: 212-564-0883

*Counsel for Access/Conditions Plaintiffs*

EDGAR AGUILASOCHO (SBN 285567)
*eaguilasocho@farmworkerlaw.com*
MARTÍNEZ AGUILASOCHO LAW, INC.
900 Truxtun Ave, Suite 300
Bakersfield, CA 93301
Tel: 661-859-1174

*Counsel for Plaintiff United Farm Workers*

CARL BERGQUIST*
*cbergquist@chirla.org*
COALITION FOR HUMANE IMMIGRANT
RIGHTS
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

*Counsel for Plaintiff Coalition for Humane
Immigrant Rights*

ALVARO M. HUERTA (SBN 274787)
*ahuerta@immdef.org*
BRYNNA BOLT (SBN 339378)
*bbolt@immdef.org*
ALISON STEFFEL (SBN 346370)
*asteffel@immdef.org*
IMMIGRANT DEFENDERS LAW CENTER
634 S. Spring St., 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

*Counsel for Plaintiff Immigrant
Defenders Law Center*

* Admitted pro hac vice

1   HYDEE FELDSTEIN SOTO
    (SBN 106866)
2   City Attorney
    hydee.feldsteinsoto@lacity.org
3   VALERIE L. FLORES (SBN 138572)
    valerie.flores@lacity.org
4   MICHAEL J. DUNDAS (SBN 226930)
    mike.dundas@lacity.org
5   MARIA LOUISE COUSINEAU
    (SBN 122280)
6   maria.cousineau@lacity.org
    RANDALL G. SOMMER
7   (SBN 214099)
    randall.sommer@lacity.org
8   SHUBHRA SHIVPURI (SBN 295534)
    shubhra.shivpuri@lacity.org
9   OFFICE OF THE LOS ANGELES
    CITY ATTORNEY
10  City Hall 200 North Spring Street
    21st Floor
11  Los Angeles, CA 90012-4130
    Tel.: 213-922-8382; Fax: 213-978-7957
12
    *Attorneys for Intervenor*
13  *City of Los Angeles*

14  E. MARTIN ESTRADA
    (SBN 223802)
15  martin.estrada@mto.com
    DANIEL B. LEVIN (SBN 226044)
16  daniel.levin@mto.com
    JOHN L. SCHWAB (SBN 301386)
17  john.schwab@mto.com
    V. GRACE DAVIS (SBN 336732)
18  grace.davisfisher@mto.com
    V. ROMAN LEAL (SBN 348892)
19  roman.leal@mto.com
    WENDY QIUYU XIAO (SBN 342702)
20  wendy.xiao@mto.com
    MUNGER, TOLLES & OLSON LLP
21  350 South Grand Avenue
    50th Floor
22  Los Angeles, California 90071
    Tel.: 213-683-9100; Fax: 213-687-3702
23
    *Attorneys for Intervenors Cities of Los*
24  *Angeles, Anaheim, Bell Gardens, Beverly Hills,*
    *Carpinteria, Culver City, Huntington Park,*
25  *Long Beach, Lynwood, Montebello, Monterey*
    *Park, Oxnard, Paramount, Pico Rivera,*
26  *Pomona, Santa Ana, Santa Barbara, Santa*
    *Monica, South Gate, and West Hollywood*
27

28

NICOLE DAVIS TINKHAM (SBN 229592)
ntinkham@counsel.lacounty.gov
LILIANA CAMPOS (SBN 255753)
lcampos@counsel.lacounty.gov
BRIGIT GREESON ALVAREZ (SBN 237301)
bgreesonalvarez@counsel.lacounty.gov
OFFICE OF THE COUNTY COUNSEL
648 Kenneth Hahn Hall of Admin.,
500 West Temple Street
Los Angeles, California 90012-2713
Tel.: 213-808-8736; Fax: 213-633-1915

*Attorneys for Intervenor County of Los Angeles*

MICHELE BEAL BAGNERIS (SBN 115423)
City Attorney
mbagneris@cityofpasadena.net
ARNOLD F. LEE (SBN 278610)
aflee@cityofpasadena.net
ANDREW AARONIAN (SBN 318245)
aaaronian@cityofpasadena.net
OFFICE OF THE CITY ATTORNEY
OF PASADENA
100 N Garfield Ave, Rm N-210
Pasadena, CA 91101
Tel.: 626-744-4141; Fax: 626-744-4190

*Attorneys for Intervenor City of Pasadena*

NORMAN L. EISEN*
Norman@democracydefenders.org
STEPHEN A. JONAS (SBN 542005)
Steve@democracydefenders.org
JOSHUA G. KOLB*
Joshua@democracydefenders.org
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave. SE, Suite 15180
Washington, DC 20003
Tel: (202) 594-9958

*Admitted *Pro Hac Vice*

*Attorneys for Intervenor City of Los Angeles*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................ 1

    A.    The Expedited Discovery Order ............................................................... 1

    B.    Defendants Have Stonewalled Discovery, Partly Through Patent
          Misinterpretation of the Expedited Discovery Order. .............................. 2

    C.    Evidence of Defendants' Inadequate Search ............................................ 4

    D.    The Magistrate Judge's Ruling ................................................................. 6

III.    ARGUMENT ..................................................................................................... 6

    A.    Defendants' New Evidence and New Arguments Should Not Be
          Considered ................................................................................................. 6

