STACY TOLCHIN (SBN 217431)
*stacy@tolchinimmigration.com*
LAW OFFICES OF STACY TOLCHIN
776 E. Green St., Suite 210
Pasadena, CA 91101
Tel: 213-622-7450; Fax: 213-622-7233

MOHAMMAD TAJSAR (SBN 280152)
*mtajsar@aclusocal.org*
MAYRA JOACHIN (SBN 306065)
*mjoachin@aclusocal.org*
EVA BITRÁN (SBN 302081)
*ebitran@aclusocal.org*
DAE KEUN KWON (SBN 313155)
*akwon@aclusocal.org*
STEPHANIE PADILLA (SBN 321568)
*spadilla@aclusocal.org*
DIANA SÁNCHEZ (SBN 338871)
*dianasanchez@aclusocal.org*
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
P.O. Box 811370
Los Angeles, CA 90081
Tel: 213-977-9500; Fax: 213-915-0219

*Counsel for Stop/Arrest Plaintiffs*

MARK ROSENBAUM (SBN 59940)
*mrosenbaum@publiccounsel.org*
REBECCA BROWN (SBN 345805)
*rbrown@publiccounsel.org*
SOPHIA WRENCH (SBN 354416)
*swrench@publiccounsel.org*
RITU MAHAJAN (SBN 252970)
*rmahajan@publiccounsel.org*
GINA AMATO (SBN 215519)
*gamato@publiccounsel.org*
AMANDA MANGASER SAVAGE
(SBN 325996)
*asavage@publiccounsel.org*
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Counsel for All Plaintiffs*

(*Additional counsel listed on next page*)

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Pedro VASQUEZ PERDOMO; Carlos Alexander OSORTO; and Isaac VILLEGAS MOLINA; Jorge HERNANDEZ VIRAMONTES; Jason Brian GAVIDIA; LOS ANGELES WORKER CENTER NETWORK; UNITED FARM WORKERS; COALITION FOR HUMANE IMMIGRANT RIGHTS; IMMIGRANT DEFENDERS LAW CENTER, <br><br> Plaintiffs, <br><br> v. <br><br> Kristi NOEM, in her official capacity as Secretary, Department of Homeland Security; Todd M. LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; Rodney S. SCOTT, in his official capacity as Commissioner, U.S. Customs and Border Patrol; Michael W. BANKS, in his | Case No.: 2:25-cv-05605-MEMF-SPx <br><br> ***DISCOVERY MATTER*** <br><br> **PLAINTIFFS' SUPPLEMENTAL BRIEF RE: PLAINTIFFS' MOTION TO REMOVE CONFIDENTIALITY DESIGNATION FROM GOV_VID_001** <br><br> Hon. Maame Ewusi-Mensah Frimpong <br><br> Referred to Hon. Sheri Pym <br> United States Magistrate Judge <br><br> Hearing Date: March 17, 2026 <br> Time: 11:00 a.m. <br><br> Discovery Cutoff: None Set <br> Pre-Trial Conf.: None Set <br> Trial: None Set |

| | |
|---|---|
| official capacity as Chief of U.S. Border Patrol; Kash PATEL, in his official capacity as Director, Federal Bureau of Investigation; Pam BONDI, in her official capacity as U.S. Attorney General; Ernesto SANTACRUZ JR., in his official capacity as Acting Field Office Director for Los Angeles, U.S. Immigration and Customs Enforcement; Eddy WANG, Special Agent in Charge for Los Angeles, Homeland Security Investigations, U.S. Immigration and Customs Enforcement; Gregory K. BOVINO, in his official capacity as Chief Patrol Agent for El Centro Sector of the U.S. Border Patrol; Jeffrey D. STALNAKER, in his official capacity as Acting Chief Patrol Agent, San Diego Sector of the U.S. Border Patrol; Akil DAVIS, in his official capacity as Assistant Director in Charge, Los Angeles Office, Federal Bureau of Investigation; Bilal A. ESSAYLI, in his official capacity as U.S. Attorney for the Central District of California,<br><br>    Defendants. | *[Filed concurrently with: Declaration of David Fry]* |

