O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PEDRO VASQUEZ PERDOMO et al.,

              Plaintiffs,

      v.

KRISTI NOEM et al.,

              Defendants.

Case No.:25-cv-05605-MEMF-SP

**ORDER GRANTING PLAINTIFFS'
MOTION FOR LEAVE TO FILE SECOND
AMENDED COMPLAINT [DKT. NO. 436]**

      As this Court has explained in its prior orders, the people and organizations who brought this lawsuit ask this Court to put a stop to the roving patrols that began last summer and to ensure that everyone detained by ICE can speak to a lawyer.

      They have informed the Court that they now have statements under oath from ICE agents and officials stating that it was their official policy to intentionally target people because they were Latino and to use very aggressive tactics in detaining people. In light of this new information, the

1

people and organizations have asked this Court to let them "amend" (a legal word for "edit" or "change") their complaint in this case to reflect that—if true—such conduct violates the Constitution in two new ways that they did not talk about before. After considering the arguments of both sides, this Court decides that it is proper for the people and organizations who brought this lawsuit to amend their complaint to add these two constitutional violations: (1) a violation of the equal protection clause of the Fourth Amendment—which says that all persons must be treated equally, regardless of race or ethnicity; and (2) a violation of the unreasonable search and seizure provisions of the Fifth Amendment—which says all persons have the right to be free from unreasonable searches and seizures by the Government.

***

Before the Court is the Motion for Leave to File Second Amended Complaint filed by Plaintiffs Pedro Vasquez Perdomo, Carlos Alexander Osorto, Isaac Villegas Molina, Jorge Hernandez Viramontes, Jason Brian Gavidia, the Los Angeles Worker Center Network, United Farm Workers, Coalition for Humane Immigrant Rights, and Immigration Defenders Law Center. *See* Dkt. No. 436 ("Motion"). For the reasons set forth below, the Motion is GRANTED.

***

I.    **Background**

    **A.  Factual Background**

The Court has detailed the factual allegations at issue in this case more comprehensively in its Order on Defendants' Motion to Dismiss, Dkt. No. 419 ("MTD Order"), and its Order on Defendants' Motion to Dismiss Intervenors' Complaint, Dkt. No. 418 ("Intervenors' MTD Order"). This Order therefore recounts only the factual background as relevant to this Motion.

Unless otherwise indicated, the following factual background is derived from the allegations in Plaintiffs' operative First Amended Complaint. Dkt. No. 16 ("1AC"). For the purposes of this motion, the Court treats these factual allegations as true. However, at this stage of the litigation, the Court makes no findings as to their truth.

Starting on June 6, 2025, federal agents conducted immigration raids across the District. 1AC ¶ 38. Federal agents have targeted specific locations, such as bus stops and a church. *Id.* ¶ 42. Federal agents have also targeted specific categories of workers, such as car wash workers, farm and agricultural workers, and street vendors. *Id.* ¶¶ 39, 40. For instance, federal agents approached, questioned, surrounded, and prevented a Latino man from leaving while he was working outside a relative's residence. *Id.* ¶ 43. The agents did not approach any of the Caucasian neighbors present. *Id.* In another instance, agents detained individuals and demanded identification at gun point at their workplace. *Id.* ¶ 44. On another occasion, agents "took" an individual from a church. *Id.* ¶ 45. In both occasions, the agents did not provide a reason for the stop. *Id.* ¶¶ 44, 45. Since then, these raids have led to over 1,500 arrests. *Id.* ¶ 165.

Federal agents and officers would conduct immigration raids in a "military-style," where they approach individuals suddenly and in large numbers. *Id.* ¶ 51. Agents are dressed in military-style, SWAT clothing or in plain clothes during these raids. *Id; see also Id.* ¶ 56 (describing agents raiding a car wash dressed in "either camouflaged fatigues or plainclothes"). Agents are heavily armed with weapons on display, masked, and wearing vests that may be marked with a generic "POLICE" patch—if marked at all. *Id.* ¶ 51. They typically position themselves around individuals and aggressively engage them, making it nearly impossible for individuals to decline questioning. *Id.* ¶ 52. Individuals who try to avoid an encounter with agents are followed, pushed to the ground, sometimes even beaten, and then taken away. *Id.* ¶ 53. These incidents have been widely reported in the news. *Id.* ¶ 54.

