MARK ROSENBAUM (SBN 59940)
mrosenbaum@publiccounsel.org
REBECCA BROWN (SBN 345805)
rbrown@publiccounsel.org
SOPHIA WRENCH (SBN 354416)
swrench@publiccounsel.org
RITU MAHAJAN (SBN 252970)
rmahajan@publiccounsel.org
GINA AMATO (SBN 215519)
gamato@publiccounsel.org
AMANDA M. SAVAGE (SBN 325996)
asavage@publiccounsel.org
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977

*Counsel for All Plaintiffs*

(*additional counsel information on cont. page*)

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pedro VASQUEZ PERDOMO, *et al.*, | Case No.: 2:25-cv-05605-MEMF-SP |
| Plaintiffs, | ***DISCOVERY MATTER*** |
| v. | **PLAINTIFFS COALITION FOR HUMANE IMMIGRANT RIGHTS AND IMMIGRANT DEFENDERS LAW CENTER'S *EX PARTE* APPLICATION FOR PRESERVATION ORDER** |
| Kristi NOEM, in her official capacity as Secretary, Department of Homeland Security, *et al.*, | |
| Defendants. | Hon. Maame Ewusi-Mensah Frimpong |
| | Referred to Hon. Sheri Pym United States Magistrate Judge |

MATTHEW J. CRAIG (SBN 350030)
*mcraig@heckerfink.com*
MACK E. JENKINS (SBN 242101)
*mjenkins@heckerfink.com*
ANNE O'TOOLE (SBN 340469)
*aotoole@heckerfink.com*
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Telephone: (212) 763-0883
Facsimile: (212) 564-0883

*Counsel for Access/Detention Plaintiffs*

HELIA BIDAD (SBN 348633)
*hbidad@heckerfink.com*
HECKER FINK LLP
1050 K Street, NW
Washington, DC 20001
Telephone: (212) 763-0883

*Counsel for Access/Detention Plaintiffs*

CARL BERGQUIST* (DC BAR 1720816)
*cbergquist@chirla.org*
COALITION FOR HUMANE IMMIGRANT RIGHTS
2351 Hempstead Road
Ottawa Hills, OH 43606
Telephone: (310) 279-6025

*Counsel for Plaintiff Coalition for Humane Immigrant Rights*

ALVARO HUERTA (SBN 274787)
*ahuerta@immdef.org*
BRYNNA BOLT (SBN 339378)
*bbolt@immdef.org*
ALISON STEFFEL (SBN 346370)
*asteffel@immdef.org*
IMMIGRANT DEFENDERS LAW CENTER
634 S. Spring St., 10th Floor
Los Angeles, CA 90014
Telephone: (213) 634-0999

*Counsel for Plaintiff Immigrant Defenders Law Center*

* Admitted pro hac vice

Plaintiffs Coalition for Humane Immigrant Rights ("CHIRLA") and Immigrant Defenders Law Center ("ImmDef" and, together with CHIRLA, the "Access/Detention Plaintiffs") hereby apply for an *ex parte* order directing Defendants to preserve video evidence that is critical to this litigation but that Defendants are actively destroying. As detailed in the attached memorandum, Defendants have admitted in recent days that the video surveillance system at B-18, the federal immigration detention facility in downtown Los Angeles, has been automatically deleting video footage since the outset of this case. Despite confirming last year that they were abiding by their preservation obligations, including with respect to B-18 video footage, Defendants never turned the auto-delete function off. As a result, Defendants have wiped away months of evidence, causing irreparable harm to the Access/Detention Plaintiffs. Even after admitting to their destruction, Defendants still have not employed basic measures to ensure that video footage from B-18 is preserved going forward.

Given Defendants' ongoing violations of their preservation obligations, the Access/Detention Plaintiffs will be irreparably harmed if this *ex parte* application is heard according to regular noticed motion procedures. Moreover, because the Access/Detention Plaintiffs bear no fault in creating the emergency that requires *ex parte* relief and have brought this matter to the Court as soon as reasonably possible, the Access/Detention Plaintiffs respectfully request that the Court order the relief requested forthwith. *See Mission Power Eng'g v. Continental Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). If the Court requires a hearing to rule on the relief requested, the Access/Detention Plaintiffs respectfully request an emergency hearing as soon as the Court's calendar permits.

Pursuant to Local Rule 7-19, counsel for the Access/Detention Plaintiffs orally advised counsel for the other parties during a meet-and-confer on April 10, 2026, of this *ex parte* application and its contents. Declaration of Matthew J. Craig ("Craig Decl.") ¶¶ 9-11. Counsel for Defendants later advised by email that, "[a]t this time, [they] take no position" on this *ex parte* application. *Id.* ¶ 12.

i
*EX PARTE* APPLICATION FOR PRESERVATION ORDER

Defendants have requested until 3:30 pm PT on April 14, 2026, to file a response to this application, if any. The Access/Detention Plaintiffs consent to Defendants' requested extension of time to file a response.

