# EXHIBIT C

Hecker Fink LLP

NEW YORK | WASHINGTON, DC | LOS ANGELES

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

TEL (212) 763-0883 | FAX (212) 564-0883
WWW.HECKERFINK.COM

mcraig@heckerfink.com

March 25, 2026

**VIA EMAIL**

Jonathan A. Robbins
U.S. Department of Justice
Civil Division – Office of Immigration Litigation
PO Box 878, Ben Franklin Station
Washington, DC 20044
jonathan.a.robbins@usdoj.gov

      *Re:*    *Vasquez Perdomo v. Noem*, No. 25 Civ. 5605 (C.D. Cal.)

Counsel:

We write on behalf of Plaintiffs Coalition for Humane Immigrant Rights and Immigrant Defenders Law Center (together, the "Access/Detention Plaintiffs") with serious concerns about Defendants' preservation of evidence that is relevant to this action.

As you know, the parties have exchanged drafts of a Joint Stipulation Regarding Discovery of Electronically Stored Information. In a draft shared on February 23, 2026, Defendants proposed striking a provision addressing preservation of the following category of ESI:

> All video recordings (with audio, if applicable), and metadata, depicting the inside and surrounding areas of B-18, including the perimeter of and parking, loading ramp, and pedestrian entrances to the Federal Building at 300 N. Los Angeles St., Los Angeles, CA 90012, holding cells adjacent to B-18, hallways leading to B-18, and any and all other areas surrounding B-18 through which detainees have been processed or held.

In a comment accompanying the proposed revision striking this language, Defendants stated that they "cannot agree to this language as it exceeds the scope of Plaintiffs' operative complaint," and that "the production of all video recordings of security cameras is disproportionate to the needs of the case."

As Plaintiffs explained in a responsive comment shared with Defendants on March 12, 2026, we do not agree that the language proposed in the draft ESI protocol exceeds the scope of the operative complaint. As we explain below, Defendants have a clear and ongoing obligation to preserve this category of ESI, which is highly likely to depict events, circumstances, and conditions that are critical to claims in this litigation. Defendants also have been on notice that they must

## Hecker Fink LLP

preserve this relevant evidence and have previously suggested that they are complying with this preservation obligation.

**_Defendants have a duty to preserve video evidence from B-18, which is directly relevant to the claims and defenses in this action._**

It is well settled that "a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *Williams v. Kohl's Dep't Stores, Inc.*, No. 19 Civ. 397, 2020 WL 3882953, at *7 (C.D. Cal. June 16, 2020) (quoting *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006)). By any rational measure, video footage from inside or around B-18—including areas where individuals detained at the facility have been processed or held by Defendants—is squarely relevant to the claims and defenses raised in this action, and therefore such video footage is subject to preservation. Counts V, VI, and VII of the First Amended Complaint allege that Defendants have systematically denied individuals detained at B-18 access to counsel and subjected those same individuals to inhumane and coercive conditions of confinement. *See* ECF 16 ¶¶ 234-44. Video footage from inside or around the facility is highly likely to shed light on the events and circumstances giving rise to these claims. This includes multiple occasions—described in the First Amended Complaint, the Access/Detention Plaintiffs' motions for a temporary restraining order and preliminary injunction, and declarations filed in connection with those motions—in which CHIRLA and ImmDef attorneys were prevented from providing legal counsel to individuals held at the facility, such as on June 7, 2025, when federal agents deployed an unknown chemical agent against attorneys who were peacefully requesting access. *See, e.g.*, *id.* ¶¶ 82-84. Video footage is also likely to shed light on the nature and extent of the deplorable conditions at the facility, including severe overcrowding, inadequate provision of food, and a failure to provide basic hygiene products and medical care. *See, e.g.*, *id.* ¶ 95.

The Access/Detention Plaintiffs are also aware of highly disturbing reports that individuals detained at B-18 have been subjected to acts of physical coercion and intimidation by detention officers. These acts have dissuaded people in Defendants' care from exercising their legal rights in immigration proceedings, including speaking with counsel. Any video footage depicting such acts is relevant to the Access/Detention Plaintiffs' claims that Defendants have prevented individuals from consulting with counsel and subjected individuals to inhumane and coercive conditions.

