UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| Case No. | 2:25-cv-05605-MEMF-SPx | Date | April 20, 2026 |
|---|---|---|---|
| Title | Pedro Vasquez Perdomo, et al. v. Kristi Noem, et al | | |

| Present: The Honorable | Sheri Pym, United States Magistrate Judge | |
|---|---|---|
| Kimberly I. Carter | None | None |
| Deputy Clerk | Court Reporter/Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None | None |

**Proceedings:**    **(In Chambers) Order Granting Plaintiffs' Motion to Remove Confidentiality Designation [430]**

## I.    INTRODUCTION

On February 24, 2026, plaintiffs filed a motion to remove the confidentiality designation from body-worn camera ("BWC") footage bates numbered GOV_VID_001.[1] Docket no. 430.  The parties' positions are set forth in a Joint Stipulation ("JS").  *Id*. Plaintiffs' arguments are supported by the Amended Declaration of Sara Worth ("Worth Decl.") and exhibits.  Docket no. 445.  On March 3, 2026, plaintiffs filed a supplemental memorandum ("P. Supp.") supported by the declaration of David Fry ("Fry Decl.") and exhibits.  Docket no. 442.

The court held a hearing on March 17, 2026.  After considering the parties' written and oral arguments, the court grants plaintiff's motion as discussed below.

## II.    BACKGROUND

As relevant here, on June 12, 2025, Customs and Border Protection ("CBP") conducted an immigration enforcement operation at Yank Towing in Montebello.  *See* docket no. 128.  This operation is among those at issue in the preliminary injunction

---

[1]    Plaintiffs filed an amendment to the motion on March 4, 2026.  Docket no. 445. The amendment is identical to the initial motion except an additional exhibit is redacted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| Case No. | 2:25-cv-05605-MEMF-SPx | Date | April 20, 2026 |
|---|---|---|---|
| Title | Pedro Vasquez Perdomo, et al. v. Kristi Noem, et al | | |

motion.  *See id.*  During this operation, CBP agents had an encounter with plaintiff Brian Gavidia.  The encounter was captured on video with a body-worn camera worn by a CBP agent whom defendants have identified as C217, and produced as GOV_VID_001 (the "video").

## A.    Statements Made About the Encounter

### 1.    Representations Made in the Proceedings

In a declaration supporting plaintiffs' motion for a preliminary injunction, plaintiff Brian Gavidia states he was at Yank Towing in Montebello on June 12, 2025.  Worth Decl., Ex. 10 (docket no. 45-9) ¶ 6.  Plaintiff Gavidia was outside on his phone when a masked federal agent told him to "Stop right there," while other agents were also present. *Id.* ¶¶ 7-8.  Another unmasked agent ran toward Gavidia, asking several times if he was American and which hospital he was born in.  *Id.* ¶ 9.  Gavidia responded he was an American and did not know which hospital he was born in.  *Id*.  At that point, the agents forcefully pushed Gavidia against the metal fence and twisted his arm to put his hands behind his back.  *Id*.  The agents took Gavidia's phone and continued to ask what hospital he was born in.  *Id*. ¶¶ 9-10.

In defendants' opposition to the PI motion, defendants disputed Gavidia's account of the encounter.  Defendants represented an agent called to Agent C217 to "get out there."  Worth Decl., Ex. 11 (docket no. 170) at 8; *see id*., Ex. 12 (docket no. 170-1) ¶ 7. Agent C217 stated in his declaration that there was an urgency in the other agent's voice. Docket no. 170-1 ¶ 7.  When Agent C217 stepped out of the tow yard, he observed "a crowd of approximately 10 people" approach the officers and yelling curse words at them.  Docket no. 170 at 8; docket no. 170-1 ¶ 8.  Defendants stated Agent C217 determined another agent's safety was threatened because an individual, later identified as Gavidia, stood very close to that officer.  Docket no. 170 at 8; *see* docket no. 170-1 ¶ 8.  Agent C217 then placed Gavidia against the fence, at which point Gavidia voluntarily disclosed he is an American citizen.  Docket no. 170-1 ¶ 8.  Defendants characterized this encounter as one initiated by Gavidia.  *See* docket no. 170 at 8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| Case No. | 2:25-cv-05605-MEMF-SPx | Date | April 20, 2026 |
|---|---|---|---|
| Title | Pedro Vasquez Perdomo, et al. v. Kristi Noem, et al | | |

