BRETT A. SHUMATE
Assistant Attorney General
Civil Division
DREW C. ENSIGN
Deputy Assistant Attorney General
TIBERIUS DAVIS
SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
JONATHAN A. ROBBINS (VABN 73366)
Assistant Director
JESSICA D. STROKUS (VABN 91100)
Senior Litigation Counsel
NANCY N. SAFAVI (TXBN 24042342)
JASON K. ZUBATA
ANIELLO DESIMONE
JACOB A. BASHYROV
STEPHANIE L. GROFF
Trial Attorneys
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 514-9875
Email: Nancy.Safavi@usdoj.gov

BILAL A. ESSAYLI
Acting United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
ALEXANDER L. FARRELL (SBN 335008)
PAULINE H. ALARCON (SBN 345785)
Assistant United States Attorneys
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Tel: (213) 894-5557 | 3992
    E-mail:    Alexander.Farrell@usdoj.gov
                    Pauline.Alarcon@usdoj.gov

*Counsel for Defendants*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PEDRO VASQUEZ PERDOMO; *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; *et al.*,<br><br>Defendants. | No. 2:25-cv-05605-MEMF-SP<br><br>**DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM IN SUPPORT PURSUANT TO FED. R. CIV. P. 12(b)(1) and (b)(6)**<br><br>Hearing Date:  June 11, 2026<br>Hearing Time:  10:00 a.m.<br>Location:      First Street Courthouse<br>               350 West First Street<br>               Los Angeles, CA 90012<br>               Courtroom 8B<br>               8th Floor<br><br>Hon. Maame Ewusi-Mensah Frimpong<br>United States District Judge |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that, on June 11, 2026 at 10:00 a.m., or as soon thereafter as it may be heard, Defendants United States Secretary of Homeland Security Markwayne Mullin, *et al.*, will, and hereby do, move this Court for dismissal of Plaintiffs' Second Amended Complaint ("SAC") in its entirety pursuant to Rules 12(b)(1) and 12(b)(6). This motion will be made before the Honorable Maame Ewusi-Mensah Frimpong, United States District Judge, First Street United States Courthouse, 350 West First Street, Los Angeles, CA 90012, Courtroom 8B, 8th Floor.

**DECLARATION OF NANCY N. SAFAVI REGARDING L.R. 7-3 CONFERENCE**

I, Nancy N. Safavi, declare as follows:

1. I am counsel for Defendants in this matter. I make this declaration pursuant to Local Rule 7-3 in connection with Defendants' motion to dismiss Plaintiffs' SAC (ECF 436, 485).

2. On April 14, 2026, I conferred with Plaintiffs' counsel by Microsoft Teams regarding the substance of the contemplated motion and the possibility of resolving the issues without the need for Court intervention.

3. During the conference, counsel for Defendants explained that the motion will be based on the following: Plaintiffs' lack of Article III standing to raise their Fourth and Fifth Amendment claims; even assuming standing, Plaintiffs have failed to demonstrate a Fourth or Fifth Amendment violation; renewal of multiple arguments to the extent the SAC renews claims already raised in the First Amended Complaint; and the lack of viability of the newly raised equal protection claim.

4. The parties were unable to reach a resolution that would eliminate the necessity of Court intervention.

5. I conferred with Plaintiffs' counsel on April 14, 2026, regarding the noticed hearing date for this motion.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: April 21, 2026                    Respectfully submitted,

                                         */s/ Nancy N. Safavi*
                                         NANCY N. SAFAVI
                                         Senior Trial Attorney
                                         Office of Immigration Litigation
                                         U.S. Department of Justice

                                         *Counsel for Defendants*

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...................................................................................................................... 1

II.     PROCEDURAL BACKGROUND............................................................................................ 1

III.    LEGAL BACKGROUND ......................................................................................................... 3

        A.      Reasonable Suspicion ................................................................................................ 3

        B.      Federal Law Enforcement Procedures...................................................................... 4

        C.      Fifth Amendment Due Process Clause's Guarantee of Equal Protection........................ 5

IV.     LEGAL STANDARD................................................................................................................ 5

V.      ARGUMENT.............................................................................................................................. 6

        A.      Plaintiffs Lack Standing to Seek the Prospective Equitable Relief in their Complaint................................................................................................................... 6

        B.      Section 1252 Bars this Court's Jurisdiction over Fourth and Fifth Amendment Claims ...................................................................................................................... 14

        C.      Plaintiffs Fail to State a Constitutional Claim. .................................................... 14

        D.      Plaintiffs Fail to State Any APA Violation........................................................... 16

V.      CONCLUSION....................................................................................................................... 17

L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

*Am. Immig. Lawyers Ass'n v. Reno*,
18 F. Supp. 2d 38 (D.D.C. 1998),
*aff'd*, 199 F.3d 1352 (D.C. Cir. 2000)................................................................................ 12

*Abel v. United States*,
362 U.S. 217 (1960) ....................................................................................................... 4, 8

*Alderman v. United States*,
394 U.S. 165 (1969) ........................................................................................................ 10

*Allen v. Wright*,
468 U.S. 737 (1984) ..................................................................................................... 7, 13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................................................................... 5

*Black Lives Matter L.A. v. City of Los Angeles*,
113 F.4th 1249 (9th Cir. 2024)......................................................................................... 10

*Bogomazov v. DHS*,
2022 WL 769801 (S.D. Fla. Feb. 27, 2022)..................................................................... 17

*Bolling v. Sharpe*,
347 U.S. 497 (1954) .......................................................................................................... 5

*Center for Reproductive Law & Policy v. Bush*,
304 F.3d 183 (2d Cir. 2002)............................................................................................. 13

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ..................................................................................... 7, 9, 10, 12

*Creech v. Tewalt*,
84 F.4th 777 (9th Cir. 2023)............................................................................................. 17

*Ctr. for Biological Diversity v. Exp.-Import Bank of the United States*,
894 F.3d 1005 (9th Cir. 2018)............................................................................................ 6

*DHS v. Regents of the University of California*,
591 U.S. 1 (2020) ............................................................................................................ 16

*District of Columbia v. R.W.*,
608 U.S. ___, 2026 WL 1052344 (April 20, 2026) ................................................... 3, 4, 8

*District of Columbia v. Wesby*,
583 U.S. 48 (2018) ............................................................................................................ 3

*Epstein v. Wash. Energy Co.*,
    83 F.3d 1136 (9th Cir. 1996) ................................................................................................ 5

