STACY TOLCHIN (SBN 217431)
*stacy@tolchinimmigration.com*
LAW OFFICES OF STACY TOLCHIN
776 E. Green St., Suite 210
Pasadena, CA 91101
Tel: 213-622-7450; Fax: 213-622-7233

MOHAMMAD TAJSAR (SBN 280152)
*mtajsar@aclusocal.org*
MAYRA JOACHIN (SBN 306065)
*mjoachin@aclusocal.org*
EVA BITRÁN (SBN 302081)
*ebitran@aclusocal.org*
DAE KEUN KWON (SBN 313155)
*akwon@aclusocal.org*
STEPHANIE PADILLA (SBN 321568)
*spadilla@aclusocal.org*
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017-4022
Tel: 213-977-5232; Fax: 213-201-7878

*Counsel for Stop/Arrest Plaintiffs*

(*Additional counsel listed on next page*)

MARK ROSENBAUM (SBN 59940)
*mrosenbaum@publiccounsel.org*
REBECCA BROWN (SBN 345805)
*rbrown@publiccounsel.org*
RITU MAHAJAN (SBN 252970)
*rmahajan@publiccounsel.org*
GINA AMATO (SBN 215519)
*gamato@publiccounsel.org*
AMANDA MANGASER SAVAGE
(SBN 325996)
*asavage@publiccounsel.org*
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Counsel for All Plaintiffs*

ANNE LAI (SBN 295394)
*alai@law.uci.edu*
UC IRVINE SCHOOL OF LAW
IMMIGRANT AND RACIAL JUSTICE
SOLIDARITY CLINIC
P.O. Box 5479
Irvine, CA 92616-5479
Tel: 949-824-9894; Fax: 949-824-2747

*Counsel for Stop/Arrest Plaintiffs*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

Pedro VASQUEZ PERDOMO; Carlos Alexander OSORTO; and Isaac VILLEGAS MOLINA; Jorge HERNANDEZ VIRAMONTES; Jason Brian GAVIDIA; LOS ANGELES WORKER CENTER NETWORK; UNITED FARM WORKERS; COALITION FOR HUMANE IMMIGRANT RIGHTS; IMMIGRANT DEFENDERS LAW CENTER,

     Plaintiffs,

  v.

Markwayne MULLIN, in his official capacity as Secretary, Department of Homeland Security; Todd M. LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; Rodney S. SCOTT, in his official capacity as Commissioner, U.S. Customs and

Case No.: 2:25-cv-05605-MEMF-SP

***DISCOVERY MATTER***

**JOINT STIPULATION RE: PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATION OF ECF 370**

*[Filed concurrently with Declaration of Sara H. Worth and Exhibits thereto; Exhibits A-E to Defendants' Statement]*

Referred to Hon. Sheri Pym
United States Magistrate Judge

Date:  May 26, 2026

Case No.: 2:25-cv-05605-MEMF-SP

Border Patrol; Michael W. BANKS, in his official capacity as Chief of U.S. Border Patrol; Kash PATEL, in his official capacity as Director, Federal Bureau of Investigation; Todd BLANCHE, in his official capacity as Acting U.S. Attorney General; Jaime RIOS, in his official capacity as Acting Field Office Director for Los Angeles, U.S. Immigration and Customs Enforcement; Dean T. SORENSON, Special Agent in Charge for Los Angeles, Homeland Security Investigations, U.S. Immigration and Customs Enforcement; Gregory K. BOVINO, in his official capacity as Chief Patrol Agent for El Centro Sector of the U.S. Border Patrol; Justin DE LA TORRE, in his official capacity as Acting Chief Patrol Agent, San Diego Sector of the U.S. Border Patrol; Akil DAVIS, in his official capacity as Assistant Director in Charge, Los Angeles Office, Federal Bureau of Investigation; Bilal A. ESSAYLI, in his official capacity as First Assistant U.S. Attorney for the Central District of California,

    Defendants.

Time: 11:00 a.m.

Discovery Cutoff:  March, 24, 2027 Pre-Trial Conf.:  August 4, 2027 Trial:  August 23, 2027

-ii-

Case No.: 2:25-cv-05605-MEMF-SP

JACOB S. KREILKAMP (SBN 248210)
jacob.kreilkamp@mto.com
DAVID FRY (SBN 189276)
david.fry@mto.com
SARA H. WORTH (SBN 341088)
sara.worth@mto.com
HENRY D. SHREFFLER (SBN 343388)
henry.shreffler@mto.com
LAURA R. PERRY (SBN 342504)
laura.perrystone@mto.com
LAUREN E. KUHN (SBN 343855)
lauren.kuhn@mto.com
MAGGIE BUSHELL (SBN 354048)
maggie.bushell@mto.com
ANGELA URIBE (SBN 353579)
angela.uribe@mto.com
MUNGER, TOLLES & OLSON LLP
350 S. Grand Ave., 50th Floor
Los Angeles, CA 90071
Tel: 213-683-9100; Fax: 213-683-9100

JESSICA KARP BANSAL (SBN 277347)
Jessica@ndlon.org
LAUREN MICHEL WILFONG*
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Tel: 626-214-5689

BREE BERNWANGER (SBN 331731)
bbernwanger@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel: 415-621-2493

BRISA VELAZQUEZ OATIS
(SBN 339132)
bvoatis@aclu-sdic.org
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Tel: 619-398-4199

Counsel for Stop/Arrest Plaintiffs

MATTHEW J. CRAIG (SBN 350030)
mcraig@heckerfink.com
MACK E. JENKINS (SBN 242101)
mjenkins@heckerfink.com
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Tel: 212-763-0883; Fax: 212-564-0883

Counsel for Access/Conditions Plaintiffs

EDGAR AGUILASOCHO (SBN 285567)
eaguilasocho@farmworkerlaw.com
MARTÍNEZ AGUILASOCHO LAW, INC.
900 Truxtun Ave, Suite 300
Bakersfield, CA 93301
Tel: 661-859-1174

Counsel for Plaintiff United Farm Workers

CARL BERGQUIST*
cbergquist@chirla.org
COALITION FOR HUMANE IMMIGRANT
RIGHTS
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

Counsel for Plaintiff Coalition for Humane
Immigrant Rights

ALVARO M. HUERTA (SBN 274787)
ahuerta@immdef.org
BRYNNA BOLT (SBN 339378)
bbolt@immdef.org
ALISON STEFFEL (SBN 346370)
asteffel@immdef.org
IMMIGRANT DEFENDERS LAW CENTER
634 S. Spring St., 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

Counsel for Plaintiff Immigrant
Defenders Law Center

* Admitted pro hac vice

-iii-                           Case No.: 2:25-cv-05605-MEMF-SP

JOINT STIPULATION RE: PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS
SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATION OF ECF 370

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on May 26, 2026, at 11:00 a.m. or as soon thereafter as counsel may be heard, before the Honorable Sheri Pym in Courtroom 4 of the United States District Court for the Central District of California, 3470 Twelfth Street, Riverside, California 92501, Plaintiffs Pedro Vasquez Perdomo, Carlos Alexander Osorto, Isaac Villegas Molina, Jorge Hernandez Viramontes, Jason Brian Gavidia, the Los Angeles Worker Center Network, United Farm Workers, and Coalition for Humane Immigrant Rights (collectively, "Plaintiffs") will, and hereby do, move the Court for an order to show cause as to why Defendants should not be held in contempt for failure to comply with this Court's January 16, 2026 imaging order.  ECF 370. This Motion is based upon this Notice of Motion, the Joint Stipulation, the Declaration of Sara Worth and exhibits thereto, and any other papers or argument of counsel that may be filed or submitted in connection with this Motion.

