STACY TOLCHIN (SBN 217431)
*stacy@tolchinimmigration.com*
LAW OFFICES OF STACY TOLCHIN
776 E. Green St., Suite 210
Pasadena, CA 91101
Tel: 213-622-7450; Fax: 213-622-7233

MOHAMMAD TAJSAR (SBN 280152)
*mtajsar@aclusocal.org*
MAYRA JOACHIN (SBN 306065)
*mjoachin@aclusocal.org*
EVA BITRÁN (SBN 302081)
*ebitran@aclusocal.org*
DAE KEUN KWON (SBN 313155)
*akwon@aclusocal.org*
STEPHANIE PADILLA (SBN 321568)
*spadilla@aclusocal.org*
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
P.O. Box 811370
Los Angeles, CA 90081
Telephone: (213) 977-9500
Fax: (213) 915-0219

*Counsel for Stop/Arrest Plaintiffs*

(*Additional counsel listed on next page*)

MARK ROSENBAUM (SBN 59940)
*mrosenbaum@publiccounsel.org*
REBECCA BROWN (SBN 345805)
*rbrown@publiccounsel.org*
SOPHIA WRENCH (SBN 354416)
*swrench@publiccounsel.org*
RITU MAHAJAN (SBN 252970)
*rmahajan@publiccounsel.org*
GINA AMATO (SBN 215519)
*gamato@publiccounsel.org*
AMANDA MANGASER SAVAGE
(SBN 325996)
*asavage@publiccounsel.org*
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Counsel for All Plaintiffs*

ANNE LAI (SBN 295394)
*alai@law.uci.edu*
UC IRVINE SCHOOL OF LAW
IMMIGRANT AND RACIAL JUSTICE
SOLIDARITY CLINIC
P.O. Box 5479
Irvine, CA 92616-5479
Tel: 949-824-9894; Fax: 949-824-2747

*Counsel for Stop/Arrest Plaintiffs*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pedro VASQUEZ PERDOMO; Carlos Alexander OSORTO; and Isaac VILLEGAS MOLINA; Jorge HERNANDEZ VIRAMONTES; Jason Brian GAVIDIA; LOS ANGELES WORKER CENTER NETWORK; UNITED FARM WORKERS; COALITION FOR HUMANE IMMIGRANT RIGHTS; IMMIGRANT DEFENDERS LAW CENTER, <br><br> Plaintiffs, <br><br> v. <br><br> Markwayne MULLIN, in his official capacity as Secretary, Department of Homeland Security; Todd M. LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; Rodney S. SCOTT, in his official | Case No.: 2:25-cv-05605-MEMF-SPx <br><br> ***DISCOVERY MATTER*** <br><br> **JOINT STIPULATION RE: PLAINTIFFS' MOTION TO COMPEL DISCOVERY** <br><br> Hon. Maame Ewusi-Mensah Frimpong <br><br> Referred to Hon. Sheri Pym <br> United States Magistrate Judge <br><br> Date:  June 16, 2026 <br> Time: 11:00 a.m. <br> Discovery Cutoff:  March, 24, 2027 <br> Pre-Trial Conf.:  August 4, 2027 <br> Trial:  August 23, 2027 |

capacity as Commissioner, U.S. Customs and Border Patrol; Michael W. BANKS, in his official capacity as Chief of U.S. Border Patrol; Kash PATEL, in his official capacity as Director, Federal Bureau of Investigation; Pam BONDI, in her official capacity as U.S. Attorney General; Jaime RIOS, in his official capacity as Acting Field Office Director for Los Angeles, U.S. Immigration and Customs Enforcement; Dean T. SORENSON, Special Agent in Charge for Los Angeles, Homeland Security Investigations, U.S. Immigration and Customs Enforcement; Gregory K. BOVINO, in his official capacity as Chief Patrol Agent for El Centro Sector of the U.S. Border Patrol; Justin DE LA TORRE, in his official capacity as Acting Chief Patrol Agent, San Diego Sector of the U.S. Border Patrol; Akil DAVIS, in his official capacity as Assistant Director in Charge, Los Angeles Office, Federal Bureau of Investigation; Bilal A. ESSAYLI, in his official capacity as U.S. Attorney for the Central District of California,

     Defendants.

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO COMPEL DISCOVERY

JACOB S. KREILKAMP (SBN 248210)
jacob.kreilkamp@mto.com
DAVID FRY (SBN 189276)
david.fry@mto.com
SARA H. WORTH (SBN 341088)
sara.worth@mto.com
HENRY D. SHREFFLER (SBN 343388)
henry.shreffler@mto.com
LAUREN E. KUHN (SBN 343855)
lauren.kuhn@mto.com
LAURA R. PERRY (SBN 342504)
laura.perrystone@mto.com
MAGGIE BUSHELL (SBN 354048)
maggie.bushell@mto.com
MUNGER, TOLLES & OLSON LLP
350 S. Grand Ave., 50th Floor
Los Angeles, CA 90071
Tel: 213-683-9100; Fax: 213-683-9100

*Counsel for Stop/Arrest Plaintiffs*

LAUREN MICHEL WILFONG*
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Tel: 626-214-5689

*Counsel for Stop/Arrest Plaintiffs*

BREE BERNWANGER (SBN 331731)
bbernwanger@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel: 415-621-2493

*Counsel for Stop/Arrest Plaintiffs*

BRISA VELAZQUEZ OATIS
(SBN 339132)
bvoatis@aclu-sdic.org
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Tel: 619-398-4199

*Counsel for Stop/Arrest Plaintiffs*

MATTHEW J. CRAIG (SBN 350030)
mcraig@heckerfink.com
MACK E. JENKINS (SBN 242101)
mjenkins@heckerfink.com
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Tel: 212-763-0883; Fax: 212-564-0883

*Counsel for Access/Conditions Plaintiffs*

EDGAR AGUILASOCHO (SBN 285567)
eaguilasocho@farmworkerlaw.com
MARTÍNEZ AGUILASOCHO LAW, INC.
900 Truxtun Ave., Suite 300
Bakersfield, CA 93301
Tel: 661-859-1174

*Counsel for Plaintiff United Farm Workers*

CARL BERGQUIST*
cbergquist@chirla.org
COALITION FOR HUMANE IMMIGRANT
RIGHTS
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

*Counsel for Plaintiff Coalition for Humane Immigrant Rights*

ALVARO M. HUERTA (SBN 274787)
ahuerta@immdef.org
BRYNNA BOLT (SBN 339378)
bbolt@immdef.org
ALISON STEFFEL (SBN 346370)
asteffel@immdef.org
IMMIGRANT DEFENDERS LAW CENTER
634 S. Spring Street, 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

*Counsel for Plaintiff Immigrant Defenders Law Center*

* Admitted pro hac vice

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 16, 2026, at 11:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 4, 3rd Floor, of the above-captioned Court, located at 3470 Twelfth Street, Riverside, California 92501, the Stop/Arrest Plaintiffs will and hereby do move for an order compelling Defendants to produce documents responsive to Plaintiff United Farm Workers' Requests for Production ("RFPs"), Sets One to Three.  These discovery requests—the first several sets propounded during general (as opposed to expedited) discovery in this case— seek video footage and other records related to Defendants' immigration enforcement operations in the District, as well as additional policy and training documents and communications.  Plaintiffs are amenable to the possibility of production of a proportional, representative sampling of materials requested for certain RFPs, such as body camera videos and I-213s/narratives, but thus far have been unable to reach a workable agreement with Defendants.  Plaintiffs thus seek judicial intervention on these issues.

Pursuant to Federal Rule of Civil Procedure 37(a) and Local Rule 37-1, counsel for Plaintiffs and Defendants' counsel have met and conferred via teleconference and exchanged written correspondence in an attempt to resolve their disputes.  The parties held telephonic conferences on March 16, March 25, March 27, April 7, and May 11, 2026.  The parties have been unable to reach agreement regarding the subject matter of this Motion.

This Motion is based upon this Notice of Motion, the Joint Stipulation, the Declaration of Anne Lai, and any other papers or argument of counsel that may be filed or submitted in connection with this Motion.

