# EXHIBIT A

BRETT A. SHUMATE
Assistant Attorney General
Civil Division
DREW C. ENSIGN
Deputy Assistant Attorney General
TIBERIUS DAVIS
SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney
General
JONATHAN A. ROBBINS
Assistant Director
STEPHANIE L. GROFF
JASON K. ZUBATA
ANIELLO DESIMONE
JACOB A. BASHYROV
Trial Attorneys
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-8275
Email: *Jonathan.A.Robbins@usdoj.gov*

BILAL A. ESSAYLI
First Assistant United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive
Litigation
Section
ALEXANDER L. FARRELL (SBN 335008)
PAULINE H. ALARCON (SBN 345785)
Assistant United States Attorneys
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012
Tel: (213) 894-2574 | 3992
E-mail: *Alexander.Farrell@usdoj.gov*
*Pauline.Alarcon@usdoj.gov*

*Counsel for Defendants*

*(Additional counsel listed next page)*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PEDRO VASQUEZ PERDOMO; et al., <br><br> Plaintiffs, <br><br> v. <br><br> MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

*DISCOVERY MATTERS*

Case No.: 2:25-cv-05605-MEMF-SPx

**JOINT STIPULATION REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

Hon. Maame Ewusi-Mensah Frimpong
United States District Judge

Referred to Hon. Sheri Pym
United States Magistrate Judge

56238425.2

STACY TOLCHIN (SBN 217431)
*stacy@tolchinimmigration.com*
LAW OFFICES OF STACY TOLCHIN
776 E. Green St., Suite 210
Pasadena, CA 91101
Tel: (213) 622-7450
Fax: (213) 622-7233

MOHAMMAD TAJSAR (SBN 280152)
*mtajsar@aclusocal.org*
MAYRA JOACHIN (SBN 306065)
*mjoachin@aclusocal.org*
EVA BITRAN (SBN 302081)
*ebitran@aclusocal.org*
DAE KEUN KWON (SBN 313155)
*akwon@aclusocal.org*
STEPHANIE PADILLA (SBN 321568)
*spadilla@aclusocal.org*
DIANA SANCHEZ (SBN 338871)
*dianasanchez@aclusocal.org*
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
P.O. Box 811370
Los Angeles, CA 90081
Telephone: (213) 977-9500

*Counsel for Stop/Arrest Plaintiffs*

MARK ROSENBAUM (SBN 59940)
*mrosenbaum@publiccounsel.org*
REBECCA BROWN (SBN 345805)
*rbrown@publiccounsel.org*
RITU MAHAJAN (SBN 252970)
*rmahajan@publiccounsel.org*
GINA AMATO (SBN 215519)
*gamato@publiccounsel.org*
AMANDA M. SAVAGE (SBN 325996)
*asavage@publiccounsel.org*
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977

*Counsel for All Plaintiffs*

ANNE LAI (SBN 295394)
*alai@law.uci.edu*
UC IRVINE SCHOOL OF LAW
IMMIGRANT AND RACIAL JUSTICE
SOLIDARITY CLINIC
P.O. Box 5479
Irvine, CA 92616-5479
Telephone: (949) 824-9894
*Counsel for Stop/Arrest Plaintiffs*

JACOB S. KREILKAMP (SBN 248210)
*jacob.kreilkamp@mto.com*
DAVID FRY (SBN 189276)
*david.fry@mto.com*
SARA H. WORTH (SBN 341088)
*sara.worth@mto.com*
HENRY D. SHREFFLER (SBN 343388)
*henry.shreffler@mto.com*
LAURA R. PERRY (SBN 342504)
*laura.perry@mto.com*
LAUREN E. KUHN (SBN 343855)
*lauren.kuhn@mto.com*
MAGGIE BUSHELL (SBN 354048)
*maggie.bushell@mto.com*
MUNGER, TOLLES & OLSON LLP
350 S. Grand Ave., 50th Floor
Los Angeles, CA 90071
Tel: 213-683-9100; Fax: 213-683-9100

*Counsel for Stop/Arrest Plaintiffs*

JESSICA K. BANSAL (SBN 277347)
*jessica@ndlon.org*
LAUREN MICHEL WILFONG*
*lwilfong@ndlon.org*
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

*Counsel for Stop/Arrest Plaintiffs*

BREE BERNWANGER (SBN 331731)
*bbernwanger@aclunc.org*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel: 415-621-2493

*Counsel for Stop/Arrest Plaintiffs*

i

# EXHIBIT A

BRISA VELAZQUEZ OATIS
(SBN 339132)
*bvoatis@aclu-sdic.org*
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Tel: 619-398-4199
*Counsel for Stop/Arrest Plaintiffs*

MATTHEW J. CRAIG (SBN 350030)
*mcraig@heckerfink.com*
MACK E. JENKINS (SBN 242101)
*mjenkins@heckerfink.com*
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Telephone: (212) 763-0883
Facsimile: (212) 564-0883
*Counsel for Access/Conditions Plaintiffs*

EDGAR AGUILASOCHO
(SBN 285567)
*eaguilasocho@farmworkerlaw.com*
MARTINEZ AGUILASOCHO LAW,
INC.
900 Truxtun Ave, Suite 300
Bakersfield, CA 93301
Tel: 661-859-1174
*Counsel for Plaintiff United Farm
Workers*

CARL BERGQUIST*
*cbergquist@chirla.org*
COALITION FOR HUMANE
IMMIGRANT RIGHTS
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025
*Counsel for Plaintiff Coalition for
Humane Immigrant Rights*

