STACY TOLCHIN (SBN 217431)
*stacy@tolchinimmigration.com*
LAW OFFICES OF STACY TOLCHIN
776 E. Green St., Suite 210
Pasadena, CA 91101
Tel: 213-622-7450; Fax: 213-622-7233

MOHAMMAD TAJSAR (SBN 280152)
*mtajsar@aclusocal.org*
MAYRA JOACHIN (SBN 306065)
*mjoachin@aclusocal.org*
EVA BITRÁN (SBN 302081)
*ebitran@aclusocal.org*
DAE KEUN KWON (SBN 313155)
*akwon@aclusocal.org*
STEPHANIE PADILLA (SBN 321568)
*spadilla@aclusocal.org*
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
P.O. Box 811370
Los Angeles, CA 90017-4022
Tel: 213-977-5232; Fax: 213-201-7878

*Counsel for Stop/Arrest Plaintiffs*

MARK ROSENBAUM (SBN 59940)
*mrosenbaum@publiccounsel.org*
REBECCA BROWN (SBN 345805)
*rbrown@publiccounsel.org*
RITU MAHAJAN (SBN 252970)
*rmahajan@publiccounsel.org*
GINA AMATO (SBN 215519)
*gamato@publiccounsel.org*
AMANDA MANGASER SAVAGE
(SBN 325996)
*asavage@publiccounsel.org*
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Counsel for All Plaintiffs*

ANNE LAI (SBN 295394)
*alai@law.uci.edu*
UC IRVINE SCHOOL OF LAW
IMMIGRANT AND RACIAL JUSTICE
SOLIDARITY CLINIC
P.O. Box 5479
Irvine, CA 92616-5479
Tel: 949-824-9894; Fax: 949-824-2747

(*Additional counsel listed on next page*)

*Counsel for Stop/Arrest Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Pedro VASQUEZ PERDOMO; Carlos Alexander OSORTO; and Isaac VILLEGAS MOLINA; Jorge HERNANDEZ VIRAMONTES; Jason Brian GAVIDIA; LOS ANGELES WORKER CENTER NETWORK; UNITED FARM WORKERS; COALITION FOR HUMANE IMMIGRANT RIGHTS; IMMIGRANT DEFENDERS LAW CENTER, <br><br> Plaintiffs, <br><br> v. <br><br> Markwayne MULLIN, in his official capacity as Secretary, Department of Homeland Security; David VENTURELLA, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; Rodney S. SCOTT, in his official capacity as | Case No.: 2:25-cv-05605-MEMF-SP <br><br> **NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION RE: WARRANTLESS ARRESTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Hon. Maame Ewusi-Mensah Frimpong <br><br> Date:  August 13, 2026 <br> Time:  10:00 a.m. <br> Place:  Courtroom 8B |

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION RE: WARRANTLESS ARRESTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Commissioner, U.S. Customs and Border Patrol; Michael W. BANKS, in his official capacity as Chief of U.S. Border Patrol; Kash PATEL, in his official capacity as Director, Federal Bureau of Investigation; Todd BLANCHE, in his official capacity as Acting U.S. Attorney General; Thomas GILES, in his official capacity as Acting Field Office Director for Los Angeles, U.S. Immigration and Customs Enforcement; Dean T. SORENSON, Special Agent in Charge for Los Angeles, Homeland Security Investigations, U.S. Immigration and Customs Enforcement; Daniel PARRA, in his official capacity as Acting Chief Patrol Agent for El Centro Sector of the U.S. Border Patrol; Justin DE LA TORRE, in his official capacity as Acting Chief Patrol Agent, San Diego Sector of the U.S. Border Patrol; Akil DAVIS, in his official capacity as Assistant Director in Charge, Los Angeles Office, Federal Bureau of Investigation; Bilal A. ESSAYLI, in his official capacity as First Assistant U.S. Attorney for the Central District of California,

     Defendants.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION RE: WARRANTLESS ARRESTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

JACOB S. KREILKAMP (SBN 248210)
*jacob.kreilkamp@mto.com*
DAVID FRY (SBN 189276)
*david.fry@mto.com*
ADAM B. WEISS (SBN 296381)
*adam.wess@mto.com*
SARA H. WORTH (SBN 341088)
*sara.worth@mto.com*
HENRY D. SHREFFLER (SBN 343388)
*henry.shreffler@mto.com*
LAURA R. PERRY STONE (SBN 342504)
*laura.perrystone@mto.com*
LAUREN E. KUHN (SBN 343855)
*lauren.kuhn@mto.com*
MAGGIE BUSHELL (SBN 354048)
*maggie.bushell@mto.com*
ANGELA URIBE (SBN 353579)
*angela.uribe@mto.com*
MUNGER, TOLLES & OLSON LLP
350 S. Grand Ave., 50th Floor
Los Angeles, CA 90071
Tel: 213-683-9100; Fax: 213-683-9100

*Counsel for Stop/Arrest Plaintiffs*

BREE BERNWANGER (SBN 331731)
*bbernwanger@aclunc.org*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel: 415-621-2493

*Counsel for Stop/Arrest Plaintiffs*

BRISA VELAZQUEZ OATIS
(SBN 339132)
*bvoatis@aclu-sdic.org*
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Tel: 619-398-4199

*Counsel for Stop/Arrest Plaintiffs*

EDGAR AGUILASOCHO (SBN 285567)
*eaguilasocho@farmworkerlaw.com*
MARTÍNEZ AGUILASOCHO LAW, INC.
900 Truxtun Ave, Suite 300
Bakersfield, CA 93301
Tel: 661-859-1174

*Counsel for Plaintiff United Farm Workers*

JESSICA KARP BANSAL (SBN 277347)
*Jessica@ndlon.org*
LAUREN MICHEL WILFONG*
*lwilfong@ndlon.org*
JIA FU*
*jennifer@ndlon.org*
NATIONAL DAY LABORER ORGANIZING
NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Tel: 626-214-5689

*Counsel for Stop/Arrest Plaintiffs*

MATTHEW J. CRAIG (SBN 350030)
*mcraig@heckerfink.com*
MACK E. JENKINS (SBN 242101)
*mjenkins@heckerfink.com*
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Tel: 212-763-0883; Fax: 212-564-0883

*Counsel for Access/Conditions Plaintiffs*

CARL BERGQUIST*
*cbergquist@chirla.org*
COALITION FOR HUMANE IMMIGRANT
RIGHTS
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

*Counsel for Plaintiff Coalition for Humane
Immigrant Rights*

ALVARO M. HUERTA (SBN 274787)
*ahuerta@immdef.org*
BRYNNA BOLT (SBN 339378)
*bbolt@immdef.org*
ALISON STEFFEL (SBN 346370)
*asteffel@immdef.org*
IMMIGRANT DEFENDERS LAW CENTER
634 S. Spring St., 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

*Counsel for Plaintiff Immigrant
Defenders Law Center*

* Admitted pro hac vice

Case No. 2:25-cv-05605-MEMF-SP

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION RE: WARRANTLESS ARRESTS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on August 13, 2026 at 10:00 am, before the Honorable Maame Ewushi-Mensah Frimpong, in Courtroom 8B, Eighth Floor, 250 West First Street, Los Angeles, CA 90012, Plaintiffs Los Angeles Worker Center Network, United Farm Workers, and Coalition for Humane Immigrant Rights (collectively, "Warrantless Arrest Plaintiffs" or "Plaintiffs") will, and hereby do, respectfully move the court for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure and Local Civil Rule 65-1 of the U.S. District Court for the Central District of California.

Warrantless Arrest Plaintiffs respectfully request that the Court grant a preliminary injunction that enjoins Defendants from (a) enforcing their policy and practice of making warrantless civil immigration arrests in this District without a pre-arrest individualized determination by the arresting agent or officer of probable cause that the person being arrested is likely to escape before a warrant can be obtained, as required by 8 U.S.C. 1357(a)(2) and 8 C.F.R. § 287.8(c)(2); (b) relying on unlawful presence alone in determining whether an individual is likely to escape; and (c) relying on the escape risk standard or analytical approach set forth in the five-page memorandum from former Acting Director of ICE, Todd Lyons, Senior Off. Performing Duties of Dir., Re: Civil Immigration Arrest Authority: Administrative Arrest Warrants and Warrantless Arrests (Jan. 28, 2026). Plaintiffs further request that the Court impose certain documentation requirements to ensure adherence to the preliminary injunction.

