UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pedro VASQUEZ PERDOMO; Carlos Alexander OSORTO; and Isaac VILLEGAS MOLINA; Jorge HERNANDEZ VIRAMONTES; Jason Brian GAVIDIA; LOS ANGELES WORKER CENTER NETWORK; UNITED FARM WORKERS; COALITION FOR HUMANE IMMIGRANT RIGHTS; IMMIGRANT DEFENDERS LAW CENTER, | Case No. 2:25-cv-05605-MEMF-SP **[PROPOSED] ORDER GRANTING PRELIMINARY INJUNCTION** Judge:    Hon. Maame Ewusi-Mensah Frimpong |

Plaintiffs,

vs.

Markwayne MULLIN, in his official capacity as Secretary, Department of Homeland Security; David VENTURELLA, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; Rodney S. SCOTT, in his official capacity as Commissioner, U.S. Customs and Border Patrol; Michael W. BANKS, in his official capacity as Chief of U.S. Border Patrol; Kash PATEL, in his official capacity as Director, Federal Bureau of Investigation; Todd BLANCHE, in his official capacity as Acting U.S. Attorney General; Thomas GILES, in his official capacity as Acting Field Office Director for Los Angeles, U.S. Immigration and Customs Enforcement; Dean T. SORENSON, Special Agent in Charge for Los Angeles, Homeland Security Investigations,

U.S. Immigration and Customs Enforcement; Daniel PARRA, in his official capacity as Chief Patrol Agent for El Centro Sector of the U.S. Border Patrol; Justin DE LA TORRE, in his official capacity as Acting Chief Patrol Agent, San Diego Sector of the U.S. Border Patrol; Akil DAVIS, in his official capacity as Assistant Director in Charge, Los Angeles Office, Federal Bureau of Investigation; Bilal A. ESSAYLI, in his official capacity as U.S. Attorney for the Central District of California,

Defendants.

On June 8, 2026, Plaintiffs Los Angeles Worker Center Network, United Farm Workers, and Coalition for Humane Immigrant Rights (collectively, "Warrantless Arrest Plaintiffs") filed a Motion for Preliminary Injunction re: Warrantless Arrests.  ECF ___.  For the reasons stated herein, the Court hereby GRANTS Plaintiffs' motion for preliminary injunction on their warrantless arrest claims.

Having considered the parties' papers and the arguments of counsel, the Court finds that Plaintiffs have demonstrated a strong likelihood of success on the merits of their claim that Defendants have an official sanctioned pattern and practice of conducting warrantless arrests without establishing probable cause that the subject individual is likely to escape before a warrant can be obtained, as required by 8 U.S.C. § 1357(a) and 8 C.F.R. § 287.8(c)(2).  The Court further finds that, absent interim injunctive relief, Plaintiffs face immediate, irreparable harm, and that the balance of the equities and the public interest favor such relief.

## I.      LEGAL STANDARD

Plaintiffs are entitled to a preliminary injunction if they can show that (1) they are likely to succeed on the merits of their claims; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  A stronger showing on one element may offset a weaker showing on another.  *See Pimentel v. Drefus*, 670 F.3d 1096, 1105 (9th Cir. 2012).  Where a moving party would suffer irreparable harm in the absence of relief

and demonstrates that an injunction would be in the public interest, "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). The same standard applies to a motion to stay agency action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 705. *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 983 (9th Cir. 2025).

## II.    STANDING

Plaintiffs Los Angeles Workers Center Network (LAWCN), Coalition for Humane Immigrant Rights (CHIRLA), and United Farm Workers (UFW) each have standing. Plaintiffs LAWCN, CHIRLA, and UFW are organizations with members who have been harmed by Defendants' unlawful policy and practice of warrantless arrests and are realistically threatened by future unlawful arrests.

To establish standing, an association must show that (1) its members would otherwise have standing to sue in their own right; (2) the interests the association seeks to protect are germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members. *See Hunt v. Wash. St. Apple Advers. Comm'n*, 423 U.S. 333, 343 (1977). At the preliminary injunction stage, plaintiffs need only demonstrate a substantial likelihood of standing. *Los Angeles Press Club v. Noem*, 171 F.4th 1179, 1187 (9th Cir. 2026).

