STACY TOLCHIN (SBN 217431)
*stacy@tolchinimmigration.com*
LAW OFFICES OF STACY TOLCHIN
776 E. Green St., Suite 210
Pasadena, CA 91101
Tel: 213-622-7450; Fax: 213-622-7233

MOHAMMAD TAJSAR (SBN 280152)
*mtajsar@aclusocal.org*
MAYRA JOACHIN (SBN 306065)
*mjoachin@aclusocal.org*
EVA BITRÁN (SBN 302081)
*ebitran@aclusocal.org*
DAE KEUN KWON (SBN 313155)
*akwon@aclusocal.org*
STEPHANIE PADILLA (SBN 321568)
*spadilla@aclusocal.org*
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
P.O. Box 811370
Los Angeles, CA 90081-0007
Tel: 213-977-5232; Fax: 213-201-7878

*Counsel for Stop/Arrest Plaintiffs*

(*Additional counsel listed on next page*)

MARK ROSENBAUM (SBN 59940)
*mrosenbaum@publiccounsel.org*
REBECCA BROWN (SBN 345805)
*rbrown@publiccounsel.org*
RITU MAHAJAN (SBN 252970)
*rmahajan@publiccounsel.org*
GINA AMATO (SBN 215519)
*gamato@publiccounsel.org*
AMANDA MANGASER SAVAGE
(SBN 325996)
*asavage@publiccounsel.org*
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Counsel for All Plaintiffs*

ANNE LAI (SBN 295394)
*alai@law.uci.edu*
UC IRVINE SCHOOL OF LAW
IMMIGRANT AND RACIAL JUSTICE
SOLIDARITY CLINIC
P.O. Box 5479
Irvine, CA 92616-5479
Tel: 949-824-9894; Fax: 949-824-2747

*Counsel for Stop/Arrest Plaintiffs*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pedro VASQUEZ PERDOMO, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>Markwayne MULLIN, in his official capacity as Secretary, Department of Homeland Security, *et al.*,<br><br>        Defendants. | Case No.: 2:25-cv-05605-MEMF-SP<br><br>***DISCOVERY MATTER***<br><br>**JOINT STIPULATION RE: PLAINTIFFS' MOTION FOR AN ORDER ENFORCING ECF 370 AND FOR SANCTIONS**<br><br>*[Filed concurrently with Declaration of David H. Fry; [Proposed] Order]*<br><br>Referred to Hon. Sheri Pym<br>United States Magistrate Judge<br><br>Date:  July 14, 2026<br>Time: 11:00 a.m.<br><br>Discovery Cutoff:  March, 24, 2027<br>Pre-Trial Conf.:  August 4, 2027<br>Trial:  August 23, 2027 |

Case No.: 2:25-cv-05605-MEMF-SP

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO ENFORCE ECF 370 AND FOR SANCTIONS

JACOB S. KREILKAMP (SBN 248210)
*jacob.kreilkamp@mto.com*
DAVID FRY (SBN 189276)
*david.fry@mto.com*
ADAM B. WEISS (SBN 296381)
*adam.weiss@mto.com*
SARA H. WORTH (SBN 341088)
*sara.worth@mto.com*
LAURA R. PERRY (SBN 342504)
*laura.perrystone@mto.com*
HENRY D. SHREFFLER (SBN 343388)
*henry.shreffler@mto.com*
LAUREN E. KUHN (SBN 343855)
*lauren.kuhn@mto.com*
ANGELA URIBE (SBN 353579)
*angela.uribe@mto.com*
MAGGIE BUSHELL (SBN 354048)
*maggie.bushell@mto.com*
MUNGER, TOLLES & OLSON LLP
350 S. Grand Ave., 50th Floor
Los Angeles, CA 90071
Tel: 213-683-9100; Fax: 213-683-9100

*Counsel for Stop/Arrest Plaintiffs*

BREE BERNWANGER (SBN 331731)
*bbernwanger@aclunc.org*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel: 415-621-2493

*Counsel for Stop/Arrest Plaintiffs*

BRISA VELAZQUEZ OATIS
(SBN 339132)
*bvoatis@aclu-sdic.org*
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Tel: 619-398-4199

*Counsel for Stop/Arrest Plaintiffs*

EDGAR AGUILASOCHO (SBN 285567)
*eaguilasocho@farmworkerlaw.com*
MARTÍNEZ AGUILASOCHO LAW, INC.
900 Truxtun Ave, Suite 300
Bakersfield, CA 93301
Tel: 661-859-1174

*Counsel for Plaintiff United Farm Workers*

JESSICA KARP BANSAL (SBN 277347)
*jessica@ndlon.org*
LAUREN MICHEL WILFONG*
*lwilfong@ndlon.org*
JIA FU*
*jennifer@ndlon.org*
NATIONAL DAY LABORER ORGANIZING
NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Tel: 626-214-5689

*Counsel for Stop/Arrest Plaintiffs*

MATTHEW J. CRAIG (SBN 350030)
*mcraig@heckerfink.com*
MACK E. JENKINS (SBN 242101)
*mjenkins@heckerfink.com*
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Tel: 212-763-0883; Fax: 212-564-0883

*Counsel for Access/Conditions Plaintiffs*

CARL BERGQUIST*
*cbergquist@chirla.org*
COALITION FOR HUMANE IMMIGRANT
RIGHTS
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

*Counsel for Plaintiff Coalition for Humane
Immigrant Rights*

ALVARO M. HUERTA (SBN 274787)
*ahuerta@immdef.org*
BRYNNA BOLT (SBN 339378)
*bbolt@immdef.org*
ALISON STEFFEL (SBN 346370)
*asteffel@immdef.org*
IMMIGRANT DEFENDERS LAW CENTER
634 S. Spring St., 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

*Counsel for Plaintiff Immigrant
Defenders Law Center*

* Admitted pro hac vice

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO ENFORCE ECF 370 AND FOR SANCTIONS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on July 14, 2026, at 11:00 a.m. or as soon thereafter as counsel may be heard, before the Honorable Sheri Pym in Courtroom 4 of the United States District Court for the Central District of California, 3470 Twelfth Street, Riverside, California 92501, Plaintiffs Pedro Vasquez Perdomo, Carlos Alexander Osorto, Isaac Villegas Molina, Jorge Hernandez Viramontes, Jason Brian Gavidia, the Los Angeles Worker Center Network, United Farm Workers, Coalition for Humane Immigrant Rights, and Immigrant Defenders Law Center (collectively, "Plaintiffs") will, and hereby do, move the Court for an order (1) imposing a hard deadline for ICE to produce all documents the agency was ordered to produce by the Court's January 16, 2026 Order compelling discovery (ECF 370); (2) sanctioning ICE for failure to comply with ECF 370 by the Court's previously imposed deadlines; and (3) clarifying that counsel of record must be involved in the process of developing Defendants' discovery responses, including document collection and production, and are personally subject to monetary sanctions if those responses are unreasonable.

Pursuant to Federal Rule of Civil Procedure 37(a) and Local Rule 37-1, counsel for Plaintiffs and Defendants' counsel have met and conferred via teleconference and exchanged written correspondence in an attempt to resolve their disputes. The parties held a telephonic conference on June 10, 2026. The parties have been unable to reach agreement regarding the subject matter of this Motion. This Motion is based upon this Notice of Motion, the Joint Stipulation, the Declaration of David H. Fry filed herewith, and any other papers or argument of counsel that may be filed or submitted in connection with this Motion.

DATED:  June 23, 2026                    MUNGER, TOLLES & OLSON LLP


                                        By:   _____/s/ David Fry_____
                                              DAVID FRY
                                              *Counsel for Stop/Arrest Plaintiffs*

-3-                    Case No.: 2:25-cv-05605-MEMF-SP

DATED:  June 23, 2026                              UNITED STATES DEPARTMENT OF JUSTICE

                                        By:      _/s/ Jonathan Robbins_____
                                                 JONATHAN A. ROBBINS
                                                 Assistant Director
                                                 Office of Immigration Litigation
                                                 *Counsel for Defendants*

## I.      PLAINTIFFS' INTRODUCTORY STATEMENT

This motion seeks sanctions for ICE's undisputed failure to comply with a clear court order and requests forward-looking remedies designed to avoid the need for constant motion practice.

Eight months have passed since the District Court issued its order granting expedited discovery and approving four document requests to be served on Defendants.  Nearly seven months have passed since the deadline for Defendants to produce responsive documents.  Five months have passed since this Court issued its third order compelling discovery (ECF 370), which confirmed what was already obvious: that Request for Production ("RFP") No. 2 was directed at 15 listed *operations*, not at the stops or arrests of particular people.  But when Defendant Immigrations and Customs Enforcement ("ICE") finally provided declarations explaining its document collection and production process, as required by the Court, the declarations revealed that the agency collected electronically stored information ("ESI") concerning *only* specific arrestees and *only* the arrestees from certain operations, not all of the listed operations or even all of the operations at which ICE officers were present.

