STACY TOLCHIN (SBN 217431)
*stacy@tolchinimmigration.com*
LAW OFFICES OF STACY TOLCHIN
776 E. Green St., Suite 210
Pasadena, CA 91101
Tel: 213-622-7450; Fax: 213-622-7233

MOHAMMAD TAJSAR (SBN 280152)
*mtajsar@aclusocal.org*
MAYRA JOACHIN (SBN 306065)
*mjoachin@aclusocal.org*
EVA BITRÁN (SBN 302081)
*ebitran@aclusocal.org*
DAE KEUN KWON (SBN 313155)
*akwon@aclusocal.org*
STEPHANIE PADILLA (SBN 321568)
*spadilla@aclusocal.org*
DIANA SÁNCHEZ (SBN 338871)
*dianasanchez@aclusocal.org*
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017-4022
Tel: 213-977-5232; Fax: 213-201-7878

*Counsel for Stop/Arrest Plaintiffs*

(*Additional counsel listed on next page*)

MARK ROSENBAUM (SBN 59940)
*mrosenbaum@publiccounsel.org*
REBECCA BROWN (SBN 345805)
*rbrown@publiccounsel.org*
SOPHIA WRENCH (SBN 354416)
*swrench@publiccounsel.org*
RITU MAHAJAN (SBN 252970)
*rmahajan@publiccounsel.org*
GINA AMATO (SBN 215519)
*gamato@publiccounsel.org*
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Counsel for All Plaintiffs*

ANNE LAI (SBN 295394)
*alai@law.uci.edu*
UC IRVINE SCHOOL OF LAW
IMMIGRANT AND RACIAL JUSTICE
SOLIDARITY CLINIC
P.O. Box 5479
Irvine, CA 92616-5479
Tel: 949-824-9894; Fax: 949-824-2747

*Counsel for Stop/Arrest Plaintiffs*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pedro VASQUEZ PERDOMO; Carlos Alexander OSORTO; and Isaac VILLEGAS MOLINA; Jorge HERNANDEZ VIRAMONTES; Jason Brian GAVIDIA; LOS ANGELES WORKER CENTER NETWORK; UNITED FARM WORKERS; COALITION FOR HUMANE IMMIGRANT RIGHTS; IMMIGRANT DEFENDERS LAW CENTER,<br><br>        Plaintiffs,<br><br>    v.<br><br>Markwayne MULLIN, in his official capacity as Secretary, Department of Homeland Security; David VENTURELLA, in his official capacity as Acting Director, U.S. Immigration and Customs | Case No.: 2:25-cv-05605-MEMF-SP<br><br>**INTERVENORS' JOINDER IN PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION RE: WARRANTLESS ARRESTS**<br><br>Date:   August 13, 2026<br>Time:   10:00 AM<br>Place.: Courtroom 8B<br><br>Hon. Maame Ewusi-Mensah Frimpong |

INTERVENORS' JOINDER IN PLS.' MOT. FOR PRELIM. INJUNCTION RE: WARRANTLESS ARRESTS

Enforcement; Rodney S. SCOTT, in his official capacity as Commissioner, U.S. Customs and Border Patrol; Michael W. BANKS, in his official capacity as Chief of U.S. Border Patrol; Kash PATEL, in his official capacity as Director, Federal Bureau of Investigation; Todd BLANCHE, in his official capacity as Acting U.S. Attorney General; Thomas GILES, in his official capacity as Acting Field Office Director for Los Angeles, U.S. Immigration and Customs Enforcement; Dean T. SORENSON, Special Agent in Charge for Los Angeles, Homeland Security Investigations, U.S. Immigration and Customs Enforcement; Daniel PARRA, in his official capacity as Acting Chief Patrol Agent for El Centro Sector of the U.S. Border Patrol; Justin DE LA TORRE, in his official capacity as Acting Chief Patrol Agent, San Diego Sector of the U.S. Border Patrol; Akil DAVIS, in his official capacity as Assistant Director in Charge, Los Angeles Office, Federal Bureau of Investigation; Bilal A. ESSAYLI, in his official capacity as U.S. Attorney for the Central District of California,

     Defendants.

INTERVENORS' JOINDER IN PLS.' MOT. FOR PRELIM. INJUNCTION RE: WARRANTLESS ARRESTS

JACOB S. KREILKAMP (SBN 248210)
jacob.kreilkamp@mto.com
JAMIE LUMA (SBN 331610)
jamie.luma@mto.com
SARA H. WORTH (SBN 341088)
sara.worth@mto.com
HENRY D. SHREFFLER (SBN 343388)
henry.shreffler@mto.com
MAGGIE BUSHELL (SBN 354048)
maggie.bushell@mto.com
KYLE A. GROVES (SBN 358085)
kyle.groves@mto.com
MUNGER, TOLLES & OLSON LLP
350 S. Grand Ave., 50th Floor
Los Angeles, CA 90071
Tel: 213-683-9100; Fax: 213-683-9100

*Counsel for Stop/Arrest Plaintiffs*

LAUREN MICHEL WILFONG*
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Tel: 626-214-5689

*Counsel for Stop/Arrest Plaintiffs*

BREE BERNWANGER (SBN 331731)
bbernwanger@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel: 415-621-2493

*Counsel for Stop/Arrest Plaintiffs*

BRISA VELAZQUEZ OATIS
(SBN 339132)
bvoatis@aclu-sdic.org
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Tel: 619-398-4199

*Counsel for Stop/Arrest Plaintiffs*

MATTHEW J. CRAIG (SBN 350030)
mcraig@heckerfink.com
MACK E. JENKINS (SBN 242101)
mjenkins@heckerfink.com
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Tel: 212-763-0883; Fax: 212-564-0883

*Counsel for Access/Conditions Plaintiffs*

EDGAR AGUILASOCHO (SBN 285567)
eaguilasocho@farmworkerlaw.com
MARTÍNEZ AGUILASOCHO LAW, INC.
900 Truxtun Ave, Suite 300
Bakersfield, CA 93301
Tel: 661-859-1174

*Counsel for Plaintiff United Farm Workers*

CARL BERGQUIST*
cbergquist@chirla.org
COALITION FOR HUMANE IMMIGRANT
RIGHTS
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

*Counsel for Plaintiff Coalition for Humane
Immigrant Rights*

ALVARO M. HUERTA (SBN 274787)
ahuerta@immdef.org
BRYNNA BOLT (SBN 339378)
bbolt@immdef.org
ALISON STEFFEL (SBN 346370)
asteffel@immdef.org
IMMIGRANT DEFENDERS LAW CENTER
634 S. Spring St., 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

*Counsel for Plaintiff Immigrant
Defenders Law Center*

* Admitted pro hac vice

INTERVENORS' JOINDER IN PLS.' MOT. FOR PRELIM. INJUNCTION RE: WARRANTLESS ARRESTS

HYDEE FELDSTEIN SOTO
(SBN 106866)
City Attorney
hydee.feldsteinsoto@lacity.org
VALERIE L. FLORES (SBN 138572)
valerie.flores@lacity.org
MICHAEL J. DUNDAS (SBN 226930)
mike.dundas@lacity.org
MARIA LOUISE COUSINEAU
(SBN 122280)
maria.cousineau@lacity.org
RANDALL G. SOMMER
(SBN 214099)
randall.sommer@lacity.org
SHUBHRA SHIVPURI (SBN 295534)
shubhra.shivpuri@lacity.org
OFFICE OF THE LOS ANGELES
CITY ATTORNEY
City Hall 200 North Spring Street
21st Floor
Los Angeles, CA 90012-4130
Tel.: 213-922-8382; Fax: 213-978-7957

