HYDEE FELDSTEIN SOTO
(SBN 106866)
City Attorney
hydee.feldsteinsoto@lacity.org
VALERIE L. FLORES (SBN 138572)
valerie.flores@lacity.org
MICHAEL J. DUNDAS (SBN 226930)
mike.dundas@lacity.org
MARIA LOUISE COUSINEAU
(SBN 122280)
maria.cousineau@lacity.org
RANDALL G. SOMMER
(SBN 214099)
randall.sommer@lacity.org
SHUBHRA SHIVPURI (SBN 295534)
shubhra.shivpuri@lacity.org
OFFICE OF THE LOS ANGELES
CITY ATTORNEY
City Hall 200 North Spring Street
21st Floor
Los Angeles, CA 90012-4130
Tel.: 213-922-8382; Fax: 213-978-7957

*Attorneys for Intervenor*
*City of Los Angeles*

E. MARTIN ESTRADA
(SBN 223802)
martin.estrada@mto.com
DANIEL B. LEVIN (SBN 226044)
daniel.levin@mto.com
JOHN L. SCHWAB (SBN 301386)
john.schwab@mto.com
V. GRACE DAVIS (SBN 336732)
grace.davisfisher@mto.com
V. ROMAN LEAL (SBN 348892)
roman.leal@mto.com
WENDY QIUYU XIAO (SBN 342702)
wendy.xiao@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
50th Floor
Los Angeles, California 90071
Tel.: 213-683-9100; Fax: 213-687-3702

*Attorneys for Intervenors Cities of Los*
*Angeles, Anaheim, Bell Gardens, Beverly*
*Hills, Carpinteria, Culver City,*
*Huntington Park, Long Beach, Lynwood,*
*Montebello, Monterey Park, Oxnard,*
*Paramount, Pico Rivera, Pomona, Santa*
*Ana, Santa Barbara, Santa Monica,*
*South Gate, and West Hollywood*

NICOLE DAVIS TINKHAM (SBN 229592)
ntinkham@counsel.lacounty.gov
LILIANA CAMPOS (SBN 255753)
lcampos@counsel.lacounty.gov
BRIGIT GREESON ALVAREZ (SBN 237301)
bgreesonalvarez@counsel.lacounty.gov
OFFICE OF THE COUNTY COUNSEL
648 Kenneth Hahn Hall of Admin.,
500 West Temple Street
Los Angeles, California 90012-2713
Tel.: 213-808-8736; Fax: 213-633-1915

*Attorneys for Intervenor County of Los*
*Angeles*

MICHELE BEAL BAGNERIS (SBN 115423)
City Attorney
mbagneris@cityofpasadena.net
ARNOLD F. LEE (SBN 278610)
aflee@cityofpasadena.net
ANDREW AARONIAN (SBN 318245)
aaaronian@cityofpasadena.net
OFFICE OF THE CITY ATTORNEY
OF PASADENA
100 N Garfield Ave, Rm N-210
Pasadena, CA 91101
Tel.: 626-744-4141; Fax: 626-744-4190

*Attorneys for Intervenor City of Pasadena*

NORMAN L. EISEN*
Norman@democracydefenders.org
STEPHEN A. JONAS (SBN 542005)
Steve@democracydefenders.org
JOSHUA G. KOLB*
Joshua@democracydefenders.org
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave. SE, Suite 15180
Washington, DC 20003
Tel: (202) 594-9958

*Admitted *Pro Hac Vice*

*Attorneys for Intervenor City of Los*
*Angeles*

DECLARATION OF RAFAEL CARBAJAL

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pedro VASQUEZ PERDOMO; Carlos Alexander OSORTO; and Isaac VILLEGAS MOLINA; Jorge HERNANDEZ VIRAMONTES; Jason Brian GAVIDIA; LOS ANGELES WORKER CENTER NETWORK; UNITED FARM WORKERS; COALITION FOR HUMANE IMMIGRANT RIGHTS; IMMIGRANT DEFENDERS LAW CENTER, | Case No.: 2:25-cv-05605-MEMF-SP **DECLARATION OF RAFAEL CARBAJAL** |

*Plaintiffs*,

v.

Markwayne MULLIN, in his official capacity as Secretary, Department of Homeland Security; Todd M. LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; Rodney S. SCOTT, in his official capacity as Commissioner, U.S. Customs and Border Patrol; Michael W. BANKS, in his official capacity as Chief of U.S. Border Patrol; Kash PATEL, in his official capacity as Director, Federal Bureau of Investigation; Pam BONDI, in her official capacity as U.S. Attorney General; Jaime RIOS, in his official capacity as Acting Field Office Director for Los Angeles, U.S. Immigration and Customs Enforcement; Dean T. SORENSON, Special Agent in Charge for Los Angeles, Homeland Security Investigations, U.S. Immigration and Customs Enforcement; Gregory K. BOVINO, in his official capacity as Chief Patrol Agent for El Centro Sector of the U.S. Border Patrol; Justin DE LA TORRE, in his official capacity as Acting Chief Patrol Agent, San Diego Sector of the U.S. Border Patrol; Akil DAVIS, in his official capacity as Assistant Director in Charge, Los Angeles Office, Federal Bureau of Investigation; Bilal A. ESSAYLI, in his official capacity as U.S. Attorney for the Central District of California.

