BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

BRANTLEY T. MAYERS
Counsel to the Assistant Attorney General
Civil Division

ANDREW I. WARDEN
C. LEE REEVES, II
Civil Division, Federal Programs Branch
 1100 L St. NW
 Washington, D.C. 20005
 Telephone: (202) 616-0773
 E-mail: Lee.Reeves2@usdoj.gov

JONATHAN A. ROBBINS
Civil Division, Office of Immigration Litigation
450 5th Street NW
Washington DC 20044
(202) 305-8275
Jonathan.A.Robbins@usdoj.gov

*Attorneys for the United States*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re Subpoena to Coalition for Humane Immigrant Rights (CHIRLA)** | No. XXXX |
| Served in the United States District Court for the Northern District of Illinois (Case No. 26-cv-321) | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH SUBPOENA ISSUED BY THE STATE OF ILLINOIS AND THE CITY OF CHICAGO TO COALITION FOR HUMANE IMMIGRANT RIGHTS** |
| STATE OF ILLINOIS *et al.*,<br>    Plaintiff, | |

v.

DEPARTMENT OF HOMELAND
SECURITY, *et al.*,
                    Defendants.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 26(c) and 45(d)(3)(A), the United States respectfully requests that this Court issue a protective order and order quashing Requests for Production Nos. 1-3 of the subpoena issued to Coalition for Humane Immigrant Rights (CHIR) by the State of Illinois and the City of Chicago.  As explained in greater detail below, the subpoena requires a private party (CHIR) to disclose U.S. government documents that were produced by the government during discovery in *Vasquez Perdomo v. DHS*, 25-cv-05605 (C.D. Cal.).  These government documents were provided in connection with claims about immigration enforcement efforts in the greater Los Angeles area—materials and events which have little to no relevance to the separate, unrelated immigration enforcement efforts in the Northern District of Illinois.

Additionally, the overbroad subpoena imposes an undue burden on the federal government. A substantial portion of the voluminous discovery in *Vasquez Perdomo* was produced in unredacted form notwithstanding various ongoing privilege disputes, and the parties there agreed to a clawback procedure allowing for the return of those documents should the *Perdomo* defendants prevail in their privilege assertions.  This compromise—a necessity borne of litigation expediency—has to this point adequately reconciled the parties' interests given the clawback agreement between the *Perdomo* parties.  But this negotiated balancing of the equities will fall apart when a third-party—here, the *Illinois* plaintiffs—seek those same unredacted documents from the *Perdomo* Plaintiffs.  Not only are the *Illinois* plaintiffs not subject to the clawback agreement, but the unredacted nature of the documents means that the *Perdomo* defendants will now have to conduct the same unduly burdensome privilege review and redaction process that the clawback agreement sought to avoid, lest the privileges be waived.  Although the issuing Court in *Illinois* expressly did not authorize the *Illinois* plaintiffs to seek materials from the *Perdomo* case that are subject to a claim of privilege, this carve-out does not lessen or

obviate the burden on the *Perdomo* defendants to identify and redact such material on pain of waiving applicable privileges. Accordingly, this Court should issue a protective order and quash Requests for Production #1-3 of the subpoena issued to CHIR by the State of Illinois and the City of Chicago.

## II.    FACTUAL BACKGROUND

### A.    *Illinois v. DHS* (N.D. Ill.)

The subpoena at issue in this matter arises from a civil action brought by the State of Illinois and the City of Chicago ("*Illinois*" or "*Illinois* plaintiffs") against the Department of Homeland Security, its subcomponents, and various senior officials in their official capacities ("DHS"). *See State of Illinois et al. v. Department of Homeland Security et al.*, Case No. 26-cv-321 (N.D. Ill.).

