Exhibit 1

*State of Illinois et al. v. Department of Homeland Security et al.*, Case No. 26-cv-321 (N.D. Ill.)

April 23, 2026 Hearing Transcript

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STATE OF ILLINOIS, a sovereign ) Case No. 26 C 321
state; and the CITY OF CHICAGO, )
an Illinois municipal )
corporation, )
                                )
                Plaintiffs,      )
                                )
        v.                       )
                                )
DEPARTMENT OF HOMELAND           )
SECURITY; KRISTI NOEM, in her    )
official capacity as Secretary   )
of the Department of Homeland    )
Security; U.S. IMMIGRATION       )
AND CUSTOMS ENFORCEMENT; TODD    )
M. LYONS, in his official        )
capacity as Senior Official      )
Performing the Duties of the     )
Director of U.S. Immigration     )
and Customs Enforcement;         )
SAMUEL OLSON, in his official    )
capacity as Field Director       )
for U.S. Immigration and         )
Customs Enforcement; U.S.        )
CUSTOMS AND BORDER PROTECTION;   )
RODNEY S. SCOTT, in his          )
official capacity as             )
Commissioner of U.S. Customs     )
and Border Protection; U.S.      )
BORDER PATROL; MICHAEL W.        )
BANKS, in his official           )
capacity as Chief of U.S.        )
Border Patrol; and GREGORY       )
BOVINO, in his official          )
capacity as Senior Officer of    )
the Department of Homeland       )
Security and Illinois            )
tactical commander,              ) Chicago, Illinois
                                 ) April 23, 2026
                Defendants.      ) 2:56 p.m.


TRANSCRIPT OF PROCEEDINGS - IN-COURT HEARING
BEFORE THE HONORABLE SARA L. ELLIS

APPEARANCES:

For the Plaintiff          OFFICE OF THE ILLINOIS ATTORNEY GENERAL
State of Illinois:         BY:  MR. VIKAS K. DIDWANIA
                                MR. PAUL BERKS
                           115 S. LaSalle Street
                           Chicago, Illinois 60603


For the Plaintiff          CITY OF CHICAGO
City of Chicago:           BY:  MS. CHELSEY B. METCALF
                           30 N. LaSalle Street, Suite 600
                           Chicago, Illinois 60602

For the Defendants:        U.S. DEPARTMENT OF JUSTICE
                           BY:  MR. ANDREW I. WARDEN (remote)
                           1100 L Street NW
                           Washington, DC 20005

Court Reporter:            KELLY M. FITZGERALD, RPR, RMR, CRR
                           Official Court Reporter
                           219 S. Dearborn Street, Room 1412
                           Chicago, Illinois  60604
                           (312) 818-6626
                           kmftranscripts@gmail.com

                     *   *   *   *   *

              PROCEEDINGS REPORTED BY STENOTYPE
      TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard in open court:)

THE CLERK:  26 C 321, State of Illinois, et al. v. Department of Homeland Security.

Will the parties please state their names for the record, starting with the State of Illinois.

MR. DIDWANIA:  Good afternoon, Your Honor.  Vikas Didwania on behalf of the State of Illinois.

MR. BERKS:  Paul Berks also on behalf of the State of Illinois.

MS. METCALF:  Good afternoon, Your Honor.  Chelsey Metcalf for the City of Chicago.

THE COURT:  And then Mr. Warden?

MR. WARDEN:  Good afternoon, Your Honor.  Andrew Warden from the Department of Justice on behalf of the federal defendants.

THE COURT:  All right.  Good afternoon.

And thanks, everybody, for your patience as we are working through the tech issues.

So I've got plaintiffs' motion to clarify the scope of the discovery stay and then defendants' response.

So in terms of the defendants' response, some of the things that they brought up were trying to deal with protective orders that were entered in other cases.  They brought up in the *Perdomo* case that potentially the issue of law enforcement privilege might claw back discovery that's already been

produced to the plaintiffs in that case.

So what is the plaintiffs' kind of response to those things? And I guess I -- my initial thought is it might make sense to -- and sort of talk through what it is that you're looking for or why you're looking for this to the extent that, you know, you want to talk about it before July 30th when it's -- we're not that far away from July 30th.

I appreciate the idea of -- and I'm certainly open to the idea of using the discovery produced in other cases as an efficiency vehicle in that, you know, why do we have to reinvent the wheel sort of thing. So I do appreciate that approach, and I am interested in it. It's more the timing and then how do we sort of deal with these other issues.

MR. DIDWANIA: Sure, Your Honor. Let me start where you started with the protective order and then I'll talk about the timing.

