STACY TOLCHIN (SBN 217431)
*stacy@tolchinimmigration.com*
LAW OFFICES OF STACY TOLCHIN
776 E. Green St., Suite 210
Pasadena, CA 91101
Tel: 213-622-7450; Fax: 213-622-7233

MOHAMMAD TAJSAR (SBN 280152)
*mtajsar@aclusocal.org*
MAYRA JOACHIN (SBN 306065)
*mjoachin@aclusocal.org*
DAE KEUN KWON (SBN 313155)
*akwon@aclusocal.org*
STEPHANIE PADILLA (SBN 321568)
*spadilla@aclusocal.org*
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
P.O. Box 811370
Los Angeles, CA 90081-0007
Tel: 213-977-5232; Fax: 213-201-7878

*Counsel for Stop/Arrest Plaintiffs*

(*Additional counsel listed on next page*)

MARK ROSENBAUM (SBN 59940)
*mrosenbaum@publiccounsel.org*
REBECCA BROWN (SBN 345805)
*rbrown@publiccounsel.org*
RITU MAHAJAN (SBN 252970)
*rmahajan@publiccounsel.org*
GINA AMATO (SBN 215519)
*gamato@publiccounsel.org*
AMANDA MANGASER SAVAGE
(SBN 325996)
*asavage@publiccounsel.org*
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Counsel for All Plaintiffs*

ANNE LAI (SBN 295394)
*alai@law.uci.edu*
UC IRVINE SCHOOL OF LAW
IMMIGRANT AND RACIAL JUSTICE
SOLIDARITY CLINIC
P.O. Box 5479
Irvine, CA 92616-5479
Tel: 949-824-9894; Fax: 949-824-2747

*Counsel for Stop/Arrest Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

Pedro VASQUEZ PERDOMO; Carlos Alexander OSORTO; and Isaac VILLEGAS MOLINA; Jorge HERNANDEZ VIRAMONTES; Jason Brian GAVIDIA; LOS ANGELES WORKER CENTER NETWORK; UNITED FARM WORKERS; COALITION FOR HUMANE IMMIGRANT RIGHTS; IMMIGRANT DEFENDERS LAW CENTER,

Plaintiffs,

v.

Markwayne MULLIN, in his official capacity as Secretary, Department of Homeland Security; David VENTURELLA, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; Rodney S. SCOTT, in his official capacity as Commissioner, U.S. Customs and Border Patrol; Michael W. BANKS, in his official

Case No.: 2:25-cv-05605-MEMF-SP

**PLAINTIFFS’ REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

Hon. Maame Ewusi-Mensah Frimpong

Date: August 13, 2026
Time: 10:00 a.m.
Place: Courtroom 8B

capacity as Chief of U.S. Border Patrol; Kash PATEL, in his official capacity as Director, Federal Bureau of Investigation; Todd BLANCHE, in his official capacity as Acting U.S. Attorney General; Thomas GILES, in his official capacity as Acting Field Office Director for Los Angeles, U.S. Immigration and Customs Enforcement; Dean T. SORENSON, Special Agent in Charge for Los Angeles, Homeland Security Investigations, U.S. Immigration and Customs Enforcement; Daniel PARRA, in his official capacity as Acting Chief Patrol Agent for El Centro Sector of the U.S. Border Patrol; Justin DE LA TORRE, in his official capacity as Acting Chief Patrol Agent, San Diego Sector of the U.S. Border Patrol; Akil DAVIS, in his official capacity as Assistant Director in Charge, Los Angeles Office, Federal Bureau of Investigation; Bilal A. ESSAYLI, in his official capacity as First Assistant U.S. Attorney for the Central District of California,

Defendants.

JACOB S. KREILKAMP (SBN 248210)
*jacob.kreilkamp@mto.com*
DAVID FRY (SBN 189276)
*david.fry@mto.com*
ADAM B. WEISS (SBN 296381)
*adam.weiss@mto.com*
SARA H. WORTH (SBN 341088)
*sara.worth@mto.com*
LAURA R. PERRY (SBN 342504)
*laura.perrystone@mto.com*
HENRY D. SHREFFLER (SBN 343388)
*henry.shreffler@mto.com*
LAUREN E. KUHN (SBN 343855)
*lauren.kuhn@mto.com*
ANGELA URIBE (SBN 353579)
*angela.uribe@mto.com*
MAGGIE BUSHELL (SBN 354048)
*maggie.bushell@mto.com*
MUNGER, TOLLES & OLSON LLP
350 S. Grand Ave., 50th Floor
Los Angeles, CA 90071
Tel: 213-683-9100; Fax: 213-683-9100

*Counsel for Stop/Arrest Plaintiffs*

BREE BERNWANGER (SBN 331731)
*bbernwanger@aclunc.org*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel: 415-621-2493

*Counsel for Stop/Arrest Plaintiffs*

BRISA VELAZQUEZ OATIS
(SBN 339132)
*bvoatis@aclu-sdic.org*
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Tel: 619-398-4199

*Counsel for Stop/Arrest Plaintiffs*

EDGAR AGUILASOCHO (SBN 285567)
*eaguilasocho@farmworkerlaw.com*
MARTÍNEZ AGUILASOCHO LAW, INC.
900 Truxtun Ave, Suite 300
Bakersfield, CA 93301
Tel: 661-859-1174

*Counsel for Plaintiff United Farm Workers*

JESSICA KARP BANSAL (SBN 277347)
*jessica@ndlon.org*
LAUREN MICHEL WILFONG*
*lwilfong@ndlon.org*
JIA FU*
*jennifer@ndlon.org*
NATIONAL DAY LABORER ORGANIZING
NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Tel: 626-214-5689

*Counsel for Stop/Arrest Plaintiffs*

MATTHEW J. CRAIG (SBN 350030)
*mcraig@heckerfink.com*
MACK E. JENKINS (SBN 242101)
*mjenkins@heckerfink.com*
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Tel: 212-763-0883; Fax: 212-564-0883

*Counsel for Access/Conditions Plaintiffs*

CARL BERGQUIST*
*cbergquist@chirla.org*
COALITION FOR HUMANE IMMIGRANT
RIGHTS
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

*Counsel for Plaintiff Coalition for Humane Immigrant Rights*

ALVARO M. HUERTA (SBN 274787)
*ahuerta@immdef.org*
BRYNNA BOLT (SBN 339378)
*bbolt@immdef.org*
ALISON STEFFEL (SBN 346370)
*asteffel@immdef.org*
IMMIGRANT DEFENDERS LAW CENTER
634 S. Spring St., 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

