STACY TOLCHIN (SBN 217431)
*stacy@tolchinimmigration.com*
LAW OFFICES OF STACY TOLCHIN
776 E. Green St., Suite 210
Pasadena, CA 91101
Tel: 213-622-7450; Fax: 213-622-7233

MOHAMMAD TAJSAR (SBN 280152)
*mtajsar@aclusocal.org*
MAYRA JOACHIN (SBN 306065)
*mjoachin@aclusocal.org*
DAE KEUN KWON (SBN 313155)
*akwon@aclusocal.org*
STEPHANIE PADILLA (SBN 321568)
*spadilla@aclusocal.org*
ALYSSA MORONES (SBN 343358)
*amorones@aclusocal.org*
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017-4022
Tel: 213-977-5232; Fax: 213-201-7878

*Counsel for Stop/Arrest Plaintiffs*

(*Additional counsel listed on next page*)

MARK ROSENBAUM (SBN 59940)
*mrosenbaum@publiccounsel.org*
REBECCA BROWN (SBN 345805)
*rbrown@publiccounsel.org*
RITU MAHAJAN (SBN 252970)
*rmahajan@publiccounsel.org*
GINA AMATO (SBN 215519)
*gamato@publiccounsel.org*
AMANDA MANGASER SAVAGE (SBN 325996)
*asavage@publiccounsel.org*
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Counsel for All Plaintiffs*

ANNE LAI (SBN 295394)
*alai@law.uci.edu*
UC IRVINE SCHOOL OF LAW
IMMIGRANT AND RACIAL JUSTICE SOLIDARITY CLINIC
P.O. Box 5479
Irvine, CA 92616-5479
Tel: 949-824-9894; Fax: 949-824-2747

*Counsel for Stop/Arrest Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

Pedro VASQUEZ PERDOMO; Carlos Alexander OSORTO; and Isaac VILLEGAS MOLINA; Jorge HERNANDEZ VIRAMONTES; Jason Brian GAVIDIA; LOS ANGELES WORKER CENTER NETWORK; UNITED FARM WORKERS; COALITION FOR HUMANE IMMIGRANT RIGHTS; IMMIGRANT DEFENDERS LAW CENTER,

Plaintiffs,

v.

Markwayne MULLIN, in his official capacity as Secretary, Department of Homeland Security; David VENTURELLA, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; Rodney S. SCOTT, in his official capacity as Commissioner, U.S. Customs and Border Patrol; Michael W. BANKS, in his official

Case No.: 2:25-cv-05605-MEMF-SP

**REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION RE: WARRANTLESS ARRESTS**

Hon. Maame Ewusi-Mensah Frimpong

Date: August 13, 2026
Time: 10:00 a.m.
Place: Courtroom 8B

capacity as Chief of U.S. Border Patrol; Kash PATEL, in his official capacity as Director, Federal Bureau of Investigation; Todd BLANCHE, in his official capacity as Acting U.S. Attorney General; Thomas GILES, in his official capacity as Acting Field Office Director for Los Angeles, U.S. Immigration and Customs Enforcement; Dean T. SORENSON, Special Agent in Charge for Los Angeles, Homeland Security Investigations, U.S. Immigration and Customs Enforcement; Daniel PARRA, in his official capacity as Acting Chief Patrol Agent for El Centro Sector of the U.S. Border Patrol; Justin DE LA TORRE, in his official capacity as Acting Chief Patrol Agent, San Diego Sector of the U.S. Border Patrol; Akil DAVIS, in his official capacity as Assistant Director in Charge, Los Angeles Office, Federal Bureau of Investigation; Bilal A. ESSAYLI, in his official capacity as First Assistant U.S. Attorney for the Central District of California,

Defendants.

JACOB S. KREILKAMP (SBN 248210)
*jacob.kreilkamp@mto.com*
DAVID FRY (SBN 189276)
*david.fry@mto.com*
ADAM B. WEISS (SBN 296381)
*adam.weiss@mto.com*
SARA H. WORTH (SBN 341088)
*sara.worth@mto.com*
LAURA R. PERRY (SBN 342504)
*laura.perrystone@mto.com*
HENRY D. SHREFFLER (SBN 343388)
*henry.shreffler@mto.com*
LAUREN E. KUHN (SBN 343855)
*lauren.kuhn@mto.com*
ANGELA URIBE (SBN 353579)
*angela.uribe@mto.com*
MAGGIE BUSHELL (SBN 354048)
*maggie.bushell@mto.com*
MUNGER, TOLLES & OLSON LLP
350 S. Grand Ave., 50th Floor
Los Angeles, CA 90071
Tel: 213-683-9100; Fax: 213-683-9100

*Counsel for Stop/Arrest Plaintiffs*

BREE BERNWANGER (SBN 331731)
*bbernwanger@aclunc.org*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel: 415-621-2493

*Counsel for Stop/Arrest Plaintiffs*

BRISA VELAZQUEZ OATIS (SBN 339132)
*bvoatis@aclu-sdic.org*
ACLU FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Tel: 619-398-4199

*Counsel for Stop/Arrest Plaintiffs*

EDGAR AGUILASOCHO (SBN 285567)
*eaguilasocho@farmworkerlaw.com*
MARTÍNEZ AGUILASOCHO LAW, INC.
900 Truxtun Ave, Suite 300
Bakersfield, CA 93301
Tel: 661-859-1174

*Counsel for Plaintiff United Farm Workers*

JESSICA KARP BANSAL (SBN 277347)
*jessica@ndlon.org*
LAUREN MICHEL WILFONG*
*lwilfong@ndlon.org*
JIA FU*
*jennifer@ndlon.org*
NATIONAL DAY LABORER ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Tel: 626-214-5689

*Counsel for Stop/Arrest Plaintiffs*

MATTHEW J. CRAIG (SBN 350030)
*mcraig@heckerfink.com*
MACK E. JENKINS (SBN 242101)
*mjenkins@heckerfink.com*
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Tel: 212-763-0883; Fax: 212-564-0883

*Counsel for Access/Conditions Plaintiffs*

CARL BERGQUIST*
*cbergquist@chirla.org*
Coalition for Humane Immigrant Rights
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

*Counsel for Plaintiff Coalition for Humane Immigrant Rights*

ALVARO M. HUERTA (SBN 274787)
*ahuerta@immdef.org*
BRYNNA BOLT (SBN 339378)
*bbolt@immdef.org*
ALISON STEFFEL (SBN 346370)
*asteffel@immdef.org*
Immigrant Defenders Law Center
634 S. Spring St., 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

*Counsel for Plaintiff Immigrant Defenders Law Center*

* Admitted pro hac vice

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

A. Defendants do not meaningfully dispute Plaintiffs' standing ........ 2

B. Defendants' warrantless arrest policy is a final agency action ........ 6

C. Defendants do not meaningfully dispute that they have an ongoing policy and practice of conducting warrantless arrests without conducting the requisite escape risk analysis ........ 7

D. Defendants fail to rebut Plaintiffs' evidence of irreparable harm ........ 12

E. The balance of equities and public interest strongly favor Plaintiffs ........ 15

F. Plaintiffs' proposed injunction satisfies Rule 65(d)'s specificity requirements ........ 15

III. CONCLUSION ........ 18

CERTIFICATE OF SERVICE ........ 19

CERTIFICATE OF COMPLIANCE ........ 20

## TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*A.B.D. v. Wamsley*,
2026 WL 178306 (D. Or. Jan. 22, 2026)....12

