# EXHIBIT 24

Sealed Version
Filed Separately

CONFIDENTIAL UNDER PROTECTIVE ORDER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

_____

PEDRO VASQUEZ PERDOMO,                )

et al.,                               )

            vs.                       ) Case No.

KRISTI NOEM, Secretary,               ) 2:25-cv-05605-MEMF-SPX

Department of Homeland                )

Security, et al.,                     )

            Defendants.               )

_____)

        *** CONFIDENTIAL UNDER PROTECTIVE ORDER ***

        VIDEOTAPED DEPOSITION OF J█████ C████████

                Los Angeles, California

                Friday, December 19, 2025

                        Volume I

Stenographically Reported By:

Melissa M. Villagran, RPR, CSR No. 12543

Job No. 7784361

PAGES 1 - 351

                                                Page 1

CONFIDENTIAL UNDER PROTECTIVE ORDER

                              INDEX


DEPONENT                                      EXAMINATION

J██████  C██████████

Volume I

            BY MR. FRY                              20

            BY MR. KIM                             289




                           EXHIBITS

DEPOSITION                                          PAGE

Exhibit 117   Supreme Court document Reply in       114

              Support of Application to Stay

              the Order Issued by the United

              States District Court for the

              Central District of California


Exhibit 118   Declaration of Border Patrol          153

              Agent C217


Exhibit 119   Video                                 188


Exhibit 120   E-mail                                204




                                              Page 11

CONFIDENTIAL UNDER PROTECTIVE ORDER

INDEX (CONTINUED)


                          EXHIBITS

DEPOSITION                                              PAGE

Exhibit 121  E-mail                                      208


Exhibit 122  E-mail and memorandum                      211


Exhibit 123  E-mail and memorandum                      216


Exhibit 124  Memorandum                                 221


Exhibit 125  Video                                      225


Exhibit 126  E-mail and attachment "Operation      238
             San Bernardino"


Exhibit 127  E-mail and attachment "revision       253
             of E████ C██████ R█████"


Exhibit 128  E-mail and attachment "final          253
             revision of Home Depot San
             Bernardino E████ C██████ R████"


                                       Page 12

CONFIDENTIAL UNDER PROTECTIVE ORDER

INDEX (CONTINUED)


                    EXHIBITS

DEPOSITION                                        PAGE

Exhibit 129   E-mail with attachment "final      254

              version with camera serial

              number"


Exhibit 130   US Customs and Border Patrol       278

              Operation at Large document


Exhibit 131   United States Department of         279

              Homeland Security Report of

              Investigation


Exhibit 132   Screen shot of photograph           281


Exhibit 133   Video                               286


Exhibit 134   Operation At Large - Los Angeles    317

              Information Sheet


Exhibit 135   El Centro Sector Muster document    319

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

CONFIDENTIAL UNDER PROTECTIVE ORDER

INDEX (CONTINUED)

EXHIBITS

DEPOSITION                                                    PAGE

Exhibit 136   El Centro Muster document            325

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

CONFIDENTIAL UNDER PROTECTIVE ORDER

You are currently employed by CBP, correct?

A    Yes.

Q    And CBP, just for the record, is Customs and
Border Protection, correct?

A    Yes.                                              09:56:47

Q    When I refer to CBP, that's what I mean.
Okay?

A    (Moves head.)

Q    You need to answer audibly.

A    Yes.                                              09:57:00

Q    Thank you.
What was your start date at CBP?

A    My start date that I got sworn in?
February 8, 2010.

Q    So you started CBP in 2010.                      09:57:13
Can you give me a quick rundown of the jobs
you've held since high school?

A    Yes.

Q    Would you do that?

A    Working in hospitals as a medical                09:57:32
receptionist.

Q    When did you start doing that?

A    When I was 20, 21 years old.

Q    And how long did you do that?

A    Throughout my career, throughout my life.        09:57:52

Page 57

CONFIDENTIAL UNDER PROTECTIVE ORDER

Q   Until?

A   2006, I believe.

Q   Always at the same employer, or did you change employers?

A   Different employer.                          09:58:11

Q   How many different employers did you have as a medical receptionist?

A   I believe four.

Q   Were you terminated from any of those jobs?

A   Yes.                                         09:58:43

Q   How many?

A   Three times.

Q   The first time you were terminated, what was the reason for your termination?

A   For being late.                              09:58:58

Q   Were you repeatedly late to work?

A   No.

Q   Were you late to work one time?

A   Yes.

Q   And you were terminated for being late to       09:59:20
work one time?

A   No.

Q   Why were you terminated?

A   Because there were previous times I arrived
late.                                           09:59:30

Page 58

CONFIDENTIAL UNDER PROTECTIVE ORDER

telephone operator.

Q   Are those all after you stopped being a
medical receptionist?

A   I did not stopping being a medical
receptionist.  I used the same skills in the other      10:02:55
positions.

Q   So let me ask the question a different way.

    What jobs did you hold, if any, between 2006
and when you were sworn in at CBP in 2010?

A   Volunteer work.                                       10:03:13

Q   So you did not hold a paying job between
sometime in 2006 and joining border patrol in 2010?

A   That's correct.

Q   Have you had any education since high school?

A   Yes.                                                  10:03:46

Q   What education have you had since high
school?

A   Junior college.

Q   And where did you do junior college?

A   At Southwestern College.                              10:03:51

Q   How long were you a student at Southwestern
College?

A   Many years.

Q   Like, in the evening?

A   Day and evening.                                      10:04:07

Page 61

CONFIDENTIAL - UNDER PROTECTIVE ORDER

Q   Day and evening.

Did you get a degree?

A   No.

Q   And what sort of courses did you take?

