# EXHIBIT 62

Sealed Version
Filed Separately

CONFIDENTIAL - UNDER PROTECTIVE ORDER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PEDRO VASQUEZ PERDOMO, ET AL.,    )
                                  )
                PLAINTIFFS,       )  CASE NO.
                                  )  2:25-cv-05605
          VS.                     )  MEMF-SP
                                  )
KRISTI NOEM, SECRETARY OF         )
HOMELAND SECURITY, ET AL.,        )
                                  )
           DEFENDANTS.            )
_____)

      *** CONFIDENTIAL - UNDER PROTECTIVE ORDER ***

       VIDEOTAPED DEPOSITION OF I█████ F█████████
             WEDNESDAY, DECEMBER 17, 2025

JOB NO.  7784375
REPORTED BY KIMBERLY EDELEN,
CSR. NO. 9042, CRR, RPR.
PAGES 1 - 334

Page 1

CONFIDENTIAL - UNDER PROTECTIVE ORDER

I N D E X

WITNESS                          EXAMINATION                    PAGE

I███████  F██████████

                                 BY MR. NIU                       11
                                 BY MX. WILFONG                   126
                                 BY MR. SKEDZIELEWSKI             322
                                 BY MX. WILFONG                   327


E X H I B I T S

| NO. | PAGE | DESCRIPTION |
|---|---|---|
| EXHIBIT 107 | 92 | OPERATION AT LARGE - LOS ANGELES INFORMATION SHEET, BATES NOS. GOV-00000577 - GOV-00000579 |
| EXHIBIT 108 | 96 | EL CENTRO SECTOR MUSTER, BATES NOS. GOV-00000001 - GOV-00000003 |
| EXHIBIT 109 | 99 | EL CENTRO SECTOR MUSTER, BATES NOS. GOV-00000004 - GOV-00000005 |
| EXHIBIT 110 | 186 | CBP EXECUTIVE SUMMARY, BATES NOS. GOV-00000504 - GOV-00000505 |
| EXHIBIT 111 | 225 | PLAINTIFF CHIRLA'S EXPEDITED REQUESTS FOR PRODUCTION TO DEFENDANTS, SET ONE |

(EXHIBITS CONTINUED ON FOLLOWING PAGE)

Page 5

CONFIDENTIAL - UNDER PROTECTIVE ORDER

E X H I B I T S (CONTINUED)

NO.              PAGE           DESCRIPTION

EXHIBIT 112     257            VIDEO LABELED REDACTED_
                               AXON_BODY_4_VIDEO_
                               2025-08-22_14:12_I.

EXHIBIT 113     265            VIDEO LABELED REDACTED_
                               AXON_BODY_4_ VIDEO_
                               2025-08-22_14:15_
                               M███████████

EXHIBIT 114     282            POWERPOINT TITLED U.S.
                               CUSTOMS AND BORDER
                               PROTECTION, UNITED STATES
                               BORDER PATROL, OPERATION AT
                               LARGE, BATES NOS.
                               GOV-00000451 - GOV-00000458

EXHIBIT 115     301            REPORT OF INVESTIGATION,
                               BATES NOS.
                               GOV-00000459 - GOV-00000473

EXHIBIT 116     314            U.S. DEPARTMENT OF HOMELAND
                               SECURITY, RECORD OF
                               DEPORTABLE/INADMISSIBLE
                               ALIEN


        QUESTIONS INSTRUCTED NOT TO BE ANSWERED
                        PAGE       LINE
                         22         15
                         35          5
                        150         13
                        150         21
                        153          2
                        153          8
                        154         23
(INDEX CONTINUED ON FOLLOWING PAGE)


                                              Page 6

CONFIDENTIAL - UNDER PROTECTIVE ORDER

QUESTIONS INSTRUCTED NOT TO BE ANSWERED

|  PAGE | LINE |
|-------|------|
| 158   | 25   |
| 160   | 12   |
| 160   | 22   |
| 161   | 6    |
| 161   | 15   |
| 167   | 17   |
| 168   | 2    |
| 168   | 10   |
| 182   | 21   |
| 183   | 5    |
| 232   | 24   |
| 233   | 4    |
| 233   | 11   |
| 306   | 10   |

Page 7

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

CONFIDENTIAL - UNDER PROTECTIVE ORDER

during my time at Sears, so it was -- it was both -- 09:22:28

I guess both positions. 09:22:33

Q    And this took place one -- while you were 09:22:35
in high school? 09:22:38

A    No.  This was after high school. 09:22:40

Q    When did you graduate from high school? 09:22:43

A    1996. 09:22:45

Q    Oh, I see. 09:22:45

So after you finished high school, you 09:22:47
worked for a period of time and then you joined CBP. 09:22:49
And then after you joined CBP, you started your 09:22:52
bachelor studies -- 09:22:55

A    Correct. 09:22:57

Q    -- is that correct? 09:22:57

A    Yes, sir. 09:22:59

Q    Okay.  What is your current position at 09:22:59
CBP?  You said supervisory Border Patrol agent; is 09:23:02
that correct? 09:23:08

A    Correct.  Yes, sir. 09:23:09

Q    How long have you been a supervisory Border 09:23:11
Patrol agent? 09:23:14

A    My anniversary will be next month so just 09:23:15
about two years. 09:23:17

Q    Two years. 09:23:18

So we'll briefly cover your work at CBP, 09:23:20

Page 20

CONFIDENTIAL - UNDER PROTECTIVE ORDER

me.

