BRETT A. SHUMATE
Assistant Attorney General
Civil Division
DREW C. ENSIGN
Deputy Assistant Attorney General
TIBERIUS DAVIS
SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
AUGUST FLENTJE
Deputy Director
JONATHAN A. ROBBINS
Assistant Director
STEPHANIE L. GROFF
JACOB A. BASHYROV
ANIELLO DESIMONE
NANCY SAFAVI
LAURIE WISNER
JASON K. ZUBATA
Trial Attorneys
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 532-4143
Email: Jason.k.zubata@usdoj.gov

*Counsel for Defendants*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PEDRO VASQUEZ PERDOMO; *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security; *et al.*,<br><br>Defendants. | No. 2:25-cv-05605-MEMF-SP<br><br>***DISCOVERY MATTER***<br><br>**DEFENDANTS' REPLY BRIEF RESPONDING TO COURT'S JULY 2, 2026 MINUTE ORDER [ECF NO. 581]**<br><br>Hon. Maame Ewusi-Mensah Frimpong<br><br>Referred to Hon. Sheri Pym<br>United States Magistrate Judge<br><br>Motion Hearing:<br>Date: August 11, 2026<br>Time: 11:00 a.m. |

**TABLE OF CONTENTS**

I.    INTRODUCTION ...........................................................................................................1

II.   CONTENTIONS AND POINTS OF AUTHORITIES .................................................2

  A.    Personal Cell Phones are not Within the Agency's Possession, Custody, or Control...........3

  B.    Forensic Imaging of Personal Cell Phones is Unduly Burdensome and Disproportionate to the Needs of This Case. ........................................................6

  C.    Forensic Imaging of an Employee's Personal Phone in this Case Would be in Contravention of the Constitution..........................................................................9

  D.    Less Intrusive Alternatives Exist and Should Be Pursued...................................11

  E.    ICE Should be Carved Out of the Court's Personal Phone Forensic Imaaging Order as well as Certain CBP Employees. ............................................................13

III.  CONCLUSION...........................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*American Oversight v. U.S. Dep't of Homeland Security*,
No. 1:225-cv-03699 (D.D.C. 2025) ...................................................................................7

*Blue Spike LLC v. Universal Music Grp., Inc.*,
No. 2:22-cv-06331-GW-SSCx, 2024 U.S. Dist. LEXIS 130440 (C.D. Cal. June 5, 2024) ...................11

*Breaking Code Silence v. McNamara*,
2024 WL 6847417 (C.D. Cal. Sept. 6, 2024) ....................................................................3

*China Ocean Shipping Co. v. Simone Metals, Inc.*,
1999 WL 966443 (N.D. Ill. 1999) ...................................................................................12

*County of Solano v. Delancy*,
264 Cal. Rptr. 721 (Cal. App. 1989)................................................................................12

*Daniels-Hall v. National Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ...........................................................................................5

*Flexport, Inc. v. Freightmate AI, Inc.*,
2026 WL 266453 (N.D. Cal. Feb. 2, 2026) .....................................................................3

*Frank Brunckhorst Co., Ltd. Liab. Co. v. Ihm*,
No. 11-CV-1883-CAB (KSC), 2013 U.S. Dist. LEXIS 192273 (S.D. Cal. Sep. 30, 2013)....................5

*Goolsby v. Cnty. of San Diego*,
2019 WL 3891128 (S.D. Cal. Aug. 19, 2019) ................................................................4

*Hibbert v. Schmitz*,
2017 WL 59075 (C.D. Ill. Jan. 5, 2017) ........................................................................10

*Hirsch v. General Motors Corp.*,
628 A.2d 1108 (N.J. Super. Ct. Law Div. 1993) ...........................................................12

*In re Bankers Trust Co.*,
61 F.3d 465 (6th Cir.1995) ..............................................................................................3

*In re Citric Acid Litig.*,
191 F.3d 1090 (9th Cir. 1999) .........................................................................................4

*Larios v. Lunardi*,
442 F. Supp. 3d 1299 (E.D. Cal. 2020)............................................................................9

*Larios v. Lunardi*,
856 F. App'x 704 (9th Cir. 2021) ....................................................................................9

*Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*,
   256 F.R.D. 678 (C.D. Cal. 2009) ................................................................................................3

*Riley v. California*,
   573 U.S. 373 (2014) ..............................................................................................................8, 10

*Sports Rehab Consulting LLC v. Vail Clinic*,
   2025 WL 1144559 (D. Colo. Apr. 18, 2025) ..............................................................................3

*Turiano v. City of Phoenix*,
   562 F. Supp. 3d 261 (D. Ariz. 2022) .......................................................................................10

*United States v. Chemical Foundation*,
   272 U.S. 1 (1926) .....................................................................................................................13

*United States v. Int'l Union of Petroleum & Indus. Workers*,
   870 F.2d 1450 (9th Cir. 1989) ..............................................................................................1, 3

*Welland Indus. LLC v. De Well Container Shipping, Inc.*,
   No. CV 24-01436-AB (ASx), 2025 U.S. Dist. LEXIS 95370 (C.D. Cal. Apr. 30, 2025) .......1

*Wolski v. Gardner Police Department*,
   560 F. Supp. 3d 387 (D. Mass. 2021) ......................................................................................10

