O

**F I L E D**
CLERK, U.S. DISTRICT COURT

July 28, 2026

CENTRAL DISTRICT OF CALIFORNIA
BY: _____DBE_____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pedro Vasquez Perdomo *et al.*,<br><br>        Plaintiffs,<br><br>   v.<br><br>Markwayne Mullin, *et al.*,<br><br>        Defendants. | Case No.: 2:25-cv-05605-MEMF-SP<br><br>**ORDER HOLDING DEFENDANTS IN CIVIL CONTEMPT FOR VIOLATION OF COURT ORDER [DKT. NO. 503]**<br><br>**UNDER SEAL** |

The people and organizations who brought this lawsuit say that the Government is breaking the law in two ways. First, they say that Government agents are unlawfully stopping people without a valid reason. Second, they say that people in immigration detention are being prevented from speaking to their attorneys. This case asks this Court to put a stop to those actions.

From the beginning, the Government has stated that its agents are not unlawfully stopping people. The Government has explained that it had "reasonable suspicion" for every stop it made. As part of the process of "discovery," the people and organizations who brought this lawsuit asked the Government to turn over the communications that the Government agents had regarding the

operations. They explained that they wanted to be able to prove that what the Government was saying was not true—the Government did not have reasonable suspicion for all of the stops.

The rules that govern this lawsuit required the Government to search for and turn over the requested material. The requested material included communications about the operations in this case that some Government agents kept on their personal phones. The Government did not properly search for this material. Because the Government failed to do a proper search, the Magistrate Judge assigned to this case ordered the Government to preserve the information on those personal phones and look for the communications that the Government had been ordered to turn over.

The Magistrate Judge's Order was clear and the Government was given plenty of time to comply. Nevertheless, the Government did not comply.

Congress has given this Court the power to impose a fine on any party who does not comply with a clear order of this Court. This Court uses that power now and finds the Government in contempt. The Government shall pay a fine of five hundred dollars per day until it complies with the Magistrate Judge's Order. The Government shall also reimburse the plaintiffs and organizations that brought this lawsuit for the time and costs spent by their attorneys in getting the Government to comply with the Magistrate Judge's Order.

## I.     **Background**

This Court's prior orders, *see* Dkt. No. 419, detail the factual allegations at issue in this matter. This Court incorporates its prior discussion of those allegations by reference here. It will discuss the procedural history only where relevant to the case's present posture.

### A.  Procedural History

On October 17, 2025, this Court granted Plaintiffs' and Intervenors' Motion for Limited, Expedited Discovery. Dkt. No. 223. This permitted Plaintiffs and Intervenors to serve their proposed Interrogatories and Requests For Production ("RFP"), concerning agent training and fifteen specific immigration operations, by Tuesday, October 21, 2025. *Id.* at 10. Two of the RFPs were as follows:

> 2.     ALL DOCUMENTS RELATING TO the operations below, including . . . other COMMUNICATIONS describing or characterizing the operation, DOCUMENTS reflecting review of the operation, and DOCUMENTS reflecting any arrest quotas or goals.
>
> (a) – (m): [identifying fifteen operations]

3.    COMMUNICATIONS through messaging of any kind (including text
messaging, chats, or messaging through a mobile application) from or to PERSONS
identified in YOUR response to Plaintiff CHIRLA's Expedited Interrogatories No. 1.[1]

Declaration of Mohammad Tajsar, Dkt. No. 211-1 ("Tajsar Decl."), Ex. 2 at 6–7 ("Exp. RFPs").

On October 23, 2025, Judge Pym issued an order setting a schedule and terms for expedited
discovery. Dkt. No. 227. This required Defendants to complete the production of materials
responsive to the RFPs by November 21, 2025. *Id.* at 4.

On December 23, 2025, Plaintiff CHIRLA filed a motion to compel defendants to fully
respond to the RFPs, including to forensically image any cell phone used by any agent present at any
of the fifteen identified operations. Dkt. No. 320.

