BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

BRANTLEY T. MAYERS
Counsel to the Assistant Attorney General
Civil Division

ANDREW I. WARDEN
C. LEE REEVES, II
Civil Division, Federal Programs Branch
    1100 L St. NW
    Washington, D.C. 20005
    Telephone: (202) 616-0773
    E-mail: Lee.Reeves2@usdoj.gov

JONATHAN A. ROBBINS
Civil Division, Office of Immigration Litigation
450 5th Street NW
Washington DC 20044
(202) 305-8275
Jonathan.A.Robbins@usdoj.gov

*Attorneys for the United States*

## UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re Subpoena to Coalition for Humane Immigrant Rights (CHIRLA)**<br><br>Served in the United States District Court for the Northern District of Illinois (Case No. 26-cv-321)<br><br>STATE OF ILLINOIS *et al.*,<br>       Plaintiff, | **No: 2:25-cv-05605-MEMF-SP**<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO TRANSFER MOTION TO QUASH SUBPOENA ISSUED BY THE STATE OF ILLINOIS AND THE CITY OF CHICAGO TO COALITION FOR HUMANE IMMIGRANT RIGHTS** |

v.

DEPARTMENT OF HOMELAND
SECURITY, *et al.*,
                    Defendants.

## I.    INTRODUCTION

This miscellaneous action involves a third-party subpoena to the plaintiff in this case, Coalition for Humane Immigrant Rights (CHIRLA), issued by plaintiffs in a separate action, the State of Illinois and the City of Chicago, that is currently pending in the Northern District of Illinois. *See State of Illinois et al., v. Department of Homeland Security, et al.*, Case No. 26-cv-321, (N.D. Ill.). Defendants United States Department of Homeland Security (DHS), Defendant Markwayne Mullin, in his capacity as Secretary of the Department of Homeland Security, United States Immigration and Customs Enforcement (ICE), David Venturella, in his capacity as Interim Director of ICE, Samuel Olson, in his capacity as the Chicago Field Director ICE, United States Customs and Border Patrol (CBP), Rodney Scott, in his capacity as CBP Commissioner, and Tom Homan, in his capacity as Border Czar (collectively "Defendants"), and as non-parties to the document subpoena at issue in this miscellaneous action, have previously filed a motion to quash the subpoena. *See Vasquez Perdomo v. DHS*, 25-cv-05605 (C.D. Cal.) (Dkt. #578). Thereafter, non-party Plaintiffs State of Illinois and the City of Chicago (collectively "Illinois Plaintiffs" or "Petitioners") sought to transfer Defendants' motion to quash the subpoena to the United States District Court for the Northern District of Illinois.

This Court is the proper venue for adjudicating the motion to quash. Although the subpoena in question is directed to CHIRLA, the materials that the subpoena seeks are not CHIRLA's. Rather, they are federal government documents and information that the *Perdomo* Defendants produced to CHIRLA in discovery in the *Perdomo* litigation. This Court has been intimately involved in the discovery process since this case began over one year ago, and has significant familiarity with both the documents/materials in question, as well as how the third-party subpoena, if granted, would have harmful collateral consequences for the *Perdomo* Defendants and the *Perdomo* litigation more generally.

Petitioners have therefore not shown the required "exceptional circumstances" to

justify a transfer under Federal Rule of Civil Procedure 45(f). To the contrary, resolution of the motion to quash has substantial implications for the *Perdomo* parties, and transfer poses significant risk of interfering with issues currently being litigated in *Perdomo*. This Court is far better positioned to address those case-specific issues. Further, resolution of the motion to quash by the Northern District of Illinois threatens to create dueling, irreconcilable obligations across the two cases. This Court has entered a protective order governing the *Perdomo* discovery, and Defendants' actions to date have been taken in reliance on that order. Were this Court to transfer Defendants' motion to quash, and were the Northern District of Illinois to subsequently deny that motion in whole or in part, the *Perdomo* Plaintiffs would then be under an obligation to produce documents that would run afoul of the protective order in place in *Perdomo*. In that scenario, the parties would again have to return to this tribunal for further proceedings. There is no compelling reason to create the potential of dueling court orders when this Court can address everything at once.

Rule 45 creates a presumption in favor of local resolution of non-party subpoena disputes, and Petitioners have not carried their heavy burden to warrant transfer, particularly in light of the collateral consequences that Plaintiffs' requested transfer would likely create in the *Perdomo* litigation. Petitioner's motion to transfer should be denied.

