UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-05605-MEMF-SPx | Date | August 14, 2026 |
| Title | Pedro Vasquez Perdomo, et al. v. Markwayne Mullin, et al | | |

| | | |
|---|---|---|
| Present: The Honorable | Sheri Pym, United States Magistrate Judge | |
| Kimberly I. Carter | None | None |
| Deputy Clerk | Court Reporter/Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| None | None |

**Proceedings:** **(In Chambers) Order Granting Plaintiffs Motion for an Order Enforcing Docket No. 370 and Sanctions [557]**

## I. INTRODUCTION

On June 23, 2026, plaintiffs filed a motion for an order enforcing the January 16, 2026 Order Granting Plaintiff CHIRLA'S Motion to Compel Discovery at ECF 370 and for sanctions. Docket no. 557. The parties' positions are set forth in a Joint Stipulation ("JS"). *Id*. Plaintiffs' arguments are supported by the declaration of David Fry ("Fry Decl.") and exhibits. *Id*. On July 7, 2026, the parties filed supplemental memoranda. Docket nos. 589 ("D. Supp."), 590 ("P. Supp.").

The court held a hearing on July 14, 2026. After considering the parties' written and oral arguments, the court grants plaintiffs' motion as discussed below.

## II. BACKGROUND

On October 17, 2025, the court granted plaintiffs' and intervenors' motion for limited expedited discovery. Docket no. 223. Plaintiff served the discovery requests on October 21, 2025, which included four requests for production ("RFPs"), two of which are at issue here. *See* docket no. 226.

On October 23, 2025, the court issued an order setting the schedule and terms for expedited discovery (the "October 23 Order"). Docket no. 227. Among other things, the court ordered defendants to "produce documents and other materials responsive to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-05605-MEMF-SPx | Date | August 14, 2026 |
| Title | Pedro Vasquez Perdomo, et al. v. Markwayne Mullin, et al | | |

RFPs on a rolling basis, with production of documents they relied on in opposing the motions for a temporary restraining order and preliminary injunction (the "reliance materials") to be made no later than November 4, 2025; produce privilege logs on a rolling basis; and complete the production of materials by November 21, 2025. *See id*. at 4.

## A. The December 12 Order

On November 21, 2025, plaintiffs filed the first of many motions to compel that have since been filed in this case. Docket no. 266. In that motion, plaintiffs requested, as relevant, that the court order defendants to comply with the October 23 Order and produce the reliance documents. *See id*. Rather than produce all of the reliance materials, defendants had limited their production to training materials responsive to RFP No. 1. *See* docket no. 266 at 1, 9, 22. Defendants asserted their interpretation of the October 23 Order "was a good faith misunderstanding," but in its December 12, 2025 order (the "December 12 Order"), the court found the assertion lacked credibility and ordered defendants to immediately produce the reliance materials to the extent they had not already done so and to submit verified statements from the U.S. Immigration and Customs Enforcement ("ICE") and Customs and Border Protection ("CPB") certifying they produced all reliance materials and explaining the process they engaged in to produce the materials. *See* docket no. 305 at 5-6. The court also ordered defendants to produce documents responsive to RFP No. 2(m)-(o), which defendants had withheld on the basis that they fell outside the scope of the expedited discovery. *See id*. at 6-7.

## B. The January 16 Order (Docket No. 370)

On December 23, 2025, plaintiff the Coalition for Humane Immigrant Rights ("CHIRLA") filed a motion to compel defendants to produce documents responsive to RFP Nos. 2 and 3. Docket no. 320. In brief, RFP No. 2 seeks documents relating to 15 identified immigration raid operations, and RFP No. 3 seeks communications by text or through any messaging platform sent and received by the agents who initiated detentive stops or encounters with plaintiffs or declarants in the 10 immigration operations described in Interrogatory No. 1, about those operations. *See* docket nos. 226 and 320-1, Ex. A. Plaintiffs argued, in relevant part, that defendants improperly withheld documents

responsive to RFP Nos. 2 and 3 by applying an unreasonable interpretation of "operation" – and then failed to disclose this construction in their objections – which resulted in an inadequate search and production. *See* docket no. 320. Specifically, defendants limited their production to documents "concerning only the interaction with the individual named as having been encountered in the operation, not the entire operation." *See id.* at 6.

