STACY TOLCHIN (SBN 217431)
*stacy@tolchinimmigration.com*
LAW OFFICES OF STACY TOLCHIN
776 E. Green St., Suite 210
Pasadena, CA 91101
Tel: 213-622-7450; Fax: 213-622-7233

MOHAMMAD TAJSAR (SBN 280152)
*mtajsar@aclusocal.org*
MAYRA JOACHIN (SBN 306065)
*mjoachin@aclusocal.org*
DAE KEUN KWON (SBN 313155)
*akwon@aclusocal.org*
STEPHANIE PADILLA (SBN 321568)
*spadilla@aclusocal.org*
ALYSSA MORONES (SBN 343358)
*amorones@aclusocal.org*
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
P.O. Box 811370
Los Angeles, CA 90081-0007
Tel: 213-977-9500; Fax: 213-915-0219

*Counsel for Stop/Arrest Plaintiffs*

(*Additional counsel listed on next page*)

MARK ROSENBAUM (SBN 59940)
*mrosenbaum@publiccounsel.org*
REBECCA BROWN (SBN 345805)
*rbrown@publiccounsel.org*
RITU MAHAJAN (SBN 252970)
*rmahajan@publiccounsel.org*
GINA AMATO (SBN 215519)
*gamato@publiccounsel.org*
AMANDA MANGASER SAVAGE (SBN 325996)
*asavage@publiccounsel.org*
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Counsel for All Plaintiffs*

ANNE LAI (SBN 295394)
*alai@law.uci.edu*
UC IRVINE SCHOOL OF LAW
IMMIGRANT AND RACIAL JUSTICE SOLIDARITY CLINIC
P.O. Box 5479
Irvine, CA 92616-5479
Tel: 949-824-9894; Fax: 949-824-2747

*Counsel for Stop/Arrest Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

Pedro VASQUEZ PERDOMO, et al.,

Plaintiffs,

v.

Markwayne MULLIN, in his official capacity as Secretary, Department of Homeland Security, et al.,

Defendants.

Case No.: 2:25-cv-05605-MEMF-SP

**REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF COUNSEL FOR SUSPICIONLESS STOPS AND FIRST DISCRIMINATORY TREATMENT CLASSES**

Hon. Maame Ewusi-Mensah Frimpong

Date: September 24, 2026
Time: 10:00 a.m.
Place: Courtroom 8B

JACOB S. KREILKAMP (SBN 248210)
*jacob.kreilkamp@mto.com*
DAVID FRY (SBN 189276)
*david.fry@mto.com*
ADAM B. WEISS (SBN 296381)
*adam.weiss@mto.com*
SARA H. WORTH (SBN 341088)
*sara.worth@mto.com*
LAURA R. PERRY (SBN 342504)
*laura.perrystone@mto.com*
HENRY D. SHREFFLER (SBN 343388)
*henry.shreffler@mto.com*
LAUREN E. KUHN (SBN 343855)
*lauren.kuhn@mto.com*
ANGELA URIBE (SBN 353579)
*angela.uribe@mto.com*
MAGGIE BUSHELL (SBN 354048)
*maggie.bushell@mto.com*
MUNGER, TOLLES & OLSON LLP
350 S. Grand Ave., 50th Floor
Los Angeles, CA 90071
Tel: 213-683-9100; Fax: 213-683-9100

*Counsel for Stop/Arrest Plaintiffs*

BREE BERNWANGER (SBN 331731)
*bbernwanger@aclunc.org*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel: 415-621-2493

*Counsel for Stop/Arrest Plaintiffs*

BRISA VELAZQUEZ OATIS (SBN 339132)
*bvoatis@aclu-sdic.org*
ACLU FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Tel: 619-398-4199

*Counsel for Stop/Arrest Plaintiffs*

EDGAR AGUILASOCHO (SBN 285567)
*eaguilasocho@farmworkerlaw.com*
MARTÍNEZ AGUILASOCHO LAW, INC.
900 Truxtun Ave, Suite 300
Bakersfield, CA 93301
Tel: 661-859-1174
*Counsel for Plaintiff United Farm Workers*

JESSICA KARP BANSAL (SBN 277347)
*jessica@ndlon.org*
LAUREN MICHEL WILFONG*
*lwilfong@ndlon.org*
JIA FU*
*jennifer@ndlon.org*
NATIONAL DAY LABORER ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Tel: 626-214-5689

*Counsel for Stop/Arrest Plaintiffs*

MATTHEW J. CRAIG (SBN 350030)
*mcraig@heckerfink.com*
MACK E. JENKINS (SBN 242101)
*mjenkins@heckerfink.com*
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Tel: 212-763-0883; Fax: 212-564-0883

*Counsel for Access/Conditions Plaintiffs*

CARL BERGQUIST*
*cbergquist@chirla.org*
COALITION FOR HUMANE IMMIGRANT RIGHTS
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

*Counsel for Plaintiff Coalition for Humane Immigrant Rights*

ALVARO M. HUERTA (SBN 274787)
*ahuerta@immdef.org*
BRYNNA BOLT (SBN 339378)
*bbolt@immdef.org*
ALISON STEFFEL (SBN 346370)
*asteffel@immdef.org*
IMMIGRANT DEFENDERS LAW CENTER
634 S. Spring St., 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

*Counsel for Plaintiff Immigrant Defenders Law Center*

* Admitted pro hac vice

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

A. Plaintiffs Have Standing to Seek Injunctive Relief ........ 2

B. Each Proposed Class Meets the Requirements of Rule 23(a) ........ 4

1. *Each Class Satisfies the Numerosity Requirement* ........ 4

2. *Each Class Satisfies the Commonality Requirement* ........ 5

3. *The Proposed Class Representatives Are Typical of the Classes* ........ 9

(a) The Organizational Plaintiffs May Serve as Class Representatives ........ 9

(b) The Individual Plaintiffs May Serve as Class Representatives ........ 11

4. *The Proposed Class Representatives and Class Counsel of Each Class Satisfy the Adequacy Requirement* ........ 12

C. Each Proposed Class Meets the Requirements of Rule 23(b)(2) ........ 13

D. Ascertainability Is Not a Requirement to Certify a Class ........ 15

E. Plaintiffs Do Not Propose "Fail-Safe" Classes ........ 16

III. CONCLUSION ........ 17

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**


*Ambrosia v. Cogent Commc'ns, Inc.*,
312 F.R.D. 544 (N.D. Cal. 2016) ........12

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001), abrogated on other grounds *by Johnson v. California*, 543 U.S. 499 (2005) ........14, 17

