STACY TOLCHIN (SBN 217431)
*stacy@tolchinimmigration.com*
LAW OFFICES OF STACY TOLCHIN
776 E. Green St., Suite 210
Pasadena, CA 91101
Tel: 213-622-7450; Fax: 213-622-7233

MOHAMMAD TAJSAR (SBN 280152)
*mtajsar@aclusocal.org*
MAYRA JOACHIN (SBN 306065)
*mjoachin@aclusocal.org*
DAE KEUN KWON (SBN 313155)
*akwon@aclusocal.org*
STEPHANIE PADILLA (SBN 321568)
*spadilla@aclusocal.org*
ALYSSA MORONES (SBN 343358)
*amorones@aclusocal.org*
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
P.O. Box 811370
Los Angeles, CA 90081-0007
Tel: 213-977-9500; Fax: 213-915-0219

*Counsel for Stop/Arrest Plaintiffs*

(*Additional counsel listed on next page*)

MARK ROSENBAUM (SBN 59940)
*mrosenbaum@publiccounsel.org*
REBECCA BROWN (SBN 345805)
*rbrown@publiccounsel.org*
RITU MAHAJAN (SBN 252970)
*rmahajan@publiccounsel.org*
GINA AMATO (SBN 215519)
*gamato@publiccounsel.org*
AMANDA MANGASER SAVAGE (SBN 325996)
*asavage@publiccounsel.org*
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Counsel for All Plaintiffs*

ANNE LAI (SBN 295394)
*alai@law.uci.edu*
UC IRVINE SCHOOL OF LAW
IMMIGRANT AND RACIAL JUSTICE SOLIDARITY CLINIC
P.O. Box 5479
Irvine, CA 92616-5479
Tel: 949-824-9894; Fax: 949-824-2747

*Counsel for Stop/Arrest Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

Pedro VASQUEZ PERDOMO, et al.,

Plaintiffs,

v.

Markwayne MULLIN, in his official capacity as Secretary, Department of Homeland Security, et al.,

Defendants.

Case No.: 2:25-cv-05605-MEMF-SP

**REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION RE: SUSPICIONLESS STOPS AND VIOLATION OF EQUAL PROTECTION**

Hon. Maame Ewusi-Mensah Frimpong

Date: September 24, 2026
Time: 10:00 a.m.
Place: Courtroom 8B

JACOB S. KREILKAMP (SBN 248210)
*jacob.kreilkamp@mto.com*
DAVID FRY (SBN 189276)
*david.fry@mto.com*
ADAM B. WEISS (SBN 296381)
*adam.weiss@mto.com*
SARA H. WORTH (SBN 341088)
*sara.worth@mto.com*
LAURA R. PERRY (SBN 342504)
*laura.perrystone@mto.com*
HENRY D. SHREFFLER (SBN 343388)
*henry.shreffler@mto.com*
LAUREN E. KUHN (SBN 343855)
*lauren.kuhn@mto.com*
ANGELA URIBE (SBN 353579)
*angela.uribe@mto.com*
MAGGIE BUSHELL (SBN 354048)
*maggie.bushell@mto.com*
MUNGER, TOLLES & OLSON LLP
350 S. Grand Ave., 50th Floor
Los Angeles, CA 90071
Tel: 213-683-9100; Fax: 213-683-9100

*Counsel for Stop/Arrest Plaintiffs*

BREE BERNWANGER (SBN 331731)
*bbernwanger@aclunc.org*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel: 415-621-2493

BRISA VELAZQUEZ OATIS (SBN 339132)
*bvoatis@aclu-sdic.org*
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Tel: 619-398-4199

*Counsel for Stop/Arrest Plaintiffs*

EDGAR AGUILASOCHO (SBN 285567)
*eaguilasocho@farmworkerlaw.com*
MARTÍNEZ AGUILASOCHO LAW, INC.
900 Truxtun Ave, Suite 300
Bakersfield, CA 93301
Tel: 661-859-1174

*Counsel for Plaintiff United Farm Workers*

JESSICA KARP BANSAL (SBN 277347)
*jessica@ndlon.org*
LAUREN MICHEL WILFONG*
*lwilfong@ndlon.org*
JIA FU*
*jennifer@ndlon.org*
NATIONAL DAY LABORER ORGANIZING
NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Tel: 626-214-5689

*Counsel for Stop/Arrest Plaintiffs*

MATTHEW J. CRAIG (SBN 350030)
*mcraig@heckerfink.com*
MACK E. JENKINS (SBN 242101)
*mjenkins@heckerfink.com*
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Tel: 212-763-0883; Fax: 212-564-0883

*Counsel for Access/Conditions Plaintiffs*

CARL BERGQUIST*
*cbergquist@chirla.org*
COALITION FOR HUMANE IMMIGRANT
RIGHTS
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

*Counsel for Plaintiff CHIRLA*

ALVARO M. HUERTA (SBN 274787)
*ahuerta@immdef.org*
BRYNNA BOLT (SBN 339378)
*bbolt@immdef.org*
ALISON STEFFEL (SBN 346370)
*asteffel@immdef.org*
IMMIGRANT DEFENDERS LAW CENTER
634 S. Spring St., 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

*Counsel for Plaintiff ImmDef*

* Admitted pro hac vice

## TABLE OF CONTENTS

Page


I. INTRODUCTION ........ 8

II. ARGUMENT ........ 8

A. Plaintiffs have shown an officially sanctioned policy and practice of racial profiling. ........ 8

B. Plaintiffs have established standing. ........ 12

C. Plaintiffs are likely to succeed on their claim under the Fourth Amendment. ........ 16

D. Plaintiffs are likely to succeed on their Fifth Amendment claim. ........ 19

E. Plaintiffs have shown irreparable harm. ........ 21

F. The public interest and balance of equities favor granting the injunction. ........ 21

G. The injunction is no broader than necessary to provide relief to Plaintiffs. ........ 24

H. Defendants' jurisdiction-stripping arguments fail. ........ 24

I. Plaintiffs should not be required to post a bond. ........ 25

III. CONCLUSION ........ 25

CERTIFICATE OF SERVICE ........ 27

CERTIFICATE OF COMPLIANCE ........ 28

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Adarand Constructors, Inc. v. Peña*,
515 U.S. 200 (1995) ....................20

*Black Lives Matter L.A. v. City of Los Angeles*,
113 F.4th 1249 (9th Cir. 2024)....................16

*Boardman v. Pac. Seafood Grp.*,
822 F.3d 1011 (9th Cir. 2016)....................21

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ....................12, 13

*Cnty. of King v. Turner*,
---F.4th---, 2026 WL 2489361 (9th Cir. Aug. 25, 2026)....................22

*DHS v. Regents of the University of California*,
591 U.S. 1 (2020) ....................20

*Easyriders Freedom F.I.G.H.T. v. Hannigan*,
92 F.3d 1486 (9th Cir. 1986)....................9, 24

*Escobar Molina v. U.S. Dep't of Homeland Sec.*,
811 F. Supp. 3d 1 (D.D.C. 2025) ....................25

