HYDEE FELDSTEIN SOTO (SBN 106866)
City Attorney
hydee.feldsteinsoto@lacity.org
VALERIE L. FLORES (SBN 138572)
valerie.flores@lacity.org
MICHAEL J. DUNDAS (SBN 226930)
mike.dundas@lacity.org
MARIA LOUISE COUSINEAU (SBN 122280)
maria.cousineau@lacity.org
RANDALL G. SOMMER (SBN 214099)
randall.sommer@lacity.org
SHUBHRA SHIVPURI (SBN 295534)
shubhra.shivpuri@lacity.org
OFFICE OF THE LOS ANGELES
CITY ATTORNEY
City Hall 200 North Spring Street
21st Floor
Los Angeles, CA 90012-4130
Tel.: 213-922-8382; Fax: 213-978-7957
*Attorneys for Intervenor City of Los Angeles*

NICOLE DAVIS TINKHAM (SBN 229592)
ntinkham@counsel.lacounty.gov
LILIANA CAMPOS (SBN 255753)
lcampos@counsel.lacounty.gov
BRIGIT GREESON ALVAREZ (SBN 237301)
bgreesonalvarez@counsel.lacounty.gov
OFFICE OF THE COUNTY COUNSEL
648 Kenneth Hahn Hall of Admin.,
500 West Temple Street
Los Angeles, California 90012-2713
Tel.: 213-808-8736; Fax: 213-633-1915
*Attorneys for Intervenor County of Los Angeles*

MICHELE BEAL BAGNERIS (SBN 115423)
City Attorney
mbagneris@cityofpasadena.net
ARNOLD F. LEE (SBN 278610)
aflee@cityofpasadena.net
ANDREW AARONIAN (SBN 318245)
aaaronian@cityofpasadena.net
OFFICE OF THE CITY ATTORNEY
OF PASADENA
100 N Garfield Ave, Rm N-210
Pasadena, CA 91101
Tel.: 626-744-4141; Fax: 626-744-4190
*Attorneys for Intervenor City of Pasadena*

(*Additional counsel listed on page 2*)

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

Pedro VASQUEZ PERDOMO, et al.,

Plaintiffs,

v.

Markwayne MULLIN, in his official capacity as Secretary, Department of Homeland Security, et al.,

Defendants.

Case No.: 2:25-cv-05605-MEMF-SP

**INTERVENORS' REPLY IN SUPPORT OF JOINDER IN PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION RE: SUSPICIONLESS STOPS AND VIOLATION OF EQUAL PROTECTION**

Date: September 24, 2026
Time: 10:00 AM
Place.: Courtroom 8B
Hon. Maame Ewusi-Mensah Frimpong

E. MARTIN ESTRADA (SBN 223802)
martin.estrada@mto.com
DANIEL B. LEVIN (SBN 226044)
daniel.levin@mto.com
JOHN L. SCHWAB (SBN 301386)
john.schwab@mto.com
V. GRACE DAVIS (SBN 336732)
grace.davisfisher@mto.com
V. ROMAN LEAL (SBN 348892)
roman.leal@mto.com
WENDY QIUYU XIAO (SBN 342702)
wendy.xiao@mto.com
REBECCA HANSEN (SBN 351660)
rebecca.hansen@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
50th Floor
Los Angeles, California 90071
Tel.: 213-683-9100; Fax: 213-687-3702

*Attorneys for Intervenors Cities of Los Angeles, Anaheim, Bell Gardens, Beverly Hills, Carpinteria, Culver City, Huntington Park, Long Beach, Lynwood, Montebello, Monterey Park, Oxnard, Paramount, Pico Rivera, Pomona, Santa Ana, Santa Barbara, Santa Monica, South Gate, and West Hollywood*

NORMAN L. EISEN*
Norman@democracydefenders.org
STEPHEN A. JONAS (SBN 542005)
Steve@democracydefenders.org
JOSHUA G. KOLB*
Joshua@democracydefenders.org
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave. SE, Suite 15180
Washington, DC 20003
Tel: (202) 594-9958

