BRETT A. SHUMATE
Assistant Attorney General
Civil Division
DREW C. ENSIGN
Deputy Assistant Attorney General
TIBERIUS DAVIS
DANIEL F. MUMMOLO
Counsel to the Assistant Attorney General
AUGUST E. FLENTJE
Deputy Director
JONATHAN A. ROBBINS
Assistant Director
JASON K. ZUBATA
ANIELLO DESIMONE
JACOB A. BASHYROV
NANCY N. SAFAVI
Trial Attorneys
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-8275
Email: Jonathan.A.Robbins@usdoj.gov

*Counsel for Defendants*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

PEDRO VASQUEZ PERDOMO; *et al.*,

Plaintiffs,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; *et al.*,

Defendants.

No. 2:25-cv-05605-MEMF-SP

**DEFENDANTS' REPLY IN SUPPORT OF REQUEST TO PAUSE DAILY SANCTIONS**

Hon. Maame Ewusi-Mensah Frimpong
United States District Judge

As explained in Defendants' previous filing, this Court should pause daily sanctions at this time because the government has completed the forensic imaging of the personal devices specified in the Court's contempt order to the extent agents consented to such imaging, and are continuing to comply with the forensic imaging requirement to the extent consent has been obtained from additional agents subsequent to the Court's order. As also explained, this Court should hold off on ruling on the attorneys' fees request until Judge Pym has resolved a similar fee dispute. Plaintiffs do not provide sound reasons for taking a different tack here.

**1.** On the daily sanctions, Plaintiffs' primary argument concerns the adequacy of consent by those agents who initially filled out a CBP form indicating their personal phones could be imaged, but then declined to sign a consent form or turn over their personal phones once CBP attempted to obtain and image the personal phones. Putting aside Plaintiffs' once again overheated rhetoric, their legal briefing (ECF 717 at 3-4) shows that the issue of obtaining personal phones when there is no consent is the very issue before Judge Pym, namely, the government's "pending objections concerning possession, custody, and control." ECF 635 at 14. Indeed, Plaintiffs concede – as they must – that their primary points are "currently pending before the Magistrate Judge." ECF 717 at 4 n. 1. Under those circumstances, this Court explained that a pause in sanctions would be appropriate. ECF 635 at 14 ("Should the Government believe that it has fully complied *aside* from its pending objections concerning possession, custody, and control, it may file a request to have the payments pause[d]." (emphasis added)).

More specifically, Plaintiffs argue that completion of the questionnaire was sufficient to provide the government the requisite possession, custody, and control over personal phones and that the government should threaten disciplinary action in order to seize the employee property. The government does not agree and would face substantial liability if it threatened discipline or seized personal phones based solely upon the questionnaire, and in the absence of a signed waiver, especially once agents refused to sign the waiver once it was presented. *See In re Pork Antitrust Litigation*, 2022 WL 972401 *7 (D. Minn. 2022) ("The Court shares the Sedona Conference's view that 'organizations should not be compelled to terminate or threaten employees who refuse to turn over their devices for preservation or collection.'") (citing The Sedona Conference, *Commentary on BYOD: Principles and Guidance for*

*Developing Policies and Meeting Discovery Obligations*, 19 Sedona Conf. J. 495, 531 (2018)). Indeed, the government is at a loss of exactly what steps would be required under these circumstances other than those the government has taken.

Most of Plaintiffs' response is spent relitigating the various steps the government *previously* took to obtain personal phones. They complain about the questionnaire (in spite of seeking to rely upon it to establish irrevocable consent). ECF 717 at 3. They complain about the government seeking to obtain signed consent forms from agents as a part of obtaining temporary custody of their personal property for forensic imaging. *Id*. But we advised the Court in May that CBP must "first receive written consent" and "[a]fter written consent is given" the phone would be transferred. ECF 503-26 ¶ 9. They call these steps an "even more transparent instruction . . . on how to avoid having their phones imaged" and claim there is 'no legal basis to require a consent form." *Id*. Of course, this allegation is flatly wrong – the relationship between CBP and its employees is defined by contract, as is any employment relationship, and to alter those relationships to permit seizure of an employee's personal property, an agreement is needed. The normal way to establish that is with a signed consent form (one reason such forms are ubiquitous in modern life and litigation). *See*, *e.g.*, *Acosta v. S.W. Fuel Mgt., Inc.*, 2018 WL 2207997, at *4 (C.D. Cal. Feb. 20, 2018) (noting importance of providing employees with consent form to provide "complete and accurate information regarding . . .their rights"); *cf. Piper v. RGIS Inventory Specialists, Inc.*, No. C-07-00032 (JCS), 2007 WL 1690887, at *7 (N.D. Cal. June 11, 2007) (for opt in collective action in employment litigation, employee "consent must at least be signed by the individual who seeks to participate"). And of course that consent must continue through the actual act of turning over the personal property at issue – if not, it is an involuntary seizure, as the law readily establishes, not a consensual tender. *See U.S. v. Sullivan*, 797 F.3d 623, 633 (9th Cir. 2015) ("valid consent, by definition, requires *voluntary* tender of property") (citation omitted); *U.S. v. Sanchez*, 854 Fed. Appx. 857, 861 (9th Cir. 2021) (unpublished) (consent for search may be withdrawn at any time); *U.S. v. McWeeney*, 454 F.3d 1030, 1036 (9th Cir. 2006) ("if the officers did coerce McWeeney and Lopez into believing that they had no authority to withdraw their consent, the officers violated McWeeney and Lopez's Fourth Amendment rights and the search was illegal").

