STACY TOLCHIN (SBN 217431)
*stacy@tolchinimmigration.com*
LAW OFFICES OF STACY TOLCHIN
776 E. Green St., Suite 210
Pasadena, CA 91101
Tel: 213-622-7450; Fax: 213-622-7233

MOHAMMAD TAJSAR (SBN 280152)
*mtajsar@aclusocal.org*
MAYRA JOACHIN (SBN 306065)
*mjoachin@aclusocal.org*
DAE KEUN KWON (SBN 313155)
*akwon@aclusocal.org*
STEPHANIE PADILLA (SBN 321568)
*spadilla@aclusocal.org*
ALYSSA MORONES (SBN 343358)
*amorones@aclusocal.org*
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
P.O. Box 811370
Los Angeles, CA 90081
Tel: 213-977-5232; Fax: 213-201-7878

*Counsel for Stop/Arrest Plaintiffs*

(*Additional counsel listed on next page*)

MARK ROSENBAUM (SBN 59940)
*mrosenbaum@publiccounsel.org*
REBECCA BROWN (SBN 345805)
*rbrown@publiccounsel.org*
RITU MAHAJAN (SBN 252970)
*rmahajan@publiccounsel.org*
GINA AMATO (SBN 215519)
*gamato@publiccounsel.org*
AMANDA MANGASER SAVAGE
(SBN 325996)
*asavage@publiccounsel.org*
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Counsel for All Plaintiffs*

ANNE LAI (SBN 295394)
*alai@law.uci.edu*
UC IRVINE SCHOOL OF LAW
IMMIGRANT AND RACIAL JUSTICE
SOLIDARITY CLINIC
P.O. Box 5479
Irvine, CA 92616-5479
Tel: 949-824-9894; Fax: 949-824-2747

*Counsel for Stop/Arrest Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Pedro VASQUEZ PERDOMO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Markwayne MULLIN, in his official capacity as Secretary, Department of Homeland Security, et al.,<br><br>Defendants. | Case No.: 2:25-cv-05605-MEMF-SP<br><br>***DISCOVERY MATTER***<br><br>**JOINT STATUS REPORT REGARDING ATTORNEYS' FEES AND COSTS [ECF 668]**<br><br>[*Filed concurrently with Declaration of David H. Fry*]<br><br>Referred to Hon. Sheri Pym<br>United States Magistrate Judge<br><br>Discovery Cutoff: March 24, 2027<br>Pre-Trial Conf.: August 4, 2027<br>Trial: August 23, 2027 |

JACOB S. KREILKAMP (SBN 248210)
*jacob.kreilkamp@mto.com*
DAVID FRY (SBN 189276)
*david.fry@mto.com*
ADAM B. WEISS (SBN 296381)
*adam.weiss@mto.com*
SARA H. WORTH (SBN 341088)
*sara.worth@mto.com*
HENRY D. SHREFFLER (SBN 343388)
*henry.shreffler@mto.com*
LAURA R. PERRY (SBN 342504)
*laura.perrystone@mto.com*
LAUREN E. KUHN (SBN 343855)
*lauren.kuhn@mto.com*
MAGGIE BUSHELL (SBN 354048)
*maggie.bushell@mto.com*
ANGELA URIBE (SBN 353579)
*angela.uribe@mto.com*
MUNGER, TOLLES & OLSON LLP
350 S. Grand Ave., 50th Floor
Los Angeles, CA 90071
Tel: 213-683-9100; Fax: 213-683-9100

JESSICA KARP BANSAL (SBN 277347)
*Jessica@ndlon.org*
LAUREN MICHEL WILFONG*
*lwilfong@ndlon.org*
JIA FU*
*jennifer@ndlon.org*
NATIONAL DAY LABORER ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Tel: 626-214-5689

BREE BERNWANGER (SBN 331731)
*bbernwanger@aclunc.org*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel: 415-621-2493

BRISA VELAZQUEZ OATIS (SBN 339132)
*bvoatis@aclu-sdic.org*
ACLU FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Tel: 619-398-4199

