O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pedro Vasquez Perdomo *et al.*,<br>Plaintiffs,<br>v.<br>Markwayne Mullin *et al.*,<br>Defendants. | Case No.: 2:25-cv-05605-MEMF-SP<br>**AMENDED[*] ORDER GRANTING IN PART WARRANTLESS ARREST PLAINTIFFS' MOTION TO CERTIFY CLASS [DKT. NO. 531] (AMENDING ORDER AT DKT. NO. 705)** |

Three of the organizations who brought this lawsuit say the Government is using an illegal policy to arrest individuals without a warrant. They specifically accuse the Government of arresting people without a warrant and without figuring out whether those people are likely to escape before the arresting officer can get a warrant. But even the Government agrees that officers need to figure out whether someone is likely to escape before they can arrest that person without a warrant.

[*] The parties have advised, Dkt. No. 730, that no part of this order needs to be sealed. In light of that, this version shall be placed on the public docket and omits the language from the sealed order, Dkt. No. 705, requiring the parties to meet and confer regarding sealing.

Because of this, the organizations are asking this Court to certify a "class action" of people who have been arrested without a warrant and without the officer figuring out if they are likely to escape before the officer can get a warrant. The particular type of class action that the organizations are asking for would allow this Court—if it finds that the Government has this illegal policy—to issue an order that would apply to everyone in the "class." The Government has a number of arguments for why the organizations should not be able to move forward with a class action.

The Court has considered the evidence and the arguments and decides that two of the organizations have shown what they need to show to proceed as a class action. This order grants their motion.

All this order does is certify the requested class of persons. And although the Court—in a separate order also issued today—decides that two of the organizations are *likely* to be able to show that the Government is following an illegal policy, neither that order nor this order is the final decision on that question. That will be decided later in this case.

* * *

Before this Court is the Motion for Class Certification and Appointment of Class Counsel filed by Plaintiffs Coalition for Humane Immigrant Rights, United Farm Workers, and Los Angeles Worker Center Network ("Warrantless Arrest Plaintiffs"). Dkt. No. 531 ("Motion"). The Motion asks this Court to certify the following Warrantless Arrest Class: "All persons, since June 6, 2025, who have been arrested or will be arrested in this District for alleged immigration violations without a warrant and without a pre-arrest, individualized assessment of probable cause that the person poses a likelihood of escape." *Id.* at 1.

The Motion is GRANTED IN PART. The class is certified pursuant to Rule 23, and LAWCN and CHIRLA are named the class representatives.

## I. <u>Factual Background</u>

### A. The Parties

1. Warrantless Arrest Plaintiffs

Plaintiff Los Angeles Worker Center Network ("LAWCN") is a "multi-racial, multi-ethnic, and multi-industry organization comprised of worker centers and labor organizations that work together to address injustices faced by low-wage workers in the greater Los Angeles area, including immigrant and non-English-speaking workers." 2AC ¶ 20. LAWCN has worker centers as organizational members; they, in turn, have individual members, including noncitizens with legal status and U.S. citizens. *Id.*

Plaintiff United Farm Workers ("UFW") is a farm worker union with approximately 10,000 members, with more members in California than in any other state. *Id.* ¶ 21. UFW's members in California work at agricultural sites as well as non-agricultural sites within this District. *Id.* UFW's members include noncitizens with legal status and U.S. citizens. *Id.*

Plaintiff Coalition for Humane Immigrant Rights ("CHIRLA") is a nonprofit organization with its principal place of business in Los Angeles, California. *Id.* ¶ 22. CHIRLA was founded in 1986 to advance the human and civil rights of immigrants and refugees. *Id.* As a membership organization, CHIRLA has approximately 50,000 members across California, including both U.S. citizens and noncitizens of varying immigration statuses. *Id.* CHIRLA has members in every county in the District. *Id.*

2. Defendants

Defendant Kristi Noem[1] ("Noem") is the Secretary of the Department of Homeland Security ("DHS"), which is responsible for administering and enforcing the nation's immigration laws pursuant to 8 U.S.C. § 1103(a). *Id*. ¶ 24. Noem is sued in her official capacity. *Id*.

Defendant Todd M. Lyons ("Lyons") is the Acting Director of U.S. Immigration and Customs Enforcement ("ICE"), an agency of the United States within the DHS. *Id*. ¶ 25. ICE is responsible for the stops, arrests, and custody of individuals believed to be in violation of civil immigration law. *Id*. Lyons is sued in his official capacity. *Id.*

---

[1] Then-DHS Secretary Kristi Noem is named in the operative complaint. *See* 2AC ¶ 24. But "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending." Fed. R. Civ. P. 25(d). Instead, "[t]he officer's successor is automatically substituted as a party." *Id.*; *see also* Dkt. No. 621 (court order regarding notice of name change).

Defendant Rodney S. Scott ("Scott") is the Commissioner of U.S. Customs and Border Protection ("CBP"), the agency within the DHS that is responsible for enforcing immigration laws at or close to the U.S. border. *Id*. ¶ 26. Scott has direct authority over all CBP policies, procedures, and practices related to stops, arrests, and detention. *Id*. Scott is sued in his official capacity. *Id*.

Defendant Michael W. Banks ("Banks") is Chief of the U.S. Border Patrol. *Id*. ¶ 27. Banks has direct authority over all Border Patrol policies, procedures, and practices related to stops, arrests, and detention. *Id*. Banks is sued in his official capacity. *Id*.

Defendant Kash Patel ("Patel") is Director of the U.S. Federal Bureau of Investigation ("FBI"). *Id*. ¶ 28. In that capacity, Patel is responsible for the direction and oversight of all operations of the FBI. *Id*. Patel is sued in his official capacity. *Id*.

Defendant Pam Bondi ("Bondi") is the U.S. Attorney General. *Id*. ¶ 29. Bondi is head of the Department of Justice ("DOJ") and is responsible for the direction and oversight of all operations of the DOJ. *Id*. Bondi is sued in her official capacity. *Id*.

Defendant Jaime Rios ("Rios") is the Acting Field Office Director for the Los Angeles Field Office of ICE. *Id*. ¶ 30. Rios is responsible for the supervision of personnel within ICE's Enforcement and Removal Operations ("ERO") in the geographic area covered by the Los Angeles Field Office, which comprises the seven counties in the District, and facilities within the District, including one known as B-18. *Id*. Rios is sued in his official capacity. *Id*.

Defendant Dean T. Sorenson ("Sorenson") is the U.S. Homeland Security Investigations Special Agent in Charge for Los Angeles. *Id*. ¶ 31. Sorenson is responsible for the supervision of agents within ICE's Homeland Security Investigations ("HSI") in the Los Angeles area. *Id*. Sorenson is sued in his official capacity. *Id*.

Defendant Gregory K. Bovino ("Bovino") is the Chief Patrol Agent for the El Centro Sector of the CBP. *Id*. ¶ 32. In that capacity, Bovino is responsible for the supervision of agents in the El Centro Sector. *Id*. Bovino is sued in his official capacity. *Id*.

Defendant Justin De La Torre ("De La Torre") is the Acting Chief Patrol Agent for the San Diego Sector of the CBP. *Id*. ¶ 33. In that capacity, De La Torre is responsible for the supervision of agents in the San Diego Sector. *Id*. De La Torre is sued in his official capacity. *Id*.

Defendant Akil Davis ("Davis") is the Assistant Director of the Los Angeles Office of the FBI. *Id*. ¶ 34. In that capacity, Davis is responsible for the supervision of all agents in the Los Angeles Office. *Id*. Davis is sued in his official capacity. *Id*.

Defendant Bilal A. Essayli ("Essayli," and together with all other defendants, "Defendants") is the U.S. Attorney for the Central District of California. *Id*. ¶ 35. Essayli has authority over federal law enforcement operations within the District. *Id*. Essayli is sued in his official capacity. *Id*.

### B. Escape Risk Policy

Warrantless Arrest Plaintiffs allege that Defendants have a policy, pattern, and practice of making warrantless arrests without making an individualized determination of escape risk. *Id.* ¶ 275. This policy, they allege, violates 8 U.S.C. § 1357(a)(2), 8 C.F.R. § 287.8(c)(2)(ii), and the APA. *Id.* ¶¶ 268–76.

This Court incorporates by reference its findings of fact from the Order Granting In Part Plaintiffs' Motion for a Preliminary Injunction, issued concurrently. Dkt. No. 704 § III ("PI Order"). It references those findings of fact throughout this Order as relevant.[2]

### C. Procedural History

Plaintiffs Vasquez Perdomo, Villegas Molina, and Osorto initiated this action by filing a Petition for Writ of Habeas Corpus on June 20, 2025. Dkt. No. 1. They, along with the other

---

[2] In its Opposition, the Government makes the following assertions:

> And absent proof of a concrete, ongoing policy of "warrantless arrests" that violate the Constitution—*which the Court acknowledged it has never found*, ECF 87 at 30 n.21, and Defendants' evidence refutes—organizational Plaintiffs cannot establish standing for themselves, let alone for an undefined population.

Opp. at 1 (emphasis added).

> While Plaintiffs would have the Court infer alleged harm based on plain, non-egregious facts, class litigation is not designed such that a Court may certify a class and then have Plaintiffs go search for a common injury or unlawful policy—*which even this Court acknowledges there is no evidence establishing its existence*, ECF 87 at 30 n.21—to justify the class after the fact.

Opp. at 14 (emphasis added).

The Court has never made any such blanket finding (and the cited footnote from this Court's TRO does not concern this issue at all), and at the hearing, counsel acknowledged as much, attributing these assertions to "scrivener's error." Tr. 63:12 – 65:10.

