UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-05605-MEMF-SPx | Date | September 21, 2026 |
| Title | Pedro Vasquez Perdomo, et al. v. Markwayne Mullin, et al. | | |

| | | |
|---|---|---|
| Present: The Honorable | Sheri Pym, United States Magistrate Judge | |
| Kimberly I. Carter | None | None |
| Deputy Clerk | Court Reporter/Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| None | None |

**Proceedings:** **(In Chambers) Order Denying Defendants' Request for a Protective Order Limiting the January 16, 2026 Order [607]**

## I. INTRODUCTION

On July 14, 2026, defendants filed objections to the portion of the court's January 16, 2026 order ("January 16 Order," docket no. 370) requiring them to '[f]orensically image any cell phone used by an agent present at any of the 15 operations," and requested the court to enter a protective order limiting this aspect of the January 16 Order. Docket No. 607 ("Obj."). Defendants specifically ask the court to limit this portion of the order to the extent it requires imaging of Immigration and Customs Enforcement ("ICE") and Customs and Border Protection ("CBP") agents' personal devices. Plaintiffs filed a response on July 21, 2026 ("Response"). Docket no. 613. Plaintiffs' Response is supported by the declarations of John Grimes ("Grimes Decl.") and Sara H. Worth ("Worth Decl.") and exhibits. *Id*. Defendants filed a Reply on July 28, 2026 ("Reply"). Docket no. 634.

The court held a hearing on August 11, 2026. After considering the parties' written and oral arguments and the evidence in the record, the court denies defendants' request for a protective order limiting the January 16 Order.

## II. BACKGROUND

On October 17, 2025, the court granted Plaintiffs' and Intervenors' Joint Motion for Limited, Expedited Discovery, ordering that they may serve their proposed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-05605-MEMF-SPx | Date | September 21, 2026 |
| Title | Pedro Vasquez Perdomo, et al. v. Markwayne Mullin, et al. | | |

Interrogatory Nos. 1-4 and Requests for Product ("RFPs") Nos. 1-4, which concern agent training and 15 specific immigration operations. Docket no. 223; *see* docket no. 211-1, Exs. 1-2. RFP No. 2 calls for documents relating to 15 identified immigration raid operations, and RFP No. 3 calls for communications by text or through any messaging platform sent and received by the agents who initiated detentive stops or encounters with plaintiffs or declarants in the 10 immigration operations described in Interrogatory No. 1, about those operations. *See* docket nos. 226 and 320-1, Ex. A.

On December 23, 2025, plaintiff CHIRLA filed a motion to compel defendants to fully respond to the RFPs.[1] Docket no. 320. Plaintiffs argued, in relevant part, that defendants improperly withheld documents responsive to RFP Nos. 2 and 3 by applying an unreasonable interpretation of "operation" – and then failed to disclose this construction in their objections – which resulted in an inadequate search and production. *See* docket no. 320. Specifically, defendants limited their production to documents "concerning only the interaction with the individual named as having been encountered in the operation, not the entire operation." *See id.* at 6. Evidence supporting plaintiffs' argument that defendants' production was deficient included defendants' failure to produce text messages that body camera footage established were sent. *See id*. at 4-5. Among the relief sought was a request for the court to order defendants to forensically image any cell phone used by any agent present at any of the 15 operations at issue in expedited discovery. *See id.* at 11.

On January 6, 2026, the court heard oral arguments on the motion to compel. Docket no. 345. The court stated that it wished to hear from defendants about whether they had any specific concerns about the relief plaintiffs requested, including the forensic imaging of cell phones used by the agents. *Id*. at 5:22-6:9. Other than general assertions that it was "very late to be lodging" their requests for relief and they were an undue burden, defendants did not provide any substantive argument against the specific relief plaintiffs requested. *Id*. at 15:24-16:6.

[1] This was the third motion to compel filed by plaintiffs. *See* docket nos. 266, 306.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-05605-MEMF-SPx | Date | September 21, 2026 |
| Title | Pedro Vasquez Perdomo, et al. v. Markwayne Mullin, et al. | | |

On January 16, 2026, the court granted plaintiffs' motion to compel and ordered defendants to, inter alia, "[f]orensically image any cell phone used by an agent present at any of the 15 operations and review these devices for material responsive to RFP Nos. 2 and No. 3" by January 30, 2026. Docket no. 370 at 9.

