BRETT A. SHUMATE
Assistant Attorney General
Civil Division
DREW C. ENSIGN
Deputy Assistant Attorney General
TIBERIUS DAVIS
DANIEL F. MUMMOLO
Counsel to the Assistant Attorney General
JONATHAN A. ROBBINS (SBN VA #73366)
Assistant Director
NANCY N. SAFAVI (SBN 24042342)
Senior Trial Attorney
JACOB A. BASHYROV
ANIELLO DESIMONE
STEPHANIE L. GROFF
JASON K. ZUBATA
Trial Attorneys
JONATHAN A. ROBBINS (SBN VA #73366)
Assistant Director
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-8275
Email: Jonathan.A.Robbins@usdoj.gov

*Counsel for Defendants*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PEDRO VASQUEZ PERDOMO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, *et al.*,<br><br>Defendants. | No. 2:25-cv-05605-MEMF-SP<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF IN RESPONSE TO ADDITIONAL EVIDENCE PRESENTED AT HEARING**<br><br>Hon. Maame Ewusi-Mensah Frimpong<br>United States District Judge<br><br>Referred to Hon. Sheri Pym<br>United States Magistrate Judge |

**DEFENDANT'S SUPPLMENTAL BRIEF**

Per the Court's Order at ECF No. 756, Defendants respectfully file this Supplemental Brief in response to the Plaintiffs' introduction of new evidence at the September 24, 2026 hearing on the Plaintiffs' Motion for Preliminary Injunction, ECF No. 632, and Plaintiffs' Motion to Certify Class, ECF No. 647. During the hearing, Plaintiffs relied on three pieces of evidence that were not cited in their pleadings related to their Motions, specifically (1) an out-of-context quote by Former U.S. Border Patrol Chief Agent in Charge Gregory Bovino (Sep. 24, 2026 Hr'g Tr. 15:11-18); (2) training materials for Immigration and Customs Enforcement agents; and (3) training materials for Customs and Border Protection. (Hr'g Tr. 32:16-25; 33; 34:1-7, 40:1-5). Defendants respectfully contend that Plaintiffs' reliance on these materials is misplaced and that when proper context is understood by the Court, this evidence dramatically undermines Plaintiffs' claims.

**I. The Bovino quote, in full context, supports Defendants' position, not Plaintiffs'.**

To support their false narrative that Defendants' stops and arrests are based solely on racial criteria, Plaintiffs refer to a September 2025 quote given by Mr. Bovino to a reporter, originally cited in their Second Amended Complaint. At the hearing, counsel for Plaintiffs stated: "[Mr. Bovino's] talking to a news reporter about factors that they consider. And he talks about how someone looks. And he contrasts the looks -- the look of those who are the targets of enforcement, with the reporter, who's a white man." (Hr'g Tr. 15: 15-18). Plaintiffs' Second Amended Complaint relies on this quote to support the contention that "Defendant Bovino admitted to a reporter that his agents arrest people based on 'how they look,' contrasting the appearance of the targets of Defendants' enforcement policy with that of the reporter, a white man." ECF No. 436-2, para.82.

But Plaintiffs omit critical context here thus presenting a distorted view of Mr. Bovino's statement. A full reading of the article clarifies that Mr. Bovino was explaining that an individual's appearance is just one of many factors agents may consider in assessing whether there is reasonable suspicion to make a stop or arrest. The full portion of the article with Mr. Bovino's quote reads as follows:

> *"You know, there's many different factors that go into something like that," Bovino said. "It would be agent experience, intelligence that indicates there's illegal aliens in a particular place or location.*

> *Then, obviously, the particular characteristics of an individual, how they look. How do they look compared to, say, you?" he said to the reporter, a tall, middle-aged man of Anglo descent.*

https://www.wbez.org/immigration/2025/09/29/feds-march-into-downtown-chicago-top-border-agent-says-people-are-arrested-based-on-how-they-look.

