BRETT A. SHUMATE
Assistant Attorney General
Civil Division
DREW C. ENSIGN
Deputy Assistant Attorney General
DANIEL MUMMALO
TIBERIUS DAVIS
Counsel to the Assistant Attorney General
AUGUST FLENTJE
Deputy Director
JONATHAN A. ROBBINS
Assistant Director
STEPHANIE L. GROFF
JACOB A. BASHYROV
ANIELLO DESIMONE
JASON K. ZUBATA
Trial Attorneys
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 532-4143
Email: Jason.k.zubata@usdoj.gov

*Counsel for Defendants*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PEDRO VASQUEZ PERDOMO; *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; *et al.*,<br><br>Defendants. | No. 2:25-cv-05605-MEMF-SP<br><br>**DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S ORDER [ECF 750]**<br><br>Hon. Maame Ewusi-Mensah Frimpong<br>United States District Judge<br><br>Referred to Hon. Sheri Pym<br>United States Magistrate Judge |

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 4

III. STANDARD OF REVIEW .......... 4

IV. ARGUMENT .......... 5

A. The Magistrate Judge's Order Is Contrary to Law. .......... 5

1. Failure to Comply with the Strictures of the Federal Rules Governing Discovery. .......... 5

2. Compels Forensic Imaging that is Unduly Burdensome and Disproportionate to the Needs of This Limited Discovery. .......... 7

3. Forensic Imaging of a Government Employee's Personal Phone is Unconstitutional as It Would Infringe Upon Their Fourth Amendment Rights. .......... 10

B. The Magistrate Judge's Order Is Clearly Erroneous Because the Agent Declarations Comprehensively Addressed the Court's Concerns and Complied with the Court's Previous Orders. .......... 13

III. CONCLUSION .......... 16

## TABLE OF AUTHORITIES

## CASES

*Blue Spike LLC v. Universal Music Grp., Inc.*, No. 2:22-cv-06331-GW-SSCx, 2024 U.S. Dist. LEXIS 130440 (C.D. Cal. June 5, 2024) .................. 9

*Brigham City v. Stuart*, 547 U.S. 398 (2006)........................................................................ 10

*Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010) ........................................................................ 15

*Hibbert v. Schmitz*, No. 3:16–cv–3028, 2017 WL 59075 (C.D. Ill. Jan. 5, 2017) .................................... 12

*In re Bankers Trust Co.*, 61 F.3d 465 (6th Cir.1995) ........................................................................ 5

*In re Citric Acid Litig.*, 191 F.3d 1090 (9th Cir. 1999) ........................................................................ 5

*ISpot.TV, Inc. v. Teyfukova*, No. 2:21-cv-06815-MEMF-MAR, 2025 WL 2994727 (C.D. Cal. Jan. 9, 2025) ................................ 4

*Krishnan v. Cambia Health Solutions*, 2021 WL 3129940 (W.D. Wash. July 23, 2021) ........................................................ 5

*Larios v. Lunardi*, 442 F. Supp. 3d 1299 (E.D. Cal. 2020)........................................................ 6, 7, 11

*Larios v. Lunardi*, 856 F. App'x 704 (9th Cir. 2021)........................................................ 6, 7, 11

*Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678 (C.D. Cal. 2009)........................................................................ 5

*Riley v. California*, 573 U.S. 373 (2014)........................................................................ 9, 10, 12

*Sports Rehab Consulting LLC v. Vail Clinic*, 2025 WL 1144559 (D. Colo. Apr. 18, 2025)........................................................ 5

*Travelers Indemnity Co. of Connecticut v. Walking U Ranch, LLC*, No. 2:18-cv-02482-CAS-GJSx, 2021 WL 969210 (C.D. Cal. Jan. 22, 2021)...................................... 5

*Turiano v. City of Phoenix*,
562 F. Supp. 3d 261 (D. Ariz. 2022) .......... 11

*United States v. Cano*,
934 F.3d 1002 (9th Cir. 2019) .......... 10, 12

*United States v. Int'l Union of Petroleum & Indus. Workers*,
870 F.2d 1450 (9th Cir. 1989) .......... 1, 5

*Wolpin v. Philip Morris, Inc.*,
189 F.R.D. 418 (C.D. Cal. 1999) .......... 4

*Wolski v. Gardner Police Department*,
560 F. Supp. 3d 387 (D. Mass. 2021) .......... 11

**STATUTES**

44 U.S.C. § 3301 .......... 6, 9, 15

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P.26(b)(2)(C) .......... 8

Fed. R. Civ. P. 26(c) .......... 5

Fed. R. Civ. P. 26(c)(1)(C) .......... 9

Fed. R. Civ. P. 34(a)(1) .......... 1, 5, 6

Fed. R. Civ. P.72(a) .......... 1, 4

Pursuant to Federal Rule of Civil Procedure ("Rule") 72(a) and Local Rule 72-2.1, Defendants respectfully object to the Magistrate Judge's September 21, 2026 Order, ECF 750 ("Order") denying protective relief against discovery that defies the Rules—requiring forensic imaging of agents' personal devices that are not in Defendants' possession, custody, or control, and without a warrant in violation of the Fourth Amendment.

