STACY TOLCHIN (SBN 217431)
*stacy@tolchinimmigration.com*
LAW OFFICES OF STACY TOLCHIN
776 E. Green St., Suite 210
Pasadena, CA 91101
Tel: 213-622-7450; Fax: 213-622-7233

MOHAMMAD TAJSAR (SBN 280152)
*mtajsar@aclusocal.org*
MAYRA JOACHIN (SBN 306065)
*mjoachin@aclusocal.org*
DAE KEUN KWON (SBN 313155)
*akwon@aclusocal.org*
STEPHANIE PADILLA (SBN 321568)
*spadilla@aclusocal.org*
ALYSSA MORONES (SBN 343358)
*amorones@aclusocal.org*
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
P.O. Box 811370
Los Angeles, CA 90081-0007
Tel: 213-977-9500; Fax: 213-915-0219

*Counsel for Stop/Arrest Plaintiffs*

(*Additional counsel listed on next page*)

MARK ROSENBAUM (SBN 59940)
*mrosenbaum@publiccounsel.org*
REBECCA BROWN (SBN 345805)
*rbrown@publiccounsel.org*
RITU MAHAJAN (SBN 252970)
*rmahajan@publiccounsel.org*
GINA AMATO (SBN 215519)
*gamato@publiccounsel.org*
AMANDA MANGASER SAVAGE (SBN 325996)
*asavage@publiccounsel.org*
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Counsel for All Plaintiffs*

ANNE LAI (SBN 295394)
*alai@law.uci.edu*
UC IRVINE SCHOOL OF LAW IMMIGRANT AND RACIAL JUSTICE SOLIDARITY CLINIC
P.O. Box 5479
Irvine, CA 92616-5479
Tel: 949-824-9894; Fax: 949-824-2747

*Counsel for Stop/Arrest Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

Pedro VASQUEZ PERDOMO, et al.,

Plaintiffs,

v.

Markwayne MULLIN, in his official capacity as Secretary, Department of Homeland Security, et al.,

Defendants.

Case No.: 2:25-cv-05605-MEMF-SP

**SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF COUNSEL FOR SUSPICIONLESS STOPS AND FIRST DISCRIMINATORY TREATMENT CLASSES**

Hon. Maame Ewusi-Mensah Frimpong

Date: September 24, 2026
Time: 10:00 a.m.
Place: Courtroom 8B

JACOB S. KREILKAMP (SBN 248210)
*jacob.kreilkamp@mto.com*
DAVID FRY (SBN 189276)
*david.fry@mto.com*
ADAM B. WEISS (SBN 296381)
*adam.weiss@mto.com*
SARA H. WORTH (SBN 341088)
*sara.worth@mto.com*
LAURA R. PERRY (SBN 342504)
*laura.perrystone@mto.com*
HENRY D. SHREFFLER (SBN 343388)
*henry.shreffler@mto.com*
LAUREN E. KUHN (SBN 343855)
*lauren.kuhn@mto.com*
ANGELA URIBE (SBN 353579)
*angela.uribe@mto.com*
MAGGIE BUSHELL (SBN 354048)
*maggie.bushell@mto.com*
MUNGER, TOLLES & OLSON LLP
350 S. Grand Ave., 50th Floor
Los Angeles, CA 90071
Tel: 213-683-9100; Fax: 213-683-9100

*Counsel for Stop/Arrest Plaintiffs*

BREE BERNWANGER (SBN 331731)
*bbernwanger@aclunc.org*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel: 415-621-2493

*Counsel for Stop/Arrest Plaintiffs*

ANDRES HOLGUIN-FLORES (SBN 305860)
*aholguinflores@aclu-sdic.org*
ACLU FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Tel: 619-398-4199

*Counsel for Stop/Arrest Plaintiffs*

EDGAR AGUILASOCHO (SBN 285567)
*eaguilasocho@farmworkerlaw.com*
MARTÍNEZ AGUILASOCHO LAW, INC.
900 Truxtun Ave, Suite 300
Bakersfield, CA 93301
Tel: 661-859-1174
*Counsel for Plaintiff United Farm Workers*

JESSICA KARP BANSAL (SBN 277347)
*jessica@ndlon.org*
LAUREN MICHEL WILFONG*
*lwilfong@ndlon.org*
NATIONAL DAY LABORER ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Tel: 626-214-5689

