**U.S. Department of Justice**
Civil Division
Office of Immigration Litigation

*Washington, D.C. 20530*

VIA CM/ECF

October 15, 2026

To: The Honorable Magistrate Judge Pym

Re: *Perdomo, et al. v. Mullin, et al.*,
2:25-cv-05605-MEMF-SPx

Dear Your Honor:

Defendants respectfully submit this reply supplemental letter brief pursuant to ECF No. 768, regarding the use of point-of-collection keywords for the culling of Electronically Stored Information ("ESI") from individual custodians.

Plaintiffs contend in their responsive brief that the cases upon which Defendants rely in the opening letter brief do not provide support for the propriety of point-of-collection keywords. As explained below, they are mistaken on that point. But it is certainly worth noting that conspicuously absent from their response is any authority espousing the position that point-of-collection keywords are not a valid tool for the initial culling of data in a massive dataset. Nor could they, as courts allow point-of-collection keyword filtering so long as there is transparency, cooperation, and defensive validation. Under the Federal Rules of Civil Procedure, courts consistently emphasize proportionality to manage skyrocketing electronic data volumes. Applying keyword filters directly at the source—prior to pulling data into an eDiscovery processing platform—is accepted as a valid way to reduce costs and narrow the scope of discovery. *See The Sedona Conference, Commentary on Defense of Process: Principles and Guidelines for Developing and Implementing a Sound E-Discovery Process* (pub. comment ed. Sept. 2016), Principle 7, located at *https://www.ediscoverycouncil.com/sites/default/files/The%20Sedona%20Conference%20Commentary%20on%20Defense%20of%20Process_Public%20Comment%20Version_Sept%202016.pdf* ("Due to the explosion in the volume of ESI in many organizations, an important part of the e-discovery process, in many cases, is a series of steps to reduce the volume of ESI *at each successive stage of the process*.") (emphasis added). Point-of-collection keywords can be justified under the Federal Rules, and Plaintiffs do not appear to contest that general point.

With respect to *Schulte v. LinkedIn Corp.*, 2026 WL 1905851 (N.D. Cal. July 1, 2026), Plaintiffs contend this case does not support the government's position regarding point-of-collection keywords, because "the court addressed whether the defendant could apply search

terms to voluminous data that had *already been collected.*" Plaintiffs Response at 2 (emphasis in original). But although that is true, the Court was very clear that it was discussing "LinkedIn's use of search strings to pre-cull the custodial documents given to Relativity aiR." *Schute*, at *2. In other words, it was plainly discussing the universe of documents collected *before* it was subject to refined searching. The whole point of the dispute in the case was to limit the amount of data to which Relativity aiR would need to be applied, as LinkedIn was specifically contesting that "it would be disproportionate and unduly burdensome to apply Relativity aiR to all custodial files without applying search strings first." *Id.* A similar issue is presented in this case. The Plaintiffs are seeking documents from 97 custodians (according to their representation in the last status conference), with lengthy date ranges, and want no culling before the refined searching process begins. *Schulte* plainly supports Defendants' position search terms are helpful to cull large datasets. Plaintiffs also claim that Defendants improperly rely on *Livingston v. City of Chicago*, 2020 WL 5253848 (N.D. Ill. Sep. 3, 2020) and *In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig.*, 2013 WL 1729682 (N.D. Ind. Apr. 18, 2013). However, the *Schulte* court specifically cited to these cases to support the proposition that search terms are appropriate to pre-cull documents before subjecting the data to the more refined searches under technology-review platforms. *Id.* at *2 (citing *Livingston* and *Biomet*).

In any event, even if these cases are not sufficient to satisfy the Court, there is also authority specifically supporting the use of point-of-collection keywords in eDiscovery at pre-ingestion phases. For example, in *Raine Group LLC v. Reign Capital, LLC*, 2022 WL 538336 (S.D.N.Y. Feb. 22, 2022), the court explained that "[w]hen a party is a large entity, it is more likely there may be redundancies in sources of information and custodians or locations where relevant information is not likely to be found." *Id.* at *2. In that case, the producing party was a merchant bank with over 100 employees. The court endorsed applying proportionality principles and iterative keyword searches directly at the point of identification and collection rather than waiting until downstream review or production. The decision affirms that targeted, keyword-backed collection is an appropriate method of filtering discovery.

In their response brief, Plaintiffs criticize Defendants for not providing enough information in terms of benchmarks or an "industry standard." *See* Plaintiffs' Response *generally*. Putting aside that Defendants specifically explained there is no precise *mathematical* benchmark for determining what makes a dataset "massive," there are a number of factors that contribute to such a determination, and Defendants fully explained why those factors supported a determination in this case. That position is bolstered by the numerous authorities cited which explain the practical implication of the size of a dataset. (And Plaintiffs offer no authorities disputing those practical implications in rebuttal.) Further supporting Defendants' position is a Model Agreement Regarding Discovery of ESI for the Western District of Washington, setting forth that "[a] search that returns more than [alternative 1] [(250) megabytes of data, excluding Microsoft PowerPoint files, audio files, and similarly large file types] [alternative 2] [(400) unique documents, excluding families], is presumed to be overbroad." Located at https://www.wawd.uscourts.gov/sites/wawd/files/ModelESIAgreement .pdf.

Plaintiffs' original issue with point-of-collection keywords were claimed problems with indexing issues. But as the Court is aware, Defendants conducted testing with respect to the indexing issues, and as a solution, enabled advanced Purview capabilities that would largely

eliminate those indexing issues. Plaintiffs' brief is now silent with respect to that issue, so it is unclear whether they are arguing that even with the advanced settings enabled in Purview, the indexing issues persist. Their brief seems to suggest that such indexing issues potentially still exist in A360. However, if Defendants are pulling emails from both A360 and Purview, then Purview should cover any indexing issues in email.

Defendants are not disputing that the actual keywords used at the point-of-collection should be legally defensible, and must be objectively reasonable under the Federal Rules. As set forth above, courts only approve point-of-collection keywords when there is transparency, and Defendants are negotiating in good faith with Plaintiffs regarding the keywords, and will rely on custodian interviews and technical expertise to determine the appropriate terms. Defendants do not dispute that iterative testing is appropriate to ensure the process is a sensible one. But the Court should not alter its prior order allowing for the sensible use of keywords to cull the dataset to a manageable one.[1]

Respectfully submitted,

s/Jonathan Robbins
JONATHAN ROBBINS
Assistant Director
United States Department of Justice
Civil Division
Office of Immigration Litigation
Ben Franklin Station, P.O. Box 878
Washington, D.C. 20044
(202) 305-8275

---

1 In their response brief, Plaintiffs claim they are burdened because Defendants did not agree that five email addresses should be included on the public docket. Plaintiffs' complaint regarding burden in this case is misguided given how lopsided the burden has been against Defendants in this case, but nevertheless, Defendants maintain that email addresses should not be included on the public docket. *See*, *e.g.*, *Al Otro Lado, Inc. v. Wolf*, 2020 WL 4551687, at *12 (S.D. Cal. Aug. 6, 2020) (granting motion to seal document redacting CBP employees' phone numbers and email addresses); *see also In re Matter of Certain Claims and Noticing Agents' Receipt of Fees in Connection With Unauthorized Arrangements With XClaim Inc.*, 647 B.R. 269 (S.D.N.Y. Dec. 8, 2022) (even if most of the subject email addresses could have been located on the internet, having such direct contact information available for public viewing on the court docket in a single document plainly would have made it easier for disgruntled parties or malicious actors to have a direct and easy means of communication to threaten, intimidate, or harass public servants).