MARK ROSENBAUM (SBN 59940)
*mrosenbaum@publiccounsel.org*
REBECCA BROWN (SBN 345805)
*rbrown@publiccounsel.org*
RITU MAHAJAN (SBN 252970)
*rmahajan@publiccounsel.org*
GINA AMATO (SBN 215519)
*gamato@publiccounsel.org*
AMANDA M. SAVAGE (SBN 325996)
*asavage@publiccounsel.org*
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977

*Counsel for All Plaintiffs*

MATTHEW J. CRAIG (SBN 350030)
*mcraig@heckerfink.com*
MACK E. JENKINS (SBN 242101)
*mjenkins@heckerfink.com*
ANNE O'TOOLE (SBN 340469)
*aotoole@heckerfink.com*
HECKER FINK LLP
1019 E. 4th Place, 3rd Floor
Los Angeles, CA 90013
Telephone: (212) 763-0883
Facsimile: (212) 564-0883

*Counsel for Access/Detention Plaintiffs*

(*additional counsel information on cont. page*)

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

Pedro VASQUEZ PERDOMO, *et al.*,

Plaintiffs,

v.

Markwayne MULLIN, in his official capacity as Secretary, Department of Homeland Security, *et al.*,

Defendants.

Case No.: 2:25-cv-05605-MEMF-SP

***DISCOVERY MATTER***

**NOTICE OF MOTION; JOINT STIPULATION REGARDING ACCESS/DETENTION PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

Hon. Maame Ewusi-Mensah Frimpong

Referred to Hon. Sheri Pym
United States Magistrate Judge

| | |
|---|---|
| Hearing date: | November 17, 2026 |
| Hearing time: | 11:00 a.m. |
| Discovery Cutoff: | March 24, 2027 |
| Pre-Trial Conf.: | August 4, 2027 |
| Trial: | August 23, 2027 |

HELIA BIDAD (SBN 348633)
*hbidad@heckerfink.com*
HECKER FINK LLP
1050 K Street, NW
Washington, DC 20001
Telephone: (212) 763-0883

*Counsel for Access/Detention Plaintiffs*

CARL BERGQUIST* (DC BAR 1720816)
*cbergquist@chirla.org*
COALITION FOR HUMANE IMMIGRANT RIGHTS
2351 Hempstead Road
Ottawa Hills, OH 43606
Telephone: (310) 279-6025

*Counsel for Plaintiff Coalition for Humane Immigrant Rights*

ALVARO HUERTA (SBN 274787)
*ahuerta@immdef.org*
BRYNNA BOLT (SBN 339378)
*bbolt@immdef.org*
ALISON STEFFEL (SBN 346370)
*asteffel@immdef.org*
IMMIGRANT DEFENDERS LAW CENTER
634 S. Spring St., 10th Floor
Los Angeles, CA 90014
Telephone: (213) 634-0999

*Counsel for Plaintiff Immigrant Defenders Law Center*

* Admitted pro hac vice

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 17, 2026, at 11:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 4, 3rd Floor, of the above-captioned Court, located at 3470 Twelfth Street, Riverside, California 92501, the Coalition for Humane Immigrant Rights and Immigrant Defenders Law Center (together, the "Access/Detention Plaintiffs") will and hereby do move for an order compelling Defendants to address threshold deficiencies in their responses and objections to the Access/Detention Plaintiffs' First Set of Requests for Production and to produce documents responsive to the same.

Pursuant to Federal Rule of Civil Procedure 37(a) and Local Rule 37-1, counsel for the Access/Detention Plaintiffs and Defendants have met and conferred via both telephonic conference and written correspondence. The parties have been unable to reach agreement regarding the subject matter of this Motion. This Motion is based upon this Notice of Motion, the Joint Stipulation, the Declaration of Anne O'Toole and the exhibits thereto, and any other papers or argument of counsel that may be filed or submitted in connection with this Motion.

Dated: October 23, 2026

*/s/ Anne O'Toole*
ANNE O'TOOLE

*Counsel for Access/Detention Plaintiffs*

# TABLE OF CONTENTS


I. ACCESS/DETENTION PLAINTIFFS' INTRODUCTORY STATEMENT .... 1

II. DEFENDANTS' INTRODUCTORY STATEMENT .... 2

III. PLAINTIFFS' CONTENTIONS AND POINTS AND AUTHORITIES .... 3

A. Factual Background .... 3

1. Access/Detention Plaintiffs' First Set of Requests for Production .... 3

2. Defendants' Responses and Objections .... 3

3. Meet-and-Confer Efforts .... 6

B. Argument .... 10

1. Defendants' General Objection No. 7(c) Should Be Overturned .... 10

2. Defendants Fail to Comply with Rule 34(b)(2)(C) .... 12

3. Defendants' Date Cut-Offs Are Unreasonable .... 14

4. The Court Should Set a Deadline for the Production of Documents .... 18

IV. DEFENDANTS' CONTENTIONS AND POINTS AND AUTHORITIES .... 19

A. The Court should preserve the parties' agreements and decide the remaining objections by request .... 19

B. CBP and DHS HQ's objections to requests concerning ICE's detention operations are well-founded .... 20

1. CBP's objections to the Requests, including in General Objection No. 7(c), are wholly justified and sound .... 21

2. CBP's specific commitments remain in place .... 22

C. DHS HQ's objections are well founded and justified and responded appropriately to requests concern that concern FPS .... 23

D. DHS HQ's responses govern the parameters of its searches .... 24

E. Plaintiffs' reasonable-inquiry and waiver arguments are meritless .... 24

F. ICE's date concessions narrow the dispute while preserving its remaining objections .... 25

1. ICE has accepted the requested start dates presented in this motion ....26

2. ICE maintains its end-date objections and seeks an appropriate sampling method ....26

3. The date concessions do not change what particular requests require ....27

G. Defendants have identified withheld documents and oppose wholesale revision of Defendants' responses ....27

H. Plaintiffs' requested production deadline should account for Defendants' existing commitments and the remaining disputes ....28

# JOINT STIPULATION

## I. ACCESS/DETENTION PLAINTIFFS' INTRODUCTORY STATEMENT

Defendants have not produced a single document in the five months since the Plaintiffs Coalition for Humane Immigrant Rights and Immigrant Defenders Law Center (together, the "Access/Detention Plaintiffs") served their First Set of Requests for Production ("RFPs"). Although the Access/Detention Plaintiffs have made significant efforts to meet and confer with Defendants, their continued resistance to their basic discovery obligations has once again made judicial intervention necessary.

This motion raises threshold issues with Defendants' responses and objections ("R&Os") to the Access/Detention Plaintiffs' RFPs. *First*, CBP and DHS have asserted blanket refusals to respond to essentially all of the RFPs simply because B-18 is an ICE facility—even though they have repeatedly acknowledged CBP's involvement in security at B-18 and the transfer of detainees to and from the facility, and even though DHS is the parent of, and has ultimate authority over, ICE. *Second*, Defendants have refused to comply with their obligation under Rule 34(b)(2)(C) to state whether they are withholding documents based on any objections, thereby making it impossible to meaningfully meet and confer over the hundreds of mostly boilerplate objections that they assert. *Third*, Defendants have objected to the date ranges applicable to the RFPs in ways that turn a blind eye to undisputed facts, ignore Defendants' repeated invocation of mootness, and go against this Court's prior rulings. *Finally*, Defendants have failed to timely produce documents as required by Rule 34(b)(2)(B).

