BRETT A. SHUMATE
Assistant Attorney General, Civil Division
DREW C. ENSIGN
Deputy Assistant Attorney General
DANIEL F. MUMMOLO
Counsel to the Assistant Attorney General
AUGUST FLENTJE
Deputy Director
JONATHAN A. ROBBINS
Assistant Director
JACOB A. BASHYROV
ANIELLO DESIMONE
STEPHANIE L. GROFF
NANCY N. SAFAVI
JASON K. ZUBATA
STEPHANIE L. GROFF
Trial Attorney
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-8275
Email: Jonathan.A.Robbins@usdoj.gov
*Counsel for Defendants*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PEDRO VASQUEZ PERDOMO; *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; *et al.*,<br><br>Defendants. | No. 2:25-cv-05605-MEMF-SP<br><br>**DEFENDANTS' *EX PARTE* APPLICATION FOR STAY OF ORDER GRANTING PRELIMINARY INJUNCTION [ECF NO. 807] AND FOR STAY OF PROCEEDINGS PENDING APPEAL**<br><br>[Supporting declarations filed concurrently]<br>Hon. Maame Ewusi-Mensah Frimpong<br>United States District Judge<br><br>Referred to Hon. Sheri Pym<br>United States Magistrate Judge |

**NOTICE OF APPLICATION**
**AND DECLARATION OF AUGUST FLENTJE**

PLEASE TAKE NOTICE that, in accordance with Civil Local Rules 6-1 and 7-19, and this Court's Standing Order, Defendants, by and through their counsel of record, respectfully apply to the Court on an *ex parte* basis for an order to stay the Court's October 23, 2026 Order (ECF No. 807), pending resolution of Defendants' forthcoming appeal before the Ninth Circuit Court of Appeals. Defendants will file a timely appeal with the Ninth Circuit and seek this stay solely to preserve their rights and to avoid irreparable prejudice while appellate review proceeds. Additionally, Defendants respectfully request that proceedings be stayed while review is sought with the Ninth Circuit as an appellate ruling on standing is inextricably intertwined with the ongoing proceedings in district court and is likely to render further proceedings unnecessary. Defendants request a decision on this request by 5:00 PM PT on November 2, 2026.

Defendants' *ex parte* application is based on this Notice, the Proposed Order, all records and papers filed in this action, and any other evidence that the Court may consider in ruling on Defendants' requested relief.

Defendants acted in good faith by promptly notifying Plaintiffs and Intervenors of this request via email and telephonically on October 28, 2026. Defendants' counsel, August Flentje, attempted to provide oral notice via telephone to Plaintiffs' counsel, David Fry, and left a message for Mr. Fry at 8:20 PM PT on October 28, 2026. Mr. Flentje also attempted to provide oral notice via telephone to Intervenors' counsel, Roman Leal, and left a message for Mr. Leal at 8:24 PM PT on October 28, 2026. Defendants' counsel also attempted to provide oral notice via telephone to Access/Conditions Plaintiffs' counsel, Annie O'Toole, and left a message for Ms. O'Toole at 9:18 PM PT. Additionally, Defendants' counsel, August Flentje, provided written notice via email to both Intervenors' and Plaintiffs' counsel at approximately 8:18 PM PT and 8:31 PM PT, respectively, on October 28, 2026. Defendants' counsel, August Flentje, spoke with

Plaintiffs' counsel Sarah Worth at 8:49 PM PT, who indicated that Plaintiffs oppose Defendants' application.

Counsel for Defendants complied with the requirements of Local Rules 7-19 and 7-19.1, as well as this Court's Standing Order, in submitting this *ex parte* application. Specifically, counsel included a supporting memorandum stating the grounds for the requested relief, provided the known contact information for opposing counsel, and lodged an order for the Court's consideration. In addition, counsel made reasonable, good faith efforts to notify opposing counsel of the date and substance of this application prior to filing and has submitted a declaration detailing those notice efforts and stating whether any opposition exists.

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ AUGUST FLENTJE*
AUGUST FLENTJE
Deputy Director
Office of Immigration Litigation
U.S. Department of Justice

*Counsel for Defendants*

**Notice:** Plaintiffs oppose this *ex parte* application and intend to file an opposition within 24 hours. Plaintiffs are represented by a large team of attorneys from multiple organizations.

