BRETT A. SHUMATE
Assistant Attorney General
Civil Division
DREW C. ENSIGN
Deputy Assistant Attorney General
DANIEL F. MUMMOLO
Counsel to the Assistant Attorney General
AUGUST E. FLENTJE
Deputy Director
JONATHAN A. ROBBINS
Assistant Director
JASON K. ZUBATA
NANCY N. SAFAVI
ANIELLO DESIMONE
JACOB A. BASHYROV
Trial Attorneys
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 514-3309
Email: august.flentje@usdoj.gov

*Counsel for Defendants*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PEDRO VASQUEZ PERDOMO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>Defendants. | No. 2:25-cv-05605-MEMF-SP<br><br>**DECLARATION OF AUGUST E. FLENTJE IN SUPPORT OF DEFENDANTS' EX PARTE APPLICATION FOR STAY OF ORDER GRANTING PRELIMINARY INJUNCTION AND FOR STAY OF PROCEEDINGS PENDING APPEAL**<br><br>Hon. Maame Ewusi-Mensah Frimpong<br>United States District Judge<br><br>Referred to Hon. Sheri Pym<br>United States Magistrate Judge |

**DECLARATION OF AUGUST E. FLENTJE**

I, AUGUST E. FLENTJE, DECLARE pursuant to 28 U.S.C. § 1746 that:

1. I am the Deputy Director of the Office of Immigration Litigation (OIL), an office within the Civil Division of the United States Department of Justice. I joined the Civil Division of the Department of Justice in 1998 as a trial attorney, a career civil service position. I began serving as Deputy Director in 2024. In this role, I manage and consult on the various district court cases handled by OIL. My background, training, and experience have given me familiarity with and an understanding of various civil discovery processes, parameters, abilities, and limitations in a range of civil cases handled by OIL.

2. The principal responsibility of OIL is to litigate immigration cases originating in federal district courts (including appeals from those cases), as well as petitions for review of final orders of removal in federal appellate courts. Among many other cases filed across the country, OIL represents the Government in the above-captioned case.

3. I make this declaration in support of DEFENDANTS' EX PARTE APPLICATION FOR STAY OF ORDER GRANTING PRELIMINARY INJUNCTION AND FOR STAY OF PROCEEDINGS PENDING APPEAL. I make this declaration based on personal knowledge and review of records and information related to this case and the work of OIL.

4. Ongoing discovery in this matter has and continues to be extraordinarily burdensome and unique among cases I have been involved in 28 years at OIL and in the Civil Division. The discovery burden here is unique given that Plaintiffs are seeking discovery into every immigration arrest and stop by DHS in the Central District of California, and despite Defendants' concerns and requests to limit discovery in a proportional manner, this Court has generally agreed that this extraordinary discovery effort is warranted. *See* ECF 635 at 1 ("the Government has said that its agents are not unlawfully stopping people"; thus "[a]s part of the process of 'discovery,' the people and organizations who brought this lawsuit asked the Government to turn over the communications that the Government agents had regarding the operations" so as to "prove what the Government was saying was not true---the government did not have reasonable suspicion for *all of the stops*") (emphasis added). This is true in spite of there being serious questions regarding

Plaintiffs' standing to even bring this suit, as the Supreme Court has already stayed injunctive relief issued by this court based on, among other things, the Government's likelihood of prevailing on appeal. *See Noem v. Perdomo*, 146 S. Ct. 1, 1 (2025).

5. The scope of this discovery burden is extreme. While this case began with "limited, expedited" discovery, the Government's discovery obligations have been ongoing since October 2025. Discovery thus far has involved review of more than 4.3 million pages of documents. This review has been part of responding to over 230 particularized discovery requests for production and interrogatories in limited and plenary discovery. The review of this material has involved 306 document reviewers at the Department of Justice and impacted agencies, logging a total review time of over 13,000 hours and marking documents nearly 700,000 times. By way of comparison, if those reviewers charged fees comparable to the fees being sought by Plaintiffs in this case, *see* ECF 737-2, the bill would be between $7,700,000 (if all review was done by paralegals) and $22 million (if review was done by senior counsel). And this is just a portion of the ongoing discovery.

6. There are several cases filed around the country that raise claims very similar to those in *Perdomo*. Yet I am not aware of discovery in those cases being on a scale that comes close to the discovery authorized in *Perdomo*.

7. This review burden is also very complex given the law enforcement sensitivity of the materials at issue that are the subject of discovery. This review is further complicated by the nature of government organization and the equities of many agencies in the discovery documents. Somewhat unique to federal government litigation, multiple agencies have equities, resulting in multiple stages of review for many documents. This review is complicated by the fact that there are some non-party government components with equities in the discovery materials, which requires their additional review and thus significantly extends the time needed for review; for example, many documents have been sent to the Federal Bureau of Investigations for review given that they implicate that agency's privileges and equities.

