STACY TOLCHIN (SBN 217431)
*stacy@tolchinimmigration.com*
LAW OFFICES OF STACY TOLCHIN
776 E. Green St., Suite 210
Pasadena, CA 91101
Tel: 213-622-7450; Fax: 213-622-7233

MOHAMMAD TAJSAR (SBN 280152)
*mtajsar@aclusocal.org*
MAYRA JOACHIN (SBN 306065)
*mjoachin@aclusocal.org*
DAE KEUN KWON (SBN 313155)
*akwon@aclusocal.org*
STEPHANIE PADILLA (SBN 321568)
*spadilla@aclusocal.org*
ALYSSA MORONES (SBN 343358)
*amorones@aclusocal.org*
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
P.O. Box 811370
Los Angeles, CA 90081
Tel: 213-977-5232; Fax: 213-201-7878

*Counsel for Stop/Arrest Plaintiffs*

(*Additional counsel listed on next page*)

MARK ROSENBAUM (SBN 59940)
*mrosenbaum@publiccounsel.org*
REBECCA BROWN (SBN 345805)
*rbrown@publiccounsel.org*
RITU MAHAJAN (SBN 252970)
*rmahajan@publiccounsel.org*
GINA AMATO (SBN 215519)
*gamato@publiccounsel.org*
AMANDA MANGASER SAVAGE
(SBN 325996)
*asavage@publiccounsel.org*
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Counsel for All Plaintiffs*

ANNE LAI (SBN 295394)
*alai@law.uci.edu*
UC IRVINE SCHOOL OF LAW
IMMIGRANT AND RACIAL JUSTICE
SOLIDARITY CLINIC
P.O. Box 5479
Irvine, CA 92616-5479
Tel: 949-824-9894; Fax: 949-824-2747

*Counsel for Stop/Arrest Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

Pedro VASQUEZ PERDOMO, et al.,

Plaintiffs,

v.

Markwayne MULLIN, in his official capacity as Secretary, Department of Homeland Security, et al.,

Defendants.

Case No.: 2:25-cv-05605-MEMF-SP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION FOR A STAY**

JACOB S. KREILKAMP (SBN 248210)
*jacob.kreilkamp@mto.com*
DAVID FRY (SBN 189276)
*david.fry@mto.com*
ADAM B. WEISS (SBN 296381)
*adam.weiss@mto.com*
SARA H. WORTH (SBN 341088)
*sara.worth@mto.com*
HENRY D. SHREFFLER (SBN 343388)
*henry.shreffler@mto.com*
LAURA R. PERRY (SBN 342504)
*laura.perrystone@mto.com*
LAUREN E. KUHN (SBN 343855)
*lauren.kuhn@mto.com*
MAGGIE BUSHELL (SBN 354048)
*maggie.bushell@mto.com*
ANGELA URIBE (SBN 353579)
*angela.uribe@mto.com*
MUNGER, TOLLES & OLSON LLP
350 S. Grand Ave., 50th Floor
Los Angeles, CA 90071
Tel: 213-683-9100; Fax: 213-683-9100

JESSICA KARP BANSAL (SBN 277347)
*Jessica@ndlon.org*
LAUREN MICHEL WILFONG*
*lwilfong@ndlon.org*
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Tel: 626-214-5689

BREE BERNWANGER (SBN 331731)
*bbernwanger@aclunc.org*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel: 415-621-2493

ANDRES HOLGUIN-FLORES (SBN 305860)
*aholguinflores@aclu-sdic.org*
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Tel: 619-398-4199

*Counsel for Stop/Arrest Plaintiffs*

MATTHEW J. CRAIG (SBN 350030)
*mcraig@heckerfink.com*
MACK E. JENKINS (SBN 242101)
*mjenkins@heckerfink.com*
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Tel: 212-763-0883; Fax: 212-564-0883

*Counsel for Access/Conditions Plaintiffs*

EDGAR AGUILASOCHO (SBN 285567)
*eaguilasocho@farmworkerlaw.com*
MARTÍNEZ AGUILASOCHO LAW, INC.
900 Truxtun Ave, Suite 300
Bakersfield, CA 93301
Tel: 661-859-1174

*Counsel for Plaintiff United Farm Workers*

CARL BERGQUIST*
*cbergquist@chirla.org*
COALITION FOR HUMANE IMMIGRANT RIGHTS
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

*Counsel for Plaintiff Coalition for Humane Immigrant Rights*

ALVARO M. HUERTA (SBN 274787)
*ahuerta@immdef.org*
BRYNNA BOLT (SBN 339378)
*bbolt@immdef.org*
ALISON STEFFEL (SBN 346370)
*asteffel@immdef.org*
IMMIGRANT DEFENDERS LAW CENTER
634 S. Spring St., 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

*Counsel for Plaintiff Immigrant Defenders Law Center*

* Admitted pro hac vice

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1
II. ARGUMENT ..... 2
A. *Ex Parte* Relief is Unwarranted. ..... 2
B. Defendants May Not Unilaterally Supplement the Record Through an *Ex Parte* Application ..... 3
C. The Court Should Not Stay the Preliminary Injunction ..... 3
D. The Court Should Not Stay All Proceedings ..... 11
1. Standard practice requires the case proceed pending an interlocutory appeal ..... 11
2. Defendants do not satisfy the requirements of a stay under Landis ..... 11
(a) Defendants will suffer no hardship or inequity from proceeding ..... 12
(b) A wholesale stay will not simplify issues, proof, or questions of law. ..... 14
(c) Plaintiffs and judicial economy will be unduly harmed by a stay ..... 15
III. CONCLUSION ..... 17

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*California by & through Harrison v. Express Scripts, Inc.*,
139 F.4th 763 (9th Cir. 2025)....................11

*California Sea Urchin Comm'n v. Jacobson*,
No. CV 13-5517-DMG (CWX), 2016 WL 11785449 (C.D. Cal. Nov. 3, 2016)....................17

