STACY TOLCHIN (SBN 217431)
*stacy@tolchinimmigration.com*
LAW OFFICES OF STACY TOLCHIN
776 E. Green St., Suite 210
Pasadena, CA 91101
Tel: 213-622-7450; Fax: 213-622-7233

MOHAMMAD TAJSAR (SBN 280152)
*mtajsar@aclusocal.org*
MAYRA JOACHIN (SBN 306065)
*mjoachin@aclusocal.org*
DAE KEUN KWON (SBN 313155)
*akwon@aclusocal.org*
STEPHANIE PADILLA (SBN 321568)
*spadilla@aclusocal.org*
ALYSSA MORONES (SBN 343358)
*amorones@aclusocal.org*
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
P.O. Box 811370
Los Angeles, CA 90081
Tel: 213-977-5232; Fax: 213-201-7878

*Counsel for Stop/Arrest Plaintiffs*

MARK ROSENBAUM (SBN 59940)
*mrosenbaum@publiccounsel.org*
REBECCA BROWN (SBN 345805)
*rbrown@publiccounsel.org*
RITU MAHAJAN (SBN 252970)
*rmahajan@publiccounsel.org*
GINA AMATO (SBN 215519)
*gamato@publiccounsel.org*
AMANDA MANGASER SAVAGE
(SBN 325996)
*asavage@publiccounsel.org*
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Tel: 213-385-2977

*Counsel for All Plaintiffs*

ANNE LAI (SBN 295394)
*alai@law.uci.edu*
UC IRVINE SCHOOL OF LAW
IMMIGRANT AND RACIAL JUSTICE
SOLIDARITY CLINIC
P.O. Box 5479
Irvine, CA 92616-5479
Tel: 949-824-9894; Fax: 949-824-2747

*Counsel for Stop/Arrest Plaintiffs*

(*Additional counsel listed on next page*)

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

Pedro VASQUEZ PERDOMO, et al.,

Plaintiffs,

v.

Markwayne MULLIN, in his official capacity as Secretary, Department of Homeland Security, et al.,

Defendants.

Case No.: 2:25-cv-05605-MEMF-SP

**DECLARATION OF DAVID H. FRY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION FOR A STAY**

Hon. Maame Ewusi-Mensah Frimpong

Referred to Hon. Sheri Pym
United States Magistrate Judge

JACOB S. KREILKAMP (SBN 248210)
*jacob.kreilkamp@mto.com*
DAVID FRY (SBN 189276)
*david.fry@mto.com*
ADAM B. WEISS (SBN 296381)
*adam.weiss@mto.com*
SARA H. WORTH (SBN 341088)
*sara.worth@mto.com*
LAURA R. PERRY (SBN 342504)
*laura.perrystone@mto.com*
HENRY D. SHREFFLER (SBN 343388)
*henry.shreffler@mto.com*
LAUREN E. KUHN (SBN 343855)
*lauren.kuhn@mto.com*
ANGELA URIBE (SBN 353579)
*angela.uribe@mto.com*
MAGGIE BUSHELL (SBN 354048)
*maggie.bushell@mto.com*
MUNGER, TOLLES & OLSON LLP
350 S. Grand Ave., 50th Floor
Los Angeles, CA 90071
Tel: 213-683-9100; Fax: 213-683-9100

*Counsel for Stop/Arrest Plaintiffs*

BREE BERNWANGER (SBN 331731)
*bbernwanger@aclunc.org*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel: 415-621-2493

*Counsel for Stop/Arrest Plaintiffs*

BRISA VELAZQUEZ OATIS (SBN 339132)
*bvoatis@aclu-sdic.org*
ACLU FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Tel: 619-398-4199

*Counsel for Stop/Arrest Plaintiffs*

EDGAR AGUILASOCHO (SBN 285567)
*eaguilasocho@farmworkerlaw.com*
MARTÍNEZ AGUILASOCHO LAW, INC.
900 Truxtun Ave, Suite 300
Bakersfield, CA 93301
Tel: 661-859-1174
*Counsel for Plaintiff United Farm Workers*

JESSICA KARP BANSAL (SBN 277347)
*jessica@ndlon.org*
LAUREN MICHEL WILFONG*
lwilfong@ndlon.org
NATIONAL DAY LABORER ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Tel: 626-214-5689

