BRETT A. SHUMATE
Assistant Attorney General
Civil Division
DREW C. ENSIGN
Deputy Assistant Attorney General
DANIEL F. MUMMOLO
Counsel to the Assistant Attorney General
AUGUST FLENTJE
Deputy Director
JONATHAN A. ROBBINS
Assistant Director
NANCY N. SAFAVI
Senior Trial Attorney
JACOB A. BASHYROV
ANIELLO DESIMONE
STEPHANIE L. GROFF
JASON K. ZUBATA
Trial Attorneys
JENNIFER ROSARIO (MN # 0300755)
Trial Attorney
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-5971
Email: Jennifer.M.Rosario@usdoj.gov
*Counsel for Defendants*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

PEDRO VASQUEZ PERDOMO, *et al.*,

Plaintiffs,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, *et al.*,

Defendants.

No. 2:25-cv-05605-MEMF-SP

**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF ADVISAL**

Hon. Maame Ewusi-Mensah Frimpong
United States District Judge

Referred to Hon. Sheri Pym
United States Magistrate Judge

# TABLE OF CONTENTS

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. Professional Responsibility Principles Support Informing CBP Agents and Employees of Their Right to Consult a Union Representative or Personal Attorney ........ 2

II. The Advisal Is Independently Supported by CBP's Obligations Under the Applicable Collective Bargaining Agreements ("CBAs") ........ 3

III. Providing Employees Notice of Available Representation Is Consistent with the Purposes Underlying Federal-Sector *Weingarten* Rights ........ 4

IV. Issues Raised By Plaintiffs During a November 3, 2026 Meet and Confer Between the Parties Do Not Warrant Alterations of the Advisal ........ 7

CONCLUSION ........ 12

L.R. 11-6.2 CERTIFICATE OF COMPLIANCE ........ 14

CERTIFICATE OF SERVICE ........ 15

## TABLE OF AUTHORITIES

### CASES

*Acosta v. Nuzon Corp.*, No. SACV 16-00363-CJC (KESx), 2019 U.S. Dist. LEXIS 60722 (C.D. Cal. Feb. 19, 2019) ........ 4

*AFGE Local 1941 v. FLRA*, 837 F.2d 495 (D.C. Cir. 1988) ........ 5

*AFGE, Local 2544 v. FLRA*, 779 F.2d 719 (D.C. Cir. 1985) ........ 6

*City of Ontario, Cal. v. Quon*, 560 U.S. 746 (2010) ........ 8, 11

*Dep't of Veterans Affs., Med. Ctr., Hampton, Va.*, 51 F.L.R.A. 1741 (1996) ........ 6

*Immigration & Naturalization Serv., El Paso, Tex.*, 47 F.L.R.A. 1254 (1993) ........ 5

In *U.S. Border Patrol, Del Rio, Tex.*, 46 FLRA 363 (1992) ........ 5

*NLRB v. J. Weingarten, Inc.*, 420 U.S. 251 (1975) ........ 5

*O'Connor v. Ortega*, 480 U.S. 709 (1987) ........ 8, 11

*Riley v. California*, 573 U.S. 373 (2014) ........ 2, 9

*Sears v. Dep't of the Navy*, 680 F.2d 863 (1st Cir. 1982) ........ 5

*U.S. Dep't of the Interior, Bureau of Land Mgmt., Eugene Dist. Off., Portland, Or.*, 68 F.L.R.A. 178 (2015) ........ 6

*United States v. Cotterman*,
709 F.3d 952 (9th Cir. 2013) .......... 2

*United States v. Jacobsen*,
466 U.S. 109 (1984) .......... 9

*United States v. Lancaster*,
2025 WL 3171392 (D. Nev. Nov. 13, 2025) .......... 11

