UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-05605-MEMF-SPx | Date | November 16, 2026 |
| Title | Pedro Vasquez Perdomo, et al. v. Markwayne Mullin, et al | | |

| | | |
|---|---|---|
| Present: The Honorable | Sheri Pym, United States Magistrate Judge | |
| Kimberly I. Carter | None | None |
| Deputy Clerk | Court Reporter/Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| None | None |

**Proceedings:** **(In Chambers) Order Awarding Rule 37(b) Sanctions [557]**

## I. INTRODUCTION

On June 23, 2026, plaintiffs filed a motion for an order enforcing the January 16, 2026 Order Granting Plaintiff CHIRLA'S Motion to Compel Discovery at ECF 370 and for sanctions ("motion to enforce"). Docket no. 557. The court granted the motion to enforce, including granting sanctions, on August 14, 2026. Docket no. 668. Plaintiffs had generally asked for sanctions in the amount of fees and expenses incurred in bringing the motion to enforce, but did not then provide a specific amount of requested sanctions. Instead, plaintiffs proposed negotiating a stipulated amount with defendants. The court therefore ordered plaintiffs to provide defendants with the amount requested and the parties to submit a joint stipulation to the court by September 15, 2026 if they were unable to reach an agreement. *See id.* at 13.

On September 15, 2026, the parties submitted a joint status report ("JS") setting forth their positions on the appropriate amount of attorneys' fees recoverable by plaintiffs as sanctions in this matter. Docket no. 737. Plaintiffs' arguments are supported by the declaration of David H. Fry ("Fry Decl.") and exhibits. *See id.*

After considering the parties' written arguments, the court now awards plaintiffs $84,757 in Rule 37(b) sanctions for attorneys' fees plaintiffs reasonably incurred in bringing the motion to enforce, as discussed below.

## II. LEGAL STANDARD

Rule 37(b)(2)(A) provides that if a party "fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). A court may award reasonable attorneys' fees as sanctions for violating a court order. *See, e.g., Berg v. Cnty. of Los Angeles*, 2026 WL 2120887 (C.D. Cal. Jul. 16, 2026).

Generally, courts use the lodestar method to assess the amount of reasonable attorneys' fees. *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Courts may then adjust the lodestar figure upward or downward based on a variety of factors. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) (citing *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). "Any modification must be 'based on factors not subsumed in the lodestar figure.'" *U.S. ex rel. Thrower v. Acad. Mortg. Corp.*, 172 F.4th 703, 709 (9th Cir. 2026) (quoting *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016)).

Under the lodestar method, the court multiplies "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Hensley*, 461 U.S. at 433; *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996); *see ConsumerDirect, Inc. v. Pentius, LLC*, 2024 WL 3914672, at *3 (C.D. Cal. Aug. 6, 2024) (applying the Lodestar method to a sanctions motion). "In determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours that are excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (internal quotation marks and citation omitted). A reasonable hourly rate is ordinarily the prevailing market rate in the relevant community – the forum in which the District Court sits – for similar work performed by attorneys of a comparable skill, experience, and reputation. *Kelly*, 822 F.2d at 1099; *Seachris v. Brady-Hamilton Stevedore Co.*, 994 F.3d 1066, 1076 (9th Cir. 2021); *Schwarz v. Sec'y of Health and Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. Once the fee applicant meets its burden, "the burden shifts to the opposing party to present equally specific countervailing

evidence." *L.A. Terminals, Inc. v. United Nat'l Ins. Co.*, 2026 WL 1708539, at *1 (C.D. Cal. Jun. 12, 2026).

## III. DISCUSSION

Plaintiffs here seek $98,385 in fees for 63.4 hours expended on the motion to enforce. *See* Fry Decl., Ex. 1. Defendants contest the reasonableness of both the number of hours and the rates. *See* JS at 9-15. Defendants argue the fees requested should be adjusted downward. JS at 14.