    B.    The Magistrate Judge's Ruling Was Clearly Correct, Not Clearly Erroneous
          or Contrary to Law .................................................................................... 9

    C.    Defendants' Arguments that Producing Body Worn Camera Footage Is
          Burdensome Are Wrong. ........................................................................ 13

IV.    CONCLUSION ................................................................................................ 15

PLAINTIFFS' OPP. TO DEFENDANTS' OBJECTIONS TO ECF 370 & ECF 387

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Bhan v. NME Hospitals, Inc.*,
    929 F.2d 1404 (9th Cir. 1991) ................................................................. 6

*Borges v. Bondi*,
    145 F.4th 27 (1st Cir. 2025) ................................................................... 5

*Castillo v. Martinez*,
    2024 WL 289318 (C.D. Cal. Jan. 24, 2024) ........................................... 8

*First Savings Bank, F.S.B. v. U.S. Bancorp*,
    184 F.R.D. 363 (D. Kan. 1998) .............................................................. 7

*Greenhow v. Sec'y of Health & Human Servs.*,
    863 F.2d 633 (9th Cir. 1988), overruled on other grounds, *United States v.
Hardesty*, 977 F.2d 1347 (9th Cir. 1992) ................................................ 8

*Haines v. Liggett Grp., Inc.*,
    975 F.2d 81 (3d Cir. 1992) .................................................................... 7

*Harbridge v. Yates*,
    2012 WL 639476 (E.D. Cal. Feb. 24, 2012) .......................................... 8

*Hightower v. J.P. Morgan Chase*,
    2012 WL 12878312 (C.D. Cal. Sept. 28, 2012) .................................. 7, 8

*Kasparov, Pte Ltd. v. Zacherl*,
    798 F. Supp. 3d 551 (E.D.N.C. 2025) ................................................... 9

*Lloyds of London Syndicate 2003 v. Fireman's Fund Ins. Co. of Ohio*,
    320 F.R.D. 557 (D. Kan. 2017) ............................................................ 14

*Paddington Partners v. Bouchard*,
    34 F.3d 1132 (2d Cir. 1994) .................................................................. 7

*Paramount Pictures Corp. v. Replay TV*,
    2002 WL 32151632 (C.D. Cal. May 30, 2002) ................................... 6, 7

*Perez v. Mueller*,
    2016 WL 3360422 (E.D. Wis. May 27, 2016) ...................................... 13

*Rojas-Vega v. United States Immigr. & Customs Enf't*,
    302 F. Supp. 3d 300 (D.D.C. 2018) ....................................................... 5

*UMG Recordings Inc. v. Global Eagle Ent., Inc.*,
    2015 WL 12752881 (C.D. Cal. Aug. 27, 2015) .................................. 7, 8

*Williams v. J.B. Hunt Transport, Inc.*,
    2021 WL 3625337 (C.D. Cal. May 19, 2021) ........................................ 9

**FEDERAL STATUTES**

28 U.S.C. § 626(b)(1)(A) ............................................................................................ 7

28 U.S.C. § 626(b)(1)(B) ............................................................................................ 7

28 U.S.C. § 636(b)(1) ................................................................................................. 7

28 U.S.C. § 636(b)(1)(A) ......................................................................................... 6, 7

**STATE STATUTES**

Privacy Act .........................................................................................................13, 14

**STATE RULES**

Rule 26 ...........................................................................................................10, 11, 12

Rule 26(b)(1) ...............................................................................................................12, 13

Rule 26(b)(2)(C) ..........................................................................................................8, 10, 12

Rule 26(g) .................................................................................................................... 10

**RULES - OTHER**

Fed. R. Civ. P. 72(a) ................................................................................................... 6

Fed. R. Evid. 502 ...................................................................................................... 14

Local Rule 7-18 .......................................................................................................... 9

**OTHER AUTHORITIES**

Shelley S. Hyland, "Body-Worn Cameras in Law Enforcement Agencies, 2016," ....................... 13

## I.  **INTRODUCTION**

Defendants unsuccessfully opposed Plaintiffs' and Intervenors' Joint Motion for Limited Expedited Discovery.  This Court granted the motion on October 17, 2025, and expressly authorized Plaintiffs to serve the proposed document requests that Plaintiffs had submitted to the Court with the motion.  ECF 223 ("Expedited Discovery Order") at 10.  Since then, Defendants have endeavored at every turn to undermine the purpose of the Expedited Discovery Order.  They have repeatedly "construed" Plaintiff's document requests in unreasonable ways—ironically contending that the Expedited Discovery Order, which found those requests *not* to be unduly burdensome, itself justified their indefensibly narrow readings.  Defendants also failed to produce many documents that are plainly responsive even under *their reading* of the requests, amply justifying the Magistrate Judge's conclusion that they failed to conduct a reasonable search for documents.  The Magistrate Judge's January 16, 2026 order compelling production (ECF 370, hereafter the "Order") was correct and well-warranted—a far cry from anything that could be called "clearly erroneous" or "contrary to law."

In a last-ditch attempt to avoid providing the expedited discovery that this Court ordered nearly four months ago, Defendants improperly submit new evidence and arguments that were not before the Magistrate Judge.  None of those arguments is sound; most already have been effectively rejected by this Court; and there is no reason for this Court even to consider arguments not made to the Magistrate Judge.  Defendants' objections ("Objections") should be overruled in their entirety.