PLAINTIFFS' SUPPLEMENTAL BRIEF RE: PLAINTIFFS' MOT. TO REMOVE CONF. DESIGN.

| | | |
|---|---|---|
| 1 | JACOB S. KREILKAMP (SBN 248210) | ANNE LAI (SBN 295394) |
| | jacob.kreilkamp@mto.com | alai@law.uci.edu |
| 2 | DAVID FRY (SBN 189276) | UC IRVINE SCHOOL OF LAW IMMIGRANT |
| | david.fry@mto.com | AND RACIAL JUSTICE SOLIDARITY CLINIC |
| 3 | SARA H. WORTH (SBN 341088) | P.O. Box 5479 |
| | sara.worth@mto.com | Irvine, CA 92616-5479 |
| 4 | HENRY D. SHREFFLER (SBN 343388) | Tel: 949-824-9894; Fax: 949-824-2747 |
| | henry.shreffler@mto.com | |
| 5 | LAURA R. PERRY (SBN 342504) | *Counsel for Stop/Arrest Plaintiffs* |
| | laura.perrystone@mto.com | |
| 6 | LAUREN E. KUHN (SBN 343855) | MATTHEW J. CRAIG (SBN 350030) |
| | lauren.kuhn@mto.com | mcraig@heckerfink.com |
| 7 | MAGGIE BUSHELL (SBN 354048) | MACK E. JENKINS (SBN 242101) |
| | maggie.bushell@mto.com | mjenkins@heckerfink.com |
| 8 | MUNGER, TOLLES & OLSON LLP | HECKER FINK LLP |
| | 350 S. Grand Ave., 50th Floor | 1150 South Olive Street, Suite 10-140 |
| 9 | Los Angeles, CA 90071 | Los Angeles, CA 90015 |
| | Tel: 213-683-9100; Fax: 213-683-9100 | Tel: 212-763-0883; Fax: 212-564-0883 |
| 10 | | |
| | *Counsel for Stop/Arrest Plaintiffs* | *Counsel for Access/Conditions Plaintiffs* |
| 11 | | |
| | LAUREN MICHEL WILFONG* | EDGAR AGUILASOCHO (SBN 285567) |
| 12 | lwilfong@ndlon.org | eaguilasocho@farmworkerlaw.com |
| | NATIONAL DAY LABORER | MARTÍNEZ AGUILASOCHO LAW, INC. |
| 13 | ORGANIZING NETWORK | 900 Truxtun Ave, Suite 300 |
| | 1030 S. Arroyo Parkway, Suite 106 | Bakersfield, CA 93301 |
| 14 | Pasadena, CA 91105 | Tel: 661-859-1174 |
| | Tel: 626-214-5689 | |
| 15 | | *Counsel for Plaintiff United Farm Workers* |
| | *Counsel for Stop/Arrest Plaintiffs* | |
| 16 | | CARL BERGQUIST* |
| | BREE BERNWANGER (SBN 331731) | cbergquist@chirla.org |
| 17 | bbernwanger@aclunc.org | COALITION FOR HUMANE IMMIGRANT |
| | AMERICAN CIVIL LIBERTIES UNION | RIGHTS |
| 18 | FOUNDATION OF NORTHERN | 2351 Hempstead Road |
| | CALIFORNIA | Ottawa Hills, OH 43606 |
| 19 | 39 Drumm Street | Tel: 310-279-6025 |
| | San Francisco, CA 94111 | |
| 20 | Tel: 415-621-2493 | *Counsel for Plaintiff Coalition for Humane Immigrant Rights* |
| 21 | *Counsel for Stop/Arrest Plaintiffs* | |
| | | ALVARO M. HUERTA (SBN 274787) |
| 22 | BRISA VELAZQUEZ OATIS | ahuerta@immdef.org |
| | (SBN 339132) | BRYNNA BOLT (SBN 339378) |
| 23 | bvoatis@aclu-sdic.org | bbolt@immdef.org |
| | ACLU FOUNDATION OF | ALISON STEFFEL (SBN 346370) |
| 24 | SAN DIEGO & IMPERIAL COUNTIES | asteffel@immdef.org |
| | P.O. Box 87131 | IMMIGRANT DEFENDERS LAW CENTER |
| 25 | San Diego, CA 92138-7131 | 634 S. Spring St., 10th Floor |
| | Tel: 619-398-4199 | Los Angeles, CA 90014 |
| 26 | | Tel: 213-634-0999 |
| | *Counsel for Stop/Arrest Plaintiffs* | |
| 27 | | *Counsel for Plaintiff Immigrant Defenders Law Center* |
| | * Admitted pro hac vice | |
| 28 | | |