Plaintiffs allege that Defendants have a policy and practice of conducting warrantless arrests without making an individualized flight risk determination. *Id.* ¶ 65. Agents have aggressively approached then arrested individuals at their workplace without a warrant and without asking any relevant questions to assess flight risk. *Id.* ¶¶ 67-69. Defendants also have a policy of and practice of failing to identify themselves or explain the basis for an arrest upon taking someone into custody. *Id.* ¶ 71. Agents appear masked, lacking visible badges or insignia indicating their associated agency, and have refused to identify themselves when asked. *Id.*

/ / /

**B. Procedural History**

Plaintiffs Vasquez Perdomo, Villegas Molina, and Osorto initiated this action by filing a Petition for Writ of Habeas Corpus on June 20, 2025. Dkt. No. 1. They, along with the other Plaintiffs, filed the operative First Amended Complaint on July 2, 2025. 1AC. The 1AC alleges the following claims:

| Claim | Plaintiff(s) | Defendant(s) |
|---|---|---|
| Count One: Violation of Fourth Amendment: Unreasonable Seizures | Stop/Arrest Plaintiffs[1] | All Defendants |
| Count Two: Violation of 8 U.S.C. 1357(a)(2)— Warrantless Arrests Without Probable Cause of Flight Risk | LAWCN, UFW, and CHIRLA | All Defendants |
| Count Three: Violation of 8 C.F.R. 287.8(c)(2)(ii)— Standards for Stops and Warrantless Arrests | LAWCN, UFW, and CHIRLA | All Defendants |
| Count Four: Violation of 8 C.F.R. § 287.8(c)(2)(iii)— Failure to Identify Authority and Reason for Arrest | LAWCN, UFW, and CHIRLA | All Defendants |
| Count Five: Violation of Fifth Amendment—Access to Counsel | Access/Detention Plaintiffs[2] | Noem, Lyons, and Santacruz Jr. |
| Count Six: Violation of 8 U.S.C. § 1362—Access to Counsel | Access/Detention Plaintiffs | Noem, Lyons, and Santacruz Jr. |
| Count Seven: Violation of Fifth Amendment— Conditions of Confinement | Access/Detention Plaintiffs | Noem, Lyons, and Santacruz Jr. |
| Count Eight: Violation of Fifth Amendment—Due Process | Vasquez Perdomo, Osorto, | Noem, Lyons, and Santacruz Jr. |

---

[1] "Stop/Arrest Plaintiffs" refers to Plaintiffs Pedro Vasquez Perdomo, Carlos Alexander Osorto, Isaac Villegas Molina, Jorge Hernandez Viramontes, Jason Brian Gavidia, the Los Angeles Worker Center Network, United Farm Workers, and Coalition for Humane Immigrant Rights. *See* MTD Order at 12.
[2] "Access/Detention Plaintiffs" refers to Plaintiffs Coalition for Humane Immigrant Rights and Immigration Defenders Law Center. *See* MTD Order at 12.

4

and Villegas

Molina

*See generally* 1AC. In this Court's MTD Order, Dkt. No. 419, this Court dismissed Count Eight, but otherwise denied Defendants' motion to dismiss. *See id.* at 34.

On October 17, 2025, this Court granted Plaintiffs' and Intervenors' Joint Motion for Limited, Expedited Discovery. See Dkt. No. 223. Following the Scheduling Conference held on February 19, 2026, this Court issued the Civil Trial Order governing the pretrial and trial deadlines in this matter. See Dkt. No. 483 ("CTO").

On February 26, 2026, Plaintiffs filed the instant Motion. *See* Motion. Plaintiffs also attached a version of their proposed Second Amended Complaint. *See* Dkt. No. 436-2 ("2AC"). On March 12, 2026, Defendants filed an Opposition. *See* Dkt. No. 458 ("Opp."). On March 19, 2026, Plaintiffs filed a Reply. *See* Dkt. No. 472.

This Court found the matter appropriate for decision without oral argument and vacated the hearing set for April 9, 2026. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

## II.    **Applicable Law**

A party may amend their pleading "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Courts "freely give leave [to amend] when justice so requires." *Id*. Courts apply this policy liberally. *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1010 (9th Cir. 2008).