The name, address, telephone number, and e-mail address of counsel for Defendants are:

- Pauline Helen Alarcon, Office of U.S. Attorney, 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012; 213-894-3992; Pauline.Alarcon@usdoj.gov
- Jacob Bashyrov, U.S. Department of Justice, Civil Division - Office of Immigration Litigation, P.O. Box 878, Ben Franklin Station, Washington, DC 20044; 202-598-0919; Jacob.Bashyrov@usdoj.gov
- Daniel A. Beck, Office of U.S. Attorney, Civil Division, 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012; 213-894-2574; Daniel.Beck@usdoj.gov
- Ryan C. Chapman, Office of U.S. Attorney, 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012; 213-894-2471; Ryan.Chapman@usdoj.gov
- Tiberius Davis, U.S. Department of Justice, 950 Pennsylvania Avenue, Suite 400, Washington, DC 20530; 202-514-4357; Tiberius.Davis@usdoj.gov
- Aniello DeSimone, U.S. Department of Justice, 450 5th Street, Washington, DC 20001; 202-532-5239; Aniello.DeSimone@usdoj.gov
- Alexander Layne Farrell, Office of U.S. Attorney, Civil Division, 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012; 213-894-5557; Alexander.Farrell@usdoj.gov
- Stephanie Leigh Groff, U.S. DOJ Civil Office of Immigration Litigation, P.O. Box 878, Benjamin Franklin Station, Washington, DC 20044; 202-305-5438; Stephanie.L.Groff@usdoj.gov
- Tola Myczkowska, U.S. Department of Justice, Civil Division, P.O. Box 878, Ben Franklin Station, Washington, DC 20044; 202-353-5718; Tola.M.Myczkowska@usdoj.gov
- Jonathan Robbins, U.S. Department of Justice, Civil Division - Office of

ii

*EX PARTE* APPLICATION FOR PRESERVATION ORDER

Immigration Litigation, P.O. Box 878, Ben Franklin Station, Washington, DC 20044; 202-305-8275; Jonathan.A.Robbins@usdoj.gov

- Nancy Naseem Safavi, U.S. Department of Justice Office of Immigration Litigation, 450 5th Street NW, Suite 2110, Washington, DC 20001; 202-514-9875, Nancy.Safavi@usdoj.gov

- Sean Skedzielewski, U.S. Department of Justice, Civil Division, 950 Pennsylvania Ave NW, Washington, DC 20530; 202-307-1697; Sean.Skedzielewski@usdoj.gov

- Jason Kyle Zubata, U.S. Department of Justice, OIL-DCS, P.O. Box 868, Ben Franklin Station, Washington, DC 20044; 202-532-4143; Jason.K.Zubata@usdoj.gov

*EX PARTE* APPLICATION FOR PRESERVATION ORDER

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................1

BACKGROUND ..............................................................................2

    A.  The B-18 Access and Conditions Claims ...................................2

    B.  Defendants' Ongoing Destruction of Critical Evidence at B-18 ..................3

ARGUMENT ..................................................................................7

I.       Defendants Have a Duty to Preserve Video Footage from B-18...................7

II.      The Court Should Order Defendants to Take Immediate Steps to Preserve..................................................................11

CONCLUSION ..............................................................................16

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Al Otro Lado, Inc. v. Nielsen*,
    328 F.R.D. 408 (S.D. Cal. 2018) ......................................................................15

*Am. LegalNet, Inc. v. Davis*,
    673 F. Supp. 2d 1063 (C.D. Cal. 2009) ............................................................11

*Astellas U.S. LLC v. AnazaoHealth Corp.*,
    No. 08 Civ. 1083, 2009 WL 10698953 (C.D. Cal. Feb. 24, 2009).........................14

*Cal. Dep't of Toxic Substances Control v. NL Indus., Inc.*,
    No. 20 Civ. 1293, 2025 WL 1674442 (C.D. Cal. Mar. 14, 2025)..........................12

*Columbia Pictures Indus. v. Bunnell*,
    No. 06 Civ. 1093, 2007 WL 2080419 (C.D. Cal. May 29, 2007) ..........................13

*Comet Techs. U.S.A. Inc. v. Beuerman*,
    No. 18 Civ. 1441, 2018 WL 1990226 (N.D. Cal. Mar. 15, 2018)..........................13

*Cutera, Inc. v. Lutronic Aesthetics, Inc.*,
    444 F. Supp. 3d 1198 (E.D. Cal. 2020) .............................................................13

*Cyntegra, Inc. v. Idexx Labs., Inc.*,
    No. 06 Civ. 4170, 2007 WL 5193736 (C.D. Cal. Sept. 21, 2007) ........................16

*Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*,
    No. 22-35832, 2023 WL 6866273 (9th Cir.  2023).................................................10

*Doe  v. Johnson*,
    No. 15 Civ. 250, 2015 WL 13021467 (D. Ariz. Sept. 28, 2015)............................13

*Doe v. Johnson*,
No. 15 Civ. 250, 2015 WL 5086291 (D. Ariz. Aug. 14, 2015).........................13
*Holloway v. Cnty. of  Orange*,
    No. 19 Civ. 1514, 2021 WL 454239 (C.D. Cal. Jan. 20, 2021) ...........................15

*Leon v. IDX Sys. Corp.*,
    464 F.3d 951 (9th Cir. 2006) ............................................................................7

*EX PARTE* APPLICATION FOR PRESERVATION ORDER

*Med. Lab. Mgmt. Consultants v. Am. Broad. Companies*,
306 F.3d 806 (9th Cir. 2002) ..................................................................................11

*Mission Power Eng'g v. Continental Cas. Co.*,
883 F. Supp. 488 (C.D. Cal. 1995) ...........................................................................1

*In re Napster, Inc. Copyright Litig.*,
462 F. Supp. 2d 1060 (N.D. Cal. 2006).................................................................8, 10

*OOO Brunswick Rail Mgmt. v. Sultanov*,
No. 17 Civ. 17, 2017 WL 67119 (N.D. Cal. Jan. 6, 2017) .....................................12

*Pettit v. Smith*,
45 F. Supp. 3d 1099 (D. Ariz. 2014) ......................................................................16