In addition, video footage from inside or around B-18 is relevant to Defendants' position (pressed at every stage of this litigation) that developments post-dating the First Amended Complaint have mooted the Access/Detention Plaintiffs' claims. Defendants cannot credibly claim that the events and circumstances giving rise to these claims were limited to an isolated period in June 2025 while simultaneously failing to preserve critical evidence contemporaneously documenting whether these issues persist and present a live controversy.

**_Defendants have been on notice that they must preserve video footage from B-18, and Defendants agreed that they were complying with their preservation obligations._**

In the Ninth Circuit, "[p]arties to litigation have a duty to preserve evidence that kicks in once a party has 'some notice' that evidence will be 'potentially relevant to the litigation.'"

## Hecker Fink LLP

3

*Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*, No. 22-35832, 2023 WL 6866273, at *2 (9th Cir. Oct. 18, 2023) (mem.) (quoting *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015)). The duty to preserve arises "[a]s soon as a potential claim is identified." *Williams*, 2020 WL 3882953, at *7 (quoting *In re Napster*, 462 F. Supp. 2d at 1067). As discussed, the relevance of video footage is clear from the pleading itself. And for good measure, Plaintiffs reiterated that Defendants' preservation obligations extended to "all photographs and videos of [B-18]" in a letter sent on September 12, 2025. Ex. A at 2. Defendants acknowledged those preservation obligations in an email sent by Counsel to the Assistant Attorney General Sean Skedzielewski on the same date, explaining that Defendants were "complying with their preservation obligations." Ex. B at 1.

Despite acknowledging these preservation obligations, Defendants now complain that video footage from inside or around B-18 "exceeds the scope of Plaintiffs' operative complaint" and that "the production of all video recordings of security cameras is disproportionate to the needs of the case." But these objections are misplaced and raise grave concerns that Defendants may not be preserving all relevant evidence in this action. As explained above, a party has a duty to preserve evidence it knows or should know is relevant to litigation, *see Williams*, 2020 WL 3882953, at *7, and there is no question that video footage from B-18 is relevant here. And the possibility that Defendants' proportionality objection might later lead the parties to reach an agreement on a subset of footage for production does not limit Defendants' current preservation obligations. A party cannot unilaterally dictate the bounds of appropriate discovery, and unless and until a court relieves a party of its obligation to preserve relevant material, the obligation remains intact.

***The Access/Detention Plaintiffs reiterate that Defendants must preserve any video footage from inside or around B-18 and seek clarification regarding their preservation of such evidence.***

There can be no dispute that video cameras have been installed inside B-18, and those cameras have been used to record events taking place inside the facility. Indeed, in another case in this District, a criminal defendant submitted video footage from a camera installed inside B-18 that recorded an ICE agent threatening a detainee. *See* Mem. of P. & A. in Supp. of Mot. to Dismiss Indictment for Government Misconduct, *United States v. Zaitsev*, No. 25 Cr. 154 (C.D. Cal. May 17, 2025), ECF 91 at 3 (describing video footage produced by government from inside B-18 (and filed with the court) depicting ICE agent threatening defendant at B-18 following a pre-trial court appearance); *see also* Criminal Minutes, *United States v. Zaitsev*, No. 25 Cr. 154 (C.D. Cal. May 20, 2025), ECF 98 (reflecting court granted motion to dismiss indictment with prejudice).

Given the relevance of video footage from inside or around B-18 to this litigation, the Access/Detention Plaintiffs reiterate that Defendants are obligated to preserve all such footage, as set forth in Plaintiffs' preservation letter and the draft ESI protocol. In connection with these preservation obligations, we request the following:

- Please confirm that Defendants have preserved all video footage from B-18 created since January 20, 2025, and that Defendants are taking all reasonable measures to preserve any such video footage, including by suspending any applicable retention policies that may result in the routine deletion of video footage from inside or around the facility.

Hecker Fink LLP                                                                                    4

- If any video footage has been deleted or destroyed, please detail what has been deleted or destroyed, when the footage was deleted or destroyed, how the footage was deleted or destroyed (*e.g.*, automatic deletion based on retention policy, staff deleted or overrode footage, or any other explanation), and what remaining footage is available.

- If it is Defendants' position that no video footage has been preserved, please explain how it came to be that cameras installed inside and around B-18 have not been recording.

We ask that you please provide a response regarding these items by March 31, 2026.


Very truly yours,

Matthew J. Craig


cc:      Counsel of record