At his deposition, Agent C217 testified he heard some type of interaction between Gavidia and another agent. Worth Decl., Ex. 8 at 137:8-10. Agent C217 ran out and saw Gavidia about six to ten feet away from the agent. *Id*. at 137:11-13. Agent C217 later testified Gavidia was not in the immediate area of the other agent. *Id.* at 172:8-9. Agent C217 thought Gavidia was being assaultive or posing a threat or trying to interfere with the operation. *Id*. at 137:14-18; 176:2-5. Agent C217 testified Gavidia was on the sidewalk and there were possibly five people standing five feet from the sidewalk. *Id*. at 170:3-12. He further testified Gavidia was yelling at the other agent. *Id*. at 180:7-11.

## 2. **Out-of-Court Statements**

In addition to the representations made in these court proceedings, defendants made several out of court statements about the operation. Two days after the operation, in a response to a post on X about the encounter, which included a photo of Gavidia, the Department of Homeland Security ("DHS") asserted U.S. citizens were arrested because they assaulted CBP agents. Worth Decl., Ex. 2. The Los Angeles Times and CNN published articles about this encounter and Gavidia. *Id*., Exs. 3-4. The CNN article included a statement from DHS that Gavidia "attempted to flee, assaulting an agent in the process. The subject was arrested for assaulting and interfering with agents during their duties." *Id*., Ex. 4 (internal quotation marks omitted). Then, on October 1, 2025, DHS issued a press release, again stating that "Gavidia was arrested for assaulting a law enforcement officer and interfering with agents performing their duties." *Id*., Ex. 5.

## B. **The Video**

The video shows that Agent C217 was inside the tow yard when another agent, who is barely perceptible on the video, appears to have said "come on now." *Id*., Ex. 1 at 2:07. When Agent C217 ran outside to the sidewalk, only the other agent and Gavidia were present in the footage. *See id*. at 2:14-2:17. There were no other people visible on the sidewalk or street. *See id*. Gavidia was talking on his cell phone and was not in the immediate area of the other agent. *See id*. Gavidia was not yelling at the other agent. *See id*. As Agent C217 ran toward Gavidia and grabbed his arm, Gavidia identified himself as an American. *Id*. at 2:18-19. Gavidia was not arrested. *See id*.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| Case No. | 2:25-cv-05605-MEMF-SPx | Date | April 20, 2026 |
|---|---|---|---|
| Title | Pedro Vasquez Perdomo, et al. v. Kristi Noem, et al | | |

## C.    Procedural Background

On November 5, 2025, the court issued a protective order, to which the parties had largely stipulated.  Docket no. 247.  The protective order contains a provision by which a party may challenge confidential designations.  *Id*. § D.

On January 21, 2026, plaintiffs informed defendants of their intent to seek to remove the confidentiality designation defendants had given to the video.  Worth Decl. ¶ 3; *see* Fry Decl., Ex. 1.  Defendants opposed removal of the confidentiality designation based on "safety and operational concerns."  Worth Decl. ¶ 4; *see* Fry Decl., Ex. 1.