*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) ................................................................................................... 10, 11

*Greenwood v. Fed. Aviation Admin.*,
    28 F.3d 971 (9th Cir. 1994) ............................................................................................... 16

*Hernandez v. Campbell*,
    204 F.3d 861 (9th Cir. 2000) .............................................................................................. 6

*Hussen v. Noem*,
    --- F. Supp. 3d ---, 2026 WL 657936 (D. Minn. March 9, 2026) .................................. 7, 8

*Individuals for Responsible Gov't, Inc. v. Washoe Cnty.*,
    110 F.3d 699 (9th Cir. 1997) ............................................................................................ 12

*INS v. Delgado*,
    466 U.S. 210 (1984) .......................................................................................................... 15

*Jenkins v. McKeithen*,
    395 U.S. 411 (1969) ............................................................................................................ 5

*Lawyers Ass'n v. Reno*,
    18 F. Supp. 2d 38 (D.D.C. 1998) ...................................................................................... 12

*Legal Aid Soc. of Hawaii v. Legal Servs. Corp.*,
    145 F.3d 1017 (9th Cir. 1998) .......................................................................................... 11

*Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ................................................................................................. 2, *passim*

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .......................................................................................................... 11

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) .......................................................................................................... 17

*Moya v. United States Dep't of Homeland Sec.*,
    975 F.3d 120 (2d Cir. 2020) .............................................................................................. 13

*Murthy v. Missouri*,
    603 U.S. 43 (2024) .............................................................................................................. 6

*Noem v. Perdomo*,
    146 S. Ct. 1 (2025) ................................................................................................ 3, *passim*

*Norton v. SUWA*,
    542 U.S. 55 (2004) ........................................................................................................ 17

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ...................................................................................................... 10

*Rakas v. Illinois*,
    439 U.S. 128 (1978) ...................................................................................................... 10

*Safe Air for Everyone v. Meyer,*
    373 F.3d 1035 (9th Cir. 2004) ........................................................................................ 5

*San Antonio Independent School Dist. v. Rodriguez*,
    411 U.S. 1 (1973) ............................................................................................................ 5

*States v. Mitchell*, 915 F.2d 521, 526 n.8 (9th Cir. 1990)
    500 U.S. 906 (1991)
    *cert. denied*, 500 U.S. 906 (1991) ................................................................................ 13

*Tohono O'Odham Nation v. United States DOI*,
    138 F.4th 1189 (9th Cir. 2025) ........................................................................................ 1

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ...................................................................................................... 11

*United States v. Arvizu*,
    534 U.S. 266 (2002) ..............................................................................................2, *passim*

*United States v. Brignoni-Ponce*,
    422 U.S. 873 (1975) ..............................................................................................2, *passim*

*United States v. Mitchell*,
    915 F.2d 521 (9th Cir. 1990) ........................................................................................ 13

*United States v. Montero-Camargo*,
    208 F.3d 1122 (9th Cir. 2000) ...................................................................................... 15

*United States v. Rocha-Lopez*,
    527 F.2d 476 (9th Cir. 1975) ........................................................................................ 15

*United States v. Sokolow*,
    490 U.S. 1 (1989) ............................................................................................................ 3

*United States v. Valdes-Vega*,
    738 F.3d 1074 (9th Cir. 2013) ..................................................................................... 3, 4

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*,
    454 U.S. 464 (1982) ...................................................................................................... 12

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977) ................................................................................................... 5, 15

*Washington v. Davis*,
    426 U.S. 229 (1976) ....................................................................................................... 5

## STATUTES

### Immigration and Nationality Act of 1952, as amended:

5 U.S.C. § 701(a)(2) ................................................................................................................ 17

5 U.S.C. § 706(2)(A) .............................................................................................................. 16

5 U.S.C. § 706(2)(B) .............................................................................................................. 16

8 U.S.C. § 1252(a)(5) ............................................................................................................. 14

8 U.S.C. § 1252(b)(9) ............................................................................................................. 14

8 U.S.C. § 1357 ................................................................................................................. 14, 17

8 U.S.C. § 1357(a)(1) ......................................................................................................... 3, 4, 8

8 U.S.C. § 1357(a)(2) ......................................................................................................... 3, 4, 8

## REGULATIONS

8 C.F.R. § 287.5 .................................................................................................................... 3, 4

8 C.F.R. § 287.5(a) ................................................................................................................... 8

8 C.F.R. § 287.5(c) ................................................................................................................... 8

8 C.F.R. § 287.8 ....................................................................................................................... 4

## FEDERAL RULES OF CIVIL PROCEDURE

FED. R. CIV. P. 12(b)(1) ....................................................................................................... 1, 5

FED. R. CIV. P. 12(b)(6) .......................................................................................................... 1

## I.    INTRODUCTION

This Court should dismiss the new causes of action in Plaintiffs' Second Amended Complaint under either Federal Rule of Civil Procedure ("Rule") 12(b)(1), (b)(6), or both. Plaintiffs have amended their First Amended Complaint ("FAC") largely by adding two new causes of action. *See* ECF 436, Motion for Leave to File Second Amended Complaint ("SAC"). Plaintiffs add "a cause of action for violation of the Fifth Amendment Due Process Clause's guarantee of equal protection" and "a new cause of action under the Fourth Amendment that Defendants' conduct during stops exceed the reasonable bounds of a *Terry* stop." ECF 436 at 2. Defendants have lawfully conducted immigration enforcement operations within the Central District of California consistently with the Fourth and Fifth Amendments. Accordingly, Plaintiffs' Second Amended Complaint's (ECF 436) new causes of action should be dismissed for a myriad of dispositive reasons.[1]

## II.    PROCEDURAL BACKGROUND[2]

On July 2, 2025, Plaintiffs filed their FAC for declarative and injunctive relief seeking to enjoin Defendants alleged "ongoing pattern and practice of flouting the Constitution and federal law in connection with ongoing immigration raids in the Los Angeles area." *See* ECF 16 ¶ 1.

On July 8, 2025, Intervenors followed suit, filing their Motion to Intervene, ECF 61, which this Court subsequently granted. *See* ECF 129.