Pursuant to L.R. 7-3, this Motion is made following a conference of counsel which took place between the parties on April 21, 2026.  Defendants oppose the motion.

DATED:  May 12, 2026                    MUNGER, TOLLES & OLSON LLP


                                        By:     _/s/ Jacob S. Kreilkamp_
                                                JACOB S. KREILKAMP
                                                *Counsel for Stop/Arrest Plaintiffs*


DATED:  May 12, 2026                    UNITED STATES DEPARTMENT OF JUSTICE


                                        By:     _/s/ Jonathan A. Robbins_
                                                JONATHAN A. ROBBINS
                                                Assistant Director
                                                Office of Immigration Litigation
                                                *Counsel for Defendants*

-1-                                     Case No.: 2:25-cv-05605-MEMF-SP

JOINT STIPULATION RE: PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATION OF ECF 370

## I.    PLAINTIFFS' INTRODUCTORY STATEMENT

The Court should issue an order to show cause as to why the District Judge should not hold Defendants in civil contempt for their intentional and ongoing failure to comply with the forensic imaging requirement in this Court's January 16, 2026 Order.  *See* Ex. 1 to Declaration of Sara Worth ("Worth Decl.") (ECF 370).[1]  Nearly four months have passed since this Court ordered Defendants to "[f]orensically image any cell phone used by any agent present at any of the 15 operations" at issue in expedited discovery.  *Id.* at 9.  Defendants objected to the order, but when the District Judge left the order undisturbed, Defendants simply proceeded to thwart its impact by dragging their feet on imaging government-issued cell phones and by openly defying the order as to personal phones.  As of the date of service, Defendants have not imaged a single personal phone and *have not even attempted to do so.*  That is notwithstanding agents' testimony that they use their personal devices for work purposes and have taken no steps to preserve relevant ESI on them.  Indeed, ESI is at risk of forever being lost—if it is not lost already—and Defendants' noncompliance has deprived Plaintiffs of potentially relevant evidence from Gregory Bovino. Given the potential harm to Plaintiffs and Defendants' continued defiance, a coercive sanction is needed to ensure Defendants' compliance.  Plaintiffs request a recommended sanction of $500 per day until Defendants comply with the imaging order as to personal phones.

## II.    DEFENDANTS' INTRODUCTORY STATEMENT

There is no cause for civil contempt or sanctions in this case.  Defendants have been expending enormous effort and resources to comply with the Court's January 16, 2026 Order (Dkt. No. 370) requiring the forensic imaging of phones used by agents present at the operations set forth in that order.  The government has been tirelessly collecting, forensically imaging, and reviewing the government-issued phones in its possession, custody, and control and is currently reviewing more than 170,000 documents amounting to more than 454,000 pages to review.  This is for just 23 phones so far.  With the number of phones left, there could easily be another *2 million* pages to review in what is supposed to be *limited* expedited discovery.  Plaintiffs' position

---

[1] References to Exhibits 1, 2, 3, etc., herein are references to Exhibits attached to the Worth Decl.

JOINT STIPULATION RE: PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATION OF ECF 370

that Defendants have done nothing to comply with the Court's order is simply incorrect. Indeed, Plaintiffs acknowledged the need for additional time, having agreed to several extensions to accommodate the complex government-phone-imaging, processing, and review process. The government is doing everything it can to comply with its discovery obligations, including employing law clerk and attorney contractors, and pulling a multitude of Department attorneys off of other important national litigation to assist with this large-scale review in limited discovery. For the limited expedited discovery, the government was given deadlines that are mathematically impossible and must be weighed against the limitations imposed by the Federal Rules. To the extent the Court's order requires Defendants to forensically image the personal phones of agents, which are not within Defendant's possession, custody, or control, Plaintiffs are again incorrect when they allege Defendants are refusing to comply with the order. Although Defendants do not have the authority to forcibly confiscate an individual's personal phone, which is plainly outside of its possession, custody, and control, and outside the bounds of the Federal Rules, they have still taken and continue to take reasonable steps to collect the relevant ESI on those phones.

## III.     PLAINTIFFS' CONTENTIONS AND POINTS AND AUTHORITIES

### A.     Background

#### 1.     The Court Orders Phone Imaging (ECF 370)

On October 17, 2025, the District Judge granted Plaintiffs' and Intervenors' request to serve expedited Requests for Production concerning agent training and 15 specific immigration enforcement operations in the District. Ex. 2 (ECF 223). Defendants responded with delay; "wishful interpretation" of the requests, Ex. 3 (ECF 345) at 10:11; defiance of the "plain language" of court orders, Ex. 4 (ECF 305) at 5; and non-credible explanations for noncompliance, *id*. Plaintiffs prevailed on three motions to compel.

As relevant here, on December 23, 2025, Plaintiff CHIRLA filed its third motion to compel, which primarily concerned proven problems with the scope of Defendants' productions and the adequacy of their searches. *See* Ex. 5 (ECF 320 [Joint Stipulation]). Plaintiffs emphasized pervasive deficiencies in Defendants' production of standard documentation, body camera footage, and custodial ESI. Among other problems, Defendants had repeatedly produced

-2-

Case No.: 2:25-cv-05605-MEMF-SP

officers' and agents' text messages late the night before their depositions, as well as once during a deposition. *See id*. at 10; Ex. 6 (ECF 329 [Suppl. Br.]) at 4 n.4. Defendants also failed to produce certain text messages that body camera footage clearly established had been sent during an operation. ECF 320 at 10. These failures, among others, demonstrated that Defendants had not undertaken an adequate search for custodial ESI. *Id.* In response, Defendants acknowledged that they had not forensically collected ESI from their agents and had not even searched for ESI on their agents' devices; instead, Defendants relied entirely on self-collection by the agents. *See id*. at 17. Plaintiffs argued that Defendants had not conducted an adequate search under the Federal Rules. Plaintiffs sought several corrective remedies, including an order requiring Defendants to, *inter alia*, "[f]orensically image any cell phone used by an agent present at any of the 15 operations and review these devices for material responsive to RFPs 2 and 3." *Id*. at 11.

The parties filed supplemental memoranda, ECF 329; Ex. 7 (ECF 330), and the Court heard argument. ECF 345. The Court invited Defendants' counsel to address Plaintiffs' specific requests for relief, including the request for an order requiring phone imaging. *See id*. at 5:22-6:4.