DATED:  May 26, 2026                    MUNGER, TOLLES & OLSON LLP


By:   _/s/ Jacob S. Kreilkamp_____
JACOB S. KREILKAMP
*Counsel for Stop/Arrest Plaintiffs*

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO COMPEL DISCOVERY

# **TABLE OF CONTENTS**

**Page**

I.  PLAINTIFFS' INTRODUCTORY STATEMENT ...................................................1

II.  DEFENDANTS' INTRODUCTORY STATEMENT ...............................................1

III.  PLAINTIFFS' CONTENTIONS AND POINTS AND AUTHORITIES............................2

    A.  Factual Background................................................................................2

        1.  UFW's Requests for Production ...............................................2

            (a)  RFPs Set One ...........................................................2

            (b)  RFPs Set Two...........................................................2

            (c)  RFPs Set Three ........................................................3

        2.  Defendants' Responses and Objections ...................................3

            (a)  R&Os to RFPs Set One.............................................3

            (b)  R&Os to RFPs Set Two ...........................................3

             (c)  R&Os to RFPs Set Three ..........................................4

        3.  Meet/Confer Efforts ................................................................4

    B.  Argument................................................................................................8

        1.  Defendants' Limitation on the Scope of Body Camera Video is Improper ...............................................................................8

        2.  Defendants' Date Cut-Offs Are Inappropriate .........................11

        3.  Defendants' Custodian Limitations Are Inappropriate ...............13

        4.  Defendants Should Produce Transcripts in Their Possession .....14

        5.  The Court Should Set Deadlines for the Resolution of Outstanding Issues ..............................................................14

IV.  DEFENDANTS' CONTENTIONS AND POINTS AND AUTHORITIES......................15

    A.  Factual Background................................................................................15

        1.  Plaintiffs' First Amended Complaint and Scope of Case.............15

        2.  UFW's Requests for Production Set One, Defendants' Responses and Objections, and Subsequent Negotiation Efforts..................15

        3.  UFW's Requests for Production Set Two, Defendants' Responses and Objections, and Subsequent Negotiation Efforts..................16

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO COMPEL DISCOVERY

4.     UFW's Requests for Production Set Three, Defendants' Responses and Objections, and Subsequent Negotiation Efforts.....................................17

B.     Argument.....................................................................................................18

1.     Defendants' Proposals to Narrow Plaintiffs' Overbroad, Disproportionate, and Unduly Burdensome Discovery Requests are Proper ..........................................................................................18

(a)     Scope of Discovery ...........................................................18

(b)     Defendants' proposals to narrow the scope of Plaintiffs' requested video production (RFP 1) are proper ...............................18

(c)     Defendants date cut-offs pertain to significant litigation events that bring RFPs Sets Two and Three within the proper scope of general discovery ............................................................20

(d)     Defendants' limitations on custodians in RFPs Sets Two and Three also brings Plaintiffs' request within the proper scope of general discovery ...................................................................22

2.     Plaintiffs are not entitled to transcripts that are equally accessible to them and that present no significant factual or legal overlap with the present case. ...................................................................................24

3.     Plaintiffs do not oppose the Court setting reasonable deadlines for the resolution of the Parties' outstanding discovery issues..........................25

## I.      PLAINTIFFS' INTRODUCTORY STATEMENT

Five months into general discovery in this case, Defendants have yet to produce any documents responsive to 24 Requests for Production ("RFPs") that comprise Plaintiff United Farm Workers' (UFWs') RFPs Sets One to Three, save for small a sample produced on May 14, 2026. Plaintiffs have repeatedly conveyed to Defendants the importance of making reasonable progress on these requests, and Plaintiffs have repeatedly met and conferred with Defendants to seek to address any concerns, including regarding volume and burden.  Defendants have delayed or in some cases outright refused to provide basic information that would allow the parties to negotiate a sensible and fair approach to sampling; have set unreasonable date cutoffs; and have taken the position that they will search only for certain records among a small handful of custodians.

Plaintiffs request that the Court issue an order preventing Defendants from skewing the evidentiary record by unilaterally applying their own narrowing criteria to requested discovery, and requiring Defendants to work cooperatively and expeditiously with Plaintiffs to develop a fair approach to sampling, where appropriate, including sharing information regarding how records are organized and stored; and set reasonable benchmarks for collection and production.  Plaintiffs submit that such an order is necessary to ensure that discovery does not languish.

## II.     DEFENDANTS' INTRODUCTORY STATEMENT

From the service of Plaintiff UFWs' RFP Set One on January 30, 2026, through the present, Defendants have collaboratively engaged in general discovery with Plaintiffs and, as such, any order to compel discovery is unwarranted.  While continuing to fulfill Plaintiffs' limited, expedited discovery requests and negotiating the Parties' ESI protocol, Defendants have timely provided responses and objections ("R&Os") to Plaintiff UFWs' three RFP sets, participated in five meet and confers, engaged in detailed email and letter correspondence, and provided sample documents and responses to requests for information – all as part of ongoing, joint negotiations to ensure that general discovery is relevant, proportional, and not unduly burdensome. *See generally* Fed. R. Civ. P. 26(b)(1).  At no point have Defendants sought to "unilaterally" define the scope of general discovery.  Rather, Defendants have, in good faith, offered Plaintiffs numerous approaches to producing the thousands, if not millions, of videos, documents, and communications that

-1-
JOINT STIPULATION RE: PLAINTIFFS' MOTION TO COMPEL DISCOVERY

Plaintiffs have requested.  Defendants understood these negotiations to be advancing expeditiously and in good faith as of the filing of this Joint Stipulation.

While Plaintiffs express frustration with the timing of the Parties' progress to date, Defendants have proceeded as expeditiously as possible amidst the realities of coordinating requests for production and information across multiple agency components and, now, arms of the executive branch.  Every request requires outreach to, input from, and confirmation by dozens of individuals.  Collection and production involves an equal amount of cross-agency effort.  Simply put, Plaintiffs' requests will, inevitably, take time.  Any progress short of the pace that Plaintiffs desire is not an indication of Defendants' efforts to delay general discovery.

As such, Defendants maintain that any order regarding Plaintiff UFWs' RFPs Sets One through Three is unwarranted, as Defendants expect to continue to work cooperatively and expeditiously to resolve the Parties' general discovery disputes.

### III.    PLAINTIFFS' CONTENTIONS AND POINTS AND AUTHORITIES

#### A.    Factual Background

##### 1.    UFW's Requests for Production

Following the parties' Rule 26(f) conference in this case, Plaintiffs commenced serving general discovery requests on Defendants.  Between late January and early March, Plaintiff UFW served three sets of RFPs on Defendants.

*(a)    RFPs Set One*

UFW served RFPs Set One on Defendants on January 30, 2026.  This set contains a single request, for "[all] recorded video footage RELATING TO 'Operation at Large' in the Central District of California, including but not limited to body-worn camera footage and small unmanned aircraft footage."  Declaration of Anne Lai ("Lai Decl."), Ex. A.

*(b)    RFPs Set Two*

UFW served RFPs Set Two on Defendants on February 13, 2026.  This set contained an additional 14 requests for production of documents, largely relating to individual I-213s/encounter reports and narratives, intelligence reports, operational briefings, end of shift reports or summaries, administrative warrants (where they exist), arrest lists, data regarding location of

-2-

operations, personnel rosters, organizational charts, deployment instructions, policies and guidance related to a number of topics at issue in this case, and transcripts of proceedings or depositions in other cases challenging similar raids in other parts of the country.  Lai Decl., Ex. B.

(c)     RFPs Set Three

UFW served RFPs Set Three on Defendants on March 2, 2026.  This set contained an additional nine requests, largely seeking production of key communications related to Defendants' operations, including what was told to personnel when they were solicited to participate in Operation At Large, communications related to arrest goals, collateral encounters, the TRO in this case, the decision to resume operations following the TRO, other relevant policy decisions, changes in training, and communications relating to Plaintiffs.  This set also sought arrest information from an ICE database called OM2 (and any successor system) and guidance related to the use of agents' personal cell phones on immigration enforcement operations.  Lai Decl., Ex. C.