ALVARO M. HUERTA (SBN 274787)
ahuerta@immdef.org
BRYNNA BOLT (SBN 339378)
bbolt@immdef.org
ALISON STEFFEL (SBN 346370)
asteffel@immdef.org
IMMIGRANT DEFENDERS LAW
CENTER
634 S. Spring St., 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999
Counsel for Plaintiff Immigrant
Defenders Law Center
* Admitted pro hac vice

ii

HYDEE FELDSTEIN SOTO (SBN 106866)
City Attorney
hydee.feldsteinsoto@lacity.org
VALERIE L. FLORES (SBN 138572)
valerie.flores@lacity.org
MICHAEL J. DUNDAS (SBN 226930)
mike.dundas@lacity.org
MARIA LOUISE COUSINEAU (SBN 122280)
maria.cousineau@lacity.org
RANDALL G. SOMMER (SBN 214099)
randall.sommer@lacity.org
SHUBHRA SHIVPURI (SBN 295534)
shubhra.shivpuri@lacity.org
OFFICE OF THE LOS ANGELES CITY ATTORNEY
City Hall 200 North Spring Street
21st Floor
Los Angeles, CA 90012-4130
Tel.: 213-922-8382; Fax: 213-978-7957

*Attorneys for Intervenor
City of Los Angeles*

E. MARTIN ESTRADA (SBN 223802)
martin.estrada@mto.com
DANIEL B. LEVIN (SBN 226044)
daniel.levin@mto.com
JOHN L. SCHWAB (SBN 301386)
john.schwab@mto.com
V. GRACE DAVIS (SBN 336732)
grace.davisfisher@mto.com
V. ROMAN LEAL (SBN 348892)
roman.leal@mto.com
WENDY QIUYU XIAO (SBN 342702)
wendy.xiao@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
50th Floor
Los Angeles, California 90071
Tel.: 213-683-9100; Fax: 213-687-3702

*Attorneys for Intervenors Cities of Los Angeles, Anaheim, Bell Gardens, Beverly Hills, Carpinteria, Culver City, Huntington Park, Long Beach, Lynwood, Montebello, Monterey Park, Oxnard, Paramount, Pico Rivera, Pomona, Santa Ana, Santa Barbara, Santa Monica, South Gate, and West Hollywood*

NICOLE DAVIS TINKHAM (SBN 229592)
ntinkham@counsel.lacounty.gov
LILIANA CAMPOS (SBN 255753)
lcampos@counsel.lacounty.gov
BRIGIT GREESON ALVAREZ (SBN 237301)
bgreesonalvarez@counsel.lacounty.gov
OFFICE OF THE COUNTY COUNSEL
648 Kenneth Hahn Hall of Admin.,
500 West Temple Street
Los Angeles, California 90012-2713
Tel.: 213-808-8736; Fax: 213-633-1915

*Attorneys for Intervenor County of Los Angeles*

MICHELE BEAL BAGNERIS (SBN 115423)
City Attorney
mbagneris@cityofpasadena.net
ARNOLD F. LEE (SBN 278610)
aflee@cityofpasadena.net
ANDREW AARONIAN (SBN 318245)
aaaronian@cityofpasadena.net
OFFICE OF THE CITY ATTORNEY OF PASADENA
100 N Garfield Ave, Rm N-210
Pasadena, CA 91101
Tel.: 626-744-4141; Fax: 626-744-4190

*Attorneys for Intervenor City of Pasadena*

NORMAN L. EISEN*
Norman@democracydefenders.org
STEPHEN A. JONAS (SBN 542005)
Steve@democracydefenders.org
JOSHUA G. KOLB*
Joshua@democracydefenders.org
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave. SE, Suite 15180
Washington, DC 20003
Tel: (202) 594-9958

*Admitted *Pro Hac Vice*

*Attorneys for Intervenor City of Los Angeles*

## I.    <u>PURPOSE</u>

This Order will govern discovery of electronically stored information ("ESI") — as that term is defined below—of merits discovery in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

The production of Documents and ESI by the Parties shall be subject to the provisions of the Stipulated Protective Order ("Protective Order") agreed to among the Parties and entered by this Court. ECF No. 247. Pursuant to the applicable rules and the Protective Order, the production of privileged or work-product protected ESI, documents, information or materials, whether inadvertent or otherwise, is not a waiver of the privilege or protection in the pending case or in any other federal or state proceeding.

## II.    <u>COOPERATION</u>

The parties are aware of the importance the Court places on cooperation and commit to cooperating in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

## III.    <u>LIAISON</u>

The parties will identify liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

## IV.    <u>DEFINITIONS</u>

The term "Action" means *Perdomo Vasquez, et al. v. Noem, et al.*, No. CV 25-05605-MEMF (SPx), filed on June 20, 2025.

- 1 -

The term "Electronically Stored Information" or "ESI" carries its broadest possible meaning consistent with Fed. R. Civ. P. 34(a) and Fed R. Evid. 1001.

The term "Custodial ESI" refers to ESI associated with a particular individual, such as an individual's workplace email account or loose ESI stored in the individual's assigned workplace computer or individual cloud-based storage. Custodial ESI does not include information stored in a repository not associated with a particular individual, such as a shared drive, document storage system, or wiki.

"Hard Copy Discovery" means any document or thing discoverable under Fed. R. Civ. P. 26(b)(1) and Fed. R. Civ. P. 34 that cannot be characterized as ESI.

"Document" carries its broadest possible meaning consistent with Fed. R. Civ. P. 34 and Fed. R. Evid. 1001 and includes both ESI and Hard Copy Discovery.

"Email" means digital messages transmitted via email servers or a cloud based email service such as M365 Outlook, and are defined by a standardized set of structured metadata fields (e.g., To, From, CC, BCC, Subject, Date, Message-ID). Emails are usually packaged individually as MSG files or compiled into PST or EML container files.