Plaintiffs' Motion is based on this Notice of Motion and Motion for Preliminary Injunction, the accompanying Memorandum of Points and Authorities, the declarations and all exhibits in support of the same, including attachments, all pleadings and other papers on file in this action, and all oral and documentary evidence that may be presented at the time of the hearing of this Motion.

DATED: June 8, 2026

By:    */s/ Jacob S. Kreilkamp*

Jacob S. Kreilkamp
*Counsel for Stop/Arrest Plaintiffs*

Case No. 2:25-cv-05605-MEMF-SP

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

I.     INTRODUCTION....................................................................................................................1

II.    FACTUAL BACKGROUND ...................................................................................................2

     A.    Defendants are conducting non-targeted mass immigration arrests...........................2

     B.    Defendants are conducting warrantless arrests without any meaningful
escape risk assessment. ...........................................................................................5

     C.    Defendants' unlawful policy is ongoing and officially sanctioned...........................8

     D.    Organizational Plaintiffs' members are suffering ongoing irreparable harm.............9

III.   LEGAL STANDARD .............................................................................................................10

IV.    ARGUMENT ..........................................................................................................................11

     A.    Plaintiffs have standing for their warrantless arrest claims....................................11

     B.    Plaintiffs are likely to succeed on the merits of their warrantless arrest
claims. ...................................................................................................................13

          1.    8 U.S.C. § 1357(a) requires Defendants to make an individualized
determination of likelihood to escape before effecting a warrantless
arrest. ........................................................................................................13

          2.    Defendants have a policy of effecting warrantless arrests without
probable cause of likelihood of escape. ......................................................15

          3.    Defendants continue to sanction their warrantless arrest practice. ..............16

     C.    Without preliminary relief, Plaintiffs will suffer irreparable harm..........................17

     D.    The balance of the equities tips in Plaintiffs' favor and an injunction is in
the public interest. ..................................................................................................18

V.     CONCLUSION .......................................................................................................................19

CERTIFICATE OF SERVICE.............................................................................................................21

CERTIFICATE OF COMPLIANCE ...................................................................................................22

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION RE: WARRANTLESS ARRESTS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*All. for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011)................................................................................................10

*Araujo v. United States*,
301 F. Supp. 2d 1095 (N.D. Cal. 2004) ................................................................................14

*Arevalo v. Hennessy*,
882 F.3d 763 (9th Cir. 2018)................................................................................................17

*Arizona v. United States*,
567 U.S. 387 (2012) ................................................................................................12, 13

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001)................................................................................................12

*Au Yi Lau v. U.S. Immigr. & Naturalization Serv.*,
445 F.2d 217 (D.C. Cir. 1971) ................................................................................13

*Barker v. Wingo*,
407 U.S. 514 (1972) ................................................................................................18

*California Rest. Ass'n v. City of Berkeley*,
89 F.4th 1094 (9th Cir. 2024)................................................................................................12

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ................................................................................................11

*Cnty. of Riverside v. McLaughlin*,
500 U.S. 44 (1991) ................................................................................................13

*Columbia Basin Apartment Ass'n v. City of Pasco*,
268 F.3d 791 (9th Cir. 2001)................................................................................................13

*Crowe v. Cnty. of San Diego*,
608 F.3d 406 (9th Cir. 2010)................................................................................................14

*Does I Through III v. D.C.*,
216 F.R.D. 5 (D.D.C. 2003) ................................................................................12

*Drakes Bay Oyster Co. v. Jewell*,
747 F.3d 1073 (9th Cir. 2014)................................................................................................18

*Escobar Molina v. U.S. Dep't of Homeland Sec.*,
811 F. Supp. 3d 1 (D.D.C. 2025) ................................................................................ passim

*Escobar Molina v. U.S. Dep't of Homeland Sec.*,
No. 25-3417 (BAH), 2026 WL 1256234 (D.D.C. May 7, 2026)................................16, 17

MOTION FOR PRELIMINARY INJUNCTION RE: WARRANTLESS ARRESTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Garcia v. City of Los Angeles*,
611 F. Supp. 3d 941 (C.D. Cal. 2020)..................................................................................13

*Hernandez v. Sessions*,
872 F.3d 976 (9th Cir. 2017)...............................................................................................19

*Hunt v. Wash. St. Apple Advert. Comm'n*,
432 U.S. 333 (1977) ......................................................................................................11, 13

*Hussen v. Noem*,
No. 26-CV-324, 2026 WL 657936 (D. Minn. Mar. 9, 2026).................................................14

*Immigrant Defs. L. Ctr. v. Noem*,
145 F.4th 972 (9th Cir. 2025)...............................................................................................11

*Jorgensen v. Cassiday*,
320 F.3d 906 (9th Cir. 2003)................................................................................................19

*LaDuke v. Nelson*,
762 F.2d 1318 (9th Cir. 1985)..............................................................................................19

*Los Angeles Press Club v. Noem*,
171 F.4th 1179 (9th Cir. 2026)............................................................................................11

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ............................................................................................................11

*M-J-M-A- v. Hermosillo*,
2026 WL 562063 (D. Or. Feb. 27, 2026) ...............................................................1, 11, 14, 16

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012)...............................................................................12, 17, 19

*Moreno v. Napolitano*,
213 F. Supp. 3d 999 (N.D. Ill. 2016) .............................................................................14, 16

*Mountain High Knitting, Inc. v. Reno*,
51 F.3d 216 (9th Cir. 1995)..................................................................................................14

*Nat. Res. Def. Council v. U.S. E.P.A.*,
735 F.3d 873 (9th Cir. 2013)................................................................................................12

*Pearl Meadows Mushroom Farm, Inc. v. Nelson*,
723 F. Supp. 432 (N.D. Cal. 1989) ......................................................................................16

*Pimentel v. Dreyfus*,
670 F.3d 1096 (9th Cir. 2012)..............................................................................................10

*Pinchi v. Noem*,
792 F. Supp. 3d 1025 (N.D. Cal. 2025) ................................................................................18

*Ramirez Ovando v. Noem*,
810 F. Supp. 3d 1209 (D. Colo. 2025) ........................................................................... passim

MOTION FOR PRELIMINARY INJUNCTION RE: WARRANTLESS ARRESTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Ramirez Ovando v. Noem*,
No. 25-03183 (D. Colo. May 12, 2026), Dkt. No. 112 ...............................................................16

*Rodriguez v. Bostock*,
779 F.Supp.3d 1239 (W.D. Wash. 2025) ...................................................................................18

*Rodriguez v. Robbins*,
715 F.3d 1127 (9th Cir. 2013)..............................................................................................17, 19

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ...................................................................................................................11

*Tejeda-Mata v. INS*,
626 F.2d 721 (9th Cir. 1980)......................................................................................................13

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ...................................................................................................................11

*United Farm Workers v. Noem*,
2026 WL 892070 (E.D. Cal. Apr. 1, 2026) ..........................................................................15, 16

*United Farm Workers v. Noem*,
785 F. Supp. 3d 672, 735 (E.D. Cal. 2025) ...........................................................................1, 16

*United States v. Bautista-Ramos*,
No. 18-CR-4066-LTS, 2018 WL 5726236 (N.D. Iowa Oct. 15, 2018) .....................................14

*United States v. Khan*,
324 F. Supp. 2d 1177 (D. Colo. 2004) .......................................................................................14

*United States v. Pacheco-Alvarez*,
227 F. Supp. 3d 863 (S.D. Ohio 2016)..................................................................................14, 16

*Valle del Sol Inc. v. Whiting*,
732 F.3d 1006 (9th Cir. 2013)....................................................................................................19

*Vasquez Perdomo v. Noem*,
148 F.4th 656 (9th Cir. 2025).................................................................................................12, 19

*Washington v. Trump*,
847 F.3d 1151 (9th Cir. 2017).....................................................................................................17

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .......................................................................................................................10

*Ybarra v. Ill.*,
444 U.S. 85 (1979) .....................................................................................................................14

*Zepeda v. INS*,
753 F.2d 719 (9th Cir. 1983).......................................................................................................19

**FEDERAL STATUTES**

5 U.S.C. § 705 ......................................................................................................................11, 19

MOTION FOR PRELIMINARY INJUNCTION RE: WARRANTLESS ARRESTS; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

5 U.S.C. § 706(2)(A) ...........................................................................................................13

8 U.S.C. § 287.8(c)(2)(ii) ...............................................................................................13, 15

8 U.S.C. § 1357(a) ........................................................................................................ passim

8 U.S.C. § 1357(a)(2) .........................................................................................................13