### A.    Plaintiff LAWCN has standing.

Plaintiff LAWCN meets each of the three *Hunt* factors. The first *Hunt* factor is met because LAWCN's members have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of Defendants, and (3) that is likely to be redressed by a favorable judicial decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

To establish injury in fact, LAWCN need only show that "at least one identified member" has suffered an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009); *see also Lujan*, 504 U.S. at 560. For forward-looking relief, plaintiffs must show that they "continue to suffer ongoing, concrete harm," *Los Angeles Press Club*, 171 F.4th at 1187, or that they face a realistic threat of future injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983); *TransUnion*

*LLC v. Ramirez*, 594 U.S. 413, 424 (2012). LAWCN's members have suffered directly as a result of Defendants' warrantless arrest policy. Defendants have arrested multiple LAWCN members without a warrant and without the requisite likelihood of escape analysis. *See* ECF __ (Mot. for PI Ex. 68 [Fourth Melendrez Decl.]) ¶ 7. For example, on January 23, 2026, Defendants arrested Gildardo, a member of CLEAN, at Fullerton Car Wash without a warrant. ECF __ (Mot. for PI Ex. 68 [Fourth Melendrez Decl.]) ¶ 14; ECF __ (Mot. for PI Ex. 71 [Gildardo I-213]). LAWCN's members, including CLEAN car wash workers, also face a substantial risk of being arrested or re-arrested at or while commuting to work without a likelihood of escape analysis. ECF __ (Mot. for PI Ex. 68 [Fourth Melendrez Decl.]) ¶¶ 4–6, 17–20. Members face a substantial risk of being arrested because Defendants have a systemic policy and practice of making warrantless arrests without individualized escape risk determinations. *Melendres v. Arpaio*, 695 F.3d 990, 998 (9th Cir. 2012); *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001). The Ninth Circuit previously held that LAWCN's "individual members can establish standing to seek injunctive relief based on a real and immediate threat of future injury" as it relates to their Fourth Amendment stops claim. *Vasquez Perdomo v. Noem*, 148 F.4th 656, 676 (9th Cir. 2025). The same reasoning applies to the warrantless arrest claim.

The second *Hunt* factor is met because safeguarding LAWCN's members' liberty interests is germane to the organization's purpose. *See Garcia v. City of Los Angeles*, 611 F. Supp. 3d 941, 952 (C.D. Cal. 2020) (protecting homeless individuals' belongings from seizure sufficiently germane to homeless aid organization's mission). LAWCN is a network of worker centers, which exist to support "low-wage, often immigrant workers." ECF __ (Mot. for PI Ex. 69 [Gudino Decl.]) ¶ 7. CLEAN, one of the member organizations of LAWCN, fights for car wash workers' dignity in the workplace, where Defendants have repeatedly targeted its members for unlawful arrests. ECF __ (Mot. for PI Ex. 68 [Fourth Melendrez Decl.]) ¶ 3.

The third *Hunt* factor is also met: the participation of individual members is not required because the organizations seek only preliminary injunctive relief. *See Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001).

[PROPOSED] ORDER GRANTING PRELIMINARY INJUNCTION

## B.    Plaintiff CHIRLA has standing.

Plaintiff CHIRLA meets each of the three *Hunt* factors.  The first *Hunt* factor is met because CHIRLA's members have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of Defendants, and (3) that is likely to be redressed by a favorable judicial decision.  *See Lujan*, 504 U.S. at 560.

To establish injury in fact, CHIRLA need only show that "at least one identified member" has suffered an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009); *see also Lujan*, 504 U.S. at 560.  For forward-looking relief, plaintiffs must show that they "continue to suffer ongoing, concrete harm," *Los Angeles Press Club*, 171 F.4th at 1187, or that they face a realistic threat of future injury.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2012).  CHIRLA's members have suffered directly as a result of Defendants' warrantless arrest policy.  For example, Defendants have arrested at least one CHIRLA member without a warrant while she was selling tamales in the parking lot of a strip mall.  *See* ECF __ (Mot. for PI Ex. 67 [Sixth Salas Decl.]) ¶ 20.  Prior to her arrest, federal agents asked her only whether she had her papers—nothing else.  *Id*.  CHIRLA's members also face a substantial risk of being arrested or re-arrested without a likelihood of escape analysis.  CHIRLA member M.G., who is visibly Latino and works in construction, fears being subject to a warrantless arrest and tries to avoid leaving his house for non-work purposes.  *See* ECF__ (Mot. for PI Ex. 67 [Sixth Salas Decl.] ¶¶ 21–23; *see also id.*, ¶¶ 24–30 (describing numerous CHIRLA members who face imminent risk of arrest, including DACA recipients).  Members face a substantial risk of being arrested because Defendants have a systemic policy and practice of making warrantless arrests without individualized escape risk determinations.  *Melendres*, 695 F.3d at 998; *Armstrong*, 275 F.3d at 861.  The Ninth Circuit previously held that CHIRLA's "individual members can establish standing to seek injunctive relief based on a real and immediate threat of future injury" as it relates to their Fourth Amendment stops claim.  *Vasquez Perdomo*, 148 F.4th at 676.  The same reasoning applies to the warrantless arrest claim.