ICE's noncompliance is not disputed.  Defendants concede they made a "mistake."  In the meet and confer conference about this motion, counsel for Defendants represented that some form of communication failure had occurred because of staffing changes at DOJ.  ICE is reportedly taking steps to address the inadequate production, including gathering (at least some) documents using only a date range and no narrowing search terms.  The adequacy of those steps remains to be seen, but the effort is unquestionably many months late and there remain fundamental defects in ICE's document gathering and production process that Defendants have not indicated will be remedied.  The very fact that this "mistake" occurred at all points to systemic problems in how Defendants are handling discovery and responding (or not) to court orders.  It is nearly inconceivable that any lawyer at ICE read ECF 370 and decided that searching for the names of a handful of individuals would satisfy the order.  And it is deeply problematic that counsel of record was not aware of how ICE was "complying" with ECF 370 until nearly 5 months after the order issued.  Counsel of record simply did not heed this Court's reminder "of their responsibilities as

officers of the court to ensure that the parties are meeting their discovery obligations." ECF 370 at 10.

At this point, basic fairness requires escalating consequences for Defendants' recurring disregard for their discovery obligations and the orders of this Court. Defendants did not take the requests seriously in the first instance and, to date, ICE has not taken the Court's order compelling production seriously. The Court should impose a hard deadline for ICE to produce documents responsive to the RFPs (which will be at least the seventh deadline for ICE to produce them) and indicate that any claim that the agency is unable to meet the deadline due to inadequate resources will be viewed unfavorably. Defendants have indicated that ICE would agree to a deadline of July 31, 2026 and that should be the deadline. Monetary sanctions should be imposed on ICE for its failure to comply with the Court's order. Finally, the Court should make clear—clearer even than in ECF 370, which evidently was not clear enough—that counsel of record are required by the Federal Rules to participate in the discovery process, are responsible for ensuring the reasonableness of their clients' information gathering and production processes in discovery, and may personally be subject to sanctions if the agencies' processes for responding to discovery are unreasonable.

## II.    DEFENDANTS' INTRODUCTORY STATEMENT

Defendants disagree with Plaintiffs' characterization of the events giving rise to this motion and respectfully submit that sanctions are unwarranted. As an initial matter, Defendants acknowledge that U.S. Immigration and Customs Enforcement (ICE) original collection methodology of data from government issued cell phones may not fully capture the scope of materials required by ECF 370. Defendants do not dispute that supplemental collection efforts are appropriate. Indeed, after learning of the mistake made in ICE's collection process pertaining to requirements under ECF 370, Defendants promptly informed Plaintiffs of the error and that ICE would undertake a renewed processing and production effort from government-issued devices, without the previously utilized search terms, produce any additional standardized documentation, including outstanding I-200s discovered through this additional review, provide the information in RSMF format as requested by Plaintiffs, and supplement declarations submitted to Plaintiffs

concerning the collection process—with an understanding that these efforts should be completed by July 31, 2026.

Thus, unlike many Rule 37 disputes, the parties agree regarding Defendant agency's obligations to supplement their productions and affidavits to ensure a comprehensive response to ECF 370. In short, the primary issue before the Court is not whether Defendants will comply with their discovery obligations under the Court's orders as Defendants have already agreed to undertake the supplemental production sought by Plaintiffs. The question is whether the circumstances surrounding the original production warrant sanctions. They do not.

Plaintiffs repeatedly characterize perceived deficiencies as evidence of deliberate disregard for the Court's orders and systemic discovery failures. The record demonstrates otherwise. As Plaintiffs acknowledge, Defendants were forthright during the parties' meet-and-confer process that the agency had made a mistake by using narrowed search terms that could lead to less responsive documents for production from government issued devices. This stemmed from a miscommunication between agency counsel and counsel of record which contributed to an incomplete production. Defendants did not attempt to conceal the issue. To the contrary, Defendants voluntarily provided the declarations that revealed the collection methodology, candidly discussed the issue with Plaintiffs, acknowledged the deficiency, and agreed to undertake corrective action immediately.

Plaintiffs further suggest that Defendants' counsel of record ignored their own discovery obligations because counsel learned additional details regarding the collection methodology reflected in the ICE declarations once productions had been made. But large-scale government discovery of this nature necessarily involves coordination among agency personnel, technical staff, agency counsel, and Department of Justice attorneys. The fact that counsel (in the midst of voluminous, truncated, expedited discovery) learned that some aspects of the collection process were insufficient does not establish bad faith, misconduct, or a failure to supervise discovery. Rather, it demonstrates precisely why Defendants investigated the issue once identified and immediately agreed to remedial measures.

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO ENFORCE ECF 370 AND FOR SANCTIONS

Nor does the record support Plaintiffs' assertion that Defendants failed to take the Court's order seriously. Defendants have been actively engaged in collection, review, production, and meet-and-confer efforts throughout the discovery process. The issue identified here concerns the adequacy of a particular collection methodology – one among many at multiple components of DHS – not a refusal to comply with the Court's orders. Once Defendants determined that the methodology was insufficient, they agreed to correct it.

Plaintiffs also overstate the significance of the original collection methodology. While Defendants acknowledge that the production was deficient in some respects and requires supplementation, Plaintiffs do not dispute that the produced documents were responsive to their claims and the Court's order. Nor do Plaintiffs identify any evidence that responsive information was intentionally withheld or concealed, or any concrete prejudice resulting from the original methodology that cannot be remedied through the supplemental production already underway. Discovery remains ongoing, Plaintiffs have already filed their motion for preliminary injunction (which was the basis for this Court's limited, expedited discovery order), and trial is not scheduled until August 2027. Defendants understand and continue to work through ongoing discovery, but voluminous discovery of this nature and scope requires time. Defendants' supplemental production will occur well before the close of discovery and will provide Plaintiffs with ample opportunity to review and utilize the materials at issue. Defendants do not shirk their discovery obligations but implore the Court to acknowledge the need to ensure comprehensive responsive productions and coordination among the parties, without resorting to piling motions practice or unwarranted sanctions litigation.

To the extent Plaintiffs seek sanctions as to forensic imaging of personal devices, those requests are duplicative of issues already before the Court in connection with Defendants' pending objections (ECF No. 395), the Court's order ECF 538, and upcoming related proceedings on the matter. To the extent Plaintiffs seek sanctions against Defendants' counsel of record, such relief is entirely inappropriate. To be sure, Defendants' counsel is fully aware of its obligations as counsel of record.  But Defendants' counsel themselves cannot be held to comply with an order to produce responsive documents in Defendant *agencies'* possession, custody, and control. Sanctions are a tool

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO ENFORCE ECF 370 AND FOR SANCTIONS

courts may use to compel a party to comply with a court order directed *at that party*, *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 442 (1911)—making it inappropriate to impose sanctions on counsel of record who themselves cannot comply with the order.

At bottom, the record reflects an honest oversight and communication failure regarding implementation of Defendant ICE's collection process; not bad faith, willful noncompliance, or disregard of the Court's authority. This delay, while unfortunate and understandably frustrating, has not prejudiced Plaintiffs because discovery is ongoing (Defendants are committed to ongoing productions), Plaintiffs have continued to prosecute and brief the relevant issues based on the substantial discovery already produced to date, and Plaintiffs retain an opportunity to review and utilize the supplemental productions ahead of the trial in 2027. Sanctions are neither necessary nor appropriate, especially given Defendants have acknowledged the deficiency, are undertaking corrective action, agreed to Plaintiffs' requested production format, collection parameters, and their proposed July 31 deadline.

## III.    PLAINTIFFS' CONTENTIONS AND POINTS AND AUTHORITIES

### A.    Background

#### 1.    The RFPs and the Court's January 16 Order (ECF 370)

On October 17, 2025, the District Court granted Plaintiffs' motion for expedited discovery, authorizing Plaintiffs to serve a set of document requests that Plaintiffs had attached to the motion papers.  ECF 223 at 10.  On October 23, 2025, this Court ordered that Defendants complete their production of documents in response to those document requests not later than November 21, 2025.  ECF 227 at 4.

On December 4, 2025, the parties filed simultaneous briefs concerning a dispute over whether Defendants had to produce documents concerning three of the 15 operations listed in RFP No. 2, specifically operations (o)-(m).  *See* ECF 291-292.  Defendants unilaterally had determined that they did not need to do so.  On December 12, 2025, the Court issued an order requiring Defendants to produce documents concerning all 15 operations listed in the RFPs.  ECF 305 at 7.