*Attorneys for Intervenor
City of Los Angeles*

E. MARTIN ESTRADA
(SBN 223802)
martin.estrada@mto.com
DANIEL B. LEVIN (SBN 226044)
daniel.levin@mto.com
JOHN L. SCHWAB (SBN 301386)
john.schwab@mto.com
V. GRACE DAVIS (SBN 336732)
grace.davisfisher@mto.com
V. ROMAN LEAL (SBN 348892)
roman.leal@mto.com
WENDY QIUYU XIAO (SBN 342702)
wendy.xiao@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
50th Floor
Los Angeles, California 90071
Tel.: 213-683-9100; Fax: 213-687-3702

*Attorneys for Intervenors Cities of Los
Angeles, Anaheim, Bell Gardens, Beverly Hills,
Carpinteria, Culver City, Huntington Park,
Long Beach, Lynwood, Montebello, Monterey
Park, Oxnard, Paramount, Pico Rivera,
Pomona, Santa Ana, Santa Barbara, Santa
Monica, South Gate, and West Hollywood*

NICOLE DAVIS TINKHAM (SBN 229592)
ntinkham@counsel.lacounty.gov
LILIANA CAMPOS (SBN 255753)
lcampos@counsel.lacounty.gov
BRIGIT GREESON ALVAREZ (SBN 237301)
bgreesonalvarez@counsel.lacounty.gov
OFFICE OF THE COUNTY COUNSEL
648 Kenneth Hahn Hall of Admin.,
500 West Temple Street
Los Angeles, California 90012-2713
Tel.: 213-808-8736; Fax: 213-633-1915

*Attorneys for Intervenor County of Los Angeles*

MICHELE BEAL BAGNERIS (SBN 115423)
City Attorney
mbagneris@cityofpasadena.net
ARNOLD F. LEE (SBN 278610)
aflee@cityofpasadena.net
ANDREW AARONIAN (SBN 318245)
aaaronian@cityofpasadena.net
OFFICE OF THE CITY ATTORNEY
OF PASADENA
100 N Garfield Ave, Rm N-210
Pasadena, CA 91101
Tel.: 626-744-4141; Fax: 626-744-4190

*Attorneys for Intervenor City of Pasadena*

NORMAN L. EISEN*
Norman@democracydefenders.org
STEPHEN A. JONAS (SBN 542005)
Steve@democracydefenders.org
JOSHUA G. KOLB*
Joshua@democracydefenders.org
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave. SE, Suite 15180
Washington, DC 20003
Tel: (202) 594-9958

*Admitted Pro Hac Vice

*Attorneys for Intervenor City of Los Angeles*

INTERVENORS' JOINDER IN PLS.' MOT. FOR PRELIM. INJUNCTION RE: WARRANTLESS ARRESTS

## NOTICE OF JOINDER

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 65 and Civil Local Rule 65-1, Plaintiffs-Intervenors ("Intervenors") the City of Los Angeles, the County of Los Angeles, the City of Anaheim, the City of Bell Gardens, the City of Beverly Hills, the City of Carpinteria, the City of Culver City, the City of Huntington Park, the City of Long Beach, the City of Lynwood, the City of Montebello, the City of Monterey Park, the City of Oxnard, the City of Paramount, the City of Pasadena, the City of Pico Rivera, the City of Pomona, the City of Santa Ana, the City of Santa Barbara, the City of Santa Monica, the City of South Gate, and the City of West Hollywood hereby join Plaintiffs' Motion for Preliminary Injunction Re Warrantless Arrests (Dkt. No. 529).

Intervenors join Plaintiffs' Motion for Preliminary Injunction in full and submit this Joinder to present additional critical facts supporting such relief.  Without a preliminary injunction, Intervenors face irreparable harm to their ability to maintain public safety and health, administer justice through their civil and criminal court systems, combat fraud, safeguard the tax revenues that sustain core public services, and preserve access to healthcare, libraries, transit, recreation, and other essential functions.

This Joinder is based on this Notice of Joinder and Joinder; the supporting Memorandum of Points and Authorities; the concurrently filed Declarations of German Hurtado, Christopher Kirby, Alexander Karkanen, Dr. Barbara Ferrer, Dr. Christina Ghaly, Frank Ramos, Jesse Walker-Lanz, Rafael Carbajal, Erika Crenshaw, Norma Edith García-Gonzalez, Jason Skeen, Armando Torres, Michael O'Kelly, John Nachbar, Julian Lee, Raul Alvarez, Scott Wiese, Steve Carmona, Anita Scott, Maria Davila, Lana Dich, John Moreno, Alvaro Nuñez, Chinyere Stoneham, David Somers, Matthew Crawford, Ricardo Reyes, Joseph Ruelas, Corilyn Lantz, Natalia Alarcon, Oliver Chi, Kelly McAdoo, Michael Lyster, Sam Talim, Gabriel Teran, Monica Solorzano, Krista Munizich, Julia Mayer, Ingrid Bostrom, Rebecca Norton, Regina Vannicola, Aline Assaf, Andre Jackson, Douglas Moran, Margarita Cortez, Edward Orozco Flores, and V. Roman Leal; the pleadings and papers filed in support of Plaintiffs' Motion for Preliminary Injunction (Dkt. No.

INTERVENORS' JOINDER IN PLS.' MOT. FOR PRELIM. INJUNCTION RE: WARRANTLESS ARRESTS

529); all documents and pleadings on file in this action; and such other oral and documentary evidence as the Court may consider prior to or at the hearing on this Joinder.

Pursuant to Local Rule 7-3, counsel for Intervenors met and conferred with counsel for Defendants regarding the substance of this Joinder prior to its filing. *See* Decl. of V. Roman Leal in Support of Intervenors' Joinder in Plaintiffs' Mot. for Preliminary Injunction Re: Warrantless Arrests ("Leal Decl.") ¶¶ 3–4.

DATED:  June 26, 2026                    MUNGER, TOLLES & OLSON LLP


By:    /s/ E. Martin Estrada
          E. MARTIN ESTRADA

          *Attorneys for Intervenors Cities of Los Angeles, Anaheim, Bell Gardens, Beverly Hills, Carpinteria, Culver City, Huntington Park, Long Beach, Lynwood, Montebello, Monterey Park, Oxnard, Paramount, Pico Rivera, Pomona, Santa Ana, Santa Barbara, Santa Monica, South Gate, and West Hollywood*

By:    /s/ Hydee Feldstein Soto
          HYDEE FELDSTEIN SOTO
          City Attorney

          OFFICE OF THE LOS ANGELES
          CITY ATTORNEY

          *Attorney for Intervenor
          City of Los Angeles*

INTERVENORS' JOINDER IN PLS.' MOT. FOR PRELIM. INJUNCTION RE: WARRANTLESS ARRESTS

By:      /s/ Brigit Greeson Alvarez

BRIGIT GREESON ALVAREZ
Deputy County Counsel

OFFICE OF THE COUNTY COUNSEL

*Attorney for Intervenor*
*County of Los Angeles*

By:      /s/ Arnold F. Lee

ARNOLD F. LEE
Chief Assistant City Attorney

OFFICE OF THE CITY ATTORNEY OF
PASADENA

*Attorney for Intervenor*
*City of Pasadena*

-3-          Case No.: 2:25-cv-05605-MEMF-SP

INTERVENORS' JOINDER IN PLS.' MOT. FOR PRELIM. INJUNCTION RE: WARRANTLESS ARRESTS

## TABLE OF CONTENTS

Page

I.      INTRODUCTION.................................................................................................................1

II.     BACKGROUND..................................................................................................................2

        A.      Defendants' Operations Cause Chaos in Intervenors' Communities........................2

        B.      Defendants' Arrests Are Warrantless by Design .....................................................4

        C.      Intervenors Bear the Mounting Costs of Defendants' Actions ................................5

III.    ARGUMENT .....................................................................................................................5

        A.      Intervenors Will Suffer Irreparable Harm Absent an Injunction ............................6

                1.      Defendants' Unlawful Campaign Impairs Intervenors' Ability to
                        Maintain Law and Order .................................................................................6

                2.      Defendants' Warrantless Arrests at State Courthouses Interfere With
                        Intervenors' Ability to Administer Justice .....................................................10