*Defendants*,

-2-

# DECLARATION OF RAFAEL CARBAJAL

I, Rafael Carbajal, do declare or state pursuant to 28 U.S.C. § 1746 as follows:

1. I am a witness for Intervenor the County of Los Angeles ("County") in the above-captioned case of *Perdomo, et al. v. Mullin, et al.*, Case No. 25-cv-05605-MEMF, in the U.S. District Court for the Central District of California. I make this declaration based on personal knowledge, except for those facts specifically stated to be based on information and belief, in support of a Motion for Joinder in the Plaintiffs' Motion for a Preliminary Injunction in the *Perdomo* case. If called as a witness, I could and would testify competently to the matters set forth in this declaration.

2. I have worked for the County for over twenty years, and I am now the Director of its Department of Consumer and Business Affairs ("DCBA"), where I oversee an expansive portfolio of programs and lead work on numerous county-wide economic development, economic wellbeing, and economic justice initiatives, including tenant and landlord protections, worker rights, and consumer protection. I have served as Director since January 5, 2021, and served as Interim Director beginning in September 2020. The Office of Immigrant Affairs ("OIA") is housed in DCBA and serves all residents with an emphasis on supporting immigrant communities.

3. Since June 6, 2025, when U.S. Immigration and Customs Enforcement ("ICE") began what appeared to be large-scale, indiscriminate immigration enforcement raids throughout the County, I have had to redirect DCBA's resources and provide increased support to certain DCBA programs that have been most affected. This urgent shift in priorities has meant that I have had to put more time and staff toward emergency response and immigrant support services. As a result, other important programs we run—such as our language access initiative—now have fewer resources and reduced capacity to operate at their usual level.

-3-

DECLARATION OF RAFAEL CARBAJAL

4.      For example, through a collaboration between our Office of Immigrant Affairs and Office of Labor Equity, we were trying to be strategic and provide support against wage theft and abuse for workers in high-risk industries. Due to a shift in priorities, we now lack the bandwidth for that type of strategic planning.

5.      OIA runs programs that are critically important to the immigrant communities it serves, with a particular focus on connecting people to legal services, healthcare resources, available County services, and consumer protection. These programs help immigrants understand their rights, access essential services, and make informed decisions about their well-being. OIA administers programs that serve the community through contractors/subcontractors, and OIA staff also provide direct support as needed. This includes organizing and participating in community outreach and events, as well as working closely with County departments and partner organizations and individuals who are trusted voices within their respective immigrant communities. By involving these trusted messengers, OIA helps ensure that information is shared in culturally relevant, linguistically accessible, and credible ways.

6.      Since the ICE raids began, OIA has been forced to devote significantly more time and resources to repairing the trust between the County and the immigrant community. The raids have created deep fear and uncertainty, leading many community members to avoid accessing services or attending OIA's events. In several instances, OIA or event hosts had to cancel planned events altogether because people were afraid that ICE might raid them. Even in familiar, public spaces like parks, staff have reported a noticeable drop in attendance. We have continued to avoid planning larger in-person events, as have our partners, because people may not attend. For example, we were forced to move our annual in-person World Refugee Day Resource Fair to a virtual event because it was scheduled for late June 2025. This climate of fear is not only undermining OIA's ability to serve the community, it

-4-

DECLARATION OF RAFAEL CARBAJAL

is also cutting people off from essential resources and information at a time when they may need them most.

7.    Since the ICE raids started, OIA has been forced to shift its focus away from long-term, strategic, and proactive planning toward urgent, reactive responses. We went from focusing on policy work, including for language access, to survival mode. One example is the emergency work required after carwash workers were specifically targeted by the raids. OIA has had to train and work closely with community stakeholders on how to respond when carwash workers were not leaving their homes and coming to work out of fear that ICE would indiscriminately target them for arrest and deportation. OIA has received reports of some workers being so afraid to leave their homes that they risk not having enough food for themselves and their families. In communities like Lancaster and the Antelope Valley, community partners report that the streets have been so empty that it has raised alarm about the depth of fear and isolation. To reach people in these conditions, OIA has had to shift from hosting community gatherings to training community organizations and County departments on how to provide support directly to residents. This change in approach is a direct result of the drastic disruption in daily life that the raids have inflicted on immigrants and their families. The fear is widespread, immediate, and dangerous— not only to their lost trust in government, but also to their health, safety, and basic needs.

8.    OIA staff have reported being afraid that, while carrying out their duties in the community, they could become targets of ICE raids themselves—or be subjected to improper enforcement tactics. This fear is not hypothetical; it is deeply felt and has created a chilling effect on staff's willingness to work in the field. The fact that public servants feel unsafe simply doing their jobs underscores the urgency of addressing these conditions and ensuring both staff and community members can engage without the threat of intimidation or harm.