In September 2025, DHS launched Operation Midway Blitz to address the dangers arising from the presence of illegal aliens in the Chicago area, including members of gangs who have engaged in violent crimes and drug trafficking. Illinois and Chicago have sanctuary laws and policies that limit the cooperation of state and local officials with federal immigration officials, which has hindered the federal government's ability to enforce immigration laws in Illinois and Chicago, and has exacerbated the dangers posed by certain illegal aliens. Operation Midway Blitz led to the successful arrest and subsequent deportation of illegal aliens including murderers, child abusers, kidnappers, gang members, and armed robbers. In late 2025, the surge of DHS personnel deployed to the Chicago area demobilized and Operation Midway Blitz ended.

On January 12, 2026, Illinois filed suit challenging all aspects of DHS's immigration enforcement operations within the greater Chicago area during Operation Midway Blitz. *See Illinois*, Compl. Dkt 1. The Complaint spans over 100 pages and contains 19 constitutional and statutory claims for relief. *See id.* Count 1 alleges that DHS's immigration enforcement actions in Illinois violate the Tenth Amendment of the United States Constitution (Compl. ¶¶ 316-34). Count 2 alleges that the U.S. Customs and Border Protection's (CBP) operations in Illinois exceed its authority, which Plaintiffs

claim is confined to areas near the nation's border (Compl. ¶¶ 335-44). Claims 3-17 allege various violations of the Administrative Procedure Act (APA), 5 U.S.C. § 706. These 15 claims collectively challenge seven purported immigration enforcement-related practices or policies: (i) roving patrols (Counts 3 & 4) (*id.* at ¶¶ 345-59); (ii) biometric scanning (Counts 5 & 6) (*id.* at ¶¶ 360-76); (iii) warrantless arrests (Counts 7 & 8) (*id.* at ¶¶ 377-89); (iv) tear gas (Counts 9 & 10) (*id.* at ¶¶ 390-404); (v) enforcement operations "at or near sensitive locations," including courthouses (Counts 11 & 12) (*id.* at ¶¶ 405-18); (vi) concealing of license plates on motor vehicles used by Defendants in immigration enforcement operations (Counts 13 & 14) (*id.* at ¶¶ 419-32); and (vii) unlawfully trespassing on private property in connection with immigration-related enforcement operations (Counts 15-17) (*id.* at ¶¶ 433-53). Counts 18 and 19 are catch-all claims seeking injunctive and declaratory relief, respectively, against the alleged policies noted above. (*id.* at ¶¶ 454-64).

At the February 19, 2026 hearing, in response to Plaintiffs' request to serve early discovery in *Illinois*, the Court noted that discovery was unnecessary at that time because "things [were] quiet" and because "it's a lot more efficient" to await the outcome of Defendants' motion to dismiss. Dkt 55-1, Tr. 11. By motion dated April 15, 2026, Plaintiffs effectively sought reconsideration of the Court's discovery denial, filing a "Motion to Clarify the Scope of Discovery," which Defendants opposed by filing dated April 21, 2026.

The Court authorized Illinois to serve third-party subpoenas on the plaintiffs in *Perdomo*, subject to certain express limitations. As relevant here, the Court explicitly declined to authorize subpoenas for any materials over which there is an ongoing privilege dispute or for which the United States claims are subject to law enforcement or other privilege. April 23, 2026 Hearing Tr. 18:10 – 19:22 (attached as Exhibit 1).

**B.    *Vasquez Perdomo v. Mullin* (C.D. Cal.)**

On June 20, 2025, three aliens arrested in the Los Angeles area filed a habeas petition seeking release from immigration detention. The plaintiffs, all day laborers, had

been arrested in Pasadena, California on June 18 during a "targeted enforcement action at a doughnut shop" where surveillance and intelligence indicated that the target and his associates were recruiting unauthorized workers for landscaping jobs. At least two of the three Plaintiffs had attempted to escape arrest by running from officers. All three were later released and are no longer in government custody. *See Vasquez Perdomo*, 25-cv-05605, Dkt 146 at 1.