On the protective order, you know, there's a protective order in, for example, the *Vasquez Perdomo* case in California, but it contemplates Rule 45 subpoenas. And that's paragraph 7 I think of the protective order.

And if there are certain specific issues that the defendants believe are raised by discovery in that case, for example, the law enforcement privilege, those are things that we can work out. There's no protective order in this case, and so that's one of our asks is that we -- we're going to -- we're

5

asking you, Judge, to set a deadline by which the parties can submit proposed protective orders --

THE COURT:  Mm-hmm.

MR. DIDWANIA:  -- or one if it's agreed.

But, you know, I anticipate that whatever we propose will include a clawback provision.  It could include coverage for materials produced pursuant to Rule 45 subpoenas.

And so these seem like solvable problems that the parties can negotiate in the first instance; and if they're not, then of course we can bring them to you.

THE COURT:  Mm-hmm.

MR. DIDWANIA:  So I think those types of issues can be resolved.

In terms of timing, it's really an issue of this is, as you know, a large, complicated case, and you have expressed a desire, I think everyone has expressed a desire to move it along expeditiously.  It's going to take time.  You saw in the Headline Club case, Judge, there was quite a bit of discovery in a very short period.  And here the defendants have talked about already having produced hundreds of thousands of pages in just those two cases.  And so, you know, we're living in a world of limited resources, and so we just want to, one, get started getting that material, reviewing it.

And the second thing is, you know, at the last hearing, you -- you mentioned that the parties should come to

the July hearing ready to propose a discovery schedule.  And so we think it will just make it so much simpler and easier if we have access to those records to be able to propose a workable schedule instead of going in blind.  And so given that this material is already here, it will impose no burden on the defendants for us to be able to get them from the plaintiffs.  It seemed like a good way to balance those different interests of not imposing burdens but also moving this case along, being able to propose a workable discovery schedule.

This is not a situation where we're like, well, this information will otherwise disappear or something like that, we need it today.  That is not what we're suggesting.  It's really a matter of efficiency and trying to get to resolution sooner rather than later.

THE COURT:  And, Mr. Warden, what are -- what are your thoughts?  And I certainly am sensitive to the issue, for example, in the *Perdomo* case, you know, where if the district court judge decides the law enforcement privilege applies and there's a clawback, you know, you don't want to be clawing back material in two cases as opposed to one, so I certainly understand that.

But I also think that it's worthwhile if there isn't a significant objection that it's not as if this is putting a burden really on the government if the plaintiffs are serving these subpoenas to get discovery that was already produced and

they're serving it on the plaintiffs in those cases, then, you know, it's really just allowing the plaintiffs here to start sorting through that discovery in order to determine what else they need from the government once we kind of shift, sort out all of the claims and see which claims are moving forward.

MR. WARDEN:  Yes.  Thanks, Judge.

I think going down this road, it would really enmesh this Court, the judges of the other courts.  I'm not sure how many subpoenas plaintiffs plan to -- to issue here and just a host of collateral litigation and issues that we really can't even begin to I think contemplate at this point.

You know, they will serve the subpoenas presumably on the plaintiffs.  There will then be likely a series of motions to quash that will then be filed around the country.  Those judges, what I think had the option to transfer all of that back to this court and then we'll have a series of collateral litigations over, you know, those subpoena matters about whether these documents are privileged.  The government would certainly be entitled to assert privilege claims notwithstanding decisions in other cases.

There's certainly a big relevance question here in our mind about why, for example, body cameras from arrests in Los Angeles or Portland has any relevance to what's happening here in this case.  And so producing all of that does create a burden on the government.

As Your Honor pointed out, there is -- the motion to dismiss is nearly teed up for -- for a resolution.  I don't think any sort of delay here is prejudicial to the plaintiffs, particularly given that most of the claims are brought under the Administrative Procedure Act where it's brought -- decided on an administrative record not a free-flowing discovery situation.

And so I think that there will just be a -- a -- a host of disorder and disruption to other courts, to the parties here, to the private plaintiffs who are going to have to be dealing with, you know, the collateral fallout from this when I think the more straightforward way is to await the decision on the motion to dismiss.

If the plaintiffs here think they need clone discovery from Portland or Los Angeles, then they can ask for that in the context of this case once we know what claims are going forward.  They can explain why that's relevant to this particular case, and we can decide that and litigate it and Your Honor can decide whether that's necessary or not.  But we think that's a far more straightforward path than going down this sort of convoluted road that we think the plaintiffs have proposed here.

THE COURT:  What about the issue of relevance?  And I guess a preliminary question is how many subpoenas would you anticipate issuing?