*Counsel for Plaintiff Immigrant Defenders Law Center*

* Admitted pro hac vice

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1
II. ARGUMENT ........ 2
A. 8 U.S.C. § 1252(f)(1) does not bar class-wide injunctive relief. ........ 2
B. Membership organizations may serve as class representatives. ........ 5
C. There is no requirement to show "ascertainability" for a Rule 23(b)(2) class. ........ 8
D. Plaintiffs' proposed class satisfies all the requirements of Rule 23(a) ........ 11
1. The proposed class is sufficiently numerous. ........ 11
2. The relevant legal and factual questions in dispute here are common to the entire class. ........ 12
3. Warrantless Arrest Plaintiffs' claims are typical of the class. ........ 15
4. Warrantless Arrest Plaintiffs and their counsel will adequately and fairly represent the interests of the class. ........ 16
E. Rule 23(b)(2) authorizes the proposed warrantless arrest class. ........ 17
III. CONCLUSION ........ 19
CERTIFICATE OF COMPLIANCE ........ 21

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Al Otro Lado v. Exec. Off. for Immigr. Rev.*, 120 F.4th 606 (9th Cir. 2024), *overruled on other grounds by Mullin v. Al Otro Lado*, No. 25-5, 609 U.S. --, 2026 WL 1825741 (U.S. June 25, 2026) ....................................4

*Alderman v. United States*, 394 U.S. 165 (1969) ....................................13

*Ambrosia v. Cogent Commc'ns, Inc.*, 312 F.R.D. 544 (N.D. Cal. 2016) ....................................11

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 519 (1997) ....................................1

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005) ....................................14, 15

*Berni v. Barilla S.p.A.*, 964 F.3d 141 (2d Cir. 2020) ....................................18

*Black Lives Matters L.A. v. City of L.A.*, 113 F.4th 1249 (9th Cir. 2024) ....................................14

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ....................................8

*Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010) ....................................18

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171 (9th Cir. 1990) ....................................6, 7

*Californians for Disability Rts., Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334 (N.D. Cal. 2008) ....................................6, 7, 15

*Coal. for ICANN Transparency Inc. v. VeriSign, Inc.*, 771 F. Supp. 2d 1195 (N.D. Cal. 2011) ....................................7

*Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867 (1984) ....................................19

*Damus v. Nielsen*, 313 F. Supp. 3d 317 (D.D.C. 2018) ....................................18

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ....................................15

*Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F.Supp.3d 1 (D.D.C. 2025) .................................... 2, passim

*Garland v. Aleman Gonzalez*,
596 U.S. 543 (2022) ....... 2, 4

*Gonzalez v. U.S. Immigr. and Customs Enf't*,
975 F.3d 788 (9th Cir. 2020) ....... 1, 3, 9

*Greater Chautauqua Fed. Credit Union v. Quattrone*,
No. 1:22-cv-2753 (MKV), 2025 WL 869729 (S.D.N.Y. Mar. 20, 2025) ....... 18

*In re Honda Idle Stop Litig.*,
347 F.R.D. 528 (C.D. Cal. 2024) ....... 8

*Hunt v. Washington State Apple Advertising Commission*,
432 U.S. 333 (1977) ....... 5

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*,
477 U.S. 274 (1986) ....... 5, 7, 8

*Kelch v. Dir., Nev. Dep't of Prisons*,
10 F.3d 684 (9th Cir. 1993) ....... 11

*Kidd v. Mayorkas*,
343 F.R.D. 428 (C.D. Cal. 2023) ....... 12, 13

*Kidd v. Mayorkas*,
734 F. Supp. 3d 967 (C.D. Cal. 2024) ....... 4

*Kidd v. Wolf*,
2:20-cv-03512-ODW (JPRx) (C.D. Cal. Apr. 16, 2020) ....... 17

*League of United Latin Am. Citizens v. City of Salinas Fire Dep't*,
88 F.R.D. 533 (N.D. Cal. 1980) ....... 6, 7

*Lilly v. Jamba Juice Co.*,
308 F.R.D. 231 (N.D. Cal. 2014) ....... 8

*Los Angeles Press Club v. Noem*,
No. 2:25-cv-05563-HDV-E (C.D. Cal. June 25, 2026) ....... 14

*M-J-M-A- v. Hermosillo*,
2026 WL 562063 (D. Or. Feb. 27, 2026) ....... 13

*Melendres v. Arpaio*,
784 F.3d 1254 (9th Cir. 2015) ....... 13

*Mickelonis v. Aspyr Media, Inc.*,
No. 8:23-CV-01220-MWC-ADS, 2025 WL 1605332 (C.D. Cal. May 16, 2025), *reconsideration denied,* No. 8:23-CV-01220-MWC-ADS, 2025 WL 3050061 (C.D. Cal. July 11, 2025) ....... 9

*N.S. v. Dixon*,
141 F.4th 279 (D.C. Cir. 2025) ....... 2, 4

*Nguyen v. Kissinger*,
70 F.R.D. 656 (N.D. Cal. 1976) ....... 12

*In re Niaspan Antitrust Litig.*,
67 F.4th 118 (3d Cir. 2023) ... 8

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) (en banc) ... 10

*One Unnamed Deputy Dist. Att'y v. Cnty. of Los Angeles*,
No. CV 09-7931 ODW, 2011 WL 13128375 (C.D. Cal. Jan. 24, 2011) ... 7

*Orantes-Hernandez v. Smith*,
514 F. Supp. 351 (C.D. Cal. 1982) ... 12

*In re Packaged Seafood Prods. Antitrust Litig.*,
332 F.R.D. 308 (S.D. Cal. 2019) ... 17

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ... 1, 14, 17, 18

*Pena v. Taylor Farms Pac., Inc.*,
305 F.R.D. 197 (E.D. Cal. 2015) ... 10

*Powers v. McDonough*,
732 F. Supp. 3d 1184 (C.D. Cal. 2024), *aff'd in part, rev'd in part, and vacated in part on other grounds,* 163 F.4th 1162 (9th Cir. 2025) ... 6

*Ramirez Ovando v. Noem*,
810 F. Supp. 3d 1209 (D. Colo. 2025) ... 12

*Sibron v. New York*,
392 U.S. 40 (1968) ... 9

*Stavrianoudakis v. U.S. Fish & Wildlife Serv.*,
108 F.4th 1128 (9th Cir. 2024) ... 13

*Taylor v. Sturgell*,
553 U.S. 880 (2008) ... 19

*Texas v. U.S. Dep't of Homeland Sec.*,
123 F.4th 186 (5th Cir. 2024) ... 4

*United Farm Workers v. Noem*,
785 F. Supp. 3d 672 (E.D. Cal. 2025) ... 2, passim

*Vasquez Perdomo v. Noem*,
148 F.4th 656 (9th Cir. 2025) ... 10

*Vietnam Veterans of Am. v. C.I.A.*,
288 F.R.D. 192 (N.D. Cal. 2012) ... 5, 6, 16

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ... 14

*Willis v. Enter. Drilling Fluids, Inc.*,
No. 1:15-cv-00688-JLT, 2015 WL 6689637 (E.D. Cal. Oct. 28, 2015) ... 10

*Willits v. City of Los Angeles*,
2011 WL 7767305 (C.D. Cal. Jan. 3, 2011) ............ 7, 15