*Araujo v. United States*,
301 F. Supp. 2d 1095 (N.D. Cal. 2004)....10

*Arc of Cal. v. Douglas*,
757 F.3d 975 (9th Cir. 2014)....14

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015)....7

*Bennett v. Spear*,
520 U.S. 154 (1997)....6

*California v. Trump*,
379 F. Supp. 3d 928 (N.D. Cal. 2019), aff'd, 963 F.3d 926 (9th Cir. 2020)....7

*Clapper v. Amnesty International*,
568 U.S. 398 (2013)....5

*Coal. on Homelessness v. City & Cnty. of San Francisco*,
2024 WL 3325655 (9th Cir. July 8, 2024)....16

*Columbia Basin Apartment Ass'n v. City of Pasco*,
268 F.3d 791 (9th Cir. 2001)....5

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
603 U.S. 799 (2024)....6

*Cuviello v. City of Vallejo*,
944 F.3d 816 (9th Cir. 2019)....14

*Ecology Ctr., Inc. v. U.S. Forest Serv.*,
192 F.3d 922 (9th Cir. 1999)....6

*Escobar Molina v. U.S. Dep't of Homeland Sec.*,
811 F. Supp. 3d 1 (D.D.C. 2025).... 3, passim

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000)....13

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015)....14

*Garland v. Aleman Gonzalez*,
596 U.S. 543 (2022) ........................................................................................17

*Gonzalez v. Dep't of Homeland Sec.*,
508 F.3d 1227 (9th Cir. 2007)...........................................................................17

*Hernandez v. Sessions*,
872 F.3d 976 (9th Cir. 2017).............................................................................15

*Hoye v. City of Oakland*,
653 F.3d 835 (9th Cir. 2011)...............................................................................9

*Hussen v. Noem*,
822 F. Supp. 3d 944 (D. Minn. 2026) ..............................................................4, 9

*Kohli v. Gonzales*,
473 F.3d 1061 (9th Cir. 2007)..............................................................................8

*Los Angeles v. Lyons*,
461 U.S. 95 (1983) ..............................................................................................4

*M-J-M-A- v. Hermosillo*,
822 F. Supp. 3d 1147 (D. Or. 2026)................................................... 3, passim

*McComb v. Jacksonville Paper Co.*,
336 U.S. 187 (1949) ...........................................................................................15

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012)........................................................................2, 3, 12

*Melendres v. Skinner*,
113 F.4th 1126 (9th Cir. 2024)..........................................................................16

*MOAC Mall Holdings LLC v. Transform Holdco LLC*,
598 U.S. 288 (2023) ...........................................................................................13

*Moreno v. Napolitano*,
213 F. Supp. 3d 999 (N.D. Ill. 2016) .................................................................10

*Mountain High Knitting, Inc. v. Reno*,
51 F.3d 216 (9th Cir. 1995)................................................................................11

*N.S. v. Dixon*,
141 F.4th 279 (D.C. Cir. 2025) ..........................................................................17

*Noem v. Vasquez Perdomo*,
146 S. Ct. 1 (2025) .............................................................................................15

*Nuclear Regul. Comm'n v. Texas*,
605 U.S. 665 (2025) .............................................................................................7

*Ramirez Ovando v. Noem*,
810 F. Supp. 3d 1209 (D. Colo. 2025) ............................................................ 3, passim

*Ramirez Ovando v. Noem*,
No. 1:25-CV-03183 (D. Colo. May 12, 2026), Dkt. No. 112 ..........................................10

*Summers v. Earth Island Institute*,
555 U.S. 488 (2009) ..........................................................................................................7

*Thomas v. Cnty. of Los Angeles*,
978 F.2d 504 (9th Cir. 1992), as amended (Feb. 12, 1993) ............................................16

*U.S. Sec. & Exch. Comm'n v. Murphy*,
50 F.4th 832 (9th Cir. 2022)...........................................................................................15

*United Farm Workers v. Noem*,
785 F. Supp. 3d 672 (E.D. Cal. 2025)..........................................................3, 4, 17

*United States v. Concentrated Phosphate Export Ass'n*,
393 U.S. 199 (1968) ........................................................................................................13

*United States v. Hansen*,
40 F.4th 1049 (9th Cir. 2022)............................................................................................5

*United States v. Harrison*,
168 F.3d 483 (4th Cir. 1999)...........................................................................................11

*United States v. Miller*,
588 F.3d 1256 (9th Cir. 1978).........................................................................................15

*United States v. Reyes*,
963 F.3d 482 (5th Cir. 2020).............................................................................................5

*Unknown Parties v. Johnson*,
2016 WL 8188563 (D. Ariz. Jan. 3, 2017).......................................................................16

*Vasquez Perdomo v. Noem*,
148 F.4th 656 (9th Cir. 2025)....................................................................................2, 4, 5

*Vasquez Perdomo v. Noem*,
790 F. Supp. 3d 850 (C.D. Cal. 2025)...........................................................................2, 4

*Zepeda v. INS*,
753 F.2d 719 (9th Cir. 1983)...........................................................................................15

**FEDERAL STATUTES**

5 U.S.C. § 705 .......................................................................................................17, 18

5 U.S.C. § 706(2)(A) ...........................................................................................................6

5 U.S.C. § 706(2)(C) ....................6

8 U.S.C. § 1252(f)(1) ....................17

8 U.S.C. § 1357 ....................10, 17

8 U.S.C. § 1357(a) ....................1, 12

8 U.S.C. § 1357(a)(2) ....................6, 7, 9, 17

18 U.S.C. § 751 ....................10

18 U.S.C. § 752 ....................10

18 U.S.C. § 755 ....................10

**State Statutes**

Administrative Procedure Act ....................6

**Rules - Other**

Fed. R. Civ. Proc. 65(d) ....................15, 16

**Federal Regulations**

8 C.F.R. § 287.8(c)(2) ....................1

8 C.F.R. § 287.8(c)(2)(ii) ....................7

**Constitutional Provisions**

Fourth Amendment ....................2, 4

**Other Authorities**

Black's Law Dictionary ....................10

Hamed Aleaziz, *Immigrant Arrests Surge to 10,000 in 5 Days as ICE Clamps Down*, N.Y. Times (July 1, 2026) ....................14

Merriam-Webster's Dictionary of Law ....................10

Ximena Bustillo, *Border czar promises 'mass deportations are coming' to fulfill Trump's promises*, NPR (May 7, 2026), https://www.mainepublic.org/npr-news/2026-05-07/border-czar-promises-mass-deportations-are-coming-to-fulfill-trumps-promises ....................13

## I. INTRODUCTION

Defendants' opposition does not, because it cannot, contest the extensive evidentiary record Plaintiffs have presented in support of their motion for preliminary injunction on their warrantless arrest claims. Defendants do not dispute that it is unlawful to conduct warrantless immigration arrests under 8 U.S.C. § 1357(a) and 8 C.F.R. § 287.8(c)(2) absent probable cause that the subject *both* is in the country unlawfully *and* is likely to escape without a warrant. Nor do Defendants dispute that dozens of the arrest narratives for warrantless arrests they executed contain no escape risk analysis whatsoever (and that many others rely on transparently boilerplate language). And Defendants entirely ignore that numerous DHS witnesses, testifying under oath, acknowledged and sanctioned warrantless arrests on the basis of removability alone and without any escape risk analysis.