A   English, oral communications, philosophy.   10:04:13

Q   What is your current title and position?

A   United States Border Patrol agent.

Q   And how long have you held that position?

A   When I got sworn in.

Q   So since February of 2010?   10:04:38

A   I don't remember if February 8th or --
possibly February 8th of 2010.

Q   Okay.

Where are you assigned?

A   El Centro Center, Calexico Station.   10:05:00

MR. SKEDZIELEWSKI:  I think before we go down
this road, it might be good to take a break.

MR. FRY:  Sure.

THE VIDEOGRAPHER:  This marks the end of
Media No. 1.  Going off the record at 10:05 a.m.   10:05:15

(Recess.)

THE VIDEOGRAPHER:  This marks the beginning
of Media No. 2.  Going back on the record at
10:18 a.m.

///

Page 62

CONFIDENTIAL - UNDER PROTECTIVE ORDER

BY MR. FRY:

Q   Agent C███████, how long have you been stationed at the Calexico Station?

A   I believe I started there July 2016.

Q   And where were you stationed before Calexico?   10:18:16

A   At the Nogales Station in Arizona, Tucson Sector.

Q   And how long were you stationed at Nogales?

A   Up to the day I transferred.

Q   When did you start in Nogales?   10:18:32

A   I started in Nogales February 2011.

Q   And where were you stationed before Nogales?

A   I wasn't stationed.  I was at the academy.

Q   You were doing your training?

A   I did training.   10:18:59

Q   So in your experience as a -- an agent in the field, you've been at Nogales in Arizona and at Calexico in California, correct?

A   Yes.

Q   Both Nogales and Calexico are right on the   10:19:16
border, correct?

A   Yes.

Q   Until 2025, your work for CBP has been at the border, correct?

MR. SKEDZIELEWSKI:  Objection; form.   10:19:32

Page 63

CONFIDENTIAL - UNDER PROTECTIVE ORDER

THE DEPONENT:  I worked at the checkpoint in addition to working at Nogales -- Nogales checkpoint.

BY MR. FRY:

Q   And the checkpoint is at the border, right?   10:19:43

A   No.

Q   No.

Okay.

Where is the checkpoint located?

A   About 50 miles north of the international   10:19:50 border.

Q   Okay.

So prior to 2025, had you ever conducted operations more than 150 miles from the border?

A   No.   10:20:05

Q   Prior to 2025, had you conducted operations more than 100 miles from the border?

A   No.

Q   Had you conducted operations more than 50 miles from the border, prior to 2025?   10:20:18

A   No.

Q   Okay.

Prior to 2025, had you ever conducted roving patrols in the parking lots of hardware stores?

MR. SKEDZIELEWSKI:  Objection; lacks   10:20:34

Page 64

CONFIDENTIAL - UNDER PROTECTIVE ORDER

or indicators -- let me start that question again.

What you can recall right now are indicators that someone might be unlawfully in this country is if they look nervous, if they are looking left and right, if their hands are shaking, if their voice is shaking when they speak with you, if they only have a driver's license and not other documentation, or if they appear to be seeking employment as a day laborer?

A    Those are some, yes.

Q    Those are the ones you can remember right now?

A    Yes.

Q    And when you would go out to these sites, if you saw someone who fit those indicators, you would interview them?

A    No.

Q    No?

A    I was tasked to look for the individual that was the targeted individual on the slide.

Q    Okay.

And if you didn't see that person, you would interview someone who met these other indicators?

A    Yes.

Q    Okay.

10:58:21

10:58:35

10:58:51

10:58:59

10:59:10

Page 100

And it didn't matter whether the target was there or not?

MR. SKEDZIELEWSKI:  Objection.

You can answer.

THE DEPONENT:  Can you repeat the question.    10:59:27

BY MR. FRY:

Q   It didn't matter whether the target was there or not?

MR. SKEDZIELEWSKI:  Objection.

THE DEPONENT:  No.    10:59:32

BY MR. FRY:

Q   You would interview people if they met the indicators even if the target wasn't present at the Home Depot at all?

A   Yes.    10:59:45

Q   If you wanted to figure out how many of your arrests were of people who had a warrant issued at least the day before you made the arrest, would you be able to figure that out?

A   Can you repeat the question.    11:00:12

Q   Sure.

If you wanted to figure out how many of your arrests during Operation At Large were of people who had a warrant issued at least the day before you arrested them, would you be able to figure that out?    11:00:25

Page 101

BY MR. KIM:

Q   I want to point you to the back page in the first paragraph.  In the middle of paragraph on the fourth line -- strike that.

We can move on from this document.          05:47:09

Are you aware the difference between "provoked" and "unprovoked flight"?

A   No.

Q   Have you heard those terms before, "provoked" and "unprovoked flight"?          05:47:30

A   No.

Q   Are you aware of the difference between a "consensual encounter" versus an "investigative detention"?

A   Can you repeat the question.          05:47:47

Q   Are you aware of the difference between a "consensual encounter" versus an "investigative detention"?

A   Yes.

Q   What has your training taught you as to how          05:47:54
to ensure that a consensual encounter remains consensual?

A   Acknowledgment.

Q   Anything else?

Well, actually, what do you mean by          05:48:11

Page 327

CONFIDENTIAL - UNDER PROTECTIVE ORDER

I, the undersigned, a Certified Shorthand Reporter of the State of California, Registered Professional Reporter, Certified Live Note Reporter, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were duly sworn; that a record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript [  ] was [  ] was not requested.

I further certify I am neither financially interested in the action nor a relative or employee of any attorney or party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name this 22nd day of December, 2025.

MELISSA M. VILLAGRAN

CSR No. 12543 RPR

Page 347

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.