Q    Did you see that happen, that initial encounter happen?

A    The initial encounter, I did not. I watched the agent just escorting him towards me. At that point, that's when I made the visual contact.

Q    And then what happened?

A    The agent just told me that this subject was not answering any questions.  And I then continued to attempt to -- to see what -- what his citizenship status was.

Q    At the time that the agent escorted him over to you, was he subject to an investigative detention at that time?

A    Yes, ma'am.

Q    On what basis?

MR. SKEDZIELEWSKI:  Objection.  Calls for speculation.

THE WITNESS:  As far as the basis to question him?

BY MX. WILFONG:

Q    To stop him, yes.

A    Well, there were several.  But the initial specific targets had been known to be employees of

Page 242

CONFIDENTIAL - UNDER PROTECTIVE ORDER

that car wash.

As far as why the agent decided to question him in particular, that -- I can't answer to that.

Q    When he was brought -- was escorted to you, did the other agent remain on the scene with you?

A    No, ma'am.

Q    When the other agent left, was this individual detained by you?

A    Yes, ma'am.

Q    And what was the basis for your detention of this person?

A    To attempt to complete a investigative questioning regarding his immigration status.

Q    Did you need reasonable suspicion in order to detain him?

A    Yes.

Q    Did you have reasonable suspicion at the time?

A    I believe I did.

Q    What was the basis or the bases of your suspicion?

A    There were several, beginning with, again, the intelligence brief stated that the specific targets were employees of this particular business. So, in my opinion, that's -- that's -- the business

Page 243

CONFIDENTIAL - UNDER PROTECTIVE ORDER

is known to hire people who are illegally present.    16:51:27

Another would be that he refused to answer    16:51:35
any questions regarding immigration.  In my previous    16:51:37
experience, that has happened before where people    16:51:42
later found to be illegally present attempted also    16:51:49
to avoid answering questions.    16:51:53

But, I mean, that's -- those were pretty    16:51:59
much some of the factors.    16:52:02

Q    Were there any other factors?    16:52:07

A    That I can recall at this moment, no.    16:52:11

Q    Do you recall the apparent race or    16:52:21
ethnicity of this person?    16:52:25

MR. SKEDZIELEWSKI:  Objection.  Asked and    16:52:27
answered.    16:52:28

THE WITNESS:  Well, the race was white.    16:52:32
Ethnicity, I couldn't tell you exactly.    16:52:34

BY MX. WILFONG:    16:52:44

Q    Did you believe him to be Hispanic or    16:52:44
non-Hispanic?    16:52:47

A    I believed him to be of Hispanic descent.    16:52:50

Q    Who was the agent who made the initial    16:53:02
investigative detention?    16:53:04

A    I don't recall his name.    16:53:13

Q    Was he part of your team?    16:53:15

A    Yes, ma'am.    16:53:18

Page 244

CONFIDENTIAL - UNDER PROTECTIVE ORDER

Q    Is there anything that would refresh your recollection about his name?

A    Is there anything that would remind me of his name?

Q    Uh-huh.

A    Maybe the narrative, I guess.  A narrative, I guess.  I don't know.

Q    To your knowledge, was a narrative generated for this detention?

A    For this particular detention, no.

Q    And why was that?

A    Because it did not result in a -- I guess an official arrest.  He was not booked or anything like that.  He was released.

Q    And you testified earlier that at the beginning of the initial encounter, this person was drying a car.

Did you observe that?

A    No, ma'am.

Q    How do you know that he was drying a car?

A    He was holding towels in one of his hands.

Q    Did he -- you testified that you observed him as he was being escorted over to you; is that correct?

A    Yes, ma'am.

Page 245

CONFIDENTIAL - UNDER PROTECTIVE ORDER

Q    Was he -- did he attempt to run at any point?

A    No, ma'am.

Q    Did he attempt to resist or -- to resist the escort by the agent?

A    No, ma'am.

Q    Did you have any safety concerns as to the conduct of the individual?

A    One concern.

Q    What was that?

A    That my vehicle did not have a protective barrier between the rear seats and the driver's seat and the front passenger's seat.

Q    That was a concern as to his conduct?

A    That was a concern relating to cuffing him or not cuffing him.  That was a consideration.

Q    Okay.  Did you cuff him?

A    Yes, ma'am.

Q    And do I understand correctly that one of the reasons that you cuffed him is because your car did not have a protective barrier inside?

A    Correct.  Yes, ma'am.

Q    Were there any other reasons that you handcuffed him?

A    No, ma'am.

Page 246