**Statutes**

44 U.S.C. § 3301 ............................................................................................................................2, 5

**Rules**

Fed. R. Civ. P. 26(c)(1)(C) ...............................................................................................................11

Fed. R. Civ. P. 37(e) .........................................................................................................................12

Fed. R. Civ. P. 34(a)(1) ............................................................................................................1, 3, 5, 6

## I.  INTRODUCTION

The Court should provide tailored protective relief because its discovery orders (ECF Nos. 370, 387) to forensically image agents' personal cell phones go beyond what the rules of discovery permit and Plaintiffs' response (ECF No. 613) disregards this point entirely by conflating the propriety of demanding government records as opposed to the more intrusive and constitutionally suspect demand that the government seize and forensically image its employees' personal phones, which will necessarily contain a significant amount of private information that is not relevant to this litigation. While Defendants do not contest that communications related to government business are "records" that Defendants must preserve and have directed agents to transfer the records to agency repositories, agents' personal devices themselves are not "in [Defendants'] possession, custody, or control" such that Defendant agencies can forcibly seize and forensically image those devices. Fed. R. Civ. Proc. 34(a)(1); *see United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989); *Welland Indus. LLC v. De Well Container Shipping, Inc.*, No. CV 24-01436-AB (ASx), 2025 U.S. Dist. LEXIS 95370, at *7 (C.D. Cal. Apr. 30, 2025). At bottom, the presence of government records on a device does not transform the entire device into a target for seizure under discovery rules, nor does it permit the government to compel its employees to turn over their personal phones for intrusive forensic imaging.

But even if Defendants had possession, custody, or control of agents' personal devices, which they do not, the discovery ordered is unduly burdensome and disproportionate to the needs of this case. Based on the Court's Orders (ECF Nos. 370, 387), Plaintiffs maintain that the agencies must forensically image each and every personal cell phone of *all* agents present at any of the 15 operations, irrespective of whether they used their personal phone at any of the enumerated operations, ECF No. 613 at 1.[1] As discussed in Defendants' opening brief, that process requires seizing the phones, imaging them, reviewing millions of pages of documents, and producing the likely small subset of responsive materials from the personal

---

[1] Plaintiffs take the unsupported position that irrespective of whether agents used their personal during the enumerated operations, agents must hand over their personal phones for forensic imaging if they were merely present at one of the fifteen operations and used personal phones for government communications at all during Operation at Large – Los Angeles. This is demonstrably disproportionate to the needs of this case. Plaintiffs' operative complaint (ECF No. 485) is temporally limited to the same fifteen operations between June and September 2025 that formed the basis of limited, expedited discovery in which the Order at issue (ECF No. 370) was ultimately issued. Plaintiffs have not demonstrated the need or justification for such expansive, disproportionate discovery, when they have been able to move for two preliminary injunctions based on the evidence produced thus far, without the need for forensic imaging of agents' personal devices.

1

phones. Under Plaintiffs' preferred approach, the agencies could not meaningfully narrow or discriminately target relevant information. For example, Plaintiffs' response cited agents who acknowledged during their depositions that they had searched the specific applications they used in connection with the operation. *See* ECF 613, Ex. 11 (J.C.E. Dep.) (WhatsApp) at 27:8-17; Ex. 12 (V.A.S. Dep.) at 24:14-16 (WhatsApp); Ex. 14 (I.F. Dep.) at 74:12-24 (text app and photos). Defendants propose a targeted effort to identify responsive documents on personal phones. CBP has already identified agents who used their personal phones during Operation at Large – Los Angeles by requesting that each agent answer a questionnaire under penalty of perjury. CBP has asked those agents to identify responsive ESI on their personal devices and requested that the agents follow agency policy to ensure that any government records are preserved and transmitted to an agency repository. Given that this process is underway, Plaintiffs have not justified forensic imaging of the entire personal phones. Plaintiffs' demand not only constitutes a significant and unjustifiable invasion of well-established constitutional principles of individual privacy—especially where forensic imaging would inevitably capture vast quantities of private, non-responsive, and/or potentially privileged or personally identifiable information—but also is not proportional to the needs of this case.

Accordingly, the legal, proportionality, and privacy concerns warrant issuing a protective order.

## II.       CONTENTIONS AND POINTS OF AUTHORITIES

As discussed in the opening brief, Defendants seek tailored protective relief as to the portion of the Court's order (ECF No. 370) requiring forensic imaging of agents' personal phones, which the rules of discovery do not permit here. Defendants do not have possession, custody, or control over agents' personal phones themselves. This is true even if the government has the right to demand or obtain individual government "records" (as defined at 44 U.S.C. § 3301) from those devices. Further "limited, expedited" discovery, which is still ongoing, has already proven burdensome. Limited, expedited discovery is only four requests for production ("RFPs") and has resulted in the review of at least 214,848 documents (amassing 515,680 pages) and hundreds of hours of body worn camera videos. Discovery review will only grow significantly as the government continues to produce documents from ESI searches and the rest of the government cell phones. All of this will be produced prior to what will prove to be a more burdensome merits discovery, which is already up to 116 RFPs (not including subparts) and growing. Thus, effective

2

guardrails are necessary in accordance with the Federal Rules to mitigate Defendants' burden and ensure a proportional and manageable discovery process in plenary discovery.