On January 16, 2026, Judge Pym issued an Order Granting Plaintiff CHIRLA's Motion to
Compel Discovery. Dkt. No. 370 ("January 16 Discovery Order"). Within that Order, she required
the Defendants to conduct a proper search for responsive documents, and, as relevant here,
specifically ordered as follows:

As such, defendants must now conduct a complete and proper search for documents
responsive to the RFPs at issue, including doing at least the following:

. . .
Forensically image any cell phone used by an agent present at any of the 15
operations and review these devices for material responsive to RFP Nos. 2 and
3; . . .

*Id.* at 8–9. For purposes of this Order, the Court will refer to this portion of the January 16 Order as
the "January 16 Forensic Imaging Order."[2]

On January 20, 2026, Defendants filed an ex parte application to stay the January 16 Order.
Dkt. No. 379. Judge Pym granted Defendants an extension of the production deadline to February
13, 2026. Dkt. No. 387.

During a status conference on February 12, 2026, Defendants represented that they had
started the process to forensically image Government agent phones, that they understood the January

---

[1] Expedited Interrogatory No. 1 asked Defendants to "IDENTIFY the on-scene AGENCY PERSONNEL who initiated a
DETENTIVE STOP or encounter for the following PERSONS (and specify for each PERSON): [listing all individual
Plaintiffs and other immigration detainees]." Tajsar Decl., Ex. 1 at 6 ("Exp. Interrogatories").

[2] On January 30, 2026, Defendants filed objections to the January 16 Order. This Court has adjudicated the objections in
another order. *See* Dkt. No. 579.

16 Order to apply to personal phones used during the operation, and asked Judge Pym to reconsider the January 16 Order to the extent it required the forensic imaging of all phones. Dkt. No. 423 at 43:23–44:4 (Counsel for Defendants: "[The Government has] begun the [imaging] process on government phones, government-issued phones. We read the order, however, as saying, any phone."). Judge Pym stayed the portion of the order while the parties met and conferred as to the imaging's scope, and set a deadline of March 16, 2026. Dkt. No. 414. On March 17, 2026, Judge Pym reminded the parties that "that stay ha[d] now expired." Dkt. No. 475.

During a status conference on March 6, 2026, Defendants represented that they were reviewing personal phones with ICE agents and that the agents were signing declarations regarding "the collection of the information of th[o]se phones." Dkt. No. 453 at 6:19–24.

On March 5, 2026, Plaintiffs proposed that—if custodial interviews were conducted and declarations were submitted regarding agents' use of their personal phones—Plaintiffs could stipulate to the forensic imaging of the personal cell phones of up to fifty custodians of Plaintiffs' choosing. Worth Decl., Ex. 18. On April 10, 2026, Defendants responded stating that they could not agree to the proposal because it required the forensic imaging of personal phones outside the agency's possession, custody, and control. Worth Decl., Ex. 19.

Per this Court's Civil Trial Order, fact discovery formally began on April 6, 2026. Dkt. No. 483 at 4. It will close on February 17, 2027. *Id.*

On April 22, 2026, ICE emailed declarations to the law enforcement officers involved in the fifteen operations. JS, Ex. B. Defendants represent that the questionnaire was sent to CBP employees on May 4, 2026, and that responses were due one week later.

On May 12, 2026, Plaintiffs filed a Motion for Order to Show Cause requesting that Defendants be held in contempt for violating the January 16 Forensic Imaging Order, which is in the form of a joint stipulation. Dkt. No. 503 ("Motion"). The parties filed supplemental briefs. *See* Dkt. No. 506 (Plaintiffs' supplemental brief); Dkt. No. 507 (Defendants' supplemental brief).

Judge Pym held a hearing on the Motion on May 26, 2026. There, Defendants represented that, of 1,253 CBP agents who completed questionnaires, 885 indicated that they use their personal phones for work and 88 indicated that they would consent to the forensic imaging of their personal

phones. Dkt. No. 515 at 14:4–18. But, as of that time, Defendants had forensically imaged no personal phones. *See id.* at 4:4–7.

In an order dated June 11, 2026, Judge Pym granted Plaintiffs' Motion and ordered Defendants to appear before this Court "to show cause why they should not be found in contempt of court and fined $500 per day until they fully comply" with the January 16 Order. Dkt. No. 538 at 2 ("OSC Order").