## II.    FACTUAL BACKGROUND

### A.    *Illinois v. DHS* (N.D. Ill.)

The subpoena at issue in this matter arises from a civil action brought by the Illinois Plaintiffs against the Department of Homeland Security, its subcomponents, and various senior officials in their official capacities ("DHS"). *See State of Illinois et al. v. Department of Homeland Security et al.*, Case No. 26-cv-321 (N.D. Ill.). In September 2025, DHS launched Operation Midway Blitz to address the dangers arising from the presence of illegal aliens in the Chicago area, including members of gangs who have engaged in violent crimes and drug trafficking. Illinois and Chicago have sanctuary laws

and policies that limit the cooperation of state and local officials with federal immigration officials, which has hindered the federal government's ability to enforce immigration laws in Illinois and Chicago, and has exacerbated the dangers posed by certain illegal aliens.  Operation Midway Blitz led to the successful arrest and subsequent deportation of illegal aliens including murderers, child abusers, kidnappers, gang members, and armed robbers.  In late 2025, the surge of DHS personnel deployed to the Chicago area demobilized and Operation Midway Blitz ended.

On January 12, 2026, Illinois filed suit challenging all aspects of DHS's immigration enforcement operations within the greater Chicago area during Operation Midway Blitz.  *See Illinois*, Compl. Dkt 1.  The Complaint spans over 100 pages and contains 19 constitutional and statutory claims for relief.  *See id.*  Count 1 alleges that DHS's immigration enforcement actions in Illinois violate the Tenth Amendment of the United States Constitution (Compl. ¶¶ 316-34).  Count 2 alleges that the U.S. Customs and Border Protection's (CBP) operations in Illinois exceed its authority, which Plaintiffs claim is confined to areas near the nation's border (Compl. ¶¶ 335-44).  Claims 3-17 allege various violations of the Administrative Procedure Act (APA), 5 U.S.C. § 706.  These 15 claims collectively challenge seven purported immigration enforcement-related practices or policies: (i) roving patrols (Counts 3 & 4) (*id.* at ¶¶ 345-59); (ii) biometric scanning (Counts 5 & 6) (*id.* at ¶¶ 360-76); (iii) warrantless arrests (Counts 7 & 8) (*id.* at ¶¶ 377-89); (iv) tear gas (Counts 9 & 10) (*id.* at ¶¶ 390-404); (v) enforcement operations "at or near sensitive locations," including courthouses (Counts 11 & 12) (*id.* at  ¶¶ 405-18); (vi) concealing of license plates on motor vehicles used by Defendants in immigration enforcement operations (Counts 13 & 14) (*id.* at ¶¶ 419-32); and (vii) unlawfully trespassing on private property in connection with immigration-related enforcement operations (Counts 15-17) (*id.* at ¶¶ 433-53).  Counts 18 and 19 are catch-all claims seeking injunctive and declaratory relief, respectively, against the alleged policies noted above.  (*id.* at ¶¶ 454-64).

The Court authorized Illinois to serve third-party subpoenas on the plaintiffs in

*Perdomo*, subject to certain express limitations.  As relevant here, the Court explicitly declined to authorize subpoenas for any materials over which there is an ongoing privilege dispute or for which the United States claims are subject to law enforcement or other privilege.  April 23, 2026 Hearing Tr. 18:10 – 19:22 (attached as Exhibit 1).

> **B.**     ***Vasquez Perdomo v. Mullin* (C.D. Cal.)**

On June 20, 2025, three aliens arrested in the Los Angeles area filed a habeas petition seeking release from immigration detention. The plaintiffs, all day laborers, had been arrested in Pasadena, California on June 18 during a "targeted enforcement action at a doughnut shop" where surveillance and intelligence indicated that the target and his associates were recruiting unauthorized workers for landscaping jobs. At least two of the three Plaintiffs had attempted to escape arrest by running from officers. All three were later released and are no longer in government custody. *See Vasquez Perdomo*, 25-cv-05605, Dkt 146 at 1.

On July 2, 2025, the plaintiffs filed an amended class-action complaint seeking to enjoin the government's alleged "ongoing pattern and practice" of unlawful stops and arrests specifically "in connection with ongoing immigration raids in the Los Angeles area." *Id.* Dkt 16 ¶ 1. On July 11, 2025, the district court granted the plaintiffs' motion for a temporary restraining order ("TRO"), enjoining all investigative stops based on four enumerated factors alone or in combination: race, language, location, or occupation. *See id.* Dkt 87. Defendants appealed and sought stays before the district court and Ninth Circuit; both motions were denied. *Id.* Dkt 89, 94, 108, 109.

On September 8, 2025, the Supreme Court stayed the Fourth Amendment TRO pending appeal. *See Noem v. Perdomo,* 146 S. Ct. 1 (2025). Largely adopting the government's arguments against standing and finding they would likely succeed on the merits, Justice Kavanaugh issued a comprehensive concurring opinion, finding that the Government made a sufficient showing to obtain a stay pending appellate review and emphasized the significance of the Government's interests in immigration enforcement, while highlighting the need of the Judiciary to not "improperly restrict reasonable

Executive Branch enforcement of the immigration laws." *See* id. at *5 (Kavanaugh, J., concurring).