On January 16, 2026. the court issued an order, finding defendants' construction of RFP No. 2 to be untenable and that their actions suggested a disregard of their duty to produce documents responsive to the requests as written, rather than as defendants wish they were written. Docket no. 370 (the "January 16 Order" or "ECF 370") at 5-6. The court noted that the language of RFP No. 2 is clear and defendants' reading was implausible and their attempt to narrow the language was problematic. *See id.* The court also found that in addition to the unreasonable construction of RFP No. 2, there was evidence that defendants had performed inadequate searches. *See id.* at 7-8.

The court therefore ordered defendants to produce all documents concerning the operations listed in RFP No. 2 in their entirety, and to complete their production in response to RFP No. 3 to the extent defendants' misconstruction of "operation" also affected their response to RFP No. 3. *Id.* at 6. The court also ordered defendants to re-do their searches for documents responsive to these RFPs, including doing at least the following:

- Collect standardized documentation, including any targeting information or slide presentations given to agents from all relevant operations and produce them to plaintiffs;

- Identify all persons who were arrested during any of these operations and gather all documentation concerning their arrests;

- Collect documents from every agent present at the 15 operations, including any reports or notes they generated and any communications they exchanged relating to the operations;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-05605-MEMF-SPx | Date | August 14, 2026 |
| Title | Pedro Vasquez Perdomo, et al. v. Markwayne Mullin, et al | | |

- Produce all body worn camera footage recorded by any agent present at any of the 15 operations listed in RFP No. 2;

- Forensically image any cell phone used by an agent present at any of the 15 operations and review these devices for material responsive to RFP Nos. 2 and 3; and

- Provide affidavits detailing their document collection process.

*Id*. at 8-9. The production was to be completed by January 30, 2026. *Id*.

Although the court did not rule on plaintiff's argument that defendants' counsel had not fulfilled their obligations under Rule 26(g) of the Federal Rules of Civil Procedure – specifically that there were significant concerns that ICE and CBP were deciding for themselves what documents to collect, what documents are responsive, and what privileges apply – the court reminded defendants' counsel of their responsibilities as officers of the court to ensure the parties are meeting their discovery obligations. *Id*. at 10.

## C. <u>Extensions for Production and Stays of Deadlines Set Forth in the January 16 Order</u>

On January 20, 2026, defendants filed an ex parte application to stay the January 16 Order. Docket no. 379, The court denied the application for a stay but extended the production deadline to February 13, 2026. Docket no. 387. The court extended the production deadlines several more times. *See* docket nos. 414, 441, 468, 469, 486, 527. The production deadline with respect to electronically stored information ("ESI") was extended to April 13, 2026. Docket no. 468. As for the forensic imaging of government-issued phones, the parties stipulated to a production schedule for "priority custodians" and the court stayed the requirement to image government phones other than for the priority custodians to August 31, 2026. Docket no. 527.

With respect to the forensic imaging of personal phones, there is an Order holding defendants in contempt for failing to comply with the portion of the court's January 16 Order requiring them to forensically image any cell phone, specifically personal phones, used by an agent present at any of 15 identified operations. Docket no. 635. Defendants' objections to this portion of the January 16 Order are the subject of separate briefing and under submission. *See* docket nos. 607, 613, 634, 664.

## D. The ICE Declarations

On June 4, 2026, defendants forwarded plaintiffs two declarations from ICE – the declarations of J.F. ("J.F. Decl.") and E.W. ("E.W. Decl.," together with J.F. Decl., the "ICE declarations" or "ICE Decls.") – as required by the January 16 Order. Fry Decl. ¶ 3, Exs. 1-2, 7. The ICE declarations were signed on April 13, 2026. *See* ICE Decls. Neither of the declarants was an attorney from the Office of Principal Legal Advisor ("OPLA"). *See id.* Nor do the declarants attest that they read the January 16 Order. *See id.* ¶ 2.

The ICE declarations provide, in relevant part, that ICE identified 23 custodians[1] who were present at 10 of the 15 operations between June 12, 2025 and August 22, 2025, and they limited their searches to a date range of June 11, 2025 through August 23, 2025. *Id.* ¶ 3. OPLA directed the discovery process, including providing the search terms, which consisted of 11 names and eight alien registration numbers ("A-numbers") of persons targeted, arrested, and/or encountered by ICE. J.F. Decl. ¶ 4; E.W. Decl. ¶¶ 2, 4. J.F. states ICE conducted a reasonable search of the custodians' emails, government cell phone text and Microsoft Teams messages, and their OneDrive accounts. J.F. Decl. ¶ 4.