*Baby Neal for & by Kanter v. Casey*,
43 F.3d 48 (3d Cir. 1994) ........16

*Ballas v. Anthem Blue Cross Life & Health Ins. Co.*,
No. CV1200604MMMFFMX, 2013 WL 12119569 (C.D. Cal. Apr. 29, 2013) ........24

*Barnes v. Felix*,
605 U.S. 73 (2025) ........15

*Berni v. Barilla S.p.A.*,
964 F.3d 141 (2d Cir. 2020) ........22

*Black Lives Matters L.A. v. City of L.A.*,
113 F.4th 1249 (9th Cir. 2024) ........16

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017), abrogated on other grounds *by TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ........23, 24

*Brown v. Kelly*,
609 F.3d 467 (2d Cir. 2010) ........22

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*,
917 F.2d 1171 (9th Cir. 1990) ........17, 18

*Californians for Disability Rts., Inc. v. Cal. Dep't of Transp.*,
249 F.R.D. 334 (N.D. Cal. 2008) ........18, 23

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ........11

*Cooper v. Fed. Rsrv. Bank of Richmond*,
467 U.S. 867 (1984) ........23

*Davis v. Homecomings Fin.*,
No. C05--1466 RSL, 2006 WL 2927702 (W.D. Wash. Oct. 10, 2006) ........23

*DZ Rsrv. v. Meta Platforms, Inc.*,
96 F.4th 1223 (9th Cir. 2024), cert. denied, 145 S. Ct. 1051 (2025) ....................................10

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011)....................................................................................19, 20

*Escobar Molina v. U.S. Dep't of Homeland Sec.*,
811 F. Supp. 3d 1 (D.D.C. 2025) ...........................................................................................22

*Evon v. Law Offices of Sidney Mickell*,
688 F.3d 1015 (9th Cir. 2012)..................................................................................20, 21

*Gonzalez v. U.S. Immigr. and Customs Enf't*,
975 F.3d 788 (9th Cir. 2020)..............................................................................................15

*Greater Chautauqua Fed. Credit Union v. Quattrone*,
No. 1:22-CV-2753 (MKV), 2025 WL 869729 (S.D.N.Y. Mar. 20, 2025) ...............................22

*Hamilton v. Knight Transp. Inc.*,
No. 5:21-CV-01859-MEMF-SP, 2026 WL 638860 (C.D. Cal. Jan. 27, 2026) .........................20

*In re Honda Idle Stop Litig.*,
347 F.R.D. 528 (C.D. Cal. 2024) ...........................................................................................24

*International Union v. Brock*,
477 U.S. 274 (1986) ...............................................................................................................18

*J.D. v. Azar*,
925 F.3d 1291 (D.C. Cir. 2019) .............................................................................................24

*Kamar v. RadioShack Corp.*,
375 F. App'x 734 (9th Cir. 2010)...........................................................................................25

*Kidd v. Mayorkas*,
343 F.R.D. 428 (C.D. Cal. 2023) ..................................................................12, 14, 15, 17

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
571 F.3d 672 (7th Cir. 2009)..................................................................................................24

*League of United Latin Am. Citizens v. City of Salinas Fire Dep't*,
88 F.R.D. 533 (N.D. Cal. 1980) .............................................................................................18

*Los Angeles Press Club v. Noem*,
No. 2:25-cv-05563-HDV-E (C.D. Cal. June 25, 2026), ECF 120 ...........................................16

*Lyon v. U.S. Immigr. & Customs Enf't*,
171 F. Supp. 3d 961 (N.D. Cal. 2016) ....................................................................................22

*Marshall v. Columbia Lea Regional Hosp.*,
345 F.3d 1157 (10th Cir. 2003)..............................................................................................10

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) ........................................................................................11

*Melendres v. Arpaio*,
784 F.3d 1254 (9th Cir. 2015) ......................................................................................15

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) ........................................................................................25

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,
246 F.R.D. 621 (C.D. Cal. 2007) ..................................................................................12

*One Unnamed Deputy Dist. Att'y v. Cnty. of Los Angeles*,
No. CV 09-7931 ODW, 2011 WL 13128375 (C.D. Cal. Jan. 24, 2011) ........................18

*Orantes-Hernandez v. Smith*,
541 F. Supp. 351 (C.D. Cal. 1982) ...............................................................................12

*Owino v. CoreCivic, Inc.*,
60 F.4th 437 (9th Cir. 2022) .........................................................................................16

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ..................................................................................18, 21, 22

*Pena v. Taylor Farms Pac., Inc.*,
305 F.R.D. 197 (E.D. Cal. 2015), order clarified sub nom. *Carmen Pena v. Taylor Farms Pac., Inc.*, No. 2:13-CV-01282-KJM-AC, 2015 WL 12550898 (E.D. Cal. Mar. 30, 2015), *and aff'd*, 690 F. App'x 526 (9th Cir. 2017) ........................25

*Perez-Olano v. Gonzalez*,
248 F.R.D. 248 (C.D. Cal. 2008) ...........................................................................14, 15

*Powers v. McDonough*,
732 F. Supp. 3d 1184 (C.D. Cal. 2024), aff'd in part, rev'd in part, and vacated in part on other grounds, 163 F.4th 1162 (9th Cir. 2025) ..............................................18

*Rannis v. Recchia*,
380 F. App'x 646 (9th Cir. 2010) ..................................................................................12

*Rhodes v. Cracker Barrel Old Country Store, Inc.*,
213 F.R.D. 619 (N.D. Ga. 2003) ..................................................................................24

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010) ......................................................................................14

*Ross v. Lockheed Martin Corp.*,
267 F. Supp. 3d 174 (D.D.C. 2017) ..............................................................................24

*Senne v. Kansas City Royals Baseball Corp.*,
934 F.3d 918 (9th Cir. 2019) ........................................................................................22

*Shelton v. Bledsoe*,
775 F.3d 554 (3d Cir. 2015) ....................24

*Stavrianoudakis v. U.S. Fish & Wildlife Serv.*,
108 F.4th 1128 (9th Cir. 2024) ....................11

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
802 F. Supp. 2d 1125 (C.D. Cal. 2011) ....................14

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
600 U.S. 181 (2023) ....................11

*Taylor v. Sturgell*,
553 U.S. 880 (2008) ....................23

*Thorpe v. District of Columbia*,
303 F.R.D. 120 (D.D.C. 2014) ....................24

*Tinsley v. Snyder*,
922 F.3d 957 (9th Cir. 2019) ....................21

*True Health Chiropractic, Inc. v. McKesson Corp.*,
896 F.3d 923 (9th Cir. 2018) ....................24

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) ....................23

*United Farm Workers v. Noem*,
785 F. Supp. 3d 672 (E.D. Cal. 2025) ....................19, 25