*FEC v. Akins*,
524 U.S. 11 (1998) ....................14

*Floyd v. City of New York*,
959 F. Supp. 2d 540 (S.D.N.Y. 2013) ....................20

*Garland v. Aleman Gonzalez*,
596 U.S. 543 (2022) ....................24

*Gonzalez v. U.S. Immigr. & Customs Enf't*,
975 F.3d 788 (9th Cir. 2020)....................24

*Gonzalez-Rivera v. I.N.S.*,
22 F.3d 1441 (9th Cir. 1994)....................20

*Hodgers-Durgin v. de la Vina*,
199 F.3d 1037 (9th Cir. 1999)....................15

*Index Newspapers LLC v. U.S. Marshals Serv.*,
977 F.3d 817 (9th Cir. 2020)....................13, 22, 24

*LaDuke v. Nelson*,
762 F.2d 1318 (9th Cir. 1985)....................9

*Los Angeles Press Club v. Noem*,
171 F.4th 1179 (9th Cir. 2026)....................12, 22

*Marshall v. Columbia Lea Reg'l Hosp.*,
345 F.3d 1157 (10th Cir. 2003)....................19

*Mayfield v. United States*,
599 F.3d 964 (9th Cir. 2010)....................14

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012)....................12, 14

*Melendres v. Arpaio*,
989 F. Supp. 2d 822 (D. Ariz. 2013)....................20

*Mullin v. Doe*,
146 S. Ct. 2121 (2026)....................20

*Orantes-Hernandez v. Meese*,
685 F. Supp. 1488 (C.D. Cal. 1988)....................9

*Patterson v. Six Flags Theme Parks, Inc.*,
No. 25-2070, 2026 WL 2137692 (9th Cir. July 24, 2026)....................24

*People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency*,
766 F.2d 1319 (9th Cir.)....................25

*Perez v. Bondi*,
No. 5:26-CV-00946-AB-AJR, 2026 WL 710513 (C.D. Cal. Mar. 13, 2026)....................25

*Rakas v. Illinois*,
439 U.S. 128 (1978)....................15

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
525 U.S. 471 (1999)....................25

*Stavrianoudakis v. U.S. Fish & Wildlife Serv.*,
108 F.4th 1128 (9th Cir. 2024)....................15

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
600 U.S. 181 (2023)....................20

*Summers v. Earth Island Institute*,
555 U.S. 488 (2009)....................15

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014)....................13

*Texas v. U.S. Dep't of Homeland Sec.*,
123 F.4th 186 (5th Cir. 2024)....................24, 25

*Trump v. Hawaii*,
585 U.S. 667 (2018)....................20

*Trump v. Illinois*,
146 S. Ct. 432 (2025) ........................................ 20

*United Farm Workers of America v. Mullin*,
No. 25-4047, Dkt. No. 69 (9th Cir. Aug. 24, 2026) ........................................ 13

*United States v. Brignoni-Ponce*,
422 U.S. 873 (1975) ........................................ 19

*United States v. Manzo Jurado*,
457 F.3d 928 (9th Cir. 2006) ........................................ 17

*United States v. Montero-Camargo*,
208 F.3d 1122 (9th Cir. 2000) ........................................ 17, 20

*United States v. Rodriguez*,
976 F.2d 592 (9th Cir. 1992) ........................................ 16

*United States v. Sipe*,
388 F.3d 471 (5th Cir. 2004) ........................................ 12

*Unknown Parties v. Johnson*,
No. CV-15-00250, 2016 WL 8188563 (D. Ariz. Nov. 18, 2016) ........................................ 24

*Vasquez Perdomo v. Noem*,
148 F.4th 656 (9th Cir. 2025) ........................................ 24

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*,
429 U.S. 252 (1977) ........................................ 20

*Warsoldier v. Woodford*,
418 F.3d 989 (9th Cir. 2005) ........................................ 21

*Wayte v. United States*,
470 U.S. 598 (1985) ........................................ 20

*Whren v. United States*,
517 U.S. 806 (1996) ........................................ 19, 20

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ........................................ 21

*Zeco, LLC v. Segars*,
No. 2:26-CV-02469-TLN-CSK, 2026 WL 2225158 (E.D. Cal. Aug. 3, 2026) ........................................ 25

**FEDERAL STATUTES**

8 U.S.C. § 1226 ........................................ 24

8 U.S.C. § 1229 ........................................ 24

8 U.S.C. § 1231 ........................................ 25

8 U.S.C. § 1252(f)(1) ........................................ 24

8 U.S.C. § 1252(g) ....................25

8 U.S.C. § 1357 ....................24

**FEDERAL RULES**

Fed. R. Civ. P. 65(d) ....................23

Fed. R. Evid. 402 ....................11

Fed. R. Evid. 901 ....................11

**STATE RULES**

Cal. R. Prof. Cond. 3.3(a)(1) ....................18

**OTHER AUTHORITIES**

Catherine C. Orenstein, *Illegal Transnational Labor: Mexicans in California and Haitians in the Dominican Republic*, Journal of International Affairs, *48*(2) (1995), https://www.proquest.com/docview/1290514107 ....................12

Sergio Olmos and Wendy Fry, *Immigration agents used racial slurs during LA sweeps, court records show*, CalMatters (July 27, 2026), https://calmatters.org/justice/2026/07/immigration-agent-text-messages/ ....................12

# I. INTRODUCTION

Defendants rest much of their opposition, ECF 678 ("Opp."), on Justice Kavanaugh's solo concurrence about a dissolved TRO, but Plaintiffs' Motion is based on a different record, raises an additional legal theory, and requests a different injunction. That is because discovery revealed a policy and practice even more disturbing than at the TRO stage: Defendants are not merely relying on Latino ethnicity as one of multiple factors; instead they are relying on race as *the* essential and predominant factor motivating their detentive stops.

Defendants ignore the new record and legal theories before the Court. Plaintiffs submitted 146 exhibits (including those incorporated by reference), comprising testimony, arrest records, operational documents, text messages, and videos. Defendants don't dispute any of this evidence and instead offer only unsupported speculation about their operations. To aid in any appellate review, the Court should make the detailed factual findings (confirmed by the now-undisputed record) that Plaintiffs set forth in their proposed order, ECF 632-90 ("P.O."), about Defendants' policy and practice of demographic profiling, official sanction of that policy and practice, and the continued irreparable harm that policy and practice imposes on Plaintiffs.

Defendants' complaints about the specific injunction Plaintiffs seek are vague and incoherent. Defendants argue that the injunction parrots existing law, while also predicting that the sky will fall if it is granted. Not so. The injunction is clear, appropriately tailored, and urgently needed.

# II. ARGUMENT

## A. <u>Plaintiffs have shown an officially sanctioned policy and practice of racial profiling.</u>

Defendants do not contest Plaintiffs' evidence showing an unconstitutional policy and practice of racial profiling. The Court therefore should find that Defendants have an officially sanctioned policy and practice of stopping people based on their apparent status as low-income or working-class Latinos. P.O. at 3, 17.