*Admitted *Pro Hac Vice*

*Attorneys for Intervenor City of Los Angeles*

# TABLE OF CONTENTS


| | | | | Page |
|---|---|---|---|---|
| I. | INTRODUCTION | | | 6 |
| II. | ARGUMENT | | | 7 |
| | A. | Intervenors Have Article III Standing | | 7 |
| | | 1. | Intervenors Need Not Establish Standing Independent of Plaintiffs | 7 |
| | | 2. | Even if Required, Intervenors Independently Established Standing | 8 |
| | B. | Plaintiffs and Intervenors Have Satisfied the *Winter* Factors | | 13 |
| | | 1. | Intervenors Will Suffer Irreparable Harm Absent an Injunction | 14 |
| | | 2. | A District-Wide Preliminary Injunction is in the Public Interest | 14 |
| III. | CONCLUSION | | | 16 |

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Armstrong v. Davis*,
275 F.3d 849 (2001) ... 14

*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*,
54 F.4th 1078 (9th Cir. 2022) ... 7

*California v. Health & Hum. Servs.*,
390 F. Supp. 3d 1061 (N.D. Cal. 2019) ... 14

*City & Cnty. of San Francisco v. Trump*,
783 F. Supp. 3d 1148 (N.D. Cal. 2025) ... 9, 14

*City of Oakland v. Lynch*,
798 F.3d 1159 (9th Cir. 2015) ... 8, 9

*City of Sausalito v. O'Neill*,
386 F.3d 1186 (9th Cir. 2004) ... 9

*Clapper v. Amnesty International USA*,
568 U.S. 398 (2013) ... 10

*Easyriders Freedom F.I.G.H.T. v. Hannigan*,
92 F.3d 1486 (9th Cir. 1996) ... 15

*Food and Drug Administration v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024) ... 10

*Kelley v. Johnson*,
425 U.S. 238 (1976) ... 14

*LaDuke v. Nelson*,
762 F.2d 1318 (9th Cir. 1985) ... 14

*M.R. v. Dreyfus*,
697 F.3d 706 (9th Cir. 2012) ... 6

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) ... 14

*Mendia v. Garcia*,
768 F.3d 1009 (9th Cir. 2014) ... 9

*Missouri ex rel. Koster v. Harris*,
847 F.3d 646 (9th Cir. 2017) ... 10

*SEC v. Murphy*,
50 F.4th 832 (9th Cir. 2022) ... 15

*Town of Chester, N.Y. v. Laroe Ests., Inc.*,
581 U.S. 433 (2017) ....................7

*Tribe v. Hammond*,
2002 WL 35661319 (D. Idaho Aug. 23, 2002) ....................14

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) ....................15, 16

*Trump v. Illinois*,
146 S. Ct. 432 (2025) ....................13

*United States v. Maricopa Cnty.*,
151 F. Supp. 3d 998 (D. Ariz. 2015) ....................15

*United States v. Texas*,
599 U.S. 670 (2023) ....................10

*Valle del Sol Inc. v. Whiting*,
732 F.3d 1006 (9th Cir. 2013) ....................15

*Vasquez Perdomo v. Noem*,
148 F.4th 656 (9th Cir. 2025) ....................7

*Washington v. DHS*,
614 F. Supp. 3d 863 (W.D. Wash. 2020) ....................9

*Washington v. FDA*,
108 F.4th 1163 (9th Cir. 2024) ....................9, 10

*Washington v. Trump*,
145 F.4th 1013 (9th Cir. 2025) ....................8, 15

*Whren v. United States*,
517 U.S. 806 (1996) ....................13

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ....................13

*Zuehlsdorf v. FCA US LLC*,
2019 WL 2098352 (C.D. Cal. Apr. 30, 2019) ....................12

**OTHER AUTHORITIES**

Albert Sun & Allison McCann, *ICE Arrests Soar as People With No Criminal Record Are Increasingly Targeted*, N.Y. Times (Aug. 27, 2026) ....................7

# I. INTRODUCTION

Intervenors have submitted dozens of declarations and several academic studies demonstrating the harm they have suffered as a result of Defendants' campaign of suspicionless stops and racial profiling. That evidence establishes that Defendants have undermined Intervenors' ability to maintain law and order, collect tax revenue, and preserve access to healthcare, libraries, transit, recreation, and other essential services. Defendants fail to confront most of that evidence. Defendants fail to present any evidence of their own. Instead, Defendants repeat tired arguments they have tried at every stage of this case—including arguments that this Court has already rejected. Defendants' opposition offers no reason to deny the motion.