Plaintiffs argue that CBP should coerce consent by threatening discipline, but again, that only reinforces Defendants' point: the rights of an employee are defined by contract, and as explained, no part of the contracts defining that relationship with CBP agents authorizes CBP to seize their personal property in order to search for government records. As asserted before both this Court and Judge Pym, Defendants are carrying out this complex and fraught process without any guidance from the Court or buy-in from Plaintiffs in spite of efforts to meet and confer, under circumstances where Plaintiffs are eliding the standard methods to obtain discovery from third parties. More to the point, these allegations about the government's *prior* efforts are plainly an effort to impose *punitive* sanctions, not a reason to maintain coercive sanctions beyond the point when the phones have been imaged where consent was obtained. Punitive sanctions were not issued by this Court and cannot properly be imposed at this juncture. Plaintiffs' request for increased and escalating sanctions also appears to be an effort to impose punishment given their unhappiness with the fact that few agents have consented. And again, Plaintiffs provide no explanation of how the government could satisfy this Court's order given the lack of agent consent.[1]

**2.** With respect to fees, the government's request makes the most sense given the procedural posture: Defendants ask that this Court hold off on issuing a ruling until Judge Pym addresses a similar fee request made by Plaintiffs in connection with a different discovery sanction. Plaintiffs urge that "there is no overlap of the fees at issue." ECF 717 at 6. It is correct that the fees relate to a different discovery dispute. But there is a key and important issue that does overlap: the propriety of the extraordinary hourly rates that Plaintiffs seek to impose on American taxpayers. On that issue, this Court would benefit from Judge Pym's initial view, and the issues are not straightforward. For example, Congress set out in EAJA the fees it thought appropriate for litigation against the United States – where the taxpayers would collectively foot the bill -- in situations where the government was not substantially justified. The fees Congress identified were many times lower than the fees sought here. *See* 28 U.S.C. § 2412(d)(2)(A). It would be unusual for Congress to impose higher fees on a discovery dispute than in a situation where a government policy was illegal and not substantially justified. And even in cases where a lodestar

[1] We note that Plaintiffs do not assert that sanctions should be continued based on the fact that additional agents indicated on the questionnaire that they would consent to forensic imaging, and that process is ongoing. *See* ECF 717. Thus, that effort provides no basis to maintain sanctions at this time.

approach is used, the fees sought by "senior counsel" in this case far exceeds fees sought by senior *partners* in other cases in the area (often in litigation where corporate giants, not U.S. taxpayers, are footing the bill). For example, in recent complex immigration litigation, a Court in this district awarded one of the most senior public interest immigration lawyers in the country a top rate of $1,130 per hour. *See Lucas R. v. Kennedy*, No. 18-5741, 2026 WL 1046711, at *9 (C.D. Cal. Mar. 6, 2026). Plaintiffs allege that the government will "prejudice" them by delaying the fee payment by the short time needed for Judge Pym to weigh in. This allegation, from an elite firm seeking $1,700 per hour from taxpayers, is a bit rich. But more importantly, a fee award is a non-final order that must await final judgment before it is payable, so there is no rush. Plaintiffs asked this Court to order payment by a date certain, but the timing of such an award issued against the United States is complex and of course there is no risk of non-payment. *Cf. Cunningham v. Hamilton Cnty., Ohio*, 527 U.S. 198, 210 (1999) (discovery sanction is not a final order and explaining that in private party litigation court may determine "when to order collection"); *Rosenfeld v. U.S.*, 859 F.2d 717, 723 (9th Cir. 1988) (addressing complex issues of sovereign immunity and judgment fund limits in addressing whether FOIA authorizes an award of interim attorneys' fees).

**CONCLUSION**

For the reasons explained above and in our request, Defendants request the Court pause the $500/day sanction relating to personal phone imaging and hold resolution of the fee dispute.

Dated: September 10, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

TIBERIUS DAVIS
DANIEL F. MUMMOLO
Counsel to the Assistant Attorney General

/s/ August E. Flentje
AUGUST E. FLENTJE
Deputy Director
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 514-3309
Email: August.Flentje@usdoj.gov

JONATHAN A. ROBBINS
Assistant Director

JASON K. ZUBATA
ANIELLO DESIMONE
JACOB A. BASHYROV
LAURIE WIESNER
NANCY N. SAFAVI
Trial Attorneys

*Counsel for Defendants*