*Counsel for Stop/Arrest Plaintiffs*

MATTHEW J. CRAIG (SBN 350030)
*mcraig@heckerfink.com*
MACK E. JENKINS (SBN 242101)
*mjenkins@heckerfink.com*
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Tel: 212-763-0883; Fax: 212-564-0883

*Counsel for Access/Conditions Plaintiffs*

EDGAR AGUILASOCHO (SBN 285567)
*eaguilasocho@farmworkerlaw.com*
MARTÍNEZ AGUILASOCHO LAW, INC.
900 Truxtun Ave, Suite 300
Bakersfield, CA 93301
Tel: 661-859-1174

*Counsel for Plaintiff United Farm Workers*

CARL BERGQUIST*
*cbergquist@chirla.org*
COALITION FOR HUMANE IMMIGRANT RIGHTS
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

*Counsel for Plaintiff Coalition for Humane Immigrant Rights*

ALVARO M. HUERTA (SBN 274787)
*ahuerta@immdef.org*
BRYNNA BOLT (SBN 339378)
*bbolt@immdef.org*
ALISON STEFFEL (SBN 346370)
*asteffel@immdef.org*
IMMIGRANT DEFENDERS LAW CENTER
634 S. Spring St., 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

*Counsel for Plaintiff Immigrant Defenders Law Center*

* Admitted pro hac vice

BRETT A. SHUMATE
Assistant Attorney General
Civil Division
DREW C. ENSIGN
Deputy Assistant Attorney General
TIBERIUS DAVIS
SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
JONATHAN A. ROBBINS
Assistant Director
STEPHANIE L. GROFF
JASON K. ZUBATA
ANIELLO DESIMONE
JACOB A. BASHYROV
Trial Attorneys
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-8275
Email: *Jonathan.A.Robbins@usdoj.gov*

*Counsel for Defendants*

# JOINT STATUS REPORT

Pursuant to the Court's August 14, 2026 Order, ECF 668 at 13, the Parties hereby submit a joint status report setting forth their respective positions on the appropriate attorneys' fees and costs recoverable by Plaintiffs.

**Plaintiffs' Statement:**

The Court's August 14, 2026 Order found that "Rule 37(b) sanctions are warranted here." ECF 668 at 13. Rule 37(b)(2)(C) requires a district court, instead of or in addition to nonmonetary sanctions allowed in Rule 37(b)(2)(A), to "order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the [discovery] failure . . . ." Fed. R. Civ. P. 37(b)(2)(C). In other words, "an award of attorney fees and costs is mandatory in cases where, as here, the moving party prevails." *Dish Network LLC v. Jadoo TV, Inc.*, No. 2:18-cv-9768-FMO (KSx), 2019 WL 7166067, at *3 (C.D. Cal. Nov. 8, 2019); *see also Cruz v. Nike Retail Servs., Inc.*, 346 F.R.D. 107, 111 (S.D. Cal. 2024) ("Sanctions are thus mandatory unless the Court makes one of the enumerated, exculpatory findings."). Moreover, "[a]ttorneys' fees are recoverable by *pro bono* attorneys to the same extent that they are recoverable by attorneys who charge for their services." *Voice v. Stormans*, 757 F.3d 1015, 1017 (9th Cir. 2014). And the government is subject to sanctions just as any other party would be. *Mattingly v. United States*, 939 F.2d 816, 818 (9th Cir. 1991). There is no requirement that a party show bad faith in order for non-terminating sanctions to be imposed under Rule 37. *See Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994).

More specifically, Plaintiffs are entitled to recover any fees or costs "arising from the [Defendants'] failure to obey the [discovery] order." *David v. Hooker, Ltd.*, 560 F.2d 412, 421 (9th Cir. 1977). Plaintiffs understand this Court's August 14, 2026 Order to authorize Plaintiffs to recover the fees incurred in bringing the

Joint Stipulation re: Plaintiffs' Motion for an Order Enforcing ECF 370 and for Sanctions [ECF 557]. *See* ECF 668 at 13.