Plaintiffs, filed the operative Second Amended Complaint on April 9, 2026. *See* 2AC. It alleges the following claims:

| **Claim** | **Plaintiffs** | **Defendants** |
|---|---|---|
| Count One: Violation of Fourth Amendment: Suspicionless Seizures | Stop/Arrest Plaintiffs[3] | All Defendants |
| Count Two: Violation of 8 U.S.C. 1357 § (a)(2)—Warrantless Arrests Without Probable Cause of Flight Risk | Warrantless Arrest Plaintiffs | All Defendants |
| Count Three: Violation of 8 C.F.R. § 278.2(c)(2)(ii)—Standards for Stops and Warrantless Arrests | Warrantless Arrest Plaintiffs | All Defendants |
| Count Four: Violation of 8 C.F.R. § 287.8(c)(2)(iii)—Failure to Identify Authority and Reason for Arrest | Warrantless Arrest Plaintiffs | All Defendants |
| Count Five: Violation of Fifth Amendment—Access to Counsel | Access/Detention Plaintiffs | Noem, Lyons, and Rios |
| Count Six: Violation of 8 U.S.C. § 1362—Access to Counsel | Access/Detention Plaintiffs | Noem, Lyons, and Rios |
| Count Seven: Violation of Fifth Amendment—Conditions of Confinement | Access/Detention Plaintiffs[4] | Noem, Lyons, and Rios |
| Count Eight: Violation of Fifth Amendment—Due Process | Stop/Arrest Plaintiffs | All Defendants |
| Count Nine: Violation of Fourth Amendment—Unreasonable Manner of Seizure | Stop/Arrest Plaintiffs | All Defendants |

2AC. Plaintiffs seek declaratory and injunctive relief, as well as fees and costs. *Id.* at 82–83.

On October 29, 2025, Defendants filed their first motion to dismiss Plaintiffs' First Amended Complaint. Dkt. No. 235. The motion was fully briefed. Dkt. No. 255; Dkt. No. 264. This Court held

[3] This refers collectively to the five individual Plaintiffs, as well as the organizational plaintiffs LAWCN, UFW, and CHIRLA.
[4] This refers to ImmDef and CHIRLA.

a hearing on the Motion on January 15, 2026, after which it took the Motion under submission. On February 19, 2026, this Court issued its decision. Dkt. No. 419 ("First MTD Order"). There, this Court denied Defendants' Motion except as to Count Eight—which Plaintiffs agreed should be dismissed, and which was dismissed without prejudice. *Id.* at 34.

On April 21, 2026, Defendants filed a second motion to dismiss. Dkt. No. 494. The Motion was fully briefed. Dkt. No. 500; Dkt. No. 502. This Court held a hearing on the Motion on July 9, 2026, after which it denied the motion. Dkt. No. 658 ("Second MTD Order").

On June 8, 2026, Warrantless Arrest Plaintiffs filed a motion for a preliminary injunction on the second and third causes of action. Dkt. No. 529. The motion was fully briefed. Dkt. No. 582; Dkt. No. 616. Intervenors joined the motion. Dkt. No. 570. This Court held a hearing on that motion on August 13, 2026.

On June 9, 2026, Warrantless Arrest Plaintiffs filed the instant Motion for Class Certification. The Motion asks this Court to certify the following Warrantless Arrest Class:

> All persons, since June 6, 2025, who have been arrested or will be arrested in this District for alleged immigration violations without a warrant and without a pre-arrest, individualized assessment of probable cause that the person poses a likelihood of escape.

*Id.* at 1. Pursuant to the parties' agreed-upon briefing schedule, Defendants opposed the Motion, *see* Dkt. No. 577 ("Opp."), and Warrantless Arrest Plaintiffs replied, *see* Dkt. No 608 ("Reply").

The Court held a hearing on the Motion, along with the request for a preliminary injunction on August 13, 2026. *See* Dkt. No. 655 ("Tr."). After the hearing, this Court took both motions under submission.

## II. <u>Legal Standard</u>

A district court has broad discretion in making a class certification determination under Rule 23. *Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001); *see also Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979) (noting that district courts "have broad power and discretion vested in them by" Rule 23). But a court must exercise this discretion "within the framework" of the Rule. *Navellier*, 262 F.3d at 941. Under Rule 23, a court may only certify a class if the following prerequisites are met:

(1) Numerosity: The class must be so numerous that joinder of all members individually is "impracticable";
(2) Commonality: There must be questions of law or fact common to the class;
(3) Typicality: The claims or defenses of the class representative must be typical of the claims or defenses of the class; and
(4) Adequacy of Representation: The class representative must be able fairly and adequately to protect the interests of all members of the class.

Fed. R. Civ. P. 23(a). "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather, a plaintiff "must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* In evaluating whether the Rule 23(a) prerequisites have been met, courts apply the preponderance of the evidence standard. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022).

**A. Numerosity**

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P 23(a). Although this requirement "imposes no absolute limitations," the Supreme Court has held that a class of only 15 "would be too small to meet the numerosity requirement." *Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 330 (1980); *see also Harik v. Cal. Tchrs. Ass'n*, 326 F.3d 1042, 1051 (9th Cir. 2003). Courts regularly, however, certify classes comprised of at least forty members. *See Davis v. Four Seasons Hotel Ltd.*, 277 F.R.D. 429, 435 (D. Haw. 2011) (collecting cases); *Arevalo v. Trump*, 785 F. Supp. 3d 644, 669 (C.D. Cal. 2025) ("Generally, the numerosity requirement is satisfied when a proposed class includes 40 or more members."); *Kidd v. Mayorkas*, 343 F.R.D. 428, 437 (C.D. Cal. 2023); *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (noting that "numerosity is presumed at a level of 40 members").

**B. Commonality**

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 349–50. The claims of the proposed class members "must depend upon a common contention," which "must be of such a nature that is capable of class wide resolution—which means that determination of its truth or falsity will resolve *an issue* that is central to the validity of each one of the claims in one stroke." *Id.* at 350 (emphasis added). As the Supreme

Court reiterated in *Dukes*, to establish commonality, "even a single common question will do." *Id.* at 359 (internal quotation marks omitted).

**C. Typicality**

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct, which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.*

**D. Adequacy of Representation**

"To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

The Supreme Court has noted that the typicality and commonality requirements of Rule 23(a) "tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel." *Dukes*, 564 U.S. at 349 n.5. In appointing class counsel, a court must consider: (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Moreover, class counsel "must fairly and adequately represent the interests of the class." *Id.* 23(g)(4).

**E. Rule 23(b) Requirements**

In addition to demonstrating that the Rule 23(a) prerequisites have been met, a party moving for class certification must establish that the action falls within one of the three categories of class suits provided for in Rule 23(b). Here, Plaintiffs seek to establish that the requirements of Rule 23(b) are satisfied through Rule 23(b)(2), which requires the Court to find that "the party opposing the

class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(3).

**F. Burden of Proof**

The moving party "bears the burden of establishing that the proposed class meets the requirements of Rule 23." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1177 (9th Cir. 2015). Resolution of a motion for class certification requires a "rigorous analysis" as to whether Rule 23's requirements have been met. *Id.* at 664.

In determining whether to certify a class, the question for the Court "is not whether the plaintiff . . . [has] stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (citing *Miller v. Mackey Int'l, Inc.*, 452 F.2d 424, 427 (5th Cir. 1971)). During this analysis, "[m]erits questions may be considered . . . *only to the extent* . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Stockwell v. City & County of San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)). Thus, although an analysis of the Rule 23 factors "will entail some overlap with the merits of the plaintiff's underlying claim," the Court will not conduct a "mini trial" at this class certification stage. *Dukes*, 564 U.S. at 351; *Ellis*, 657 F.3d at 983 n.8. Rather, Plaintiffs need only prove by a preponderance of any admissible evidence that the prerequisites of Rule 23 are satisfied. *Olean*, 31 F.4th at 664.

## III. <u>Discussion</u>

**A. Warrantless Arrest Plaintiffs, if they have Article III standing, are not barred from serving as class representatives simply because they are organizations.**

Defendants argue throughout their opposition that Warrantless Arrest Plaintiffs cannot serve as class representatives simply because they are organizations. Opp. at 4–5. Warrantless Arrest Plaintiffs respond that they may. Reply at 5–8.

Defendants contend that "organizational Plaintiffs do not themselves possess the individualized interests, circumstances, and claims of the [noncitizens] they intend to represent." *Id.*

at 4. Relying on the text of Rule 23, which explains the parameters according to which "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members," they argue the class fails absent individual plaintiffs' or members' participation as class representatives. Fed. R. Civ. P. 23(a). In short, they contend this Court cannot certify a class with only organizations with associational standing as class representatives.

The weight of authority does not support this position. First, the cited authority merely stands for the unremarkable principle that to certify a class, the Court must find that the requirements of Rule 23 are met and that the named class representatives must share the interests of the class members. *E. Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 n.8 (1977) (noting Rule 23(a)'s prerequisites for a class action); *Dukes*, 564 U.S. at 338 (noting what Rule 23 requires "the party seeking certification [to] demonstrate"). Importantly, neither *Rodriguez* nor *Dukes* addresses the question of whether an association with Article III standing, who is otherwise permitted to sue on behalf of its members may also serve as a class representative on behalf of its members and other class members. The Opposition relies on *Rodriguez* for the specific proposition that a plaintiff who "could have suffered no injury" is "simply not eligible to represent a class of persons who did allegedly suffer injury." *Rodriguez*, 431 U.S. at 403–04. But an organization's ability to serve as a class representative was not the question before the *Rodriguez* Court. There, the putative class representatives "lacked the qualifications to be hired as line drivers"—so "they could have suffered no injury as a result of the alleged discriminatory practices." *Id.* at 403. Of course, an uninjured individual plaintiff could not serve as class representative for injured plaintiffs. But here—as discussed below—at least two of the Warrantless Arrest Plaintiffs have standing to seek redress on behalf of the injured parties: An association may maintain an action in the absence of injury to itself if it meets the *Hunt* requirements, and Warrantless Arrest Plaintiffs have done so here. *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1005 (9th Cir. 2011).