On January 20, 2026, defendants filed an ex parte application to stay the January 16 Order, asserting, among other things, that it was unclear whether the January 16 Order includes personal devices. Docket no. 379. On January 22, 2026, the court denied the January 20 ex parte application in large part but granted defendants an extension of the production deadline to February 13, 2026. Docket no. 387.

On January 30, 2026, defendants filed objections to the January 16 Order, arguing, inter alia, the forensic imaging requirement is burdensome and not routine, does not differentiate between government and personal phones, and imposes substantial logistical and privacy burdens. Docket no. 395 at 11-12.

During a February 12, 2026 status conference, defendants asked the court to reconsider its order to forensically image all phones. Docket no. 423 at 43:23-44:4, 45:11-20. The court clarified that the January 16 Order included any personal phones that were used for the operations, but directed the parties to meet and confer regarding a process for selecting the personal phones to be imaged. *Id*. at 48:15-20, 49:12-15.

On March 5, 2026, plaintiffs proposed limiting the scope of the forensic imaging of personal phones if defendants' counsel conducted custodial interviews of the agents and provided declarations. Docket no. 503, Ex. 18. Defendants rejected this proposal and declined to do custodial interviews. *Id*., Ex. 19.

At a March 6, 2026 status conference, defendants contended that the agents' personal phones are not in defendants' "possession, custody, or control" and they cannot compel the agents to give them the phones and "mail them away to a lab for a few days at a time" to be forensically imaged. Docket no. 453 at 5:13-18. Defendants represented that instead they were "reviewing the phones with the ICE agents" and having them sign declarations. *Id*. at 6:19-24. Defendants then argued that forensically imaging the personal phones was "probably disproportionate to the needs of the case" and maintained

that "[t]hese are not federal records" on the personal phones. *Id*. at 9:19-21,10:9-11. After the parties agreed to further meet and confer, the court stated that if there was going to be a request to formally modify the January 16 Order, the parties would need to submit briefing. *Id*. at 14:14-17.

On May 12, 2026, plaintiffs filed a Motion for Order to Show Cause Why Defendants Should Not Be Held in Contempt for Violation of ECF 370 for failure to comply with the portion of the court's January 16 Order requiring them to forensically image any personal cell phone used by an agent present at any of 15 identified operations. Docket no. 503. On June 11, 2026, the court issued a certification of facts and ordered defendants to appear before the District Judge to show cause why they should not be adjudged in contempt. Docket no. 538.

On July 1, 2026, the District Judge denied without prejudice defendants' objections to the forensic imaging portion of the January 16 Order and referred them back to the Magistrate Judge because defendants had not meaningfully presented their proportionality arguments to the Magistrate Judge. Docket no. 579. Subsequently, on July 28, 2026, the District Judge held defendants in contempt for failure to fully comply with the January 16 Order. Docket no. 635.

Defendants represent that there were 442 CBP agents present at the 15 operations but do now know how many of them used their personal phones for work-related purposes. Docket no. 676 at 13:18-20. Defendants assert there were 23 ICE agents present at the operations and none of them used their personal phones. Obj. at 11; *see* docket no. 557-2 ¶ 3.

## III. <u>DISCUSSION</u>

Defendants object to the forensic imaging portion of the January 16 Order on three grounds: (1) agents' personal cell phones are not in defendants' possession, custody, or control for purposes of Rule 34 of the Federal Rules of Civil Procedure; (2) forensic

imaging of personal cell phones is disproportionate to the needs of the case[2]; and (3) the forensic imaging of agents' personal cell phones raises constitutional concerns.

### A. <u>Defendants Have Control Over the Electronic Federal Records on the Agents' Personal Devices</u>

Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of relevant materials that are in the responding party's possession, custody, or control. Fed. R. Civ. P. 34(a)(1). Because the phrase "possession, custody, or control" is in the disjunctive, only one of the requirements must be met. *Soto v. Concord*, 162 F.R.D. 603, 619 (N.D. Cal. 1995). The party seeking the production of documents has the burden of establishing that the opposing party has possession, custody, or control. *U.S. v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989). There is no dispute that defendants do not have possession or custody of the records contained on agents' personal cell phones. The only question is whether defendants have control over the records stored on agents' cell phones.