As an initial matter, the article does not provide the question posed by the reporter, so it is not possible to determine the question to which Mr. Bovino is responding. But what is abundantly clear is that even if Mr. Bovino is being asked about how CBP agents conduct stops and arrests, he is **not** suggesting that CBP makes stops or arrests solely on race. The full quote makes clear that Mr. Bovino is explaining that many factors are considered in determining reasonable suspicion and that the way someone looks is only one factor to be considered; he does not even mention race at all. Plaintiffs and the reporter infer that Mr. Bovino was talking about race, but that is not apparent from the quote – Mr. Bovino might have been talking about a person's mode of dress, comparing the look of a day-laborer to that of a reporter. And more importantly, Mr. Bovino's assessment of what must be considered is entirely consistent with the proper assessment required to establish reasonable suspicion to make a stop or arrest. *See Noem v. Perdomo*, 146 S. Ct. 1, 2 (2025) (Kavanaugh, J., concurring) (explaining that "apparent ethnicity alone cannot furnish reasonable suspicion; under this Court's case law regarding immigration stops, however, it can be a 'relevant factor' when considered along with other salient factors"); *see also U.S. v. Brignoni-Ponce*, 422 U.S., 873, 884-85 (1975) (listing "[a]ny number of factors" that contribute to reasonable suspicion of illegal presence, including appearance).

It is telling that Plaintiffs omit a key portion of the full quote in order to support their case; the only way they can find support for the proposition that stops would be made based on racial criteria alone is to exclude the portion making clear that Mr. Bovino is talking about a multitude of relevant factors to be considered. A complete reading of the entire quote establishes that agents use appearance as just one of their factors in determining reasonable suspicion for an investigative stop, and the Court should not countenance Plaintiffs' attempt to warp Mr. Bovino's statement by leaving out critical context.

**II. The training materials do not establish Defendants have a policy of documenting consensual encounters which do not lead to arrests.**

With respect to the training materials relied upon by Plaintiffs at the hearing, they incorrectly argue that these materials demonstrate an agency policy of documenting encounters which do not lead to arrests. Specifically, Plaintiffs reference two slides of agency training materials to support their mistaken proposition. ECF No. 529-29: 71, and ECF No. 529-30:40. At the hearing, Plaintiffs contended:

> *The agencies, generally speaking don't track tentative stops of U.S. citizens or lawful permanent residents because they don't result in a formal arrest, and an I-213. So the Court has no way of monitoring whether those stops are happening, because they're not being appropriately tracked.*
>
> *But on the on the other hand the official agency policies, the written policies and trainings actually require that tracking.*

(Hr'g Tr. 32: 1-8). But once again, a closer examination of the evidence belies Plaintiffs' claims. Considering that the burden of proof is on Plaintiffs in the preliminary injunction context, this proposition is unsupported by the actual language of the materials. The slide located at ECF No. 529-29: 71, titled "Documentation is the Key" reads:

> *As soon as possible after the collateral encounter, document in the I-213 either the basis for the particularized reasonable suspicion, or how the officer made it clear to the collateral that the individual was free to leave.*
>
> *Documentation is KEY - By the time the circumstances of the stop is litigated, years will have passed since the arrest. The officers will likely have no independent recollection of the stop leading to an arrest. In that case, without a detailed I-213 documenting the circumstances of the collateral's arrest, the Government has no way to rebut a claim of unlawful detention.*

Contrary to Plaintiffs' assertions, the materials do not require tracking of every consensual encounter. Documentation is only required when an arrest is made. That the material states documentation should be made as to whether the officer "made it clear to the collateral that the individual was free to leave," is simply an instruction to document if an arrest *began* as a consensual encounter. Plaintiffs'

characterization of this training slide does not support their assertion that there is a mandated policy to document all consensual encounters regardless of whether there was a stop or arrest. This slide does not establish, nor even suggest, that the agency has a policy mandating that agents document every consensual encounter, particularly where that encounter does not result in an arrest or other official action. In fact, the second paragraph removes any ambiguity, making clear that the documentation concerns collateral encounters that resulted in an arrest, repeatedly tying the need for documentation to the circumstances surrounding an arrest.