## I. INTRODUCTION

The questions before the District Court are straightforward: (1) can a producing party be required to seize and forensically image devices that are not in their possession, custody, or control? and (2) do Defendants have the authority to seize agents' personal phones in violation of their Fourth Amendment rights? The answer is no to both. First, the Rules make clear that responding parties may only be required "to produce" documents or electronically stored information ("ESI") that is "in the responding party's possession, custody, or control[.]" Fed. R. Civ. P. 34(a)(1). Despite this clear limitation, the Magistrate Judge concluded that the potential presence of some federal records on agents' personal phones somehow creates legal authority to seize the entire device containing those records for deeply intrusive forensic imaging. But this is wrong because it cannot be disputed that Defendants do not "control" personal phones. Rather than relying on a less intrusive means to gather ESI, as Defendants were already doing by directing agents to deposit any federal records contained on personal phones into agency repositories and attesting under penalty of perjury that they have done so, the Magistrate Judge adopted Plaintiffs' faulty argument that conflates propriety of seeking government records from devices in a non-intrusive fashion with compelling the government to seize and forensically image its employees' personal devices where some, if any, responsive but mostly non-responsive, private documents are stored.

The District Court should provide tailored protective relief because the Magistrate Judge's orders (ECF 370, 387) to forensically image agents' personal cell phones go beyond what the rules of discovery permit—the personal devices at issue are not "in [Defendants'] possession, custody, or control" such that they can produce them. Fed. R. Civ. Proc. 34(a)(1); *see United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989) (requiring responding parties to "produce only those records" "in his 'possession, custody or control.'"). While Defendants directed agents to produce responsive materials from their personal phones, and attest under penalty of perjury that they did so, Defendants

maintain they do not have any legal right to compel, access, or seize personal devices for intrusive forensic imaging, as opposed to government-issued phones which are in Defendants' possession, custody, or control and are already in the process of being imaged and reviewed for responsiveness.

Even if Defendants had possession, custody, or control of these devices, the discovery ordered is unduly burdensome and disproportionate to the needs of the case. Plaintiffs maintain the agencies must forensically image every personal phone of *all* agents present at any of the 15 operations, which is approximately 442 government phones and will easily double if required to image personal phones. The Magistrate Judge acknowledged the "substantial undertaking and . . . significant privacy interests at issue" with ordering such intrusive forensic imaging of personal phones, Order at 14, but concluded these concerns would be mitigated because "Defendants' counsel will run searches only for responsive information, using targeted search terms and date ranges." *Id.* Even assuming that is feasible, which the agencies advise may well not be, thus far, Plaintiffs have not been willing to agree to narrowly targeted search terms or date ranges for any of the discovery. And even assuming Plaintiffs would agree to a materially narrowed set of custodians and appropriately targeted search terms (as opposed to the expansive demands they advanced to date), forensic imaging is an indiscriminate process that carries the inevitable consequence that a significant amount of non-responsive, private data will be captured.

Additionally, forensic imaging remains burdensome, impracticable, and disproportionate to the needs of the case. None of this is remotely justified by the dispute that led to this Order (ECF 370), which involved isolated incidents where documents were not turned over during initial round of early discovery, and where Plaintiffs mentioned the concept of phone imaging in one sentence of their brief addressing this dispute, ECF 320 at 11. As to burden: this process requires collecting the phones, imaging them, reviewing millions of pages of documents, and producing the (likely tiny, if any) subset of responsive materials. Given the requirement to *image* the entire phone, it is impossible for the agencies to narrowly target relevant information before information pulled is narrowed by date range. The agencies will be forced to capture the full universe of information on the employees' personal phone before search terms can be applied. Such sweeping invasion far exceeds what is proportional to the limited, injunction-stage discovery authorized by this Court, as it would be with plenary discovery. Plaintiffs have not justified their need for such sweeping, intrusive, and unreasonable discovery.

Second, applying Plaintiffs' faulty rationale that conflates records with the device itself, the Magistrate Judge astonishingly concluded that such intrusive, indiscriminate forensic imaging would not violate agents' Fourth Amendment rights. While the Magistrate Judge acknowledges the bedrock principle that "agents have a reasonable expectation of privacy to" personal content on their personal phones, she then states that they lack "a reasonable expectation of privacy regarding work-related communications[.]" Order at 16. But forensic imaging of personal devices creates an exact digital copy of all data on the device. This intrusive measure naturally raises serious constitutional concerns.

Additionally, Defendants lack authority to seize agents' personal phones in violation of the Fourth Amendment. In the Order, after stating that forensically imaging the phones does not violate the Constitution, the Magistrate Judge proceeds with the confounding statement that the court has "not addressed [D]efendants' argument that it would be unconstitutional and they lack authority to forcibly seize agents' personal phones, because there is no need. The January 16 Order requires only the forensic imaging of the phones, not their forcible seizure." Order at 17. The Magistrate Judge misses, though, that Defendants must seize the phones to image them. Without physical possession of the phones, the phones cannot be imaged. Therefore, a seizure, as defined by the Fourth Amendment, must occur. Nowhere in case law does the Fourth Amendment permit seizure without consent (which they cannot be ordered to provide, as the Magistrate Judge suggests, Order at 17) or without a warrant. Therefore, for the Magistrate Judge to ignore the concern of seizing the phone without consent and without a warrant is problematic and itself warrants the reversal of the Magistrate's order.