*Counsel for Stop/Arrest Plaintiffs*

MATTHEW J. CRAIG (SBN 350030)
*mcraig@heckerfink.com*
MACK E. JENKINS (SBN 242101)
*mjenkins@heckerfink.com*
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Tel: 212-763-0883; Fax: 212-564-0883

*Counsel for Access/Conditions Plaintiffs*

CARL BERGQUIST*
*cbergquist@chirla.org*
COALITION FOR HUMANE IMMIGRANT RIGHTS
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

*Counsel for Plaintiff Coalition for Humane Immigrant Rights*

ALVARO M. HUERTA (SBN 274787)
*ahuerta@immdef.org*
BRYNNA BOLT (SBN 339378)
*bbolt@immdef.org*
ALISON STEFFEL (SBN 346370)
*asteffel@immdef.org*
IMMIGRANT DEFENDERS LAW CENTER
634 S. Spring St., 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

*Counsel for Plaintiff Immigrant Defenders Law Center*

* Admitted pro hac vice

## I. INTRODUCTION

Plaintiffs' proposed suspicionless stops class is not impermissibly fail-safe. If the Court disagrees, Plaintiffs offer the following revised class definition that eliminates any doubt:

> All persons who, since June 6, 2025, have been or will be subjected to a detentive stop by federal agents or officers for purposes of immigration enforcement in this District, other than at a port of entry, checkpoint, or other functional equivalent of the border, based on their apparent status as low-income or working-class and Latino.

This simple modification removing reference to pre-stop assessments of reasonable suspicion focuses the class definition on "objective criteria" that say nothing of the ultimate question of liability. *Brown v. DirecTV, LLC*, 330 F.R.D. 260, 268 (C.D. Cal. 2019). The Court not only has the authority to certify this modified class, but it has an obligation to do so rather than deny class certification altogether.

## II. ARGUMENT

### A. The Ninth Circuit has not prohibited fail-safe classes.

A fail-safe class is "one that is defined so narrowly as to 'preclude[ ] membership unless the liability of the defendant is established.'" *Brown*, 330 F.R.D. at 268 (quoting *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1142, n.7 (9th Cir. 2016)). While "[t]he Ninth Circuit has yet to opine on the propriety of failsafe classes," *Makaron v. Enagic USA, Inc.*, 324 F.R.D. 228, 235 (C.D. Cal. 2018), it has indicated that "it does not look favorably on precluding class certification under the fail-safe class theory." *Brown*, 330 F.R.D. at 268. That disapproval stems from its decision in *Vizcaino v. U.S. Dist. Court for W. Dist. of Wash.*, 173 F.3d 713 (9th Cir. 1999), which—consistent with some sister circuits—appears to reject a prohibition on fail-safe classes.

In *Vizcaino*, the Ninth Circuit held that a class definition that included all allegedly misclassified individuals "who meet the definition of employees of Microsoft Corporation under the common law" was not fail-safe because implicit in the definition was that putative class members "*claim* to have been (or to be) common law employees," a complaint shared by all class members against a unified Microsoft practice. *Id.* at 720, 722. The Ninth Circuit reasoned that a prohibition on fail-safe classes "would preclude certification of just about any class of persons alleging injury from a particular action" because all "[t]hese persons are linked by this common

complaint." *Id.* (quoting with approval *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1105 (5th Cir. 1993)); *see also In re White*, 64 F.4th 302, 315 (D.C. Cir. 2023) (rejecting "a rule against 'fail-safe' classes as a freestanding bar to class certification ungrounded in Rule 23's prescribed criteria"); *In re Rodriguez*, 695 F.3d 360, 370 (5th Cir. 2012) (same).

This unfavorable view of the fail-safe prohibition derives logically from the Circuit's rejection of ascertainability as an independent requirement for certification of Rule 23(b)(2) classes. *See* ECF 708 at 15-16; *Fitzmorris v. New Hampshire Dep't of Health & Hum. Servs. Comm'r Lori Weaver*, No. 21-CV-25-PB, 2023 WL 8188770, at *9 (D.N.H. Nov. 27, 2023) (rejecting "the prohibition against fail-safe classes" when assessing a (b)(2) class and noting that the doctrine "arises out of the implied requirement of ascertainability which . . . does not generally apply to (b)(2) classes."); *see, e.g.*, *Afghan & Iraqi Allies v. Pompeo*, 334 F.R.D. 449, 464 (D.D.C. 2020) (rejecting fail-safe argument as strain of implied ascertainability requirement). In fact, the Ninth Circuit has instructed courts not to invent new requirements for class certification beyond the text of Rule 23, *see True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 929 (9th Cir. 2018)—an especially important consideration here because applying the terms of Rule 23 "as written . . . should eliminate most, if not all, genuinely fail-safe class definitions." *In re White*, 64 F.4th at 314.