For the reasons set forth below, the Court should: (1) overturn CBP and DHS's General Objection No. 7(c) based on which they are withholding all responsive documents; (2) order Defendants to serve revised R&Os that comply with Rule 34(b)(2)(C) within fourteen days; (3) require that Defendants search for and produce documents using the reasonable date ranges outlined below; and (4) order Defendants to begin rolling productions within fourteen days, beginning with the specific RFPs identified below for which Defendants have agreed to produce documents.

## II. DEFENDANTS' INTRODUCTORY STATEMENT

The parties have narrowed substantial portions of this discovery dispute. ICE has already agreed to use Plaintiffs' requested start date of January 1, 2025 for numerous requests, including the requests for B-18 policies, detainee information, and I-213s. CBP has agreed to Plaintiffs' requested date ranges of January 1, 2025 through the present for RFP No. 3 and June 6, 2025 through the present for RFP No. 57. Defendants have also agreed to the applicable expert and trial disclosure requirements for RFP Nos. 58 and 59, without a date-range limitation. These agreements demonstrate that the parties have been working to resolve their differences in good faith.

The remaining disputes concern which components must conduct the searches pertaining to each RFP and the temporal and substantive limits of particular searches. Defendants have properly identified what their objections exclude, and the timing of production. CBP and DHS Headquarters maintain all of their objections, including the General Objection No. 7(c), because the requests concern the operation of an ICE detention facility. Specifically, Plaintiffs' claims arise out of the conditions at B-18 – an ICE operated facility – and it should not be surprising that other agencies do not broadly agree to conduct searches for requests that concern a facility which they do not operate. Each non-ICE component provided specific responses addressing requests implicating their own activities and records. ICE has undertaken to search for and produce nonprivileged responsive documents within its stated parameters, while objecting to requests that exceed the relevant subject matter or impose disproportionate collection and review burdens. Those distinct positions warrant separate consideration.

Defendants therefore oppose the requested relief to the extent it would require undifferentiated searches across all components or treat an expanded date range as resolving every other objection to a request. The Court should evaluate the remaining limitations by component and request, preserve the parties' agreements, and confine any required supplementation to ambiguities that remain after Defendants' explanations. Any production order should identify concrete beginning and completion

dates for the affected categories, taking account of the collection, review, and production work described below. This approach provides Plaintiffs the relevant discovery to which they are entitled while preserving the relevance and proportionality limits governing that discovery.

## III. PLAINTIFFS' CONTENTIONS AND POINTS AND AUTHORITIES

### A. Factual Background

#### 1. Access/Detention Plaintiffs' First Set of Requests for Production

On May 12, 2026, the Access/Detention Plaintiffs served their First Set of RFPs on Defendants. Ex. A.[1] The RFPs contained 59 requests concerning conditions of detention and access to counsel at B-18—issues at the core of this litigation and the subject of a preliminary injunction that remains in effect. *Id.*; Ex. K (ECF 256). Consistent with Federal Rule of Civil Procedure 34(b)(2)(B), the RFPs requested that Defendants make responsive productions within 30 days. Ex. A at 1.

#### 2. Defendants' Responses and Objections

On June 11, 2026, Defendants requested a one-week extension to serve their R&Os. O'Toole Decl. ¶ 4; Ex. D. The Access/Detention Plaintiffs consented. *Id.* On June 15, 2026, Defendants served their R&Os, which exhibited several fundamental deficiencies, described below. *See* Ex. B.

***CBP and DHS's blanket refusal to produce documents.*** The R&Os distinguish between three groups of Defendants: "CBP" (Defendants Michael W. Banks, in his official capacity as Chief of U.S. Border Patrol; Rodney S. Scott, in his official capacity as Commissioner of U.S. Customs and Border Protection; Justin De La Torre, in his official capacity as Acting Chief Patrol Agent, San Diego Sector of the U.S. Border Patrol; and Gregory K. Bovino, in his official capacity as Chief Patrol Agent for El Centro Sector of the U.S. Border Patrol), "ICE" (Defendants Todd Lyons, in his official

[1] Citations to "Ex. __" are to exhibits accompanying the declaration of Anne O'Toole, filed herewith.

capacity as Acting Director of U.S. Immigration and Customs Enforcement; Dean T. Sorenson, in his official capacity as Special Agent in Charge for Los Angeles for Homeland Security Investigations in U.S. Immigration and Customs Enforcement; and Jaime Rios, in his official capacity as Acting Field Office Director for Los Angeles for U.S. Immigration and Customs Enforcement), and "DHS" (Defendant Markwayne Mullin, in his official capacity as Secretary of the Department of Homeland Security).

With limited exceptions, only ICE committed to producing responsive documents. CBP and DHS, for their part, asserted a blanket objection to production. Specifically, General Objection No. 7(c) provided:

> Specifically, CBP objects to the Requests on the basis of relevancy and outside the scope of this litigation because Plaintiff's Second Amended Complaint does not contain allegations regarding any CBP detention facilities. DHS Headquarters (DHS HQ) objects on same grounds, except as to Requests that concern "cameras around B-18," as defined by Plaintiffs.

Ex. B at 4.

In other words, CBP took the position that because the detention facility at issue here—B-18—is not a CBP facility, CBP has no obligation to provide responsive documents to any of the requests. And DHS agreed only to produce responsive documents to the narrow subset of requests pertaining to video cameras around B-18. As a result, for nearly all of the Access/Detention Plaintiffs' RFPs, only the ICE Defendants agreed to produce responsive documents.[2]

[2] DHS and CBP agreed to produce responsive documents in only a few narrow instances. DHS agreed to produce documents responsive to RFP Nos. 29, 43, 44, 53, and 54, which concern video cameras around B-18, consistent with the carve-out in its blanket objection. CBP acknowledged having responsive documents only for RFP Nos. 3 and 57, and even then made no clear commitment to produce: for RFP No. 3, it pointed to its responses to Plaintiff UFW's separate requests, and for RFP No. 57, it conditioned production on a further meet-and-confer on scope. All Defendants agreed to produce materials responsive to RFP Nos. 58 and 59, which pertain to expert witness materials and trial exhibits.

***Defendants' failure to state whether they are withholding documents based on their objections.*** Across their R&Os, Defendants asserted a litany of general and boilerplate objections. For the majority of requests, *see* Ex. B at 8-54, 57-67 (Specific Objection Nos. 1-46, 50-59), the ICE Defendants then stated that they would search for and produce documents "subject to and without waiver or limitation of these objections." For the handful of requests to which DHS stated that it would produce responsive documents, *see* Specific Objection Nos. 29, 43, 44, 53, 54, DHS made a similar "subject to" commitment. Critically, at no point did any of the Defendants state whether they were actually withholding responsive documents on the basis of particular objections, despite the clear requirement that they do so. *See* Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection."). As a result, the Access/Detention Plaintiffs do not know where responsive documents exist but are being withheld, and thus are unable to even begin a meaningful meet-and-confer process over Defendants' individual responses or determine which of Defendants' hundreds of objections they may need to challenge through a motion to compel.

***Defendants' unreasonable narrowing of time periods.*** The Access/Detention Plaintiffs' RFPs set a default time period for responsive documents from January 1, 2025, Ex. A at 6, to present, though many individual requests specify narrower date ranges, *see, e.g.*, *id.* at 9-10, 12, 15.