STACY TOLCHIN
(SBN 217431)
stacy@tolchinimmigration.com
LAW OFFICES OF STACY TOLCHIN
776 E. Green St., Suite 210
Pasadena, CA 91101
Tel: 213-622-7450;
Fax: 213-622-7233

MOHAMMAD TAJSAR
(SBN 280152)
mtajsar@aclusocal.org
MAYRA JOACHIN
(SBN 306065)
mjoachin@aclusocal.org
EVA BITRÁN (SBN 302081)
ebitran@aclusocal.org
DAE KEUN KWON
(SBN 313155)
akwon@aclusocal.org

OLIVER MA (SBN 354266)
oma@aclusocal.org
STEPHANIE PADILLA (SBN 321568)
spadilla@aclusocal.org
DIANA SÁNCHEZ (SBN 338871)
dianasanchez@aclusocal.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017-4022
Tel: 213-977-5232;
Fax: 213-201-7878

MARK ROSENBAUM (SBN 59940)
mrosenbaum@publiccounsel.org
REBECCA BROWN (SBN 345805)
rbrown@publiccounsel.org
SOPHIA WRENCH (SBN 354416)
swrench@publiccounsel.org
RITU MAHAJAN (SBN 252970)
rmahajan@publiccounsel.org
GINA AMATO (SBN 215519)
gamato@publiccounsel.org
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977
*Counsel for All Plaintiffs*

ANNE LAI (SBN 295394)
alai@law.uci.edu
UC IRVINE SCHOOL OF LAW
IMMIGRANT AND RACIAL JUSTICE SOLIDARITY CLINIC
P.O. Box 5479
Irvine, CA 92616-5479
Tel: 949-824-9894;
Fax: 949-824-2747

JACOB S. KREILKAMP (SBN 248210)
jacob.kreilkamp@mto.com
JAMIE LUMA (SBN 331610)
jamie.luma@mto.com
SARA H. WORTH (SBN 341088)
sara.worth@mto.com
HENRY D. SHREFFLER (SBN 343388)
henry.shreffler@mto.com
MAGGIE BUSHELL (SBN 354048)
maggie.bushell@mto.com
KYLE A. GROVES (SBN 358085)
kyle.groves@mto.com
MUNGER, TOLLES & OLSON LLP
350 S. Grand Ave., 50th Floor
Los Angeles, CA 90071
Tel: 213-683-9100;
Fax: 213-683-9100
*Counsel for Stop/Arrest Plaintiffs*
LAUREN M. WILFONG*
lwilfong@ndlon.org
NATIONAL DAY LABORER ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Tel: 626-214-5689

BREE BERNWANGER (SBN 331731)
bbernwanger@aclunc.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street

San Francisco, CA 94111
Tel: 415-621-2493

BRISA VELAZQUEZ OATIS
(SBN 339132)
bvoatis@aclu-sdic.org
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Tel: 619-398-4199

MATTHEW J. CRAIG
(SBN 350030)
mcraig@heckerfink.com
MACK E. JENKINS
(SBN 242101)
mjenkins@heckerfink.com
HECKER FINK LLP
1150 South Olive Street,
Suite 10-140
Los Angeles, CA 90015
Tel: 212-763-0883;
Fax: 212-564-0883
*Counsel for Access/Conditions Plaintiffs*

EDGAR AGUILASOCHO
(SBN 285567)
eaguilasocho@farmworkerlaw.com
MARTÍNEZ AGUILASOCHO LAW, INC.
900 Truxtun Ave, Suite 300
Bakersfield, CA 93301
Tel: 661-859-1174

*Counsel for Plaintiff United Farm Workers*

CARL BERGQUIST*
cbergquist@chirla.org
COALITION FOR HUMANE IMMIGRANT RIGHTS
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

ALVARO M. HUERTA
(SBN 274787)
ahuerta@immdef.org
BRYNNA BOLT (SBN 339378)
bbolt@immdef.org
ALISON STEFFEL
(SBN 346370)
asteffel@immdef.org
IMMIGRANT DEFENDERS

634 S. Spring St., 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

*Counsel for Plaintiff Immigrant Defenders Law Center*

* Admitted pro hac vice

## TABLE OF CONTENTS


INTRODUCTION .......... 1

LEGAL STANDARD .......... 3

ARGUMENT .......... 3

I. THE COURT SHOULD GRANT A STAY PENDING APPEAL .......... 3

A. The Government Is Likely To Succeed On The Merits .......... 3

B. The Remaining Stay Factors Favor The Government .......... 10

II. THE COURT SHOULD STAY PROCEEDINGS .......... 11

CONCLUSION .......... 14

# TABLE OF AUTHORITIES

## Cases

*Alderman v. United States*,
394 U.S. 165 (1969) .......... 5

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .......... 4, 12

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 5, 6

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962) .......... 3, 12

*Demore v. Kim*,
538 U.S. 510 (2003) .......... 10

*Dickinson v. Trump*,
174 F.4th 634 (9th Cir. 2026) .......... 12

*District of Columbia v. R.W.*,
608 U.S 22 (2026) .......... 8-9

*E. Bay Sanctuary Covenant v. Biden*,
993 F.3d 640 (9th Cir. 2021) .......... 4

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) .......... 5

*Finder v. Leprino Foods Co.*,
No. 1:13-cv-02059-AWI-BAM, 2017 WL 1355104 (E.D. Cal. Jan. 20, 2017) .......... 13