8. To illustrate the significant burden, one of the 230 discovery requests is for body worn camera footage. UFW Set One. The Magistrate Judge ordered the production of roughly 4,700 videos by November 6, 2026. ECF 655. This is somewhat less than half of all such videos, not a targeted

sample. Given the potential exposure of sensitive information (including videos that show sensitive law enforcement databases), Defendants must spend countless hours reviewing and potentially redacting the videos. The work associated with reviewing and redacting thousands of videos is labor-intensive, technically complex, and requires the diversion of personnel from mission-critical duties.

9. The district court has also imposed unrealistic and onerous burdens to forensically image phones used by DHS officers – requiring in "limited expedited" discovery the imaging of every phone (including personal phones) possessed by hundreds of officers and agents who participated in one or more of fifteen immigration enforcement operations that took place over a year ago. This will inevitably produce millions of pages of documents to review, well beyond the number of documents reviewed to date. Each phone imaging and production process is very burdensome, and normally such an effort is carefully targeted to a few custodians centrally involved in the claim. It is not carefully targeted here – every phone must be forensically imaged under this Court's order. Indeed, recognizing the extreme burden imposed by this order, Plaintiffs agreed to the production of three phones a week, a rate whereby it will take a period of years to satisfy the discovery ordered by the district court. Yet the district court ordered that this entire production be completed in two weeks.

10. For example, the volume from the first 23 forensically imaged phones took more than eight days to upload into the Department of Justice's document review platform, which does not account for the time it took the Defendants ICE and CBP to process the phones. The reviewable files associated with just those 23 phones amounted to more than 170,000 documents, containing more than 454,000 pages of reviewable material. From the magistrate judge's current court orders, there are potentially a thousand phones that could be implicated. Defendants anticipate more than 7 million documents to review in connection with all of the forensically imaged phones. Personal phones, which are likely to hold much more material due to use in the wide range of personal activities will require review of a significantly larger number of documents. That significantly larger amount of documents to be reviewed by government officials will implicate personal privacy and raise profound and far-reaching privacy concerns. This burdensome, intrusive, and

constitutionally suspect discovery will be largely irrelevant to the case at hand as the majority of the information on the personal phones will be wholly untethered to the case

11. The Court has also provided no clear guidance on how the government is expected to obtain agent's personal phones for imaging, but has held the government in contempt for not obtaining the personal phones and imposed an ongoing $500/day sanction. That sanction continues in spite of the government satisfying the contempt order by obtaining and imaging the limited number of personal phones that agents turned over voluntarily, ECF 635, and the lack of contemptuous conduct or a contempt finding with respect to the Court's recent order requiring that further steps be taken with respect to agents who did not turn over phones voluntarily. ECF 750; ECF 810.

12. It remains to be resolved how Plaintiffs and the district court will handle officer phones in plenary discovery, which involves a much larger number of operations and agents.

13. On May 7, 2026, Plaintiffs obtained permission (by way of stipulation) to expand the number of deposition requests to 20. ECF 501. Now, just a few months later, on October 22, 2026, Plaintiffs made a request to expand the number of depositions to 60. This is six times the number provided for by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 30(a)(2)(A)(i). Their request to expand the number of permitted depositions appears to reflect an effort to search for evidence that has not surfaced through their extensive discovery to date. The burden of ongoing depositions, on top of various other discovery obligations, is substantial. Each deposition requires significant preparation time from government attorneys and the deponents, shifting them away from their assigned duties.

14. The attached declaration of Benjamin Moss (previously filed at ECF No. 214-1) further describes the litigation burdens imposed by what was intended to be "limited, expedited" discovery and the truncated and highly burdensome timelines imposed, along with recent (and ongoing) staffing impacts on OIL that have exacerbated the challenges in completing such burdensome discovery. Mr. Moss' declaration provides further context as to the burdens of imaging hundreds (if not thousands) of phones and explains in concrete terms what the process would entail, the multiple steps and personnel required to undertake and review such imaging, and how those demands must be considered against the government's current staffing constraints amid ongoing attrition, which

(as seen with discovery to date) have reduced the number of attorneys available to conduct document review and, consequently, prolonged the discovery process.

15. As Deputy Director, I manage a staff of five Assistant Directors and fewer than 60 trial attorneys dedicated to district court litigation of national importance that is filed throughout the country. By comparison, Plaintiffs listed 32 attorneys on the masthead of their most recent filing in this single case. ECF 815. For our office, this is one class action among many class actions and other significant litigations filed throughout the country. I have recently reviewed my case records that show over 60 major active district court litigations of national scope being handled primarily by OIL.

I DECLARE, under the penalty of perjury, that the foregoing is true and correct.

Executed on October 28, 2026

*/s/ August E. Flentje*
AUGUST E. FLENTJE
Deputy Director
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 514-3309
Email: august.flentje@usdoj.gov