*California v. Azar*,
911 F.3d 558 (9th Cir. 2018)....................16

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)....................4, 5

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962)....................11, 12

*Contour Design, Inc. v. Chance Mold Steel Co.*,
649 F.3d 31 (1st Cir. 2011)....................11

*Cruz-Gamez v. Lyons*,
No. 26-2090 (9th Cir.)....................13

*Dickinson v. Trump*,
174 F.4th 634 (9th Cir. 2026)....................15

*Durgin v. de la Vina*,
174 F.R.D. 469 (D. Ariz. 1997)....................8

*Easyriders Freedom F.I.G.H.T. v. Hannigan*,
92 F.3d 1486 (9th Cir. 1996)....................8

*Escobar Molina v. DHS*,
No. 26-5045 (D.C. Cir.)....................14

*Federal Savings & Loan Insurance Co. v. Molinaro*,
889 F.2d 899 (9th Cir. 1989)....................16

*Finder v. Leprino Foods Co.*,
No. 1:13-cv-02059-AWI-BAM, 2017 WL 1355104 (E.D. Cal. Jan. 20, 2017)....................16

*Hodgers-Durgin v. de la Vina*,
199 F.3d 1037 (9th Cir. 1999)....................8

*Index Newspapers LLC v. U.S. Marshals Serv.*,
977 F.3d 817 (9th Cir. 2020)....................8, 11

*Kansas v. Glover*,
589 U.S. 376 (2020)....................4

*Keating v. Office of Thrift Supervision*,
45 F.3d 322 (9th Cir. 1995) .......... 17

*Kona Enters., Inc. v. Est. of Bishop*,
229 F.3d 877 (9th Cir. 2000) .......... 3

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) .......... 12, 17

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005) .......... 12, 15, 17

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) .......... 6

*Merrill v. Milligan*,
142 S. Ct. 879 (2022) .......... 15

*Nat'l TPS All. v. Noem*,
No. 25-CV-01766-EMC, 2025 WL 2578045 (N.D. Cal. Sept. 5, 2025) .......... 16

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 4, 10, 12

*ODonnell v. Harris Cnty.*,
260 F. Supp. 3d 810 (S.D. Tex. 2017) .......... 3

*POP MART Americas Inc. v. 7-Eleven, Inc.*,
809 F. Supp. 3d 980 (C.D. Cal. 2025) .......... 2

*Ramirez-Ovando v. Mullin*,
No. 26-1027 (10th Cir.) .......... 14

*Reach Community Dev. v. DHS*,
174 F.4th 1143 (9th Cir. 2026) .......... 15

*Sports Form, Inc. v. United Press Int'l, Inc.*,
686 F.2d 750 (9th Cir. 1982) .......... 17

*Stavrianoudakis v. U.S. Fish & Wildlife Serv.*,
108 F.4th 1128 (9th Cir. 2024) .......... 7

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 15

*Trump v. CASA*,
606 U.S. 831 (2025) .......... 8

*United Farm Workers v. Noem*,
823 F. Supp. 3d 1112 (E.D. Cal. 2026) .......... 12, 13, 15

*United States v. Mitchell*,
971 F.3d 993 (9th Cir. 2020) .......... 3

*United States v. Pitner*,
307 F.3d 1178 (9th Cir. 2002) ........ 11

*Vasquez Perdomo, et al. v. Noem, et al.*,
No. 26-209 (9th Cir. ECF Nos. 52, 61) ........ 14

*Yong v. I.N.S.*,
208 F.3d 1116 (9th Cir. 2000) ........ 17

**Federal Statutes**

8 U.S.C. § 1357(a)(2) ........ 14

**Local Rules**

L.R. 7-18 ........ 3

**Treatises**

Wright & Miller, 16 Fed. Prac. & Proc. Juris. § 3921.2 (3d. ed. 2025) ........ 11

**Other Authorities**

Jarrod Zinn, *Santa Maria Police Turn Over Surveillance Footage After ICE Agents Misidentify, Injure Student, News Channel 3-12* (Oct. 23, 2026), https://keyt.com/news/santa-maria-north-county/2026/10/23/santa-maria-police-turn-over-surveillance-footage-after-ice-agents-misidentify-injure-student/ ........ 10

## I. INTRODUCTION

On February 15, 2026, H.S.H. was driving his son to soccer practice when an unmarked truck made a U-turn and pulled him over. The plain-clothes ICE officer demanded to see his papers. The officer told H.S.H., "I could kill you if I wanted to," and that he stopped H.S.H. because he "look[s] like a paisa." ECF 529-57 ¶¶ 3, 4, 7, 9, 12.[1]

That evidence is undisputed, and it is not an isolated incident. The Court rightly found that the government's racial profiling is systemic and officially sanctioned, it is ongoing, it threatens imminent irreparable injury to Plaintiffs and class members who fit Defendants' profile, and District-wide relief is necessary on these facts. Defendants have not shown a strong likelihood of success on the merits. The Court should deny their bid for a stay.

It is remarkable that Defendants seek an emergency stay of an order barring racial profiling. The government claims that it will be irreparably harmed if agents can no longer rely "solely" on a person's "apparent status as low-income or working-class and Latino" to detain that person on the street. ECF 823 at 83 ("Order"). But the government is not harmed by following the Constitution. Defendants feign confusion about what the injunction means, but that borders on the absurd: ICE's declarant claims that he perceives the order to require officers to determine a person's actual ethnic background and income before deciding whether the injunction allows their seizure. In fact, the Order bars Defendants' reliance on an apparent demographic profile as a *substitute* for reasonable suspicion. It bars the ICE officer who stopped H.S.H. from stopping anyone else just because they "look like a paisa." All of Defendants' claimed harms flow from their faux confusion about what the Order means, and cannot be credited.