*Counsel for Stop/Arrest Plaintiffs*

MATTHEW J. CRAIG (SBN 350030)
*mcraig@heckerfink.com*
MACK E. JENKINS (SBN 242101)
*mjenkins@heckerfink.com*
HECKER FINK LLP
1150 South Olive Street, Suite 10-140
Los Angeles, CA 90015
Tel: 212-763-0883; Fax: 212-564-0883

*Counsel for Access/Conditions Plaintiffs*

CARL BERGQUIST*
*cbergquist@chirla.org*
COALITION FOR HUMANE IMMIGRANT RIGHTS
2351 Hempstead Road
Ottawa Hills, OH 43606
Tel: 310-279-6025

*Counsel for Plaintiff Coalition for Humane Immigrant Rights*

ALVARO M. HUERTA (SBN 274787)
*ahuerta@immdef.org*
BRYNNA BOLT (SBN 339378)
*bbolt@immdef.org*
ALISON STEFFEL (SBN 346370)
*asteffel@immdef.org*
IMMIGRANT DEFENDERS LAW CENTER
634 S. Spring St., 10th Floor
Los Angeles, CA 90014
Tel: 213-634-0999

*Counsel for Plaintiff Immigrant Defenders Law Center*

* Admitted pro hac vice

**DECLARATION OF DAVID H. FRY**

I, David H. Fry, declare the following:

1. I am an attorney at Munger, Tolles & Olson LLP and counsel of record to the Stop/Arrest Plaintiffs ("Plaintiffs") in the above-captioned action.

2. I make this declaration from my personal knowledge and if called to testify to these facts could and would do so competently. I make this declaration in response to the Declaration of August Flentje in support of Defendants' Ex Parte Application for Stay of Order Granting Preliminary Injunction [ECF No. 807] and for Stay of Proceedings Pending Appeal, ECF No. 821-3 ("Flentje Decl."). Mr. Flentje's declaration creates a grossly misleading impression of the conduct of Plaintiffs, the Magistrate Judge, and this Court in connection with discovery in this case.

**Defendants' Misconduct in Expedited Discovery**

3. Over a year ago, the Court granted Plaintiffs' and Intervenors' motion for limited expedited discovery related to Plaintiffs' then pending motion for a preliminary injunction. ECF 223. The Court permitted Plaintiffs to serve four document requests and four interrogatories, which had been submitted with the motion, and to take seven depositions. ECF 211 at 2; ECF 211-1 Exs. 1 & 2. One of the document requests sought documents relating to a list of 15 operations, among hundreds of operations Defendants had conducted within the District. ECF 211-1 Ex. 2 at 6-7. In opposing the motion, Defendants argued that the requests were unduly burdensome and the Court rejected that argument. ECF 223 at 6.

4. Defendants almost immediately began to engage in discovery misconduct. The Magistrate Judge set a deadline of November 4, 2025 for production of documents "responsive to the RFPs" that Defendants had relied on in opposing the Preliminary Injunction motion. ECF 227 at 4. Rather than producing the documents they had relied upon, Defendants "construed" the Magistrate Judge's order to mean that they had to produce documents responsive to only one of the document requests, which sought training materials, and produced no documents relating to the operations at issue. ECF 305 at 5. Defendants claimed their reading of the Magistrate Judge's

order was "a good faith misunderstanding," but the Magistrate Judge very reasonably concluded that "assertion lack[ed] credibility." *Id.*

5. Defendants also decided that they did not need to produce any documents relating to the final three operations listed in the document requests—even though the Court had reviewed and approved the document requests. ECF 205 at 6. The Magistrate Judge had to order Defendants to produce documents relating to those three operations even though this Court had already reviewed and approved the document requests. *Id.* at 7.

6. Defendants produced no body camera footage from any of the 15 listed operations by the production deadline set by the Magistrate Judge, who had to order Defendants specifically to produce body camera footage. ECF 273.

7. Defendants construed a request seeking all documents relating to the 15 listed operations as seeking documents relating only to certain encounters at those operations, but did not disclose this indefensible narrowing in their written document response. ECF 370 at 5. Plaintiffs therefore were unaware of the limitation until Defendants completed their document production, which meant production could not be compelled until after the expedited depositions had been completed. The Magistrate Judge found Defendants' construction of the request to be "untenable" and "unreasonable," and found that they acted "indefensibly" in narrowing the request in that way. *Id.* at 5-6, 8.

8. Defendants produced agents' WhatsApp messages late at night on the evening before their depositions weeks after the production deadline. ECF 370 at 3. Agents testified, moreover, that they did not receive litigation hold notices or did receive them, but took no action to preserve documents—including failing to turn off auto-delete functions. ECF 538 at 3; ECF 503 at 4.