*United States v. Mejia*,
792 F. Supp. 3d 1117 (S.D. Cal. 2025) .......... 11

*United States v. Payne*,
99 F.4th 495 (9th Cir. 2024) .......... 10

*United States v. Reid*,
226 F.3d 1020 (9th Cir. 2000) .......... 10

**STATUTES**

**Immigration and Nationality Act of 1952, as amended:**

5 U.S.C. § 7114(a)(2)(B) .......... 4, 5

5 U.S.C. § 7114(a)(3) .......... 5

## INTRODUCTION

CBP has initiated the process of sending a communication to CBP agents and officers who were present at one of the fifteen operations that are the subject of the limited expedited discovery authorized by the Court. *See* Defs.' Letter to Court (Oct. 30, 2026), attaching "Email to Employees re: Personal Phones and Perdomo" ("Email to CBP Agents"), and attached hereto as Exhibit 1. The Email to CBP Agents contains an advisal regarding an employee's right to consult with a union representative or personal lawyer if the employee has questions regarding this Court's Order (Dkt. No. 750) compelling an employee to submit their personal cell phone for forensic imaging. The advisal reads:

> "If you have any questions regarding your rights, you may contact your union representative or, at your own expense, consult with your own personal lawyer."

Ex. 1 at 1.

Plaintiffs oppose the advisal claiming that it is "contemptuous of the Court's orders" and "calculated to result in non-cooperation by the employees." Oct. 30, 2026 Hr'g Tr. 39:22-24. Plaintiffs have not identified any provision of the Court's Order that the advisal violates, nor have they identified any authority prohibiting Defendants from accurately informing employees of their rights and obligations while implementing the Court's directive. The advisal reflects Defendants' obligation to ensure that employees can obtain information about their legal obligations and are aware of their rights.. The advisal is supported by the Rules of Professional Responsibility, the applicable collective bargaining agreements, and the employee-protection interests underlying federal-sector *Weingarten* rights.

## ARGUMENT

### I. Professional Responsibility Principles Support Informing CBP Agents of Their Right to Consult a Union Representative or Personal Attorney.

The Court has ordered production of the CBP agents' personal cell phones for forensic imaging. Such an extraordinary intrusion warrants informing employees of available sources of representation. The Supreme Court has recognized that cell phones are fundamentally different from other forms of personal property because they contain "the privacies of life." *Riley v. California*, 573 U.S. 373, 403 (2014). The Ninth Circuit has likewise recognized that electronic devices may contain extensive personal, financial, medical, and other sensitive information. *United States v. Cotterman*, 709 F.3d 952, 964 (9th Cir. 2013) (en banc).

Against that backdrop, CBP employees will receive a communication from their employer informing them that a court order requires the production of their personal cell phones. An employee could easily misunderstand the role of agency counsel and mistakenly conclude that agency counsel is acting in the employee's interests or advising the employee regarding the legal consequences of compliance. Similarly, an employee is very likely to have understandable questions and concerns about their rights in connection with this court order and any potential personal or professional consequences to them in connection with said order. It would violate ethics rules for agency counsel to answer those questions.

A lawyer employed by or retained by an organization represents the organization. ABA Model Rule 1.13(a). CBP agency counsel represents CBP and the named Defendants in their professional capacities, not the individual employee whose personal cell phone is subject to forensic examination. Recognizing that organizational and employee interests may diverge, the Rules of Professional Responsibility require lawyers to ensure that employees understand that counsel represents the organization rather than the individual employee. ABA Model Rule 1.13(f) provides that a lawyer shall explain the identity of

the client when the lawyer knows, or reasonably should know, that the organization's interests are adverse to the employee. Rule 4.3 reinforces that obligation and recognizes that, where an unrepresented person's interests may conflict with those of the lawyer's client, the lawyer can advise the unrepresented person to seek independent counsel.

> The lawyer shall not give legal advice to an unrepresented person, **other than the advice to secure counsel**, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client. (emphasis added).

These principles are particularly important here because the Court's Order requires access to information that may affect an employee's property, privacy, and other personal interests. Employees receiving the communication may reasonably, but incorrectly, assume that agency counsel has considered the personal and professional legal consequences of compliance. The Rules of Professional Responsibility are designed to prevent precisely that misunderstanding. Agency counsel cannot provide individualized advice regarding defenses or other rights implicated by the forensic imaging process of personal cell phones. Moreover, there is no offer of immunity with respect to information discovered on employees' personal cell phones. Advising employees that they may contact a personal attorney or union representative satisfies the Rules of Professional Responsibility by ensuring that employees understand the limits of agency counsel's role and the availability of independent advice.