### A. Reasonableness of the Hours

Plaintiffs seek fees for 63.4 hours of work performed on the motion to enforce. *See* Fry Decl., Ex. 1. Plaintiffs submitted a spreadsheet of the hours worked on the motion. *See id.* The spreadsheet sets forth the attorneys and staff who performed the work, the dates of the tasks, the time entries, the billing rates, and descriptions of the tasks performed. *See id.* The breakdown of the 63.4 hours is as follows: 45.1 hours by Munger, Tolles, & Olson LLP ("MTO") senior counsel David Fry; 0.7 hours by MTO partner Adam B. Weiss; 14.7 hours by MTO associate Sara H. Worth; 0.4 hours by MTO associate Lauren Kuhn; 0.3 hours by MTO associate Angela Uribe; 1.2 hours by MTO paralegal Excie Tucker; and one hour by Anne Lai, Clinical Professor of Law at the University of California, Irvine School of Law. Fry Decl. ¶¶ 6-16, Ex. 1. Counsel for plaintiffs explain the spreadsheet only includes time incurred in connection with the motion to enforce and does not include all time expended on the motion. *Id.* ¶ 3. Counsel excluded: time devoted to the motion to enforce during regular case strategy calls; time recorded by some attorneys for attendance at hearings where they provided supported, but did not have a central role; time spent negotiating with defendants on the attorneys' fees at issue; time spent preparing the JS; and time related to the enforcement of the portion of the January 16, 2026 Order related to the forensic imaging of cell phones. *Id.*

Defendants argue the hours are not reasonable because plaintiffs include redundant and duplicative tasks such as internal communications and "prolonged drafting cycles." JS at 10-11. Defendants do not appear to dispute that internal communications and

drafting are tasks associated with the filing of the motion to enforce, but contend they are excessive or redundant. *See id.* The court disagrees.

First, defendants suggest, but do not expressly argue, that the approximately 35 hours Fry spent drafting the motion to enforce, declaration, and supplemental memorandum was excessive. *See* JS at 11; Fry Decl, Ex. 1. The time spent on drafting the motion to enforce and its associated documents was substantial but nonetheless reasonable, particularly given the fact intensive nature of the briefing and supporting evidence that articulated multiple instances and types of noncompliance with the January 16 order. Similarly, the approximately seven hours other MTO attorneys spent revising the joint stipulation, declaration, and supplemental brief was also reasonable. *See* Fry Decl., Ex. 1; *Berg*, 2026 WL 2120887, at *6 (concluding that an attorney revising another attorney's work is not unnecessary duplication of efforts since it "is reasonable that attorneys of varying tenure work in tandem to complete" work on a brief).

Second, defendants contend the internal communications were excessive and duplicative. *See* JS at 10-11. Plaintiffs billed less than five hours to internal conferences, which hardly constitutes excessive in the context of the motion to enforce. *See* Fry Decl., Ex. 1. Finally, defendants assert the hours reflect duplicative and redundant participation at meetings, specifically citing the attendance of three attorneys at the June 10, 2026 meet and confer. JS at 11. Notwithstanding the fact that the participation of multiple attorneys at a meet and confer is not excessive or duplicative in and of itself, here plaintiffs only seek fees for Fry's and Worth's participation at the meet and confer. *See* Fry Decl., Ex. 1.

In addition, the court notes that plaintiffs appeared to have been underinclusive in some respects. For example, Lai bills 0.1 hours for emailing her notes regarding the joint stipulation on June 16, but she does not bill for the actual time reviewing the joint stipulation. *See id.*

Accordingly, the court finds the total number of hours claimed for work on the motion to enforce is reasonable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| Case No. | 2:25-cv-05605-MEMF-SPx | Date | November 16, 2026 |
|---|---|---|---|
| Title | Pedro Vasquez Perdomo, et al. v. Markwayne Mullin, et al | | |

## B. Reasonableness of the Rates

As stated above, "in determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of a comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986); *Netlist Inc. v. Samsung Elecs Co., Ltd.*, 341 F.R.D. 650, 675 (C.D. Cal. 2022). The requesting party must submit evidence that the requested rates are reasonable, whether in the form of declarations or case law. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008); *Schwarz*, 73 F.3d at 906; *Berg*, 2026 WL 2120887, at *2. The party opposing the attorneys' fee request has a burden of rebuttal that requires the submission of evidence to challenge the accuracy and reasonableness of the evidence submitted by the requesting party. *Camacho*, 523 F.3d at 980; *ConsumerDirect*, 2024 WL 3914672, at *3.