## II.  **BACKGROUND**

### A.  **The Expedited Discovery Order**

On September 22, 2025, Plaintiffs and Intervenors filed a Joint Motion for Limited, Expedited Discovery.  ECF 211.  The motion was accompanied by written discovery that Plaintiffs proposed to serve as part of the expedited discovery process, including a set of just four document requests.  ECF 211-1 Ex. 2.  Request for Production ("RFP") No. 2 in those requests sought documents relating to a list of fifteen operations—out of the hundreds of operations Defendants have conducted in the Central District since June 2025.  *Id.*  RFP No. 3 sought

communications concerning a subset of those operations.  *Id.*  Defendants opposed the motion, arguing in part that this discovery was overly burdensome because it swept more broadly than the specific encounters discussed in the preliminary injunction briefing.  *See, e.g.*, ECF 214 at 8-9 ("Plaintiffs request is 'limited' in name only.  Indeed, the breadth and scope of Plaintiffs' discovery request … asks for much more information than needed to address their stated basis for discovery. … Courts deny or sharply prune expedited discovery that functions as a merits-level audit rather than incident- or declaration-specific issues tied to preliminary relief.").  On October 17, 2025, the Court granted Plaintiffs' and Intervenors' Motion for Limited, Expedited Discovery, rejecting Defendants' burden arguments.  ECF 223 at 4-6, 8.  The Court specifically authorized Plaintiffs to serve their proposed discovery, including the four requests for production of documents.  *Id.* at 10.

**B.    Defendants Have Stonewalled Discovery, Partly Through Patent Misinterpretation of the Expedited Discovery Order.**

Having failed to persuade the Court that Plaintiffs' proposed discovery was overly burdensome, Defendants "construed" that discovery in plainly unreasonable ways to limit the discovery they actually produced, and failed to provide Plaintiffs with any notice of these unreasonable interpretations when they made the productions.  At issue here is Defendants' reading of RFP Nos. 2 and 3, which they construed to seek documents concerning only specific encounters between persons identified by Plaintiffs and immigration agents, rather than documents relating to the operations during which those encounters occurred, as the plain language of the RFP.[1]  Defendants' reading, as the Magistrate Judge put it, is "untenable."  ECF 370 at 5.

---

[1] In addition to the disputes Judge Pym addressed in her January 16, 2026 order, Defendants have argued that this Court's Expedited Discovery Order meant that they did not have to produce *any* documents relating to three of the operations listed in RFP No. 2.  *See* ECF 305 at 6.  Judge Pym had to order them again to produce documents concerning those operations.  *Id.* at 6-7.  Further, Defendants made a convoluted argument that the Expedited Discovery Order somehow meant they did not have to comply with the plain terms of Judge Pym's Scheduling Order requiring them to produce documents they relied upon in opposing the TRO or preliminary injunction by November 4.  ECF 266-8 at 1-2.  Defendants asserted that they need only produce documents responsive to RFP 1 (training documents) by that date, and did not have to produce documents relating to the operations.  *Id.*  When Judge Pym said that was incorrect, Defendants asserted that their misinterpretation of her order was "a good faith misunderstanding," a claim that she later found "lack[ed] credibility."  ECF 305 at 5.

RFP No. 2 requests "All DOCUMENTS RELATING TO the operations below …" and then (after identifying categories of potentially responsive documents, such as body worn camera videos) it lists 15 operations. ECF 320-2 at 6. The operations are described in terms of date and location, with some (but not all) of them also specifying a person or persons stopped during the operation. *Id.* at 6-7. So, for instance, the first operation on the list is specified as follows:

> a. The June 18 operation in Pasadena, CA in which Plaintiffs Vasquez Perdomo, Osorto, and Villegas Molina were encountered;

*Id.* at 6. RFP No. 3 seeks communications relating to certain of the listed operations. *Id.* at 7.

RFP No. 2 expressly seeks all documents relating to "the *operations* below," and yet Defendants construed it to seek only documents relating to the "*encounters*" with the specified individuals.[2] In addition to being impossible to reconcile with the actual language of RFP No. 2, Defendants' "construction" could not possibly be applied to the three operations as to which the request did not identify any persons. *Id.* at 7 (RFP Nos. 2(m)-2(o)—none of which identifies a person). Defendants did not disclose their narrowing construction of the RFPs in their written response. ECF 320-3 at 10-11. For this reason, Plaintiffs did not know until after Defendants had completed their production that Defendants had not produced, and did not intend to produce, most of the documents requested.

Defendants contend that their reading of the RFPs is somehow Plaintiffs' fault because "operation" is not a defined term in the requests (Objections at 3), but (1) Defendants did not object to the term as ambiguous in their written responses (ECF 320-3 at 10-11), and (2) the term "operation" is not ambiguous in this context. Indeed, Defendants themselves used "operation" repeatedly in their papers opposing the motion for a preliminary injunction in exactly the way Plaintiffs used it in the RFPs—to refer to a group of immigration agents conducting enforcement activities at a particular location, and *not* to refer to any specific individual encounter that resulted.

---

[2] Notably, Defendants did not even follow their own reading of RFP No. 2. Where multiple agents' body cameras recorded the encounter with one of the specified individuals, Defendants produced the body camera footage only from the agent who made the stop or arrest—not from the other agents. ECF 320-10 at 5 (letter from Defendants' counsel saying "Defendants decline to produce body worn footage for all agents present during encounters").