PLAINTIFFS' SUPPLEMENTAL BRIEF RE: PLAINTIFFS' MOT. TO REMOVE CONF. DESIGN.

## I. DEFENDANTS DO NOT DENY THAT THEY HAVE DEFAMED MR. GAVIDIA.

Strikingly, Defendants' portion of the Joint Stipulation does not deny that they have misled the District Court and the public regarding Brian Gavidia's June 12, 2025 encounter with CBP agents. They do not deny that the account they presented in opposition to the preliminary injunction motion was false. And they do not deny that what they have said about Mr. Gavidia on social media, to the press, and in a press release has also been false. But, of course, Defendants *could not* reasonably have denied their misrepresentations, because the video proves the statements were false. By itself, that is sufficient reason—but not the only reason—the video should be disclosed to the public.

## II. THE STANDARD FOR CONTINUED CONFIDENTIALITY IS *NOT* WHETHER INITIAL DESIGNATION UNDER THE NOVEMBER 3, 2025 PROTECTIVE ORDER WAS PROPER.

Defendants' lead argument—that this Court has already determined that there is good cause to bar disclosure of the video by virtue of entering the general protective order in this case on November 5, 2025 (ECF 247)—is wrong. In that order, the Court found good cause for entering a general protective order in the case for various reasons, including in order to "expedite the flow of information" and "to facilitate the prompt resolution of disputes over the confidentiality of discovery materials," ECF 247 at 2, but did not find good cause for barring disclosure of any particular document, category of documents, or specific information contained in any document. Additionally, the Ninth Circuit has made clear that a stipulated protective order has no effect on the burden of proof when a party seeks to disclose information covered by the order. *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011). The protective order entered here was, in large measure, an agreed-upon order. Even to the extent it was not, the Court did not purport to apply the good cause standard with respect to the substance of any discovery materials, nor could the Court have done that analysis, since no documents had been produced at that time and there was no way for the Court to make an informed judgment about them. The standard for whether information produced in discovery should be subject to public disclosure is the standard set forth in *Roman Catholic Archbishop*.

1  III.   **DEFENDANTS HAVE NOT MET THEIR BURDEN FOR CONTINUED CONFIDENTIALITY.**

Defendants initially opposed disclosure of the video in any form. After receiving Plaintiffs' section of the Joint Stipulation, Defendants modified their position. They now appear to be willing to agree to disclosure provided that the faces of agents and the phone screen of Agent C217 be blurred. Declaration of David H. Fry Ex. 1. Defendants have not met their burden to show good cause for nondisclosure of that information.

### A.   **Defendants Have Not Shown Particularized Harm.**

Defendants have not satisfied the first step in the analysis: showing particularized harm that would flow from the disclosures. They first contend that the appearance of an agent's phone screen "could reveal structural details of this internal government system," and that "[d]isclosure of this information risks the possibility of enabling offenders to gain access or insight as to how the database operates, which carries the serious risk of unauthorized use or manipulation of the database and law enforcement information contained therein." Joint Stipulation (ECF 430) ("JS") at 22-23. This is exactly the kind of "broad allegation of harm" that does not meet the particularized harm standard. *See Roman Catholic Archbishop*, 661 F.3d at 424. Defendants do not explain how the image on the video reveals any information that would enable someone to actually access the database, which is necessary for "unauthorized use or manipulation."[1] Unless login credentials are revealed—which Defendants do not suggest—how will having seen an image of the interface with the database permit access to the database? Defendants do not say. Nor do Defendants identify the supposed "structural details" of the database that would be so revealing. Courts have rejected these kinds of handwaving expressions of concern under the particularized harm requirement. *See, e.g.*, *Attia v. Oura Ring Inc.*, 2026 WL 440307, at *4 (N.D. Cal. Feb. 17, 2026) (claim that disclosure of board of directors materials could aid competitors does not meet particularized harm requirement where company has not identified any corporate plan that might be revealed or how that plan would be affected by disclosure); *Orgain, Inc. v. N. Innovations*