Courts consider the *Foman* factors when deciding whether to grant a motion for leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Schwartz v. Miller*, 153 F.4th 918, 932 (9th Cir. 2025). These factors are: (1) undue prejudice to the opposing party; (2) bad faith; (3) undue delay; (4) futility of amendment; and (5) failure to cure deficiencies by previously allowed amendments. *Foman*, 371 U.S. at 182. While these factors are evaluated as a whole, prejudice to the opposing party, bad faith, and futility carry the greatest weight. *Schwartz*, 153 F.4th at 932; *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."). Without evidence of prejudice, or "a strong showing of any of the remaining

factors [to the contrary], there exists a presumption in favor of granting leave to amend." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

### III.    Discussion

The 2AC seeks to make several substantive amendments to the 1AC, which this Court summarizes here. First, the 2AC notes that the Stop/Arrest Plaintiffs seek to represent two "Discriminatory Treatment Classes" who "have been subject to racial and/or ethnic discrimination" through detentive stops and other immigration enforcement operations. *See id.* ¶¶ 243–48. Second, the 2AC proposes a ninth cause of action for unreasonable manner of seizure under the Fourth Amendment, brought by a newly identified "Unreasonable Manner of Seizure Class."[3] *See id.* ¶¶ 91–102, 300–07.

The Opposition argues that the request should be denied because the *Foman* factors weigh against Plaintiffs and because amendment is futile under Rules 12(b)(1) and 12(b)(6). For the reasons below, this Court finds that Plaintiffs have shown that, under Rule 15 and the *Foman* factors, leave to amend their operative pleading should be granted. For that reason, the Motion is granted.

#### A.  The *Foman* factors weigh in favor of granting Plaintiff's Motion.

i.   Applying the first *Foman* factor, amendment will not cause Defendants prejudice.

Amendments that require "additional discovery on a wide range of issues," resulting in "delay and expense" to the opposing party, are prejudicial. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809 (9th Cir. 1988); *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990) (holding that amendments "advance[ing] different legal theories and require[ing] proof of different facts" would lead to additional discovery and are therefore prejudicial).

Plaintiffs argue that no prejudice will occur to Defendants since the parties only began plenary discovery, remain engaged in limited discovery, and the Court has not yet set a trial date.

---

[3] The 2AC also seeks to add additional allegations as to Defendants' reliance on apparent race and ethnicity when making immigration stops. *See* 2AC ¶¶ 66–90. The Defendants opposition focuses on the two new legal theories.

Motion at 3. Defendants argue that Plaintiffs provide no reason for why Plaintiffs' 1AC was insufficient to support their new claims.[4] Opp. at 8.

Contrary to Defendants' arguments, however, Plaintiffs do provide a reason for not raising the new proposed claims in their 1AC. Plaintiffs explain that new facts arose from expedited discovery—facts that were not available to them at the time of filing the 1AC—such that they could not have raised them at that time. Motion at 4; Reply at 7. This reasoning is plausible: during expedited discovery, in which Plaintiffs deposed federal agents and Rule 30(b)(6) designees, Plaintiffs explain that they discovered that (1) agents "reli[ed] on Latino ethnicity . . . [as] part of a pattern of *officially-sanctioned* conduct" and (2) agents use *highly intrusive* tactics during immigration raids—*also an "officially-sanctioned practice.*" Reply at 5, 6 (emphasis added). In light of this new information, Plaintiffs seek to amend their 1AC. Mot. at 5. Moreover, the identification of new proposed subclasses is correctly brought in Plaintiffs' 2AC. As a general matter, courts at class certification are "bound to class definitions provided in the complaint and, absent an amended complaint, will not consider certification beyond [those definitions]." *Costelo v. Chertoff*, 258 F.R.D. 600, 604 (C.D. Cal. 2009) (collecting cases).

Defendants further argue that they had no knowledge of "the new purely-legal claims" Plaintiffs now "raise[] for the first time." Opp. at 9. But this is of no moment. As explained above, Plaintiffs obtained new admissions during expedited discovery that established the viability of Plaintiffs' two new claims. Reply at 7. Defendants have repeatedly argued—including in opposition to this Motion—that the Plaintiffs "do not, and cannot, demonstrate that past isolated encounters with federal agents are likely to recur, or [that] they will again be subjected to any purported unlawful conduct." Opp. at 3. So it is curious that now that the Plaintiffs have obtained evidence in discovery that they believe can demonstrate this—by showing that these encounters were subject to official sanction—Defendants claim this is such a new idea that it is prejudicial. *See Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1118 (9th Cir. 2013) ("The County would