*Rafael N. Rivera Luciano v. Epson Am., Inc.*,
No. 25 Civ. 2257, 2025 WL 4059435 (C.D. Cal. Dec. 22, 2025) ..........................11

*Ramos v. Swatzell*,
No. 12 Civ. 1089, 2017 WL 2857521 (C.D. Cal. June 5, 2017) ........................16

*teamLab Inc. v. Museum of Dream Space, LLC*,
No. 19 Civ. 6906, 2022 WL 1590746 (C.D. Cal. Mar. 10, 2022).........................15

*United States v. Zaitsev*,
No. 25 Cr. 154 (C.D. Cal. May 17, 2025) .......................................................14, 15

*Unknown Parties v. Johnson*,
No. 15 Civ. 250, 2017 WL 7520603 (D. Ariz. Dec. 19, 2017) ...............................8

*Wildcat Retro Brands, LLC v. Herman*,
No. 18 Civ. 7833, 2018 WL 11363942 (C.D. Cal. Oct. 4, 2018)............................8

*Williams v. Kohl's Dep't Stores, Inc.*,
No. 19 Civ. 397, 2020 WL 3882953 (C.D. Cal. June 16, 2020) ..................7, 10, 15

iii

*EX PARTE* APPLICATION FOR PRESERVATION ORDER

i

## PRELIMINARY STATEMENT

Defendants have been on notice that they are obligated to preserve video footage from the B-18 detention facility since the First Amended Complaint was filed on July 2, 2025. The First Amended Complaint alleges both a pattern and specific instances of coercive conditions and restrictions on access to counsel that violate the rights of people detained at B-18, and video footage recording events taking place inside and around the facility is relevant to these claims. Were it not obvious from the First Amended Complaint, on September 12, 2025, Plaintiffs wrote a letter reiterating Defendants' preservation obligations, which specifically requested preservation of "all photographs and videos of [B-18]." That same day, counsel for Defendants responded to say that they "are complying with their preservation obligations under the Federal Rules of Civil Procedure."

Contrary to that representation, on April 7, 2026, Defendants admitted that the video recording system at B-18 has been automatically and continuously deleting video footage. In the process, Defendants have wiped away months of critical evidence, causing irreparable harm to Plaintiffs and undermining this Court's ability to enforce the preliminary injunction that remains in place over conditions at B-18. Making matters worse, Defendants still have not taken basic measures to ensure that video footage is preserved moving forward, such as turning off automatic deletion or backing up footage on an external storage device before it is erased.

A litigant's duty to preserve relevant evidence, coupled with respect for the rule of law and the trial court's power to sanction parties that engage in spoliation, should be enough to deter parties from destroying critical evidence. Not so for Defendants in this case. Immediate judicial intervention is required to ensure that video footage does not continue to be erased.

*EX PARTE* APPLICATION FOR PRESERVATION ORDER

## BACKGROUND

### A.    The B-18 Access and Conditions Claims

B-18 is a temporary holding facility that historically was used to hold individuals detained in immigration enforcement operations for short periods while they await transfer to facilities designed for longer-term custody. ¶¶ 74, 93.[1] Since June 2025, Defendants have converted B-18 into a long-term detention facility, holding individuals there for multiple days at a time. ¶¶ 77-78. Behind locked doors, individuals swept up in the government's roving patrols are held in small, windowless, crowded, and filthy rooms, where they are deprived of food, water, medications, necessary medical care, basic hygiene products, beds, and showers—conditions that coerce individuals into signing away their legal rights and electing voluntary departure. ¶¶ 74-80, 94.

Making matters worse, these individuals are routinely denied access to the legal counsel guaranteed by the Fifth Amendment. ¶ 81. Attorneys have been arbitrarily barred from entering the facility to meet with retained and prospective clients, access to free and unmonitored phone calls for legal calls is severely limited or nonexistent, there is little to no space for confidential legal visits, and detention officers actively interfere with the attorney-client relationship. ¶¶ 82-92. On one occasion, federal agents deployed a chemical agent against attorneys peacefully requesting access and prevented attorneys from sharing know-your-rights information with detained individuals who had been loaded into

---

[1] Citations to "¶ __" are to paragraphs in the First Amended Petition for a Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief (the "First Amended Complaint"), ECF 16. On April 7, 2026, the Court granted Plaintiffs' Motion for Leave to File Second Amended Complaint, *see* ECF 484, and pursuant to the Court's order, Plaintiffs filed the Second Amended Complaint on April 9, 2026, *see* ECF 485. The claims and allegations concerning access to counsel and conditions of confinement at B-18 are virtually identical in both the First Amended Complaint and Second Amended Complaint. *See* ECF 436-4 at 43-50, 82-84 (redline comparison). Because preservation obligations relevant to this *ex parte* application arose no later than the time of the First Amended Complaint, however, the Access/Detention Plaintiffs cite to the First Amended Complaint here.

*EX PARTE* APPLICATION FOR PRESERVATION ORDER

unmarked vans by blasting the horns. ¶¶ 82-84.

The Access/Detention Plaintiffs challenge the inhumane conditions and denial of access to counsel at B-18 under the Fifth Amendment and the Immigration and Nationality Act. ¶¶ 234-44. On July 11, 2025, the Court found that the Access/Detention Plaintiffs were likely to succeed on the merits of their Fifth Amendment access-to-counsel claim and granted a temporary restraining order. ECF 87 ("TRO") at 2. The Court later granted a preliminary injunction on the same claim, rejecting Defendants' argument that developments post-dating the First Amended Complaint and TRO mooted the access-to-counsel claim. *See* ECF 256 ("PI") at 13-15. The Court denied Defendants' motion to dismiss all of the Access/Detention Plaintiffs' claims on February 19, 2026. ECF 419.