The parties met and conferred about this issue on January 26, 2026.  Worth Decl. ¶ 5.  When plaintiffs asked defendants to elaborate on the "safety and operational concerns," defendants stated they would communicate their "final decision" within 20 days of receiving notice from plaintiffs pursuant to the terms of the protective order.  *Id*. Defendants then identified three "safety and operational concerns."  *Id*. ¶ 6.  First, defendants noted that it was possible to see the screen of an agent's cell phone, which contained privileged information.  *Id*.  Specifically, the screen showed an internal government database, which usually contain a lot of personal information about people being apprehended and could present an issue.  *Id*. ¶ 7.  Second, defendants stated there were tactical and strategy elements to the agents' "formation and layout."  *Id*. ¶ 6. Defendants explained the video could be studied to identify how agents are trained to position themselves, which could be used to harm agents.  *Id*. ¶¶ 8, 11.  Finally, defendants asserted that an ID was visible and that the name of Agent C217 is briefly visible on his gun at the end of the video.[2]  *Id*. ¶ 6.  Defendants also stated the agents' body type and voice could lead to identification and doxing.  *Id*. ¶ 8.  At the end of the meet and confer, defendants stated that they were in good faith considering not opposing the de-designation.  *Id*. ¶ 12.

---

[2]    Plaintiffs informed defendants the Real ID shown in the video belonged to plaintiff Brian Gavidia.  Worth Decl. ¶ 9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| Case No. | 2:25-cv-05605-MEMF-SPx | Date | April 20, 2026 |
|---|---|---|---|
| Title | Pedro Vasquez Perdomo, et al. v. Kristi Noem, et al | | |

On February 6, 2026, plaintiffs advised defendants they would blur the faces of the public in the video in response to defendants' comments about their potential privacy concerns.  *Id.* ¶ 13.

On February 10, 2026, defendants informed plaintiffs that they maintained their position that the video was properly designated as confidential under the protective order. *Id*. ¶ 14, Ex. 9; *see* Fry Decl., Ex. 1.

On February 22, 2026, after defendants received plaintiffs' portion of the joint stipulation, plaintiffs informed defendants that while they maintain the confidentiality designation is appropriate, CBP would be willing to the de-designation if plaintiff would blur the faces of the officers and the database.  *See* Fry Decl., Ex. 1.  Plaintiffs replied that defendants have not articulated any particularized harm in connection with the video or any confidential information concerning the database.  *See id*.

Plaintiffs filed the instant motion on February 24, 2026.

## III.   <u>DISCUSSION</u>

### A.   <u>Legal Standard</u>

"As a general rule, the public is permitted 'access to litigation documents and information produced during discovery.'"  *In re Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (quoting *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002)); *see San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir. 1999) ("It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public."). Rule 26 of the Federal Rules of Civil Procedure provides the court may "issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden," including an order "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters."  Fed. R. Civ. P. 26(c).

To determine whether good cause exists, a court engages in a two-step analysis.  *In re Roman Cath. Archbishop of Portland*, 661 F.3d at 424.  First, the court determines

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| Case No. | 2:25-cv-05605-MEMF-SPx | Date | April 20, 2026 |
|---|---|---|---|
| Title | Pedro Vasquez Perdomo, et al. v. Kristi Noem, et al | | |

whether disclosure will result in a particularized harm.  *Id*.  Broad allegations of harm are insufficient.  *Id*.  Instead, the party opposing disclosure must allege specific prejudice or harm.  *Id*.

Second, if the court concludes there is particularized harm, then it must balance the public and private interests to decide whether the confidentiality designation should be maintained.  *Id*.  Courts are directed to consider seven factors: (1) whether the disclosure will violate any privacy interests; (2) whether the information is being sought for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to the health and safety of the public; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.  *Id*. at n.5 (citing the factors identified in *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)).  But these factors "are neither mandatory nor exhausted" and "the district court is best situated to determine what factors are relevant to the dispute."  *Glenmede Trust*, 56 F.3d at 483.