On July 11, 2025, the Court granted Plaintiffs' Motion for a Temporary Restraining Order ("TRO"), enjoining all investigative stops based on four enumerated factors alone or in combination: race, language, location, or occupation. *See* ECF 87, 101. Defendants appealed and sought stays in this Court and in the Ninth Circuit; both motions were denied. ECF 89, 94, 108, 109. On July 29, 2025, Intervenors filed their original Complaint, which broadly alleged disruption to local government operations, including state courts, and reducing tax revenues, in addition to joining Plaintiffs' causes of

---

[1] Defendants acknowledge that the Court denied all but count eight in Defendants' motion to dismiss the FAC. However, Defendants respectfully renew their previous arguments to the FAC for the SAC, especially with respect to the issue of standing, which is a continuous requirement and must be met during all phases of litigation.

[2] Defendants acknowledge that the Court must consider Plaintiffs' allegations in the light most favorable to them when reviewing Defendants' 12(b)(6) Motion. *Tohono O'Odham Nation v. United States DOI*, 138 F.4th 1189, 1199 (9th Cir. 2025). Those references do not, however, constitute a concession by Defendants that those allegations are accurate representations of the facts. *Id.* (requiring courts to only accept as true facts that are "well-pleaded" and "plausible on its face").

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SAC

1

action. *See* ECF 130 ¶¶ 102-115. One week later, Intervenors filed their First Amended Complaint ("Intervenors' FAC"), adding new intervenor municipalities and further alleging Fourth Amendment violations on behalf of unnamed individual residents, diversion of law enforcement resources, and harm to local economies and municipal tax revenues. *See* ECF 142 at 13-14.

On September 8, 2025, the Supreme Court stayed this Court's Fourth Amendment TRO pending appeal. *See Noem v. Perdomo*, 146 S. Ct. 1 (2025). Justice Kavanaugh issued a comprehensive concurring opinion, finding that the Government made a sufficient showing to obtain a stay pending appellate review and emphasized the significance of the Government's interests in immigration enforcement, while stressing the need of the Judiciary to not "improperly restrict reasonable Executive Branch enforcement of the immigration laws." *See id.* at *5 (Kavanaugh, J., concurring). Justice Kavanaugh then held that the Government demonstrated a strong prospect of reversal of this Court's TRO based on two alternative grounds: (1) Plaintiffs likely lack Article III standing under *Los Angeles v. Lyons*, 461 U.S. 95 (1983), for a broad prospective injunction which restricts immigration officers from making the purported violative investigative stops; and (2) even assuming standing, the Government has a fair prospect of succeeding on the Fourth Amendment challenge and attempts to apply onerous restrictions of what constitutes "reasonable suspicion." *Id.* at *2-3 (Kavanaugh, J., concurring). Justice Kavanaugh acknowledged that "[w]hether an officer has reasonable suspicion depends on the totality of the circumstances." *Id.* at *3 (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 885, n.10 (1975); *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). Not only is the Government likely to prevail on the merits, but Justice Kavanaugh further noted the Government's likely irreparable harm and stronger equities also weigh in favor of staying this Court's TRO. *Id.* at *3-5.

On January 15, 2026, the Court held a hearing on Defendants' motions to dismiss the FACs. *See* ECF 372. On February 18, 2026, the Court denied Defendants' motion to dismiss Intervenors' FAC. *See* ECF 418. On February 19, 2026, the Court denied Defendants' motion to dismiss Plaintiffs' FAC, except for count eight. *See* ECF 419.

On February 26, 2026, Plaintiffs filed a Notice of Motion and Motion for Leave to File the SAC. *See* ECF 436. On April 7, 2026, the Court granted Plaintiffs' motion. *See* ECF 484. In Plaintiffs' SAC, the "Stop/Arrest Plaintiffs" include the five individual named Plaintiffs and three membership

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SAC

2

organizations of the Los Angeles Worker Center Network, United Farm Workers, and the Coalition for Humane Immigrant Rights ("CHIRLA"), who are challenging Defendants' stop and arrest practices "on behalf of themselves and others similarly situated[.]" SAC ¶ 11. Additionally, the "Access/Detention Plaintiffs," who seek to challenge Defendants' purported denial of access to counsel at B-18, include Immigrant Defenders Law Center and CHIRLA. *Id.*

### III.    LEGAL BACKGROUND

#### A.    Reasonable Suspicion

The Fourth Amendment permits brief investigative stops when an officer has reasonable suspicion supported by "specific and articulable facts" and the rational inferences drawn from them. *Brignoni-Ponce*, 422 U.S. at 884-86. As the Supreme Court has recognized, *Perdomo*, 146 S. Ct. at *3 (Kavanaugh, J., concurring), that standard is "considerably less than proof of wrongdoing by a preponderance of the evidence," *United States v. Sokolow*, 490 U.S. 1, 7-8 (1989), and it is evaluated under the totality of the circumstances rather than through rigid checklists or exclusions. *Arvizu*, 534 U.S. at 273-75.

Federal immigration officers must have reasonable suspicion of an immigration violation before executing a stop. *Brignoni-Ponce*, 422 U.S. at 881-84; *see District of Columbia v. R.W.*, 608 U.S. ___, 2026 WL 1052344, at *1 (April 20, 2026) (per curiam). Officers may consider several factors in assessing reasonable suspicion, including the characteristic appearance of persons who live in Mexico such as the mode of dress and haircut. *Id.* at 885. However, a stop cannot be predicated on race alone, particularly Hispanic ethnicity. *Id.* at 885-86. In considering whether an agent had reasonable suspicion for an investigative stop, the court must consider the totality of the circumstances including the agent's training and experience. *See United States v. Valdes-Vega*, 738 F.3d 1074, 1080 (9th Cir. 2013); *see R.W.*, 2026 WL 1052344, at *1-3 (reaffirming that the totality of the circumstances analysis "precludes the 'evaluation and rejection' of 'factors in isolation from each other,'" and observing that "the whole is often greater than the sum of its parts" (quoting *Arvizu*, 534 U.S. at 273-74, and *District of Columbia v. Wesby*, 583 U.S. 48, 60-61 (2018))).