On January 16, 2026, the Court granted Plaintiff's motion in a written decision. ECF 370. Among other things, the Court ordered Defendants to "[f]orensically image any cell phone used by an agent present at any of the 15 operations and review these devices for material responsive to RFP Nos. 2 and 3." *Id*. at 9. Defendants were directed to complete their supplemental productions by January 30. *Id.* Nearly four months later, those productions remain incomplete.

### 2. Deposition Testimony Confirms the Need for Imaging

Plaintiffs took the depositions of six officers and agents who participated in the 15 raids at issue in expedited discovery and who therefore are subject to the imaging order. Five of them testified that they use their personal phones for work. *See* Ex. 8 (J.C.E. Depo.) at 27:8-17; Ex. 9 (V.A.S. Depo.) at 24:14-16; Ex. 10 (J.M. Depo.) at 29:10-12; Ex. 11 (I.F. Depo.) at 74:12-24; Ex. 12 (J.C. Depo.) at 29:14-18.

Defendants' officers and agents also testified that they had taken no steps to preserve potentially relevant documents for this litigation, further underscoring the need to recover this potentially lost ESI through forensic collection. *See* Ex. 13 (C.C. Depo.) at 32:24-33:4 ("Q: Did

JOINT STIPULATION RE: PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATION OF ECF 370

you stop deleting e-mails, files, or other documents?  A: No."); I.F. Depo. at 84:9-11 ("Q: And you didn't turn off any auto delete functions on your personal device?  A: No, sir.").  One agent who confirmed he used his personal cell phone during Operation At Large testified that he had taken no steps to preserve documents after he received a litigation hold.  *See* I.F. Depo. at 74:12-78:15.

### 3.     Defendants Refuse to Comply and Reject Reasonable Alternatives

Defendants disagreed with the Court's imaging order.  On January 30, they filed Rule 72 objections to the order, including the imaging requirement, before the District Judge.  ECF 395.  They argued that forensic imaging is "not routine" and is "intrusive," particularly because the order seemed to apply equally to agents' government-issued and personal cell phones.  *Id*. at 11.

Two weeks later, Defendants' counsel advised the Court that they understood the imaging order to apply to agents' personal phones and made an improper oral motion for reconsideration.  *See* ECF 423 at 43:25-44:1 ("We read the order … as saying, any phone."); *id*. at 45:17:19 ("[W]e would ask the Court to [] consider alternatives to forensic imaging.").

The parties and the Court discussed the imaging order's application to personal phones on subsequent occasions.  *See, e.g.*, ECF 478 at 6:24-7:1 (Defendants' counsel acknowledging, "Your Honor made clear that it is now obligated under that Order [ECF 370] to produce what it can with respect to the personal phones"); *id.* at 9:16-19 (the Court confirming, "I certainly agree that the Order required the personal phones to be imaged, regardless of whether the agent or officer, whoever it was, said that they had used the phone at the operation").  Defendants understood what the order required, and that compliance was mandatory.  *See id.* at 11:16-17 (Defendants' counsel representing that the agent "understands it's under obligation of this Order [ECF 370]").

The Court temporarily stayed the imaging order as to personal phones while the parties met and conferred "as to how many of those … need to be sent back for imaging."  ECF 423:50-9-51:25; *see* ECF 453:19-24.

Plaintiffs met and conferred with Defendants on numerous occasions in a good-faith attempt to alleviate the purported burden of compliance.  Plaintiffs stipulated to several extensions of Defendants' time to comply with all aspects of ECF 370.  *See* ECF 461 at 1 (recounting

-4-                          Case No.: 2:25-cv-05605-MEMF-SP

JOINT STIPULATION RE: PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATION OF ECF 370

extensions).  Plaintiffs also agreed to limit custodians whose phones would be imaged.  *Id*. at 2.  Finally, on March 5, Plaintiffs proposed a stipulated protocol by which Defendants' counsel would use custodial interviews to (1) ensure preservation of ESI on agents' personal devices; (2) determine which personal devices were likely to contain responsive materials; and (3) supervise agents' collection of ESI from those devices.  *See* Ex. 18 (Kuhn Ltr.).  Plaintiffs would then select only a subset of those custodians for personal phone imaging.  *Id*.

The Court lifted the partial stay of the order on March 17.  *See* ECF 478 at 6:21-22.  Defendants acknowledged that the stay had been lifted, *id.*, but still took no steps to comply.

On April 10, Defendants' counsel took the position that Defendants "cannot agree to Plaintiffs' proposal where it requires forensic imaging of personal phones"—as though it was Plaintiffs' proposed modification to the order, and not the Court's order, that so required.  Ex. 19 at 8.  Counsel asserted that "the agency has no authority to force individuals to surrender their personal devices for forensic imaging."  *Id*.  Notably, however, Defendants' counsel made no mention of whether the agency had attempted to comply with the order, such as by asking agents to agree to participate in forensic collection, and/or by sending forensic examiners to agents' command centers.  Remarkably, Defendants' counsel also declined even to conduct custodial interviews, asserting that taking this routine step to fulfill their discovery obligations "would be impractical."  *Id*.  Thus, in summary, Defendants refused not only to comply with the Court's imaging order, but also to take other reasonable steps ensure the preservation of relevant ESI.

### 4.    Gregory Bovino's Departure Underscores the Need for Urgent Compliance

Defendants' refusal to comply with the imaging order extended to former Defendant Gregory Bovino.  It is undisputed that Mr. Bovino was an agent present at the Westlake Home Depot raid and therefore subject to the imaging order issued in mid-January.  Yet, Defendants permitted Mr. Bovino to first go on "leave" and then "retire[]" from the agency months later without having imaged his personal phone(s).  ECF 478 at 6:10; Ex. 19 at 11.  In so doing, Defendants violated not only ECF 370, but also their independent obligation under Rule 37 to preserve ESI.  *See Deerpoint Grp., Inc. v. Agrigenix, LLC*, No. 118CV00536AWIBAM, 2022 WL 16551632, at *17 (E.D. Cal. Oct. 31, 2022) (finding that "by allowing the computers to leave

-5-    Case No.: 2:25-cv-05605-MEMF-SP

Defendants' control, and not preserving the data or ensuring that it existed in the cloud, and by giving the computers to departing employees over whom they no longer had authority, Defendants affirmatively failed to preserve"). Plaintiffs have subpoenaed Mr. Bovino's personal phone, but by the time Plaintiffs are able to secure compliance with that subpoena, relevant ESI may be lost.

Plaintiffs will seek appropriate remedies for those violations as to Mr. Bovino at the appropriate time, but for purposes of this motion, Plaintiffs emphasize that each day that Defendants refuse to comply with the Court's imaging order, more ESI may be lost and become unrecoverable even through forensic imaging. Additionally, other officers and agents subject to the order may leave Defendants' employment.