## 2.     Defendants' Responses and Objections

(a)     R&Os to RFPs Set One

On March 2, 2026, Defendants served their Responses and Objections ("R&Os") to RFPs Set One.  The R&Os contained a number of improper boilerplate objections to Plaintiffs' defined terms, instructions, and the RFP itself, as well as improper assertions of privileges.  Lai Decl., Ex. D.  The R&Os further stated that (1) CBP would not provide the videos in its possession and would produce only "a random sampling of approximately 500 videos of immigration arrests and apprehensions made by CBP Defendants. . ." *Id.* at 6.  Defendants also purported to limit the date range they would select the sample from to the date range between June 6, 2025 and February 10, 2026.  *Id.*  Defendants also represented in these R&Os that ICE did not have any video footage responsive to the request.  *Id.*

(b)     R&Os to RFPs Set Two

On March 16, 2026, Defendants served their R&Os to RFPs Set Two.  Like Defendants' R&Os to RFPs Set One, the R&Os contained improper objections and assertions of privilege.  Lai Decl., Ex. E.  Defendants conditioned nearly all of their searches and productions of documents responsive to RFPs in Set Two on a "meet and confer and agreement on the scope of this

-3-

Request." *Id.* at 8–19. Defendants also declined to produce transcripts from other cases challenging similar raids in other parts of the country in response to RFP 15 on the ground that such material is publicly available to Plaintiffs. *Id.* at 20.

*(c)*     *R&Os to RFPs Set Three*

On April 1, 2026, Defendants served their R&Os to RFPs Set Three. Like Defendants' R&Os to RFPs Sets One and Two, the R&Os contained improper objections and assertions of privilege. Lai Decl., Ex. F. Defendants also purported to unilaterally limit the relevant time period of every RFP. For most of the RFPs, Defendants stated they would cut off their search for records and communications at February 10, 2026. *Id.* at 7–18. Further, for all but a few RFPs, Defendants unilaterally limited the custodians they said they would seek responsive documents from. *Id.* at 7–15.

**3.**     **Meet/Confer Efforts**

Plaintiffs made numerous attempts to meet and confer with Defendants on these issues to try and reach resolution between the parties. In total, the parties met and conferred about these RFPs on five separate occasions: March 16, March 25, March 27, April 7, and May 11. Lai Decl., ¶ 5. The parties also exchanged extensive written correspondence, including numerous emails and one 8-page letter on May 11, 2026 summarizing the outstanding disputes as of that date. Lai Decl., Ex. G.

At each telephonic conference, Plaintiffs raised with Defendants concerns about Defendants' unilateral narrowing of RFP responses and posed questions to try to better understand Defendants' positions and the possibilities for resolution between the parties. At the close of each meeting, Defendants requested additional time to solicit information from their client and follow up with Plaintiffs. Lai Decl., ¶ 6.

Defendants were consistently unprepared to discuss the issues on the respective agendas of the meet and confers. *Id.*, ¶ 7. Defendants asked Plaintiffs to follow up in writing to identify the issues discussed during the conferences that Defendants agreed to obtain additional information about (despite Defendants having multiple counsel on the calls who could take notes), and to identify with particularity every question Plaintiffs intended to ask in advance of each conference

-4-

(implying that without this Plaintiffs should not expect a substantive response on the call). *Id.* For example, on the April 7, 2026 call *specifically about* Defendants' responses and objections to RFPs Set Three, lead counsel for Defendants was unable to explain the custodian and date range-limitations that Defendants unilaterally imposed on RFPs Set Three in their R&Os, despite having signed those R&Os. *Id.*, ¶ 8. While Defendants were at times eventually able to provide responses to Plaintiffs' questions at later conferences or by email, this necessitated additional expenditures of time by Plaintiffs' counsel and caused unacceptable delay, sometimes on the scale of weeks. *Id.*, ¶ 9.

*Videos***:** Defendants eventually moved away from their initial proposal of 500 CBP videos after revealing that there were more than 11,000 body camera videos associated with Operation At Large. *Id.*, ¶ 10. Their latest proposal is that they will produce the subset of 4,685 videos tagged with an "Arrest/Apprehension" tag. Lai Decl., Ex. I, at 14. Plaintiffs noted their objection to this approach, not because of the number of videos Defendants are proposing to produce, but because Defendants' proposal may unfairly skew the record in this case toward encounters that ultimately ended in an arrest (and likely exclude encounters with U.S. citizens or individuals with status who were stopped but not later arrested). Lai Decl., Ex. G, at 3–4. Following their May 11, 2026 letter, Plaintiffs once again asked Defendants if they would share information about a possible "Investigations" tag in Defendants' system and provide Plaintiffs with data about which videos produced in expedited discovery had an "Arrest/Apprehension" tag. Lai Decl., ¶ 13. To date, Plaintiffs have not received such information. *Id*.

Separate from any eventual "sample" of CBP body camera videos, Plaintiffs requested the ability to seek from CBP videos of specific individual encounters at issue in the case. *Id.*, ¶ 14. Plaintiffs proposed to cap this number at 35 individual encounters. *Id.* Defendants expressed openness to this idea but took weeks to confirm they would agree to 35 encounters. *Id.*, ¶ 15.

Defendants have also confirmed that while ICE officers are not equipped with body cameras, ICE indeed has video footage that it uses for social media and other purposes. *Id.*, ¶ 16. Plaintiffs have not received confirmation that ICE intends to produce raw footage even where such footage was not eventually posted on ICE's social media. Lai Decl., Ex. I, at 3. Plaintiffs also

-5-

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO COMPEL DISCOVERY

have not received any such ICE footage from Defendants, though Plaintiffs did receive a small amount of CBP "stratcom" footage from two operations in June 2025 on May 14, 2026.  Lai Decl., ¶ 25.

*Date Cut-Offs*:  While Defendants stated in their R&Os to RFPs Set Three that they would be applying various date cut-offs to their discovery responses, including the end date of February 10, 2026 for numerous responses as the date when Border Patrol's involvement in Operation At Large ended, they did not state this in their R&Os to RFPs Set Two.  *Compare* Lai Decl., Ex. F *with* Ex. E.  Defendants informed Plaintiffs by email that they would be unilaterally applying similar date cut-offs to RFPs Set Two more than three weeks later, on April 8, 2026, after the parties had already begun conferring on Defendants' R&Os.  Lai Decl., Ex.  I, 14–15.  Defendants then only detailed what those cut-offs were for the first time on April 30, 2026.  *Id.* at 1–2.

In their May 11, 2026 letter, Plaintiffs set forth the date cut-offs they object to and for which RFPs.  Lai Decl., Ex.  G, at 4–7.  Specifically, Plaintiffs object to the end date of February 10, 2026 for the following RFPs in Sets Two and Three:

- RFP 2 [Set Two] (seeking Forms I-213, EARM encounter reports, and other reports of encounters initiated by ICE and CBP);
- RFP 3 [Set Two] (seeking narratives);
- RFP 6 [Set Two] (seeking briefing presentations);
- RFP 7 [Set Two] (end of shift reports, summaries, or the like);
- RFP 8 [Set Two] (administrative warrants issued after initiation of encounter);
- RFP 9 [Set Two] (daily apprehension logs, arrests lists or tallies, and the like);
- RFP 11 [Set Two] (rosters and the like);
- RFP 12 [Set Two] (documents depicting organizational command structure);
- RFP 13 [Set Two] (deployment instructions, training, and the like);
- RFP 14 [Set Two] (policies, procedures, guidance, and instruction related to a number of substantive topics);
- RFP 16 [Set Three] (communications soliciting personnel);
- RFP 17 [Set Three] (communications related to various substantive topics);

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO COMPEL DISCOVERY

- RFP 20 [Set Three] (communications with Stephen Miller and/or Tom Homan related to various substantive topics);

- RFP 21 [Set Three] (communications related to changes in training); and

- RFP 23 [Set Three] (OM2 or successor system data).