"Chats" means sequences of time-stamped messages exchanged on platforms like Microsoft Teams or SMS. Unlike emails, chat data is stored in formats such as RSMF, SMS, JSON, TXT, and CSV.

"Format" means the internal structure of a file, which defines the way it is stored and used.

"Native File(s)" or "Native Format" means ESI that is a file or datum created by a computer-based or cloud-based software (including, by way of example, Microsoft Office, Microsoft Access, video and audio files, *.eml, *.pst, and *.pdf files).

"Non-custodial Data Source" means a system or container that stores ESI, but over which an individual custodian does not organize, manage, or maintain the ESI in the system or container, such as an enterprise system or database.

"Producing Party" means a Party that produces relevant and non-privileged documents within its possession, custody, and control.

"Receiving Party" means a Party to whom documents are produced.

"Metadata" means data (or information) about other data (or information) stored in electronic form. Metadata exists in three main forms (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system; and (iii) user-added/application metadata created or altered by the user or an application during its lifecycle, such as comments, tags, and document properties.

"Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format ("TIFF") is an example of a Static Image.

"Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or paper documents.

"OCR" means the optical character recognition file which is created by technology that converts images of text into machine-readable, editable, and searchable digital text.

"Extracted Text" means the text extracted from a Native File and includes all header, footer, and document body information.

"Structured Data" means data that has been organized into a tabular format with relationships between the different rows and columns, including, but not limited to, Excel spreadsheets, SQL databases, and other relational databases.

## V.   GENERAL PROVISIONS

A.   This Stipulation streamlines ESI production to promote a "just, speedy, and inexpensive determination" of this action, as required by Rule 1 of the Federal Rules of Civil Procedure.

B.   The parties agree to consult and cooperate reasonably as discovery proceeds regarding the collection and production of Hard Copy Discovery and ESI pursuant to this Stipulation.

C.   The Parties have agreed that all electronic materials produced in this action will be exchanged electronically via secure File Transfer Protocol (FTP) or on CD, DVD, flash drive, or hard drive. To the extent the documents are ordinarily maintained by the Producing Party in a form that is electronically searchable, they must be produced in a form that is electronically searchable, i.e, TIFF images with extracted text or in Native format where required by Part 16 of Schedule A (July 2022 Specifications for Production of ESI and Digitized ("Scanned") Images ("Production Specifications"). A Producing Party may not impose additional terms as a condition of downloading or accessing production materials, beyond those provided by this order, the Court's Protective Order, the Federal Rules of Civil Procedure, the Central District of California local rules, and the Court's standing order. To the extent a Producing Party attempts to impose any additional conditions on downloading or accessing produced materials, those terms shall not be binding. Rather, this order, the Court's Protective Order, the Federal Rules of Civil Procedure, the Central District of California local rules, and the Court's standing order govern the confidentiality and treatment of produced materials.

D.   Nothing in this Stipulation or any other document relating to discovery in

this matter shall be construed or interpreted as precluding a Producing Party from performing a responsiveness review to determine if documents captured by search terms are in fact responsive to the requesting Party's request. Further, nothing in this order or any other document relating to discovery in this matter shall be construed or interpreted as requiring the production of all documents captured by captured by searched terms to be negotiated by the parties if that document is—in good faith—deemed not responsive to the requesting Party's request for production by the Producing Party.

E.    This Stipulation shall not enlarge or affect the proper scope of discovery in this Action, nor imply that discovery produced under the terms of this Stipulation is properly discoverable, relevant, or admissible in this Action.

F.    Unless this Court orders otherwise, each Party shall bear the costs of producing its own documents.

G.    Notwithstanding any other provision of this Stipulation, and provided that a copy of the ESI that is subject to preservation in this matter remains accessible and unaltered, or a new copy is created that preserves the ESI—including any metadata (to the extent it exists)—the Parties may:

1.    Move unfiled Documents into files or folders to adhere to an organizational scheme that was created before the Complaint was filed in this matter, provided that doing so does not alter the parent-child relationship (or any other form of unitization) of the Documents. Nothing in this subparagraph prevents the Parties from implementing an organizational scheme that applies only to

- 5 -

Documents not subject to preservation in this matter;

**2.** Copy data from one device to another, or from one location to another.

## VI.  PRESERVATION

The parties have discussed their preservation obligations and needs, and they agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a) The parties will continue to meet and confer to identify the sources and types of relevant ESI they believe should be preserved.

b) Only ESI created, received, or modified on or after January 1, 2025 will be preserved.

c) The parties will exchange a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, *e.g.*, "HR head," "agent," and "marketing manager."  The parties shall add or remove custodians as reasonably necessary.  The parties agree to affirmatively notify all actual or potential custodians of their preservation obligations and to verify that actual and potential custodians have disabled all auto-deletion features on mobile messaging applications, email applications, and other messaging applications (including law enforcement messaging applications) according to the technical requirements and capabilities of the application(s).

d) Preservation and collection obligations under this Order extend to the following:

i) Data and associated images from agents' agency-owned and/or agency-managed [or agency-authorized], phones or recording devices used when conducting immigration operations.

ii)    Any and all metadata associated with agent body camera footage to minimally include date of recording and duration of recording; [1]

iii)    Forensic collections of any and all mobile messaging services (including, but not limited to WhatsApp, Signal, Zello, and Telegram) used by agents on agency-owned and/or agency-managed, [or agency-authorized] phones when conducting immigration operations; and

iv)    All video footage inside and around B-18, which refers to the federal immigration detention facility located at 300 N. Los Angeles Street, Los Angeles, CA 90012, will be preserved in accordance with the Court's April 20, 2026 order (ECF 493).