Pub. L. No. 79-613, 60 Stat. 865 (1946) ...........................................................................13

**OTHER AUTHORITIES**

Camilo Montoya-Galvez, *ICE head says agents will arrest anyone found in the U.S. illegally, crack down on employers of unauthorized workers*, CBS News (Jul. 21, 2025) .............................................................................................................2

Catherine E. Sholchet, *How Gregory Bovino became the face of Trump's immigration crackdown*, CNN (Jan. 25, 2026) ............................................................8

Elizabeth Findell, et al., *The White House Marching Orders That Sparked the L.A. Migrant Crackdown*, The Wall Street Journal (June 9, 2025) ....................................2

Hamed Aleaziz, et al., *ICE Expands Power of Agents to Arrest People Without Warrants,* N.Y. Times (Jan. 30, 2026) .............................................................................17

Madeline Ngo, *Facing Pressure, Trump Officials Reject Claims They're Softening on Immigration*, New York Times (May 8, 2026) ..........................................................9

Mike Levine & Meghan Mistry, *Trump's border czar: 'If you're in the country illegally, you got a problem'*, ABC News (Jan. 26, 2025) ..............................................2

Nick Reisman, *Tom Homan's ICE surge threat isn't stopping sanctuary bills in New York*, Politico (May 6, 2026) ...............................................................................................8

Rachel Poser et al., *The View From Inside Trump's D.H.S.*, New York Times (Apr. 14, 2026) .............................................................................................................................3

Stuart Anderson, *Stephen Miller's Order Likely Sparked Immigration Arrests and Protests*, Forbes (Jun. 9, 2025) ..........................................................................................2

Tim Henderson, *Immigration street sweeps led to more 'collateral' arrests of noncriminals*, Stateline (Apr. 30, 2026) ...........................................................................3

Todd M. Lyons, *Civil Immigration Arrest Authority: Administrative Arrest Warrants and Warrantless Arrests* (Jan. 28, 2026) ..................................................9, 17

Ximena Bustillo, *Border czar promises 'mass deportations are coming' to fulfill Trump's promises*, NPR (May 7, 2026) ..........................................................................2

Ximena Bustillo, *Border czar promises 'mass deportations are coming' to fulfill Trump's promises*, NPR (May 7, 2026) ..........................................................................8

MOTION FOR PRELIMINARY INJUNCTION RE: WARRANTLESS ARRESTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Federal immigration agents are waging a campaign of illegal stops and warrantless arrests throughout this District, targeting Latino individuals who live in working class neighborhoods and work low-wage jobs, in an effort to increase arrest numbers at any cost.  As part of this campaign, Defendants rely on non-targeted, warrantless arrests, ignoring the deep roots that individuals, including organizational Plaintiffs' members, have in their communities.  But Congress authorized immigration officers to make civil immigration arrests without a warrant *only* where they have probable cause to believe that the person is both unlawfully present *and* likely to escape before a warrant can be obtained.  8 U.S.C. § 1357(a).  Defendants are disregarding the second requirement as part of the federal government's mass deportation campaign.

Plaintiff organizations seek a preliminary injunction to stop Defendants' ongoing, illegal policy of conducting warrantless arrests without establishing any likelihood of escape.[1]  Each day that policy remains in effect, Plaintiffs' members face ongoing and irreparable harm.  Many have lived in the country for decades, hold long-term jobs, have children and family members who are U.S. citizens or lawfully present, and are active members of their communities.  Nevertheless, they are being dragged from their workplaces or ambushed while going about their daily lives—and then detained, without justification, in overcrowded facilities.  They live in ongoing fear of being taken simply because they match the demographic profiles Defendants' policy targets.

At least four other federal courts already have granted preliminary injunctions to stop Defendants' warrantless arrest policy.  *See M-J-M-A- v. Hermosillo*, 2026 WL 562063 (D. Or. Feb. 27, 2026); *Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209 (D. Colo. 2025); *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1 (D.D.C. 2025); *United Farm Workers v. Noem*, 785 F. Supp. 3d 672, 735 (E.D. Cal. 2025).  Defendants nevertheless continue to flout the law and double down on their policy.  Indeed, Defendants recently issued a policy memorandum codifying their view that 8 U.S.C. § 1357(a) does not meaningfully restrain their authority to carry out

---

[1] Although related to their suspicionless stops policy, Defendants' warrantless arrest policy is a distinct policy that independently violates Defendants' statutory and regulatory obligations.

MOTION FOR PRELIMINARY INJUNCTION RE: WARRANTLESS ARRESTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

warrantless arrests, and publicly announced that more "mass deportations are coming."[2] Plaintiffs' proposed preliminary injunction is necessary to prevent further irreparable harm while this lawsuit is pending.

## II. FACTUAL BACKGROUND

### A. Defendants are conducting non-targeted mass immigration arrests.

Since last year, federal immigration agents have swarmed the Central District, conducting indiscriminate stops and warrantless arrests of Latino individuals. These individuals, referred to by Defendants as "collaterals" because they often are not identified as targets in advance of an enforcement operation, are arrested without any warrant. Ex. 2, [SDDO C.C. Dep.] at 133:13–134:12.[3] The arrests are a predictable result of Defendants' push to increase immigration arrest numbers. In early 2025, "Border Czar" Tom Homan told ABC News that more "collateral arrests" were coming[4] and anyone in the country unlawfully is "on the table."[5] Todd Lyons, ICE's former director, confirmed this change in policy.[6] In May 2025, officials re-emphasized the push for mass arrests. Stephen Miller, the White House Deputy Chief of Staff for Policy, announced a goal of at least 3,000 arrests each day.[7] And field offices were instructed to "turn the creativity knob up to 11" for collateral arrests; as leadership put it: "If it involves handcuffs on wrists, [it's]

---

[2] Ximena Bustillo, *Border czar promises 'mass deportations are coming' to fulfill Trump's promises*, NPR (May 7, 2026), https://www.mainepublic.org/npr-news/2026-05-07/border-czar-promises-mass-deportations-are-coming-to-fulfill-trumps-promises.

[3] *See also* Ex. 3 [agents text chain] at GOV-7606–07 (stating they "don't have an I200" warrant for basically "all" of their street encounters).

[4] Mike Levine & Meghan Mistry, *Trump's border czar: 'If you're in the country illegally, you got a problem'*, ABC News (Jan. 26, 2025), https://abcnews.com/Politics/trumps-border-czar-youre-country-illegally-problem/story?id=118085728.

[5] *Id.*

[6] Camilo Montoya-Galvez, *ICE head says agents will arrest anyone found in the U.S. illegally, crack down on employers of unauthorized workers*, CBS News (Jul. 21, 2025), https://www.cbsnews.com/news/ice-head-todd-lyons-agents-will-arrest-anyone-found-illegally-crack-down-on-employers/.

[7] Stuart Anderson, *Stephen Miller's Order Likely Sparked Immigration Arrests and Protests*, Forbes (Jun. 9, 2025), **Error! Hyperlink reference not valid.**; Elizabeth Findell, et al., *The White House Marching Orders That Sparked the L.A. Migrant Crackdown*, The Wall Street Journal (June 9, 2025), https://www.wsj.com/us-news/protests-los-angeles-immigrants-trump-f5089877.

-2-     Case No. 2:25-cv-05605-MEMF-SP

MOTION FOR PRELIMINARY INJUNCTION RE: WARRANTLESS ARRESTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

probably something worth pursuing." Ex. 4, [e-mail chain] at GOV-24101. ICE's 30(b)(6) witness and Los Angeles' Field Office Director summarized the agency's stance: "[I]f there's field collaterals out there, question everybody, make an arrest." Ex. 5, [ICE 30(b)(6) Dep.] at 147:11–148:11.