[PROPOSED] ORDER GRANTING PRELIMINARY INJUNCTION

The second *Hunt* factor is met because safeguarding CHIRLA's members' liberty interests is germane to the organization's purpose. *See Garcia*, 611 F. Supp. 3d at 952. CHIRLA's mission is to "advance the human and civil rights of immigrants and refugees and ensure immigrants communities are fully integrated into our society with full rights and access to resources." ECF__ (Mot. for PI Ex. 67 [Fifth Salas Decl.]) ¶ 2.

The third *Hunt* factor is also met: the participation of individual members is not required because the organizations seek only preliminary injunctive relief. *See Columbia Basin*, 268 F.3d at 799.

### C.    Plaintiff UFW has standing.

Plaintiff UFW meets each of the three *Hunt* factors. The first *Hunt* factor is met because UFW's members have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of Defendants, and (3) that is likely to be redressed by a favorable judicial decision. *See Lujan*, 504 U.S. at 560.

To establish injury in fact, UFW need only show that "at least one identified member" has suffered an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009); *see also Lujan*, 504 U.S. at 560. For forward-looking relief, plaintiffs must show that they "continue to suffer ongoing, concrete harm," *Los Angeles Press Club*, 171 F.4th at 1187, or that they face a realistic threat of future injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2012). UFW's members have suffered directly as a result of Defendants' warrantless arrest policy. UFW members live in ongoing fear that they will be stopped and arrested where they live, work, and commute. ECF __ (Mot. for PI Ex. 70 [Third Strater Decl.]) ¶ 23. For example, UFW member "Belinda," a long-time Ventura County resident, fears arrest since her husband "Andy," a Latino senior citizen, was arrested while walking to work. *See* ECF __ (Mot. for PI Ex. 70 [Third Strater Decl.]) ¶¶ 35–38. UFW's members also face a substantial risk of being arrested or re-arrested without a likelihood of escape analysis. Many UFW members—including "Luz" who is a single parent to three U.S. citizen children—are terrified of being arrested and separated from their children. *See* ECF __ (Mot. for PI Ex. 70

[PROPOSED] ORDER GRANTING PRELIMINARY INJUNCTION

[Strater Decl.]) ¶ 39–42.  Members face a substantial risk of being arrested because Defendants have a systemic policy and practice of making warrantless arrests without individualized escape risk determinations.  *Melendres*, 695 F.3d at 998; *Armstrong*, 275 F.3d at 861.  The Ninth Circuit previously held that UFW's "individual members can establish standing to seek injunctive relief based on a real and immediate threat of future injury" as it relates to their Fourth Amendment stops claim.  *Vasquez Perdomo*, 148 F.4th at 676.  The same reasoning applies to the warrantless arrest claim.

The second *Hunt* factor is met because safeguarding UFW's members' liberty interests is germane to the organization's purpose.  *See Garcia*, 611 F. Supp. 3d at 952.  UFW's mission is to "improve the lives, wages, and working conditions of agricultural workers and their families," and it "is a national leader in the movement for immigration reform and immigrants' rights."  ECF __ (Mot. for PI Ex. 70 [Third Strater Decl.]) ¶¶ 11, 17.

The third *Hunt* factor is also met: the participation of individual members is not required because the organizations seek only preliminary injunctive relief.  *See Columbia Basin*, 268 F.3d at 799.

## III.   LIKELIHOOD OF SUCCESS

Plaintiffs are likely to succeed on the merits of their warrantless arrest claim.  As a matter of policy, Defendants fail to make individualized determinations of likelihood to escape before effecting a warrantless arrests.  8 U.S.C. § 1357(a); 8 C.F.R. § 287.8(c)(2)(ii).