On December 23, 2025, Plaintiffs filed a motion to compel concerning Defendants' responses to the document requests.  ECF 320.  One of the principal issues raised in that motion

concerned Defendants' unduly narrow reading of RFP No. 2 to request documents solely concerning particular *individuals* stopped or arrested during the particular operation.  *See* ECF 370 at 5.  The Court granted the motion to compel.  ECF 370 at 11.  In doing so, the Court found, *inter alia*, that "*[t]he plain language of [RFP No. 2] seeks documents related to the entire operation at issue and not just an encounter during the operation.*"  *Id.* at 5-6 (emphasis added).  The Court found that the language of the RFP was "clear" and that Defendants' reading was "untenable" and "implausible" and their "narrow construction of the court's orders [was] unreasonable."  *Id.* at 5-6.  The order required Defendants to complete their production by January 30, 2026.  *Id.* at 9.  That deadline was subsequently extended by order of the Court to February 13, 2026 (ECF 387), and ultimately extended as to ESI to April 13, 2026 by a series of stipulations between the parties that the Court approved (*see* ECF 402, ECF 437, and ECF 460).

The January 16, 2026 order also required the Defendants to "[p]rovide affidavits detailing their document collection process."  ECF 370 at 9.

### 2. The ICE Declarations Disclose Numerous Violations of the Order

On June 4, 2026, Defendants emailed Plaintiffs two ICE declarations purporting to describe that agency's document collection process.  Declaration of David H. Fry ("Fry Decl.") ¶ 3, Exs. 1, 2.  Although not provided until June, both declarations were signed on April 13, 2026—the deadline for producing ESI.  *Id.* Exs. 1, 2.  The declarations fail to describe significant aspects of the document collection process, such as how ICE identified the persons whose documents would be collected or how—if at all—ICE collected documents other than ESI.  But the declarations disclose enough to show that ICE's efforts were *directly contrary to the instructions of this Court*.

*First*, the search terms ICE used to identify potentially responsive documents consisted, *in their entirety*, of 11 full legal names and 8 so-called "A-numbers" (identification numbers for immigrants).  Fry Decl. Ex. 1 ("J.F. Declaration") ¶ 4.  As described by the ICE declarant herself, "[t]hese search terms are the identified persons who were targeted, arrested, and/or encountered by

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO ENFORCE ECF 370 AND FOR SANCTIONS

ICE." *Id.* ICE used no search terms other than names and A-numbers—*i.e., no search terms directed at the operations as a whole*—only terms specific to 11 individuals.[1]

*Second*, ICE did not search for documents concerning all 15 of the operations at issue. Rather, the individuals who are identified in ICE's search terms were encountered (or identified as "targets") at only five of the 15 operations. Fry Decl. ¶ 4. But Defendants have conceded that ICE officers were present for at least 12 of the operations. Fry Decl. ¶ 6. And, moreover, ICE likely possesses responsive documents even for operations at which it had no personnel present because ICE handled paperwork for arrests made by Border Patrol agents during this time period. *See id.* Ex. 6 at 126:16-127:8 (J.C.E. Depo.).

*Third*, the Court's January 16, 2026 order required Defendants to "[c]ollect standardized documentation, including any targeting information or slide presentations given to agents from all relevant operations and produce them" (ECF 370 at 8), but the ICE declarations make no reference to any effort to collect those kinds of documents. *See* Fry Decl. Exs. 1, 2.

*Fourth*, the Court's January 16, 2026 order required Defendants to "gather all documentation concerning [the] arrests" of all persons who were arrested during the operations. ECF 370. The ICE declarations make no reference to any effort to gather these categories of documents, except to the extent the documents were in the possession of ICE agents present at the operation.

*Fifth,* the E.W. Declaration confirms that ICE has imaged and searched only the government-issued phones of its agents, even though the Court's order required the imaging of any phone used by any agent who was present at the operations. Fry Decl. Ex. 2 ¶ 2. During the parties' meet and confer regarding this motion, counsel of record took the position that the Court's order requires imaging only of devices used during the course of one of the 15 operations (Fry Decl. ¶ 7)—even though the Court already had advised the same attorney on the record that that interpretation of the order is wrong. ECF 478 (3/20/26 Hr. Tr.) at 9:16-19 ("I certainly agree that

---

[1] Even that description is misleading, because ICE does not document encounters that do not result in an arrest. Therefore, ICE searched only for persons *arrested* during some operations.

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO ENFORCE ECF 370 AND FOR SANCTIONS

the Order required the personal phones to be imaged, regardless of whether the agent or officer, whoever it was, said that they had used the phone at the operation.").

*Sixth,* the searches of the government phones were deficient. The search terms used were deficient for the reasons explained above. Further, Plaintiffs can confirm that the searches for responsive ESI on the phones were deficient, because ICE did not produce any documents at all from G.A., an HSI agent who participated in text chains that *already have been produced* in this action from a different HSI agent's phone. *See* Fry Decl. ¶ 8. The fact that those same messages were not discovered on G.A.'s government device points to three possibilities: (1) an unreasonable search of the device; (2) deletion of the data from his device, which should show up on a forensic imaging report and be produced; or (3) the custodian's use of an unimaged *personal* phone for government business. Counsel of record represented to Plaintiffs that he had confirmed G.A.'s phone had no responsive ESI on it—but when pressed for details on how he had gone about confirming that fact, counsel disclosed that what he meant was that *he asked ICE* to confirm to him that there was no responsive ESI on the phone. Fry Decl. Ex. 7 ("I double-checked to make sure that there was no responsive material for [G.A.]'s phone, and there were no responsive texts on his phone"). In other words, not only did counsel of record *not* reasonably investigate why no documents were being produced from G.A.'s device, even though the officer was a participant in text chains previously produced in response to the same RFPs, but counsel misleadingly suggested to Plaintiffs that he had done so.

### 3. The ICE Affidavits Disclose Other Unreasonable Conduct

ICE's document collection and production effort suffered from additional defects that did not violate specific provisions in the Court's order, but nevertheless violated ICE's obligation to conduct a reasonable, good faith collection in order to comply with the order.

For instance, ICE's search terms—in addition to being focused on individuals, were structured in an unreasonable way. ICE searched for the full legal names of the individuals, including middle names, so that documents containing only the last name or even the first and last name of the individual would be excluded. J.F. Decl. ¶ 4. So, if ICE had been looking for the name of the 41st President, the search term ICE would have applied would have been "George

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO ENFORCE ECF 370 AND FOR SANCTIONS

Herbert Walker Bush," and would have excluded documents that contained such terms as "Bush," "George Bush," "G. Bush," "George H.W. Bush," and "Bush, George Herbert Walker." Even if ICE could properly limit its search to certain people encountered during the operations—which the Court made clear it cannot—these search terms would be unreasonable for that purpose. ICE's decision to limit its searches in this manner cannot be explained by any miscommunication with DOJ; the search terms were obviously structured to minimize the number of documents pulled for review and, accordingly, to reduce the number of damaging documents produced.

In addition, ICE applied these unreasonably limited search terms to an unreasonably limited universe of data. ICE searched for the names and A-numbers across unidentified custodians' "emails, government cell phone text and Microsoft Teams messages, and their OneDrive account." J.F. Decl. ¶ 4. That excludes other applications that could be expected to contain responsive data. ICE witnesses have testified, for instance, that they use Signal to communicate with each other. Fry Decl. Ex. 8 at 42:6 (C.L.C. Depo.). Defendants counsel concede that at least some ICE agents used WhatsApp. Fry Decl. ¶ 8. ICE should have searched custodians' data across all applications. Plaintiffs' understanding is that ICE will be doing so as part of its renewed production efforts, but it is indefensible that they did not do so initially.

The data that ICE did collect from phones was exported into .pdf "reports"—one report for each phone. E.W. Decl. ¶¶ 8, 10. Converting the data to .pdf format eliminated all metadata, inappropriately combined separate documents into a single document, and made it impossible to "thread" communications that are part of a single chain (*i.e.*, messages and responses). At a minimum, ICE cannot deprive Plaintiffs of the metadata associated with these communications. This data should have been collected and produced using RSMF format, the industry standard— which Defendants have already agreed to do for the CBP phones.