                3.      Defendants' Terror Campaign Chills Business and Drains
                        Intervenors' Tax Revenue ...............................................................................12

                4.      Defendants' Unlawful Enforcement Tactics Have Gutted a Broad
                        Range of Public Services..................................................................................15

        B.      The Balance of Harms Heavily Weighs in Favor of Injunctive Relief and a
                Preliminary Injunction Is in the Public Interest.......................................................17

IV.     CONCLUSION .................................................................................................................18

INTERVENORS' JOINDER IN PLS.' MOT. FOR PRELIM. INJUNCTION RE: WARRANTLESS ARRESTS

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Berger v. New York*,
388 U.S. 41 (1967) ...................................................................................................18

*California v. Health & Hum. Servs.*,
390 F. Supp. 3d 1061 (N.D. Cal. 2019) .................................................................14

*City & Cnty. of San Francisco v. Trump*,
783 F. Supp. 3d 1148 (N.D. Cal. 2025) ...............................................................7, 14

*City of Albuquerque v. Barr*,
515 F. Supp. 3d 1163 (D.N.M. 2021) ......................................................................9

*City of Chicago v. Sessions*,
264 F. Supp. 3d 933 (N.D. Ill. 2017) .......................................................................9

*City of Los Angeles v. Sessions*,
2018 WL 6071072 (C.D. Cal. Sept. 13, 2018), aff'd sub nom. *City of Los
Angeles v. Barr*, 941 F.3d 931 (9th Cir. 2019).......................................................9

*Drakes Bay Oyster Co. v. Jewell*,
747 F.3d 1073 (9th Cir. 2014).................................................................................17

*Garcia v. City of Los Angeles*,
481 F. Supp. 3d 1031 (C.D. Cal. 2020), aff'd, 11 F.4th 1113 (9th Cir. 2021)............................7

*Kelley v. Johnson*,
425 U.S. 238 (1976) ..................................................................................................6

*Lopez v. Heckler*,
713 F.2d 1432 (9th Cir. 1983)..................................................................................17

*Louisiana v. Biden*,
2024 WL 3253103 (W.D. La. July 1, 2024) ...........................................................15

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012).....................................................................................17

*Nken v. Holder*,
556 U.S. 418 (2009) .................................................................................................17

*Preminger v. Principi*,
422 F.3d 815 (9th Cir. 2005).....................................................................................18

*Tribe v. Hammond*,
2002 WL 35661319 (D. Idaho Aug. 23, 2002) .......................................................14

*Valle del Sol Inc. v. Whiting*,
     732 F.3d 1006 (9th Cir. 2013)................................................................................7, 17

*Vasquez Perdomo v. Noem*,
     148 F.4th 656 (9th Cir. 2025)......................................................................................18

*Washington v. U.S. Dep't of Homeland Sec.*,
     614 F. Supp. 3d 863 (W.D. Wash. 2020) ...................................................................12

*Winter v. Natural Res. Def. Council*,
     555 U.S. 7 (2008) ...........................................................................................................6

**FEDERAL STATUTES**

8 U.S.C. § 1357(a)(2) ............................................................................................1, 4, 18

**FEDERAL REGULATIONS**

8 C.F.R. § 287.8(c)(2) ..............................................................................................1, 4, 5

INTERVENORS' JOINDER IN PLS.' MOT. FOR PRELIM. INJUNCTION RE: WARRANTLESS ARRESTS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Since June 2025, Defendants have waged an unlawful campaign of immigration enforcement culminating in mass warrantless arrests across the Central District of California. These enforcement activities have invaded every aspect of daily life, including schools, courthouses, businesses, public transit hubs, places of worship, and public gatherings.  Many locations—including car washes, Home Depots, farms, and other places of employment—have now been raided several times.  These tactics instill fear in community members, regardless of immigration status, that more warrantless arrests could occur at any moment.

Intervenors are twenty-two local governments whose communities continue to be ravaged by Defendants' unlawful policies.  Defendants' warrantless arrests undermine Intervenors' ability to maintain law and order throughout the District by diverting resources and sowing distrust with local communities.  Defendants' operations at and near state courthouses interfere with Intervenors' ability to administer justice through their civil and criminal court systems—forcing prosecutors to dismiss serious criminal cases because victims and witnesses are too afraid to participate in the process or appear in court.  Defendants' activities have also turned formerly vibrant commercial areas into virtual ghost towns throughout the District, resulting in drastic losses to tax revenue and economic disruption.  Numerous other public services—from public health to transportation to recreation—have all suffered declines in participation due to Defendants' unlawful practices.

Defendants' arrests conducted as part of these raids are warrantless by design, and intentionally violate the law.  As detailed in Plaintiffs' Motion, Defendants' own leadership has conceded under oath that they do not require officers to make the individualized "likely to escape" determination required by 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2) before effecting a warrantless arrest.

This is not immigration enforcement; it is a campaign of terror directed at Intervenors' communities.  Intervenors join Plaintiffs' Motion for a Preliminary Injunction Re: Warrantless

-1-                    Case No.: 2:25-cv-05605-MEMF-SP

INTERVENORS' JOINDER IN PLS.' MOT. FOR PRELIM. INJUNCTION RE: WARRANTLESS ARRESTS

Arrests (Dkt. No. 529) in full and offer this Joinder to provide additional points and authorities necessitating injunctive relief from Defendants' actions.

## II.    BACKGROUND

Intervenors are twenty-two local governments across four counties in the Central District of California.  Collectively, they bear primary responsibility for protecting the health and welfare of more than ten million people.  Intervenors provide local law enforcement, operate healthcare and emergency-response services, and administer justice through civil and criminal court systems.  From schools to public utilities, from libraries to public parks, Intervenors provide the government programs that sustain daily life for millions of California residents.

Defendants' warrantless arrests, which are part of a broader campaign to terrorize Intervenors' communities, impede Intervenors' ability to fulfill their sovereign duties.

### A.    Defendants' Operations Cause Chaos in Intervenors' Communities

As detailed in Plaintiffs' Motion, federal immigration officers are making warrantless arrests in Intervenors' communities without regard to whether arrestees are likely to abscond.  *See* Pls.' Mot. Prelim. Inj. (Dkt. 529) ("Mot.") at 2–7.  Defendants' warrantless arrests are part and parcel of the shock-and-awe tactics that have caused ongoing chaos and fear in Intervenors' communities for more than a year.

Since June 2025, masked federal immigration officers have blanketed the Central District of California with a ceaseless campaign of interrogations, detentions, and arrests.  The express purpose of that campaign is intimidation: Defendants hope to terrify residents into "self-deporting" from Intervenors' communities.  In the process, Defendants have cultivated a climate of fear that impacts all of Intervenors' residents, regardless of citizenship or immigration status.

Federal immigration officers frequently use force against peaceful protestors in Intervenors' communities.  In Oxnard, federal officers deployed tear gas canisters, pepper balls, and other projectiles at a peaceful crowd protesting Defendants' operations.  *See* First Decl. of Gabriel Teran in Support of Intervenors' Joinder ("Teran 1st Decl.") ¶¶ 6, 8–10, 13–16; Second Decl. of Gabriel Teran in Support of Intervenors' Joinder ("Teran 2d Decl.") ¶¶ 16–18.  In Carpinteria, agents threw "flash grenades" into a crowd of observers—including Congressman

INTERVENORS' JOINDER IN PLS.' MOT. FOR PRELIM. INJUNCTION RE: WARRANTLESS ARRESTS

Salud Carbajal, a county planning commissioner, school teachers, older adults, and children—and, without warning, surged into the crowd firing rubber bullets and smoke bombs. *See* Decl. of Monica Solorzano in Support of Intervenors' Joinder ("Solorzano Decl.") ¶¶ 5–6, 9–14; *see also* Decl. of Julia Mayer in Support of Intervenors' Joinder ("Mayer Decl.") ¶¶ 3–6; Decl. of Ingrid Bostrom in Support of Intervenors' Joinder ("Bostrom Decl.") ¶¶ 4–5; Decl. of Krista Munizich in Support of Intervenors' Joinder ("Munizich Decl.") ¶¶ 7–8. Carpinteria Vice Mayor Monica Solorzano herself fell and sustained cuts and bruises to her elbows and knees during that incident, stating she "never thought [she] would experience this level of disregard for human life or safety by federal agents in this country." Solorzano Decl. ¶ 13.