-5-

DECLARATION OF RAFAEL CARBAJAL=

9.      This fear also continues into the present. We have heard from staff with concerns that the raids have continued into 2026. Staff members have also received information from organizations providing assistance to individuals and families impacted by enforcement actions in 2026. In one instance on January 29, 2026, a staff member directly observed immigration agents conducting an enforcement action just across the street from our offices while on his lunch break. The staff member returned to our office visibly distressed after witnessing masked agents physically restraining an individual on the sidewalk and forcing him into the back of a vehicle. I was in the office that day and spoke to staff members who were visibly disturbed by the incident, including the staff member who observed it.

10.      Since the ICE raids began, DCBA's Tenants' Protections Program and Office of Labor Equity ("OLE") have reported a troubling increase in calls from immigrant residents describing serious housing and workplace violations. Many of these reports involve emboldened landlords threatening tenants with immigration-related retaliation, as well as employers engaging in exploitative practices under the assumption that workers will be too afraid to push back. This type of behavior is also affecting immigrant residents that were impacted by the 2025 wildfires, compounding the challenges they are already experiencing with disaster recovery. While the number of concerns brought to our attention has grown, our staff is increasingly unable to take formal action because fewer immigrant community members are filing official complaints even after speaking with DCBA staff. Inquiries received by OLE are down dramatically—to 14 or fewer calls per week, down from approximately 200 every month. This drop in formal filings is a direct result of the climate of fear—people are worried that seeking help could expose them or their families to immigration enforcement. The result is a dangerous cycle: abusive landlords and employers face fewer consequences, violations go unaddressed, and immigrant residents are left more vulnerable. For DCBA, this not

DECLARATION OF RAFAEL CARBAJAL

only strains our resources but also undermines our mission to protect the rights and dignity of all residents.

11.    However, our staff believe with increasing frequency that they cannot proceed with action against suspected violators because immigrant individuals have been filing formal complaints less often.

12.    For example, OIA and OLE had a partnership with the U.S. Department of Labor in which we were helping support adults and minors working in the poultry industry. But that partnership dissolved and the cases came to a halt, in part because workers did not want to come forward.

13.    Since the sweeping ICE raids began in June 2025, staff in DCBA's consumer protection services have noticed a sharp drop in the number of people willing to formally report immigration services fraud and other swindles that generally target immigrants, including wage theft and job-related scams, impersonation of government officials, and rental and housing scams. Alarmingly, while reports have gone down, the actual occurrence of fraud—particularly immigration-related scams—appears to have increased. Predatory actors are taking advantage of the heightened climate of fear, targeting immigrants who feel unsafe to seek help. For example, given increased immigration enforcement and heightened fear among immigrant communities, an environment has been created in which unscrupulous notarios take advantage of vulnerable communities. We were regularly seeing complaints of immigration fraud, but since the raids began in June we are seeing close to none.

14.    This combination of rising fraud and declining official reports leaves victims without recourse, allows scams to spread unchecked, and undermines DCBA's ability to protect immigrant communities from harm.

15.    DCBA staff have also observed a noticeable rise in requests for rental assistance from County residents. Some of these individuals have openly shared that they are afraid to go to work because of the ongoing, aggressive immigration

enforcement raids. This fear is creating an urgent crisis: when people stay home from work to avoid potential ICE encounters, they lose critical income, making it harder to pay rent and keep a roof over their heads. The result is a growing risk of eviction, housing instability, and deepening poverty within already vulnerable immigrant communities. This development threatens to intensify the County's already urgent homelessness crisis. As more families face the risk of eviction, the pressure on the County's homelessness response systems will grow—pushing an already strained safety net closer to a breaking point.

16.    DCBA has also had issues with community members mistakenly believing County staff are involved with immigration enforcement. Earlier in 2026, OLE went to inspect work sites to ensure worker protections were being observed. But the workers initially refused to speak to County staff due to fears that County staff was aligned with immigration enforcement. This hampers our ability to support all residents and fulfill our mission.

17.    DCBA operates a Community Resource Center in South Whittier that has also been impacted by the raids. The Center hosted an after school program for several years, which typically continues through the summer months. Center staff made the decision to cancel the program entirely in June 2025 due to a substantial decline in community interest and enrollment requests, as well as staff concerns about caring for children who may be left behind at the Center at the end of the day, if a parent were to be detained. This successful program has not resumed, given the low attendance.

18.    The Center also received calls from community partners, including school districts, for various resources (including food, school supplies, and legal support) for families sheltering in place due to fear of immigration enforcement interactions.

19.    Finally, the Center hosts an annual back to school event in late summer that includes a giveaway of backpacks filled with school supplies and other valuable

-8-
DECLARATION OF RAFAEL CARBAJAL

services for youth, including no-cost haircuts, vision exams, and glasses. Demand for this annual event is very high and historically, staff must cap registration based on the availability of backpacks and other resources. Center staff pre-registered 300 individuals for the back-to-school event on July 31, 2025. However, approximately 100 registrants failed to attend. Center staff worked with local schools to try to identify registrants to provide them with their backpacks. In that process, staff learned that families avoided the event specifically due to heightened fears of immigration enforcement.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on this 22nd day of June, 2026, in the County of Los Angeles, California.

_____
Rafael Carbajal

-9-
DECLARATION OF RAFAEL CARBAJAL==