On July 2, 2025, the plaintiffs filed an amended class-action complaint seeking to enjoin the government's alleged "ongoing pattern and practice" of unlawful stops and arrests specifically "in connection with ongoing immigration raids in the Los Angeles area." *Id.* Dkt 16 ¶ 1. On July 11, 2025, the district court granted the plaintiffs' motion for a temporary restraining order ("TRO"), enjoining all investigative stops based on four enumerated factors alone or in combination: race, language, location, or occupation. *See id.* Dkt 87. Defendants appealed and sought stays before the district court and Ninth Circuit; both motions were denied. *Id.* Dkt 89, 94, 108, 109.

On September 8, 2025, the Supreme Court stayed the Fourth Amendment TRO pending appeal. *See Noem v. Perdomo*, 146 S. Ct. 1 (2025). Largely adopting the government's arguments against standing and finding they would likely succeed on the merits, Justice Kavanaugh issued a comprehensive concurring opinion, finding that the Government made a sufficient showing to obtain a stay pending appellate review and emphasized the significance of the Government's interests in immigration enforcement, while highlighting the need of the Judiciary to not "improperly restrict reasonable Executive Branch enforcement of the immigration laws." *See id.* at *5 (Kavanaugh, J., concurring).

On October 17, 2025, after having dissolved the stayed TRO, the district court granted the plaintiffs limited, expedited discovery in support of their forthcoming motion for a preliminary injunction. *Vasquez Perdomo*, 25-cv-05605, Dkt 223. Over the span of several months, the government has produced an array of materials pertinent to Los Angeles targeted operations as part of Operation at Large – Los Angeles, with a particular

temporal focus on 15 operations between June and September 2025. Despite the tens of thousands of documents produced in limited discovery, the government was subject to several orders compelling additional discovery related to these 15 operations, including reproductions of previously redacted documents where the government asserted privilege, *id.* Dkts 338 (attorney-client and work product privileges), 365 (law enforcement privilege), as well as intrusive forensic imaging of present agents' government *and personal* phones, *id.* Dkt. 370. The government timely objected to all three orders, which remain pending before the district judge, *id.* Dkts 380, 391, 395.

Given the parties' mutual understanding that discovery had to proceed, the government agreed to reproduce and continue producing documents without redacting for privilege, subject to clawback should the government prevail on their objections before the district judge. Various documents produced in discovery would potentially be subject to clawback should the district judge conclude that the government properly asserted its privileges.

*Perdomo* defendants have received four expansive sets of requests for production—which has resulted in 28,482 pages produced thus far. Discovery produced to date is inclusive of (1) communications about Los Angeles operations such as agents' emails, text messages, WhatsApp messages, Zello radio chats; (2) standardized documentation of targeted operations in Los Angeles, such as Form I-213s (Record of Deportable/Inadmissible Alien), target sheets, narratives of arrest, end of shift summaries; (3) training materials and documentation; and (4) videos produced from Operation at Large Los Angeles agents' body worn cameras and SUAS drones surveilling areas within Los Angeles ahead of targeted operations. As detailed above, the discovery produced in *Vasquez Perdomo* is further complicated by the fact that these categories of production are currently subject to three independent objections currently before the district court as to privilege and scope. This discovery is also complicated by the fact that various documents the government has produced to the *Perdomo* plaintiffs may be subject to the parties' clawback agreement in the event that the government prevails on their pending objections.

If they prevail, the government would be entitled to clawback all unredacted documents to be reproduced with the properly asserted privilege.

Additionally, Defendants have been expending enormous effort and resources to comply with the district court's order expanding the scope of limited, expedited discovery, *Vasquez Perdomo*, 25-cv-05605, Dkt 370—which requires, among other things, the forensic imaging of any and all phones used by agents present at the fifteen operations in Los Angeles (including officers temporarily deployed from other duty stations across the nation to support the government's lawful immigration enforcement operation). Given the scope and pace of expedited discovery, the government has also had to hire contractors and pull a multitude of other Justice Department attorneys off other important national litigation to assist with this large-scale review in limited discovery.