MR. DIDWANIA:  So so far, Your Honor, we've identified those two cases that we listed in our motion because they contain relevant similar facts and similar legal claims, and we know that discovery has been produced in those cases.  There are a series of other cases that have been filed around the country against ICE and CBP, some of which I think are quite different and some of them are relevant, but we don't know whether discovery has been produced.

So right now, all I can say, those two subpoenas, and I'm not sure as we continue obviously our -- our fact-gathering we might identify other cases where relevant discovery has been produced.

But just to step back for a moment, Judge, I think we should let the subpoenas issue, and we shouldn't presume that our subpoenas will be improper or, you know, beyond the scope.

THE COURT:  Oh, no, I'm not.

MR. DIDWANIA:  And so, you know, we're going to do our best to make sure our subpoenas only request information that's relevant to the case, and of course defendants will have a chance to object to that if they need to.  But I think I hope it goes without saying that I think they will be in the nature and scope tailored to what we need in our case.  But so far those are the two cases that we've identified.

THE COURT:  Okay.  So then I guess what I would like you to do first, where are you in terms of a protective order

here?  Have you talked about it, exchanged drafts?

MR. DIDWANIA:  So we exchanged one set of draft, Judge, and then there's been no further discussions.

And that's not to blame either party.

THE COURT:  Mm-hmm.

MR. DIDWANIA:  Parties have been, you know, basically with the motion to dismiss briefing.  But I think it needs to be resolved.

THE COURT:  Okay.

MR. DIDWANIA:  So we would propose 30 days, Judge.

THE COURT:  Okay.  So why don't we kind of take this step by step and break it down because first, you need a protective order here.  We've been sort of operating in a quasi protective order sort of land with the Chicago Headline protective order, but I think we need our own one for here.

So, Mr. Warden, does it make sense timing-wise to -- can -- is it reasonable to try to get something that either you can agree to or at least you've isolated what the problems are so I can decide in 30 days?

MR. WARDEN:  Yes, Judge.  I think -- well, we've got our reply due.  I think, you know, if we could have until the end of May to -- to work on that.  I -- I think the goal would be, you know, to have a protective order in place in the event the claims survive the motion to dismiss.  I mean, I think we would object to the extent the purpose of the protective order

is to sort of, again, facilitate these third-party subpoenas.

THE COURT:  No, it's not necessarily to facilitate the third-party subpoenas, but I don't -- you know, obviously we're not done with the briefing on the motion to dismiss.  So I'm not giving any advisory ruling, right?  I haven't waded through any of it.

But I would suspect that something is going to survive, right, the motion to dismiss?  That's generally how these things go in these cases.  So --

MR. WARDEN:  Yes.  I think what we had envisioned on the protective order was that we would work with the plaintiff. I agree with my friend that we had exchanged some drafts.

But I think from the government's perspective, given that the Court had set a decision for July and the motion to dismiss was ongoing, it wasn't a high priority item for us, but it was something that we were planning to tend to the extent we could tee up any disputes for Your Honor so that it would be decided in or around the same time as the motion to dismiss. So that was kind of our thinking, at least in terms of timing.

THE COURT:  Okay.  So then what I'd like you to do is I will set a status date for May 28th at 2:30.  And if you can get me -- let's see.  Yeah, because the defendants' reply is due by May 8th.  So if I set it for May 28th and if you can get me by May 26th a -- basically a status report outlining where you're in agreement on the confidentiality order and then what

issues you need me to rule on, if you can get that to me by the 26th. And then on the 28th, we'll get the issues sorted out on the confidentiality order and get that in place.

And as for the subpoenas, what's the status in the *Perdomo* case, do you know, Mr. Warden, in terms of whether the district court has ruled on the privilege issue or has heard argument or anything?

MR. WARDEN: I don't believe there's been a ruling. Discovery is ongoing. As you may be aware, that matter went to the Supreme Court on an emergency stay motion which the Supreme Court granted and then it's now back in the district court moving through the sort of regular litigation process. So that issue of the law enforcement and privilege I believe has been briefed but has not been decided.

But in the interim, there had been an accommodation to provide that material subject to a clawback should the district court judge decide the matter differently than a magistrate judge.

THE COURT: Okay. So it's just kind of hanging out into the ether, is that sort of where we're at at this point?

MR. WARDEN: Yeah, I believe it's on the -- waiting -- waiting for a decision from the -- from the district judge is my -- my understanding, at least that privilege issue. But I don't have the discovery schedule in front of me as to where the case is going, but it's moving forward on the merits post

13

the Supreme Court's stay of the -- of the injunction.

THE COURT:  Okay.  Go ahead.