**FEDERAL STATUTES**

8 U.S.C. §§ 1221-31 ............ 3

8 U.S.C. § 1226 ............ 3

8 U.S.C. § 1231 ............ 3

8 U.S.C. § 1231(a)(6) ............ 4

8 U.S.C. § 1252(f)(1) ............ 2, 3, 4, 5

8 U.S.C. § 1357 ............ 4

8 U.S.C. § 1357(d) ............ 3

**STATE STATUTES**

Administrative Procedures Act ............ 2

**FEDERAL RULES**

Fed. R. Civ. P. Rule 23 ............ 1, 6, 8

Fed. R. Civ. P. Rule 23(a) ............ 5, passim

Fed. R. Civ. P. Rule 23(a)(1) ............ 11, 12

Fed. R. Civ. P. Rule 23(a)(2) ............ 1, passim

Fed. R. Civ. P. Rule 23(b)(2) ............ 8

Fed. R. Civ. P. Rule 23(b)(3) ............ 8, 9

## I. INTRODUCTION

The availability of class certification in civil rights cases is well settled, *Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014) ("the primary role of [Rule 23(b)2)] has always been the certification of civil rights class actions") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 519, 614 (1997)); and "government policies, practices or procedures for probable cause determinations are plainly suitable for classwide resolution." *Gonzalez v. U.S. Immigr. and Customs Enf't*, 975 F.3d 788, 809 (9th Cir. 2020).

Against this backdrop, the Warrantless Arrest Plaintiffs moved to certify a class of individuals subjected to unlawful warrantless immigration arrests by the federal government in this District. Alleging that these warrantless arrests do not comply with the Immigration and Nationality Act's ("INA") requirement that officers have probable cause not only of a violation of immigration law but also that individuals are likely to escape before a warrant can be obtained, Warrantless Arrest Plaintiffs seek to certify a district-wide class under Rule 23(b)(2) in support of their claims for declaratory, injunctive, and set-aside relief. This motion follows successful class certification motions filed by substantially similar classes of individuals challenging nearly identical practices in Washington D.C., Colorado, Oregon, and the Eastern District of California.

In opposition to Plaintiffs' motion, Defendants ignore the extensive factual record presented in Plaintiffs' companion motion for preliminary injunction and fail to engage with the controlling precedent upon which Plaintiffs rely. Defendants misconstrue the nature of Plaintiffs' request and incorrectly argue that class-wide treatment of the warrantless arrest claims requires wading into individualized assessments of probable cause. Defendants also erect unconvincing legal roadblocks to certification already rejected in this Circuit, arguing, incorrectly, that membership organizations cannot serve as class representatives, that the INA strips the Court of its ability to entertain Plaintiffs' request for injunctive relief, and that Rule 23 requires an extra-statutory showing of "ascertainability." None of those arguments has any basis in the law of this Circuit. Perhaps most remarkably, Defendants do not engage with any of the four prior class certification orders in related cases that systematically reject, on materially identical facts, much of

the argument they present in opposition here—let alone make any attempt to distinguish or explain them away.

In short, Defendants' Opposition refuses to engage with the record or the law advanced by Warrantless Arrest Plaintiffs in support of their motion. Plaintiffs' motion should be granted.

## II. ARGUMENT

### A. 8 U.S.C. § 1252(f)(1) does not bar class-wide injunctive relief.

Defendants first raise a threshold and incorrect argument challenging the Court's jurisdiction to entertain Warrantless Arrest Plaintiffs' request for class-wide injunctive relief. Relying primarily on *N.S. v. Dixon*, 141 F.4th 279 (D.C. Cir. 2025) and *Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022), Defendants argue that the jurisdiction-stripping provision of 8 U.S.C. § 1252(f)(1) bars class certification here since this Court would lack jurisdiction to enter an injunction on the warrantless arrest claims that are the subject of this motion. But as binding Ninth Circuit precedent demonstrates, and as *United Farm Workers v. Noem*, 785 F. Supp. 3d 672, 705 (E.D. Cal. 2025) and *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F.Supp.3d 1, 56 (D.D.C. 2025) persuasively held, Warrantless Arrest Plaintiffs' claims arise out of a provision of the INA not covered by § 1252(f)(1), and no acceptable canon of statutory construction compels otherwise.

Section 1252(f)(1) provides as follows:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

As an initial matter, § 1252(f)(1) bars class-wide *injunctions* only. *Id.* (stripping jurisdiction of courts to "*enjoin or restrain* the operation of the provisions of part IV of this subchapter") (emphasis added). Defendants ignore that Warrantless Arrest Plaintiffs also seek declaratory relief on their warrantless arrest claims as well as vacatur under the Administrative

Procedures Act, neither of which falls under the jurisdiction-stripping provision of § 1252(f)(1). *See* ECF 485 at 83 (prayers for relief 7 and 13).

As to Plaintiffs' prayer for class-wide injunctive relief, Defendants' jurisdiction-stripping argument also fails. Section 1252(f)(1) bars only injunctions that "enjoin or restrain the operation of" Part IV of the INA, which is codified at 8 U.S.C. §§ 1221-31. But "[a]s Defendants acknowledge, the provision of the INA at issue—Section 1357(a)(2), which is contained in Part IX—is not one of the specified provisions in Section 1252(f)(1)." *United Farm Workers*,785 F. Supp. 3d at 705 (citing *Gonzalez*, 975 F.3d at 814 ("§ 1357(d) is not located in Part IV, and thus § 1252(f)(1)'s limitations do not apply")); *see also Escobar Molina*, 811 F.Supp.3d at 56 ("Here, plaintiffs seek an injunction restraining only warrantless civil immigration arrests governed by § 1357(a)(2), which is not covered by § 1252(f)(1)."). "[B]y specifying only 'the provisions of Part IV' and reinforcing its focus on only '*such* provisions,' 8 U.S.C. § 1252(f)(1) (emphasis added), the statute's plain text makes clear that its limitations on injunctive relief do not apply to other provisions of the INA." *Gonzalez*, 975 F.3d at 813.

Unable to rely on the text of the statute itself, Defendants try to tether Warrantless Arrest Plaintiffs' claim to the government's authority to detain and to initiate removal proceedings present in sections covered by § 1252(f)(1). Opp. at 8. But the Ninth Circuit in *Gonzalez* rejected this type of statutory sleight of hand. *Gonzalez* was a challenge to the probable cause determinations ICE used to issue certain types of immigration detainers. 975 F.3d at 798-800. Although Congress only referenced detainers in § 1357(d), the government argued in *Gonzalez*, as it does here, that the authority to issue them can be implied from §§ 1226 and 1231, thereby subjecting the case to jurisdiction-stripping under § 1252(f)(1). *Id.* at 813. But the Ninth Circuit rejected the government's attempt to "create out of thin air statutory text that does not exist," making clear that § 1252(f)(1) cannot be expanded beyond its plain text. *Id.* at 814 (citation omitted).