Unable to confront the record of an ongoing, unlawful warrantless arrest practice, Defendants instead make three main arguments, none of which withstands scrutiny. First, Defendants reprise their argument that Plaintiffs have alleged only past isolated incidents of misconduct and therefore lack standing for forward-looking relief. But the unrefuted evidence shows that these incidents are part of Defendants' *ongoing* mass deportation campaign, and that Plaintiffs' members, many of whom are Latino and work low-wage jobs and live in working class neighborhoods, face a substantial risk of arrest or re-arrest as the targets of Defendants' illegal warrantless arrest policy. Second, Defendants argue that the issuance of the ICE Lyons Memo proves that no unlawful policy exists. That is nonsense. The Lyons Memo, read *together* with the ample record evidence in this case establishing that Defendants are not undertaking meaningful escape risk analyses, reinforces the message that officers are free to disregard longstanding, judicially-recognized factors bearing on individuals' likelihood of escape. Third, Defendants attack the scope of the relief Plaintiffs request as improper. But the relief Plaintiffs seek is routine, nearly identical to the relief granted by four other district courts across the country enjoining the same unlawful practice, and is narrowly tailored to prevent the ongoing, irreparable harm

Defendants' practice inflicts. Because the harm will continue absent judicial intervention, this Court should grant Plaintiffs' motion.[1]

## II. ARGUMENT

### A. <u>Defendants do not meaningfully dispute Plaintiffs' standing</u>

Defendants contend that organizational members lack standing because Plaintiffs have shown only isolated past incidents of harm and have provided no evidence of the risk of future harm. ECF 582 at 4. But this contention is belied by the extensive factual record—which is even more developed now than when this Court and the Ninth Circuit found that Plaintiffs had standing as to their Fourth Amendment claims. *See Vasquez Perdomo v. Noem*, 148 F.4th 656, 676 (9th Cir. 2025); *Vasquez Perdomo v. Noem*, 790 F. Supp. 3d 850, 875 (C.D. Cal. 2025).

To establish standing, Plaintiffs need only show that their organizational members face a substantial risk of harm under an officially-sanctioned practice that targets them. *See Melendres v. Arpaio*, 695 F.3d 990, 998 (9th Cir. 2012). Plaintiffs' opening brief and supporting evidence meet this standard, and establish that Defendants have a policy of making warrantless arrests without a determination of probable cause of escape risk *and* that Plaintiffs' members are the targets of this unlawful policy. *See* ECF 539-8[2] at 7 (citing to 14 declarations of putative class members subject to warrantless arrests where officers failed to inquire into their community ties or likelihood of escape and 12 arrest narratives confirming no such inquiry was conducted); *id*. at 6 & n. 11 (explaining that 41 arrest narratives, including all arrest narratives for ICE provided by Defendants, contained no escape risk analysis); *id*. at 9–10 (discussing warrantless arrests of organizational plaintiff members); *see also* ECF 529-74 [Fourth Melendrez Decl.], ¶ 15 (discussing warrantless arrest of additional CLEAN member "Joaquín"). This documentary evidence is corroborated by deposition testimony from Defendants' own personnel. *See* ECF 539-

---

[1] Plaintiffs disapprove of Defendants' use of "illegals" in their opposition brief, which is dehumanizing and does not appear anywhere in federal law.

[2] Plaintiffs originally filed their Motion for Preliminary Injunction on warrantless arrests at ECF 529. Plaintiffs subsequently filed an errata with an updated Motion. ECF 539-8. Plaintiffs cite to the docket numbers for the updated Motion throughout this Reply. The updated Motion at ECF 539-8 had only one word changed from the original version at ECF 529.

8 at 6 (citing Ex. 2, [SDDO C.C. Dep.] at 254:5–10) (ICE supervisor asserting that "the self-admission of alienage [i]s sufficient to justify [a warrantless] arrest"), *id*. at 8 (citing Ex. 5, [ICE 30(b)(6) Dep.] at 162:20–166:25) (Field Office Director testifying that warrantless arrests conducted without escape risk analyses were "absolutely" consistent with agency policy).

Defendants do not meaningfully address any of this evidence. They proffer eight exhibits, none of which suggests that officers engage in an individualized escape risk determination before conducting a warrantless arrest, or otherwise contradicts Plaintiffs' evidence of a policy and practice.[3] Unable to refute Plaintiffs' evidence, Defendants argue that the fact that Plaintiffs provided evidence of only one rearrest suggests that Plaintiffs lack standing. ECF 582 at 7. That is incorrect. *See* ECF 539-8 at 7 (citing other evidence that Defendants are arresting those already in proceedings). It is also not the standard. Plaintiffs are not required to show that any Plaintiff or putative class member has been rearrested to maintain standing for forward-looking relief. *See Melendres*, 695 F.3d at 1002. Plaintiffs need only show that at least one of their members faces a realistic threat that they will be subject to an unlawful warrantless arrest in the future, which Plaintiffs have shown. *See supra* at 2.

Defendants also ignore that four other federal courts across the country recently have held that similarly-situated plaintiffs have standing to challenge Defendants' warrantless arrest practices, including on a less developed record than exists here. *See M-J-M-A- v. Hermosillo*, 822 F. Supp. 3d 1147 (D. Or. 2026); *Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209 (D. Colo. 2025); *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1 (D.D.C. 2025); *United Farm*

[3] The only evidence Defendants submit that even attempts to rebut Plaintiffs' evidence relates to the rearrest of Isaac Villegas Molina. *See* ECF 582 at 6–7. As an initial matter, this motion is brought on behalf of the organizational Plaintiffs, not Plaintiff Villegas Molina. Further, the I-200 warrant Defendants proffer for Mr. Molina's rearrest does not prove that Mr. Molina was rearrested pursuant to a warrant. The I-200 warrant is dated the same day as Mr. Molina's rearrest, April 16, 2026, and may well have been issued *after* Mr. Molina's rearrest as part of the standard paperwork for an arrest. *See* ECF 582-4. Indeed, the I-213 Defendants submit seem to suggest this is the case. *See* ECF 582-5 (mentioning I-200 only at the end under "Case Disposition"). This appears consistent with Defendants' practice for street encounters, as Defendants have acknowledged that they "don't have an I200" warrant for "all" of their street encounters. ECF 539-8 at 2 n.3 (citing Ex. 3 [agents' text chain] at GOV-7606–07).