### A. *Personal* Cell Phones are not Within the Agency's Possession, Custody, or Control.

Plaintiffs fail to refute Defendants' dispositive argument that the phones at issue are not within Defendants' "possession, custody, or control" such that Defendants can produce them. Fed. R. Civ. P. 34(a)(1). The burden of establishing control over documents sought is on the party seeking production. *See Int'l Union of Petroleum & Indus. Workers*, 870 F.2d at 1452. Plaintiffs have not satisfied their burden and instead conflate the propriety of seeking government records from these devices in a non-intrusive fashion with (impermissibly) compelling the government to seize and forensically image the personal property of its employees where such records may be stored. Indeed, Plaintiffs' brief discusses Defendants' preservation duties (which neither party contests), citing authorities that generally discuss requirements to preserve responsive electronically stored information ("ESI") and instances where employers had possession, custody, and/or control over certain *documents*. *See, e.g.*, ECF No. 613 at 7 (citing *Breaking Code Silence v. McNamara*, 2024 WL 6847417, at *12 (C.D. Cal. Sept. 6, 2024) for the proposition that employers have "PCC over *materials* in directors' personal messaging and social media accounts"). Noticeably absent from their argument is any authority supporting their far-reaching claim that the fact a device contains responsive ESI would in any way extend the employer's possession, custody, or control to the entire personal device. This is especially evident by Plaintiffs' reliance on *Flexport, Inc. v. Freightmate AI, Inc.*, 2026 WL 266453, at *3 (N.D. Cal. Feb. 2, 2026) to support their claim "that, if [personal phones] are used for work, employees' personal phones fall within the PCC of the employer", a reference that is unavailing and readily distinguishable. For one thing, the court did not ultimately engage in an analysis of whether the employer "ha[d] custody or control over the personal devices" at issue because those devices were of individual defendants, "where the discovery is being sought from those co-defendants directly." *Id.* And, unlike here, the defendants in *Flexport* had actual control of the imaged data having obtained that data prior to the start of the litigation.

Documents, as opposed to the device in which they are stored, are deemed to be within a party's "possession, custody or control" for purposes of Rule 34 if the party has actual possession, custody, or control, or has the legal right to obtain the documents on demand. *See Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 680 n.1 (C.D. Cal. 2009) (citing *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir.1995)); *see also Sports Rehab Consulting LLC v. Vail Clinic*, 2025 WL 1144559, at *6-9 (D. Colo. Apr. 18, 2025) (discussing "commonly-accepted understanding" that "an employer (or former employer) does not control the devices that its employees personally own"); *Goolsby*

*v. Cnty. of San Diego*, 2019 WL 3891128, at \*4 (S.D. Cal. Aug. 19, 2019) ("Plaintiff fails to meet his burden showing that [the] County has sufficient control over employees' personal devices to require more than what the County has already requested and produced. Under these circumstances, there is nothing left to compel."). And "[p]roof of theoretical control is insufficient; a showing of actual control is required." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999). Plaintiffs fail to demonstrate Defendants have either theoretical or actual control of agents' personal cell phones. *Id.* ("Control is defined as the legal right to obtain documents upon demand."). Given that the devices at issue are privately owned by individual employees, and the fact that Defendant agencies do not have a legal right to forcibly seize and forensically image the phones, Defendants cannot be expected to comply with a discovery request that defies the Federal Rules and governing case law in this jurisdiction.

Contrary to Plaintiffs' assertion, ECF No. 613 at 10, there is no Department of Homeland Security ("DHS") policy that would allow it to seize personal phones of its agents, even if they may have been used during work operations. Plaintiffs mischaracterize existing DHS policy stating "*communications* made . . . on any device . . . are 'federal records'" as applying to entire devices. *Id.* at 3 (emphasis added). Despite Plaintiffs' cherry-picked language from CBP's records management policy, when the policy is read in its entirety, the policy supports Defendants' argument that no agency policy extends the Department's authority over federal records to permit forcible seizure and intrusive forensic imaging of the entirety of agents' personal devices. *See id.* at 4 (recognizing what kind of documents are "record[s];" that records "must be protected;" the format records must be stored in; and where "personal papers are found to be intermingled with official records, the agency may need to review and approve the removal of personal materials" that constitute "federal records" from an individual file or government device). And it is axiomatic that an agency policy cannot overrule and trump the Constitutional requirements that must be met for a government agency to seize the personal device of an employee. This is why, as Defendants explained in their principal brief (at 5), and in line with the quoted language cited by Plaintiffs, the only relevant DHS policy provides that agents are to "maintain official records," deposit such records into a federal repository, after which the agency will extract responsive ESI for review and production. *See* U.S. Dep't of Homeland Security, Policy Directive 141-01 (2014), last visited July 27, 2026, https://www.dhs.gov/sites/default/files/2024-02/14_0812_%20Records%20and%20Information%20Management%20Directive%20141-01.pdf [permalink: https://perma.cc/89D7-DZ96]; U.S. Dep't of Homeland Security, Policy Directive 141-03 (2018), last visited July 27, 2026, https://www.dhs.gov/sites/default/files/2024-06/141-03_policy-