On June 25, 2026, the Court held an OSC hearing. The parties agreed that this Court was not required to hear live testimony, and waived their right to present live witnesses. Dkt. No. 571 at 59:1–25 ("Tr."). At the close of the hearing, this Court took the matter under submission. *Id.* at 104:18–22.

On July 1, 2026, the Court referred the matter of the January 16 Forensic Imaging Order back to the Magistrate Judge to address the Defendants' pending objections. Dkt. No. 579. The Court explicitly stated that the January 16 Forensic Imaging Order "shall remain in full effect unless and until it is modified or clarified." *Id.* at 5.

### B. Factual Findings

This Court incorporates by reference the Certification of Facts provided by the assigned Magistrate Judge. OSC Order at 2–7; *see also* 28 U.S.C. § 636(e)(6)(B)(iii), and summarizes them here for context.

On December 10, 2025, Defendants represented that Government agents' mobile phones had not been imaged, and claimed that agents do not use the native texting function on their mobile phones as part of their job. OSC Order ¶ 6. But, of six officers and agents deposed in December 2025, five testified that they used their personal phones for work. *Id.* ¶ 10. One of those six testified that he did not receive a written litigation hold related to this case. *Id.* Another testified that he did receive a written litigation hold, but that he was not sure it was related to this case, and that he took no steps to preserve documents. *Id.* A third testified that he did not search his personal phone, and—though he used WhatsApp for work—he did not produce messages to counsel or save any messages. *Id.*

As of May 26, 2026, CBP sent questionnaires to 1,462 Government agents associated with Operation at Large Los Angeles. *Id.* ¶ 30. Of the 1,253 received responses, 885 individuals indicated that they use their personal phones for work, and 88 individuals indicated that they consented to the forensic imaging of their personal phones. *Id.*

As of June 29, 2026, Defendants had not forensically imaged any personal phones. OSC Order ¶ 31; *see also* Tr. at 90:9–91:23.

## II. Applicable Law

In the discovery context, Rule 37 governs sanctions determinations as follows:

**(b) Failure to Comply with a Court Order.**
. . .
(2) Sanctions Sought in the District Where the Action Is Pending.
    **(A) For Not Obeying a Discovery Order.** If a party . . . —fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

        . . .
        *(vii) treating as contempt of court the failure to obey any order . . . .*
        . . .
    **(C) Payment of Expenses.** Instead of or in addition to the orders above, the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37 (emphasis added).

"Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply. For issuance of a contempt order against Defendants to be proper, Plaintiffs must establish that Defendants violated the January 16 Forensic Imaging Order, such that they are not in "substantial compliance" with the Order, by clear and convincing evidence. *Lab./Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth.*, 564 F.3d 1115, 1123 (9th Cir. 2009) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir.1993)). The contempt need not be willful, and there is no good faith exception to the requirement of obedience to a court order. But a person should not be held in contempt if their actions "appear[] to be based on a good faith and reasonable interpretation of the court's order." *In re Dual-Deck*, 10 F.3d at 695 (citation modified). Upon such a showing, the "burden then shifts to

the contemnors to demonstrate why they were unable to comply." *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (internal quotation marks omitted) (quoting *Stone v. City and County of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992)).

Under the statutory grant of magistrate judge jurisdiction, "a [district] judge may . . . designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a [district] judge of the court proposed findings of fact and recommendations for the disposition" of a motion. 28 U.S.C. § 636(b)(1)(B). When, in the course of a referred proceeding, a party commits a civil contempt, "the magistrate judge shall forthwith certify the facts to a district judge and may serve . . . an order requiring such [party] to appear before a district judge . . . to show cause why that person should not be adjudged in contempt by reason of the facts so certified." *Id.* § 636(e)(6)(B). 'The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge." *Id.*

### III.    Discussion

For the reasons discussed below, the Court makes the following conclusions of law and finds the Defendants in contempt.