On October 17, 2025, after having dissolved the stayed TRO, the district court granted the plaintiffs limited, expedited discovery in support of their forthcoming motion for a preliminary injunction. *Vasquez Perdomo*, 25-cv-05605, Dkt 223. Over the span of several months, the government has produced an array of materials pertinent to Los Angeles targeted operations as part of Operation at Large – Los Angeles, with a particular temporal focus on 15 operations between June and September 2025. Despite the tens of thousands of documents produced in limited discovery, the government was subject to several orders compelling additional discovery related to these 15 operations, including reproductions of previously redacted documents where the government asserted privilege, *id.* Dkts 338 (attorney-client and work product privileges), 365 (law enforcement privilege), as well as intrusive forensic imaging of present agents' government *and personal* phones, *id.* Dkt. 370. The government timely objected to all three orders, which remain pending before the district judge, *id.* Dkts 380, 391, 395.

Given the parties' mutual understanding that discovery had to proceed, the government agreed to reproduce and continue producing documents without redacting for law enforcement privilege ("LEP"), subject to clawback should the government prevail on their objections before the district judge. Various documents produced in discovery would potentially be subject to clawback should the district judge conclude that the government properly asserted LEP.

*Perdomo* defendants have received four expansive sets of requests for production—which has resulted in 28,482 pages produced thus far. Discovery produced to date is inclusive of (1) communications about Los Angeles operations such as agents' emails, text messages, WhatsApp messages, Zello radio chats; (2) standardized documentation of targeted operations in Los Angeles, such as Form I-213s (Record of Deportable/Inadmissible Alien), target sheets, narratives of arrest, end of shift summaries; (3) training materials and documentation; and (4) videos produced from

Operation at Large Los Angeles agents' body worn cameras and SUAS drones surveilling areas within Los Angeles ahead of targeted operations. As detailed above, the discovery produced in *Vasquez Perdomo* is further complicated by the fact that these categories of production are currently subject to three independent objections currently before the district court as to privilege and scope. This discovery is also complicated by the fact various documents the government has produced to the *Perdomo* plaintiffs may be subject to the parties' clawback agreement as to LEP in the event that the government prevails on their pending objections. If they prevail, the government would be entitled to clawback all unredacted documents to be reproduced with the properly asserted privilege.

Additionally, Defendants have been expending enormous effort and resources to comply with the district court's order expanding the scope of limited, expedited discovery, *Vasquez Perdomo*, 25-cv-05605, Dkt. 370—which requires, among other things, the forensic imaging of any and all phones used by agents present at the fifteen operations in Los Angeles (including officers temporarily deployed from other duty stations across the nation to support the government's lawful immigration enforcement operation). Given the scope and pace of expedited discovery, the government has also had to hire contractors and pull a multitude of other Justice Department attorneys off other important national litigations to assist with this large-scale review in limited discovery.

### C.    *Illinois* Subpoena

By subpoena dated May 14, 2026, the *Illinois* plaintiffs sought from the *Perdomo* plaintiffs any and all documents and materials produced by the *Perdomo* defendants related to roving patrols, warrantless arrests, and immigration-related enforcement efforts at sensitive locations.  *See* Exhibit 2 (Subpoena dated May 14, 2026).  The *Illinois* plaintiffs seek the following:

1. All training or guidance provided to agency personnel related to roving patrols, warrantless arrests, and actions at sensitive locations on topics including but not limited

to: the difference between a consensual encounter and a seizure; the factors that may be considered in deciding whether to initiate a consensual encounter or arrest including a vehicle stop; appropriate use of force; other considerations for initiating and conducting a roving patrol, warrantless arrest, or action at a sensitive location; and documentation requirements for roving patrols, warrantless arrests, and actions at sensitive locations;

2. All documents relating to the conduct of operations between June and August, 2026, including Field Operations Worksheets, targeting sheets, operations plans, pre-operations briefings, intelligence reports, targeting packages, notes, videos (including body camera footage), Administrative Warrants, Form I-213s, database entries, post-operation briefings, after-action reports, other communications describing or characterizing the operations, documents reflecting review of the operations, and documents reflecting any arrest quotas;

3. Communications through messaging of any kind (including text messaging, chats, or messaging through a mobile application) between or including any Vasquez Perdomo Defendants or agency personnel concerning roving patrols, warrantless arrests, or actions at sensitive locations;

4. The Vasquez Perdomo Defendants' response to, and all documents referenced, reviewed, or relied upon by the Vasquez Perdomo Defendants in responding to, CHIRLA's Expedited Interrogatories to Defendant Noem, Set One, No. 4, Dkt. 211-1; and

5. All documents filed with the Court as attachments or evidence in support of any motion, response, or other filing by the Vasquez Perdomo Defendants.[1]

### III.   ARGUMENT

Federal Rule of Civil Procedure 45 provides that a subpoena "must issue from the court where the action is pending" (in this case, from the Northern District of Illinois).