In the June 4, 2026 email forwarding the ICE declarations, defendants made no mention of the declarations' deficiencies. *See* Fry Decl., Ex. 7. The following day, plaintiffs advised defendants the ICE declarations demonstrate that ICE has not complied with the January 16 Order and they intended to file a motion seeking Rule 37 sanctions,

[1] ICE only has access to the phones of 22 custodians because one custodian lost their phone prior to the January 16 Order. E.W. Decl. n.1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-05605-MEMF-SPx | Date | August 14, 2026 |
| Title | Pedro Vasquez Perdomo, et al. v. Markwayne Mullin, et al | | |

an order to show cause why the court should not find ICE in contempt, and an order clarifying the discovery obligations of counsel of record. *See id.*, Ex. 5.

The parties met and conferred on June 10, 2026. Fry Decl. ¶ 5. Defendants stated they were aware that they made a "mistake" with respect to ICE's production of ESI, which was due to a communication failure. *Id.* ¶ 6. Counsel for defendants, Jonathan Robbins, stated that he was personally unaware of the search terms ICE used to collect ESI until he saw the ICE declarations. *Id.* Defendants represented they would collect from the ICE agents with only a date range limitation. *Id.* The parties also discussed plaintiffs' position regarding defendants' approach to the forensic imaging of personal phones and the collection of data from the government-issued phone of a particular ICE agent, G.A. *Id.* ¶¶ 7-8. Discovery showed that G.A. was part of a WhatsApp message chain that had been produced from another person's phone. *Id.* Defendants stated that that G.A.'s phone did not have responsive information, as confirmed by ICE personnel. *Id.*

On June 15, 2026, plaintiffs told defendants that, in light of the representation that ICE was working to remedy the document production, they would not seek a contempt order but would request a production deadline of July 31, 2026. *Id.* ¶ 9. Defendants replied that ICE would pull documents from the agents' government issued phones using an agreed-upon date range and no search terms, but did not address non-phone ESI sources. *Id.* Plaintiffs set forth what they think is required for a complete production, asked defendants for their position on those requirements, and asked defendants to clarify how they would be pulling non-phone ESI. *Id.* As of the July 14, 2025 hearing, defendants still had not provided a counter-proposal regarding the searches and production of non-phone ESI.

## E. <u>Other Discovery Disputes</u>

Meanwhile, the parties have had multiple other discovery disputes. As pertinent to the issues in this motion, the other disputes include the following:

At a March 20, 2026 status conference, the government acknowledged it had not yet forensically imaged defendant Gregory Bovino's government-issued phone and

would not collect it until his exit interview in late March. Docket No. 478 at 7:11-13; 15:6-23. Despite the fact that Bovino is a defendant, the government stated it had not collected his phone because the parties had only recently agreed to the custodians whose phones would be imaged. *Id*. at 17:16-19. On April 6, defendants informed plaintiffs that Bovino lost his previously issued work phone in January 2026 and CBP issued him a new phone on January 27, 2026. Docket no. 503-1, Ex. 19. As of May 26, 2026, defendants had not been able to collect the data on the phone that was lost. *See* docket no. 515 at 28:5-17.

On April 10, 2016, plaintiffs filed an ex parte application for a preservation order. Docket no. 487. Despite being on notice about their preservation obligations since July 2, 2025 and reiterating their compliance, defendants informed plaintiffs on April 7, 2026 that the video recoding system at the B-18 detention facility was automatically and continuously deleting video footage. *See id*. Defendants acknowledged the failure to preserve video evidence and blamed the failure on accidental oversight. *See* docket no. 488. The court granted the requested preservation order in large part. Docket no. 493.

## III. DISCUSSION

ICE's noncompliance with the January 16 Order is undisputed. *See* JS at 2, 17-18; D. Supp. at 1-2. At issue are the warranted remedies.

### A. Defendant ICE Failed to Comply With the January 16 Order

Although defendants do not dispute that ICE failed to comply with the January 16 Order, they appear to minimize the extent of the non-compliance and the inadequacies of the searches that were conducted. The extent of the non-compliance and the inadequacies of the searches are integral to deciding the warranted remedies.