*United States v. Brignoni-Ponce*,
422 U.S. 873 (1975) ....................10, 11, 14

*United States v. Montero-Camargo*,
208 F.3d 1122 (9th Cir. 2000) ....................10

*Vasquez Perdomo v. Noem*,
148 F.4th 656 (9th Cir. 2025) ....................11

*Vietnam Veterans of Am. v. C.I.A.*,
288 F.R.D. 192 (N.D. Cal. 2012) ....................18

*Walters v. Reno*,
145 F.3d 1032 (9th Cir. 1998) ....................16, 21, 22

*Whren v. United States*,
517 U.S. 806 (1996) ....................10, 11

*Wilkinson v. F.B.I.*,
99 F.R.D. 148 (C.D. Cal. 1983) ....................21

*Willis v. City of Seattle*,
943 F.3d 882 (9th Cir. 2019) .......... 16

*Willis v. Enter. Drilling Fluids, Inc.*,
No. 1:15-cv-00688-JLT, 2015 WL 6689637 (E.D. Cal. Oct. 28, 2015) .......... 25

*Willits v. City of Los Angeles*,
No. CV 10-05782 CBM RZX, 2011 WL 7767305 (C.D. Cal. Jan. 3, 2011) .......... 18

**FEDERAL STATUTES**

Freedom of Information Act .......... 13

**STATE RULES**

Rule 23 .......... 9, 17, 23, 24

Rule 23(a) .......... 9, passim

Rule 23(a)(4) .......... 21

Rule 23(b)(2) .......... 9, passim

Rule 23(b)(3) .......... 23, 24

**CONSTITUTIONAL PROVISIONS**

Fourth Amendment .......... 9, passim

Fifth Amendment .......... 11, 12

Fourth and Fifth Amendments .......... 10, 11

**OTHER AUTHORITIES**

Albert Sun and Allison McCann, *ICE Arrests Soar as People Without a Criminal Record are Increasingly Targeted*, N.Y. Times (Aug. 27, 2026) (reporting record numbers of arrests for July 2026) .......... 13

Vanessa Romo, "Immigration arrests soar, hitting 50,000 in July," NPR (Aug. 26, 2026), https://www.npr.org/2026/08/26/nx-s1-5945127/immigration-arrests-record .......... 13

# I. INTRODUCTION

Relying on an extensive record that includes dozens of declarations, reams of officer testimony, arrest records, operational agency documents, text messages, and videos, Plaintiffs have moved for a preliminary injunction to end the federal government's officially-sanctioned policy and practice of conducting suspicionless stops based on racial profiling in this District. *See* ECF 632 ("P.I."). This policy and practice violates both the Fourth Amendment's prohibition on detentive stops without reasonable suspicion and the Fifth Amendment's guarantee of equal protection under the law. Plaintiffs have simultaneously moved to certify two classes under Rule 23(b)(2), as Defendants' District-wide unconstitutional policy and practice warrants classwide relief. *See* ECF 647 ("Mot.").

In opposing class certification, Defendants raise a hodgepodge of repetitive, unsupported, and unpersuasive arguments that ignore the comprehensive factual record and the requirements of Rule 23. They first rehash standing arguments that this Court and the Ninth Circuit have consistently rejected, even while the evidence of their operations' pervasive unconstitutionality—and the continuous threat it poses to class members—becomes increasingly irrefutable. They also demand this Court rule that organizations can never serve as class representatives, even though controlling precedent holds exactly the opposite. They then turn to attacking certification under Rule 23(a), largely ignoring Plaintiffs' discriminatory treatment class while asking this Court to all but hold that a class may never be certified to raise a Fourth Amendment claim. But Defendants fail to address binding authority explaining that Rule 23 permits class certification when the government denies Fourth Amendment rights on a categorical basis through the type of widespread policy and practice that Plaintiffs have provided ample evidence of here and in their related motion for preliminary injunction. Defendants' other Rule 23 arguments are equally unpersuasive: The proposed classes are numerous, Plaintiffs' claims are typical of the classes, their (and their counsel's) ability to adequately represent the class are unchallenged, and the systemwide policy Plaintiffs challenge makes it amenable to certification under Rule 23(b)(2). Defendants finally argue that the putative classes are not ascertainable, administratively identifiable, cohesive, or necessary, none of which is a requirement for certification under Rule

23(b)(2). In short, Defendants' Opposition fails at every step. This Court should grant Plaintiffs' Motion and certify the proposed Suspicionless Stops Class and the First Discriminatory Treatment Class.

## II. <u>ARGUMENT</u>

### A. <u>Plaintiffs Have Standing to Seek Injunctive Relief</u>

The Court should find, based on the preponderance of the evidence, that all Plaintiffs have standing to seek injunctive relief. *See DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1239 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1051 (2025).

Defendants cite dicta in *United States v. Brignoni-Ponce*, 422 U.S. 873, 885 (1975), to argue that all Plaintiffs lack Article III standing under the Fourth and Fifth Amendments to enjoin Defendants' policy and officially sanctioned practice of racial profiling. *See* ECF 689 ("Opp.") at 5-6. Defendants' argument that Supreme Court precedent authorizes racial profiling is wrong. No case blesses racial profiling in the interior under the Fourth Amendment. *Brignoni-Ponce* was limited to consideration of apparent Mexican ancestry as one of multiple factors agents patrolling the Mexico-United States land border can rely on, whereas the unrefuted evidence here shows that Defendants rely on Latino ethnicity as the predominant basis for conducting interior immigration stops. The growth of the Latino population since *Brignoni-Ponce* also calls into question whether its dicta even applies on its own terms today. *See United States v. Montero-Camargo*, 208 F.3d 1122, 1134-35 (9th Cir. 2000).

Defendants further ignore that *Brignoni-Ponce* concerned only the Fourth Amendment and did not examine whether the government's reliance on race violates the Constitution's separate equal protection guarantee. "The Supreme Court has held that the right to equal protection may be violated even if the actions of the [government] are acceptable under the Fourth Amendment." *Marshall v. Columbia Lea Regional Hosp.*, 345 F.3d 1157, 1166 (10th Cir. 2003) (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)). Under *Whren*, "selective enforcement of the law based on considerations such as race," including government decisions based in whole or in part on

express racial classifications, violates equal protection. *Whren*, 517 U.S. at 813.[1] Thus, even if Defendants did in fact rely on Latino ethnicity as one of multiple factors to form reasonable suspicion (contrary to the record evidence), their policy still violates the Fifth Amendment and Plaintiffs would have standing to challenge it.