Defendants suggest Plaintiffs must prove that every stop in the District is based on race. *E.g.*, Opp. at 13. That is not the law. Plaintiffs need only show a pattern of misconduct that is

officially sanctioned. *See, e.g.*, *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501 (9th Cir. 1986) ("[s]pecific findings of a persistent pattern of misconduct" can support injunctive relief) (internal citation omitted); *accord LaDuke v. Nelson*, 762 F.2d 1318, 1324 (9th Cir. 1985) (citing cases). Put another way, *some* lawful activity by an agency cannot insulate it from an injunction against widespread *unlawful* activity.

The record establishes far more than "relatively few instances" or "isolated" examples of stops based on race. Opp. at 13, 17. Plaintiffs submitted 55 sworn declarations describing suspicionless and discriminatory detentive stops across Defendants' operations, including of numerous U.S. citizens and lawfully present individuals. *See* ECF 647 at 9-10 & n.7. There also are more instances captured in body camera videos and arrest narratives, *see* ECF 632 ("Mot.") at 5, 10 n. 10, 16, 22, 23 n. 21, and reflected in Defendants' agents' own deposition testimony. Testimony confirming the absence of individualized suspicion supporting stops comes not only from line agents and officers, but also from *multiple supervisors*, spanning numerous teams across both Border Patrol and ICE. *See generally* Mot. Defendants refute none of it.

Defendants' policy and practice is officially sanctioned. Defendants do not dispute that CBP and ICE 30(b)(6) witnesses ratified agents' conduct and testified that nothing the agencies had learned about the incidents warranted investigation. ECF 644-1 [CBP 30(b)(6) Dep.] at 319:12-24; ECF 632-40 [ICE 30(b)(6) Dep.] at 181:20-184:7; *Orantes-Hernandez v. Meese*, 685 F. Supp. 1488, 1505 (C.D. Cal. 1988), *aff'd*, 919 F.2d 549 (9th Cir. 1990). Multiple agents and officers also indicated that those in their chain of command approved of their conduct. *See, e.g.*, Ex. 109 [SBPA I.F. Dep.] at 313:9-314:3; Ex. 110 [DO C.C. Dep.] at 314:20-315:9; ECF 644-2 [DO E.O. Dep.] at 326:17-327:11. And Defendants ignore that leadership's intentional actions—from the email to ICE field offices encouraging them to deviate from standard practice and "turn up the creative knob to 11 and push the envelope" on "collateral encounters," ECF 529-11 [email chain], to the decision to deploy Border Patrol to conduct roving patrols across the District and to withdraw supervisory oversight and accountability, Mot. at 12 n. 11—show Defendants' aim was and is to empower agents and officers to racially profile. *See also* ECF 632-3 [Kerlikowske Decl.], ¶¶ 35-46.

Defendants' arguments against the existence of a policy and practice lack merit. Defendants first argue that because *some* arrests they make are of predetermined "targets," their reliance on "targets" cannot be pretextual. Opp. at 13. But one does not follow from the other. Defendants may make some targeted arrests.[1] But Defendants *also* systematically use the pretense of a "target" to stop Latino individuals (purportedly) in the "target's" general area based on nothing more than a demographic profile. Mot. at 5-7, 20-21. Although 25-40% of arrests—the percentage of "collateral" arrests one supervisor estimated his team makes and that Defendants point to—is already high, that figure does not account for the U.S. citizens and lawfully present individuals who are stopped but then released, a number that Defendants do not track. Mot. at 13 n. 13; *see also* Ex. 111 [BPA Morales Dep.] at 319:16-320:3 (agent stopped hundreds of people lawfully present).

Defendants further miss the point when they contend that it is "reasonable to expect collateral arrests will occur" and that individuals will be stopped in "proximity" to "targets." Opp. at 13. The problem is not that Defendants arrest non-targets; it is that Defendants routinely stop people on account of their ethnicity and with no reasonable basis to believe they are a "target," in circumstances that cannot be fairly described as "incidental" to arresting a "target." *Cf. id*. at 4. Contrary to Defendants' suggestion, *id.* at 19-20, having information about a "target" cannot supply reasonable suspicion to stop a *non*-target whose only connection to the target is a shared ethnicity. *See* Mot. at 5-7, 20-21 & nn.18-19.[2]

Defendants next argue that if they had a policy of race-based profiling in the District, one would expect to see "far more stops." Opp. at 16. But Plaintiffs do not need to show that all Latinos in the District have been stopped; Plaintiffs need only show that numerous Latino individuals are being stopped *because* they are Latino. Defendants' argument that agents cannot

[1] To the extent Defendants make such arrests with warrants, Plaintiffs do not challenge them here.

[2] HSI Agent G.A.'s statements were only one source showing that Defendants' objective on "targeted area" operations was to stop and arrest non-targets. *See* Mot. at 4-5. That is not mutually exclusive with agents stopping "targets" on those operations, but the record shows agents often did not even look for "targets." *Id.* at 5.

be stopping individuals based on race and language[3] because if they were, they would be "randomly stopping half of the Central District," Opp. at 17, fails for the same reason. Based on the record, which includes extensive evidence of lawfully present individuals being stopped, Mot. at 14-16, the Court can and should find that Defendants are making widespread indiscriminate stops of Latinos.[4] That is sufficient for a preliminary injunction, particularly where the record shows that a number of individuals, including organizational Plaintiff members, have already been stopped more than once. Mot. at 14-16.

Defendants assert that agents rely on "far more than perceived ethnicity," Opp. at 17, but offer *no evidence* that this is so. Defendants promise "overwhelming evidence" that racial profiling is not agency policy, but supply *none*. Opp. at 13. Defendants cite only: (1) declarations summarily stating that agents receive training on and adhere to the Fourth Amendment and other federal laws, *id.* at 4-5; (2) an online HSI handbook from 14 years ago, *id.* at 9; (3) an apparently outdated CBP "Policy on Nondiscrimination" contradicted by Defendants' current litigation position that they may consider apparent ethnicity in forming reasonable suspicion in routine immigration enforcement, *id.* at 10; and (4) the cover page of—but none of the content of—an undated training, ECF 678-1[5]. The Court should find that Defendants have provided no evidence that they have a written policy forbidding their current practice of demographic profiling, or, indeed, any document even providing guidance to agents on how to properly develop reasonable suspicion in interior field operations in the District.

---

[3] Plaintiffs do not seek to enjoin stops based on both race and language, but on apparent status as low-income or working-class Latinos. Mot. at 1.

[4] In making that finding, the Court does not need to conclude at this time that Defendants are intentionally "wasting time with people who are legally in the United States." Opp. at 17. The record plainly establishes that Defendants want to make arrests. To do so, they are improperly using the "shortcut" of racial profiling, ECF 632-3 [Kerlikowske Decl.], ¶ 21, to cast a wide net. This will predictably continue to result in many people who are lawfully present being stopped. *See* ECF 644-1 [CBP 30(b)(6) Dep.] at 236:24-238:13 (testifying it does not concern agency that citizens are stopped); ECF 632-40 [ICE 30(b)(6) Dep.] at 168:20-170:9 (same).