As an initial matter, the Court has already correctly held that Intervenors need not independently establish standing where, as here, they seek the same relief as Plaintiffs. Dkt. No. 418 at 20; *see also* Dkt. No. 688 ("Opp.") at 1 (recognizing "Intervenors seek the same relief as Plaintiffs"). The Court has also held that Intervenors have standing. Dkt. No. 418 at 21–32; *see* Dkt. No. 129 at 3 (holding that Intervenors have ongoing Article III injuries "due to loss of tax revenue, threats to core police powers, or both"). Defendants offer no reason why the Court should reconsider these conclusions.

Defendants' other arguments are no more compelling. It is clear that Intervenors will suffer irreparable harm absent an injunction. Defendants' unsupported speculation that other factors may have contributed to Intervenors' harm is both wrong and irrelevant. There is nothing "speculative" or "impossible to trace" about Intervenors' harms. Defendants ignore or misinterpret academic studies and declarations that clearly establish a causal connection between their conduct and the harms suffered, which include dismissed criminal cases, losses in business and tax revenues, unreported fraud, missed doctors' visits, among many others. Defendants also ignore evidence showing that even U.S. citizens have been hurt by their conduct, demonstrating that these harms are *not* the result of lawful immigration enforcement. Moreover, a party seeking a preliminary injunction needs only to show "that irreparable injury is *likely* in the absence of an injunction," not that "the action sought to be enjoined is the exclusive cause of the injury." *M.R.*

*v. Dreyfus*, 697 F.3d 706, 728 (9th Cir. 2012) (citation omitted). Intervenors have easily made that showing.

Defendants also claim that an injunction should not issue because they have a written policy requiring officers to follow the Constitution. Even if that were so, Plaintiffs have presented extensive evidence that Defendants have violated that purported policy by engaging in a widespread and officially sanctioned pattern of unlawful stops and racial profiling.

Absent a preliminary injunction, Defendants will continue to terrorize this district. As "border czar" Tom Homan threatened as recently as this past June, "[y]ou will see collateral arrests increase. . . . You [will] see more agents in your neighborhoods because you forced us in this position." Leal Decl., Dkt. No. 570-1, Ex. A.

## II. ARGUMENT

### A. Intervenors Have Article III Standing

#### 1. Intervenors Need Not Establish Standing Independent of Plaintiffs

As this Court has already held, Intervenors do not need to separately establish standing to seek the same relief as Plaintiffs. Dkt. No. 418 at 21. Intervenors, like Plaintiffs, seek an injunction prohibiting Defendants' unlawful stops and racial profiling, and Plaintiffs have standing as to those claims. *See Vasquez Perdomo v. Noem*, 148 F.4th 656, 674 (9th Cir. 2025). Because Plaintiffs have standing, Intervenors may join Plaintiffs' motion. *See Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1085 (9th Cir. 2022) ("[I]ntervenors that seek the same relief sought by at least one existing party" need not establish independent Article III standing); *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (standing requirement met if "[a]t least one" litigant has standing to seek the requested relief, "whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor"). This Court has already come to the same conclusion. Dkt. No. 418 at 21 ("[G]iven that the plaintiff has standing, an intervenor of right need not demonstrate independent standing to join[] in plaintiff's relief sought.").

### 2. Even if Required, Intervenors Independently Established Standing

As this Court has also already held, Intervenors have Article III standing. Dkt. No. 418 at 21. Defendants do not discuss the prior ruling, let alone provide any compelling rationale for why this Court should reconsider it. Intervenors have also submitted extensive evidence of injuries-in-fact, a causal link between Defendants' actions and the harm they are experiencing, and that the relief sought will redress their injuries.