"[A] court assessing attorney fees begins with a touchstone or lodestar figure," calculated by multiplying "the number of hours the attorneys reasonably spent on the litigation by the reasonable hourly rate in the community for similar work." *Crestmont Cap., LLC v. P.A.R. Consulting, LLC*, No. SACV 19-1349 JVS(ADSx), 2020 WL 6528418, at *2-3 (C.D. Cal. Sept. 17, 2020); *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). "There is a strong presumption that the lodestar figure represents a reasonable fee, and any upward or downward adjustment of that figure is proper only in 'rare and exceptional cases.'" *Fleming v. Coverstone*, No. 08cv355 WQH (NLS), 2009 WL 764940, at *6 (S.D. Cal. Mar. 18, 2009) (quoting *Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir.2000)). A table reflecting the calculation of Plaintiffs' fees is attached as Exhibit 1 to the Declaration of David H. Fry ("Fry Decl.") filed herewith. The total amount of costs and fees is $98,385.00.

Plaintiffs' fees and expenses are reasonable. First, the number of hours expended—63.4—is reasonable. Defendants' noncompliance forced Plaintiffs to meet and confer with Defendants concerning their reasons for noncompliance and Plaintiffs' intention to seek sanctions; to file a Motion to Enforce; and to prepare for and participate in the hearing on the Motion to Enforce. *See* ECF 557. The amount of time devoted to these efforts was reasonable in light of the obligations on parties to meet and confer and the multiple steps required by the Civil Local Rules and federal law before a party can seek sanctions. *Compare In re Kia Hyundai Vehicle Theft Litig.*, No. 22-ml-03052-JVS-KES, 2025 WL 3691885, at *4 (C.D. Cal. Sept. 29, 2025) (awarding $310,163.15 in attorneys' fees for 242.7 hours spent enforcing court order requiring local government plaintiffs to produce police reports): *AK Futures LLC v. Smoke Tokes LLC*, No. 8:21-CV-01061-JVS-ADS, 2025 WL 1674380, at *14 (C.D. Cal. May 9, 2025) (awarding attorneys' fees for a total of

202.3 hours expended preparing a contempt motion). Counsel for Plaintiffs have reviewed the time entries and cost invoices, and have identified only those time entries reflecting work specifically resulting from the need to enforce the portion of the January 16, 2026 Order related to the inadequate collection procedures outlined in ICE's June 4, 2026 declarations. Fry Decl. ¶ 3. In fact, the claimed amount understates the total hours devoted to these issues because Plaintiffs have excluded time entries for things like team meetings, where time was devoted to addressing these issues, but that time is not readily severable from time devoted to other tasks or issues. *Id.*

The hourly rates for Plaintiffs' counsel are also reasonable. When determining the reasonable hourly rate of an attorney, the Court looks to the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008); *see also Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987) ("The prevailing market rate in the community is indicative of a reasonable hourly rate."). The qualifications of the specific attorneys who performed the work are described in the Fry Declaration filed herewith. Fry Decl. ¶¶ 6-30. Courts in Los Angeles have routinely determined that the rates of organizations and private firms[1] involved in this case are reasonable. *See, e.g.*,

[1] Courts frequently approve MTO billing rates. *See, e.g.*, *Amusement Art, LLC v. Life Is Beautiful, LLC*, No. 2:14-cv-08290-DDP-JPRx, 2017 WL 2259672, at *5 (C.D. Cal. May 23, 2017) (approving MTO's hourly rates); *Lauderdale v. City of Long Beach*, No. CV 08-979 ABC (JWJx), 2010 WL 11570514, at *14 (C.D. Cal. Jan. 11, 2010) (awarding fees and finding MTO attorneys' "hourly rates [were] reasonable"); *Radiological Specialists, Inc. v. Wells Fargo Bank, N.A.*, No. 20STCV03336 (L.A. Super. Ct. Dec. 16, 2021) (holding MTO billing rates were "in line with general market rates"); *Monster LLC v. Beats Elec. LLC*, No. BC595235 (L.A. Super. Ct. Oct. 12, 2017) (affirming MTO fees request with 2016 billing rates of $1,245 per hour and noting that the Court was "very familiar with the hourly rates of attorneys in Los Angeles, including those of the most experienced business