The Ninth Circuit has rejected a similar challenge to an organizational plaintiff seeking to represent a class of individuals. *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990). There, the defendant argued that "the unions [we]re not members of the class they seek to represent," and thus could not serve as representatives under Rule 23. *Id.* But, as

the Ninth Circuit found, "[t]his contention is without merit": "[I]n their associational capacity, the unions are acting on behalf of" the members of the class they sought to represent. *Id.* Although it is true that the unions *and* certain individuals served as class representatives for one of the classes, the Ninth Circuit did not hold that the inclusion of individuals as class representatives was required, and this Court declines to do so here. *See id.*

An Eighth Circuit opinion, though nonbinding on this Court, is illustrative of this point. *Smith v. Bd. of Educ.*, 365 F.2d 770 (8th Cir. 1966). In *Smith*, the Eighth Circuit acknowledged that—though Rule 23(a) requires that a class action must "be brought by a member of the class"—the organizational plaintiff qualified because it was a "real party in interest." 365 F.2d at 777; *see also* 7A *Wright & Miller's Federal Practice and Procedure* § 1761 (4th ed. 2022) ("[The] approach [in *Smith*] seems sound inasmuch as *the primary consideration should be whether the party can adequately represent the interests of the class*. Once adequacy of representation and standing are established, the action should not be defeated because of the technical point that an organization, which is the real party in interest, is not a member of itself." (emphasis added)).

Moreover, although courts have adopted different approaches in the past, several courts in this circuit have recently held that an association can serve as a class representative. *See Vietnam Veterans of Am. v. C.I.A.*, 288 F.R.D. 192, 204 (N.D. Cal. 2012) ("[M]any courts have held that organizations with associational standing may serve as class representatives, at least where the underlying purpose of the organization is to represent the interests of the class." (internal quotation marks omitted) (collecting cases)); *see also One Unnamed Deputy Dist. Att'y v. County of Los Angeles*, No. 09-7931, 2011 WL 13128375, at *4 (C.D. Cal. Jan. 24, 2011) (certifying class on motion of organization); *Willits v. City of Los Angeles*, 2011 WL 7767305, at *5 (C.D. Cal. Jan. 3, 2011) (appointing organization as class representative); *Californians for Disability Rts., Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 351 (N.D. Cal. 2008) (same); *Coal. for ICANN Transparency Inc. v. Verisign, Inc.*, 771 F. Supp. 2d 1195, 1199 n.1 (N.D. Cal. 2011) ("The requirement is not that each of the organization's members have standing, but that at least one of its members would have standing to sue in his own right." (internal quotation marks omitted)).

Rather than contending with these cases—or pointing the Court to any authority in this Circuit holding that associations *cannot* serve as class representatives—the Government points the Court to *International Union v. Brock*, 477 U.S. 274 (1986). But *Brock* does not concern whether an association can serve as a class representative under Rule 23. And the language cited from *Brock* was the position taken by the Defendant that was *rejected* by the Supreme Court. A close reading of *Brock* is instructive. There, in the Court's words:

> Both associational standing and Rule 23 are "designed to serve precisely the same purpose," according to the Secretary: "to facilitate, in a fair and efficient manner, the collective adjudication of the common rights of an association's members." *Id.* at 37. Rule 23, however, contains special safeguards to ensure that the diverse interests of class members are properly represented by the named plaintiff seeking to bring a case on their behalf. No such adequacy of representation, the Secretary argues, is guaranteed by the approach this Court has taken to associational standing in *Warth*, *Hunt*, and other cases. Yet an association might prove an inadequate representative of its members' legal interests for a number of reasons. It might lack resources or experience or might bring lawsuits without authorization from its membership. In addition, the litigation strategy selected by the association might reflect the views of only a bare majority—or even an influential minority—of the full membership.
>
> The Secretary's presentation, however, fails to recognize the special features, advantageous both to the individuals represented and to the judicial system as a whole, that distinguish suits by associations on behalf of their members from class actions. While a class action creates an ad hoc union of injured plaintiffs who may be linked only by their common claims, an association suing to vindicate the interests of its members can draw upon a pre-existing reservoir of expertise and capital. . . . These resources can assist both courts and plaintiffs. . . . In addition, the doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others. . . . The very forces that cause individuals to band together in an association will thus provide some guarantee that the association will work to promote their interests.
>
> We are not prepared to dismiss out of hand the Secretary's concern that associations allowed to proceed under *Hunt* will not always be able to represent adequately the interests of all their injured members. . . . And were we presented with evidence that such a problem existed either here or in cases of this type, we would have to consider how it might be alleviated. However, the Secretary has given us absolutely no reason to doubt the ability of the UAW to proceed here on behalf of its aggrieved members, and his presentation has fallen far short of meeting the heavy burden of persuading us to abandon settled principles of associational standing. We therefore reaffirm the principles we set out in *Hunt*, and hold that the UAW has standing to litigate this action.

477 U.S. at 288–90 (citations omitted). Defendants' Opposition cites a portion of the Secretary's arguments in *Brock*—the reasoning for why an association might "prove an inadequate

representative"—as a caution from the Supreme Court about organizational plaintiffs with associational standing serving as class representatives. But, read in context, the *Brock* Court went on to explain why that reasoning alone should *not* result in finding a lack of standing—and, if anything, that organizational plaintiffs' participation may advantage courts and plaintiffs. *See* Reply at 7.

At the hearing, Defendants requested supplemental briefing on whether Plaintiffs can "proceed where Perdomo himself is not a member of any of these organizations." Tr. at 68:23–69:1. This Court does not find supplemental briefing necessary on this question—which, as discussed, the parties have briefed extensively. To that end, the request is denied.

Accordingly, this Court finds that if Warrantless Arrest Plaintiffs have Article III standing, and if they otherwise meet the requirements of Rule 23, they can serve as class representatives. Put another way, because principles of associational standing permit an association to stand in for its members and sue when its members can sue, an association can stand in for its members as a class representative and serve as a class representative when its members can serve as class representatives.

**B. Warrantless Arrest Plaintiffs have standing.**

An organization has associational standing when (1) its members have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Students for Fair Admissions*, 600 U.S. at 199 (2023).[5]

---

[5] At the hearing, Defendants asked this Court to consider *Arizona Alliance for Retired Americans v. Mayes*, No. 22-16490, 2026 WL 2277101 (9th Cir. Aug. 7, 2026), in support of their argument that Warrantless Arrest Plaintiffs lack standing. Tr. at 38:17–40:7. But that case, by Defendants' own admission, "focused on organizational standing and not associational standing." *Id.* at 39:19–20; *see also Ariz. All. for Ret. Ams.*, 2026 WL 2277101, at *4 n.1. And, though Defendants correctly note that the Ninth Circuit overturned several of its prior decisions on standing in that opinion, this Court's order does not rely on the overruled authorities; unlike the plaintiffs in that case, Warrantless Arrest Plaintiffs' relevant theory of standing is associational, not organizational. And it is only in relation to the organizational standing test that those cases were overruled. In the Ninth Circuit's words:

> Prior to *Hippocratic Medicine*, we read *Havens* to hold that an organization has direct standing to sue where it establishes that the defendant's behavior has frustrated its mission and caused it to divert resources in response to that frustration of purpose. But these earlier cases, decided without the benefit of *Hippocratic Medicine*, did not ask whether the challenged conduct directly affected and interfered with the plaintiff organizations' core activities. The organizational standing analyses in these cases are therefore overruled.

*Ariz. All. for Ret. Ams.*, 2026 WL 2277101, at *7. Though Defendants also offered to submit supplemental briefing on *Arizona Alliance*, this Court does not find it necessary based on its read of the authority and the parties' arguments at the hearing.

1. Plaintiffs' members have standing to sue.

For the reasons that follow, Warrantless Arrest Plaintiffs have made the requisite showing of standing.

"The three elements of standing . . . are (1) a concrete and particularized injury, that (2) is fairly traceable to the challenged conduct, and (3) is likely to be redressed by a favorable decision." *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662 (2019). To show injury in fact, "past exposure to illegal conduct" does not suffice absent "continuing, present adverse effects." *Lyons*, 461 U.S. at 102 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 188, 195–96 (1974)). "At th[e] preliminary injunction stage, [a plaintiff] 'must make a clear showing of each element of standing[.]'" *Yazzie v. Hobbs*, 977 F.3d 964, 966 (9th Cir. 2020) (quoting *Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013)).

An immigration officer's authority to make a warrantless arrest requires either (1) that an offense against the United States was committed in the officer's presence, or (2) if the officer has reasonable grounds to believe that the person is committing a felony *and* "if there is a likelihood of the person escaping before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(5)(A). The injury the Warrantless Arrest Plaintiffs complain of is that their members have been arrested in violation of these requirements—specifically, without the required likelihood-of-escape analysis.

*First*, at least two of Warrantless Arrest Plaintiffs have shown that their members have suffered an injury in fact.[6] LAWCN and CHIRLA represent tens of thousands of members across this District. *See* Melendrez Decl. ¶¶ 1–8 (attesting that LAWCN's membership includes over 2,000 car wash worker members across Southern California); Gudino Decl. ¶¶ 13–22 (attesting that

---

[6] This Court also understands that UFW members allege being fearful of the possibility that they may be subject to the Escape Risk Policy in the future. Strater Decl. ¶ 30 (attesting that co-worker of UFW member was stopped and arrested without a warrant in member's presence, without any inquiries or fleeing from officers and feared the same would happen to the member); *id.* ¶ 37 (attesting that husband of UFW member was stopped and arrested without a warrant, without any inquiries or fleeing from officers and feared the same would happen to the member). At the hearing, however, Plaintiffs clarified that the record does not contain evidence that UFW members have been subject to the Escape Risk Policy. Tr. at 8:22–9:5.

This Court, however, need not find that all three Warrantless Arrest Plaintiffs have standing to grant preliminary injunctive relief "For all relief sought, there must be *a litigant* with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right." *Town of Chester*, 581 U.S. at 439; *see also* Tr. at 8:15–21.

As this Court discusses in this section, LAWCN and CHIRLA have shown they have standing based in part on their members being subject to the Government's Escape Risk Policy. To that end, this Court need not, and so does not, reach the question of whether UFW would independently have standing.

LAWCN's member organizations collectively represent over 3,800 workers); Salas Decl. ¶¶ 2-4 (attesting that CHIRLA has approximately 50,000 members).

LAWCN and CHIRLA have each offered evidence that their members have already experienced the injury of Defendants' disregard for the statutory requirement of a likelihood-of-escape analysis upon a warrantless arrest.[7] *See, e.g.*, Melendrez Decl. ¶ 8 (attesting that member of LAWCN member organization CLEAN Carwash Worker Center was stopped and arrested without a warrant, despite that agents did not know his name or make any inquiries which would go to risk of flight and despite the fact that member did not flee from officers); Salas Decl. ¶¶ 20-21 (attesting that CHIRLA members were stopped and arrested without a warrant, despite that agents did not appear to know their names or make any inquiries which would go to risk of flight and despite the fact that members did not flee from officers).