"'Control is defined as the legal right to obtain documents upon demand.'" *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) (quoting *Int'l Union*, 870 F.2d at 1452); *see Mercy Cath. Med. Ctr. v. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004) ("so long as the party has the legal right or ability to obtain the documents from another source upon demand, that party is deemed to have control"). Whether a party has a legal right to obtain documents is a fact-specific inquiry and requires the court to look at the totality of the circumstances. *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.* ("*Soc. Media Litig.*"), 2024 WL 4125618, at *4 (N.D. Cal. Sept. 6, 2024).

---

[2] Defendants initially argue that the order compelling the forensic imaging is disproportionate to the needs of limited *expedited discovery*. *See* Obj. at 7-8. In the Reply, defendants redirected their argument to address the correct standard, which is whether discovery is disproportionate to the needs of *the case*. *See* Reply at 6-9. Plaintiffs argue defendants have forfeited the argument. Response at 13. The court declines to address whether defendants have forfeited the argument because it finds that defendants' argument fails in any event.

There "are no fully exhaustive lists of factors" for determining control, but courts have considered, among other things, whether a legal right was created by contract, statute, or employment. *Id*. at *4-*5. With respect to whether an employee's personal device is deemed to be subject to the control of an employer, generally it must be shown that the personal device was used for work purposes. *See Flexport, Inc. v. Freightmate AI, Inc.*, 2026 WL 266453, at *3 (N.D. Cal. Feb. 2, 2026); *Goolsby v. Cnty. of San Diego*, 2019 WL 3891128, at *4 (S.D. Cal. Aug. 19, 2019). Whether a case involves government or private entities "does not materially change the legal or analytical approach to the control issue." *Soc. Media Litig.*, 2024 WL 4125618 at *5.

Defendants argue Rule 34 does not permit the forensic imaging of agents' personal cell phones because they do not have "theoretical or actual control" over them and plaintiffs have failed to meet their burden of establishing that defendants have control over them. Obj. at 4-7. While defendants concede that agents used their personal phones for work and those communications constitute federal records, they maintain there is no law or Department of Homeland Security ("DHS") policy that would allow them to seize agents' personal phones. *Id*. at 5-6. Instead, DHS policy only permits them to request that agents deposit government records found on their personal phones into their agency's repository. *Id*. Defendants assert it is only when agents deposit the government records into the repository that they have control over the documents. *Id*. at 6.

Plaintiffs argue it is clear that defendants have control over the government records on agents' cell phones. Plaintiffs assert there is no dispute that agents used their personal devices for business purposes, and DHS Policy Directive 141-03 requires it to manage federal records located on personal devices in compliance with law. Response at 9-10. Thus, plaintiffs maintain the issue is not whether defendants are obligated to produce these records, but rather whether the court may order defendants to use forensic imaging to preserve and collect the documents. *Id*. at 9.

The court finds the totality of the circumstances here demonstrates defendants have the legal right to obtain the federal records on agents' personal phones. Defendants do not dispute that work related electronically stored information ("ESI") on personal phones are government records that they are obligated to manage and retain. But defendants argue that they do not have legal control over the government records until

their agents deposit them into a government repository, and characterize the discovery requests as seeking the agents' personal cell phones. Notwithstanding defendants' framing of the issue, the requested discovery at issue is the federal records on the agents' personal devices, which defendants plainly have a legal right to obtain upon demand.

First, as plaintiffs note, defendants do not dispute that the overwhelming majority of agents used their personal cell phones for work purposes, including to communicate about the operations at issue. *See* docket no. 515 at 13:22-14:5 (as of May 26, 2026, 885 out of 1,253 agents indicated they used their personal phones for work). Courts have found that an employer has control over the work documents and communications conducted on their employees' personal devices. *See, e.g., Breaking Code Silence v. McNamara*, 2024 WL 6847417, at *12 (C.D. Cal. Sept. 6, 2024) (corporation is deemed to have control over the personal devices of its agents and representatives where the personal devices were used for work); *Gypsum Resources, LLC v. Clark Cnty.*, 2023 WL 3044461, at *23 (D. Nev. Apr. 21, 2023) (county had technical control over the public records on commissioner's personal phone); *see also Colonies Partners, LP v. Cnty. of San Bernardino*, 2020 WL 1496444, * 8 (C.D. Cal. Feb. 27, 2020) (County had a duty to preserve the ESI found on employee's personal devices).