Plaintiffs also mischaracterize the language on another slide. ECF No. 529-30:40. That slide reads:

"*Be sure to carefully document all:*

► *Consensual Encounters*

► *Detentions*

► *Arrests*

► *Incidents involving use of force*"

As with Mr. Bovino's quote and the other training slide above, Plaintiffs fail to present the Court with critical context. Earlier slides in the training explain that if a consensual encounter does not develop into circumstances supporting reasonable suspicion, the agent is expected to thank the individual for cooperating and then continue about his/her duties. ECF 529-30: 21. ("No Suspicion Developed – Thank the person for cooperating and continue with your duties."). The training then proceeds to address, in substantial detail, various arrest scenarios and corresponding procedures an agent should follow if the agent arrests the subject. The slide when read in context with the substance of the training indicates that the duty to document a consensual encounter is for circumstances where a consensual encounter results in an arrest. Admittedly, this particular slide in the training might be more clearly worded, but it should be interpreted in the context of the training as a whole – not as an isolated slide subject to post hoc litigation scrutiny. Further, both slides are part of a comprehensive training in which, to the extent there is any ambiguity, the person providing the training can clarify. Thus, only looking at the slides without also considering the verbal training that accompanies them, removes important context. Additionally, training slides do not create policy for CBP; the trainings only illustrate and teach the law and already

established policies.

To be clear, there is no mandated policy of documenting consensual encounters that do not lead to arrests. *See* ECF No. 170-2, para. 12 ("If a subject is not arrested and processed for some type of immigration and/or criminal violation, a record of the event will likely not be generated."). Plaintiffs are attempting to rely on a distorted reading of the training slides because this non-existent policy cannot be found anywhere else – not in any agency directive, memorandum, policy statement, manual or other document because this policy does not exist. Because consensual interactions are voluntary and do not constitute a legal seizure or deprivation of liberty, agency policy does not mandate that officers complete formal arrest reports (such as Form I-213, Record of Deportable/Inadmissible Alien) or create an official investigative file for every individual they casually speak with and release. Certainly, the agency *might* document a consensual encounter, and there may be other circumstances which might require that a consensual encounter be documented, but as a general matter, there is simply no mandated policy to document all consensual encounters not resulting in a stop or arrest. Plaintiffs' new evidence therefore does not support their motion for a preliminary injunction.

Dated: September 30, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

TIBERIUS DAVIS
DANIEL F. MUMMOLO
Counsel to the Assistant Attorney General

JONATHAN A. ROBBINS
Assistant Director

NANCY N. SAFAVI
Senior Trial Attorney

JACOB A. BASHYROV
ANIELLO DESIMONE
STEPHANIE L. GROFF

Trial Attorneys

/s/ Jonathan Robbins
JONATHAN ROBBINS
Assistant Director
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-8275
Jonathan.A.Robbins@usdoj.gov

*Counsel for Defendants*

**L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record certifies that this filing is 1,691 words, which complies with L.R. 11-6.1 and this Court's Standing Order, Part VIII.C.

Dated: September 30, 2026

Respectfully submitted,

*/s/ Jonathan Robbins*
JONATHAN ROBBINS
Assistant Director
Office of Immigration Litigation
U.S. Department of Justice

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2026, I served DEFENDANTS' SUPPLEMENTAL BRIEF IN RESPONSE TO ADDITIONAL EVIDENCE PRESENTED AT HEARING on all counsel of record by means of the Court's CM/ECF electronic filing system.

*/s/ Jonathan Robbins*
Jonathan Robbins
Assistant Director
Office of Immigration Litigation
Department of Justice
(202) 305-8275
Jonathan.A.Robbins@usdoj.gov
*Counsel for Defendants*