Defendants do not resist their obligation to search for and produce responsive work-related communications within their possession, custody, or control, and have instructed agents to submit any and all government records to agency repositories and attesting under penalty of perjury that they have done so (which provides a safeguard against inaccurate self-reporting as false attestations could result in discipline, including removal). Wholesale imaging of hundreds of agents' personal devices is neither proportional nor consistent with constitutional limitations governing forensic searches of private devices under the Fourth Amendment. Accordingly, the legal, proportionality, and constitutional concerns associated with forensic imaging support the need for setting aside the Magistrate Judge's personal phone forensic imaging requirement.

## II. BACKGROUND

On October 23, 2025, the District Court authorized limited, expedited discovery narrowly-focused on materials Defendants relied upon in their injunction briefing. *See* ECF 223. Relevant to these objections, on January 16, 2026, the Court granted Plaintiffs' motion to compel (ECF 320) and issued an order substantially expanding Defendants' discovery obligations under Plaintiffs' Request for Production ("RFP"), ECF 370, well beyond what Plaintiffs themselves even requested. As relevant here, the Magistrate Judge ordered forensic imaging of "any cell phone used by any agent present" at fifteen enumerated operations.

On September 21, the Magistrate Judge denied Defendants' request for protective relief, holding that (1) Defendants have control over the electronic federal records on the agents' personal devices (without resolving the dispositive issue that Defendants lack possession, custody, or control over said devices); (2) forensic imaging is an appropriate remedy (despite the extremely intrusive and indiscriminate nature of said approach); (3) such process is neither disproportionate to the needs of the case nor unduly burdensome (set against the backdrop of "limited, expedited" discovery that still continues to this date despite Plaintiffs already filing two new preliminary injunction motions); and (4) such process will not violate the Fourth Amendment rights of agents (when the entire device would be subject to forensic imaging, even if later searches are narrowly tailored).

Defendants preserved their objections and right to seek review of the Order, and these objections timely ensued.

## III. STANDARD OF REVIEW

Under Rule 72(a) and Local Rule 72-2.1, a party appearing in front of a magistrate judge may file objections to an order on non-dispositive matters for the district court's review. *See ISpot.TV, Inc. v. Teyfukova*, No. 2:21-cv-06815-MEMF-MAR, 2025 WL 2994727, at *3 (C.D. Cal. Jan. 9, 2025). The district court will only set aside the magistrate judge's disposition if it is "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a).

The "the contrary to law" standard applies to the magistrate judge's legal conclusions while "clearly erroneous" standard applies to the magistrate judge's factual and discretionary findings. *See Wolpin v. Philip Morris, Inc.*, 189 F.R.D. 418, 422 (C.D. Cal. 1999). "An order is 'contrary to law' when it fails to

apply or misapplies relevant statutes, case law, or rules of procedure." *Travelers Indemnity Co. of Connecticut v. Walking U Ranch, LLC*, Case No. 2:18-cv-02482-CAS-GJSx, 2021 WL 969210, at *2 (C.D. Cal. Jan. 22, 2021) (quotation omitted).

Under Rule 26(c)(1), the Court may, for good cause, issue a protective order forbidding or limiting discovery. Rule 34(a)(1) expressly limits permissible discovery only as to documents "in the responding party's possession, custody, or control[.]" The avoidance of undue burden or expense are also grounds for the issuance of a protective order, Fed. R. Civ. P. 26(c).

## IV. ARGUMENT

### A. The Magistrate Judge's Order Is Contrary to Law.

#### 1. Failure to Comply with the Strictures of the Federal Rules Governing Discovery.

The Magistrate Judge's Order requiring forensic imaging of agents' personal phones is contrary to law because the devices at issue are not within Defendants' "possession, custody, or control[.]" Fed. R. Civ. P. 34(a)(1). Her Order acknowledges that Plaintiffs have the burden of establishing control over documents sought. *See* Order at 5 (citing *Int'l Union of Petroleum & Indus. Workers,* 870 F.2d at 1452). Plaintiffs have not satisfied their burden, nor could they.

Documents are deemed to be within a party's "possession, custody or control" for purposes of Rule 34 if the party has actual possession, custody, or control, or has the legal right to obtain the documents on demand. *See Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 680 n.1 (C.D. Cal. 2009) (citing *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir.1995)); *see also Sports Rehab Consulting LLC v. Vail Clinic*, 2025 WL 1144559, at *6-9 (D. Colo. Apr. 18, 2025) (discussing "commonly-accepted understanding" that "an employer (or former employer) does not control the devices that its employees personally own"); *Krishnan v. Cambia Health Solutions*, 2021 WL 3129940, at *1-2 (W.D. Wash. July 23, 2021) (denying motion to compel defendant's employees' personal text messages and rejecting argument that employer had a "legal right" to obtain them). "Proof of theoretical control is insufficient; a showing of actual control is required." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999). It is difficult to dispute the reality that the United States lacks the legal right to obtain personal phones from hundreds of federal employees. Here, Defendants have neither theoretical nor actual control of these phones because those devices are privately owned by individual employees. The remaining

question is whether the agency has a legal right to forensically image the phones to obtain the documents being requested. They do not.