**B. <u>Plaintiffs' initial suspicionless stops class is not fail-safe.</u>**

Turning to the instant dispute, neither Plaintiffs' original class definition nor their proposed modification creates a fail-safe class. This is so for the straightforward reason that membership alone does not presume Defendants' liability, even if the class definition refers to the ultimate legal standard. *Andersen v. Briad Rest. Grp., LLC*, 333 F.R.D. 194, 205 (D. Nev. 2019) ("Because a class is similarly linked by allegations of wrongful conduct, denying certification based on the definition's mere reference to the ultimate issue linking them would 'preclude certification of just about any class of persons alleging injury from a particular action.'") (quoting *Vizcaino*, 173 F.3d at 722). Just as with Plaintiffs' warrantless arrest class, which also refers to the Fourth Amendment standard (certifying a class arrested "without a pre-arrest, individualized assessment of probable cause that the person poses a likelihood of escape," ECF 739 at 7), reference alone to

the reasonable suspicion standard here does not render it impermissible. It is the very policy of denying such pre-stop assessments to putative class members that binds them for class treatment.

In any event, the definition itself is not fail-safe for the simple reason that membership in the class does not automatically guarantee Defendants' Fourth Amendment liability. When presented with a substantially similar reasonable suspicion class,[1] the court in *United Farm Workers v. Noem*, 785 F. Supp. 3d 672, 712 (E.D. Cal. 2025) explained why membership did not presume liability: liability required additional findings for a class member, including that "(1) the person be subjected to an investigatory, detentive stop by Border Patrol during the relevant period; and (2) the Court's finding that Border Patrol had a pattern or practice of conducting stops without warrants and without assessments of reasonable suspicion." *Id.* (citing *Willis v. Enterprise Drilling Fluids, Inc.*, 2015 WL 6689637, at *7 (E.D. Cal. Oct. 28, 2015) (class not fail-safe because "[i]f Plaintiff succeeds in establishing the existence of unlawful policies or practices common to all the class members, the Court would not be required to determine the legal merits of each class members' claims. . . .")). This logic applies equally here. Defendants' liability still requires the Court to establish, among other facts, that class members are stopped during the relevant period and that the unlawful policy that causes their injuries in fact exists. In other words, class membership is defined by "objective criteria," like the basis on which Defendants' agents and officers stopped an individual and whether it boiled down to a demographic profile rather than an individualized assessment of suspicion prior to stopping the individual. *Brown*, 330 F.R.D. at 268.

**C. <u>Plaintiffs' proposed modification eliminates all doubt of the class's validity.</u>**

Even if the Court were inclined to maintain its tentative view that Plaintiffs' original proposed class is impermissibly fail-safe, Plaintiffs' suggested modification resolves any such defect. Both sides agree that the Court has the authority to certify a class different from that which Plaintiffs initially proposed. *See Arevalo v. Trump*, 785 F. Supp. 3d 644, 658 (C.D. Cal. 2025)

---

[1] That class was defined as "All persons who, since January 6, 2025, have been or will be subjected to a detentive stop by Border Patrol in this district pursuant to a practice of conducting stops without warrants and without an individualized assessment of reasonable suspicion whether the person (1) is engaged in an offense against the United States or (2) is a noncitizen unlawfully in the United States." *UFW*, 785 F. Supp. 3d at 710-11.

(recognizing that "the district court may, within its discretion, amend the class definition, even *sua sponte*."). This includes modifying a class definition that a party argues is fail-safe, since "[t]he solution for cases like these is for the district court either to work with counsel to eliminate the problem or for the district court to simply define the class itself." *In re White*, 64 F.4th at 315; *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) (fail-safety defects "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis"); *see, e.g.*, *Bor Pha v. Yia Yang*, No. 2:12-CV-01580-TLN, 2014 WL 654559, at *6 (E.D. Cal. Feb. 19, 2014) (exercising discretion to refine a class definition to remove reference to a legal conclusion contained within a class definition).