Defendants made counterproposals on time periods that were unreasonably narrow. Where Defendants did not identify a particular time period in a specific response, Defendants asserted in General Objection No. 8 a time period beginning June 6, 2025, because that is when Operation At Large officially began. Specifically, General Objection No. 8 provided:

> Defendants object to the time period set forth in Plaintiff's Instruction No. 15 as overbroad, unduly burdensome, not proportional to the scope of Plaintiffs' lawsuit, and not relevant to Plaintiffs' claims or Defendants'

> defenses, because Plaintiffs' Second Amended Complaint alleges that Plaintiffs' claims arise from immigration enforcement actions by Defendants that occurred from June 6, 2025, to the present. Therefore, in accordance with Plaintiffs' claims to date, Defendants will limit their responses to Plaintiff's Requests to the period from June 6, 2025, to the present, unless otherwise specified.

Ex. B at 5.

In their specific responses, ICE Defendants repeatedly limited their production of documents to a period ending February 10, 2026 (when, by their account, Operation At Large ended). Ex. B at 10, 13-14, 18-19, 21-23, 27-28, 30-31, 38-41, 44, 46-48.

**3. Meet-and-Confer Efforts**

The Access/Detention Plaintiffs have made repeated, good-faith attempts to meet and confer with Defendants over the past five months to resolve the threshold deficiencies in their R&Os without judicial intervention. Throughout, Defendants have failed to timely respond to the Access/Detention Plaintiffs' communications, refused to acknowledge threshold deficiencies in their R&Os, and ignored the Access/Detention Plaintiffs' suggestions of how to prioritize production of documents that Defendants have already agreed to produce.

On July 29, 2026, the Access/Detention Plaintiffs sent a detailed letter to Defendants identifying the threshold deficiencies in their R&Os and requesting that, by no later than August 7, 2026, Defendants: (1) serve revised R&Os identifying any objections on which they were withholding responsive documents, as required by Rule 34(b)(2)(C); (2) serve revised R&Os on behalf of CBP and DHS Defendants or otherwise confirm whether they are standing on their blanket objections to withhold all responsive documents in their possession, custody, and control; and (3) confirm whether they intended to stand on their objections relating to time periods. *See* Ex. C at 1-5.

Defendants did not respond to the letter by August 7 or thereafter. On August 10,

2026, the Access/Detention Plaintiffs wrote again, noting that Defendants were now past the ten-day period in which they were required to meet and confer under Local Rule 37-1. *See id.* at 5; Ex. D at 1-2. Defendants replied on August 13, 2026, stating that they stand on their R&Os but were willing to make minor concessions on date ranges. Ex. E at 1-3. At an August 17, 2026 meet-and-confer, defense counsel agreed to take several questions back to their clients and to provide updates and a production timeline. O'Toole Decl. ¶ 10. Two weeks passed without an update. The Access/Detention Plaintiffs followed up on August 31, 2026, and asked for answers by September 2, 2026, and for rolling productions to begin by September 8, 2026. Ex. F at 7-10. After Defendants failed to respond by September 2, 2026, the Access/Detention Plaintiffs followed up on September 4, 2026, and provided notice that they would begin preparing this motion. *Id.* at 5-7. Later that same day, Defendants responded by email, offering compromises on date ranges for only two RFPs and stating that they stand on their prior objections, that they had received video footage from B-18, and that they are waiting on responses from the agencies to the Access/Detention Plaintiffs' outstanding questions. *Id*. at 3-5. On September 15, 2026, the Access/Detention Plaintiffs wrote again to follow up on the outstanding items, including the disputed date ranges, the date by which Defendants would produce the preserved B-18 video footage,[3] and the date by which the production of documents would begin. *Id*. at 1-3. As of the date that the

[3] On April 10, 2026, the Access/Detention Plaintiffs filed an *ex parte* application for a preservation order after Defendants admitted that the video surveillance system at B-18 had been automatically and continuously deleting video footage since the outset of this case, despite having represented in September 2025 that they were complying with their preservation obligations with respect to this footage. Ex. M (ECF 487). On April 20, 2026, the Court granted the application in large part and ordered Defendants to immediately preserve all video footage from cameras inside and around B-18 dating from January 20, 2025 or after, suspend the automatic deletion and overwriting of footage, retrieve any recoverable footage, and certify compliance within three days. Ex. N (ECF 493). The Access/Detention Plaintiffs reserve all rights to move for sanctions for Defendants' past spoliation.

The Access/Detention Plaintiffs have sought repeatedly to understand how much of the video footage has now been preserved, but Defendants have not provided an answer or produced any of the footage, even though counsel for Defendants has represented that they received a hard drive containing some amount of footage.

Access/Detention Plaintiffs sent their portion of this joint stipulation, Defendants had not responded to that latest email. O'Toole Decl. ¶ 15. The disputes that are ripe for resolution are as follows.

***CBP and DHS's General Objection No. 7(c).*** Defendants have confirmed that CBP and DHS are standing on General Objection No. 7(c) to withhold every responsive document in the possession of CBP and DHS, with the few exceptions discussed above. As stated in Defendants' September 4, 2026 email, "the objections are the official responses, and for clarification they stand on them and will not be revising their responses." Ex. F at 4.

Defendants held to these positions even after the Access/Detention Plaintiffs provided contrary evidence. For example, the Access/Detention Plaintiffs explained that DHS is ICE's parent department and has control over immigration policies and so possesses relevant documents, even if those documents overlap with documents also in the possession, custody, and control of ICE. The Access/Detention Plaintiffs also explained that CBP took part in Operation At Large, a multi-agency effort, including by transporting individuals to B-18 and providing security there, as this Court has previously recognized in resolving disputes over former CBP Commander-at-Large Gregory Bovino's documents relating to B-18. Ex. P (ECF 603) at 4-5.

***Failure to comply with Rule 34(b)(2)(C).*** Defendants have refused to identify objections on which they are relying to withhold responsive documents. Defendants have only stated that they "stand on their prior objections and proposed search parameters," Ex. F at 5, despite the Access/Detention Plaintiffs' reminders of their obligations under the explicit language of Rule 34(b)(2)(C) and explanation that Defendants' omissions put them at an unfair disadvantage of having to guess whether and what documents Defendants are withholding, hindering the meet-and-confer process.

Making matters worse, as the Access/Detention Plaintiffs sought to understand during the meet-and-confer whether Defendants were withholding responsive records

based on their objections, counsel for Defendants indicated that CBP and DHS had not even conducted preliminary searches before issuing their R&Os. *See* O'Toole Decl. ¶¶ 10-11. And, in follow-up correspondence challenging CBP's blanket objection, counsel stated that "[i]f, during the course of our review of Bovino's ESI, we discover that there may be responsive documentation to [the Access/Detention Plaintiffs' RFPs], then we would reconsider our objections" on behalf of CBP. Ex. F at 4. In other words, CBP and DHS are not even in a position to comply with Rule 34(b)(2)(C) because they have not sought to understand in broad strokes the universe of responsive documents.

***Date ranges.*** The Access/Detention Plaintiffs proposed compromises on date ranges for many requests and pointed Defendants to this Court's recent orders rejecting the very arguments for narrowing date ranges that Defendants continue to press in response to the Access/Detention Plaintiffs' RFPs. *See* Ex. Q (ECF 655) at 8-9; Ex. R (ECF 768). Although the parties were able to resolve certain disputes, Defendants have insisted on certain date ranges that they deem appropriate because they cover the beginning and end of Operation At Large. Specifically, Defendants have insisted on a June 6, 2025 start date for RFP Nos. 4-5, 13, 17-18, 23, 26, 30, 35, 38, 42, and 43, for which the Access/Detention Plaintiffs have requested documents dating back to January 1, 2025. Exs. A at 6, B at 5. Defendants have also insisted on a March 1, 2026 end date for RFP Nos. 2, 6-7, 11-12, 14-16, 20-22, 24-25, 31-34, 36, 39-41, and 53, for which the Access/Detention Plaintiffs have requested documents through the present. Exs. A at 6, E at 2, F at 2.