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) .......... 7

*Hodgers-Durgin v. de la Vina*,
199 F.3d 1037 (9th Cir. 1999) .......... 7

*Hussen v. Noem*,
822 F. Supp. 3d 944 (D. Minn. 2026) .......... 5

*Landis v. N. Am. Co.,*
*299 U.S. 248* (1936) .......... 3, 12

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005) .......... 3

*Munns v. Kerry*,
782 F.3d 402 (9th Cir. 2015) .......... 6

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 3, 10

*Noem v. Perdomo*,
146 S. Ct. 1 (2025) .......... *passim*

*Reach Community Dev. v. DHS,*
*174 F.4th* 1143, (9th Cir. 2026) .......... 12

*Stavrianoudakis v. U.S. Fish & Wildlife Serv.*,
108 F.4th 1128 (9th Cir. 2024) .......... 5

*Stormans, Inc. v. Selecky*,
586 F.3d 1109 (9th Cir. 2009) .......... 10

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) .......... 6

*Tincher v. Mullin*,
2026 WL 2797318 (D. Minn. Sept. 18, 2026) .......... 5

*Trump v. Boyle*,
145 S. Ct. 2653 (2025) .......... 1, 4, 5

*Trump v. CASA, Inc.*, 606 U.S. 831 (2025) .......... 2, 9, 11

*United Farm Workers of Am. v. Mullin*, 2026 WL 2754794 (9th Cir. Aug. 24, 2026) .......... 12

*United Farmworkers of Am. v. Mullin*, No. 25-4047, 2026 U.S. App. LEXIS 25727 (9th Cir. Aug. 24, 2026) .......... 1

*United Farmworkers of Am. v. Noem*, 823 F.Supp.3d 1112 (E.D. Cal. 2026) .......... 12

*United States v. Arvizu*, 534 U.S. 266 (2002) .......... 8

*United States v. Brignoni-Ponce*, 422 U.S. 873 (1975) .......... 8, 10

*Vasquez Perdomo v. Noem*, 148 F.4th 656 (9th Cir. 2025) .......... 4

*Warth v. Seldin*, 422 U.S. 490 (1975) .......... 6

*Washington v. Trump*, 847 F.3d 1151 (9th Cir. 2017) .......... 4

**Statutes**

8 U.S.C. § 1357(a)(2) .......... 12

**Rules**

Fed. R. Civ. P. 62 .......... 1

**INTRODUCTION**

On October 23, 2026, this Court issued a preliminary injunction ("Order") that gravely hinders the government's ability to conduct immigration stops in this District. ECF No. 807.[1] Under Federal Rule of Civil Procedure 62, the government respectfully submits this *ex parte* application to stay the Order pending appeal and to stay further proceedings in this case. Although the government sought a brief administrative stay of any injunction, the Order denied that request. The government therefore sets out its arguments for a stay—and incorporates by reference all arguments raised in prior briefing—for the Court's consideration. The government respectfully requests a decision on this request by 5:00 p.m. on November 2, 2026, and will seek relief from the Court of Appeals after that time.

The government readily satisfies all the requirements for a stay pending appeal. Most fundamentally, the Supreme Court already stayed a materially analogous injunction in this very case. *See Noem v. Perdomo*, 146 S. Ct. 1, 1 (2025). And in unmistakable terms, the Supreme Court has held that its interim orders "inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). That principle applies with full force here. This Court's reliance on the Ninth Circuit's decision declining to stay the prior injunction is particularly misplaced. The Supreme Court subsequently reached the opposite conclusion and granted a stay, leaving no reason to treat the Ninth Circuit's contrary reasoning as persuasive, much less binding.

Once again, the government is likely to succeed on the merits. To start, Plaintiffs—both the individual Plaintiffs and three immigrant-advocacy organizations—lack Article III standing. Their past exposure to allegedly illegal conduct does not create standing for prospective injunctive relief. Nor have Plaintiffs established that they face a certainly impending stop or arrest in violation of the Fourth Amendment or equal protection principles. Those same standing deficiencies recently led the Ninth Circuit to lift a similar

---

[1] Because this application is filed on the public docket, Defendants are refraining from quoting any material in this Court's order that either party views as warranting sealed treatment based on the meet-and-confer process ordered by the Court.

preliminary injunction. *See United Farmworkers of Am. v. Mullin*, No. 25-4047, 2026 U.S. App. LEXIS 25727, at *7 (9th Cir. Aug. 24, 2026). Additionally, the preliminary injunction, which effectively bars the government from conducting *any* stop in the Central District without threat of contempt litigation, regardless of whether the stops involve any of the Plaintiffs or their members, is impermissibly overbroad and violates basic equitable principles. *Trump v. CASA, Inc.*, 606 U.S. 831, 837 (2025).