Not content with a stay of a single preliminary injunction order barring racial profiling while conducting detentive stops, Defendants also seek to prevent Plaintiffs from even conducting further discovery into any aspect of their case. But the preliminary injunction concerns only detentive stops; Plaintiffs bring several other constitutional and statutory claims, including claims

---

[1] That officer has never been subject to discipline, including for shooting a U.S. citizen who was attempting to leave the scene of an immigration vehicle stop after being ordered to leave. ECF 632-5 [DO Ortiz Dep.] at 326:17-327:24, 330:22-340:22.

about the systematic denial of access to counsel and conditions of confinement. If Defendants' motion is granted, Plaintiffs and class members would not only lose the protection of the preliminary injunction; they would be barred from preparing their case for trial on the merits.

Defendants are not entitled to such an extraordinary order. An appeal from an interim order on one set of claims does not decide the case, particularly when the case involves multiple forms of government misconduct. Nor does counsel's wish to avoid the burden of civil litigation justify Defendants' request to close the courthouse doors on Plaintiffs who have survived two motions to dismiss, certified two classes, and obtained three preliminary injunction orders.

## II. <u>ARGUMENT</u>

Defendants' application—which is procedurally deficient and meritless several times over—should be denied.

### A. <u>*Ex Parte* Relief is Unwarranted.</u>

"[E]x parte applications are solely for extraordinary relief and are rarely justified." *POP MART Americas Inc. v. 7-Eleven, Inc.*, 809 F. Supp. 3d 980, 988 (C.D. Cal. 2025) (Frimpong, J.) (cleaned up). "A party filing an ex parte application must support its request for emergency relief with evidence that the moving party's case will be irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures, and a showing that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.* (cleaned up). Neither the application nor the supporting declarations even acknowledge, much less address, these requirements. Defendants cannot satisfy either.

First, Defendants do not argue that they would suffer irreparable prejudice if the motion were heard on regular notice. The only reference to "irreparable prejudice" in Defendants' papers is the passing and conclusory statement, without more, that Defendants "seek this stay . . . to avoid irreparable prejudice while appellate review proceeds." ECF 821 at 2.

Nor does the application establish that Defendants are without fault in creating the supposed exigency. Indeed, Defendants' own conduct confirms there is no crisis. Defendants have been on notice of a likely injunction since September 24, 2026, when the Court issued its tentative ruling. Yet after the Court entered the injunction on October 23, Defendants waited five

more days to seek *ex parte* relief. And Defendants' supporting declarations do not identify a single harm that any officer or agent has suffered since the injunction took effect. Defendants' application for *ex parte* relief fails at the threshold.[2]

**B. Defendants May Not Unilaterally Supplement the Record Through an *Ex Parte* Application**

Defendants already asked for a stay, ECF 678 at 28, and the Court denied it, Order at 81–83. They now renew that request with two declarations signed five days after the ruling, offering (unsupported) evidence they never presented to the Court. That is improper whether the application is treated as a motion for reconsideration or a stay motion. Reconsideration cannot be used to "present evidence for the first time when [it] could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); *see also* L.R. 7-18. A stay motion likewise "should not be used to . . . submit new evidence." *ODonnell v. Harris Cnty.*, 260 F. Supp. 3d 810, 815 (S.D. Tex. 2017).

Parra, for the first time, states, without citation, that 10% of the District's residents are unlawfully present, ECF 821-2 ¶ 16. Quinones adds new ICE docket statistics, 2025 population estimates, and arrest totals. ECF 821-1 ¶¶ 13, 17 & nn.4–6. This evidence was in Defendants' files before the Court ruled.

The Court already has found that Defendants "have had ample opportunity to present" controverting evidence and did not, even after a tentative order that "gave Defendants multiple opportunities to dispute any fact." Order at 37, 43 n.27. Defendants had every opportunity to submit this evidence when Plaintiffs could test it and the Court could consider it. They may not unilaterally supplement the record *ex parte* now, and the Court should decline to consider it.

**C. The Court Should Not Stay the Preliminary Injunction**

A stay pending appeal is an "extraordinary remedy." *United States v. Mitchell*, 971 F.3d 993, 999 (9th Cir. 2020). To obtain a stay, Defendants must make a "strong showing" that they

---

[2] Defendants' application also is procedurally defective because they failed to meet and confer in good faith about the basis for it, including by failing to disclose that their stay arguments would rest on new declarations and claims of discovery burdens. *See* Declaration of Sara H. Worth, concurrently filed herewith.

are likely to succeed on the merits of their appeal, will be irreparably injured before the appeal can be heard, issuance of the stay will not "substantially injure" Plaintiffs, and a stay is in the "public interest." Nken v. Holder, 556 U.S. 418, 434 (2009).

***First***, Defendants have failed to make a "strong showing" of success on appeal.

**1.** The government first contends that Defendants are likely to succeed because the Supreme Court stayed an earlier TRO in this case. App. at 3–4. But the record before this Court on this PI motion was—excepting named Plaintiffs' declarations—all *new evidence* that was not part of the TRO record. This record, which Defendants ignore, shows that race is the predominant characteristic driving Defendants' stops, and the stops are neither brief nor unintrusive, as one Justice mistakenly believed. *See* Order at 23 (crediting Latino declarants' undisputed testimony that they were grabbed, tackled, and thrown to the ground without provocation). Moreover, the preliminary injunction does not resemble the four-factor TRO that the Supreme Court stayed. Rather, the order is carefully tailored to the particular race-based policy that Defendants are applying in this District, substantiated by the current, developed record, and supported by an additional legal claim under the Fifth Amendment that the Supreme Court never considered.

This Court also did not rest its decision on the Ninth Circuit's order denying a stay of the TRO. Regardless of whether the Ninth Circuit's stay decision controls, the government fails to show any conflict between the Court's current decision and well-established law. The Court cited the Ninth Circuit's order for the undisputed proposition that the Fourth Amendment does not permit stops based solely on a demographic profile (Order at 52)—equally well established by Supreme Court precedent. *See Kansas v. Glover*, 589 U.S. 376, 385 & n. 1 (2020).