9. Defendants made unreasonably broad Attorney-Client Privilege and Attorney Work Product claims, withholding essentially all of the materials used to train agents on how to conduct stops. ECF 338 at 3, 10. They also made unreasonably broad claims of Law Enforcement Privilege, on which basis they redacted many of the documents they did produce. ECF 365 at 2, 11.

10. The Magistrate Judge was required to hear a series of motions to compel in which Defendants made nonsensical arguments and/or repeated their arguments that the discovery was unduly burdensome—even though the District Court had already rejected those arguments.

11. In one of her orders granting a motion to compel, the Magistrate Judge also ordered Defendants to preserve evidence of agents' messages by imaging their phones. ECF 370 at 9. The record showed that Defendants had done a hopelessly inadequate job of collecting such messages. ECF 538 at 3. (Indeed, Defendants now concede that their efforts were "insufficient", ECF 772 at 13.) The record further showed that agents were not preserving their messages. *See* ECF 503-14 at 32:24-33:4 ("Q: Did you stop deleting e-mails, files, or other documents? A: No."); ECF 503-12 at 84:9-11 ("Q: And you didn't turn off any auto delete functions on your personal device? A: No, sir."); ECF 538 at 3. The remedy was to capture these messages (which Defendants concede they have a statutory obligation to capture and manage, ECF 772 at 6) through forensic imaging of the phones. ECF 370 at 9. One agent who confirmed he used his personal cell phone testified that he had taken no steps to preserve documents after receiving a litigation hold. *See* ECF 503-12 at 74:12-78:15. Defendants acknowledged that they had not forensically collected ESI from their agents and had not even searched for ESI on their agents' devices; instead, Defendants relied entirely on self-collection by the agents. *See id.* at 17. That is why Plaintiffs sought an order directing the government to preserve this evidence in a forensically sound manner. At the time, Defendants did not object that complying with such an order would be unduly burdensome or that they lacked control over the phones. ECF 750 at 2.

12. After the order requiring imaging had been issued and Defendants, for the first time, did complain about the burden imaging would pose, Plaintiffs sought to compromise in order to reduce that burden. Plaintiffs stipulated to extensions of Defendants' time to comply with the order. *See* ECF 461 at 1 (recounting extensions). Plaintiffs agreed to limit the number of custodians whose phones would be imaged. *Id.* at 2. Finally, Plaintiffs proposed a stipulated protocol by which Defendants' counsel would use custodial interviews to (1) ensure preservation of ESI on agents' personal devices; (2) determine which personal devices were likely to contain responsive materials; and (3) supervise agents' collection of ESI from those devices. *See* ECF

503-19. Plaintiffs would then select only a subset of 50 custodians for personal cell-phone imaging. *Id.* Defendants rejected that proposal and asserted that conducting custodial interviews "would be impractical." ECF 503-20.

13. Defendants failed to comply with the imaging requirement and various other aspects of ECF 370. This Court found Defendants in contempt because they did not image the personal phones even of the agents who said they would agree to have their personal phones imaged. ECF 635 at 12. The Magistrate Judge sanctioned ICE for what Defendants conceded was a failure by ICE to comply with the Court's order compelling production of other (non-phone) operational documents. ECF 668 at 7, 13.

**Defendants' Mischaracterization of Plenary Discovery**

14. When the case moved to plenary discovery, Defendants continued to delay and obstruct. With respect to body worn camera videos, Defendants refused to provide information concerning how the agency tagged the videos, which Plaintiffs sought in order to narrow the universe of videos Defendants would have to produce based on which videos were more likely to be relevant. In an effort to avoid providing that information, *Defendants* proposed to produce 4,685 videos. ECF 510 at 16 (Defendants saying "Defendants instead offered to produce 4,685 videos"). Defendants wanted to limit the videos to ones tagged "Arrest or Apprehension," (*id.*), but Plaintiffs objected that would omit videos of interactions with citizens and legal permanent residents—who would not have been arrested (at least not officially), but whose interactions with agents are highly material to the litigation. In a seriously misleading passage, Mr. Flentje states that the Magistrate Judge "ordered the production of roughly 4,700 body videos," (Flentje Decl. ¶ 8), but it was *Defendants* who proposed that they produce that number of videos.