## II. The Advisal Is Independently Supported by CBP's Obligations Under the Applicable Collective Bargaining Agreements ("CBAs").

The CBAs governing CBP bargaining-unit employees provide additional and more specific protections concerning employee representation. The advisal constitutes a written management communication directed to bargaining-unit employees. The production process may also require employees to provide information concerning ownership of the device, the existence of responsive communications, or the means of accessing the device.

Those interactions further support informing employees of available representation before they respond. Under Article 31(A)(3) of the agreements with the National Border Patrol Council ("NBPC"), and Article 22 § 6 of the National Treasury Employees Union ("NTEU"), bargaining-unit employees are afforded representational protections intended to ensure that employees are aware of available representation when management seeks information from employees or directs them to take actions that may affect their employment interests. These respective provisions further require CBP to provide the employee with a written advisal of their right to union representation when CBP acts to obtain information from a covered employee.

Notice of available representation is particularly appropriate because CBP will inform its employees that the Court requires surrender of their personal property to the federal government and such property will to be searched by the federal government. Courts have recognized that concerns arise when employers obtain employee statements under circumstances that may be perceived as coercive. For example, in *Acosta v. Nuzon Corp.*, the court observed that employers may violate federal labor protections when they solicit declarations from employees under coercive circumstances. *Acosta v. Nuzon Corp.*, No. SACV 16-00363-CJC (KESx), 2019 U.S. Dist. LEXIS 60722, at *10 (C.D. Cal. Feb. 19, 2019). Although *Acosta* arose in a different statutory context, it reflects the same concern present here: employees should understand their representational rights before surrendering their personal cell phone.

## III. Providing Employees Notice of Available Representation Is Consistent with the Purposes Underlying Federal-Sector *Weingarten* Rights.

Federal-sector *Weingarten* rights reflect the principle that bargaining-unit employees should have a meaningful opportunity to obtain union assistance when responding to agency inquiries that may affect their employment interests. Although 5 U.S.C. § 7114(a)(2)(B) establishes the minimum circumstances under which representation must be afforded, the cases applying that statute emphasize substance over

form and focus on the employee's reasonable perception of potential consequences.

A federal employee is entitled to union representation when: (1) an agency representative examines the employee; (2) the examination is conducted in connection with an investigation; (3) the employee reasonably believes the examination may result in disciplinary action; and (4) the employee requests representation. *AFGE Local 1941 v. FLRA*, 837 F.2d 495, 498 (D.C. Cir. 1988). The Supreme Court has explained that union representation protects both the employee and the bargaining unit by helping ensure that employees do not make damaging admissions out of fear or misunderstanding and by assisting management in "getting to the bottom of the incident occasioning the interview." *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 262-63 (1975); *but see* 5 U.S.C. § 7114(a)(3) and *Sears v. Dep't of the Navy*, 680 F.2d 863, 865 (1st Cir. 1982) (Agencies generally are not required to provide a contemporaneous *Weingarten* advisal because Congress required only that agencies annually inform employees of their representational rights.). Nevertheless, the underlying principles of *Weingarten* and the policies reflected in § 7114(a)(2)(B) favor meaningful access to representation when employees are asked to provide information that may affect their employment interests.

The surrender of an employee's personal device to the federal government to be searched for alleged federal records will include questioning of the employee in both a written and verbal forum. In *U.S. Border Patrol, Del Rio, Tex.*, 46 F.L.R.A. 363 (1992), the Federal Labor Relations Authority (FLRA) recognized that replacing an oral interview with a written response does not eliminate the employee's right to union representation upon request. Likewise, in *Immigration & Naturalization Serv., El Paso, Tex.*, 47 F.L.R.A. 1254 (1993), the FLRA recognized that representational rights may arise even where the employee is not the primary subject of the investigation. Together, these cases make clear that representational rights do not depend on whether information is sought through written statements or interviews, or on whether the employee is the primary subject of the investigation.