Plaintiffs request the following hourly rates for MTO: $1,695 for Fry (senior counsel); $1,645 for Weiss (partner); $1,240 for Worth (associate); $1,150 for Kuhn (associate); $1,040 for Uribe (associate); and $595 for Tucker (paralegal). Fry Decl., Ex. 1. Plaintiffs also request the hourly rate of $1,075 for Lai, a law professor. *Id.* Plaintiffs submitted the qualifications for each attorney and paralegal, cited cases in which courts have approved MTO billing rates, cited a case in which a court approved the billing rates of a comparable firm, and submitted declarations of rates from lawyers at comparable firms. *See* JS at 4-6; Fry Decl., Exs. 3-8.

MTO's rates are indeed high, but plaintiffs cite cases reflecting that courts have previously found MTO's rates to be reasonable. *See, e.g., Amusement Art, LLC v. Life is Beautiful, LLC*, 2017 WL 2259672, at *6 (C.D. Cal. May 23, 2017), vacated in part on other grounds by *Amusement Art, LLC v. Life Is Beautiful, LLC*, 768 F. App'x 683 (9th Cir. 2019); *Lauderdale v. City of Long Beach*, 2010 WL 11570514, at *4-6 (C.D. Cal. Jan. 11, 2010). Plaintiffs also submit evidence that their rates are consistent with the prevailing market rates within the Central District for law firms of comparable skill, size, and reputation. *See* Fry Decl., Exs. 3-8. And the case law reflects that courts have found attorneys' fees in this range to be reasonable. *See Camacho*, 523 F.3d at 980 ("rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate") (citation omitted); *see e.g., In re Kia Hyundai Vehicle Theft Litig.*, 2025 WL 3691885, at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-05605-MEMF-SPx | Date | November 16, 2026 |
| Title | Pedro Vasquez Perdomo, et al. v. Markwayne Mullin, et al | | |

*4 (C.D. Cal. Sept. 29, 2025) (applying hourly rates of $995, $1,220, and $2,065); *Yuga Labs, Inc. v. Ripps*, 2024 WL 489248, at *3-*5 (C.D. Cal. Jan. 11, 2024) (2023 hourly rates ranging from $710 for an associate with two years of experience to $1,410 for a partner with more than 18 years of experience was reasonable); *Netlist*, 341 F.R.D. at 675-76 (hourly rates ranging from $854-$1370 were reasonable).

Defendants do not dispute the reasonableness of MTO's rates for a firm of its skill, experience, and reputation. Instead, defendants argue the rates are not reasonable because plaintiffs rely on MTO's commercial litigation rates when the relevant market should be immigration-related litigation. JS at 12-14. Defendants maintain the court should apply the prevailing hourly rates for immigration counsel in the Ninth Circuit, which range from $350-$900. *Id.*

Here, defendants' characterization of this case as "immigration litigation" is, at best, disingenuous. Defendants are well aware of the facts and claims of this case, and the mere fact that this case involves the actions of Immigration and Customs Enforcement and Customs and Border Patrol agents does not place this case into the category of standard immigration litigation. This is a complex civil rights class action – involving myriad parties, intervenors, and counsel – that accuses the government of violating the Constitution and federal law by stopping and arresting people without a warrant and preventing people in immigration detention from speaking with attorneys. Thus, the rates for immigration attorneys are irrelevant.