For example, the following are three passages from pages 5 and 6 of Defendants' Supplemental Opposition to Motion for Preliminary Injunction (ECF 178) reflecting this understanding:

> 3    All of Plaintiffs' evidence reflects encounters that fall into these constitutional buckets. To start,
> 4    on August 6, 2025, the Border Patrol ran a targeted operation at the Westlake Home Depot based on
> 5    intelligence, resulting in several encounters. Molina Decl., ¶ 12. Miguel Angel Tijerino Garmendia

> 15    On August 7, 2025, CBP conducted a targeted operation at the San Bernardino Home Depot based
> 16    on actionable intelligence about specific individuals and their immigration status associated with that
> 17    location. Molina Decl., ¶ 13. Juan Francisco Aparicio Saldana, who was at that location, acknowledges

> 19    On August 3, 2025, Border Patrol Agents conducted an immigration enforcement operation at
> 20    Paramount Home Depot. Molina Decl., ¶ 9. S.C.C.H. reports that he encountered the agents. S.C.C.H.

In each instance, Defendants characterized the enforcement activities at a certain location on a particular date as an "operation"—singular—and not as a group of "operations" at that location. And, of course, the first passage above expressly says that multiple "encounters" took place as part of the one "operation" at the Westlake Home Depot.

This case concerns an unlawful pattern and practice by the Defendants. Evidence regarding operations as a whole—not just specific encounters within those operations—is relevant and has been ordered by Judge Frimpong.

### C.    Evidence of Defendants' Inadequate Search

In addition to adopting an unreasonably narrow construction of RFP No. 2 (and, by extension, RFP No. 3), the record shows that Defendants did not undertake a reasonable search for documents falling even within their improperly narrow reading of the request. For example, Defendants did not produce a single Form I-213—which is the equivalent of a police report for immigration arrests—of any individual arrested in the operations. ECF 320-1 ¶ 8. Nor did they produce any EARM encounter reports for most of the arrests, another standard form of

documentation.  *Id.*; *see also Borges v. Bondi*, 145 F.4th 27, 29 (1st Cir. 2025) (describing EARM "summaries" DHS used in immigration court proceedings); *Rojas-Vega v. United States Immigr. & Customs Enf't*, 302 F. Supp. 3d 300, 307 (D.D.C. 2018) (quoting declaration submitted by ICE explaining that, using EARM, the agency "accesses records related to the investigation, arrest, booking, detention, and removal of persons encountered during immigration and criminal law enforcement investigations and operations conducted by ICE, U.S. Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS)").  As noted above, Defendants also did not produce any body worn camera video except from the agents who made the stops of the named individuals, even though other agents were present for those stops and also had body worn cameras.  ECF 320-10 at 5 (letter from Defendants' counsel saying "Defendants decline to produce body worn footage for all agents present during encounters").

After making this initial production, Defendants repeatedly produced additional documents after the production deadline in ways that indicated that the original collection procedure was inadequate.  Twice, at roughly 11 p.m. or midnight on the night before their respective depositions, Defendants produced images of WhatsApp messages involving agents who were being deposed.  ECF 320-1 ¶¶ 6-7.  This pattern demonstrates that no reasonable effort was made to gather messages before the production deadline (which was weeks before the depositions), and that no reasonable effort was ever made to gather the messages of agents who were not being deposed.  *See* ECF 329 at 4 (several deponents testified that they were never asked to collect documents in connection with the litigation or were unable to say when they were asked to do so).

When Plaintiffs sought to meet and confer with Defendants about these apparent inadequacies, Defendants' counsel conceded that they did not gather preserved audio files from Zello (a push-to-talk messaging app used by agents), but instead prepared "redacted" transcripts of those messages and produced those.  ECF 320-10 at 3.  Defendants' counsel further stated that Defendants did not produce any texts sent using native texting applications (such as the Messages app on iPhones) because agents do not use those apps for work.  ECF 320-1 ¶ 11.

### D.    The Magistrate Judge's Ruling

Plaintiffs moved to compel Defendants to respond fully and completely to Plaintiff's Expedited Requests for Production of Documents, Set One, and the Magistrate Judge granted the motion.  ECF 370.  With respect to the dispute over Defendants' interpretation of the RFPs, the Order found that (1) Defendants had waived any argument that "operation" was vague by failure to object; (2) Defendants' construction of RFP 2 was "untenable," and Defendants "indefensibly" chose not to produce documents concerning the entire operations listed; and (3) Defendants' argument that the Expedited Discovery Order supported their construction of the RFPs was "implausible."  ECF 370 at 6.  The Magistrate Judge summed up the last point as follows:  "The court has clarified in hearings, status conferences, and orders that defendants' narrow construction of the court's orders is unreasonable, and it is past time for defendants to conform their production to the plain language of the request."  *Id.*

With respect to the dispute over whether Defendants had conducted an adequate search for documents, the Magistrate Judge found that "[m]uch of the inadequate production appears to stem from defendants' unreasonable construction of RFP No. 2. … But there is also evidence that the searches themselves were inadequate."  *Id.* at 8.  The Magistrate Judge ordered Defendants to collect certain categories of documents, to collect documents from all agents present at the listed operations, to produce all body worn camera footage recorded by any agent present at the listed operations, to forensically image any cell phone used by an agent present at the listed operations, and to provide affidavits detailing their collection process.  *Id.* at 8-9.