---

[1] The phone screen is nearly always illegible. Worth Decl. Ex. 1 at 1:37-1:53, 3:35-4:13, 5:09.

*Holdings Corp.*, 2021 WL 9928662, at *3 (C.D. Cal. Aug. 30, 2021) (finding that claim of harm that is "unsubstantiated, unattested, and wholly speculative in nature" cannot show particularized harm).

Similarly, Defendants' concern about theoretical safety risks to CBP agents shown on the video is essentially identical to claims of harm found to be insufficient in case after case involving body worn camera video. *See, e.g.*, *Douglas v. City of Los Angeles*, 2023 WL 6370886, at *3 (C.D. Cal. May 31, 2023) (speculation that body worn camera video will incite violence against law enforcement officers does not satisfy particularized harm requirement); *LaRocca v. City of Los Angeles*. 2023 WL 4291066, at *4 (C.D. Cal. May 31, 2023) (police department claim that "harmful effect(s) on the Department, as well as the officers and their families" from release of body camera footage did not establish particularized harm); *Dominguez v. City of Los Angeles*, 2018 WL 6333661, at *3 (C.D. Cal. Apr. 23, 2018) (defendant did not make adequate showing of particularized harm with respect to body worn camera footage of police shooting).

Defendants here proffer *no evidence* to support their expressed concerns. They instead make unsupported assertions. They claim, for instance, that Mexican drug cartels have offered bounties of up to $50,000 on ICE and CBP agents. JS at 23. For this, however, they cite a news report of DHS's own *claim* that such bounties exist—not an independent report that there is evidence of such bounties. *Id.* at 23 n.11. As shown by this Motion, Defendants' public statements cannot be taken at face value. Where independent evidence—often video—is available, DHS's public statements about immigration enforcement have repeatedly been found to be untrue.[2] Defendants also assert that agents have been "doxxed," but they offer no evidence for that assertion, do not explain exactly what they mean by "doxxed," and do not identify any harm

---

[2] *See, e.g.*, Aaron Blake, "The Many Claims by Trump's DHS that Have Fallen Apart," CNN (Feb. 17, 2026), available at https://www.cnn.com/2026/02/17/politics/dhs-ice-trump-tricia-mclaughlin; Hannah Schoenbaum, "Minnesota Shooting of Venezuelan Man Is the Latest Where Video Evidence Contradicts ICE Accounts," Associated Press (Feb. 13, 2026), available at https://apnews.com/article/immigration-agent-shootings-minneapolis-chicago-c062100e0432bff06a6f7b7b26a831e8; "DHS Keeps Making False Claims about People. It's Part of a Broader Pattern.", National Public Radio (Jan. 31, 2026), available at https://www.npr.org/transcripts/nx-s1-5690124.

that has supposedly resulted.  Defendants also do not explain how the appearance of an agent on the video will lead to that result, provide any evidence that disclosure of video has ever led to that result, or suggest a reason to think it will occur in this specific situation.  Finally, Defendants assert that there is an 830 percent increase in assaults, threats, and doxing incidents, citing a footnote in a filing in this case (ECF 172 at 7 n.1), which in turn cites a DHS press release which has now been removed from the DHS website.  *See https://www.dhs.gov/archive/news/ 2025/07/15/dhs-announces-ice-law-enforcement-are-now-facing-830-percent-increase-assaults* (showing "Page Not Found" message as of Feb. 27, 2026).  A footnote in a brief is not evidence.  A DHS press release is not evidence of the facts asserted in that press release.  And a website that says "Page Not Found" is not evidence even of what the press release itself said.