---

[4] Defendants argue that both parties have already conducted "substantial discovery" for Plaintiffs' forthcoming motion for preliminary injunction. Opp. at 8; Motion at 1, 5. But the mere fact that the parties have already conducted substantial discovery does not mean that amendment would be prejudicial. The parties may seek amendments to the Civil Trial Order for good cause.

not be prejudiced, because it should be 'fully prepared to litigate the substantive issues' of the claim, given that both the theory and the operative facts of the claim remain the same." (quoting *Hurn v. Ret. Fund Tr. of Plumbing, Heating & Piping Indus. of S. Cal.*, 648 F.2d 1252, 1254 (9th Cir. 1981)). Particularly given that the existence of an official sanction is uniquely within the knowledge of the Defendants, the Court does not find that Defendants are prejudiced at all by these proposed amendments.

For these reasons, the first *Foman* factor weighs in Plaintiffs' favor.

### ii.    Applying the second *Foman* factor, the Motion was not brought in bad faith.

A motion is brought in bad faith if it is "obviously [] frivolous[] or made as a dilatory maneuver" in legal proceedings. *Hurn*, 648 F.2d at 1254 (quoting *Howey v. United States*, 481 F.2d 1187, 1190–91 (9th Cir. 1973)). There is no bad faith where counsel offers "plausible" or "credible" explanation for delay in filing a motion. *See Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (holding that no bad faith exists where counsel offered "plausible explanation" for delay in filing a late res judicata application).

Here, the Court does not find that Plaintiffs made their Motion in bad faith. Plaintiffs offer a plausible explanation for seeking to file their 2AC: They discovered new information during expedited discovery that warrants their two new claims. Motion at 4. Plaintiffs then timely sought to amend their complaint to add their new claims. *Id.* And, meaningfully, Defendants do not allege that Plaintiffs engaged in bad faith.[5] *See generally* Opposition. To that end, this Court understands that Defendants concede that  the second *Foman* factor weighs in favor of amendment.

### iii.    Applying the third *Foman* factor, Plaintiffs did not unduly delay in filing this Motion.

The third *Foman* factor, "in determining [the propriety of granting a] motion for leave to amend, is whether [the moving party] unduly delayed [] filing their motion." *Jackson*, 902 F.2d at 1388. Relevant to this inquiry is "whether the moving party knew or should have known the facts

---

[5] One of the Opposition's sections is titled, "The Other *Foman* Factors Weigh Against Granting Leave to Amend." But it does not allege, much less substantiate, any argument that Plaintiffs' Motion was made in bad faith. So this Court does not consider the factor meaningfully disputed.

and theories raised by the amendment in the original pleading." *Id.* Undue delay, by itself, is insufficient to justify denying the motion. *Hurn*, 648 F.2d at 1254–55.

Plaintiffs argue that they did not unduly delay filing their Motion, nor would amendment cause undue delay. Motion at 5; Reply at 6. No trial date has been set, and Plaintiffs informed the Court during their Rule 16 conference, at which Defendants were present, of their anticipated amendment. Motion at 5; Reply at 6. A week later, Plaintiffs filed their Motion. Reply at 6. This Court finds that Plaintiffs acted timely and will not cause undue delay in litigation.

Defendants' arguments to the contrary are not persuasive. They argue that Plaintiffs' claim that amendment is based on the results of expedited discovery is belied by the record, which shows that "they have challenged immigration enforcement tactics and race-based motivations since their First Amended Complaint." Opp. at 9. This, they reason, "supports Defendants' arguments that Plaintiffs could have brought their 'new' claims months ago." *Id.* But this Court finds no inconsistency or tension between the facts that (1) Plaintiffs allege that expedited discovery enabled them to make the amendments seen in the proposed 2AC, and (2) the 1AC also challenged race-based motivations in immigration enforcement tactics. Instead, this Court understands Plaintiffs' arguments to be that discovery has revealed the viability of additional theories in support of Plaintiffs' challenges to immigration enforcement activity. The fact that the claims are consistent with Plaintiffs' earlier pleadings does not undercut Plaintiffs' argument that discovery allowed them to make additional allegations of Defendants' alleged unlawful acts.  To the contrary, Rule 11 requires that Plaintiffs make only allegations that are warranted by law. Whether or not Plaintiffs could have contemplated these theories earlier is beside the point; until they had this evidence of an official sanction for the use of ethnicity and highly intrusive tactics, they did not determine that these theories were viable or that they had a good-faith basis to assert them.