**B.    Defendants' Ongoing Destruction of Critical Evidence at B-18**

On September 12, 2025, Plaintiffs sent Defendants a routine preservation letter, reminding Defendants that they have a duty to preserve evidence relevant to the litigation, and highlighting certain areas of evidence that are encompassed within Defendants' preservation obligations "in order to minimize the likelihood of disputes in the future regarding these obligations." Ex. A to Craig Decl. at 1. Among other things, Plaintiffs stated that Defendants' preservation obligations extend to multiple categories of evidence relevant to the claims concerning access to counsel and conditions at B-18, including "all photographs and videos of the facility." *Id.* at 2. That same day, Sean Skedzielewski, Counsel to the Assistant Attorney General in the Civil Division at the Department of Justice (and counsel of record in this action) responded to the preservation letter, stating without reservation: "Defendants' counsel timely sent a litigation hold to Defendants in connection with this litigation and Defendants are complying with their preservation obligations under the Federal Rules of Civil Procedure." Ex. B to Craig Decl. at 1.

For the next six months, with a temporary restraining order and then a preliminary injunction in effect, Defendants never objected to the scope of Plaintiffs' preservation notice or took issue with preservation of video footage at B-18, much less suggested that video footage at B-18 had not been preserved. That changed in late February 2026, when

3

*EX PARTE* APPLICATION FOR PRESERVATION ORDER

Defendants shared revisions to the parties' working draft of a proposed electronically stored information ("ESI") protocol. *See* Craig Decl. ¶ 5. Despite having previously represented that Defendants were complying with their preservation obligations in response to Plaintiffs' preservation notice, Defendants now proposed *removing* from the



list of agreed-upon categories of data subject to preservation video footage from B-18: *Id.* ¶ 5.

On March 12, 2026, the Access/Detention Plaintiffs returned the draft with a comment bubble rejecting Defendants' proposal and reiterating that video footage from the facility is subject to preservation. *See id.* ¶ 6. On March 25, 2026, the Access/Detention Plaintiffs followed up with Defendants by letter expressing "serious concerns about Defendants' preservation of evidence that is relevant to this action." Ex. C to Craig Decl. at 1. The Access/Detention Plaintiffs explained that Defendants have a duty to preserve video evidence from B-18 because of its relevance to the claims and defenses raised in this action, which was clear from both the First Amended Complaint and the September 12, 2025 preservation letter. *See id.* at 2-3. The Access/Detention Plaintiffs also requested Defendants respond to the following:

> [1] Please confirm that Defendants have preserved all video footage from B-18 created since January 20, 2025, and that Defendants are taking all reasonable measures to preserve any such video footage, including by suspending any applicable retention policies that may result in the routine deletion of video footage from inside or around the facility.
>
> [2] If any video footage has been deleted or destroyed, please

*EX PARTE* APPLICATION FOR PRESERVATION ORDER

detail what has been deleted or destroyed, when the footage was deleted or destroyed, how the footage was deleted or destroyed (*e.g.*, automatic deletion based on retention policy, staff deleted or overrode footage, or any other explanation), and what remaining footage is available.

[3] If it is Defendants' position that no video footage has been preserved, please explain how it came to be that cameras installed inside and around B-18 have not been recording.

*Id.* at 3-4.

Despite having enough information to object to the preservation of video footage in the draft ESI Protocol, Defendants took an additional 12 days to provide any substantive response, all while asking counsel for the Access/Detention Plaintiffs' "patience" and telling them to "stay tuned." Ex. D to Craig Decl. at 10, 12, 13. After multiple follow-up emails by counsel for the Access/Detention Plaintiffs, Defendants finally responded by email on April 7, stating:

ICE informed us that due to the technical limitations within ICE's surveillance system at and near B-18, camera footage is only saved within the surveillance system for no more than 30 days on average before the system reaches its storage capacity. Once the system reaches its storage capacity, it automatically re-records new data over the previous data. Therefore, the previous footage is re-written over which severely limits the possibility of recovering the previous information. This is an automated component of the surveillance system that, unfortunately, cannot be manually turned off or changed.

*Id.* at 8. Defendants also disclosed that ICE "only owns and operates all cameras within the B-18 holding facility and the entrances to the facility" and "do[es] not have custody and

5

*EX PARTE* APPLICATION FOR PRESERVATION ORDER

control over all cameras near B-18." *Id.* Defendants did not address: what steps have been taken to preserve video footage following the March 25 letter from counsel for the Access/Detention Plaintiffs; what steps were being taken to preserve video footage going forward; who has custody or control over video footage from other cameras near B-18 and whether they are other parties to the litigation; or what video footage remains available. *See id.*

Seeking answers to these obvious follow-up questions, the Access/Detention Plaintiffs followed up by email. *See id.* at 6-7. After more than 36 hours of further foot-dragging, Defendants' counsel responded on April 9, disclosing that:

- "[ICE] advised DOJ counsel on March 30, 2026, of the preservation issue," *id.* at 2—that is, eight days *before* Defendants' chose to reveal to the Access/Detention Plaintiffs that evidence from B-18 had been destroyed from the outset of the litigation;

- "ICE is still investigating options for preservation, but at this time understands that the automatic deletion component cannot be suspended, turned off, or changed by their IT staff," *id.* at 1—making clear that video footage from B-18 was *still* being automatically overwritten and therefore destroyed; and

- ICE identified AFOD Reglio Gudino and SDDO Vadim Tsarkov as "custodians" of video cameras inside and/or around B-18, and stated that Gudino received a preservation notice on October 7, 2025, and then Gudino and Tsarkov both received preservation notices on April 9, 2026, *id.* at 2—that is, the same day as Defendants' email and seven months after Defendants had originally promised that they were complying with their preservation obligations, *see* Ex. B at 1.