## B.   <u>Defendants Have Not Demonstrated Good Cause Exists to Maintain Confidentiality</u>

Defendants argue that the court, by entering the protective order, has already determined good cause exists for the confidentiality designation of the video.  JS at 21.  This argument is incorrect.  A finding of good cause to issue a protective order is not equivalent to a good cause determination for each document designated confidential under the protective order, and nor does it preclude a party from challenging a confidentiality designation.  *Estate of Serna v. Cnty. of San Diego*, 2024 WL 3564460, at *2 (S.D. Cal. May 13, 2024) (finding good cause to enter a stipulated protective order does not "constitute a prospective good cause finding that foreclose any challenge to the designation of materials as 'Confidential' pursuant to the protective order.").  Indeed, the protective order in this case specifically provides for such challenges.  Docket no. 247 § D.  "If a party takes steps to release documents subject to a stipulated order, the party opposing disclosure has the burden of establishing that there is good cause to continue the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES -GENERAL**

| Case No. | 2:25-cv-05605-MEMF-SPx | Date | April 20, 2026 |
|---|---|---|---|
| Title | Pedro Vasquez Perdomo, et al. v. Kristi Noem, et al | | |


protection of the discovery material." *In re Roman Cath. Archbishop of Portland*, 661 F.3d at 424.

### 1.      Defendants Have Not Demonstrated Particularized Harm

Here, defendants argue they would suffer particularized harm if the confidentiality designation were removed from the video.  JS at 22-23.  Specifically, defendants argue disclosure of the video could reveal structural details of an internal law enforcement database and the identification of non-public facing federal employees would likely pose privacy or safety risks.  *Id.*

First, defendants contend moments of the video show an officer using an internal law enforcement database and that disclosure of this information "risks the possibility of enabling offenders to gain access or insight as how the database operates," which carries the risk of unauthorized use or manipulation of the database.  JS at 22-24.  These are mere broad allegations of general harm unsupported by evidence.  Defendants have not identified the information on the screen that is confidential or could lead to harm.  Worth Decl. ¶ 7; *see* JS at 22-23.  Nor have defendants alleged any facts that explain how someone could gain access to the database from a mere image or that suggest it would likely happen.  "[B]road conjecture about what might happen if the BWC footage is publicly disclosed does not constitute plausible allegation of 'particularized harm.'" *Gonzales v. City of San Jose*, 2020 WL 4430799, at *4 (N.D. Cal. Jul. 31, 2020).

Second, defendants argue disclosure of agents' identities "would likely 'pose privacy or safety risks'" to the agents.  JS at 23.  Yet the CBP agents were not undercover here.  Instead, they were in uniform and on a public sidewalk where there were many witnesses, some of whom were making their own recordings.  Thus, the agents do not have a reasonable expectation of privacy.  *See LaRocca v. City of Los Angeles*, 2023 WL 4291066, at *4 (C.D. Cal. May 31, 2023) (officer does not have a reasonable expectation of privacy in his BWC video); *Dominguez v. City of Los Angeles*, 2018 WL 6333661, at *3 (C.D. Cal. Apr. 23, 2018) (no particularized harm releasing footage of a shooting that took place in a public setting and was witness by numerous individuals); *see also U.S. v. Gonzalez*, 328 F.3d 543, 548 (9th Cir. 2003) (people in a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| Case No. | 2:25-cv-05605-MEMF-SPx | | Date | April 20, 2026 |
|---|---|---|---|---|
| Title | Pedro Vasquez Perdomo, et al. v. Kristi Noem, et al | | | |

public setting, including DEA agents, have no reasonable expectation of privacy that would preclude video surveillance of activities already visible to the public).

Defendants assert disclosure would pose safety risks because there have already been incidents of Mexican drug cartels placing bounties on immigration enforcement officers, instances of officers being doxed, and violence against officers.  JS at 23.  But none of their assertions are supported by evidence or articulated reasoning.  *In re Roman Cath. Archbishop of Portland*, 661 F.3d at 424.  Defendants merely cite to statements DHS made in press releases unsupported by any facts or other evidence.[3]  This does not rise to the level of specificity required to articulate a particularized harm.  And as already stated, the CBP agents in this video are in uniform, on the public sidewalk, and were seen and recorded by bystanders.  Thus, disclosure of the video does not release information that has not already been seen by members of the public.