Sections 1357(a)(1) and (2) of Title 8 and 8 C.F.R. § 287.5 allow Department of Homeland Security ("DHS") officers to question and detain individuals for immigration-related administrative violations. *See* 8 U.S.C. §§ 1357(a)(1)-(2) (allowing officers to interrogate, without a warrant, any person

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SAC

3

believed to be an alien regarding their right to be or remain in the United States, and to arrest those likely to escape before a warrant is obtained); *Abel v. United States*, 362 U.S. 217, 232-37 (1960) (discussing constitutional validity of administrative arrest procedure in deportation cases). DHS officers are trained on statutory and regulatory provisions of the Immigration and Nationality Act ("INA") and Fourth Amendment case law and standards, including that reasonable suspicion and probable cause are assessed under a totality of the circumstances. *See* 8 U.S.C. §§ 1357(a)(1)-(2); 8 C.F.R. §§ 287.5, 287.8. Officers focus on targeted arrests of aliens with final removal orders or serious criminal records and use consensual encounters to evaluate reasonable suspicion when encountering non-targets. ECF 170-3, Quinones Decl. ¶¶ 5-7. Officers develop individualized reasonable suspicion based on intelligence, law enforcement and database information, trend analysis, previous encounters at specific locations, and inputs from human sources and confidential informants. *Id.* at ¶ 7; ECF 170-2, Parra Decl. ¶¶ 8-10.

Officers can rely on several factors in assessing reasonable suspicion, including the characteristic appearance of persons who live in Mexico such as the mode of dress and haircut. *Brignoni-Ponce*, 422 U.S. at 885; *accord R.W.*, 2026 WL 1052344, at *1-3. Officers cannot base a stop on race or proximity to the border alone; they must consider the totality of the circumstances, including their training and experience. *Brignoni-Ponce*, 422 U.S. at 885-86; *Valdes-Vega*, 738 F.3d at 1080. Officers require "far less" information to make a stop based on reasonable suspicion than what is required to arrest an individual based on probable cause. *Valdes-Vega*, 738 F.3d at 1080; *Brignoni-Ponce*, 422 U.S. at 881; *accord R.W.*, 2026 WL 1052344, at *1 (quoting *Arvizu*, 534 U.S. at 273). Justice Kavanaugh's concurrence reaffirmed that *Brignoni-Ponce* permits reliance on multiple contextual factors—including location, time, and other objective cues—so long as agents consider these factors as part of the totality of the circumstances. *Perdomo*, 146 S. Ct. at *2-3 (Kavanaugh, J., concurring).

**B.      Federal Law Enforcement Procedures**

In accordance with 8 U.S.C. § 1357(a)(1), 8 C.F.R. § 287.5, and the limits imposed by the Fourth Amendment as discussed above, *supra*, officers in Immigration and Customs Enforcement's ("ICE") Los Angeles Enforcement and Removal Operations ("ERO Los Angeles") receive Ninth Circuit–specific Fourth Amendment training twice annually and operate pursuant to pre-operation intelligence packets.

*See* ECF 74-1, Quinones Decl. ¶¶ 4-6; ECF 94-1, Quinones Decl.¶ 5; ECF 170-1, C217 Decl. ¶ 2; ECF 170-2, Parra Decl. ¶ 4.

### C.    Fifth Amendment Due Process Clause's Guarantee of Equal Protection

The due process clause under the Fifth Amendment guarantees equal protection under the law. *Bolling v. Sharpe*, 347 U.S. 497, 499-500 (1954). Plaintiffs can show a violation by proving that the federal government's actions had a "racially discriminatory intent or purpose." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). An "official action will not be held unconstitutional solely because it results in a racially disproportionate impact." *Id.* "Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination." *Washington v. Davis*, 426 U.S. 229, 242 (1976).

This court should determine whether Defendants' practices and policies "operate[] to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution, thereby requiring strict judicial scrutiny." *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973).

## IV.    LEGAL STANDARD

A district court must dismiss an action if it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Because standing is jurisdictional, the court must dismiss an action when the plaintiff fails to establish an imminent and particularized injury. *See Lyons*, 461 U.S. at 101-11. A Rule 12(b)(1) motion may be facial, where the inquiry is confined to the allegations in the Complaint, or factual, where the court is permitted to look beyond the Complaint to extrinsic evidence. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Under Rule 12(b)(6), a motion to dismiss should be granted if the complaining party is unable to delineate "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under this standard, the complaint is construed in a light most favorable to the non-moving party and all properly pleaded factual allegations are taken as true and reasonable inferences drawn in their favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). The court does not accept as true, however, unreasonable inferences or conclusory legal allegations cast in the form

of factual allegations. *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) (noting conclusory allegations of law and unwarranted inferences cannot defeat a Rule 12(b)(6) motion).

## V.    ARGUMENT

### A.    Plaintiffs Lack Standing to Seek the Prospective Equitable Relief in their Complaint.

"Plaintiffs' standing theory largely tracks the theory rejected in *Lyons*." *Perdomo*, 146 S. Ct. at *2 (Kavanaugh, J., concurring). Plaintiffs lack standing to pursue prospective equitable relief for their various Fourth and Fifth Amendment claims, statutory claims, and regulatory challenges, because they do not, nor could they, demonstrate that past isolated encounters with federal agents are likely to recur, that they will again be subjected to any unlawful conduct, or that organizational Plaintiffs' access to aliens detained at B-18 will be limited in the future. *See, e.g.*, SAC, Counts I-IX.

At the outset, the fact this Court previously found that Plaintiffs had standing, ECF 87 at 21, does not make its jurisdictional determination binding law of the case because this Court must ensure that it "possess jurisdiction at every stage of the litigation," including when questions of mootness and standing arise. *See Ctr. for Biological Diversity v. Exp.-Import Bank of the United States*, 894 F.3d 1005, 1011 (9th Cir. 2018) (internal quotation omitted); *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) ("Federal courts are always 'under an independent obligation to examine their own jurisdiction[.]'"). It is also Plaintiffs' continued burden to demonstrate standing throughout the life of a case, and the burden does not shift to Defendants, which would inappropriately flip which party must prove standing on its head. *See Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (rejecting standing analysis that "erred by treating the defendants, plaintiffs, and platforms each as a unified whole" rather than the burden being on the "plaintiffs [to] demonstrate standing for each claim" they seek). Here, Plaintiffs do not meet the Article III requirement of standing. First, this Court has not found evidence of an unlawful policy or practice regarding stop and arrests conducted by Defendants. This failure is dispositive because, without a concrete finding of a policy or settled practice, Stop/Arrest Plaintiff cannot show the "real and immediate" threat of future injury required by *Lyons*. At most, Plaintiffs' evidence consists of isolated anecdotes that do not speak to the likelihood of prospective harm. SAC ¶¶ 205-234. Plaintiffs' SAC notes that Defendants' law enforcement operations began in June 2025, over ten months ago. *Id.* at ¶ 2. However, Plaintiffs' do not provide any indication that the operations and alleged violations remain ongoing, such

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SAC

6

that there is a likelihood of reoccurrence. Indeed, Plaintiffs' have twice amended their complaint and have curiously not added additional instances of recurrence. Courts have repeatedly held that a chilling effect based on a plaintiff's fear of future injury (like here) is too speculative to confer standing for injunctive relief. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (holding plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm"). Moreover, Access/Detention Plaintiffs have not demonstrated a likelihood of prospective harm, as operations at B-18 largely normalized since June 24, 2025, and, except in limited instances where the Government modified the visitation hours in anticipation of impending temporary public unrest or facility repairs, Plaintiffs have not alleged that they have since been unable to access existing or prospective clients at B-18. *See* SAC ¶¶ 117-135 (detailing conditions at B-18 only during June 2025).