### 5.    Plaintiffs' Attempts to Meet and Confer

On April 16, Plaintiffs sent Defendants a letter to initiate the meet and confer process for Plaintiff's anticipated motion for sanctions, including the sanction of civil contempt for noncompliance with the personal phone imaging order. *See* Ex. 20. On April 21, the parties held a telephonic conference. During that conference, Defendants' counsel affirmed that the agency was not imaging employee's personal phones; was not conducting custodial interviews with the agents; and was still relying on self-collection. Worth Decl. ¶ 8. Plaintiffs' counsel provided Defendants' counsel numerous opportunities to explain whether the agency had even attempted to comply with the Court's imaging order, and Defendants' counsel offered no information concerning any attempts at compliance. *See id*. ¶ 6.

On April 29, Plaintiffs emailed Defendants to confirm that they would be proceeding with this motion, stressing that Defendants "have not complied with the order as to personal phones and *have not even attempted to comply* with it." Ex. 19 at 1. Defendants did not respond. Worth Decl. ¶ 29.

### B.    <u>Legal Standard</u>

Where, as here, a party fails to obey a court order compelling discovery, the Court may issue sanctions, including "treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." Fed. R. Civ. P. 37(b)(2)(A)(vii). Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to

take all reasonable steps within the party's power to comply." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006). A sanction for civil contempt is "intended to coerce the contemnor to comply with the court's orders in the future, and the sanction is conditioned upon continued noncompliance." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1481 (9th Cir. 1992) ("Where the purpose of a civil contempt sanction is to coerce good faith efforts to comply with a discovery request, contempt is proper."). Therefore, a party held in contempt "carries the keys of his prison in his own pocket because civil contempt is intended to be remedial by coercing the defendant to do what he had refused to do." *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1110 (9th Cir. 2005) (internal quotation marks and citation omitted).

To establish that civil contempt is appropriate, the movant must demonstrate "(1) that [the party] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." *United States v. Bright*, 596 F.3d 683, 694 (9th Cir. 2010) (citation omitted). Once Plaintiffs make this showing, the burden shifts to Defendants to demonstrate they "took all reasonable steps within [their] power to insure compliance with" the order. *Hook v. Ariz. Dep't of Corr.*, 107 F.3d 1397, 1403 (9th Cir. 1997) (internal quotation marks and citation omitted).

Where a magistrate judge has been designated to determine a pretrial matter such as a discovery dispute and is faced with an act that "constitutes a civil contempt, the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified." 28 U.S.C. § 636(e)(6)(B)(iii); *see, e.g.*, *Rich v. Kirkland*, No. CV 11-4272-JLS (SPx), 2016 WL 199390, at *2 (C.D. Cal. Jan. 15, 2016) (certifying such facts and issuing an order to show cause). At the hearing, "[t]he district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge." 28 U.S.C. § 636(e)(6).

JOINT STIPULATION RE: PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATION OF ECF 370

**C.    Argument**

**1.    Defendants Have Defied a Clear Order For Months**

Plaintiffs establish all elements for a finding of contempt. Defendants have openly defied the imaging requirement of the order with respect to agents' personal phones. The order is clear: Defendants were required to "[f]orensically image any cell phone used by an agent present at any of the 15 operations and review these devices for material responsive to RFP Nos. 2 and 3." ECF 370 at 9. Defendants understand that the order requires forensic imaging of personal cell phones, and they know the order binds them. *See supra* at 4-5 (citing Court's statements and Defendants' in-court statements affirming their understanding). Yet, it is undisputed that Defendants have failed to forensically image a single personal cell phone. It is also undisputed that they have no intention of doing so. *See* Worth Decl., Ex. 19 at 8. They therefore cannot show substantial, or any, compliance.

**2.    Defendants Have Not Even Attempted Compliance**

Defendants also cannot meet their burden of demonstrating that they "performed 'all reasonable steps within their power to insure compliance' with the court's orders." *Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992), *as amended on denial of reh'g* (Aug. 25, 1992) (affirming contempt order as to city).

Defendants have contended that they cannot comply because they lack "possession, custody, or control" over agents' personal phones. There are several problems with this argument. One problem is that it is legally wrong. Defendants concede, as they must, that they have legal control over, and must preserve under Rule 37, ESI stored on those personal phones. *See Hunters Cap., LLC v. City of Seattle*, 2023 WL 184208, at *7 (W.D. Wash. Jan. 13, 2023) (holding, as to text messages that included texts on City-owned and personal phones, were deleted in violation of Rule 37's preservation obligation for ESI); *Colonies Partners, L.P. v. Cnty. of San Bernardino*, 2020 WL 1496444, at *4 (C.D. Cal. Feb. 27, 2020) ("The emails stored in the [] e-mail account and text messages stored on Ramos's personal phone constitute ESI for purposes of a Rule 37 analysis."). Were it otherwise, employers could avoid having to produce business communications by having employees conduct business on personal devices. *Waymo LLC v. Uber*

-8-

JOINT STIPULATION RE: PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATION OF ECF 370

*Techs., Inc.*, 2017 WL 2972806, at \*2 (N.D. Cal. July 12, 2017). In the words of Defendants' counsel, "you can't have some sort of, you know, environment where people can shield information from discovery just because they're using personal phones." Ex. 21 (ECF 453) at 6. Defendants have never explained why their legal control stops at phone hardware.

That leads to the second problem: Defendants have not substantiated their position that they cannot demand agents' cooperation with the imaging requirement. That position is suspect, because DHS employees are subject to the Federal Records Act, and agency policy announces (1) that federal records "reside and are exchanged on … personal devices"; and (2) "*The Department must capture and manage these records in compliance with Federal records management laws, regulations, and policies.*"[2] The agency also is on record that it uses forensic imaging to comply with federal records laws. *See American Oversight v. U.S. Dep't of Homeland Security*, 1:25-cv-03699, ECF 14-2 [DHS Decl.] ¶ 21 (D.D.C. Nov. 5, 2025) ("[DHS] is also able to archive these types of electronic messages from an employee device using its forensic tools and then search for any message responsive to FOIA requests").

Third, Defendants' (unsubstantiated) argument that they cannot compel their employees to submit their phones for imaging rings hollow when Defendants have not even *asked* them to do so voluntarily. *See* Worth Decl. ¶ 6. Because Defendants have failed even to conduct custodial interviews and request agents' cooperation, *id.* ¶¶ 6; 8, they cannot demonstrate that they did everything in their power to comply with the order.

Relatedly, Defendants never substantiated their (false) contention that compliance with the imaging order would require agents to send their phones to a lab. Plaintiffs have imaged custodians' personal devices in this very lawsuit in the presence of the witness. *See* Worth Decl. ¶ 9. Indeed, Defendants admitted to the Court that forensic examiners may be sent directly to the agents at least "on a small scale." Ex. 453 at 9:5-13. Because Plaintiffs agreed to narrow the

---

[2] Department of Homeland Security Policy Directive 141-03 (Feb. 23, 2018), *available at* https://www.aclum.org/app/uploads/2022/12/4._policy_directive_141-03_-_electronic_records_management_updates_for_chat_text_and_instant_messaging.pdf (emphasis in original).

universe of custodians whose personal phones would need to be imaged, and to conduct such imaging over the life of the case instead of on an expedited timeline, *see* Kuhn Ltr., it follows that Defendants are practically capable of at least partial compliance but have made no effort even to partially comply.