Plaintiffs also object to Defendants' imposed start date of June 6, 2025 for the following RFPs:

- RFP 19 [Set Three] (communications related to National Incident Command Center (NICC))

- RFP 14 [Set Two] (policies, procedures, guidance, and instruction related to a number of substantive topics)

- RFP 16 [Set Three] (communications soliciting personnel), 17 [Set Three] (communications related to various substantive topics)

- RFP 20 [Set Three] (communications with Stephen Miller and/or Tom Homan related to various substantive topics)

- RFP 24 [Set Three] (manuals and guidance related to the use of personal cell phones, Zello, and/or WhatsApp)

Finally, Plaintiffs object to Defendants' imposed start/end date of one day prior and one week after each of the encounters with Plaintiffs for the following:

- RFP 22 [Set Three] (communications relating to Plaintiffs)

To date, Defendants have not moved off of their date cut-offs.  Lai Decl., ¶ 22.

*Limited Custodians*: Defendants have also asserted that they will search for responsive documents only from certain custodians for most RFPs in Sets Two and Three.  Lai Decl., Exs. F & I, 1–2, 8–10.   In their May 11, 2026 letter, Plaintiffs stated their view that while Defendants may wish to start with certain custodians in their search, and conduct reasonable additional searches depending on what Defendants' investigation yields, it is not appropriate for Defendants to unilaterally limit the custodians they will seek documents from as an absolute matter at this stage.  Lai Decl., Ex. G, at 7.  Plaintiffs also specifically objected to Defendants' position that they will seek documents responsive to RFP 5 [Set Two] (decision to conduct intelligence gathering or surveillance for Strike Team Operations) only from Chief Bovino and search for documents

responsive to RFP 3 (seeking narratives) among centralized mailboxes and arresting agents. *Id.* Defendants have not altered their position regarding narrowing of custodians. Lai Decl., ¶ 22.

*Transcripts***:** Plaintiffs have noted their objection to Defendants' withholding of documents responsive to RFP 15 [Set Two] (seeking transcripts of court proceedings, evidentiary hearings, and/or depositions from other cases related to this one), as Defendants have superior access to such materials relative to Plaintiffs. Lai Decl., Ex. G, at 7. Defendants have not altered their position. Lai Decl., ¶ 23.

*Sampling of I-213s, narratives, and other operational documents***:** To address concerns about burden, Plaintiffs have indicated their openness to a mutually agreed-upon sample of I-213s, narratives, and other operational documents, provided Defendants could share certain information and documents that would allow the parties to devise an appropriate method for sampling and prioritization. Lai Decl., Ex. G, at 8. As with the body camera videos, Plaintiffs would also identify a certain number of specific incidents that Plaintiffs could seek documents for upon request. Lai Decl., Ex. H, at 3. While Defendants did not reject the proposal for information sharing, it has taken many weeks for Defendants to produce even just a subset of materials Plaintiffs requested to facilitate a meaningful conversation about sampling. Lai Decl., Ex. G, at 8; *see also* Ex. H, 21–24 (initially stating OM2 data and sample arrest logs and rosters could be provided around the middle of the week of April 13-17, 2026). Plaintiffs finally received sample arrest logs and rosters on May 14, 2026, however, they pertain only to a small time period, making them difficult to work with; Plaintiffs are still awaiting the complete OM2 data. Lai Decl., ¶ 25.[1]

**B.     Argument**

**1.     Defendants' Limitation on the Scope of Body Camera Video is Improper**

*Plaintiffs request that the Court order Defendants to produce all body camera videos responsive to RFP 1, OR, in the alternative, require parties to expeditiously develop a mutually*

---

[1] The parties were able to resolve the issues relating to the ICE Fourth Amendment training and OM2 and related data described in Plaintiffs' May 11, 2026 letter as part of a separate stipulation regarding an extension of time on Defendants' government phone productions per ECF 370. Lai Decl., ¶ 26. They therefore need not be resolved as part of this Motion.

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO COMPEL DISCOVERY

*agreeable approach to identifying a subset of videos Defendants (with Defendants to provide information necessary to facilitate this process), otherwise Defendants will be required to produce all body camera videos.*

Defendants' attempts to arbitrarily cap the number of responsive documents they will produce violates their obligation under Federal Rule of Civil Procedure 34. Both Defendants' initial proposal to produce only a "random sampling of approximately 500 [CBP] videos of immigration arrests and apprehensions" and their latest proposal produce all videos tagged with an "Arrest/Apprehension" tag, *see* Lai Decl., Ex. D, at 6 & Ex., I, at 14, are unacceptable.

***First***, a party has "an obligation to conduct a reasonable inquiry into the factual basis of his responses to discovery," and "based on that inquiry, a party responding to a Rule 34 production request is under an affirmative duty to seek that information reasonably available to it from its employees, agents, or others subject to its control." *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006) (cleaned up). Upon such inquiry, if the documents are in the party's "possession, custody or control," the party "*must* produce or permit inspection of documents responsive to a request for production of documents." *Id.* (emphasis added). The Federal Rule of Civil Procedure 34 "requires a party to produce *all* relevant documents in the party's 'possession, custody, or control' when responding to a request for production of documents," *Kakowski v. Allison*, 2022 WL 17652776, at *4 (S.D. Cal. Dec. 13, 2022) (quoting Fed. R. Civ. P. 34(a)(1) (emphasis added)).

***Second***, discovery is not an arbitrary exercise. Parties can and do make requests that are reasonably calculated to lead to the discovery of admissible evidence, and the other side is not permitted to unilaterally determine that the method of production will be to identify responsive documents and then produce a subset of them at random. Where a party demonstrates an undue burden, the parties may negotiate over the best way to address that burden, but random selection is not normally the manner in which it is addressed. *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142 (9th Cir. 2005) (denying writ of mandamus petition seeking to overturn magistrate order holding that party must "produce documents responsive to [opposing party's] requests as stated rather than as unilaterally limited by" the party).

*Third*, even Defendants' proposal to produce approximately 40% of the body camera videos in their possession, but *only* those labeled with the "Arrest/Apprehension" tag, does not resolve the issue. In fact, it would skew the factual record in this case in a way that would prejudice Plaintiffs.

During the parties' conferences, Plaintiffs sought information about the type of videos stored, the total universe of videos, and the categorization systems used in a good faith attempt to evaluate Defendants' proposals. Lai Decl., ¶ 11. Plaintiffs indicated a willingness to come to an agreement on a universe of videos for production on the condition that Defendants produced enough background information on their processes in order for Plaintiffs to make an informed decision in light of the issues and claims in the case. *Id.* Plaintiffs never received such information. *Id.*

Early in the parties' discussions, Plaintiffs communicated an interest in Defendants producing videos of stops or questioning by CBP agents that *did not lead to arrest*. *Id.* Plaintiffs appreciate Defendants' willingness to produce videos of encounters labeled as "Arrest/Apprehension," but that category likely includes only a fraction of the encounters relevant to the present lawsuit. The videos are an essential source of evidence for detentive stops because Defendants have indicated in court filings and deposition testimony in this case that they do not, as a general matter, otherwise document stops that do not lead to arrest. *See, e.g.*, Lai Decl., Ex. J. That Defendants are already willing to produce 4,685 videos suggests that they have a manageable way of producing a large volume of videos, and that it would not be unduly burdensome to produce a further universe of videos that capture stops that do not lead to arrests.

Accordingly, Plaintiffs asked Defendants for two pieces of additional information: (1) information about what other tags Defendants use in their system to categorize agents' body camera videos, including whether Defendants have a tag for something like "Investigations"; and (2) if Defendants could indicate which of the body camera videos produced to Plaintiffs so far as part of expedited discovery had been tagged as "Arrest/Apprehension" (so Plaintiffs could

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO COMPEL DISCOVERY

determine how such a label is used).  Lai Decl., ¶¶ 12–13.  To date, Defendants have declined both requests for information.  *Id.*, ¶ 13.[2]

Defendants' position is not tenable.  In addition to withholding information that is responsive to the RFP, Defendants' "sample" is likely to skew the evidence in the case by limiting body camera evidence to stops where agents encountered someone ultimately subject to arrest, and excluding encounters with U.S. citizens or individuals who have status.  Even if it ultimately makes sense for Defendants to produce a subset of the entire universe of videos, Defendants should cooperate with Plaintiffs to devise a universe of videos that is most likely to fairly capture the incidents of interest in this case.