## VII.    TECHNOLOGY-ASSISTED REVIEW AND ANALYTICS

A producing party may use technology-assisted review ("TAR"), continuous active learning ("CAL"), email threading, other advanced analytic tools, and/or artificial intelligence tools methodologies, to search, filter, cull, review, and produce ESI, subject to (1) notifying the receiving party that it intends to use such tool(s) and disclosing the name of the tool(s), (2) providing a general description of the tool(s) and the method by which the tool(s) will be used.  If a party objects to the method by which the tool(s) will be used, or the use of the tool, the parties shall meet and confer to resolve the dispute.  If the parties cannot agree on usage of the tool or method of use, the objecting party may initiate the Court's process for resolving any disputes regarding the use of such technology.

[The parties agree that artificial intelligence tools shall not be given access to received discovery material designated as "Confidential Information" or "Confidential–Attorneys' Eyes Only Information" in such a way that would violate the Protective Order in this action or result in access to such discovery material by any person or entity not subject to the Protective Order.  The parties further agree that

---

[1] A minimally inclusive list of relevant metadata fields subject to preservation is attached as **Schedule B.**

data produced by another party may not be entered into any publicly accessible Large Language Model (LLM) or AI platform, but may be entered into an artificial intelligence tool deployed as a private instance in a closed environment that does not feed data back into any shared or global environment in accordance with this provision. Should a receiving Party load, import, submit, feed, or otherwise transfer received discovery material into a private instance of a closed AI environment, the Party shall not use such received discovery material to train publicly available models. Deletion of uploaded information will occur upon termination of this case in accordance with the Protective Order.]

[The parties agree that publicly accessible artificial intelligence tools, including but not limited to Large Language Model(s) (LLM), shall not be given access to any received discovery material, which includes deposition related material (transcripts, recordings, etc.) regardless of which party conducted the deposition. The parties further agree that artificial intelligence tools deployed as a private instance in a closed environment that does not feed data back into any shared or global environment shall not be given access to received discovery material designated as "Confidential Information" or "Confidential–Attorneys' Eyes Only Information" in such a way that would violate the Protective Order in this action or result in access to such discovery material by any person or entity not subject to the Protective Order. Should a receiving Party load, import, submit, feed, or otherwise transfer received discovery material into a private instance of a closed AI environment, in compliance with the terms of this Protocol, the Party shall not use such received discovery material to train AI models or otherwise inform or assist other cases or matters. Deletion of and uploaded information will occur upon termination of this case in accordance with the Protective Order.]

## VIII. <u>SEARCH</u>

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer and attempt in good faith to reach an

agreement about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

Search Terms: Each producing party may use search terms to locate potentially responsive documents for culling [after collection]. If the requesting party objects to the sufficiency of the producing party's search terms, the parties agree to meet and confer and determine reasonable modifications to the search terms.

CUSTODIAN AND SEARCH TERM IDENTIFICATION. After the service of any request for production, the Requesting Party and the Producing Party shall meet and confer on custodians, search terms, custodial and non-custodial repositories of ESI at issue, and any other search methodology to be used. The parties shall have an initial exchange of proposed custodians and search terms within a reasonable time of service of any request for production calling for the production of ESI. Following the production of documents, the parties may continue to meet and confer regarding the custodians and search terms as necessary. The parties may also meet and confer on the relevant time periods for documents collected for custodial searches.

C.      EXCHANGE OF SEARCH TERM HITS.  The Requesting Party and the Producing Party shall meet and confer on search terms or search methodology to be used.

## IX.    PRODUCTION AND DATA FORMAT

The format of productions shall comply with the following requirements:

### A.      HARD COPY DOCUMENTS FORMAT

The format of hard copy documents into electronic and machine readable images shall comply with the following requirements:

a)      IMAGE FORMAT.  Documents that exist in hard copy format only shall be scanned and produced as single page black and white Group IV TIFFs, created with a resolution of at least 300 dots per inch (dpi).  If an original document contains color, and the color is necessary to

understand the meaning or content of the document, the document shall be produced as single-page, ***300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image***.

b) OCR TEXT FILES.  A commercially acceptable technology for optical character recognition ("OCR") shall be used for all scanned, hard copy documents.  The filename for the multi-page text file described below in Section IX(G)(4)(iii) shall correspond to the beginning production number of the document.  If a document is redacted, the text files shall not contain the redacted portions of the documents, but should contain the remaining unredacted text.

c) METADATA.  For hardcopy documents, the Parties will work in good faith to produce the metadata and coding fields set forth in Schedule A to the extent such metadata exists (and is relevant to the file type at issue) or can be created and loaded into the Producing Party's ESI management software in the ordinary course and operation of such software. The following information shall be produced in the delimited data file accompanying hard copy documents: (a) BEGDOC#, (b) ENDDOC#, (c) BEGATTACH, (d) ENDATTACH, (e) REDACTED, to the extent a document is tagged as such, (f) CUSTODIAN, and (g) CONFIDENTIALITY.

d) UNITIZING HARD COPY DOCUMENTS. The documents should be unitized based on physical boundaries (*i.e.*, a document per staple, folder, clip, binder, tab, etc.) and be produced in the order in which they are kept in the usual course of business.  The Parties will use reasonable efforts to unitize documents correctly to avoid producing large numbers of documents in single "clumps."