Defendants' policy statements have informed officers' actions in the field. As one officer stated: "the agency wants everyone who is not a USC to be arrested." Ex. 6, [ICE text chain] at GOV-4220; Ex. 7, [DO C.C. Dep.] 7, [DO C.C. Dep.] at 152:4–153:18, 170:7–17 (officer who encountered Plaintiff Vasquez Perdomo testifying about the policy change). Although Defendants' methods for "collateral" encounters have varied, the result has been the same: Defendants consistently arrest Latino individuals without a warrant or a legally-compliant pre-arrest analysis of their likelihood of escape. Unsurprisingly, given the "incredible amount of pressure for numbers,"[8] these "collateral" arrests now make up at least one quarter of all civil immigration arrests.[9]

One way Defendants make "collateral" arrests is through so-called "targeted" operations that are often pretexts for stopping whomever they choose around a known individual's home or workplace. *See* Ex. 2, [SDDO C.C. Dep.] at 245:3–246:11; Ex. 8, [E.O. Dep.] at 196:17–198:6. This is how Defendants encountered Plaintiffs Vasquez Perdomo, Villegas Molina, and Osorto at the Pasadena bus stop where they were waiting to be picked up for work. Ex. 2, [SDDO C.C. Dep.] at 130:4–132:19. None of the three was the claimed target of Defendants' operation, but they were ambushed by ICE officers, handcuffed, and taken away. Ex. 9, [Second Vasquez Perdomo Decl.] ¶¶ 4–8; Ex. 10, [Second Villegas Molina Decl.] ¶¶ 4–8; Ex. 11, [Osorto Decl.] ¶¶ 4–8. And despite being warrantless arrests, officers did not ask the men any questions about their jobs, community ties, or anything else to evaluate escape risk prior to arresting them. Ex. 7,

---

[8] Rachel Poser et al., *The View From Inside Trump's D.H.S.*, New York Times (Apr. 14, 2026), https://www.nytimes.com/interactive/2026/04/14/magazine/trump-dhs-ice-officers-immigration-deportations.html.

[9] *See also* Tim Henderson, *Immigration street sweeps led to more 'collateral' arrests of noncriminals*, Stateline (Apr. 30, 2026), https://stateline.org/2026/04/30/immigration-street-sweeps-led-to-more-collateral-arrests-of-noncriminals/.

-3-                                   Case No. 2:25-cv-05605-MEMF-SP

MOTION FOR PRELIMINARY INJUNCTION RE: WARRANTLESS ARRESTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

[D.O. C.C. Dep.] at 273:19–274:10.  Doing so would have confirmed that none was an escape risk.  Ex. 9, [Second Vasquez Perdomo Decl.] ¶¶ 3, 7–8 (describing arrest without such questioning, despite deep roots in Los Angeles area); Ex. 10, [Second Villegas Molina Decl.] ¶¶ 2–3, 6 (same); Ex. 11, [Osorto Decl.] ¶¶ 3, 6, 8 (same); *see also* Ex. 7, [D.O. C.C. Dep] at 274:11–275:16 (acknowledging Villegas Molina did not run and provided officers with his ID).[10]

Another type of alleged "targeted" operation, seemingly adopted by Defendants after this Court entered a temporary restraining order ("TRO") on Plaintiffs' suspicionless stops claim, is what Defendants call "targeted area" operations.  Ex. 12, [CBP 30(b)(6) Dep.] at 212:3–213:8.  These involve going to a "public access" area, such as a Home Depot or car wash, predicated on alleged intelligence about a small number of individuals suspected to be unlawfully present and previously present at that location.  Ex. 12, [CBP 30(b)(6) Dep.] at 213:17–214:9, 270:4–277:9, 293:16–295:25; Ex. 13, [Defendants' Response to Interrogatory No. 3] (identifying agencies involved).  According to Defendants, that "intelligence" gives agents license to descend upon a location and stop anyone present who fits the profile of a Latino-appearing day laborer or car wash worker.  *See* Ex. 14, [SBPA I.F. Dep.] at 262:3–21.  Agents then stop and arrest numerous individuals who are not the identified targets.  Indeed, that appears to be exactly the point:  At the August 6, 2025 Westlake Home Depot raid, for example, agents were briefed that 150+ individuals in the area fit the profile of a day laborer and they should make as many "Title 8" arrests as possible.  Ex. 15, [Briefing PPT] at GOV-363; Ex. 16, [SBPA V.S. Dep.] at 258:11–262:14; 287:2–291:8.  Agents did not ask arrestees any questions to evaluate escape risk before arresting them.  *See* Ex. 17, [Tijerino Garmendia Decl.] ¶ 8.

Defendants also conduct "roving patrols," involving no alleged target.  Defendants roam communities populated with Latino individuals, arbitrarily stopping and arresting individuals without any warrant.  Ex. 12, [CBP 30(b)(6) Dep.] at 152:6–153:21, 169:20–175:1, 242:6–245:18, 317:14–318:10.  These roving patrols have resulted in arrests without any individualized escape

---

[10] Both ICE and CBP participate in these operations.  Ex. 8, [E.O. Dep.] at 111:17–19 (ICE Enforcement and Removal Operations (ERO) team lead referring to conducting operations with ICE Homeland Security Investigations and CBP Office of Field Operations).

MOTION FOR PRELIMINARY INJUNCTION RE: WARRANTLESS ARRESTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

risk evaluation. Ex. 18, [M.D.L. I-213] (warrantless arrest in January 2026 roving patrol based solely on unlawful presence); Ex. 19, [M.F.R. I-213] (same); Ex. 20, [M.D.L. Decl.] ¶¶ 2–8; Ex. 21, [M.F.R. Decl.] ¶¶ 2–8. *See also* Ex. 22, [Chapman Decl.] ¶¶ 2–8 (CBP arrest on April 3, 2026); Ex. 72, [video depicting arrest].

**B.**   **Defendants are conducting warrantless arrests without any meaningful escape risk assessment.**

The Acting Associate Director of ICE told field offices that "[a]nyone who is found amenable to removal needs to be arrested." Ex. 4, [e-mail chain] at GOV-24101. That's exactly what the record here shows. Indeed, an ICE team lead recently admitted there is not a single "collateral" he failed to arrest since he started field operations in 2025. Ex. 8, [DO E.O. Dep.] at 323:25–324:13.

In arrest after arrest, personnel forego *any* determination of likelihood of escape. Agents and officers are required to document any evaluation of likelihood of escape in the Record of Deportable/Inadmissible Alien, or I-213, for an arrest. Ex. 23, [ICE Fourth Amendment Refresher Training] at GOV-23819; Ex. 24, [CBP Legal Refresher Training] at GOV-3347. Numerous narratives for "collateral" arrests, however, including those produced to date in this case, contain no such analysis. *See*, *e.g.*, Ex. 25, [F.H.S. EARM encounter report] at C-GOV-548–50 (no escape risk analysis); Ex. 8, [E.O. Dep.] at 217:5–219:19 (clarifying F.H.S. arrest was not targeted); Ex. 26, [Vaquez Perdomo I-213] at 2–3; Ex. 27, [Villegas Molina EARM encounter report] at 1–2; Ex. 28, [Osorto I-213] at 2; Ex. 29, [J.D.S. I-213] at 2; Ex. 30, [E.C.P. I-213] at GOV-5299; Ex. 31, [G.V.C. I-213] at GOV-5589-92; Ex. 32, [W.C. I-213] at 1–4, Ex. 33, [H.S.H. I-213] at 1–3; Ex. 34, [J.C. I-213] at 1–5; Ex. 35, [G.N.L. I-213] at 1–3; Ex. 36, [E.C.H. I-213] at 1–3.

When confronted about these incidents in depositions, ICE officers insisted that nothing is missing from the documentation. Ex. 7, [DO C.C. Dep.] at 313:24–314:19; Ex. 2, [SDDO C.C. Dep.] at 181:22–182:11, 186:9–187:3, 247:21–248:9; Ex. 8, [DO E.O. Dep.] at 161:23–162:6, 219:20–220:6, 229:16–230:11, 252:22–255:1 (testifying that he did not obtain further information about G.N.L. apart from status because he had decided to "place him under arrest"). According to

-5-                                    Case No. 2:25-cv-05605-MEMF-SP

the supervisor who oversaw the arrests of Plaintiffs Vasquez Perdomo, Villegas Molina, and Osorto, "the self-admission of alienage [i]s sufficient to justify [a warrantless] arrest." Ex. 2, [SDDO C.C. Dep.] at 254:5–10.