### A.   **8 U.S.C. § 1357(a) requires Defendants to make an individualized determination of likelihood to escape before effecting a warrantless arrest.**

Section 1357(a) has cabined federal agents' authority to conduct warrantless arrests to only the narrow circumstance where the agent has "reason to believe" that (a) the person being arrested "is in the United States in violation of any immigration law or regulation" *and* (b) the person "is likely to escape before a warrant can be obtained for his arrest."  8 U.S.C. § 1357(a); *see also* 8 C.F.R. 287.8(c)(2)(ii).  This reflects Congress's intent to limit federal officers' authority to conduct immigration arrests absent any warrant.  *See Arizona v. United States*, 567 U.S. 287, 408 (2012).

[PROPOSED] ORDER GRANTING PRELIMINARY INJUNCTION

The "reason to believe" requirement is equivalent to "the constitutional requirement of probable cause." *Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980).  Probable cause "must be particularized with respect to the person to be searched or seized[.]" *Crowe v. County of San Diego*, 608 F.3d 406, 439 (9th Cir. 2010).  Thus, to conduct a warrantless arrest, federal agents must have probable cause that the arrested individual poses a risk of escaping before a warrant can be obtained.  *See Ybarra v. Illinois*, 444 U.S. 85, 91 (1979).  In other words, "an immigration officer can know for certain that someone is present in violation of immigration laws, and still does not have the authority to arrest them without a warrant or an individualized probable cause determination that the individual is 'likely to escape before a warrant can be obtained.'" *M-J-M-A v. Hermosillo*, No. 6:25-CV-02011-MTK, 2026 WL 562063, at *2, n. 3 (D. Or. Feb. 27, 2026).

The statute's "likelihood to escape" requirement does not assess whether the individual is likely to escape the immediate scene; rather, to determine whether the individual intends to evade apprehension, courts consider the traditional flight risk factors "including whether the officer can determine the individual's identity, previous escape attempts, and community ties such as a family, a home, or a job." *M-J-M-A*, 2026 WL 562063, at *1.  Section 1357(a)'s standard is met only if there is a particularized determination that an individual is likely to flee the community, precluding apprehension of the individual following procurement of a warrant.

**B.**    <u>**Plaintiffs are likely to succeed on the merits of their claim that Defendants are conducting warrantless arrests without probable cause of likelihood of escape.**</u>

The Court finds that Plaintiffs are likely to succeed on the merits of their claim that Defendants are violating Section 1357(a) and Section 287.8(c)(2)(ii) in their immigration enforcement operations, primarily by conducting warrantless "collateral" arrests in the District without an escape risk assessment.  ECF __ (Mot. for PI Ex. 7 [SDDO C.C. Dep.] at 133:13–134:12; ECF __ (Mot. for PI Ex. 5 [ICE 30(b)(6) Dep.]) at 147:11–148:11.  These "collateral" arrests arise in several contexts:  *First*, during "targeted" operations that are often a pretext for stopping whomever the officers choose within the general area of a known individual's home or place of work.  *See* ECF __ (Mot. for PI Ex. 7 [SDDO C.C. Dep.]) at 245:3–246:11; ECF. _ (Mot. for PI Ex. 8 [E.O. Dep.]) at 196:17–198:6.  *Second,* during "targeted area" operations, during

[PROPOSED] ORDER GRANTING PRELIMINARY INJUNCTION

which officers and agents target a "public access" area such as a Home Depot or car wash on the basis of pretextual intelligence about a small number of individuals suspected to be unlawfully present who had previously been at that location. *See* ECF __ (Mot. for PI Ex. 12 [CBP 30(b)(6) Dep.]) at 213:17–214:9; 270:4–277:9; 293:16–295:25. *Third*, in the context of "roving patrols," which do not involve *any* identified target, where Defendants roam communities populated with Latino individuals and arbitrarily stop and arrest individuals without a warrant. ECF _ (Mot. for PI Ex. 12 [CBP 30(b)(6) Dep.]) at 152:6–153:21, 169:20–175:1, 242:6–245:18, 317:14–318:10.

Without warrants, Defendants are required to have probable cause that the individual is likely to escape before a warrant could be obtained. But agents and officers regularly conduct warrantless arrests without asking any questions that could help determine likelihood of escape. Instead, Defendants routinely rely on suspected unlawful presence as sufficient in itself to justify a warrantless arrest. *See, e.g.*, ECF __ (Mot. for PI Ex. 7 [SDDO C.C. Dep.]) at 245:3–246:11, 254:5–10 ("the self-admission of alienage [i]s sufficient to justify arrest" for collaterals); ECF __ (Mot. for PI Ex. 8 [E.O. Dep.]) at 196:17–198:6; ECF __ (Mot. for PI Ex. 9 [Second Vasquez Perdomo Decl.]) ¶¶ 4–8; ECF _ (Mot. for PI Ex. 10 [Second Villegas Molina Decl.]) ¶¶ 4–8; ECF _ (Mot. for PI Ex. 11 [Osorto Decl.]) ¶¶ 4–8; ECF __ (Mot. for PI Ex. 2 [C.C. Dep.]) at 273:19–274:10.