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO ENFORCE ECF 370 AND FOR SANCTIONS

### 4. ICE's Narrow Search Process Was Not Disclosed—Even Though The Parties Negotiated Over Search Terms

Exacerbating the problems with ICE's document search, Plaintiffs did not know that ICE had so severely limited its document searching until the two declarations were delivered on June 4, 2026. That is not because Plaintiffs were uninterested. Counsel engaged in a meet and confer process concerning possible search terms for ESI. Fry Decl. Exs. 3-4. On February 27, 2026, Defendants' counsel sent an email stating, in pertinent part:

> We are continuing to coordinate with the agencies as to proposed search terms and hope to circulate that as soon as possible. In the meantime, we wanted (1) to ask if Plaintiffs and Intervenors are available Monday at 1 PM PT; and (2) to share the search terms initially used for the ESI pull we discussed during our call earlier this week:
>
> • Yank, tow, Montebello, carwash, car wash, Whittier, Touch and Glow, Hollywood, Paramount, home depot, Handy, Culver, Magnolia, Fountain Valley, Westlake, San Bernardino, Pasadena, Naples, Long Beach, Contractor, Warehouse, Pomona, Trojan Horse, Carmenita, Sunset, Alondra, Wilshire, Washington, and Del Mar, Walnut.

Fry Decl. Ex. 3. The following week, Defendants' counsel sent a follow-up email that stated, in pertinent part:

> Per Plaintiffs' request, I'm providing proposed search terms and information regarding the ESI issue in advance of our meet and confer tomorrow. To facilitate a more productive discussion tomorrow, I'll try to break down the issues causing the CBP the most problems. (The ESI issue has not posed a problem for ICE as of this email).

Fry Decl. Ex. 4. At no time did Defendants' counsel inform Plaintiffs that ICE was using a wholly different set of search terms than those that counsel was proposing and the parties were negotiating over. Nor were Plaintiffs told that ICE's search terms were not targeted at the operations, as the CBP search terms were, but at individual people who were encountered (or identified as "targets") during the operations.

Plaintiffs understand from the meet and confer process that Defendants' lead counsel, who sent the emails above, did not know what search terms ICE was using until he received the ICE declarations in June. Fry Decl. ¶ 6. While that suggests he was not intending to mislead Plaintiffs by concealing that information, it begs the question of *why* Defendants' counsel—in the midst of negotiating search terms with Plaintiffs—was unaware of what search terms ICE was using to collect documents. And, of course, it says nothing about why agency counsel at ICE thought those search terms were appropriate in light of this Court's January 16, 2026 order.

On June 4, 2026, Defendants' counsel forwarded the two ICE declarations to Plaintiffs by email. Fry Decl. ¶ 3. On June 5, Plaintiffs sent Defendants' counsel a letter stating that Plaintiffs anticipated filing a motion for sanctions and requesting a meet and confer call. *Id.* Ex. 5. During the meet and confer on June 10, in addition to stating that Defendants made a "mistake" and articulating steps that were being taken to remedy it, Defendants' counsel stated that he forwarded the ICE declarations to Plaintiffs promptly upon receiving them—implying that he received them around June 4. Fry Decl. ¶ 6. But the declarations are both dated April 13, 2026. Fry Decl. Exs. 1, 2. So, ICE waited nearly two months to send the declarations even to its own lawyers, despite the fact that ECF 370 required Defendants to provide them. This nearly two-month delay in complying with an unambiguous requirement of the Court's January 16, 2026 order (*see* ECF 370 at 9), is itself evidence of a significant problem with agency counsel managing Defendants' compliance with their discovery obligations.[2]

---

[2] The order states that Defendants must "[p]rovide affidavits detailing their document collection process." ECF 370 at 9. Plaintiffs read that sentence to require Defendants to provide the declarations to the Court. Defendants have indicated that they read the sentence to require only that the declarations must be provided to Plaintiffs. Fry Decl. ¶ 5. Plaintiffs concede that the language of the order is ambiguous with respect to that specific question and request that the Court clarify that Defendants must file with the Court these declarations and any further declarations/affidavits provided pursuant to ECF 370. ICE's indefensible decision to designate the April 13 affidavits as "confidential" under the protective order will be the subject of a separate motion unless ICE agrees to de-designate them.

**B.** **Argument**

    **1.** **A Hard Deadline Should Be Imposed for ICE's Compliance with ECF 370.**

ICE should be ordered to complete its production of documents the Court ordered it to produce in ECF 370 not later than July 31, 2026. While that is a little more than two weeks after the hearing on this motion, it is more than eight months after ICE was originally ordered to produce these materials and more than 6 months after the January 16, 2026 order compelling production. It is also more than 3 months after ICE prepared its affidavits demonstrating clear noncompliance. Not later than June 10, 2026, Defendants' counsel *agreed* that ICE's production had been inadequate (and said he understood it was inadequate before forwarding the ICE declarations to Plaintiffs on June 4). Finally, Defendants agreed on June 16, 2026 (the day this Joint Stipulation was served, but before service) to a July 31, 2026 deadline for completing the production—although the parties have not agreed on what would constitute a complete production. Fry Decl. ¶ 9.

Compliance should require reasonable, good faith processes, such as gathering and reviewing data from all applications used by the ICE employees that may contain responsive information—such as Signal and WhatsApp. Defendants indicated on June 16, 2026 that ICE would collect from government-issued phones using only a date range and no search terms, but did not make the same representation concerning other ESI. Fry Decl. ¶ 9. ICE obviously needs to do a reasonable collection of email, Teams messages, and other documents in the possession of the ICE officers—not just from their government-issued phones. Compliance should also require production in a useable format that does not destroy meaningful information, such as metadata and threading of communications.[3] This compliance deadline should not extend to the imaging of personal phones, however, as the deadline to do so already has passed, and Defendants are already subject to an Order to Show Cause why they should not be found in contempt for their failure to complete that imaging. ECF 538.

---

[3] Defendants indicated on June 16, 2026 that ICE would agree to pull and produce information from government-issued phones in the industry-standard RSMF format. Fry Decl. ¶ 9.

The deadline should be a hard deadline.  In the past, Defendants have complained that they lack adequate resources to meet their obligations in this case.  But the issue is not the volume of discovery but Defendants' failure to devote sufficient resources to it.  ICE is one of the most well-funded law enforcement agencies in the world.  And Plaintiffs understand that DOJ has previously authorized additional attorney support for this very case—but only because the Court had imposed a hard deadline for production of the required materials.  Plainly, it is possible for the federal government to meet its discovery obligations.  They must choose whether to devote the resources necessary to do so or else face escalating sanctions for their failure to comply.

Defendants launched a massive operation that involved literally tens of thousands of encounters between agents and members of the public over the course of months.  Senior ICE officials gave enforcement personnel instructions like "We need to turn the creative knob up to 11 and push the envelope."  Fry Decl. Ex. 9.  The operation was led for months by a man who had a plan to deport 100 million people—nearly a third of the country, necessarily including tens of millions of citizens.[4]  It can be no surprise that the litigation stemming from this initiative involves significant discovery, including significant document production.  To date, the Defendants have produced *fewer than 30,000 pages* of documents (in addition to a number of audio and video files)—hardly a record-setting volume.  *Compare*, *e.g.*, *United States v. Omidi*, 2021 WL 7629896, at *1 (C.D. Cal. Sept. 1, 2021) (government produced approximately 2 million pages of documents); *United States v. Gross*, 424 F. Supp. 3d 800, 803 (C.D. Cal. 2019) (government produced over 6 million pages of documents and 1600 audio recordings in a single-defendant criminal prosecution).  While Defendants obviously do not want to spend resources producing documents in discovery and have an affirmative interest in not producing responsive documents, the volume of discovery in this case is in no way out of proportion to the issues at stake.  And the volume of documents Defendants have produced to date is, if anything, extremely small relative to the importance of the matter.

[4] *See* https://www.nytimes.com/2026/03/24/us/gregory-bovino-border-patrol.html.

-13-    Case No.: 2:25-cv-05605-MEMF-SP

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO ENFORCE ECF 370 AND FOR SANCTIONS

## 2.    Rule 37 Authorizes Sanctions for Failure to Comply with Discovery Orders.

Rule 37(b)(2) provides that an array of sanctions are available "[i]f a party . . . fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). As the Court noted in its June 11, 2026 order (ECF 538), the rule further provides that "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). The government is subject to sanctions just as any other party would be. *Mattingly v. United States*, 939 F.2d 816, 818 (9th Cir. 1991). "Attorneys' fees are recoverable by *pro bono* attorneys to the same extent that they are recoverable by attorneys who charge for their services." *Voice v. Stormans*, 757 F.3d 1015, 1017 (9th Cir. 2014).

## 3.    Sanctions Are Warranted Here.

Rule 37(b) sanctions have been said to serve three related purposes: (1) "ensure that a party will not be able to profit from its own failure to comply," (2) serve as "specific deterrents," seeking to "secure compliance with the particular order at hand," and (3) serve as "general deterrent[s]," to encourage compliance in "the instant case and [in] other litigation." *United States v. Sumitomo Marine & Fire Ins. Co., Ltd.*, 617 F.2d 1365, 1369 (9th Cir. 1980) (internal quotation marks omitted). All three purposes would be served by imposing sanctions in this case.