Across Intervenors' communities, federal officers demonstrate a callous disregard for residents' sense of safety. Officers flaunt assault rifles while hiding behind face coverings and refusing to provide identification. *See, e.g.*, Decl. of Sam Talim in Support of Intervenors' Joinder ("Talim Decl.") ¶¶ 4, 9, 12; Teran 2d Decl. ¶ 8; Decl. of Rebecca Norton in Support of Intervenors' Joinder ("Norton Decl.") ¶ 12; Decl. of Regina Vannicola in Support of Intervenors' Joinder (Vannicola Decl.") ¶¶ 4, 6, 8; Solorzano Decl. ¶ 6; Mayer Decl. ¶ 3; Munizich Decl. ¶ 3. Gangs of masked, heavily armed officers spring from unmarked vehicles at car washes, construction sites, and Home Depot parking lots, chasing down anyone who flees—including U.S. citizens. Talim Decl. ¶¶ 6, 9–10; Vannicola Decl. ¶¶ 4–6; Decl. of John Moreno in Support of Intervenors' Joinder ("Moreno Decl.") ¶ 5. In Pico Rivera, federal officers unlawfully arrested a U.S. citizen in a Walmart parking lot, leading to widespread protests. *See* Decl. of Steve Carmona ("Carmona Decl.") ¶ 6. In Santa Monica, at least four armed, masked men in unmarked personal vehicles—wearing vests reading "Police" but displaying no official badges—seized a Latino construction worker with zip ties near Lincoln Middle School. *See* Vannicola Decl. ¶¶ 4–7, 10. Officers smash car windows and drag drivers from their vehicles. *See* Norton Decl. ¶¶ 8–12. Residents arrested in these raids are spirited to detention facilities hundreds of miles from their families and attorneys. *See* Decl. of Aline Assaf in Support of Intervenors' Joinder ("Assaf Decl.") ¶¶ 43, 47, 52–60, 84, 91 (Glendale resident held at a facility in Tacoma, Washington,

INTERVENORS' JOINDER IN PLS.' MOT. FOR PRELIM. INJUNCTION RE: WARRANTLESS ARRESTS

where she was denied medication needed to treat her cancer, and forced to "hop" to a bond hearing without a wheelchair).

Defendants have even gone so far as to detain and harass Intervenors' employees, interrupting them in the course of their official duties. *See* Decl. of Norma García-González in Support of Intervenors' Joinder ("García-González Decl.") ¶ 15. For example, in January 2026, federal officers entered County of Los Angeles property without paying the vehicle entrance fees and detained two Department of Parks and Recreation employees. *Id.* One of the officers grabbed an employee by the strap of his backpack. *Id.* After demanding to know whether the employees were U.S. citizens (which they were), the officers returned to their vehicles and sped away from the scene. *Id.* In Long Beach, federal immigration officers threatened to arrest a City waste-disposal employee and followed his vehicle. *See* Decl. of Joseph Ruelas in Support of Intervenors' Joinder ("Ruelas Decl.") ¶¶ 2, 6–9.

Defendants' warrantless arrests, and their broader campaign to terrorize Intervenors' communities, continue apace. Federal officers recently conducted enforcement operations near Canalino Elementary School in Carpinteria. *See* Decl. of Natalia Alarcon in Support of Intervenors' Joinder ("Alarcon Decl.") ¶¶ 13–14. The Euclid Hand Car Wash in Anaheim has been raided four separate times, with agents deploying tear gas and smoke against gathered civilians. *See* Talim Decl. ¶¶ 7–14. And Defendants have publicly promised that more "mass deportations are coming." *See* Decl. of V. Roman Leal in Support of Intervenors' Joinder ("Leal Decl."), Ex. A (Ximena Bustillo, *Border Czar Promises 'Mass Deportations Are Coming' to Fulfill Trump's Promises*, NPR (May 7, 2026), https://www.mainepublic.org/npr-news/2026-05-07/border-czar-promises-mass-deportations-are-coming-to-fulfill-trumps-promises).

**B.     Defendants' Arrests Are Warrantless by Design**

Under 8 U.S.C. § 1357(a)(2), an immigration officer may make a warrantless arrest only where the officer has "reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest." That section's implementing regulation, 8 C.F.R. § 287.8(c)(2), codifies the same two-part standard, requiring *both* (1) probable cause of removability *and* (2) an individualized

-4-                    Case No.: 2:25-cv-05605-MEMF-SP

determination that the person "is likely to escape before a warrant can be obtained." *Id.* (emphasis added).

Defendants routinely conduct warrantless arrests without making the determinations required by law. Indeed, ICE and CBP leadership testified under oath that officers can "absolutely" make warrantless arrests based solely on suspicion of unlawful immigration status—regardless of whether the individual poses an escape risk. *See* Mot. at 8 (citing deposition testimony of ICE and CBP 30(b)(6) witnesses); *see also id*. at 9 (citing January 28, 2026 Memorandum of Acting ICE Director Todd Lyons Memo purporting to modify statutory requirement).

### C.    Intervenors Bear the Mounting Costs of Defendants' Actions

As Defendants escalate tensions with their warrantless arrests and related intimidation tactics, Intervenors must deal with the fallout. Intervenors have been forced to divert police and emergency-response resources, establish emergency-assistance funds, and grapple with lost tax revenues and declining participation in public services—all while Defendants routinely refuse to provide advance notice of operations and leave local law enforcement to manage the chaos left in their wake. *See, e.g.*, Decl. of German Hurtado in Support of Intervenors' Joinder ("Hurtado Decl.") ¶¶ 3–6; Decl. of Christopher Kirby in Support of Intervenors' Joinder ("Kirby Decl.") ¶¶ 4–9; Decl. of Lana Dich in Support of Intervenors' Joinder ("Lana Decl.") ¶¶ 5–12; Decl. of Barbara in Support of Intervenors' Joinder ("Ferrer Decl.") ¶¶ 5–14; Decl. of Christina Ghaly in Support of Intervenors' Joinder ("Ghaly Decl.") ¶¶ 4–9; Decl. of Oliver Chi in Support of Intervenors' Joinder ("Chi Decl.") ¶¶ 5–11; Decl. of Michael Lyster in Support of Intervenors' Joinder ("Lyster Decl.") ¶¶ 4–9.

### III.    ARGUMENT

As set forth in Plaintiffs' Motion for Preliminary Injunction, Plaintiffs satisfy all four factors required for entry of preliminary relief: (1) they are "likely to succeed on the merits" of their claims;[1] (2) they are "likely to suffer irreparable harm in the absence of preliminary relief";

---

[1] Intervenors seek the same injunctive relief as Plaintiffs and therefore need not independently establish standing. *See* Dkt. No. 418 at 19.

(3) "the balance of equities tips in [their] favor"; and (4) "an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008).  Intervenors fully adopt and incorporate by reference the arguments set forth in Plaintiffs' Motion.  Absent a preliminary injunction, Defendants' actions also will inflict distinct, imminent, and irreparable harms on Intervenors.  Those irreparable harms include diverting Intervenors' limited resources to address the fallout from Defendants' actions; fracturing the trust Intervenors have cultivated with their communities; impairing Intervenors' ability to administer justice; draining Intervenors' tax revenues; and undermining Intervenors' ability to provide for public health and other critical services to their residents.  Additionally, because Defendants' acts violate the constitutional rights of Intervenors' residents and impose inequitable harms on members of the public, the public interest strongly favors a preliminary injunction.