### C.    *Illinois* Subpoena

By subpoena dated May 14, 2026, the *Illinois* plaintiffs sought from the *Perdomo* plaintiffs any and all documents and materials produced by the *Perdomo* defendants related to roving patrols, warrantless arrests, and immigration-related enforcement efforts at sensitive locations.  *See* Exhibit 2.  They seek the following:

1. All training or guidance provided to agency personnel related to roving patrols, warrantless arrests, and actions at sensitive locations on topics including but not limited to: the difference between a consensual encounter and a seizure; the factors that may be considered in deciding whether to initiate a consensual encounter or arrest including a vehicle stop; appropriate use of force; other considerations for initiating and conducting a roving patrol, warrantless arrest, or action at a sensitive location; and documentation requirements for roving patrols, warrantless arrests, and actions at sensitive locations;

2. All documents relating to the conduct of operations between June and August, 2026, including Field Operations Worksheets, targeting sheets, operations plans, pre-operations briefings, intelligence reports, targeting

packages, notes, videos (including body camera footage), Administrative Warrants, Form I-213s, database entries, post-operation briefings, after-action reports, other communications describing or characterizing the operations, documents reflecting review of the operations, and documents reflecting any arrest quotas;

3. Communications through messaging of any kind (including text messaging, chats, or messaging through a mobile application) between or including any *Vasquez Perdomo* Defendants or agency personnel concerning roving patrols, warrantless arrests, or actions at sensitive locations;

4. The *Vasquez Perdomo* Defendants' response to, and all documents referenced, reviewed, or relied upon by the *Vasquez Perdomo* Defendants in responding to, CHIRLA's Expedited Interrogatories to Defendant Noem, Set One, No. 4, Dkt. 211-1; and

5. All documents filed with the Court as attachments or evidence in support of any motion, response, or other filing by the *Vasquez Perdomo* Defendants.[1]

The subpoena seeks compliance in the Central District of California. Accordingly, the United States brings this motion in this Court. *See* Fed. R. Civ. P. 45(d)(3)(A).

## III.    ARGUMENT

### A.    The United States Has Standing to Quash a Subpoena Seeking Government Documents in Possession of a Private Party.

A third party to a subpoena, has standing to quash a subpoena "if [the subpoena]

---

[1] The United States seeks to quash largely for Requests for Production (RFP) 1-3. The parties have reached a mutually acceptable resolution as to RFP's 4 & 5 with the exception of a single document that is the subject of a pending motion to seal (*Vasquez Perdomo*, 25-cv-05605, Dkt. 529-21 (Exhibit 15).

infringes on their legitimate interests." *United States v. Raineri,* 670 F.2d 702, 712 (7th Cir. 1982) (citing *United States v. Segal,* 276 F. Supp. 2d 896, 900 (N.D. Ill. 2003)). It is axiomatic that the Government has a legitimate interest in "safeguarding its investigative files from unwarranted disclosure." *Ayash v. United States,* 352 F.2d 1009, 1012 (10th Cir. 1965). Here, where the *Illinois* plaintiffs seek the disclosure of U.S. government documents in the possession of a private party, the federal government has the requisite "personal right or privilege with regard to the documents sought." *Crispin v. Christian Audigier, Inc.,* 717 F. Supp. 2d 965, 973 (C.D. Cal. 2010).

> B. Insofar as the Subpoena Seeks Materials that are Subject to a Claim of Privilege, the Request Exceeds the Authorization of the Issuing Court.

As noted, in authorizing the subpoena in issue here, the *Illinois* Court explicitly declined to permit the *Illinois* plaintiffs to obtain from the *Perdomo* parties any materials over which there is an ongoing privilege dispute or for which the United States claims are subject to law enforcement or other privilege. April 23, 2026 Hearing Tr. 18:10 – 19:22. Accordingly, to the extent materials responsive to the subpoena are subject to a claim of privilege in *Perdomo*, this Court need not engage in a relevance or undue burden analysis because the fact of an extant privilege assertion necessarily ends the production analysis.

> C. The Subpoena Seeks Irrelevant Documents and is *Per Se* Unduly Burdensome.

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, a court is required to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(iii-iv). Similarly, Rule 26(c) authorizes the Court "to issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery" and "(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1).