MR. DIDWANIA:  So unsurprisingly, Judge, we would like to move on a dual track here while we negotiate the protective order.  And, you know, we would agree not to receive any of the documents pursuant to our subpoenas until the protective order is in place.

But the thing that I worry about is, you know, when we issue the subpoenas, I suspect there might be litigation, you know, the defendants will raise.  And so if we could just, like, try to resolve those issues while doing the protective order, you know, we can try to resolve all these issues instead of doing it one after the other, in which case we're going to sort of run off the clock.

THE COURT:  Yeah.  The reason I was asking --

MR. WARDEN:  Judge, may I --

THE COURT:  -- about the *Perdomo* case is that I don't have as much of a concern about the *Castañon Nava* case, right, as I do about the *Perdomo* case if there's this sort of outstanding issue of privilege that's hanging out there.

MR. DIDWANIA:  We could also extract the documents that are subject to the privilege.  I mean, I don't know if it's all the documents that they're asserting privilege over or some fraction of them.  So while that issue is decided, the plaintiffs could continue to produce -- the plaintiffs could

produce the other documents to us.

THE COURT:  Is that the biggest issue with that case, Mr. Warden, is the privilege issue?

MR. WARDEN:  Well --

THE COURT:  I mean --

MR. WARDEN:  -- I think it --

THE COURT:  -- in terms of, you know, the biggest area where the government would have an objection.

MR. WARDEN:  Yes, that's a significant one.  I think -- as I said more broadly, I think we would have to go through these documents to, again, assess both relevance and, you know, other sort of matters of privilege.

And I think we just fundamentally have a problem with the idea that plaintiffs are sort of going to be responsible for turning over government documents that we have turned over pursuant to court orders rather than the federal government turning them over directly to the parties here through this litigation.

If I could be heard on the timing point.  Again, I do think that the timing matters here.  The subpoenas will be served.  We will likely have to go through litigation in the Central District of California and other courts.  I mean, by the time those matters come up on those judges' calendars, we will probably be past July and in front of Your Honor again. So it's just to I think -- I think expend a lot of time and

resources, both from the parties and the federal judiciary to just basically be back here again deciding whether this discovery is relevant to this case and how much of it, if any, should be produced.  And I think sort of sending us on that kind of frolic and detour for the next two months is really an inefficient way to go about it.

THE COURT:  Well, sort of, right, but sort of not in that I would anticipate that if claims survive the motion to dismiss that plaintiffs would be essentially asking for this same discovery anyway, correct?

MR. DIDWANIA:  That is correct, Your Honor.

THE COURT:  So, you know, it's like do I have some of these fights now or do I have some of these fights in August. If I'm going to have to deal with fights, it's, you know --

MR. WARDEN:  Well, I think the fight first will be in front of other judges who will have to decide whether they want to handle a matter of whether a private plaintiff should turn over government documents to the State of Illinois that's relevant to this case and whether that judge wants to hear that matter or decide to transfer it back to Your Honor will be I think one question that's at issue.

And then there will be collateral miscellaneous actions presumably will be related to this case, and, again, I think we'll just be back here again dealing with the same questions that we're confronted with now.  And I think it just

makes far more sense to wait a few months to decide the motion to dismiss and then deal with all of these issues in the context of this case before Your Honor with an appropriate case management schedule when we know what the claims are that -- that move forward.

MR. DIDWANIA:  I would just say my sense is that those issues are going to be disputed and decided in this courtroom. The subpoenas are being issued under this Court's authority, and to the extent that the defendants are seeking to quash or modify those subpoenas, they would do so in front of Your Honor given that it was issued under this Court's authority.

So I agree with you, Judge, that these disputes will come to you whether in May, June, July, August, or September.

MR. WARDEN:  I would -- I disagree with that.  I think Rule 45 is very clear that subpoenas issued out of this court, the place of performance would be the place where the plaintiffs reside.  That would be Los Angeles or Portland or Minnesota, and that's where subpoena action begins.

THE COURT:  Right.

MR. WARDEN:  Rule 45(f) allows for transfer --

THE COURT:  But I guess --

MR. WARDEN:  -- so it would be other judges that would --

THE COURT:  No, but -- not to cut you off, Mr. Warden, but that's -- you know, so if I understand the plaintiffs

correctly, they have identified two cases, so one in California, one here.  So that's what I would limit the subpoenas to at this point.  And so I would not allow the plaintiffs to basically, you know, identify every case that is raising similar issues that has been filed across the country and then started issuing subpoenas, right?  So it's more to allow them to get their ducks in a row and, you know, obviously the subpoenas would have to be relevant to the claims raised here.