To be sure, an injunction targeting Defendants' procedures for conducting warrantless arrests may have some collateral consequences on government functions regulated in provisions covered by § 1252(f)(1). But such ancillary impacts are insufficient to expand the jurisdiction-

stripping provision beyond its text. To the contrary, the Ninth Circuit "has repeatedly held that § 1252(f)(1) does not prohibit an injunction simply because of collateral effects on a covered provision." *Al Otro Lado v. Exec. Off. for Immigr. Rev.*, 120 F.4th 606, 627 (9th Cir. 2024), *overruled on other grounds by Mullin v. Al Otro Lado*, No. 25-5, 609 U.S. --, 2026 WL 1825741 (U.S. June 25, 2026); *Aleman Gonzalez*, 596 U.S. at 553 n.4 ("a court may enjoin the unlawful operation of a provision that is not specified in § 1252(f)(1) even if that injunction has some collateral effect on the operation of a covered provision"); *United Farm Workers*, 785 F. Supp. 3d at 706 (collecting cases).

Warrantless Arrest Plaintiffs challenge only warrantless arrests under § 1357, not warranted arrests governed by provisions covered by § 1252(f)(1). That fact alone distinguishes this case from *N.S. v. Dixon* and *Aleman Gonzalez*, upon which Defendants heavily rely. Opp. at 9. In *N.S.*, the D.C. Circuit vacated a classwide injunction concerning the United States Marshals' practice of detaining certain individuals for suspected civil immigration violations. 141 F.4th at 282. The *N.S.* court held that § 1252(f)(1) barred such relief because "the district court enjoined the Marshals from arresting and detaining any criminal defendant suspected of a civil immigration violation, *which includes arrests made with a warrant* pursuant to § 1226(a) and the detention of any [noncitizen] charged with any of the crimes listed in § 1226(c)." *Id.* at 290 (emphasis added). Unlike this case, the "D.C. Circuit overturned an overbroad injunction that prohibited the U.S. Marshals from making *any* immigration arrests—whether with an administrative warrant (governed by § 1226) or without (governed by § 1357)." *Escobar Molina*, 811 F. Supp. 3d at 56; *see Kidd v. Mayorkas*, 734 F. Supp. 3d 967, 986 (C.D. Cal. 2024) ("There is a clear distinction between the authority to issue warrants under § 1226(a) and the one to execute arrests under § 1357."). Because both covered and non-covered provisions of § 1252(f)(1) were at issue in *N.S.*, the court there lacked jurisdiction. Similarly, *Aleman Gonzalez* is also irrelevant to this dispute because it concerned an injunction ordering bond hearings pursuant to § 1231(a)(6), a covered provision. 596 U.S. at 550; *see Texas v. U.S. Dep't of Homeland Sec.*, 123 F.4th 186, 210 (5th Cir. 2024) ("In *Aleman Gonzalez*, there was no question that the enjoined statute, § 1231(a)(6), fell within the bar. Here, there is no question that the enjoined statute, § 1357(a)(3), does not."). For

these reasons, Defendants cannot ignore the plain text of § 1252(f)(1) to resist a challenge to practices governed *exclusively* by a statute outside of its purview.

**B. Membership organizations may serve as class representatives.**

Warrantless Arrest Plaintiffs request that the Court certify a warrantless arrest class made up of all persons who, since June 6, 2025, "have been arrested or will be arrested" in this District "for alleged immigration violations without a warrant and without a pre-arrest, individualized assessment of probable cause that the person poses a likelihood of escape." They seek to press the interests of this proposed class because they, as membership organizations, have members within proposed class. *See* ECF 531 at 3-4, 14.[1]

Although the ability of membership organizations to serve as class representatives is hornbook law, Defendants spend a substantial portion of their Opposition claiming otherwise. To the contrary, "many courts have held that organizations with associational standing may serve as class representatives." *Vietnam Veterans of Am. v. C.I.A.*, 288 F.R.D. 192, 204 (N.D. Cal. 2012) (citation omitted). Understanding why Defendants' position fails requires a two-step analysis.

First, under Rule 23(a), "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members," provided they satisfy its requirements for numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). For purposes of establishing standing to bring a claim, an organization stands in the shoes of its members. *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 281 (1986) (recognizing that "[i]t has long been settled that even in the absence of injury to itself, an association may have standing solely as the representative of its members") (citation modified). An organization can serve as a class representative if it satisfies the prerequisites for associational standing set forth in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977), namely that (a) each organization's "members would otherwise have standing to sue in

[1] Plaintiffs originally filed the Motion for Preliminary Injunction at ECF 529 and Motion for Class Certification at ECF 531. Plaintiffs subsequently filed errata related to both at ECF 539, Exhibit H (Preliminary Injunction) and Exhibit I (Motion for Class Certification). Plaintiffs cite to the original docket numbers throughout this Reply for ease of reference and because Defendants' Opposition references those original numbers.

their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."

Once associational standing under *Hunt* is assured, the analysis proceeds to the second step, which asks whether the organization's individual members—upon whom organizational standing rests—can in turn serve as class representatives. If they can, then the organization, standing in those members' shoes, can itself become a class representative to press claims on behalf of class members. *See Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1174-75 (9th Cir. 1990) (rejecting challenge to typicality because "in their associational capacity, the unions are acting on behalf of" members, which included putative class members). *California Rural Legal Assistance*, for example, upheld certification of an organizational plaintiff as the sole representative of a subclass, explaining that Rule 23 "does not require the named plaintiffs to be identically situated with all other class members." *Id.* at 1175. Applying this analysis, district courts in this Circuit have repeatedly appointed organizational plaintiffs as class representatives. *See, e.g.*, *Powers v. McDonough*, 732 F. Supp. 3d 1184, 1199 (C.D. Cal. 2024) (appointing a nonprofit advocacy organization as a class representative), *aff'd in part, rev'd in part, and vacated in part on other grounds*, 163 F.4th 1162 (9th Cir. 2025); *Vietnam Veterans of Am.*, 288 F.R.D. at 204-05 ("[T]he VVA has associational standing to represent the class, as long as some of its members would otherwise have standing to sue in their own right," which at least three did); *Californians for Disability Rts., Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 351 (N.D. Cal. 2008) (appointing two disability rights organizations as class representatives); *League of United Latin Am. Citizens v. City of Salinas Fire Dep't*, 88 F.R.D. 533, 543 (N.D. Cal. 1980) (finding a community advocacy organization an adequate and typical class representative over the defendants' objection that it was not itself a class member).