*Workers v. Noem*, 785 F. Supp. 3d 672, 735 (E.D. Cal. 2025). For example, the *United Farm Workers* court found the existence of an unlawful warrantless arrest practice based on evidence of eleven arrests. 785 F. Supp. 3d at 725, 735; *see also Ramirez Ovando*, 810 F. Supp. 3d at 1224 (finding warrantless arrest practice based on declarations regarding eight arrests and attorney testimony).[4]

Defendants again rely on *Los Angeles v. Lyons*, 461 U.S. 95 (1983), to argue that Plaintiffs lack standing; this effort again falls flat. As this Court and the Ninth Circuit already have held as to Plaintiffs' Fourth Amendment claims, this case is wholly unlike *Lyons*. *See Vasquez Perdomo*, 148 F.4th at 676; *Vasquez Perdomo*, 790 F. Supp. 3d at 887. This same reasoning applies to Plaintiffs' warrantless arrest claims. Whereas the *Lyons* Court found no "evidence showing a pattern of police behavior that would indicate [] [an] official policy," here, as explained in Plaintiffs' opening motion, Plaintiffs have produced ample evidence showing a "realistic[] threat" of future injury arising from a sanctioned practice of warrantless arrests across the Central District. *Lyons*, 461 U.S. at 106 n. 7, 110 n. 9; *see supra* at 2. Plaintiffs here also cannot escape future injury by avoiding unlawful activity, unlike in *Lyons*. *See Vasquez Perdomo*, 148 F.4th at 675. Organizational Plaintiffs' members and putative class members have been arrested while going about their daily lives, such as a CHIRLA member who was arrested without a warrant while selling tamales in a strip mall parking lot, *see* ECF 529-73 [Sixth Salas Decl.], ¶ 20; CLEAN members Gildardo and "Joaquín," who were arrested without a warrant while washing cars, *see* ECF 529-74 [Fourth Melendrez Decl.], ¶¶ 14–15; named Plaintiffs Vasquez Perdomo, Osorto, and Molina, who were arrested without a warrant while waiting at a public bus stop, *see* ECF 539-1,[5]

---

[4] Even Defendants acknowledge that the one court that failed to enjoin Defendants' warrantless arrest practices still found Defendants are engaging in an illegal warrantless arrest practice. *See Hussen v. Noem*, 822 F. Supp. 3d 944, 998 (D. Minn. 2026). The *Hussen* court determined that the Minnesota plaintiffs lacked standing because they could not show that they were *subject to* Defendants' unlawful policy. *Id*. at 999. Here, as explained *supra* at 2, Plaintiffs have provided evidence both that Defendants have an unlawful policy *and* that Plaintiffs are subject to that policy. *See Escobar Molina*, 811 F. Supp. 3d at 33.

[5] This exhibit was originally filed as ECF 529-8. An errata to this exhibit was filed at 539-1.

ECF 539-2,[6] ECF 529-10; and M.L.S. and A.T., putative class members who are lawfully present and who were arrested without a warrant while working, *see* ECF 529-70 [M.L.S. Decl.], ECF 529-71 [A.T. Form I-44]. Moreover, Lyons faced a realistic threat of harm only if he committed another traffic violation, was stopped for that violation, and illegally resisted arrest or detention, whereas here Plaintiffs are being grabbed off the street and arrested with no warning. The harm here is far more direct than the harm in *Lyons*.

Defendants' reliance on *Clapper v. Amnesty International*, 568 U.S. 398 (2013), fares no better. There, plaintiffs did not suffer past injury and had no actual knowledge of the government's practices; here, in contrast, Plaintiffs have put forth evidence that organizational members have suffered a past injury and remain subject to imminent harm based on Defendants' warrantless arrest practices. *See* ECF 539-8 at 9–10. Plaintiffs here are not "inflicting harm on themselves based on their fears of hypothetical future harm," *Clapper*, 568 U.S. at 416; rather, Plaintiffs' actions to "mitigate or avoid [] harm" are justified because they face a "substantial risk" of being swept up by Defendants' systematic policy and practice. *Id*. at 414 n.5.

Defendants' heavy reliance on Justice Kavanaugh's solo concurrence to the Supreme Court's unreasoned stay also does not salvage their standing arguments. "[A] concurrence by a single justice does not make precedent." *United States v. Hansen*, 40 F.4th 1049, 1057 (9th Cir. 2022) (Gould, J., concurring). Indeed, Defendants' argument that the Supreme Court's unreasoned stay precludes issuance of a preliminary injunction for their warrantless arrest claims is nonsensical. *See* ECF 582 at 8. First, as this Court has already explained, because the nonprecedential order "did not set forth the basis for granting the stay," it "would be patently inappropriate for this Court to speculate as to the Supreme Court's reasoning and then attempt to apply it." ECF 220 at 6. Second, the Supreme Court stayed a different claim—Plaintiffs' suspicionless stops claim—on a different record. The Supreme Court has never considered Plaintiffs' warrantless arrest claims that are now before this Court.[7]

---

[6] This exhibit was originally filed as ECF 529-9. An errata to this exhibit was filed at 539-2.

[7] Defendants' assertion that individual member participation is required for their warrantless arrest claims is wrong. As the Ninth Circuit already has held in this case, "[b]ecause plaintiffs allege an

**B. Defendants' warrantless arrest policy is a final agency action**

Contrary to Defendants' claims, Defendants' policy of making warrantless immigration arrests without determining that there is probable cause of likelihood to escape is a final agency action. *See* ECF 485 (Second Amended Complaint "2AC"), ¶ 271. The Administrative Procedure Act (APA) directs courts to "hold unlawful and set aside" final agency actions that are (1) arbitrary, capricious, or contrary to law or (2) in excess of statutory authority. *See* 5 U.S.C. § 706(2)(A), (C). For an agency action to be "final," it must be an action that "marks the consummation of the agency's decisionmaking process and . . . one by which rights or obligations have been determined, or from which legal consequences will flow." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 808 (2024) (citation omitted). "An agency's policy, pattern, or practice may be considered when determining whether its conduct amounts to final agency action." *M-J-M-A*, 822 F. Supp. 3d at 1177 (citing *Ecology Ctr., Inc. v. U.S. Forest Serv.*, 192 F.3d 922, 924–25 (9th Cir. 1999)). And courts repeatedly have held that an agency policy of effecting warrantless immigration arrests under § 1357(a)(2) constitutes a final agency action. *See Ramirez Ovando*, 810 F. Supp. 3d at 1235 (collecting cases).

Here, Defendants' warrantless arrest policy is not "merely tentative or interlocutory," *Bennett v. Spear*, 520 U.S. 154, 178 (1997); Defendants already have executed numerous arrests pursuant to this policy, and continue to do so. The policy reflects the consummation of Defendants' decision-making process as to how to conduct warrantless immigration arrests in the District in pursuit of the federal government's goal of mass immigration arrests and deportations. *See* ECF 539-8 at 5 (citing e-mail instructing field offices that "***[a]nyone*** who is found amenable to removal needs to be arrested") (emphasis added).[8] The policy is determinative of whether an

ongoing pattern" and "seek only prospective injunctive relief (not damages), individual participation is not necessary for effective relief." *Vasquez Perdomo*, 148 F.4th at 677 (citing *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001)). Defendants' citation to the out-of-circuit case *United States v. Reyes*, 963 F.3d 482, 488 (5th Cir. 2020)—which does not address organizational plaintiff standing (or standing at all)—does not demonstrate otherwise.