directive.pdf [permalink: https://perma.cc/4SWL-VXYS].[2] That is precisely what Defendants have done and continue to do here. Defendant agencies directed their agents to deposit government records (as defined at 44 U.S.C. § 3301) found on their personal phones into agency repositories based on the aforementioned policy directives. CBP initiated a series of steps—starting with the questionnaire, signed under penalty of perjury—to ensure those documents are identified and submitted.[3] That is the extent of the Defendant agencies' legal authority and the most that a court can demand of them under the strictures of the Federal Rules. Fed. R. Civ. P. 34(a)(1). Contrary to Plaintiffs' unsupported assertion, there is no constitutionally permissible mechanism to force agents to surrender their entire personal phone (not just relevant documents contained therein) for forensic imaging, and the policy cited by both parties does not envision or authorize the government to seize private devices for forensic imaging.

Plaintiffs further claim that because Defendants' litigation holds indicate ESI may be found on "government owned or personally owned" "smart phones and cell phones," Defendants must have possession, custody, and/or control over those devices. ECF No. 613 at 10. However, Plaintiffs' conclusory assertion mischaracterizes the purpose and effect of issuing a litigation hold—to ensure "the preservation of relevant documents" and to provide "notice of discovery obligations . . . to employees in possession of discoverable materials." *See Frank Brunckhorst Co., Ltd. Liab. Co. v. Ihm*, No. 11-CV-1883-CAB (KSC), 2013 U.S. Dist. LEXIS 192273, at *43 (S.D. Cal. Sep. 30, 2013) (internal citations omitted). The litigation holds demonstrate Defendants' understanding of its preservation obligations and efforts to provide notice to the relevant custodians to preserve relevant ESI for purposes of this litigation. While Defendants agencies can and have asked agents to deposit any responsive ESI from their personal devices into agency repositories via the litigation holds and the questionnaire, these holds do not empower the Department to forcibly seize agents' personal phones for forensic imaging, absent the agent's express consent. As of the date of this filing, approximately 37 CBP agents have withdrawn their consent for forensic imaging of their

___

[2] The Court may and should judicially notice Defendant DHS' policy directives for collecting government "records" as defined at 44 U.S.C. § 3301. *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (taking judicial notice of information made publicly available by a government entity on its website).

[3] As described in Defendants' principal brief, "CBP sent the questionnaire to all employees involved in Operation at Large – Los Angeles, not just those involved in the fifteen operations, to ensure preservation of relevant materials for this litigation. . . The questionnaire also includes questions asking employees to turn off any auto-delete features and explains how to export any relevant data to a CBP repository. *See* ECF No. 503-27 at 11 (questions 45 and 46 of the questionnaire)." ECF No. 607 at 11. Plaintiffs seem to take issue with Defendants taking care of their discovery obligations by sending the questionnaire to all CBP employees who participated in Operation at Large – Los Angeles, despite repeatedly alleging that Defendants have shirked their obligations, but these steps only further demonstrates how seriously Defendants are taking their discovery obligations and the need for time to carefully collect and produce responsive ESI in a comprehensive manner.

personal devices. CBP is working to schedule a time to image the personal phones of individual agents who have consented.

None of the caselaw Plaintiffs cite (ECF No. 613 at 7-10) addressed the issue of whether employers have possession, custody, or control over their employees' personal devices. Rather, those cases discussed preservation obligations under the Federal Rules generally (which Defendants do not contest), and whether a party has possession, custody, and control over individual *documents* as opposed to *entire personal devices*. Plaintiffs' attempts to read further authority from these cases is unsupported and contrary to the parameters set forth under Rule 34, which limits discovery requests to production of materials "in the responding party's possession, custody, or control[.]" Fed. R. Civ. P. 34(a)(1).

Because Plaintiffs cannot and do not demonstrate Defendants have actual control over agents' personal devices or cite to any authority that supports compelling the government to seize and forensically image its employees' personal devices, such discovery is not permissible under the Federal Rules, and this Court should issue protective relief acknowledging as much.

**B. Forensic Imaging of Personal Cell Phones is Unduly Burdensome and Disproportionate to the Needs of This Case.**

Defendants maintain that compelling non-parties—here, agents present at one or more of the fifteen immigration enforcement operations—to submit their personal phones for forensic imaging is overly burdensome and disproportionate to the needs of the discovery ordered by this Court. Plaintiffs contend that Defendants' burdensome and proportionality arguments are a mere masquerade for Defendants' alleged "strategy of dragging their feet on every single RFP promulgated in this case so far," ECF No. 613 at 14. However, Defendants have consistently complied with their discovery obligations under the Federal Rules and pursuant to the Court's clarifying orders, having already reviewed at least 214,848 documents (amassing 515,680 pages) and hundreds of hours of body worn camera videos since the start of "limited, expedited" discovery in October 2025 and Defendants continue to produce thousands of pages of documents every couple of weeks. While Plaintiffs sought motions to compel certain discovery, after the Court considered Defendants' arguments and ruled in Plaintiffs' favor, Defendants complied with the Court's orders to produce responsive ESI, notwithstanding Defendants' objections which remain pending with the district court. It is for this reason that Defendants are forensically imaging the agents' government phones (which are in Defendants' possession, custody, and/or control) and are producing responsive ESI contained therein; and reproduced and continued producing documents without redacting for law enforcement privilege, subject to a clawback agreement should Defendants prevail on their objections. These steps taken by Defendants undercut Plaintiffs' assertion of misconduct and demonstrate Defendants' compliance with their ongoing discovery obligations (as clarified by the Court). In fact, these efforts should

further emphasize to the Court the extraordinary burden Defendants are already bearing in "limited, expedited" discovery even before plenary discovery has begun in earnest.  Defendants' instant request for protective relief is simply to ensure discovery is limited to what is required under the Federal Rules and so as to continue at a reasonable pace, that is not overly burdensome to Defendants or disproportionate to the needs of the case.