#### A.    Defendants Violated the January 16 Forensic Imaging Order.

As a threshold matter, at issue is whether Defendants have violated the January 16 Forensic Imaging Order. For the reasons below, this Court concludes by clear and convincing evidence that they have, and that they did not substantially comply.

The relevant plain language of the January 16 Forensic Imaging Order is as follows: "[D]efendants must now conduct a complete and proper search for documents responsive to the RFPs at issue, including . . . *[f]orensically imag[ing] any cell phone* used by an agent present at any of the 15 operations and review these devices for material responsive to RFP Nos. 2 and 3." January 16 Discovery Order at 8–9 (emphasis added). So, for Defendants to be in compliance with the Janaury 16 Discovery Order, it plainly follows that they would need to have forensically imaged.

But Defendants had not forensically imaged *any* personal phones as of May 26, 2026. OSC Order at 7. At the hearing a month later, Defendants offered no evidence that this was no longer true.

*See* Tr. In other words, Defendants have not represented to this Court that they have now started forensically imaging, nor does any of their proffered evidence suggest as much.[3] Taken together, it appears Defendants have had the consent of eighty-eight agents to start imaging phones for approximately two months—but have not yet started. This is not reflective of compliance with the January 16 Forensic Imaging Order.

Defendants do not dispute they are not in substantial compliance with the January 16 Forensic Imaging Order. Indeed, Defendants' representations, including at the hearing, confirm that they have not complied with the January 16 Forensic Imaging Order. *See* Tr. at 90:5–8 (representing Defendants "w[ould] start forensic imaging" of agents' personal phones). But Defendants have not even partially complied, nor have they provided any estimate of how long they expect it would take to comply.

Instead, Defendants repeatedly represent that this process is time-consuming. *See, e.g.*, J.R. Decl. ¶ 10 ("This [planned] level of extraction can take minutes to hours, and sometimes days per cellphone depending on the amount of data storage used on the cellphone and other variables."); Tr. at 90:22 ("It's hard to say [how much time is a fair amount to comply with Judge Pym's order as applied to the 88 agents who have consented to have their phones imaged] because the amount of time it takes to forensically image the phone depends on what's on the phone. . . . [H]owever long it takes is however long it takes.").

But the fact that phone imaging would take substantial effort does not relieve Defendants from a court order, nor does it explain why those efforts have still not meaningfully started. If anything, the time-consuming nature of the imaging process makes Defendants' delay *less* excusable. Assume that each cellphone ultimately takes days to image, and that imaging the phones

---

[3] Indeed, several of their declarations impliedly confirm that the imaging process has not yet started. *See* Motion, Ex. D, Dkt. No. 503-26 ¶¶ 9–10 ("J.R. Decl.") ("Before forensically acquiring data from a personal cellphone from an employee, LSS must first receive written consent from the owner of the cellphone . . . . Next, the Lab *will attempt* to forensically acquire the data from the personal cellphone to ensure compliance with the Court's Order. Based on the court order, the DFA *will attempt* to perform a full file system extraction[.]" (emphasis added)). In other words, Defendants' own evidence describes the process as one that has not yet begun.

is a necessary precursor to reviewing them for responsive data. If that is so, then Defendants' failure to begin that time-consuming process is all the more likely to result in delays to this case's schedule.

Having found that the other elements of civil contempt are met, this Court next evaluates whether—as Defendants contend—their good-faith, reasonable interpretation of the January 16 Forensic Imaging Order should prevent sanctions from issuing. Motion at 15. It does not. Defendants emphasize their efforts, which they characterize as reasonable and in good faith. *Id.* at 15–24. But, crucially, Defendants at no point suggest an alternate interpretation of Judge Pym's Order (let alone a good-faith or reasonable interpretation) with which they were complying. Moreover, it bears mention that they have been on notice that the January 16 Forensic Imaging Order required imaging of personal phones as of February 12, 2026—over five months ago. *See* OSC Order at 4 (noting Judge Pym's clarification that personal phones were included in the order). Nevertheless, Defendants have done little in those five months to comply the January 16 Forensic Imaging Order: Though they have explained that the process is time-consuming, they do not appear to have started it, or provided any adequate explanation as to why.[4] Moreover, Defendants appear unable to give this Court—or Plaintiffs—a realistic estimate of how long they can expect to continue waiting for the outstanding personal phones to be imaged. Tr. at 89:22–90:4. Nor do they offer any other sufficient explanation