---

[1] Only Requests for Production (RFP) 1-3 remain in dispute.  The parties have reached a mutually acceptable resolution as to RFP's 4 & 5.

Fed. R. Civ. P. 45(a)(2). Motions to quash a subpoena, however, must be filed in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(3)(A). The *Illinois* subpoena designates the location of compliance as Los Angeles, California, thus Defendants' moved to quash the subpoena in this Court.

Rule 45(f) creates a narrow exception to the default rule favoring local resolution of non-party subpoena matters and provides for only two limited circumstances where the compliance court may transfer a subpoena-related motion to the court where the underlying action is pending. Transfer is only authorized "if the person subject to the subpoena consents or the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). The Government does not consent to transfer the motion to compel to the United States District Court for the Northern District of Illinois. Consequently, the Illinois Plaintiffs have the burden to establish that "exceptional circumstances" justifying transfer exist. *See* Fed. R. Civ. P. 45(f), Advisory Committee Note (2013 Amendment) ("the proponent of transfer bears the burden of showing that such circumstances are present"). The Illinois Plaintiffs have not carried their burden in this case.

As an initial matter, the "exceptional circumstances standard was selected to ensure that transfer was a rare event." *See* 9A Charles Alan Wright, *et al.*, Federal Practice and Procedure § 2451 (3d ed. April 2016 Update) (compliance court should rule on non-party subpoena motions "in all but the rarest cases"); *see also* 9 James Wm. Moore, *et al.*, Moore Federal Practice § 45.50[4] (3d ed.) ("With Rule 45(f) requiring 'exceptional circumstances' for a court-ordered transfer, transfer of a subpoena-related motion is likely to continue to be unusual."). This mandate comports with the ordinary meaning of the word "exceptional." *Cf. Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014) (defining the term "exceptional" as used in the Patent Act as "uncommon," "rare," or "not ordinary" by reference to various dictionary definitions). Further, "it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions." *See* Fed. R. Civ. P. 45(f), Advisory Committee Note (2013 Amendment). The rationale for limiting transfer to truly

exceptional circumstances is to "avoid[] burdens on local nonparties subject to subpoenas" and to create a default rule favoring "local resolution of disputes about subpoenas" *See id.*; *see also See Woods ex rel. U.S. v. SouthernCare, Inc.*, 303 F.R.D. 405, 407 (N.D. Ala. 2014) ("local nonparties should be burdened as little as practicable by litigation in which they are not involved, and local resolution of the motion will typically impose a lighter burden").

In considering whether "exceptional circumstances" exist, courts have considered "a number of factors relating to the underlying litigation." *Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014). "These factors include the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation." *E4 Strategic Sols., Inc. v. Pebble Ltd. P'ship*, 2015 WL 12746706, at *3 (C.D. Cal. Oct. 23, 2015) (citing *Valle Del Sol)*. Rule 45(f) does not define "exceptional circumstances" and the advisory committee notes identify only one reason as an exceptional circumstance: "disrupting the issuing court's case management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." *See* Fed. R. Civ. P. 45(f), Advisory Committee Note (2013 Amendment); *see also Isola USA Corp. v. Taiwan Union Tech. Corp.*, No. 12-CV-01361-SLG, 2015 WL 5934760, at *2 (D. Mass. June 18, 2015), *report and recommendation adopted*, No. 4:15-MC-94003, 2015 WL 5944286 (D. Mass. Feb. 2, 2015) ("The Advisory Committee Notes reinforce the notion that transfer authority is narrow.").

Although the Illinois Plaintiffs argue that [the Illinois Court] is best suited" to resolve the various subpoena-related issues that Defendants have raised, Dkt 601-1 at 8, "it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions." *E4 Strategic Sols.,* 2015 WL 12746706, at *2 (citing 2013 Advisory Committee Note). Rather, "prime concern should be avoiding burdens on local nonparties subject to subpoenas," which in this context is properly understood as

9

the Defendants, because it is their information that the Illinois Plaintiffs are seeking from CHIRLA. *Id.* Even if the Court finds exceptional circumstances exist, "[t]ransfer is appropriate only if such interests outweigh the interest of the nonparty served with the subpoena in obtaining local resolution of the motion."[2] Id. at *3 (citing *Valle del Sol, Inc. v. Kobach*, No. 14-MC-219, 2014 WL 3818490, at *3 (D. Kan. Aug. 4, 2014)). Again, given that the information in question belongs to the federal government, it is the pertinent nonparty for purposes of the Rule 45(f) transfer analysis.