#### 1. Non-Compliance

ICE failed to comply with the January 16 Order as follows:

First, the January 16 Order unequivocally found that defendants' interpretation of RFP No. 2 to concern only individual encounters rather than the entire operation was untenable. Docket no. 370. The court ordered defendants to produce all documents concerning the operations listed in RFP No. 2 in their entirety, as well as materials responsive to RFP No. 3 to the extent defendants' misconstruction also affected their response to RFP No. 3. *Id*. Nevertheless, ICE did not search for all the operations and instead limited its search to 11 individuals by full name and eight A-numbers in one format in direct contravention of the January 16 Order. *See* ICE Decls. ¶ 4.

Second, ICE's search terms and date range necessarily excluded at least some of the 15 operations. ICE set a date range of June 11, 2025 through August 23, 2025, which expressly excludes the last three operations at RFP No. 2(m)-(o) in violation of both the December 12 and January 16 Orders. *See id*. ¶ 3. Similarly, the search terms inexplicably include only the names of individuals from five of the 15 operations.[2] *Id*. ¶ 4. If ICE still believed (contrary to the court's explicit order) that RFP No. 2 concerned just the individual encounters, at a minimum it should have included, but did not, the names of all the identified individuals as search terms.

Third, the January 16 Order was not limited to the collection of data from the ICE agents present at any of the 15 operations. It ordered defendants to, among other things: (1) collect standardized documentation, including any targeting information and slide presentations given to ICE agents from all 15 operations; and (2) identify all persons arrested during any of these operations and gather all documentation concerning all arrests made during the operations. *See* January 16 Order at 8. The ICE declarations indicate the searches were limited to the files of 23 agents present at the operations and did not explain how the custodians were otherwise identified and what efforts were made to collect these other documents. *See* ICE Decls. ¶ 4.

Fourth, ICE failed to forensically image personal phones used by ICE agents present at any of the operations.[3] Although the court has clarified that the January 16

[2] The court is unable to identify three of the individuals ICE used as search terms.

[3] Because defendants' objections to the forensic imaging aspect of the January 16

Order requires the forensic imaging of personal phones, regardless of whether they were used at the operation itself, defendants continue to contend that only devices actually used during the operation need to be forensically imaged. *See* JS at 7. Moreover, as the court previously found, defendants took minimal to no action to comply with this aspect of the January 16 Order until plaintiffs informed defendants of their intent to file for civil contempt in late April. *See* docket no. 538, 635.

Despite acknowledging the noncompliance, defendants continue to minimize its seriousness. Indeed, defendants contend plaintiffs "overstate the significance of the original collection methodology." JS at 4. Defendants argue that because plaintiffs received some responsive documents, plaintiffs have already filed a preliminary injunction motion, ICE has agreed to supplement its production, and trial is not set until August 2027, plaintiffs have not been prejudiced. *See id*. Counsel's position is indefensible. Defendants' noncompliance is inexcusable and they cannot minimize their dereliction by arguing no harm. Moreover, defendants' assertion that plaintiffs were not prejudiced is entirely without basis since they do not know what responsive documents have not been produced.

**2. Additional Inadequacies**

In addition to the above violations of the January 16 Order, the ICE declarations reflect clear inadequacies with the search and collection process that has been conducted.

First, ICE unreasonably limited its search terms to the full legal names of 11 individuals and A-numbers only in the following format – "A#########." ICE Decls. ¶ 4. But common sense dictates that a person may be referred to by first name only, by last name only, by "last name, first name," by initials, and with or without a middle name or initial. Similarly, an A-number may be written in different formats, including but not

---

Order were referred back to the magistrate judge, the court only notes the lack of compliance here and will not consider this as a basis for sanctions or an admonishment. Nor will any deadlines imposed in this order apply to the forensic imaging of or production of responsive materials from personal cell phones.

limited to purely numerical, as "A-#########," with spaces between numbers, and as "alien registration number #########." There is no reasonable basis for ICE's decision to search only for the full legal name and the A-number in a single format. Counsel are experienced enough to understand these search terms were unreasonably restrictive. The only logical reason for constructing such unduly narrow searches is to limit the number of responsive documents.