Defendants also "incorporate by reference the standing arguments made in their opposition to the motion for preliminary injunction," which concern standing to seek injunctive relief. Opp. at 5 n.2 (citing ECF No. 678 at 7-15); *see also id*. at 17-18 (reprising the same standing arguments as "ascertainability" arguments). Defendants argue that Plaintiffs have failed to demonstrate a sufficient threat of future injury under *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). But Plaintiffs have standing to obtain injunctive relief under both the Fourth and Fifth Amendments if they are the "target[s]" of a government "policy" or "pattern of officially sanctioned behavior" that poses a realistic and imminent threat of injuring them in the future. *Melendres v. Arpaio*, 695 F.3d 990, 998 (9th Cir. 2012) (citation modified). For the reasons set forth in Plaintiffs' motion for preliminary injunction, Plaintiffs easily satisfy that inquiry. *See* P.I. at 11-16.

Finally, Defendants reprise their baseless argument that associations cannot vindicate their members' constitutional rights. *E.g.*, Opp. at 8 (arguing organizations "may not vicariously assert other persons' Fourth Amendment rights"), 14 (arguing organizations "have no Fourth or Fifth Amendment rights to assert or to be remedied"). That is wrong, as this Court has repeatedly held. *E.g.*, ECF 419 at 22; ECF 658 at 33. "As a general matter, membership organizations may bring constitutional claims on behalf of their members." *Vasquez Perdomo v. Noem*, 148 F.4th 656, 677 (9th Cir. 2025) (citing *Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128, 1135, 1143 (9th Cir. 2024)); *id.* at 677 n.10 ("The associations are bringing claims on behalf of their members to vindicate their *members'* personal rights; they are not seeking to benefit themselves by asserting a third party's rights."). All three of the Organizational Plaintiffs have associational standing to

---

[1] In any event, *Brignoni-Ponce* is irreconcilable with the Supreme Court's modern equal protection jurisprudence, which subjects *any* governmental reliance on race to strict scrutiny. *See, e.g.*, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 206 (2023).

enjoin Defendants' policy and practice of racial profiling, because all three have members who were stopped pursuant to that policy in the past (sometimes more than once) and remain realistically threatened by future enforcement of that same policy. *See* P.I. at 13-14.

**B. Each Proposed Class Meets the Requirements of Rule 23(a)**

Plaintiffs have established each of the four requirements to certify both proposed classes under Rule 23(a).

***1. Each Class Satisfies the Numerosity Requirement***

Defendants appear to argue that Plaintiffs have not satisfied numerosity because Plaintiffs have not submitted precise numbers for each class. Opp. at 6–7. This argument misunderstands the numerosity requirement. Generally, the "numerosity requirement [is] satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010); *Ambrosia v. Cogent Commc'ns, Inc.*, 312 F.R.D. 544, 552 (N.D. Cal. 2016) (same). And "where the exact class size is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Kidd v. Mayorkas*, 343 F.R.D. 428, 437 (C.D. Cal. 2023) (quoting *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982)); *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 246 F.R.D. 621, 631 (C.D. Cal. 2007) (citing Advisory Committee Note for the proposition that certification under Rule 23(b)(2) is permissible even when the members cannot be specifically enumerated).

The record already includes more than 40 specific examples of Defendants stopping non-targets in the past pursuant to Defendants' unlawful policy and practice of racial profiling. The record contains 55 sworn declarations describing suspicionless and discriminatory detentive stops across Defendants' operations, including of numerous U.S. citizens and lawfully present individuals. *See* Mot. at 9 & n.7. Body camera videos and arrest narratives filed in support of the preliminary injunction motion also capture additional specific instances of Defendants injuring putative class members. *See* P.I. at 5, 10 n. 10, 16, 22, 23 n. 21.

That evidence alone confirms that joinder would be impractical, *see Rannis*, 380 F. App'x at 651, but Defendants' practice also is ongoing and therefore likely to affect thousands of additional class members in the future. *See* Mot. at 8-9. Defendants dismiss Plaintiffs' class

estimates as mere "speculation." Opp. at 7. But a supervisory ICE officer recently testified that approximately 25-40% of the arrests his team currently makes in the District are of non-targets, thereby reasonably demonstrating that a substantial number of people are likely to be subjected to future detentive stops based on Defendants' policy and practice of profiling. *See* ECF 632-2 [SDDO C.C. Dep.] at 95:25-96:13. Recent reports documenting a surge in the number of stops and arrests of persons without criminal records by immigration agents provide further evidence for future unnamed class members.[2] Data recently made public through the Freedom of Information Act from July 2026 shows a commensurate surge in street arrests in the Los Angeles Area of Responsibility (which corresponds to the District), from 579 non-custodial street arrests in February 2026 to 1,029 in July 2026. *See* Supplemental Declaration of Anne Lai, ¶¶ 2-6. That factual record yields a reasonable inference that the classes contain thousands of members, and therefore are so numerous that joinder would be impractical. Mot. at 8.[3]

Defendants' argument that class members must have the "same … status, location, and alleged stop" to satisfy Rule 23(a) is misplaced, because this argument attacks commonality; and it is wrong because class members need not experience identical injuries to raise common questions suitable for classwide adjudication. *See* Part II.B.2, *infra*.

**2. *Each Class Satisfies the Commonality Requirement***

Both proposed classes share at least one "single common issue of law or fact [that] is sufficient to satisfy the commonality requirement." *Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 257 (C.D. Cal. 2008); *see also, e.g.*, *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010).

---

[2] *See* Vanessa Romo, "Immigration arrests soar, hitting 50,000 in July," NPR (Aug. 26, 2026), https://www.npr.org/2026/08/26/nx-s1-5945127/immigration-arrests-record ("More than half of the nearly 50,000 arrests came from four states: Texas, Florida, California and Georgia."); Albert Sun and Allison McCann, *ICE Arrests Soar as People Without a Criminal Record are Increasingly Targeted*, N.Y. Times (Aug. 27, 2026), https://www.nytimes.com/interactive/2026/08/27/us/ice-immigrant-arrests-trump-deportation-dhs.html (reporting record numbers of arrests for July 2026).

[3] Defendants object that Plaintiffs do not distinguish "between lawful and allegedly unlawful stops" when arguing that the classes are large, but that is false. Opp. at 6. Plaintiffs' Motion, and the preliminary injunction record incorporated by reference, specifically concerns unlawful stops based on nothing more than demographic profiling. *See* Mot. at 8.

Plaintiffs show commonality where, as here, they seek prospective relief "challeng[ing] a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005).

The First Discriminatory Treatment Class presents classwide questions susceptible to classwide answers, including whether Defendants' policy and practice of relying on apparent Latino ethnicity in determining whom to stop, in whole or in part, constitutes an express racial classification. *See* Mot. at 12 (listing common issues of fact and law).