[5] Plaintiffs object to ECF 678-1 as irrelevant because Defendants do not disclose the content of the training, *see* FRE 402, and because it is lacking in authentication, *see* FRE 901. Indeed, Defendants say the training was given by ICE, Opp. at 4, but it is actually a CBP officer training, *see* Ex. 112 [CBP 30(b)(6) Dep.] at 354:8-356:4.

Even if Defendants had submitted evidence of a written policy forbidding the profiling occurring here (and they have not), this case is nothing like the cases Defendants cite. *See* Opp. at 10, 13. Here, the record, including from the 30(b)(6) testimony of the Defendant agencies, shows that agents' unlawful stops are *consistent* with supervisor and command staff expectations. *See* Mot. at 11-12; *Los Angeles Press Club v. Noem*, 171 F.4th 1179, 1192 (9th Cir. 2026) (in affirming standing, citing district court's factual finding that DHS officers failed to follow policies in response to plaintiffs' protected conduct).

Defendants also concede that their agents use "inappropriate slurs" to describe subjects of enforcement, but argue that this evidence is "insufficient" to prove racial profiling. Opp. at 20. Plaintiffs' position is not that use of slurs *alone* proves the policy and practice. This evidence—from multiple teams, Mot. at 8, 22—supports the finding that Defendants make assumptions about individuals based on their apparent race, conflating Latino ethnicity with undocumented status. Agents are not simply using slurs, but purporting to "*see*" undocumented people to whom they refer as "tonks" or "wet" or a "paisa" based solely on Latino appearance. Mot. at 2, 8, 18 (emphasis added).[6]

**B. <u>Plaintiffs have established standing.</u>**

Plaintiffs have standing to obtain injunctive relief if they are the "target[s]" of a government "policy" or "pattern of officially sanctioned behavior" that poses an imminent threat of injuring them. *Melendres v. Arpaio*, 695 F.3d 990, 998 (9th Cir. 2012) (quotation modified). That test follows directly from *City of Los Angeles v. Lyons*, which focuses the prospective standing inquiry on whether the plaintiffs are "realistically threatened" by officers

[6] Defendants do not contest the terms' racialized connotations. *See, e.g.*, *United States v. Sipe*, 388 F.3d 471, 484 n. 33 (5th Cir. 2004); Catherine C. Orenstein, *Illegal Transnational Labor: Mexicans in California and Haitians in the Dominican Republic*, Journal of International Affairs, *48*(2), 601, 605 (1995), https://www.proquest.com/docview/1290514107 ("tonk" is "slang for a Latino migrant"). Despite citing purported policies discouraging such language, Defendants have not repudiated agents' use of these terms. *See* Sergio Olmos and Wendy Fry, *Immigration agents used racial slurs during LA sweeps, court records show*, CalMatters (July 27, 2026), https://calmatters.org/justice/2026/07/immigration-agent-text-messages/ (quoting DHS response to use of terms).

acting pursuant to "order[] or authoriz[ation]." 461 U.S. 95, 106 (1983). As set forth above and in Plaintiffs' Motion, Plaintiffs easily satisfy that inquiry. *See Part* II.A, *supra*; Mot. at 11-14.

Defendants argue that Plaintiffs base their standing solely on evidence of *past* harm, *see* Opp. at 7-8, but the extensive evidence in the post-TRO record substantiates the *prospective* threat Plaintiffs face. Organizational Plaintiff members and others similarly situated have already been stopped multiple times pursuant to Defendants' policy and practice of racial profiling, and Defendants have adopted practices that confirm such repeated stops will continue: They target the same locations, have no system for tracking those who were stopped but then released, and don't even allow Latino individuals to retrieve proof of lawful status prior to detention. *See* Mot. at 12-16; *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 833 (9th Cir. 2020) (repeated incidents against same individuals support standing). To be sure, that Plaintiffs have been injured in the past by the very policy they seek to enjoin supports the prospective threat they face. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) (viewing "past enforcement against the same conduct" as "good evidence" of future "threat"); Order 2–3, *United Farm Workers of America v. Mullin*, No. 25-4047, Dkt. No. 69 (9th Cir. Aug. 24, 2026) (under *Lyons*, "evidence of past wrongs . . . may bear on whether there is a real and immediate threat of repeated injury").[7] But Plaintiffs' standing is based on evidence of far more.

Defendants primarily respond to Plaintiffs' evidence by asserting that there is an "absen[ce]" of evidence that any named Plaintiff is at imminent risk of an unconstitutional stop. Opp. at 8. Not so. The record shows that Plaintiffs Gavidia and Hernandez Viramontes, both U.S. citizens, were already stopped pursuant to Defendants' policy of unconstitutional racial profiling, *see* Mot. at 3-4; that they fit the profile Defendants continue to target pursuant to that policy, *see id.* at 12 n.12; and that Defendants' policy has yielded repeated stops of other Latino

[7] In *United Farm Workers*, the Ninth Circuit issued a limited remand because the "district court considered only Plaintiffs' allegations of past harm," without finding that plaintiffs faced a "real and immediate threat of repeated injury." Here, the record firmly supports exactly the finding that the Ninth Circuit found was lacking in *United Farm Workers*. *See* P.O. at 2, 3-4, 22.

U.S. citizens, *see id.* at 15.[8] The record is likewise replete with evidence of imminent risk to Plaintiffs Vasquez Perdomo, Villegas Molina, and Osorto. They too were stopped on the basis of Defendants' policy of racial profiling, *see id.* at 5-6, 15; they too fit the profile that Defendants continue to target, *see id.* at 12 n.12; and they too are similarly situated to other individuals who have been stopped repeatedly, *see id.* at 15-16.

Contrary to Defendants' suggestion, Opp. at 10 n.1, the Ninth Circuit's post-*Lyons* case law does not require Plaintiffs to show a written "instruct[ion]" that officers violate the law. Plaintiffs need show *either* a "written policy" *or* a "pattern of officially sanctioned" behavior. *Melendres*, 695 F.3d at 998; *accord Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010) (identifying those "*two ways* in which a plaintiff can demonstrate that [threatened] injury is likely to recur" (emphasis added)).

Defendants counter that the likelihood of a stop of any Plaintiff is necessarily low because Los Angeles is large and populous. *See* Opp. at 8, 11. But the record utterly refutes Defendants' conclusory assumption that Plaintiffs have shown "no more entitle[ment] to an injunction than any other citizen," Opp. at 8, because it shows Defendants' practice of repeatedly targeting Plaintiffs and those just like them. And the Supreme Court has rejected Defendants' suggestion that the widespread nature of their unconstitutional behavior immunizes them from judicial scrutiny. *See, e.g.*, *FEC v. Akins*, 524 U.S. 11, 24 (1998) (rejecting argument that plaintiffs lack standing whenever harm is "widely shared").