***Injury-in-fact.*** Defendants repeat their argument that Intervenors cannot establish an injury-in-fact because they cannot assert rights on behalf of their residents. Opp. at 7–8. As Intervenors have already explained, they "are not asserting standing based on the rights of their citizens; instead, they assert injuries to their own" interests caused by Defendants' ongoing unlawful stops. *Washington v. Trump*, 145 F.4th 1013, 1024 (9th Cir. 2025); Dkt. No. 418 at 33. Precedent confirms that the harm to Intervenors' municipal interests can give rise to an injury-in-fact. For instance, in *City of Oakland v. Lynch*, the federal government sought civil forfeiture of a medical marijuana dispensary located in the City of Oakland. 798 F.3d 1159, 1161 (9th Cir. 2015). After the City of Oakland moved for injunctive relief preventing the federal government from seeking forfeiture, the federal government challenged the City of Oakland's standing. *Id*. at 1162–63. On appeal, the Ninth Circuit held that the City of Oakland had standing because "Oakland has alleged a sufficient injury with respect to the erosion of its tax revenues." *Id*. at 1164. That injury to the City of Oakland's municipal interest was "directly attributable" to an enforcement operation directed at a third party, that is, "the Government's forfeiture action" against the medical marijuana dispensary. *Id*.

Intervenors have presented extensive evidence of the injuries-in-fact suffered as a result of Defendants' unlawful conduct. Intervenors provided more than forty-five declarations demonstrating that Defendants have undermined Intervenors' ability to maintain law and order, caused economic losses that resulted in lost tax revenues, impeded efforts to maintain public health, undercut efforts to combat fraud, and impaired residents' access to Intervenors' public services. Dkt. Nos. 570-1–570-48. Intervenors have also presented academic studies confirming those impacts. Dkt. No. 649 at 7–9. This Court has already held that the "loss of tax revenue,

threats to core police powers, or both" are among the injuries-in-fact sufficient for Article III standing. Dkt. No. 418 at 27; *see also, e.g.*, *Lynch*, 798 F.3d at 1164 (recognizing "expected loss of tax revenue can constitute a sufficient injury" to confer standing); *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1199 (9th Cir. 2004); *City & Cnty. of San Francisco v. Trump*, 783 F. Supp. 3d 1148, 1186 (N.D. Cal. 2025) (budgetary effects on law enforcement programs constitute irreparable harm). The interference with Intervenors' ability to maintain law and order, including in their ability to administer justice, is yet another injury-in-fact. *See, e.g.*, *Washington v. DHS*, 614 F. Supp. 3d 863, 876 (W.D. Wash. 2020) (state had Article III standing based on its "interest in expeditiously prosecuting criminal matters" and "protecting the rights and safety of its residents," including by operating "a fair, just, and orderly court system").

***Causation.*** Intervenors have also established a causal connection between these harms and Defendants' unconstitutional conduct. Defendants argue that Intervenors' harms lack "the direct causal connection Article III demands." Opp. at 10. To the contrary, Intervenors have shown a broad range of harms suffered as a direct result of Defendants' actions. But in any event, the Ninth Circuit has explained that for a party to have "standing to challenge federal action . . . the injury need *not* be direct." *Washington v. FDA.*, 108 F.4th 1163, 1174–75 (9th Cir. 2024) (emphasis added). A "causal chain" linking "the federal action to the alleged harm" is sufficient. *Id.* at 1175. Defendants also argue that Intervenors' harms are too attenuated because they "depend upon the independent actions of third parties." Opp. at 9. But where an asserted harm is linked to the actions of third parties, there is sufficient causation for standing purposes if "the government's unlawful conduct 'is at least a substantial factor motivating the third parties' actions.'" *Mendia v. Garcia*, 768 F.3d 1009, 1013 (9th Cir. 2014) (citation omitted). Intervenors have established that and much more here.[1]

[1] Defendants even argue that Intervenors' allegations describe "third party reactions (*e.g.*, resident perceptions)." Opp. at 5. Defendants may not launch a strategy aimed at producing a widespread climate of fear, resulting in "ghost town[s]" and "empty" streets on a mass scale, and then claim that Intervenors harms are merely the result of "resident perceptions." *See, e.g.*, Torres Decl., Dkt. No. 570-47, ¶ 3; Carbajal Decl., Dkt. No. 570-6, ¶ 7.