*Youth Just. Coal. v. City of L.A.*, No. 2:16-cv-07932-VAP-RAOx, 2021 WL 9731621, at *6 (C.D. Cal. June 8, 2021) (finding that ACLU "rates reasonably range" from $420 per hour for a staff attorney to $815 per hour for an ACLU director and granting MTO billing rates of $765 for an associate and $1,050 for a partner); *Vasquez v. Rackauckas*, No. SACV09-1090 VBF(RNBx), 2011 WL 3320482, at *1 (C.D. Cal. July 29, 2011) ("The Court finds that the ACLU/SC and MTO have demonstrated that the fees and costs they sought were reasonable . . . ."); *CAMOFI Master LDC v. Pressman*, No. CV 11-4574-JLS (SPX), 2016 WL 11778216, at *2 (C.D. Cal. Jan. 15, 2016) (approving rates of $800 per hour for a partner and $760 per hour for an associate). A recent decision issued by Judge Selna in the *In re Kia Hyundai Theft Litigation* awarding fees incurred in enforcing a single aspect of an order compelling production approved rates charged by Quinn Emanuel—a peer firm to Munger, Tolles & Olson ("MTO")—comparable to or higher than the fees requested here.[2] *In re Kia Hyundai Vehicle Theft Litig.*, No. 22-ml-03052-JVS-KES, 2025 WL 3691885, at *4.

---

litigation firms such as Munger Tolles," and holding that the "rates charged here are well within the current range of those in similarly situated firms for litigation of this nature"); *Charney v. Standard Gen., L.P.*, No. BC581130 (L.A. Super. Ct. Sept. 22, 2017) (awarding all requested fees including MTO attorney billing rates).

[2] Quinn Emanuel requested fees for three lawyers—a partner and two associates. *In re Kia Hyundai Vehicle Theft Litig.*, 2025 WL 3691885, at *4. The partner's hourly rate was $2,065 (*id.*), substantially higher than any hourly rate requested here. The more senior associate, who was four years out of law school, charged an hourly rate of $1,220, higher than the $1,150 rate for Lauren Kuhn, who is four years out of law school, and only $20 less than the $1,240 rate for Sara Worth, who is five years out of law school, despite an additional year of inflation since Judge Selna's award. The third Quinn Emanuel lawyer was two years out of law school and charged $995 per hour. There is no MTO lawyer of similar seniority for whom fees are sought here, but Angela Uribe is billed at $1,040 with a year's more experience, in addition to a year of inflation.

As reflected in the table below, fee requests in other matters in the Central District show that the hourly rates for MTO lawyers are in line with comparable firms practicing here. Fry Decl. Exs. 3-8.

| Year | Firm | Partner Rates | Associate Rates | Paralegal Rates |
|---|---|---|---|---|
| 2026 | Susman Godfrey L.L.P. | $1,300-$2,500 | $750-$900 | $350-$475 |
| 2025 | Quinn Emanuel Urquhart & Sullivan, LLP | $1,430-$2,290 | $990-$1,515 | |
| 2025 | Arnold & Porter Kaye Scholer LLP (after discount)[3] | $1,715 | $1,022-$1,060 | |
| 2026 | Wilson Sonsini Goodrich & Rosati (after discount) | $1,286-$1,623 | $606-$1,263 | |
| 2026 | Latham & Watkins | $1,530 | $1,030-$1,410 | |
| 2025 | Jones Day[4] | $1,225-$1,800 | $775-$825 | $450 |

Defendants suggested in a recent Joint Status Report, ECF 672, that it would be more appropriate to use the fees set by Congress in the Equal Access to Justice Act. ECF 672 at 11. Defendants cite no authority for the proposition that the rates set in the EAJA are appropriate under Rule 37. Indeed, they concede that the appropriate rate is the rate "prevailing in the community" for similar work performed by comparable attorneys. *Id.* As explained above, Plaintiffs' rates are reasonable under this standard.

[3] Arnold & Porter also disclosed rates for a Senior Counsel ($1,534.50) and a Counsel ($1,215).

[4] The rates listed for Jones Day are those for specific personnel disclosed as working on the matter, but the firm disclosed more generally that—in 2025—firm partners in the United States billed at $1,000 to $2,400, associates at $450-$1,350, and paralegals at $275-$575.