And both LAWCN and CHIRLA have shown that their members are likely to suffer future injury. The Ninth Circuit has held that a plaintiff may show that an injury is likely to recur and therefore that he has standing for injunctive relief by "demonstrat[ing] that the harm is part of a 'pattern of officially sanctioned . . . behavior, violative of the plaintiffs' [federal] rights.'" *Melendres v. Arpaio*, 695 F.3d 990, 998 (9th Cir. 2012). Defendants argued at the hearing—in direct contravention of *Melendres*—that the Ninth Circuit has held that the existence of such a policy or practice is not enough to demonstrate the required likelihood-to-recur showing.[8] There is no support for this reading of *Melendres*, and this Court is bound to follow *Melendres*. 695 F.3d at 997–98 ("We have enumerated two ways in which a plaintiff can demonstrate that [their] injury is likely to recur. First, a plaintiff may show that the defendant had, at the time of the injury, a written policy, and that the injury stems from that policy. Second, the plaintiff may demonstrate that the harm is

---

[7] This factual finding therefore distinguishes this case from *National Park Service v. National Trust for Historic Preservation*, where the Supreme Court found that the plaintiff rested its assertion of a concrete and particularized injury merely on "offense alone." No. 26A203, 2026 WL 2564318, at *2 (U.S. Aug. 31, 2026). Plaintiffs do not claim to be merely offended by Defendants' actions. Their members have suffered actual arrests, and this Court is not aware of any case—including *Lyons*—holding that an arrest is not a sufficiently concrete and particularized injury.

[8] At the hearing, Defendants also advocated that *Melendres* is distinguishable because there, unlike here, the Government had effectively conceded the existence of the policy that the Court ultimately found was unlawful. 695 F.3d at 998; *see also* Tr. at 32:16–23. But it appears to this Court that this is a distinction without a difference where—as here—this Court independently finds sufficient evidence to support the existence and unlawfulness of a Government policy.

part of a pattern of officially sanctioned . . . behavior, violative of the plaintiffs' federal rights." (citation modified)).

This Court finds ample evidence that Defendants have an *ongoing* policy and practice of conducting warrantless arrests in violation of the requirement to conduct a likelihood-of-escape analysis. This is discussed in greater detail in the likelihood of success discussion below, but one example—taken from testimony of the ICE official designated as the person most knowledgeable on this topic—will suffice here. *See* Rios Dep. In the deposition, the official reviewed an Encounter Report for an individual involved in this lawsuit. *See id.* at 162:18–163:25. When asked whether the document reflected a determination of escape risk, the official responded as follows[9]:

> **ICE OFFICIAL:** There was a determination made . . . on this third page. When the officer stated in the narrative (as read) : "I approached a male on foot and identified myself as ICE. . . . I asked the male where he was coming from. He advised the Miss Donuts. I asked what country he was born in, and he advised" – I'm assuming it was a foreign country. "I asked the male if he had any documents to be in the United States . . . and he said 'no.'" He asked the individual if he was here illegally. He said, "Yes." Then he asked him if he had any documentation, and he said, "Yes," in his wallet. He provided an employment authorization card with the [A] number, blah, blah, blah. An employment authorization card is not a document that allows you to be or remain in the United States legally.
>
> **ATTORNEY:** Okay. And so your testimony, as the agency representative, is this paragraph is indication that somebody is a flight risk?
>
> **ICE OFFICIAL:** No. . . . [H]e established probable cause that the subject is here illegally . . . therefore, he established probable cause to make an arrest.
>
> **ATTORNEY:** Okay. And is there a determination that the individual was a flight risk?
>
> **ICE OFFICIAL:** *There was nothing mentioned in this document about a flight risk* . . . but other factors are – key factors, where were you born? Mexico. Do you have any immigration documents? No. Are you here illegally? Yes.
>
> **ATTORNEY:** And is there enough information here to determine if somebody is a flight risk?
>
> **ICE OFFICIAL:** Well, it – *there's nothing in the narrative that states that*, but the officer did his job. He met the parameters leading up to probable cause to make an arrest.

[9] The Encounter Report discussed at the deposition was lodged at Dkt. No. 219-37.

**ATTORNEY:** Okay. . . . [S]o is your testimony that there was sufficient basis for a warrantless arrest?

**ICE OFFICIAL:** Absolutely.

**ATTORNEY:** Okay. And . . . that's the agency's position, *is that there's sufficient information here to make a warrantless arrest*?

**ICE OFFICIAL:** *Absolutely*.

*Id.* 164:12–165:25 (emphasis added). This evidence—which demonstrates ICE's position that sufficient information existed for a warrantless arrest, when the 30(b)(6) witness could identify no evidence that escape risk was considered—supports the existence and ongoing nature of Defendants' Escape Risk Policy.[10] Warrantless Arrest Plaintiffs have therefore offered evidence in support of that their members' harm "is part of a 'pattern of officially sanctioned . . . behavior, violative of the plaintiffs' [federal] rights.'" *Melendres*, 695 F.3d at 997 (quoting *Armstrong*, 275 F.3d at 861). This, in turn, evinces that Warrantless Arrest Plaintiffs' members are "realistically threatened by a repetition of [the violation]." *Id.* (quoting *Lyons*, 461 U.S. at 109). This shows the members' injuries in fact.

*Second*, Warrantless Arrest Plaintiffs' members have shown that their injuries were caused by Defendants' Escape Risk Policy. Warrantless Arrest Plaintiffs offer at least a dozen narratives containing evidence that arrests took place without individualized determinations of escape risk. For example: Immigration agents grabbed and restrained a LAWCN member "before asking any questions." Melendrez Decl. ¶ 7. "The agents did not appear to know who he was or have a warrant for his arrest." *Id.* Immigration agents arrested a LAWCN member who "did not run." *Id.* ¶ 8. "They did not know who [he] was, and did not ask him questions other than about his status before arresting him." *Id.* Immigration agents conducted a raid on August 12, 2025, where a witness attested that "it didn't matter if [the car wash workers] ran or not, agents grabbed anyone who was close by." *Id.* ¶ 11. Immigration agents arrested a LAWCN member, who has lived in the same Los Angeles address for twenty years, without "ask[ing] him questions about his community ties." *Id.* ¶

[10] At the hearing, Defendants argued that Plaintiffs could not rely on the testimony of a Rule 30(b)(6) witness without stipulating to the preparedness of the witness. Tr. at 69:20–70:19. Defendants, however, did not offer any citation in support of this principle, nor is it an argument raised in the papers. To that end, this Court declines to find accordingly.

13. Footage of other raids shows "car wash workers [being] aggressively grabbed and violently arrested without a warrant and often without the agents knowing who they are." *Id.* ¶ 18; *see also* Gudino Decl. ¶ 27 ("[T]he immigration agents seem to target non-white, Spanish-speaking workers, regardless of whether they have long-standing ties to the community or lawful presence in the United States."). And the testimony of numerous agents support the conclusion that it was due to the Policy—and not isolated instances of agents "going rogue"—that these arrests occurred in this manner. Accordingly, Plaintiffs have shown to this Court's satisfaction that Defendants' Escape Risk Policy caused the harm that ensued—that is, violations of federal rights as a result of being subject to wrongful warrantless arrests.

*Third*, Warrantless Arrest Plaintiffs have shown—and Defendants do not appear to dispute—that injunctive relief would redress their injuries. Plaintiffs ask this Court to issue "a preliminary and permanent injunction enjoining further violations of Plaintiffs' rights." 2AC at 83. Because Defendants' Escape Risk Policy is in ongoing violation of Plaintiffs' statutory rights, it follows that enjoining the Government from following that policy will grant Warrantless Arrest Plaintiffs relief. Put another way, their asserted harms—which they allege arise directly from illegal conduct at the hands of the Government and their agents—can be redressed with an injunction.

Because LAWCN and CHIRLA have shown their members have an injury in fact caused by Defendants' policy and redressable through an injunction, the organizations' members have standing.

Defendants argue that Plaintiffs' argument on standing fails because it does not "engage with the Supreme Court's order staying the Ninth Circuit's decision finding standing"—noting that the Supreme Court could not have stayed the TRO unless Plaintiffs lacked a likelihood of success on either standing or the merits. Opp. at 8 (citing *Vasquez Perdomo v. Noem*, 146 S. Ct. 1 (2025)). But, as this Court has explained, it will not speculate as to the unspoken logic behind the Supreme Court's decision to stay the Fourth Amendment TRO. Dkt. No. 20 n.7. Because there is no associated majority opinion, the Justices may well have disagreed on the reasons for the stay, even if they agreed that a stay should issue. To that end, Defendants do not persuade this Court that the stay order conveys binding authority or guidance on how to approach standing.

Defendants' continued reliance on *Lyons*, too, is misplaced. The Ninth Circuit has explained that *Lyons* should be distinguished when a district court "ma[kes] an explicit finding of likelihood of recurrence, there is evidence that the complained-of conduct stems from a pattern or practice by Defendants, and there is no specific predicate action required by Plaintiffs to trigger Defendants' challenged practice." *Vasquez Perdomo*, 148 F.4th at 675. So too here. This Court explains in this Order the evidence it finds of an officially sanctioned pattern and practice, that it has found Plaintiffs' injury is likely to recur, in part because Warrantless Arrest Plaintiffs and their members are not taking predicate actions to invoke the harm they suffer.[11] The Ninth Circuit's binding interpretation of *Lyons*, therefore, leads this Court to find *Lyons* does not preclude standing.

2. <u>The interests Plaintiffs seek to protect are germane to Plaintiffs' purposes.</u>

As Warrantless Arrest Plaintiffs contend, and Defendants do not appear to dispute, the interests Plaintiffs seek to protect through this litigation are germane to Plaintiffs' organizational purposes.