Second, DHS policy is clear that all DHS business transactions conducted by electronic means, including on personal devices, are federal records that DHS must "capture and manage" in compliance with Federal records management laws, regulations, and policies. DHS Policy Directive 141-03; *see also* Worth Decl., Ex. 22 (DHS Records and Information Management Directive Policy No. 2.6 ("All records created, contributed to, or received by a CBP official, employee, or contractor in the course of conducting Government business are CBP property, wherever the records reside.")). Pursuant to DHS Policy Directive 141-03, "[e]lectronic messages include a range of communications from text to chat to IM (instant messages). They reside and are exchanged on agency networks and devices, on personal devices, or they can be hosted by third-party providers." *Id*. Thus, to the extent an agent's personal cell phone has work communications or other work ESI, these are federal records that defendants are obligated to "capture and manage."

Defendants therefore have the legal right to obtain the electronic communications under both DHS policy and the employment relationship. Further, the court plainly has the authority to order defendants to preserve and obtain those potentially relevant government documents by forensic imaging. *Cf. Ctr. for Biological Diversity v. Bureau of Land Mgmt.*, 2021 WL 918204at *10-*11 (D.D.C. Mar. 9, 2021) (searching agency head's personal email account in response to FOIA request because he was known to use it for agency business and thus the emails were agency records); *Nat'l Res. Def. Council v. Dep't of Def.*, 388 F. Supp. 2d 1086, 1090 (C.D. Cal. 2005) (in response to FOIA request, the EPA searched, among other things, employees' personal computer hard drives). Defendants' argument that they cannot be compelled to image the phones vitiates DHS policy, the Federal Records Act, and their discovery obligations. *See* Worth Decl., Ex. 22 (explaining the Federal Records Act requires agencies to preserve records and "CBP to furnish the information necessary to protect the legal and financial rights of the government and of persons directly affected by CBP activities"). In effect, defendants maintain they have no enforcement mechanism to ensure that government records are actually properly retained and managed. Obj. at 5. That cannot be the case. It would essentially allow the agents to ignore the agency's policies and shield responsive federal records solely because they are located on a personal device. Defendants themselves have conceded this is impermissible. *See* docket no. 453 at 6:16-18; docket no. 571 at 18:2-6.

Accordingly, the totality of the circumstances demonstrates defendants have control over the government records on the agents' personal devices.

## B. <u>Forensic Imaging Is An Appropriate Remedy</u>

Defendants argue the court should consider less intrusive discovery methods. Obj. at 10-11.

Forensic imaging is an extraordinary remedy that should not be ordered except under limited circumstances. *See Legendary Foods, LLC v. Simply Good Foods USA, Inc.*, 2025 WL 1720437, at *5 (C.D. Cal. May 20, 2025) (there should be general caution with respect to forensic imaging in civil discovery). The normal procedure is for a party to preserve relevant evidence and self-collect the documents. But here, the court is

presented with extraordinary circumstances that warrant forensic imaging: discovery has been beset by defendants' persistent deficient productions, failures to preserve, undue delays, misconduct, and evidence of spoliation, as discussed in detail in the court's orders on January 16, June 11, July 28, and August 14, 2026. Docket nos. 370, 538, 635, 668. The court will not repeat all of its prior findings here, but notes that defendants' deficiencies were glaring and apparent almost from the onset. Out of five DHS officers and agents deposed about their use of personal phones for work during expedited discovery in December 2025, all five testified they used their personal cell phones for work, one testified that he did not search his personal phone, and another testified he had taken no steps to preserve potentially relevant documents. *See* Response at 4, Ex. 11 at 27:8-17, Ex. 12 at 24:14-16, Ex. 13 at 29:10-12 and 17-19, Ex. 14 at 74:12-25, Ex. 15 at 29:14-18. The record also reflects that counsel of record has relied on CBP and ICE counsel to run discovery, including self-collection, and this has further contributed to the inadequate production. *See* docket no 668. In short, defendants have continuously demonstrated that their self-collection efforts have been wholly inadequate.