The Magistrate Judge's Order concedes that "DHS policy only permits [the agencies] to request that agents deposit government records found on their personal phones into their agency repository." Order at 6. This conclusively resolves the control issue. But due to DHS' duty to "capture and manage" federal records, the Magistrate Judge concluded that "to the extent an agents' personal cell phone has . . . work ESI, these are federal records that Defendants are obligated to 'capture and manage.'" *Id.* at 7. Defendants do not contest their duty to preserve responsive ESI and federal records, and the agencies have consistently instructed their agents of their duty to self-collect federal records that must be deposited into agency repositories, but the Magistrate Judge's evaluation wholly fails to acknowledge that, even with legal authority to demand individual records, that authority does not naturally (or in any legal sense) extend to the agents' own personal device where such responsive materials may reside. The agency does have custody and control over individual records that agents deposit into a government repository, but agency policy and case law do not extend custody and control to the entire personally-owned device where those records may reside.

Rather than engage with the dispositive distinction between possession, custody, or control of the personal device and control over responsive federal records contained therein, the Magistrate Judge improperly speculates (without any basis) that any ruling against forensic imaging of personal devices would allow Defendants to somehow exploit this distinction to "shield responsive federal records solely because they are located on a personal device." Order at 8. Yet, the Court acknowledges that Defendants already agreed that would be impermissible. *Id*

The agencies can and have required agents to deposit government "records" (as defined at 44 U.S.C. § 3301) found on their personal devices into agency repositories based on the aforementioned policy directives. That is the extent of the Defendant agencies' legal authority and the most that a court can demand of them under the strictures of the Federal Rules. Fed. R. Civ. P. 34(a)(1). There is no constitutionally permissible mechanism to force agents to hand over their entire personal phone (not just documents contained therein) for forensic imaging, and DHS policy does not envision or permit seizure of private devices, including personal phones, for forensic imaging.

By contrast, the Ninth Circuit analyzed a possession-custody-control issue where a government officer—who had signed an acknowledgement relinquishing control of state information stored on his personal devices—alleged a Fourth Amendment violation after his phone was seized by his employer. *Larios v. Lunardi*, 442 F. Supp. 3d 1299 (E.D. Cal. 2020), *aff'd*, 856 F. App'x 704 (9th Cir. 2021). There,

the Ninth Circuit held that there was no constitutional violation when the local government seized their employee's personal phone in question because of its policy whereby the officer "acknowledged in writing, . . . that '[w]ork stored on any type of electronic device is the property of the state and must be relinquished on demand.'" 856 F. App'x at 705. But here officers have not signed any such acknowledgement in writing (or otherwise) that if their personal phone contains responsive government materials, not only those records but also their device itself must be relinquished on demand or otherwise subjected to forensic imaging. Defendants' employees have signed no such agreement and have in most cases declined to relinquish their personal phones. *Cf Larios*, 442 F. Supp. 3d at 1304 (after "initially refus[ing], [the officer] ultimately turned over his phone"). *Larios* suggests a lack of custody and control in this case. In fact, officers may well have Fourth Amendment claims if their personal phones were forcefully seized absent such an agreement as in *Larios*. There is no law or policy that gives DHS authority to seize the phone in its entirety. Nor is there a constitutional exception to the Fourth Amendment that permits the government to seize and forensically search agents' personal phones. *See infra* § II.A.3. These factors are dispositive of the agencies' lack of possession, custody, or control, as the agency does not have any legal right to order its employees turn over their personal phones for intrusive and indiscriminate forensic imaging.

**2. Compels Forensic Imaging that is Unduly Burdensome and Disproportionate to the Needs of This Limited Discovery.**

Requiring Defendants to seek (without legal authority) from non-parties—here, approximately 442 agents present at one or more of the fifteen immigration enforcement operations—their personal phones for forensic imaging is unduly burdensome and disproportionate to the needs of the discovery ordered by this Court.

The Magistrate Judge begins by "acknowledg[ing] the forensic imaging of hundreds of personal cell phones is a substantial undertaking" and that "there are significant privacy interests at issue." Order at 12. However, the Magistrate Judge concludes that it would not be burdensome because "defendants have the technical capabilities to conduct forensic imaging." *Id.* at 13. While those processes exist, they have not been implemented on the massive scale the Court envisions. At bottom, while forensic imaging of a handful of phones could be feasible and arguably manageable, it is demonstrably unduly burdensome for Defendant agencies to forensically image hundreds of personal phones, especially when some employees have declared under penalty of perjury that they did not use their phones for government business. This burden is only compounded by Defendants' lack of legal authority to demand or otherwise seize devices that are not owned by Defendants. Requiring Defendants to undertake forensic imaging of phones they do not own and lack legal authority to access will place the agencies in an impossible position—compelling them to violate the Constitution and infringe upon the constitutional rights of their employees, despite

continuing to coordinate with agents to ensure a comprehensive self-collection that is overseen by Defendants.

Relatedly, the number of agents potentially implicated across the fifteen operations is substantial: at least 442 employees. Putting aside the fact that Defendants lack custody and control over said agents' personal devices, by combining the number of government-issued and personal phones, that is approximately 884 phones that must be imaged, millions of pages of documents reviewed for relevance and privilege, and then produce them. ECF 370 at 8. Even assuming Defendants had legal authority to demand these devices be handed over for forensic imaging, undertaking this process for approximately 884 devices imposes extraordinary logistical, technical, and legal burdens, Moss Decl. ¶ 8.[1] Providing approximately 442 government-issued phones has already proven to be an incredibly burdensome endeavor. The burden of also imaging personal phones—"a highly intrusive process that captures the entire contents of a device" including "substantial volumes of personal, non-responsive, and privileged material" that likely results "in an enormous expenditure of time with comparatively few documents to produce", *Id.* ¶¶ 8, 13—far outweighs any incremental benefit. This conclusion rings especially true given (1) the fact that Plaintiffs have already moved for a renewed preliminary injunction based upon the evidence already produced in discovery to date, and (2) where there are alternative, targeted production methods that are less intrusive means of obtaining responsive information, such as determining which agents used a personal phone during any of the 15 specified operations, and requesting officers to do reasonable searches and capture complete screenshots of any responsive materials.[2] Rule 26(b)(2)(C) requires the Court to limit discovery in precisely these burdensome circumstances.