Plaintiffs' alternative definition eliminates any question of circularity by removing reference to the Fourth Amendment's legal standard while not disturbing any of the Court's tentative Rule 23 analysis. Defendants' arguments to the contrary lack merit. Their principal contention appears to be that because "'apparent status as low income or working class and Latino' are legitimate factors in the reasonable suspicion test," the class definition is fail-safe. ECF 780 at 2; *id.* at 3 (imputing Justice Kavanaugh's concurrence with the Supreme Court's majority). But this is exactly backwards: if Defendants believe that the Fourth Amendment *permits* reliance on a demographic profile to stop an individual, then membership within the class does not presume liability at all and is not fail-safe.

Defendants also argue that this modification is "too substantial" to be made now, even after having had the opportunity to brief it further. ECF 780 at 3. But they do not explain how this is so. To the contrary, the proposed modification is largely cosmetic. Assuming the fail-safe prohibition applies in the Ninth Circuit, and further assuming the original class was fail-safe but otherwise satisfied Rule 23's requirements, then any remaining fail-safe concern "will in all likelihood be one of wording, not substance." *In re White*, 64 F.4th at 314. The proposed modification simply shifts the wording of the class definition without impacting the size of the class, the questions common to its members, or any of the remaining Rule 23 requirements. Defendants argue that the modification makes the class broader by "sweep[ing] in both people for which there was an assessment of reasonable suspicion and people for which there was not." ECF

780 at 4. Setting aside Defendants' apparent concession that some of the stops lacked any suspicion at all, whether reliance on a demographic profile to conduct a stop satisfies the reasonable suspicion requirement is exactly the ultimate merits question—and not one that class membership presumes the answer to, by Defendants' own admission. In any event, the modification does not alter the Rule 23(a) analyses because all stops based on a broad demographic profile necessarily are not individualized, regardless whether the class definition references the Fourth Amendment standard. The modification only omits language contrasting such a stop to one supported by reasonable suspicion. The new class therefore remains just as numerous, Plaintiffs' claims are just as typical, and the common questions—including whether reliance on a broad profile constitutes reasonable suspicion—are just as prevalent across the class.

Defendants also reprise their failed ascertainability argument, ECF 780 at 4, despite no such requirement existing in this Circuit. *See* ECF 739 at 35-36 & n.20 (rejecting Defendants' ascertainability arguments).[2] They argue that the demographic profile in the class definition is ill-defined and lacks "clear meaning." ECF 780 at 4. But the words are clear: the class definition includes all those individuals subject to Defendants' practice of relying on a demographic profile of working-class or low-income Latinos to determine whom to stop. No more certainty is required to challenge this practice, for which there exists extensive, undisputed record evidence.

Finally, Defendants will suffer no prejudice if the Court certifies this modified class. "[R]efining the definition is the applicable solution should the court find the proposed class definition problematic," even without the chance to file a supplemental brief. *Solano v. Kroger Co.*, No. 3:18-CV-01488-AR, 2024 WL 4040444, at *7 (D. Or. July 16, 2024), *R. & R. adopted*, 2024 WL 4333378 (D. Or. Sept. 27, 2024), *aff'd*, 2026 WL 1396385 (9th Cir. May 19, 2026). That the Court has afforded Defendants that opportunity eliminates any theoretical prejudice.

[2] The only courts within the Circuit to impose an ascertainability requirement appear to have done so when assessing a Rule 23(b)(3) class. *See* ECF 608 at 8-9 (collecting cases); *see, e.g.*, *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008) (applying ascertainability doctrine to a (b)(3) class and finding class fail-safe because the class was defined to include anyone to whom defendant has "falsely advertised").

Respectfully submitted,

DATED: October 13, 2026

ACLU OF SOUTHERN CALIFORNIA

By: */s/ Mohammad Tajsar*

MOHAMMAD TAJSAR
*Counsel for Stop/Arrest Plaintiffs*

DATED: October 13, 2026

MUNGER, TOLLES & OLSON LLP

By: */s/ Jacob S. Kreilkamp*

JACOB S. KREILKAMP
*Counsel for Stop/Arrest Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record certifies that this filing is 2,019 words, which complies with L.R. 11-6.1.

DATED: October 13, 2026

MUNGER, TOLLES & OLSON LLP

By: */s/ Jacob S. Kreilkamp*
JACOB S. KREILKAMP
*Counsel for Stop/Arrest Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2026, I electronically filed the foregoing with the Clerk of the U.S. District Court for the Central District of California using the CM/ECF system, which provided notification of such filing to all registered CM/ECF users.

DATED: October 13, 2026 MUNGER, TOLLES & OLSON LLP

By: */s/ Jacob S. Kreilkamp*
JACOB S. KREILKAMP
*Counsel for Stop/Arrest Plaintiffs*