***Defendants have refused to produce any documents to date.*** Throughout the meet-and-confer process, the Access/Detention Plaintiffs repeatedly raised their concern that even where Defendants had agreed to produce documents, they had yet to do so. They did so in the Access/Detention Plaintiffs' July 29, 2026 letter on threshold deficiencies and again in their August 10, August 31, September 4, and September 15, 2026 emails. *See* Exs. C at 1, D at 2, F at 2, 6, 10. In their September 15 email, the Access/Detention Plaintiffs specifically requested that Defendants prioritize producing

documents responsive to RFP Nos. 1-4, 7, 13, 17, 26, 29 40, and 42-44, because none of those requests required collecting and reviewing extensive ESI such as text messages or emails. Ex. F at 2-3. As of the date of this filing, Defendants have not produced a single document responsive to the Access/Detention Plaintiffs' RFPs.

**B. Argument**

**1. Defendants' General Objection No. 7(c) Should Be Overturned**

"The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998). In relying on a blanket objection to withhold responsive documents to virtually all of the Access/Detention Plaintiffs' requests, CBP and DHS have not met their burden. This Court should overturn their General Objection No. 7(c).

The justification that CBP has offered for its position makes little sense. CBP claims that it cannot possibly have any relevant documents since B-18 is not a "CBP detention facilit[y]," that is, "a place, building (or part thereof), set of buildings, structure, or area that was constructed or retrofitted for the purpose of detaining individuals and is routinely used by CBP to detain individuals in its custody." Ex. B at 3-4. But just because another agency might be responsible for the operation of B-18 does not mean that is the only agency that has possession, custody, or control of responsive records. Indeed, Defendants' own admissions in this case demonstrate that CBP possesses relevant information. Counsel for CBP has acknowledged that CBP is involved in the transportation of individuals to and from B-18, which is at issue in the Access/Detention Plaintiffs' requests. *See* Exs. F at 4, G at 3. And counsel for CBP has also acknowledged that CBP has provided physical security and staffing support around B-18 in connection with events that Defendants have pointed to as the reason for preventing counsel from accessing B-18 or for transferring people from B-18 to other hold rooms—also at issue in the Access/Detention Plaintiffs' requests. *See* Exs. E at 2, G at 2, P (ECF 603) at 4. In fact, Defendants' own counsel, in a May 24, 2026 email

relating to a set of document requests relating to Mr. Bovino, explained that "CBP was assisting [the U.S. Federal Protective Service] in protection of [B-18]" including by "transporting aliens to B-18." Ex. G at 2-3.

Importantly, this Court has already ordered that Defendants search Mr. Bovino's records for documents "concerning B-18, including Border Patrol's roles, responsibilities, and functions at or around B-18, and/or the transportation of individuals for Title 8 arrest processing to B-18 or other facilities in connection with Operation At Large in the Central District of California," Ex. P (ECF 603) at 3-4. Following that order, Defendants produced a search term hit report for Mr. Bovino, which showed thousands of resulting documents for the "B-18" search term. O'Toole Decl. ¶ 7. When the Access/Detention Plaintiffs pointed this out to counsel for Defendants in connection with CBP's discovery obligations, counsel for Defendants responded that it is "not a surprise ... since we have established that CBP was transporting detainees from the field to B-18 and it is normal to expect some amount of communication on that." Ex. F at 4. Despite this admission, Defendants will apparently only "reconsider" their objections "[i]f, during the course of [their] review of Bovino's ESI, [they] discover that there may be responsive documentation to the A/D RFPs." *Id.* This position inverts the order of things: Defendants have an obligation to conduct a reasonable search into whether each agency had responsive documents for each request *prior to* providing their R&Os, not after. *See* Fed. R. Civ. P. 26(g).

DHS's refusal to respond to all but a few document requests is similarly unjustified. At a fundamental level, ICE operates as a component of DHS, and ICE's own responses to these requests necessarily implicate DHS as well. Defendants cannot on the one hand recognize that ICE possesses responsive materials but take the position that ICE's parent department has no place in this discovery process. In addition, DHS, not ICE, often makes ultimate decisions with respect to immigration enforcement and immigration detention practices. *See, e.g.*, Ex. I (ECF 168-2) ¶ 6 (declaration from ICE Assistant Field Office Director explaining that he was "advised that [attorney calls from

B-18] were and are available, consistent with standard DHS practice"). To the extent that DHS has responsive materials that go beyond what ICE has in its possession, custody, and control, DHS's blanket objection is no basis to withhold them.

To be sure, the respective roles of the different agencies may mean that the productions of CBP or DHS are narrower in scope than ICE's—though that would mean the burdens that the RFPs impose on CBP and DHS are less, not more. And CBP or DHS could have asserted specific objections, tailored to individual RFPs, that ICE may not have had available to it—though the time for doing so, of course, has passed. *Stamps.Com, Inc. v. Endicia, Inc.*, No. 06 Civ. 7499, 2009 WL 2576371, at *2 (C.D. Cal. May 21, 2009) ("[T]he failure to make a timely and specific objection in written discovery responses waives the objection."); *Ramirez v. County of Los Angeles*, 231 F.R.D. 407, 409-10 (C.D. Cal. 2005) (objections were waived where they were too general). What Defendants cannot do is assert a blanket objection based on the mere fact that B-18 is an ICE detention facility and essentially opt out of the discovery process.

For these reasons, the Court should overturn Defendants' General Objection No. 7(c).

**2. Defendants Fail to Comply with Rule 34(b)(2)(C)**

Federal Rule of Civil Procedure 34(b)(2)(C) requires that a party asserting an objection to a request for documents "state whether any responsive materials are being withheld on the basis of that objection." The purpose of this Rule is to "alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection." Adv. Comm. Notes to 2015 Amendments to Fed. R. Civ. P. 34. "Defendants either are or are not withholding documents; they know whether they are, and if so, should know the basis for any objections authorizing such withholding." *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, No. 21 Civ. 194, 2021 WL 4805315, at *8 (C.D. Cal. Aug. 10, 2021). A proper response should "provide sufficient information for the requesting party, and the court, to be satisfied that the responding

party conducted an adequate investigation for responsive materials." *In re Rivera*, No. 16 Civ. 4676, 2017 WL 5163695, at *3 (C.D. Cal. Apr. 14, 2017); *see AssuredPartners of Cal. Ins. Servs. v. Clem*, No. 25 Civ. 11856, 2026 WL 1708890, at *2 (C.D. Cal. May 5, 2026) ("[The responding party] cannot evade the requirements of Rule 34(b)(2)(C) simply by failing to produce responsive documents and putting the onus on the propounding party to deduce that documents were withheld pursuant to an objection.").

Defendants have not complied with this Rule. After making a litany of general and boilerplate objections to each and every request, Defendants respond to RFP Nos. 1-46 and 50-59 by stating that ICE's responses are "[s]ubject to and without" waiver or limitation of their objections. Ex. B at 8, 10-28, 30-31, 33-42, 44-52, 54, 57-60, 62-65, 67. DHS makes a similar "[s]ubject to" commitment for the requests for which it agrees to produce certain responsive documents. *Id.* at 36, 50-51, 61-62 (Specific Objection Nos. 29, 43, 44, 53, and 54). At no point do any of the Defendants state whether they are withholding responsive documents on the basis of any objection that they assert. Because it is unclear which of Defendants' hundreds of specific objections are actually being used to withhold responsive materials, Defendants have made it impossible to have an informed and constructive discussion about whether particular objections are justified—and which of Defendants' hundreds of boilerplate objections the Access/Detention Plaintiffs may need to challenge in a motion to compel.