The remaining stay factors tip decisively in the government's favor. The government has a significant and compelling interest in the uniform enforcement of federal immigration law, and the Court's injunction will cause serious operational problems and raises public safety concerns. *See* Quinones Decl. at 3, 5-6; Parra Decl. at 5-6. Without a stay, the preliminary injunction would inflict irreparable harm on multiple federal agencies and the public interest and would create an untenable situation in which a federal court micromanages every operation and stop conducted in a District of 20 million people. Conversely, Plaintiffs remain protected by the Fourth Amendment and fail to establish they will suffer irreparable harm if this injunction is stayed. More fundamentally, because Plaintiffs lack an injury sufficient for standing, no irreparable harm exists.

Finally, the government also satisfies the requirements for a stay of proceedings. Waiting until an appeal has concluded could substantially narrow the jurisdictional issues presented or even dispose of the entire case. For instance, if the Ninth Circuit agrees with the government that Plaintiffs lack Article III standing, there is nothing for the Court to resolve on the merits. Continuing proceedings in the district court while that threshold question remains pending on appeal would thus serve little purpose and would needlessly expend judicial and party resources. Likewise, without a stay, the Ninth Circuit and this Court could potentially be deciding the same legal questions—for example, Article III standing, the existence of similar alleged policies, the reasonable suspicion supporting the challenged stops, and the availability of a cause of action under the Administrative Procedure Act—simultaneously, risking incongruent results. With courts across the

country, including within this Circuit, already considering the same legal questions in similar cases further along in litigation, and the Supreme Court's prior intervention in this very case, judicial economy strongly favors awaiting a disposition on appeal. A stay of proceedings would also prevent further substantial and unnecessary litigation burdens that have characterized the case thus far. *See* Flentje Decl. at 1-3. The Court should accordingly grant the government's stay requests.

## LEGAL STANDARD

The Court considers four factors in determining whether a stay pending appeal is warranted: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). Where the government is a party, the balance of equities and public interest factors merge. *Id.* at 435.

Additionally, a district court has discretionary power to stay proceedings. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Under the three-factor test set forth in *Landis*, courts examine: (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer [if the case is allowed] . . . to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

## ARGUMENT

### I. THE COURT SHOULD GRANT A STAY PENDING APPEAL

#### A. The Government Is Likely To Succeed On The Merits

**1.** The Supreme Court's decision to stay a previous temporary restraining order (TRO) in this case has a direct impact on any analysis related to the motion for preliminary

injunction. *Perdomo*, 146 S. Ct. 1. Indeed, the Ninth Circuit treated the TRO as a preliminary injunction in substance. *See Vasquez Perdomo v. Noem*, 148 F.4th 656, 678 (9th Cir. 2025); *see also Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (recognizing that the standard for issuing a stay of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction). Plaintiffs lost on the four-factor test in the TRO context, and it logically follows that Plaintiffs similarly fail the "substantially identical" test in the context of their motion for preliminary injunction. *See Boyle*, 145 S. Ct. at 2654 (explaining that "interim orders are not conclusive as to the merits" but "inform how a court should exercise its equitable discretion in like cases").

Although the Court indicated it was not justifying its decision on the Ninth Circuit's prior denial of a similar injunction, it concluded that "the Ninth Circuit's statements of law in adjudicating a stay request [could] bind this Court when it considers the issuance of a new preliminary injunction," reasoning that the different burdens of proof and evidentiary showings required for stays and preliminary injunctions would not "lead the Ninth Circuit to state legal principles erroneously on either posture." Order 49 n.32. Even if the Supreme Court's decision did not specify its precise reasoning for granting the stay of the TRO, the Supreme Court unquestionably and necessarily found that—contrary to the Ninth Circuit's analysis—the government was likely to succeed on the merits, had demonstrated irreparable harm, and had shown that the equities tilted in its favor. The Court cannot conclude that the issues are sufficiently identical to warrant reliance on the Ninth Circuit's stay decision, *see E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 660 (9th Cir. 2021), yet insufficiently similar to give force to the Supreme Court's prior stay of the Ninth Circuit's decision, especially given the Supreme Court's pronouncements in *Boyle*.