**2.** Defendants next argue that Plaintiffs lack standing to challenge Defendants' practice of racial profiling, and that no such practice exists. *See* Mot. at 4–7, 7–8. The Court's findings of fact are reviewed for clear error. The Court properly found, based on an extensive record, that Defendants are making stops based solely on a demographic profile. The Court also correctly found that Plaintiffs (and their members) are "realistically threatened" by that unlawful practice. *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).

An appellate court should not overturn the Court's sound factual finding that Defendants are engaged in a policy and practice of conducting stops based solely on apparent status as Latino and low-income or working-class. The Court did not rely on a smattering of incidents, as Defendants suggest, but considered dozens of undisputed declarations, e-mails, texts, body camera video, arrest records, and deposition testimony from supervisors across enforcement teams and official agency representatives. That record overwhelmingly shows that agents routinely use a person's Latino appearance as the sole basis for deeming that person suspicious: Agents text about looking for "possibles" based on appearance. ECF 632-6 at GOV 6643-55, 6755. Agents describe people as "tonks" or "wet"—slurs for unlawful Latino immigrants—based on how they look. *See, e.g.*, Ex. 81 to PI Motion [GOV-P17-015] (lodged) ("There was a guy, I'm pretty sure he's wet he was just sitting in that mini van"); Ex. 78 to PI Motion [GOV-P16-001] (lodged) ("Yeah, just plug us in wherever you see some tonks and we'll jump out.")

Defendants suggest that Plaintiffs' theory of standing is based solely on evidence of past harm, but extensive record evidence substantiates the *prospective* threat Plaintiffs face. Defendants ignore that their policy has yielded repeated stops of Latino U.S. citizens, ECF 632 at 14, as well as others, *id.* at 15–16, and already has resulted in repeated stops of organizational members, including "Manuel," a CLEAN member who is lawfully present with work authorization, *id.* at 15.

A realistic threat of future injury also can be shown where officers act pursuant to "order[] or authoriz[ation]," *Lyons*, 461 U.S. at 106. That is exactly what the record shows. Supervisory Border Patrol Agent Sanchez testified that when effecting seizures in the District, apparent Latino ethnicity "could be a *determining factor*" in deciding whom to stop. ECF 632-12 [SBPA Sanchez Dep.] at 131:21-25 (emphasis added). CBP's 30(b)(6) witness then confirmed that Sanchez's statements about his reliance on race are consistent with the agency's expectations of how agents should act. ECF 644-1 [Lairmore CBP 30(b)(6) Dep.] at 232:13–234:7.

As the Court has explained, Defendants' reference to written policies does not undermine the Court's finding that they are engaged in an officially-sanctioned practice of racial profiling. To the extent Defendants intend to point to the CBP Nondiscrimination Policy, for example, to

prohibit sole reliance on race, *see* App. at 8, they do not speak to whether Defendants' agents may rely solely on a demographic profile of race and socioeconomic status. And if they did, Defendants' witnesses' testimony would belie any actual prohibition in place concerning such profiling. In any event, Defendants have not established that any of the written policies were communicated to agents carrying out large-scale immigration enforcement in the District, despite ample opportunity to do so.

Plaintiffs also are the targets of the policy and practice they challenge. *See Melendres v. Arpaio*, 695 F.3d 990, 998 (9th Cir. 2012). The individual Plaintiffs already have been stopped pursuant to the policy, and it is likely they will be subjected to it again because they match the precise demographic profile that Defendants are targeting.

There is no reason to believe that the prior stops of the individual Plaintiffs make a future stop less likely. To the contrary, multiple individuals have been stopped more than once, and Defendants have gone to numerous locations more than once, *e.g.*, ECF 632-14 [Hernandez Viramontes Decl.], ¶¶ 6–8, 14; ECF 632-56, [Anderson Decl.], ¶¶ 5, 9; ECF 529-74 [Melendrez Decl.], ¶¶ 4, 8–10; ECF 632-42 [Zuniga Decl.], ¶ 4. Defendants acknowledge that they have no system for tracking stops that led to release[3] or for tracking the places agents have previously gone[4] to avoid recurrence.

The risk of future stops of U.S. citizens is substantial also because Defendants frequently do not allow Latino individuals to retrieve proof of citizenship before detaining them. For example, agents grabbed V.M.C. at work and asked him if he had papers. *See* ECF 632-58 [V.M.C. Decl.], ¶¶ 7–16. V.M.C. explained he was a U.S. citizen and requested to retrieve his birth certificate from his backpack nearby, but the agent refused. *See id.* Instead, the agent led V.M.C. to an unmarked car and took him downtown, where he was held for hours. *See id.* When a U.S. citizen Latino member of one of the plaintiff organizations was handcuffed at work, officers

---

[3] ECF 632-4 [CBP 30(b)(6)] at 208:6-209:5, 235:5-241:9; ECF 632-40 [ICE 30(b)(6)] at 167:3-172:25.

[4] ECF 632-4 [CBP 30(b)(6)] at 172:18-175:14, 178:14-17; ECF 632-40 [ICE 30(b)(6)] at 169:13-170:15; ECF 632-5 [DO Ortiz] at 134:2-23.

pointed a gun at the manager when he attempted to get his passport and said, "Don't move." ECF 632-43 [Santiago Tafolla Decl.], ¶¶ 9, 11 (U.S. citizen member of CLEAN told he "was Latino" and so his "documents were false"). *See also* ECF 632-36 (Latino U.S. citizen trapped by vehicles at McDonald's with his two-year-old in the backseat and told his passport could be fake).

As with Latino U.S. citizens, Defendants have a disturbing track record of seizing noncitizens who are lawfully present. ECF 632-86 [GOV-P16-006] (stop of legal resident at Home Depot); ECF 632-59 [Ortiz Decl.], ¶¶ 2-5, 8; ECF 529-71 [A.T. I-44]; ECF 632-60 [Zapata Santiago Decl.], ¶¶ 3-10; ECF 529-68 [J.D.S. Decl.], ¶¶ 4–9; ECF 529-70 [M.L.S. Decl.], ¶¶ 4–7; ECF 632-61 [Johnson Decl.], ¶¶ 5–16. This makes sense, as Defendants' practice is to seize Latinos first and ask questions later—making it impossible for individuals to invoke their lawful status to avoid a detentive stop. *See, e.g.*, Ex. 87 to PI Motion [GOV-P19-060] (lodged) (stating "[c]uff him up" as to legal resident J.A.); ECF 529-79 [GOV-P17-051] (stating, with respect to individual with work authorization, "[w]e'll take him to ORP, and if he's good, we'll release him").