15. Mr. Flentje also falsely represents that Plaintiffs "are seeking discovery into every immigration arrest and stop by DHS in the Central District of California." Flentje Decl. ¶ 4. Plaintiffs have not sought, and have not been granted, discovery into every immigration stop in this District. To support that false assertion, Mr. Flentje mischaracterizes a statement made by this Court in its order finding Defendants in contempt. Flentje Decl. ¶ 4 (quoting ECF 635 at 1 with emphasis). The Court's order, ECF 635, did not say that Plaintiffs sought discovery concerning

all stops—but rather that Plaintiffs sought discovery to prove that not all stops were lawful. ECF 635 at 1-2 ("They explained that they wanted to be able to prove that what the Government was saying was not true—the Government did not have reasonable suspicion for all of the stops.") As a matter of basic logic, showing that agents had reasonable suspicion for fewer than "all" stops does not require evidence regarding every stop.

16. With respect to discovery that Plaintiffs are seeking, the Magistrate Judge has had to order Defendants to produce virtually everything they have produced in plenary discovery, issuing two further orders compelling production. ECF 603; ECF 655. Defendants have failed to comply with the deadlines the Magistrate Judge imposed in ECF 655.

17. Mr. Flentje represents that discovery in this case has "involved 306 document reviewers at the Department of Justice and impacted agencies." Flentje Decl. ¶ 4. The Department of Justice has previously represented to Plaintiffs that it staffed that number of additional document reviewers on a part-time basis for the specific purpose of reviewing agents' cell phone records when the government was under an impending hard deadline to complete certain productions. I am informed and believe that counsel for Defendants, Jonathan Robbins, told Sara Worth, counsel for the Stop/Arrest Plaintiffs, that that surge staffing would cease when that hard deadline was lifted, which it was. Defendants have never represented to Plaintiffs, nor to the Magistrate Judge, that discovery in this case has otherwise required hundreds of reviewers.

18. Mr. Flentje also asserts that discovery in this case has necessitated review by "non-party government components, . . . for example, many documents have been sent to the Federal Bureau of Investigations for review given that they implicate that agency's privileges and equities." The FBI is not a non-party to this action. FBI purportedly participated in Operation At Large Los Angeles, and the Director of the FBI is a named party.

19. Mr. Flentje further represents that "[t]he work associated with reviewing and redacting thousands of videos is labor-intensive, technically complex, and requires the diversion of personnel from mission-critical duties." *Id.* As noted above, it was Defendants' own proposal that they produce 4,685 videos. Moreover, the claim that the government is burdened by the need to spend hours reviewing and redacting body camera footage is grossly misleading, if not outright

false. *First*, the method for selecting the videos to be produced does not involve any relevance or responsiveness review. *See* ECF 706 at 1-3 (method is a combination of random selection and videos meeting certain objective criteria, such as dates and tags). *Second*, at the time the Magistrate Judge directed the government to produce these videos, the parties had entered into a stipulated protective order and a clawback agreement by which the government could produce law enforcement sensitive materials to Plaintiffs' counsel without waiving that privilege. The government's law enforcement privilege claims have since been overruled, but the point is that, even before that ruling, the government was under no obligation to review and redact the body-worn camera footage for law enforcement privilege before producing it to Plaintiffs. Plaintiffs are unaware of any redactions to the body-worn camera produced to Plaintiffs since the Magistrate Judge issued the order in question, and Defendants have not served Plaintiffs with any privilege log identifying any such redactions. Simply put: The government is *not* redacting this body-worn camera footage before producing it, and any review is solely for the government's strategic litigation purposes, as there is no potentially applicable privilege.

20. Mr. Flentje complains that Plaintiffs have proposed to increase the number of depositions permitted in the case to 60. But that number is reasonable for multiple reasons. First, the case is a class action affecting many thousands of people—discovery will be significant. Second, the case has three different sets of plaintiffs—the Stop/Arrest Plaintiffs, the Access/Detention Plaintiffs, and the Intervenors. Third, it is unclear at this time exactly how many depositions will be necessary because Defendants have failed to produce documents in compliance with the Magistrate Judge's orders—maybe it will be fewer than 60, but the only prudent thing is to increase the limit to an number that will likely suffice because there is not

///

///

///

enough time to file another motion to increase the limit and still have time to notice and take the depositions before the February discovery cut-off.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 29th day of October, 2026, at Berkeley, California.

*/s/ David H. Fry*
David H. Fry
MUNGER, TOLLES & OLSON LLP