In *U.S. Dep't of the Interior, Bureau of Land Mgmt., Eugene Dist. Off., Portland, Or.*, 68 F.L.R.A. 178 (2015), the FLRA recognized that management's characterization of a meeting as nondisciplinary does not foreclose an employee's reasonable belief that discipline may result. The inquiry turns on the employee's reasonable perception of potential consequences rather than the label attached to the request and is evaluated from the employee's perspective rather than management's intent. *Dep't of Veterans Affs., Med. Ctr., Hampton, Va.,* 51 F.L.R.A. 1741 (1996); *AFGE, Local 2544 v. FLRA*, 779 F.2d 719 (D.C. Cir. 1985). Taken together, these authorities reflect a consistent principle: representational rights are determined by the practical realities facing the employee, not by the form of the inquiry or the characterization assigned by management.

Applied here, a reasonable employee could conclude that information recovered from a personal cell phone may affect the employee's employment interests. The Court's Order requires employees to surrender personally owned cell phones for forensic imaging, thereby providing the government access to extensive personal information, including communications, photographs, financial information, medical information, location data, and other potentially sensitive materials. Employees may also reasonably perceive that a failure to comply with the Court's directive could have adverse employment related consequences, regardless of whether discipline is presently contemplated. Under those circumstances, it is immaterial that the request arises in the context of civil discovery rather than a traditional investigative interview. Although the Court's Order requires the production of personally owned cell phones as part of civil discovery rather than a traditional investigative interview, the cases discussed above make clear that representational rights do not turn on the format of the request, the label attached to the proceeding, or whether the employee is the primary subject of an investigation.

The CBP's advisal is not only consistent with the purposes underlying *Weingarten*, it is the prudent course for both employees and CBP because it minimizes litigation and labor-relations risks. A claimed *Weingarten* violation may generate grievances, unfair

labor practice allegations, or challenges to disciplinary actions arising from information obtained during the process. While those issues may be addressed through remedial measures after the fact, doing so requires additional proceedings and creates avoidable labor-relations disputes. Providing notice on the front end ensures that any potential representational issues are addressed before they arise.

## IV. Issues Raised By Plaintiffs During a November 3, 2026 Meet and Confer Between the Parties Do Not Warrant Alterations of the Advisal.

During a meet and confer between the parties, Plaintiffs indicated they disagreed with other language pertaining to CBP's advisal. Those concerns will be addressed below. Plaintiffs also raised concerns regarding potential ICE advisals. As Defendants have previously informed the Court, ICE is still in the questionnaire process and continuing to evaluate options for securing property. Any dispute concerning the contents of a future ICE communication is premature. To the extent ICE ultimately issues a communication to its employees, Defendants anticipate that it will be informed by substantially the same considerations herein. To the extent any future ICE communication differs from the Email to CBP Agents, such differences may reflect distinctions between the agencies, including the fact that ICE employees are not represented by a union. Defendants note that ICE employees have received multiple preservation notices. The present effort is directed toward implementation of the Court's discovery order concerning the fifteen operations identified by the Court and does not alter the existing preservation obligations.

Plaintiffs took issue with language in CBP's proposal which provides, "[t]he court also has not ordered CBP to take disciplinary action if you do not turn over your phone for forensic imaging. CBP is required to notify you of the order. CBP requests that you submit your phone to CBP for forensic imaging to comply with the order." Ex. 1 at 1.They infer from this language that CBP is somehow being contemptuous of the Court's Order. But there is no legal or factual basis for such an inference. To the contrary, the facts and law support the appropriateness of this language as part of the advisal.

As a preliminary legal matter, there is no authority in the Federal Rules or elsewhere for an Article III court to dictate how an agency communicates with its employees about their rights. And there is no motion for relief pending before the court that relates to DHS or its component agencies planned communications to its employees. More importantly, as a factual matter, every statement in the planned communication is true, factual, and designed to inform the employee about the Court's order, the issues involved, and their rights as federal employees, including their rights under the Fourth and Fifth Amendments to the United States Constitution. Plaintiffs seek to infer that this language dissuades employees from providing their phones for imaging, but there is nothing in the language espousing such a position. There is nothing impermissible about the agency making accurate factual assertions.