Nonetheless, defendants are correct to question whether it is appropriate for plaintiffs to rely on MTO's commercial litigation rates – or what may be close to MTO's standard commercial litigation rates – to determine a reasonable attorneys' fee award in this civil rights class action. As noted, the "established standard" to determine a reasonable hourly rate is the prevailing rate in the community for "'similar work performed by attorneys of comparable skill, experience, and reputation.'" *Camacho*, 523 F.3d at 979 (citation omitted). The work MTO attorneys are performing in this case is certainly of similar complexity and difficulty to their commercial litigation work, but that does not necessarily mean the prevailing rates in the community for such work are the same.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-05605-MEMF-SPx | Date | November 16, 2026 |
| Title | Pedro Vasquez Perdomo, et al. v. Markwayne Mullin, et al | | |

Three of the cases plaintiffs cite as having approved MTO's hourly rates involved public interest litigation like this case. In *Lauderdale*, a class action on behalf of hearing impaired individuals, the court found reasonable the rates requested by attorneys from both MTO and the Disability Rights Legal Center ("DRLC"), but the hourly rates for MTO and DRLC attorneys were very similar in that 2010 decision, with, for example, 2005 graduates having a rate of $375 at DRLC and $395 at MTO. 2010 WL 11570514, at *3, 6. The court similarly approved as reasonable the requested rates by both MTO and ACLU attorneys in *Vasquez v. Rackauckas*, 2011 WL 3320482 (C.D. Cal. July 29, 2011), a case in which their clients prevailed in challenging a gang injunction. As in *Lauderdale*, the requested hourly rates for attorneys from MTO were very similar to the requested hourly rates for attorneys from the ACLU of equivalent experience. *Id.* at *2. By contrast, in 2021, the requested hourly rates in a different gang injunction case differed significantly depending on whether counsel were from MTO or from the ACLU or Urban Peace Institute ("UPI"). *See Youth Justice Coalition v. City of Los Angeles*, 2021 WL 9731621, at *5-6 (C.D. Cal. June 8, 2021) (noting ACLU and UPI rates "reasonably" range from $420 to $815, whereas MTO rates range from $765 to $1050). The court in *Youth Justice Coalition* did not actually decide whether the MTO rates were reasonable in the case. Instead, in approving the total requested sum for fees and costs, the court observed that "[e]ven if MTO's rates were aligned more closely with the rates of their ACLU and UPI co-counsel, the resulting lodestar . . . still exceeds the fees requested here." *Id.* at *6.

None of the three cases just discussed actually requires that MTO's rates be equivalent to those of their public interest co-counsel in order to be reasonable. Nonetheless, generally aligning the rates is consistent with the principle that a rate is reasonable when it is the prevailing rate for "similar work performed by attorneys of comparable skill, experience, and reputation."

Here, defendants cite to rates charged in routine immigration litigation, but in challenging the reasonableness of MTO's rates they fail to meet their burden to submit evidence of the prevailing rates charged for similar civil rights class action work. Notwithstanding this failure by defendants, the record does contain at least one indicator of the rates generally charged by counsel for work like that performed by plaintiffs' counsel here. In addition to seeking reimbursement for the work done by MTO attorneys

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-05605-MEMF-SPx | Date | November 16, 2026 |
| Title | Pedro Vasquez Perdomo, et al. v. Markwayne Mullin, et al | | |

on the motion to enforce, plaintiffs also seek reimbursement for one hour of work performed by Professor Lai at an hourly rate of $1,075. Besides her work as a law professor, Professor Lai has significant experience in complex public interest litigation since obtaining her J.D. in 2006. Fry Decl. ¶¶ 18-20. Thus, her level of experience appears roughly equivalent to that of MTO partner Adam Weiss, whose rate is $1,645, and she has far greater experience than MTO associate Sara Worth, who obtained her J.D. in 2021 and has a rate of $1,240.

The court does not find that the MTO attorneys' rates must strictly align with the rate of Professor Lai in order to be reasonable. Professor Lai's rate is but one data point, and with additional data the requested rate for Professor Lai might be shown to be on the low side, or there could be other reasons why the rates should not be equivalent. Among other things, even when compared with other complex civil rights class actions, the level of difficulty in this case may justify a somewhat higher rate. The court does find, however, that MTO's rates requested here must be reduced to some extent in order to qualify as reasonable for purposes of awarding sanctions on the motion to enforce.

Accordingly, the court will reduce each of the hourly rates requested by MTO attorneys by $200, and finds that such reduced rates are reasonable.