## III.    ARGUMENT

### A.    Defendants' New Evidence and New Arguments Should Not Be Considered.

To prevail, Defendants must show that the Magistrate Judge's ruling was clearly erroneous or contrary to law.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *see also Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404, 1414 (9th Cir. 1991).  Defendants must make that showing, moreover, based on the record that was before the Magistrate Judge at the time she ruled on Plaintiffs' motion to compel.  *Paramount Pictures Corp. v. Replay TV*, 2002 WL 32151632, at *1 (C.D. Cal. May 30, 2002) (district court's role "is to decide whether the Magistrate Judge, based

on the evidence and information before him, rendered a decision that was clearly erroneous or contrary to law"). "The district court cannot consider evidence that was not before the magistrate judge in reviewing her factual determinations under 28 U.S.C. § 636(b)(1)(A)." *UMG Recordings Inc. v. Global Eagle Ent., Inc.*, 2015 WL 12752881, at *4 n.54 (C.D. Cal. Aug. 27, 2015); *see also Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) (in reviewing a magistrate judge's ruling on a non-dispositive matter "the district court is not permitted to receive further evidence"); *Paramount Pictures*, 2002 WL 32151632, at *1.

This restriction is statutory. Title 28 U.S.C. § 636(b)(1) permits district courts to refer either nondispositive matters (§ 636(b)(1)(A)) or dispositive matters (§ 626(b)(1)(B)) to a magistrate judge. In reviewing magistrate judges' report and recommendations regarding dispositive matters, the statute expressly provides that "[t]he judge may also receive further evidence." 28 U.S.C. § 636(b)(1). But with respect to review of magistrate judges' orders on *nondispositive* matters, the statute contains no such authorization and instead imposes the deferential "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A). "Thus, the oft-stated rule is that a district court may not receive further evidence when reviewing a nondispositive matter under 28 U.S.C. § 626(b)(1)(A)."[3] *First Savings Bank, F.S.B. v. U.S. Bancorp*, 184 F.R.D. 363, 366 (D. Kan. 1998). Rulings on discovery issues are nondispositive. *Hightower v. J.P. Morgan Chase*, 2012 WL 12878312, at *1 (C.D. Cal. Sept. 28, 2012).

Because it was not presented to the Magistrate Judge, the Declaration of A.A.M. (ECF 395-1), filed with Defendants' Objections, therefore should either be stricken or disregarded in its entirety—as should all burden arguments Defendants premise on it. For the same reason, Defendants' burden arguments based on the Declaration of Benjamin Mark Moss (ECF 379-1) should be disregarded. The Moss Declaration was filed *after* the Magistrate Judge had already ruled on Plaintiffs' Motion to Compel—indeed, it was filed in support of Defendants' *ex parte* application for a stay of that ruling. The Moss Declaration was not part of the record before the

---

[3] Some courts have suggested that a district court reviewing a magistrate judge's nondispositive rulings may consider new evidence if there is a justification for the evidence not having been presented to the magistrate judge. *See, e.g.*, *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994). Defendants have offered no such justification, and there is none.

Magistrate Judge when she issued the ruling, but is instead part of Defendants' effort to relitigate the Motion to Compel based on arguments and evidence they chose not to present when opposing the motion. Defendants' Objections rely extensively on these two declarations that are not properly before the Court. *See* Objections at 3-7, 10-11, 13-14, 16.

In addition to the improper declarations, Defendants' arguments that the Order is contrary to Rule 26(b)(2)(C) and that it compels discovery disproportionate to the case (Objections sections IV.B. and IV.C.) should be disregarded because they were not presented to the Magistrate Judge. Even as to dispositive rulings, where *de novo* review applies, the Ninth Circuit has rejected efforts to raise new arguments before the district court. *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638 (9th Cir. 1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds*, *United States v. Hardesty*, 977 F.2d 1347, 1348 (9th Cir. 1992); *see also Castillo v. Martinez*, 2024 WL 289318, at *1 (C.D. Cal. Jan. 24, 2024) ("Generally, a district court is not required to consider new theories that were not previously presented to the Magistrate Judge.").

Consideration of new arguments is still less justified on review of nondispositive motions, which is meant to be "significantly deferential, requiring a definite and firm conviction that a mistake has been committed." *UMG Recordings*, 2015 WL 12752881, at *4 (internal quotation marks omitted). "Motions for reconsideration and objections to a Magistrate Judge's order are not the place for a party to make a new argument and raise facts not addressed in his original brief." *Hightower*, 2012 WL 12878312, at *2 (internal quotation marks omitted); *see also Harbridge v. Yates*, 2012 WL 639476, at *1 (E.D. Cal. Feb. 24, 2012) (same). Defendants are not *pro se* litigants—they are represented by the United States Department of Justice. They cannot reasonably claim the Magistrate Judge erred by failing to rule for them based on arguments they did not make.

**B.**    **The Magistrate Judge's Ruling Was Clearly Correct, Not Clearly Erroneous
or Contrary to Law.**

Even ignoring that many of Defendants' arguments are waived, all of the arguments in

Defendants' Objections fail on the merits.