In short, Defendants' opposition to this motion rests on the Court taking their word for it that there are risks associated with disclosing this video despite the fact that the *evidence* before the Court shows that Defendants have repeatedly made false statements regarding the situation.

### B. The *Glenmede* Factors Heavily Favor Disclosure.

Finally, Defendants cannot show that the *Glenmede* factors favor nondisclosure.  Defendants' section of the Joint Stipulation does not cite a single case concerning whether body camera footage should be disclosed—they ignore literally all of the cases addressing this subject.

Defendants incorrectly assert that Plaintiffs' blurring of the faces of *bystanders* indicates that the *CBP agents* in the video have legitimate privacy interests at issue.  JS at 24.  Some courts have distinguished between members of the public, who have a privacy interest when filmed on a body worn camera, and law enforcement officers, who are "public actors" whose conduct is properly subject to public scrutiny.  *Dominguez*, 2018 WL 6333661, at *3 ("privacy interests are diminished for public actors subject to legitimate public scrutiny"); *see also Douglas*, 2023 WL 6370886, at *3 (unlike police officers, residents of building, firemen, and a nurse have privacy interests in release of video).  Other courts have said that even bystanders lack a privacy interest if the video was taken in a public place.  *See, e.g.*, *LaRocca*, 2023 WL 4291066, at *4 ("Defendants do not explain how the individuals attending the public, outdoor concert had a reasonable expectation of privacy.")  Rather than giving Defendants a potential argument against disclosure

because of the presence of members of the public, Plaintiffs have elected to moot that issue by blurring their faces.  Doing so in no way suggests that the agents, who are public actors, have legitimate privacy interests.

Defendants' contention that the disclosure would be for an "improper" purpose because Plaintiffs intend to draw attention to this case, *see* JS at 25, is both hypocritical and meritless.  As discussed in the Joint Stipulation, Defendants have themselves posted on social media, issued a press release, and talked to the press about the very incident shown on the video—making false claims every time.  JS at 12-13.  They are hardly in a position to complain about out-of-court publicity concerning the case.  And there is nothing improper about calling public attention to government misconduct even if that misconduct is the subject of ongoing litigation.  And it is certainly not improper to correct false statements made by government officials.  Again, Defendants *do not deny that their statements about Mr. Gavidia were false*.  Defendants further suggest that Plaintiffs are trying to taint the jury pool, *see* JS at 25 & n.12, but it is undisputed that the case (at least the claims currently pleaded) will be tried to the bench, not a jury.  ECF 400-1 (Exhibit A to the parties' *Joint* Rule 26(f) Report showing box checked for "Bench Trial").

The remaining *Glenmede* factors also favor disclosure.  "The public unquestionably holds a hefty interest in police force transparency, and especially so when fundamental rights are at stake."  *Harmon v. City of Santa Clara*, 323 F.R.D. 617, 624 (N.D. Cal. 2018).  Defendants' assertion that the public's interest in knowing if government agents are abusing people's rights "cannot be entertained at the risk of the officers' privacy interests, their safety, and threats to sensitive law enforcement techniques, methods, and intelligence," JS at 26, is contrary to the law.  *See Douglas*, 2023 WL 6370886, at *4 (collecting cases).  As discussed above, moreover, Defendants have proffered no evidence that any such risks exist.

The motion to de-designate GOV_VID_001 should be granted.

| | | |
|---|---|---|
| DATED:  March 3, 2026 | | MUNGER, TOLLES & OLSON LLP |
| | By: | */s/ Jacob S. Kreilkamp* |
| | | JACOB S. KREILKAMP |
| | | *Counsel for Stop/Arrest Plaintiffs* |
| DATED:  March 3, 2026 | | UC IRVINE IMMIGRANT AND RACIAL JUSTICE SOLIDARITY CLINIC |
| | By: | */s/ Anne Lai* |
| | | ANNE LAI |
| | | *Counsel for Stop/Arrest Plaintiffs* |