Even if Defendants could show undue delay, without evidence of prejudice or "a strong showing" of the remaining *Foman* factors, Defendants cannot overcome the "presumption in favor of granting leave to amend." *Aspeon, Inc.*, 316 F.3d at 1052; *see also Howey*, 481 F.2d at 1190–91 ("Where there is a lack of prejudice to the opposing party and the amended complaint is obviously not frivolous[] or made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny [even

a motion submitted five years after filing the original complaint].”). Again, any delay is easily managed through stipulations or applications to modify the Civil Trial Order as appropriate.[6]

For these reasons, the third *Foman* factor weighs in favor of amendment.

        iv.   Applying the fourth *Foman* factor, Plaintiffs' proposed amendments are not futile.

Proposed amendments to a complaint are futile when they fail to provide a "source of law" that grants an enforceable right. *Curtis v. Inslee*, 154 F.4th 678, 695 (9th Cir. 2025); *see also Ctr. for Biological Diversity v. U.S. Forest Serv.*, 80 F.4th 943, 956 (9th Cir. 2023) (holding that amendment would be futile where "proposed amendment fails to allege any violation of federal law"). Furthermore, amendment is futile when it lacks sufficient factual allegations to support their legal claim. *See Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990) ("We are also decidedly doubtful that the allegations concerning alternative employment, which were raised for the first time in briefs, would suffice to state a cause of action if they could be added to a new complaint.").

      1.  *Plaintiffs' Fourth Amendment claim is not futile.*

Plaintiffs argue that their allegations regarding Defendants' "systematic reliance on highly intrusive tactics during detentive stops" sufficiently state a new Fourth Amendment claim. Motion at 6. In Opposition, Defendants reassert the same arguments they raised—and this Court rejected—at the motion to dismiss stage. Opp. at 3–7. Defendants assert that Plaintiffs' proposed Fourth Amendment claim "is jurisdictionally deficient and thus futile" because Plaintiffs lack standing to pursue equitable relief. *Id.* at 3–4. Specifically, Defendants, again, argue that both individual and

---

[6] Defendants suggest that they will be prejudiced in responding to Plaintiffs' anticipated motion for a preliminary injunction because the expedited discovery began without these new theories. Given that the lack of official sanction has been one of the themes of the Defendants' response to this case from the outset, it is difficult to see how this would be, but the Court trusts that the parties will meet and confer and work out any disputes regarding additional discovery Defendants may need. Any disputes that remain regarding discovery or the timing of any motion for preliminary injunction can be brought to this Court or the assigned Magistrate Judge as appropriate. The Court is not finding at this time that adjustments to the schedule are not warranted.

organizational Plaintiffs cannot show that "past isolated encounters with federal agents are likely to recur, or that they will again be subjected to any purported unlawful conduct." *Id.* at 3-6.

This Court has already considered and rejected Defendants' standing and jurisdictional arguments in the MTD Order. Just as this Court has indicated in the MTD Order, the "parties' positions [remain] similar" to those first raised at the TRO stage. MTD Order at 17–18. Nor do Defendants explain why this Court should grant what is, in effect, a request for reconsideration of its determination of standing or whether the claims as presented in the 1AC were sufficiently stated.

Moreover, it bears mentioning that Defendants misstate the posture of this case. Their Opposition contends that "the Supreme Court has given strong indication that Defendants are likely to win on the *merits* of this case." Opp. at 1 (emphasis added). The Supreme Court has not issued any opinion in this case. Accordingly, it has done no such thing. As this Court addressed at the MTD hearing and in its Order—and as counsel for Defendants has conceded—a concurring or dissenting opinion, in the absence of an opinion of the Court, is not binding authority. *Maryland v. Wilson*, 519 U.S. 408, 412–13 (1997). This Court cannot "fairly attribute the concurrence's opinion—which was signed by one Justice—to the Supreme Court at large." MTD Order at 20 n.7.

For that reason, these arguments are unavailing, and this Court will not readdress them further at this time.

### 2. *Plaintiffs' Fifth Amendment claim is not futile.*

In equal protection claims, a plaintiff need not show evidence of discriminatory purpose where the government action "is analogous to a facial racial classification." *Gonzalez-Rivera v. I.N.S.*, 22 F.3d 1441, 1450 (9th Cir. 1994) (first citing *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985); and then citing *Washington v. Seattle Sch. Dist. No. 1*, 458 U.S. 457, 485 (1982) ("A racial classification, regardless of purported motivation, is presumptively invalid.")).