Defendants did not identify any other custodians of video cameras inside or around B-18.

6

*EX PARTE* APPLICATION FOR PRESERVATION ORDER

*See* Ex. D at 1-2.

On April 10, 2026, counsel for the Access/Detention Plaintiffs met and conferred with counsel for Defendants regarding these ongoing preservation issues, and the Access/Detention Plaintiffs' reiterated their concerns about the continuing destruction of evidence at B-18. *See* Craig Decl. ¶¶ 9-10. During the meet-and-confer, counsel for the Access/Detention Plaintiffs asked whether Defendants had turned off the automatic deletion function of the video cameras at B-18 and whether Defendants had backed up any existing video footage. *Id.* ¶ 10. Counsel for Defendants did not have answers to these straightforward questions and instead referred back to their email from the day before, *see id.*—making clear that Defendants are still actively destroy evidence at B-18, *see* Ex. D at 1-2 (stating that "the automatic deletion component cannot be suspended, turned off, or changed" and indicating that Defendants had not "procure[d] an external hard drive that can save current camera footage").

## ARGUMENT

Defendants have a clear and unambiguous duty to preserve video footage from cameras inside and around B-18, powerful evidence that is critical to the claims and defenses in this litigation. Because Defendants have acknowledged that they have failed to preserve this critical evidence—and given the imminent danger that Defendants will continue to destroy this evidence absent the Court's intervention—the Court should order Defendants to comply with their preservation obligations and take immediate measures to cease the destruction of video footage from B-18.[2]

### I.    Defendants Have a Duty to Preserve Video Footage from B-18

In the Ninth Circuit, "a litigant is under a duty to preserve evidence which it knows

---

[2] This Court may levy sanctions for spoliation of evidence. *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). This *ex parte* application does not address sanctions for Defendants' past spoliation and seeks only to ensure that video evidence inside and around B-18 is preserved going forward. The Access/Detention Plaintiffs reserve all rights to move for sanctions at a later time.

7

*EX PARTE* APPLICATION FOR PRESERVATION ORDER

or reasonably should know is relevant to the action." *Williams v. Kohl's Dep't Stores, Inc.*, No. 19 Civ. 397, 2020 WL 3882953, at *7 (C.D. Cal. June 16, 2020) (quoting *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006)). "Once the duty to preserve attaches, a party must preserve all relevant documents related to the litigation." *Wildcat Retro Brands, LLC v. Herman*, No. 18 Civ. 7833, 2018 WL 11363942, at *5 (C.D. Cal. Oct. 4, 2018) (granting preservation order raised in *ex parte* application) (cleaned up).

There is no question that video footage from B-18 is relevant to the claims in this action and subject to preservation. Counts V, VI, and VII of the First Amended Complaint allege that Defendants have systematically denied individuals detained at B-18 access to counsel and subjected those same individuals to inhumane and coercive conditions of confinement. ¶¶ 234-44. Video footage from cameras in the possession, custody, or control of Defendants, recording the treatment of attorneys and individuals held in detention inside and around the facility, would shed light on the events and circumstances giving rise to these claims—from the occasions when Defendants prevented CHIRLA and ImmDef attorneys from accessing the facility, ¶¶ 82-92, to the persistent overcrowding, inadequate food and hygiene products, and lack of medical care that give rise to the conditions claims, ¶¶ 76-80; *see Unknown Parties v. Johnson*, No. 15 Civ. 250, 2017 WL 7520603, at *7 (D. Ariz. Dec. 19, 2017) (explaining importance of video recordings of immigration detention facility in case alleging unconstitutional conditions of confinement).

*EX PARTE* APPLICATION FOR PRESERVATION ORDER

For example,[3] video cameras installed around the facility likely would have captured the critical moments on June 7, 2025, when CHIRLA and ImmDef attorneys—peacefully attempting to access the facility to provide legal counsel to the individuals detained there—were met with an extraordinary show of force by federal agents, who deployed an unknown chemical agent to prevent the attorneys from reaching the entrance. ¶¶ 82-84. That moment figured in the Court's decision granting a temporary restraining order and preliminary injunction, it would be central to the Access/Detention Plaintiffs' case at trial, and there is no question that video footage of that incident is relevant and subject to preservation. *See* TRO at 20, 25 (noting Plaintiffs' allegation that "Defendants denied access, including by not permitting entry, blocking the attorneys' visitation with vans, honking, and spraying chemicals"); PI at 4 (citing the TRO's findings that "federal agents prevented Access/Detention Plaintiffs' attorneys from communicating with detained individuals, including denying them entry, blasting their horns to drown out communications, and deploying an 'unknown chemical agent' against the attorneys that caused 'everyone to cough and inflicted a burning sensation in the eyes, nose, and throat'").

---

[3] The First Amended Complaint and various declarations filed in this litigation detail numerous additional instances of coercive conditions and deprivation of counsel, the events of which should have been captured by video cameras operating inside and around B-18. *See, e.g.*, ECF 38-9 ¶¶ 16-22 (agents honked horns after attorneys shouted know-your-rights information and sprayed attorneys with chemical irritant); ECF 38-11 ¶ 30 (agent arrived with canine to prevent attorneys and others from approaching entrance); ECF 82-5 ¶ 10 (detainee violently pulled out of van by neck, detained in same room for multiple days with around 40 others, and denied medical care); ECF 82-6 ¶ 13 (no medical team and detained person vomiting and foaming at the mouth); ECF 127-3 ¶ 7 (officer left door to attorney visitation room open during attorney-client visit); *id.* ¶ 16 (client led to believe she had to remove pants in front of male guard during intake); *id.* ¶ 17 (detained in barely furnished room and forced to sleep on floor); *id.* ¶ 21 (diet of children's juice boxes, chips, cookies, and occasional burrito); *id.* ¶ 22 (pregnant detainee collapsed in cell and, after long delay, was rolled out on an office chair); ECF 186-5 ¶ 25 (32 people held in same cell); ECF 186-6 at ¶ 9 (crowded conditions); *id.* ¶ 14 (detainees sleeping on floor with a plastic blanket); ECF 186-8 ¶ 15 (about 50 people held in same cell); *id.* ¶ 16 (nothing to sleep on besides aluminum foil blankets).

*EX PARTE* APPLICATION FOR PRESERVATION ORDER

Video footage is also relevant to Defendants' mootness defense, which they have pressed at every stage in this litigation. Defendants have repeatedly argued that the events and circumstances giving rise to the Access/Detention Plaintiffs' claims were limited to an isolated period in June 2025 when, Defendants allege, B-18 was threatened by disruptive protest activity and "riots" in downtown Los Angeles. *See* ECF 168 at 6 (arguing that "B-18 has returned to normal operations following the end of the June 2025 Los Angeles riots"); ECF 235 at 11 (arguing same). Because those conditions no longer exist, Defendants argue, the Access/Detention Plaintiffs' claims no longer present a live case or controversy. *See* ECF 168 at 6; ECF 235 at 11. Video footage demonstrating that the access and conditions issues afflicting B-18 in June 2025 have persisted throughout this litigation is directly relevant to that argument. Defendants cannot have their cake and eat it too: they cannot claim that the nature of day-to-day operations at B-18 moots this case while failing to preserve direct evidence of what actually takes place in and around the facility.

Because the relevance of video footage from B-18 has been plain since the initial pleadings, Defendants' duty to preserve video footage from B-18 arose on the very first day of the litigation. *Williams*, 2020 WL 3882953, at *7 (duty to preserve arises "[a]s soon as a potential claim is identified" (quoting *In re Napster*, 462 F. Supp. 2d at 1067)); *see also Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*, No. 22-35832, 2023 WL 6866273, at *2 (9th Cir. 2023) (Mem.). Developments after that date have only underscored that obligation. By raising a mootness defense in opposition to the Access/Detention Plaintiffs' motion for a preliminary injunction and arguing that B-18's operations returned to normal after summertime protests, Defendants would have known that video footage that continued to record events taking place inside and around the facility remained relevant to the litigation. *See* ECF 168 at 6. For good measure, while the Access/Detention Plaintiffs' preliminary injunction motion remained pending, Plaintiffs reiterated on September 12, 2025, that Defendants are obligated to preserve "all photographs and videos of the facility," Ex. A at 2—an obligation that Defendants acknowledged and said that they were complying with, Ex. B at 1. The draft of the ESI

*EX PARTE* APPLICATION FOR PRESERVATION ORDER

Protocol that Plaintiffs shared on February 4, 2026, also included a provision addressing the preservation of "[a]ll video recordings" from B-18. *See* Craig Decl. ¶ 4. And in response to the comment left by Defendants proposing to remove that provision from the draft, Plaintiffs again stressed that this footage is "subject to preservation." Ex. C at 2.

In sum, there can be no question that Defendants have a duty to preserve video footage from B-18 for purposes of this litigation. Defendants' extraordinary failure to discharge that duty—and the ongoing destruction of video footage at B-18—requires immediate judicial intervention and an order to preserve this evidence going forward.

**II.    The Court Should Order Defendants to Take Immediate Steps to Preserve**

"Federal courts have the implied or inherent power to issue preservation orders." *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1071 (C.D. Cal. 2009); *see Med. Lab. Mgmt. Consultants v. Am. Broad. Companies*, 306 F.3d 806, 824 (9th Cir. 2002) (recognizing district court's "inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence" (quoting *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993))). Courts in the Ninth Circuit have considered three factors when determining whether to issue a preservation order:

> 1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; 2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and 3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation.

*Am. LegalNet*, 673 F. Supp. 2d at 1072 (citation omitted); *see Rafael N. Rivera Luciano v. Epson Am., Inc.*, No. 25 Civ. 2257, 2025 WL 4059435, at *1 (C.D. Cal. Dec. 22, 2025) (similar three-factor test). Here, all three factors weigh decisively in the Access/Detention

*EX PARTE* APPLICATION FOR PRESERVATION ORDER

Plaintiffs' favor, and this Court should order Defendants to immediately take measures to preserve video footage from inside and around B-18.

*First*, Defendants' representations to the Access/Detention Plaintiffs make clear that video footage from inside and around B-18 has been and will continue to be destroyed absent the Court's intervention. After Defendants confirmed that video footage from the facility has been destroyed on an ongoing basis since this action began, and after the Access/Detention Plaintiffs pushed Defendants to confirm whether they had suspended the automatic deletion of video footage at the facility moving forward or backed up existing footage, Defendants have made clear that they have not. *See* Craig Decl. ¶ 10; *see also* Ex. D at 1 (stating that the automatic deletion function of the video cameras "cannot be suspended, turned off, or changed"). It is now also clear that Defendants have misrepresented their preservation of evidence at B-18 in this litigation, including on September 12, 2025, when counsel responded to Plaintiffs' preservation letter by representing that "Defendants' counsel timely sent a litigation hold to Defendants in connection with this litigation and Defendants are complying with their preservation obligations." Ex. B at 1. Defendants were *not* complying with their preservation obligations at the time, and neither of the two individuals whom Defendants have identified as "custodians" of video cameras at B-18 had received litigation holds from ICE as of that date. *See* Ex. D at 2. And despite the Access/Detention Plaintiffs raising concerns about preservation of video footage at B-18 as early as March 12, 2026, *see* Craig Decl. ¶ 6, it took Defendants' counsel another four weeks before acknowledging the ongoing spoliation of evidence, *see* Ex. D at 8. In circumstances like these, a court's "concern for the continuing existence and integrity" of evidence is "undoubt[able]," *Cal. Dep't of Toxic Substances Control v. NL Indus., Inc.*, No. 20 Civ. 1293, 2025 WL 1674442, at *4 (C.D. Cal. Mar. 14, 2025), and a preservation order is warranted to prevent destruction of evidence, *see, e.g., OOO Brunswick Rail Mgmt. v. Sultanov*, No. 17 Civ. 17, 2017 WL 67119, at *1 (N.D. Cal. Jan. 6, 2017) (finding preservation order warranted where "there [was] a risk that [parties] will delete relevant material").

*EX PARTE* APPLICATION FOR PRESERVATION ORDER

Those concerns are compounded by the fact that Defendants have been sanctioned in the past for strikingly similar conduct in litigation over the conditions of confinement at federal immigration detention facilities similar to B-18. A judge in the U.S. District Court for the District of Arizona ordered sanctions against the Department of Homeland Security ("DHS"), Customs & Border Protection ("CBP"), the U.S. Border Patrol, and others for allowing video surveillance tapes of detainee holding areas at the Tucson Sector-Border Patrol short-term detention facilities to be deleted, in a class action alleging extreme and inhumane conditions. *See Doe v. Johnson*, No. 15 Civ. 250, 2015 WL 13021467, at *1, *6-7 (D. Ariz. Sept. 28, 2015); *see also Doe v. Johnson*, No. 15 Civ. 250, 2015 WL 5086291, at *2 (D. Ariz. Aug. 14, 2015) (ordering that "Defendants shall not destroy or record over any video surveillance tapes of any and all detainee holding areas").

*Second*, the Access/Detention Plaintiffs will suffer irreparable harm absent an order directing preservation. Defendants have affirmed that they have failed to preserve video footage from inside and around B-18, they have failed to employ basic measures that would prevent the ongoing deletion of that footage, and the evidence at issue is critically relevant to the Access/Detention Plaintiffs' claims regarding coercive conditions and access to counsel. *See supra* 3-7. On a motion to preserve, facts like these more than suffice to demonstrate irreparable harm warranting a preservation order. *See, e.g.*, *Columbia Pictures Indus. v. Bunnell*, No. 06 Civ. 1093, 2007 WL 2080419, at *7 (C.D. Cal. May 29, 2007) (finding irreparable harm factor "clearly weigh[ed] in favor of requiring preservation" where "defendants d[id] not currently retain and affirmatively object to retention of the Server Log Data, and in light of the key relevance of such data in this action"); *Cutera, Inc. v. Lutronic Aesthetics, Inc.*, 444 F. Supp. 3d 1198, 1212 (E.D. Cal. 2020) (finding "irreparable harm, in the form of lost evidence, is likely to result in this way if no evidence preservation order is entered"); *Comet Techs. U.S.A. Inc. v. Beuerman*, No. 18 Civ. 1441, 2018 WL 1990226, at * 7 (N.D. Cal. Mar. 15, 2018) (Koh, J.) (similar).

In fact, the Access/Detention Plaintiffs have *already* suffered irreparable harm as a result of Defendants' conduct. By every indication, powerful evidence critical to the

13

*EX PARTE* APPLICATION FOR PRESERVATION ORDER

Access/Detention Plaintiffs' claims has been irretrievably lost, severely prejudicing the Access/Detention Plaintiffs' case for a permanent injunction. That includes evidence—central to the Court's orders granting a temporary restraining order and preliminary injunction—that Defendants sprayed CHIRLA and ImmDef attorneys with a chemical agent to prevent them from gaining access to B-18. *See* TRO at 20, 25; PI at 4. Given Defendants' refusal to preserve video evidence at B-18, all while maintaining that recent developments render this case moot, there is no question that prejudice to the Access/Detention Plaintiffs' case will continue absent the Court's intervention.

*Third*, and finally, there can be no question that Defendants are capable of preserving the video footage at issue. In a criminal case in this district, the government produced to the defense a recording of video footage (showing an ICE agent threatening an individual charged with a federal crime shortly before trial) from a closed-circuit television camera installed inside B-18. *See* Memorandum of Points & Authorities in Support of Motion to Dismiss Indictment for Government Misconduct at 3, *United States v. Zaitsev*, No. 25 Cr. 154 (C.D. Cal. May 17, 2025), ECF 91 (describing video footage filmed inside B-18 and filed with the court as an exhibit). In turn, it is beyond dispute that video cameras have been installed inside B-18, that those cameras have been used to record events taking place inside the facility, and that the government is capable of making copies of that footage and producing it in litigation.

Counsel for Defendants have asserted that B-18's surveillance system "automatically re-records new data over the previous data" and that "[t]his is an automated component of the surveillance system" which "cannot be manually turned off or changed." Ex. D at 8. But that is no excuse at all. "[A] party is not permitted to exploit the routine operation of an information system to thwart discovery obligations by allowing that operation to continue in order to destroy specific stored information that it is required to preserve." *Astellas U.S. LLC v. AnazaoHealth Corp.*, No. 08 Civ. 1083, 2009 WL 10698953, at *2 (C.D. Cal. Feb. 24, 2009) (quoting Fed. R. Civ. P. 37(f) advisory committee's note to 2006 amendment). "Nor does a data management system that regularly

*EX PARTE* APPLICATION FOR PRESERVATION ORDER

overwrites information in the normal course of operation excuse a party from fulfilling their duty to preserve documents and information." *Al Otro Lado, Inc. v. Nielsen*, 328 F.R.D. 408, 419 (S.D. Cal. 2018). Simply put, the duty to preserve requires a litigant "to suspend any existing policies related to deleting or destroying files." *teamLab Inc. v. Museum of Dream Space, LLC*, No. 19 Civ. 6906, 2022 WL 1590746, at *4 (C.D. Cal. Mar. 10, 2022) (quoting *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012)). Moreover, even if Defendants were technologically prevented from suspending the feature of their surveillance system that (they say) "automatically re-records new data over the previous data," Ex. D at 8, there are multiple potential workarounds to ensure the preservation of such evidence, including by saving a backup copy of the existing footage before that footage is overwritten—exactly as the government appears to have done with video footage from B-18 in *Zaitsev*.

Counsel for Defendants have also represented that ICE "only owns and operates all cameras within the B-18 holding facility and the entrances to the facility" and "do[es] not have custody and control over all cameras near B-18." Ex. D at 8. This too is no objection. Counsel for Defendants have "a duty to advise [their] client[s] of the type[s] of information potentially relevant to the lawsuit and of the necessity of preventing its destruction." *Holloway v. Cnty. of Orange*, No. 19 Civ. 1514, 2021 WL 454239, at *2 (C.D. Cal. Jan. 20, 2021) (quoting *Suroweic v. Cap. Title Agency, Inc.*, 790 F. Supp. 2d 997, 1006 (D. Ariz. 2011)). In this case, counsel's clients include officials from *multiple* federal law enforcement agencies—not just ICE, but also DHS, CBP, Border Patrol, the Department of Justice, the Federal Bureau of Investigation, and the U.S. Attorney's Office for the Central District of California. If *any* Defendants in this action have custody or control of cameras inside or around B-18, Defendants have a duty to preserve video footage recorded on those cameras. *See Williams*, 2020 WL 3882953, at *7.

Insofar as government agencies besides Defendants control Federal Building video cameras near B-18, Defendants should also issue a litigation hold to those agencies, and those agencies should take affirmative steps to preserve any video footage from those

15

*EX PARTE* APPLICATION FOR PRESERVATION ORDER

cameras. *See Cyntegra, Inc. v. Idexx Labs., Inc.*, No. 06 Civ. 4170, 2007 WL 5193736, at *5 (C.D. Cal. Sept. 21, 2007) ("[C]ourts have extended the affirmative duty to preserve evidence to instances when that evidence is not directly within the party's custody or control so long as the party has access to, or indirect control over, such evidence."), *aff'd*, 322 F. App'x 569 (9th Cir. 2009); *Ramos v. Swatzell*, No. 12 Civ. 1089, 2017 WL 2857521, at *6 (C.D. Cal. June 5, 2017) (finding governmental "interested third party" that "controlled" evidence at issue had duty to preserve), *R&R adopted*, 2017 WL 2841695 (C.D. Cal. June 30, 2017); *see also Pettit v. Smith*, 45 F. Supp. 3d 1099, 1110-11 (D. Ariz. 2014) (finding non-party agency's spoliation of evidence could be imputed to party who did not engage in spoliation).

## CONCLUSION

For the reasons set forth above, the Court should grant the Access/Detention Plaintiffs' *ex parte* application and order Defendants to:

(1) Immediately preserve all video footage from cameras inside and around B-18 in the custody and control of Defendants, and take all necessary technical measures to suspend the automatic deletion and/or overwriting of existing footage and retrieve any footage that may yet be recoverable, including but not limited to searching back-up drives and/or servers. Any existing footage shall be immediately transferred to and preserved on an external storage device.

(2) Immediately issue a litigation hold to all agencies and/or individuals with custody and/or control of video cameras inside or around B-18 located on the property of the Federal Building at 300 North Los Angeles Street, Los Angeles, CA 90012, directing that those agencies or individuals preserve video footage from those cameras, including by suspending any applicable retention policies that may result in the routine deletion of video footage.

(3) Certify to the Court compliance with the above-listed requirements no later than three days from the issuance of the Court's order on this *ex parte* application. Such certification shall include a list identifying all video cameras inside or around B-18 located

*EX PARTE* APPLICATION FOR PRESERVATION ORDER

on the property of the Federal Building by serial number or other unique identifier and stating the agency or individual with custody or control over each camera.

Dated: April 10, 2026

_____
MATTHEW J. CRAIG

*Counsel for Plaintiffs Coalition for Humane Immigrant Rights and Immigrant Defenders Law Center*

17

*EX PARTE* APPLICATION FOR PRESERVATION ORDER

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiffs Coalition for Humane Immigrant Rights and Immigrant Defenders Law Center certifies that this *ex parte* application contains 6,094 words, which complies with the word limit of Local Rule 11-6.1.

Dated: April 10, 2026

MATTHEW J. CRAIG

*Counsel for Plaintiffs Coalition for Humane Immigrant Rights and Immigrant Defenders Law Center*

*EX PARTE* APPLICATION FOR PRESERVATION ORDER