Defendants have failed to articulate a particularized harm that would result from disclosure and therefore fail to make a good cause showing.

## 2.     The Balance of Interests Weighs in Favor of Disclosure

Because defendants have not shown particularized harm, the court need not balance the public and private interests at step two.  Nonetheless, the court addresses the relevant *Glenmede* factors here.  Even if plaintiffs had demonstrated particularized harm, a balancing of the public and private interests weighs in favor of disclosure.  *See Harmon v. City of Santa Clara*, 323 F.R.D. 617, 625 (N.D. Cal. 2018) ("Cases involving a civil rights claim against a police department should be 'moderately pre-weighted in favor of disclosure' from the outset.") (citation omitted).

The first, second, fourth, and seventh factors weigh heavily in favor of disclosure.  Regarding the first reason, the privacy interests are minimal.  Plaintiffs have already blurred out the faces of the general public.  And as discussed above, the agents have no

---

[3]     One of the DHS press releases defendants cite to is no longer available.  *See* JS at 23 (referencing docket no. 172 at 7 n.1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| Case No. | 2:25-cv-05605-MEMF-SPx | Date | April 20, 2026 |
|---|---|---|---|
| Title | Pedro Vasquez Perdomo, et al. v. Kristi Noem, et al | | |

reasonable expectation of privacy in this scenario. *See Santa Ana Police Offs. Ass'n v. City of Santa Ana*, 723 F. App'x 399, 402 (9th Cir. 2018) (officer did not have a reasonable expectation of privacy in body camera videos of on-duty incidents); *LaRocca*, 2023 WL 4291066, at *4 ("when police interactions occur in public, officers have diminished privacy interest"); *Gonzales*, 2020 WL 4430799, at *4 (disclosure of BWC footage does not implicate a privacy interest when the events took place in public and the officers are in the public eye); *Dominguez*, 2018 WL 6333661, at *3 ("privacy interests are diminished for public actors subject to legitimate public scrutiny"). The agents were wearing uniforms identifying themselves as CBP agents, the encounter with Gavidia occurred on a public sidewalk, and bystanders witnessed and recorded the encounter.

Here, the second, fourth, and seventh reasons are related. Disclosure is sought to correct the public record and to make the public aware of the actions of the CBP agents. The public has a strong interest in transparency and accountability – e.g., knowing whether CBP agents are violating constitutional rights and whether they are providing accurate information about their actions. *See Gonzalez*, 2020 WL 4430799, at *4 (there is a strong public interest in "knowing whether members of their tax-funded police department who swear to protect and serve them are using excessive force in violation of the United States Constitution, thereby endangering the health and safety of the community.").

Defendants contend plaintiffs do not have a legitimate purpose for seeking de-designation and they are moving for de-designation to create more public scrutiny, taint the jury pool, and embarrass defendants with their rhetoric. JS at 25-26. Defendants' suggestion that plaintiff seek disclosure to taint the jury pool is completely unfounded. Plaintiffs seek declaratory relief and the parties anticipate the case will be a bench trial. P. Supp. at 5; docket no. 400-1. And as discussed above, plaintiffs have articulated a legitimate purpose and thus the only factor weighing against disclosure is potential embarrassment to defendants. But any embarrassment is outweighed by the public interests in disclosure.

Thus, although the court need not engage in a balancing test here, even if it were required, the applicable factors weigh in favor of disclosure.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| Case No. | 2:25-cv-05605-MEMF-SPx | Date | April 20, 2026 |
|---|---|---|---|
| Title | Pedro Vasquez Perdomo, et al. v. Kristi Noem, et al | | |

# IV. **ORDER**

For the foregoing reasons, the court GRANTS plaintiffs' motion to remove the confidentiality designation from the BWC footage Bates numbered GOV_VID_001 (docket no. 430).