The facts of this case are remarkably similar to the facts in *Hussen v. Noem*, --- F. Supp. 3d ---, 2026 WL 657936 (D. Minn. March 9, 2026). In *Hussen*, plaintiffs sought a preliminary injunction based on alleged unlawful policies of DHS agents to stop individuals without reasonable suspicion as a part of Operation Metro Surge in Minnesota. *Id.* at *2-3. The court in *Hussen* found that "[t]hough Plaintiffs have shown that Defendants likely maintained unconstitutional policies, Plaintiffs have not shown that irreparable injury is likely to befall them in the immediate future. This is largely owing to a significant reduction in the scope of Defendants' Minnesota-based operations." *Id*. at *3; *see also id.* at *42 ("Because Plaintiffs have not shown a substantial risk of future injury, Plaintiffs' [] standing theories fail."). Similarly, even assuming Defendants maintained an unlawful policy or practice relating to stops and arrests in the Los Angeles region, or unlawful restrictions at B-18, both of which Defendants continue to contest, Plaintiffs cannot point to evidence that show a likelihood of reoccurrence and their SAC reiterates the same stale generalized fears that are not conducive to demonstrating standing. *See Lyons*, 461 U.S. at 102-03; *see also Clapper*, 568 U.S. at 401 (holding that "an objectively reasonable likelihood that their communications will be acquired under [that program] at some point in the future . . . [wa]s too speculative to satisfy the well-established requirement that threatened injury must be certainly impending"); *Allen v. Wright*, 468 U.S. 737, 760 (1984) (rejecting grievance of plaintiffs wanting to use the judiciary "to press general complaints about the way in which government goes about its business"). Indeed, the passage of time since the denial of the motion to

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SAC

7

dismiss Plaintiffs' FAC, without any allegations of recurrence in their SAC, eviscerates their claim that any future injury they face is "real and immediate."

As to the Stop/Arrest Plaintiffs' Fourth Amendment claims and their equal protection challenge under Fifth Amendment, neither individual nor organizational Plaintiffs can establish Article III standing. Plaintiffs seek to bar investigative stops that are allegedly conducted without reasonable suspicion. Importantly, Justice Kavanaugh's opinion for the Supreme Court's stay of this Court's TRO found that Defendants demonstrated a strong prospect of success for their argument that Plaintiffs likely lack Article III standing under *Lyons* for injunctive relief restricting immigration officers from making investigative stops. *See Perdomo*, 146 S. Ct. at *1. To stay the TRO, the Supreme Court necessarily held that Defendants are likely to succeed on the merits of Plaintiffs' TRO claims (which largely mirror those in the FAC), would suffer irreparable harm absent a stay of the TRO, and have equities weighing in favor of the stay. *See id.* at *2-3.

The individual Plaintiffs lack standing because none can demonstrate that they were improperly stopped by Defendants who failed to assess reasonable suspicion or acted in a way that violated their Fourth or Fifth Amendment rights. The Supreme Court recently reaffirmed that the Fourth Amendment is satisfied when an "officer's action is supported by reasonable suspicion to believe that criminal activity 'may be afoot,'" which is assessed by "look[ing] at the 'totality of the circumstances' of each case." *R.W.*, 2026 WL 1052344, at *1 (quoting *Arvizu*, 534 U.S. at 273-74). In reversing the D.C. Circuit Court of Appeals, the Court explained that "[t]he 'totality of the circumstances' requires courts to consider 'the whole picture'" and that a "divide-and-conquer analysis" or "reviewing the facts piecemeal and without context," by "[p]retending that the most revealing aspect of the encounter did not happen[,] is incompatible with the totality-of-the-circumstances approach. . . . ." *Id.* at *2-3 (also observing that "'unprovoked flight upon noticing the police . . . is certainly suggestive' of wrongdoing" (citation omitted)). Here, officers lawfully relied on the totality-of-the-circumstances standard to assess reasonable suspicion for an investigative stop—including location, conduct, and prior intelligence—and Plaintiffs' only evidence to the contrary is baseless speculation. *See Brignoni-Ponce*, 422 U.S. at 884; *see also Abel*, 362 U.S. at 233 (collecting statutes "authoriz[ing] the arrest of deportable aliens by order of an executive official"); 8 U.S.C. §§ 1357(a)(1)-(2); 8 C.F.R. §§ 287.5(a), (c) (authorizing immigration officers to

interrogate and arrest aliens). Plaintiffs therefore fail to demonstrate they were stopped solely based on one of the enumerated factors at issue, much less that they face any *immediate* and likely risk of being subjected to such a stop in the future. *See Clapper*, 568 U.S. at 412; ECF 128-13 at 15.

As detailed earlier, the Supreme Court has already rejected a similar "past-is-prologue" theory of standing. Notably, in *Lyons*, the Supreme Court held that a plaintiff previously subjected to a chokehold lacked standing to enjoin future chokeholds absent a concrete, imminent threat that he personally would be choked again; a past incident and an alleged departmental practice were not sufficient to demonstrate Article III standing. 461 U.S. at 101-11. Here, individual Plaintiffs' standing theory is a redux of *Lyons*, as Justice Kavanaugh properly recognized in his concurrence supporting a stay of this Court's TRO. *Perdomo*, 146 S. Ct. at *2. Justice Kavanaugh explained that Plaintiffs likely lack Article III standing, like in *Lyons*, specifically because Plaintiffs have "no good basis to believe that law enforcement will unlawfully stop *them* in the future based on the prohibited factors—and certainly no good basis for believing that any stop of the plaintiffs is imminent." *Id.* at *2. Further, Justice Kavanaugh stated that "even if the Government had a policy of making stops based on the factors prohibited by the District Court, immigration officers might not rely *only* on those factors if and when they stop plaintiffs in the future." *Id.* at *3. Plaintiffs posit a speculative claim of future harm, and they cannot show any realistic immediate threat that they will likely be stopped and detained in violation of the Fourth or Fifth Amendment again. *See Clapper*, 568 U.S. at 401. "Absent a sufficient likelihood that [they] will again be wronged in a similar way," *Lyons*, 461 U.S. at 111, Plaintiffs cannot establish standing to seek an injunction much less irreparable harm.

For example, Plaintiff Gavidia alleges a past Fourth Amendment injury from law enforcement and seeks prospective relief—here, to enjoin DHS from appropriately utilizing a variety of factors to determine reasonable suspicion. And just as in *Lyons*, Plaintiff Gavidia cannot show standing because he has no basis beyond speculation to believe that he will be stopped again without reasonable suspicion. "Absent a sufficient likelihood that he will again be wronged in a similar way," he is "no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional." *Lyons*, 461 U.S. at 111. Similarly, the other individual Plaintiffs even more so lack

standing, as they present only unsubstantiated fears that they would be stopped again for what they claim are improper reasons. *See* SAC ¶¶ 15-19. Subjective fear of a future allegedly illegal stop, however, "is not certainly impending" and "cannot manufacture standing." *Clapper*, 568 U.S. at 416.

Moreover, the organizational Plaintiffs also lack standing to pursue prospective injunctive relief both for their members and as class representatives because they identify no individuals with a concrete Fourth and Fifth Amendment injury and this Court cannot find associational standing where the record demonstrates none. *See Perdomo*, 146 S. Ct. at *2-3. Associational standing requires proof that an organization's "members would otherwise have standing to sue in their own right" and "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 398 (2024) ("*Alliance*") (Thomas, J., concurring; internal quotation omitted). But just like the individual Plaintiffs, any risk of future harm for the organizations' members is, at most, speculative. *See id.* at 381 (citing *Clapper*, 568 U.S. at 409). Absent any nonspeculative probability of injury to their members, the organizations lack standing. *Id.*; *see also O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("Abstract injury is not enough. It must be alleged that the plaintiff 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged statute or official conduct."). Moreover, "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174 (1969); *see Rakas v. Illinois*, 439 U.S. 128, 133-134 (1978). In *Rakas v. Illinois*, the Supreme Court "decline[d] to extend the rule of standing in Fourth Amendment cases" to the petitioners, as the petitioners did not experience any Fourth Amendment violation. 439 U.S. 128, 133-34 (1978). This logically follows, as Fourth Amendment claims are too fact-specific and context-dependent to satisfy the requirements of organizational standing or class actions. For instance, in *Black Lives Matter L.A. v. City of Los Angeles*, this Court in reviewing the certification of a class addressed Fourth Amendment claims from a group of plaintiffs, and held that "[w]hether the use of tight handcuffs violates the Fourth Amendment, like other excessive force issues, is usually fact-specific and likely to turn on the credibility of the witnesses[,]" and is thus ill situated for a class-action claim. 113 F.4th 1249, 1258-62 (9th Cir. 2024).

Turning to Access/Detention Plaintiffs' Fifth Amendment claims related to conditions at B-18, Plaintiffs have failed to demonstrate either organizational or associational standing. *See* SAC, Counts V-

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SAC

10

VII. Specifically, Access/Detention Plaintiff organization CHIRLA has not asserted that their individual members would independently have standing to bring an access to counsel claim, such that CHIRLA could demonstrate associational standing. *See* SAC ¶¶ 112-135; *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (reinforcing the rule that Article III requires a concrete, particularized injury to an actual person, not a statistical, probabilistic, or hypothetical harm). Further, Access/Detention Plaintiffs have failed to demonstrate organizational standing. First, Plaintiffs seek to protect the Fifth Amendment due process rights of *detainees* at B-18, rather than assert an organizational injury themselves. Plaintiffs cannot demonstrate an injury legally independent of their clients' or other alien detainees' alleged constitutional injuries at B-18. It is inappropriate for the Plaintiffs to assert organizational standing based on alleged Fifth Amendment violations to either their alien clients or alien detainees at B-18. *See Legal Aid Soc. of Hawaii v. Legal Servs. Corp.*, 145 F.3d 1017, 1031 (9th Cir. 1998) ("[T]he injury in fact test requires that the party seeking review be himself among the injured.") (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992)). If organizational Plaintiffs could bring vicarious Fifth Amendment claims based on the premise that Defendants' conduct has made it more difficult to reach prospective clients or represent existing ones, then legal organizations would almost always have standing to sue when any conduct makes representing potential or existing clients more resource intensive. That cannot be right. The Fifth Amendment right (and thus any injuries) is held by the clients, not their lawyers.

Next, Plaintiffs have not demonstrated that Defendants' conduct directly impaired their organizations' core functions. Neither of the Access/Detention organizational Plaintiffs demonstrated that Defendants' practices made their existing core functions of representing alien detainees impossible or even impracticable to operate. *See Alliance*, 602 U.S. at 395-96; *see also* SAC ¶¶ 22-23. Defendants maintain that B-18 normalized on June 24, 2025, and, except in limited instances where the Government modified the visitation hours in anticipation of impending temporary public unrest or other exigent circumstances, Plaintiffs have not alleged that they have since been unable to access existing or potential clients at B-18. That Plaintiffs may have had to expend additional efforts to communicate with individuals at B-18 who they either represent or seek to represent is insufficient to establish Article III standing. Furthermore, Plaintiffs cannot say definitively that the prospective clients they may wish to represent

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SAC

11

would ultimately accept their services, and thus Plaintiffs cannot presume an injury from detainees who have no relation to the Plaintiffs. *See Am. Immig. Lawyers Ass'n v. Reno*, 18 F. Supp. 2d 38, 49 (D.D.C. 1998), *aff'd*, 199 F.3d 1352 (D.C. Cir. 2000) ("With respect to the organizational plaintiffs' argument that they will be deprived of clients, . . . the Court agrees, that there is no way to know whether aliens who are denied the opportunity to consult with counsel would have chosen to consult with the plaintiffs had they had the opportunity to do so."). In fact, navigating the federal immigration detention system falls directly within Plaintiffs' missions, and difficulties that arise in representing detained aliens or seeking prospective clients do not then confer organizational standing to challenge government action. *See* SAC ¶¶ 22-23. Again, Plaintiffs' theory of standing would allow legal organizations to sue anytime some conduct makes it less efficient to represent their clients. That is a sweeping and untenable proposition.

Additionally, Access/Detention Plaintiffs failed to demonstrate standing because like the Stop/Arrest Plaintiffs, they primarily relied on isolated past instances and failed to establish the required showing of real and immediate future harm. *See Clapper*, 568 U.S. at 412; *Lyons*, 461 U.S. at 105-06; *see also Vasquez Perdomo*, 146 S. Ct. at 2 (Kavanaugh, J., concurring). Plaintiffs have not presented evidence of an unlawful policy or practice relating to conditions at B-18, and this failure is dispositive because, without a concrete finding of a policy or settled practice, Plaintiffs cannot show the "real and immediate" threat of future injury required by *Lyons*. At most, Plaintiffs' evidence consists of isolated anecdotes that do not speak to the likelihood of prospective harm. *See, e.g.*, SAC ¶¶ 41-46.

Moreover, Access/Detention Plaintiffs failed to demonstrate that their Fifth Amendment challenges fall within the "zone-of-interests" protected by the U.S. Constitution. The Supreme Court has made clear that the zone-of-interests requirement applies to causes of action to enforce constitutional prohibitions. *See, e.g.*, *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 475 (1982) ("[T]he Court has required that the plaintiff's complaint fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.") (quotation marks omitted); s*ee also Individuals for Responsible Gov't, Inc. v. Washoe Cnty.*, 110 F.3d 699, 703 (9th Cir. 1997) ("[T]he zone of interests test also governs claims under the Constitution in general.") (internal quotation marks omitted). Access/Detention Plaintiffs have not shown that the due

process rights of either their clients or prospective clients fall within their zone of interests such that they can establish standing. *See Allen*, 468 U.S. at 751. The Fifth Amendment due process rights these organizations challenge belong to alien detainees, rather than the organizations themselves. *See United States v. Mitchell*, 915 F.2d 521, 526 n.8 (9th Cir. 1990) (holding that a party lacked "standing to raise the [due process] rights of other persons whose rights may have been violated"), *cert. denied*, 500 U.S. 906 (1991). Although Access/Detention Plaintiffs blur the lines between their claimed organizational injury and the due process rights of alien detainees, they have not shown that the alleged Fifth Amendment injuries to these detainees by the Government can be assumed by their organizations and fall within their interests necessary to sue.

For example, the Second Circuit held that an organization's due process challenge to the DHS's actions failed the zone of interests where it sought "to piggyback on the due process claims of [its clients]" and the organization did "not claim that [the organization] itself ha[d] been denied due process" of law. *Moya v. United States Dep't of Homeland Sec.*, 975 F.3d 120, 136 (2d Cir. 2020) (applying *Center for Reproductive Law & Policy v. Bush*, 304 F.3d 183, 195-96 (2d Cir. 2002)). The court in *Moya* stressed that the organization was asserting the statutory and due process rights of third parties, their clients, with regard to the Government's naturalization process, rather than its own interests. *Id.* at 136 ("[P]laintiffs do not assert a harm to their own interest in receiving due process of law, this is precisely the sort of claim that the zone of interests doctrine is designed to foreclose.") (internal quotations omitted). Similarly, Access/Detention Plaintiffs here can point to no right of their own under the Fifth Amendment or Constitution that is affected by the complained-of actions, and any harm is derivative. Plaintiffs' asserted interest in this action is indistinguishable from that of any advocate for detainees. Because Plaintiffs present constitutional challenges of detainees, rather than alleged injuries to their organizations, these claims fall outside of their zone of interest and cannot establish standing under Article III. Thus, this Court should find that the Court lacks jurisdiction to consider their claims. *See Allen*, 468 U.S. at 751.

At bottom, Plaintiffs once again have failed to show any real and immediate threat of being harmed again under the Fourth or Fifth Amendment. Without such a showing, their claims lack the necessary foundation, and the SAC should be dismissed in its entirety.

**B.    Section 1252 Bars this Court's Jurisdiction over Fourth and Fifth Amendment Claims.**

Defendants maintain that this Court lacks jurisdiction to grant Plaintiffs' request for Fourth and Fifth Amendment relief. *See* 8 U.S.C. § 1252(a)(5), (b)(9). Under 8 U.S.C. § 1252(a)(5), "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter," and under 8 U.S.C. § 1252(b)(9), "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional . . . provisions, arising from any action taken or proceeding brought to remove an alien . . . shall be available only in judicial review of a final order[.]"

Plaintiffs' SAC certainly implicates 8 U.S.C. § 1252(a)(5)'s bar because (1) the challenged conditions arise from actions taken "to remove an alien"; and (2) now being in removal proceedings, that would be the proper forum for raising any constitutional challenges related to the process of removing them.

**C.    Plaintiffs Fail to State a Constitutional Claim.**

Even assuming this Court assured itself of having jurisdiction, despite the relevant jurisdictional bars and Plaintiffs lacking Article III standing to pursue their claims, Plaintiffs' SAC asserts broad violations of the Fourth and Fifth Amendments that fail to pass muster.

Plaintiffs first ask the Court to restrict basic Fourth Amendment principles and common-sense considerations as part of the totality-of-the-circumstances analysis, constituting an unreasonable restriction on DHS's ability to determine reasonable suspicion. Plaintiffs argue that DHS has a policy of stopping and arresting individuals for immigration violations in Los Angeles without reasonable suspicion and probable cause respectively, in violation of the Fourth Amendment and 8 U.S.C. § 1357. SAC, Counts I-VI. Plaintiffs' Fourth Amendment challenges do not contemplate officers' need to consider the totality of the circumstances based on specific and objective evidence underlying the basis for reasonable suspicion, which allows officers to question individuals about their immigration status in the Los Angeles area. *See Brignoni-Ponce*, 422 U.S. at 885 n.10 (noting the reasonable suspicion inquiry is evaluated based on the "totality of particular circumstances" surrounding the stop); *Arvizu*, 534 U.S. at 273. No single factor, whether related to appearance, behavior, or an officer's experience, is per se

irrelevant to the analysis. Indeed, law enforcement may consider multiple contextual factors in forming reasonable suspicion regarding immigration status. *See United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000). The Supreme Court has rejected rigid rules that exclude certain factors from consideration or treat them as carrying no weight. *Arvizu*, 534 U.S. at 273-75.

Immigration stops, like the ones at issue here, raise the same Fourth Amendment considerations as other investigatory stops, requiring a reasonable suspicion inquiry grounded in specific articulable facts. *See United States v. Rocha-Lopez*, 527 F.2d 476, 477 (9th Cir. 1975) (collecting cases). Defendants recognize that considering a person's ethnicity or race without other factors is not "reasonable suspicion of criminal activity." *Brignoni-Ponce*, 422, U.S. at 886-87. Like other contexts, the limited intrusion of a stop justifies its use when officers possess reasonable suspicion that a person is illegally in the United States. *See INS v. Delgado*, 466 U.S. 210 (1984) (rejecting the claim that immigration "factory surveys" constituted a seizure of the entire workforce in violation of the Fourth Amendment). This principle ensures that investigative stops are supported by individualized, contextualized suspicion in line with constitutional protections. *Id*. at 214. As Justice Kavanaugh recognized in his concurrence, various Supreme Court precedents dictate that courts cannot limit officers to consider only or exclude certain factors in determining reasonable suspicion of illegal presence in the United States. *Perdomo*, 146 S. Ct. at *3-4. Ultimately, Plaintiffs cannot establish any violation warranting judicial intervention.

Moreover, Plaintiffs' equal protection claim also fails. To the extent Plaintiffs' proposed equal protection claim rests on the notion that immigration authorities are targeting them for enforcement due to their Latino ethnicity, such claim is not cognizable. To properly plead an equal protection claim, a plaintiff must raise a plausible inference that an "invidious discriminatory purpose was a motivating factor" in the relevant decision. *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977). But Plaintiffs merely establish that Defendants are interested in lawfully enforcing immigration law, in locations where there is known to be a larger proportion of individuals with no lawful basis to be in the country. That, alone, is insufficient to state an equal protection claim. An equal protection claim premised on the enforcement of immigration laws is inherently paradoxical where the challenged conduct consists of enforcing statutes that regulate immigration status or presence, not race or ethnicity. Whether the alleged injury (which here is speculative at best) arises from enforcement of

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SAC

15

immigration laws, which necessarily draw distinctions based on citizenship and legal status or presence, the mere fact that many individuals affected may be Latino does not transform lawful immigration enforcement into unconstitutional discrimination. Otherwise, any enforcement action in an area where a particular demographic group is statistically represented would itself become suspect.

To that point, in *DHS v. Regents of the University of California*, the Supreme Court rejected an equal protection claim that similarly relied on alleged disparate impact upon Latinos in the immigration context. 591 U.S. 1, 34-35 (2020). The Court reasoned that "because Latinos make up a large share of the unauthorized alien population, one would expect them to make up an outsized share of recipients of any cross-cutting immigration relief program." *Id.* at 34. Albeit in the context of immigration benefits, the Court cautioned against entertaining equal protection claims in this context because if such disparate impact were sufficient to state a claim, "virtually any generally applicable immigration policy could be challenged on equal protection grounds." *Id.* That reasoning applies with full force here and therefore makes this claim futile. Plaintiffs cite an alleged directive from White House Deputy Chief Stephen Miller to officials in the Department of Homeland Security to "just got out there and arrest [unauthorized noncitizens]." SAC ¶ 8. This directive does not focus on members of a certain race, but simply aliens, and thus does not demonstrate any invidious racially discriminatory motive.

### D.     Plaintiffs Fail to State Any APA Violation.

Moreover, to the extent Plaintiffs base their claims under the APA, they have failed to sufficiently preserve this claim and do not present allegations or any distinct claims that support an inference that Defendants engaged in unlawful agency action. *See* 5 U.S.C. § 706(2)(A)-(B). Plaintiffs fail to support their broad claim of APA jurisdiction with any legal argument and thus, any argument under the APA is waived. *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for [a party], and a bare assertion does not preserve a claim, particularly when a host of other issues are presented for review."). Given that Plaintiffs' SAC did not provide *any* allegation of violations under the APA, unlike Intervenors, ECF 141 at 61-63, this Court should not "manufacture arguments" for Plaintiffs here. *Greenwood*, 28 F.3d at 977.

Even assuming Plaintiffs' cursory legal statements were sufficient to raise an APA claim, Plaintiffs' vague APA argument does not actually identify a final agency action, but instead alleges a

policy of violating various statutory provisions without tethering it to concrete examples of violating those statutes. *See* SAC ¶ 81-99. In sum, Plaintiffs rely on Defendants' "policies and practices," SAC ¶ 81, without identifying any actual policy or practice. Plaintiffs mount a programmatic challenge to how immigration enforcement operations have been carried out in the District. SAC ¶ 1 (seeking to enjoin "Defendants' ongoing pattern of practice . . . in connection with ongoing immigration raids in the Los Angeles area."). In so doing, they effectively seek "wholesale improvement of [a] program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990). The APA does not permit such challenges. *Norton v. SUWA*, 542 U.S. 55, 66-67 (2004). Even if the Court construed Plaintiffs' claims as a challenge to officers' arrests of individual Plaintiffs (and similarly situated persons not party to this litigation), such stops and arrests are committed to agency discretionary authority under 8 U.S.C. § 1357, and are thus unreviewable under the APA. 5 U.S.C. § 701(a)(2). Individual arrests, absent a clear policy, are not final agency actions that can be challenged under the APA. *See Bogomazov v. DHS*, 2022 WL 769801, at *17 (S.D. Fla. Feb. 27, 2022).

## IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' SAC with prejudice. To the extent Plaintiffs may seek to amend their complaint to evade the Court's dismissal, any attempt would be futile. *See Creech v. Tewalt*, 84 F.4th 777 (9th Cir. 2023).

Dated: April 21, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

TIBERIUS DAVIS
SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General

JONATHAN A. ROBBINS
Assistant Director

JESSICA D. STROKUS
Senior Litigation Counsel

JASON K. ZUBATA
ANIELLO DESIMONE
JACOB A. BASHYROV
STEPHANIE L. GROFF
LAURIE WIESNER
Trial Attorneys

*/s/ Nancy N. Safavi*
NANCY N. SAFAVI
Senior Trial Attorney
TXBN 24042342
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 514-9875
Email: Nancy.Safavi@usdoj.gov

*Counsel for Defendants*

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SAC
18

**L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record certifies that this filing is 6,865 words, which complies with L.R. 11-6.1 and this Court's Standing Order, Part VIII.C.

Dated: April 21, 2026                    Respectfully submitted,


                                         /s/ Nancy N. Safavi
                                         NANCY N. SAFAVI
                                         Senior Trial Attorney
                                         Office of Immigration Litigation
                                         U.S. Department of Justice

                                         *Counsel for Defendants*