Finally, Defendants never sought reconsideration of the imaging order and never sought ex parte relief from the District Judge.  If Defendants truly believed that it was impossible for them to comply with the imaging order, they could (and should) have pursued either avenue for relief from the order.  Instead, they defied the order.

### 3.    Per Diem Sanctions Are Necessary

This Court should recommend a coercive fine for Defendants' civil contempt of the Court's discovery order.  *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 628-30 (9th Cir. 2016) (noting courts' authority to do so).  "A court may wield its civil contempt powers for two separate and independent purposes: (1) 'to coerce the defendant into compliance with the court's order'; and (2) 'to compensate the complainant for losses sustained.'" *Id.* at 629 (quoting *United States v. United Mine Workers*, 330 U.S. 258, 303-04 (1947)); *see also Bright*, 596 F.3d at 695-96. In determining the amount and duration of a coercive fine, the Court considers "the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *United Mine Workers*, 330 U.S. at 304; *see also Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 516 (9th Cir. 1992).  The fine will be payable to the Court.  *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1482 (9th Cir. 1992).

Where, as here, a party has demonstrated a willingness to defy the Court's orders, sanctions are warranted "to coerce the [them] into compliance with the court's order." *Shell Offshore*, 815 F.3d at 629.  Plaintiffs request that this Court issue an order requiring Defendants to pay at least $500 per day until they comply.  Given Defendants' complete and utter failure to even attempt to comply with the Court's order for a period of months, and the potential harm to Plaintiffs from lost ESI (*see supra* 5-6), such a sanction is appropriate to compel compliance.

JOINT STIPULATION RE: PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATION OF ECF 370

Courts in this Circuit regularly set sanctions at $500 per day to achieve compliance with discovery orders, particularly where, as here, the sanctioned party has demonstrated repeat or ongoing noncompliance. *See, e.g.*, *MNE Trucking, Inc. v. OJ Com., LLC*, No. 2:23-cv-05742-HDV-AJR, 2025 WL 1810289, at *1-2 (C.D. Cal. June 27, 2025); *Atrium Payroll Servs., LLC v. PA Event Broad. Servs.*, No. 5:20-cv-01179-CJC-SHK, 2023 WL 2614519, at *3-4 (C.D. Cal. Mar. 23, 2023); *Cuviello v. Feld Ent., Inc.*, No. 5:13–cv–03135–LHK, 2015 WL 877688, at *2-4 (N.D. Cal. Feb. 27, 2015); *Gen. Elec. Co. v. Liang*, No. CV13-08670-DDP (CWx), 2014 WL 12844819, at *1-2 (C.D. Cal. Nov. 10, 2014); *United States v. Parker*, No. 2:08-cv-01200-LDGVCF, 2011 WL 5325475, at *1-3 (D. Nev. Nov. 3, 2011).

Recently, a district judge in Minnesota held a Special Assistant U.S. Attorney in civil contempt after the government released a man from Immigration and Customs Enforcement custody without his identification documents, in clear violation of a court order. *Rigoberto S.J. v. Bondi*, No. 26-cv-957 (LMP/JFD), 2026 WL 490104 (D. Minn. Feb. 20, 2026). The court ordered the Special Assistant U.S. Attorney to pay $500 per day until the identification documents were returned to petitioner. *Id.* at *3. The government immediately complied. *Id.* at *1.

Other cases suggest that a daily sanction of $1,000 would be appropriate here, given the brazen nature of the government's noncompliance and lack of any good faith effort to comply with the Order. *See, e.g.*, *Williams v. Condensed Curriculum Int'l*, No. 20-CV-05292-YGR-RMI, 2021 WL 6621071, at *1-3 (N.D. Cal. Dec. 29, 2021); *Invesco High Yield Fund v. Jecklin*, No. 2:05-cv-1364-RFB-PAL, 2021 WL 1234503, at *4 (D. Nev. Mar. 31, 2021); *RRW Legacy Mgmt. Grp., Inc. v. Walker*, No. C14-326 MJP, 2017 WL 1283480, at *1-2 (W.D. Wash. Apr. 6, 2017).

What is clear, given Defendants actions, is that Defendants will not comply with the Court's order in the absence of a civil contempt finding with sanctions continuing until they comply.

**D.    <u>Conclusion</u>**

For each of the foregoing reasons, Plaintiffs respectfully request that this Court enter an order to show cause as to why Defendants should not be held in civil contempt for failing to

JOINT STIPULATION RE: PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATION OF ECF 370

comply with the Court's Order and should order Defendants to pay the Court at least $500 per day until Defendants comply with the forensic imaging requirement.

## IV.   DEFENDANTS' CONTENTIONS AND POINTS AND AUTHORITIES

### A.   Background: Collection and Production to Date

**ICE DEFENDANTS**

ICE advises it has identified a total of twenty-three (23) officers and agents who participated in the operations listed in the Court's Order on January 16, 2026. *See* Dkt No. 370. On April 22, 2026, ICE's Office of Principal Legal Advisor (OPLA) sent declarations to the 23 officers[3] and agents to sign under penalty of perjury, requiring them to (1) identify their participation in any operation(s) specified in the Order, and (2) state whether they used their personal phone for government business while participating in that operation(s). *See*, *e.g.*, Ex. A, ICE Personal Phone Declaration, *see also* Ex. B, ICE Email requesting employees complete Personal Phone Declaration. ICE also advises that all twenty-two (22) ICE officers and agents present in the United States responded that they did not use their personal phone for government business in any of the operations listed in the Order.

**CBP DEFENDANTS**

CBP has advised undersigned counsel as follows:

CBP does not have custody and control of its employees' personal phones. As such, CBP had to consider its obligations under the Fourth Amendment to respect its employees rights. CBP has two unions, each with its own collective bargaining agreement (CBA) that cover some of the employees involved. *See* Ex. C., Declaration of D.S. If CBP did not appropriately consider the requirements under the CBAs, the unions could have filed one or more grievances, which could

---

[3] One officer is on extended military leave overseas and was unable to confirm. This officer is scheduled to return from military orders on December 31, 2026. OPLA learned of his status in February 2026.

JOINT STIPULATION RE: PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATION OF ECF 370

further delay the process to image personal phones.  CBP advises that contrary to Plaintiffs' claim, it is in fact working on the personal phones issue, and needs more time to comply with the Court's orders.  *See* Ex. D, Declaration of J.R.

CBP advises it has forensically extracted government phones for some of those custodians agreed upon by the parties.  CBP also advises it has never attempted to forensically extract this many phones at one time for one case.  CBP has had to balance the requirements of this case against other federal litigation, including criminal cases.  CBP advises it is exploring re-imaging all of the phones it has already imaged given that opposing counsel has recently indicated they do not prefer the format used to produce the ICE phones, and would prefer RSMF format for texts messages in addition to the full extraction of the phone.  This has further slowed the review and production of the phones as CBP has had to spend time on that rather than review.

CBP also advises has a process to ensure compliance with government records management.  *See* [HB 2100-05B Records and Information Management Handbook | U.S. Customs and Border Protection](#).  As such, each employee is required to follow the records and information management requirements and ensure that all government records are properly stored.  In order to ensure these requirements were met, CBP provided a questionnaire sent to its employees questions that covered records management.  *See* Ex. C.

## B.    Legal Standard

"Courts have inherent power to enforce compliance with their lawful orders through civil contempt." *See Shillitani v. United States*, 384 U.S. 364, 370 (1966); *see also Briggs v. Os Rest. Servs., LLC*, No. LA CV18-08457 JAK, 2021 U.S. Dist. LEXIS 256391, at *10 (C.D. Cal. Aug. 18, 2021) (citing *Miranda v. S. Pac. Transp. Co.,* 710 F.2d 516, 521 (9th Cir. 1983) (requiring courts to operate within the bounds of the Federal Rules). Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the

JOINT STIPULATION RE: PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATION OF ECF 370

party's power to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). Contempt is not appropriate, however, where a party has taken "all the reasonable steps" it can take to comply. *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 466 (9th Cir.1989). A court's power to impose coercive civil contempt depends upon the ability of the contemnor to comply with the court's coercive order. *See Shillitani*, 384 U.S. at 371 (citing *Maggio v. Zeitz*, 333 U.S. 56, 76 (1948)).

To establish grounds for civil contempt, the moving party must demonstrate "(1) that [the disobeying party] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." *United States v. Bright*, 596 F.3d 683, 694 (9th Cir. 2010) (*quoting Labor/Cmty. Strategy Ctr. v. L.A. Cty. Metro. Transp. Auth.*, 564 F.3d 1115, 1123 (9th Cir. 2009)). Once the moving party makes this showing, the burden shifts to the disobeying party to demonstrate it "took all reasonable steps within [its] power to [e]nsure compliance" with the court's order. *Hook v. Ariz. Dep't of Corr.*, 107 F.3d 1397, 1403 (9th Cir. 1997) (citation and quotation marks omitted).

In the Ninth Circuit, a court may impose a civil contempt fine where the court finds that there was "willful disobedience of a court order . . . or where the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2015) (quoting *Fink v. Gomez*, 239 F.3d 989, 991-93 (9th Cir. 2001)); *see also Fuentes v. Maxim Healthcare Servs.*, No. 2:17-cv-0102-AB (Ex), 2019 WL 1751822, at *3 (applying *Evon* to motion for sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vii)). "Any doubts as to whether these requirements have been met in a particular case must be resolved in favor of the party accused of the civil contempt." *O'M & Assocs., LLC v.*

JOINT STIPULATION RE: PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATION OF ECF 370

*Ozanne*, No. 10cv2130 AJB(RBB), 2011 WL 2160938, at *4 (C.D. Cal. June 1, 2011) (quoting 7 Moore's Federal Practice § 37.51[7][b]).

### C.    Defendants' Good Faith Efforts To Comply With The Court's Forensic Imaging Order Are Not Appropriate For Contempt Or Sanctions.

The government has taken all reasonable steps to comply with the Court's order to forensically image the phones of agents present at the specific operations in question and collect and produce responsive electronically stored information ("ESI").

Although Defendants maintain (as raised in their objections, Dkt. No. 395, which the parties agree remain pending, Dkt. No. 498) that forensic imaging of phones is overly burdensome and disproportionate to the needs of this case, and certainly disproportionate to the needs of limited discovery—which has proven to be exactly the case—they still dutifully complied with the Court's order, in compliance with the strictures of the Federal Rules, to collect and forensically image phones in their "possession, custody, [and] control," *see* Fed. R. Civ. P. 34(a)(1), and have been continuously working to produce the substantial volume of responsive ESI. The deadline for production of the forensically imaged government phones is currently May 15, 2026, and Defendants are going to make as large of a partial production as they can given the feasibility problems set forth below. To the extent the Court's order required the forensic imaging of individual personal phones which are not in Defendant's possession, custody and control, Plaintiffs are correct that Defendants requested and were granted a stay of the order with respect to personal phones and attempted to meet and confer with Plaintiffs to try to reach a resolution. After the meet and confer process failed, and the Court lifted the stay, Defendants attempted to comply with the personal-phones aspect of the order to the best of their ability, despite the fact they have no legal authority to compel individuals to relinquish their personal phones for forensic imaging. *See infra*.

After CBP received the February 13, 2026 clarification that this Court's January 16, 2026 order also mandated the forensic imaging of personal phones, CBP reviewed office capabilities and determined that CBP's Laboratories and Scientific Services (LSS) was most able to handle the required volume of forensic extractions. *See* J.R. declaration, para. 7.  "LSS possesses trained personnel with the technical expertise to handle the extraction of phones at various locations across the country where there is a LSS Regional or Forward Operating Labs (collectively, "Labs," singularly "Lab"). This enables a shorter turnaround time to obtain the personal phones to do the forensic extraction and return them to the employees once completed." *See id.* Based on the court order, CBP will be performing full file system extractions of personal phones. *See* J.R. declaration, para. 10.  This level of extraction can take minutes to days per cellphone depending on the amount and type of data on the cellphone. *See id.*  Once the data is successfully acquired, the examiner must use a forensic data parsing application to validate, implement search criteria, analyze the results, and generate a report. *See id.*  These steps require a significant amount of manpower and troubleshooting for all types of phones – both government phones and personal phones – and best-case scenario is two to six hours per extraction. *See id.*  CBP provided a comprehensive questionnaire for employees who were part of Operation at Large – Los Angeles to complete. *See* D.S. declaration, para. 5.  But Plaintiffs' assertion that the agency is not trying to comply with the Court's order is not correct, as it has been taking reasonable steps to perform the aforementioned extractions.

CBP has two Unions that have bargaining units that cover some of the relevant employee group. *See id.*  On April 21, 2026, CBP provided notice to the Unions that the questionnaire would be provided to the employees and provided a seven-to-ten day window to respond. *See id.* On May 4, 2026, the questionnaire was rolled out to the relevant employees with a seven-day window to respond. *See* D.S. declaration, para. 7-8.  Before forensically acquiring data from a

-16-    Case No.: 2:25-cv-05605-MEMF-SP

JOINT STIPULATION RE: PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATION OF ECF 370

personal cellphone from an employee, employees must give LSS consent to forensically image their personal cellphones.  *See* J.R. declaration, para. 9.  CBP is prioritizing the forensic examination of personal cell phones by minimizing the phones are in transit to LSS.  *See* J.R. declaration, para. 11.  Once LSS knows how many employees have consented to having their personal phones forensically imaged based on the questionnaire and where they are located, LSS will use either the closest local offices or send LSS personnel to employees to do the forensic imaging.  *See* J.R. declaration, para 11.  LSS must balance this requirement with its work on criminal investigations and its other work.  *See id*.  Civil contempt is therefore inappropriate because Defendants have taken all reasonable steps within their power to ensure compliance with the Court's two orders relating to the imaging of personal mobile devices (Dkt. No. 370, 473).  While Plaintiffs would have preferred custodial interviews (*see supra* at 5), CBP has employed the aforementioned process which is reasonably calculated to satisfy such a concern.

Far from ignoring or refusing to comply with the Court's order, Defendants sought clarification from the Court on the scope of its order to "[f]orensically image *any* cell phone used by an agent present." Dkt. No. 370 at 9 (emphasis added).  During the Parties February 12, 2026 Status Conference, the Court confirmed that, while its "primary concern was the government phones, because those seem most likely to have responsive information,"  Dkt. No. 403-1 at 43, 48, "to the extent… there's testimony from agents that they were also using personal phones… in a way that would implicate what's at issue [in the litigation]," *id.* at 48, "the order is a little bit broader than just the phones that were government issued," *id.*  The Court subsequently stayed the portion of its order pertaining to forensic imaging of agents' personal cell phones for two weeks. *Id.* at 49-52.

Defendants, acknowledging that they were not "somehow absolved of the need to collect information from… [personal] phones that might be discoverable," consequently took and

-17-    Case No.: 2:25-cv-05605-MEMF-SP

continue to take steps to collect and process responsive material from agents' personal phones. Dkt. No. 450 at 5.  Thus, as noted, Defendants instituted a process for identifying potentially responsible material on agents' personal phones.  Defendants began drafting a form asking agents whether they used their personal phones during any of the 15 operations and, if they did, instructing them to conduct a reasonable search of their personal phones, capturing complete screenshots of any responsive materials, and transmitting these responsive materials to Defendants' counsel.

Upon review of ECF No. 370 and the minute order ECF No. 403, ICE drafted a declaration for officers and agents to confirm whether they used their personal phone to conduct government business or advance government actions.  *See, e.g.*, Ex. A.  A blank finalized declaration was distributed to the identified officers with instructions to review, confirm, sign, and return it as soon as possible.  *See* Ex. B.  On April 22, 2026, Defendant ICE sent its form to its officers and agents involved in the operations at issue.  *Id.*  As of May 11, 2026, ICE advises it received 22 responses and 1 response remains outstanding due to an agent's extended military duty with a potential return date of December 2026.  ICE also advises that all officers who responded indicated that they did not use their personal phone for government business during or related to the operations at issue.  All of the forensically-imaged ICE government-issued phones have been produced by Defendants.

CBP advises it has two unions each with its own collective bargaining agreement (CBA) that cover some of the employees involved.  Ex. C., Declaration of D.S.  If CBP did not appropriately consider the requirements under the CBAs, the unions could have filed one or more a grievances, which could further delay the process to image personal phones.  Once CBP worked through the requirements of the CBA and created the questionnaire, per accepted practice, CBP provide notice to the unions on April 21, 2026 and provide the unions time to respond prior to

JOINT STIPULATION RE: PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATION OF ECF 370

sending the questionnaire to employees. *See id.* These efforts were in addition to the CBP policy requiring employees to send government records contained on personal devices to CBP systems. *See supra.* Thus, responsive ESI would be captured through agents' compliance with this process. And in order to ensure that this process is followed, CBP advises the questionnaire covers this as well.

On May 4, 2026, CBP advises sent its form to employees involved in the operations at issue. Ex. C, para. 7. As of May 11, 2026, CBP advises it received 828 responses. CBP further advises that 272 employees who responded indicated that they did not use their personal phone for government business during or related to the operations at issue.

Defendants are otherwise unable to comply with the single requirement in the Court's orders to forensically image agents' personal phones because those devices are not in Defendants' possession, custody, or control such that they can produce them, nor do the Federal Rules permit such intrusive requirement. *Turiano v. City of Phoenix*, 562 F. Supp. 3d 261, 271 (D. Ariz. 2022) (holding that, where a public employer seeks to search its employee's personal cell phone for evidence of work-related misconduct but does not have a warrant to search the imaged data, the employee's Fourth Amendment rights are infringed upon). CBP advises that in an attempt to comply with the court's order, the CBP questionnaire did ask employees if they would consent to the forensic imaging of their personal phones. Federal Rule 34, which governs discovery productions, expressly limits a party's authority to request documents and ESI that is "in the responding party's possession, custody, or control." Fed. R. Civ. Pro. 34(a)(1). While Defendants may ask and indeed have asked agents to produce responsive materials from those personal devices, Defendants do not have any legal right to access, seize, or compel the surrender of those personal devices for intrusive forensic imaging, as opposed to government-issued cell phones which are in the agencies' possession, custody, or control and in the process of being imaged and

-19-                    Case No.: 2:25-cv-05605-MEMF-SP

reviewed for responsive materials. Forensic imaging captures the complete contents of a device, including vast quantities of private, non-responsive, and/or potentially privileged or personally identifiable information. Such a measure also raises serious constitutional and privacy concerns, particularly in light of federal case law discussed below cautioning against downloading or copying the full contents of personal cell phones absent a narrowly tailored justification.

Rule 34(a)(1) expressly limits permissible discovery only as to documents "in the responding party's possession, custody, or control[.]" See also *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007) ("a party is not obliged to produce, at the risk of sanctions, documents that it does not possess or cannot obtain."); *Welland Indus. LLC v. De Well Container Shipping, Inc.*, No. CV 24-01436-AB (ASx), 2025 U.S. Dist. LEXIS 95370, at *7 (C.D. Cal. Apr. 30, 2025) (same); See *Fabricant v. Shinn*, No. 19-00144-ODW (AS), 2021 U.S. Dist. LEXIS 190356, at *2 (C.D. Cal. June 16, 2021) ("Defendants, however, will not be required to produce materials that are not within their possession, custody, or control, if Defendants do not have the legal right to obtain such materials on demand.").

Documents are deemed to be within a party's "possession, custody or control" for purposes of Rule 34 if the party has actual possession, custody, or control, or has the legal right to obtain the documents on demand. See *Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 680 n.1 (C.D. Cal. 2009) (citing *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir.1995)). Given these cell phones are privately owned by individual employees, the remaining question is whether the agency has a legal right to seize and access employees' personal phones and then forensically image the phones to obtain the documents being requested. *In re Citric Acid Litig.*,

JOINT STIPULATION RE: PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATION OF ECF 370

191 F.3d 1090, 1107 (9th Cir. 1999) ("Control is defined as the legal right to obtain documents upon demand."). They do not.

In fact, the Ninth Circuit has analyzed a similar custody-and-control issue in *Larios v. Lunardi*, 442 F. Supp. 3d 1299 (E.D. Cal. 2020), *aff'd*, 856 F. App'x 704 (9th Cir. 2021). There, in reviewing whether it was legally permissible to seize and download a California Highway Patrol officer's personal cellphone used for work purposes, the district court (as affirmed by the Ninth Circuit) determined that the local agency could gain custody and control of a personal device based on explicit employee policy stating that "work stored on any type of electronic device is the property of the state and must be relinquished on demand." *Id.* at 705. Both the district court and Ninth Circuit relied on this local agency policy in concluding that the employer had a legal right to obtain the documents on the employees' personal phone. Here, by contrast, though Defendants have a policy requiring employees to properly store their government records, they do not have a comparable policy or rule stating that a personal device must be relinquished upon demand. In addition to strengthening the privacy interests at issue here, as discussed below, this distinction is dispositive as CBP and ICE do not have any legal right to demand their agents to turn over their personal cell phones for intrusive and indiscriminate forensic imaging. Although Defendants do not dispute that they have an obligation to provide discoverable material on the personal phones to the extent they can, they have no legal right to seize personal phones.

Other courts within the Ninth Circuit (and beyond) have also taken issue with indiscriminate forensic imaging that puts employee privacy at risk and may result in their constitutional rights being infringed upon. *See, e.g.*, *Wolski v. Gardner Police Department*, 560 F. Supp. 3d 387, 396 (D. Mass. 2021) (concluding that "the data extraction was unconstitutional because it was unreasonable in scope" as extraction went beyond the data related to the incident as set forth in the court's order); *Hibbert v. Schmitz*, 2017 WL 59075 (C.D. Ill. Jan. 5, 2017) ("[B]y copying the full

JOINT STIPULATION RE: PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATION OF ECF 370

set of information on the phone, Defendants infringed on that reasonable expectation of privacy" and infringed upon the cell phone holder's constitutional rights). These cases underscore two principles directly applicable here: (1) personal cell phones retain strong privacy protections even when used in part for work-related purposes; and (2) wholesale downloading or imaging of an entire device is constitutionally suspect when it exceeds what is reasonably necessary to obtain relevant material.

Throughout their ongoing efforts to comply with the Court's orders, Defendants have consistently conveyed the challenges posed by the Court's order to forensically image agents' personal phones. For example, during the Parties' March 6, 2026 Status Conference, Defendants previewed their concern about "a potential impasse on that issue with respect to the forensic imaging of … personal phones." Dkt. No. 450 at 5-7. Specifically, Defendants stated they were "in a problematic position with the forensic imaging of phones that are not in their possession, custody or control." *Id.* Furthermore, Defendants shared that they "can't compel [that] these agents to give them the phones and then mail them away to a lab for days at a time while they're forensically imaged." *Id.* These communications are hardly representative of a party unconcerned with complying with a Court order.

Altogether, an order to show cause as to why Defendants should not be held in civil contempt is unwarranted because Defendants have faithfully endeavored to produce responsive material found on personal devices and taken significant, and certainly all reasonable, steps to do so. That Defendants have not achieved compliance yet is not a reflection of a lack of seriousness of commitment to complying. Meanwhile, the government has been relentlessly working to produce the voluminous ESI from the forensically imaged government-issued phones, which are in its possession, custody, and control. This has proven more difficult and time consuming than initially expected; Defendants immediately apprised the Court and Plaintiffs of developments as

JOINT STIPULATION RE: PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATION OF ECF 370

they arose and continue to make progress on the tremendous amount of ESI resulting from forensic imaging.  This does not even account for the volume that may result from an intrusive forensic imaging of agents' personal phones, which Defendants maintain they have no authority to seize and review due to their lacking possession, custody, or control over said devices (but which Defendants, as noted above, are nevertheless pursuing from their employees).

This voluminous endeavor has only been exacerbated by the expedited timeline the Court imposed, which has proven unworkable and necessitating several extensions to accommodate the time intensive process. To ensure ongoing compliance with the Court's orders, Defendants made a decision to forego their standard review process which ordinarily entails multiple levels of review, and instead have been conducting single-line review for much of the documentation, with some portions being reviewed by the client agencies.  This expedited review is complicated by the fact that there are some Defendant and non-party government components with equities in the documents subject to the Court's order, which requires their additional review which extends the review period; for example, many documents have been sent to the Federal Bureau of Investigations for review given that they implicate privileges and equities not exclusively applicable to Defendant CBP and ICE.  Though expediting review could potentially compromise accuracy, Defendants were forced to make this decision—subject to a clawback agreement should Defendants prevail on their pending objections—to ensure ongoing compliance and to make a significant production ahead of the currently set May 15, 2026 deadline, which the parties have recently met to possibly reevaluate.

Due to the substantial amount of time it takes to complete a production of this magnitude, and considering the deadlines imposed in limited discovery, the Office of Immigration Litigation assigned more than 70 clerks or attorneys at various points to assist with the massive amount of document review necessary to accomplish these productions in such a short timeframe.  Attorneys

JOINT STIPULATION RE: PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATION OF ECF 370

have routinely been working up to and past midnight and during the weekends, and putting their substantial caseloads on hold to facilitate review of documents for these productions. Even with dedicating many attorneys and attorney hours to this case, Defendants have consistently negotiated for extensions of time in good faith with Plaintiffs to be able to comply with their obligations. This is not conduct indicative of wanton disobedience of a Court order.[4] *Moog Inc. v. Skyryse, Inc.*, 2023 WL 12032095 *3 (C.D. Cal. May 16, 2023) (finding the moving party had "not met its burden to establish by clear and convincing evidence that any violation of the Order was contemptuous.").

In short, Plaintiffs' accusations that Defendants are refusing to comply with the Court's order are flatly incorrect. Despite the fact that limited discovery has evolved into an overly burdensome and disproportionate level of obligation for Defendants, and the Court's order requires Defendants to act outside the bounds of the Federal Rules, Defendants have continued to work incessantly, and in good faith, to meet the requirements imposed by the Court. *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 781 (9th Cir. 1983) ("If the record establishes that there in fact is a present inability to comply with a production order, the civil contempt inquiry is at an end insofar as the court may coerce compliance because obedience to the order is no longer within the contemnor's power." (cleaned up, internal citations omitted). There is no justification for a contempt order or sanctions under such circumstances.[5]

---

[4] Additionally, in the enormous volume of review conducted to date, it is apparent that at least some of the communications within the government phones overlap with communications made on personal phones, thus supporting Defendant's prior arguments that the forensic imaging of personal phones is vastly disproportionate to the needs of this case.

[5] To the extent Plaintiffs cite *Rigoberto S.J. v. Bondi*, No. 26-cv-957 (LMP/JFD), 2026 WL 490104 (D. Minn. Feb. 20, 2026), as an example where a court compelled a Special Assistant United States Attorney to comply with a court order through sanctions, that case is inapposite as Plaintiffs cannot demonstrate the government is refusing to comply with the court's order here.

JOINT STIPULATION RE: PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATION OF ECF 370

DATED:  May 12, 2026                    MUNGER, TOLLES & OLSON LLP


By:    _____
           /s/ Jacob S. Kreilkamp
           JACOB S. KREILKAMP
           *Counsel for Stop/Arrest Plaintiffs*

DATED:  May 12, 2026                    UNITED STATES DEPARTMENT OF JUSTICE


By:    _____
           /s/ Jonathan A. Robbins
           JONATHAN A. ROBBINS
           Assistant Director
           Office of Immigration Litigation
           *Counsel for Defendants*

Case No.: 2:25-cv-05605-MEMF-SP

JOINT STIPULATION RE: PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATION OF ECF 370