**2.      Defendants' Date Cut-Offs Are Inappropriate**

*Plaintiffs request that the Court order Defendants to search for and produce documents responsive to RFPs 2, 3, 6, 7 , 8, 9, 11, 12, 13, 14, 16, 17, 20, 21, and 23 without the end date of February 10, 2026; RFPs 19, 14, 16, 20, and 20 without the start date of June 6, 2025; and RFP 22 without the constricted timeframe of one day prior and one week after each respective encounter with Plaintiffs.*[3]

Defendants' unilateral limitation of the relevant time period for the search and production of documents is improper.  Defendants have an affirmative duty to produce documents in its possession, custody, or control responsive to a request for production.  *See A. Farber & Partners, Inc.*, 234 F.R.D. at 189.

***First***, Defendants' assertion that an end date of February 10, 2026 date is appropriate because it represents the "end date" of "Operation At Large" is belied by the record.  Defendants

---

[2] Defendants indicated they are "willing to conduct a reasonable search for and produce additional videos if Plaintiffs find the 4,685 videos are lacking," Lai Decl., Ex. I, at 14, but that only begs the question of what a reasonable search would entail.  Clearly Defendants are willing to do additional searching, but Defendants have deprived Plaintiffs of information that would allow the parties to craft effective parameters for such a search.  It defies reason for Plaintiffs to have to wait until after Defendants have reviewed and produced 4,685 videos for the parties to confront an issue that is ripe for resolution now.

[3] For all the relevant RFPs, Plaintiffs originally set an applicable time period of January 1, 2025 to the present.

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO COMPEL DISCOVERY

acknowledged in the meet and confer on March 25, 2026 that the definition of "Operation At Large" as set forth by Plaintiffs included collateral encounters not labeled as associated with the operation in Defendants' documents. Lai Decl., ¶ 18. Defendants also agreed that they would not construe the definition as being limited to operations coordinated through a command center. *Id*. Defendants have further conceded that ICE is continuing to conduct "at large" enforcement operations in the field and that the nature of these operations has not fundamentally changed since February 10, 2026. Lai Decl., Ex. H, at 8–9. This presumably includes collateral encounters which were occurring before February 10, 2026 and continue after February 10, 2026.[4]

Defendants have an independent obligation to search for and produce any documents that are responsive to Plaintiffs' RFPs, regardless of what position they take with respect to the continuation or discontinuation of certain practices. A "defendant is not free to unilaterally narrow all discovery requests to exclude a theory of [a] plaintiff's case that was pled in the Complaint." *Evox Prods., LLC v. LKQ Corp.*, 2026 WL 714138, at *2 (C.D. Cal. Feb. 25, 2026). Further, Defendants ignore that this lawsuit concerns not just a particular operation, but a set of practices that Plaintiffs allege violate the law and which can continue after an "operation" has formally ended. If there are no documents of a particular type beyond a certain date, then there are no documents to produce. But by insisting that things have changed and then blocking discovery of documents and communications after February 10, 2026, Defendants are unfairly depriving Plaintiffs and ultimately the Court of the ability to make their own assessment of Defendants' assertions.

***Second***, Defendants' start date of June 6, 2025 for RFPs 19, 14, 16, 17, and 20 is also unjustified. For RFP 19, pertaining to communications of the NICC, Defendants acknowledged that the NICC was stood up well before June 6, 2025, in February 2025. Lai Decl., Ex. H, at 18. The NICC likely had relevant communications in the lead up to Operation At Large, and indeed, Plaintiffs' definition of "Operation At Large" in the requests is broader than what the agency

---

[4] Plaintiffs are additionally aware of reports of Border Patrol activity in the Central District of California outside of ports of entry after February 10, 2026. Lai Decl., ¶ 18.

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO COMPEL DISCOVERY

appears to formally consider as "Operation At Large." Lai Decl., Ex. C, at 4. Even if the NICC had a limited role in local operations, Plaintiffs are also seeking information about policy changes regarding immigration enforcement that would have affected how operations are carried out on the ground. *Id.* at 7. A start date of June 6, 2025 for RFPs 14, 16, 17, and 20 similarly ignores that there would have been communications in the lead-up to Operation At Large. There are also almost certainly policy documents and guidance preceding June 6, 2025 that would have been relevant after June 6, 2025.

**Third**, Defendants' proposal to limit a search for documents responsive to RFP 22, communications regarding Plaintiffs, to one week after each Plaintiff's respective stop and/or arrest, is unreasonable. Defendants have produced non-privileged communications about Plaintiffs and the Pasadena bus stop raid in June 2025 generated after the lawsuit was filed in July 2025 as part of expedited discovery. Lai Decl., ¶ 21. That makes sense. Agency personnel may engage in substantial communications about a particular incident only after learning it is the subject of litigation.

### 3.    Defendants' Custodian Limitations Are Inappropriate

*Plaintiffs request that the Court prohibit Defendants from seeking documents from only a narrow set of custodians and work with Plaintiffs to develop a more reasonable approach to appropriate custodians.*

While Defendants may choose to start with certain custodians in their searches, then conduct additional searches if the initial set of custodians proves too narrow, Defendants approach of unilaterally stating up front that they will not seek documents from additional custodians as an absolute matter is inappropriate. *See Reed v. Sci. Games Corp.*, 2021 WL 4806520 (W.D. Wash. Oct. 14, 2021) ("A party does not get to unilaterally rewrite the opposing party's discovery requests and does not get to choose the custodians . . . .") (cleaned up). Such an approach threatens to deprive Plaintiffs of responsive material. At a minimum, Defendants should not be permitted to limit a search for responsive to RFP 5, relating to the decision to conduct intelligence gathering or surveillance for Strike Team Operations at particular locations, to former Chief Bovino. And they should not be permitted to limit a search for documents responsive to RFP 3,

relating to narratives, to centralized mailboxes and arresting agents, since that RFP also seeks template and model narratives that would have originated elsewhere in the chain of command.

### 4.    Defendants Should Produce Transcripts in Their Possession

*The Court should order Defendants to produce transcripts responsive to RFP 15 in their possession, custody, or control.*

Defendants do not dispute that there have been other cases filed in the federal courts involving claims similar to those being made in this case.  To the extent Defendants or their personnel have testified in those proceedings, Plaintiffs should have access to the transcripts. Defendants have objected to producing such transcripts on the ground that they are "public" documents that Plaintiffs can find themselves.  Lai Decl., Ex. E, at 20.  But not all of the transcripts are necessarily public—they may be under seal or subject to a protective order, like the one in this case.  Moreover, obtaining the information from other sources can require time and resources on Plaintiffs' part.  If Defendants have the materials already in their possession, custody, or control, they have an obligation to produce them.  *See Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP,* 256 F.R.D. 678, 682–83 (C.D. Cal. 2009) (granting motion to compel production of information disclosed on responding party's website, "which is open to the public").

### 5.    The Court Should Set Deadlines for the Resolution of Outstanding Issues

*Plaintiffs request that the Court set specific deadlines, **e.g., 1–2 weeks from date of the Court's order**, for the finalization of any methodology for collection of only a subset of videos, I-213s, narratives, and other operational documents.  Otherwise Defendants should be required to produce the entire set of responsive documents.  Any methodology for collection of only a subset of documents should include a proposed timeline for completion of production.*

As set forth above, *supra* at 5–6, 8, there are some areas where the parties may be able to work out their remaining differences, but progress has been unacceptably slow.  Those delays are, in turn, holding up other discovery in the case, including depositions.

With respect to videos, as set forth above, Plaintiffs need additional information in order to engage in a meaningful engagement with Defendants on what body camera footage should be

produced.  Defendants likewise haven't confirmed if they will indeed produce ICE raw footage that did not get posted on ICE's social media.  Lai Decl., Ex. I, at 3.

With respect to any I-213s, narratives, and other operational documents, the parties should be able to come up with a mutually agreeable methodology for sampling, with a certain number of incidents set aside for which Plaintiffs could specifically request documents.  But it took more than a month for Plaintiffs to begin receiving information that could help make this possible.  Lai Decl., ¶ 25.

The parties have tried to make progress without hard deadlines, but they have ended up in a procession of conferences with no end in sight.  More structure is needed to ensure discovery moves apace.

## IV.   DEFENDANTS' CONTENTIONS AND POINTS AND AUTHORITIES

### A.   Factual Background

#### 1.   Plaintiffs' First Amended Complaint and Scope of Case

On July 2, 2025, Plaintiffs filed their First Amended Complaint in the instant case.  *See generally* Dkt. No. 16. Plaintiffs' lawsuit seeks to enjoin Defendants' immigration enforcement operations in the Central District of California, specifically those beginning on June 6, 2025.  *See id*. at ¶¶ 1-2, 5.

#### 2.   UFW's Requests for Production Set One, Defendants' Responses and Objections, and Subsequent Negotiation Efforts

On January 30, 2026, Plaintiff UFW served RFP Set One on Defendants, therein requesting "*[a]ll* recorded video footage RELATING TO 'Operation at Large' in the Central District of California, including but not limited to body-worn camera footage and small unmanned aircraft footage."  Lai Decl., Ex. A (emphasis added).  There are over 11,000 body worn camera videos associated with Operation at Large-Los Angeles ("OAL") alone.  *See* Lai Decl. at ¶ 10.

On March 2, 2026, Defendants timely returned their R&Os to RFP Set One.  *See generally* Lai Decl., Ex. D. CBP agreed to "conduct a reasonable search for" and "produce a random sampling of approximately 500 videos of immigration arrests and apprehensions made by CBP Defendants at OAL operations in the Central District of California between June 6, 2025 and

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO COMPEL DISCOVERY

February 10, 2026." *Id.* at 6.  Additionally, CBP indicated its willingness to "meet and confer with Plaintiffs on a proposal to limit the scope of the Request to specific dates and locations." *Id.* ICE indicated that it did not have video footage responsive to RFPs Set One. *Id.*

Subsequently, the Parties' meet and confer efforts on March 16, March 25, March 27, April 7, May 11, and accompanying email and letter correspondence sought to jointly resolve Defendants' objections to and narrow the scope of RFP Set One to be relevant and proportional to the needs of the instant litigation.  For example, after Plaintiffs rejected a random sampling of 500 videos as insufficiently representative of the lawsuit's challenged immigration enforcement encounters, Defendants instead offered to produce 4,685 videos labeled as capturing an "Arrest/Apprehension."  *See* Lai Decl., Ex. G at 3-4.  Additionally, Defendants repeatedly offered to "conduct a reasonable search for and produce *additional* videos if Plaintiffs find that the current offer of 4,685 arrest/apprehension videos is lacking."  *See, e.g.,* Lai Decl., Ex. H at 24 (emphasis added); Lai Decl., Ex. I at 2 (emphasis added).  In response, on May 12, 2026, Plaintiffs proposed being "able to seek video footage for up to 35 incidents" beyond the 4,685 videos capturing an "Arrest/Apprehension."  *See* Lai Decl., Ex. H at 2-3.  Defendant CBP is willing to agree to provide the additional video footage requested by Plaintiffs for up to 35 incidents requested.

Additionally, while ICE officers were not equipped with body worn cameras during OAL, on April 8, 2026, Defendants agreed to "produce the raw footage of … videos posted on ICE's social media account" that were filmed from July 19, 2025 through January 30, 2026.  *See* Lai Decl., Ex. H at 22-23.

### 3. UFW's Requests for Production Set Two, Defendants' Responses and Objections, and Subsequent Negotiation Efforts

On February 13, 2026, Plaintiff UFW served RFPs Set Two on Defendants, therein issuing 14 RFPs for documents relating to OAL, including forms and reports stored in numerous DHS databases, intelligence briefings, after action summaries and reports, administrative warrants, and information about OAL's apprehensions, arrests, targeting, participating agents and officers, and organizational and command structure.  *See generally* Lai Decl., Ex. B. Plaintiffs also requested "all documents not already produced in this matter reflecting policies, procedures, directives,

guidance, or instructions" applicable to OAL, as well as "all transcripts of court proceedings, evidentiary hearings, and/or depositions for matters filed in Article III courts relating to [OAL] or [OAL] operations nationwide." *Id.* at 8.

On March 16, 2026, Defendants timely returned their R&Os to RFPs Set Two wherein both CBP and ICE expressed their commitment to "conduct[ing] a reasonable search for and produc[ing] responsive, non-privileged documents" in their "possession, custody, or control" "following a meeting and confer and agreement of the parties on the scope of this Request," but declined to produce documents that were publicly available to Plaintiffs. *See generally* Lai Decl., Ex. E. Defendants also provided numerous examples of documents relevant and responsive to RFPs Set Two that have already been produced during limited, expedited discovery. *Id.* In correspondence accompanying the Parties' five meet and confers between March and May 2026, Defendants proposed producing documents responsive to RPFs Set Two that fell within certain date ranges and involved custodians relevant to OAL and Plaintiffs' First Amended Complaint. *See* Lai Decl., Ex. I at 1-2.

### 4. UFW's Requests for Production Set Three, Defendants' Responses and Objections, and Subsequent Negotiation Efforts

On March 2, 2026, Plaintiff UFW served RFPs Set Three on Defendants, therein issuing 9 RFPs for communications relating to OAL. *See generally* Lai Decl., Ex. C. On April 1, 2026, Defendants timely returned their R&Os to RFPs Set Three wherein they again expressed their commitment to "conduct a reasonable search for and produce responsive, non-privileged documents related to this Request" in Defendants' "possession, custody, or control" that fall within date ranges and involve custodians relevant to OAL and Plaintiffs' First Amended Complaint. *See generally* Lai Decl., Ex. F.

During the parties' five meet and confers from March to May 2026 and in accompanying email correspondence, Defendants explained their proposal for producing responsive communications falling within date ranges and involving custodians relevant to OAL and Plaintiffs' First Amended Complaint. For example, Defendants explained that their proposed date ranges corresponded with the beginning and ending of agencies' involvement in OAL, the

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO COMPEL DISCOVERY

issuance and existence of this matter's TRO, and the overall pendency of the conduct challenged in this litigation. *See, e.g.,* Lai Decl., Ex. H at 18-20.  Additionally, Defendants explained that their proposal to limit custodians to mainly those in OAL and other agency leadership positions would ensure that Plaintiffs received responsive materials from the primary sources of requested communications without the need for burdensome pulls from receiving custodians who would merely be in possession of duplicative information.  *See id.*

### B.    Argument

#### 1.    Defendants' Proposals to Narrow Plaintiffs' Overbroad, Disproportionate, and Unduly Burdensome Discovery Requests are Proper

##### (a)    Scope of Discovery

"Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery … and provides that parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." *Cooper v. Cnty. of San Luis Obispo*, 350 F.R.D. 625, 630 (C.D. Cal. 2025). Additionally, "Rule 26(b)(1) requires that discovery be proportional to the needs of the case." *Id*. "Proportionality is determined by a consideration of the following factors: 'the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Id*. (quoting Fed. R. Civ. P. 26(b)(1)).  Additionally, "[d]istrict courts need not condone the use of discovery to engage in 'fishing expeditions.'" *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004).

##### (b)    Defendants' proposals to narrow the scope of Plaintiffs' requested video production (RFP 1) are proper

Defendants submit that their offer to produce all body worn camera videos labeled "Arrest/Apprehension" and provide Plaintiffs an opportunity to request a limited number of additional videos not captured by the "Arrest/Apprehension" tag is easily sufficient to meet their discovery obligations in a manner proportionate to the needs of the case.

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO COMPEL DISCOVERY

Defendants have attempted to, not "unilaterally," but rather, through an extensive meet and confer process, to bring Plaintiff UFWs' RFP Set One in line with the scope of discovery as provided for by the discovery rules in the Federal Rules of Civil Procedure. *See King Tuna, Inc. v. Luen Thai Fishing Ventures, Ltd.*, 2010 WL 11515316, at *1 (C.D. Cal. Apr. 28, 2010) (noting that "the entire purpose [of the meet-and-confer-process] is to force litigants to attempt to resolve, or, at least narrow, the disputed issues) (quoting *Alexander v. FBI*, 186 F.R.D. 197, 199 (D.D.C. 1999)). Specifically, Defendants have offered Plaintiffs numerous proposals to ensure that material produced in response to Plaintiff UFWs' Set One is relevant to this case's claims and defenses, proportional to its needs, and not unduly burdensome. *See* Fed. R. Civ. P. 26(b)(1); *see also* Lai Decl., Ex. D at 7. Plaintiffs inappropriately construe these good faith proposals presented in the context of the Court's meet-and-confer process as "unilateral" decisions to narrow the scope of discovery.

Yet, as written, Plaintiff UFWs' RFP 1 calls for the production of over 11,000 videos associated with Operation at Large, *see* Lai Decl. at ¶ 10, a figure that contemplates thousands of hours of footage. This number is not only clearly disproportionate to the needs of this case, but also tremendously burdensome for Defendants to produce. As such, Defendants' numerous offers to limit the volume of videos produced in a manner that provided Plaintiffs with plentiful access to videos spanning dates, locations, and capturing agents for encounters determined to involve arrests and/or apprehensions would ensure that Plaintiffs have access to a wide universe of videos captured during the immigration enforcement operations in the Central District of California that they challenge in their First Amended Complaint, without burdening Defendants with the consolidation, review, and transfer to DOJ and Plaintiffs of thousands of videos and hours of footage. Furthermore, Defendants' offer to provide Plaintiffs with an opportunity to supplement the videos they receive with additional videos that fill any possible gaps in production (as identified by Plaintiffs) provides a built-in mechanism for correcting any deficiencies that may occur in Defendants' proposed video production process.

Additionally, as part of the Parties' negotiations concerning the appropriate scope of RFP 1, it is inappropriate for Plaintiffs to seek that the Court compel Defendants "to provide

-19-
JOINT STIPULATION RE: PLAINTIFFS' MOTION TO COMPEL DISCOVERY

information necessary to facilitate this process," namely, information about the organization and process of characterizing Defendants' collection of videos from immigration enforcement operations. As a preliminary matter, information underlying Plaintiffs' discovery requests is not within the scope of discovery because it not relevant to any claim or defense at issue in the instant litigation. *See In re Androgel Antitrust Litig. (No. II)*, 2015 WL 2193777, at *3 (N.D. Ga. May 11, 2015). The manner in which Defendants organize and tag their videos is not relevant to Plaintiffs' claims relating to policies and practice giving rise to this matter's challenged immigration enforcement operations. Furthermore, Defendants' organizational and tagging system is a law enforcement technique possibly protected by the law enforcement privilege. *See Doe 1 v. McAleenan*, 2019 WL 4235344, at *2 (N.D. Cal. Sept. 6, 2019). The manner in which immigration enforcement operations are characterized may reveal how Defendants conduct immigration enforcement operations and how they approach certain targets.

Altogether, Defendants proposal for providing over 4,500 videos of arrests and apprehensions will provide Plaintiffs with footage of encounters with both targeted and non-targeted individuals across a broad range of dates and locations, thereby revealing how immigration enforcement operations progressed in the Central District of California. Then, without gaining access to Defendants' broader system for tagging and organization, Plaintiffs will be able to request videos fulfilling specific criteria, which will allow them access to videos beyond those marked as arrests or apprehensions. In this way, Plaintiffs will have access to a wide universe of videos representative of all types of dates, locations, capturing agents and officers, and types of immigration enforcement operations.

          (c)      *Defendants date cut-offs pertain to significant litigation events that bring RFPs Sets Two and Three within the proper scope of general discovery*

Defendants submit their proposal to produce documents in accordance with Defendants' proposed date ranges. Specifically, in RFPs Set Two, Defendants propose narrowing:

- RFP 2 by date from June 6, 2025 through February 10, 2026,
- RFP 3 by date from June 6, 2025 through February 10, 2026,
- RFP 4 by date from June 6, 2025 through February 10, 2026,

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO COMPEL DISCOVERY

- RFP 5 by date from June 6, 2025 through February 10, 2026,

- RFP 6 by date from June 6, 2025 through February 10, 2026,

- RFP 7 by date from June 6, 2025 through February 10, 2026,

- RFP 8 by date from June 6, 2025 through February 10, 2026,

- RFPs 9-12 by date from June 6, 2025 through February 10, 2026,

- RFP 13 by date from June 6, 2025 through February 10, 2026, and

- RFP 14 by date of documents in effect from June 6, 2025 through February 10, 2026.  *See* Lai Decl., Ex. I at 1-2.

In RFPs Set Three, Defendants propose narrowing:

- RFP 16 by date from June 6, 2025 through February 10, 2026,

- RFP 17 by date from June 6, 2025 through February 10, 2026 for subsections (a), (b), (c), and (e); by date for June 2025 for subsection (d);  by date from June 6, 2025 through September 30, 2025 for subsections, (f); and by date from July 2, 2025 through September 8, 2025 for subsection (g),

- RFP 18 by date from May 28, 2025 to June 4, 2025;

- RFP 19 by date from June 6, 2025 through December 16, 2025,

- RFP 20 by date from June 6, 2025 through February 10, 2026,

- RFP 21 by date from June 6, 2025 through February 10, 2026,

- RRP 22 by date for the time period of one day prior to and one week after the encounter for each of the named individuals,

- RFP 23 by date from June 6, 2025 through February 10, 2026, and

- RFP 24 by date from June 6, 2025 through February 10, 2026.  *See* Lai Decl., Exs. F, H.

Defendants' dates in which to pull responsive documents and communications are justified.  First, June 6, 2025 marks the beginning of immigration enforcement operations as Plaintiffs challenge them in their First Amended Complaint.  *See* Dkt. No. 16 at ¶ 5 ("since the federal government began its mass immigration enforcement operations in this District on June 6, 2025…").  This date is therefore relevant to factual allegations underlying Plaintiffs' claims, as

-21-

well as proportional to the needs of the case, namely challenges to immigration enforcement operations beginning on June 6, 2025 in the Central District of California.  Second, February 10, 2026 marks the end of U.S. Border Patrol's involvement in Operation at Large in the Central District of California.  *See* Lai Decl., Ex. H at 18.  This date is therefore also relevant to the factual allegations underlying Plaintiffs' claims and proportional to the claims challenging Operation at Large across Los Angeles.  *See id.*  Third, December 16, 2025 marks the day that CBP's National Incident Coordination Center ceased operations, thus shutting down a significant source of documents and communications contemplated by RFPs Sets Two and Three.  *Id.*  Fourth, July 2, 2025 through September 8, 2025, represent the days in which this matter's TRO was in effect and after which additional guidance was never issued.  *Id.*  Thus, anything beyond these dates would not capture the Plaintiffs request for communications pertaining to the TRO, especially where it did not exist.

Without this narrowing, Plaintiffs would ask the Court to compel Defendants to begin searching for responsive documents beginning from January 5, 2025, months before the beginning of Operation at Large in the Central District of California and the actions challenged in this lawsuit.  They would also have Defendants' search of responsive documents go on in perpetuity, even though the discrete actions they challenge have concluded.  This amounts to a "fishing expedition" that seeks documents responsive to the theories underlying Plaintiffs' claims.  However, this cannot be permitted, as the scope of general discovery must be relevant and proportional to this case, and not unduly burdensome.

          (d)       *Defendants' limitations on custodians in RFPs Sets Two and Three also brings Plaintiffs' request within the proper scope of general discovery*

Defendants request that the Court permit them to produce documents from a narrow set of custodians.  Specifically, Defendants object to Plaintiffs' unconstrained repositories of custodians and request that the Court permit narrowing custodians in accordance with those listed in their R&Os:

In RFPs Set Two, Defendants propose narrowing custodians:

- To Chief Gregory K. Bovino for RFP 5,

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO COMPEL DISCOVERY

- To those custodians who created briefings for RFP 6,

- To incident command leadership for RFPs 7 and 9-12, and

- To incident command leadership and/or their staffers for RFP 13. *See* Lai Decl., Ex. I at 1-2.

In RFPs Set Three, Defendants propose narrowing custodians:

- To sector and field office leadership within AMO, USBP, and OFO (for CBP) and ERO and HSI field office leadership within the Los Angeles Area of Responsibility for RFP 16 (for ICE),

- To CBP headquarters custodians for subsections (a), (b), (d), and (e) and CBP incident command leadership custodians for subsections (c), (f), and (g); and ICE ERO and HSI field office leadership within the Los Angeles Area of Responsibility for RFP 17,

- To the ICC and NICC Commander, Chief of Staff, and Deputy Senior Coordinating Official for RFP 19,

- To CBP headquarters and incident command leadership, and ICE ERO, and HSI leadership for RFP 20, and

- To custodians within the Office of Chief Counsel (CBP) and Office of the Principal Legal Advisor (ICE) for RFP 21. *See* Lai Decl., Ex. F.

These limitations on custodians are justified because they render Plaintiffs' requests proportional to the needs of general discovery by ensuring that it is not "unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C) (listing appropriate limitations on frequency and extent of discovery). Specifically, Defendants' proposed custodians are often in leadership positions, serving as the primary or originating source of documents and communications contemplated by Plaintiffs' RFPs. *See, e.g.,* Lai Decl., Ex. H at 18-20. These individuals were also more likely to have issued "any directions, instructions, directives, or guidance." *Id.* at 19. Additional searches and pulls of documents and communications from more junior personnel who merely received documents and communications from leadership would be unnecessarily duplicative. Altogether, Plaintiffs' reluctance to permit narrowing of custodians renders any

-23-

responsive production too broad and overly duplicative, in violation of Federal Rule of Civil Procedure 26.

**2.     Plaintiffs are not entitled to transcripts that are equally accessible to them and that present no significant factual or legal overlap with the present case.**

*Plaintiffs are not entitled to production of transcripts of court proceedings, evidentiary hearings, and or depositions from other matters relating to Operation at Large in the Central District of California or nationwide (RFP 15).*

Defendants should not be compelled to produce "all transcripts of court proceedings, evidentiary hearings, and/or depositions from matters filed in Article III courts relating to Operation at Large or Operation at Large operations nationwide," *see* Lai Decl., Ex. B at 8, because this RFP is not only disproportionate, overly broad, and irrelevant to the instant case, but also inappropriately contemplates the production of publicly available documents, see Lai Decl., Ex. E at 20, whose production cannot be compelled.

A court will not "order defendants to produce documents that are equally accessible to plaintiff." *Gomez v. McDonald*, 2015 WL 402729, at *4 (E.D. Cal. Jan. 29, 2015) (citing *Quezada v. Lindsey*, 2014 WL 5500800 at *3 (E.D. Cal. Oct. 30, 2014)); *see also Ford v. Wildey*, 2014 WL 4354600, at *4 (E.D. Cal. Sept. 2, 2014) ("Defendant indicates that any such documents are located in his central file for which Plaintiff has equal access. This response complies with Rule 34 of the Federal Rules of Civil Procedure...."). Transcripts of court proceedings arising from other lawsuits relating to Operation at Large or Operation at Large operations nationwide are just as accessible to Plaintiffs as they are to Defendants through docket-sharing platforms such as PACER and LEXIS Courtlink. To the extent that any such transcripts are "under seal or subject to a protective order," this necessarily limits Plaintiffs' access to them.

Furthermore, to the extent that "[c]ourts allow discovery of documents produced in prior litigations or investigations that have 'significant factual and legal overlap' with the present case," Plaintiffs have failed to demonstrate how other litigation related to Operation at Large or Operation at Large nationwide presents any overlap with the instant case. *See Kurin, Inc. v. ICU Med., Inc.*, 2024 WL 5717968, at *3 (C.D. Cal. Nov. 22, 2024) (quoting *Strategic Partners, Inc. v.*

*FIGS, Inc.*, 2020 WL 4354172, at *9 (C.D. Cal. May 18, 2020)). Mere similarities are not "enough to require a *carte blanche* production."  *See, e.g.*, *Rumble, Inc. v. Google LLC*, 2023 WL 3751797, at *7 (N.D. Cal. May 31, 2023) (quoting *Chen v. Ampco Sys. Parking*, 2009 WL 2496729, at *2 (S.D. Cal. Aug. 14, 2009)). Plaintiffs have not explained how the facts and legal issues presented in other Operation at Large litigation are relevant to their claims in the instant case.  Thus, Defendants should not be compelled to documents responsive to RFP 15.

**3.     Plaintiffs do not oppose the Court setting reasonable deadlines for the resolution of the Parties' outstanding discovery issues.**

Where the Court deems necessary, Defendants request that the Court set specific deadlines at least 2 weeks from the date of any order for finalizing any methodology for collecting a subset of videos, documents, and/or communications responsive to Plaintiff UFWs' RFPs Sets One through Three and allow the Parties to negotiate and set a timeline for completion of production.

Defendants are committed to continuing to meet and confer with Plaintiffs to resolve their outstanding discovery disputes and do not believe that a process or timeline imposed by this Court is necessary.  As set forth above, the parties have been diligently negotiating for months and remain hopeful that there are some areas where the Parties may be able to reach consensus.

Where Plaintiffs represent that "progress has been unacceptably slow," Defendants respectfully remind Plaintiffs that this litigation now implicates several arms of the executive branch and numerous agency components.  Each of these entities represent numerous clients who possess different equities in the progress of this litigation, including discovery.  Coordination amongst these stakeholders inevitably requires time, and despite Plaintiffs representations otherwise, Defendants have taken all steps to ensure that discovery requests and other requests for information are dealt with quickly, comprehensively, and in a manner that preserves Defendants' interests.  Thus, an order compelling seeking to accelerate this coordination will face the same logistical constraints that Defendants are already navigating in their efforts to comply in good faith with this matter's general discovery process.

-25-

DATED:  May 26, 2026                        MUNGER, TOLLES & OLSON LLP

                                            By:    /s/ Jacob S. Kreilkamp
                                                JACOB S. KEILKAMP
                                                *Counsel for Stop/Arrest Plaintiffs*

                                            UC IRVINE IMMIGRANT AND RACIAL JUSTICE
                                            SOLIDARITY CLINIC

                                            By:    /s/ Anne Lai
                                                ANNE LAI
                                                *Counsel for Stop/Arrest Plaintiffs*

DATED:  May 26, 2026                        BRETT A. SHUMATE
                                            Assistant Attorney General
                                            Civil Division

                                            DREW C. ENSIGN
                                            Deputy Assistant Attorney General

                                            TIBERIUS DAVIS
                                            SEAN SKEDZIELEWSKI
                                            Counsel to the Assistant Attorney General

                                            NANCY N. SAFAVI
                                            STEPHANIE L. GROFF
                                            JASON K. ZUBATA
                                            ANIELLO DESIMONE
                                            JACOB A. BASHYROV
                                            TOLA MYCZKOWSKA
                                            Trial Attorneys

                                            By:        /s/ Jonathan A. Robbins
                                                JONATHAN A. ROBBINS
                                                Assistant Director
                                                Office of Immigration Litigation
                                                U.S. Department of Justice
                                                P.O. Box 878, Ben Franklin Station
                                                Washington, D.C. 20044
                                                Telephone: (202) 305-8275
                                                Jonathan.A.Robbins@usdoj.gov

                                                *Counsel for Defendants*

-26-
JOINT STIPULATION RE: PLAINTIFFS' MOTION TO COMPEL DISCOVERY

**ATTESTATION OF FILER**

I attest that the other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.


Date:    May 26, 2026                    */s/ Jacob S. Kreilkamp*
                                          JACOB S. KREILKAMP

-27-
JOINT STIPULATION RE: PLAINTIFFS' MOTION TO COMPEL DISCOVERY