**B.    SHORT MESSAGE COMMUNICATIONS (CHATS)**

Short message communications (*e.g.*, text messages, WhatsApp, Slack, iMessage, Teams, G-Chat, Signal, etc.) will be produced in RSMF format. To the extent RSMF, PST, or HTML is not available, the Parties will meet and confer regarding the appropriate format of collection and production (i.e., screenshot or other manual method) and accompanying metadata considerations, if applicable.

a) TIME FRAME. The complete responsive communication will be produced, separated into 24-hour increments to provide necessary context to the responsive communications.

b) REDACTION OF RSMF. To ensure complete responsive communication will be produced, the producing party may redact messages that contain privileged information or information that is <u>both</u> (i) not responsive, and (ii) highly sensitive and personal (e.g., personal health or family matters). But the reason for the redaction must be clearly stated on the face of the document.

c) If a document is produced in RSMF or in native format, a single-page Bates stamped image slip sheet stating the document has been produced in native format should be provided. Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the parties agree to meet and confer in good faith.

**C.    CULLING**

Each Party will use its best efforts to filter out common system files and application executable files by using a commercially reasonably hash identification

process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.  Additional culling of system file types based on file extension may include, but are not limited to: WINNT, LOGS, DRVS, C++Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), Temporary File (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), and Program Installers.

### D.    DE-DUPLICATION

Each producing party shall de-duplicate ESI on a global level (across all custodians) prior to production.  The producing party shall deduplicate documents using industry-standard hash algorithms (e.g. MD5, SHA-1, or SHA-256 or a combination thereof). With respect to documents processed for ingestion into the Producing Party's ESI management software on or after the approval date of this protocol, the custodians of de-duplicated copies of documents should be included in the database load file in the designated ALL CUSTODIAN list field.

### E.    BACKUP DATA

Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, disaster recovery systems, and other forms of media, to comply with its discovery obligations in the present case.

### F.    IMAGE FORMAT

(1)    All documents covered by Section IX of this Stipulation shall be produced as single page black and white Group IV TIFFs, created with a resolution of at least 300

dots per inch (dpi), unless so excepted elsewhere in this Stipulation. The parties shall produce documents in color where the documents in its original form contained color, *e.g.* charts, graphics, documents containing track changes or highlights, and emails that contain color in the body of the email (*e.g.* email stating "my comments below are in blue below"). Color documents may be produced in .JPG format in lieu of TIFF images; where produced, color JPG files should also be provided with a resolution of at least 300 dpi.  Each TIFF or JPG image shall be branded with sequential production numbers and, each image shall be marked for appropriate confidentiality designations under the terms of the Protective Order entered in this case.  Each TIFF or JPG image filename shall correspond to the Bates number associated with that page.  TIFF or jpg files shall show all text and images that would be visible to a user of the ESI documents.

(2)    PRESENTATIONS.  The parties shall make reasonable efforts to process presentations (*e.g.*, PowerPoint) with hidden slides and speaker's notes unhidden, and to show both the slide and the speaker's notes on the TIFF of jpg image.

(3)    [iMESSAGE, SHORT MESSAGE SERVICE, AND MULTIMEDIA MESSAGING SERVICE MESSAGES. The parties understand and acknowledge that iMessage, Short Message Service (SMS), and Multimedia Messaging Service (MMS) messages may be impractical to collect in a manner that preserves the ESI's underlying metadata. In such instances, the ESI may be collected and produced as a screenshot, exported report, or another available format, as electronic files without extractable text. Metadata will only be provided if available and if it can be automatically extracted and loaded into the Producing Party's ESI management software in the ordinary course and operation of such software.]

- 13 -

(4)    DATABASE LOAD FILES/CROSS-REFERENCE FILES.  A production should be provided with (a) a delimited data file (.dat) using Concordance default delimiters, and (b) an Opticon (Concordance Image) image load file (.opt).

     i.    The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production.

     ii.    The Opticon file should provide the beginning and ending Bates number of each document and the number of pages it comprises.  Each TIFF in a production must be referenced in the corresponding image load file.

     iii.    In addition to the metadata fields identified for production in Appendix 1 below, each .dat file shall include links to multi-page (document level) text files ("Text Path")

(5)    TEXT FILES.  The multi-page text files described above in Section IX(G)(4)(iii) shall include text extracted from ESI with extractable text.  For electronic files without extractable text (e.g. scanned paper documents, PDF files without text, etc.) or documents produced with redactions, the Producing Party shall use optical character recognition software (OCR) to generate text for the document.  OCR generated text shall be provided for all documents without extractable text in the original Native file unless the document contains notes, drawings or is otherwise not easily convertible into a searchable format.  The filename for the multi-page text file shall correspond to the beginning production number of the document.

(6)    NATIVE FILES.  Any file produced in Native or RSMF format should be produced with a link in the NativeLink field, along with extracted full text and applicable metadata fields set forth in Appendix 1.  Any file produced in Native or RSMF format should be named to match the beginning Bates number of their corresponding entries in the database load files.  Additionally, every file produced

- 14 -

Natively or in RSMF format should be accompanied by a Bates-stamped and confidentiality-stamped TIFF placeholder indicating the document was provided in Native format.  Only the files discussed below may be produced in Native format unless both parties agree otherwise in writing.

i.      SPREADSHEETS.  TIFF or JPG images of spreadsheets should not be produced unless redactions are needed that cannot be implemented on the Native file directly.

ii.      VIDEO AND AUDIO FILES.  Audio and Video files shall be produced in Native format, with TIFF placeholders and available metadata provided in database load files, unless the audio or video files contain privileged material that cannot be redacted in Native format.  Should Audio and Video files containing privileged material that cannot be redacted in Native format be requested by the Receiving Party, the Parties shall meet and confer on the limitations of producing said Audio and Video files.

iii.      EXCEPTIONS.  For any file produced that cannot be processed by standard ESI processing tools due to document family relationships, the Producing Party shall provide a placeholder image, a Bates number and a confidentiality designation, in addition to associated metadata. The parties agree to produce hyperlinked documents based on the agreed methods for identifying responsive documents with associated metadata sufficient to associate the email or document with the linked item. If particular non-produced hyperlinked documents or cloud attachments are requested by the Receiving Party with an explanation of the request, the Parties will meet and confer on requests for additional hyperlinked material. The parties agree that such requests will not be unreasonably denied absent a showing of undue burden by the producing party.

iv.    REQUEST(S) FOR ADDITIONAL NATIVE FILES.  If good cause exists to request production of specified files in Native format, other than those specifically set forth above, the requesting party may request such production and provide an explanation of the need for Native file review. The parties agree that such a request shall not be unreasonably denied.  Any Native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields, as well as a Bates-stamped and confidentiality-stamped TIFF placeholder.  Any dispute regarding the production of documents in Native format shall be resolved by the provisions set forth in the local rules and the Court's standing order.

(7)    METADATA FIELDS AND PROCESSING.  The parties will work in good faith to produce the metadata and coding fields set forth in Schedule A to the extent such metadata exists, and is relevant to the file type at issue, and can be automatically extracted and loaded into the Producing Party's ESI management software in the ordinary course and operations of such software.

**H.    FORMAT & FOLDER STRUCTURE**.

The production data may be exchanged between counsel in encrypted form (e.g. TrueCrypt, password-protected Zip, or RAR files).  Productions of 10GB or less may be made via FTP or secure server; larger productions may be made on hard media (e.g., hard drives, DVD, etc.).  Each production shall be provided in the following folder structure:

1.    Top-level folder: This folder will indicate the production volume;

2.    Sub-folders: Subfolders should be organized as follows:

i.    IMAGES: This folder will contain multiple sub-folders with ONLY TIFF (or .jpg) files in them.  No other type of file should reside in the "IMAGES" folder.  Sub-folders shall not contain more than 10,000 images per folder.

- 16 -

ii.     TEXT: This folder will contain the full text files in UNICODE, UTF8 or ANSI format in a separate folder labeled TEXT.  Sub-folders shall not contain more than 10,000 text files per folder.

iii.    DATA: This folder will contain load files compatible with Concordance and Opticon.

iv.     NATIVES: This folder will contain Native files that the parties agree to produce during the course of this litigation.  Sub-folders shall not contain more than 2,000 Native files per folder.

## X.      PRIVILEGE LOGS

A.      Consistent with the Federal Rules of Civil Procedure, a party withholding or redacting any responsive document on the grounds of privilege, immunity, or any similar claim shall provide to the Receiving Party a privilege log.

B.      The following privileged items need not be included in the privilege log: (1) communications undertaken in compliance with the duty to preserve information (including, but not limited to, litigation hold letters) that are protected from disclosure under Fed. R. Civ. P. 26(b)(3)(A) and (B); (2) communications or documents relating to litigating this matter post-complaint; and (3) communications between any party and counsel for that party, whether in-house counsel (including agency counsel) or outside counsel (including the Department of Justice), if the communications were created after the date when the original Complaint in this case was filed and were made entirely for the purpose of seeking or receiving legal advice. The above-mentioned exceptions are made without prejudice to any Party's ability and right to assert that materials are discoverable and not privileged or otherwise protected.

C.      For all other documents withheld on the basis of privilege, a statutory or regulatory limitation on disclosure, or any other applicable basis under law, the

- 17 -

parties agree to furnish logs which comply with the legal requirements under federal law, but at a minimum will include the following information:

1.    A unique privilege log identifier.

2.    The date of document, if available.  For emails this should be the sent date of the document and for other ESI this should be the last-modified or create date of the document to the extent such metadata exists (and is relevant to the file type at issue), and can be automatically extracted and loaded into the Producing Party's ESI management software in the ordinary course and operation of such software.

3.    The Author of the document, if available.  For emails this should be populated with the metadata extracted from the "Email From" field associated with the file.  For other ESI, this should be populated with the metadata extracted from the "Author" field to the extent such metadata exists (and is relevant to the file type at issue), and can be automatically extracted and loaded into the Producing Party's ESI management software in the ordinary course and operation of such software; if such field contains generic information such as the company name.

4.    Recipient(s) of the document where reasonably ascertainable.  For emails this should be populated with the metadata extracted from the "Email To" field associated with the file.  Separate columns should be included for the metadata extracted from the "Email CC" and "Email BCC" fields, where populated.

5.    A description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity.

6.    The type of privilege being asserted: e.g., (a) AC for Attorney/Client, (b) WP for Attorney Work Product, (c) LEP for Law Enforcement Privilege, and (d) DP for Deliberative Process Privilege.

- 18 -

7. For redacted documents, the Bates numbers corresponding to the first and last page of any document redacted.

D. The party providing the Privilege Log shall keep, maintain, and provide to the party receiving the Privilege Log, a list of attorneys with their respective component office (e.g., CBP Office of Chief Counsel) for any attorney named in any Privilege Log or any document that is withheld or redacted on the basis of attorney-client privilege or attorney work product doctrine protections. Nothing in this paragraph shall prevent the party receiving the Privilege Log from otherwise requesting information about author(s) and recipient(s), or subject matter, in order to reasonably assess the basis or bases for withholding or redacting a document. The party providing the Privilege Log retains its ability to object to any such request. Where a party or non-party determines in good faith that any of the privilege log disclosures called for by this paragraph would be privileged themselves, the party or non-party shall disclose as much non-privileged information called for by this paragraph as possible.

## XI. MODIFICATION

This Stipulated Order may be modified by a written agreement of the parties or by the Court for good cause shown. Nothing in this Stipulation shall be construed to prohibit the undersigned parties from agreeing to modify any provision of this Stipulation or seeking relief from the Court. Nor shall anything in this Stipulation or any party's compliance be construed as a waiver of any party's rights under the Federal Rules of Civil Procedure. Nor shall anything in this Stipulation be interpreted to require disclosure of information that is not relevant to the claims or defenses in this case or that is protected by any applicable privilege. Nor shall anything in this Stipulation be construed to waive any objections as to the production, discoverability, proportionality, technical impracticality, or the protected status of ESI.

**IT IS SO STIPULATED**, through Counsel of Record.

DATED: February __, 2026        U.S. DEPARTMENT OF JUSTICE
                                CIVIL DIVISION
                                OFFICE OF IMMIGRATION LITIGATION


                                By: _____
                                        JONATHAN A. ROBBINS
                                        *Counsel for Defendants*

DATED:  February __, 2026        MUNGER, TOLLES & OLSON LLP


By:    _/s/ Jacob S. Kreilkamp_
       JACOB S. KREILKAMP
       *Counsel for Stop/Arrest Plaintiffs*

DATED:  February __, 2026        UC IRVINE IMMIGRANT AND RACIAL JUSTICE SOLIDARITY CLINIC


By:    _/s/ Anne Lai_
       ANNE LAI
       *Counsel for Stop/Arrest Plaintiffs*

DATED:  February __, 2026        HECKER FINK LLP


By:    _/s/ DRAFT_
       MATTHEW CRAIG
       *Counsel for Access/Detention Plaintiffs*

DATED:  February __, 2026        MUNGER, TOLLES & OLSON LLP


By:    _/s/ E. Martin Estrada_
       E. MARTIN ESTRADA

       *Counsel for Intervenors Cities of Los Angeles, Anaheim, Bell Gardens, Beverly Hills, Carpinteria, Culver City, Huntington Park, Long Beach, Lynwood, Montebello, Monterey Park, Oxnard, Paramount, Pico Rivera, Pomona, Santa Ana, Santa Barbara, Santa Monica, South Gate, and West Hollywood*

- 21 -

*/s/*
HYDEE FELDSTEIN SOTO
City Attorney

OFFICE OF THE LOS ANGELES CITY ATTORNEY

*Attorney for Intervenor*
*City of Los Angeles*

*/s/*
BRIGIT GREESON ALVAREZ
Deputy County Counsel
OFFICE OF THE COUNTY COUNSEL

*Attorney for Intervenor*
*County of Los Angeles*

*/s/*
MICHELE BEAL BAGNERIS
City Attorney
OFFICE OF THE CITY ATTORNEY OF PASADENA

*Attorney for Intervenor*
*City of Pasadena*

- 22 -

## SCHEDULE A

## Production Fields[2]

| FIELD | EMAIL ESI | OTHER ESI | NON-ESI |
|---|---|---|---|
| PRODVOL | Production Volume Identifier (*e.g.*, DEF001) | Production Volume Identifier (*e.g.*, DEF001) | Production Volume Identifier (*e.g.*, DEF001) |
| PRIMARY CUSTODIAN | The name of the primary custodian (or non-custodial source) who had an identical copy of the document. | The name of the primary custodian (or non-custodial source) who had an identical copy of the document. | The name of the primary custodian (or non-custodial source) who had an identical copy of the document. |
| ALL CUSTODIANS | The name of all custodians other than the primary custodian who had an identical copy of the document. | The name of all custodians other than the primary custodian who had an identical copy of the document. | The name of all custodians other than the primary custodian who had an identical copy of the document. |
| PRODBEG | Number endorsed on first page of document. | Number endorsed on first page of document. | Number endorsed on first page of document. |
| PRODEND | Number endorsed on last page of document. | Number endorsed on last page of document. | Number endorsed on last page of document. |

[2] [Defendants will retain the "PRIMARY CUSTODIAN" and "ALL CUSTODIANS" production fields (Schedule A), which are based on Civil Division's 2022 Specifications for Protections of ESI. However, while the agency is preserving this data, when this data will be produced, the actual custodian's names and any duplicated custodians' names (if applicable) will appear in the "ALL PATH" fields and/or the "DEDUPCUSTODIAN FILE PATH" field. Plaintiffs will nonetheless receive the same underlying custodian and path information that would ordinarily be reflected in the Primary Custodian, All Custodians, and Dupecustodian fields in the Dupecustodian File Path and/or Allpath fields. Accordingly, while there may be slight technical variations in how the information is presented in the productions, the substantive data provided to Plaintiffs will be the same as the preserved data.]

| FIELD | EMAIL ESI | OTHER ESI | NON-ESI |
|---|---|---|---|
| PRODBEGFAMILY | Number endorsed on first page of first document in a family (*i.e.*, documents and all attachments thereto). | Number endorsed on first page of first document in a family (*i.e.*, documents and all attachments thereto). | Number endorsed on first page of first document in a family (*i.e.*, documents and all attachments thereto). |
| PRODENDFAMILY | Number endorsed on last page of last document in a family (*i.e.*, documents and all attachments thereto). | Number endorsed on last page of last document in a family (*i.e.*, documents and all attachments thereto). | Number endorsed on last page of last document in a family (*i.e.*, documents and all attachments thereto). |
| CONFDESIGNATION | The confidential designation endorsed on the document. | The confidential designation endorsed on the document. | The confidential designation endorsed on the document. |
| AUTHOR | N/A | If available, the person(s) who created, wrote, reviewed, signed, or approved the document. | If available, the person(s) who created, wrote, reviewed, signed, or approved the document. |
| SUBJECT | Verbatim subject or re: line, as stated in the e-mail. | If available, the title or subject line of the document | N/A |
| FROM | The sender of the e-mail | N/A | N/A |
| TO | All information contained in the "To" field of the e-mail. | N/A | N/A |
| CC | All information contained in the "CC" field of the e-mail. | N/A | N/A |

- 24 -

| FIELD | EMAIL ESI | OTHER ESI | NON-ESI |
|---|---|---|---|
| BCC | All information contained in the "BCC" field of the e-mail, to the extent it is available from collected email (*e.g.*, a regular recipient of an email will not see names of anyone who is BCC'd) | N/A | N/A |
| DATE/TIME SENT | Date and time the E-mail was sent, including month, date and year and hour, minute, second | N/A | N/A |
| DATE/TIME CREATED | N/A | Date the non-email document was created, for non-e-mail electronic documents, including the month, date and year and hour, minute, second. | N/A |
| DATE/TIME MODIFIED | N/A | Date the document was last modified, for non-e-mail electronic documents, including the month, date and year and hour, minute, second (in Pacific Time). | N/A |
| FILENAME | N/A | Original file name. | N/A |

- 25 -

| FIELD | EMAIL ESI | OTHER ESI | NON-ESI |
|---|---|---|---|
| FILEEXT | File Extension of the Native File (*e.g.*, .msg, .doc). | File Extension of the Native File (*e.g.,* .msg, .doc). | N/A |
| TEXTPATH | File path on production media to text file containing full text of the e-mail. | File path on production media to text file containing full text of the document. | N/A |
| NATIVELINK | The full path to Native File on production media if producing in Native. | The full path to Native File on production media if producing in Native. | N/A |
| FILEPATH | Original folder name within the e-mail account (*e.g.*, Outlook subfolder). | Original folder name where the electronic file resided. | N/A |
| RECORDTYPE | Describes the application associated with the document. | Describes the application associated with the document. | N/A |
| DOCTYPE | Whether the document is an email, email attachment, eDoc, eDoc attachment, or hardcopy document. | Whether the document is an email, email attachment, eDoc, eDoc attachment, or hardcopy document. | Whether the document is an email, email attachment, eDoc, eDoc attachment, or hardcopy document. |
| NUMATTACH | The number of attachments to a particular email. | The number of attachments to a particular loose ESI document. | N/A |
| HASH VALUE | Hash Value | Hash Value | N/A |

- 26 -

# SCHEDULE B

## Audio-Video Production Fields[3]

| FIELD | DESCRIPTION | FILE TYPES |
|---|---|---|
| Exif Date/Time | Date/Time of image or video | Photographs/Video |
| Exif Make | Manufacturer of phone, camera or camcorder | Photographs/Video |
| Exif Model | Model name or number of phone, camera or camcorder | Photographs/Video |
| Exif Orientation | Orientation of image or video | Photographs/Video |
| Exif Date/Time Digitized | Date and time when the image was stored as digital data | Photographs/Video |
| Exif Date/Time Original | Date and time when the original image data was generated | Photographs/Video |
| Exif Image Height | Height of the image | Photographs/Video |
| Exif Image Width | Width of the image | Photographs/Video |
| Exif Flash | Status of flash | Photographs/Video |
| Exif Lens Make | Manufacturer of lens used to capture image or video | Photographs/Video |
| Exif Lens Model | Model name or number of lens used to capture image or video | Photographs/Video |
| GPS Altitude | GEOMETRIC altitude/height of image or video | Photographs/Video |
| GPS Altitude Ref | References height in terms of AMSL or sea level | Photographs/Video |
| GPS Dest Bearing | Compass direction from current position to intended destination | Photographs/Video |
| GPS Img Direction | Direction of image when captured | Photographs/Video |
| GPS Latitude | Precise geographic location of the angular distance of a place north or south on the earth's equator | Photographs/Video |
| GPS Latitude Ref | Indicates whether the latitude is north or south | Photographs/Video |

---

[3] The parties agree that certain metadata listed therein is not implicated by the current litigation and, in some instances, may not exist for a given document or data source. To the extent such metadata exists and is maintained by the parties, the parties will produce it consistent with the production specifications listed in Schedule A.

- 27 -

| | | |
|---|---|---|
| GPS Longitude | Precise geographic location of the angular distance of a place east or west of the meridian at Greenwich, England, or west of the standard meridian of a celestial object, usually expressed in degrees and minutes | Photographs/Video |
| GPS Longitude Ref | Indicates whether the longitude is east or west | Photographs/Video |
| GPS Speed | Speed of distance traveled | Photographs/Video |
| GPS Speed Ref | Kilometers or miles per hour | Photographs/Video |
| Image Orientation | Orientation of image | Photographs/Video |
| File Accessed | Date/Time file was opened for reading and writing | Photographs/Video |
| File Created | Date/Time file was created and saved for the first time | Photographs/Video |
| File Modified | Date/Time contents of file were changed | Photographs/Video |
| GPS Date Stamp | GEOMETRIC capture of date of image or video | Photographs/Video |
| GPS Time-Stamp | GEOMETRIC capture of time of image or video | Photographs/Video |
| AXON Date Recorded | Date of live recording in UTC | Video |
| AXON Duration of Recording | Total length of original video recording | Video |

## ATTESTATION OF FILER

I attest that the other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

DATED:  February __, 2026          MUNGER, TOLLES & OLSON LLP


By:    ___/s/ Jacob S. Kreilkamp___
       JACOB S. KREILKAMP
       *Counsel for Stop/Arrest Plaintiffs*

- 29 -