A review of arrest narratives Defendants produced shows that at least 89 of 113 arrests—nearly 80 percent—contain either no escape risk assessment whatsoever (41 arrests), or generally follow an escape risk template narrative (48 arrests).[11] Perry Stone Decl., ¶¶ 16, 20–27. For the narratives that contain some discussion of "flight risk", it is largely boilerplate. 48 of 72 arrests had narratives that generally followed template language: "I determined that XXX was likely to escape before a warrant could be obtained for [his/her] arrest based on [his/her] flight from law enforcement, the fact that [he/she] ignored agent commands, [his/her] illegal presence in the United States, and the facts outlined above." Perry Stone Decl., ¶ 26. Indeed, Border Patrol circulated a template narrative to agents containing this very language. Ex. 37, [template narrative] at GOV-20020.[12]

When agents document escape risk, they frequently expressly equate escape risk entirely with undocumented status. For example, arrest narratives for the August 5, 2025 Magnolia Car Wash raid contain the following language: "Due to XXX's unlawful presence, unlawful status, and admission to having resided in the U.S. illegally, XXX was deemed a flight risk and not eligible for release." Ex. 39, [L.A.V.H. narrative] at GOV-00004029; Ex. 40, [I.Z.G. narrative] at GOV-00014609; *see also* Ex. 41, [E.K.Z.L. narrative] at C-GOV-00000332; Ex. 42, [M.A.H.Z. narrative] at GOV-00004026.

Even where narratives claim that somebody took flight, available body camera video often indicates otherwise. *Compare* Ex. 43, [E.G.G. narrative] at GOV 4124-27 (describing two arrests at Handy J Car Wash, claiming E.G.G. was "nervously looking around as if he was looking for an

---

[11] Only CBP narratives had any such (albeit improper) escape risk analysis. ICE did not include *any* escape risk analysis at all based on a review of produced documents. Perry Stone Decl. ¶ 29.

[12] The boilerplate nature of these narratives is also illustrated by the use of inconsistent pronouns or wrong names. *See, e.g.*, Ex. 38, [E.M.L.H. narrative] at GOV-00004553.

avenue of escape" and both individuals fled from law enforcement) *with* Ex. 73, [GOV-P17-051] (video showing no such thing); *compare* Ex. 44, [F.S. narrative] at GOV-4184 (claiming F.S. encountered at Pomona Contractors Warehouse raid was "running in the opposite direction" of agents) *with* Ex. 74, [GOV-P17-072] (video showing F.S. was recovering from surgery that limited his mobility); *compare* Ex. 45, [M.W. narrative] at GOV-4068 (Westlake Home Depot raid narrative claiming M.W. was "running away") *with* Ex. 75, [GOV-P16-035] (video showing M.W. walking toward agent and texting when encountered); *see also* Ex. 46, [Tijerino-Garmendia narrative] at GOV-20807 (claiming Tijerino-Garmendia stated he had no identification with his identity or address) *compared with* Ex. 76, [GOV-P19-063] (video showing no questioning on this topic).

Community members' experiences confirm what the government's arrest documentation already makes plain.  Numerous individuals, including those referenced above, reported being arrested with no inquiry into community ties or escape risk.  *See* Ex. 47, [F.H.S. Decl] ¶¶ 2, 7, 13 (describing arrest without any such questioning, despite ties including three dependent children, one of whom is autistic), Ex. 48, [E.C.P. Decl.] ¶¶ 2, 5; Ex. 49, [G.V.C. Decl.] ¶¶ 2, 5; Ex. 50, [W.C. Decl] ¶¶ 2, 12–13; Ex. 51, [H.S.H. Decl.] ¶¶ 1–3, 8; Ex. 52, [J.C. Decl.] ¶¶ 1, 10–11; Ex. 53, [G.N.L. Decl.] ¶¶ 2, 6; Ex. 54, [E.C.H. Decl.] ¶¶ 2, 8; *see also* Ex. 55, [E.M.M. Decl.] ¶¶ 2, 8, 18; Ex. 56, [A.G. Decl.] ¶¶ 2, 5; Ex. 57, [R.N.G. Decl.] ¶¶  2, 8; Ex. 58, [L.C.C. Decl.] ¶¶ 2, 12; Ex. 59, [V.M.B. Decl.] ¶¶ 2, 4; Ex. 60, [H.S.P. Decl.] ¶¶ 2, 8, 9.

Even those already in removal proceedings, who are ordered released on bond presumably due to *lack of flight risk* and are complying with court dates, are not immune from Defendants' policy.  Ex. 12, [CBP 30(b)(6) Dep.] at 282:12–283:22; Ex. 77 [GOV-P19-057] (video capturing discussion of individual already in proceedings); Ex. 61, [Third Villegas Molina Decl.] ¶¶ 2, 29 (describing recent re-arrest).  The same is true for individuals who voluntarily applied for and received legal status.  Ex. 62, [J.D.S. Decl.] ¶¶ 2–3, 6–8 (describing arrest without escape risk questioning, despite ties and DACA status); Ex. 63, [Marion Donovan-Kaloust Decl.] ¶¶ 2–10; Ex. 64, [M.L.S. Decl.] ¶¶ 2–8; Ex. 65, [Form I-44] at GOV-4131–32 (arrest of legal resident at Handy J Car Wash raid); Ex. 78, [GOV-P17-061] (video depicting the arrest).

MOTION FOR PRELIMINARY INJUNCTION RE: WARRANTLESS ARRESTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**C.** **Defendants' unlawful policy is ongoing and officially sanctioned.**

Leadership has sanctioned Defendants' illegal warrantless arrest policy. When asked about warrantless arrests lacking an escape risk analysis, ICE leadership confirmed that such arrests were "absolutely" consistent with agency policy. Ex. 5, [ICE 30(b)(6) Dep.] at 162:20–166:25. Likewise, CBP leadership has approved narratives that contain an escape risk analysis based solely on suspected unlawful status. Ex. 16, [SBPA V.S. Dep.] at 102:18–104:22, 230:20–231:17; Ex. 66, [email regarding Magnolia Car Wash raid narratives] at GOV-940. Indeed, Defendants' policy is baked into the structure of their operations, which they describe as "smash and grab" operations, Ex. 3, [text thread] at GOV-7601-02, or as former Commander Gregory Bovino referred to them, "turn and burn" operations,[13] leaving little or no time for questioning or analysis.

The policy also is ongoing. Officers continue to pursue collateral arrests in the field. Ex. 2, [SDDO C.C. Dep.] at 45:7–51:9, 85:4–11 (team has doubled in size in last six months and is making 10–15 arrests per week, of which about 4 are collateral); Ex. 8, [DO E.O. Dep.] at 47:5–21; 145:7–146:3. And community members continue to report collateral arrests by ICE and CBP without any individualized assessment of escape risk. *See supra* at 5, 7 (H.S.H., J.C., G.N.L., E.C.H., and Chapman discussing post-January 2026 incidents).

Defendants' public statements make clear they have no intention of ceasing this policy. Last month, after speaking with DHS Secretary Markwayne Mullin, Homan announced the government's plans to execute *more* mass deportations, stating that "no one's off the table,"[14] and confirming that Defendants intend to continue their arrest campaign: "'[W]e're going to flood the zone.' . . . 'You're going to see more ICE agents [than] you ever seen before'" and "[y]ou will see collateral arrests increase."[15]

---

[13] Catherine E. Sholchet, *How Gregory Bovino became the face of Trump's immigration crackdown*, CNN (Jan. 25, 2026), https://www.cnn.com/2026/01/25/politics/gregory-bovino-minneapolis-immigration-crackdown.

[14] Ximena Bustillo, *Border czar promises 'mass deportations are coming' to fulfill Trump's promises*, NPR (May 7, 2026), https://www.mainepublic.org/npr-news/2026-05-07/border-czar-promises-mass-deportations-are-coming-to-fulfill-trumps-promises.

[15] *Id*.; Nick Reisman, *Tom Homan's ICE surge threat isn't stopping sanctuary bills in New York*, Politico (May 6, 2026), https://www.politico.com/news/2026/05/06/tom-homans-new-york-ice-

MOTION FOR PRELIMINARY INJUNCTION RE: WARRANTLESS ARRESTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Defendants also recently confirmed their view that 8 U.S.C. § 1357(a) does not meaningfully restrain their authority to carry out warrantless arrests.  In a January 28, 2026 memorandum, Acting ICE Director Todd Lyons rescinded long-held guidance on warrantless arrests and redefined the agency's statutory obligation to conduct a "likelihood of escape" analysis, essentially nullifying the requirement.  *See* Todd M. Lyons, *Civil Immigration Arrest Authority: Administrative Arrest Warrants and Warrantless Arrests* (Jan. 28, 2026) (the "Lyons Memo").

**D.**    <u>**Organizational Plaintiffs' members are suffering ongoing irreparable harm.**</u>

Plaintiffs face ongoing irreparable harm as a result of Defendants' unlawful policy. Plaintiffs challenging Defendants' warrantless arrest policy include three organizations—LAWCN, CHIRLA, and UFW—that have tens of thousands of members across the District.  Ex 67, [Sixth Salas Decl.] ¶ 4 (CHIRLA has over 49,000 members of mixed immigration status in the District); Ex. 68, [Fourth Melendrez Decl.] ¶ 1 (one of LAWCN's member organizations, CLEAN, is a carwash worker center whose membership includes over 2,000 predominantly Latine carwash workers across Southern California, many of whom are immigrants); Ex. 69, [Second Gudino Decl.] ¶¶ 2,13–14; Ex. 70, [Third Strater Decl.] ¶¶ 5–6 (UFW has approximately 10,000 members, many of whom reside in the District and are Latino).

Organizational Plaintiffs' members already have been harmed by Defendants' unlawful policy.  For example, on January 23, 2026, Defendants arrested Gildardo, a member of CLEAN, at Fullerton Car Wash without a warrant and without an escape risk assessment.  Ex. 68, [Fourth Melendrez Decl.] ¶ 14; Ex. 71, [Gildardo I-213]; Ex. 68, [Fourth Melendrez Decl.] ¶ 7 ("I am aware of dozens of CLEAN's members that have been stopped and arrested by federal agents . . . seemingly without a warrant.")  Similarly, Defendants arrested a CHIRLA member without a

---

surge-threat-isnt-stopping-sanctuary-bills-00908594; *see also* Madeline Ngo, *Facing Pressure, Trump Officials Reject Claims They're Softening on Immigration*, New York Times (May 8, 2026), https://www.nytimes.com/2026/05/08/us/politics/markwayne-mullin-immigration-dhs.html (DHS spokeswoman stating "ICE is NOT slowing down").

MOTION FOR PRELIMINARY INJUNCTION RE: WARRANTLESS ARRESTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

warrant while she was selling tamales in the parking lot of a strip mall.  Ex. 67, [Sixth Salas Decl.] ¶ 20.  Prior to her arrest, federal agents asked her only whether she had papers—nothing else.  *Id*.

Organizational Plaintiffs' members, documented and undocumented, also face an imminent risk of arrest or re-arrest.  These members have deep-rooted community ties.  Ex. 67, [Sixth Salas Decl.] ¶¶ 16, 21, 25; Ex. 68, [Fourth Melendrez Decl.] ¶¶ 14–15, 20–21; Ex. 70, [Third Strater Decl.] ¶ 19.  For example, CHIRLA member M.G., who is visibly Latino and works in construction, fears being subject to a warrantless arrest and tries to avoid leaving his house for non-work purposes.  Ex. 67, [Sixth Salas Decl.] ¶¶ 21–23; *see also id*., ¶¶ 24–30 (describing numerous CHIRLA members who face imminent risk of arrest, including DACA recipients).  Similarly, UFW members have rearranged their lives, avoiding doctors' appointments and church, out of fear they will be arrested where they live, work, and commute.  Ex. 70, [Third Strater Decl.] ¶ 23.  For example, UFW member "Belinda", a long-time Ventura County resident, fears arrest since her husband "Andy," was arrested while walking to work.  *Id.*, ¶¶ 35–38.  Many UFW members—including "Luz", a single parent to three U.S. citizen children—are terrified of being arrested and separated from their children.  Ex. 70, [Third Strater Decl.] ¶ 39–42.  LAWCN members, including CLEAN carwash workers, also fear arrest at or while commuting to work.  Ex. 68, [Fourth Melendrez Decl.] ¶¶ 4–6, 17–20.

## III.    LEGAL STANDARD

Plaintiffs are entitled to a preliminary injunction if they can show that (1) they are likely to succeed on the merits of their claims; (2) they are likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  A stronger showing on one element may offset a weaker showing on another.  *See Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012).  Where a moving party would suffer irreparable harm absent relief and demonstrates that an injunction would be in the public interest, "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (internal quotation marks omitted).  The same standard applies to a motion to stay agency action under the

Administrative Procedure Act ("APA"), 5 U.S.C. § 705. *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 983 (9th Cir. 2025).

## IV.    ARGUMENT

### A.    <u>Plaintiffs have standing for their warrantless arrest claims.</u>

Plaintiffs LAWCN, CHIRLA, and UFW have standing. For an association to have standing, it must show that (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the individual members' participation. *Hunt v. Wash. St. Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). At the preliminary injunction stage, plaintiffs need only demonstrate a substantial likelihood of standing. *Los Angeles Press Club v. Noem*, 171 F.4th 1179, 1187 (9th Cir. 2026). Multiple federal courts already have found that individuals and organizations suffering near-identical harms have standing to challenge Defendants' warrantless arrest policy. *See, e.g.*, *Escobar Molina*, 811 F. Supp. 3d at 32–37; *M-J-M-A-*, 2026 WL 562063, at *15–16; *Ramirez Ovando*, 810 F.Supp.3d at 1226–27.

The first *Hunt* factor is met because the associations' members have (1) suffered an injury in fact, (2) that is fairly traceable to Defendants' challenged conduct, and (3) likely to be redressed by a favorable judicial decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). To establish injury in fact, each organization need only show that "at least one identified member" has suffered an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009); *see also Lujan*, 504 U.S. at 560. For forward-looking relief, organizational members must show that they "continue to suffer ongoing, concrete harm," *Los Angeles Press Club*, 171 F.4th at 1187, or face a realistic threat of future injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983)*; TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021).

Here, Plaintiffs' members have suffered a direct injury as a result of Defendants' policy: Defendants have already arrested multiple members without a warrant and without the requisite escape risk analysis. *See supra* at 9–10. Members also face a substantial risk of being arrested or re-arrested without such analysis. *Id.* The Ninth Circuit previously held that UFW, CHIRLA, and

LAWCN's "individual members can establish standing to seek injunctive relief based on a real and immediate threat of future injury" relating to their Fourth Amendment stops claim. *Vasquez Perdomo v. Noem*, 148 F.4th 656, 676 (9th Cir. 2025). The same reasoning applies to Plaintiffs' warrantless arrest claims.

First, members face a substantial risk of being arrested because Defendants have a systemic policy and practice of making warrantless arrests without individualized escape risk determinations. *See supra* at 2–8. Courts in this Circuit have held that "[e]xposure to [an officially-sanctioned] policy . . . constitutes 'ongoing harm and evidence that there is "sufficient likelihood" that the Plaintiffs' rights will be violated again.'" *Melendres v. Arpaio*, 695 F.3d 990, 998 (9th Cir. 2012); *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001); *see also Does I Through III v. D.C.*, 216 F.R.D. 5, 11 (D.D.C. 2003).

Second, Plaintiffs' members—largely comprising Latino low-wage workers within the District of diverse immigration statuses—are the targets of Defendants' policy. *See supra* at 2–4, 9. The scale of Plaintiffs' membership in the District also "increases the threat of future harm to [the organizations'] members." *California Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1100 (9th Cir. 2024) (quoting *Nat. Res. Def. Council v. U.S. E.P.A.*, 735 F.3d 873, 878 (9th Cir. 2013) (alteration in original)).

Third, Plaintiffs cannot avoid exposure to the unlawful policy by avoiding illegal conduct. *See Arizona v. United States*, 567 U.S. 387, 413 (2012) (unlawful presence not a crime). Plaintiffs' members continue to be arrested without an escape risk analysis and based on unlawful presence alone while "going about [their] daily life," including at, or in transit to, work. *Melendres*, 695 F.3d at 998; *see supra* at 9–10. The indiscriminate nature of Defendants' arrest policy means that even individuals who have already been arrested are at risk of re-arrest, including Plaintiff Villegas Molina, who was *re*-arrested and detained in April 2026. *See supra* at 7. Members also face ongoing harms either because they remain in detention or are currently suffering injuries as a direct result of their unlawful arrest. *See, e.g.*, Ex. 68, [Fourth Melendrez Decl.] ¶ 16 (discussing M.D.L. who remains detained); *see Ramirez Ovando*, 810 F. Supp. 3d at

MOTION FOR PRELIMINARY INJUNCTION RE: WARRANTLESS ARRESTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1227 (injuries are ongoing because plaintiffs are currently unlawfully detained or suffering injuries resulting from unlawful detention); *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991).

The second *Hunt* prong is met because safeguarding LAWCN, UFW, and CHIRLA members' liberty interests is germane to the organizations' purposes.  *See Garcia v. City of Los Angeles*, 611 F. Supp. 3d 941, 952 (C.D. Cal. 2020) (protecting homeless individuals' belongings from seizure sufficiently germane to homeless aid organization's mission).  Ex. 69, [Second Gudino Decl.] ¶ 7; Ex. 68, [Fourth Melendrez Decl.] ¶ 3; Ex. 70, [Third Strater Decl.] ¶¶ 11, 17; Ex. 67, [Sixth Salas Decl.] ¶ 2.

Finally, the third *Hunt* factor is met:  Individual members' participation is not required because the organizations seek only preliminary injunctive relief.  *See Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001).

**B.**       <u>**Plaintiffs are likely to succeed on the merits of their warrantless arrest claims.**</u>

1.       <u>8 U.S.C. § 1357(a) requires Defendants to make an individualized determination of likelihood to escape before effecting a warrantless arrest.</u>

Defendants' policy of effecting warrantless arrests without an individualized determination of escape risk violates 8 U.S.C. § 1357(a)(2) and its implementing regulation, 8 C.F.R. § 287.8(c)(2)(ii), as well as the APA, 5 U.S.C. § 706(2)(A).  For 80 years,[16] Section 1357(a) has limited federal agents' authority to conduct warrantless arrests to only the narrow circumstance where the agent has "reason to believe" that the person being arrested (a) "is in the United States in violation of any such [immigration] law or regulation" *and* (b) "is likely to escape before a warrant can be obtained for his arrest."  8 U.S.C. § 1357(a); *see also* 8 C.F.R. § 287.8(c)(2)(ii).  This reflects Congress's intent to limit federal officers' authority to conduct warrantless immigration arrests.  *See Arizona,* 567 U.S. at 408.

The "reason to believe" requirement is equivalent to "the constitutional requirement of probable cause."  *Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980); *see also Au Yi Lau v. U.S. Immigr. & Naturalization Serv.*, 445 F.2d 217, 222 (D.C. Cir. 1971) (Section 1357(a)(2)

---

[16] Pub. L. No. 79-613, 60 Stat. 865 (1946).

MOTION FOR PRELIMINARY INJUNCTION RE: WARRANTLESS ARRESTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

"must be read in light of constitutional standards, so that 'reason to believe' must be considered the equivalent of probable cause."). Probable cause "must be particularized with respect to the person to be searched or seized." *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 438 (9th Cir. 2010). Thus, federal agents must have probable cause that the arrested individual poses a risk of escaping before a warrant can be obtained. *See Ybarra v. Ill.,* 444 U.S. 85, 91 (1979). In other words, "an immigration officer can know for certain that someone is present in violation of immigration laws, and still does not have authority to arrest them without a warrant or an individualized probable cause determination that the individual is 'likely to escape before a warrant can be obtained.'" *M-J-M-A-*, 2026 WL 562063, at *14 (citation omitted).

Courts have consistently interpreted the "likely to escape" requirement to "unambiguously mean[] 'likely to evade immigration officers'" before a warrant could be issued. *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1008 (N.D. Ill. 2016); *Araujo v. United States*, 301 F. Supp. 2d 1095, 1102 (N.D. Cal. 2004); *Hussen v. Noem*, No. 26-CV-324 (ECT/ECW), 2026 WL 657936, at *32 (D. Minn. Mar. 9, 2026). The inquiry does *not* assess whether the individual is likely to escape the immediate scene; rather, to determine whether an individual intends to evade apprehension, courts consider traditional flight risk factors "including whether the officer can determine the individual's identity, previous escape attempts, and community ties such as family, a home, or a job." *M-J-M-A-*, 2026 WL 562063, at *1. Only if there is a particularized determination that an individual is likely to flee the community, precluding apprehension following procurement of a warrant, is Section 1357(a) satisfied.

For example, in *Mountain High Knitting, Inc. v. Reno*, 51 F.3d 216, 218 (9th Cir. 1995), the Ninth Circuit held that individuals who were arrested at their factory jobs were not likely to abscond before a warrant could be obtained. Multiple other cases are in accord. *See also United States v. Khan*, 324 F. Supp. 2d 1177, 1186–87 (D. Colo. 2004) (individual not likely to escape because he worked two jobs in the city, owned a vehicle, and paid rent); *United States v. Pacheco-Alvarez*, 227 F. Supp. 3d 863, 890 (S.D. Ohio 2016) (individual not likely to escape because arrested near his home, no criminal history, had a stable job, lived with his fiancé, and helped raise her two kids); *United States v. Bautista-Ramos*, No. 18-CR-4066-LTS, 2018 WL 5726236, at *7

MOTION FOR PRELIMINARY INJUNCTION RE: WARRANTLESS ARRESTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

(N.D. Iowa Oct. 15, 2018), *report and recommendation adopted,* 2018 WL 5723948 (individual not likely to escape present in the state for over 10 years, employed, and had U.S. citizen wife and daughters).

> 2.  <u>Defendants have a policy of effecting warrantless arrests without probable cause of likelihood of escape.</u>

Defendants are violating Section 1357(a) and Section 287.8(c)(2)(ii) in their immigration enforcement operations.  As explained above, Defendants' common practice is to conduct warrantless "collateral" arrests in the District.  *See supra* at 2–5.  In such circumstances, Defendants must have probable cause that the individual is likely to escape before they can obtain a warrant.  But Defendants do not conduct this analysis as a matter of course.  *See supra* at 5–7.  Indeed, agents and officers regularly conduct warrantless arrests without asking *any* questions that might inform an escape risk assessment.  *See supra* at 5–7.  Instead, Defendants routinely rely on suspected unlawful presence as sufficient in itself to justify warrantless arrests.  *See supra* at 5–6.  Defendants' command staff and 30(b)(6) witnesses have testified that unlawful status alone is sufficient for a warrantless arrest.  *See supra* at 8.  But the law is clear that unlawful presence alone cannot be the basis of an escape risk finding.  *See Escobar Molina*, 811 F. Supp. 3d at 31 (collecting cases).

Defendants' documentation of arrests—or lack thereof—reinforces this testimony.  ICE arrest narratives contain *no* likelihood of escape analysis.  *See supra* at 6.  The CBP narratives Defendants produced that contain any escape risk discussion generally show no individualized assessment and use boilerplate language across multiple narratives.  *See supra.* at 6.  Such "copy and paste language may give rise to an inference that an individualized assessment was not made" and "boilerplate [language] may not be used to describe the particulars of each detention and arrest."  *United Farm Workers v. Noem*, 2026 WL 892070, at *38 (E.D. Cal. Apr. 1, 2026).

As a matter of practice, Defendants fail to investigate the community ties that make an individual unlikely to escape before a warrant is obtained.  *See supra* at 7.  A legally-sufficient escape risk analysis would show that many of the individuals Defendants have arrested have strong community ties—including extended residence in the United States, long-term

MOTION FOR PRELIMINARY INJUNCTION RE: WARRANTLESS ARRESTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

employment, primary caregiving responsibilities, and U.S. citizen minor children and immediate family members—that weigh heavily against a likelihood of escape. *See supra* at 7; *see also Pacheco-Alvarez*, 227 F. Supp. 3d at 890 (caregiving responsibilities weigh against escape risk); *Pearl Meadows Mushroom Farm, Inc. v. Nelson*, 723 F. Supp. 432, 449 (N.D. Cal. 1989) (same where individual is encountered at regular place of employment).

Defendants' brazen warrantless arrest practices are not limited to this District; they are part of a nationwide campaign. Courts throughout the country have enjoined DHS from continuing those unlawful practices. *See, e.g., M-J-M-A-*, 2026 WL 562063, at *1 (preliminarily enjoining this policy); *Ramirez Ovando*, 810 F. Supp. 3d at 1216 (same); *Escobar Molina*, 811 F. Supp. 3d at 13 (same); *United Farm Workers v. Noem*, 785 F. Supp. 3d at 735 (same). Yet Defendants continue to flout these court orders. Indeed, two courts recently granted plaintiffs' motions to enforce, holding that DHS's unlawful warrantless arrest policy continued *even after* issuance of the preliminary injunctions. *Escobar Molina v. U.S. Dep't of Homeland Sec.*, No. 25-3417 (BAH), 2026 WL 1256234, at *3 (D.D.C. May 7, 2026); Order Enforcing Preliminary Injunction at 30–31, *Ramirez Ovando v. Noem*, No. 25-03183 (D. Colo. May 12, 2026), Dkt. No. 112 .

3.    Defendants continue to sanction their warrantless arrest practice.

As noted, top officials have sanctioned Defendants' warrantless arrest policy. *See supra* 8–9. Recently, Defendants have only reaffirmed their commitment to this policy, including through the Lyons Memo. *See supra* 9.

The Lyons Memo's unprecedented interpretation of "likelihood of escape" is so broad that it renders Section 1357(a)'s second requirement—whether the individual is likely to escape— superfluous. It permits warrantless arrests of anyone unlawfully present simply because they are in public, in transit, or unlikely to stand idle while officers obtain a warrant. As another court recently explained, "by considering only whether the noncitizen will remain at the scene of the encounter, the Lyons Memo redefines 'likelihood of escape' into a nullity." Order Enforcing Preliminary Injunction at 38, *Ramirez Ovando*, No. 25-03183 ; *see also Moreno*, 213 F. Supp. 3d at 1007 (N.D. Ill. 2016).

MOTION FOR PRELIMINARY INJUNCTION RE: WARRANTLESS ARRESTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

The Lyons Memo also instructs federal agents *not* to consider long-relied-on factors such as "whether an [individual] is likely to attend future immigration court hearings, appear before ERO as directed, surrender for removal, and comply with other immigration obligations." Lyons Memo at 4. As a former ICE senior advisor explained, the new definition is "an extremely broad interpretation of the term 'escape'" that "would cover essentially anyone they want to arrest without a warrant, making the general premise of ever getting a warrant pointless."[17] Indeed, two federal courts have already found that the Lyons Memo's analytical approach violates Defendants' statutory obligations. Order Enforcing Preliminary Injunction at 38, *Ramirez Ovando*, No. 25-03183 (memo's framing of the escape risk inquiry "swallow[s] [the] whole standard"); *Escobar Molina*, 2026 WL 1256234, at *3–5.

## C.    Without preliminary relief, Plaintiffs will suffer irreparable harm.

Absent judicial intervention, Defendants' policy will continue to cause Plaintiffs irreparable harm. Plaintiffs need only demonstrate "a real possibility" that they are likely to suffer irreparable harm absent preliminary relief. *Melendres*, 695 F.3d at 1002.

"Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018); *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (irreparable harm exists where "preliminary injunction is necessary to ensure that individuals . . . are not needlessly detained"). Plaintiffs' members face irreparable harm because they face "a real possibility" that they will "be . . . detained and subjected to unlawful detention." *Melendres*, 695 F.3d at 1002. They are fearful of leaving their homes, going to work or the doctor, attending religious services, and running basic errands. *See supra* at 10. And members with children are terrified of being separated from their families. *See supra* at 10; *see also Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017) (identifying family separation as irreparable harm).

---

[17] Hamed Aleaziz, et al., *ICE Expands Power of Agents to Arrest People Without Warrants,* N.Y. Times (Jan. 30, 2026), https://www.nytimes.com/2026/01/30/us/politics/ice-expands-power-agents-warrants.html.

Members continue to suffer deprivations of their liberty as a result of unlawful arrests and subsequent detentions.  Plaintiffs have been detained for days, weeks, and even months, often enduring inhumane conditions, including having to "sleep on the floor" "in a room with 52 other people," being "shackled [] at [their] waist, feet and hands," and being "give[n] very little food." Ex. 9, [Second Vasquez Perdomo Decl.] ¶ 7–10; *see also Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1037 (N.D. Cal. 2025) (recognizing "irreparable harms imposed on anyone subject to immigration detention" (citation omitted)).  Following release from detention, individuals still experience harms flowing from their arrests and detention.  "The time spent in jail awaiting trial has a detrimental impact on the individual.  It often means loss of a job; it disrupts family life; and it enforces idleness." *Barker v. Wingo*, 407 U.S. 514, 532 (1972).  For example, Plaintiff Villegas Molina lost his job while he was detained, risked losing his housing, and still has to attend check-ins and wear an ankle monitor.  *See* Ex. 61, [Third Villegas Molina Decl.] ¶¶ 10, 31–32. Detention causes "potentially irreparable harm every day [one] remains in custody." *Rodriguez v. Bostock*, 779 F.Supp.3d 1239, 1262 (W.D. Wash. 2025) (citation and internal quotation marks omitted).

Defendants' unlawful policy shows no sign of slowing.  Defendants have stated that they plan to expand their mass deportation agenda, *see supra* at 8–9, and DHS continues to conduct unlawful warrantless arrests, *see supra* at 5, 7–9.  *See also* Ex. 8, [DO E.O. Dep.] at 175:2–176:21 (testifying that while operation names may change, practices remain the same).  Indeed, ICE field teams have approximately doubled in size, *see supra* at 8, and publicly available data shows enforcement is "about four times higher than during the last year of the Biden administration."[18]

**D.       The balance of the equities tips in Plaintiffs' favor and an injunction is in the public interest.**

When the federal government is a party, the balance of the equities and public interest factors merge.  *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014).  When the

---

[18] Ngo, *supra* note 15.

MOTION FOR PRELIMINARY INJUNCTION RE: WARRANTLESS ARRESTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

government's alleged action violates federal law, the public interest factor generally weighs in favor of the plaintiffs. *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013).

Here, the balance of equities tips sharply in Plaintiffs' favor because the "public interest benefits" when "individuals are not deprived of their liberty" by unlawful processes and "preventable human suffering" is avoided. *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (citation modified). Absent an injunction, Plaintiffs' members will continue to face irreparable harm.

In contrast, Defendants cannot show they are likely to suffer harm by complying with their statutory and regulatory obligations. As this Court has already acknowledged, ""[c]omplying with the law does not impose harm." ECF 87 at 47 (quoting *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983)); *see also Rodriguez*, 715 F.3d at 1145. Plaintiffs' requested relief does not prevent any immigration agent from enforcing federal immigration laws. Indeed, injunctive relief is standard where there are widespread legal violations. *See, e.g., LaDuke v. Nelson*, 762 F.2d 1318, 1333 (9th Cir. 1985) (upholding permanent injunction against warrantless searches of workplace housing); *Melendres*, 695 F.3d at 1002 (upholding injunction against practice of detaining people for civil immigration offenses).

## V.    CONCLUSION

All four preliminary injunction factors weigh in Plaintiffs' favor. And no security is necessary here: "[C]ourt[s] may dispense with the filing of a bond when … there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Accordingly, the Court should grant Plaintiffs' motion for preliminary injunction and enter the proposed order for District-wide relief, or, in the alternative, issue a stay of Defendants' policy under 5 U.S.C. § 705. *See, e.g., Ramirez Ovando*, 810 F. Supp. 3d at 1241–42 (issuing preliminary injunction order with documentation requirements); *Escobar Molina*, 811 F. Supp. 3d at 65–66 (same); *see Vasquez Perdomo*, 148 F.4th at 688 (District-wide relief necessary for complete relief).

MOTION FOR PRELIMINARY INJUNCTION RE: WARRANTLESS ARRESTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

DATED:  June 8, 2026                    ACLU OF SOUTHERN CALIFORNIA


By:  _____/s/ Stephanie Padilla_____
STEPHANIE PADILLA
*Counsel for Stop/Arrest Plaintiffs*


DATED:  June 8, 2026                    UC IRVINE IMMIGRANT AND RACIAL JUSTICE SOLIDARITY CLINIC


By:  _____/s/ Anne Lai_____
ANNE LAI
*Counsel for Stop/Arrest Plaintiffs*


DATED:  June 8, 2026                    MUNGER, TOLLES & OLSON LLP


By:  _____/s/ Jacob S. Kreilkamp_____
JACOB S. KREILKAMP
*Counsel for Stop/Arrest Plaintiffs*

Case No. 2:25-cv-05605-MEMF-SP

MOTION FOR PRELIMINARY INJUNCTION RE: WARRANTLESS ARRESTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2026, I electronically filed the foregoing with the Clerk of the U.S. District Court for the Central District of California using the CM/ECF system, which provided notification of such filing to all registered CM/ECF users, including all adverse parties. L.R. 65-1.

DATED:  June 8, 2026                    MUNGER, TOLLES & OLSON LLP


By:     */s/ Jacob S. Kreilkamp*
       JACOB S. KREILKAMP
       *Counsel for Stop/Arrest Plaintiffs*

MOTION FOR PRELIMINARY INJUNCTION RE: WARRANTLESS ARRESTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Stop/Arrest Plaintiffs certifies that this brief contains 6,980 words, which complies with the word limit of L.R. 11-6.1

DATED:  June 8, 2026                    MUNGER, TOLLES & OLSON LLP


                                        By:    _/s/ Jacob S. Kreilkamp_____
                                               JACOB S. KREILKAMP
                                               *Counsel for Stop/Arrest Plaintiffs*