Defendants' failure to adequately document arrests supports this finding. Many CBP and all ICE arrest narratives in the record contain no analysis of likelihood of escape, and the CBP narratives that contain any escape language at all often contain only boilerplate language. *See, e.g.*, ECF __ (Mot. for PI Ex. 25 [F.H.S. EARM encounter report]) at C-GOV-548–50; ECF __ (Mot. for PI Ex. 8 [E.O. Dep.]) at 217:5–219:19 (clarifying arrest of F.H.S. was not targeted); ECF __ (Mot. for PI Ex. 26 [Vasquez Perdomo I-213]) at 2–3; ECF __ (Mot. for PI Ex. 27 [Villegas Molina EARM encounter report]) at 1–2; ECF __ (Mot. for PI Ex. 28 [Osorto I-213]) at 2; ECF __ (Mot. for PI Ex. 29 [J.D.S. I-213]) at 2; ECF __ (Mot. for PI Ex. 30 [E.C.P. I-213]) at GOV-5299; ECF __ (Mot. for PI Ex. 31 [G.V.C. I-213]) at GOV-5589–92; ECF __ (Mot. for PI Ex. 32 [W.C. I-213]) at 1–4; ECF __ (Mot. for PI Ex. 33 [H.S.H. I-213]) at 1–3; ECF __ (Mot. for PI Ex. 34

[PROPOSED] ORDER GRANTING PRELIMINARY INJUNCTION

[J.C. I-213]) at 1–5; ECF __ (Mot. for PI Ex. 35 [G.N.L. I-213]) at 1–3; ECF __ (Mot. for PI Ex. 36 [E.C.H. I-213]) at 1–3.

"[C]opy and paste language may give rise to an inference that an individualized assessment was not made" and "boilerplate [language] may not be used to describe the particulars of each detention and arrest." *United Farm Workers v. Noem*, No. 1:25-CV-00246-JLT CDB, 2026 WL 892070, at *38 (E.D. Cal. Apr. 1, 2026). Many CBP arrest narratives contain such "boilerplate" language. Nearly 80 percent of the arrest narratives produced so far in this case—89 out of 113—contained no escape risk assessment whatsoever (41 arrests) or use an escape risk template narrative (48 arrests).[1] ECF __ (Perry Stone Decl.) ¶ 16, 20–27. 48 of 72 narratives generally followed template language: "I determined that [name] was likely to escape before a warrant could be obtained for [his/her] arrest based on [his/her] flight from law enforcement, the fat that [he/she] ignored agent commands, [his/her] illegal presence in the United States, and the facts outlined above." ECF __ (Perry Stone Decl.) ¶ 26. This language appears to be based on a template Border Patrol circulated to its agents. *See* ECF __ (Mot. for PI Ex. 37 [template narrative]) at GOV-20020. These boilerplate narratives are often contradicted by body camera footage. *Compare* ECF __ (Mot. for PI Ex. 43 [E.G.G. narrative]) at GOV 4124–27 (describing two arrests at Handy J Car Wash, claiming that E.G.G. was "nervously looking around as if he was looking for an avenue of escape" and both individuals fled from law enforcement) *with* ECF __ (Mot. for PI Ex. 73 [body camera video GOV-P17-051]) (showing no such thing); *compare* ECF __ (Mot. for PI Ex. 44 [F.S. narrative]) at GOV-4184 (claiming F.S. encountered at Pomona Contractors Warehouse raid was "running in the opposite direction" of agents) with ECF __ (Mot. for PI Ex. 74 [body camera video GOV-P17-072]) (showing F.S. was recovering from surgery that limited his mobility); *compare* ECF _ (Mot. for PI Ex. 45 [M.W. narrative]) at GOV-4068 (Westlake Home Depot raid narrative claiming M.W. was "running away") *with* ECF _ (Mot. for PI Ex. 75 [body camera video GOV-P16-035]) (showing M.W. walking toward agent and

---

[1] ICE narratives did not include *any* escape risk analysis at all based on Plaintiffs' review of produced documents. ECF __ (Perry Stone Decl.) ¶ 29.

-10-

[PROPOSED] ORDER GRANTING PRELIMINARY INJUNCTION

texting when encountered); *see also* ECF __ (Mot. for PI Ex. 46 [Tijerino-Garmendia narrative]) at GOV-20807 (claiming Tijerino-Garmendia stated he had no identification stating his identity or home address) *compared with* ECF __ (Mot. for PI Ex. 76 [body camera video GOV-P19-063]) (video showing no questioning on this topic).

Defendants' routine failure to investigate individuals' ties to the community supports the conclusion that Defendants are violating Section 1357(a).  If Defendants had conducted a legally-sufficient escape risk analysis, agents and officers would have learned that many of the individuals they arrested have strong community ties—including extended residence in the United States, long-term employment, primary caregiving responsibilities, and U.S. citizen minor children and immediate family members. *See, e.g.*, ECF __ (Mot. for PI Ex. 9 [Second Vasquez Perdomo]) Decl. ¶¶ 3, 7–8 (describing arrest without questioning about ties even though he has deep roots in Los Angeles area); ECF __ (Mot. for PI Ex. 10 [Second Villegas Molina Decl.]) ¶¶ 2–3, 6 (same); ECF __ (Mot. for PI Ex. 11 [Osorto Decl.]) ¶¶ 3, 6, 8 (same); ECF __ (Mot. for PI Ex. 7 [D.O. C.C. Dep.]) at 274:11–275:16 (acknowledging Villegas Molina did not run and provided officers with his ID).

Even those already in removal proceedings, who are ordered released on bond, are not immune from Defendants' policy.  ECF __ (Mot. for PI Ex. 12 [CBP 30(b)(6) Dep.]) at 282:12–283:22; ECF __ (Mot. for PI Ex. 77 [body camera video GOV P-19-057]) (video capturing discussion of individual already in proceedings); ECF __ (Mot. for PI Ex. 61[Third Villegas Molina Decl.]) ¶¶ 2, 29 (describing recent re-arrest).  The same is true for individuals who voluntarily applied for and received legal status.  ECF __ (Mot. for PI Ex. 62 [J.D.S. Decl.]) ¶¶ 2–3, 6–8 (describing arrest without escape risk questioning, despite ties and DACA status); ECF __ (Mot. for PI Ex. 63 [Marion Donovan-Kaloust  Decl.]) ¶¶ 2–10; ECF __ (Mot. for PI Ex. 64 [M.L.S. Decl.]) ¶¶ 2–8; ECF __ (Mot. for PI Ex. 65 [Form I-44]) at GOV-4131–32 (arrest of legal resident at Handy J Car Wash raid); ECF __ (Mot. for PI Ex. 78 [body camera video GOV-P17-061]) (video depicting the arrest).

[PROPOSED] ORDER GRANTING PRELIMINARY INJUNCTION

### C.    <u>Plaintiffs are likely to succeed on the merits of their claim that Defendants' blanket warrantless arrest practice is officially sanctioned.</u>

This Court finds that Plaintiffs are likely to succeed on the merits of their claim that Defendants' failure to conduct a "likelihood of escape" analysis is an officially sanctioned practice. Defendants' team leads and 30(b)(6) witnesses have testified that unlawful presence alone is sufficient to effectuate a warrantless arrest. ECF __ (Mot. for PI Ex. 5 [ICE 30(b)(6) Dep.]) at 162:20–166:25; ECF__ (Mot. for PI Ex. 16 [SBPA V.S. Dep.]) at 102:18–104:22, 230:20–231:17.

Defendants have reaffirmed their commitment to their warrantless arrest policy through the "Lyons Memo." *See* Todd M. Lyons, *Civil Immigration Arrest Authority: Administrative Arrest Warrants and Warrantless Arrests* (Jan. 28, 2026). The Lyons Memo's interpretation of "likelihood of escape" is so broad as to make the second requirement of Section 1357(a)—whether the individual is likely to escape—superfluous. "[B]y considering only whether the noncitizen will remain at the scene of the encounter, the Lyons Memo redefines 'likelihood of escape' into a nullity." *Ramirez-Ovando v. Noem*, Case No. 1:25-cv-03183-RBJ (D. Colo.) Order to Enforce, ECF 112 at 38. This Court joins the other courts that already have found that reliance on the Lyons Memo's analytical approach violates Defendants' statutory obligations. *Ramirez-Ovando*, Order Enforcing Preliminary Injunction, ECF 112; *Escobar Molina v. U.S. Dep't of Homeland Sec.*, No. 25-3417 (BAH), 2026 WL 1256234, at *3 (D.D.C. May 7, 2026), Order to Enforce, ECF No. 88.

In addition to the Lyons Memo, agents' and officers' conduct on the ground and statements from top officials endorsing these practices establish that Plaintiffs are likely to succeed in establishing that Defendants have a policy of effecting warrantless arrests without an individualized escape risk evaluation.

## IV.    <u>IRREPARABLE HARM</u>

The Court finds that absent preliminary relief, Defendants' illegal warrantless arrest policy will continue to cause irreparable harm to Plaintiffs. Plaintiffs need only demonstrate "a real possibility" that they are likely to suffer irreparable harm about preliminary relief. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

The Ninth Circuit has established that the "deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018); *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (irreparable harm exists where "preliminary injunction is necessary to ensure that individuals…are not needlessly detained").

Plaintiffs' members face irreparable harm because they face "a real possibility" that they will "be [] detained and subjected to unlawful detention" given Defendants' ongoing indiscriminate arrest practices. *Melendres*, 695 F3d at 1002. Plaintiffs' members are fearful of leaving their homes, going to work, going to the doctor, attending religious services, and running even basic errands. *See* ECF __ (Mot. for PI Ex. 70 [Third Strater Decl.]) ¶ 23. While in detention, members are actively subject to a deprivation of liberty. Even after being released from detention, Plaintiffs' members continue to experience harms flowing from their arrest and detention. For example, Plaintiff Villegas Molina lost his job while he was detained, risked losing his housing, and still has to attend check-ins and wear an ankle monitor. *See* ECF __ (Mot. for PI Ex. 61 [Third Villegas Molina Decl.]) ¶¶ 10, 31–32.

Defendants' unlawful warrantless arrest policy shows no signs of slowing. Defendants have stated they plan to go even further with their mass deportation agenda, and DHS continues to conduct unlawful warrantless arrests. *See* ECF __ (Mot. for PI Ex. 8 [DO E.O. Dep.]) at 175:2–176:21 (testifying that while operation names may change, practices remain the same); ECF __ (Mot. for Pl. Ex. 12 [CBP 30(b)(6) Dep.]) at 152:6–153:21, 169:20–175:1, 242:6–245:18, 317:14–318:10; ECF __ (Mot. for PI Ex. 18 [M.D.L. I-213]) (warrantless arrest in January 2026 roving patrol based solely on unlawful presence); ECF __ (Mot. for PI Ex. 19 [M.F.R. I-213]) (same); ECF __ (Mot. for PI Ex. 7 [SDDO C.C. Dep.] at 45:7–51:9, 85:4–11 (team has doubled in size in last six months and is making 10-15 arrests per week, of which about 4 are collateral). This is further supported by Defendants' public statements, including Tom Homan's statements: "We're

-13-
[PROPOSED] ORDER GRANTING PRELIMINARY INJUNCTION

going to flood the zone. You're going to see more ICE agents [than] you ever seen before" and "[y]ou will see collateral arrests increase."[2]

## V.   BALANCE OF EQUITIES AND PUBLIC INTEREST

When the government is a party, the balance of the equities and public interest factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).  When the government's alleged action violates federal law, the public interest factor generally weighs in favor of the plaintiffs.  *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013).

The Court finds that the balance of equities tips sharply in Plaintiffs' favor because the "public interest benefits" when "individuals are not deprived of their liberty" by an unlawful process.  *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017).  Avoiding such "preventable human suffering" strongly tips the balance in favor of Plaintiffs.  *Id*.  Absent an injunction, Plaintiffs' members will continue to face irreparable harm as a result of Defendants' unlawful warrantless arrest tactics.

In contrast, Defendants cannot show they are likely to suffer harm by having to comply with their statutory and regulatory obligations.  "Complying with the law does not impose harm." ECF 87 at 47 (quoting *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983)); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).  Plaintiffs' requested relief does not prevent any immigration agent from enforcing federal immigration laws to the fullest extent allowed by law. Injunctive relief is standard in cases where there are widespread statutory or constitutional violations.  *See, e.g.*, *LaDuke*, 762 F.2d at 1333; *Melendres*, 695 F.3d at 1002.

District-wide relief is necessary "to provide complete relief" to each of the Plaintiffs "with standing to sue"—including the named associations.  *See Vasquez Perdomo*, 148 F.4th at 688.

---

[2] Ximena Bustillo, *Border czar promises 'mass deportations coming' to fulfill Trump's promises*, NPR (May 7, 2026), https://www.mainepublic.org/npr-news/2026-05-07/border-czar-promises-mass-deportations-are-coming-to-fulfill-trumps-promises.

-14-

The Court, having considered Plaintiffs' Motion for Preliminary Injunction, the parties, filings, the arguments of counsel, and the record in this case, and finding good cause therefore, hereby **GRANTS** the Motion and **ORDERS** as follows[3]:

1.    Defendants are enjoined from enforcing their policy and practice of making warrantless civil immigration arrests in this District without a pre-arrest individualized determination by the arresting agent or officer of probable cause that the person being arrested is likely to escape before a warrant can be obtained, as required by 8 U.S.C. 1357(a)(2) and 8 C.F.R. § 287.8(c)(2).

   a.    In considering the likelihood of a person's escape before a warrant can be obtained for their arrest, an immigration agent or officer must consider the totality of the circumstances known to the agent or officer before making the arrest. These include circumstances the agent or officer learns or can discover between first encountering a person and arresting them without a warrant. Factors relevant to the determination include prior court attendance or other compliance with authorities, and ties to the community (including family circumstances, residence, or employment). The particular circumstances before an agent or officer are not to be viewed singly; they must be considered as a whole. Mere presence within the United States in violation of United States immigration law is not, by itself, sufficient to conclude that a person is likely to escape before a warrant for arrest can be obtained.

2.    Defendants are further enjoined from relying on the escape risk standard or analytical approach set forth in the five-page memorandum from former Acting Director of ICE, Todd Lyons, Senior Off. Performing Duties of Dir., Re: Civil Immigration Arrest Authority: Administrative Arrest Warrants and Warrantless Arrests (Jan. 28, 2026).

---

[3] The Court notes that its order is in line with other district courts across the country that have held that Defendants' practices are violating the law. *See M-J-M-A- v. Hermosillo*, __ F. Supp. 3d __ (D. Or. 2026), No. 6:25-CV-02011-MTK, 2026 WL 562063 (D. Or. Feb. 27, 2026); *Ramirez-Ovando v. Noem*, 810 F. Supp. 3d 1209 (D. Colo. 2025); *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1 (D.D.C. 2025); *United Farm Workers v. Noem*, 785 F. Supp. 3d 672, 735 (E.D. Cal. 2025).

[PROPOSED] ORDER GRANTING PRELIMINARY INJUNCTION

3.      Defendants shall track the encounters they have in this District in which they do not proceed with a civil immigration arrest because they determined that an individual was not likely to escape before a warrant could be obtained.

4.      In cases where Defendants proceed to make a warrantless civil immigration arrest in this District, Defendants must document, as soon as practicable, the facts and circumstances surrounding the warrantless civil immigration arrest in narrative form, including:

a.      That the individual was arrested without a warrant;

b.      The specific, particularized facts that supported the agent's or officer's pre-arrest probable cause to believe that the person was likely to escape before a warrant could be obtained, including information concerning the individual's ties to the community.

5.      When completing the above documentation, Defendants must include the date, time, and location of the arrest, and the date and time the agent or officer completed the documentation.

6.       Any agent or officer of Defendants shall not use boilerplate language when describing the individualized assessment of likelihood of escape in the documentation ordered above.  The use of boilerplate language may indicate noncompliance.

7.      Within 30 days of this Order and every 30 days thereafter until this litigation is terminated or the Court rules otherwise, Defendants shall provide to Plaintiffs' counsel the documentation describing any civil immigration arrest made by Defendants' and their agents within this District where no warrant existed at the time agents encountered the individual, or if requested by Plaintiffs' counsel concerning any such specific individual, no later than seven days after the request.  Within 30 days of this Order and every 30 days thereafter until this litigation is terminated or the Court rules otherwise, Defendants shall also provide to Plaintiffs' counsel documentation of instances where they do not proceed with a civil immigration arrest because they determined that an individual was not likely to escape before a warrant could be obtained in this District.

-16-

8.     The Court, having found a strong likelihood of success on the merits and that the balance of equities overwhelmingly favors Plaintiffs, further ORDERS that no security shall be required under Federal Rule of Civil Procedure 65(c).

IT IS SO ORDERED.

DATED: _____, 2026

_____
HON. MAAME EWUSI-MENSAH FRIMPONG

[PROPOSED] ORDER GRANTING PRELIMINARY INJUNCTION