*First*, ICE's failure to comply has already delayed its production by many months. Plaintiffs filed a motion for a preliminary injunction on June 8, 2026 that could have been informed by the documents ICE was obliged to produce, but was not, because ICE had not produced them. Moreover, Plaintiffs have devoted enormous numbers of hours to meeting and conferring, writing letters, and litigating motions to compel and motions to enforce orders compelling discovery. The more hours Plaintiffs spend compelling Defendants to comply with their discovery obligations, the fewer hours Plaintiffs can spend analyzing the material that is produced, conducting factual investigation, or preparing their case for trial. ICE profits from delay and forcing Plaintiffs to devote resources to asking the Court to compel ICE to do things

ICE has an unambiguous obligation to do already. Unless ICE is penalized for its conduct, obstructionism is the optimal strategy for the agency.

*Second*, sanctions are apparently necessary in order to get ICE to produce the documents required by ECF 370. The Court has tried ordering ICE to do it, and that did not work. ICE (and, for that matter, the other Defendants) need to understand that the Court's orders are not merely suggestions about how they should conduct themselves.

*Third*, and most importantly, sanctions are necessary as a general deterrent—to incentivize compliance with the Court's orders in this and other cases. Defendants' record in this case speaks for itself. Their non-compliance has run the gamut from applying implausible readings of straight-forward instructions from the Court to missing deadlines without seeking relief to straight-up saying they will not comply with an order because their employees might complain if they do. And now, apparently, they did not comply because ICE failed to acknowledge—for nearly 5 months—what the Court ordered it to do.

Defendants' nonchalant approach to responding to discovery and this Court's discovery orders is a serious problem, if only for practical reasons: *We are now as many months away from service of the RFPs at issue (8) as we are from the fact discovery cut-off in this case (8).* *See* ECF 483 at 4 (setting a discovery cutoff of 2/17/27). And yet, Defendants have failed to properly respond to the requests served eight months ago or comply with an order issued five months ago, and they so far have produced hardly *any* documents (or any privilege log) in response to Plaintiffs' plenary-discovery requests served months ago. Sanctions are badly needed to trigger a new approach to discovery in this case, incentivize compliance with court orders, and ensure that Plaintiffs can assemble their factual record ahead of the District Court's deadline.

For all of these reasons, sanctions are appropriate. Plaintiffs request an award of monetary sanctions in an amount sufficient to pay the reasonable expenses, including attorneys' fees, incurred in connection with this motion—including the letter advising Defendants of the dispute, the meet and confer process, drafting the papers, and arguing the motion. Because much of that process has not yet occurred, Plaintiffs propose that the amount be addressed after the Court determines whether to grant the motion. In that event, Plaintiffs would provide Defendants with

the amount they would request and supporting materials, and the parties would either stipulate to an amount or provide the Court with brief submissions concerning any areas of dispute.

**4.      Defendants' Counsel Should Be Further Admonished Regarding the Role of Counsel of Record in the Discovery Process, and the Potential Consequences of Failure to Ensure Reasonable Processes.**

In its January 16, 2026 order, the Court addressed Rule 26(f).  ECF 370 at 10.  The Court declined to rule on whether Defendants' counsel had violated their obligations under Rule 26(f) because the issue arose only in supplemental briefing.  *Id.*  But the Court did "remind[] counsel of their responsibilities as officers of the court to ensure that the parties are meeting their discovery obligations."  The Rules Committee made clear in their 1983 advisory committee notes that such an obligation exists.  Fed. R. Civ. P. 26(g), adv. comm. notes to 1983 amendment (stating that counsel must make a "reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand").  Courts "strongly disfavor unquestioning reliance by counsel on a client's representation that 'no responsive records exist.'"  *In re OpenAI Copyright Litig.*, 2025 WL 3471561, at *4 (S.D.N.Y. Dec. 3, 2025) (cleaned up); *EEOC v. M1 5100*, 2020 WL 3581372, at *2 (S.D. Fla. July 2, 2020) ("simply no responsible way" for an attorney to certify discovery responses "yet have no involvement in, or close knowledge of, the party's search, collection and production").  Government counsel are personally subject to monetary sanctions if they do not meet their discovery obligations.  *Sumitomo Marine & Fire*, 617 F.2d at 1371.

The record here makes clear that ICE—like CBP—is relying entirely on agency counsel, not counsel of record, to determine how it will construe discovery requests and court orders concerning discovery.  That comes across in the ICE declarations, which refer to guidance, including the inappropriate search terms, being provided by agency counsel, not DOJ.  *See*, *e.g.*, J.F. Decl. ¶ 4; E.W. Decl. ¶¶ 2, 4.  The fact that counsel of record did not know ICE was using those search terms (Fry Decl. ¶ 6) confirms that the clients are running discovery without oversight.  That was *after* the Court reminded counsel of their obligation to ensure that their clients were meeting their discovery obligations.  And it is no answer to say that the current lead counsel joined the case only after the January 16, 2026 order had issued.  There are at least half a

dozen other DOJ lawyers who were actively involved in the case before January 16, 2026 and who remained involved after the current lead counsel appeared—they all have these obligations. In order to avoid any misapprehension regarding these responsibilities in the future, the Court should make clear to counsel of record—and to the clients who may be brushing them off—that counsel of record are responsible for ensuring that Defendants use reasonable methods to gather and process information used in responding to discovery, and may be themselves be subject to Rule 37 sanctions if they do not meet their obligations.

## IV.    DEFENDANTS' CONTENTIONS AND POINTS AND AUTHORITIES

### A.    Defendants' Response to Plaintiffs' Background Statement

#### 1.    The RFP and the Court's January 16 Order (ECF 370)

Defendants generally agree with Plaintiffs' recitation of the procedural history and the requirements under the Court's prior orders. Defendants also do not dispute that ECF 370 required production of documents concerning the 15 operations identified in limited, expedited discovery RFP No. 2, that the Court rejected Defendants' prior interpretation of the scope of that request, or that the Court ultimately extended certain production deadlines to facilitate ongoing productions.

Defendants also do not dispute that ECF 370 required Defendants to provide declarations concerning the document collection process. Defendants acknowledge that ICE's E.W. declaration ultimately revealed deficiencies in ICE's collection methodology and J.F. declaration did not included sufficient facts to show that multiple search iterations were used, and responsive documents from those broad terms were previously given to the Plaintiffs. As discussed below, however, Defendants disagree with Plaintiffs' characterization of those deficiencies as evidence of either bad faith, deliberate noncompliance, or disregard of the Court's orders.

To be sure, Defendants concede that a mistake occurred in their internal discovery review process. Contrary to Plaintiffs' unfounded assertions that counsel of record is not reviewing the methods and process of discovery in this matter, that review process in this instance fell short due to a miscommunication between the agency and counsel of record. In February, ICE communicated its methodology for conducting its forensic imaging of the government-issued phones to counsel of record, which at the time was being handled by an attorney who has since withdrawn his appearance

and left the Department of Justice.  Remaining counsel of record believed that the collection process was being reviewed by former counsel prior to his departure, and only recently learned that process was never completed.  Because of this honest oversight, and in the haste to meet a truncated discovery deadline, neither the agency nor counsel of record realized that review of the proposed search terms had been missed. The agency proceeded to conduct its collection under the terms, thinking nothing was improper, and both agency and counsel of record proceeded to conduct review of the phones without any notion that something was amiss.  Meanwhile, the agency prepared its declarations, accurately and correctly provided the search terms used to conduct the pull of the phones.  Though ICE dutifully prepared those declarations in February, they were only provided to counsel of record recently, when specifically asked for the affidavits to complete its obligations under ECF 370.  At that point, counsel of record saw the problematic search terms in the affidavit, sent the affidavits to Plaintiffs, and offered to promptly correct the error.

### 2.    The ICE Declarations

Defendants acknowledge that ICE's E.W. declaration revealed that its original collection methodology did not fully comply with the scope of ECF 370. Defendants do not dispute that point. Indeed, during the parties' June 10, 2026 meet and confer, Defendants expressly acknowledged that a mistake had occurred, explained that a communication failure contributed to implementation of the collection methodology, and advised Plaintiffs that ICE would immediately undertake a renewed processing and production effort using only agreed-upon date ranges, rather than the erroneously utilized search terms. Defendants further agreed to reproduce the information in the format requested by Plaintiffs and to work toward completing those efforts by July 31, 2026. Plaintiffs' own evidence confirms these facts. While Defendants understand and accept the obligations Plaintiffs set forth to ensure comprehensive productions, Defendants disagree with Plaintiffs' attempt to characterize ICE's declarations as evidence of intentional noncompliance or systemic disregard of discovery obligations.

*First*, Plaintiffs contend that ICE's use of names and A-numbers as search terms demonstrates that ICE intentionally disregarded ECF 370. Defendants disagree. In fact, ICE's use of names and A numbers pinpointed responsive data from the 15 operations that was produced to

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO ENFORCE ECF 370 AND FOR SANCTIONS

Plaintiffs. While the search methodology ultimately proved insufficient, the record does not support Plaintiffs' suggestion that it was adopted to avoid compliance with the Court's order. Rather, the deficiency resulted from an implementation failure and communication breakdown regarding how ECF 370 was operationalized. Once that issue was identified, Defendants acknowledged the deficiency and agreed to correct it. Moreover, Plaintiffs' own exhibits undermine their suggestion that counsel of record was ignoring the Court's directives or permitting ICE to conduct discovery without oversight. The email exchanges attached as Exhibits 3 and 4 reflect that counsel of record was actively engaged in discussions concerning ESI search methodologies, custodians, operational search terms, repositories of electronically stored information, operational planning materials, emails, Teams messages, and other sources of responsive information. Those communications demonstrate ongoing efforts by counsel to identify and collect operationally focused information. At most, the record reflects a failure in implementation of the collection process, not a failure by counsel to supervise discovery.[5]

*Second*, Plaintiffs argue that ICE did not search for documents concerning all 15 operations identified in RFP No. 2. However, Defendant ICE has consistently maintained that its agents were not present at the three September operations identified in Plaintiffs' RFP. And their unsubstantiated claim that ICE may have some unidentified involvement in another sub-agency's operations is insufficient to warrant sanctions or impute noncompliance. While Defendants acknowledge that the collection methodology did not capture the full scope of materials required by ECF 370 and that supplemental collection efforts therefore are appropriate, ICE attested that their agents were only at the first 12 operations, managed by its sister agency, U.S. Customs and Border Protection who is separately subject to the Court's order. Nevertheless, Defendants are presently undertaking efforts to ensure a comprehensive production.

---

[5] Plaintiffs cite to an email exchange in which undersigned counsel indicated that ESI did not propose a problem for ICE, but the context of that email is important. The parties were, at the time, negotiating discovery with respect to CBP as the volume of discovery was proving a significant challenge due to the large number of CBP custodians implicated in Operation and Large – Los Angeles. ICE had significantly fewer custodians implicated, and that comment was simply a reference to the fact that ICE was not dealing with the same level of volume.

-19-    Case No.: 2:25-cv-05605-MEMF-SP

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO ENFORCE ECF 370 AND FOR SANCTIONS

*Third*, Plaintiffs contend that the declarations do not specifically describe efforts to collect targeting materials, slide presentations, and other categories of operational documents identified in ECF 370. The fact that the declarations do not expressly discuss every category of potentially responsive information does not establish that no such collection efforts occurred. In any event, Defendants have agreed to provide updated declarations concerning the collection process as part of the supplemental production effort.

*Fourth*, Plaintiffs argue that the declarations do not sufficiently describe efforts to gather documentation concerning arrests arising from the operations at issue. Defendants acknowledge that further clarification regarding the collection process is appropriate and will provide updated declarations addressing the supplemental collection efforts now underway.

*Fifth*, Plaintiffs again raise issues concerning personal-device imaging. Those issues are already before the Court in separate proceedings, including proceedings related to Defendants' pending objections (ECF 395) and ECF 538. To the extent Plaintiffs seek sanctions or additional relief concerning personal-device imaging, Defendants respectfully submit that they should be addressed in those proceedings rather than through a separate, duplicative sanctions motion.

*Sixth*, Plaintiffs contend that the absence of responsive material from G.A.'s government-issued device demonstrates that the search was deficient, that information was deleted, or that government business was conducted on an unimaged personal device. Not so.  First, Agent G.A. signed a declaration indicating he did not use his personal device at any of the listed operations. Second, though the forensic search of Agent G.A.'s government-issued phone did not contain WhatsApp messages, Defendants confirmed with Agent G.A. that he was one of the listed recipients on a WhatsApp message chain already provided to Plaintiffs in screenshot form (though Agent G.A. does not appear to have participated in that chain).  ICE advised that the forensic imaging of the WhatsApp application on Agent G.A.'s phone may have been affected by a phone update in December 2025—prior to the Court's 2026 order to forensically image the phones—but the agency advises the WhatsApp conversations on which Agent G.A. was a listed participant were produced.

Indeed, Plaintiffs' own evidence demonstrates that Defendants investigated Plaintiffs' concerns regarding Agent G.A.'s device. As Plaintiffs acknowledge, counsel revisited the issue,

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO ENFORCE ECF 370 AND FOR SANCTIONS

confirmed the collection results with agency personnel, discussed the issue during the parties' meet and confer, and disclosed the basis for the information provided to Plaintiffs. Plaintiffs may disagree with the results of that inquiry, but disagreement alone does not constitute evidence of misconduct, deletion of information, or spoliation. Plaintiffs' assertions concerning Agent G.A. remain speculative, and their suggestion that counsel of record somehow misled Plaintiffs regarding Agent G.A.'s device is similarly unsupported. Counsel promptly and accurately conveyed information received from agency personnel regarding the collection results after speaking with the agent in question. Plaintiffs' disagreement with those results does not transform counsel's statements into misrepresentations.

*Finally*, Plaintiffs emphasize that the declarations were signed in April but provided in June. Defendants acknowledge that the declarations should have been transmitted sooner. However, Defendants have been working diligently to comply with their significant discovery obligations, and given the amount of discovery and the relatively short deadlines to comply with those obligations, it made sense to work on the collection and review of the discovery before turning to the affidavits documenting the entire collection process.  Counsel of record did not receive the ICE declarations until June 2, 2026, and ultimately sent the affidavits to Plaintiffs on June 4, 2026.

Ultimately, Plaintiffs' own evidence establishes that Defendants disclosed the issue, acknowledged the deficiency, explained the circumstances giving rise to it, and agreed to undertake substantial corrective action. Defendants acknowledge this honest mistake, but any delay in producing the materials resulted from an inadvertent oversight in the very demanding truncated discovery collection process, as opposed to bad faith attempts at noncompliance.

### 3. Defendants' Response to Plaintiffs' Allegation Regarding the Reasonableness of ICE Collection Efforts

Once raised, Defendants have never disputed that supplemental productions were appropriate and, as Plaintiffs themselves acknowledge, are already undertaking a renewed production effort designed to address those deficiencies. Defendants disagree, however, with Plaintiffs' repeated assertion that every aspect of the original collection methodology was unreasonable, undertaken in bad faith, or designed to suppress responsive information.

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO ENFORCE ECF 370 AND FOR SANCTIONS

Plaintiffs speculate that the structure of ICE's search terms demonstrates an intent to minimize the number of responsive documents collected and reviewed. Plaintiffs offer no evidence supporting that assertion. While Defendants acknowledge that the search methodology ultimately proved insufficient, the mere fact that certain search terms were overly narrow does not establish that they were selected for the purpose of avoiding discovery obligations. The far more reasonable explanation is the one Defendants have consistently provided: the methodology resulted from an implementation failure regarding the scope of the collection effort, not from any effort to conceal responsive information.

Plaintiffs criticize the repositories searched by ICE and contend that additional applications should have been searched.  To that point, they allege that ICE should be searching any Signal and WhatsApp messages within the phones.  But Defendants already informed Plaintiffs during the meet and confer process that ICE's collection did, in fact, include searches of Signal and WhatsApp. Accordingly, though ICE's government phone collection methodology was flawed, it was not problematic in *that* respect and those searches will be addressed in the supplemental affidavits to be produced after the July 31 deadline.  Defendants are presently undertaking supplemental collection efforts and are evaluating the appropriate sources of potentially responsive information in connection with those efforts. The fact that Plaintiffs now identify additional repositories they believe should have already been searched does not establish misconduct, especially given that Defendants have agreed to pull from those same repositories in its new production, and did not fall short of that in its prior production. Discovery collection frequently involves judgments regarding custodians, repositories, and sources of electronically stored information. The relevant question for whether sanctions is appropriate is whether deficiencies in those judgments are being corrected, or if there is a basis to compel compliance. Here, the agency is already complying with Plaintiffs' requests. Moreover, Plaintiffs' own motion acknowledges that ICE's renewed collection efforts are expected to encompass a broader universe of information. Thus, the principal issue raised by Plaintiffs already is being addressed through the supplemental collection process currently underway, but at minimum, this motions practice is premature when the agency is already undertaking compliance.

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO ENFORCE ECF 370 AND FOR SANCTIONS

Plaintiffs complain that information collected from government-issued phones was originally exported in PDF format rather than RSMF format. Defendants do not dispute that production in RSMF format is appropriate for the supplemental production and have already agreed to provide the renewed production in that format. Forensic imaging and production of responsive electronically stored information (ESI) on such a large scale has unfortunately, but expectedly, required troubleshooting, and Defendants continue to improve on their processing of ESI as discovery continues. And the agency has already assured Plaintiffs that they will receive the metadata and message-threading information they claim is necessary. Whatever disagreement may exist regarding the original production format, it does not support sanctions, particularly where Defendants have already agreed to reproduce the information in the format requested by Plaintiffs.

Plaintiffs attempt to transform disputes regarding search-term construction, repository selection, and production format into evidence of bad faith. The record does not support that conclusion. At most, those issues demonstrate that aspects of the original collection methodology were inadvertently insufficient. Defendants acknowledge that point and are correcting it.

**4. Defendants' Response to Plaintiffs' Allegations Concerning the Disclosure of Search Methodology**

As explained, counsel of record received ICE's declarations regarding its collection methodology on June 2, 2026, and forwarded those declarations to Plaintiffs, per ECF 370, on June 4, 2026. Plaintiffs' own exhibits show that counsel of record was actively engaged in discussions concerning ESI search methodologies throughout the relevant period. The email exchanges attached as Exhibits 3 and 4 reflect extensive discussions regarding operational search terms, custodians, Teams repositories, emails, operational planning materials, and other categories of potentially responsive information. Those communications are inconsistent with Plaintiffs' assertion that counsel was disengaged from the discovery process or intentionally concealing information.

Indeed, Plaintiffs' exhibits demonstrate the opposite. The proposed search terms discussed by counsel were directed at the operations themselves and included operational terminology, locations, and operation-related identifiers. Those communications confirm that counsel understood

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO ENFORCE ECF 370 AND FOR SANCTIONS

the discovery requests to require collection of operational information and was actively working through search methodologies with Plaintiffs.

Plaintiffs' principal criticism is that counsel later learned that ICE had implemented a different collection methodology than the one being discussed during the parties' meet-and-confer process. But that fact supports Defendants' explanation—not Plaintiffs'. As Defendants disclosed during the June 10, 2026 meet-and-confer, the problem arose because of a communication failure concerning implementation of the collection process. Plaintiffs' own declaration confirms that Defendants acknowledged the mistake, explained the communication issue, and advised Plaintiffs that ICE would undertake a renewed collection effort using date ranges rather than the previously utilized search terms. Plaintiffs' evidence therefore supports Defendants' position that the issue arose from a breakdown in implementation, not intentional concealment.

Nor does the timing of the declarations establish misconduct. Plaintiffs emphasize that the declarations were signed on April 13 but not provided to Plaintiffs until June 4. But that the declaration were prepared by ICE in April and not sent to counsel until June is simply because limited discovery was still being completed, and counsel of record only turned to the affidavits after focusing on the more pressing priority of racing to meet the deadlines for the collection and review of a significant amount of discovery production.  Defendants acknowledge that the declarations should have been transmitted sooner. However, Plaintiffs identify no resulting prejudice. More importantly, the declarations themselves are what revealed the collection issue and led directly to the supplemental collection efforts now underway.  Far from concealing the issue, Defendants voluntarily provided the declarations once they were provided to counsel of record, promptly disclosed the problem once identified, acknowledged that the collection methodology was deficient, and agreed to undertake substantial remedial measures. Plaintiffs' own evidence confirms that sequence of events. The record therefore demonstrates transparency and remediation, not concealment.

Finally, Plaintiffs attempt to use the communication breakdown itself as evidence that counsel abdicated their responsibilities. The record does not support that conclusion. The same exhibits upon which Plaintiffs rely demonstrate that counsel was actively engaged in discovery

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO ENFORCE ECF 370 AND FOR SANCTIONS

negotiations, ESI discussions, search-term development, custodian identification, and collection issues throughout the relevant period. The fact that counsel later discovered that aspects of ICE's collection methodology had been implemented incorrectly does not establish abandonment of discovery responsibilities. Rather, it reflects the very reason Defendants investigated the issue, disclosed it, and agreed to corrective action once the problem came to light.

**B.** **Argument**

    **1.** **A Further Compliance Order is Unnecessary Because Defendants Have Agreed to Complete Supplemental Production and Submit Updated Affidavits by July 31, 2026.**

Defendants do not oppose entry of an order memorializing a July 31, 2026, deadline for completion of ICE's supplemental production. Defendants have already agreed to that deadline and are actively undertaking the additional collection and production efforts necessary to meet it. To that extent, the parties' dispute is already resolved. The principal disagreement concerns Plaintiffs' attempt to transform an inadvertent oversight into findings of misconduct, directives concerning discovery methodology, and a basis for future sanctions against not only Defendant ICE but counsel of record.

Defendants already acknowledge that ICE's original collection methodology did not fully satisfy the requirements of ECF 370 and are already taking corrective action to be completed by Plaintiffs' requested deadline. The purpose of a compliance order is to ensure compliance. Here, Defendants are already undertaking the very remedial measures Plaintiffs seek, also making motions practice on the issue unnecessary.

Plaintiffs nevertheless request that the Court impose additional directives concerning the precise scope and methodology of ICE's collection efforts. Such directives are unnecessary. Defendants already represented to Plaintiffs that ICE is conducting a renewed collection effort designed to address the deficiencies identified in the original production. The parties continue to discuss technical collection issues, repositories of electronically stored information, and production specifications. To the extent disputes remain concerning those issues, they are appropriately addressed through the ordinary meet-and-confer process rather than through broadly-sought prospective directives untethered to any demonstrated willful noncompliance.

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO ENFORCE ECF 370 AND FOR SANCTIONS

Plaintiffs likewise seek to use this motion as a vehicle for relitigating issues concerning personal-device imaging. As Plaintiffs themselves acknowledge, those issues are already the subject of pending objections, a court order, and an imminent order-to-show-cause hearing. Defendants respectfully ask that those matters be addressed in those proceedings rather than through a duplicative motion. Additionally, Plaintiffs' request that the Court issue warnings regarding future sanctions—not just to Defendant agency but also counsel of record—based upon hypothetical future noncompliance is similarly unwarranted. Defendants have agreed to the July 31, 2026, deadline and are working towards compliance with it.

Nor is there any basis for Plaintiffs' repeated assertions that Defendants have deliberately chosen not to devote sufficient resources to discovery. Plaintiffs offer no evidence supporting those assertions. To the contrary, Defendants have devoted substantial resources to collection, review, production, and ongoing supplementation efforts throughout this litigation. Plaintiffs' disagreement with aspects of the original collection methodology does not establish that Defendants intentionally under-resourced discovery or sought to evade their obligations.

Plaintiffs' broader discussion regarding the size of ICE, the scope of immigration enforcement operations, and the importance of the issues in this litigation is beside the point. Defendants do not dispute the significance of this case. Nor do Defendants contend that the volume of discovery alone excuses compliance with discovery obligations. The relevant question before the Court is whether Defendants are taking appropriate steps to remedy a collection deficiency that has been acknowledged. The answer is yes. Defendants have already agreed to undertake substantial remedial measures, expected to be completed by July 31, 2026.

Accordingly, while Defendants do not oppose entry of an order memorializing the July 31, 2026 deadline, the Court should reject Plaintiffs' attempt to convert that agreed deadline into findings of bad faith, directives concerning future discovery disputes, or a predicate for sanctions.

**2.    Plaintiffs' Request for Generalized Admonishments Directed at Counsel is Unwarranted and Inappropriate.**

Plaintiffs devote substantial portions of their motion to criticizing counsel of record and suggesting that counsel abdicated their discovery responsibilities. The record does not support those

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO ENFORCE ECF 370 AND FOR SANCTIONS

accusations. This litigation requires coordination across multiple federal agencies, numerous custodians, agency counsel, technical personnel, and Department of Justice attorneys and leadership. Discovery collection of this tremendously large scale—as highlighted by the fact that the agents who participated in Operation at Large – Los Angeles came from across the country— necessarily requires coordination among all of those participants. The sole fact that counsel later learned that aspects of ICE's collection methodology had been implemented incorrectly does not establish grave misconduct by counsel or abandonment of supervisory responsibilities.

Indeed, Plaintiffs' own evidence demonstrates the opposite. Once counsel became aware of the issue reflected in the ICE declarations, counsel promptly disclosed the matter to Plaintiffs, acknowledged the deficiency, participated in extensive meet-and-confer efforts in coordination with Defendant agencies, and worked with agency personnel to develop a corrective plan. That conduct reflects good faith corrective action and active supervision and remediation, not a willful or negligent disregard of discovery obligations.

Finally, Plaintiffs' request for additional admonishments regarding personal-device imaging is particularly inappropriate because those issues already are the subject of separate proceedings before the Court, including ECF 538. To the extent Plaintiffs seek sanctions or findings regarding personal-device imaging, those matters should be addressed in those proceedings rather than through this duplicative motion.

Such relief is even more inappropriately levied against counsel of record, who is not affirmatively encouraging "disruptive behavior" or noncompliance "by a client or fans the flames of existing frictions" to support sanctions against counsel of record. *In re Dellinger*, 461 F.2d 389, 399-400 (7th Cir. 1972). Defendants' counsel is committed to ensuring this litigation proceeds in a timely manner, but the expansive scope and reach of Plaintiffs' discovery requests, which the Court has sanctioned, requires time to ensure complete, comprehensive productions. And respectfully, this delay, while unfortunate and understandably frustrating, has not prejudiced Plaintiffs because discovery is ongoing, and Plaintiffs have continued to prosecute and brief the relevant issues based on the substantial discovery already produced to date, and Plaintiffs retain an opportunity to review and utilize the supplemental productions ahead of the trial in 2027.

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO ENFORCE ECF 370 AND FOR SANCTIONS

### 3.    Rule 37 Does Not Require Sanctions Under the Circumstances Here

Defendants do not dispute that Rule 37 authorizes sanctions for failure to comply with a discovery order. Nor do Defendants dispute that federal agencies are subject to the same discovery obligations as other litigants. The issue before the Court is whether sanctions are warranted under the facts presented here. They are not.

As an initial matter, sanctions are generally reserved for conduct demonstrating willfulness, bad faith, or a failure to take reasonable steps to comply with court orders. *See Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012); *Fink v. Gomez*, 239 F.3d 989, 991-93 (9th Cir. 2001). And Rule 37 expressly provides that expenses should not be awarded where the failure was substantially justified or where other circumstances make an award unjust. Fed. R. Civ. P. 37(b)(2)(C). Not only have Plaintiffs not established any willful misconduct, but the specific circumstances—Defendants' acknowledgment and corrective action being undertaken—demonstrate that monetary sanctions are equally inappropriate.

Defendants have already acknowledged that Defendant ICE's original collection methodology was deficient and did not fully comply with ECF 370. Defendants have not attempted to conceal that fact but rather, once the issue became apparent through review of the ICE declarations, Defendants disclosed the issue to Plaintiffs, explained the circumstances giving rise to it, acknowledged that a mistake had occurred, and agreed to undertake (and already are taking) substantial remedial measures—including a renewed collection effort without the previously utilized search terms, reproduction of information in the format requested by Plaintiffs, updated declarations concerning the collection process—with the understanding that steps should be completed by July 31, 2026. Plaintiffs even acknowledge (while mischaracterized) that Defendants acknowledged the deficiency, were transparent of the unintentional miscommunication, and committed to taking corrective action on their proposed timeline. These facts demonstrate transparency and remediation, not bad faith or willful noncompliance.

Moreover, the Ninth Circuit has repeatedly held that contempt and similar sanctions are inappropriate where a party has taken all reasonable steps within its power to comply with a court order. *See In re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693, 695 (9th Cir.

1993); *Balla v. Idaho State Board of Correctio*ns, 869 F.2d 461, 466 (9th Cir. 1989). While Defendants acknowledge that ICE's collection methodology ultimately proved insufficient, responsive documents were produced (and relied upon by Plaintiffs in prosecuting this case), and the record demonstrates substantial efforts to comply with the Court's discovery orders, including extensive collection efforts, review of large volumes of ESI, production of responsive materials, ongoing meet-and-confer efforts, and the supplemental collection process currently underway. The fact that Plaintiffs did not appreciate these efforts does not establish any willful noncompliance or misconduct. Nor have Plaintiffs established the type of clear, willful disobedience required to justify more severe sanctions.

Ultimately, any doubts concerning whether the extraordinary remedy of sanctions is appropriate should be resolved in favor of the party against whom sanctions are sought. *See O'M & Associates, LLC v. Ozanne*, No. 10-cv-2130, 2011 WL 2160938, at *4 (C.D. Cal. June 1, 2011). At a minimum, the record here reflects a good-faith effort to correct an error made during this complex and multi-faceted discovery effort.

But even if the Court disagrees that sanctions are inappropriate, much of the relief Plaintiffs seek has already been obtained. Defendants have agreed to undertake the supplemental collection, produce information in the format requested by Plaintiffs, provide updated declarations, and complete those efforts by July 31, 2026, as Plaintiffs requested. Under these circumstances, an award of fees or sanctions would serve little remedial purpose and would be unjust within the meaning of Rule 37(b)(2)(C). *See Wanderer v. Johnston*, 910 F.2d 652, 655 (9th Cir. 1990) ("Rule 37 sanctions are intended to punish evasion of pretrial discovery.").

Accordingly, while Defendants acknowledge deficiencies in ICE's original collection methodology, the record demonstrates an honest oversight and implementation failure that Defendants have disclosed and are actively correcting, not the type of willful, bad-faith, or contumacious conduct that warrants Rule 37 sanctions. *See Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981) (citing *Societe Internationale v. Rogers*, 357 U.S. 197, 212 (1958) in cautioning against imposing "drastic sanctions" unless the noncompliance was willful or in bad faith).

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO ENFORCE ECF 370 AND FOR SANCTIONS

#### 4.    Additional Admonishment of Counsel is Unwarranted

Defendants do not dispute that counsel of record must conduct a reasonable inquiry into discovery responses and to ensure compliance with their obligations under the Federal Rules. Nor do Defendants dispute the Court's prior reminder concerning counsel's responsibilities as officers of the Court. However, Defendants disagree that further judicial admonishment of counsel or findings suggesting that counsel failed to satisfy those obligations is appropriate.

As an initial matter, Defendants' counsel has worked tirelessly to respond to various motions practice, discovery requests, supplemental productions (as of this filing 40), and the Court has already opined as to Defendants' discovery obligations, with which Defendants remain committed to complying. Indeed, the Court expressly declined to make any finding that Defendants' counsel had violated Rule 26 or otherwise failed to satisfy their professional obligations, ECF 370 at 10; yet, Plaintiffs now seek effectively the same relief based on speculation of bad faith without any concrete evidence of willful noncompliance or misconduct.

Plaintiffs' argument rests largely on the premise that because ICE's collection methodology ultimately proved deficient, counsel necessarily failed to supervise the discovery process, and at least implicitly, that responsive materials were not produced. That was not the case. Indeed, Plaintiffs' own exhibits demonstrate that counsel of record was and continues to be actively involved in discovery throughout the relevant period, even as counsel has been off- and on-boarded. As reflected in Exhibits 3 and 4, counsel engaged extensively with Plaintiffs regarding search methodologies, custodians, operational search terms, Teams communications, emails, operational planning materials, repositories of electronically stored information, and other categories of potentially responsive information. Those communications are fundamentally inconsistent with Plaintiffs' assertion that counsel simply abdicated responsibility for discovery or permitted agency personnel to conduct discovery without oversight.

The authorities cited by Plaintiffs are likewise inapposite. Unlike the circumstances described in those cases, there is no evidence here that counsel blindly accepted client representations without inquiry, certified discovery responses without investigation, or deliberately avoided learning facts concerning discovery compliance. To the contrary, the record reflects

JOINT STIPULATION RE: PLAINTIFFS' MOTION TO ENFORCE ECF 370 AND FOR SANCTIONS

extensive participation by counsel in the discovery process, including ongoing discussions concerning custodians, search methodologies, repositories, production formats, and collection procedures, and any speculative accusations of unmonitored actions by the agency are simply incorrect. And the same evidence Plaintiffs rely upon establishes that counsel was actively engaged in the discovery process and that, once the collection deficiency was identified, counsel took immediate steps to investigate the issue, disclose it, and implement corrective measures. While the original collection methodology proved insufficient, the record does not support Plaintiffs' conclusory and speculative allegations that Defendants' counsel failed to fulfill their professional responsibilities.

Accordingly, Plaintiffs' request for sanctions and further admonishment of counsel should be denied.

DATED:  June 23, 2026                MUNGER, TOLLES & OLSON LLP


By:        /s/ David Fry
           DAVID FRY
           Counsel for Stop/Arrest Plaintiffs


DATED:  June 23, 2026                UNITED STATES DEPARTMENT OF JUSTICE


By:        /s/ Jonathan Robbins
           JONATHAN A. ROBBINS
           Assistant Director
           Office of Immigration Litigation
           Counsel for Defendants