### A.    Intervenors Will Suffer Irreparable Harm Absent an Injunction

Defendants' warrantless arrests interfere with Intervenors' sovereign duty to safeguard their residents.  Intervenors represent the twenty-two localities at the epicenter of Defendants' unlawful immigration raids.  Intervenors must maintain public safety, provide critical public services, administer justice, and safeguard the health and welfare of the more than ten million residents within their jurisdictions.  Absent an injunction, Intervenors' ability to fulfill these core responsibilities will be irreparably harmed.

### 1.    Defendants' Unlawful Campaign Impairs Intervenors' Ability to Maintain Law and Order

Defendants' warrantless arrests impact communities throughout the Central District of California, with serious consequences for Intervenors' ability to maintain law and order.  Defendants' ongoing disruption of Intervenors' core responsibility to ensure the "safety of persons and property" within their municipal boundaries—a responsibility "unquestionably" at the core of Intervenors' police powers, *Kelley v. Johnson*, 425 U.S. 238, 247 (1976)—constitutes irreparable harm.

Masked, armed, and often unidentified federal agents are carrying out raids and warrantless arrests without the required escape-risk determination, and without regular notice to local law

enforcement. *See, e.g.*, Kirby Decl. ¶¶ 4–6 (Pasadena); Decl. of Michael O'Kelly in Support of Intervenors' Joinder ("O'Kelly Decl.") ¶¶ 4–6 (Bell Gardens); Decl. of John Nachbar in Support of Intervenors' Joinder ("Nachbar Decl.") ¶¶ 6–8 (Culver City); Decl. of Maria Davila in Support of Intervenors' Joinder ("Davila Decl.") ¶¶ 3–4 (South Gate); Decl. of Raul Alvarez in Support of Intervenors' Joinder ("Alvarez Decl.") ¶¶ 6, 9–10 (Montebello); Decl. of Anita Scott in Support of Intervenors' Joinder ("Scott Decl.") ¶¶ 7–9 (Pomona); Decl. of Scott Wiese in Support of Intervenors' Joinder ("Wiese Decl.") ¶¶ 4–6 (Monterey Park). As a direct result of Defendants' illegal actions, Intervenors have been forced to divert their limited resources—in terms of personnel hours, funds, equipment, and policy priorities—to respond to and manage the fallout from Defendants' raids. *See City & Cnty. of San Francisco v. Trump*, 783 F. Supp. 3d 1148, 1186 (N.D. Cal. 2025) (budgetary effects on law enforcement programs constitute irreparable harm warranting a preliminary injunction); *Garcia v. City of Los Angeles*, 481 F. Supp. 3d 1031, 1049 (C.D. Cal. 2020), *aff'd*, 11 F.4th 1113 (9th Cir. 2021) (forcing a plaintiff to "divert resources from advancing its mission" constitutes irreparable harm); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013) (similar in the context of standing).

Since June 6, 2025, the Los Angeles Police Department has deployed more than 10,000 personnel (measured in days of deployment) in response to calls arising from federal immigration operations, responsive protests, and other related public safety actions. *See* Hurtado Decl. ¶ 5. The LAPD also implemented a new dispatch disposition code on April 27, 2026 specifically for tracking incidents involving federal immigration enforcement. *Id.* ¶ 11. The Office of the Los Angeles Chief of Police issued a formal Notice on March 3, 2026, implementing Mayor Karen Bass's Executive Directive No. 17 and requiring officers to request supervisors, verify identification, and capture body-worn video at all federal-enforcement encounters. *See* Leal Decl. Ex. B (Notice 1.14, Office of the Chief of Police (Mar. 3, 2026)).

On March 13, 2026, Los Angeles County Sheriff's Department responded to a frantic 911 call reporting the kidnapping of "screaming" female. *See* Decl. of Jason Skeen in Support of Intervenors' Joinder ("Skeen Decl.") ¶ 12. Multiple deputy vehicles initiated what they perceived as a high-risk felony stop, ordering everybody out of the car at gunpoint. *Id.* ¶ 13. Upon

investigation, the deputies discovered the individuals were ICE officers allegedly executing an administrative warrant. *Id.* The ICE officers' vehicle had a plastic cover obscuring the license plate, which an ICE supervisor later conceded violated ICE policy. *Id.* These types of incidents create serious safety risks for the community, for responding officers, and for federal immigration enforcement as well. *Id.*

The Pasadena Police Department likewise has been inundated with calls reporting possible kidnappings that turn out to be federal immigration operations. *See* Kirby Decl. ¶¶ 4–5. Multiple incidents have required twelve or more officers, supervisors, and a police helicopter to maintain the peace. *Id.* ¶ 9.

Every diversion of police resources further impedes Intervenors' ability to respond to violent crimes and other emergencies. *Id.* ¶¶ 11–12. The Bell Gardens Police Department has spent approximately $25,000 on protest response and approximately $60,000 in other diverted resources. *See* O'Kelly Decl. ¶ 10. The Los Angeles County Sheriff's Department incurred approximately $7 million in costs just to address the civil unrest related to Defendants' operations. *See* Skeen Decl. ¶ 11. In South Gate, the City provided mutual aid for protests and was forced to cancel its Fourth of July carnival and fireworks, incurring contractual losses. *See* Davila Decl. ¶¶ 5–6. Pomona has diverted its already-strained police resources from high-priority calls. *See* Scott Decl. ¶ 9. Montebello committed $100,000 in family-assistance and diverted law-enforcement resources following the June 13, 2025 violent arrest of a U.S. citizen at a tow-truck workplace. *See* Alvarez Decl. ¶¶ 7, 9–10, 16. And the LAPD has incurred more than $27 million in total costs in response to calls due to the raids along with the responsive protests by members of the public, and other related public safety actions. *See* Hurtado Decl. ¶ 5. Huntington Park likewise adopted lockdown, notification, and officer-verification policies and spent hundreds of hours responding to residents' concerns. *See* Decl. of Ricardo Reyes in Support of Intervenors' Joinder ("Reyes Decl.") ¶¶ 6, 9.

Defendants' actions have also encouraged criminals to engage in wrongdoing while posing as masked federal agents. As recently as April 2026, LAPD investigated a kidnapping in which the suspect informed the victim he was an ICE agent while displaying a badge. *See* Hurtado Decl.

INTERVENORS' JOINDER IN PLS.' MOT. FOR PRELIM. INJUNCTION RE: WARRANTLESS ARRESTS

¶ 3.  The Pasadena Police Department has received several similar calls of masked and armed individuals apparently impersonating federal agents.  *See* Kirby Decl. ¶ 7.

The trust and relationships that Intervenors and local law enforcement agencies have built with their communities have been deeply undermined by Defendants' unlawful raids, especially when impacted residents confuse the conduct of Defendants' agents with local first responders. *See* Hurtado Decl. ¶ 11; Kirby Decl. ¶¶ 6–9; O'Kelly Decl. ¶¶ 5–6; Scott Decl. ¶¶ 8–9; Wiese Decl. ¶¶ 5–6 (routine local code-enforcement action misperceived as a federal "raid," making residents uncooperative).

Crime victims and witnesses throughout Intervenors' jurisdictions have been hesitant to speak to law enforcement due to fears that their involvement will lead to federal immigration enforcement interactions, that their information will be shared with federal immigration agents, or that officials may be federal agents.  *See* Hurtado Decl. ¶ 11–12; *see also* Decl. of Alexander Karkanen in Support of Intervenors' Joinder ("Karkanen Decl.") ¶¶ 4, 8–9; Skeen Decl. ¶ 15.  This has led to the inability of law enforcement to hold offenders accountable. *See* Karkanen Decl. ¶¶ 5–9; Skeen Decl. ¶ 15.  Public safety is impacted when the community does not feel safe reporting potential crimes and abuses.  *See* Skeen Decl. ¶ 15; *see also* Carbajal Decl. ¶¶ 10–14 (stating that inquiries received by the Office of Labor Equity for workplace violations are down to 14 or fewer calls per week from approximately 200 per month as a result of the raids and what used to be regular complaints of immigration fraud are now "close to none").

The damage Defendants' actions have inflicted on the trust between Intervenors and their residents constitutes irreparable harm.  *See, e.g.*, *City of Los Angeles v. Sessions*, 2018 WL 6071072, at *3 (C.D. Cal. Sept. 13, 2018), *aff'd sub nom. City of Los Angeles v. Barr*, 941 F.3d 931 (9th Cir. 2019) ("[H]arm to the City's relationship with the immigrant community . . . is irreparable"); *City of Chicago v. Sessions*, 264 F. Supp. 3d 933, 950 (N.D. Ill. 2017); *City of Albuquerque v. Barr*, 515 F. Supp. 3d 1163, 1175 (D.N.M. 2021) (collecting cases).

INTERVENORS' JOINDER IN PLS.' MOT. FOR PRELIM. INJUNCTION RE: WARRANTLESS ARRESTS

**2.      Defendants' Warrantless Arrests at State Courthouses Interfere with Intervenors' Ability to Administer Justice**

Intervenors bear the sovereign duty of administering justice through their civil and criminal court systems.  Defendants' warrantless arrests at and near state courthouses—and the pervasive fear those arrests have created—directly interfere with that duty by deterring crime victims and witnesses from cooperating and appearing in court, forcing prosecutors to continue or dismiss serious criminal cases, and re-victimizing the very individuals whom the justice system exists to protect.

The Declaration of Alexander Karkanen, a Head Deputy District Attorney who supervised the Preliminary Hearing Division of the Los Angeles County District Attorney's Office, documents this harm in granular detail.  Beginning on June 6, 2025—the same day Defendants launched their enforcement campaign—witnesses in criminal cases began refusing to comply with subpoenas to appear in court for fear of federal immigration enforcement and encountering ICE officers at the courthouse.  *See* Karkanen Decl. ¶ 4.  This is "having an ongoing negative impact on criminal prosecutions."  *Id.*

Mr. Karkanen also provides examples of specific cases in which Defendants' enforcement has directly impaired prosecutions:

- *People v. Delacerda* (24CJCF05618): The defendant lured victims through an internet marketplace ("Offer-Up") to rob them and shot one victim, who was struck and injured.  The defendant was charged with two counts of attempted murder, shooting at an occupied vehicle, assault with a semiautomatic firearm, and attempted robbery.  Because the victims were undocumented and refused to come to court for fear of being arrested and deported by ICE, prosecutors were *forced to dismiss the attempted murder and assault charges*, and the defendant pled to the lesser charge of attempted robbery.  *See* Karkanen Decl. ¶ 5.

- *People v. Stewart & Wilson* (25CJCF01751): Gang members robbed a 7-Eleven convenience store.  The security guard—a key witness—is undocumented and "has been very afraid to come to court to testify due to his fear of arrest by ICE."

INTERVENORS' JOINDER IN PLS.' MOT. FOR PRELIM. INJUNCTION RE: WARRANTLESS ARRESTS

Without his participation, the case "will likely be dismissed." *See* Karkanen Decl. ¶ 6.

- *People v. Jackson* (25CJCF02441): The defendant broke into a victim's home while she was sleeping inside. The victim was "very afraid to come to court for fear of arrest and deportation." Because of the victim's reluctance, prosecutors were "forced to resolve the case in a way in which [they] did not gain additional jail time for the defendant." *See* Karkanen Decl. ¶ 7.

These are not isolated incidents. From June 6, 2025 to the present, the Los Angeles County District Attorney's Office has encountered victims and witnesses unwilling to come forward due to fear of federal immigration enforcement "at least twice a week, and sometimes every day." Karkanen Decl. ¶ 9. The impacted victims and witnesses are "largely Latino, but a substantial number have been Asian, and some have been Eastern European." *Id.* "The number of cases that have been dismissed by our Office due to the raids has also increased dramatically," leading to "victims being re-victimized as some offenders are not sufficiently being held accountable." *Id.*

The declaration of Jason Skeen, Assistant Sheriff of Countywide Operations for the Los Angeles County Sheriff's Department, reiterates that individuals have been detained and taken into custody by immigration enforcement agents as they were coming out of courtrooms or courthouses numerous times. *See* Skeen Decl. ¶ 16. "This could have the implication of individuals being reluctant to attend their court dates." *Id.*

LAPD Deputy Chief German Hurtado corroborates this testimony, explaining that "victims of crimes have reported being afraid to come to court or otherwise cooperate with law enforcement due to concerns about federal immigration enforcement." *See* Hurtado Decl. ¶ 12. Victims have been "hesitant to speak to LAPD investigators working to solve local crimes due to fears that LAPD investigators may actually be federal agents." *Id.*

The administration of justice is among the fundamental exercises of sovereign authority. When Defendants' warrantless enforcement operations at and near courthouses deter victims and witnesses from participating in the judicial process, Intervenors suffer a direct impairment of their

INTERVENORS' JOINDER IN PLS.' MOT. FOR PRELIM. INJUNCTION RE: WARRANTLESS ARRESTS

governmental functions that cannot be remedied by money damages.  The dismissal of violent-crime charges inflicts irreparable harm on Intervenors and on the public safety they are duty-bound to maintain. *See Washington v. U.S. Dep't of Homeland Sec.*, 614 F. Supp. 3d 863, 876 (W.D. Wash. 2020) (holding federal officers' interference with state's ability to "operate[] a fair, just, and orderly court system" constituted cognizable injury).

### 3.    Defendants' Terror Campaign Chills Business and Drains Intervenors' Tax Revenue

Defendants' unlawful actions have reduced commercial activities in Intervenors' neighborhoods.  Many communities have been robbed of their former vibrance as Intervenors' residents—including U.S. citizens—choose to stay at home for fear of being swept up in the raids.  The data confirms the devastation:

In **Paramount**, Finance Director Lana Dich reports that Sales Tax revenue fell by approximately 8% and that Transaction & Use Tax revenue fell by approximately 11% in Q2 2025 compared to Q2 2024—representing combined losses of over $430,000 in a single quarter.  *See* Dich Decl. ¶¶ 5–8.  Declines continued in Q3 (approximately 6% and 5%, respectively).  *Id.* ¶¶ 9–11.  Swap Meet revenue plunged approximately 19%, with vendor check-ins down 20% and booth check-ins down 36%.  *Id.* ¶¶ 12–13.  Theater revenue fell by approximately 81%.  *Id.* ¶ 14.  The City of Paramount's Home Depot was closed twice due to enforcement operations, costing the City approximately $7,700 in combined sales and use tax.  *See* Moreno Decl. ¶ 5.

In **Santa Ana**, City Manager Alvaro Nuñez reports that the downtown has been deserted, businesses have closed, and revenue has declined.  *See* Decl. of Alvaro Nuñez in Support of Intervenors' Joinder ("Nuñez Decl.") ¶¶ 6–10.  Citywide event attendance fell by approximately 20%.  *Id.* ¶ 12.  Recreation Supervisor Corilyn Lantz provides precise figures: total City-event attendance fell by 22.4% (from 118,550 to 92,000); July 4th attendance fell by 60.5%; and the Mid-Autumn Festival fell by 89.8%.  *See* Decl. of Corilyn Lantz in Support of Intervenors' Joinder ("Lantz Decl.") ¶¶ 3–4.

INTERVENORS' JOINDER IN PLS.' MOT. FOR PRELIM. INJUNCTION RE: WARRANTLESS ARRESTS

In **Los Angeles**, the Office of Finance reported 4.55% and 3.75% year-over-year decreases in transient-occupancy-tax collections in June and July 2025, respectively. *See* Decl. of Matthew Crawford in Support of Intervenors' Joinder ("Crawford Decl.") ¶ 9.

In **Carpinteria**, Mayor Natalia Alarcon surveyed local businesses: 78% of 45 respondents reported impacts from the raids, 53% reported lost customers or revenue, and financial losses reached $50,000 or more for many businesses. *See* Alarcon Decl. ¶¶ 17–18. School chronic-absenteeism rose. *Id.* ¶ 12. Andre Jackson, owner of Corktree Cellars restaurant, reports summer of 2025 through 2026 as his "worst economic year . . . by far": field-worker absences drove avocado prices to nearly $5 each, and Avocado Festival sales fell approximately 22%. *See* Decl. of Andre Jackson in Support of Intervenors' Joinder ("Jackson Decl.") ¶¶ 4–5. In **Gardena**, Douglas Moran of B&D Car Wash saw daily clients fall from 80–95 to 40–50 after the raids. *See* Decl. of Douglas Moran in Support of Intervenors' Joinder ("Moran Decl.") ¶¶ 3–4.

**Bell Gardens** lost approximately $148,000 in General Fund revenue from Parkwest casino alone (a 10% decline in June 2025), experienced a 40% drop in trolley ridership, and saw a 70% drop in city-event attendance. O'Kelly Decl. ¶¶ 7–9. In **Lynwood**, event attendance declined, and the City established a $50,000 Justice Fund and committed $100,000 toward a joint-powers authority. *See* Decl. of Julian Lee in Support of Intervenors' Joinder ("Lee Decl.") ¶¶ 12–16; *see also* Carmona Decl. ¶ 11 (Pico Rivera); Alvarez Decl. ¶¶ 11–13 (Montebello); Davila Decl. ¶¶ 6–7 (South Gate).

Margarita Cortez, a U.S.-born restaurant owner in **Altadena** whose business was recovering from the January 2025 wildfires, saw her lunch crowds fall from 60–70 customers to 15–30 after the raids began—undoing months of post-wildfire recovery. *See* Decl. of Margarita Cortez in Support of Intervenors' Joinder "(Cortez Decl.") ¶¶ 3–6, 8.[2] In **East Los Angeles**, flower shop owner Armando Torres lost approximately 85 percent of his customers in an area that now "looks like a ghost town" because of the raids. *See* Decl. of Armando Torres in Support of

---

[2] *See generally* Livia Albeck-Ripka & Orlando Mayorquin, *ICE Raids Scare Off L.A. Workers Rebuilding Fire-Torn Areas*, N.Y. Times (July 12, 2025), https://www.nytimes.com/2025/07/12/us/ice-raid-altadena-palisades-rebuilding.html.

INTERVENORS' JOINDER IN PLS.' MOT. FOR PRELIM. INJUNCTION RE: WARRANTLESS ARRESTS

Intervenors' Joinder ("Torres Decl.") ¶¶ 2–4 ("This has stayed the case because nobody knows if ICE will return or not.")  There were raids at three nearby locations, two of which were visited multiple times.  *Id.* ¶ 5.  In **El Sereno**, Erika Crenshaw saw a 50 percent loss in revenue.  Decl. of Erika Crenshaw in Support of Intervenors' Joinder ("Crenshaw Decl.") ¶ 4.  Every part of her business cycle, from farm supply to delivery of that supply to sales to customers, suffered.  *Id.* ¶¶ 6–7.  And despite being U.S. citizens, business owners like Douglas Moran, Margarita Cortez, and Erika Crenshaw express fear for their own wellbeing due to the raids.  *See* Moran Decl. ¶ 9; Cortez Decl. ¶ 8; Crenshaw Decl. ¶ 5.

University of California Merced economist Dr. Edward Orozco Flores quantifies the macroeconomic impact: using Current Population Survey data, he finds that California private-sector work fell by approximately 3.1% in the week of June 8, 2025 and by approximately 4.9% in the week of July 6, 2025 compared to May 2025; it rebounded approximately 4.0% in August after this Court's July 11 TRO, but then declined again by approximately 1.9% in September after the Supreme Court stay.  *See* Decl. of Edward Orozco Flores in Support of Intervenors' Joinder ("Flores Decl.") ¶¶ 10–14.  These declines were "unprecedented . . . going back to 1983" and have had "profoundly negative consequences for California's economy."  *Id.* ¶¶ 14, 16.  Dr. Flores expects further harm if enforcement continues.  *Id.* ¶ 18.

Intervenors have also expended significant funds to provide emergency financial assistance to community members.  *See, e.g.*, Chi Decl. ¶¶ 10–11 (Santa Monica: $75,000 initially, then an additional $250,000 in emergency assistance, plus $35,000 in legal consultations); Decl. of Kelly McAdoo in Support of Intervenors' Joinder ("McAdoo Decl.") ¶ 5 & Ex. 1 at pp. 2–3 (Santa Barbara: General Fund deficit pressures); Lyster Decl. ¶¶ 5–6 (Anaheim: $250,000 in emergency grants and $100,000 for legal consultation; four-person team working seven days a week); Moreno Decl. ¶ 8 ($100,000 humanitarian assistance program in Paramount).

These sprawling, ongoing losses to Intervenors' general revenues constitute irreparable harm.  *See, e.g., City & Cnty. of San Francisco v. Trump*, 783 F. Supp. 3d at 1186; *California v. Health & Hum. Servs.*, 390 F. Supp. 3d 1061, 1065 (N.D. Cal. 2019) (recognizing "unrecoverable costs on the state" cause irreparable harm); *Tribe v. Hammond*, 2002 WL 35661319, at *3 (D.

INTERVENORS' JOINDER IN PLS.' MOT. FOR PRELIM. INJUNCTION RE: WARRANTLESS ARRESTS

Idaho Aug. 23, 2002) (recognizing "irreparable harm to [the] governmental interest in receiving tax revenue"); *see also Louisiana v. Biden*, 2024 WL 3253103, at *24 (W.D. La. July 1, 2024) (loss of tax revenues constituted irreparable harm warranting injunctive relief).

### 4.      Defendants' Unlawful Enforcement Tactics Have Gutted a Broad Range of Public Services

Numerous other public services—ranging from public health to transportation to libraries to recreation to child welfare—have been demonstrably harmed by Defendants' unconstitutional activities.

***Public Health***.  The Los Angeles County Department of Public Health saw a 25% decrease in clinic patients in the period from June 6–30, 2025 compared to the same period in 2024.  *See* Ferrer Decl. ¶ 8.  The Department paused door-to-door outreach work; Medical Therapy Program patients failed to appear for appointments; and health inspectors were mistaken for ICE agents.  *Id.* ¶¶ 9–14.  Community health events were cancelled.  *Id.* ¶ 13.  Cases of infectious or communicable disease may go undiagnosed and untreated, raising the risk of community spread. *Id.* ¶ 15.

The County's Department of Health Services likewise saw its outpatient no-show rate rise to approximately 20% in June 2025, while emergency room and urgent-care visits fell approximately 15%.  *See* Ghaly Decl. ¶ 5.  Applications for Medi-Cal declined because patients feared their information would be shared with ICE.  *Id.* ¶ 8.  When patients delay or avoid care, minor health issues escalate into severe conditions, placing additional burdens on the healthcare system.  *Id.* ¶¶ 6–7.

***Child Welfare***.  On June 16, 2025, apparent confusion as to whether a County social worker was actually an immigration agent resulted in damage to Department of Children and Family Services (DCFS) vehicles.  *See* Decl. of Frank Ramos in Support of Intervenors' Joinder ("Ramos Decl.") ¶¶ 10–12.  Families distrust DCFS workers who are mistaken for federal agents. *Id.* ¶ 16.  As a result, in response to the raids, and to ensure employee safety, the DCFS Multi-Agency Response Team changed its procedures—requiring employees to meet at precincts rather

than at the scene—delaying child custody transfers by one to two hours and increasing child trauma.  *Id.* ¶¶ 13–15, 17.

*Libraries*.  Los Angeles County Library branch visitor counts declined significantly: South El Monte fell by 33%; Compton, 19%; and Huntington Park, 16%.  *See* Decl. of Jesse Walker-Lanz in Support of Intervenors' Joinder ("Walker-Lanz Decl.") ¶ 6.  The raids reduced participation in a no-cost tutoring program designed to help children needing educational support, in a summer meal program called "Lunch at the Library" that provides lunches to youth, in Storytime, in a citizenship class, and in a Spanish-speaking support group on grief.  *Id.* ¶ 8. Patrons have reported being too afraid to attend.  *Id.*  At the West Hollywood Library, a 6-year-old won tickets to Raging Waters waterpark in San Dimas.  The family subsequently turned down the tickets out of fear of venturing that far due to the raids.  *Id.*  "They had to speak with their 6-year-old about why she could not use the prize she won."  *Id.*

*Transit*.  Big Blue Bus ridership in Santa Monica fell approximately 24% from mid-May to June 2025, costing the City approximately $61,795 in lost revenue in a single month.  *See* Chi Decl. ¶¶ 5–8.  Transit Store visits also declined.  *Id.* ¶ 9.  LADOT likewise saw a $39,651, or 19%, drop in June 2025 DASH fare revenue and may need route cuts if sales-tax revenue falls.  *See* Decl. of David Somers in Support of Intervenors' Joinder ("Somers Decl.") ¶¶ 7–8.

*Recreation and Cultural Programming*.  Santa Monica scaled back its Las Posadas cultural programming.  Chi Decl. ¶ 13.  Multiple Intervenors cancelled or saw dramatically reduced attendance at their signature events.  *See, e.g.*, Lantz Decl. ¶¶ 3–4 (Santa Ana: July 4th down 60.5%, Mid-Autumn Festival down 89.8%); O'Kelly Decl. ¶ 9 (Bell Gardens: 70% drop in event attendance; cancelled July events); Davila Decl. ¶ 6 (South Gate: cancelled July 4th carnival/fireworks); *see also* McAdoo Decl. ¶ 5 & Ex. 1 at 2–3 (Santa Barbara: reduced use of services and event participation; General Fund deficit pressures); Lyster Decl. ¶¶ 5–7 (Anaheim: more than 75 residents detained; approximately 30% drop in attendance at City programs, community centers, and libraries; Anaheim Contigo program launched in response); Nachbar Decl. ¶¶ 7–10 (Culver City: raids at Culver City Express Hand Car Wash and ice-cream-vendor detention; Westfield mall traffic declines); García-Gonzalez Decl. ¶¶ 7, 9, 10, 13  (describing

INTERVENORS' JOINDER IN PLS.' MOT. FOR PRELIM. INJUNCTION RE: WARRANTLESS ARRESTS

County of Los Angeles Department of Parks and Recreation drop in senior programing attendance, cancellation of Fourth of July drone show, 50% loss in attendance at annual Fall Fair, and drop of 40 percent in overnight Family Camping attendance).  Los Angeles's Department of Recreation and Parks likewise reported reduced youth participation, permit-revenue losses, fewer Summer Lunch meals, and sharply lower concert attendance.  *See* Decl. of Chinyere Stoneham in Support of Intervenors' Joinder ("Stoneham Decl.") ¶¶ 4–6.

**B.    The Balance of Harms Heavily Weighs in Favor of Injunctive Relief and a Preliminary Injunction Is in the Public Interest**

"When the government is a party, [the equities and public interest] factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).  And whatever the Government's cited interest, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citations omitted); *see Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("It is clear that it would not be equitable or in the public's interest to allow the state to violate the requirements of federal law." (citations omitted)).

Absent an injunction, Defendants' warrantless arrests will continue to disrupt Intervenors' ability to maintain law and order, administer justice, and provide crucial healthcare, transit, library, recreation, and other services for their more than ten million residents.  *See supra* Section III.A.  The ongoing harm extends far beyond the named parties: it reaches the millions of Intervenors' residents—including U.S. citizens who are stopped, detained, or too afraid to go to work, to the doctor, or to court.  *See, e.g.*, Carmona Decl. ¶ 6 (U.S. citizen arrested); Talim Decl. ¶¶ 10, 17 (U.S. citizen employees frightened into quitting); Cortez Decl. ¶ 8 (U.S.-born business owner afraid of being "taken").

"[I]t is not only the harm to the individuals involved that we must consider in assessing the public interest." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983).  Indeed, "[i]t would be tragic" to permit Defendants to deny vulnerable people "their rights or privileges" or "essential benefits for any period of time." *Id.*  The balance of equities here is clear: Intervenors and their residents face devastating, irreparable harm from Defendants' ongoing warrantless-arrest

INTERVENORS' JOINDER IN PLS.' MOT. FOR PRELIM. INJUNCTION RE: WARRANTLESS ARRESTS

practices, while Defendants hold no legitimate interest in conducting arrests that violate federal statutory requirements. *See Vasquez Perdomo v. Noem*, 148 F.4th 656, 690 (9th Cir. 2025).

Defendants will likely claim that a preliminary injunction will harm the public interest by preventing enforcement of federal immigration laws. That argument fails. The law does not permit Defendants to invoke the "public interest" to sidestep the Fourth Amendment or the statutory requirements of 8 U.S.C. § 1357(a)(2). *See Berger v. New York*, 388 U.S. 41, 59, 62 (1967) ("[W]e cannot forgive the requirements of the Fourth Amendment in the name of law enforcement."). An injunction requiring Defendants to comply with existing legal standards—by making an individualized escape-risk determination before a warrantless arrest—does not "stop" immigration enforcement; it merely requires that enforcement be carried out lawfully. *See Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("[P]ublic interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").

## IV.    CONCLUSION

For the foregoing reasons, Intervenors respectfully request that the Court grant Plaintiffs' Motion for Preliminary Injunction Re: Warrantless Arrests (Dkt. No. 529) in full.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

INTERVENORS' JOINDER IN PLS.' MOT. FOR PRELIM. INJUNCTION RE: WARRANTLESS ARRESTS

DATED:  June 26, 2026          MUNGER, TOLLES & OLSON LLP


By:    /s/ E. Martin Estrada
       E. MARTIN ESTRADA

       *Attorneys for Intervenors Cities of Los Angeles, Anaheim, Bell Gardens, Beverly Hills, Carpinteria, Culver City, Huntington Park, Long Beach, Lynwood, Montebello, Monterey Park, Oxnard, Paramount, Pico Rivera, Pomona, Santa Ana, Santa Barbara, Santa Monica, South Gate, and West Hollywood*

By:    /s/ Hydee Feldstein Soto
       HYDEE FELDSTEIN SOTO
       City Attorney

       OFFICE OF THE LOS ANGELES
       CITY ATTORNEY

       *Attorney for Intervenor
       City of Los Angeles*


By:    /s/ Brigit Greeson Alvarez
       BRIGIT GREESON ALVAREZ
       Deputy County Counsel

       OFFICE OF THE COUNTY COUNSEL

       *Attorney for Intervenor
       County of Los Angeles*


By:    /s/ Arnold F. Lee
       ARNOLD F. LEE
       Chief Assistant City Attorney

       OFFICE OF THE CITY ATTORNEY OF
       PASADENA

       *Attorney for Intervenor
       City of Pasadena*

-19-          Case No.: 2:25-cv-05605-MEMF-SP
INTERVENORS' JOINDER IN PLS.' MOT. FOR PRELIM. INJUNCTION RE: WARRANTLESS ARRESTS

**CERTIFICATE OF COMPLIANCE**

I certify that this brief, in relevant part, contains fewer than 7,000 words, which complies with the word limit of L.R. 11-6.1.


DATED:  June 26, 2026                    By:    _/s/ V. Roman Leal_
                                                      V. Roman Leal

INTERVENORS' JOINDER IN PLS.' MOT. FOR PRELIM. INJUNCTION RE: WARRANTLESS ARRESTS