"Although irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor when determining motions to quash a subpoena." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005).  A subpoena that seeks information irrelevant to the case is a *per se* undue burden.  *See Wheel Grp. Holdings, LLC v. Cub Elecparts, Inc.*, No. CV 17-5956-JVS-PLAX, 2018 WL 6264980, at *4 (C.D. Cal. Sept. 4, 2018) (reasoning that a Rule 45 subpoena must be quashed if it seeks irrelevant information because Rule 45 allows the same scope of discovery as Rule 26, Rule 45 requires a subpoena be quashed if it subjects a person to an undue burden, and "discovery requests seeking irrelevant information are inherently undue and burdensome"); *Duong v. Groundhog Enterprises, Inc.*, No. 219CV01333DMGMAA, 2020 WL 2041939, at *5 (C.D. Cal. Feb. 28, 2020) (finding subpoena imposed undue burden where it sought irrelevant documents); *see also Cook v. Howard*, 484 Fed. Appx. 805, 812 n.7 (4th Cir. 2012) (explaining that "undue burden" in Rule 45 "encompasses situations where the subpoena seeks information irrelevant to the case or that would require a non-party to incur excessive expenditure of time or money"); *Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020) ("a subpoena issued under Rule 45 should be quashed to the extent it seeks irrelevant information").  Relevant information need not be admissible at trial, but it must at the very least appear to be "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *see also Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005).  That is simply not the case here.

The *Perdomo* discovery pertains to immigration-enforcement efforts in the Los Angeles metro area, not Chicago.  As explained  above, the discovery produced in *Perdomo* generally consists of (1) communications about Los Angeles operations such as agents' emails, text messages, WhatsApp messages, Zello radio chats; (2) reports of targeted enforcement operations in Los Angeles, such as Form I-213s (Record of Deportable/Inadmissible Alien), target sheets, narratives of arrest, end of shift summaries; (3) training materials and documentation; and (4) videos produced from

Operation at Large Los Angeles agents' body worn cameras and surveillance drone videos within Los Angeles ahead of targeted operations.  This discovery has no conceivable nexus to immigration-enforcement efforts in the Northern District of Illinois.  For example, any "notes, videos (including body camera footage), [or] Administrative Warrants" attendant to immigration-enforcement operations in Los Angeles shed no probative value as to the validity of the *Illinois* plaintiffs' claims arising out of wholly separate immigration-enforcement operations in the greater Chicago area.  Further, much of the discovery in *Perdomo* relates to targeted operations as part of Operation at Large – Los Angeles that occurred between June and September 2025, before Operation Midway Blitz began in Chicago.   Put simply, an arrest report or body camera video of an arrest in Los Angeles in July 2025 has no relevance to Illinois's argument that the federal government violated the 10th Amendment or the APA by conducting immigration enforcement operations several months later in Chicago.[2]

        D.       <u>The Subpoena Would Cause an Undue Burden for the *Perdomo* Litigation</u>

Rule 45(d)(3)(iv) requires a court to quash or modify a subpoena that subjects a person to an undue burden. In determining whether a burdensome subpoena is reasonable, this Court should balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it, according to the facts of the case. *See Federal Procedure, Lawyers Edition*, § 65:257 (citing *Linder v. Department of Defense*, 133 F.3d 17 (D.C. Cir. 1998); *E.E.O.C. v. Texas Roadhouse, Inc.*, 303 F.R.D. 1 (D. Mass. 2014); *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 263 F.R.D. 1 (D.D.C. 2009); *American Elec. Power Co., Inc. v. U.S.*, 191 F.R.D. 132 (S.D. Ohio 1999)).

---

[2] To the extent the training materials and documentation could be related to immigration matters outside Los Angeles, that material is currently the subject of a dispute over attorney/client privilege and work product privilege, over which the *Perdomo* Court has not yet ruled.

Factors commonly considered in determining whether a subpoena presents an undue burden include the (1) relevance of the information requested, (2) need of the party for the information, and (3) burden imposed. *Federal Procedure, Lawyers Edition*, § 65:257 (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812 (5th Cir. 2004); *North Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49 (D.D.C. 2005); *In re Automotive Refinishing Paint*, 229 F.R.D. 482 (E.D. Pa. 2005); *Travelers Indem. Co. v. Metropolitan Life Ins. Co.*, 228 F.R.D. 111 (D. Conn. 2005); *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658 (D. Kan. 2003); *American Elec. Power Co., Inc. v. U.S.*, 191 F.R.D. 132 (S.D. Ohio 1999)).

Complying with the third-party subpoena will effectively grind *Perdomo*'s plenary discovery, and all other litigation activity in that case, to a screeching halt. The discovery reproduction process would not be straight-forward, nor simple, and would further complicate the government's ability to attend to its ongoing discovery obligations to the plaintiffs in that case. The significant burden of compliance with the third-party subpoena is summarized as follows.

First, the volume of discovery produced in *Perdomo* has been extensive. To date, Defendants have produced 28,482 pages of information, as well as substantial hours of video and audio files. The sheer volume of documents to review alone constitutes a substantial burden, in and of itself.

Second, in addition to needing to modify the protective order in place in *Perdomo*, compliance with these subpoenas will require the government to undertake an additional review process for privilege and confidentiality redactions, before any previous productions—which were unredacted under the terms of the parties' protective order and/or the parties' clawback agreement—would be sent to Plaintiffs in the *Illinois* case. Counsel for the defendants in *Perdomo* (as well as agency counsel) would need to divert from ongoing discovery review and productions to re-review at least 17,985 documents (and several hundred hours of video and audio) for the law enforcement privilege

11

("LEP").[3] The State of Illinois is mistaken in its belief that a third-party subpoena for our discovery productions would promote "efficiency."  April 23, 2026 Hearing Tr. 4, at line 10.  The burden involved in producing all this information would require other discovery tasks in *Perdomo* to be placed on hold while resources are diverted for several weeks for ongoing re-review of thousands of documents and hours of audio and video to apply redactions over any privilege, which would only deter ongoing discovery and mitigate efficiency in the *Perdomo* litigation. The privilege review process requires meticulous attention to detail, cannot be rushed, and, given the volume, will take a considerable amount of time. These concerns are only compounded by the very limited number of attorneys available to conduct this review and the inherent detail-oriented nature of the work. Even more time-consuming are the redaction of audio and video files, which would require further coordination with technical contractors, as it can take hours to redact a few minutes of (privileged or confidential) audio or video footage.

To make matters more complicated, the LEP invocation process requires an additional multi-step process to properly invoke the privilege, specifically: (1) a formal claim of privilege by the head of the department with control over the requested information; (2) assertion of privilege based on that official's actual personal consideration; and (3) a detailed specification of the information, and the basis, for which the privilege is claimed. *See Roman v. Wolf*, 2020 WL 6588399, at *2 (C.D. Cal. Jul. 16, 2020) (citing *Landry v. F.D.I.C.*, 204 F.3d 1125, 1135 (D.C. Cir. 2000)); *Conan v. City of Fontana*, 2017 WL 2874623, at *4 (C.D. Cal. Jul. 5, 2017). Courts in the relevant jurisdiction have routinely construed "head of the department" as "an appropriate agency official." *See United States v. City of Los Angeles*, 2023 WL 6370887, at *9 (C.D. Cal. August 28, 2023)). This process will necessarily take considerable time and must be

---

[3] LEP redactions were not made as part of the government's agreement with the *Perdomo* Plaintiffs concerning compliance with the magistrate's order (Dkt 365). Pages were simply noted as containing potential LEP for internal record keeping purposes and marked as attorneys' eyes only, Body-worn camera, sUAS footage, and audio files were produced in their entirety without redactions as well.

considered when evaluating the government's burden required to comply with *Illinois* Plaintiffs' subpoena. While invocation of the attorney-client and attorney work product privileges is not as burdensome as invocation of LEP, the review process is no less burdensome.

Third, in addition to ongoing objections as to attorney-client and work product privilege as well as scope, the defendants currently have objections pending before the district judge regarding its invocation of LEP. *Vasquez Perdomo*, 25-cv-05605, Dkts 380, 391, 395.  In the event the government prevails as to any of these objections, the government would be entitled to claw back previously produced (unredacted) materials. Should the court enforce the subpoena, this claw back process would become a significant, unraveling logistical burden for the government, as it would have to work on multiple fronts—to claw back its privileged information from numerous sets of private litigants in both the *Perdomo* and *Illinois* case, who have differing rights to access these materials. For one thing, *Perdomo* Plaintiffs are subject to a protective order that prevents disclosure of documents designated as "Confidential Information." *Vasquez Perdomo*, 25-cv-05605, Dkt 247. The *Illinois* Plaintiffs would not be subject to that protective order and thus further redactions, beyond privilege, would need to be made before the government could produce the documents to the *Illinois* Plaintiffs. The fact that the magistrate judge in *Perdomo* did not agree with the government's privilege assertions in that case does not prevent the government from asserting the same privilege arguments in a different case.  *See States v. Mendoza*, 464 U.S. 154 (1984) (holding that "nonmutual collateral estoppel cannot be used against the government").  The level of coordination and resources to conduct such a claw back amongst the various litigant groups involved in both *Perdomo* and *Illinois* would be extraordinary, and it would require a herculean effort, pulling Department attorneys and amassing hundreds of hours of review and redacting that the *Perdomo* litigation team simply cannot accommodate, when it already has ongoing discovery obligations as part of both limited, expedited discovery and the greater plenary discovery.

Moreover, such efforts would only draw resources away from the litany of other litigation responsibilities both in *Perdomo* and other litigation handled by the Office of Immigration Litigation. Measured against the mountain of discovery currently being collected, processed, reviewed, and produced in *Perdomo*, it would be tremendously burdensome for the government and would make it virtually impossible to comply with its current deadlines in that case. Contrary to Plaintiffs' allegations that this would be efficient, it would not be as simple as forwarding files. Time-consuming privilege and confidentiality review and redactions would divert from ongoing litigation and would actually mitigate efficiency across the board, including in the *Illinois* litigation as counsel of record for Defendants would also need to review for responsiveness and privilege. As evident from the review process in *Perdomo*, which has been in limited, expedited discovery for nearly eight months now, this process will be arduous and time consuming due to the level of painstaking review that is required.

At bottom, the process required for complying with the third-party subpoena will halt the *Perdomo* litigation due to the extraordinary undue burden it would impose. Counsel of record for *Perdomo* defendants are currently faced with a daunting list of outstanding discovery obligations between ongoing limited expedited discovery and, now, plenary discovery productions. There were only four requests for production in limited, expedited discovery but over 80 requests for production as to plenary discovery, in addition to defending numerous depositions and propounding their own affirmative discovery requests. Even charitably assuming that the *Perdomo* discovery would provide some meager legal benefit to the *Illinois* plaintiffs in the litigation of their claims, the incremental burden to the *Perdomo* defendants of having additional, collateral third-party discovery obligations vastly outweighs any arguable benefit to the *Illinois* plaintiffs such information might bestow.

## IV. CONCLUSION

The United States asks that this Court issue a protective order and quash the

subpoena because the subpoena is unauthorized insofar as it seeks materials that are the subject of a claim of privilege, because the subpoena seeks irrelevant information, and because the process of re-reviewing thousands of pages and redacting privileged information would impose an undue burden on the *Perdomo* defendants.

Dated: July 1, 2026

Respectfully submitted,

By: */s/ C. Lee Reeves, II*

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

BRANTLEY T. MAYERS
Counsel to the Assistant Attorney General
Civil Division

ANDREW I. WARDEN
C. LEE REEVES, II
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Telephone: (202) 616-0773
E-mail: Lee.Reeves2@usdoj.gov

JONATHAN A. ROBBINS
Civil Division, Office of Immigration Litigation
450 5th Street NW
Washington DC 20044
(202) 305-8275
Jonathan.A.Robbins@usdoj.gov

15