But if I'm limiting it to two cases, one of the cases is in this district, I think that will relieve some of the burden that you're describing.  That is a valid issue to raise. But it's, you know, now we're talking about one judge in California who may or may not transfer the issue back to me.

I would want, though, you know, if we're going to -- first of all, the compliance with the subpoena shouldn't occur until we've got a protective order in place here.

With the Los Angeles case, I would want the subpoena to exclude any documents over which the government is asserting a law enforcement privilege because I just don't want to wade into that mess right now.  I think the judge there can decide on whether the privilege applies, and I just don't want to get into having to claw back documents that have been produced.  If we need them, we can -- you know, you can ask for those directly from the government, and we can deal with the law

enforcement privilege because I'm sure that's going to come up here anyway with other documents that you're going to ask the government to produce.  So it would have to specifically exclude those documents.

MR. WARDEN:  Well, I --

THE COURT:  Go --

MR. WARDEN:  Just so --

THE COURT:  Go ahead, Mr. Warden.

MR. WARDEN:  -- Your Honor, to clarify that.

Yes.  I think on that, I think I would ask that that carveout be a bit broader to include any documents over which there are privilege claims that are subject to ongoing litigation.  You know, again, I don't know the full extent of objections and privilege logs and the status of things in those cases.  But, again, to the extent we have asserted a privilege over something in the litigation that's subject to a valid claim that may yet be adjudicated, I think we shouldn't I think enmesh ourselves.

So I just ask that it be broader than just law enforcement privilege but anything over which there are, you know, sort of pending privilege claims.  You know, to the extent, you know, there are documents that are sort of free and clear that have been produced, you know, that would be one thing.  But I think things for which there are sort of valid privilege claims that may need to be sorted out I think would

19

raise far more complications again at this stage.

THE COURT:  And are you aware of anything beyond the law enforcement privilege at this time?

MR. WARDEN:  I do not.  I have not gone through the -- you know, again, the -- there's a fairly voluminous amount of discovery so I have not gone through, you know, all of it in that -- that case, but that's I think something we'll probably have to do potentially here.

And to be clear, the government would reserve all of its rights to oppose any subpoena in those other courts based on relevance, privilege, scope, burden.  And, you know, we would -- we would reserve all of our rights to oppose as -- as appropriate.

THE COURT:  Yeah, that's -- I understand that, and you're not waiving any of that.

And is that amenable to the plaintiffs?

MR. DIDWANIA:  That seems fair, Judge.  As I understand it, the subpoena of course cannot require the production of privileged documents.

And then two, to the extent that there's ongoing litigation over the privilege, we will not seek those documents.  That's fine, Judge.

THE COURT:  Okay.  All right.  So I think we have a good understanding there.

So we'll limit it to these two cases to begin with

and then under those constraints and that nothing will be produced until we have a protective order in place here.  And the government obviously is free to make any objections to those subpoenas or quash those subpoenas on any basis that it thinks is appropriate.

Okay.  All right.  So then I'll see everybody on May 28th.

And, Mr. Warden, you can appear by video unless you feel compelled to come and experience springtime in Chicago.

MR. WARDEN:  Sounds lovely, Judge, but thank you for the invitation.

There's one final housekeeping thing I was going to raise, if I may.

THE COURT:  Sure.

MR. WARDEN:  For our reply brief on May 8th, given the number of -- of claims we need to address, may we have an additional pages beyond the 15-page limit for our reply.  We would ask for 30 pages if that's acceptable to Your Honor.

THE COURT:  Sure.

MR. DIDWANIA:  No objection here, Judge.

THE COURT:  That's fine.  That's fine.

Okay.  Anything else we need to take up?

MR. DIDWANIA:  Nothing else from plaintiffs.

THE COURT:  Okay.

Anything else, Mr. Warden?

MR. WARDEN: Yeah. I guess only one just final thing I would just ask, and I assume my friend will do this, but obviously these subpoenas will be served on third parties, not the government, that we be copied on any service of those subpoenas so that we're aware of when they go out and so that we may communicate with the parties and instruct them appropriately.

MR. DIDWANIA: That's fine, Judge. Of course.

THE COURT: Yeah. And it's only going to the plaintiffs, correct, in both of those cases?

MR. DIDWANIA: That's correct.

THE COURT: Okay. Okay. All right. Thank you.

MR. DIDWANIA: Thank you, Judge.

THE CLERK: All rise. Court is adjourned.

(Concluded at 3:27 p.m.)

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/Kelly M. Fitzgerald*                    *May 28, 2026*
Kelly M. Fitzgerald, RPR, RMR, CRR
Official Court Reporter