The government's contrary assertion—that an organization cannot represent a class of which the organization itself is not a member—reprises an "attractively simple syllogism" rejected by the Northern District of California in *League of United Latin American Citizens.* 88 F.R.D. at 543. The court there explained that the "appeal of this mechanical approach" was "spoiled"

because that organization, like the ones at issue here, was organized in part to press for the eradication of the alleged misconduct that gave rise to the suit, was unlikely to be in any conflict with the class, and, as explained more fully below, was likely to vigorously prosecute the class's claims. *Id.*

It does not matter that the proposed warrantless arrest class includes individuals who are not members of the organizational plaintiffs. *See One Unnamed Deputy Dist. Att'y v. Cnty. of Los Angeles*, No. CV 09-7931 ODW (SSx), 2011 WL 13128375, at *1 (C.D. Cal. Jan. 24, 2011) (holding that unions may represent class including non-union members); *Cal. Rural Legal Assistance*, 917 F.2d at 1175 (same). Conversely, all members of an organization need not be in the class for an organization to qualify as a class representative. *See Willits v. City of Los Angeles*, 2011 WL 7767305, at *5 (C.D. Cal. Jan. 3, 2011) (appointing a community advocacy organization as class representative for a class of persons with mobility disabilities even though the organization served people with all types of disabilities); *Californians for Disability Rts.*, 249 F.R.D. at 350 (appointing as class representatives nonprofit organizations whose membership extended beyond the certified class of people with mobility and vision disabilities). This stands to reason since, in the absence of class certification, the Warrantless Arrest Plaintiffs have standing to pursue claims of injured members even if they also count non-injured individuals among their ranks. *Coal. for ICANN Transparency Inc. v. VeriSign, Inc.*, 771 F. Supp. 2d 1195, 1199 n.1 (N.D. Cal. 2011) (in associational standing cases, "[t]he requirement is not that each of the organization's members have standing, but that at least one of its members would have standing to sue in his own right.").

Having ignored all this case law, Defendants curiously cite to the Supreme Court's decision in *Brock*, apparently misattributing the *losing party*'s argument to the Court itself. Opp. at 4-5. In *Brock*, the Supreme Court held, over the Secretary of Labor's objection, that the UAW had associational standing to challenge the Secretary's interpretation of a law that provides certain benefits to laid off workers who are members of the union. *Brock*, 477 U.S. at 281-90. Defendants cite the various arguments asserted by the Secretary to argue that UAW's aggrieved members must be required to certify a class because the union may be an inadequate litigant to

assert its members' claims. *Id.* at 289. But the Court *rejected* these arguments, noting that associations may sometimes be better representatives of aggrieved members than a class of individual members. *Id.* at 289-90.

Ultimately the question whether a class action or a suit brought on behalf of an association may better represent the interest of aggrieved individuals depends on the facts of the litigation at issue. But this much is clear *for this case*: membership organizations may serve as class representatives, and the Warrantless Arrest Plaintiffs are uniquely positioned to vigorously prosecute the arrest claims of this proposed class.

### C. **There is no requirement to show "ascertainability" for a Rule 23(b)(2) class.**

Before turning to the merits of Rules 23(a) and (b)(2), Defendants lodge a series of unfounded attacks on the proposed class's "ascertainability," including by rehashing already-rejected arguments about Plaintiffs' standing to seek injunctive relief. None has merit.

Although Defendants' Opposition does not make this clear, the Ninth Circuit has held that there is no requirement for a court to assess the ascertainability of a Rule 23(b)(2) class. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124-33 (9th Cir. 2017) ("the language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification."). Importing such a requirement would improperly "interpose an additional hurdle into the class certification process delineated" in Rule 23. *Id.* at 1126; *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 236 (N.D. Cal. 2014) ("The Court is unaware of the Ninth Circuit or the Supreme Court ever explicitly acknowledging in any published opinion that 'ascertainability' or 'definiteness' is a required element of class certification that imposes obligations independent of the enumerated Rule 23 factors.").

To the extent courts adopt an ascertainability requirement at all, they do so only when assessing class certification under Rule 23(b)(3)—not for a Rule 23(b)(2) class, as proposed here. *In re Niaspan Antitrust Litig.*, 67 F.4th 118, 133-34 n.10 (3d Cir. 2023); *see, e.g.*, *In re Honda Idle Stop Litig.*, 347 F.R.D. 528, 539 (C.D. Cal. 2024) (assessing ascertainability for a proposed Rule 23(b)(3) class but recognizing that "the Ninth Circuit has declined to adopt an 'administrative feasibility' requirement beyond what is demanded by Rule 23(a)"). Whatever the underlying

concerns animating Defendants' arguments may be, they are properly channeled through an assessment of Rule 23(a). *See, e.g.*, *Mickelonis v. Aspyr Media, Inc.*, No. 8:23-CV-01220-MWC-ADS, 2025 WL 1605332, at *5 (C.D. Cal. May 16, 2025), *reconsideration denied*, No. 8:23-CV-01220-MWC-ADS, 2025 WL 3050061 (C.D. Cal. July 11, 2025) (addressing ascertainability arguments against a proposed Rule 23(b)(3) class "through the Court's analysis of Rule 23's enumerated requirements").

Defendants argue that the proposed "class is not ascertainable because class membership would turn on subjective, merits-laden 'probable cause' judgments rather than objective records, making identification practically burdensome and only inviting mini-trials as to the basis for each putative member's individual arrest." Opp. at 6. Defendants appear to argue that class certification is inappropriate to resolve *any* arrest claim, since such claims inevitability involve fact-intensive probable cause. But the Ninth Circuit has rejected the same assertion that class-wide treatment of probable cause determinations is inappropriate, recognizing that "claims concerning government policies, practices or procedures for probable cause determinations are plainly suitable for classwide resolution." *Gonzalez*, 975 F.3d at 809. It made clear that "'the adequacy of the procedur[es]' on which the government relies to make arrests and detain individuals" is susceptible to class treatment, even if the existence of probable cause in any given case may differ between class members. *Id.* (quoting *Sibron v. New York*, 392 U.S. 40, 58 (1968)).

Warrantless Arrest Plaintiffs lodge the same type of systemic policing challenge as the plaintiffs in *Gonzalez*. Rather than asking this Court to litigate the merits of every individual warrantless arrest within the District, Plaintiffs challenge the "adequacy of the procedures" Defendants apply, on a classwide basis, to arrest individuals without ever assessing their risk of escape. *Gonzalez*, 975 F.3d at 809. More precisely, Plaintiffs challenge the *lack* of any process to ascertain probable cause of flight risk across the entire class. The determination of Defendants' liability will therefore not turn on any individualized assessments that Defendants contend will doom this Motion. *See Escobar Molina*, 811 F.Supp.3d at 58 (holding same and collecting analogous cases); *United Farm Workers*, 785 F. Supp. 3d at 726 ("Factual differences related to

the circumstances of the detentive stops and arrests—such as whether the proposed class representatives and putative class members provided agents with identification—do not preclude a finding of typicality, because the proposed representatives and putative class members were subjected to the same practices of Border Patrol.").

Defendants also argue that the class definition does not "use objective criteria to establish membership" by simply contesting the merits of Plaintiffs' claims. Opp. at 7. They assert that warrantless arrests are neither inherently unlawful (Plaintiffs agree) nor uncommon in this District (Plaintiffs also agree), and that Plaintiffs' evidence is insufficient to demonstrate that immigration officers do not perform the required escape risk analysis prior to effectuating a warrantless arrest (Plaintiffs disagree). *Id.* Their attempts to defend their conduct on the merits are largely irrelevant to the requirements for class certification. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 667 (9th Cir. 2022) (en banc) (plaintiffs need not "show at certification that they will prevail on the merits"). To the extent the Court construes Defendants' argument as implying that Plaintiffs' proposed class is failsafe, that argument would lose. Class membership here relies on "factual question[s] and requires no impermissible preliminary determination of liability," *Pena v. Taylor Farms Pac., Inc.*, 305 F.R.D. 197, 213 (E.D. Cal. 2015), such as whether the practice of failing to ascertain probable cause of escape risk exists at all, *see Willis v. Enter. Drilling Fluids, Inc.*, No. 1:15-cv-00688-JLT, 2015 WL 6689637, at *7 (E.D. Cal. Oct. 28, 2015) (proposed subclass not fail-safe because "[i]f Plaintiff succeeds in establishing *the existence of unlawful policies or practices common to all the class members*, the Court would not be required to determine the legal merits of each class members' claims….") (emphasis added). *See United Farm Workers*, 785 F. Supp. 3d at 712 (holding similar warrantless arrest class not fail-safe).

Finally, Defendants reprise their arguments challenging Warrantless Arrest Plaintiffs' standing to seek injunctive relief on the Stop/Arrest claims as a reason why the proposed class should not be certified. Opp. at 7. But "[t]his Court has already considered and rejected Defendants' standing and jurisdictional arguments." ECF 484 at 11; *see* ECF 419 (holding that "the organizational Plaintiffs have sufficiently demonstrated they have standing to pursue injunctive relief" on their Fourth Amendment claims). *Cf. Vasquez Perdomo v. Noem*, 148 F.4th

656, 673-77 (9th Cir. 2025) (affirming standing to seek injunction on Plaintiffs' suspicionless stop claim). Both Warrantless Arrest Plaintiffs' motions for class certification and for a preliminary injunction explain in detail the basis for their standing and cite record evidence demonstrating that each is a membership organization that counts as members individuals who have been arrested without a warrant and without their risk of escape being assessed, or who face a substantial risk of being so arrested. ECF 529 at 9-13; ECF 31 at 6, 14. Defendants address none of Plaintiffs' arguments and contest none of the evidence. Instead, they baldly declare that Plaintiffs "lack cognizable injuries," Opp. at 7, even though there are few greater injuries than the illegal and prolonged deprivation of one's liberty at the hands of the government. *See Kelch v. Dir., Nev. Dep't of Prisons*, 10 F.3d 684, 688 (9th Cir. 1993) ("Deprivation of liberty, next to deprivation of life, is the greatest punishment a state can impose upon an individual.").

**D. Plaintiffs' proposed class satisfies all the requirements of Rule 23(a).**

Warrantless Arrest Plaintiffs' moving papers establish how their proposed class satisfies each of Rule 23(a)'s four requirements. Defendants largely rehash their opposition to organizations serving as class representatives, and repeatedly argue that differences in the facts surrounding individuals' arrests preclude class-wide relief. Both arguments fail.

***1. The proposed class is sufficiently numerous.***

Rule 23(a)(1) requires plaintiffs demonstrate that the class is "so numerous that joinder of all members is impracticable," a requirement typically satisfied by a class with 40 or more members. ECF 531 at 6. Plaintiffs' moving papers demonstrate just how common warrantless arrests without escape risk determinations are in this District, and how Plaintiffs easily meet this numerosity requirement. *See id.* at 6-8. Defendants' attempts to challenge numerosity are unpersuasive and untethered to the case law governing Rule 23(a)(1).

Defendants first improperly demand evidence of the number of organizational members who would be members of the proposed class, as opposed to the number of individuals in the proposed class itself. The former is irrelevant to the numerosity requirement, which concerns itself only with the size of the proposed class. *Ambrosia v. Cogent Commc'ns, Inc.*, 312 F.R.D.

544, 552 (N.D. Cal. 2016) ("as a general matter, a class greater than forty often satisfies the requirement").

Defendants also complain that Warrantless Arrest Plaintiffs' citations to the large numbers of collateral arrests is unrelated to the size of the proposed class. Opp. at 18. But collateral arrests, typically carried out without a warrant, are highly relevant to evaluating the likely number of individuals subject to Defendants' policy and practice. Further, the number of collateral arrests is not Plaintiffs' only evidence of numerosity. Plaintiffs know that number likely exceeds 100, since they have analyzed the many arrest narratives that Defendants produced that conspicuously fail to include an escape risk analysis—a strong indication that no probable cause analysis of escape risk was conducted. ECF 529 at 6; *see Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1231-32 (D. Colo. 2025) (relying on lack of evidence from I-213 forms "that the arresting officers developed probable cause of flight risk prior to" arrests to determine likelihood of success on the merits). These arrest narratives are corroborated by dozens of declarations of putative class members. ECF 529 at 7. Given the large numbers of warrantless collateral arrests within the District and the similar numerosity findings by courts elsewhere, "general knowledge and common sense indicate" that the proposed class size is far more numerous than the 40 required under Rule 23(a)(1). *Kidd v. Mayorkas*, 343 F.R.D. 428, 437 (C.D. Cal. 2023) (quoting *Orantes-Hernandez v. Smith*, 514 F. Supp. 351, 370 (C.D. Cal. 1982)); *see Ramirez Ovando*, 810 F. Supp. 3d at 1228; *Escobar Molina*, 811 F.Supp.3d at 57-58. That conclusion cannot be fairly described as "mere speculation." Opp. at 18 (quoting *Nguyen v. Kissinger*, 70 F.R.D. 656, 661 (N.D. Cal. 1976)).

#### ***2. The relevant legal and factual questions in dispute here are common to the entire class.***

Defendants argue against the commonality of class members' claims in two ways: by recycling their failed argument that organizational plaintiffs cannot serve as class representatives in their attack on commonality under Rule 23(a)(2), and by refusing to acknowledge that Warrantless Arrest Plaintiffs have identified a policy or practice that gives rise to common questions of law or fact. Neither of Defendants' arguments is persuasive.

By arguing that an organization does not have claims in common with its members and by suggesting that an entity (as opposed to an individual) does not have Fourth Amendment rights, Opp. at 10, Defendants fundamentally misunderstand associational standing and its relationship to class certification. As explained above, a membership organization can stand in the shoes of an individual, both as a plaintiff who asserts the interests of its injured members and as a class representative who on behalf of its injured members represents the interests of a class. *See* Part II.B *infra*. However they proceed, Warrantless Arrest Plaintiffs are not vicariously asserting any *third-party's* rights. Opp. at 10 (citing *Alderman v. United States*, 394 U.S. 165, 174 (1969)). As this Court previously held, the right of Warrantless Arrest Plaintiffs to bring claims on behalf of their members is well established in the Ninth Circuit. *See* ECF 419 at 22 (citing *Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128, 1135, 1143 (9th Cir. 2024) (finding organizational plaintiff met standing requirements to bring Fourth Amendment claim on behalf of its members)).

Defendants then argue that "the requisite fact-intensive Fourth Amendment analysis" is not susceptible to class-wide treatment due to the varying facts at issue in each warrantless arrest and each probable cause determination necessary to effectuate such an arrest. Opp. at 11-12. But as explained in Warrantless Arrest Plaintiffs' opening papers, the variance in individual facts between arrests is irrelevant to the four questions common to *all* of them. *See* ECF 531 at 10-11; *Escobar Molina*, 811 F.Supp.3d at 58; *M-J-M-A- v. Hermosillo*, 2026 WL 562063, at *17 (D. Or. Feb. 27, 2026); *see also Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) (upholding certification despite factual variations in where and how stops occurred); *Kidd*, 343 F.R.D. at 439-40 (certifying a class "challeng[ing] ICE's policies or practices on a systemwide basis," rejecting the argument that "factual differences across various ICE encounters" defeat typicality). Tellingly, Defendants' Opposition addresses none of Plaintiffs' cited authorities, including the four warrantless arrest cases that addressed, and rejected, the very commonality arguments Defendants make here. They offer not a single word supporting a conclusion that these cases incorrectly determined that the proposed classes in those cases—classes similar, if not identical, to the one at issue here—fail Rule 23(a)'s commonality requirement.

Together, these cases demonstrate that where a single policy or widespread practice gives rise to the violation challenged by a prospective class, the legal infirmity of that policy or practice is common to the injuries suffered by the class in satisfaction of Rule 23(a)(2). *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005); *Parsons*, 754 F.3d at 681-82 ("commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members"). Warrantless Arrest Plaintiffs' challenge to this policy thus surfaces common questions of law and fact capable of resolution "in one stroke." *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

If no such single policy or widespread practice exists, or if a plaintiff is unable to substantiate the existence of any such single policy or practice, then commonality may be more difficult to find. That occurred in *Black Lives Matters L.A. v. City of L.A.*, 113 F.4th 1249 (9th Cir. 2024) ("BLM"), upon which Defendants rely. *BLM* vacated the certification of its arrest class not because an unlawful arrest or excessive force claim can never serve as the basis for a class action (a position Defendants appear to take here), but because the plaintiffs could not provide enough evidence of a systemwide policy of excessive force. *Id.* at 1260 (finding insufficient record evidence to show that proposed class members were "as a result of an LAPD custom or policy"). "[I]n *BLM*, the relevant point was simply that class-wide *proof*—as opposed to mere pleading—is necessary to show commonality." *Los Angeles Press Club v. Noem*, No. 2:25-cv-05563-HDV-E (C.D. Cal. June 25, 2026) (distinguishing *BLM* to find commonality by pointing the existence of class-wide proof of an unlawful policy and practice).

Just as in *Los Angeles Press Club*, no such deficiency in the record exists here. To the contrary, Warrantless Arrest Plaintiffs easily meet their burden to demonstrate the existence of a policy and practice of failing to conduct individualized assessments of escape risk. *See* ECF 529 at 5-8 (summarizing extensive record made of deposition admissions, arrest narratives, arrest footage, and eyewitness declarations). Defendants refuse to acknowledge any of this, and simply proclaim in this face of this record that Warrantless Arrest Plaintiffs have not done enough to prove the existence of the illegality. Opp. at 12, 13. But how much is enough? Defendants do not

explain. Whatever the burden of proof on a class certification motion is, surely the reams of uncontroverted evidence submitted here alongside the extensive factual findings made by the other four class certification orders documenting a nearly identical policy and practice meet that burden.

***3. Warrantless Arrest Plaintiffs' claims are typical of the class.***

Typicality is a "permissive" standard and is satisfied "when each class member's claim arises from the same course of events, and each class member makes *similar legal* arguments to prove the defendant's liability"—not necessarily identical ones. *Armstrong*, 275 F.3d at 868 (emphasis added). The injuries of the Warrantless Arrest Plaintiffs' members are typical of the proposed class. Defendants again challenge the propriety of organizational plaintiffs serving as class representatives, this time under the banner of typicality. They also argue that the existence of organizational members who have not been injured pursuant to the challenged practice renders the organizations' injuries atypical. Opp. at 15. None of this is persuasive.

The typicality requirement in this context asks not whether injured members and non-injured members of the organizations share typical claims. Instead, typicality asks whether the claims of the injured members are typical of *class members'* claims. *Willits*, 2011 WL 7767305, at *5; *Californians for Disability Rts., Inc.*, 249 F.R.D. at 346, 350. The claims brought by Plaintiffs' members set forth in the accompanying motion for preliminary injunction are typical of the claims that the entire proposed class would have—a function of Defendants' systematic refusal to individually assess probable cause of escape risk.

Defendants again improperly focus on variations in the injuries suffered by the prospective class to attempt to undermine typicality. *See* Opp. at 15-16. But as the court explained in *Ellis v. Costco Wholesale Corp.*, "[t]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose[.]" 657 F.3d 970, 984 (9th Cir. 2011). As with commonality, typicality exists here because the class representatives have been and are subject to the same unlawful practice as other members of the class. *How* that unlawful practice played out in their individual arrests—or which specific injury results—does not defeat typicality.

***4. Warrantless Arrest Plaintiffs and their counsel will adequately and fairly represent the interests of the class.***

Defendants challenge the adequacy of both the Warrantless Arrest Plaintiffs' representation of the class and, curiously, of the individual plaintiffs.' Opp. at 16-17. Beginning with the latter, Defendants raise various reasons why none of the five individual plaintiffs may adequately serve as class representatives. Opp. at 17. But none of this matters, as the warrantless arrest claims were brought on behalf of the organizational plaintiffs only and only they seek to serve as class representatives. Plaintiffs pointed to some of the individual Plaintiffs' experiences as evidence of harms suffered by putative class members subject to Defendants' policy and practice.

Turning to the adequacy of the actual Warrantless Arrest Plaintiffs, Defendants again argue that these organizations lack standing to enjoin the challenged warrantless arrest policy, Opp. at 16, that they cannot serve as adequate class representatives because the organizations *themselves* cannot be arrested, Opp. at 14, and that the organizations "may wish to pursue other priorities," thereby defeating adequacy, Opp. at 17.

First, Warrantless Arrest Plaintiffs have consistently demonstrated standing to seek injunctive relief at every stage of this litigation, in addition to declaratory relief and vacatur which Defendants do not challenge. *See* Part II.C *infra*. Each organization has members who have been, will be, and/or reasonably fear arrest without a warrant and without ever being determined to be an escape risk. *See* ECF 531 at 14 (citing class representatives' declarations describing the standing of their members).

Second, Warrantless Arrest Plaintiffs' adequacy to serve as class representatives derives from the adequacy of their injured members' ability to represent the interests of the class, not whether *the organizations themselves* have ever been subject to illegal warrantless arrests. *See Vietnam Veterans of Am.*, 288 F.R.D. at 204 ("many courts have held that organizations with associational standing may serve as class representatives, at least where the underlying purpose of the organization is to represent the interests of the class.").

Finally, Defendants' suggestion that Warrantless Arrest Plaintiffs may suddenly decide not to prosecute these claims and "pursue other priorities" is rank speculation. LAWCN, UFW, and CHIRLA all have members impacted by this policy, and each has an impeccable track record advocating on behalf of immigrant communities. *See* ECF 531 at 14 (citing declarations attesting to Plaintiffs' adequacy to represent the class). For instance, CHIRLA has previously served as a class representative in a similar class action involving Fourth Amendment claims against ICE. *See, e.g.*, *Kidd v. Wolf*, 2:20-cv-03512-ODW (JPRx) (C.D. Cal. Apr. 16, 2020). The record is more than enough to support adequacy. *See In re Packaged Seafood Prods. Antitrust Litig.*, 332 F.R.D. 308, 330 (S.D. Cal. 2019) (a general understanding of the nature of the claims and a representative's general responsibilities "is sufficient for purposes of adequacy[.]").

**E. Rule 23(b)(2) authorizes the proposed warrantless arrest class.**

Rule 23(b)(2) allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Warrantless Arrest Plaintiffs have established the existence of an illegal policy and practice executed by Defendants that applies uniformly across the entire proposed class of individuals who have been or will be arrested, rendering this a prototypical Rule 23(b)(2) case. *Parsons*, 754 F.3d at 688.

"Rule 23(b)(2) has been interpreted as imposing two requirements: (1) the defendant's action or refusal to act must be generally applicable to the class, and (2) plaintiff must seek final injunctive relief or corresponding declaratory relief on behalf of the class." *Escobar Molina*, 811 F. Supp. 3d at 61. Defendants do not meaningfully address either requirement in their Opposition. Warrantless Arrest Plaintiffs satisfy both: by definition, Defendants' categorical failure to assess escape risk applies to the entire class of individuals who have been arrested or will be arrested without a warrant and without ever being subject to such an assessment; and an injunction that requires Defendants to conduct this assessment would apply to and provide relief to the entire class.

Defendants ignore controlling authority showing that courts routinely certify classes in cases such as this one. *See* ECF 531 at 15-16 (collecting cases); *see Parsons*, 754 F.3d at 686 ("the primary role of [Rule 23(b)2)] has always been the certification of civil rights class actions") (cleaned up). Instead, just as in *Escobar Molina*, "Defendants' objection to Rule 23(b)(2) certification stems from similar grounds to their objections regarding commonality and typicality, arguing that 'each arrested [individual] has a unique set of circumstances and unique avenues for seeking relief.'" *Escobar Molina*, 811 F. Supp. 3d at 61; *see* Opp. at 18 (arguing that Rule 23(b)(2) certification improper when "factual and legal circumstances are not remotely uniform"). Just as in *Escobar Molina*, "this argument is unpersuasive because plaintiffs are only challenging defendants' general policy and practice of conducting warrantless arrests without probable cause; they 'are not asking for this Court to remedy discrete errors,' *Damus v. Nielsen*, 313 F. Supp. 3d 317, 334 (D.D.C. 2018)." *Id.*; *see Parsons*, 754 F.3d at 688-89 (provided that the defendant engaged in conduct that "appli[ed] generally to the proposed class[,]" certification under Rule 23(b)(2) is proper where "each of the certified . . . policies and practices may not affect every member of the proposed class . . . in exactly the same way.").

The cases on which Defendants rely that denied certification under Rule 23(b)(2) did so for reasons not present here. *Berni v. Barilla S.p.A.*, 964 F.3d 141, 149 (2d Cir. 2020) and *Brown v. Kelly*, 609 F.3d 467, 482 (2d Cir. 2010) merely stand for the proposition that if a certain portion of class members lack standing to seek injunctive relief, that class cannot meet Rule 23(b)(2)'s requirement that relief be, in the words of *Berni*, "proper for each and every member" of the class. 964 F.3d at 146. But as Warrantless Arrest Plaintiffs demonstrated here and in their preliminary injunction motion, they enjoy standing to seek all relevant forms of relief sought in the Second Amended Complaint. *See* ECF 529 at 11-13. Defendants also cite *Greater Chautauqua Fed. Credit Union v. Quattrone*, No. 1:22-cv-2753 (MKV), 2025 WL 869729, at *12 (S.D.N.Y. Mar. 20, 2025). There, the court denied certification under Rule 23(b)(2) for another reason absent here: the proposed class contained individual issues that predominated over common ones such that an injunction would not have provided relief to the entire class. No such commonality deficiencies exist here.

Finally, Defendants' concern that class members may be improperly precluded from subsequent litigation is unfounded. Opp. at 19. Although traditional principles of res judicata and collateral estoppel apply to class actions, this class poses no greater preclusion risk of such preclusive effects than any other. While class actions are natural exceptions to the rule of nonparty preclusion insofar as a class judgment may decide an issue for the benefit of a nonparty, *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008), courts are perfectly capable of hearing any subsequent claim from class members that rest on distinct facts and legal theories. *See Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 874 (1984) (subsequent action brought by class member not precluded by earlier judgment). The possibility of a preclusion here is neither relevant to certification nor appropriate to decide on the speculative terms Defendants have raised it.

## III. CONCLUSION

For the reasons set forth above, Warrantless Arrest Plaintiffs respectfully request the Court grant the Motion, certify the proposed warrantless arrest class, and appoint Stop/Arrest Plaintiffs' counsel as class counsel.

DATED: July 14, 2026

ACLU OF SOUTHERN CALIFORNIA

By: */s/ Mohammad Tajsar*
MOHAMMAD TAJSAR
*Counsel for Stop/Arrest Plaintiffs*

DATED: July 14, 2026

UC IRVINE IMMIGRANT AND RACIAL JUSTICE SOLIDARITY CLINIC

By: */s/ Annie Lai*
ANNE LAI
*Counsel for Stop/Arrest Plaintiffs*

DATED: July 14, 2026

MUNGER, TOLLES & OLSON LLP

By: *_/s/ Jacob S. Kreilkamp_*
JACOB S. KREILKAMP
*Counsel for Stop/Arrest Plaintiffs*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies that this filing is 12 point font and 6990 words, which complies with this Court's standing order and Local Rule 11-6.1.

DATED: July 14, 2026

MUNGER, TOLLES & OLSON LLP

By: */s/ Jacob S. Kreilkamp*
JACOB S. KREILKAMP
*Counsel for Stop/Arrest Plaintiffs*