[8] Contrary to Defendants' assertions, Plaintiffs did not take this statement out of context. ECF 582 at 9 n.2. Indeed, the Acting Associate ICE Director's full statement that "[a]ll collateral encounters need to be interviewed and anyone who is found to be amendable to removal needs to

individual will be arrested or detained without the requisite escape risk analysis. Legal consequences flow from that policy, resulting in a violation of individual rights. *See Ramirez Ovando*, 810 F. Supp 3d. at 1237.[9]

**C. <u>Defendants do not meaningfully dispute that they have an ongoing policy and practice of conducting warrantless arrests without conducting the requisite escape risk analysis</u>**

Defendants admit that they regularly perform non-targeted warrantless immigration arrests. And they provide no evidence to rebut the extensive record, including deposition testimony, showing that these warrantless arrests are unlawful. Indeed, Defendants do not contest Plaintiffs' analysis and characterization of *any* of the agency's own arrest narratives[10] regarding 113 warrantless arrests, nearly 80 percent of which did not comply with § 1357(a)(2): The narratives for 41 warrantless arrests contain *zero* discussion of escape risk, and another 48 have only boilerplate copy-paste language regarding "flight risk" that does not comply with a probable cause determination of escape risk. ECF 529-1 [Perry Stone Decl.], ¶¶ 16, 20–27.[11]

---

be arrested" similarly shows that officials sanction a policy and practice of warrantless arrests without an escape risk analysis. The language about "interviewing" is noticeably silent about the entirely separate requirement of evaluating likelihood of escape.

[9] Separate from being unlawful under the APA, Defendants' warrantless arrest policy is also *ultra vires* because Defendants exceed the scope of their statutory authority under 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii). *See* ECF 485, 2AC at ¶ 272. Courts have inherent equitable authority to enjoin violations of federal law by federal officers, including the statutory violations at issue here. *See California v. Trump*, 379 F. Supp. 3d 928, 942 (N.D. Cal. 2019), *aff'd*, 963 F.3d 926 (9th Cir. 2020) (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015)). The case Defendants cite to argue that Plaintiffs cannot bring an *ultra vires* claim, *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 666 (2025), is not to the contrary. There, the Court held that judicial review under an *ultra vires* theory was not available because the plaintiffs failed to allege that agency action was entirely in excess of the agency's delegated powers and contrary to a specific statutory provision. Not so here.

[10] Defendants cite to *Summers v. Earth Island Institute*, 555 U.S. 488, 497 (2009), to argue that Plaintiffs improperly rely on "statistical probabilit[ies]" in relying on these arrest narratives. ECF 582 at 7. Not so. Unlike in *Summers*, Plaintiffs do not contend that some unknown number of unidentified class members face harm based on a purported intention to visit an unidentified location in the future; Plaintiffs have made "specific allegations establishing that at least one identified member ha[s] suffered" harm and will suffer future harm as a result of Defendants' policy. *Summers*, 555 U.S. at 498.

[11] Defendants' contention that Plaintiffs "cherry-picked" narratives, ECF 582 at 9, is wrong. Plaintiffs analyzed the full population of narratives that *Defendants* themselves produced in the

Defendants claim that because 72 of the 113 narratives include "some discussion of 'flight risk,'" Plaintiffs cannot show statutory noncompliance. First, Defendants ignore that *zero* ICE arrest narratives contain any escape risk analysis. ECF 539-8 at 6 n.11; ECF 529-1 [Perry Stone Decl.], ¶ 29 (all narratives from ICE arrests Defendants produced contain no escape risk analysis); ECF 529-32, -33, -34, -38, -39, -40, -41, -42 (8 additional Form I-213s and EARM report from ICE arrests showing no escape risk analysis).

Second, given their use of boilerplate language, 48 of those 72 Border Patrol arrest narratives strongly suggest that Border Patrol conducted no escape risk analysis before the arrest. Indeed, another court recently found, when enjoining Defendants' warrantless arrest policy in Oregon, that the presence of "copy and paste language" such as that present here suggests that officers "fail[ed] to meaningfully question individuals or document facts known to the officers at the time of arrest that could establish probable cause of detainees' likelihood of escape." *M-J-M-A*, 822 F. Supp. 3d at 1178. The *M-J-M-A* court found that, instead, officers would add general, non-specific information to the narratives "or information obtained *after* the time of arrest." *Id.*; *see also* ECF 539-8 at 6–7 (narratives discussing escape risk contradicted by available body camera video).

Defendants cite to *Kohli v. Gonzales*, 473 F.3d 1061, 1068 (9th Cir. 2007), to argue that the lack of documentation of the escape risk analysis for warrantless arrests is irrelevant to whether they have an unlawful policy because the Court should "presum[e] regularity for these documented arrests." ECF 582 at 13. Defendants admit that agency policy requires them to document all likelihood of escape factors, but nonetheless argue that the Court should merely *assume* that agents are actually conducting an escape risk analysis even when no such analysis appears in arrest narratives. The law does not support such a conclusion. *Kohli* holds that "[i]n the absence of clear evidence to the contrary, courts presume that public officers properly discharge their duties." *Kohli*, 473 F.3d at 1068 (citation omitted). But here, there is ample

course of discovery in this case. ECF 529-1 [Perry Stone Decl.], ¶ 6–9. To be clear, Plaintiffs have obtained numerous additional arrest narratives outside of discovery, not included in the analysis, which also show that no escape risk analysis was conducted. *See, e.g.*, ECF 539-8 at 5.

"clear evidence" to the contrary. Defendants' personnel testified under oath about their policy and practice. *No* ICE arrest narratives contain an escape risk analysis, and a majority of Border Patrol narratives lack any escape risk analysis or contain a legally insufficient escape risk analysis. The Court therefore cannot presume that Defendants are properly discharging their duties under these circumstances—especially when Defendants neither dispute the veracity of Plaintiffs' evidence, nor come forward with evidence to the contrary indicating that agents or officers are making legally sufficient escape risk determinations but merely failing to document them.[12]

Defendants further argue that the Court cannot infer an unlawful unwritten policy because the Lyons Memo, which addresses ICE's warrantless arrests, is legally compliant. ECF 582 at 11. That argument fails. First, even assuming that the Lyons Memo's guidance complied with § 1357(a)(2), which it does not, it is well established that courts can enjoin an unlawful unwritten policy regardless of any official, written policy. *See, e.g., Hoye v. City of Oakland*, 653 F.3d 835, 856 (9th Cir. 2011) (holding that although written policy was constitutional, unwritten practice of enforcing the written policy was unconstitutional). Even *Hussen v. Noem*, on which Defendants rely, found that "the Lyons Memo does little" to change the court's conclusion that Defendants are engaged in an unlawful warrantless arrest policy because "officers have not followed" its definition of a likelihood to escape. 822 F. Supp. 3d at 998.

In any event, the Lyons Memo's guidance is *not* legally sufficient and, in fact, further demonstrates that Defendants have an officially sanctioned practice of conducting warrantless arrests without a legally sufficient escape risk analysis. First, the Lyons Memo's new definition of "likely to escape"—whether the individual "is unlikely to be located at the scene of the encounter or another clearly identifiable location once an administrative warrant is obtained", ECF 582-3 [Lyons Memo] at 3—is a departure from § 1357(a)(2)'s statutory text, the plain meaning of

[12] Defendants' reliance on the "presumption of regularity" to argue that the Court should disregard statements by top officials endorsing the unlawful policy and practice, ECF 582 at 9, is similarly contradicted by clear evidence to the contrary in the factual record. *See supra* at 2; *see also Escobar Molina*, 811 F. Supp. 3d at 33 (pointing to statements by top officials that further demonstrate the policy and practice). Additionally, as in *Escobar Molina,* "Defendants' public statements are *corroborated* by on-the-ground examples" and declarations showing an unlawful policy and practice. *Id.* at 47.

"escape," and courts' long-held interpretation of the provision. As the *Escobar Molina v. U.S. Dep't of Homeland Security* Court recently explained:

> "[D]ictionary and statutory definitions of 'escape' in this context focus instead on whether an individual will attempt to avoid legal proceedings or evade the administration of justice. Black's Law Dictionary, for example, has defined 'escape,' among other things, as '[t]he voluntary departure from lawful custody by a prisoner with the intent to evade the due course of justice.' . . . Merriam-Webster's Dictionary of Law similarly defines escape to mean 'depart[ing] from lawful custody with the intent of avoiding confinement or the administration of justice.'…The dictionary definitions of 'escape' to mean the evasion of legal processes is confirmed in the criminal context under Title 18 of the United States Code, which in multiple places refer to 'escape' in some form as avoiding 'any process issued under the laws of the United States by any court, judge, or magistrate judge.' 18 U.S.C. § 751; *see also id.* §§ 752, 755."
>
> 2026 WL 1256234, at *10 n.11 (D.D.C. May 7, 2026) (citations omitted).

The Lyons Memo's definition of escape, therefore, is inconsistent with the longstanding definition of escape, which courts have interpreted to mean an individual's likelihood of *evading* law enforcement. *See Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1006 (N.D. Ill. 2016) ("[B]ased upon the plain meaning of the words, the statutory context in which the phrase appears, and the cases that have applied it, it is clear that 'likely to escape' means 'likely to evade detention by immigration officers.'" (citation omitted)); *Araujo v. United States*, 301 F. Supp. 2d 1095, 1102 (N.D. Cal. 2004).

Even assuming the Lyons Memo's proposed definition of "likely to escape" was compliant with the requirements of § 1357—and, again, it is not—the Lyons Memo undermines the second portion of its definition (whether the individual is unlikely to be located at "another clearly identifiable location") by repeatedly, and incorrectly, framing the escape inquiry as relating to whether the person would remain at the scene of an encounter. The Memo suggests, for example, that a person who is encountered in a vehicle stop should be considered an escape risk by virtue of having the "ability and means to promptly depart the scene." ECF 582-3 [Lyons Memo] at 3. The Memo itself thus does not properly convey an accurate definition of escape to officers. *See Ramirez Ovando v. Noem*, No. 1:25-CV-03183 (D. Colo. May 12, 2026), Dkt. No. 112 at 38, (explaining that the Lyons Memo "as a whole" focuses only on "whether the individual will indefinitely remain in the place they were initially encountered"); *see also* ECF 582-3 [Lyons

Memo] at 5 (asserting that "the likelihood-of-escape analysis is narrowly focused on determining whether the person is likely to escape before the officer can practically obtain an administrative warrant, *while in the field*").

Contrary to Defendants' contention, Plaintiffs do not dictate mandatory factors that officers and agents must consider in their escape risk analysis.[13] Plaintiffs agree that officers and agents must consider the totality of the circumstances when conducting a probable cause escape risk analysis. In fact, the relief Plaintiffs seek requires Defendants to "consider the totality of the circumstances known to the agent or officer before making the arrest." ECF 529-86 at 15 [Proposed Order]. But the Lyons Memo suggests that officers should *not* actually conduct a totality of the circumstances analysis, instructing officers that they categorically should *not* consider long-recognized factors such as "whether an [individual] is likely to attend future immigration court hearings, appear before ERO as directed, surrender for removal, and comply with other immigration obligations." ECF 582-3 [Lyons Memo] at 4. These factors touch directly on the assessment of whether agents will be able to locate the individual once an administrative warrant is obtained. *See Escobar Molina*, 2026 WL 1256234, at *10 n.11 (a "demonstrated [] willingness to comply with legal processes" makes an individual "less likely to be at risk of evading the administration of justice"). The Lyons Memo also fails to instruct federal agents about considering mitigating factors that would suggest the individual is *not* likely to escape, including an individual's community ties.[14] But "[a]n individual's community ties . . . are relevant to the escape risk determination" because someone who "has resided in the country for a lengthy period of time and has strong community ties," such as long-term employment, a family, or a

---

[13] Determining whether an individual is an escape risk based on removability alone is inconsistent with binding precedent. *See Mountain High Knitting, Inc. v. Reno*, 51 F.3d 216 (9th Cir. 1995); *see also Escobar Molina*, 811 F.Supp.3d at 32 ("Conflating unlawful status and escape risk 'is contrary to the statute itself, which requires that [INS] must have reasonable belief both that the [individual] is in the country illegally and [ ] likely to escape before a warrant can be obtained." (citing *United States v. Harrison*, 168 F.3d 483 (4th Cir. 1999)).

[14] Defendants incorrectly argue that the Lyons Memo states that ties to the community can be relevant. ECF 582 at 12; *but see* ECF 582-3 (Lyons Memo) (no mention of "community ties"); *Escobar Molina*, 2026 WL 1256234, at *13 ("The Lyons Memo[] fail[s] to address the impact of community ties on escape risk.").

home, is more likely to remain in the District. *Id.* at *12 (citation omitted); *see also A.B.D. v. Wamsley*, No. 25-cv-02014, 2026 WL 178306, at *12 (D. Or. Jan. 22, 2026) (holding that community ties are relevant to assessing escape risk); *Ramirez Ovando*, 810 F. Supp. 3d at 1216–17 (same). The Lyons Memo thus instructs officers to bypass § 1357(a)'s requirements, and sanctions the practice of warrantless arrests without a meaningful determination of escape risk.[15]

**D. Defendants fail to rebut Plaintiffs' evidence of irreparable harm**

Defendants do not refute Plaintiffs' extensive factual record demonstrating that they face a "real possibility" they will be unlawfully arrested or rearrested. *Melendres*, 695 F.3d at 1002; *see* ECF 539-8 at 8–10.

Defendants argue that Plaintiffs are not suffering irreparable harm because, Defendants baldly assert, Operation at Large ("OAL") "officially demobilized" in February 2026. *See* ECF 582 at 2, 14. In support of this argument, Defendants cite to two declarations from U.S. Border Patrol officials, the Acting Chief Patrol Agent of the El Centro Sector and the Deputy Assistant Director of the Border Security Division in Los Angeles's Office of Field Operations. *See* ECF 582-1 ["Parra Decl."]; 582-02 ["Larios Decl."]. But this is all beside the point: Neither declaration negates the record evidence showing a pattern of unlawful warrantless arrests *after* the purported "demobilization" of OAL. *See* ECF 539-8 at 5 (citing Exs. 33-36, I-213 Forms from after January 2026 containing no escape risk analysis); 529-28, 529-57, 529-58, 529-59, 529-60 (declarations of H.S.H., J.C., G.N.L., E.C.H., and Chapman discussing post-OAL warrantless arrests by ICE and Border Patrol); *cf. Ramirez Ovando,* 810 F.Supp.3d at 1239. In fact, the declarations do the opposite: Declarants admit that "[s]ome USBP agents still conduct Title 8 immigration enforcement in the Central District of California." ECF 582-1 [Parra Decl.] at ¶ 7; *see also* ECF 582-2 [Larios Decl.] at ¶ 5 ("Currently, a detail at the Los Angeles Field Office is

[15] Defendants' attempt to claim that the warrantless arrests of Vasquez Perdomo, Osorto, and Molina at a bus stop in Pasadena were lawful is not credible. Defendants conveniently ignore that although Plaintiffs Vasquez Perdomo and Osorto attempted to leave in response to the sudden, frightening approach of masked men in unmarked cars, Plaintiff Villegas Molina stood still, yet Defendants arrested all three Plaintiffs without a warrant or escape risk analysis.

conducting immigration enforcement operations against targeted individuals").[16] And the declarations are silent as to ICE's current practices. Regardless of how Defendants label their operations, Defendants' unlawful warrantless arrest policy remains ongoing. ECF 539-8 at 8 (ICE teams have grown and continue to make "collateral" arrests), 18; Ex. 79 [SDDO C.C. Dep.] at 95:25–96:13 (estimates 4 out of 10-15 arrests his team makes a week are collateral); Ex. 80 [DO E.O. Dep.] at 55:24–56:23 (teams in sub-office recently have doubled); ECF 539-3 [DO E.O. Dep.] at 175:2–176:1 (testifying that while operation names change, underlying practices remain the same).

Even if Defendants had voluntarily ceased their unlawful warrantless arrest policy—a proposition that is belied by the record—Plaintiffs still face the prospect of irreparable harm. The Supreme Court has held that "[a] defendant's voluntary cessation of a challenged practice ordinarily does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 170–71 (2000); *see also MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 295 (2023). Only "if subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur" may a case become moot by a defendant's voluntary conduct. *Friends of the Earth*, 528 U.S. at 170 (citing *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199 (1968)).

Defendants cannot meet this high burden here. Officials with authority over the policy have announced that more "[m]ass deportations are coming,"[17] even as Defendants continue to conduct collateral warrantless arrests without determining that there is probable cause of escape risk. *See* ECF 539-8 at 8. Just this past month, Defendants doubled their daily arrest numbers in

---

[16] As Plaintiffs explained in their opening brief, Defendants' contention that they are conducting "targeted" operations strains credulity. Defendants consistently use "targeted" operations as pretext for stopping whomever they want—so-called "collaterals"—in the vicinity of the targeted individual's home or workplace. *See* ECF 539-8 at 3–4.

[17] Ximena Bustillo, *Border czar promises 'mass deportations are coming' to fulfill Trump's promises*, NPR (May 7, 2026), https://www.mainepublic.org/npr-news/2026-05-07/border-czar-promises-mass-deportations-are-coming-to-fulfill-trumps-promises.

an attempt to meet the federal government's "pledge of mass deportations."[18] Moreover, Defendants' insistence that their current illegal practices comply with the law only reinforces that any voluntary cessation (if factually accurate) would not moot this case. *See, e.g., M-J-M-A*, 822 F. Supp. 3d at 1182 (alleged cessation of unlawful arrest practices did not moot the case where "[t]he Court has no confidence that [defendants] will cease the unlawful practices, even, if not especially, when they insist with a straight face they are complying with the law"). Organizational members thus face an imminent risk of harm, regardless of any perceived voluntary cessation of Defendants' unlawful policy, as Defendants could merely resume implementation of their policy at any time.

In the absence of any evidence that Plaintiffs do not face irreparable harm, Defendants argue that the fact that Plaintiffs did not move for preliminary relief on their warrantless arrest claims sooner proves that they are not experiencing irreparable harm. ECF 582 at 14. But Plaintiffs have moved as expeditiously as possible to develop the record that is currently before the Court.[19] Under these circumstances, delay "is not particularly probative in the context of ongoing [] injuries." *Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014). And the Ninth Circuit has made clear that "delay by itself is not a determinative factor in whether [to] grant interim relief." *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) (citation modified). As long as Plaintiffs show that they face a real threat of future harm, as they have, Plaintiffs are entitled to the preliminary relief they have requested.[20]

---

[18] Hamed Aleaziz, *Immigrant Arrests Surge to 10,000 in 5 Days as ICE Clamps Down*, N.Y. Times (July 1, 2026), https://www.nytimes.com/2026/07/01/us/politics/ice-immigrant-arrests-surge.html.

[19] Plaintiffs have diligently pursued the discovery necessary to support their claims for relief, but Defendants have repeatedly failed to comply with their discovery obligations and produce the information they are required to provide, forcing Plaintiffs to file numerous motions with the Court. *See* ECF 370; ECF 603.

[20] The case Defendants cite, *Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015), is inapposite. There, the court found no irreparable injury in large part because there was a "mismatch between [plaintiff's] [] claim and the dangers she hope[d] to remedy through an injunction" and the harm was "too attenuated". *Id.* at 744, 746. Not so here.

**E. <u>The balance of equities and public interest strongly favor Plaintiffs</u>**

None of Defendants' arguments tips the balance of equities and public interest in their favor. Defendants claim that an injunction would hinder their compelling interest in enforcement of this nation's immigration laws. ECF 582 at 15. But the injunction Plaintiffs seek does nothing to undermine Defendants' authority to make lawful immigration arrests. The opposite is true: An injunction would *ensure* that Defendants are complying with the statutory and regulatory framework when enforcing immigration laws, and that "individuals are not deprived of their liberty." *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017); *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983).[21] As other courts that have enjoined this same unlawful warrantless arrest practice around the country have held: "Defendants cannot contend they have any legitimate interest in a practice that systematically violates federal law and individual [statutory] rights." *M-J-M-A*, 822 F. Supp. 3d at 1184; *see also Ramirez Ovando*, 810 F. Supp. 3d. at 1239 (similar). Nor would an injunction "usurp[] authority over enforcement of our Nation's immigration laws," as Defendants contend. ECF 582 at 15. Plaintiffs do not seek to have the judiciary set immigration policy; Plaintiffs ask only that the Court intervene to ensure that the federal immigration laws are enforced *lawfully*.

**F. <u>Plaintiffs' proposed injunction satisfies Rule 65(d)'s specificity requirements</u>**

Finally, Defendants claim that Plaintiffs' proposed injunction is an impermissible "follow the law" injunction because it restates the statutory requirements. ECF 582 at 16. But "'the mere fact that the injunction is framed in language almost identical to the statutory mandate does not make the language vague' so long as 'the statutory terms adequately describe the impermissible conduct.'" *U.S. Sec. & Exch. Comm'n v. Murphy*, 50 F.4th 832, 852 n.9 (9th Cir. 2022) (quoting *United States v. Miller*, 588 F.3d 1256, 1261 (9th Cir. 1978)); *see also McComb v. Jacksonville*

[21] Plaintiffs' interest is not in "'evading the law.'" ECF 582 at 16 (citing *Noem v. Vasquez Perdomo*, 146 S. Ct. 1, *5 (2025)). Plaintiffs' members—both those with and without legal status—have a legitimate and weighty liberty interest in ensuring their statutory rights are not being violated.

*Paper Co.*, 336 U.S. 187, 192 (1949) (upholding an injunction that "[b]y its terms [] enjoined any practices which were violations of [particular] statutory provisions").

Here, the proposed injunction complies with Federal Rule of Civil Procedure 65(d) by specifying with reasonable detail the particular conduct to be enjoined. *See Coal. on Homelessness v. City & Cnty. of San Francisco*, 2024 WL 3325655, at *1 (9th Cir. July 8, 2024) (upholding injunction and concluding that "[r]equiring the City to comply with its own detailed policy document does not" make it an "obey the law" injunction). Defendants cannot credibly contend that if the Court enters Plaintiffs' requested injunction, Defendants would be unable to identify and comply with its mandate.

Defendants also fail to recognize that the first provision in the injunction must be considered in the context of the remaining relief, which as a whole provides Defendants with fair notice of what conduct is prohibited. *See Melendres v. Skinner*, 113 F.4th 1126, 1138-40 (9th Cir. 2024) (upholding injunction that gave defendant "specific directives with which to comply," and finding the injunction was "not so vague that the [defendant could not] understand what is required of him"). Contrary to Defendants' contention, the remaining relief does not prescribe which factors Defendants must consider in making a likelihood of escape analysis; instead, it specifically defines what conduct is prohibited (relying on unlawful presence alone), what conduct is permitted (consideration of ties), as well as what conduct is required (conducting a totality of the circumstances analysis) to comply with the law.

Defendants' argument that the injunction imposes unreasonable reporting requirements that will result in judicial micromanagement is similarly unavailing. ECF 582 at 16. Documentation requirements to ensure compliance are standard in cases like this. *See, e.g., Thomas v. Cnty. of Los Angeles*, 978 F.2d 504, 510 (9th Cir. 1992), *as amended* (Feb. 12, 1993) (reporting requirements were "proper exercise of the district court's discretion" to ensure compliance); *Unknown Parties v. Johnson*, 2016 WL 8188563 (D. Ariz. Jan. 3, 2017) (granting preliminary injunction requiring quarterly production of Border Patrol data related to injunction's terms). Indeed, all four courts that recently have enjoined Defendants' unlawful warrantless arrest policies in different districts issued similar reporting requirements. *See M-J-M-A*, 822 F. Supp. 3d

at 1184; *Escobar Molina*, 811 F. Supp. 3d at 63; *Ramirez Ovando,* 810 F. Supp. 3d at 1241; *United Farm Workers*, 785 F. Supp. 3d at 742.

These requirements are not unduly burdensome particularly in light of Defendants' concession that their policy and training *already* require them to document the facts and circumstances surrounding warrantless civil immigration arrests. ECF 582 at 6, 13; *see also Escobar Molina*, 811 F. Supp. 3d at 52 ("Since officers are already required to fill out a form to 'describe the basis for the civil immigration arrest,' . . . the operational consequences of reporting the probable cause reasons for such an arrest appear to be minimal." (citation omitted)).[22] Nor will these requirements result in judicial micromanagement. *See id*. at 53 (holding that revised relief that enjoined defendants from "enforcing their policy" "[r]ather than enjoining the warrantless arrests themselves" "avoid[ed] the prospect of contempt proceedings for individual erroneous arrests" (citation modified)).[23]

[22] Defendants' argument that it would be unduly burdensome to document encounters where officers decide not to proceed with a warrantless arrest because an individual does not pose an escape risk conflicts with Defendants' assertion that they are already complying with § 1357(a)(2). *See* ECF 539-3 [DO E.O. Dep.] at 323:25–324:13 (officer testifying that this situation has never occurred). If, as Defendants presume, they are already complying with § 1357(a)(2), an injunction imposing this reporting requirement would impose no burden at all, because the reportable event simply would never occur. Because Defendants are in fact violating the law, the minor burden this requirement imposes is justified as necessary to verify compliance with the injunction. Absent a record of encounters where Defendants determine an individual is not an escape risk, there is no other effective way to verify that Defendants are conducting the individualized analysis § 1357(a)(2) requires, rather than defaulting to warrantless arrests as a matter of course.

[23] As explained in Plaintiffs' class certification reply brief, 8 U.S.C. § 1252(f)(1) does not bar relief here. *See* ECF 608 at 2–5. On its face, the jurisdiction-stripping provision of §1252(f)(1) does not apply to 8 U.S.C. § 1357. *See Gonzalez v. Dep't of Homeland Sec.*, 508 F.3d 1227, 1232-33 (9th Cir. 2007). Nor does the fact that the injunction may have some "collateral consequence[s]" on provisions covered by § 1252(f)(1)'s jurisdiction-stripping provision bar classwide relief here. *Id*. at 1233. The cases Defendants cite, *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022) and *N.S. v. Dixon*, 141 F.4th 279, 284, 288–89 (D.C. Cir. 2025)—neither of which enjoined a challenged practice governed *exclusively* by § 1357—do not hold otherwise. Further, § 1252(f)(1) applies only to injunctive relief, and would not bar a stay under 5 U.S.C. § 705.

## III. CONCLUSION

For the reasons stated above and in Plaintiffs' moving papers, the Court should grant Plaintiffs' motion for preliminary injunction and enter the proposed order for District-wide relief, or, in the alternative, issue a stay of Defendants' policy under 5 U.S.C. § 705.

DATED: July 23, 2026

ACLU OF SOUTHERN CALIFORNIA

By: *_/s/ Mohammad Tajsar_*
MOHAMMAD TAJSAR
*Counsel for Stop/Arrest Plaintiffs*

DATED: July 23, 2026

UC IRVINE IMMIGRANT AND RACIAL JUSTICE SOLIDARITY CLINIC

By: *_/s/ Anne Lai_*
ANNE LAI
*Counsel for Stop/Arrest Plaintiffs*

DATED: July 23, 2026

MUNGER, TOLLES & OLSON LLP

By: *_/s/ Jacob S. Kreilkamp_*
JACOB S. KREILKAMP
*Counsel for Stop/Arrest Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 23, 2026, I electronically filed the foregoing with the Clerk of the U.S. District Court for the Central District of California using the CM/ECF system, which provided notification of such filing to all registered CM/ECF users, including all adverse parties. L.R. 65-1.

DATED: July 23, 2026 MUNGER, TOLLES & OLSON LLP

By: */s/ Jacob S. Kreilkamp*
JACOB S. KREILKAMP
*Counsel for Stop/Arrest Plaintiffs*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Stop/Arrest Plaintiffs certifies that this brief contains 6,991 words, which complies with the word limit of L.R. 11-6.1.

DATED: July 23, 2026

MUNGER, TOLLES & OLSON LLP

By: */s/ Jacob S. Kreilkamp*
JACOB S. KREILKAMP
*Counsel for Stop/Arrest Plaintiffs*

**ATTESTATION OF FILER**

I attest that the other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized this filing.

DATED: July 23, 2026

MUNGER, TOLLES & OLSON LLP

By: */s/ Jacob S. Kreilkamp*
JACOB S. KREILKAMP
*Counsel for Stop/Arrest Plaintiffs*