Plaintiffs' brief also mischaracterizes Defendants' arguments in several respects. As an initial matter, Plaintiffs allege Defendants failed to address the burden of forensic imaging as to plenary discovery and have thus forfeited that argument, ECF No. 613 at 13. Setting aside the fact the Order requiring personal phone forensic imaging (ECF No. 370) was issued as part of ongoing "limited, expedited" discovery, Defendants expressly discuss in their principal brief the burden as to discovery as a whole and even note that, "as the parties continue this limited, expedited discovery while also beginning plenary discovery, effective guardrails are required to ensure a proportional and manageable discovery process." ECF No. 607 at 2. Further, how a phone is forensically imaged does not change based on the type of discovery. The burden will remain whether the phone is imaged as part of "limited, expedited" discovery or plenary discovery.  Therefore, Defendants have not forfeited their burdensome argument as to plenary discovery.

Moreover, Plaintiffs cite limited instances where the government has undertaken forensic collection as proof that it is feasible in this context. However, Plaintiffs fail to address several aspects of this undertaking that make forensic imaging of personal devices particularly burdensome and disproportionate to the needs of *this case*. Plaintiffs first allege that because DHS has undertaken forensic collection in response to Freedom of Information Act ("FOIA") litigation, such collection process is appropriate and warranted.  However, Plaintiffs take the declaration they cite for this point completely out of context.  First and foremost, the declaration describes DHS's efforts to extract messages from *government* phones. *See* DHS Declaration, ECF No. 14-2 ¶ 19, *American Oversight v. U.S. Dep't of Homeland Security*, No. 1:25-cv-03699, ECF No. 14-2 (D.D.C. 2025). Again, Defendants are forensically imaging the government phones of its employees for this litigation.  Defendants are only seeking a protective order as to the personal devices. Second, the declaration that Plaintiffs cite also discusses DHS's process to have employees screenshot messages from government devices and send them to a government repository as well as reaching out to individual records custodians to ensure the documents have been properly saved. The declaration describes what Defendants have been doing in this litigation, which further shows that Defendants are following stated policy and procedure.

While Plaintiffs purport to understand the government's capabilities, Defendants have clearly laid out the unduly burdensome process to forensically image phones in their previously filed declarations. *See,*

*e.g.*, 503-26. Plaintiffs contend that the government can simply use taxpayer money to pay various vendors to handle forensic imaging of personal phones onsite, but they fail to appreciate the required statutory process for the government to contract with outside vendors. The contracting process could take months before even one phone is forensically imaged. The other option, which CBP is already using for an employee who has consented to have their phone imaged, is to have already-contracted forensic analysts travel to agent locations for imaging. This is already further disrupting the agency's work in other portfolios, which includes criminal cases such as child sexual exploitation and national security cases.

Either approach will inevitably result in a heavy burden to Defendants compared to the minimal value such an intrusive, time-consuming, costly process would yield, where many, if not all, documents on any given agent's personal phone will not be responsive.[4] This burden is only compounded by the large number of custodians possibly implicated by the Court's order (at least 443 for the 15 encounters but as many as approximately 1,462 custodians given Plaintiffs suggesting the desire for personal phones to be imaged during plenary discovery as well) measured against the expedited timeline Plaintiffs continue to demand of Defendants. Defendants appreciate the need to complete discovery expeditiously, but effective guardrails are necessary to ensure a proportional and manageable discovery process that also complies with the bounds set forth under the Federal Rules.

Indeed, despite the extraordinary logistical, technical, and legal burdens posed by forensic collection of this magnitude, as described at length in Defendants' principal brief, ECF No. 607 at 7-8, Plaintiffs primarily focus on the financial burden, as opposed to also addressing the logistical and legal burdens. Forensically imaging personal phones for discovery is "a highly intrusive process that captures the entire contents of a device" including "substantial volumes of personal, non-responsive, and privileged material" that will result "in an enormous expenditure of time with comparatively few documents to produce." Declaration of Benjamin Moss, ECF No. 379-1 ("Moss Decl.") ¶¶ 8, 13. This far outweighs any incremental benefit. Plaintiffs concede that they have already obtained "key evidence" from Defendants' discovery productions to date and that they have been able to move for a preliminary injunction based on discovered evidence. ECF No. 613 at 14. This further supports Defendants' point that this intrusive forensic collection of agents' personal data is not warranted or necessary to litigate this case. Indeed, the Supreme Court has recognized that full-device imaging is an intrusive measure because it exposes vast quantities of private, highly personal, irrelevant information far beyond the scope of discovery. *See Riley v. California*, 573 U.S. 373, 405 (2014).  Agents' personal phones contain private information to include private images,

---

[4] While Plaintiffs have proposed narrowing the number of custodians whose personal phones would need to be imaged, they have consistently reserved the right to revisit this narrow list, as they did with the government-issued phones, and so one cannot be certain that even an initial narrowing would not lead to Plaintiffs unilaterally expanding such list of custodians.

medical records, financial information, location histories, communications with personal counsel if applicable, and private family communications. Plaintiffs' proposal of forensic imaging (without permitting reasonable search terms and date ranges) threatens to indiscriminately capture such data. Such a sweeping intrusion is not proportional to the needs of this case, given Plaintiffs have obtained the discovery needed to prosecute this case, nor does it comport with the strictures of the Fourth Amendment, as explained below, *infra* § II.C. Defendants' burden is overwhelming and the benefit to Plaintiffs pales in comparison, where they are actively seeking discovery through other, less intrusive means, and where Defendants are already producing substantial discovery that is responsive to Plaintiffs' claims and sufficient (importantly, in Plaintiffs' perspective) to litigate this case.

Thus, the Court should limit its order to exclude forensic imaging of personal phones.

**C. Forensic Imaging of an Employee's Personal Phone in this Case Would be in Contravention of the Constitution.**

Plaintiffs dismiss the legitimate Fourth Amendment rights of government employees, claiming agents cannot "prevent the agency from accessing [their personal phone] to obtain work-related data and communications," even if there are less intrusive, alternative means of collecting that data. ECF No. 613 at 11. As Defendants noted in their principal brief, and Plaintiffs fail to refute, "[g]overnment employees are in no way exempt from th[e] constitutional protection" against "unreasonable searches and seizures[.]" ECF No. 607 at 9 (citing the Fourth Amendment). Indeed, a holding that any use of a personal phone whatsoever for government business (such as "[i]f my government phone is out of cell service" (ECF 613-15)) results in the entire device being subject to seizure by the government would be an extraordinary narrowing of Fourth Amendment protections for government employees and likely to have broad repercussions. Rather than address Defendants' argument, Plaintiffs simply conclude that officers cannot have any expectation of privacy over the contents of their personal phone if they have ever used their personal phone in any regards to their work. *See* ECF No. 613-15 (broadly sweeping in personal phone usage and using "[i]f my government phone is out of cell service" as an example). However, despite Plaintiffs' baseless suggestion that such intrusive imaging of the entire device is "reasonable," ECF No. 613 at 11, the Supreme Court and Ninth Circuit rightly recognize the particularly strong privacy interests inherent in one's personal phone and caution against such intrusive forensic imaging.

Federal courts have consistently cautioned against seizing an employees' personal phone and otherwise recognized that downloading the entire contents of an employee's personal cell phone raises substantial constitutional concerns, especially when indiscriminate review of an entire personal cell phone does not contemplate discrete criteria for what data must be imaged (i.e., collected) and reviewed for responsiveness. *See, e.g.*, *Larios v. Lunardi*, 442 F. Supp. 3d 1299, 784 (E.D. Cal. 2020), *aff'd*, 856 F.

App'x 704 (9th Cir. 2021) ("Downloading all the cell phone's data to retrieve a single thread of texts is like watering a plant with a firehose."); *Turiano v. City of Phoenix*, 562 F. Supp. 3d 261, 271 (D. Ariz. 2022) (holding that, where a public employer seeks to search its employee's personal cell phone for evidence of work-related misconduct but does not have a warrant to search the imaged data, the employee's Fourth Amendment rights are infringed upon); *Wolski v. Gardner Police Department*, 560 F. Supp. 3d 387, 396 (D. Mass. 2021) (concluding that "the data extraction was unconstitutional because it was unreasonable in scope" as extraction went beyond the data related to the incident as set forth in the court's order); *Hibbert v. Schmitz*, 2017 WL 59075 (C.D. Ill. Jan. 5, 2017) ("[B]y copying the full set of information on the phone, Defendants infringed on that reasonable expectation of privacy" and infringed upon the cell phone holder's constitutional rights). Indeed, government employees' constitutional rights will be infringed upon should the Court permit intrusive, forensic imaging of agents' personal phones. *Riley*, 573 U.S. at 398 (recognizing "it is no exaggeration to say that many of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate"). Understanding the Constitution requires that any search or seizure be reasonable to be lawful, *see id.* at 381, Plaintiffs still fail to demonstrate that the intrusive nature of the seizure and search of the entire individual agents' personal phones is reasonable or justifiable.

Plaintiffs also conclude, without any substantiation, that such intrusive "search is justified, as the Court has already determined." ECF No. 613 at 11. However, Plaintiffs' claim falls flat, given that the District Judge determined that the issue of personal phones was not properly litigated before the Magistrate Judge. ECF No. 579 at 4-5. Further, this Court's order on forensic imaging phones resulted from a single sentence in Plaintiffs' brief that was focused on government phones and seeking more comprehensive searches of those phones. ECF No. 320 at 17. Defendants "tried to raise [this issue] with Judge Pym, [but] she indicated because [Defendants] had already filed their objections, she was reluctant to hear" separate arguments as to personal phones. ECF No. 572 (June 25, 2026 Hearing Tr.) at 53:24-25, 54:1-2. Judge Frimpong has not opined on the propriety of forensic imaging of personal phones and instead (without objection from Plaintiffs, *id.* at 57:21) remanded the issue for the parties to brief and for Magistrate Judge Pym to hear arguments on. ECF No. 579. This series of events makes clear that Plaintiffs have not demonstrated how this intrusive forensic collection of personal phones is justified, reasonable, or lawful.

Plaintiffs minimize the constitutional concerns with this intrusive, indiscriminate process, noting that it is a necessary consequence of the process that "search terms will hit on non-work documents." ECF No. 613 at 12. But they fail to address why those documents, which agents would have a reasonable expectation of privacy over, should be subject to forensic imaging in violation of an agent's Fourth

Amendment rights. Further, Plaintiffs attempt to ignore Defendants' Fourth Amendment arguments by pointing to the fact that the government has not produced any data from personal devices. However, Defendants' inability to produce documents that are not in their possession, custody or control (which the Federal Rules expressly provide assurance against requiring such production) does not provide any justification for setting aside agents' Fourth Amendment rights in order to carry out intrusive, constitutionally impermissible forensic imaging of personal phones. Further, this argument ignores, as explained above, *supra* § II.A and B, that Defendants have taken extraordinary steps to comply with the Court's orders.

The Court's order, to the extent it would require forensic imaging of any and all present agents' personal cell phones, would mandate precisely the kind of overbroad digital seizure that courts, including the Supreme Court and Ninth Circuit, have cautioned against, offending the constitutional rights of government employees lawfully carrying out their duties on behalf of the United States. Such infringement cannot stand, and the Court should impose reasonable limitations on its prior Orders to collect responsive ESI through less intrusive, alternative means.

### D.  Less Intrusive Alternatives Exist and Should Be Pursued.

Plaintiffs do not dispute Defendants' argument that the Court has discretion to prescribe a discovery method other than one selected by the party seeking discovery to mitigate concerns such as an undue burden. *See* Fed. R. Civ. P. 26(c)(1)(C). Nor do they dispute that consistent with Rule 26, courts have discretion to limit discovery when "the evidence can be obtained through other, less burdensome means." *See Blue Spike LLC v. Universal Music Grp., Inc.*, No. 2:22-cv-06331-GW-SSCx, 2024 U.S. Dist. LEXIS 130440, at *8 (C.D. Cal. June 5, 2024) (internal citation and quotation marks omitted). Instead, Plaintiffs contend that "forensic collection has been, and will continue to be, the only way for Plaintiffs to reliably obtain those communications from Defendants in discovery." ECF No. 613 at 15. But their claim is belied by the evidence they cite, demonstrating their ability to capture communications between officers regarding immigration enforcement related to Operation at Large – Los Angeles. ECF No. 613 at 14 (acknowledging they have obtained "key evidence" from Defendants' productions to date). The Court's order expresses concern that Defendants "relied solely on the agents themselves to determine what is responsive on their devices[,]" ECF No. 370 at 8, and Defendants acknowledge that concern. However, they have complied with the Courts orders, including to produce responsive ESI from government-issued devices in Defendants' possession, custody, and control, and while Defendants do not possess such authority over personal phones, Defendant agencies have issued questionnaires to identify relevant custodians who may have used their personal phones during an operation and instructed their employees to deposit government

11

records into agency repositories. Full forensic imaging of personal devices is neither necessary nor proportional where less intrusive mechanisms are available.

Plaintiffs not only cite out-of-circuit case law to support their argument that self-collection is not sufficient, *see* ECF No. 613 at 15-16, but also fail to acknowledge a basic tenet of federal discovery: reasonableness. Fed. R. Civ. P. 37(e) (requiring parties to take reasonable and good faith efforts to preserve information). Understanding that they were under a standing Court Order to produce responsive ESI from any present agents' phones, in addition to issuing litigation holds to the relevant custodians (both before and after Plaintiffs' motions to compel were lodged), Defendants ICE and CBP moved forward with ensuring the preservation of documents. Specifically, CBP issued litigation holds to over 1,400 agents between August 2025 and May 2026 with a large majority of the issuance occurring between August and September 2025. *See* ECF No. 518. CBP has sent out reminder emails to agents about their preservation obligations roughly every thirty days since the initial issuance. *Id.* This Court has seen and is aware of reasonable and good-faith efforts CBP has taken to notify its agents of their preservation obligations. *Cf. China Ocean Shipping Co. v. Simone Metals, Inc.*, 1999 WL 966443, at *3 (N.D. Ill. 1999) (finding that a party does not have to go through "extraordinary measures" to preserve all potential evidence); *see also Hirsch v. General Motors Corp.*, 628 A.2d 1108, 1122 (N.J. Super. Ct. Law Div. 1993) ("The scope of the duty to preserve evidence is not boundless. A 'potential spoliator need do only what is reasonable under the circumstances.'" (quoting *County of Solano v. Delancy*, 264 Cal. Rptr. 721, 731 (Cal. App. 1989))).

While Plaintiffs baldly assert that "Defendants withheld an enormous amount of responsive—and damaging—evidence during expedited discovery before the Court ordered forensic collection[,]" ECF No. 613 at 15, that is far from the truth. The large-scale discovery and voluminous production of documents Plaintiffs sought here necessarily resulted in rolling productions and supplementation of prior productions. As such, documents Plaintiffs allege were "withheld" have been or eventually will be produced as part of those rolling productions. While Defendants opposed Plaintiffs' motions to compel based on their understanding of their discovery obligations for limited, expedited discovery, once the Court clarified the extent of these obligations, Defendants took significant steps to comply with the Court's orders and have continued to meet with Plaintiffs to prepare for productions as part of plenary discovery. Defendants have not shirked their discovery obligations but note that discovery on the scale sought in this case is time- and resource-intensive, and, when rushed, can lead to incomplete productions or productions requiring supplementation.

While Plaintiffs take issue with possible spoliation, Plaintiffs fail to provide any evidence that any documents that may have been inadvertently deleted or subject to auto-deletion protocols could even be

recovered by forensic imaging. Having failed to demonstrate any certainty that such documents could even be recoverable, Plaintiffs cannot reasonably demand such an intrusive process that undercuts the constitutional rights of possibly over a thousand government agents.

In short, there are alternative, targeted means that Defendants have implemented, including issuing questionnaires to identify relevant custodians, requesting their consent to forensically image their personal phones, and separately instructing them to deposit government records into agency repositories—which are less burdensome overall and would reduce the intrusion on personal privacy rights—to obtain the responsive work-related communications Plaintiffs seek. The Court should narrow its Order and impose safeguards to ensure only relevant information is collected in a proportional and non-intrusive process.

### E. ICE Should be Carved Out of the Court's Personal Phone Forensic Imaging Order as well as Certain CBP Employees.

While it would be inappropriate for the Court to require forensic imaging of any agents' personal phones, for the reasons described above and in Defendants' principal brief, Plaintiffs rightfully concede that they have no basis to demand the personal phones of ICE agents who participated in the enumerated operations, as there is no evidence in the record indicating ICE agents had used their personal phones during any of the operations and, in fact, there is affirmative evidence to the contrary. ECF No. 613 at 17. Plaintiffs acknowledge the "signed declarations . . . attesting that [ICE agents] did not use their personal phones 'during' those operations." *Id*. Plaintiffs try to undermine these declarations as "pre-fabricated affidavits" but provide no support for such baseless assertion. There is nothing wrong with using standardized language to address this issue, and the affidavits were signed under penalty of perjury by the officials involved in the operations. In line with its discovery obligations as clarified under the Court's orders, ICE engaged with its agents to identify relevant custodians that may be implicated by the forensic imaging order and had them attest under penalty of perjury that they did not use their personal phones during any of the enumerated operations. Simply because Plaintiffs are dissatisfied with the sworn affidavits that support Defendants' position does not provide a legitimate basis to question their veracity, especially when no ICE officers that has been deposed indicated using their personal phone during government business. Further, based on the results of the CBP Questionnaire, 374 officers and agents attested under penalty of perjury that they did not use their personal phones for Operation at Large – Los Angeles. To the extent any of those officers or agents were part of the 15 enumerated operations covered by "limited, expedited" discovery, those officers and agents should also be excluded from this order.

Plaintiffs seeking discovery, however, must overcome the "presumption of regularity": the presumption that public officers have properly discharged their official duties. *United States v. Chemical Foundation*, 272 U.S. 1, 14-15 (1926). Absent any showing to the contrary, Plaintiffs have wholly failed

13

to overcome this presumption, and should the Court order any forensic imaging of personal phones (which would be inappropriate for the reasons stated above, it should carve out ICE agents from the Order.

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter a protective order limiting any compelled collection from personal devices to a narrowly tailored protocol such as that suggested above, which avoids wholesale downloading of entire devices and protects the government employees' substantial privacy interests in the contents of their personal devices, where they are likely to contain minimal responsive materials.

Dated: July 28, 2026                    Respectfully submitted,


                                        BRETT A. SHUMATE
                                        Assistant Attorney General
                                        Civil Division


                                        DREW C. ENSIGN
                                        Deputy Assistant Attorney General


                                        TIBERIUS DAVIS
                                        SEAN SKEDZIELEWSKI
                                        Counsel to the Assistant Attorney General


                                        AUGUST FLENTJE
                                        Deputy Director


                                        JONATHAN A. ROBBINS
                                        Assistant Director


                                        STEPHANIE L. GROFF
                                        JACOB A. BASHYROV
                                        ANIELLO DESIMONE
                                        NANCY SAFAVI
                                        LAURIE WISNER
                                        JASON K. ZUBATA
                                        Trial Attorneys

                                        */s/ Jason K. Zubata*
                                        JASON K. ZUBATA
                                        Trial Attorney
                                        Office of Immigration Litigation
                                        U.S. Department of Justice
                                        P.O. Box 878, Ben Franklin Station
                                        Washington, D.C. 20044
                                        Tel: (202) 532-4143
                                        Email: Jason.k.zubata@usdoj.gov

                                        *Counsel for Defendants*

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies that this filing is 6,344 words, which complies with L.R. 11-6.1.


Dated: July 28, 2026                    Respectfully submitted,


*/s/ Jason K. Zubata*
JASON K. ZUBATA
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice

*Counsel for Defendants*

16