---

[4] Though Defendants cite no competent record evidence on this point, it appears their position is that the pre-imaging process is underway. As discussed at the hearing:

> **GOVERNMENT:** I know the agency, once they receive the answers regarding the phones, they went to the companies to figure out how to go about getting these phones, they're in that process. . . . *So it shouldn't be long before they're beginning to be imaged.*
>
> **THE COURT:** . . . *[A]re we talking about days, weeks, months?*
>
> **GOVERNMENT:** *Hopefully days, possibly weeks. I don't think it'll be months.*
>
> **THE COURT:** And why is it going to be days given that these agents advised that they were willing to have their phones imaged quite some time ago?
>
> **GOVERNMENT:** Well, the agency is working on making a schedule and allowing people to be able to schedule to do this with their phones, because they're personal phones, so it's being done voluntarily by these agents. So there are some circumstances where they will arrange for the lab to go to the person, there are other circumstances where the person will go to the lab and they're arranging for the scheduling of those.
>
> **THE COURT:** You can appreciate the Court's skepticism that not one single phone has been imaged, despite all of this.

Tr. at 91:1–25 (emphasis added). This hearing took place about one month ago. Defendants, nevertheless, have supplied no information that suggests to this Court that personal phones are now beginning to be imaged.

as to why they have not been able to do more in the last five months. *Id.* at 90:9–91:23. So Defendants' noncompliance does not appear to stem from their misinterpretation of the January 16 Forensic Imaging Order.

In sum, the Forensic Imaging Order was clear—and Defendants have had months to comply. But there is no dispute that Defendants have not yet imaged or reviewed any personal phones. Thus, the Court finds that the Defendants have not substantially complied with the January 16 Forensic Imaging Order, and their noncompliance does not stem from a good-faith misinterpretation of the Order. Defendants, therefore, are violating the January 16 Forensic Imaging Order

**B.      Defendants' Noncompliance Is Intentional And Not In Good Faith.**

Having found that Defendants are in violation of the January 16 Forensic Imaging Order, the burden now shifts to Defendants to show that they were unable to comply. *Affordable Media*, 179 F.3d at 1239 (9th Cir. 1999). They fail to make that showing.

Upon review of the parties' submissions and counsel's representations at the hearing, it does not appear that Defendants' noncompliance is due to an inability to comply. Instead, the clear and convincing evidence shows that Defendants have acted intentionally and not in good faith.

Defendants' arguments to the contrary, which this Court discusses below, are unavailing.

The primary obstacles that the Defendants point to that they assert prevented them from complying with the January 16 Forensic Imaging Order are that the personal phones are not within their possession, custody, or control, or within their legal right to obtain—in part because of the Fourth Amendment.[5] This Court has referred the January 16 Forensic Imaging Order back to the Magistrate Judge for her to consider these objections. But the Defendants' actions taken after the

---

[5] In the Defendants' Objections to the January 16 Discovery Order, Dkt. No. 395, and at the hearing on their objections, the Defendants argue that:

> the personal phones at issue—and the responsive documents contained therein—are beyond their obligations under Rule 26 because they are not within their possession, custody, or control, or within their legal right to obtain. They further argue that, to the extent the Magistrate Judge *did* consider the proportionality of discovery to the needs of the case, her determination that it was proportional constitutes clear error, and this Court should set aside or modify the Orders accordingly.

See Dkt. No. 579.

January 16 Forensic Imaging Order—or, rather, their inaction—demonstrate that it was not their objections that were the obstacle.

Moreover, Defendants do not appear to take the view that all of the phones were outside their possession, custody, or control, or their legal right to obtain. It is axiomatic, for example, that a "warrantless consent search is reasonable and thus consistent with the Fourth Amendment." *Fernandez v. California*, 571 U.S. 292, 306 (2014). Eighty-eight agents have now consented to imaging of their personal phones, meaning that imaging those phones would have no Fourth Amendment implications and are within the Defendants' legal right to obtain. Nevertheless, Defendants have not started. Put another way, Defendants' possession-based objections to the January 16 Forensic Imaging Order—at most—implicate some, but not all, of what Defendants would need to do to comply. Instead of beginning partial compliance in good faith pending the adjudication of their objections, however, Defendants have imaged no phones. So even crediting Defendants' possession-based objections as meritorious, Defendants fall short.

Nor have Defendants timely completed the steps prerequisite to imaging phones. In particular, Defendants unduly delayed in taking numerous actions to which their objections do not apply. For example:

- They did not attempt to identify which agents involved in the operations used a personal phone in connection with the relevant operations until sometime between April 22 and May 4, 2026. *See* OSC ¶¶ 27–29; *see also* Motion, Ex. B, Dkt. No. 503-24 at 1 (asking agents to "complete and sign [a] declaration attesting whether they used their personal phones or not during the 15 operations listed in the Court Order" on April 22, 2026); Motion, Ex. C, Dkt. No. 503-25 ¶¶ 6–7 ("D.S. Decl.") (CBP Commissioner on May 4, 2026, alleging that "it is [their] understanding that the Questionnaire," which "documents the process of compliance, provides additional clarity as to where relevant information is stored on each phone, and expedites CBP's ability to consolidate the information and

11

prepare it for production," "was rolled out to employees that CBP records indicate were part of Operation at Large"[6]).

- They did not ask for agents to for their consent to image personal phones turn over the phones for review until they issued the CBP questionnaire or the ICE declarations request—again, sometime between April 22 and May 4, 2026. *See* Motion, Ex. B, Dkt. No. 503-24; D.S. Decl. ¶ 6–8.

- To this date, they do not appear to have taken steps to secure the personal phones that agents have agreed to submit for imaging.

- Their submitted materials suggest that they failed to inform the agents that, if they declined to voluntarily turn over their phones, the Plaintiffs could seek them through third-party discovery.

The Government has offered no explanation as to the delay for these tasks: The Government had been aware since February that the January 16 Forensic Imaging Order included personal phones. Nor is it clear that a reasonable party, acting in good faith, would take over two months to prepare and send the CBQ questionnaires and the ICE declarations.[7] So the Government's actions leading up to May 4, 2026, demonstrate undue delay and a disregard for the January 16 Forensic Imaging Order. Equally unexplained is the Government's failure to image any personal phone in the over two months since May 4, 2026—when the Government asked agents for their consent, and in some cases, started receiving it. It has now been nearly three months since the Government became aware that many of its agents *do* consent to the personal imaging of their phones for over two months. Nevertheless, it does not appear to have taken material steps to begin imaging those phones.

---

[6] The Government's materials suggest that, at the earliest, the CBP questionnaire was sent to agents on April 28, 2026. *See* D.S. Decl. ¶ 6 ("As of April 21, 2026, both unions were notified that the Questionnaire would be sent to all employees who CBP believes were part of Operation at Large – Los Angeles (LA). CBP provided a seven to ten-day response window for the unions.").

[7] The Government's materials suggest that "CBP had to determine what obligations the Agency had under its bargaining unit obligations to the National Treasury Employees Union and the National Border Patrol Council, as employees of both the Office of Field Operations and U.S. Border Patrol were impacted by the Court's order." D.S. Decl. ¶ 4. But it only appears that the unions were notified as of April 21, 2026, and given up to ten days to respond. *Id.* ¶ 6. So this does not help Defendants in making a showing of diligence or good faith.

When asked in the hearing what they contemplated for review and production of this material if the Court was to find it was within the possession, custody, and control of the agents and not the Defendants, Defendants represented that Plaintiffs should have served third-party discovery directly on the approximately 1,800 agents at issue. *See* Tr. at 22:23–23:25. Defendants explained that, should agents seek to be represented by their relevant agencies, Plaintiffs could serve those requests on the agencies. *Id.* at 24:23–25:11. This, Defendants conceded, would obviate their argument that Plaintiffs are requesting discovery that is not in Defendants' possession, custody, or control. *Id.* at 12:16.

* * *

Given that Plaintiffs have shown by clear and convincing evidence that the Defendants violated a specific and definite order of the court, the burden shifted to Defendants to demonstrate why they were unable to comply.[8] They have failed to do so.

The Court finds Defendants in contempt.

**SANCTIONS ORDER**

Having found the Defendants in contempt, this Court is to determine the sanctions that shall apply.

"Where the purpose of a civil contempt sanction is to coerce good faith efforts to comply with a discovery request, contempt is proper." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1480 (9th Cir. 1992). District courts "should apply the least coercive sanction (e.g., a monetary penalty) reasonably calculated to win compliance with its orders." *United States v. Flores*, 628 F.2d 521, 527 (9th Cir. 1980) (internal quotation marks omitted). Relevant factors include "'the extent and the nature of the hardship that inconsistent enforcement would impose upon the person, . . . [and] the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state.'" *See Richmark*, 959 F.2d at 1475.

---

[8] The Court notes that the Defendants currently have outstanding objections, but the Court's understanding is that—outside of the possession objections—Defendants are arguing why they *should not be required* to comply, not why they are *unable* to comply. This is consistent with the arguments made at the hearing.

The Court finds that two sanctions are warranted: a prospective conditional fine and attorneys' fees and costs.

First, the Court finds that a prospective conditional fine is warranted unless and until the Government fully complies with the January 16 Forensic Imaging Order. Plaintiffs have requested the reasonable amount of $500 per day. Motion at 1. Based on the facts as described above, this Court finds the amount is reasonable, but no greater than necessary, to coerce the Government's good faith efforts to comply with the January 16 Forensic Imaging Order. Because the Government has substantial resources at its disposal, this Court does not anticipate that this amount will pose an undue hardship for the Government, but it expects that it will encourage the Government's efforts to comply with their discovery obligations. The contempt may be purged by complying with the January 16 Forensic Imaging Order. Once the Government complies, the fine will stop accruing.

As stated above, the Government's pending objections do not apply to much of the Order. Should the Government believe that it has fully complied aside from its pending objections concerning possession, custody, and control, it may file a request to have the payments pause.

Second, an award of attorney's fees and costs under Rule 37(b)(2)(C) is required. *See David*, 560 F.2d at 421 (noting that a fees award is justified to the extent it "represent[s] the costs arising from the [Defendants'] failure to obey the [discovery] order"). This will include the attorney's fees and costs occasioned by the Motion to Compel, the Motion for an OSC, and the OSC hearing. The parties are ordered to meet and confer and file a joint status report advising this Court as to their respective positions on the amount of attorney's fees and costs recoverable by Plaintiffs.

## IV.  Conclusion

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Defendants are hereby held in contempt.

2. Defendants are ordered to pay $500 per day to the Clerk of Court as a coercive sanction until they fully comply with the January 16 Order.

3. Should the Government believe that it has fully complied aside from its pending objections concerning possession, custody, and control, it may file a request to have the payments pause. Payments shall continue unless and until the Court orders otherwise.

14

4. Defendants are ordered to file a notice of payment every seven (7) days, beginning seven (7) days from the date of this Order, until this Court orders otherwise.

5. The parties are ordered to meet and confer regarding attorneys' fees and costs, and to file a joint status report within fourteen (14) days of this Order advising this Court as to their respective positions on the appropriate amount.

6. The parties shall meet and confer regarding what portions (if any) of this Order should be sealed, and shall file a joint statement describing as such within fourteen (14) days of this Order. The Joint Statement shall include all details required for a motion to seal under the local rules (e.g., the parties must justify why the information they seek to seal warrants sealing, and must file a declaration in support). The Joint Statement shall also include as an attachment a version of this Order with proposed redacted language highlighted in yellow, pursuant to Local Rule 79.5.2.2. That attachment may be filed under seal. The parties shall also email to chambers a PDF with redactions in black for the Court to file in the event that the redactions are approved. This Order shall be conditionally sealed in its entirety in the interim.

IT IS SO ORDERED.

Dated: July 28, 2026

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

15