The Illinois Plaintiffs advance two main arguments in support of transfer. They first argue that because the subpoena recipient, CHIRLA, consents to transfer, Defendants consent is both unnecessary and immaterial. *See* Dkt. 601 at 4 (arguing "CHIRLA consent to transfer of Defendants' motion to the [Northern District of Illinois] . . . . is sufficient to warrant transfer," and that because "Defendants are not the party subject to the subpoena, so their position has no bearing on the question of consent to transfer.") (citing *In re Google LLC*, No. 24-MC-80009-VKD, 2024 WL 217842, at *2 (N.D. Cal. Jan. 19, 2024). Second, Plaintiffs argue that the Northern District of Illinois—as the court that authorized the subpoena and is handling the litigation initiated by the Illinois Plaintiffs—is better suited to address the relevancy and undue burden issues Defendants have raised. Neither of these arguments warrants a finding of exceptional circumstances to justify transfer.

---

[2] This is "not a strict balancing test" in which "the circumstances favoring transfer are simply to be weighed against the interests of the nonparty in obtaining local resolution." *Woods ex rel. U.S. v. SouthernCare, Inc.*, 303 F.R.D. 405, 407 (N.D. Ala. 2014). Rather, "exceptional circumstances must first be found before any balancing takes place." *Id.*; *see also Google, Inc. v. Digital Citizens All.*, No. 15-MC-707 JEB/DAR, 2015 WL 4930979, at *4 (D.D.C. July 31, 2015) ("Once exceptional circumstances are found," then the court must consider burdens on the non-party).

As an initial matter, it is both axiomatic and undisputed that the federal government has substantial equities in whether and under what circumstances its information is disseminated. *See, e.g.*, *United States v. Napper*, 887 F.2d 1528, 1530 (11th Cir. 1989) (vindicating the Federal Government's property interest in "documents which it owns and which the City of Atlanta possesses, [and] has no right to disseminate"); *United States v. City of Seattle*, 2017 WL 176541, at *1 (W.D. Wash. Jan. 17, 2017) (stating that "information the [FBI] shared with the City" is "federal property, subject to the FBI's right to control and prohibit the disclosure of the information by the City, absent the express authorization of the FBI"); *United States v. Story Cnty.*, 28 F. Supp. 3d 861, 873 (S.D. Iowa 2014) (concluding that "the United States," as "the owner of the records … not Story County [which possessed them], has the right to determine whether and to whom the records should be disseminated"); *Chinn v. Blankenship*, 2010 WL 11591399, at *2, 5 (W.D. Wash. Feb. 26, 2010) (denying motion to compel production of "requested federal documents" where it "was not directed towards the relevant federal agencies" who owned the documents, but at the "City and County Defendants" in possession of them). CHIRLA, by contrast, has no interest in the documents in issue here, nor do the Illinois Plaintiffs even suggest as much.

Regarding transfer, then, the Illinois Plaintiffs' argument is that the United States' interests in its own documents do not matter, but CHIRLA's indifference is dispositive. Plaintiffs misread their own cases. Regarding consent and the Rule 45(f) transfer analysis, and as Plaintiffs' cited cases confirm, courts focus on the consent (or lack thereof) of the entity whose interests are implicated by the subpoena/third-party discovery, *not* their status as parties or non-parties.

In *In re Google*, Google was a third-party to a lawsuit between an individual (Jeffrey Isaacs) and a realty company (Keller Williams Realty, Inc.) arising out of an uncompleted transaction for the sale of Williams' home. *See Isaacs v. Keller Williams Realty, Inc.*, Case. No. 9:23-cv-81393-RLR (S.D. FL). Issacs issued various subpoenas to Google for documents and testimony in the Northern District of California, and

11

Google filed a motion to quash in the California action. *See In re Google LLC*, at *1. In transferring the motion to the Southern District of Florida, it noted that Google—the party whose interests were implicated by the subpoena—consented to the transfer. *In re Google* made no mention of the views of defendant Keller Williams Realty in its transfer analysis, which was the third-party to the subpoena. That absence makes sense because Google, not Keller Williams Realty, had equities implicated by Isaacs' subpoenas to Google. Here, the subpoena concerns federal government documents and materials that implicate the United States' interests, not CHIRLA's.

Similarly, *B&G Foods N. Am., Inc. v. Embry*, No. 24-CV-1779-AJB-MMP 2024 WL 4631280, at *1 (S.D. Cal. Oct. 30, 2024), provides no help to the Illinois Plaintiffs. There, "both the person subject to the subpoena [third-party to the litigation, Craig Nicholas], and B&G, the subpoenaing party, consented to the transfer of resolution of a motion challenging the pending subpoena to the Eastern District of California, the issuing court. [] Thus, the Court finds transfer is appropriate under Rule 45(f) based on consent.")." As with *In re Google*, the Court did not consider the views of defendant Embry in the transfer analysis for the obvious reason that Embry's interests were not implicated. For that reason, Nicholas's consent—not Embry's—was dispositive. *See Cattle & Beef Antitrust Litig. v. JBS S.A.*, No. 8:22CV204, 2022 WL 17718553, at *4 (D. Neb. Dec. 15, 2022) (denying motion to transfer motion to quash subpoena based on objection of party whose interests were implicated by the subpoena).

Much of the Rule 45(f) transfer jurisprudence is premised on the subpoena recipient having equities in the underlying information being sought. In the typical case, a party receives a subpoena for its own information/documents, and so therefore has an interests in the resolution of subpoena-related litigation. That is not the case here: The documents in question do not belong to, and do not implicate the interests of, subpoena recipient CHIRLA. That absence of interest renders CHIRLA's views on transfer irrelevant.

Imagine a hypothetical intellectual property lawsuit against Boeing initiated by a

manufacturer of component parts used by Boeing in its aircraft.  Further imagine a separate intellectual property lawsuit in a separate jurisdiction initiated by Airbus—a Boeing competitor—against Boeing.  Under the Illinois Plaintiffs' theory of consent, were Airbus to issue a subpoena to the component manufacturer in the first lawsuit for Boeing's documents produced by Boeing to the plaintiff-component manufacturer there, Boeing's views on transfer in the second litigation would not matter.

That cannot be right.  Plaintiffs cite no case in which the views of the party whose interests are implicated by discovery requests can be trumped—and indeed, rendered irrelevant in the transfer analysis—by the consent of parties/third-parties whose interests are not implicated.  In the hypothetical above, it would be absurd if a Boeing competitor and a third-party suing Boeing could make dispositive decisions regarding the dissemination of Boeing's intellectual property without Boeing having the legal right to have a say.  Accordingly, Plaintiffs' argument that CHIRLA's consent is dispositive in the Rule 45(f) transfer analysis is mistaken.

The Illinois Plaintiffs also argue that "there are strong reasons to transfer the motion [to quash]" from this tribunal to the Northern District of Illinois.  Dkt. 601-1 at 5.  In this respect, Plaintiffs first argue that "[t]he primary reason Rule 45 directs the filing in the [the Central District of California rather than the Northern District of Illinois] . . . is to be sensitive to the burdens imposed on CHIRLA," the subpoena recipient.  *Id.*  This is essentially a rehash of the Illinois Plaintiffs' misguided arguments about consent.  As explained above, there are no burdens on CHIRLA.  Not only that, CHIRLA has no interest in producing, or not producing, the documents and information in question because the materials are not CHIRLA's.

Plaintiffs next argue that the Illinois Court, by virtue of its familiarity with the Illinois litigation and the third-party subpoena litigation, is best suited to address the issues raised in Defendants' motion to quash.  As to relevancy, Plaintiffs correctly note that the Illinois court has been overseeing the Illinois litigation for six-months, but the case is merely at the initial stages and has not progressed beyond briefing Defendants'

motion to dismiss.  This is not a situation where the Illinois Court has presided over and actively supervised the case for many years, such that it has particularized factual expertise in the disputed discovery issues.  *Cf. Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 35 (D.D.C. 2014) (granting transfer where the case has been pending for "four years and has involved innumerable discovery disputes"); *In re UBS Fin. Servs., Inc. of Puerto Rico Sec. Litig.*, 113 F. Supp. 3d 286, 288 (D.D.C. 2015) ("The case has been pending in the District of Puerto Rico for almost three and a half years, and Judge Cerezo has issued a multitude of orders resolving significant procedural and discovery disputes during that time.").  The mere fact that the Illinois is generally familiar with the underlying substantive aspects of the litigation "cannot be what Congress meant when it required a finding of exceptional circumstances, otherwise the exception would swallow the rule." I*n re Subpoena on Sorrento Therapeutics, Inc.*, No. 3:17-CV-2442-WQH-NLS, 2018 WL 788899, at *2 (S.D. Cal. Feb. 8, 2018) (quoting *Isola USA Corp. v. Taiwan Union Tech. Corp.*, No. 12-CV-01361-SLG, 2015 WL 5934760, at *3 (D. Mass. June 18, 2015)).  Rule 45(f)'s "exceptional circumstances" standard would be meaningless if, as is the case here, transfer were required every time the underlying Court was considering a motion to dismiss before any case management deadlines had issued.  Neither Rule 45 nor the advisory committee notes contemplate transfer in such a routine circumstance

In contrast to the Illinois litigation, discovery has been proceeding in the Central District of California for nearly a year  and has overseen the production of in excess of 30,000 pages of materials to date by Defendants.  There can be no serious argument that the Illinois court—which has no familiarity to date with the materials subject to the subpoena—is somehow better suited to adjudicate relevance claims than this tribunal, which has overseen an active discovery process and adjudicated numerous discovery-related disputes.  *See Cadence Pharm., Inc. v. Multisorb Techs., Inc.*, No. 16-MC-22G, 2016 WL 4267567, at *6 (W.D.N.Y. Aug. 15, 2016) ("determination of relevance in discovery generally is not exceptional; such decisions occur with almost every motion to

compel").

Importantly, neither of the two specific case management criteria expressly identified as exceptional circumstances in the advisory committee notes to Rule 45(f) are present in this case. First, this case does not involve a situation in which the Northern District of Illinois "has already ruled on issues presented by the motion" to compel. *See* Fed. R. Civ. P. 45(f), Advisory Committee Note (2013 Amendment). As explained above, discovery has not even begun in the *Illinois* case, and the Court has not issued any substantive rulings on discovery matters, let alone on issues similar to those raised by the motion to compel, such as relevance or burden regarding document production. Therefore, a ruling by this Court on the motion to compel will not conflict or otherwise interfere with a prior decision from the *Illinois* Court, or disrupt the case management of the underlying action. *Cf. Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*, 301 F.R.D. 426, 429 (N.D. Cal. 2014) (granting transfer because discovery motion "clearly presents an issue upon which [the court presiding over the underlying litigation] has already ruled").

Second, the discovery dispute in this case does not present a situation where "the same issues are likely to arise in discovery in many districts," thereby favoring consolidation before the forum court to avoid inconsistent rulings. *See* Fed. R. Civ. P. 45(f), Advisory Committee Note (2013 Amendment). No other similar subpoena enforcement matters are pending in other judicial districts, thus there is no risk of judicial inefficiency or conflicting rulings if this Court decides the motion to quash.

As to burden, the Illinois Plaintiffs' motion to transfer is most notable, in two respects, for what it does ***not*** say. First, the Illinois Plaintiffs do not acknowledge that in the event that their motion to transfer is successful, and if the Illinois Court does not quash the subpoena in its entirety, the Illinois Court's subpoena determination will necessarily conflict with the protective order already established by this Court. Specifically, this Court's protective order provides that confidential information "shall not be disclosed or used for any purpose outside of this Action, absent further order of

15

the Court." ECF No. 247 ¶ B.6. Nothing in the protective order authorizes a party to disregarding the confidentiality restrictions because of an order issued by another district court. Therefore, in the event the motion to quash is transferred to the North District of Illinois and production of the documents is ordered, there will necessarily be further proceedings before this Court to reconcile those conflicting legal obligations. So contrary to the Illinois Plaintiffs' assertion, the interests of judicial economy do not favor transfer given the inevitable litigation U-turn to this tribunal. To avoid all of these unnecessary burdens, the sensible course of action is to allow this tribunal to adjudicate the motion to quash.

Second, the Illinois Plaintiffs also fail to acknowledge—let alone address—the significant harmful consequences that transfer will likely impose on the *Perdomo* litigation. This silence is unsurprising: As set forth below, they cannot credibly argue that an Illinois Court knows better than this California Court how to manage and mitigate the impact on the California litigation of enforcing the third-party subpoena even in part.

In the event that the motion to quash is transferred to Illinois, and if Defendants' motion is not granted in that entirety, it is a certainty that that order will have significant ramifications for the *Perdomo* litigation. Although the burden of complying with the subpoena is a function of the extent to which the subpoena is quashed, complying with the third-party subpoena in full will effectively grind *Perdomo*'s plenary discovery, and all other litigation activity in that case, to a screeching halt. The discovery reproduction process would not be straight-forward, nor simple, and would further complicate the government's ability to attend to its ongoing discovery obligations to the *Perdomo* plaintiffs. The collateral consequences to the *Perdomo* litigation of the third-party subpoena is summarized as follows.

First, the volume of discovery produced in *Perdomo* has been extensive. To date, Defendants have produced in excess of 30,000 pages of information, as well as substantial hours of video and audio files. The sheer volume of documents to review

alone constitutes a substantial burden, in and of itself.

Second, in addition to needing to modify the protective order in place in *Perdomo*, compliance with these subpoenas will require the government to undertake an additional review process for privilege and confidentiality redactions, before any previous productions—which were unredacted under the terms of the parties' protective order and/or the parties' clawback agreement—would be sent to Plaintiffs in the *Illinois* case. Counsel for the defendants in *Perdomo* (as well as agency counsel) would need to divert from ongoing discovery review and productions to re-review at least 17,985 documents (and several hundred hours of video and audio) for the law enforcement privilege ("LEP").[3] The State of Illinois is mistaken in its belief that a third-party subpoena for our discovery productions would promote "efficiency."  April 23, 2026 Hearing Tr. 4, at line 10.  The burden involved in producing all this information would require other discovery tasks in *Perdomo* to be placed on hold while resources are diverted for weeks, if not months, for ongoing re-review of thousands of documents and hours of audio and video to apply redactions over any privilege, which would only deter ongoing discovery and mitigate efficiency in the *Perdomo* litigation. The privilege review process requires meticulous attention to detail, cannot be rushed, and, given the volume, will take a considerable amount of time. These concerns are only compounded by the very limited number of attorneys available to conduct this review and the inherent detail-oriented nature of the work. Even more time-consuming are the redactions of audio and video files, which would require further coordination with technical contractors, as it can take hours to redact a few minutes of (privileged or confidential) audio or video footage.

---

[3] LEP redactions were not made as part of the government's agreement with the *Perdomo* Plaintiffs concerning compliance with the magistrate's order (Dkt 365). Pages were simply noted as containing potential LEP for internal record keeping purposes and marked as attorneys' eyes only, Body-worn camera, sUAS footage, and audio files were produced in their entirety without redactions as well.

17

To make matters more complicated, the LEP invocation process requires an additional multi-step process to properly invoke the privilege, specifically: (1) a formal claim of privilege by the head of the department with control over the requested information; (2) assertion of privilege based on that official's actual personal consideration; and (3) a detailed specification of the information, and the basis, for which the privilege is claimed. *See Roman v. Wolf*, 2020 WL 6588399, at *2 (C.D. Cal. Jul. 16, 2020) (citing *Landry v. F.D.I.C.*, 204 F.3d 1125, 1135 (D.C. Cir. 2000)); *Conan v. City of Fontana*, 2017 WL 2874623, at *4 (C.D. Cal. Jul. 5, 2017). Courts in the relevant jurisdiction have routinely construed "head of the department" as "an appropriate agency official." *See United States v. City of Los Angeles*, 2023 WL 6370887, at *9 (C.D. Cal. August 28, 2023)). This process will necessarily take considerable time and must be considered when evaluating the government's burden required to comply with *Illinois* Plaintiffs' subpoena. While invocation of the attorney-client and attorney work product privileges is not as burdensome as invocation of LEP, the review process is no less burdensome.

Third, in addition to ongoing objections as to attorney-client and work product privilege as well as scope, the Defendants currently have objections pending before the California court regarding its invocation of LEP. *Vasquez Perdomo*, 25-cv-05605, Dkts. 380, 391, 395. In the event the government prevails as to any of these objections, the government would be entitled to claw back previously produced (unredacted) materials. Should the court enforce the subpoena, this claw back process would become a significant, unraveling logistical burden for the government, as it would have to work on multiple fronts—to claw back its privileged information from numerous sets of private litigants in both the *Perdomo* and *Illinois* case, who have differing rights to access these materials. For one thing, *Perdomo* Plaintiffs are subject to a protective order that prevents disclosure of documents designated as "Confidential Information." *Vasquez Perdomo*, 25-cv-05605, Dkt 247. The *Illinois* Plaintiffs would not be subject to that protective order and thus further redactions, beyond privilege, would need to be made

18

before the government could produce the documents to the *Illinois* Plaintiffs. The fact that the magistrate judge in *Perdomo* did not agree with the government's privilege assertions in that case does not prevent the government from asserting the same privilege arguments in a different case. *See States v. Mendoza*, 464 U.S. 154 (1984) (holding that "nonmutual collateral estoppel cannot be used against the government"). The level of coordination and resources to conduct such a claw back amongst the various litigant groups involved in both *Perdomo* and *Illinois* would be extraordinary, and it would require a herculean effort, pulling Department attorneys and amassing hundreds of hours of review and redacting that the *Perdomo* litigation team simply cannot accommodate, when it already has ongoing discovery obligations as part of both limited, expedited discovery and the greater plenary discovery.

Moreover, such efforts would only draw resources away from the litany of other litigation responsibilities both in *Perdomo* and other litigation handled by the Office of Immigration Litigation. Measured against the mountain of discovery currently being collected, processed, reviewed, and produced in *Perdomo*, it would be tremendously burdensome for the government and would make it virtually impossible to comply with its current deadlines in that case. Contrary to Plaintiffs' allegations that this would be efficient, it would not be as simple as forwarding files. Time-consuming privilege and confidentiality review and redactions would divert from ongoing litigation and would actually mitigate efficiency across the board, including in the *Illinois* litigation as counsel of record for Defendants would also need to review for responsiveness and privilege. As evident from the review process in *Perdomo*, which has been in limited, expedited discovery for nearly eight months now, this process will be arduous and time consuming due to the level of painstaking review that is required.

For purposes of the motion to transfer, the point here is twofold. One, the collateral consequences to the *Perdomo* litigation will likely be substantial; and two, this tribunal is best suited to minimize and mitigate any disruption to the *Perdomo* litigation by virtue of its substantially greater familiarity with the case and the parties' equities

there.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiffs' motion to transfer be denied.

Dated: July 31, 2026

Respectfully submitted,

By: */s/ C. Lee Reeves, II*

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

BRANTLEY T. MAYERS
Counsel to the Assistant Attorney General
Civil Division

ANDREW I. WARDEN
C. LEE REEVES, II
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Telephone: (202) 616-0773
E-mail: Lee.Reeves2@usdoj.gov

JONATHAN A. ROBBINS
Civil Division, Office of Immigration Litigation
450 5th Street NW
Washington DC 20044
(202) 305-8275
Jonathan.A.Robbins@usdoj.gov