Second, ICE searched the custodians' emails, government cell phone text and Microsoft Teams messages, and their OneDrive accounts. J.F. Decl. ¶ 8. This search appears to exclude other apps used by ICE agents such as WhatsApp, Signal, and Zello. *See* Fry Decl. ¶ 8, *see id.,* Ex. 8 at 42:17. It is unclear why ICE would limit its searches to only some applications.[4]

Finally, rather than collecting and producing the data collected from the government phones in RSMF format, ICE exported the data collected from the government phones into one .pdf report per phone. E.W. Decl. ¶ 8. This eliminates metadata and combines separate documents into a single document. *See* JS at 9. Defendants provide no reason why they produced them in such format.

As noted by plaintiffs, defendants' failure to produce responsive messages from G.A.'s phone illustrates the inadequacies of the searches performed. Defendants produced a text chain in which G.A. participated that was found on the phone of a Homeland Security Investigations agent, but did not produce the same text chain from G.A.'s phone. JS at 8; Fry Decl. ¶ 8. As plaintiffs point out, the same text chain should have been produced from G.A.'s phone, and even if it had been deleted, its deletion would have been reflected on the forensic imaging report. JS at 8. Indeed, at the July 14 hearing plaintiffs reported they only discovered at G.A.'s deposition that the message chain was on his phone.

---

[4] Although defendants assert that ICE indeed searched Signal and WhatsApp, they do not attach a declaration attesting to that. *See* JS at 22.

Defendants merely gloss over the inadequacies of the searches that have been conducted. *See* JS at 22-23.

**B. <u>Deadlines</u>**

Plaintiffs ask the court to impose a hard deadline of July 31, 2026 for ICE's compliance with the January 16 Order. JS at 12-13. Although defendants initially agreed to a July 31, 2026 deadline (JS at 25), they subsequently asked for an August 15, 2026 deadline instead due to the volume of data to be processed. D. Supp. at 2. Then at the hearing, defendants did not agree to any deadline and instead asked for a rolling production. At a more recent August 11, 2026 hearing, defendants reported making progress on producing information from ICE phones and expected to complete at least some aspect of the production next week.

The court acknowledges the large volume of documents that have to be collected and reviewed, but notes the initial production deadline was November 21, 2025 (docket no. 227) and it has been over six months since the January 16 Order. The fact that defendants have to review a large, unspecified volume of data in a compressed timeframe is a problem entirely of their own making, after defendants repeatedly chose to disregard the plain meaning of the RFPs and multiple court orders. Moreover, defendants claim they "are actively undertaking the additional collection and production efforts" and advised plaintiffs at the June 10, 2026 meet and confer that ICE "would immediately undertake a renewed processing and production effort." JS at 25; *see* D. Supp. at 2. Thus, they should have made significant progress already, and based on their August 11 comments, have.

The court is therefore disinclined to grant defendants additional time beyond what is strictly necessary. Accordingly, the court sets the following deadlines:

- <u>August 21, 2026</u> – ICE must file with the court a status report identifying: (1) all relevant custodians who may have responsive materials and its methodology for identification; (2) the search terms for the non-phone ESI

that have been agreed upon by the parties; and (3) what databases, files, cell phones, and applications will be searched.

- August 28, 2026 – (1) ICE must make its full production of responsive documents in a usable format that does not destroy meaningful information such as metadata; and (2) defendants must file with the court affidavits detailing the document collection process, including how the searches were conducted, and specifying the affiants read the January 16 Order and this order and understand their obligations.

Further, plaintiffs note that defendants agreed to collect data from government issued phones using only an agreed-upon date range and no search terms, and produce the information in RSMF format. JS at 12, n.3. As noted, the court understands this production to be well underway and nearly complete, but if there are further issues, such as concerning what data is being produced or in what format, these should be raised at the August 18, 2026 status conference.

## C. **Rule 37(b) Sanctions**

Rule 37(b)(2)(A) provides that if a party "fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). Those further orders "may include" a wide range of sanctions, such as adverse inferences, "striking pleadings in whole or in part," and dismissal of "the action or proceeding in whole or in part." *Id.*; *see Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983) ("Federal Rule of Civil Procedure 37 authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules.") (citations omitted). "In evaluating the propriety of sanctions, the Court considers 'all incidents of a party's misconduct.'" *Blundell v. Cnty. of Los Angeles*, 2010 WL 344320, at *4 (C.D. Cal. Jan. 29, 2010) (quoting *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1411 (9th Cir. 1990)). "The appropriateness of a sanction is within the discretion of the Court." *Raygoza v. City of Fresno*, 297 F.R.D. 603, 606 (E.D. Cal. 2014).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-05605-MEMF-SPx | Date | August 14, 2026 |
| Title | Pedro Vasquez Perdomo, et al. v. Markwayne Mullin, et al | | |

Defendants concede ICE violated the January 16 Order, but argue that sanctions are not warranted because they are generally reserved for conduct demonstrating willfulness, bad faith, or a failure to take reasonable steps to comply with court orders. JS at 28. But Rule 37(b)(2)(A) does not require a showing of willfulness, bad faith, and fault except for terminating sanctions. *U.S. v. $1,106,775.00 in U.S. Currency*, 177 F.4th 986, 996 (9th Cir. 2026) (citing *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007)); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (only terminating sanctions require a showing of willfulness, fault, or bad faith). All that is required by Rule 37(b) is a failure to comply with a discovery order. Fed. R. Civ. P. 37(b)(2)(A).

Defendants also argue sanctions are not warranted because they are taking reasonable steps to remedy ICE's noncompliance. The fact that ICE has finally agreed to properly conduct the searches and collections that should have been done over six months ago does not obviate the need for sanctions. ICE's noncompliance is egregious. The January 16 Order is clear and there is no justification for ICE's complete disregard of it. Moreover, the noncompliance with the January 16 Order is just the latest discovery dispute over defendants' inadequate productions and unreasonable interpretations of discovery requests and court orders. As of June 23, 2026, defendants had produced fewer than 30,000 pages of documents total, in addition to audio and video files. JS at 13. Given the vast scope of this case and the information requested, the production has been inadequate and reflects a lack of diligence, at best.

Fundamentally, ICE's noncompliance with the January 16 Order necessitated yet another motion that could have been avoided. Accordingly, Rule 37(b) sanctions are warranted here. Plaintiffs have generally asked for sanctions in the amount of fees and expenses incurred in bringing the motion, but have not presented a specific amount. Instead, plaintiffs propose that should the court grant the motion, they will first provide defendants the amount they request to see if they will stipulate to an amount. JS at 15-16. This is reasonable. The court therefore orders plaintiffs to provide defendants with the amount requested and supporting materials by August 24, 2026. If the parties are unable to reach an agreement by September 4, 2026, they may submit a joint stipulation setting forth their respective positions by September 15, 2026.

The court notes that in addition to multiple other discovery disputes, the court has now had to intervene over defendants' failure to produce materials responsive to RFP No. 2 three times. **Further failures to comply with the January 16 Order, this order, or any other discovery misconduct will result in escalating sanctions.**

## D. <u>Admonishment</u>

Plaintiffs ask the court to admonish defendants' counsel regarding the role of counsel of record in the discovery process. JS at 16-17. Specifically, plaintiffs contend counsel of record have failed to meet their discovery obligations under Rule 26(g) and are relying entirely on ICE and agency counsel to run discovery. *Id.*

Courts possess broad power to impose sanctions against litigants for misconduct. *Mendez v. Cnty. of San Bernardino*, 540 F.3d 1109, 1132 (9th Cir. 2008); *Houston v. Ngai*, 2022 WL 2541365, at *1 (E.D. Cal. June 29, 2022). This power stems from several sources including the Federal Rules and the court's inherent power. *See Moore v. Chase, Inc.*, 2016 WL 521320, at *1 (E.D. Cal. Feb. 10, 2016); *see, e.g., In re Social Media Adolescent Addiction/Personal Injury Prods. Liability Litig.*, 2024 WL 4125618, *14 (N.D. Cal. Sept. 6, 2024) ("A Court has the inherent authority to enforce its own [o]rders," including to issue sanctions.); *Grimes v. City and Cnty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991) ("Rule 37 is flexible: The sanctions enumerated in the rule are not exclusive and arbitrary but flexible, selective, and plural.") (citation and internal quotation marks omitted); *Play Visions, Inc. v. Dollar Tree Stores, Inc.*, 2011 WL 2292326, at *6, *8 (W.D. Wash. June 8, 2011) (sanctioning counsel pursuant to Rule 26 for his failure to assist and guide his client's production and instead relying on his client without making an independent inquiry in the production process). Sanctions may be in the form of admonishment. *See Anderson v. Wal-Mart Stores, Inc.*, 2011 WL 5598331, at *2-*3 (D. Nev. Nov. 16, 2011) (finding admonishment was the appropriate sanction for counsel's misconduct).

"Counsel in a litigation have legal duties to take proactive steps in supervising and searching for documents in discovery that go far beyond simply acceding to a client who fails (or worse, refuses) to produce or provide documents." *In re Social Media Adolescent Addiction*, 2024 WL 4125618, at *15. "Counsel cannot simply advise clients

about document requests and leave it up to the client to decide whether or not to risk sanctions for failure to produce – in appropriate circumstances, counsel may need to personally conduct or directly supervise a client's collection, review, and production of responsive documents." *Id*. While counsel need not supervise every step of the discovery process, they must make a reasonable effort to assure that their client has provided all responsive materials. *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. and Rest. Emps. Int'l Union*, 212 F.R.D. 178, 222 (S.D.N.Y. 2003). Counsel's failure to institute a reasonable procedure to account for the collection and production of materials violates Rule 26(g). *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 556 (N.D. Cal. 1987).

Defense counsel contend that ICE's noncompliance is a mistake and a result of miscommunication due to the departure of counsel who has since left the Department of Justice. JS at 2-3, 17-18. The court is sympathetic to the challenges counsel face in light of the reported upheavals at the Department of Justice; however, it is not an excuse for counsel to fail to take responsibility for not abiding by their discovery obligations. Ultimately, counsel of record are responsible for coordinating their client's discovery efforts. *See Radio City, Inc. v. Celestron Acquisition, LLC*, 2023 WL 5519324, at *7 (N.D. Cal. Aug. 25, 2023); *D.M. v. Cnty. of Merced*, 2021 WL 3269245, at *12 (E.D. Cal. Jul. 30, 2021).

The court also appreciates the difficulty in coordinating with so many agencies, but again, this does not excuse counsel from meeting their discovery obligations. Here, it is apparent that counsel of record has been relying on ICE and its agency counsel to respond to plaintiffs' discovery requests.[5] Although counsel had been negotiating search terms with plaintiffs in February (*see* Fry Decl., Ex. 3), the ICE declarations indicate that agency counsel, OPLA, controlled the discovery process, including dictating the search terms. *See* J.F. Decl. ¶¶ 2-3; E.W. Decl. ¶¶ 2-4. ICE executed the declarations required by the January 16 Order on April 13, 2026, but then did not provide them to counsel until June 2, 2026. *See* ICE Decls.; JS at 21. Indeed, even when presented with deficiencies

[5] Moreover, as discussed in Part II(E), there are other instances in which it is apparent counsel are not properly supervising the discovery process.

such as production of G.A.'s phone messages, rather than verify the deficiencies themselves, counsel simply accept ICE's representation and consequently made misrepresentations to plaintiffs. When questioned about the lack of responsive documents from G.A.'s phone, counsel represented that he had "double-checked" that there was no responsive material for his phone. *See* Fry Decl., Ex. 7. And counsel stated in the Joint Stipulation that ICE advised them that the forensic imaging may have been affected by a WhatsApp update. JS at 20. But plaintiffs learned these representations were false when they examined G.A.'s phone at his deposition and saw the responsive messages at issue.

Counsel's claims that their "prompt" actions and agreement to supplement the production upon learning of deficiencies demonstrate they are meeting their discovery obligations also fall flat in light of the record. Counsel repeatedly assert they "promptly" informed plaintiffs of ICE's non-compliance. *See* JS at 2, 24, 27; D. Supp. at 2. But the evidence reflects that counsel simply forwarded the ICE declarations to plaintiffs and made no mention of the glaring deficiencies. *See* Fry Decl., Ex. 7. Indeed, as plaintiffs stated and counsel did not deny at the hearing, it was plaintiffs who contacted defendants about ICE's noncompliance after receiving the ICE declarations. *See id*., Ex. 5.

Accordingly, the court admonishes defendants' counsel and reminds them they are ultimately responsible for supervising the discovery process. Counsel of record's "unquestioning reliance on the representation by [custodians'] [] counsel is self-collection that falls short of the requisite standard for compliance with Rule 26." *In re: OpenAI, Inc., Copyright Infringement Litig.*, 2025 WL 3471561, at *8 (S.D.N.Y. Dec. 3, 2025). The court warns counsel that they may face personal sanctions if these deficiencies continue.

## IV. ORDER

For the foregoing reasons, the court GRANTS plaintiffs' motion for an order enforcing ECF 370 and for sanctions (docket no. 557), as set forth above.