Defendants have no specific response and therefore abandon any commonality argument against this class. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011). In fact, Defendants have demonstrated their *agreement* that Plaintiffs raise a common legal question by arguing that they neither violate the Fourth nor Fifth Amendments because *Brignoni-Ponce* permits them to rely on Latino ethnicity when conducting interior immigration stops. Opp. at 6, 12 n.3; ECF 678 at 22; *see Kidd*, 343 F.R.D. at 439 (finding that, "by presenting arguments why the claim should fail altogether," Defendants "only emphasize the existence of common issues appropriate for classwide resolution").

As to Plaintiffs' Suspicionless Stops Class, Defendants argue that the "requisite fact-intensive Fourth Amendment analysis to identify potential class members defeats commonality." Opp. at 8. Defendants' position is wrong, and grossly overstates the law. The fact that detentive stops are *supposed* to be justified by case-by-case analysis does not mean classes cannot be certified to challenge a policy by which Defendants *abandon* that required analysis in favor of widespread racial profiling. Defendants' reasoning would categorically prohibit class-wide challenges to government violations of the Fourth Amendment. That is not the law.

Courts may and do certify classes of individuals threatened by a policy or officially sanctioned practice of Fourth Amendment violations. "Fourth Amendment claims concerning government policies, practices or procedures for probable cause determinations are plainly suitable for classwide resolution." *Gonzalez v. U.S. Immigr. and Customs Enf't*, 975 F.3d 788, 809 (9th Cir. 2020) (collecting cases); *see, e.g.*, *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015)

(upholding certification in racial profiling case despite factual variations in "where and how" stops occurred); *Kidd*, 343 F.R.D. at 439–40 (certifying a class "challeng[ing] [under the Fourth Amendment] ICE's policies or practices on a systemwide basis"). Where, as here, the challenged policy or practice "is the 'glue' that holds the class together," then determination of the reliability of that practice or its legality "will resolve Plaintiffs' claims on a classwide basis." *Gonzalez*, 975 F.3d at 808.

*Gonzalez* is instructive. There, the Ninth Circuit affirmed the district court's finding of commonality for a proposed subclass of individuals who challenged an ICE policy of relying on automatic database checks to determine whether probable cause existed to issue requests for local law enforcement agencies to detain individuals prior to transfer to ICE custody. *Gonzalez*, 975 F.3d at 809. ICE advanced the same argument Defendants make here: that because "a database search is but one part of the totality-of-the-circumstances analysis . . . the lawfulness of an individual detainer must be assessed on its own terms 'even if the database alone is unreliable.'" *Id.* The Ninth Circuit rejected that argument because the plaintiffs did not challenge "whether ICE actually had probable cause" for each individual detainer, but rather "the alleged practice of basing probable cause only on" unreliable database checks. *Id.*

Defendants make the same flawed argument that failed to persuade the Ninth Circuit in *Gonzalez*. They argue that "the Court would have to weigh the subjective facts[4] of each alleged stop to determine whether the totality of the circumstances, beyond just apparent ethnicity or race, supported a finding of reasonable suspicion." Opp. at 9. But as in *Gonzalez*, class certification does not require the Court to adjudicate the presence of reasonable suspicion in each stop. Plaintiffs challenge Defendants' policy and practice of using demographic profiling to establish (purported) reasonable suspicion—a policy common to every class member regardless of any additional facts attendant to their stop. Although the question of whether reasonable suspicion exists in a given encounter may turn on particular factual circumstances, the legality of Defendants' policy stopping low-income or working-class Latinos without an individualized

[4] This, too, misstates the law. Reasonableness is "measured in objective terms." *See Barnes v. Felix*, 605 U.S. 73, 79 (2025) (internal citation and quotation omitted).

assessment of suspicion is a question common to the entire class. *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) ("Differences among the class members with respect to the merits of their actual document fraud cases, however, are simply insufficient to defeat the propriety of class certification."); *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994) (commonality satisfied when "defendant's conduct is central to the claims of all class members irrespective of their individual circumstances").

Defendants rely on cases where the court determined no uniform policy or practice applied to the entire class, so there were no common issues of fact or law suitable for classwide resolution. That was the situation in *Black Lives Matter L.A. v. City of L.A.*, 113 F.4th 1249 (9th Cir. 2024) ("*BLM*"). There, the court vacated the certification under Rule 23(b)(2) of an injunctive relief class because the district court "did not address this commonality requirement." *Id.* at 1265. And it vacated certification under Rule 23(b)(3) of certain classes of protestors arrested in Los Angeles not because systematic violations of the Fourth Amendment can never serve as the basis for a class action, but because the plaintiffs had not provided enough evidence that they were injured by a systemic unlawful policy. *Id.* at 1260 (finding insufficient record evidence to show that proposed class members were injured "as a result of an LAPD custom or policy"). "[I]n *BLM*, the relevant point was simply that class-wide *proof*—as opposed to mere pleading—is necessary to show commonality." *Los Angeles Press Club v. Noem*, No. 2:25-cv-05563-HDV-E (C.D. Cal. June 25, 2026), ECF 120 (distinguishing *BLM* to find commonality by pointing to the existence of class-wide proof of an unlawful policy and practice).

Here, by contrast, Plaintiffs have made a comprehensive (and unrebutted) evidentiary showing that Defendants have adopted a policy and practice of substituting racial profiling for investigation, and they seek to certify a Fourth Amendment class injured by that policy. *See* P.I. at 8-10. That record is not of isolated or "individual instances of misconduct." *Contra* Opp. at 9 (quoting *Willis v. City of Seattle*, 943 F.3d 882, 885 (9th Cir. 2019)); *Owino v. CoreCivic, Inc.*, 60 F.4th 437, 444 (9th Cir. 2022) ("Commonality is necessarily established where there is a class-wide policy to which all class members are subjected."). It establishes a pattern that suffices to

meet Plaintiffs' burden on a class certification motion. *Kidd*, 343 F.R.D. at 439 (recognizing "the Court need not reach the merits to find that Plaintiffs raise common issues of fact or law").

### 3. *The Proposed Class Representatives Are Typical of the Classes*

Defendants' typicality arguments rehash the same ill-reasoned commonality positions discussed above, and ignore that typicality is a "permissive" standard. *Armstrong*, 275 F.3d at 868. Courts find typicality "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* Plaintiffs' claims here are typical of both sets of proposed class members.

#### (a) *The Organizational Plaintiffs May Serve as Class Representatives*

Defendants repeat their argument that Organizational Plaintiffs cannot serve as class representatives because the organizations as entities do not suffer the claimed harm. Opp. at 4-5, 10-13; *compare* ECF 577 at 4-5. But Defendants cite no legal authority for that proposition, and Circuit precedent—as well as the plain terms of Rule 23—permit Organizational Plaintiffs to stand in the shoes of their own members as class representatives. *See* ECF 608 at 5-8.

The Ninth Circuit has squarely held that an association proceeding on behalf of its members may represent a class composed of individuals, as Organizational Plaintiffs propose to do here. In *California Rural Legal Assistance*, the district court certified a class of immigrants "of which the named individual plaintiffs and the plaintiff unions [were] the named representatives." *See Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990). The appellant argued that a union could not serve as a class representative alongside individual class representatives because the union was not a "member" of the class of immigrants, so its claims were atypical. The Ninth Circuit rejected that argument, because "in their associational capacity, the unions are acting on behalf of" their members, which included putative class members. *Id.* The same reasoning applies here. The Organizational Plaintiffs proceed as associations on behalf of their injured members. *See* P.I. at 11-16 (standing analysis). Because their standing is assured, each Organizational Plaintiff may act as a class representative on behalf of its members, just as it may sue on the members' behalf. *See, e.g.*, *Vietnam Veterans of Am. v.*

*C.I.A.*, 288 F.R.D. 192, 205 (N.D. Cal. 2012) (naming association as representative for a class that included the association's individual members).[5]

The proposed class may include individuals who are not members of the organization. *See One Unnamed Deputy Dist. Att'y v. Cnty. of Los Angeles*, No. CV 09-7931 ODW (SSx), 2011 WL 13128375, at *1 (C.D. Cal. Jan. 24, 2011); *Cal. Rural Legal Assistance*, 917 F.2d at 1175. And not all organization members need to be class members, as the typicality requirement asks only whether the claims of an organization's *injured* members are typical of class members' claims. *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014); *see Willits v. City of Los Angeles*, No. CV 10-05782 CBM RZX, 2011 WL 7767305, at *5 (C.D. Cal. Jan. 3, 2011); *Californians for Disability Rts., Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 350 (N.D. Cal. 2008).

In attempting to avoid controlling Ninth Circuit law on this point, Defendants cite to the Supreme Court's decision in *International Union v. Brock*, 477 U.S. 274, 288-89 (1986), but misattribute the *losing party*'s argument to the Court itself. Opp. at 4-5. In *Brock*, the Supreme Court held that the UAW had associational standing to challenge the Secretary's interpretation of a law that provides certain benefits to laid off workers who are members of the union. *Brock*, 477 U.S. at 281-90. Defendants rely on the Secretary of Labor's argument that UAW may be an inadequate litigant to assert its members' claims. *Id.* at 289. But the Court *rejected* that argument, noting that associations may sometimes be better representatives of aggrieved members than a class of individual members. *Id.* at 289-90.

That the Organizational Plaintiffs have U.S.-citizen members and members with lawful status also does not make their claims atypical. Defendants misunderstand this case when they argue that lawfully present people cannot be class members because § 1357(a)(1) authorizes

[5] *See also, e.g.*, *Powers v. McDonough*, 732 F. Supp. 3d 1184, 1199 (C.D. Cal. 2024) (appointing a nonprofit advocacy organization as a class representative), *aff'd in part, rev'd in part, and vacated in part on other grounds*, 163 F.4th 1162 (9th Cir. 2025); *Californians for Disability Rts., Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 351 (N.D. Cal. 2008) (appointing two disability rights organizations as class representatives); *League of United Latin Am. Citizens v. City of Salinas Fire Dep't*, 88 F.R.D. 533, 543 (N.D. Cal. 1980) (finding a community advocacy organization an adequate and typical class representative over the defendants' objection that it was not itself a class member).

officers to stop only those who are subject to removal. Opp. at 11. That theory perversely reasons that because Defendants are stopping people they are *not supposed to stop at all*, organizations which count U.S. citizens and others lawfully present as members have claims atypical of the class. *Id.* But Defendants' illegal policy of racial profiling subjects Latinos to suspicionless stops *regardless* of their immigration status. *See* P.I. at 14-16.

(b) *The Individual Plaintiffs May Serve as Class Representatives*

Defendants erroneously suggest that factual differences in some Individual Plaintiffs' encounters undermine typicality (and, for the same reasons, certification under Rule 23(b)(2)). Opp. at 12, 14-15, 18. That is wrong, because all Individual Plaintiffs were—and, critically, remain—subject to Defendants' policy of racial profiling.

"Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose[.]" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). All Individual Plaintiffs uniformly face a realistic threat of future injury from the same common racial-profiling policy. *See United Farm Workers v. Noem*, 785 F. Supp. 3d 672, 726–27 (E.D. Cal. 2025) (finding typicality where class uniformly asserted that "Border Patrol agents did not make [individualized] reasonable suspicion determinations related to the detentive stops").

Plaintiffs Vasquez Perdomo and Osorto are typical of the proposed classes. The undisputed facts establish that Defendants seized Plaintiffs Vasquez Perdomo, Osorto, and Villegas Molina simultaneously based on their appearance as working-class Latinos, not because of flight, as Defendants suggest. *See* P.I. at 5–6; ECF 529-15 [Vasquez Perdomo Decl.]; ECF 529-17 [Osorto Decl.]; ECF 529-16 [Villegas Molina Decl.]. Even though Plaintiff Villegas Molina "stood still," immigration officers still seized him. *Id.* All three Plaintiffs were injured by and remain realistically threatened by Defendants' unlawful policy and practice.

Defendants likewise seized Plaintiff Gavidia, an L.A.-born U.S. citizen, for no reason other than the fact that he appeared to be Latino and working class. *See* P.I. at 4, 22; ECF 632-13 [Gavidia Decl.], ¶¶ 12-13. They now challenge Plaintiff Gavidia's "adequacy" to represent either class because his detentive stop was "collateral to an immigration operation at a junkyard where

he worked." Opp. at 13 (citing Plaintiffs' Motion at 5-6). But they do not explain what that means or why that is relevant. Whether someone is seized alone or near others who are being seized, they are still seized. In any event, the record shows that Defendants did not plan any "operation" at Yank Towing. Border Patrol agents were out on "roving patrol" when they decided to visit the tow yard where Plaintiff Gavidia was working on a car. They had no information about him (or anyone else at the tow yard), yet they chased him down the sidewalk, shoved him up against the fence, and interrogated him. *See* ECF 632-12 [SBPA V.S. Dep.] at 85:8-90:4, 144:7-148:5.[6] Plaintiff Gavidia's claims are typical of the classes.[7]

#### 4. *The Proposed Class Representatives and Class Counsel of Each Class Satisfy the Adequacy Requirement*

Defendants have neither identified any conflicts of interest between any Plaintiff (or their counsel) and absent class members, nor provided any reason for this Court to believe that any Plaintiff or their counsel would not continue to "prosecute the action vigorously on behalf of the class[.]" *See Hamilton v. Knight Transp. Inc.*, No. 5:21-CV-01859-MEMF-SP, 2026 WL 638860, at *4 (C.D. Cal. Jan. 27, 2026) (quoting *Ellis v. Costco Wholesale Corporation*, 657 F.3d 970, 985 (9th Cir. 2011)); *see Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (conflicts). Plaintiffs' evidence shows that named plaintiffs will vigorously prosecute the interests of both classes. *See id.*; Mot. at 23-24. Instead of addressing Plaintiffs' evidence and arguments directly, Defendants repeat their meritless typicality and commonality arguments.

Defendants offer no reason to believe that the Organizational Plaintiffs, because they are organizations, have conflicts with individual class members or would not zealously advocate for the classes. Defendants recycle their argument that the Organizational Plaintiffs cannot represent

[6] Defendants' representations about what happened to Mr. Gavidia are ever-changing, but consistently contradicted by the actual facts in the record. *See* ECF 170 at 8–9 (claiming Mr. Gavidia's encounter with agents was "self-initiated"); P.I. at 22 (citing to and describing video evidence).

[7] Defendants do not specifically argue that Plaintiff Hernandez Viramontes's claim is atypical or that he is not an adequate class representative. He, too, was detained because of his appearance as Latino and working class, and he too remains realistically threatened by application of Defendants' unlawful racial-profiling policy. Mot. at 5; *see also* ECF 632-90 at 20–21.

the proposed classes because they do not, as organizations, suffer the injury that their members suffer. Opp. at 12. That is wrong. *See supra*, Parts II.A (standing), II.B.3 (typicality). Defendants also speculate that the organizations "may decide to pursue other priorities." Opp. at 13. Whatever that means, "[a] merely speculative possibility of inadequate representation is not a sufficient basis to find that Rule 23(a)(4) is not satisfied." *Wilkinson v. F.B.I.*, 99 F.R.D. 148, 160 (C.D. Cal. 1983) (citation omitted). Each organization has an impeccable track record advocating for their members. *See* Mot. at 15-17 (citing declarations from Organizational Plaintiffs).

Defendants further argue that some Individual Plaintiffs are inadequate class representatives because of "unique circumstances." Opp. at 13. But this conflates adequacy with typicality. *See id.* (conceding their adequacy argument duplicates their argument that named Plaintiffs' claims are not "common or typical"). Whether a plaintiff is identically situated with unnamed class members has no bearing on their adequacy. *See Walters*, 145 F.3d at 1046. And for the reasons explained in Part II.B.3, *supra*, Plaintiffs' claims are typical of the classes.

### C. <u>Each Proposed Class Meets the Requirements of Rule 23(b)(2)</u>

Defendants do not dispute that Rule 23(b)(2) is satisfied if Defendants *in fact* have a policy and practice of demographic profiling that threatens putative class members. *See Parsons*, 754 F.3d at 667–68, 688–89 (Rule 23(b)(2) is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole"); *see also, e.g.*, *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 971 (9th Cir. 2019). Here, a preponderance of the evidence shows that Defendants do have that policy and officially sanctioned practice, rendering this a prototypical Rule 23(b)(2) case. *See* P.I. at 8–10; *see* Mot. at 18 (collecting cases). The Court may enjoin Defendants' illegal policy and practice and thereby provide relief to all class members.

Defendants organize their legal arguments against (b)(2) certification, confusingly, into two parts: arguments about the Organizational Plaintiffs' request to certify the (b)(2) classes, and arguments about the Individual Plaintiffs' request to certify the same (b)(2) classes. Opp. 13–15. These arguments simply rehash Defendants' unavailing arguments about standing, commonality, and typicality.

Defendants first argue that the Court should not certify the classes because there is no "cohesion of interest" between Organizational Plaintiffs and individual unnamed class members. But Rule 23(b)(2) does not require "cohesion." *See Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 937 (9th Cir. 2019) (holding "district court erred in imposing a 'cohesiveness' requirement for the proposed Rule 23(b)(2) class"). Defendants rely on Second Circuit cases standing for the proposition that the whole class must benefit from any injunction, a requirement Plaintiffs readily meet here.[8] *See Berni v. Barilla S.p.A.*, 964 F.3d 141, 149 (2d Cir. 2020); *Brown v. Kelly*, 609 F.3d 467, 482 (2d Cir. 2010); *Greater Chautauqua Fed. Credit Union v. Quattrone*, No. 1:22-CV-2753 (MKV), 2025 WL 869729, at *12 (S.D.N.Y. Mar. 20, 2025). The Organizational Plaintiffs have numerous individual members who fit Defendants' precise demographic profile and would benefit from injunctive relief.

Defendants next contend that the Individual Plaintiffs lack a "common injury subject to a single remedy," but that argument again ignores the factual record. Opp. at 14. Each class seeks to enjoin a policy and practice that affects all putative class members. Where a defendant has engaged in conduct that "applies generally to the proposed class[,]" it is well-established that Rule 23(b)(2) permits certification even if those "policies and practices may not affect every member of the proposed class . . . in exactly the same way." *Parsons*, 754 F.3d at 688; *see Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1, 61 (D.D.C. 2025). The common violation that afflicts all class members, regardless of their individual legal statuses or pending applications, is that Defendants subject them to a uniform, unconstitutional policy and practice. *See Davis v. Homecomings Fin.*, No. C05--1466 RSL, 2006 WL 2927702, at *7 (W.D. Wash. Oct. 10, 2006) ("The inquiry [under Rule 23(b)(2)] is not whether common issues predominate but whether defendant has acted on grounds generally applicable to the class.").

[8] In any event, that is not a requirement in the Ninth Circuit. *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998) ("Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate."); *see also Lyon v. U.S. Immigr. & Customs Enf't*, 171 F. Supp. 3d 961, 983 (N.D. Cal. 2016) (citing *Walters* and noting, "This is particularly the case in a Rule 23(b)(2) class action, where the defining feature is whether 'the party opposing the class has acted or refused to act on grounds that apply *generally* to the class. . .,' and whether injunctive relief is appropriate respecting the *class as a whole*").

Defendants make passing reference to the idea that class certification is not "necessary," Opp. at 5, but Rule 23(b)(2) mandates no such showing of "necessity." *Californians for Disability Rts., Inc.*, 249 F.R.D. at 349. The Ninth Circuit does not graft on requirements that do not appear in the text of Rule 23. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125 (9th Cir. 2017), *abrogated on other grounds by TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). Plaintiffs satisfy Rule 23(b)(2), and that is where the inquiry ends. Class certification is important because it further supports a grant of injunctive relief on a District-wide basis. *See Trump v. CASA, Inc.*, 606 U.S. 831, 849-50 (2025).

Finally, Defendants' concern that class members may be improperly precluded from subsequent litigation is unfounded. Opp. at 15. Although traditional principles of res judicata and collateral estoppel apply to class actions, this class poses no greater risk of such preclusive effects than any other. Although class actions are natural exceptions to the rule of nonparty preclusion insofar as a class judgment may decide an issue for the benefit of a nonparty, *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008), courts are capable of hearing any subsequent claim from class members that rest on distinct facts and legal theories. *See Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 880 (1984) (holding that subsequent action brought by class member was not precluded by earlier judgment). The possibility of preclusion here is irrelevant to certification.

**D. <u>Ascertainability Is Not a Requirement to Certify a Class</u>**

Defendants contend that the classes are not "ascertainable," but there is no ascertainability requirement in Rule 23. Instead, "Rule 23(a) constitutes an exhaustive list" of the "prerequisites" to class certification. *Briseno*, 844 F.3d at 1125. Notably, even those circuits that apply *any* ascertainability requirement do so only for damages classes under Rule 23(b)(3). *See id.* at 1127, n.7; *Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015).[9] For this reason, it does not matter that

[9] Defendants' authorities on ascertainability are unavailing. *See J.D. v. Azar*, 925 F.3d 1291, 1320 (D.C. Cir. 2019) (certification appropriate where "relief sought in a (b)(2) action is uniform and indivisible"); *Ballas v. Anthem Blue Cross Life & Health Ins. Co.*, No. CV1200604MMMFFMX, 2013 WL 12119569, at *4 (C.D. Cal. Apr. 29, 2013) (in case involving both 23(b)(3) and 23(b)(2), decided before *Briseno*, under ascertainability inquiry, "[t]he class simply must meet a minimum standard of definiteness which will allow the trial court to determine membership in the proposed class" (quoting *Rhodes v. Cracker Barrel Old Country Store, Inc.*, 213 F.R.D. 619, 674 (N.D. Ga.

Defendants fail to document certain detentive stops, Opp. at 14, because it is not necessary for Defendants to produce a list of class members.

Nothing in the law supports Defendants' related contention that class members must be identifiable using "administratively feasible criteria." Opp. at 16. There simply is no such requirement. "[T]he language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification." *Briseno*, 844 F.3d at 1133; *see also True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 929 (9th Cir. 2018) (holding that "there is no free-standing requirement above and beyond the requirements specifically articulated in Rule 23"); *In re Honda Idle Stop Litig.*, 347 F.R.D. 528, 539 (C.D. Cal. 2024) (assessing ascertainability for a proposed Rule 23(b)(3) class but recognizing that "the Ninth Circuit has declined to adopt an 'administrative feasibility' requirement beyond what is demanded by Rule 23(a)"). Defendants' own cited authority states that a 23(b)(2) class need only "accurately articulate[] the general demarcations of the class of individuals who are being harmed." *Thorpe v. District of Columbia*, 303 F.R.D. 120, 139 (D.D.C. 2014) (citation modified).

### E. <u>Plaintiffs Do Not Propose "Fail-Safe" Classes</u>

Defendants argue that Plaintiffs' proposed classes are improper fail-safe classes because the class definitions "tether class membership to the ultimate merits of their respective claims." Opp. at 18. Not so. As Defendants' own authorities explain, a fail-safe class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) (finding proposed class was *not* a fail-safe class). Plaintiffs have not proposed fail-safe classes because they have not defined the classes based on who had their rights violated. *See Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010) (finding "definition is not a circular one that determines the scope of the class only once it is decided that a class member was actually

---

2003))). Defendants' citation to *Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 191 (D.D.C. 2017), is actually a parenthetical quote from *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 680 (7th Cir. 2009) which concerned a 23(b)(3) action.

wronged"). Instead, the class definitions describe individuals stopped for particular reasons, and whether those reasons pass Constitutional muster is a merits determination on which class members may or may not prevail. Because class membership here relies on "factual question[s] and requires no impermissible preliminary determination of liability," the classes are not fail-safe classes. *Pena v. Taylor Farms Pac., Inc.*, 305 F.R.D. 197, 213 (E.D. Cal. 2015), *order clarified sub nom. Carmen Pena v. Taylor Farms Pac., Inc.*, No. 2:13-CV-01282-KJM-AC, 2015 WL 12550898 (E.D. Cal. Mar. 30, 2015), *and aff'd*, 690 F. App'x 526 (9th Cir. 2017); *see United Farm Workers*, 785 F. Supp. 3d at 712 (similar, as to class of persons stopped by Border Patrol); *Willis v. Enter. Drilling Fluids, Inc.*, No. 1:15-cv-00688-JLT, 2015 WL 6689637 (E.D. Cal. Oct. 28, 2015) (similar).

## III. **CONCLUSION**

The Court should grant certification of Plaintiffs' proposed classes and appoint class counsel.

Respectfully submitted,

DATED: September 2, 2026

ACLU OF SOUTHERN CALIFORNIA

By: */s/ Mohammad Tajsar*
MOHAMMAD TAJSAR
*Counsel for Stop/Arrest Plaintiffs*

DATED: September 2, 2026

NATIONAL DAY LABORER ORGANIZING NETWORK

By: */s/ Jia Fu*
JIA FU
*Counsel for Stop/Arrest Plaintiffs*

DATED: September 2, 2026

MUNGER, TOLLES & OLSON LLP

By: */s/ Jacob S. Kreilkamp*
JACOB S. KREILKAMP
*Attorneys for Stop/Arrest Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2026, I electronically filed the foregoing with the Clerk of the U.S. District Court for the Central District of California using the CM/ECF system, which provided notification of such filing to all registered CM/ECF users.

DATED: September 2, 2026

MUNGER, TOLLES & OLSON LLP

By: */s/ Jacob S. Kreilkamp*
JACOB S. KREILKAMP
*Counsel for Stop/Arrest Plaintiffs*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiffs certifies that this brief contains 6,311 words, which complies with the word limit of L.R. 11-6.1.

DATED: September 2, 2026

MUNGER, TOLLES & OLSON LLP

By: */s/ Jacob S. Kreilkamp*
JACOB S. KREILKAMP
*Counsel for Stop/Arrest Plaintiffs*

**ATTESTATION OF FILER**

I attest that the other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized this filing.

DATED: September 2, 2026 MUNGER, TOLLES & OLSON LLP

By: */s/ Jacob S. Kreilkamp*
JACOB S. KREILKAMP
*Attorneys for Stop/Arrest Plaintiffs*