The Supreme Court's stay order, which lacks any controlling reasoning, addressed a different record and a different injunction. The Court did not, and could not, consider any of the evidence that Plaintiffs have subsequently developed showing the pattern of racial profiling that threatens Plaintiffs, *see* Mot. at 11-12, and the imminent threat of future stops against Plaintiffs and those like them, *see id.* at 12-16. Defendants thus blink reality by characterizing this motion

[8] Defendants suggest that stops of other U.S. citizens *may* have been based on reasonable suspicion. Opp. at 9. But the evidence shows precisely the opposite, *see* ECF 632-56 [Anderson Decl.], ¶¶ 4-13; ECF 632-57 [H.A. Decl.], ¶¶ 5-18—including prolonged stops of U.S. citizens even as they claimed citizenship or sought to show identification, *see, e.g.*, ECF 632-36 [J.A.P. Decl.], ¶¶ 3-6. Defendants do not offer any contrary evidence.

as relying on "materially indistinguishable facts and allegations" as those addressed by the Supreme Court. Opp. at 8.

Nor does *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999) (en banc), assist Defendants. The Ninth Circuit there made no finding that the Border Patrol had an officially sanctioned practice of making unreasonable stops.[9] And the court relied on evidence disproving any "sufficient likelihood" of a future stop against the plaintiffs—specifically, evidence that both plaintiffs drove along the land border multiple times every week and encountered Border Patrol "nearly every day," yet each was "stopped only once in 10 years." *Id.* at 1044. Defendants have adduced no remotely similar evidence here. Indeed, the record shows the opposite: individuals, including organizational Plaintiff members, have been stopped twice in mere months. *See* Mot. at 14-16; ECF 529-74, ¶ 13.

With respect to organizational standing, Defendants assert that Plaintiffs' argument is "based on pure statistical inference." Opp. at 14. But the record shows specific members have already been stopped pursuant to Defendants' racial profiling, *see* Mot. at 13-14, and some have already been stopped more than once, *see id*. at 14-15. Defendants do not engage with this record. Defendants thus badly err in analogizing this case to *Summers v. Earth Island Institute*, where the Court rejected a standing analysis that rested solely on the size of an organization's membership. 555 U.S. 488, 497-98 (2009). Here, associational standing is supported by uncontested, concrete evidence of specific organizational members who have been and continue to be threatened by Defendants' racial profiling.[10]

Precedent also refutes Defendants' argument, Opp. at 15, that organizations never have associational standing to vindicate the Fourth Amendment rights of their members. *See* *Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128, 1143 (9th Cir. 2024). None of the cases cited by Defendants is to the contrary. *See Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978)

[9] Defendants meanwhile disregard the many Ninth Circuit cases that *do* address officially sanctioned conduct. *See* Opp. at 7-16 (ignoring *Melendres* and case law on which it relies).

[10] Defendants briefly resist organizational (as distinct from associational) standing, Opp. at 15, but Plaintiffs are not relying on that theory of standing here.

(refusing to allow *individuals* to vicariously assert rights of others); *Black Lives Matter L.A. v. City of Los Angeles*, 113 F.4th 1249, 1261 (9th Cir. 2024) (characterizing certain excessive-force claims as ill-suited for classwide resolution).[11]

**C. Plaintiffs are likely to succeed on their claim under the Fourth Amendment.**

Defendants do not contest that the Fourth Amendment prohibits detentive stops based solely on a demographic profile. *See* Mot. at 17. And they admit that they are relying *at least in part* on race. Opp. at 21. The question for this Court, then, is the *extent* to which they do so. The evidence shows Defendants have abandoned the totality-of-circumstances standard in favor of a "prefabricated or recycled profile." *United States v. Rodriguez*, 976 F.2d 592, 595-96 (9th Cir. 1992). The Court should find that Defendants' claimed reliance on the totality of the circumstances is not credible, and that race is the predominant and essential factor motivating Defendants' stops. P.O. at 31.

Defendants ignore the overwhelming evidence that agents identify "possibles" to stop based solely on appearance. *See* Mot. at 18. They accuse Plaintiffs of "cherry-pick[ing]" (Opp. at 12), but offer no contrary evidence—despite their direct access to all operational files and the agents and officers who conduct the operations. Defendants instead suggest factors they claim *could* support reasonable suspicion in the abstract, but point to nothing in the record showing such factors did provide the basis for any of the stops at issue. *See* Opp. at 19-20.

Defendants' contention that they are targeting individuals at "locations with histories of employing undocumented workers or occupations that attract such workers," Opp. at 19, 17 n.3, is doubly contradicted by the record. First, even if it were lawful to stop someone because their job "attract[s undocumented] workers" (it is not), Defendants are not stopping people based on the particular work they do, but are instead profiling low-income or working-class Latinos. Mot. at 9-10, 18-19. Defendants routinely stop Latino individuals when they are not at or trying to obtain

[11] Plaintiffs also have standing to bring their equal protection claim for the reasons explained in Plaintiffs' Motion. *See* Mot. at 16. Defendants do not address that point.

work, and have stopped Latino customers of businesses, while leaving white-appearing individuals working at the same locations alongside Latino workers alone. Mot. at 10.[12]

Second, even if Defendants *were* relying on information about a person's particular occupation, Defendants have not produced any information about specific businesses or even occupations that employ undocumented workers. Opp. at 19; *see also* Mot. at 9 n.9, 18 (Defendants have no such information). Defendants cite Justice Kavanaugh's concurring opinion, Opp. at 16, but that opinion relies only on Defendants' prior *briefing*, which cited no evidence. Discovery has revealed—and the Court can now find—that agents do not know whether certain jobs pay cash or do not require paperwork. Instead, they target individuals and locations based on stereotypes about race and class. Mot. at 9-10; P.O. at 14-16.[13]

Defendants also suggest that spoken language can support reasonable suspicion, *see* Opp. at 16, 19-20, but their cited authority concerns the inability to speak English, not the use of Spanish. Defendants ignore the evidence showing that agents are initiating encounters in Spanish and thus getting a response in Spanish from individuals who may (and in some cases, do) also speak English. *See* Mot. at 19; *see also* ECF 644-1 [CBP 30(b)(6) Dep.] at 226:5-229:2. Plaintiffs' argument is not that inability to speak English should be excised from the reasonable suspicion analysis, but that the record shows a pattern and practice of stops that are actually based on Latino ethnicity.

---

[12] Defendants suggest the proper inquiry is whether an individual's Latino ethnicity was a "but for" cause of the stop. Opp. at 17. Even if that was the standard (it is not), this evidence—of Latino customers being stopped and white-appearing workers not being stopped—establishes Latino ethnicity as a "but for" cause. *See also* Mot. at 18 (citing other record evidence that race is the essential motivation for Defendants' stops).

[13] *United States v. Manzo Jurado* did not find presence in a location or "appearance as a work crew" to add anything meaningful to the reasonable suspicion analysis, especially where many law-abiding individuals share (or may share) the same characteristics. 457 F.3d 928, 936-37 (9th Cir. 2006). Here, unlike in *Manzo Jurado*, there is no record evidence about an officer's purported experience to support Defendants' position. For example, agents arrested individuals at car washes, but Defendants adduced no information about how such individuals were paid or the car washes' paperwork practices. Mot. at 9, 18 (citing SBPA I.F. and SBPA V.S. testimony). Even if they had such information, "experience" alone does not give officers license to make sweeping generalizations about people. *United States v. Montero-Camargo*, 208 F.3d 1122, 1131 (9th Cir. 2000). Reasonable suspicion must be grounded in particularized facts.

Defendants further argue that flight can be a factor in the reasonable suspicion analysis. Opp. at 12. Of course it *can* be, depending on the circumstances,[14] but the evidence here shows a pattern of racial profiling both in the absence of flight[15] and regardless of flight.[16] Defendants concede that evidence and submit no evidence to show agents *relying* on flight. Defendants point only to the testimony of HSI Agent G.A., who testified that "in a few instances," he observed agents chase after individuals who ran. ECF 632-20 [HSI SA G.A. Dep.] at 207:9-24. But Agent G.A. did not comment on whether agents stopped others who were not running, nor is it clear he would have been in a position to observe that, given his role providing security. *Id.* at 207:25-208:8. Plaintiffs' request for relief does not concern agents' reliance on flight as a factor in the reasonable suspicion analysis, but their reliance on ethnicity regardless of flight. *See also, e.g.*, ECF 632-43 [Santiago Tafolla Decl.], ¶¶ 2, 5-6 (U.S. citizen member of CLEAN who observed light-skinned coworkers who ran but were not chased).

Unable to justify any stops in the record, Defendants implausibly maintain that encounters with named Plaintiffs were "consensual." Opp. at 18-19.[17] Citing only Plaintiff Villegas Molina's declarations, they assert that he "voluntarily" answered questions from ICE; but his declaration establishes that officers ambushed him and issued commands while he stood still. ECF 529-16

[14] *Cf.* ECF 621 at 23 n.21 (discussing authority limiting probative value of flight in other circumstances, including where provoked).

[15] Mot. at 4 (roving patrols where individuals did not flee), 6-7 (pretextual "targeted" operations where individuals did not flee), 13-15, 22-23 n.20, 23 n.21; ECF 529-84 [GOV-P17-061]; ECF 632-85 [GOV-P17-76]; ECF 632-86 [GOV-P16-006]; ECF 632-87 [GOV-P19-060]; ECF 539-8 at 6-7.

[16] Defendants simultaneously seized Latino individuals who ran and those who did not run, belying any claim that flight determined whom they seized. *See, e.g.*, ECF 632 at 5-6, ECF 529-15 [Vasquez Perdomo Decl.], ECF 529-17 [Osorto Decl.], ECF 529-16 [Villegas Molina Decl.]. The common characteristic they shared was appearance as a working-class Latino—not flight.

[17] Defendants have dropped their absurd claim that Plaintiff Brian Gavidia's stop was "self-initiated," having lost all credibility once body camera footage disproved nearly everything Defendants said about that incident. Mot. at 22. Yet Defendants still rely on the declaration of Agent C217, which contains patently false statements. Opp. at 18 (citing ECF 170-1). Counsel should have corrected those statements. Cal. R. Prof. Cond. 3.3(a)(1); *see also* Supplemental Declaration of Anne Lai, ¶¶ 7-9 & Exs. 114-116. Other declarations on which Defendants rely regarding how agents conduct themselves lack foundation and should be excluded, including ECF 71-1, ¶ 9, ECF 170-2, ¶¶ 9, 11, 14.

[Villegas Molina Decl.], ¶¶ 5-6. Defendants also assert that the encounter with Plaintiff Hernandez Viramontes was "consensual." But the agent who stopped Hernandez Viramontes admitted that the interaction was "a detention." ECF 632-15 [BPA J.M. Dep.] at 261:14-25.[18] Plaintiffs' video evidence establishes the seizure. *See* ECF 632 at 22. The Court should find these were seizures, not consensual encounters. P.O. at 20-22, 36 & n.9; *see also* P.O. at 16 n.2.[19]

### D. Plaintiffs are likely to succeed on their Fifth Amendment claim.

Defendants fail to contest any of the evidence—including sworn admissions from agents that they rely on Latino ethnicity when conducting stops, and the endorsement of that reliance by Defendant agencies including through 30(b)(6) testimony—establishing that Defendants' policy violates the Fifth Amendment's equal protection guarantee. Defendants instead argue that Plaintiffs' equal protection claim should be dismissed as "co-extensive" with their Fourth Amendment claim. Opp. at 21. But "the right to equal protection may be violated even if the actions of the [government] are acceptable under the Fourth Amendment." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1166 (10th Cir. 2003) (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)).

Defendants incorrectly argue that their explicit reliance on race is permissible, citing dicta in *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975). *See* Opp. at 22. But *Brignoni-Ponce* never considered whether the government's reliance on race violates equal protection. *Brignoni-Ponce* discussed reliance on race as but one of multiple factors in the reasonable suspicion analysis, whereas the unrefuted evidence here shows Defendants regularly use an individual's Latino ethnicity as the predominant basis for conducting stops. *See* Mot. at 17-18. But even if Defendants were relying on Latino ethnicity as one of multiple factors (contrary to the record here), their policy and practice would independently violate the Fifth Amendment. The Supreme Court has made clear that "selective enforcement of the law based on considerations such

[18] Defendants also refer to Omar Gamez, Opp. at 18, but Mr. Gamez is not a Plaintiff and Plaintiffs do not proffer his encounter as a seizure.

[19] Defendants also have no response to evidence of officers regularly extending vehicle stops on an (erroneous) theory of "consent" after it is clear individuals are not "targets," Mot. at 23, further showing that Defendants' stops are pretextual.

as race," including government decisions based in whole or in part on express racial classifications, violates equal protection. *Whren*, 517 U.S. at 813. *Brignoni-Ponce* is also irreconcilable with the Supreme Court's modern equal protection jurisprudence, which prohibits *any* governmental reliance on race. *See, e.g.*, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 206 (2023).[20]

Defendants' reliance on *Trump v. Hawaii*, 585 U.S. 667, 704-05 (2018), to argue that rational basis review applies here is equally inapposite. The challenged government policy in *Hawaii* was facially neutral, whereas Defendants' policy and practice here decidedly is not. An express classification is automatically subject to strict scrutiny. *See Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 201 (1995); *Gonzalez-Rivera v. I.N.S.*, 22 F.3d 1441, 1450 (9th Cir. 1994); *see also* ECF 632 at 24.[21] *Hawaii* also involved a fundamentally different government action: an executive order addressing the exclusion of foreign nationals. Here, Plaintiffs challenge a law enforcement policy that expressly targets individuals in the interior of the country, including U.S. citizens, based on ethnicity. *See Trump v. Illinois*, 146 S. Ct. 432, 436 n.4 (2025) (Kavanaugh, J., concurring). Strict scrutiny applies to such overt racial classifications in law enforcement, including in the immigration context. *See Whren*, 517 U.S. at 813; *Melendres v. Arpaio*, 989 F. Supp. 2d 822, 901 (D. Ariz. 2013), *aff'd in part, vacated in part*, 784 F.3d 1254 (9th Cir. 2015); *see also Floyd v. City of New York*, 959 F. Supp. 2d 540, 663 (S.D.N.Y. 2013).

The government makes no effort to satisfy strict scrutiny (or even rational basis). Race-based interior immigration enforcement is not a compelling government interest, and no court has

---

[20] *Brignoni-Ponce* is further inapposite because it was limited to consideration of race near the border; it never considered the use of race in interior immigration enforcement, as relevant here. And the growth of the Latino population since *Brignoni-Ponce* calls into question whether its dicta even applies today. *Montero-Camargo*, 208 F.3d at 1134-35.

[21] For the same reasons, Defendants' reliance on *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265-66 (1977), *DHS v. Regents of the University of California*, 591 U.S. 1, 34-35 (2020), and *Mullin v. Doe*, 146 S. Ct. 2121, 2139 (2026), is misplaced. The Supreme Court has held that no showing of discriminatory intent is necessary when, as here, an equal protection claim is based on an overtly discriminatory classification. *See Wayte v. United States*, 470 U.S. 598, 610 n.10 (1985). Plaintiffs' claim is not about "disproportionate impact." *Contra* Opp. at 23; *see* Mot. at 24.

ever recognized it as such. Nor do Defendants show that their policy is narrowly tailored to achieve an interest in enforcing immigration law generally. Defendants fail to address how a policy subjecting numerous U.S. citizens and lawfully present Latinos to discriminatory treatment could possibly be the least restrictive means of achieving their immigration enforcement goals. Defendants' policy of expressly relying on Latino ethnicity violates the Fifth Amendment.

**E. <u>Plaintiffs have shown irreparable harm.</u>**

Defendants retread their standing arguments, but the threat of injury to Plaintiffs is far from speculative. *See Part* II.B, *supra*. Plaintiffs have shown a threat of harm "before a decision on the merits can be rendered," which, here, is at least 2027. *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). The deprivation of constitutional rights "unquestionably constitutes irreparable injury." Mot. at 25-26 (citing *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005)). And Defendants' enforcement in the District is continuing and even escalating. *See* Mot. at 26-27.[22] On this record, the Court should find that, absent preliminary relief, "irreparable injury [to Plaintiffs] is likely[.]" *Winter*, 555 U.S. at 22.

**F. <u>The public interest and balance of equities favor granting the injunction.</u>**

Defendants' public-interest arguments attack an injunction that Plaintiffs do not seek. Plaintiffs do not ask this Court to halt immigration enforcement in the District, only Defendants' unlawful "policy and practice of conducting detentive stops in this District based on racial stereotyping." P.O. at 43, § 1. The proposed injunction follows 42 pages of detailed factual findings substantiating that practice, and details four independent provisions to stop it. Defendants respond with vague ipse dixit.

[22] Defendants make passing references to a Border Patrol "demobiliz[ation]" that purportedly occurred in February 2026, Opp. at 6, 21, citing declarations filed with their opposition to Plaintiffs' Motion for Preliminary Injunction Re: Warrantless Arrests at ECF 582-1 ["Parra Decl."] and 582-02 ["Larios Decl."]. But Plaintiffs have documented numerous incidents of unlawful stops after February 2026, including in June 2026, *see* Mot. at 4, 6-7. This makes sense: The Parra Declaration acknowledges that "USBP agents still conduct Title 8 immigration enforcement in the Central District of California," ECF 582-1, ¶ 7, and the declarations are silent as to ICE, whose field teams in the Los Angeles area have been steadily growing, Mot. at 3. The threat to Plaintiffs remains as clear and present as ever. *See* ECF 708 at 4-5 & n.2.

The injunction would not prevent Defendants from enforcing the INA. *Contra* Opp. at 25. As law enforcement expert Mr. Kerlikowske opines, "[t]rained and experienced agents and officers can enforce the nation's immigration laws without resorting to profiling." ECF 632-3 [Kerlikowske Decl.], ¶ 46. His unrebutted opinion, based on his experiences at the helm of CBP and commanding urban police forces, merits weight. *Id.* ¶¶ 1 & 14. *See Index Newspapers*, 977 F.3d at 833 (deferring to district court's express finding that Kerlikowske was a "qualified, credible, and persuasive" expert). If, as the evidence shows, Defendants' agents are racially profiling, then their conduct is unconstitutional and must be enjoined; if Defendants enforce the immigration laws without profiling, as the law demands, then they will not run afoul of the injunction. *Compare id.* ("The preliminary injunction leaves the Federal Defendants free to make arrests if there is probable cause to believe a crime has been committed.").

Defendants threaten that the injunction would create "operational consequences and public safety concerns," Opp. at 25, but do not identify those consequences, let alone substantiate them. Mr. Kerlikowske's unrebutted opinion is that the injunction does not "unduly limit[] officers' discretion to respond to real-time developments in the field." Kerlikowske Decl. ¶ 4. Defendants present no contrary evidence, so the Court should find that the public interest favors Plaintiffs. *See Cnty. of King v. Turner*, ---F.4th---, 2026 WL 2489361, at *15 (9th Cir. Aug. 25, 2026) (affirming finding that injunction would be in the public interest where the federal government likely violated federal law and movants would be irreparably harmed).

Whereas Defendants have no legally protected interest in violating the Constitution, Plaintiffs have a protected interest in living free from racial profiling. *See L.A. Press Club v. Noem*, 171 F.4th 1179, 1190 (9th Cir. 2026). Defendants disparage Plaintiffs' interest as one in "avoiding detection" by law enforcement, Opp. at 26, but it makes no sense to contend that U.S. citizens like Gavidia and Hernandez Viramontes brought this Motion to shield themselves from the nonexistent threat of removal. In any event, the Constitution safeguards the people's collective interest in preserving individual liberty.

The proposed injunction is sufficiently specific. Defendants can argue that it is a "vague 'follow the law' injunction" only by ignoring its actual terms. Opp. at 27 (attacking introduction

to Motion instead of injunction language). It is undisputed that an injunction must specify the conduct sought to be restrained. *Id.* at 27 (citing Rule 65(d)). Plaintiffs' proposed injunction does just that.

Section 1 does not simply parrot the reasonable-suspicion requirement but instead enjoins Defendants' practice of replacing that inquiry with demographic profiling. *See* P.O. at 43, § 1. It specifies that agents "may not rely solely on apparent status as low-income or working-class and Latino" to seize people. *Id.* at 43, § 1(a). And it confirms that "targeted" enforcement cannot be used as a pretext to continue profiling, but allows targeted stops when the agent has a "reasonable basis to believe that the individual [to be stopped] is the … 'target.'" *Id.* at 43, § 1(b).

Section 2 enjoins Defendants from "relying in whole or in part on a person's perceived Latino ethnicity" when conducting "a detentive stop," in violation of the Constitution's separate equal protection guarantee, unless the officer has a "reasonable basis to believe" that the person to be stopped is an identified "target." *Id.* at 43 § 2. That allows officers to consider whether the race of the person to be stopped matches their "target," while guarding against the use of Latino "targets" as a pretext for stopping Latinos based on their membership in that ethnic group.[23] *See* Mot. at 5-7; P.O. at 8-12.

Defendants invoke the prospect of "intolerable uncertainty" for agents in the District, Opp. at 25, but fail to identify any aspect of the injunction that confuses them. They also ignore Mr. Kerlikowske's expert opinion that "[t]he preliminary injunction proposed by Plaintiffs is understandable and workable." ECF 632-3 [Kerlikowske Decl.], ¶¶ 7, 46-49.

Nothing in the injunction suggests that Plaintiffs "could allege each and every investigative stop" violates the order "if it involves someone of Latino ethnicity." Opp. at 27-28. If Plaintiffs contend that a stop is based on profiling and nothing more, Defendants may point to evidence that the stop was based on particularized factors. The injunction is clear that agents may rely on

[23] If the Court agrees that Defendants' practice of racial profiling violates the Fourth Amendment, the Court should enter Section 1. If the Court also agrees that Defendants' reliance on race violates the equal protection guarantee, the Court should also enter Section 2.

perceived ethnicity when locating an identified target, and such a stop would violate the injunction only if it lacked indicia of objective reasonableness. P.O. at 43 § 2.

Section 3 proposes straightforward and routine documentation and reporting requirements. *See Patterson v. Six Flags Theme Parks, Inc.*, No. 25-2070, 2026 WL 2137692, at *2 (9th Cir. July 24, 2026) (affirming requirement that defendant provide records to plaintiff's counsel); *Unknown Parties v. Johnson*, No. CV-15-00250, 2016 WL 8188563 (D. Ariz. Nov. 18, 2016) (requiring quarterly production of Border Patrol data related to preliminary injunction's terms); *see also Index Newspapers*, 977 F.3d at 834 n.11 (finding agent identification requirement "common-sense"). Section 3 does not "dictate" which factors agents may consider, only that agents document them. *Contra* Opp. at 2; P.O. at 44 § 3(f). Defendants do not refute Mr. Kerlikowske's opinion that these provisions are "standard" and important for accountability. ECF 632-3 [Kerlikowske Decl.], ¶ 49.

**G. <u>The injunction is no broader than necessary to provide relief to Plaintiffs.</u>**

Defendants needlessly remind this Court that "universal injunctions" are disfavored, but do not explain why *this* injunction is overbroad or how it reasonably could be narrowed. Opp. at 28. The injunction rationally covers the local ICE Field Office Area of Responsibility. *See* Ex. 113 [ICE 30(b)(6) Dep.] at 37:22-38:2. The organizational Plaintiffs have standing to seek relief for their members throughout the District. *See Part* II.B, *supra*. Because the rights violation occurs before agents have investigated the identity of the person they are stopping, it would be impossible to enjoin Defendants' practice only as to certain individuals. *See Vasquez Perdomo v. Noem*, 148 F.4th 656, 687 (9th Cir. 2025); *Easyriders*, 92 F.3d at 1501–02.

**H. <u>Defendants' jurisdiction-stripping arguments fail.</u>**

Defendants argue that the injunction would run afoul of 8 U.S.C. § 1252(f)(1), which limits judicial orders that "restrain the operation" of covered provisions in Part IV, including Sections 1226 and 1229. Opp. at 26. But they fail to explain how an injunction about Section 1357, which is not a covered provision, would do that. *See Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 814 (9th Cir. 2020); *accord Texas v. U.S. Dep't of Homeland Sec.*, 123 F.4th 186, 209-10 (5th Cir. 2024) ("collateral" effect on a covered provision insufficient). *Garland v.*

*Aleman Gonzalez*, 596 U.S. 543, 550 (2022), concerned bond hearings under Section 1231—a "provision squarely within § 1252(f)." *Texas*, 123 F.4th at 210. If Congress intended to cover detentive stops, it would have said so.

Defendants also argue that "[m]any of Plaintiffs' claims" are "barred by 8 U.S.C. § 1252(g)." Opp. at 15 n.2. But that "provision applies only to three discrete actions that the Attorney General may take: [the] 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). Neither Plaintiffs' claims, nor the injunction they seek, arise from any such actions. *Id.* ("decisions to open an investigation" are not covered by section 1252(g)).

### I. <u>Plaintiffs should not be required to post a bond.</u>

Defendants offer no evidence that a bond is warranted, so none should be required. *See Zeco, LLC v. Segars*, No. 2:26-CV-02469-TLN-CSK, 2026 WL 2225158, at *8 & n.3 (E.D. Cal. Aug. 3, 2026). Imposing bond would be a hardship, *see People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency*, 766 F.2d 1319, 1325 (9th Cir.), *amended*, 775 F.2d 998 (9th Cir. 1985), and against the public interest, *see Perez v. Bondi*, No. 5:26-CV-00946-AB-AJR, 2026 WL 710513, at *3 (C.D. Cal. Mar. 13, 2026). If bond is set, it should be at $1. *See Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1, 64–65 (D.D.C. 2025).

## III. CONCLUSION

The Court should grant Plaintiffs' Motion.

Respectfully Submitted,

DATED: September 3, 2026

UC IRVINE IMMIGRANT AND RACIAL JUSTICE SOLIDARITY CLINIC

By: */s/ Anne Lai*
ANNE LAI
*Counsel for Stop/Arrest Plaintiffs*

DATED: September 3, 2026

MUNGER, TOLLES & OLSON LLP

By: */s/ Jacob S. Kreilkamp*
JACOB S. KREILKAMP
*Counsel for Stop/Arrest Plaintiffs*

DATED: September 3, 2026

NATIONAL DAY LABORER ORGANIZING NETWORK

By: */s/ Lauren Michel Wilfong*
LAUREN MICHEL WILFONG
*Counsel for Stop/Arrest Plaintiffs*

DATED: September 3, 2026

ACLU OF SOUTHERN CALIFORNIA

By: */s/ Stephanie Padilla*
STEPHANIE PADILLA
*Counsel for Stop/Arrest Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2026, I electronically filed the foregoing with the Clerk of the U.S. District Court for the Central District of California using the CM/ECF system, which provided notification of such filing to all registered CM/ECF users, including all adverse parties. L.R. 65-1.

DATED: September 3, 2026

UC IRVINE IMMIGRANT AND RACIAL JUSTICE SOLIDARITY CLINIC

By *̲/s/ Anne Lai*

ANNE LAI
*Counsel for Stop/Arrest Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Stop/Arrest Plaintiffs certifies that this brief contains 6,999 words, which complies with the word limit of L.R. 11.6-1.

DATED: September 3, 2026

UC IRVINE IMMIGRANT AND RACIAL JUSTICE SOLIDARITY CLINIC

By *\/s/ Anne Lai*

ANNE LAI
*Counsel for Stop/Arrest Plaintiffs*