Defendants' reliance on *United States v. Texas* is misplaced. Opp. at 9–10. There, the Supreme Court held that Texas and Louisiana lacked standing to compel the federal government to "arrest more criminal noncitizens," 599 U.S. 670, 674 (2023)—not because of an attenuated chain of causation, but because no "precedent, history, or tradition of courts" supported the requested relief of ordering the Executive Branch to *take* enforcement actions, *id*. at 677, 680; *see also id.* at 686 ("In sum, the States have brought an extraordinarily unusual lawsuit. They want a federal court to order the Executive Branch . . . to make more arrests."). The Court was careful to note that its decision addressed "only" the "narrow Article III standing question of whether the Federal Judiciary may in effect order the Executive Branch to take enforcement actions." *Id.* at 685–86. The Executive Branch could not arrest or remove all individuals covered by the relevant statutes and was electing *not* to arrest or prosecute in some instances. *Id.* at 678, 680. In utilizing its enforcement discretion, the Executive Branch did "not exercise coercive power over an individual's liberty or property, and thus d[id] not infringe upon interests that courts often are called upon to protect." *Id.* at 671. In contrast, here, as Plaintiffs and Intervenors have amply shown, Defendants are infringing upon those very interests. Intervenors have presented unrebutted evidence that Defendants' unlawful immigration enforcement is causing Intervenors irreparable harm.[2]

Defendants' attempts to discredit Intervenors' evidence also fall flat. For example, Intervenors presented three economic analyses connecting Defendants' conduct to their loss of tax revenue. *First,* a study from University of California Los Angeles professor Amada Armenta estimating that Los Angeles County lost approximately $52 million in business in the two weeks following increased immigration enforcement in June 2025, and $114 million over a month. Armenta Decl., Dkt. No. 649 at 7–8; Dkt. No. 649-9, ¶ 22. *Second*, a declaration from University

[2] Defendants cite several inapposite cases referencing litigants alleging future "speculative" harm or prediction. *See* Opp. at 5, 6, 7, 12 (citing *Food and Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), *Washington v. U.S. Food & Drug Admin.*, 108 F.4th 1163 (9th Cir. 2024), *Missouri ex rel. Koster v. Harris*, 847 F.3d 646 (9th Cir. 2017)). These cases are distinguishable because, unlike here, no past or present concrete harms were enumerated.

of California Merced professor Edward Orozco Flores noting "unprecedented" drops in private-sector work in California following immigration enforcement. Flores Decl., Dkt. No. 570-37, ¶¶ 10–14. *Third,* a study from professors at the University of California Irvine and University of Illinois Chicago, which estimated that, in the first eight weeks of Defendants' escalated immigration enforcement activities, Los Angeles County lost $567 million in retail sales, resulting in $55.3 million in lost sales tax revenue. Dkt. No. 649 at 9; Dkt. No. 649-8 at 22. These studies were corroborated by many declarations from those with first-hand experiences of the economic harms. *See, e.g.*, Reyes Decl., Dkt. No. 570-20, ¶¶ 4–5; Torres Decl., Dkt. No. 570-47, ¶ 4; Moran Decl., Dkt. No. 570-44, ¶ 3; Crenshaw Decl., Dkt. No. 570-41, ¶ 4; Cortez Decl., Dkt. No. 570-40, ¶¶ 5-6; Talim Decl., Dkt. No. 570-46, ¶ 16.

Defendants make the vague assertion that these studies "fail to provide any sound economic methodology" or "rigorous analysis," without identifying any specific flaws. Opp. at 14–15. Indeed, Defendants fail to offer any analysis of the first two studies at all. Defendants criticize only the third study because, they say, it did not assess commercial activities in areas where there was no visible immigration enforcement, so it does not have "any reliable control." Opp. at 10–11. But the report *did* have a control: It compared foot traffic following immigration enforcement to that of the same period in the prior year, before Defendants began their campaign of unlawful immigration enforcement, thus ruling out the possibility that the drop in commercial activities had other causes. Dkt. No. 649-8 at 18.

Intervenors have also presented evidence that these harms are the result of unconstitutional activity, rather than lawful immigration enforcement. Opp. at 10–11, 14–15. For instance, the declaration from Professor Flores described California's macroeconomic downturn at the start of Defendants' unlawful actions, and it noted that the economy briefly recovered during this Court's prior stay of some of those unlawful actions. Flores Decl., Dkt. No. 570-37 ¶¶ 10–14. Intervenors have also presented plentiful evidence that Defendants have caused even residents with lawful status to withdraw from public life—and those with lawful status should have no reason to fear ordinary, constitutional immigration enforcement. For example, one study showed that immigrant families comprised *entirely of U.S. citizens* reported that they were worried about being

approached by ICE or other immigration authorities, and they avoided taking part in essential services or speaking to police as a result. *See* Joinder at 6, 10–11; Dkt. No. 649-7 at 3–5. Declarations from U.S. citizens and others with lawful status also stated that they live in fear of Defendants' unlawful conduct. *See, e.g.*, Crenshaw Decl., Dkt. No. 570-41, ¶ 5 ("If you are black or brown, you are getting picked up—it doesn't matter. My wife and I are citizens but we had to create a plan for what happens if we are kidnapped by ICE."); Moran Decl., Dkt. No. 570-44, ¶ 11 ("Despite the fact that they are documented, some employees told me that they were fearful of coming back to work and that they wanted to stop working because of their fears."); Cortez Decl., Dkt. No. 570-40, ¶¶ 8–9 ("I was scared ICE would grab me. . . . They were grabbing Mexican people. . . . They didn't care if you had papers or not."); *see also* Joinder at 3–4 (summarizing additional evidence). Employees with citizenship or other lawful status are either scared to come to work or are quitting. *See* Joinder at 4. Defendants' assertion that Intervenors fail to "account for the fact that the individuals who fear engaging in these public activities might feel that way because they are not lawfully in the United States," Opp. at 11, simply ignores this evidence.

More generally, Defendants may speculate—without presenting any actual evidence—that the harm experienced by Intervenors has other causes. Opp. at 11–12. But Intervenors are not required to "rule out all possible alternative causes of their injury to satisfy the causation requirement." *Zuehlsdorf v. FCA US LLC*, 2019 WL 2098352, at *5 (C.D. Cal. Apr. 30, 2019) (citation omitted) (collecting cases). As this Court previously held, Defendants at most suggest that these causes are "merely other factors working alongside the harm that Defendants have caused Intervenors," Dkt. No. 418 at 31, and that is not enough.

Finally, Defendants argue that "reduced participation" in community programs does not cause "any harm at all, as reduced participation would decrease the cost and burden of running many of those programs." Opp. at 11. Intervenors take seriously their responsibility for maintaining public safety, providing critical public services, and safeguarding the health and welfare of their residents, all of which are strengthened through their delivery of public services. And, as Intervenors know too well, withdrawal from these services in the short-term correlates directly to significant costs in the long-term. When residents cannot take advantage of public

services because they are afraid of Defendants' unconstitutional conduct, that not only harms Intervenors' sovereign interests—the decreased participation also negatively impacts the health, safety, and welfare of Intervenors' residents, who are also Defendants' residents. The fact that Defendants characterize public programs as burdensome does not alter that conclusion.

***Redressability.*** Defendants argue in passing that Intervenors have failed to establish redressability, repeating their argument that Intervenors' causal connection is too "attenuated." Opp. at 13. For the reasons explained above, that argument fails.

### B. Plaintiffs and Intervenors Have Satisfied the *Winter* Factors

This Court should issue a preliminary injunction to stop Defendants' campaign of unlawful stops. Plaintiffs and Intervenors satisfy all four factors required for entry of preliminary relief: (1) they are "likely to succeed on the merits" of their claims; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [their] favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Intervenors again fully adopt and incorporate by reference the arguments set forth in Plaintiffs' Motion, Dkt. No. 632, regarding the merits of their claims.[3]

[3] Defendants are wrong that "the Supreme Court has already found Defendants prevail." Opp. at 13. As this Court has recognized, there is no way of knowing why the Supreme Court granted a stay of the previous temporary restraining order. Dkt. No. 419 at 20–21 n.7. Similarly, Defendants' highlighting of Justice Kavanaugh's concurrence in this matter omits any reference to his follow-on emergency docket concurrence in *Trump v. Illinois* a few months later, wherein he wrote, "The State and the Government disagree about whether the immigration officers have violated the Constitution in making certain immigration stops and arrests. The basic constitutional rules governing that dispute are longstanding and clear: The Fourth Amendment requires that immigration stops must be based on reasonable suspicion of illegal presence, stops must be brief, arrests must be based on probable cause, and officers must not employ excessive force. Moreover, the officers must not make interior immigration stops or arrests based on race or ethnicity." *Trump v. Illinois*, 146 S. Ct. 432, 436 n.4 (2025) (Kavanaugh, J., concurring) (quoting *Whren v. United States*, 517 U.S. 806, 813 (1996) for the proposition that the "Constitution prohibits selective enforcement of the law based on considerations such as race"). Finally, Plaintiffs have presented entirely new and far more plentiful evidence that was not before the Supreme Court when it granted its stay—evidence which disproves the representations that Defendants made to the Supreme Court. *See* Dkt. No. 632 at 1. The Supreme Court's decision has no impact on this motion.

**1. Intervenors Will Suffer Irreparable Harm Absent an Injunction**

Defendants' unlawful stops cause irreparable harm by disrupting Intervenors' core responsibility to ensure the "safety of persons and property" within their municipal boundaries, by draining Intervenors' tax revenue, and by jeopardizing their ability to provide essential public services. *Kelley v. Johnson*, 425 U.S. 238, 247 (1976); *see also* Joinder at 5–12; *City & Cnty. of San Francisco*, 783 F. Supp. 3d at 1186; *California v. Health & Hum. Servs.*, 390 F. Supp. 3d 1061, 1065 (N.D. Cal. 2019) (recognizing "unrecoverable costs on the state" cause irreparable harm); *Tribe v. Hammond*, 2002 WL 35661319, at *3 (D. Idaho Aug. 23, 2002) (recognizing "irreparable harm to [the] governmental interest in receiving tax revenue").

Defendants respond by repeating the argument, addressed in Section II.A.2, that Intervenors have failed to establish that their unconstitutional policies caused any "economic harm." Opp. at 14–15. Defendants do not address any other types of irreparable harm asserted by Intervenors—including impacts on public health and safety—and for the reasons already explained, Intervenors have offered sufficient evidence of the causal link between Defendants' unconstitutional conduct and the resulting economic harm. *See supra* at 4–8.

Defendants also argue that Intervenors and Plaintiffs cannot establish a "real and immediate" threat of future injury because they have training and guidance about reasonable suspicion for stops. Opp. at 13–14. But even if that were so, Defendants ignore the extensive evidence presented by Plaintiffs that, as a matter of fact, Defendants have engaged in a widespread and official sanctioned practice of unlawful stops based on racial profiling. *See generally* Dkt. No. 632. A "pattern of officially sanctioned behavior, violative of the plaintiffs' federal rights," is sufficient to demonstrate that "such injury is likely to recur." *Armstrong v. Davis*, 275 F.3d 849, 861 (2001) (citation modified); *Melendres v. Arpaio*, 695 F.3d 990, 998 (9th Cir. 2012) (quoting *LaDuke v. Nelson*, 762 F.2d 1318, 1323 (9th Cir. 1985)).

**2. A District-Wide Preliminary Injunction is in the Public Interest**

Defendants do not identify any legitimate public interest that warrants denying the motion for a preliminary injunction. Defendants repeat their argument, raised throughout this case, that the "public interest does not favor sweeping judicial intervention into the Executive Branch's

administration of the Nation's immigration laws." Opp. at 15. But "the Executive Branch does not have a legitimate interest in violating the Constitution." *Washington*, 145 F.4th at 1037; *see also Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("'It is clear that it would not be equitable or in the public's interest to allow . . . violat[ions of] the requirements of federal law . . . .'" (citation omitted)).

The proposed injunction is also clear and understandable. Opp. at 16. Defendants argue that Plaintiffs and Intervenors seek an "impermissibly vague 'follow the law'" injunction. *Id.* There is no rule against "follow the law" injunctions, so long as the injunction provides fair notice of what is prohibited. *SEC v. Murphy*, 50 F.4th 832, 852 n.9 (9th Cir. 2022); *United States v. Maricopa Cnty.*, 151 F. Supp. 3d 998, 1037 (D. Ariz. 2015). The injunction provides clear notice that Defendants may not conduct stops "based on racial stereotyping," that they may not "rely solely on apparent status as low-income or working-class and Latino," and that they may not rely "in whole or in part on a person's perceived Latino ethnicity, except in connection with a known target description" (with additional details provided in the proposed order). Dkt. No. 649-11 at 2–3. Defendants do not explain how that language is impermissibly vague.

Finally, the proposed injunction is not an impermissible "universal injunction." Opp. at 16–17. As Defendants concede, "courts generally 'may administer complete relief *between the parties*.'" Opp. at 16–17 (quoting *Trump v. CASA, Inc.,* 606 U.S. 831, 851 (2025)). A district-wide injunction is required to grant relief to Intervenors, who represent more than ten million residents in this district. Even setting Intervenors aside, there is no reasonable way to craft an injunction to apply only to the named plaintiffs. An officer who is about to detain a person has no way of knowing that the person is a named plaintiff. By the time the officer has discovered that they are a named plaintiff, the plaintiff's rights have already been violated. To grant "complete relief to the [parties]," a district-wide injunction is required. *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1496, 1502 (9th Cir. 1996) (affirming state-wide injunction because "it is unlikely that law enforcement officials who were not restricted by an injunction governing their treatment of all motorcyclists would inquire before citation into whether a motorcyclist was among the named plaintiffs or a member of Easyriders"). Finally, unlike a true universal

injunction, the proposed injunction does not "bar[] the defendant from enforcing 'a law or policy against *anyone*,'" Opp. at 16 (quoting *CASA, Inc.*, 606 U.S. at 837); it covers only the Central District.

## III. CONCLUSION

For the foregoing reasons, Intervenors respectfully request that the Court grant Plaintiffs' Motion for Preliminary Injunction Re Suspicionless Stops and Violation of Equal Protection (Dkt. No. 632) and Intervenors' Joinder thereof (Dkt. No. 649) in full.

DATED: September 3, 2026

MUNGER, TOLLES & OLSON LLP

By: */s/ E. Martin Estrada*
E. MARTIN ESTRADA

*Attorneys for Intervenors Cities of Los Angeles, Anaheim, Bell Gardens, Beverly Hills, Carpinteria, Culver City, Huntington Park, Long Beach, Lynwood, Montebello, Monterey Park, Oxnard, Paramount, Pico Rivera, Pomona, Santa Ana, Santa Barbara, Santa Monica, South Gate, and West Hollywood*

By: */s/ Michael J. Dundas*
MICHAEL J. DUNDAS
Chief Assistant City Attorney

OFFICE OF THE LOS ANGELES
CITY ATTORNEY

*Attorney for Intervenor*
*City of Los Angeles*

By: */s/ Brigit Greeson Alvarez*
BRIGIT GREESON ALVAREZ
Deputy County Counsel

OFFICE OF THE COUNTY COUNSEL

*Attorney for Intervenor*
*County of Los Angeles*

By: */s/ Arnold F. Lee*
ARNOLD F. LEE
Chief Assistant City Attorney

OFFICE OF THE CITY ATTORNEY OF PASADENA

*Attorney for Intervenor*
*City of Pasadena*

**ATTESTATION**

Pursuant to Local Rule 5-4.3.4(a)(2)(i), the filer attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED: September 3, 2026

By: */s/ E. Martin Estrada*
E. MARTIN ESTRADA

MUNGER, TOLLES & OLSON LLP

*Attorneys for Intervenors Cities of Los Angeles, Anaheim, Bell Gardens, Beverly Hills, Carpinteria, Culver City, Huntington Park, Long Beach, Lynwood, Montebello, Monterey Park, Oxnard, Paramount, Pico Rivera, Pomona, Santa Ana, Santa Barbara, Santa Monica, South Gate, and West Hollywood*

**CERTIFICATE OF COMPLIANCE**

I certify that this brief, in relevant part, contains fewer than 7,000 words, which complies with the word limit of L.R. 11-6.1 and this Court's standing order.

DATED: September 3, 2026

By: */s/ Rebecca Hansen*
Rebecca Hansen