In the same Joint Status Report, Defendants also suggested that the Wolters Kluwer's Real Rate Report is the appropriate benchmark.[5] ECF 672 at 11. In the only case Defendants cite to support this proposition, the Defendants did not object to the requested rates and the Court did not use the Real Rate Report to discount the attorneys' requested fees. *See Alistair v. USA Badminton, et al.*, 2026 WL 2287055, at *2 (C.D. Cal. Aug. 7, 2026). As demonstrated by the chart of fees from comparable firms, *supra*, MTO's rates are in line with the prevailing market rates for comparable firms doing similar work.

Furthermore, it is appropriate to award fees for time incurred meeting and conferring prior to the filing of a motion seeking contempt because "[c]ourts in this Circuit have awarded attorneys' fees under Rule 37 for time spent preparing for and attending informal discovery conferences." *Breaking Code Silence v. McNamara*, No. 2:22-CV-02052-MAA, 2024 WL 6847883, at *13 (C.D. Cal. July 25, 2024) (collecting cases). Moreover, meeting and conferring is required by the Civil Local Rules in order to file any motion relating to discovery (Civ. L.R. 37-1). So that time was necessarily incurred in order to enforce the January 16, 2026 order.

Finally, Plaintiffs request that the Court order a specific and prompt deadline for payment of the sanctions award (e.g., 21 days from the order). Defendants have asserted elsewhere that "a fee award is a non-final order that must await final judgment before it is payable," but they cite no authority for that proposition and it is wrong. ECF 721 at 4. It is, of course, true that a Rule 37 fee award is a not a final order—but that means it is not immediately appealable, not that payment of the award is deferred. *See Cunningham v. Hamilton County, Ohio*, 527 U.S. 198, 208-209 (1999) (rejecting immediate appeal of Rule 37 monetary sanctions). Defendants

[5] Defendants did not submit the Wolters Kluwer's Real Rate Report with the earlier Joint Status Report, so it is unclear what that report purports to describe or what it is based on. The comparable firm fees referenced by Plaintiffs are set forth in declarations from attorneys at those firms and filed in cases pending in this District.

make an inexplicable reference to a Ninth Circuit decision concerning interim FOIA fee awards and suggest it "address[es] complex issues of sovereign immunity and judgment fund limits in addressing whether FOIA authorizes an award of interim attorneys' fees." ECF 721 at 5. But that decision held that such awards are proper because Congress has waived sovereign immunity for them and that the government had made the "judgment fund limits" argument repeatedly without success. *Rosenfeld v. United States*, 859 F.2d 717, 726-27 (9th Cir. 1988); *see also Trout v. Garrett*, 891 F.2d 332, 335 (D.C. Cir. 1989) (Ginsburg, R., J.) ("We find no tenable support for the notion that Congress designed the judgment fund measure to retract or limit duly enacted waivers of sovereign immunity, and we do not doubt the government's ability to arrange for payment of its lawfully-declared debts."). And, more relevantly, the Ninth Circuit has held that the Government has no sovereign immunity with respect to Rule 37 sanctions. *Mattingly v. United States*, 939 F.2d 816, 818 (9th Cir. 1991).

Courts order prompt payment of Rule 37 fee awards to serve both the compensatory purpose and the deterrent function of such sanctions. *Industrial Aircraft Lodge 707, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Techs., Inc., et al.*, 104 F.R.D. 471, 473 (D. Conn. 1985). As Judge Cabranes has explained:

> Delaying execution of the Order clearly will undermine the compensatory purpose of Rule 37(a)(4). An award of costs may be granted months or years before the entry of a final judgment. Inasmuch as there are no provisions for the accrual of interest between the entry of a Rule 37 order directing the payment of costs and the execution of that order, a party awarded costs under Rule 37 will not receive the full reimbursement to which it is entitled unless the order is executed immediately. A delay in the execution of a Rule 37 sanctions order will also decrease its deterrence value. A sanction is most

effective as a deterrent if it follows closely on the heels of the offending conduct.

*Id.* And courts routinely order payment by a date certain during the course of the litigation. *See, e.g.*, *Breaking Code Silence,* 2024 WL 6847883, at *17; *Columbia Pictures Indus., Inc. v. Galindo*, No. 20-cv-03129-MEMF (GJSx), 2022 WL 3369629, at *1 (C.D. Cal. Aug. 15, 2022). In order to achieve the purposes of Rule 37, the Court should do so here as well.

**Defendants' Statement:**

Defendants acknowledge that Rule 37(b)(2)(C) requires an award of reasonable fees caused by the discovery violation, as set forth in the Court's August 14, 2026 Order. ECF 668 at *12–14. However, Plaintiffs' requested $98,385.00 in fees for 63.40 billed hours exceeds the scope of recoverable work and should be substantially reduced.[6] Rule 37(b)(2)(C) permits recovery only for fees "caused by" the failure to obey the discovery order, *not for all fees* tangentially connected to the sanctions motion. *See David v. Hooker*, *Ltd*., 560 F.2d 412, 421 (9th Cir. 1977). Review of Plaintiffs' time-entry spreadsheet shows substantial inefficiencies and redundancies, including multiple attorneys performing duplicative reviews and edits of the same stipulations, excessive internal communications, and repeated drafting cycles far beyond what was necessary for the discrete issues tied to the discovery dispute. The billing also reflects significant corporate rate inflation, with senior attorneys billing at rates as high as $1,695 per hour for tasks that were largely administrative, repetitive, or suitable for junior-level staff. These issues demonstrate that Plaintiffs' claimed hours are not reasonable and were not caused by the underlying discovery dispute, warranting a substantial reduction of any fee award.

[6] The parties engaged in settlement discussions in which Defendants proposed resolving both fee disputes—the present dispute (ECF 668) and the dispute related to ECF 635—through a combined settlement. Despite these efforts, negotiations stalled, and the parties were unable to reach agreement on a settlement amount.

The lodestar analysis is the controlling method for determining reasonable attorneys' fees in every federal fee shifting context—including mandatory sanctions under Rule 37(b)(2)(C). *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) ("Developed after the practice of hourly billing had become widespread, […] the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case.") (cleaned up); *Carter v. Caleb Brett LLC,* 757 F.3d 866, 868 (9th Cir. 2014) (noting that the lodestar method is the correct framework for calculating reasonable attorneys' fees under federal fee-shifting statutes); *Crestmont Cap., LLC v. P.A.R. Consulting, LLC*, 2020 WL 6528418, at *2-3 (C.D. Cal. Sept. 17, 2020) (lodestar governs sanctions fees). Nevertheless, Courts must exclude excessive, redundant, and unnecessary hours. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Plaintiffs here, however, did not exercise the necessary billing judgment and their fee request is not reasonable. Plaintiffs' time-entry spreadsheet (attached here as Ex. A (2026.08.24 Time Entries)) confirms the inclusion of clerical work, internal team calls, multi-attorney attendance at hearings, and extensive drafting cycles billed at corporate litigation rates. First, several entries reflect tasks that are clerical in nature yet billed at senior-attorney corporate rates. Examples include preparing and transmitting stipulations (e.g., Kuhn preparing and transmitting the joint stipulation on 6/16, 0.40 hrs.), routine filing activities (Worth filing joint stipulation on 6/23, 2.8 hrs.), and email transmissions that do not require attorney-level expertise (multiple entries by Fry and Worth documenting drafting or revising emails). These administrative tasks should not be billed at $1,150–$1,695/hour.

Next, a substantial portion of billed time consists of internal calls, conferences, and emails among team members rather than work caused by the discovery dispute. Examples include repeated telephonic conferences between Fry and Worth (6/4, 6/9, 6/10, 6/16, 6/29), and communications among Fry, Lai, and Worth, on drafting issues.

These internal interactions, often billed at senior-attorney rates, represent inefficient workflow and inflate the total hours. Moreover, multiple attorneys repeatedly worked on the same filings or attended the same meetings. For example, Fry, Worth, and Shreffler, all participated in the same meet-and-confer session on 6/10, even though a single attorney could have represented Plaintiffs' position. Likewise, multiple attorneys engaged in editing the same stipulations and declarations (Fry, Worth, Lai, Weiss), creating layers of senior-level review for identical documents. This duplication sharply increases billed time without adding meaningful value.

Critically, the spreadsheet shows prolonged drafting cycles far beyond what the issues required. For example, attorney Fry alone billed repeated multi-hour sessions drafting and revising the sanctions motion and related supplemental briefs across 6/8, 6/9, 6/10, 6/11, 6/13, 6/14, 6/25, 6/26, 6/27, 6/28, and 6/29. Worth also repeatedly edited the same motion and stipulation across overlapping dates. Multiple attorneys iterating on the same documents results in redundancy and inflated hours not "caused by" the discovery dispute under Rule 37(b)(2)(C).

Markedly, the spreadsheet provided by Plaintiffs demonstrates that unreasonable billing practices are not occasional or isolated; they are pervasive across the submission. Entries repeatedly show senior attorneys billing premium commercial-litigation rates for clerical tasks, internal coordination, duplicative attendance, and excessive preparation time, confirming that these practices appear throughout the record rather than as rare anomalies. Such pervasive inefficiencies underscore why the claimed hours and rates are unreasonable. *See Hensley*, 461 U.S. at 433 (the burden is on the party seeking fees to show their reasonableness). Indeed, no reasonable paying client would accept such staffing at status conferences or accept senior attorney billing for junior level tasks such as taking notes. *See id.* at 434 ("Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a

lawyer in private practice ethically is obligated to exclude such hours from his fee submission.").

Furthermore, for purposes of calculating reasonable rates, the relevant market is immigration-related litigation in the Los Angeles area—not the far higher-priced commercial-litigation market the same area, a distinction that makes any comparison between the two akin to comparing apples and oranges. A *reasonable* hourly rate is defined as the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). That rate must be tied to the relevant market, not the aspirational billing rate of counsel. *Id.* Prevailing rates for experienced immigration counsel with specialized knowledge and distinct skill in constitutional immigration law and litigation involving the rights of detained immigrants in this Circuit range between $350 and $900/hr.[7] *See Constantinovici v. Bondi*, No. 3:25-CV-02405-RBM-AHG, 2026 WL 2020467, at *3 (S.D. Cal. July 13, 2026) ($358/hr); *Garcia v. Wamsley*, 824 F. Supp. 3d 1159, 1169 (W.D. Wash. 2026) (finding hourly rates between $550 to $900 to be reasonable); *Intl. Refugee Assistance Project v. Kelly*, No. 217CV1761JLSAFMX, 2017 WL 3263870, at *9 (C.D. Cal. July 27, 2017) ($585/hr). Plaintiffs seek to import *commercial* litigation rates paid by *corporate* clients—$860 to $1,695/hr—without showing specialized expertise or market parity to Federal immigration practice in this Circuit.

[7] Also of import, Courts in this District recognize Wolters Kluwer's Real Rate Report as a reliable indicator of prevailing market rates. *See Alistair v. USA Badminton*, 2026 WL 2287055 (C.D. Cal. 2026) (Los Angeles litigation partner rates range from $519 to $1,334, median $875; associate rates range from $461 to $1,041, median $700). Plaintiffs' claimed rates *far exceed* these market benchmarks, including the nearly $1,700 per hour billed by David Fry—who is a senior counsel, not a partner—and similarly inflated rates across the spreadsheet. Applied to more than 63 hours, these elevated rates substantially overstate the fees for a single discovery dispute.

The Fry Decl. (attached as Ex. 1, ECF 672-1, to ECF 672) confirms that MTO's attorneys practice commercial litigation, media and technology litigation, investigations, and civil rights matters—not immigration litigation related to detention and enforcement. ECF. 672-1. Under *Camacho*, 523 F.3d at 979, rates *must* reflect "similar work performed by attorneys of comparable skill," which is clearly not the case here. Plaintiffs' cited rate comparisons (Susman Godfrey, Quinn Emanuel, Arnold & Porter, Wilson Sonsini, Latham, Jones Day), ECF 672-1 at *7, reflect corporate practice areas such as securities, antitrust, patent, and class actions—not the relevant market for Federal immigration practitioners and, as such, should not be relied on by the Court.

There is an additional factor the Court should take into account in determining a reasonable hourly rate here. Immigration litigation in the Central District of California is overwhelmingly handled by individual attorneys, nonprofit organizations, and legal-aid providers, who do not charge commercial-litigation rates for obvious reasons. Any upward distortion of market rates—such as importing corporate billing structures into an immigration discovery-enforcement dispute and, for that matter, in general immigration litigation in Federal Courts—would have a harmful ripple effect: as rates rise for individual attorneys, more low-income clients will be forced to rely on already overextended nonprofits and legal-aid organizations, straining limited resources and further restricting access to counsel for the populations this litigation is meant to protect.

The Ninth Circuit's lodestar doctrine requires that fee awards use "the prevailing market rates in the relevant community" and that deviations of more than 10 percent require specific justification. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1204-05 (9th Cir. 2013) (holding that substantial deviations must be supported by specific evidence); *see also Camacho*, 523 F.3d at 979 (relevant market rate must reflect the "type of litigation and the attorneys' actual practice"); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454-55 (9th Cir. 2010) (the proper measure of

reasonableness is the prevailing market rate in the forum district for attorneys of comparable skill engaged in similarly complex federal litigation). Here, Plaintiffs provide *no basis* for transplanting Southern California commercial litigation partner rates—typically justified in high-stakes corporate matters—into an immigration enforcement discovery dispute. Plaintiffs' request is untethered to community norms, unsupported by subject matter expertise, and harmful to the immigrant communities whose access to justice depends on reasonable, market aligned fee award consistent with Ninth Circuit guidance. Defendants respectfully request that the Court apply prevailing immigration market rates for this District of $350–$900/hr., reduce all hours billed during periods subject to the Court's stay, ECF 668, and further reduce hours for overstaffing, inefficiency, and redundant partner level work.

Additionally, Plaintiffs' fee request should be substantially reduced because the extreme hourly rates they seek—ranging from $860 to $1,695 per hour—would be paid directly by American taxpayers, not private clients. *See Harvey v. Mohammed*, 951 F. Supp. 2d 47, 54 (D.D.C. 2013) (discussing the need for heightened scrutiny of fee requests against the government due to the risk of inflated billing when the public fisc bears the cost). Indeed, Congress has already signaled what constitutes reasonable public funded rates through the Equal Access to Justice Act, which establishes a general principle that taxpayer funded fees must be restrained. Plaintiffs' proposed rates ignore this principle.

Prevailing rates for immigration litigation in this Circuit range from $350 to $900 per hour, far below the requested corporate litigation rates. Plaintiffs' submission also contains pervasive billing excesses, including duplicative attorney attendance, repeated internal calls, prolonged multi attorney drafting cycles, and senior counsel billing for clerical work. No reasonable paying client—and certainly not American taxpayer—should bear those inflated costs. *Roberts v. Commr. of Soc. Sec.*, 522 Fed. App'x 387, 388 (9th Cir. 2013) ("Plaintiffs' counsel cannot charge the government for fees it could not charge to a private client.").

Because Plaintiffs' rates are untethered to the immigration litigation market and their hours reflect inefficiency rather than necessity, the Court should apply community aligned rates and reduce the claimed hours accordingly.

DATED: September 15, 2026

MUNGER, TOLLES & OLSON LLP

By: */s/ Lauren E. Kuhn*
LAUREN E. KUHN
*Counsel for Stop/Arrest Plaintiffs*

DATED: September 15, 2026

UNITED STATES DEPARTMENT OF JUSTICE

By: */s/ Jonathan Robbins*
JONATHAN ROBBINS
Assistant Director
Office of Immigration Litigation
*Counsel for Defendants*

**ATTESTATION OF FILER**

I attest that the other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized this filing.

DATED: September 15, 2026

MUNGER, TOLLES & OLSON LLP

By: */s/ Lauren E. Kuhn*
LAUREN E. KUHN
*Counsel for Stop/Arrest Plaintiffs*