LAWCN focuses on "collaboration among worker centers of the Greater Los Angeles region." Gudino Decl. ¶ 6. It is comprised of worker centers, which are "non-profit, community-based organizations that offer support to low-wage, often immigrant workers who are not part of a collective bargaining entity." *Id.* ¶ 7. These include "groups supporting day laborers and those focused on workforce development, as well as immigrant rights organizations, faith-based groups, and movements focused on equity and justice." *Id.* LAWCN's work "supports immigrant justice by improving the conditions and dignity of immigrant workers in Southern California." *Id.* ¶ 12. To that end, "LAWCN has a long-term and sustained focus on issues related to immigration and immigrant workers." *Id.* ¶ 9.

UFW "is the largest farm worker union in the country." Strater Decl. ¶ 4. Its mission is "to improve the lives, wages, and working conditions of agricultural workers and their families." *Id.* ¶

[11] At the hearing, Defendants argued that *Lyons* did not suggest that predicate actions are a factor in determining injury-in-fact, and therefore, standing. Tr. at 38:21–23. But this Court does read *Lyons* to make this point. *See, e.g.*, *Lyons*, 461 U.S. at 108 ("We cannot agree that the odds that Lyons *would not only again be stopped for a traffic violation but would also be subjected to a chokehold without any provocation whatsoever* are sufficient to make out a federal case for equitable relief." (citation modified)). As did the Ninth Circuit. *Vasquez Perdomo*, 148 F.4th at 675.

11. As part of its work to "protect farmworkers and advance their rights," "UFW is a national leader in the movement for immigration reform and immigrants' rights." *Id.* ¶¶ 12–13.

And CHIRLA "is the largest statewide immigrant rights organization in California." Salas Decl. ¶ 3. Its mission is to "advance the human and civil rights of immigrants and refugees and ensure immigrant communities are fully integrated into our society with full rights and access to resources." *Id.* ¶ 2. It is often "a first point of contact for individuals seeking direct assistance as well as accurate information about recent policy changes impacting immigrants." *Id.* ¶ 10.

In sum, Warrantless Arrest Plaintiffs' missions turn in part on advocating for the civil rights of immigrants; a clear nexus exists between those missions and a lawsuit seeking to protect immigration detainees' rights from allegedly unlawful immigration enforcement. The second *Hunt* prong, therefore, is met.

3. <u>The participation of Plaintiffs' individual members is not required.</u>

"[E]ven where the members of an association have suffered the sort of injury that might otherwise support a suit by the association, 'whether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought.'" *Brock*, 477 U.S. at 287 (quoting *Warth*, 422 U.S. at 515). In *Warth*, this meant that an organization of construction firms could not recover damages for its members' lost profits: "[W]hatever injury might have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof." 422 U.S. at 515–16. As "the damages claims [were] not common to the entire membership, nor shared by all in equal degree," the organization could not recover damages. *Id.* at 515.

Here, contra *Warth*, "the association seeks a declaration, injunction, or some other form of prospective relief." *Id.* Warrantless Arrest Plaintiffs seek declaratory and injunctive relief, not monetary damages. 2AC at 82–83. So "it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Warth*, 422 U.S. at 515.

* * *

For the foregoing reasons, CHIRLA and LAWCN have shown they have standing.

**C. 8 U.S.C. § 1252 does not bar classwide relief.**

Next, at issue is whether the INA strips this Court of jurisdiction over Plaintiffs' claims. It does not.

Aside from the Supreme Court, no court has "jurisdiction or authority to enjoin or restrain the operation of provisions of [sections 1221 through 1232] other than with respect to the application of such provisions to an individual [noncitizen[12]] . . . ." 8 U.S.C. § 1252(f)(1). Defendants contend that Plaintiffs' sought relief implicates the Government's authority to detain immigrants (as discussed in sections 1225, 1226, and 1231) and to initiate removal proceedings (as discussed in section 1229). *See* Opp. at 8. They say that, because warrantless arrests are "a paradigmatic means of enforcing or implementing the government's authority to detain and initiate removal proceedings under those covered provisions," a classwide injunction on warrantless arrests would unduly restrain the Government's exercise of power through those enumerated provisions. *Id.* at 8–9.

But neither Section 1252(f)(1) nor binding case law support this position. Defendants rely upon *Garland v. Aleman Gonzalez*, which explains that "§ 1252(f)(1) generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." 596 U.S. 543, 550 (2022). The specified statutory provisions are Sections 1221 through 1232, namely Part IV of the same subchapter as Section 1252. The plaintiffs in *Aleman Gonzalez* sought a classwide injunction concerning the operation of Section 1231(a)—which governs the detention and removal of certain noncitizens—asserting that it required bond hearings for these detained noncitizens. 596 U.S. at 546–48. They argued that the Section 1252(f) bar did not apply because they merely sought the proper interpretation of Section 1231. *Id*. at 552–53. The Supreme Court held that the Section 1252(f) bar applied to any request for injunctive relief concerning the operation of Section 1231,

[12] Where it does not change the meaning, this Court uses the term "noncitizen" in place of alien. *See Avilez v. Garland*, 69 F.4th 525, 527 n.1 (9th Cir. 2023) ("[U]se of the term noncitizen has become a common practice of the Supreme Court . . . . [In addition,] [t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed,' *Alien*, *Webster's Third New International Dictionary* 53 (2002), while the word noncitizen, which is synonymous, *see Alien* and *Noncitizen*, *American Heritage Dictionary of English Language* 44, 1198 (5th ed. 2011), avoids such connotations. Thus, noncitizen seems the better choice.").

even if the plaintiffs' theory was that the Government's interpretation of Section 1231 was incorrect. *Id.* at 551. In the Court's words:

> The district courts' orders 'enjoin or restrain the operation' of § 1231(a)(6) because they require officials to take actions that (in the Government's view) are not required by § 1231(a)(6) and to refrain from actions that (again in the Government's view) are allowed by § 1231(a)(6). Those injunctions thus interfere with the Government's efforts to operate § 1231(a)(6), and the injunctions do not fall within the exception for individualized relief because the injunctions were entered on behalf of entire classes of aliens."

*Id.*

The facts of this case are distinct. Unlike in *Aleman Gonzalez*, the proposed injunctive relief concerns the operation of Section 1357, which is not an enumerated provision under Section 1252(f); Section 1357 is contained in an entirely separate part of the subchapter, Part IX. And enjoining the Government from carrying out warrantless arrests absent an escape risk determination would not require the Government to "refrain from taking actions to enforce, implement, or otherwise carry out" its *detention* or *removal* power—the powers at issue in *Aleman Gonzalez* and the enumerated provisions of Section 1252(f). *Id.* at 550. So *Aleman Gonzalez* does not require denial of the sought injunction.

Defendants also rely upon the D.C. Circuit's decision in *N.S. v. Dixon*, 141 F.4th 279 (D.C. Cir. 2025). Opp. at 9. But *N.S.* is both nonbinding and inapposite. There, the Circuit overturned an injunction that "prevent[ed] the Marshals from arresting and detaining any criminal defendant in the D.C. Superior Court for a suspected civil immigration violation, including arrests made pursuant either to an ICE detainer and I-200 form or pursuant to an ICE detainer alone." *N.S.*, 141 F.4th at 289. In particular, the court found that the injunction applied to "arrests made with a warrant issued pursuant to § 1226(a) and the detention of any [noncitizen] charged with any of the crimes listed in § 1226(c)" *in addition to* arrests made without a warrant pursuant to Section 1357. *Id.* at 290. Because the injunction applied to arrests and detentions pursuant to Section 1226—a provision covered by Section 1252(f)—it was barred. As Warrantless Arrest Plaintiffs seek relief only for violations of Section 1357, *N.S.* is distinguishable.

This Court is satisfied, therefore, that Section 1252(f) does not bar Warrantless Arrest Plaintiffs' request for class certification.

### D. Per Rule 23(a)(1), Warrantless Arrest Plaintiffs have shown numerosity.[13]

Turning to Rule 23's requirements, this Court first considers whether Plaintiffs have shown, by a preponderance of the evidence, that their proposed class is so numerous that class treatment is appropriate. Classes with at least forty members routinely meet this requirement. *Davis*, 277 F.R.D. at 435 (collecting cases). Some courts relax this requirement when the relief requested is declaratory or injunctive. *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275–76 (10th Cir. 1977); *see also Sueoka v. United States*, 101 F. App'x 649, 653 (9th Cir. 2004) (unpublished) ("Because plaintiffs seek injunctive and declaratory relief, the numerosity requirement is relaxed . . . ."). And courts may rely on commonsense assumptions to support findings of numerosity. *See Freedman v. La.-Pac. Corp.*, 922 F. Supp. 377, 398 (D. Or. 1996); 7A *Wright & Miller's Federal Practice & Procedure* § 1762 (4th ed. 2022).

Warrantless Arrest Plaintiffs meet this requirement.[14] As they describe through sworn declarations, their document analysis thus far has linked 871 Government-produced documents—either Form I-213s, EARMs, or arrest narratives—to 113 distinct arrestees. Stone Decl. ¶¶ 6–8, 21, Dkt. No. 529-1. Of those arrestees, their analysis concludes that 41 arrestees' documents reflected no escape risk language. *Id.* ¶ 20. It is a reasonable assumption that, in at least some cases where a warrantless arrest took place and no escape risk calculation was documented, no escape risk calculation was completed. So, too, where all that is documented is an escape risk assessment based solely on unlawful status. The Court finds that this is enough to meet the 40-member threshold.

---

[13] Defendants' Opposition addresses the four Rule 23(a) requirements both as relating to the organizational and the individual Plaintiffs. These arguments appear, in part, to address hypotheticals not properly before this Court (e.g., whether individual Plaintiffs could be adequate class representatives). This Court's Order focuses its inquiry on Plaintiffs' request as expressed in the Motion, which does not involve appointing the named individual Plaintiffs to represent the class.

[14] This Court, however, is not persuaded that Warrantless Arrest Plaintiffs' membership—which exceeds 61,000—evinces numerosity. *See* Mot. at 6 n.3. Plaintiffs offer no record evidence, beyond the narratives discussed above, that a substantial portion of those members have been subject to immigration enforcement activity at all, let alone Defendants' Escape Risk Policy.

And, of course, there is no reason to believe that all potential class members would be reflected in this dataset; Plaintiffs explain that ICE's arrest data shows 1,843 arrests over a nine-month period between 2025 and 2026 were classified as "collateral," meaning that the arrestee was not the person targeted in a given operation. Mot. at 7. It is reasonable to assume that, where agents detain someone they did not initially intend to detain, no warrant existed in at least some cases—and, particularly where the arrestees' identities were not known to agents prior to an operation, that no pre-encounter escape risk determination could have been completed. The evidence showing several instances where no escape-risk related questions were asked in the encounter itself is powerful evidence that some number of these collateral arrests contained no escape risk determination. Even if the Court simply does a rough extrapolation from the evidence above, this would suggest that at least another five hundred persons could be members of the class.[15]

Put another way, Warrantless Arrest Plaintiffs have evidence of dozens of arrestees for whom *no* escape risk determination was documented, at least two more for whom escape risk determination based solely on unlawful status was documented, and potentially hundreds more whose arrests' circumstances make it unlikely an escape risk determination took place. *See generally*, PI Order Findings of Fact. Based on the foregoing, Warrantless Arrest Plaintiffs meet the requisite numerosity threshold. It is true that the exact number and identity of class members is not known at this time. But Rule 23 does not require that it be known now. *See* Fed. R. Civ. P. 23. Given the nature and volume of Warrantless Arrest Plaintiffs' documentation in support of the assumptions underlying their numerosity argument, this Court is satisfied that joinder of all plaintiffs would be impracticable.

Defendants' Opposition argues that Warrantless Arrest Plaintiffs have not provided evidence corroborating the number of their members who would be subject to the class, and that Warrantless Arrest Plaintiffs' proposed inferences regarding class size is overly speculative. Opp. at 17–18. But this argument does not meaningfully explain why Plaintiffs' inferences are not reasonable, or why—facing dozens of instances where escape risk assessments were not documented—this Court cannot

---

[15] Relying solely on the evidence showing no documentation of escape risk, 41 of the 113 arrestees in the dataset fall into this category—a rate of 36.3%. If a 30% rate is applied to the 1,843 arrests over the referenced nine-month period, this would suggest that no escape risk was documented for 552 of these arrestees.

assume that at least some of those instances reflect a failure to conduct such an assessment. *See* Reply at 12. Defendants also argue that Warrantless Arrest Plaintiffs "do not try to show that the number of *organizations* satisfies numerosity, further underscoring the improper nature of this class motion." Opp. at 17–18. This Court has already explained why an association may serve as class representative under Rule 23. And Defendants offer no authority (binding or otherwise) as to why forty or more *organizations* would need to belong to the class in order to certify it.[16] So neither argument defeats Warrantless Arrest Plaintiffs' numerosity showing.

**E. Per Rule 23(a)(2), Warrantless Arrest Plaintiffs have shown commonality.**

Under Rule 23(a)(2), Warrantless Arrest Plaintiffs next need to show commonality. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 349–50. To establish commonality, "even a single common question will do." *Id.* at 359 (citation modified).

Warrantless Arrest Plaintiffs meet this requirement. As their Motion identifies, common questions raised by this action include the following: Do Defendants have a policy and practice of conducting warrantless arrests for alleged immigration violations without an individualized determination of probable cause that the individual is likely to escape before a warrant for their arrest can be obtained? And, if so, would such a practice violate the INA (8 U.S.C. § 1357(a)(2)), the associated DHS regulation (8 C.F.R. § 287.8(c)(2)(i)–(ii)), or the APA? *See* Mot. at 10–11. Because resolution of the class members' claims could rise or fall with a uniform answer to these questions (and more), Warrantless Arrest Plaintiffs have shown commonality. *See Dukes*, 564 U.S. at 350.

It is true, as Defendants assert, that the Supreme Court's decision in *Dukes* requires Plaintiffs to show that "the class members have suffered the same injury." *Id.* "This does not mean merely that they have all suffered a violation of the same provision of law." *Id.* Many laws can be violated in many ways, so the mere fact that putative class members could bring the same claim "gives no cause to believe that all their claims can productively be litigated at once." *Id.* "Their claims must depend

[16] Nor is this argument responsive to the Motion's proposed class definition, which emphasizes the putative class consists of "persons." Mot. at 1.

upon a common contention . . . [that] must be of such a nature that it is capable of classwide resolution . . . .” *Id.* This means that “determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.” *Id.*

But, by challenging an Escape Risk Policy that asserts an across-the-board practice of failing to conduct an individualized escape risk analysis, Warrantless Arrest Plaintiffs raise questions that can be answered as one. Whether Government agents were trained to consider escape risk, whether the Government in fact had a policy of disregarding escape risk analyses, what enumerated factors count as part of a valid escape risk analysis, whether the factors considered for those analyses were legally sufficient, and to what extent Government agents were required to document their escape risk analyses—these are all common questions with common answers. That the class might have other dissimilarities, such as city of residence or immigration status—is of no moment: Questions as to the existence or legality of the Government’s Escape Risk Policy could be answered in the collective. After all, the relevant statute and regulation do not distinguish between the process that is due to someone with legal status and that which is due to someone with none.

In Opposition, Defendants do not explain why these questions do not suffice, arguably conceding that they do. Instead, they make four arguments.

First, they repeat their argument as to whether an organization with associational standing may serve as a class representative—an argument this Court has already addressed. *See supra* Section III.C.

Second, they cite *Alderman v. United States*, 394 U.S. 165, 174 (1969), for the proposition that organizations “may not vicariously assert other persons’ Fourth Amendment rights.” Opp. at 10. Defendants have raised this argument before at the motion to dismiss stage. As this Court explained then, *Alderman* stands for the rule that a criminal defendant may not raise a Fourth Amendment challenge to the unlawful search of a third party’s property. Not only does *Alderman* not control the question of whether an organization may assert the Fourth Amendment rights of its members, the

Court reads *Stavrianoudakis v. U.S. Fish & Wildlife Service* as holding that an organization may. 108 F.4th 1128, 1135, 1143 (9th Cir. 2024). Defendants do not contend with *Stavrianoudakis*, although the Court has relied upon it in prior orders. Second MTD Order at 33. Defendants offer no further explanation of their theory that *Alderman* bars Warrantless Arrest Plaintiffs' claims, they do not explain why this Court should reconsider its earlier legal determination, and their opposition does not distinguish or discuss *Stavrianoudakis*. Without more, Defendants cannot prevail.

Third, Defendants cite *Black Lives Matter L.A. v. City of Los Angeles*, 113 F.4th 1249, 1254 (9th Cir. 2024), for the proposition that "the requisite fact-intensive Fourth Amendment analysis to identify potential class members defeats commonality." Opp. at 11–12. But, as the Reply notes, class certification in *Black Lives Matter* failed because "the district court did not rigorously analyze the Rule 23(a) commonality requirement, nor did it address whether common questions predominate over individual ones under Rule 23(b)(3)." 113 F.4th at 1258. The *Black Lives Matter* Court did not hold, as Defendants suggest, that a Fourth Amendment–related analysis can never lend itself to class certification. Defendants also cite the Ninth Circuit's discussion of why one of the *Black Lives Matter* classes failed to show commonality. But showing this quote in its broader context renders it distinguishable. In the court's words:

> [H]ere lies the problem: Even if Rodas proves every element of her claim, it will do nothing for the other class members. Shannon Lee Moore, for example, was hit at a different protest on a different day. To resolve her claim, Moore must present her own individual evidence that the LAPD used objectively unreasonable force, that she was injured as a result, and that the injury occurred because of an LAPD policy. So too for Aranovich, Grenier, and every other member of the class.
>
> The district court dismissed these problems because it agreed with the plaintiffs that, individual issues aside, there is a class-wide question about whether the force used on the protestors was unreasonable. But that is not a question amenable to class treatment because the answer in this case depends on what force was used, what a particular class member was doing, what other protestors may have been doing, what the officers objectively observed, and a host of other factors. Put another way, it is not enough to merely raise common questions or issues to satisfy Rule 23. Rather, plaintiffs must "be prepared to prove" that there are critical questions or issues that can be resolved on a class-wide basis.

*Id.* at 1259–60 (citations omitted). Defendants suggest that this case is similarly controlled by individual questions, not common ones. *Cf.* Opp. at 15 ("[I]ndividual Plaintiffs differ significantly in immigration status, circumstances underlying arrest, and alleged injuries . . . . [T]he proffered class definition fails to address the many factors involved in assessing whether an individual is likely to escape arrest."). But these cases are not analogous: Not only did Black Lives Matter concern a different type of class action with a different, predominance standard—Rule 23(b)(3)—Warrantless Arrest Plaintiffs' class certification motion targets the question of whether the Government, as a matter of policy and practice, conducted individualized prearrest escape risk determinations. Individual class members' cases could rise and fall on identical factual questions—such as the extent of agents' training, the documentation supporting the existence of escape risk determinations, or pre-operation instructions given to agents.

And they could rise and fall on identical legal questions—such as whether a determination of unlawful status suffices to meet the statutory requirement for an escape risk determination, what factors are properly considered, and what duty the Government must document its analysis. Unlike in *Black Lives Matter*, where each plaintiff's case turned on the level of specific force used on that plaintiff and on that day, Warrantless Arrest Plaintiffs have shown that common questions unite their proposed class. Put another way, Defendants are pointing to individual questions that are not applicable to this case. Plaintiffs are not challenging the sufficiency of individual escape risk assessments where those assessments were actually conducted—which would require this Court to consider the specific factors considered by each officer in each case. Plaintiffs are challenging Defendants' purported policy of not conducting an escape risk assessment at all (either by not making any escape risk determination or only considering unlawful status). Should any one plaintiff

prove that the Government *does* have such a policy, this would do a great deal for all the class members. The core questions in this case are amenable to classwide determination.[17]

Fourth, Defendants note that Plaintiffs fail the commonality requirement because Plaintiff organizations must satisfy additional legal hurdles that are not relevant to the class members' standing, such as germaneness. Opp. at 10. But, as this Court has already described above, organizational plaintiffs have served as class representatives in prior cases. *See supra* Section III.A. To accept Defendants' proposed rule would be akin to stating that organizational plaintiffs cannot, as a matter of law, serve in such a role. This Court has already explained why it is not persuaded by this argument. And, in any event, appointing organizational plaintiffs as class representatives is consistent with *Dukes*' requirement that class members suffer the same injury; in the Supreme Court's words, "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members." *Warth*, 422 U.S. at 511. It follows that an association with associational standing represents the injury suffered by the association's members. In this sense, Warrantless Arrest Plaintiffs face the same kind of harm that the putative class has suffered.

For these reasons, Warrantless Arrest Plaintiffs have shown commonality.

**F. Per Rule 23(a)(3), LAWCN and CHIRLA have shown typicality.**

A Rule 23(a)(3) typicality inquiry turns on "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508 (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it

[17] Some of Plaintiffs' raised contentions do appear to weigh in favor of individual, not common, answers. Plaintiffs appear to challenge (1) the legality of the Government's use of "boilerplate" language and (2) the Government's use of false statements to justify escape risk determinations. Arguably, both contentions challenge the sufficiency of *individual* escape risk assessments, and therefore weigh against commonality. But the Court need not reach the issue of whether those questions could support commonality because of the common questions it has found.

arose or the relief sought." *Id.* (quoting *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986)).

As this Court discussed as part of its standing analysis, LAWCN and CHIRLA have offered uncontroverted evidence that some of their members have been subject to a warrantless arrest without an individualized escape risk assessment.[18] *See* PI Order § III.D–E.3. And, as the Motion puts it, Warrantless Arrest Plaintiffs "challenge the same system-wide course of conduct and seek the same form of relief . . . to stop the same future harm of unlawful arrests." Mot. at 13. Because the membership of LAWCN and CHIRLA comprises claims that are "reasonably coextensive with those of absent class members," they have shown typicality. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (quoting *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014)).

In Opposition, Defendants restate their argument that associations cannot serve as class representatives; this Court will not repeat its earlier analysis as to why it will not deny the motion on this basis. Defendants further contend that "organizational Plaintiffs clearly fail this [typicality] test, as they have different alleged injuries and interests because they represent their members and thus possess atypical interests beyond any individual member." Opp. at 14. But this argument cuts as easily in favor of typicality: Defendants do not contest that Plaintiffs represent their members or that those members have reasonably coextensive claims with the rest of the class as defined. Defendants offer no reason to think that the organizational nature of these Plaintiffs suffices to defeat typicality. Defendants also explain that Warrantless Arrest Plaintiffs' claims cannot be typical because they contain some members who do have lawful immigration status. Opp. at 15. But one need not lack lawful status to be detained in violation of the relevant statute and regulation. And Defendants do not offer any authority in support of the idea that, just because an organization also represents noninjured nonmembers of a putative class, the organization should be barred from serving as class representative. Lastly, Defendants argue that "even individual Plaintiffs' claims—two of whom tried

---

[18] As discussed above with respect to standing, UFW does not assert that any of its members have been subject to the Escape Risk Policy. Warrantless Arrest Plaintiffs assert with respect to the PI that UFW still has standing because "many of [its] members face a substantial fear of arrest." Tr. at 9:45. But the Court did not need to reach the question of UFW's standing in the PI Order (and will not reach it here). The Court finds that UFW may not serve as a class representative because the claims of its members are not typical of the class. The class consists of persons who have been or will be arrested, not people who neither have been nor will be arrested, but have a "substantial fear" that they might.

to flee arrest which supports the fact they were likely to be an escape risk—are not typical of the class they intend to represent." Opp. at 15–16. Even assuming without deciding that that legal proposition was sound, however, this argument misses the mark: None of the five named individual Plaintiffs in this action is a putative class representative. So whether their legal claims are typical of the class has no bearing on the disposition of this motion.

Accordingly, LAWCN and CHIRLA have shown typicality.

**G. Per Rule 23(a)(4), LAWCN and CHIRLA and their counsel have shown adequacy.**

"To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis*, 657 F.3d at 985 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (1998)).

1. <u>Adequacy of LAWCN and CHIRLA</u>

Warrantless Arrest Plaintiffs contend that they have shown adequacy because "their interests align with, and are not adverse to, the interests of the class," and because they "are motivated to pursue this action on behalf of their members who have been, will be, and/or reasonably fear being detained after a warrantless arrest without ever having been determined to be an escape risk." Mot. at 14. The declarations from senior members of Warrantless Arrest Plaintiffs evince the named representatives' commitment to prosecuting this case vigorously. *See, e.g.*, Salas Decl. ¶¶ 37–38. As counsel represents:

> My colleagues and I . . . understand the organization's responsibilities and role as a representative for the class. We understand the need to stay informed with what is happening in the case and that we need to think about the interests of other class members (both those that are CHIRLA members and those who are not) and act on those interests. We are prepared to represent the class adequately and will take seriously the organization's responsibilities in connection with that representation.

*Id.* Moreover, as the Motion notes, Warrantless Arrest Plaintiffs seek classwide declaratory and injunctive relief, meaning that the named class representatives are aligned with the class they seek to represent. Mot. at 14. This is with the exception of UFW as discussed above. *See* note 18 *supra*.

Defendants oppose.[19] "The three named organizational Plaintiffs cannot fairly and adequately protect class interests . . . : they themselves cannot suffer the same alleged injury. Just as dispositive is the fact that their members may never even be subjected to the challenged conduct, or organizational members may wish to pursue other priorities. . . . Nor would individual Plaintiffs, at least some of whom have lawful immigration status or unique circumstances . . . , be adequate representatives as many of them stand apart from the warrantless-arrest class they seek to represent . . . ." Opp. at 17. But these arguments miss the mark. First, as this Court has explained, associational standing flows from the injury of Warrantless Arrest Plaintiffs' members; whether the organizations *themselves* suffered a separate injury, let alone a typical one relative to the class, does not bear on this analysis. Second, Defendants offer no reason why this Court should assume that Warrantless Arrest Plaintiffs' priorities would change such that they stopped wishing to prosecute this case. To assume as much, with no evidence in support, would be pure speculation. *See* Reply at 17. Third, that Warrantless Arrest Plaintiffs may have members who will never be arrested without a warrant is not relevant. To hold otherwise would imply that an organization cannot claim associational standing unless it confirms that *every one* of its members has suffered an injury in fact. That is not the standard. *See Mi Familia Vota v. Fontes*, 129 F.4th 691, 708 (9th Cir. 2025), *cert. granted sub nom. Republican Nat'l Comm. v. Mi Familia Vota*, No. 25-1017, 2026 WL 1855101 (U.S. June 29, 2026). And fourth, whether the five individual Plaintiffs would be adequate representatives is not relevant: None of the five seeks to be named a class representative. *See* Mot. at 1; Reply at 16.

/ / /

[19] They also argue that "inadequate representatives may ultimately bind the prospective class *in a case where the Supreme Court has already once rejected the viability of their claim*." Opp. at 17 (emphasis added). As this Court has reminded Defendants, and as Defendants have conceded at a hearing, the Supreme Court has issued no controlling opinion in this matter. The Supreme Court has not opined on, let alone rejected, the viability of Warrantless Arrest Plaintiffs' relevant claims.

2. Adequacy of counsel

The Opposition does not contest—and so arguably concedes—that counsel has no conflicts of interest and will vigorously prosecute the action. *See Gundam Touring Servs. US LLC v. Benzova*, No. 23-8968, 2025 WL 3145880, at *11 (C.D. Cal. Sep. 22, 2025) (collecting cases). And, in any event, this Court finds no reason to doubt counsel's representations of their substantial collective experience, resources, and commitment to prosecuting the action on behalf of the class. *See* Dkt. No. 531-2 ("Lai Decl."); Dkt. No. 531-4 ("Kreilkamp Decl."); Dkt. No. 531-5 ("Karp Bansal Decl."); Dkt. No. 531-6 ("Tajsar Decl."); Dkt. No. 531-7 ("Brown Decl."); Dkt. No. 531-8 ("Tolchin Decl.").

In sum, this Court is satisfied that both counsel and LAWCN and CHIRLA will adequately represent the interests of the proposed class. They, therefore, have shown adequacy.

**H. Defendants' arguments regarding the class definition fail.**

Defendants' arguments that certain defects in the class definition defeat standing do not persuade this Court that the class should not be certified.

First, Defendants argue that the class definition sweeps in uninjured plaintiffs who do not have standing. Opp. at 5. But, even if true, denial of class certification does not follow. "Every class member must have Article III standing in order to recover individual damages." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *Id.* (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C.J., concurring)). But the Supreme Court has not addressed "whether every class member must demonstrate standing *before* a court certifies a class." *Id.* at 431 n.4. To that end, following *TransUnion*, the Ninth Circuit has confirmed that a class that "potentially includes more than a de minimis number of uninjured class members" can still be certified. *Olean*, 31 F.4th at 669. The Ninth Circuit has most recently addressed this question in *Healy v. Milliman, Inc.*, where it concluded that *TransUnion* "compels unnamed class members to demonstrate evidence of standing . . . *after class certification* but prior to trial at summary judgment." 164 F.4th 701, 708 (9th Cir. 2026) (emphasis added). As the Ninth Circuit stated: "Drawing from our typical summary

judgment standard, though unnamed class members 'need not establish that they in fact have standing,' they would at least have to demonstrate 'that there is a genuine question of material fact as to the standing elements.'" *Id.* (quoting *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 947 (9th Cir. 2002)). Defendants say that "Plaintiffs' proposed class is neither definite nor ascertainable but rather encompasses individuals with no cognizable injury or realistic prospect of standing." Opp. at 5. They note, citing *TransUnion*, that this purported lack of standing creates overbreadth in the proposed class definition and is fatal to Plaintiffs' motion. Opp. at 1, 5. But *TransUnion*'s procedural posture renders it distinguishable. There, the Court heard the case following the district court's denial of post-trial motions. 594 U.S at 421–22. Nor is *TransUnion* irreconcilable with the Ninth Circuit's guidance in *Olean* and *Healy*, both of which offer binding instructions more applicable to this matter's current posture (that is, prior to summary judgment or trial). To that end, the question of class standing is most appropriately addressed via a motion for summary judgment, where Warrantless Arrest Plaintiffs would need to identify, regarding the class as defined, a genuine question of material fact as to the standing elements. *See Healy*, 164 F.4th at 708.

Second, Defendants argue that the class is not ascertainable, which defeats standing. Opp. at 5. But the weight of Defendants' cited authority supporting an ascertainability argument is from nonbinding authority. Opp. at 5. The sole Ninth Circuit case they cite does not support the existence of an ascertainability requirement: There, the appellant argued that "the district court erred in imposing an ascertainability requirement for class certification." *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 929 (9th Cir. 2018). And, there, the argument failed: The Ninth Circuit did not find that the district court had "ascribed to the view that a class must be ascertainable, much less that the court applied such a requirement." *Id.* Indeed, the *True Health* Court confirmed that "there is no free-standing [ascertainability or administrative-feasibility] requirement above and beyond the requirements specifically articulated in Rule 23." *Id.* Rule 23 articulates neither. Fed. R. Civ. P. 23. And, in *Briseno v. ConAgra Foods, Inc.*, the Ninth Circuit again explained that Rule 23 does not require class plaintiffs to "demonstrate that there is an 'administratively feasible' means of identifying absent class members." 844 F.3d 1121, 1123 (9th Cir. 2017); *see also In re Google Inc.*

*St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1116 (9th Cir. 2021) ("Rule 23 never mentions administrative feasibility and . . . a standalone feasibility requirement for class certification could render other Rule 23 provisions, such as the likely difficulties in managing a class action, superfluous." (citation modified)). And, to the extent the Government contends that ascertainability must be considered at some stage other than at the threshold of class certification, *Briseno* explained further that the Ninth Circuit has "addressed the types of alleged definitional deficiencies other courts have referred to as 'ascertainability' issues . . . through analysis of Rule 23's enumerated requirements." 844 F.3d at 1124 n.4.

Indeed, consistent with this approach, the Government's discussion of ascertainability speaks in terms of the Rule 23 requirements. *See, e.g.*, Opp. at 15 (arguing that an "amorphous, undefined class" precludes Rule 23(a)(3) showing of typicality); Opp. at 6 ("Having an inadequately defined or overbroad class also implicates other Rule 23 requirements, including as relevant here, typicality, commonality, and compliance with Rule 23(b)(2)."). To that end, this Court discusses Defendants' arguments as relevant to each Rule 23(a) and (b) prong above, but does not conduct an independent ascertainability analysis.[20]

Third, and relatedly, Defendants argue that the class fails because "it does not use objective criteria to establish membership with definite boundaries that comport with the strictures of Rule 23." Opp. at 7. This is so, they contend, because "warrantless immigration arrests are not inherently unlawful, nor uncommon in this District." Opp. at 7. And they contest Plaintiffs' evidentiary

---

[20] At the hearing, Defendants argued that three questions should guide this Court's determination of the Motion: (1) Who is responsible for generating the class list? (2) What factors should they use to determine who belongs on the class list? (3) Is it necessary to certify a class when the PI Order already grants Plaintiffs their sought relief to address a policy violation? Tr. at 66:9–77:14.

Regarding the first and second questions, as counsel for Plaintiffs represented, it is not clear that a class list needs to be generated at all—Plaintiffs seek generally applicable declaratory and injunctive relief challenging the Government's policy, so it is not necessary to discern who belongs in the class to grant them relief. Tr. at 76:23–77:5; *see also* Fed. R. Civ. P. 23(b)(2) (providing that a class can be certified where "final injunctive relief or corresponding declaratory relief is appropriate *regarding the class as a whole*" (emphasis added)). So determining membership in the class is, at the least, not a question this Court faces on class certification, particularly because no ascertainability requirement exists.

Regarding the third question, as this Court explained at the hearing, whether class certification is necessary or beneficial to Plaintiffs' seeking of relief is not a question before this Court pursuant to Rule 23. To that end, it is not a basis to deny the motion. *See* Tr. at 72:2–9. Defendants conceded that Plaintiffs' need for a class is not part of the Rule 23 analysis this Court performs in adjudicating this motion. *See* Tr. at 72:10–15.

showing, noting that the mere fact that an arrest is accompanied by no (or by boilerplate) likelihood of escape analysis "does not mean the officer did not perform the proper likelihood-of-escape analysis . . . ." Opp. at 7. Plaintiffs, for their part, do not contest that warrantless arrests are not inherently unlawful or uncommon. *See* Reply at 10. And, to the extent that Defendants challenge Plaintiffs' evidentiary showing (discussed more in this Court's PI Order), this question goes to the merits: Defendants do not explain why their evidentiary dispute should lead this Court to deny class certification.[21] *See Amgen*, 568 U.S. at 466 ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.").

Fourth, Defendants say that "the proposed class would necessarily encompass individuals who are not yet (and may never be) arrested within this District." Opp. at 7. It is difficult to see how this could be. The class definition, by its terms, cannot include anyone who has not yet been arrested or who will not be arrested. *See* Motion at 1 (requesting class definition of those "who have been arrested or will be arrested in this District"). Someone who is never arrested in this District during the pendency of this litigation definitionally cannot be part of the class.[22]

### I. Warrantless Arrest Plaintiffs have shown Rule 23(b)(2) applies.

Warrantless Arrest Plaintiffs ask this Court to certify the class under Rule 23(b)(2). This requires a showing that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

---

[21] On Reply, Plaintiffs argue that—to the extent that this argument intends to attach the proposed class as fail-safe—that argument should be rejected. Reply at 10. As a threshold matter, this Court does not read the Opposition to say that the proposed class is impermissibly fail-safe; the portions Plaintiffs reference merely seem to challenge the class's overbreadth, amorphousness, and ascertainability. *See* Opp. at 5–8. At the hearing, Defendants confirmed that they did not intend to attack the class as fail-safe. Tr. at 71:3–8.

Even if Defendants intended to challenge the class as impermissibly fail-safe, however, this Court would not agree. "A fail-safe class is 'one that is defined so narrowly as to "preclude[ ] membership unless the liability of the defendant is established."'" *Brown v. DirecTV, LLC*, 330 F.R.D. 260, 268 (C.D. Cal. 2019) (quoting *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 n.7 (9th Cir. 2016)). And certification of this class does not require this Court to establish the liability of Defendants at this stage.

[22] At the hearing, Plaintiffs confirmed that this is their understanding of the proposed class. Tr. 58:4-59:1.

Rule 23(b)(2) applies. As discussed above and in the PI Order's Findings of Fact, Plaintiffs have provided material evidence in support of their argument that the Government has a policy of conducting warrantless arrests without an individualized determination of the arrestee's escape risk. They have shown that the Government does not appear to have any memorialized escape risk determinations for dozens of detainees, and for at least a couple more, the only determination of escape risk is a determination that the individual has unlawful status. Moreover, they have provided substantial witness evidence, including through sworn declarations, attesting to arrests that appeared to likely lack a escape risk determination—such as arrests of those who did not attempt to flee without asking questions to ascertain an individual's risk of flight. The Government, of course, may dispute that it has such a policy, that any policy it maintains is unlawful, or contend that Plaintiffs' evidence falls short. But Warrantless Arrest Plaintiffs have carried their burden to show, by a preponderance of the evidence, that the Government's actions and omissions apply generally to the class.

In Opposition, Defendants cite only nonbinding authority in support of a "structural requirement of indivisible relief." Opp. at 18. This Court does not read such a requirement into the plain text of Rule 23(b)(2), and absent any binding authority presented to the contrary, it does not appear this Court faces such a requirement. Defendants further argue that there is no cohesion of interests within the putative class, noting it includes individuals across various counties and with varying immigration statuses. Opp. at 18. But Defendants do not explain why this variation within the proposed class is meaningful. Nor is it immediately clear from Defendants' arguments; after all, it is of no moment if two arrestees have different immigration statuses or were arrested in different cities, assuming Plaintiffs succeed in showing the Government's Escape Risk Policy. The law makes no distinction as to who is entitled to a prearrest likelihood of escape analysis. So Defendants' argument reflects a distinction without a difference.

Defendants also note, in opposition to the application of Rule 23(b)(2), that Plaintiffs' proposed class "sweeps in every warrantless arrest conducted in this District since June 2025, *with no sensible narrowing criteria*." Opp. at 19 (emphasis added). This argument is not persuasive in the face of the proposed class definition, which limits itself to people "arrested or [who] will be arrested

in this District for alleged immigration violations without a warrant *and without a pre-arrest, individualized assessment of probable cause that the person poses a likelihood of escape*." Mot. at 1 (emphasis added). It is plainly false that the definition would encompass every warrantless arrest conducted in this District since June 2025—unless none of the warrantless arrests conducted since June 2025 contained a requisite prearrest likelihood of escape analysis. This Court does not understand the Government to be making such a concession, and in any event, the definition has clear limits such that not every warrantless arrest is automatically within the class's ambit.

The remainder of Defendants' opposition arguments—relying on *Alderman* as a bar from vicarious assertion of Fourth Amendment rights, and contending again that associations may not be class representatives—have already been addressed, so this Court will not repeat its discussion.

Warrantless Arrest Plaintiffs, in sum, have shown that Rule 23(b)(2) applies.

## IV. Conclusion

The Motion is GRANTED IN PART. This Court ORDERS as follows:

1. The Warrantless Arrest Class is defined as follows: All persons, since June 6, 2025, who have been arrested or will be arrested in this District for alleged immigration violations without a warrant and without a pre-arrest, individualized assessment of probable cause that the person poses a likelihood of escape.
2. Plaintiffs Los Angeles Worker Center Network (LAWCN) and the Coalition for Humane Immigrant Rights (CHIRLA) are appointed representatives of the Warrantless Arrest Class.
3. The American Civil Liberties Union Foundation of Southern California, the American Civil Liberties Union Foundation of Northern California, the American Civil Liberties Union Foundation of San Diego and Imperial Counties, the UC Irvine School of Law Immigrant and Racial Justice Solidarity Clinic, Munger, Tolles & Olson, LLP, the

National Day Laborer Organizing Network, the Law Offices of Stacy Tolchin, and Public Counsel are appointed as class counsel for the Warrantless Arrest Class.

IT IS SO ORDERED.

Dated: September 2, 2026



MAAME EWUSI-MENSAH FRIMPONG

United States District Judge