Defendants concede their initial self-collection efforts were deficient, but contend they are now engaging in a "more robust process" to ensure that deficiencies do not happen again. Defendants direct the court to the ICE declarations and CBP questionnaires as evidence of the adequacy of their collection efforts. But defendants' efforts were undertaken only after plaintiffs initiated contempt proceedings and continue to fall short of their obligations. The ICE declarations and CBP questionnaires suffer from problems discussed below, and appear to have diverted defendants from actually taking reasonable steps to comply with the imaging order. Most glaring is the fact that neither ICE nor CBP appears to have taken even the basic step of informing their agents that there is a court order requiring their personal devices to be forensically imaged.

Regarding the ICE declarations, they are inadequate and leading. First, the form declarations fail to address the correct question. Rather than address whether the agent used his or her personal phone for work purposes, the declarations state whether the agent used his or personal phone *during* an operation. *See* docket no. 503, Ex. A. As text messages produced from an ICE agent reflect, ICE agents use their cell phones for work purposes at times other than the operations themselves. *See* Worth Decl., Ex. 32. Second, the ICE declarations are written to suggest a particular response. Rather than

providing ICE agents space to fill in whether they used their personal phones for work, the form declaration appears to have been prefilled to state the agent did not use a personal phone for government business. *See id*., Ex. 30.

The CBP questionnaire is likewise problematic. It does a much better job of collecting information regarding use of personal devices for work. But it does not inform the CBP agents there is a court order requiring their personal phones to be imaged. Instead, as the court previously determined, the questionnaire seems to instruct employees what they must do to avoid having their phones imaged. *See* docket no. 503, Ex. E, question 46. Moreover, the questionnaire provides no guidance about self-collection or explanation about what constitutes a potentially responsive document. This is a complex case and the court finds it incredible that defendants would continue to leave it entirely up to agents to determine what is responsive, particularly when defendants concede that initial efforts were deficient. There are no mechanisms and procedures in place to corroborate whether agents are accurately representing whether they have used their personal phones for work or whether there are responsive documents on the phone. Nor are there mechanisms to ensure that all responsive documents are deposited into the repository. While counsel claims there is "more oversight" and the government has been following up to make sure that those who responded they used their personal phones have submitted documents, they have submitted neither a declaration nor other evidence of how the procedures for this follow up work and who conducts it. Docket no. 676 at 8:25-9:5, 9:22-10:1.

In short, defendant's "less intrusive alternatives" do not differ significantly from their previously inadequate collection efforts. There are steps defendants could have taken to ensure the integrity of their collection efforts such as custodial interviews as suggested by plaintiffs. *See* docket 503, Ex. 18. Instead, defendants have decided to continue to allow agents to self-collect without oversight and indeed seem to instruct them how to avoid forensic imaging. Given that the initial self-collection efforts were deficient, it makes no sense to rely on what is essentially a repeat of the same procedures.

Plaintiffs have cited substantial evidence demonstrating that defendants' agents are not taking adequate steps to preserve evidence and the agents' personal devices contain responsive and probative evidence. *See* Response at 4-6. Defendants have the legal right

to obtain government records on agents' personal phones, and forensic imaging is the appropriate mechanism under these extraordinary circumstances.

### C. <u>The Forensic Imaging of Personal Cell Phones Is Neither Disproportionate to the Needs of the Case Nor Unduly Burdensome</u>

Defendants contend an order compelling forensic imaging of personal cell phones is disproportionate to the needs of the case and unduly burdensome. Obj. at 7-8.

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In determining whether discovery is disproportionate to the needs of the case, the court considers "'the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Id.*

Defendants contend the portion of the January 16 Order requiring the forensic imaging of the agents' personal cell phones is disproportionate to the needs of the case because the burden of forensically imaging the phones outweighs the benefit, imaging is not necessary for plaintiffs to litigate the case, and there are significant privacy interests at issue. Reply at 6-9. Specifically, defendants assert there are logistical, technical, and legal burdens involved in collecting personal phones of at least 442 employees, imaging them, and reviewing millions of pages for relevance and privilege. *See id*. at 7; Reply at 8-9. Defendants maintain the process is intrusive and will result in few responsive documents. Reply at 8-9. Defendants note plaintiffs have already moved for a preliminary injunction based on the current production and there are alternative, targeted production methods that are less intrusive – namely, determining which agents may have relevant records on their personal phones through the questionnaires, instructing agents to deposit government records into agency repositories, and forensically imaging government issued phones and personal phones for which they obtained consent. *Id*. at 7-8; Reply at 7-8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-05605-MEMF-SPx | Date | September 21, 2026 |
| Title | Pedro Vasquez Perdomo, et al. v. Markwayne Mullin, et al. | | |

Plaintiffs assert defendants have failed to substantiate their claims of burden and disproportionality. Response at 12. Plaintiffs note the only evidence defendants cite is the declaration of Benjamin Moss ("Moss Decl."), who provides a conclusory and boilerplate statement that forensic imaging from multiple custodians is burdensome. *Id.*; *see* docket no. 379, Ex. 1. That defendants have the logistical and technical capabilities to forensically image the phones is evidenced by the fact they have done so in response to FOIA requests. Response at 12-13. Moreover, plaintiffs maintain they are seeking only to forensically image the phones of agents who participated in 15 operations and not the entire Operation at Large, and have proposed to narrow down the number of custodians. *Id*. at 13. Finally, plaintiffs note the importance of the issues at stake – whether constitutional violations have occurred on a mass scale – is extremely high, and the fact that plaintiffs were able to move for a preliminary injunction without this discovery does not support defendants' argument that a more extensive search is disproportionate to the needs of the case. *Id*. at 13-14.

The court acknowledges the forensic imaging of hundreds of personal cell phones is a substantial undertaking and there are significant privacy interests at issue. In considering proportionality, the court must weigh these along with other factors. As an initial matter, there is no dispute that the issues at stake are of extreme importance, many if not most of the phones contain responsive communications, and plaintiffs do not have access to the responsive communications on the agents' phones.

First, defendants have failed to demonstrate that the forensic imaging of phones would be unduly burdensome and such burden outweighs the benefit. Defendants contend there are technical and logistical burdens to forensic imaging, but have submitted no evidence to support the argument that forensic imaging is unduly burdensome. Reply at 8. Defendants simply provide the possible number of phones at issue and reference the Moss Declaration and Declaration of J.R. ("J.R. Decl."). *See* Obj. at 7; Reply at 8; docket no. 379-1; docket no. 503-26. While the number of cell phones to be imaged is high, it is considerably lower than the total number of phones potentially at issue. *See* Obj. at 7; docket no. 676 at 10:8-9. Defendants also omit the fact that plaintiffs have offered to narrow down the number of custodians on several occasions and defendants have either rejected the proposal or failed to provide a response. Response at 13; *see* docket no. 462 at 8; docket no. 501, Exs. 18-19; docket no. 676 at 43:20-24. As for the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-05605-MEMF-SPx | Date | September 21, 2026 |
| Title | Pedro Vasquez Perdomo, et al. v. Markwayne Mullin, et al. | | |

declarations, neither support defendants' argument. Moss, counsel at the Office of Immigration Litigation, simply provides a boilerplate, conclusory statement that forensic imaging is particularly burdensome. *See* docket no. 379-1 ¶ 8. The J.R. Declaration actually undermines defendants' argument. J.R., the Technology Director of the Digital Forensics in the Laboratories and Scientific Services within CBP, states that CBP can perform the imaging at the agents' worksite, and that while the full processing may take one to days, a full system extraction can be completed in a matter of minutes to hours. Docket no. 503-26 ¶¶ 8, 10-11, 14. Moreover, as plaintiffs point out, defendants have been able to forensically image phones in response to FOIA requests. Response at 12-13. The fact that those may have been government phones as opposed to personal phones does not change the fact that defendants have the technical capabilities to conduct forensic imaging.[3]

Defendants also argue the burden of forensically imaging the phones outweighs the benefits. Obj. at 7-8. Defendants assert the benefit is "incremental" because there are "alternative, targeted production methods," they are forensically imaging the government phones and the personal phones of agents that consented, and "many, if not all," documents on the personal phones will not be responsive. *Id.*; Reply at 8. But as discussed above, defendants' "alternative production methods" proposal is based on self-collection that does not differ substantively from its previous efforts, and is thus inadequate at best. Defendants' own questionnaires confirm the overwhelming majority of agents used their personal devices for work purposes and plaintiffs have provided substantial evidence that there are probative communications on personal devices. As such, defendants have not established the burden outweighs the benefits of forensic imaging.

Second, defendants contend forensic imaging is not necessary for plaintiffs to litigate the case because they are already producing responsive documents and plaintiffs

---

[3] Defendants previously argued that forensic imaging of the personal cell phones would require the phones to be shipped to a forensic imaging lab for days. *See* docket no. 453 at 11:7-11. To the extent defendants continue to assert that argument, the J.R. Decl. establishes that imagining may be done at the agents' worksite. J.R. Decl. ¶ 11.

were able to move for a preliminary injunction and conduct depositions. Obj. at 8; Reply at 8-9. This argument is flawed. The fact that plaintiffs obtained some responsive documents from defendants does not absolve defendants of their obligation to produce other responsive documents. And the fact that plaintiffs filed a motion for preliminary injunction using the evidence they have been able to collect to date does not mean they should have to litigate the entire case without other probative ESI. It is not for defendants to decide what discovery is necessary, particularly when they have not seen this evidence. To the contrary, the evidence that has been produced so far and information learned at depositions confirms the need for and relevance of the ESI on the agents' personal devices.

Finally, defendants argue forensic imaging of personal phones is an intrusive method, noting that the agents' personal phones contain deeply private information unrelated to the litigation, including private images, financial information, medical records, location history, and private communications. Obj. at 8. This is of course true. But here, any searches should not unduly intrude on the agents' privacy. Defendants' counsel will run searches only for responsive information, using targeted search terms and date ranges, and conduct the review of responsive documents before production. Response at 12; Grimes Decl. ¶¶ 9-10; *see Smith v. Pergola 36 LLC*, 2022 WL 17832506 (S.D.N.Y. Dec. 21, 2022) ("if the cellphone searches are run against an appropriately tailored set of search terms then there should be no greater invasion of privacy by counsel conducting the review than if the employees themselves ran the search and then shared the responsive documents with counsel to obtain advice as to their production"). Although irrelevant and private documents may be included among the search hits, well-tailored search terms will minimize this, and defendants' counsel will review the documents to ensure that such private information is not produced.

Considering all the factors, the January 16 Order requiring defendants to forensically image their agents' personal phones is not disproportionate to the needs of the case.

//
//

## D. <u>The Forensic Imaging of Personal Phones Will Not Violate the Fourth Amendment</u>

In addition to general privacy concerns, defendants contend courts have consistently recognized there are constitutional concerns about indiscriminately downloading the entire contents of a personal cell phone. Obj. at 8-10. Plaintiffs contend forensic imaging does not violate the Fourth Amendment. Response at 11-12.

The Fourth Amendment protects against unreasonable searches and seizures by the government. U.S. Const. amend. IV. But here, the forensic imaging will be performed pursuant to a court order in a civil discovery matter. Thus, the Fourth Amendment is not implicated. *See Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 833 F. Supp. 3d 1047, 1056 (N.D. Cal. 2026) (court order compelling a search of an employee's personal phone by DOJ attorneys did not violate the Fourth Amendment); *cf. Patel v. City of Los Angeles*, 2022 WL 878920 (C.D. Cal. Feb. 9, 2022) ("While the Ninth Circuit has not explicitly addressed whether seizures pursuant to a valid [] court order are reasonable under the Fourth Amendment, other circuits have held that such seizures are reasonable.").

To the extent Fourth Amendment concerns remain, forensic imaging would not violate agents' Fourth Amendment rights. "Searches and seizures by government employers or supervisors of the private property of their employees [] are subject to the restraints of the Fourth Amendment." *O'Connor v. Ortega*, 480 U.S. 709, 715 (1987); *see City of Ontario, Cal. v. Quon*, 560 U.S. 746, 756 (2010). In *O'Connor*, the Supreme Court recognized a workplace exception permits public employers to conduct warrantless searches for noninvestigatory work-related purposes or to investigate workplace misconduct. *O'Connor*, 480 U.S. at 725. A plurality of the justices concluded that a two-step framework provided the proper Fourth Amendment analysis. *Quon*, 560 U.S. at 756-57. A court must first consider on a case by case basis whether an employee has a reasonable expectation of privacy. *O'Connor*, 480 U.S. at 718. If the employee does have a reasonable privacy expectation, then the court must determine whether the employer's search is consistent with the "standard of reasonableness under all the circumstances." *Id*. at 725-26. Under this reasonableness standard, the employer's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-05605-MEMF-SPx | Date | September 21, 2026 |
| Title | Pedro Vasquez Perdomo, et al. v. Markwayne Mullin, et al. | | |

search must be justified at its inception and the measures adopted must be reasonably related to the objectives of the search. *Id*. at 726.

Neither the Supreme Court nor Ninth Circuit have addressed whether the workplace exception applies to an employer's search of personal cell phones. *Larios v. Lunardi*, 856 F. App'x 704, 705 (9th Cir. 2021) ("Courts have not clearly established whether it is unconstitutional to search or seize data from a personal cell phone under the workplace-inspection exception to the warrant requirement for public employers established in *O'Connor*."); *Turiano v. City of Phoenix*, 562 F. Supp. 3d 261, 275, n.6 (D. Ariz. 2022). Some district courts have found that it does not apply, but each of those decisions was limited to the circumstances of the case. *See Turiano*, 562 F. Supp. 3d at 274, 277 (personal cell phone was generally not used for work purposes); *Zimmerman v. Knight*, 421 F. Supp. 3d 514, 521 (S.D. Ohio 2019) (noting that in the Sixth Circuit personal cell phone would not "typically" be subject to workplace exception); *Port Authority Police Benevolent Ass'n, Inc. v. Port Authority of New York and New Jersey*, 2017 WL 4403310, at *5 (S.D.N.Y. Sept. 29, 2017) (undisputed that cell phones at issues were purely personal). Nor is it clear the workplace exception is even needed in the civil discovery context. *See U.S. v. Bell*, 217 F.R.D. 335, 343 (M.D. Penn. 2003) (although a court may take individuals' privacy interests into consideration, there is no right of privacy privilege against discovery in civil cases); *Syposs v. U.S.*, 181 F.R.D. 224, 227 (W.D.N.Y. 1998) (distinguishing between the Fourth Amendment protections in criminal matters and the "less stringent thresholds" in civil discovery).

Assuming the workplace exception analysis applies, however, there will be no Fourth Amendment violation here. At the first step, the agents do not have a reasonable expectation of privacy regarding work-related communications, since DHS policy clearly states that any work performed on personal phones constitutes a federal record. Although there is no clearly established right to privacy over a personal cell phone used for work, arguably the agents have a reasonable expectation of privacy as to the other content on their personal phones, even when they are used for work purposes.

The question then is whether forensic imaging is reasonable under these circumstances. As the court has already discussed at length above, forensic imaging is warranted here due to the evidence of defendant's persistent discovery deficiencies and

delays, preservation concerns, evidence that the overwhelming majority of agents use their personal phones for work, and the deficiencies in defendants' collection process. The search is justified at the inception, and the search will be limited to targeted search terms and dates.

The court here has examined the constitutionality of forensically imaging agents' personal phones. It has not addressed defendants' argument that it would be unconstitutional and they lack authority to forcibly seize agents' personal phones, because there is no need. The January 16 Order requires only the forensic imaging of the phones, not their forcible seizure. Defendants have argued that, since the phones are in agents' possession, they cannot comply with the January 16 Order without forcibly seizing the phones; however, defendants have no basis to make such an argument because they have not even tried to image the phones. As noted above, a logical first step would have been to notify all the potentially affected agents of the court's order, but defendants have not done this. Instead, they have (in ICE's case) prepared a form declaration for agents to sign stating they did not use their personal phones for government business, and (in CBP's case) sent agents a questionnaire asking them if they would permit the imaging and telling them what to do to avoid having their phones imaged. This was counterproductive at best.

Although defendants' actions may have poisoned the well to some extent, it is not too late for them to start over. Defendants may still inform their agents that a court has ordered that they submit their personal phones for forensic imaging, and instruct them that they are required to do so. As sworn law enforcement agents, there is every reason to believe that most of them would comply with a court order when their employer directs them to do so. For the reasons discussed above, none of this runs afoul of the Constitution.

## IV. <u>ORDER</u>

IT IS THEREFORE ORDERED that defendants' request for a protective order limiting the January 16, 2025 Order is denied (docket no. 607).