The Magistrate Judge resists Defendants' conclusion that the excessive burden of forensically imaging hundreds of phones they lack legal authority over outweighs the incremental benefit to Plaintiffs, largely by scrutinizing Defendants' self-collection efforts to date. First, as explained below, *infra* § II.B, contrary to the Magistrate Judge's assertion, Defendants have significantly refined their collection efforts as discovery has progressed and as the Court provided clarity through its various discovery orders and during countless status conferences. For example, as seen in question 46 of the questionnaire, CBP created

---

[1] The Magistrate Judge takes issue with the assertions in this declaration, discounting Defendants' concerns as "boilerplate, conclusory statements that forensic imaging is particularly burdensome[,]" Order at 13, but Defendants' declaration explains in concrete terms what the process would entail, the multiple steps and personnel required to undertake and review such imaging, and how those demands must be considered against the government's current staffing constraints amid ongoing attrition, which (as seen with discovery to date) have reduced the number of attorneys available to conduct document review and, consequently, prolonged the discovery process.

[2] Even having all agents who used their personal phones perform a review would result in voluminous duplicative materials (that will need to be reviewed prior to producing to Plaintiffs) because multiple agents are in a single text conversation.

a naming convention to assist in piecing together screenshots in a more readable fashion, which was a main complaint from Plaintiffs.

Second, the Magistrate Judge misconstrues Defendants' argument that Plaintiffs have been able to litigate this case without the need for forensic imaging as an effort to "absolve defendants of their obligation to produce other responsive documents." Far from that, Defendants simply note that Defendants have been able to provide Plaintiffs with responsive ESI required to litigate their case by less intrusive, alternative means within Defendants' legal authority. The Court also has discretion to prescribe a discovery method other than one selected by the party seeking discovery to mitigate concerns such burden or proportionality. *See* Fed. R. Civ. P. 26(c)(1)(C). Consistent with Rule 26, courts have discretion to limit discovery when "the evidence can be obtained through other, less burdensome means." *See Blue Spike LLC v. Universal Music Grp., Inc.*, No. 2:22-cv-06331-GW-SSCx, 2024 U.S. Dist. LEXIS 130440, at *8 (C.D. Cal. June 5, 2024) (internal citation and quotation marks omitted). Defendants has already and continues to take reasonable steps to comply with the Court's order by: (1) issuing a questionnaire to all agents present during the entirety of Operation at Large – Los Angeles to determine who used their government and/or personal phones at any point during the Operation; (2) separately instructing agents to deposit any and all government "records" (as defined at 44 U.S.C. § 3301) into agency repositories; (3) forensically imaging government phones of agents present during the fifteen operations (based on Plaintiffs' prioritization) as well as any personal phones that agents consent to forensically image, even if they had not participated in an enumerated operation; and (4) reviewing and producing responsive ESI from imaged devices. Despite the substantial burden of forensic imaging, Defendants have already forensically imaged approximately 177 government phones. CBP has imaged the five consenting agents' personal phones.

In addition, courts have consistently recognized that full-device imaging is an intrusive measure, and, as anyone who uses a modern phone knows, exposes vast quantities of private, irrelevant information far beyond the scope of discovery. *See Riley v. California*, 573 U.S. 373, 405 (2014) ("With all they contain and all they may reveal, [phones] hold for many Americans 'the privacies of life'"). Agents' personal phones will contain deeply private information that is unrelated to this litigation, which may include private images, medical records, financial information, location histories, communications with personal counsel, and private family communications. Forensic imaging would indiscriminately capture all that data, which would remain in the government's possession for at least the pendency of this litigation. The Magistrate Judge then presumes that it is technically feasible to conduct targeted searches after the collection, which

it is not, in dismissing Defendants' concerns of the intrusive nature of forensic imaging.[3] Such sweeping intrusion cannot be proportional to the limited purpose of this discovery, nor does it comport with the strictures of the Fourth Amendment as discussed below.

**3. Forensic Imaging of a Government Employee's Personal Phone is Unconstitutional as It Would Infringe Upon Their Fourth Amendment Rights.**

Federal courts have consistently recognized that downloading the entire contents of an employee's personal phone can raise serious constitutional concerns. *See United States v. Cano*, 934 F.3d 1002, 1015 (9th Cir. 2019) (recognizing that digital devices "contain the most intimate details of our lives" and "the uniquely sensitive nature of data on electronic devices carries with it a significant expectation of privacy[.]"); *Riley*, 573 U.S. at 385, 393 (describing phones as "a pervasive and insistent part of daily life" that, "as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse"). The Magistrate Judge acknowledges that "arguably the agents have a reasonable expectation of privacy as to the other content on their personal phones, even when they are used for work purposes." Order at 16. Yet, the Magistrate Judge improperly concluded that intrusive forensic imaging is reasonable, because of Defendants' previous deficiencies in their self-collection efforts, and that the Fourth Amendment is not violated because employees do not have a reasonable expectation of privacy in government records located on their personal phones. Setting aside whether forensic imaging is reasonable, the Magistrate Judge acknowledges that "[i]t has not addressed defendants' argument that it would be unconstitutional and they lack authority to forcibly seize agents' personal phones[.]" That alone provides sufficient basis to set aside the Magistrate Judge's Order as she failed to consider the constitutionality of the discovery she has ordered.

The Fourth Amendment clearly states that the "right of the people . . . against unreasonable searches and seizures, shall not be violated." Government employees are in no way exempt from this constitutional protection, which will inevitably be infringed upon should the Court permit intrusive, forensic imaging of agents' personal phones. *Riley*, 573 U.S. at 398 (recognizing "it is no exaggeration to say that many of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate."). The Constitution requires that any search or seizure be reasonable to be lawful. *See Riley*, 573 U.S. at 381 (noting that "the ultimate touchstone of the Fourth Amendment is 'reasonableness,' *Brigham City v. Stuart*, [547 U.S. 398, 403 (2006)]"). Based on the facts currently before the Court, the intrusive nature of the seizure and search of individual agents'

[3] The Magistrate Judge assumes that Defendants will be able to "run searches only for responsive information, using targeted search terms and date ranges," Order at 14, but that presupposes that Plaintiffs will agree to a materially narrowed set of custodians and appropriately targeted search terms (as opposed to the expansive demands they have advanced to date).

personal phones is not reasonable, nor do Defendants have the constitutional or statutory authority to comply with such a mandate.

As a comparison, in *Larios*, the Ninth Circuit reviewed the district court's analysis regarding the search and downloading of a California Highway Patrol officer's personal cellphone used for work purposes. 856 F. App'x at 704-05. The local agency employer had an explicit policy stating that "work stored on any type of electronic device is the property of the state and must be relinquished on demand." *Id.* at 705. Notably there, the employer agency did not have to seize the device because the employee ultimately relinquished his phone upon demand. Setting that point aside, the district court and the Ninth Circuit focused on the agency policy in assessing the officer's expectation of privacy and its impact on the defendant agency's possession, custody, and control. Here, by contrast, Defendant agencies advise that no federal agency component has a comparable policy or rule stating that "records" stored on a personal device transform the device as a whole into government property that must be relinquished upon demand. That distinction materially strengthens the privacy interests at issue here. Even in *Larios*, where the government agency did not have to seize the device in question because of an existing policy to accommodate relinquishment of personal devices was in place (whereas here, no such policy exists), the district court sharply criticized the wholesale downloading of the entire device. 442 F. Supp. 3d at 784 ("Downloading all the cell phone's data to retrieve a single thread of texts is like watering a plant with a firehose."). The concern was not merely access to work-related material, but the overbroad scope of copying all data on the personal phone.

Other courts within the Ninth Circuit (and beyond) have also taken issue with indiscriminate forensic imaging that puts employee privacy at risk and may result in their constitutional rights being infringed upon. *See, e.g.*, *Turiano v. City of Phoenix*, 562 F. Supp. 3d 261, 271 (D. Ariz. 2022) (holding that, where a public employer seeks to search its employee's personal phone for evidence of work-related misconduct but does not have a warrant to search the imaged data, the employee's Fourth Amendment rights are infringed upon); *Wolski v. Gardner Police Department*, 560 F. Supp. 3d 387, 396 (D. Mass. 2021) (concluding that "the data extraction was unconstitutional because it was unreasonable in scope" as extraction went beyond the data related to the incident as set forth in the court's order); *Hibbert v. Schmitz*, No. 3:16–cv–3028, 2017 WL 59075, at *6 (C.D. Ill. Jan. 5, 2017) ("[B]y copying the full set of information on the phone, Defendants infringed on that reasonable expectation of privacy" and infringed upon the phone holder's constitutional rights). These cases underscore two principles directly applicable here: (1) personal phones retain strong privacy protections even when used in part for work-related purposes; and

(2) wholesale downloading or imaging of an entire device is constitutionally suspect when it exceeds what is reasonably necessary to obtain relevant material. *Cano*, 934 F.3d at 1015; *Riley*, 573 U.S. at 385, 393

Nevertheless, the Magistrate Judge adopts Plaintiffs' theory that forensic imaging is the only reasonable means to collect responsive ESI from agents' personal devices, diminishing the constitutional concerns with this intrusive, indiscriminate process and noting that it is a necessary consequence of Defendants' self-collection efforts to date. But the Order mischaracterizes Defendants' collection efforts and disregards the fact that nearly the entire image of agents' personal phones will consist of non-responsive, personal data that agents would have a reasonable expectation of privacy over. Because agents' personal phones are not in Defendants' physical possession, Defendants must first receive their phones. Defendants have already sought consent, and nearly all employees have declined. *See* ECF 700 (detailing that the personal phones of the few agents who did consent have been imaged). Therefore, the next step is to order non-consenting employees to hand over their personal phone, and if they do not comply, they will face discipline. This would not be consent, but a seizure without a warrant, which violates the Fourth Amendment. Separately, the wholesale imaging (i.e., a search) of the phone without a warrant constitutes another Fourth Amendment violation. Nowhere in the Magistrate Judge's Order does she provide any justification for setting aside agents' Fourth Amendment rights to carry out intrusive, constitutionally impermissible forensic imaging of personal phones. Further, this argument ignores, as explained below, *infra* § II.B, that Defendants have taken extraordinary steps to comply with the Court's orders.

The Order at issue (ECF 370, 387, 750), which requires forensic imaging of any and all present agents' personal phones, would mandate precisely the kind of overbroad digital seizure that federal courts, including the Supreme Court, have cautioned against. And such a holding that any use of a personal phone whatsoever for government business (such as "[i]f my government phone is out of cell service" (ECF 613-15)) results in the entire device being subject to seizure by Defendants would be an extraordinary narrowing of Fourth Amendment protections for government employees and likely to have broad repercussions. Therefore, the District Court should impose reasonable limitations to the Magistrate Judge's Order.

**B. The Magistrate Judge's Order Is Clearly Erroneous Because the Agent Declarations Comprehensively Addressed the Court's Concerns and Complied with the Court's Previous Orders.**

The Magistrate Judge clearly erred in finding Defendants' self-collection was "wholly inadequate," and necessitated forensic imaging to remedy this deficiency. In addition to collecting, reviewing and producing responsive ESI and forensically imaging and producing responsive data from government-issued

phones for limited, expedited discovery,[4] Defendants also took reasonable steps to ensure agents preserve and deposit government records into appropriate government repositories.

Defendants do not dispute that their initial self-collection efforts were not sufficient. But those efforts occurred at the outset of fast-paced discovery, where the Magistrate Judge had yet to provide clarity as to the extent of Defendants' discovery obligations and as Defendants were simultaneously working to stand up the processes necessary to address the volume and complexity of discovery in this litigation. As discovery has progressed, and the Court has provided clarity as to threshold discovery disputes, Defendants have worked tirelessly to identify and troubleshoot issues as they have arisen, refine their collection and review processes, and have made various rolling productions (which remain ongoing). Defendants have also continued to work in good faith with Plaintiffs to address outstanding issues and facilitate the commencement of plenary discovery. Any deficiencies identified along the way thus reflect the practical challenges of developing and implementing a complex discovery process on an expedited schedule—not intentional or bad faith conduct.

Regarding Defendant ICE agents' declarations, the agency identified personnel who were present during the 12 operations that their agents participated in, including those who did not make arrests. ICE advises it sent declarations to agents asking whether they used their personal phones to conduct "government business" during the operations where they were present. ICE agents returned their declarations attesting, under penalty of perjury, that they did not use their personal phones to conduct government business, *see, e.g.*, ECF 562-3, 563-8, presenting no justification to forensically image their personal phones—even assuming such process comported with the strictures of the Fourth Amendment and Ninth Circuit precedent, which it does not.

The Magistrate Judge incorrectly held that "[r]ather than address whether the agent used his or her personal phone for work purposes, the declarations state whether the agent used his or [sic] personal phone *during* an operation." Order at 9. However, the declarations state whether the agent used their "personal phone for government business" generally which the declaration defines as "communications or activities relating to any of the operations" they identified from the limited, expedited discovery enumerated operations. ECF 503-23. This definition adequately captures the purpose of the Court's forensic imaging orders: to identify agents present at operations that had used their personal phones for any "government business." Plaintiffs acknowledge the "signed declarations . . . attesting that [ICE agents] did not use their

[4] "Limited, expedited" discovery has resulted in review of at least 618,209 documents (amassing 4,506,804 pages) and hundreds of hours of body-worn camera videos. Review will only grow significantly as the government continues to produce documents from ESI searches and the rest of the government cell phones. All of this will be produced prior to what will prove to be a more burdensome merits discovery, which is already up to approximately 132 RFPs (not including subparts) and growing.

personal phones 'during' those operations." ECF 613 at 17. Yet, Plaintiffs have tried to undermine these declarations as "pre-fabricated affidavits" without providing any support for the baseless assertion. *Id.* at 1. There is nothing wrong with the agency using standardized language to address the Court's forensic imaging orders, and the affidavits were signed under penalty of perjury by the officials involved in the operations, who can be subject to discipline, including removal, if they provide false attestations. In line with its discovery obligations as clarified under the Court's orders, ICE engaged with its agents to identify relevant custodians that may be implicated by the forensic imaging order and had them attest under penalty of perjury whether or not they used their personal phones during any of the enumerated operations.[5]

The Magistrate Judge also took issue with Defendant ICE's reliance on a form for agents to prepare their declarations, accusing the agency of providing agents with "prefilled" responses for the agent to state that they "did not use a personal phone for government business." Order at 9-10. However, the declaration cited for this contention was an example declaration that had already been filed out, where the agent declarant had simply indicated that they had not used their personal phone for government business. The fact it was filled out and signed by an officer (again under penalty of perjury) does not support any malintent. Neither Plaintiffs nor the Magistrate Judge identified any legitimate basis to question the ICE agent declarations' veracity, especially when no ICE officers that have been deposed indicated using their personal phone during government business.

Regarding Defendant CBP agents' responses, the agency sent their questionnaire (also to be signed under penalty of perjury) to approximately 1,462 employees who CBP believes were part of Operation at Large – Los Angeles. *See* ECF 503-27. CBP sent the questionnaire to all employees involved in Operation at Large – Los Angeles, not just those involved in the fifteen operations, to ensure preservation of relevant materials for this and other litigations generally—yet another indication that Defendants are taking their discovery obligations seriously. As of this filing, the agency advises that 1,396 CBP employees have responded to the questionnaire and it continues working to ensure all relevant employees answer the questionnaire. Of those that have already responded initially 88 answered that they were willing to have their personal phone forensically imaged. Of those persons, 83 of the employees have since withdrawn their consent. CBP has imaged the five phones of agents who provided their consent. ECF 700-1 ¶¶ 8-9.

[5] While not addressed in the Magistrate Judge's Order, Plaintiffs rightfully concede they have no basis to demand personal phones of ICE agents, as there is no evidence in the record indicating ICE agents had used their personal phones during any of the operations and, in fact, there is affirmative evidence to the contrary. ECF 613 at 17. Further, based on the results of the CBP Questionnaire, 374 agents attested under penalty of perjury that they did not use their personal phones for Operation at Large – Los Angeles. To the extent any of those agents were part of the 15 enumerated operations covered by "limited, expedited" discovery, those agents should also be excluded from this order.

The questionnaire also includes questions asking employees to turn off any auto-delete features and explains how to export any relevant data to a CBP repository. *See* ECF 503-27 at 11 (questions 45 and 46).

The Magistrate Judge took issue with CBP's questionnaire as it "does not inform the CBP agents [that] there is a court order requiring their personal phones to be imaged" and that it "provides no guidance about self-collection or explanation about what constitutes a potentially responsive document." Both concerns are unavailing and do not warrant discounting CBP's efforts to comply with the Order. First, as Defendants have maintained throughout this dispute, they lack possession, custody, or control over agents' personal phones—meaning they lack the legal authority to *demand* or otherwise seize any agent's personal phone. There is no Department of Homeland Security ("DHS") policy that would allow it to seize personal phones of its agents, even if they are used during work operations. The only relevant DHS policy provides that agents are to "maintain official records" and deposit such records into a federal repository. *See* DHS, Policy Directive 141-01 (2014), last visited Oct. 5, 2026, https://www.dhs.gov/sites/default/files/2024-02/14_0812_%20Records%20and%20Information%20Management%20Directive%20141-01.pdf [permalink: https://perma.cc/89D7-DZ96]; DHS, Policy Directive 141-03 (2018), last visited Oct. 5, 2026, https://www.dhs.gov/sites/default/files/2024-06/141-03_policy-directive.pdf [permalink: https://perma.cc/4SWL-VXYS].[6] Nevertheless, to reasonably comply with the Court's discovery orders, as the Magistrate Judge acknowledged in her Order, CBP "collect[ed] information regarding use of personal devices for work." Order at 10. And despite lacking legal authority to demand that agents hand over their personal devices, the agency asked each agent that used their personal phone whether they would consent to having their device forensically imaged. Although the Magistrate Judge took issue with asking for consent, without legal authority to demand the device, the agency can only ask their agents whether they would allow for the forensic imaging of their personal phone. And while Defendants have and continue exercising their right to seek relief from the forensic imaging requirement (which, as enforced here, defies the federal rules of discovery), Defendants had already been instructing agents to deposit government "records" (as defined at 44 U.S.C. § 3301) in their possession, whether that be on their government or personal device, into agency repositories based on the aforementioned policy.

Second, the Magistrate Judge clearly erred in finding that CBP did not provide instructions to its employees on how to self-collect. Question 46 of the CBP questionnaire lays out, in detail, exactly how to self-collect and then asks the employee to confirm they have complied. ECF 503-27 at 11 (detailing that agents "must export any and all information concerning your official duties and government operations

[6] The Court may and should judicially notice Defendant DHS' policy directives when evaluating the agencies' efforts already underway for collecting government "records" as defined at 44 U.S.C. § 3301. *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (taking judicial notice of information made publicly available by an agency on its website).

from your personal phone or any other personal device used to your official CBP e-mail" and providing instructions on where to submit those records).

In the midst of sprawling and ever-growing discovery, Defendant agencies took reasonable steps to identify relevant custodians, instructing them to deposit any federal records into agency repositories for production in discovery; and where agents attested under penalty of perjury to using their personal phone for government business, sought their consent to forensically image their device. Put simply, Defendant agencies have done what they reasonably could do within the limits of their authority, and the record to date provides no legitimate basis to discount those efforts.

**III. CONCLUSION**

For the foregoing reasons, the District Court should sustain Defendants' objections and set aside or modify the Magistrate Judge's September 21, 2026 Order, and enter a protective order limiting any compelled collection from personal phones to a narrowly tailored protocol such as that detailed above.

Dated: October 5, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

TIBERIUS DAVIS
DANIEL F. MUMMOLO
Counsel to the Assistant Attorney General

AUGUST FLENTJE
Deputy Director

JONATHAN A. ROBBINS
Assistant Director

JACOB A. BASHYROV
ANIELLO DESIMONE
STEPHANIE GROFF
Trial Attorneys

*<u>/s/ Jason K. Zubata</u>*
JASON K. ZUBATA
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4143
Email: Jason.k.zubata@usdoj.gov

*Counsel for Defendants*

**L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record certifies that this filing is 7,000 words, which complies with L.R. 11-6.1.

Dated: October 5, 2026

Respectfully submitted,

*/s/ Jason K. Zubata*
JASON K. ZUBATA
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice

*Counsel for Defendants*