The obstacles that Defendants have erected to a constructive discovery process are compounded by Defendants' seeming failure to conduct preliminary searches before making their objections. *Supra* at 8, 10, 13. The only way to satisfy Rule 34(b)(2) is to prepare responses and objections "[*f*]*ollowing* a reasonable investigation." *In re Rivera*, 2017 WL 5163695, at *2 (emphasis added). Only then can the responding party make a "proper written response" that "provide[s] sufficient information for the requesting party, and the court, to be satisfied that the responding party conducted an adequate investigation for responsive materials." *Id.* at *3. If Defendants do not even know where and on what basis they are withholding responsive documents, it cannot be that their

R&Os suffice to provide the Access/Detention Plaintiffs notice of the same.

Because Defendants' failure to comply with Rule 34(b)(2)(C) renders their responses fundamentally deficient, the Court should order that Defendants serve revised R&Os, which state whether each Defendant is withholding documents on the basis of the objections they assert, within fourteen days. *See RG Abrams*, 2021 WL 4805315, at *8, *16 (ordering responding party to supplement responses to comply with the Rule 34(b)(2)(C) requirement to state whether they are withholding responsive documents on the basis of their objections); *In re Rivera*, 2017 WL 5163695, at *6 (ordering the responding party to serve supplemental responses and, specifically stating that where the responding party "assert[s] objections to the RFPs, he must state whether any documents are being withheld pursuant to the objections, and if so, identify the documents as required by Rule 34(b)(2)(C)").

### 3. Defendants' Date Cut-Offs Are Unreasonable

The Access/Detention Plaintiffs included eminently reasonable date ranges in their RFPs, seeking documents from January 1, 2025, to present for each request that does not specify a narrower date range. *See* Ex. A at 6. Defendants originally sought to narrow the time period for each and every request. *See* Ex. B. As the party resisting discovery, Defendants carry the burden of explaining and substantiating why the Access/Detention Plaintiffs' proposed date ranges are burdensome or disproportionate to the needs of the case. *See Gold v. Kaplan*, No. 21 Civ. 3204, 2021 WL 6618643, at *5 (C.D. Cal. Dec. 2, 2021). Defendants have not met this burden. Although the parties reached certain compromises through the meet-and-confer process, disputes remain.

***Disputes over start date.*** Defendants objected to the Access/Detention Plaintiffs' start date of January 1, 2025, for various requests relating to practices at B-18—specifically, RFP Nos. 5, 18, 23, 30, 35, and 38. Those requests seek information about the detention of families or minors at B-18 (RFP No. 5), how to locate individuals whom in-person visitors believe or suspect to be detained at B-18 (RFP No. 18), attorney-client telephone calls at B-18 (RFP No. 23), forms or waivers of rights that individuals

detained at B-18 are asked to sign (RFP No. 30), and procedures for complaints regarding conditions of confinement at B-18 (RFP No. 35), as well as body worn camera footage depicting physical violence at B-18 (RFP No. 38). Ex. A at 9, 11, 13-14.

Defendants objected and insisted on a start date of June 6, 2025 for these requests. Ex. B at 5. The only explanation Defendants offer for the June 6, 2025 start date is that the Access/Detention Plaintiffs' claims at issue "arise from immigration enforcement actions by Defendants that occurred from June 6, 2025, to the present." *Id*.

There are two issues with Defendants' objection. *First*, the objection fails to account for the fact that immigration enforcement operations increased starting in January 2025, including during trial runs for what would eventually be called Operation At Large, Ex. C at 4 & n.2, and documents and communications are likely to show how Defendants planned for Operation At Large. For example, Defendants might have communicated about capacity constraints at B-18 during these trial runs in the first half of 2025 and in planning for the large-scale raids that occurred in June 2025. Indeed, in an August 10, 2026 order granting in large part a motion to compel filed by the Stop/Arrest Plaintiffs, this Court recognized that January 1, 2025 is the appropriate start date where there is reason to believe that documents and communications about what would eventually be coined Operation At Large would exist prior to the official start date of that so-named operation. *See* Ex. Q (ECF 655) at 9 ("Logically, there are relevant communications and policy documents preceding the start of the operations themselves, and those likely began more than a month in advance."). The Court again used this rationale during the October 2, 2026 status conference to order a January 1, 2025 start date "for collecting Teams URL data" relating to CBP's productions in response to requests propounded by the Stop/Arrest Plaintiffs. *See* Ex. R (ECF 768).

*Second*, the Access/Detention Plaintiffs' requests seek documents that would allow them to compare conditions and access to counsel at B-18 before and after June 6, 2025. A January 1, 2025 start date is reasonable and not unduly burdensome.

Accordingly, the Court should order that Defendants search for and produce

documents responsive to RFP Nos. 5, 18, 23, 30, 35, and 38 using a start date of January 1, 2025. *See Ramirez*, 231 F.R.D. at 412 (overruling the responding party's request to narrow the temporal scope of a particular request for production where the broader time period proposed by the requesting party was likely to lead to relevant information).

***Disputes over end date.*** Defendants also objected to the Access/Detention Plaintiffs' "to present" end date for RFP Nos. 2, 6-7, 11-12, 14-16, 20-22, 24-25, 31-34, 36, 39-41, and 53. Those requests seek information about policies and training materials concerning detention at B-18 (RFP No. 2), data regarding detentions at and transfers from B-18 (RFP Nos. 6, 11), I-213s for individuals detained at B-18 (RFP No. 7), detention at the Santa Ana federal facility (RFP Nos. 12, 14), attorney and family access to individuals detained at B-18 (RFP Nos. 15-16, 20-22, 24-25), conditions of confinement at B-18 (RFP No. 31), the treatment of medical conditions at B-18 and deaths of individuals detained at B-18 (RFP Nos. 32-34), physical violence between B-18 officers and detained individuals (RFP No. 36), communications of B-18 officers or employees relating to this Action, Plaintiffs, or Plaintiffs' counsel (RFP No. 39), and the organizational and command structure, and decisionmakers, at B-18 (RFP Nos. 40-41), as well as video footage from cameras at or around B-18 for criminal prosecutions (RFP No. 53).

Defendants have objected and insisted on an end date for these requests of March 1, 2026, which differs only slightly from their original objection, which proposed producing documents with an end date of February 10, 2026. Ex. E at 2. Defendants argue that because Operation At Large supposedly ended on February 10, 2026, it is unlikely that there would be relevant documents after that date or that a later date would be proportional to the needs of the case. *See id.*

In the same August 10, 2026 Order referenced above, this Court rejected Defendants' identical position regarding a February 10, 2026 end date. There, the Court found Defendants "have provided no evidence that CBP's involvement in Operation At Large ended on February 10, 2026." Ex. Q (ECF 655) at 8-9. Defendants have not come

up with new support for this unfounded position since August 10. And their position is even weaker here where the Access/Detention Plaintiffs' claims do not depend on the existence of a specific named operation. Defendants have not argued that immigration enforcement operations have ceased in the Central District or that people are no longer being detained at B-18—making the purported end of Operation At Large irrelevant.

In addition, Defendants have repeatedly argued that the Access/Detention Plaintiffs' claims are moot and the underlying problems could not reoccur because of more recent developments at B-18. *See, e.g.*, Ex. H (ECF 168) at 5-7; Ex. J (ECF 235) at 10-12; Ex. O (ECF 494) at 6. They cannot rely on a defense that implicates present-day conditions while refusing to produce documents reflecting what those conditions actually are. *See United States v. City of Torrance*, 164 F.R.D. 493, 495 (C.D. Cal. 1995) (rejecting defendants' proposed date range limitation because defendants' defenses and plaintiff's claims concerned ongoing conditions, making contemporary documents relevant).

For these reasons, the Court should order that Defendants search for and produce documents responsive to RFP Nos. 2, 6-7, 11-12, 14-16, 20-22, 24-25, 31-34, 36, 39-41, and 53 using a "to present" end date.

***Disputes over requests seeking documents "sufficient to show."*** Defendants have also objected to the Access/Detention Plaintiffs' January 1, 2025 start date for RFP Nos. 4, 13, 17, 26, 42, and 43. Those requests seek documents sufficient to show: categories of people who are or are not permitted to be detained at B-18 (RFP No. 4); the availability of private spaces for legal visits and calls at the Santa Ana federal facility (RFP No. 13); lists of free legal service providers available to detained individuals at B-18 (RFP No. 17); the number of attempted and successful attorney visits at B-18 on specified dates (RFP No. 26); the layout of B-18 (RFP No. 42); and information regarding video cameras at and around B-18 (RFP No. 43).

Once again, Defendants demand a June 6, 2025 start date for these requests. Ex. B at 5. Defendants' objection to these requests primarily concerns relevance, but this

objection fails because pre-June 6, 2025 documents are needed to compare conditions and access to counsel at B-18 before and after Operation At Large formally began. These requests seek basic facts about B-18 and access to counsel: who may be detained there, confidential attorney access, legal provider lists, attorney visits, the facility's layout, and camera locations. And, as explained above, this Court has already recognized that relevant documents "preced[e] the start of the operations themselves." Ex. Q (ECF 655) at 9.

Any burden on Defendants is also minimal. Each request seeks only "documents sufficient to show" a certain proposition, not all responsive records. Ex. A at 9-12, 14. *See Rajaram v. Meta Platforms, Inc.*, No. 22 Civ. 2920, 2026 WL 2892357, at *6 (N.D. Cal. Sep. 27, 2026) (finding that a "'documents sufficient to show' request … is minimally burdensome," particularly where the request "go[es] to the heart of the alleged practice"). A January 1, 2025 start date therefore requires Defendants to produce only enough documents to establish each fact, such as a single floor plan or list.

Accordingly, the Court should order that Defendants search for and produce documents responsive to RFP Nos. 4, 13, 17, 26, 42, and 43 using a January 1, 2025 start date.

**4. The Court Should Set a Deadline for the Production of Documents**

As described above, Defendants have not produced a single document in response to the Access/Detention Plaintiffs' RFPs. The Access/Detention Plaintiffs requested that Defendants "produce the documents and tangible things in the requests for documents … within 30 days." Ex. A at 1. Under Rule 34(b)(2)(B), Defendants were required to produce documents within that timeframe or to propose a reasonable alternative timeframe. Here, Defendants neither objected to the 30-day timeframe nor proposed a reasonable alternative. As a result, Defendants were required to produce responsive documents within 30 days after the RFPs were served, or by June 11, 2026. *See QC Labs v. Green Leaf Lab, LLC*, No. 18 Civ. 1451, 2019 WL 6797250, at *4 (C.D.

Cal. July 19, 2019) (when the responding party does not provide an alternate reasonable time, it must complete the production by the date requested by the requesting party, and the requesting party may move for an order compelling a production if the responding party fails to timely produce documents); Civil Min. at 25, *Pinn, Inc. v. Apple, Inc.*, No. 19 Civ. 1805 (C.D. Cal. June 11, 2020), Dkt. No. 140 (similar). Defendants' failure to produce a single document more than five months later is inexcusable and has prejudiced the Access/Detention Plaintiffs. The discovery cutoff in this case is March 24, 2027, Ex. L at 4, and the Access/Detention Plaintiffs need to review discovery productions before they can propound additional written discovery, including interrogatories and requests for admission, and take necessary depositions.

The Access/Detention Plaintiffs therefore request that the Court compel Defendants to make their first production within 14 days and to complete all productions on a rolling basis thereafter. Specifically, the Court should order that Defendants' first production include the documents that Plaintiffs requested be prioritized, Ex. F at 2-3, responsive to RFP Nos. 1-3, 44 (policy requests); RFP Nos. 4, 13, 17, 26, 40, 42-43 (requests seeking documents "sufficient to show"); RFP No. 29 (video footage from certain dates); and RFP No. 7 (I-213s for individuals detained at B-18).

## IV. DEFENDANTS' CONTENTIONS AND POINTS AND AUTHORITIES

### A. The Court should preserve the parties' agreements and decide the remaining objections by request

Discovery must concern relevant, nonprivileged information, be proportional to the needs of the case, and reach materials within a party's possession, custody, or control. Fed. R. Civ. P. 26(b)(1), 34(a)(1). Rule 26(b)(2)(C)(i) also requires limits on unreasonably cumulative or duplicative discovery. Defendants' June 15, 2026 Responses and Objections ("R&Os"), as modified by the concessions below, identify the positions requiring resolution. The agreements concerning date ranges described above and the Rule 26 disclosures under RFP Nos. 58–59 should be preserved without treating other objections as withdrawn.

**B. CBP and DHS HQ's objections to requests concerning ICE's detention operations are well-founded**

At the threshold, to the extent Plaintiffs argue that CBP and DHS HQ asserted only a "blanket" objection to the requests, this is untrue. Defendants collectively asserted tailored objections to each of these requests. CBP and DHS HQ carefully considered each request and whether the agencies would stand on objections—including General Objection No. 7(c) that the request was not applicable CBP or DHS HQ and was instead only applicable to the other responding agency that operates B-18, ICE. CBP and DHS HQ also responded to several requests, specifically those reasonably related CBP and DHS HQ.

It is also inaccurate to state that CBP and DHS HQ "are standing on General Objection No. 7(c) to withhold every responsive document in the possession of CBP and DHS." This ignores the materials that CBP and DHS HQ agreed to produce, but also that CBP and DHS HQ are not in fact *withholding* responsive documents by standing on objections. CBP and DHS HQ did not agree to search for responsive documents in the first instance because they are unlikely to exist and searches in and of themselves are burdensome.

Plaintiffs apparently contend that rather than fully set forth General Objection No. 7 in the General Objections section and incorporate it throughout, CBP and DHS HQ should have repeated this objection throughout. That amounts to a formatting dispute that should not form the basis of a motion to compel. Insofar as Plaintiffs claim CBP and DHS HQ should have stated with more specificity why each request was not applicable to agencies that do not operate B-18, that ignores how plainly these requests are focused on B-18 and the agency that runs them. For example, Plaintiffs requests seeks documents and communications regarding: visiting hours for family members of detained individuals at B-18; the dates and times the telephone was available at B-18 and when calls took place; processing and intercoms at B-18; the confidentiality of calls at B-18; the number of "attempted and successful attorney visits" at B-18 visits;

the I-213s (which are maintained by ICE) for individuals at B-18; forms that detainees are asked to sign at B-18; how B-18 staff log complaints about conditions at B-18; organizational and command structure at B-18; and the layout of B-18.

Tellingly, Plaintiffs fail to make any specific arguments about why CBP and DHS HQ should be required to search for documents for any particular B-18 requests. Instead, it is Plaintiffs that almost exclusively rely on boilerplate arguments that all agencies should be required to search for responsive documents even when they are very unlikely to have them and when the agency that would likely have them has agreed to search. These generic arguments are insufficient to move to compel further responses, particularly when those searches would require the agencies to engage in very burdensome, duplicative searches that are not proportional to the needs of the case.

**1. CBP's objections to the Requests, including in General Objection No. 7(c), are wholly justified and sound**

Plaintiffs have not met their burden of demonstrating how CBP's detention policies are relevant to the allegations in this litigation. Fed. R. Civ. P. 26(b). B-18 is an ICE-operated facility. CBP objects to these RFPs on relevance and scope grounds because the Second Amended Complaint does not contain allegations regarding CBP detention facilities and "have no possible bearing upon the subject matter of this action." *Jones v. Commander, Kansas Army Ammunitions Plant, Dep't of Army*, 147 F.R.D. 248, 250 (D. Kan. 1993); *compare* Second Am. Compl. ¶¶ 281-291 (delineating causes of action related to B-18) *with* Answer to Second Am. Compl. ¶ 6 (describing B-18 as "a short-term processing center and *ICE* basement holding area in downtown Los Angeles" (emphasis added)). CBP's acknowledged transportation and security roles do not establish that it administers ICE's internal detention policies. As Defendants explained in their September 4 email, RFP Nos. 1(m), 2(m), 10, and 11 concern transfers from one detention facility to another; CBP's transportation of detainees from the field to B-18 does not itself establish participation in those transfers. Robbins email to O'Toole, Sept. 4, 2026, item 1. There is no basis for Plaintiffs to assert CBP participated

in facility-to-facility transfers. Indeed, Plaintiffs do not cite any documentation that establishes that participation.

Plaintiffs rely on ECF 603 and Bovino's search-term report to support their argument that the Court should permit broad discovery into CBP's detention policies. While that order required searches of Bovino's records, including terms capturing CBP's security activities at B-18, ECF 603 at 3-5, it did not decide the appropriate search for every request now at issue. A search-term hit also does not establish that a document addresses internal facility policies or covers the topic of that particular RFP. The search term report includes terms *beyond* B-18, i.e. "300 N. Los Angeles," "Adelanto," "Santa Ana," etc. in order to determine if those documents are actually responsive to require review. Robbins Sept. 4 email, item 1. It is possible that most of those documents are actually not responsive to the case.

Further, those search terms support the above contention that CBP was involved in transferring custody of the subjects from CBP custody to ICE custody at B-18. It does not support the contention that CBP provided any other assistance to ICE or transferred detainees from B-18 to other ICE facilities.

Mere speculation based on broad search terms that could be given multiple interpretations does not change the actual work that CBP did during these operations. In the voluminous discovery already provided to Plaintiffs, they have not pointed to a single document that indicates CBP assisted ICE in transferring detainees to other ICE facilities. Nor have they identified a single document that indicates CBP assisted ICE in overseeing and running B-18. Rather, the discovery supports that CBP transferred the subjects from CBP custody to ICE custody at B-18 – nothing more.

**2. CBP's specific commitments remain in place**

CBP agreed to conduct searches from January 1, 2025 through the present for RFP No. 3 and June 6, 2025 through the present for RFP No. 57. Robbins Sept. 4 email, item 4. Those are the only RFPs that actually implicate CBP. CBP's response to RFP No. 3 made clear that the agency intends to provide responsive materials through its'

responses to United Farm Workers' ("UFW") RFP Nos. 13 and 14. CBP's response to RFP No. 57 delineates an agreement to produce so long as the parties come to an agreement on that scope before production. R&Os, Resps. to RFP Nos. 3, 57. CBP's commitments to production should be preserved alongside resolution of the remaining agency and scope objections.

### C. DHS HQ's objections are well founded and justified and responded appropriately to requests concern that concern FPS

DHS HQ's objections, including General Objection No. 7(c), were justified for the reasons stated above and further explained herein; and Plaintiffs' boilerplate arguments to the contrary are unavailing.

Plaintiffs contend that DHS HQ should respond to every request concerning B-18, the facility ICE operates, on grounds that ICE is a component of DHS. Plaintiffs maintain that as the "parent department" DHS HQ "has control over immigration policies and so possesses relevant documents, even if those documents overlap with documents also in the possession, custody, and control of ICE."

By this logic, any time discovery is propounded on any DHS component, DHS HQ would be required to search for responsive documents regardless of its involvement in the operations at issue and the likelihood that it possesses any responsive information not otherwise in the possession of the component agency. This rationale seeks to impose enormous burdens on the federal government without satisfying any proportional need in the case. This is particularly true here, where Plaintiffs fail to explain why DHS HQ should search for any particular request—let alone for attorney visit information, processing forms, or I-213s of B-18 detainees or other materials that would be in ICE's possession.

Plaintiffs only justification appears to be based on an ICE declarant's reference to a detention facility provision regarding attorney calls as a "DHS practice." Plaintiffs apparently believe this proves there is an applicable DHS HQ policy, but that is incorrect. This was merely imprecise language—ICE is, of course, a component of

DHS. The policies the declarant refers to, however, are ICE's policies and nationwide detention standards that facilitate the operation of immigration detention facilities or holding facilities, including B-18. These will be produced by ICE in response to Plaintiffs' requests.

Even if Plaintiffs were correct that the practice referenced was a DHS HQ policy, as a document that applies to the operations of B-18, it would be in ICE's possession, custody, and control. Notably, where a request called for policies that may be within DHS HQ's control and not ICE's, like "documents sufficient to show Defendants' policies or practices concerning the retention or destruction of documents or data potentially relevant to this Action, including but not limited to footage from video cameras at B-18 and *cameras around B-18*" (RFP No. 44), DHS HQ agreed to search for responsive documents in its custody and control.

Accordingly, Plaintiffs are not entitled to further responses from DHS HQ as to any of the requests, and the court should decline to order DHS HQ to engage in burdensome searches for at best duplicative information.

**D. DHS HQ's responses govern the parameters of its searches**

DHS HQ committed to searches for footage, camera locations, and retention policies under RFP Nos. 29, 43, and 44. Responses 43 and 54 identify camera and preservation information already supplied; Response 53 reports no responsive nonprivileged documents after a reasonable search. *See* R&Os, corresponding responses. To the extent Plaintiffs assert that the scope of DHS HQ's agreed searches are amended by agreements with ICE, their claims fail. DHS HQ's responses govern the parameters of its searches. Any start-date concessions by ICE could not and do not amend or alter DHS HQ's response to RFP No. 43 or its general time-period objection without a specific agreement. R&Os, Gen. Obj. No. 8; Resp. to RFP No. 43

**E. Plaintiffs' reasonable-inquiry and waiver arguments are meritless**

Plaintiffs argue that CBP and DHS Headquarters failed to conduct a reasonable investigation before providing their responses and objections. That is patently untrue,

as evidenced by a simple review of the Responses and Objections, for which all three components assessed each individual RFP for relevance and separately provided their responses and objections. The Responses and Objections reflect a careful delineation of the specific components' obligations to the specific requests made, and Plaintiffs' failure to recognize or understand the distinction between the responsibilities and duties of each individual component is not a basis for levelling such an accusation. As Defendants explained in their September 4 email, CBP reviewed the requests concerning transfers and was consulted again about its responses. Robbins Sept. 4 email, items 1, 5. Defendants rely on those agency explanations to support their position that requests concerning ICE's operation of B-18 do not require searches by CBP or DHS Headquarters. As discovery continues, if Plaintiffs can point to actual documentation that CBP is implicated for specific RFPs, CBP can reassess its answers. But there is no basis for believing CBP is so implicated, and Plaintiffs' complaints appear to be based upon confusion of each component's separate functions.

Plaintiffs also argue that CBP and DHS Headquarters have waived objections that were not timely and specifically asserted. Defendants maintain the objections already stated in their R&Os. That Defendants' later explained the agencies' different responsibilities does not constitute a "new" objection; rather that only clarified the General Objection No. 7(c) that was already made in the R&Os. Thus, Plaintiffs have no basis to assert that Defendants have waived any objections by providing them answers to their inquiries pertaining to that objection. Additionally, Plaintiffs' complaint that the different components responded to certain RFPs by agreeing to produce specific items without waiving their standing objections, is in no way improper. The Court should evaluate the general objection and separately consider the other objections stated in each component's responses on their merits.

**F. ICE's date concessions narrow the dispute while preserving its remaining objections**

**1. ICE has accepted the requested start dates presented in this motion**

ICE's R&Os already accept January 1, 2025 for numerous requests, including RFP Nos. 2, 6, and 7. Defendants also accepted that date for the "documents sufficient to show" requests, RFP Nos. 4, 13, 17, 26, and 42–43, and the B-18 practices requests, RFP Nos. 5, 18, 23, 30, 35, and 38. Robbins email to O'Toole, Oct. 16, 2026. This gives ICE's searches the pre-June 6 period Plaintiffs seek for planning materials and comparison of conditions. It resolves the ICE start-date dispute without requiring further litigation over the planning rationale Plaintiffs invoke from ECF 655 and ECF 768. Other objections remain.

**2. ICE maintains its end-date objections and seeks an appropriate sampling method**

Defendants extended the February 10, 2026 endpoint to March 1, 2026 during the meet-and-confer process. ICE preserves that extension for RFP Nos. 2, 6–7, 11–12, 14–16, 20–22, 24–25, 31–34, 36, and 39–41. RFP No. 53 retains its written June 11, 2026 endpoint. R&Os, corresponding responses, as modified during the meet-and-confer process. Defendants explained that March 1 extends beyond the asserted demobilization of Operation At Large to permit comparison with the period that followed, while objecting to production of individual detention records through the present.

Plaintiffs invoke ongoing detention, their claims' independence from any named operation, and Defendants' mootness arguments. Those points support consideration of current conditions but do not determine the proportionate volume and method of production for every category. ECF 655 rejected an unsupported February 10 cutoff for UFW's requests. *Id*. at 8–9. Defendants maintain their objections while requesting consideration of the particular records and proposed method. ICE seeks agreement on sampling for RFP Nos. 6–7, 11–12, 20–22, and 33; Response 7 proposes 110 I-213s. R&Os, Resp. to RFP No. 7. The Court should address sample size, selection, and

temporal coverage together; the remaining requests retain their stated objections as modified by the date concessions.

**3. The date concessions do not change what particular requests require**

The requests for documents sufficient to show specified facts retain that limited form; ICE's agreement to accept Plaintiffs' request of January 1, 2025 addresses their disputed start date. For the layout request, Defendants also agreed to allow counsel for the Access/Detention Plaintiffs to review the floor plan at a secure location before the inspection, addressing access while preserving security concerns about unrestricted production. R&Os, Resp. to RFP No. 42; Robbins email to O'Toole, Oct. 5, 2026; O'Toole email to Robbins, Oct. 6, 2026. That agreed means of review should be preserved.

Likewise, the expanded start date for RFP No. 38 does not alter ICE's response that its personnel at B-18 do not wear or operate body cameras and that it has no responsive materials to produce. R&Os, Resps. to RFP Nos. 37–38. The surveillance footage responsive to RFP No. 29 remains a separate production.

**G. Defendants have identified withheld documents and oppose wholesale revision of Defendants' responses**

Plaintiffs challenge the "subject to" language and contend they cannot identify which objections exclude documents. As previously stated, Defendants will search for and produce nonprivileged responsive documents within the stated parameters, and responsive materials outside those parameters will be withheld. Robbins Sept. 4 email, item 5. As explained by General Objection No. 7(c), a majority of these RFPs do not pertain to CBP or DHS Headquarters. Defendants stand on those explanations.

The 2015 Committee Note to Rule 34(b)(2)(C) permits identification of withheld material by the stated limitations of the search, including dates and sources, without an inventory of every excluded document. Defendants rely on those identified limitations within its' responses and objections, not the phrase "subject to" standing alone. The

validity of a particular limitation remains a separate issue. The authorities Plaintiffs cite requiring clear withholding notice do not eliminate that distinction and do not require every response to be rewritten.

Defendants confirmed that they are not producing documents for RFP Nos. 47 through 50 on attorney-client and work-product privilege grounds because responsive material to those requests include litigation holds, preservation notices, and related communications issued or made at the direction of government counsel. Robbins Sept. 4 email, item 3. Defendants' response to RFP No. 51 likewise expressly withholds documents, such as litigation holds and internal legal communications. R&Os, Resps. to RFP Nos. 47–50. Rule 26(b)(5)(A) governs the descriptions needed to assess particular privilege claims. Defendants therefore oppose the requested fourteen-day replacement of all R&Os.

**H. Plaintiffs' requested production deadline should account for Defendants' existing commitments and the remaining disputes**

Plaintiffs allege that production of responsive documentation for these RFPs was due June 11, that Defendants have not offered a reasonable alternate production schedule, and any subsequent requests or clarifications regarding these RFPs will result in months of delay. Defendants recognize Rule 34(b)(2)(B)'s requirement of timely production and explained during the August 17 meet-and-confer that competing court-ordered productions and limited production capabilities of the eDiscovery lab affected the schedule. Contrary to Plaintiffs' assertions, subsequent correspondence between the parties demonstrates concrete progress by Defendants to produce responsive documentation, including: receipt of video footage pertinent to RFP 29, review of approximately one month's worth of video footage for privilege and confidentiality, and recovery of footage mistakenly sent to another laboratory. Robbins Sept. 4 email, item 2; Robbins Oct. 16 email.

Defendants anticipate producing documents responsive to RFP Nos. 1–3 by November 1, 2026. Robbins Oct. 16 email. Defendants are actively reviewing B-18

video surveillance footage and have successfully located and recovered missing footage that was sent to an incorrect lab. The Court should account for this stated schedule when evaluating Plaintiffs' requested deadline.

Plaintiffs' proposed first production combines policies under RFP Nos. 1–3 and 44; documents sufficient to show facts under RFP Nos. 4, 13, 17, 26, 40, and 42–43; footage under RFP No. 29; and I-213s under RFP No. 7. Their request to include each category within fourteen days should account for the November 1 commitments, the floor-plan review agreement, and the unresolved sampling method. The remaining priority categories retain the production commitments and limitations in their R&Os. Agreed materials should proceed without awaiting resolution of unrelated disputes.

Defendants request that the Court preserve the parties' agreements and evaluate Plaintiffs' proposed fourteen-day production deadline in light of Defendants' stated November 1 production schedule and the remaining disputes over scope and sampling. The Court should decide the remaining agency and scope objections by request and confine any required revised responses to specifically identified withholding ambiguities.

Dated: October 23, 2026

*<u>/s/ Anne O'Toole</u>*
ANNE O'TOOLE

*Counsel for Access/Detention Plaintiffs*

Dated: October 23, 2026

*<u>/s/ Jonathan Robbins (via e-mail auth.)</u>*
JONATHAN ROBBINS

*Counsel for Defendants*

## ATTESTATION OF FILER

I attest that the other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Dated: October 23, 2026

*/s/ Anne O'Toole*
ANNE O'TOOLE

*Counsel for Access/Detention Plaintiffs*