**2.** Additionally, Plaintiffs lack standing under *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). Plaintiffs have never shown that immigration officers will stop them

again—let alone based on a purely discriminatory basis. *See Perdomo*, 146 S. Ct. at 2 (Kavanaugh, J., concurring) (reasoning Defendants may "stop suspected illegal immigrants based on a variety of factors," and thus "[P]laintiffs ha[d] no good basis to believe that law enforcement will unlawfully stop *them* in the future" based "on the prohibited factors"). Past exposure to purportedly illegal conduct does not create standing for prospective injunctive relief.

Additionally, the organizations cannot seek relief on behalf of their members. Not only are they prohibited from asserting the Fourth Amendment rights of others, *Alderman v. United States*, 394 U.S. 165, 174 (1969), but they also cannot demonstrate that past, isolated Fourth Amendment violations by federal agents are likely to recur or that any of their members face a certainly impending detentive stop without reasonable suspicion. *See Perdomo*, 146 S. Ct. at *2 (Kavanaugh, J., concurring) ("Plaintiffs' standing theory largely tracks the theory rejected in *Lyons*."); *see also Tincher v. Mullin*, 2026 WL 2797318 (D. Minn. Sept. 18, 2026) (granting motion to dismiss for lack of standing in a similar immigration enforcement action, "Operation Metro Surge"); *Hussen v. Noem*, 822 F. Supp. 3d 944, 999 (D. Minn. 2026).

Associational standing is especially lacking because any risk of future injury to the organizations' members is, at most, speculative. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 419 (2013)); *Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128, 1143-44 (9th Cir. 2024) (no associational standing for warrantless searches where chance of future injury is merely speculative). Nor can organizational Plaintiffs argue that their members face an imminent threat of injury based on pure statistical inference and uncorroborated anecdotes from certain members. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). To start, the Supreme Court has never accepted such a statistical-probability theory of standing. That approach to standing would also undermine Plaintiffs' theory of likely future injury. Plaintiffs cannot have it both ways: to the extent apparent Latino ethnicity and working-

class status "describe[s] an extremely broad profile" that encompasses too many people to justify individualized reasonable suspicion for Fourth Amendment purposes, Order 52, it is unclear why any particular member of the large relevant population would have a nonspeculative likelihood of being encountered and detained again. Immigration and Customs Enforcement (ICE) maintains a Los Angeles field office that is coextensive with the Central District and covers roughly 20 million people, approximately 10% (2,000,000) of whom are illegal immigrants. But officers made only 2,805 arrests from June to mid-July 2025—about 0.14% of the relevant population. ECF 94-1 ¶ 7. Those figures hardly establish that immigration officers will again encounter any Plaintiff, much less subject that individual to an unlawful stop.

Plaintiffs' speculative fear of future unlawful stops cannot bridge that gap. Courts have repeatedly held that a chilling effect based on a plaintiff's fear of future injury does not confer standing for injunctive relief. *See, e.g.*, *Clapper*, 568 U.S. at 416 (holding that plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm"); *Munns v. Kerry*, 782 F.3d 402, 410 (9th Cir. 2015) (same).

The Court also erred in finding the interest of ensuring oversight of all arrests and stops in the Central District to be germane to the organizations' purposes. For example, UFW and LAWCN are primarily concerned with workers' rights, and immigration arrests and stops have little to do with those concerns. Similarly, individual participation is required for associational standing when the nature of the claim or the relief requested makes it necessary for individual members to participate in the lawsuit. *See Warth v. Seldin*, 422 U.S. 490, 511 (1975). A claim that an individual's constitutional rights were violated as part of an immigration-based stop without reasonable suspicion depends on individual circumstances and thus necessitates individual participation in the lawsuit.

Plaintiffs also failed to satisfy Article III's traceability and redressability requirements. They proffered no evidence that the government's "allegedly wrongful

behavior w[ould] likely occur or continue." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). As explained above, it is entirely speculative that any member would be subject to a future stop without reasonable suspicion in a District of 20 million people, especially because the alleged unwritten policy to conduct unlawful immigration stops does not exist.

**3.** Even if Plaintiffs could demonstrate Article III standing, they cannot come close to showing the "threat of immediate and irreparable harm" that is necessary for an injunction. *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1042 (9th Cir. 1999) (en banc). The Ninth Circuit's decision in *Hodgers-Durgin* is instructive here. In that case, there was a contention that the practices of Customs and Border Patrol violated the Fourth Amendment. The en banc court held that, even assuming the plaintiffs there had standing, they "ha[d] not demonstrated a sufficient likelihood of injury to warrant equitable relief" because they were "stopped only once." *Id.* at 1044. So too here. None of the organizations has alleged their members have been subject to more than one arrest, and as in *Hodgers-Durgin*, "[w]hen a plaintiff seeks to enjoin the activity of a government agency, even within a unitary court system, his case must contend with 'the well-established rule that the Government has traditionally been granted the widest latitude in the "dispatch of its own internal affairs."'" *Id.* at 1043 (citation omitted).

For similar reasons, the equities did not weigh in Plaintiffs' favor. In short, whether viewed through the prism of Article III or the equitable factors for injunctive relief, the Court erred by turning alleged one-off past interactions into a basis for a sweeping, forward-looking remedy.

**4.** Nor have Plaintiffs have shown that the alleged unwritten policy to conduct stops or arrests in violation of the Constitution exists. The reasonable-suspicion inquiry "turn[s] on the totality of the particular circumstances." *United States v. Brignoni-Ponce*, 422 U.S. 873, 885 n.10 (1975); *see United States v. Arvizu*, 534 U.S. 266, 273 (2002). By definition, no particular circumstantial factor is categorically off-limits—whether that factor is a

person's appearance, behavior, or the officer's past experience with the particular offense, location, or suspect. Reasonable suspicion is accordingly context-dependent and cannot be reduced to per se rules that treat certain factors as categorically insufficient.

According to the Court, the government maintains an unlawful policy of conducting immigration stops based on appearance as Latino and perceived income level in combination, or, in some instances, appearance as Latino alone. Order 20, 35. Nothing in the record supports that strained thesis.

Despite having litigated and sought extensive discovery for nearly a year and obtaining thousands of policy and incident-related documents, Plaintiffs have failed to identify any evidence of the alleged policy or practice. The Court's Order generally relies on scattered portions of the record to support a theory of race-based motivation, but the record, taken as a whole, belies that theory. Isolated incidents are wholly insufficient to establish an agency policy. Indeed, the district court acknowledged that the government has *written* policies forbidding reliance on race alone and prohibiting the use of racial slurs. Yet, based on a smattering of individual arrests, a few comments by a handful of officers, increased immigration enforcement generally, and the subjective beliefs of declarants, this Court found an unwritten policy contrary to the written ones.

The evidence, however, demonstrates that immigration officers develop reasonable suspicion, based on a totality of the circumstances, for brief investigative stops. The totality of the circumstances may include—among other factors—apparent ethnicity and perceived occupation (but not apparent ethnicity alone). Plaintiffs' supposed evidence of the alleged policy merely reflects that the agents' actions fell into one of three possible categories: (1) consensual encounters, which are not seizures under the Fourth Amendment; (2) stops based on reasonable suspicion; and (3) stops with additional lawful justifications. The fundamental flaw in the Court's Order is its consideration of individual factors in isolation rather than in the context of the totality of the circumstances. The Supreme Court has rejected that sort of fragmented analysis. *See District of Columbia v.*

*R.W.*, 608 U.S 22, 24 (2026) ("In assessing whether an officer had reasonable suspicion, a reviewing court must "look at the 'totality of the circumstances' of each case"—an analysis that precludes the "evaluation and rejection" of "factors in isolation from each other." (internal citations omitted)); *Perdomo*, 146 S. Ct. at 3.

The injunction compounds that error by failing to provide meaningful guidance about the conduct it prohibits. Its failure to define "low-income or working-class status," Order 83, raises serious vagueness concerns, leaving officers to guess at the boundaries of permissible conduct. And to the extent that the injunction requires a "pre-stop individualized, particularized assessment of reasonable suspicion," it amounts to an impermissible follow-the-law injunction.

Even if the injunction "state[s] its terms specifically," Fed. R. Civ. P. 65(d), it violates basic Fourth Amendment principles and common sense in evaluating the relevancy of the two factors at issue in this case (apparent Latino ethnicity and perceived low-income status). Here, the relevant question is what constitutes reasonable suspicion for illegal presence in the United States—a status that renders an alien subject to detention and removal under the Immigration and Nationality Act, and a status shared by an estimated 10 percent of the population of the Central District of California, or about 2 million people within the District. In that context, the two factors are plainly relevant, and the Court's categorical treatment of them sharply departs from the totality-of-the-circumstances inquiry.

**5.** If nothing else, the grant of District-wide relief violates the Supreme Court's recent holding in *Trump v. CASA*, 606 U.S. 831 (2025), which prohibits universal (i.e., non-party-specific) injunctions. Nor can the Court justify that sweeping relief by certifying Plaintiffs' Suspicionless Stops Class and First Discriminatory Treatment Class. Putting aside the defects in that certification, *see* ECF No. 689, the Court did not even confine the injunction's reach to those class members. The upshot is an injunction that covers *everyone* in the Central District.

### B. The Remaining Stay Factors Favor The Government

The balance of harms, equities, and public interest overwhelmingly favor a stay pending appeal. *See Nken*, 556 U.S. at 435. The government will suffer irreparable harm if the Court's injunction remains in effect. The Court's broad, vague injunction will have a chilling effect on immigration enforcement because it threatens officers with contempt sanctions if they violate the injunction's nebulous terms. That judicial second-guessing will also deter officers from stopping suspects even when they have reasonable suspicion *on other grounds* to believe an individual is here illegally. *See* Quinones Decl. at 6; Parra Decl. at 6-7.

The government has a significant and compelling interest in enforcing federal immigration law. *See, e.g., Demore v. Kim*, 538 U.S. 510, 523 (2003); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) (holding that the court "should give due weight to the serious consideration of the public interest" in enacted laws). The Los Angeles area remains a crucial priority for immigration enforcement where millions of aliens have broken the law and remain illegally. *Perdomo*, 146 S. Ct. at 1 (Kavanaugh, J., concurring) ("Illegal immigration is especially pronounced in the Los Angeles area" and "[n]ot surprisingly given those extraordinary numbers, U.S. immigration officers have prioritized immigration enforcement in the Los Angeles area.").

To enforce immigration laws, the government conducts stops and arrests under the applicable statutory and regulatory scheme. But the preliminary injunction has thrown a central element of immigration enforcement, immigration stops and arrests, into intolerable uncertainty. The injunction will cause serious operational consequences and raises public-safety concerns. *See Perdomo*, 146 S. Ct. at 4 (Kavanaugh, J., concurring) (concluding that the balance of harms and equities tips in favor of the government in immigration enforcement, given the "myriad 'significant economic and social problems' caused by illegal immigration" (citing *Brignoni-Ponce*, 422 U.S. at 878)).

The injunction's prohibition on making stops based on a person's "status as low income or working-class and Latino," Order 83, further illustrates the burden imposed on law enforcement. The injunction nowhere defines "working-class" or "low-income," much less explains how immigration officers can ascertain an individual's economic status in the field. *See* Quinones Decl. at 3, 5-6; Parra Decl. at 5. That uncertainty leaves officers to guess at the bounds of permissible conduct, further tipping the balance of equities against preliminary relief.

Micromanaging the Executive Branch's lawful use of stops and arrests in a region with millions of illegal aliens weighs strongly in favor of staying the injunction, especially when the Supreme Court has previously concluded, based on a similar record, that the government is likely to prevail on appeal. *See Perdomo*, 146 S. Ct. at 6 (Kavanaugh, J., concurring) ("[W]e now likewise must decline to step outside our constitutionally assigned role to improperly restrict reasonable Executive Branch enforcement of the immigration laws."). Nor does the Judiciary "set immigration policy or decide enforcement priorities"; it merely "ensure[s], in justiciable cases, that the Executive Branch acts within the confines of the Constitution and federal statutes." *Id.* at 5. As explained above, the government's conduct fits comfortably within those confines. The injunction would also inflict irreparable harm on the government by supplanting the Executive Branch's judgments about how it should conduct immigration stops and threatens to upset the separation of powers. *See CASA*, 606 U.S. at 857-58. By contrast, "[t]he interests of individuals who are illegally in the country in avoiding" arrest 'is ultimately an interest in evading the law," which "is not an especially weighty legal interest." *Perdomo*, 146 S. Ct. at 5 (Kavanaugh, J., concurring).

## II. THE COURT SHOULD STAY PROCEEDINGS

In addition to a stay pending appeal, the Court should stay proceedings pending disposition of the government's appeal to the Ninth Circuit. This Court has broad discretion to stay proceedings under its inherent authority to manage its own docket.

*Landis*, 299 U.S. at 254. The "power to stay proceedings is incidental to the power inherent in every court to control disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.* The exertion of this power calls for the exercise of sound discretion." *CMAX*, 300 F.2d at 268.

The Court should exercise that discretion here. The Ninth Circuit recently lifted a preliminary injunction in a similar case where the plaintiffs, as here, alleged that Border Patrol agents detained individuals without reasonable suspicion in violation of the Fourth Amendment and arrested individuals without probable cause of flight in violation of 8 U.S.C. § 1357(a)(2). *See United Farm Workers*, 2026 WL 2754794, at *1. The Ninth Circuit remanded the case to the district court, explaining that, "[a]lthough past harm may support standing to seek damages, it does not, on its own, establish standing to seek prospective injunctive relief." *Id.* (citing *Lyons*, 461 U.S. at 102). In two other cases seeking similarly sweeping discovery into law-enforcement practices by the Department of Homeland Security, the Ninth Circuit did not hesitate to stay proceedings in the district court because the pending preliminary-injunction appeals could dramatically reshape or narrow the disputes. *See Dickinson v. Trump*, 174 F.4th 634, 650 (9th Cir. 2026) ("We also grant the request to stay the district court's proceedings pending appeal. This relief is warranted …. [D]iscovery need not continue in the district court pending appeal."); *Reach Community Dev. v. DHS*, 174 F.4th 1143, 1151 (9th Cir. 2026) ("there is no need for discovery to continue in the district court pending appeal.").

A stay makes particular sense because several courts of appeals—including the Ninth Circuit—are already confronting the same legal questions, including Article III standing and the existence of similar alleged policies.[2] Briefing in those cases is nearing completion, and decisions will likely follow in the coming months. Pressing ahead with burdensome discovery and further proceedings when those decisions may resolve or

---

[2] Issues related to those raised in this case are also on appeal in *Cruz-Gamez v. Lyons*, No. 26-2090 (9th Cir.), *Vasquez Perdomo v. Scott*, No. 26-6891 (9th Cir.), *Ramirez-Ovando v. Mullin*, No. 26-1027 (10th Cir.), and *Molina v. DHS*, No. 26-5045 (D.C. Cir.).

substantially narrow the issues in this case would serve little purpose.

Given that (1) the Ninth Circuit just lifted a preliminary injunction in a case implicating materially similar claims, (2) the Supreme Court stayed this Court's previous injunctive-relief order based on nearly the same record, (3) both courts expressed the importance of resolving Plaintiffs' standing in each case, and (4) multiple courts of appeals are currently resolving the same legal issues, the Court should stay proceedings. *United Farmworkers of Am. v. Noem*, 823 F. Supp. 3d 1112, 1135-36 (E.D. Cal. 2026) ("Defendants argue that waiting until the appeal is done could substantially narrow the jurisdictional issues (especially Article III standing and mootness), which could result in the dismissal of the entire case, or a substantial part thereof. . . . Defendants have the better argument. It is difficult to escape the fact that the appeal could have wide-ranging impacts on almost the entire case, including the standing analysis applicable to the requests for injunctive and declaratory relief.").

Judicial economy also supports a stay of proceedings. Allowing further litigation in a case that has already generated ***800*** docket entries in just over a year when courts of appeals across the country are addressing the legal questions that will resolve this case disserves judicial economy. Nor is subjecting the parties to the enormous cost of District-wide discovery—implicating millions of documents, the forensic imaging of thousands of electronic devices (both government-owned and personal), countless depositions, and contentious collateral disputes—an effective use of the parties' or the Court's resources. *See Finder v. Leprino Foods Co.*, No. 1:13-cv-02059-AWI-BAM, 2017 WL 1355104, at *4 (E.D. Cal. Jan. 20, 2017) ("conduct[ing] 'substantial, unrecoverable, and wasteful' discovery and pretrial motions practice on matters that could be mooted by a pending appeal may amount to hardship or inequity sufficient to justify a stay." (citation omitted)). It is hard to imagine a more substantial litigation burden than the one presented in this case, especially when much of it will likely prove unnecessary. *See generally* Flentje Decl. (describing litigation burdens).

## CONCLUSION

For the foregoing reasons, the Court should grant a stay pending appeal and stay of proceedings.

Dated: October 28, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

DANIEL F. MUMMOLO
Counsel to the Assistant Attorney General

JONATHAN ROBBINS
Assistant Director

STEPHANIE L. GROFF
JACOB A. BASHYROV
JASON K. ZUBATA
ANIELLO DESIMONE
Trial Attorneys

*<u>/s/ August Flentje</u>*
AUGUST FLENTJE
Deputy Director
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-8275
Email: August.Flentje@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies that this filing is 4632 words, which complies with L.R. 11-6.1.

Dated: October 28, 2026

Respectfully submitted,

*/s/ August Flentje*
AUGUST FLENTJE
Deputy Director
Office of Immigration Litigation
U.S. Department of Justice

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2026, I served **DEFENDANTS' *EX PARTE* APPLICATION FOR STAY OF ORDER GRANTING PRELIMINARY INJUNCTION [ECF NO. 807] AND FOR STAY OF PROCEEDINGS PENDING APPEAL** on all counsel of record by means of the Court's CM/ECF electronic filing system.

*/s/ August Flentje*
AUGUST FLENTJE
Deputy Director
Office of Immigration Litigation
U.S. Department of Justice

*Counsel for Defendants*