Defendants have made no attempt to show why the Court's findings will not be upheld on appeal. Defendants suggest that the Court erred by finding that particular stops in the record were (1) seizures and (2) unlawful, on the ground that the Court "consider[ed] individual factors in isolation." App. at 8. But Defendants do not identify a single finding that they contest, let alone an instance in which the Court ignored "the totality of the circumstances." *Id.*

Defendants' remaining standing arguments are easily dismissed. Organizations can have standing in their associational capacity to protect the Fourth Amendment rights of their members. *See Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128, 1135, 1143 (9th Cir. 2024). Pursuing this injunction undoubtedly is germane to the organizational Plaintiffs' missions, which recognize the relationship between immigration enforcement and the rights of low-wage workers, many of whom are Latino. ECF 632 at 13 n. 15. The organizational Plaintiffs are not relying on a "statistical-probability" standing theory, *contra* App. at 5, but on concrete evidence of specific organizational members who are realistically threatened by Defendants' racial profiling—including members who have been stopped more than once. ECF 632 at 14–15. Indeed, it is

Defendants who misuse statistics by suggesting that the sheer reach of their misconduct means no one in the District has standing to challenge it. That is not the law.

**3.** Defendants also incredulously argue that Plaintiffs failed to demonstrate that they would be irreparably harmed absent an injunction. They point to *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999), but as Plaintiffs have explained, the Ninth Circuit there made no finding that Border Patrol had an officially sanctioned practice of making unreasonable stops. *See id.*; *see also Durgin v. de la Vina*, 174 F.R.D. 469, 474–75 (D. Ariz. 1997). And the court relied on evidence disproving any "sufficient likelihood" of a future stop against the plaintiffs—specifically, evidence that both plaintiffs drove along the border multiple times every week and encountered Border Patrol "nearly every day," yet each was "stopped only once in 10 years," *id.* at 1044—that bears no resemblance to the record here. Multiple individuals, including organizational Plaintiff members, have been stopped *twice in mere months*. ECF 632 at 14–16; ECF 529-74 [Melendrez Decl.], ¶ 13; *see Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 826 (9th Cir. 2020) (repeat incidents against same individuals, both plaintiffs and non-plaintiffs, support standing). That evidence, which was not part of the record at the TRO stage, and which Defendants repeatedly (and erroneously) claim does not exist, App. at 7, distinguishes this case from *Hodgers-Durgin.*

**4.** The Court's grant of relief does not contradict, let alone implicate, *Trump v. CASA*, 606 U.S. 831 (2025). Defendants fail to explain how the order could have been narrowed while still providing complete relief to the Plaintiffs and their members. This is especially so because, based on the post-TRO record before the Court, the violation of Plaintiffs' rights—the seizure—occurs *before* agents know the identity of who they are stopping. Order at 20-29; *see Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501–02 (9th Cir. 1996). The injunction rationally covers the local ICE Field Office Area of Responsibility. *See* ECF 710-06 [Rios ICE 30(b)(6) Dep.] at 37:22–38:2.[5]

[5] The Court also granted certification of the Suspicionless Stops Class, further supporting District-wide relief. Defendants claim that the injunction sweeps broader than the certified class, ECF 821

***Second***, Defendants fail to establish they will be irreparably harmed absent a stay. Defendants rely on new declarations never presented to this Court when the parties were litigating the preliminary injunction to establish irreparable harm. See ECF 821-1 [Quinones Decl.] at ¶¶ 11–22; ECF 821-2 [Parra Decl.] at ¶¶ 9–16. These witnesses claim to be confused by the injunction's language, and their threatened harms of chilling effects and agent hesitation are downstream of that claimed confusion. ECF 821-1 (Quinones Decl.) at ¶ 21; ECF 821-2 (Parra Decl.) at ¶ 14. But their claims are impossible to credit and are directly contradicted by the Court's order. Their main complaint is that the terms "Latino," "working class," "low-income," and "day-laborer" are impermissibly vague. Id. This feigned confusion is absurd. Both declarations explicitly state that officers routinely rely on apparent day-laborer status in working-class occupations and Latino ethnicity (or "apparent nationality") when making stops. ECF 821-2 (Parra Decl.) at ¶¶ 9, 13; ECF 821-1 (Quinones Decl.) at ¶¶ 13, 15. Agents clearly know what it means to base a stop on apparent ethnicity and working-class status. Parra's assertion that the Order does not explain the distinction between perceived Latino ethnicity and nationality is similarly unsupported. Parra Decl. at ¶ 13. Nowhere does the Court equate Latino ethnicity with nationality, and Plaintiffs never have argued otherwise.

Defendants' declarations also misconstrue the injunction's language to manufacture uncertainty. Quinones, for example, suggests that because the Court linked to a PEW research article about the definition of "Hispanic," the injunction requires agents to engage in an ontological exploration of race and ethnicity while in the field, and to first determine conclusively whether a particular person is of Latin American heritage before making a reasonable suspicion determination. ECF 821-1 (Quinones Decl.) ¶ 12. This is nonsense. The injunction bars racial profiling—that is, reliance on "*apparent status as* … Latino" as a substitute for particularized suspicion. Order at 83. That focus reflects the record evidence on which the injunction rests: declarations from the individuals Defendants stopped, along with ICE and CBP testimony,

---

at 9, but they make no effort to explain what they mean. The injunction's reach is co-extensive with the class. *See* ECF 825 at 44 (defining the certified class).

showing that officers select people for detention based on how they look. The injunction does not require agents to solicit census information or income statements from persons they encounter on the street. Additionally, Parra feigns confusion about whether the injunction's language applies to detentive stops unrelated to immigration. ECF 821-2 (Parra Decl.) ¶ 15. This too is ridiculous. Immigration status is not a prerequisite for such a detentive stop and an officer would not need to have reasonable suspicion that the person they were detaining was in violation of U.S. immigration law.

Nor does anything in the order bar officers from "rely[ing] on many factors" for a stop. Quinones Decl. ¶ 11. No factor is "off limits" under the order. The injunction simply instructs Defendants that they may not rely on two broad demographic factors *alone* and call that reasonable suspicion. Parra's and Quinones' remaining assertions about chilling enforcement and judicial micromanagement are unsupported by evidence, and this Court has already considered and rejected them.

Defendants were aware of the proposed injunction and could have put in evidence with their opposition about agent confusion. Plaintiffs' expert witness has opined that the language of the preliminary injunction is "understandable and workable." ECF 632-03 (Mot. for PI Ex. 3 [Expert Report of Gil Kerlikowske]) at ¶ 7. Defendants failed to rebut that evidence and can only do so now by distorting the language of the injunction.

***Finally***, the last two factors, harm to Plaintiffs and "the public interest," which merge when the government is a party, *Nken*, 556 U.S. at 435, also weigh against a stay. Plaintiffs will face grave harm if a stay is granted. Defendants' racial profiling of Latinos has continued unabated and even subjects Latinos to the threat of extreme violence. ECF 529-71 [A.T. I-44] & ECF 529-84 [GOV-P17-061] (legal resident A.T. detained right after agent says "get out and start grabbing people"); ECF 632-57 [H.A. Decl.] ¶¶ 5–18 (U.S. citizen stopped twice); Jarrod Zinn, *Santa Maria Police Turn Over Surveillance Footage After ICE Agents Misidentify, Injure Student, News Channel 3-12* (Oct. 23, 2026), https://keyt.com/news/santa-maria-north-county/2026/10/23/santa-maria-police-turn-over-surveillance-footage-after-ice-agents-misidentify-injure-student/. Defendants have shown that they are unwilling to carry out enforcement in a

lawful manner. And of course, "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Index Newspapers*, 977 F.3d at 836–37. A stay of the preliminary injunction is unwarranted.

**D. <u>The Court Should Not Stay All Proceedings</u>**

Defendants' application seeks a sweeping stay that would grind to a halt the litigation of *all* claims (whether they are at issue in a pending appeal), by *all* parties (whether Stop/Arrest Plaintiff, Access/Condition Plaintiff, or Intervenor), and against *every* policy at issue in the litigation (whether concerning stops, warrantless arrests, officers' failure to identify themselves, denial of detainees' access to counsel, or conditions of confinement). Defendants' effort to shoehorn a stop to all proceedings in the case into an appeal of a preliminary injunction on a single set of claims is improper and would be intolerably prejudicial to Plaintiffs.

**1. Standard practice requires the case proceed pending an interlocutory appeal**

This Court "retains jurisdiction to address aspects of the case that are not the subject of the appeal." *United States v. Pitner*, 307 F.3d 1178, 1183 n.5 (9th Cir. 2002). It is, after all, "standard practice" for "further proceedings in the same controversy" to "continue in the district court while an appeal in an earlier phase is pending." *Contour Design, Inc. v. Chance Mold Steel Co.*, 649 F.3d 31, 34 (1st Cir. 2011); *see also* Wright & Miller, 16 Fed. Prac. & Proc. Juris. § 3921.2 (3d. ed. 2025) ("Interlocutory injunction appeals would come at high cost if the trial court were required to suspend proceedings pending disposition of the appeal.").

**2. Defendants do not satisfy the requirements of a stay under Landis**

Defendants do not come close to satisfying the standard for a discretionary stay.

The case law is split on which standard applies to assess such a stay request. The Ninth Circuit's decision in *California by & through Harrison v. Express Scripts, Inc.*, 139 F.4th 763, 768 (9th Cir. 2025), suggests that requests for discretionary stays pending appeals are to be decided by the test set forth in *Nken v. Holder*, 556 U.S. 418, 434 (2009). Some courts, however, have suggested that the test set forth in *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936), as adapted in *CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962) and *Lockyer v. Mirant Corp.*, 398 F.3d 1098,

1110 (9th Cir. 2005), is the appropriate test where, as here, the movant seeks to stay the entire case (as opposed to individual orders or judgments). Defendants raise the *Landis* test in their Application; their request fails under either standard. As discussed above, the *Nken* factors weigh sharply against granting an extraordinary stay under these circumstances.

*Landis* balances the "competing interests" that could be affected by a stay, including "the possible damage which may result from the granting of a stay, the hardship or inequity that a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer*, 398 F.3d at 1110. If there is even a "fair possibility [a stay] will work damage to someone else," the moving party must "make out a clear case of hardship or inequity in being required to go forward." *CMAX,* 300 F.2d at 268 (quoting *Landis*, 299 U.S. at 255).

*(a) Defendants will suffer no hardship or inequity from proceeding*

Defendants have not demonstrated any hardship or inequity they will suffer if the case proceeds. Instead, they rely on a cascade of misrepresentations to demand a sweeping stay, none of which are pursuasive. App. at 13:2–9 (citing four reasons for a stay).

*First*, Defendants claim that the Ninth Circuit's lifting of an injunction in *United Farm Workers* to remand for further findings on standings justifies a stay of this case. Defendants omit that the district court in that case rejected the same gambit. After the district court entered an injunction there, the government appealed and moved for a stay of all proceedings. *United Farm Workers v. Noem*, 823 F. Supp. 3d 1112, 1120-28, 1132–36 (E.D. Cal. 2026). The district court rejected that motion, explaining that "the mere fact that standing to sue is raised in an interlocutory appeal does not automatically entitle Defendants to a stay." *Id.* So, too, here.

That the Ninth Circuit ultimately vacated the injunction and remanded for the district court to make additional factual findings concerning a portion of the standing analysis does not vindicate Defendants' position here. That is just one of many possible outcomes of an interlocutory appeal, not grounds to fundamentally change federal judicial practice. So while an "appeal could have wide-ranging impacts on almost the entire case, including the standing analysis

applicable to the requests for injunctive and declaratory relief . . . this is just one element in a discretionary balancing test." *United Farm Workers*, 823 F. Supp. 3d. at 1135-36.

*Second*, Defendants request a stay because, in their words, "the Supreme Court stayed this Court's previous injunctive-relief order based on nearly the same record." App. at 13. The Supreme Court's prior unreasoned stay emphatically was not "on nearly the same record." As explained above, the Court's extensive factual findings are based on voluminous deposition testimony, video footage, documents, and dozens of witness declarations that were never before the Supreme Court. *See* Order at 53 n.35 (explaining that the Court cannot "infer why the Supreme Court stayed the Fourth Amendment TRO" because the "reasons may well have involved the evidentiary record that Plaintiffs had developed at the TRO stage-which, as discussed above, meaningfully differs now."). Indeed, the TRO and this PI "differ in the injunctions they seek, the evidence they cite in support, and their underlying theories of relief under the Fourth and Fifth Amendment." *Id.* at 73 n. 41.

*Third*, neither the Ninth Circuit in *United Farm Workers* nor the Supreme Court "expressed the importance of resolving Plaintiffs' standing in each case," as Defendants phrase it. App. at 13. For one, the Supreme Court said nothing at all in its order. *See, e.g.*, Order at 48 n.32 (recognizing that "an unreasoned stay order cannot give the Court basis in law to adjudicate" Plaintiffs' preliminary injunction motion); ECF 732 at 27 (the Court "will not speculate as to the unspoken logic behind the Supreme Court's decision to stay the Fourth Amendment TRO"). And the Ninth Circuit's remand in *United Farm Workers* addressed only what it viewed to be the district court's incomplete standing analysis. It said nothing about standing in *this* case, which Defendants themselves concede should be assessed continuously as the case proceeds. ECF 689 at 5–6. In any event, Defendants have consistently argued that the Ninth Circuit's published standing analysis from the TRO appeal does not control this Court's future consideration of standing. *Id.*

*Fourth*, multiple courts of appeals are not "currently resolving the same legal issues." App. at 12 & n.2 (citing cases). The injunction on appeal arises out of a claim not asserted in any of the cases they have cited. *See Cruz-Gamez v. Lyons*, No. 26-2090 (9th Cir.) (challenging

noncompliance with 8 U.S.C. § 1357(a)(2)'s requirement for assessment of flight risk when conducting warrantless immigration arrests); *Ramirez-Ovando v. Mullin*, No. 26-1027 (10th Cir.) (same); *Escobar Molina v. DHS*, No. 26-5045 (D.C. Cir.) (same). Those appeals may implicate Article III standing, but such questions are inherently fact- and claim-specific; how they resolve will say little about whether Plaintiffs face a substantial risk of injury from a different practice.

*(b) A wholesale stay will not simplify issues, proof, or questions of law.*

Beyond the lack of hardship or inequity, Defendants' Application does not explain how a stay of the entire proceeding will simplify adjudication of this complex case. The application assumes that an appeal from a preliminary injunction order on a subset of claims will provide definitive, cross-cutting guidance on *all* claims, and that such guidance may narrow the issues for litigation. This defies both logic and common sense.

First, this appeal addresses only a subset of the claims before the district court and, no matter the outcome of the appeal, much of the litigation will remain intact. This case concerns more parties and claims than those at issue in the preliminary injunction. Beyond those in this appeal, Plaintiffs bring seven additional claims. Only four address stops and arrests, and do so under different legal theories. *See* Order at 5–6 (charting claims). The Access/Condition Plaintiffs challenge entirely distinct government conduct through the remaining three claims. *Compare* SAC ¶¶ 37–102, *with id.* ¶¶ 112–135. They seek distinct relief, *id.* at 82–83, and their standing rests on distinct constitutional injuries, *compare* ECF 586 at 19, *with id.* at 28. When Defendants appealed the preliminary injunction that the Access/Condition Plaintiffs obtained almost a year ago, ECF 256, they did not seek to stay that injunction, let alone seek to stay any of the district court proceedings that have continued ever since. The appeal of that injunction has been fully briefed since July 15, 2026 and oral argument is only three weeks away, on November 19, 2026. *See Vasquez Perdomo, et al. v. Noem, et al.*, No. 26-209 (9th Cir. ECF Nos. 52, 61).

That the appeal of the preliminary injunction will invariably consider Plaintiffs' and class members' standing to seek one of three injunctions cannot by itself pause the entire litigation. "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and

damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). There is no guarantee that the outcome of this appeal has any bearing on Plaintiffs' standing to pursue their other claims, particularly if this Court "must assure itself of jurisdiction at each stage of the litigation." Order at 60; *United Farm Workers*, 823 F. Supp. 3d at 1133 ("the mere fact that standing to sue is raised in an interlocutory appeal does not automatically entitle Defendants to a stay"). And even if the Ninth Circuit rules that Stop/Arrest Plaintiffs lacked standing to seek the injunction this Court issued, such a holding would not prevent them from developing the evidence necessary to meet Article III's requirements were they to seek another preliminary injunction, summary judgment, or judgment at trial. Whatever the resolution of the appeal, the case will proceed whether Defendants wish to defend it or not. *Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (a "stay order is not a decision on the merits") (Kavanaugh, J., concurring).

Defendants rely on two cases, *Dickinson v. Trump*, 174 F.4th 634 (9th Cir. 2026) and *Reach Community Dev. v. DHS*, 174 F.4th 1143 (9th Cir. 2026), but neither applies here. In both, the Ninth Circuit held on appeal that the government was likely to prevail below, fundamentally changing the stay analysis. The Ninth Circuit stayed discovery in *Dickinson* only after concluding that the First Amendment retaliation claim was unlikely to succeed and the provisional class was improperly certified. 174 F.4th at 650. Likewise, *Reach Community Development* expressly rested its stay on a "meritless" substantive due process theory and the absence of a district court finding of likely success on the remaining Fourth Amendment claim. 174 F.4th at 1151.

*(c) Plaintiffs and judicial economy will be unduly harmed by a stay*

Finally, Defendants argue that judicial economy demands a stay because discovery is burdensome to them. Defendants submit a declaration of counsel that contains numerous misrepresentations of the discovery record in this case. Those claims are addressed by the concurrently filed Declaration of David Fry. In any event, as should be obvious, simply "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of Landis." *Lockyer*, 398 F.3d at 1112.

Even if Defendants ultimately prevail in dissolving the injunction against enforcement of Defendants' racially-based stops policy, they would not be excused from any of the discovery

burdens they complain saddle them today. Although the claims are distinct and the policies analyzed separately, discovery into each policy overlaps dramatically. Regardless of the disposition of any of the appeals in this matter, Plaintiffs will be entitled to the much of the same evidence, whether they are arrest reports, body camera footage, emails between supervisory agents and policymakers, or whatever else.

The case Defendants rely on does not support their position. *See Finder v. Leprino Foods Co.*, No. 1:13-cv-02059-AWI-BAM, 2017 WL 1355104 (E.D. Cal. Jan. 20, 2017). In *Finder*, the stay followed acceptance of a specifically certified interlocutory question that would conclusively resolve the validity of roughly half the wage-and-hour claims, with discovery already conducted and safeguards against prejudicial delay in place. *Id.* at *3–4. Here, Defendants' invocation of the discovery they are obligated to produce alongside rank speculation that appellate rulings might narrow the case does not meet their high burden to halt all proceedings here.

A broad stay of proceedings would prejudice Plaintiffs. A stay would prevent Plaintiffs (and Intervenors) from pursuing claims not at issue in the pending appeals, and would halt their diligent efforts to obtain discovery necessary to move the entire case to trial—which is especially necessary when the "Order is not a final decision on whether the Government is, in fact, following an unlawful policy." Order at 3; *see*, *e.g.*, *Nat'l TPS All. v. Noem*, No. 25-CV-01766-EMC, 2025 WL 2578045, at *41 (N.D. Cal. Sept. 5, 2025) (granting summary judgment motion briefed pending PI appeal that raised jurisdiction arguments), *stay denied*, No. 25-5724, 2025 WL 2661556, at *6 (9th Cir. Sept. 17, 2025). The need for discovery is heightened in light of Defendants' repeated noncompliance with discovery orders; they have been held in contempt or sanctioned for noncompliance in multiple orders to date. ECF 635 at 13; ECF 668 at 7, 13.

Granting Defendants' omnibus stay will strain, rather than conserve, this Court's scarce resources. The Ninth Circuit has "repeatedly admonished district courts not to delay trial preparation to await an interim ruling on a preliminary injunction." *California v. Azar*, 911 F.3d 558, 583 (9th Cir. 2018). Continuing to allow litigation on all claims by all parties to proceed furthers this Court's "interest in clearing its docket," *Federal Savings & Loan Insurance Co. v. Molinaro*, 889 F.2d 899, 903 (9th Cir. 1989), an interest commensurate with the public's "interest

in a speedy resolution of the controversy," *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995). Conversely, "appeal of district courts' preliminary injunctions will result in unnecessary delay to the parties and inefficient use of judicial resources." *Sports Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750, 753 (9th Cir. 1982).

Finally, since the Court already has found an ongoing threat of injury arising out of multiple illegal practices imposed by Defendants, granting Defendants their request for an indefinite stay "threatens to create the perception that courts are more concerned with efficient trial management than with the vindication of constitutional rights." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000). When a plaintiff seeks "injunctive relief, rather than damages," the calculus tips further against a stay, since there is "a fair possibility" that the stay will permit ongoing and future harm that can be remedied by injunctive relief. *California Sea Urchin Comm'n v. Jacobson*, No. CV 13-5517-DMG (CWX), 2016 WL 11785449, at *2–3 (C.D. Cal. Nov. 3, 2016) (quoting *Lockyer*, 398 F.3d at 1112).

* * *

Defendants have failed to meaningfully address any of the *Landis* factors. Defendants might prefer to avoid further discovery, but their Application fails to establish the "clear case of hardship or inequity" necessary for a stay. *Landis*, 299 U.S. at 255.

## III. CONCLUSION

The Court should deny Defendants' Application.

DATED: October 29, 2026

Respectfully Submitted,

MUNGER, TOLLES & OLSON LLP

By: */s/ Jacob S. Kreilkamp*
JACOB S. KREILKAMP
*Counsel for Stop/Arrest Plaintiffs*

DATED: October 29, 2026

UC IRVINE IMMIGRANT AND RACIAL JUSTICE SOLIDARITY CLINIC

By: */s/ Anne Lai*
ANNE LAI
*Counsel for Stop/Arrest Plaintiffs*

DATED: October 29, 2026

ACLU OF SOUTHERN CALIFORNIA

By: */s/ Mohammad Tajsar*
MOHAMMAD TAJSAR
*Counsel for Stop/Arrest Plaintiffs*

DATED: October 29, 2026

HECKER FINK LLP

By: */s/ Matthew Craig*
MATTHEW CRAIG
*Counsel for Access/Conditions Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2026, I electronically filed the foregoing with the Clerk of the U.S. District Court for the Central District of California using the CM/ECF system, which provided notification of such filing to all registered CM/ECF users.

DATED: October 29, 2026

*/s/ Jacob S. Kreilkamp*
JACOB S. KREILKAMP

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Stop/Arrest Plaintiffs certifies that this brief contains 6,464 words, which complies with the word limit of L.R. 11-6.1.

DATED: October 29, 2026

*/s/ Jacob S. Kreilkamp*
JACOB S. KREILKAMP