Any agency action, including any agency decision to discipline an employee or to seize or search an employee's private property, is limited by various sources of law, including the Fourth Amendment. *See O'Connor v. Ortega*, 480 U.S. 709, 715 (1987) ("Searches and seizures by government employers or supervisors of the private property of their employees, therefore, are subject to the restraints of the Fourth Amendment."); *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 755-56 (2010) ("The [Fourth] Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government," without regard to whether the government actor is investigating crime or performing another function." Thus, "[t]he Fourth Amendment applies as well when the Government acts in its capacity as an employer.").

The privacy interests recognized in *O'Connor* and *Quon* are implicated here because the Court's Order requires production of personal property. Although a government employee's expectation of privacy may be implicated when property is used in course of work, the Government did not purchase these devices, does not pay for the associated service plans, and does not exercise routine access to or control over their contents. Employees thus retain a substantial privacy interest in the contents of their

personal cell phone which may include financial, medical and other sensitive information that is wholly unrelated to government employment. Those privacy interests are not eliminated simply because a personal device may have been used for limited work-related purposes. While Plaintiffs purport to seek limited communications regarding the operations, the forensic imaging necessarily exposes far more than the scope of this litigation.

The advisal is therefore legally and factually accurate in explaining that the agency cannot compel employees to surrender their personal cell phones, as such a compulsion would result in a plainly unconstitutional seizure of their personal phones, regardless of whether physical force is utilized or not. *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (A "seizure" of property occurs when there is some meaningful interference with an individual's possessory interests in that property."). Defendants have consistently maintained that compelled surrender and forensic imaging of a personal cell phone raises substantial constitutional concerns. *See* Defs.' Objs. to Magistrate Judge's Order, Dkt. No. 772:7-12. As Defendants have previously explained, the subsequent search will also violate the 4th Amendment. *See, e.g., Riley*, 573 U.S. at 396-97 ("a cell phone search would typically expose to the government far more than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form"). It is therefore accurate and important to inform the employee that the government employers have not been ordered to discipline them for their refusal to consent to a seizure or search of their personal property without their consent. The Court's Order requires production, but it does not direct Defendants to effectuate involuntary physical seizure of employees' personally owned cell phones. Defendants understand that distinction to reflect the significant constitutional interests implicated by the seizure and forensic imaging of personal devices.

The agency, through the advisal, is properly informing the employee of the Court's

Order and requesting their consent to seize and search their personal cell phones. However, in accordance with longstanding 4th Amendment jurisprudence, any such consent must be completely voluntary, freely given, and not an acquiescence to authority. *See United States v. Reid*, 226 F.3d 1020, 1026-27 (9th Cir. 2000) ("To establish the validity of a consent to search, the government bears the heavy burden of demonstrating that the consent was freely and voluntarily given."). Like the contents of the cell-phone post-*Riley*, "[j]udicial concern [for] the sanctity of the home is so elevated that free and voluntary consent cannot be found by a showing of mere acquiescence to a claim of lawful authority."). *Id.* "Rather, the government must show that there was no duress or coercion, express or implied and that the consent was unequivocal and specific and freely and intelligently given." *Id.* (internal quotations omitted). When determining whether consent was voluntarily given, two important factors include "whether a Miranda warning had been given" and "whether the person was told that he had the right not to consent." *Id.* Among the standard Miranda warnings are the right to remain silent and make no statements at all and the right to consult with an attorney regarding one's rights and decisions about whether and how to invoke said rights. Thus, ensuring the employee is aware of the opportunity to consult with an attorney helps ensures that the surrender of their personal property to the agency is not a mere acquiescence to authority or the byproduct of duress, but instead reflects a voluntary choice consistent with the requirements of the Fourth Amendment.

Moreover, the process of complying with the Court's Order may implicate the privilege against compelled self-incrimination embodied in the Fifth Amendment. After all, seizures and subsequent searches of smart phones frequently involve rights under both the Fourth and Fifth Amendments. For example, "providing law enforcement officers with a combination to a safe or passcode to a phone would require an individual to divulge the "contents of his own mind" and thus result in a testimonial and potentially incriminating response implicating the protections of the Fifth Amendment and the privilege against compelled self-incrimination. *United States v. Payne*, 99 F.4th 495, 511 (9th Cir. 2024),

*cert. denied*, 145 S. Ct. 605 (2024); *accord, United States v. Lancaster*, 2025 WL 3171392, at *10 (D. Nev. Nov. 13, 2025); *United States v. Mejia*, 792 F. Supp. 3d 1117, 1123 (S.D. Cal. 2025) ("It is clear that the Fifth Amendment provides [a person] with the privilege against self-incrimination, which includes providing the Government with his cellphone's passcode."). Routinely, those forced to relinquish their personal cell phones in accordance with a search warrant will decline to provide the passcode to effectuate that search. Courts in this very Circuit make clear that individuals cannot be compelled to provide such a passcode. *See Mejia*, 792 F. Supp. 3d at 1123. Given the unique role of the government as employer, the agency has a legal obligation to ensure that any statements made by employees in connection with compliance with the Court's Order are not compelled or violative of the Fifth Amendment.

The intended advisal is therefore carefully designed to ensure that the agency complies with all applicable sources of law, including the United States Constitution, and that employees direct their foreseeable and important questions regarding their rights and options not to the agency or Agency counsel, but to those best positioned and ethically permitted to answer those questions or provide advice, namely their union representatives and any private attorney they choose to retain or consult. It is surprising to hear Plaintiffs suggest, in essence, that telling the truth and advising an American citizen and federal employee about their rights is somehow concerning or seen as "designed" to "encourage" non-compliance with a Court order. Such a view is incompatible with the fundamental relationship between the government and its citizens under the United States Constitution and the rights which emanate from the same. That the government is also an employer does not change the nature of the relationship, the rights of its employees, or its obligations both as an employer and sovereign. *See O'Connor*, 480 U.S. at 715; *City of Ontario, Cal.*, 560 U.S. at 755-56.

## CONCLUSION

Plaintiffs have identified no provision of the Court's Order that the advisal violates and no authority prohibiting Defendants from providing it. The advisal contained in the Email to CBP Agents simply communicates accurate information regarding employees' rights and obligations in connection with the Court's directive. As discussed above, the advisal is supported by well-established principles of professional responsibility, the applicable collective bargaining agreements, the employee-protection interests underlying federal-sector *Weingarten* rights, and the constitutional considerations implicated by the compelled production and forensic imaging of personal cell phones. The Email to CBP Agents should remain unchanged.

* * *

Dated: November 4, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

DANIEL F. MUMMOLO
Counsel to the Assistant Attorney General

AUGUST FLENTJE
Deputy Director

JONATHAN A. ROBBINS
Assistant Director

NANCY N. SAFAVI
Senior Trial Attorney

JACOB A. BASHYROV
ANIELLO DESIMONE
STEPHANIE L. GROFF
JASON K. ZUBATA
Trial Attorneys

*/s/ Jennifer M. Rosario*
JENNIFER M. ROSARIO
(MN Bar No. 0300755)
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-5971
Email: Jennifer.M.Rosario@usdoj.gov

*Counsel for Defendants*

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this filing contains 4333 words, which complies with L.R. 11-6.1 and this Court's Standing Order, Part VIII.C.

Dated: November 4, 2026

Respectfully submitted,

*/s/ Jennifer M. Rosario*
JENNIFER M. ROSARIO
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

The undersigned, counsel of record for Defendants, certifies that on November 4, 2026, I electronically filed the foregoing document with the Clerk of Court, using the CM/ECF system.

Dated: November 4, 2026

Respectfully submitted,

*/s/ Jennifer M. Rosario*
JENNIFER M. ROSARIO
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice

*Counsel for Defendants*