## C. <u>Further Adjustments</u>

After finding the hours and rates reasonable, the court may then adjust the lodestar figure as appropriate to account for factors that are not subsumed within it. *Camacho*, 523 F.3d at 978. The court may adjust the lodestar figure based on the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975). These factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 70.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-05605-MEMF-SPx | Date | November 16, 2026 |
| Title | Pedro Vasquez Perdomo, et al. v. Markwayne Mullin, et al | | |

In addition to the above, defendants cite two reasons the lodestar figure should be adjusted downward. First, defendants argue MTO should not have billed for "senior" attorneys to perform clerical work such as preparing, transmitting, and filing the joint stipulation.[1] JS at 10-11. The court agrees. The court therefore reduces the rates for the time spent on those tasks on June 16, 2026 (0.4 hours) and June 23, 2026 (2.8 hours) to $595, the hourly rate of an MTO paralegal.

Second, defendants contend the rates should be reduced because the sanctions would be paid by the American taxpayers and suggests that the fees in the Equal Access to Justice Act ("EAJA") serve as a guideline for rates. JS at 14. Defendants cite no cases support their suggestion that EAJA rates should operate as a guideline for the courts. And multiple circuit courts have held that the amount of the fees should not depend on the identity of the losing party, including whether the losing party is the government. *See Lavin v. Husted*, 764 F.3d 646, 651 (6th Cir. 2014) ("[C]onsideration of the taxpayers is an improper ground for denying or reducing an attorney's fee.") (internal quotation marks and citation omitted); *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 180 (4th Cir. 1994) ("[T]o the extent that the district court may have considered the fact that taxpayers would be required ultimately to pay the fees, it employed an improper ground for denying or reducing an attorney's fee to the prevailing party under 42 U.S.C. § 1988."); *Kirchberg v. Feenstra*, 708 F.2d 991, 999 n.7 (5th Cir. 1983) ("The fact that the award of attorney's fees will eventually be borne by the taxpayer is not a 'special circumstance' sufficient to justify the denial of fees."); *Copeland v. Marshall*, 641 F.2d 880, 895 (D.C. Cir. 1980) (in Title VII action, nothing in the statute suggests the attorneys' fee "should be any less when the government is the defendant"). Indeed, in the only case cited by defendants, the court found that courts should exercise "serious caution" in scrutinizing a fee petition against the government to ensure the fees are reasonable, but fees should not be lowered or calculated differently when the losing party is the government. *See Harvey v. Mohammed*, 951 F. Supp. 2d 47, 54-55 (D.D.C. 2013). Accordingly, the court will not further adjust the fees requested here.

[1] The court notes that it is unclear what exactly was performed by the June 16, 2026 entry "prepare and transmit joint stipulation regarding ICE declarations." *See* Fry Decl., Ex. 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -GENERAL**

| Case No. | 2:25-cv-05605-MEMF-SPx | Date | November 16, 2026 |
| --- | --- | --- | --- |
| Title | Pedro Vasquez Perdomo, et al. v. Markwayne Mullin, et al | | |

## D. Adjusted Lodestar Calculations

Based on the adjusted hours and rates, plaintiffs are awarded sanction for their reasonable attorneys' fees as summarized below:

| Attorney | Hours | Adjusted Rates | Fees |
| --- | --- | --- | --- |
| David H. Fry | 45.1 | $1,495.00 | $67,424.50 |
| Adam B. Weiss | 0.7 | $1,445.00 | $1,011.50 |
| Sara H. Worth | 11.9<br>2.8 | $1,040.00<br>$595.00 (paralegal rate for this work) | $12,376.00<br>$1,666.00 |
| Lauren K. Kuhn | .4 | $595.00 (paralegal rate for this work) | $238.00 |
| Angela Uribe | 0.3 | $840.00 | $252.00 |
| Excie Tucker (paralegal) | 1.2 | $595.00 | $714.00 |
| Anne Lai | 1 | $1,075.00 | $1,075.00 |
| | | **Total** | $84,757.00 |

## IV. ORDER

For the foregoing reasons, the court order defendants to pay plaintiffs attorneys' fees of $84,757.00 reasonably incurred in bringing the motion to enforce as sanctions under Rule 37(b).