**1.**    **The Magistrate Judge Correctly Determined that Defendants'
Construction of RFPs Nos. 2 and 3 Was Unreasonable.**

The plain language of RFP No. 2 calls for all documents related to the listed "operations,"

not related to specific "encounters" that occurred during those operations.  As outlined above, the

term "operation" is not ambiguous in this context and, as the Magistrate Judge found, Defendants'

failure to object to it as ambiguous waived any argument about ambiguity.  *See Kasparov, Pte Ltd.

v. Zacherl*, 798 F. Supp. 3d 551, 561 (E.D.N.C. 2025) (party that objects to request as ambiguous

but fails to explain why waives objection); *Williams v. J.B. Hunt Transport, Inc.*, 2021 WL

3625337, at *9 (C.D. Cal. May 19, 2021) (party objecting on vagueness grounds must explain the

objection).

Defendants' contention the Expedited Discovery Order required the Magistrate Judge to

adopt Defendants' non-textual interpretation of RFP No. 2 defies logic; the Expedited Discovery

Order authorized Plaintiffs to serve these requests as written—including RFP No. 2.  ECF 223 at

10.  Defendants specifically argued in opposition to the Motion for Limited, Expedited Discovery,

at great length, that the requests were unduly burdensome and went beyond the scope of the

preliminary injunction.  ECF 214 at 8-12.  They lost that motion, and even they concede—

although burying the concession in a footnote—that this Court already has rejected their burden

arguments.  Objections at 15 n.4.  That renders the Objections a motion for reconsideration, but

one that meets none of the procedural or substantive requirements of Civil Local Rule 7-18.

Defendants contend that the Magistrate Judge's construction of RFP No. 2—*i.e.*, applying

the request's plain language—amounts to a "large-scale audit" that this Court said was not

contemplated.  Objections at 15 n.4.  But the Court had RFP No. 2 before it when it rejected

Defendants' "large scale audit" argument.  ECF 223 at 5.  And Defendants create a misleading

impression of the Court's ruling by omitting most of the relevant language from the Court's order.

The Court rejected Defendants' claim that the discovery amounted to a "large-scale audit *of*

1  *Defendants' immigration enforcement operations in the Central District of California*."  ECF 223

2  at 5 (emphasis added).  Defendants have mounted hundreds of operations in the Central District of

3  California since June; they claim to have arrested over 10,000 people as a result.  *See*

4  https://www.dhs.gov/news/2025/12/11/more-10000-illegal-aliens-arrested-sanctuary-los-angeles-

5  dhs-launched-operations (last visited Feb. 12, 2026).  RFP No. 2 concerns only a handful of those

6  operations—primarily ones that were specifically discussed in the preliminary injunction papers.

**2.  The Magistrate Judge Correctly Determined that Defendants Conducted an Inadequate Search for Documents.**

8  The evidence before the Magistrate Judge amply justified her finding that Defendants'

9  searches were inadequate.  The evidence Judge Pym considered included the types of documents

10 that were not produced, the timing of the production of other documents, and the limited scope of

11 production of still other documents (e.g., body worn camera footage).  *See* ECF 320 at 10-11 (and

12 materials cited there).   Indeed, Defendants' arguments in opposition to the Motion to Compel

13 implicitly *conceded* that the search was inadequate—while blaming others for its inadequacy.  *See*,

14 *e.g.*, ECF 320 at 16 ("The Court's expedited discovery schedule did not provide adequate time for

15 multiple agency components to collect and ensure all responsive materials from numerous sources

16 and individuals [were] produced any sooner"); 16-17 ("Unfortunately, the scope of the requests

17 and the expedited pace of the discovery was not conducive to the type of careful measured

18 approach to the collection and review of material the agency would normally undertake ….").

19 There is no basis to find that the Magistrate Judge's determination that Defendants did not conduct

20 an adequate search was error, much less clear error.

**3.  Judge Pym Was Not Required by Rule 26(b)(2)(C) to Endorse Defendants' Interpretation of the RFPs.**

23 Defendants' newfound argument that Rule 26(b)(2)(C) required the Magistrate Judge to

24 adopt Defendants' reading of RFP Nos. 2 and 3 should be rejected.  First, and as detailed above,

25 this argument was not made to the Magistrate Judge.  *See* ECF 320 at 2-3, 12-18 (Defendants'

26 sections of the Joint Statement addressing scope dispute, but making no reference to Rule 26);

27 ECF 330 (Defendants' supplemental brief discussing only Rule 26(g)—concerning counsel's

28 obligations).  But even if Defendants had made the argument, it would have been unavailing.

-10-

1    Defendants contend that the Magistrate Judge was required to adopt their reading of RFP

2    No. 2 because she had a mandatory obligation to "limit the frequency or extent of discovery . . . if

3    [she] determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be

4    obtained from some other source that is more convenient, less burdensome, or less expensive."

5    Objections at 9.  That argument fails at every step.  *First*, the Magistrate Judge *did not* determine

6    that the discovery sought was cumulative, duplicative, or could be obtained elsewhere—so the

7    provision does not apply.  *Second*, the requests were not, in fact, cumulative, duplicative, or

8    seeking information that could be obtained elsewhere—and Defendants do not argue that they

9    were any of those things.  These requests could not be cumulative or duplicative, as they were the

10   first document requests in the case.  Rather than claiming they are cumulative or duplicative, or

11   that the information was available from another source, Defendants assert that responding to the

12   requests requires a lot of effort on their part.  Objections at 9.  The Magistrate Judge was under no

13   "mandatory" obligation to protect Defendants from having to produce more documents than they

14   wanted to produce.  *Third*, this Court had already found that the requests were not unduly

15   burdensome, so it could hardly have been clear error for the Magistrate Judge not to *sua sponte*

16   decide that they were.  Defendants' Rule 26 argument is meritless, as well as waived.

17   Defendants also make various additional meritless claims.  They characterize Plaintiffs'

18   reading of RFP No. 2 as a "post-hoc construction" of the request—apparently on the basis that

19   Plaintiffs did not move to compel until after Defendants' production deadline.  Objections at 9.

20   But Plaintiffs' reading is not "post-hoc," it is simply the plain language of the request.  Plaintiffs

21   could not have moved to compel earlier because Defendants did not disclose their narrowing

22   construction in their written response, so Plaintiffs did not know about it until after Defendants

23   produced their documents and Plaintiffs had a chance to review them.  Defendants also complain

24   that the Magistrate Judge has given them a short time to produce the documents.  Objections at 10.

25   But this Court authorized service of these requests in October—Defendants have had *months* to

26   produce the documents, even though this discovery was meant to be expedited.  The Magistrate

27   Judge has had to repeatedly compel Defendants to produce documents they should have produced,

28   and to correct their unreasonable readings of both the requests and the orders issued by this Court

-11-

and the Magistrate Judge. *See* ECF 370 at 6 ("The court has clarified in hearings, status conferences, and orders that defendants' narrow construction of the court's orders is unreasonable, and it is past time for defendants to conform their production to the plain language of the request.").

### 4.    The Document Requests Are Not Disproportionate to the Case.

Defendants contend that the Order "is contrary to law because it severs the proportionality analysis from the limited purpose for which expedited discovery was authorized by the District Court." Objections at 14. That argument fails for multiple reasons. First, the Order does not include a "proportionality analysis." Defendants did not argue to the Magistrate Judge that the RFP No. 2 violated the proportionality standard of Rule 26(b)(1), so the Magistrate Judge did not analyze that issue.[4] As with their Rule 26(b)(2)(C) argument, Defendants did not make this argument to the Magistrate Judge and so waived it.

Defendants' argument also fails because, by its terms, Rule 26(b)(1) requires that discovery be proportional "*to the case*," not to one phase of the case. *See* Fed. R. Civ. P. 26(b)(1). Even if the requests were disproportionate to the expedited discovery phase of the case (they were not), they could not have violated Rule 26(b)(1)'s proportionality standard unless they were disproportionate to the case—which Defendants do not even argue. Defendants cannot meet the "contrary to law" standard by re-writing Rule 26 and saying the Magistrate Judge violated their revised version.

Finally, as this Court has already determined, these requests are in fact appropriate to the expedited discovery phase of the case. ECF 223 at 5-8. As the Court stated, these requests seek "far less than what [Plaintiffs] might be entitled to on merits discovery." *Id.* at 5. Defendants have mounted a massive immigration enforcement effort in the Central District, and these requests

---

[4] In quoting from their responses and objections to RFP No. 2, Defendants' portion of the Joint Stipulation included language saying that the request was "overbroad, unduly burdensome, [and] not proportional to the scope of Plaintiffs' lawsuit or the scope of the Court's order granting limited discovery." ECF 320 at 13. Other than quoting the objection, however, Defendants did not mention the proportionality standard of Rule 26(b)(1)—instead arguing that their reading of the request was required by the limited scope of discovery supposedly permitted by the Expedited Discovery Order. *Id.* at 14.

1    seek information concerning only a sliver of that effort.  The "importance of the issues at stake in

2    the action" is extremely high—it concerns constitutional violations on a mass scale—and the

3    Defendants possess tremendous "resources."  *See* Fed. R. Civ. P. 26(b)(1) (discovery should be

4    "proportional to the needs of the case, considering the importance of the issues at stake in the

5    action, the amount in controversy, the parties' relative access to relevant information, the parties'

6    resources, the importance of the discovery in resolving the issues, and whether the burden or

7    expense of the proposed discovery outweighs its likely benefit"); *see also Perez v. Mueller*, 2016

8    WL 3360422, at *1 (E.D. Wis. May 27, 2016) (finding, in applying the Rule 26(b)(1)

9    proportionality standard, that "the federal government has unlimited resources").

10    **C.**    **Defendants' Arguments that Producing Body Worn Camera Footage Is Burdensome Are Wrong.**

11    

12         Defendants' Objections should be rejected for all of the reasons stated above.  In the course

13    of the Objections, Defendants also make assertions regarding the burden of producing body worn

14    camera footage.  *See*, *e.g.*, Objections at 13.  Although peripheral to deciding the Objections,

15    Defendants' arguments on that point merit a response.

16         Body worn camera footage will prove critical in this case because, while not flawless, such

17    video provides evidence of interactions between agents and members of the public, often more

18    detailed and credible than eyewitness recollections can provide, especially with the passage of

19    time.  Indeed, many law enforcement agencies invest in the equipment for this reason.[5]  Despite

20    the obvious significant value of this evidence, Defendants contend that requiring production of all

21    body worn camera footage from the 15 operations is unduly burdensome because, *inter alia*, it

22    requires "time-intensive Privacy Act and privilege review."  Objections at 13.  But one of the great

23    advantages of body worn camera footage is that there is actually no need for a time-consuming in-

24    depth review.

25    

26    _____

[5] *See* Shelley S. Hyland, "Body-Worn Cameras in Law Enforcement Agencies, 2016," United

27    States Department of Justice, Bureau of Justice Statistics (2018) at 3 (showing 78.6% of agencies that purchased body cameras identified "Improve evidence quality" as one of the reasons).

28    Available at https://bjs.ojp.gov/redirect-legacy/content/pub/pdf/bwclea16.pdf (last visited Feb. 12, 2026).

*First*, the Privacy Act does not require review at all. Under the Protective Order in this case, Defendants can produce documents subject to the Privacy Act without violating the Act as long as the documents are marked "Confidential" or "Confidential—Attorneys' Eyes Only." ECF 247 at 6 (§ B.2.). Defendants can simply mark the video as Confidential and avoid any Privacy Act issues.

*Second*, there is virtually no possibility that attorney-client communications or attorney work product will appear on the video. The body worn cameras are used to film interactions with members of the public, not meetings with lawyers. Indeed, the only agency using body worn cameras in these operations to date has been Customs and Border Protection ("CBP") and, under CBP's policy governing body camera use, the body cameras are to be turned on *only* "to record official law enforcement encounters," (Declaration of Lauren Kuhn ("Kuhn Decl.") Ex. 1 § 2.2), and agents are to "record enforcement encounters at the start of the event or as soon as safely possible thereafter and continue recording until the [agent's] involvement in the encounter has concluded" (*Id.* § 2.3). The policy expressly directs agents *not* to record "actions and conversations of coworkers when not actively engaged in resolving a law enforcement encounter." *Id.* § 2.7. And the policy specifically *prohibits* agents from recording either (a) "CBP personnel during non-enforcement activities, such as actions and conversations of coworkers when not actively engaged in a law enforcement encounter or CBP personnel during briefings, meetings, or roll calls," (*id.* § 8.7.1.3), or (b) "[p]rivileged communications between CBP personnel and their attorney or union representative" (*id.* at § 8.7.1.4). So, there is no reason to expect there to be any attorney-client or work product material in the videos.[6]

---

[6] Because the videos are so unlikely to include attorney-client or work product material, they are the rare type of document where it would be "reasonable" under Fed. R. Evid. 502 to take no pre-production steps to protect the privilege other than to confirm that the video files being produced are agents' body camera footage. *Compare Lloyds of London Syndicate 2003 v. Fireman's Fund Ins. Co. of Ohio*, 320 F.R.D. 557, 564 (D. Kan. 2017) (counsel's decision to conduct no review of 1500 page expert report, and instead to rely on expert, was reasonable under Rule 502 given the expert's experience in federal court litigation and briefing from counsel). If a stray attorney client communication or piece of work product somehow ended up on one of the videos, it would be a classic case of inadvertent disclosure warranting clawback.

*Third*, to the extent Defendants mean that review for law enforcement privilege is required, that too is incorrect.  As the Magistrate Judge ruled in her order concerning Defendants' claims of law enforcement privilege over other materials, "defendants have not shown there would be any material harm to government operation if the information at issue were disclosed under the protective order in this case."  ECF 365 at 9.  That conclusion applies at least as strongly to body camera footage because, under CBP policy, agents are supposed to be recording *only* their "law enforcement encounters" and not "meetings," "briefings," "roll calls," or any other "conversations with coworkers when not actively engaged in resolving a law enforcement encounter."  Kuhn Decl. Ex. 1 § 8.7.1.3.  If, despite these policies, some confidential information that would actually pose a risk if disclosed to the public appears on any of these videos, the restrictions imposed by the Protective Order are sufficient to address that risk.

For this particular case, where the disputed issues concern how immigration agents are handling a large number of interactions with members of the public, body worn camera footage is a critical source of evidence and has the rare quality that extensive pre-production review is not necessary or justified. This should permit production of significant quantities of relevant evidence in a few weeks, not months.

## IV.    **CONCLUSION**

For the foregoing reasons, Defendants' Objections to the Order (ECF 370) and, to the extent Defendants are objecting to it, the Magistrate Judge's order extending their time to produce the documents (ECF 387), should be overruled in their entirety.


DATED:  February 13, 2026                MUNGER, TOLLES & OLSON LLP


                                         By:    _____*/s/ Jacob S. Kreilkamp*_____
                                                JACOB S. KREILKAMP
                                                *Counsel for Stop/Arrest Plaintiffs*

## <u>ATTESTATION OF FILER</u>

I attest that the other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Dated: February 13, 2026                                   <u>*/s/ Jacob S. Kreilkamp*</u>

                                                            JACOB S. KREILKAMP

1

## **CERTIFICATE OF COMPLIANCE**

2      The undersigned, counsel of record for Stop/Arrest Plaintiffs, certifies that this

3  brief contains 5503 words, which complies with the word limit of L.R. 11.6-1.

4

5

6  DATED:  February 13, 2026          By:  */s/ Jacob S. Kreilkamp*

7  _____

8                                     JACOB S. KREILKAMP

                                       *Counsel for Stop/Arrest Plaintiffs*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28