But in cases where no express racial classification exists, a plaintiff must show that discriminatory purpose was a motivating factor in the government's challenged practice to

11

sufficiently plead an equal protection claim. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977). Disparate impact, while relevant, is insufficient by itself.[7] *Id.* at 265.

The Supreme Court in *Arlington Heights* provided the following non-exhaustive list of inquiries to identify whether discriminatory intent was a motivating factor: (1) the decision's historical background, "particularly if it reveals a series of official actions taken for invidious purposes"; (2) "specific sequence of events leading up to the challenged" practice; and (3) departures from normal procedures. *Id.* at 267–68.

Here, Plaintiffs argue that Defendants use express racial classification to conduct their immigration raids. Motion at 5; Reply at 3. Specifically, Plaintiffs allege that Defendants rely on "apparent ethnicity [and stereotypes] in their selection of locations to raid and of whom they investigate, question and/or arrest . . ." 2AC ¶ 69. Defendants allegedly "'raid[] known hubs for Latino workers . . . hardware store parking lots, car washes, and street vendor corners,' . . . and investigate those who appear Latino, including customers or bystanders, while ignoring white-appearing individuals at the same location—even those who run away from agents." *Id.* Plaintiffs allege that this reliance on apparent race and ethnicity is an express racial classification, *id.* ¶ 70, and the Court does not find that these allegations are futile.

Plaintiffs also allege discriminatory intent as a motivating factor in Defendants' immigration enforcement practices. Motion at 5; Reply at 3. Consistent with *Arlington Heights*, Plaintiffs have alleged that the following support a finding of such intent: (1) the historical background of the enforcement activities, *see* 2AC ¶¶ 76–77; (2) the specific sequence of events leading up to the

---

[7] Defendants rely on *Department of Homeland Security v. Regents of the University of California*, 591 U.S. 1 (2020), to argue, again, that disparate impact is insufficient for an equal protection claim. Opp. at 7, 8. But this assertion does not undermine Plaintiffs' argument. In *Regents*, 591 U.S. at 35, the Supreme Court held that the respondents failed to demonstrate discriminatory intent and therefore failed to sufficiently plead an equal protection claim. As this Court will address, the 2AC *does* allege discriminatory intent as a motivating factor.

challenged conduct, *see id.* ¶ 78; and (3) departures from the norm in immigration enforcement, *see id.* ¶¶ 74–76. *Arlington Heights*, 429 U.S. at 267–68.

To that end, the amendments do not appear futile on their face. For that reason, the fourth *Foman* factor weighs in Plaintiffs' favor.[8]

> v.  Applying the fifth *Foman* factor, Plaintiffs have not failed to cure prior deficiencies.

District courts have broad discretion to deny leave to amend where the plaintiff has repeatedly failed to cure deficiencies in their complaint "by amendments previously allowed." *McGlinchy*, 845 F.2d at 809–10; *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) (stating that district courts have broad discretion to deny leave to amend where a plaintiff has previously amended the complaint).

That is not this case's posture. Here, Plaintiffs have only amended their complaint one time, as of right pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure. Mot. at 6. Now, they seek to amend it a second time to include new information obtained from expedited discovery. *Id.* So, though Defendants argue that "this is not Plaintiffs' first time seeking to amend their complaint," Opp. at 8, the argument is unavailing. That is not what the fifth *Foman* factor addresses, and Plaintiffs' prior amendment was as of right. Accordingly, this argument does not give this Court reason to deny Plaintiffs' first request for leave to amend. Instead, the fifth *Foman* factor weighs in Plaintiffs' favor.

\* \* \*

In sum, courts' practice of granting leave to amend liberally—and an application of the *Foman* factors—weighs in Plaintiffs' favor. For that reason, their Motion is granted.

/ / /

---

[8] This is, of course, without prejudice to Defendants seeking to dismiss the new claims as appropriate.

**IV.** **Conclusion**

For the foregoing reasons, the Court hereby ORDERS as follows: The Motion is GRANTED. Plaintiffs are ordered to file their new operative Second Amended Complaint within seven days of this Order.

IT IS SO ORDERED.

Dated: April 7, 2026.

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge